Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

*Attorneys for the Klein Plaintiffs*

Warren Postman (Bar No. 330869)
  wdp@kellerlenkner.com
Jason Ethridge (admitted *pro hac vice*)
  jason.ethridge@kellerlenkner.com
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, DC 20005
(202) 918-1123

Ashley Keller (admitted *pro hac vice*)
  ack@kellerlenkner.com
Benjamin Whiting (admitted *pro hac vice*)
  ben.whiting@kellerlenkner.com
Jason A. Zweig (admitted *pro hac vice*)
  jaz@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| MAXIMILIAN KLEIN and SARAH GRABERT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation headquartered in California,<br><br>*Defendant.* | Case No. 5:20-cv-08570-LHK<br><br>Hon. Lucy H. Koh<br><br>Hearing Date:  March 18, 2021<br><br>***KLEIN* PLAINTIFFS' APPLICATION TO APPOINT QUINN EMANUEL URQUHART & SULLIVAN, LLP AND KELLER LENKNER LLC AS INTERIM CO-LEAD COUNSEL FOR THE USER CLASS** |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

LEGAL STANDARD ....................................................................................................................3

ARGUMENT ..................................................................................................................................4

I.     QUINN EMANUEL AND KELLER LENKNER IDENTIFIED, INVESTIGATED,
       AND DEVELOPED THE USER CLASS'S CLAIMS...........................................................4

II.    QUINN   EMANUEL   AND   KELLER   LENKNER   HAVE   SIGNIFICANT
       ANTITRUST   AND   CLASS-ACTION   LITIGATION   KNOWLEDGE   AND
       EXPERIENCE. ....................................................................................................................7

       A.     Quinn Emanuel .......................................................................................................8

       B.     Keller Lenkner.......................................................................................................13

III.   QUINN   EMANUEL   AND   KELLER   LENKNER   HAVE   THE   RESOURCES
       NECESSARY TO EFFECTIVELY REPRESENT THE USER CLASS...........................17

IV.    OTHER   FACTORS   FAVOR   APPOINTMENT   OF   QUINN   EMANUEL   AND
       KELLER LENKNER AS INTERIM CO-LEAD USER CLASS COUNSEL. ..................20

       A.     Quinn Emanuel and Keller Lenkner Have and Will Continue to Work
              Cooperatively with Other Counsel ........................................................................20

       B.     The Diversity of the Quinn Emanuel and Keller Lenkner Team ...........................22

       C.     Quinn Emanuel and Keller Lenkner are Committed to Maximizing Efficiencies
              and Implementing Fee, Time, and Cost Controls...................................................22

       D.     Quinn Emanuel and Keller Lenkner Will Prioritize the User Class's Interests .......24

CONCLUSION ..............................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Bernal v. Netflix, Inc.*,
   No. 5:11-cv-00379-EJD, 2011 WL 13157369 (N.D. Cal. Aug. 12, 2011) .............................. 21

*Cameron et al v. Apple Inc.*,
   No. 4:19-cv-03074-YGR (N.D. Cal. Oct. 10, 2019) ................................................... 24

*Carlin v. DairyAmerica, Inc.*,
   No. 09-cv-0430-AWI, 2009 WL 1518058 (E.D. Cal. May 29, 2009) ........................... 6

*Chacanaca v. Quaker Oats Co.*,
   No. 10-cv-0502-RS, 2011 WL 13141425 (N.D. Cal. June 14, 2011)........................... 6

*Dependable Component Supply Corp. v. Murata Mfg. Co.*,
   No. 5:18-cv-00198-EJD, 2018 WL 3388548 (N.D. Cal. Apr. 27, 2018).................................. 18

*In re Apple & AT&TM Antitrust Litig*,
   No. 07-cv-05152-JW, 2008 WL 1766761 (N.D. Cal. Apr. 15, 2008) .......................... 18

*In re Apple iPhone Antitrust Litig.*,
   No. 4:11-cv-06714-YGR (N.D. Cal. Apr. 9, 2012) .................................................... 24

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)...................................................................................... 7

*In re Credit Default Swaps Antitrust Litig.*,
   Case No. 13-md-2476 (S.D.N.Y. Dec. 5, 2013) ................................................ 18, 19

*In re Google Play Consumer Antitrust Litig.*,
   No. 3:20-cv-05761-JD (N.D. Cal. Dec. 16, 2020) ................................................... 24

*In re Google Play Developer Antitrust Litig.*,
   No. 3:20-cv-05792-JD (N.D. Cal. Dec. 11, 2020) ................................................... 24

*In re GSE Bonds Antitrust Litig.*,
   377 F. Supp. 3d 437 (S.D.N.Y. 2019)..................................................................... 6

*In re Interest Rate Swaps Antitrust Litigation*,
   No. 16-mc-2704-PAE, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016)........................... 7

*In re iPhone 4S Consumer Litig.*,
   No. 12-cv-01127-CW, 2012 WL 12960637 (N.D. Cal. July 5, 2012)......................... 6

*In re Korean Air Lines Co., Ltd.*,
   642 F.3d 685 (9th Cir. 2011)................................................................................... 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262-NRB, 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011) ............................... 24, 25

*In re Microsoft Corp. Antitrust Litig.*,
   218 F.R.D. 449 (D. Md. 2003) ................................................................................. 25

*In re Seagate Tech. LLC Litig.*,
   No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016).............................. 3, 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   Case No. 3:07-md-1827-SI (N.D. Cal. July 13, 2007) ...................................................... 24

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   No. 5:16-md-02752-LHK (N.D. Cal. Dec. 3, 2016) ......................................... 20, 24

*Levitte v. Google, Inc.*,
   No. 08-cv-03369-JW, 2009 WL 482252 (N.D. Cal. Feb. 25, 2009)........................... 3

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   301 F.R.D. 284 (N.D. Ill. 2014) ....................................................................... 17

*Steele v. United States*,
   No. 14-cv-1523-RCL, 2015 WL 4121607 (D.D.C. June 30, 2015) ............................... 6

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 23(g)(1)(A)(i) .......................................................................................... 7

Fed. R. Civ. P. 23(g)(1)(A)(ii) ......................................................................................... 7

Fed. R. Civ. P. 23(g)(1)(A)(iii) ........................................................................................ 7

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................................................................................... 17

Fed. R. Civ. P. 23(g)(2) ..................................................................................................... 1

Fed. R. Civ. P. 23(g)(3) ..................................................................................................... 3

## <u>Additional Authorities</u>

Daisuke Wakabayasi, "The Antitrust Case Against Big Tech, Shaped by Tech Industry Exiles",
   *The New York Times* (Dec. 20, 2020).............................................................................. 4

Guidelines for Final Pretrial Conferences in Jury Trials Before District Judge Lucy H. Koh
   (Sept. 23, 2019) ............................................................................................................. 13

Michael Corkery and Jessica Silver-Greenberg, "'Scared to Death' by Arbitration: Companies
   Drowning in Their Own System", *The New York Times* (Apr. 6, 2020) ..................... 14

*Manual for Complex Litigation*, Federal Judicial Center, (4th ed. 2004) .................. 3, 23

5 *Moore's Federal Practice*, (Matthew Bender 3d Ed.) .................................................... 6

## PRELIMINARY STATEMENT

These putative class actions allege that Facebook engaged in an anticompetitive scheme to obtain and maintain market dominance at the expense of its users ("the User Class") and its advertiser customers ("the Advertiser Class"). Rule 23(g)(2) requires that the Court appoint counsel "best able to represent the interests of the class," and, of course, the proposed classes here deserve the best possible representation. We respectfully submit that, in this case, Stephen A. Swedlow, Warren Postman, and our respective law firms—Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and Keller Lenkner LLC ("Keller Lenkner")—offer distinct strengths and unique resources that render them best able to represent the User Class's interests.[1] If appointed, Quinn Emanuel and Keller Lenkner commit to rigorously adhering to all deadlines in this case and to pushing this case forward as quickly and efficiently as possible.

***Development of these cases***: The first-of-its-kind *Klein* case is the culmination of Quinn Emanuel's and Keller Lenkner's extensive investigation, research, and case development, which began in 2019. Facebook's monopolistic practices have drawn broad public attention and resulted in a lengthy report by the Antitrust Subcommittee of United States House of Representatives which primarily addressed Facebook's acquisition conduct. But Quinn Emanuel and Keller Lenkner were the first to develop and file suit based on the theory that Facebook engaged in unlawful, anticompetitive conduct through data privacy deceptions that exploited network effects to create a durable monopoly and that magnified the anticompetitive impact of Facebook's acquisition conduct. The *Klein* complaint's citations to nearly 60 source documents reflect Quinn Emanuel's and Keller Lenkner's extensive pre-filing investigation. Nearly one week ***after*** Quinn Emanuel and Keller Lenkner filed the *Klein* case, the Federal Trade Commission and various State Attorneys General filed their own widely-publicized antitrust suits against Facebook. After that, several other law firms then

---

[1]  Quinn Emanuel and Keller Lenkner submit this application pursuant to the Court's February 9, 2021 order. *See* Dkt. 47.

also filed class-action complaints which are similar—or in some cases nearly identical—to Quinn Emanuel's and Keller Lenkner's complaint.[2]

  ***Deep experience***:  In addition to pioneering and developing the legal theories at the heart of the Facebook user actions, Quinn Emanuel and Keller Lenkner have extensive experience litigating complex class actions, pursuing high stakes antitrust cases (including, for Quinn Emanuel, an antitrust case against Facebook), and practicing before this Court.  Our firms have collectively recovered billions of dollars on behalf of antitrust plaintiffs, including in large, complex antitrust class actions like this one.  Should it be necessary, Quinn Emanuel and Keller Lenkner have the experience required to take this case to trial and win.  Winning this case in particular may also require winning appeals, and our firms each boast two of the best appellate practices in the nation.

  ***Unmatched resources***:  Quinn Emanuel is the largest law firm in the world devoted solely to business litigation, with more than 800 lawyers across 25 offices on 4 continents.  Keller Lenkner, after being formed three years ago by veteran litigators from Am Law 25 defense firms and one of the nation's top litigation boutiques, has quickly risen to be among the most highly regarded firms dedicated exclusively to representing plaintiffs, including in mass consumer fraud and antitrust arbitrations involving the claims of consumers and employees who are subject to forced arbitration clauses.  Our firms also have the ability to provide the User Class with substantial in-house litigation support services (at no charge to the User Class) that will provide battle-tested analytical and review tools that will allow us to effectively and efficiently cut through any amount of documents produced in this case.  And, Quinn Emanuel and Keller Lenkner have already retained and consulted with three of the nation's foremost economic experts, including the former chief economist for both the DOJ and FTC, as well as other highly-experienced experts.  These resources—which our firms have already deployed and will continue to bring to bear—are necessary to best represent the User Class.

---

  [2]  Quinn Emanuel and Keller Lenkner filed *Klein* (this first-filed case) on behalf of the User Class.  All but one of the later-filed cases involve one (but not both) of the User and Advertiser Classes.  A brief description of each of these cases is contained in the accompanying declaration of Stephen A. Swedlow.  *See* Declaration of Stephen A. Swedlow ("Swedlow Decl."), ¶ 27.

1   *Credibility with adversaries and other counsel*:  Quinn Emanuel and Keller Lenkner present

2   unique litigation threats to Facebook, bringing the type of credibility that leads to better settlements

3   and bigger verdicts.   Quinn Emanuel has already litigated an antitrust action against Facebook,

4   represented the Winklevoss twins against Facebook and its founder—Mark Zuckerberg—in the

5   dispute that was subsequently dramatized in *The Social Network*, and has repeatedly been named one

6   of the four U.S. law firms that opposing in-house counsel fear the most.  Similarly, defendants in other

7   cases have remarked that they are "scared to death" of Keller Lenkner.  But that dogged pursuit of our

8   clients' cases is done in concert with a devout adherence to saving the Court from needless disputes.

9   Mr. Swedlow, Mr. Postman, and the respective proposed core team members for this case have all

10  demonstrated their ability to work professionally and efficiently with opposing and aligned counsel, in

11  order to push cases to decision points effectively.

12  The principal goal in appointing leadership in a complex action is "achieving efficiency and

13  economy without jeopardizing fairness to the parties."  *Manual for Complex Litigation*, Federal

14  Judicial Center, § 10.221 at 25 (4th ed. 2004).  We respectfully submit that appointing Quinn Emanuel

15  and Keller Lenkner as Interim Co-Lead Counsel for the User Class would best achieve this goal.

16  ## LEGAL STANDARD

17  Rule 23(g)(3) allows the Court to designate interim class counsel.  When appointing interim

18  counsel, "courts typically look to the factors used in determining the adequacy of class counsel under

19  Rule 23(g)(1)(A)."  *In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-RMW, 2016 WL 3401989, at *2

20  (N.D. Cal. June 21, 2016).  These factors include: "(i) the work counsel has done in identifying or

21  investigating potential claims in the action; (ii) counsel's experience in handling class actions, other

22  complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the

23  applicable law; and (iv) the resources that counsel will commit to representing the class."  *Levitte v.*

24  *Google, Inc.*, No. 08-cv-03369-JW, 2009 WL 482252, at *2 (N.D. Cal. Feb. 25, 2009) (internal

25  quotations omitted).  The Court "may also consider 'any other matter pertinent to counsel's ability to

26  fairly and adequately represent the interests of the class.'"  *In re Seagate*, 2016 WL 3401989, at *2.

27

28

**ARGUMENT**

**I.   QUINN EMANUEL AND KELLER LENKNER IDENTIFIED, INVESTIGATED, AND DEVELOPED THE USER CLASS'S CLAIMS.**

In filing this case—the ***first*** case challenging Facebook's anticompetitive deception—Quinn Emanuel and Keller Lenkner expended extraordinary time and resources identifying, investigating, and developing the antitrust theories central to the User Class's claims.  Quinn Emanuel began investigating Facebook's anticompetitive conduct challenged here in 2019.  *See* Swedlow Decl., ¶ 20.  In connection with its investigation, Quinn Emanuel consulted with industry expert Dina Srinivasan, an antitrust and data privacy academic, in February 2019.[3]  *Id.*, ¶ 21.  Srinivasan is the author of *The Antitrust Case Against Facebook: A Monopolist's Journey Towards Pervasive Surveillance In Spite of Consumers' Preference for Privacy*, 16:1 Berkeley Bus. L. J. 39 (2019).  *Id.*  This followed Quinn Emanuel's earlier antitrust litigation against Facebook, which is discussed below.

Quinn Emanuel and Keller Lenkner worked together to investigate Facebook's anticompetitive conduct.  Among other things, our firms conducted an exhaustive review of source materials, including news articles, industry reports, academic and economic literature, and documents that Facebook produced in response to governmental inquiries.  *See* Swedlow Decl., ¶ 23.  Our firms also reviewed the reports of various governmental tribunals in order to assemble the factual tapestry underlying all of the now-filed User complaints.   These materials included, *inter alia*: (1) Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations, prepared by the Antitrust Subcommittee of the United States House of Representatives; (2) Disinformation and 'Fake News': Final Report, prepared by the Digital, Culture, Media and Sport Committee of the United Kingdom's House of Commons; and (3) The German Federal Cartel Office's decision against Facebook: *Administrative Proceedings, Bundeskartellamt, B6-22/16.  Id.*, ¶ 22.

---

[3]   Various outlets have recognized Ms. Srinivasan's groundbreaking work with respect to Facebook and Google. *See, e.g.*, Daisuke Wakabayasi, "The Antitrust Case Against Big Tech, Shaped by Tech Industry Exiles", *The New York Times* (Dec. 20, 2020), available at: https://www.nytimes.com/2020/12/20/technology/antitrust-case-google-facebook.html.

1   Our firms  also engaged in substantial legal discussions regarding the proper antitrust claims

2   presented by Facebook's misconduct.  Swedlow Decl., ¶ 24.  These substantial discussions included,

3   *inter alia*, defining the relevant markets and refining the theories for how Facebook's privacy

4   practices: (a) constituted anticompetitive conduct under the antitrust laws, (b) reinforced the

5   anticompetitive nature of Facebook's acquisition strategies, and (c) harmed the User Class.  *Id.*

6   Quinn Emanuel's and Keller Lenkner's substantial pre-filing investigation culminated in our

7   filing this heavily-sourced, first-of-a-kind action (which has since been substantially-copied).

8   Swedlow Decl., ¶ 25.  Notably, our firms filed *Klein* nearly one week before the State Attorneys

9   General and the FTC filed their own widely-publicized cases, and it was not until after Quinn

10  Emanuel and Keller Lenkner—and later the State Attorneys General and the FTC—filed suit that

11  other private plaintiffs began piling on, often filing complaints that are nearly identical to our firm's

12  complaint and which feature overlapping classes (and identical class definitions).  *See Id.*, ¶¶ 26–30.

13  Importantly, other firms have recognized the leadership role that Quinn Emanuel and Keller

14  Lenkner have played in developing this case.  That is why—in clear recognition of our firm's

15  exhaustive pre-filing efforts and our identification of the claims in this case—several firms' later-filed

16  complaints are nearly identical to our first-filed *Klein* complaint.  *Compare Klein et al v. Facebook,*

17  *Inc.*, Case No. 5:20-cv-08570-LHK, Dkt. 1 (*Klein* complaint) *with Kupcho v. Facebook, Inc.*, Case

18  No. 5:20-cv-08815-LHK, Dkt. 1 (*Kupcho* complaint); *Garvin v. Facebook, Inc.*, Case No. 5:21-cv-

19  00618-LHK, Dkt. 1 (*Garvin* complaint); *Kovacevich v. Facebook, Inc.*, Case No. 5:21-cv-0117-LHK,

20  Dkt. 1 (*Kovacevich* complaint).  Tellingly, both the *Kupcho* and *Garvin* complaints even include the

21  same custom hyperlinks that Quinn Emanuel and Keller Lenkner created and inserted into the *Klein*

22  complaint.  *See, e.g.*, *Klein*, Dkt. 1 at 3 n.2 (hyperlink in *Klein* complaint making document available

23  through a link hosted by Keller Lenkner at https://kl.link/3jGISfK.); *Kupcho*, Dkt. 1 at 4 n.2 (*Kupcho*

24  complaint citing same document hosted at same Keller Lenkner hyperlink); *Garvin*, Dkt. 1 at 2 n.2

25  (*Garvin* complaint citing same document at same Keller Lenkner hyperlink).

26  Where multiple firms bring significant resources and experience to the table in seeking to lead

27  a putative class, the firms that first developed and filed the claims have a strong claim to be appointed

28  lead, particularly when the firms that filed the first case demonstrated through that filing the sort of

creativity and tenacity that will greatly serve the putative class.  *See In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (determining that Rule 23(g) favored appointment of firms as interim co-lead class counsel because firms "represent[ed] the plaintiffs who filed the first . . . actions," "did substantial investigative work and invested significant resources," and firms' complaint "is clearly the template for the great majority of the cases filed[.]").[4]  That is because the firms that first developed and filed the claims are often the most knowledgeable about the claims, are the most proactive in advancing them, and are therefore best able to litigate the claims and represent the class. *See In re iPhone 4S Consumer Litig.*, No. 12-cv-01127-CW, 2012 WL 12960637, at *1 (N.D. Cal. July 5, 2012) ("'All other things being equal,' if an attorney has performed the investigatory and analytical tasks necessary to draft the complaint, . . . 'he or she is in a better position to represent the class fairly and adequately than attorneys who have not undertaken those tasks.'") (quoting 5 *Moore's Federal Practice*, § 23.120[3][a] (Matthew Bender 3d Ed.)); *Chacanaca v. Quaker Oats Co.*, No. 10-cv-0502-RS, 2011 WL 13141425, at *3 (N.D. Cal. June 14, 2011) ("[I]t makes sense for the Weston firm, and its co-counsel the Marron firm, to continue as counsel in a case that appears to be essentially the product of their work and design, and they therefore will be appointed as interim class counsel."). This is particularly true here, since the *Klein* complaint did not rely on a government enforcement action, but instead was the result of an extensive factual and legal investigation which began in 2019.

Here, other firms' endorsement of the theories that Quinn Emanuel and Keller Lenkner first developed, as reflected in the filing of substantially-similar follow-on complaints, further supports the appointment of Mr. Swedlow and Mr. Postman as Interim Co-Lead User Class Counsel.  *See In re iPhone 4S Consumer Litig.*, 2012 WL 12960637, at *1 (appointing counsel in first-filed case where "[t]hey filed the original complaints in the separate actions several weeks before [a later firm] filed its complaint" and noting that "[a] comparison of the complaints reveals that the Jones complaint contains strikingly similarly allegations to those in the original Fazio complaint."); *accord Carlin v.*

---

[4]   *See also Steele v. United States*, No. 14-cv-1523-RCL, 2015 WL 4121607, at *4 n.2 (D.D.C. June 30, 2015) ("since both groups are more than qualified to handle this action, it would be imminently [sic] reasonable to select the Motley Rice Group on the basis that their complaint was filed first.").

*DairyAmerica, Inc.*, No. 09-cv-0430-AWI, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) ("Cohen Milstein has done a majority of the preparation work leading to the filing of these actions, including investigation into the alleged misconduct and identification of the legal theory of the case. Indeed, a simple comparison of the original complaint in this action with the two filed by Hagens Berman reveals that they are almost identical."). That is because "copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005).

When Quinn Emanuel and Keller Lenkner work to investigate and identify potential claims, we probe deeply in a way that provides unique benefits for our class-action clients. For example, the Honorable Paul A. Engelmayer (S.D.N.Y.) appointed Quinn Emanuel as co-lead counsel in *In re Interest Rate Swaps Antitrust Litigation* because Quinn Emanuel's pre-filing efforts "were more generative and ***exceeded the investigative work of the other applicants by an order of magnitude***." No. 16-mc-2704-PAE, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (emphasis added). The same is true here. Quinn Emanuel and Keller Lenkner have spared no expense in investigating and developing the claims in this case and identifying the core legal theories explaining why and how Facebook's efforts over the years have not only substantially harmed competition, but the User Class as well. Having commenced our investigation into Facebook's anticompetitive conduct two years ago, our firms are prepared to expeditiously litigate the User Class's claims against Facebook. For these reasons, Rule 23(g)(1)(A)(i) strongly favors the appointment of Quinn Emanuel and Keller Lenkner as Interim Co-Lead User Class Counsel.

## II.   QUINN EMANUEL AND KELLER LENKNER HAVE SIGNIFICANT ANTITRUST AND CLASS-ACTION LITIGATION KNOWLEDGE AND EXPERIENCE.

This litigation sits firmly within Quinn Emanuel's and Keller Lenkner's wheelhouses. Both of our firms have significant experience litigating complex and landmark antitrust and class-action cases, including specifically antitrust class actions. As such, Quinn Emanuel and Keller Lenkner are uniquely positioned to draw on their unparalleled antitrust and class-action litigation practices to expeditiously and efficiently pursue claims on behalf of the User Class, more than satisfying Rule 23(g)(1)(A)(ii) and Rule 23(g)(1)(A)(iii).

1

### A.   Quinn Emanuel

Quinn Emanuel, the world's largest law firm devoted solely to business litigation, has built its reputation on its ability to effectively litigate high-stakes cases against the most formidable adversaries, including Facebook.   Among other accolades, Quinn Emanuel has been named a "litigation powerhouse" by *The American Lawyer*, a "global force in litigation" by *The Wall Street Journal*, one of "The Four Firms that GCs Fear The Most" by BTI Consulting Group (for ten years running), a "Tier One" antitrust practice by *Benchmark Litigation*, "Antitrust Litigation Department of the Year" by *The Recorder*, and "Class Action Group of the Year" by *Law360*.  *See* Exh. A.

These recognitions come with good reason—Quinn Emanuel has a long string of victories on behalf of antitrust and class plaintiffs.  *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, Case No. 13-md-02476 (S.D.N.Y.) (Quinn Emanuel served as co-lead class counsel, obtaining over **$1.87 billion** in settlements); *ISDAfix Antitrust Litig.*, Case No. 14-cv-7126 (S.D.N.Y.) (Quinn Emanuel served as co-lead class counsel, obtaining more than **$500 million** in settlements); *Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio) (Quinn Emanuel served as co-lead class counsel for direct purchaser plaintiffs and obtained more than **$430 million** in settlements); *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.) (Quinn Emanuel served as counsel for a plaintiff that asserted exclusive dealing, tying, and monopolization claims against Live Nation and Ticketmaster, securing a **$110 million** settlement for the plaintiff); *In re SSA Bonds Antitrust Litig.*, Case No. 1:16-cv-03711 (S.D.N.Y.) (Quinn Emanuel served as co-lead class counsel and secured settlements totaling **$95.5 million**).  And, in the *Risk Corridors* case—*Health Republic Ins. Co. v. United States*, Case No. 1:16-cv-00259 (Fed. Cl.)—a certified class of health insurers ultimately recovered **$3.7 billion** from the federal government after several of the Quinn Emanuel attorneys in this case, including Mr. Swedlow and Mr. Wolfson, filed the first case in the nation addressing the federal government's failure to make risk corridor payments in violation of Section 1342 of the Affordable Care Act.  As class counsel, Quinn Emanuel created and successfully advanced the core legal and factual theory that the Supreme Court ultimately blessed as correct in mid-2020, resulting in full judgments against the federal government.

Importantly, Quinn Emanuel knows how to litigate against Facebook, having already pursued an antitrust lawsuit against it in *Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525-LPS (D. Del.).  Swedlow Decl., ¶ 15.  In that case, Quinn Emanuel, including an attorney in this case, Mr. Teruya, pursued antitrust claims against Facebook on behalf of Social Ranger LLC—a software company that offered virtual currency services—alleging that Facebook was able to use its dominance to monopolize the market for virtual currency services on social game networks.  *Id*.  Notably, Quinn Emanuel and its co-counsel were able to compel the deposition of Facebook founder Mark Zuckerberg, and the case was resolved shortly before trial in 2017.  *Id*.

But Quinn Emanuel's success in antitrust cases is not limited to just the plaintiff side of the "v."  Quinn Emanuel has also achieved monumental successes on behalf of antitrust defendants.  For example, Quinn Emanuel, including an attorney in this case, Mr. Teruya, obtained a complete defense verdict for Micron Technology in an antitrust case where Rambus Inc. sought **$4 billion—trebled to $12 billion**—from Micron at trial.  *See* Exh. B.  On behalf of Daimler AG and Mercedes-Benz USA, LLC—defendants in *In re German Automotive Manufacturers Antitrust Litig.*, Case. No. 3:17-md-02796-CRB (N.D. Cal.)—a team of Quinn Emanuel attorneys, including Mr. Teruya and Mr. Wolfson, recently helped obtain dismissal with prejudice of antitrust claims asserted by putative classes of consumers and automobile dealers.  Swedlow Decl., ¶ 18.  Quinn Emanuel successfully defeated motions to certify direct and indirect purchaser classes in *In re Flash Memory Antitrust Litigation*, Case No. 4:07-cv-00086-SBA (N.D. Cal.).  *Id.*.  Quinn Emanuel's "both sides of the v." practice, particularly in antitrust cases, provides it with unique insights into the strategies employed by plaintiffs and defendants, and allows it to maximize plaintiffs' chances and settlement opportunities.

For this case, Quinn Emanuel has assembled a strong team of well-qualified attorneys consisting of:[5]

**Stephen A. Swedlow**—Mr. Swedlow is Co-Managing Partner of Quinn Emanuel's Chicago office.  Swedlow Decl., ¶ 8.  Mr. Swedlow has tried over 20 complex civil cases to verdict as lead

---

[5]  More detailed biographies of Mr. Swedlow, Mr. Teruya, Ms. Sheth, and Mr. Wolfson are included in Mr. Swedlow's declaration, which is submitted as an attachment to this application.  *See* Swedlow Decl., ¶¶ 8–11.

counsel, including trying two class-action cases.  Swedlow Decl., ¶ 8.  Mr. Swedlow was a Trial Lawyer of the Year finalist in 2003 for obtaining the largest civil verdict in Illinois history, on behalf of a class, and he has been named an Illinois "Super Lawyer" each year from 2006 through 2020.  *Id.*

Mr. Swedlow has litigated more than 100 complex class-action cases and frequently serves as lead or co-lead class counsel for plaintiffs.  Indeed, Mr. Swedlow has achieved substantial class-action settlements on behalf of class members in various cases.  Most recently, as addressed above, in *Health Republic Ins. Co. v. United States*, Case No. 1:16-cv-00259 (Fed. Cl.) and *Common Ground Healthcare Cooperative v. United States*, Case No. 1:17-cv-00877 (Fed. Cl.), as a result of Mr. Swedlow's and the team's efforts, a certified class of health insurers ultimately recovered **$3.7 billion** from the federal government.  Swedlow Decl., ¶ 8.  Mr. Swedlow also currently serves as co-lead counsel for a putative class of minors pursuing claims against Amazon in *Hall-O'Neil et al v. Amazon Inc. et al,* Case No. 2:19-cv-00910 (W.D. Wash.).  *Id.*  Mr. Swedlow's other representative class-action experiences include (among others): *Martin et al v. KCBX Terminals Co. et al*, Case No. 1:13-cv-08376 (N.D. Ill.); *Harris et al v. comScore, Inc.*, Case No. 1:11-cv-05807 (N.D. Ill.); and *Price et al v. Philip Morris, Inc.*, Case No. 00-L-112 (Ill. Cir. Ct.).  *Id.*

Mr. Swedlow also has significant antitrust experience and currently represents plaintiff Cydia, a software company that launched an early app store for the Apple iPhone, in *SaurikIT, LLC v. Apple Inc.*, Case No. 4:20-cv-08733-YGR (N.D. Cal.), the first competitor case challenging Apple's monopolization of the iOS app distribution and iOS app payment processing markets.  Swedlow Decl., ¶ 8.  Mr. Swedlow has served as lead or co-lead counsel in a number of other antitrust cases, including (among others): *IQVIA Inc. et al v. Veeva Systems, Inc.*, Case No. 2:17-cv-00177-CCC (D.N.J); *IQVIA Inc. et al v. Veeva Systems, Inc.*, Case No. 2:19-cv-15517-CCC (D.N.J.); and *Apple Inc. v. Qualcomm Inc.*, Case No. 3:17-cv-00108-GPC-MDD (S.D. Cal.).  *Id.*  Mr. Swedlow previously served as a law clerk to the Honorable Jerome Farris of the United States Court of Appeals for the Ninth Circuit.  *Id.*

**Kevin Y. Teruya**—Mr. Teruya is a partner in Quinn Emanuel's Los Angeles office.  Swedlow Decl., ¶ 9.  Mr. Teruya's practice focuses primarily on antitrust and unfair competition litigation, and he has been recognized as a "Super Lawyer" by *Southern California Super Lawyer* for years and one of the 500 leading plaintiff financial lawyers by *Lawdragon*.  *Id.*  Mr. Teruya has served as an officer

1   of the Executive Committee of the Antitrust & Unfair Competition Law Section of the State Bar of

2   California, an officer of the Executive Committee of the Antitrust Section of the Los Angeles County

3   Bar Association, and as a member of the editorial board for the annual "California Antitrust and

4   Unfair Competition Law" treatise.  Swedlow Decl., ¶ 9.

5         Mr. Teruya has played significant roles in a number of antitrust cases including (among

6   others): *Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.);

7   *Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525-LPS (D. Del.); *FCA US LLC v. Yazaki*

8   *Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Polyurethane Foam Antitrust Litig*., Case No. 10-

9   md-02196 (N.D. Ohio); *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et*

10  *al*, Case No. 2:15-cv-09814 (C.D. Cal.); *Van Iderstine et al v. Live Nation Entertainment, Inc. et al*,

11  Case No. 2:20-cv-03888-GW (C.D. Cal.); *In re German Automotive Manufacturers Antitrust Litig*.,

12  Case No. 3:17-md-02796-CRB (N.D. Cal.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*,

13  Case No. 4:15-cv-01247-HSG (N.D. Cal.); *In re Cathode Ray Tube Antitrust Litig*., Case No. 07-cv-

14  05944-JST (N.D. Cal.); and *Intuit Inc. et al v. Visa Inc. et al*, Case No. 3:21-cv-01234-EMC (N.D.

15  Cal.).  Swedlow Decl., ¶ 9.  Mr. Teruya previously served as a law clerk to the Honorable Herbert

16  Y.C. Choy of the United States Court of Appeals for the Ninth Circuit.  *Id*.

17        **Manisha M. Sheth**—Ms. Sheth is a partner in Quinn Emanuel's New York office.  She is a

18  seasoned trial lawyer with over 20 years of experience in both private practice and as a former federal

19  and state prosecutor.  Swedlow Decl., ¶ 10.  Ms. Sheth recently served as the Executive Deputy

20  Attorney General for the Economic Justice Division at the Office of the New York Attorney General,

21  where she supervised all complex commercial investigations and civil enforcement actions in the areas

22  of antitrust, data security and privacy, consumer frauds, securities, government fraud, and real estate

23  finance.  *Id*.  In that role, Ms. Sheth supervised the Office of the New York Attorney General's

24  Antitrust Bureau.  Among other accolades, Ms. Sheth was named in *Crain's New York Business*

25  "Notable Women in Law" list (2021); Lawdragon's 500 Leading Plaintiff Financial Lawyers Guide in

26  business litigation (2019–2020); in *Crain's New York Business* "40 under 40" list (2013); and in The

27  National Law Journal's "Minority 40 under 40" list (2011).  *Id*.

28

Ms. Sheth has extensive experience representing plaintiffs, defendants, and public entities in a wide range of complex commercial disputes and government investigations involving antitrust, securities fraud, and other business frauds and torts.  Swedlow Decl., ¶ 10.  Ms. Sheth's representative experiences include (among others): *Federal Housing Finance Agency v. Nomura Holding America, Inc. et al*, Case No. 1:11-cv-06201-DLC (S.D.N.Y.); *In the Matter of Royal Bank of Scotland*, (N.Y.O.A.G.); *The People of the State of New York v. Sprint Communications, Inc. et al*, Case No. 103917/2011 (Sup. Ct. N.Y.); *In the Matter of UBS Securities LLC et al*, (N.Y.O.A.G.); *The People of the State of New York v. Charter Communications*, *Inc. et al*, Case No. 450318/2017 (Sup. Ct. N.Y.); *In the Matter of Wells Fargo & Company*, (N.Y.O.A.G.); *In the Matter of Bank of America Corp. et al*, (N.Y.O.A.G.); *State of New York ex rel. v. Harbringer Capital Partners Offshore Manager, L.L.C.*, *et al*, Case No. 100416/2015 (Sup. Ct. N.Y.); *In the Matter of Credit Suisse Securities (USA) LLC*, (N.Y.O.A.G.); *In the Matter of Simon Property Group*, *Inc*., (N.Y.O.A.G.); and *In the Matter of Taylor Garbage Service*, *Inc*., (N.Y.O.A.G.).  *Id*.  Ms. Sheth also represented the State of New York in a number of antitrust settlements arising out of multiple financial institutions' collusive setting of the London Interbank Offered Rate ("LIBOR").  *Id*.  Ms. Sheth previously served as a federal prosecutor for five years, during which time she indicted over thirty-five cases, conducted numerous trials, and argued several appeals before the Third Circuit.  Ms. Sheth served as a law clerk to the Honorable William H. Pauley III of the United States District Court for the Southern District of New York.  *Id*.

**Adam B. Wolfson**—Mr. Wolfson is a partner in Quinn Emanuel's Los Angeles office who represents both plaintiffs and defendants in antitrust, class-action, and other litigation.  Swedlow Decl., ¶ 11.  Mr. Wolfson has been named a "Rising Star" in Class Actions by *Law360*, listed among the top 500 plaintiffs' financial lawyers in the nation by *Lawdragon*, and a Recommended Lawyer in Antitrust by *Legal 500 USA*.  *Id*.

Mr. Wolfson currently serves on the Executive Committee in *In re 3M Combat Arms Earplug Products Liability Litig*., Case No. 3:19-md-2885 (N.D. Fla.), a mass tort seeking compensation for over 250,000 former service members injured by defective earplugs 3M sold to the military.  Swedlow Decl., ¶ 11.  Mr. Wolfson has played significant roles in a number of other antitrust and competitor cases and class actions including (among others): *Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-

01831 (D.D.C.); *Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio); *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.); *Van Iderstine et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888-GW (C.D. Cal.); *In re German Automotive Manufacturers Antitrust Litig.*, Case No. 3:17-md-02796-CRB (N.D. Cal.); *Transweb, LLC v. 3M Innovative Properties Co. et al*, Case No. 2:10-cv-04413-FSH (D.N.J.); *SaurikIT, LLC v. Apple Inc.*, Case No. 4:20-cv-08733-YGR (N.D. Cal.); and *Intuit Inc. et al v. Visa Inc. et al*, Case No. 3:21-cv-01234-EMC (N.D. Cal.).  Swedlow Decl., ¶ 11.  Mr. Wolfson has also taken class actions to final judgment with resulting huge awards, including, for example, working with Mr. Swedlow on a class action in which they recovered **$3.7 billion** in judgments for two certified classes of health insurers seeking recovery based on the federal government's failure to make risk corridor payments under the Affordable Care Act.  *Id.*  As particularly relevant to Facebook, Mr. Wolfson was the core associate in the Winklevoss twins' case against Facebook and Mark Zuckerberg, a dispute that was subsequently dramatized in the movie, *The Social Network*, and resulted in a confidential settlement.

Quinn Emanuel has also assembled a strong team of well-qualified associates to assist with this case.  Swedlow Decl., ¶¶ 12–13.  For example, Quinn Emanuel associate **Michelle R. Schmit** regularly represents litigants in antitrust, class-action, and data privacy litigation.  *See Id.*, ¶ 12 (detailing representative experience).  Quinn Emanuel associate **Brantley I. Pepperman**—a former law clerk to the Honorable Christina A. Snyder of the United States District Court for the Central District of California—has litigated a number of other antitrust matters and previously served as a contributor to the "California Antitrust and Unfair Competition Law" treatise.  *See Id.*, ¶ 13.  Ms. Schmit, Mr. Pepperman, and other associates will continue to play a significant role throughout this litigation.  *See* Guidelines for Final Pretrial Conferences in Jury Trials Before District Judge Lucy H. Koh (Sept. 23, 2019), at 5 (Opportunities for Less Experienced Lawyers).

## B.  <u>Keller Lenkner</u>

After being formed just over three years ago by veterans of the defense bar, Keller Lenkner has proven itself as one of the leading complex litigation firms for plaintiffs in the United States.  *See* Exh. G.  The firm serves hundreds of thousands of clients in litigation and arbitration matters and acts as

plaintiffs' counsel in high-stakes class and public enforcement actions across the country.  More than 60% of Keller Lenkner's partners and associates were law clerks at a federal court of appeals or district court, including four former law clerks at the Supreme Court of the United States.  *See* Declaration of Warren D. Postman ("Postman Decl."), ¶ 3.  Its team includes former partners and associates at the country's leading law firms, with a majority joining the firm after having practiced at AmLaw 25 firms and elite trial boutiques.  *Id.*

Keller Lenkner's complex litigation practice includes high-profile antitrust and consumer-rights cases.  For example, the firm was retained by the States of Texas, North Dakota, and Idaho to represent them in their multi-state antitrust case against Google: *The State of Texas, et al v. Google, LLC*, Case No. 4:20-cv-00957 (E.D. Tex.).  Keller Lenkner is also lead counsel in a class action in this District on behalf of digital advertisers against LinkedIn for its inflated ad metrics, *TopDevz, LLC et al v. LinkedIn Corp.*, 5:20-cv-08324-SVK (N.D. Cal.), and has played a central role in developing and filing this consumer class action against Facebook.  The Keller Lenkner partners leading this case are deeply experienced in class actions and antitrust law, regularly litigate complex cases such as this one, and are highly qualified to lead the User Class to a successful result against Facebook.

In the short time since its formation, Keller Lenkner's lawyers have already developed a national reputation for developing groundbreaking legal arguments and strategies.  For example, Keller Lenkner has pioneered the strategy of pursuing individual arbitrations for thousands (or tens of thousands) of employees and consumers simultaneously, which as reported by the *New York Times*, has left defendants "scared to death."[6]  In connection with that practice, and in beating a defendant's attempt to avoid its own arbitration clause, Judge Terry Green of the Los Angeles Superior Court recently praised Keller Lenkner's work, commenting "Let's give [the] . . . Keller Firm . . . you know a toast.  Good work.  It's good work."  *See* Exh. F at 22:9–11.  Indeed, the firm has won numerous precedent-setting victories requiring defendants to comply with their obligation to arbitrate disputes individually.  And, in less than three years, that practice alone has yielded more than $200 million in

---

[6]  *See* Michael Corkery and Jessica Silver-Greenberg, "'Scared to Death' by Arbitration: Companies Drowning in Their Own System", *The New York Times* (Apr. 6, 2020), available at: https://www.nytimes.com/2020/04/06/business/arbitration-overload.html?searchResultPosition=1.

recoveries.   Keller Lenkner has also built a formidable product-liability practice, representing thousands of clients in a dozen consolidated actions throughout the country.  Federal courts across the country have recognized Keller Lenkner's creativity and skill by appointing Keller Lenkner's lawyers to take on law and briefing responsibilities in four MDLs.

The Keller Lenkner lawyers who will be primarily handling this case include:

**Warren Postman**—Mr. Postman is a Partner at Keller Lenkner, where he combines a deep understanding of the civil litigation system with broad substantive expertise to solve complex litigation challenges.  He was selected as one of the *National Law Journal*'s Plaintiff's Lawyers Trailblazers for his work building the firm's mass arbitration practice, which devotes unparalleled resources to resolving the  antitrust, consumer fraud, and other claims of consumers and employees who are subject to forced arbitration clauses.  Mr. Postman has won precedent-setting victories requiring defendants to comply with their obligation to arbitrate under agreements they drafted, and he has also been recognized by *Lawdragon* as one of the 500 Leading Lawyers in America.

Mr. Postman has litigated major antitrust matters for both defendants and plaintiffs.  On the defense side, Mr. Postman represented Sirius XM in its defense of private antitrust claims in *Blessing v. Sirius XM*, Case No. No. 09-cv-10035 (S.D.N.Y.).  On the plaintiffs' side, he represents the States of Texas, North Dakota, and Idaho in their major antitrust case against Google, as well as consumer plaintiffs pursuing antitrust claims against Live Nation and Ticketmaster in *Olivia Van Iderstine et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888 (C.D. Cal.).  As part of the firm's mass arbitration practice, Mr. Postman also leads the representation of over 100,000 individual clients pursuing antitrust claims in confidential arbitrations.

Before joining Keller Lenkner, Mr. Postman was Vice President and Chief Counsel for Appellate Litigation at the U.S. Chamber Litigation Center.  He was previously an attorney in the Issues & Appeals practice at Jones Day, where he helped guide trial and appellate strategy in some of the firm's most complex and high-stakes cases.  Mr. Postman served as a law clerk for Justice David H. Souter at the Supreme Court of the United States and Judge William A. Fletcher at the U.S. Court of Appeals for the Ninth Circuit.  *See generally* Postman Decl., ¶ 9.

*Ashley Keller*—Mr. Keller is a founding Partner at Keller Lenkner and a seasoned trial and appellate lawyer with deep substantive knowledge across a wide variety of practice areas and types of claims.  Courts and counsel around the country regularly look to Mr. Keller to craft and present complex legal issues on behalf of clients, including recently when he was appointed chair of the Law & Briefing Committee in the Zantac MDL.  Mr. Keller leads KL's representation of the States of Texas, North Dakota, and Idaho in their antitrust case against Google.  Previously, Mr. Keller co-founded the litigation finance firm Gerchen Keller Capital, which grew to more than $1.3 billion in assets under management and was the world's largest private investment manager focused on legal and regulatory risk before it was acquired by Burford Capital in 2016.  Before co-founding Gerchen Keller, Mr. Keller was a partner at Bartlit Beck LLP.  While there, he handled various trial and appellate matters involving multi-billion-dollar securities and patent cases, contract disputes, mass torts, and class actions.  Mr. Keller previously served as a law clerk for Justice Anthony M. Kennedy at the Supreme Court of the United States and Judge Richard Posner at the U.S. Court of Appeals for the Seventh Circuit.  *See generally* Postman Decl., ¶ 10.

*Jason A. Zweig*—Mr. Zweig, a Partner, joined Keller Lenkner in January 2021.  Mr. Zweig has nearly 18 years of antitrust experience and 22 years of complex litigation experience.  Mr. Zweig was a member of the trial team in *High Fructose Corn Syrup Antitrust Litig*., MDL No. 1087 (C.D. Ill.).  Mr. Zweig also played significant roles in over 30 antitrust class actions, including: *Hydrogen Peroxide Antitrust Litig*., MDL No. 1682 (E.D. Pa.); *Plastics Additives Antitrust Litig*., Case No. 2:03-cv-2038 (E.D. Pa.); *NBR Antitrust Litig*., Case No. 2:03-cv-1898 (W.D. Pa.); and *In re Linens Antitrust Litig*., Case No. 1:03-cv-7823 (S.D.N.Y.).  Mr. Zweig is currently lead class counsel in: *The 2001 Bentley Family Trust and Jennifer Bentley v. United of Omaha Life Ins. Co.*, Case No. 16-cv-07870 (C.D. Cal.) and *In re LIBOR-Based Financial Instruments Antitrust Litig*., Case No. 11-md-2262 (S.D.N.Y.) (Non-Defendant OTC Class).  Before joining Keller Lenkner, Jason was the managing partner of the Chicago office of Hagens Berman Sobol Shapiro LLP, a national class-action and complex litigation firm.  In addition to representing plaintiff classes, Mr. Zweig has also represented large corporations in antitrust litigation.  While at Hagens Berman, Mr. Zweig headed that firm's representation of several large merchants, including American Airlines, Southwest Airlines,

Alaska Airlines and FedEx, with respect to their claims in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 1:14-md-1720 (E.D.N.Y.).  Mr. Zweig previously worked as a judicial intern for the Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York.  *See generally* Postman Decl, ¶ 12.

*Ben Whiting*—Ben Whiting is a Partner at Keller Lenkner and is a seasoned trial attorney with extensive experience litigating complex, high-stakes matters on behalf of plaintiffs and defendants across a variety of practice areas, with clients consistently relying on Mr. Whiting to present their cases to juries, judges, and arbitration panels.  Before joining the firm, Mr. Whiting was a partner at Bartlit Beck LLP, an award-winning trial litigation boutique, where he spent nearly a decade focused on a wide range of matters at the trial and appellate levels, including mass torts, class actions, contractual disputes, and patent disputes.  *See generally* Postman Decl., ¶ 11.

*Jason Ethridge*—Mr. Ethridge is an associate at Keller Lenkner.  Before joining the firm in 2020, he was an associate at Kellogg, Hansen, Todd, Figel & Frederick PLLC in Washington, D.C., where he primarily represented plaintiffs in multi-district litigation, class actions, and arbitrations. Mr. Ethridge previously served as a law clerk to Judge Pamela Harris of the U.S. Court of Appeals for the Fourth Circuit and Judge Dabney Friedrich of the U.S. District Court for the District of Columbia. Keller Lenkner is fortunate to have a strong roster of associates, believes strongly in giving junior lawyers meaningful opportunities, and commits to doing so here.  *See generally* Postman Decl., ¶ 13.

## III.   <u>QUINN EMANUEL AND KELLER LENKNER HAVE THE RESOURCES NECESSARY TO EFFECTIVELY REPRESENT THE USER CLASS.</u>

This Court must satisfy itself that any counsel seeking to lead the User Class "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014); *accord* Fed. R. Civ. P. 23(g)(1)(A)(iv).  Quinn Emanuel and Keller Lenkner have already committed substantial resources to this case, and we will continue to bring them fully to bear on behalf of the User Class.

*Financial and attorney resources*.  In a case of significant public importance such as this— where the class faces an adversary that is one of the richest and most influential companies in the world and has retained capable and well-funded counsel—the User Class must be represented by

counsel with the experience and resources necessary to make this a fair fight.  As discussed above, this type of litigation is Quinn Emanuel's life blood.  Quinn Emanuel's attorneys are ready, willing, and able to devote themselves to the needs of the User Class.  And, as a full-service law firm, Quinn Emanuel is well-capitalized and not beholden to contingent income.  As the Honorable Denise L. Cote (S.D.N.Y.) noted when appointing Quinn Emanuel lead counsel in the *CDS* antitrust case, she did so precisely because Quinn Emanuel had "the expertise and resources to handle th[at] litigation."  *In re Credit Default Swaps Antitrust Litig.*, Case No. 13-md-2476 (S.D.N.Y. Dec. 5, 2013), Dkt. 244 at 37.

Keller Lenkner is also ready and prepared to commit extensive resources to this case, and cases of this magnitude are nothing new for the firm.  Keller Lenkner was founded with the mission of taking on the most complex and resource-intensive litigation challenges.  For example, the firm has made substantial investments in the staff and infrastructure to pursue its groundbreaking mass arbitration practice.  As part of that practice (and by way of example), Keller Lenkner has advanced arbitration filing fees for its clients totaling tens of millions of dollars.  Spurred by early successes, the firm is now composed of 35 attorneys and over 60 non-attorney professionals.

***Expert resources***.  Effectively litigating the User Class's claims will necessarily require the support of experts.  These experts will be particularly crucial to establishing damages and obtaining class certification.  Quinn Emanuel and Keller Lenkner have already retained and consulted with several renowned experts with extensive academic and government backgrounds who would opine on liability and damages issues.  *See* Swedlow Decl., ¶ 42.  Should our firms be appointed, Ms. Srinivasan, a retained consultant, will continue to provide important industry expertise regarding social media platforms, social networks, data privacy issues, and other critical matters.  *Id.*, ¶ 43.

These efforts demonstrate that Quinn Emanuel and Keller Lenkner firmly believe in the strength of the case, will devote the necessary resources to advance it, and will be ready to move this case forward without delay if appointed Interim Co-Lead User Class Counsel.  *See In re Apple & AT&TM Antitrust Litig*, No. 07-cv-05152-JW, 2008 WL 1766761, at *2 (N.D. Cal. Apr. 15, 2008) (selecting lead counsel because firm "has also already engaged an antitrust economist and invested significant time researching and investigating the potential claims involved in this case"); *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-cv-00198-EJD, 2018 WL 3388548, at *2

(N.D. Cal. Apr. 27, 2018) (selecting lead counsel because firms "consulted industry reports and engaged industry experts and an economist to investigate the potential class action claims").

*Litigation support services*.  Quinn Emanuel and Keller Lenkner can offer the User Class unrivaled in-house litigation services (at no cost to the User class), direct attention, and battle-tested analytical tools.  These analytical tools—including predictive coding, e-mail threading, near duplicate detection, and concept clustering—will allow us to ***effectively and efficiently*** cut through the massive volumes of documents that will likely be produced in this case, thus saving the User Class attorney time and money.  Indeed, courts have appointed Quinn Emanuel as interim co-lead class counsel in complex antitrust class actions (like this one) ***precisely*** because Quinn Emanuel has the resources to "run massive discovery cases[.]"  *In re Credit Default Swaps Antitrust Litig.*, Dkt. 244 at 37–38.

*Geographic reach.*  Quinn Emanuel has 25 offices across 4 continents, including 2 in the Northern District of California.  Keller Lenkner has 3 offices.  Both of our firms also have offices in the District of Columbia, where the State Attorneys General and FTC cases against Facebook are pending.  To the extent possible witnesses and documents are located around the country, if not around the globe, our global presence will create efficiencies and allow our firms to leave no stone unturned in the prosecution of the User Class's claims.  Many of Quinn Emanuel's lawyers—including many of the Quinn Emanuel lawyers currently litigating this case—are California-based, and Quinn Emanuel's strong local presence will create further savings for the User Class.

*Trial resources*.  Quinn Emanuel and Keller Lenkner offer the User Class a head start should this case go to trial.  As Judge Cote noted when she appointed Quinn Emanuel as co-lead class counsel in the *CDS* case, Quinn Emanuel boasts attorneys who are not just litigators but "trial lawyers who can actually go into court and try a case."  *In re Credit Default Swaps Antitrust Litig.*, Dkt. 244 at 37–38.  Quinn Emanuel's attorneys alone have tried over **2,300 cases and arbitrations, winning more than 88% of them**.  The partners ***on this case*** have tried multiple class action and antitrust cases to juries and judges.  Our two firms are stocked with additional, seasoned trial lawyers who are available to join the team if needed.  These capabilities will ensure that every decision as to what to do—and not do—is appropriately tailored to the specific question of how to get this case ready for trial without unnecessary delay, and will also encourage potentially quicker and greater settlement.

1    ***Appellate resources***.  Winning this case may require winning appeals.  Quinn Emanuel is

2    home to one of the nation's leading Ninth Circuit appellate practices, headed by named partner

3    Kathleen Sullivan, who is repeatedly recognized as one of the nation's preeminent appellate

4    advocates.  Quinn Emanuel's appellate practice is also particularly experienced in antitrust matters,

5    and it has always worked hand-in-glove with Quinn Emanuel's litigators to ensure that our theories are

6    well-grounded in law and will withstand appellate scrutiny.  Keller Lenkner likewise boasts a

7    renowned appellate practice, and two of its partners already litigating this case—Warren Postman and

8    Ashley Keller—are former law clerks to Justices of the Supreme Court of the United States.

9    **IV.**   **OTHER FACTORS FAVOR APPOINTMENT OF QUINN EMANUEL AND KELLER**

10        **LENKNER AS INTERIM CO-LEAD USER CLASS COUNSEL.**

11        **A.**   **Quinn Emanuel and Keller Lenkner Have and Will Continue to Work**

12            **Cooperatively with Other Counsel**

13    When appointing interim class counsel, this Court has previously considered counsel's

14    "[a]bility to work cooperatively and efficiently with others[.]"  *In re Yahoo! Inc. Customer Data*

15    *Security Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. Dec. 3, 2016), Dkt. 2 at 3.  Quinn

16    Emanuel and Keller Lenkner have already worked constructively with opposing counsel and

17    cooperatively with counsel for other User and Advertiser plaintiffs, *see* Swedlow Decl., ¶¶ 31–41, and

18    we will continue to do so should the Court appoint us as Interim Co-Lead User Class Counsel.

19    For example, following the filing of a number of other antitrust class actions against Facebook

20    after Quinn Emanuel and Keller Lenkner filed the *Klein* action, our firms consistently consulted with

21    both counsel for Facebook and counsel for the other plaintiffs in an effort to develop an orderly

22    process for coordinating and streamlining these numerous proceedings.  Prior to filing a motion to

23    relate *Kupcho*, *Dames*, and *Steinberg* to *Klein*—the only User Class-only cases pending against

24    Facebook at that time—Quinn Emanuel and Keller Lenkner reached out to counsel for the *Kupcho*,

25    *Dames*, and *Steinberg* plaintiffs and to counsel for Facebook to discuss the proper assignment of these

26    cases to this Court.  Swedlow Decl., ¶ 32.  Ultimately, Quinn Emanuel and Keller Lenkner were able

27    to secure agreement from counsel for the *Dames* and *Steinberg* plaintiffs.  *Id.*, ¶ 33.

28

Prior to the Court's February 9, 2021 order, *see Klein*, Dkt. 47, Quinn Emanuel and Keller Lenkner reached out to counsel for the other User and Advertiser plaintiffs and to counsel for Facebook to discuss case management issues including: (a) the proper assignment of all of the then-pending nine User and Advertiser cases to this Court; (b) the filing of Consolidated Complaints; and (c) allowing Facebook to respond to any Consolidated Complaints instead of the individual complaints filed to date. Swedlow Decl., ¶¶ 34–38. Following the Court's order, our firms continued to build consensus among the User and Advertiser plaintiffs regarding case management issues. *Id.*, ¶ 40.

In that same vein, Quinn Emanuel and Keller Lenkner each have strong relationships and open channels of communication with the public entities which are also pursuing antitrust actions against Facebook. Attorneys at our respective firms have served at the highest levels of federal and state governments. The State Attorneys General case is led by the Office of the New York Attorney General. Quinn Emanuel partner **Manisha M. Sheth** previously served as the Executive Deputy Attorney General for the Division of Economic Justice at the Office of the New York Attorney General, where she oversaw a number of divisions, including the Antitrust Bureau. Swedlow Decl., ¶ 10. Likewise, four members of the multi-state coalition pursuing antitrust claims against Facebook—Texas, Arizona, North Dakota, and Idaho—are Keller Lenkner's clients. And, after the various State Attorneys General and the FTC filed their antitrust suits against Facebook, the Quinn Emanuel and Keller Lenkner team in this case reached out to many of these public entities to establish positive working relationships. Swedlow Decl., ¶ 31. Our firms' strong relationships with these public entities will benefit the User Class as the private, State Attorneys General, and FTC actions proceed.

Where, as here, firms have worked constructively and cooperatively with other interested counsel, such professionalism promotes judicial economy and favors appointing those firms as interim co-lead class counsel. *See Bernal v. Netflix, Inc.*, No. 5:11-cv-00379-EJD, 2011 WL 13157369, at *3 (N.D. Cal. Aug. 12, 2011) (selecting firm as interim lead class counsel because, *inter alia*, "[t]he firm has also made an effort to bring together all counsel."). Quinn Emanuel and Keller Lenkner frequently litigate class actions (like this one) that require the management and coordination of numerous law firms and attorneys. If appointed as Interim Co-Lead User Class Counsel, we will

1  continue to work constructively with counsel for Facebook and cooperatively with counsel for other

2  User and Advertiser plaintiffs.  Swedlow Decl., ¶ 41.

3       **B.**    <u>The Diversity of the Quinn Emanuel and Keller Lenkner Team</u>

4       *The American Lawyer* has repeatedly recognized Quinn Emanuel as one of the "Top Firms for

5  Diversity" and has ranked Quinn Emanuel near the top 10 percent in its annual diversity survey

6  among the AmLaw 200 firms.  Swedlow Decl., ¶ 4.  The Human Rights Campaign Foundation has

7  also awarded Quinn Emanuel a score of 100 percent on its Corporate Equality Index, naming Quinn

8  Emanuel a "Best Place to Work for LGBTQ Equality."  *Id.*  In addition, Quinn Emanuel is the largest

9  U.S. law firm with a female named partner, and many of its practice groups and its branch offices are

10  headed by women and other diverse attorneys.  *Id.*  Many of Quinn Emanuel's female partners have

11  been named to *Law360*'s "Top Female Trial Attorneys," *The Recorder*'s "Women Leaders in Law,"

12  *Daily Journal*'s "Top Women Lawyers" and "Top 75 Women Litigators," *Benchmark*'s "Top 250

13  Women in Litigation," and *The American Lawyer*'s "Top 45 Women Litigators Under 45."  *Id.*  Keller

14  Lenkner also believes strongly in diversity.  As a relatively new firm having just celebrated its third

15  birthday, Keller Lenkner continues to build out its elite pool of talent which includes not only lawyers

16  and staff of different genders, ethnicities, and sexual orientations, but also of backgrounds not

17  typically found in a plaintiffs' litigation firm.  Both our firms firmly believe that the best ideas come

18  from the contributions of individuals with different backgrounds.  Indeed, the Quinn Emanuel and

19  Keller Lenkner team in this case includes members of different genders, ages, racial and ethnic

20  identities, and life experiences whose diversity will benefit the User Class.

21       **C.**    <u>Quinn Emanuel and Keller Lenkner are Committed to Maximizing Efficiencies</u>

22           <u>and Implementing Fee, Time, and Cost Controls</u>

23       The goal in appointing interim class counsel is to "achieve greater efficiency and clarity."  *In*

24  *re Seagate*, 2016 WL 3401989, at *2 (internal citation, quotation marks, and alteration omitted).  For

25  this reason, Quinn Emanuel and Keller Lenkner respectfully submit that no formal "committee"

26  structure is necessary for the User Class at this time.  Our firms each frequently collaborate with other

27  firms in class-action cases, and we anticipate that other firms will seek to continue working on these

28  cases going forward.  If authorized by the Court, we would delegate specific tasks to other firms on an

1  efficient and as needed basis to prosecute the User Class's claims.  *See Manual for Complex*
2  *Litigation*, Federal Judicial Center, § 40.22 at 741 (4th ed. 2004).

3       Quinn Emanuel and Keller Lenkner will take other steps to ensure the User Class's claims are
4  litigated efficiently.   Our firms have sophisticated technological capabilities, which we have
5  consistently utilized to reduce costs and—in recent times through completely remote means—open
6  new offices and achieve trial and arbitration successes.  *See* Exhs. C, D, E.  We also regularly employ
7  other case management strategies to streamline complex cases, and we are committed to implementing
8  fee, time, and cost controls to ensure efficiency in representing the User Class.   Consistent with this
9  Court's orders appointing interim class counsel in other cases, Mr. Swedlow and Mr. Postman will:
10 (1) perform a monthly review of all billing records for all staff, consultants, experts, and attorneys
11 performing work on behalf of the User Class, striking duplicative or inefficient billing; (2) require that
12 all billing be by task and that such billing be contemporaneous, meaning that billing for each task will
13 be recorded within 7 days of the task; and (3) ensure that only those law firms that the Court has
14 previously authorized will perform work on behalf of the User Class.   Should the assistance of
15 additional firms be required, Quinn Emanuel and Keller Lenkner will seek approval from the Court,
16 identifying the additional counsel, their background, the specific proposed tasks, and why such
17 additional assistance is required.  *See* Swedlow Decl., ¶¶ 48–49; Postman Decl., ¶¶ 16–18.

18      Litigating cases efficiently is part and parcel to Quinn Emanuel's and Keller Lenkner's success
19 in complex cases (like this one).   For example, in his declaration supporting the $1.87 billion
20 settlements that Quinn Emanuel helped secure as co-lead class counsel in the *CDS* case, the
21 mediator—the Honorable Daniel Weinstein (a retired San Francisco County Superior Court Judge)—
22 explained: "I would go so far as to say that, in 30-plus years of mediating high-stakes disputes, this
23 was *one of the finest examples of efficient and effective lawyering by plaintiffs' counsel that I have*
24 *ever witnessed*."  *In re Credit Default Swaps Antitrust Litig.*, Dkt. 447, ¶ 4 (emphasis added).  This
25 case is no different—Quinn Emanuel and Keller Lenkner will litigate the User Class's claims as
26 efficiently as possible and will implement the fee, time, and cost controls necessary to do so.

27
28

**D.**     <u>**Quinn Emanuel and Keller Lenkner Will Prioritize the User Class's Interests**</u>

When appointing interim class counsel, this Court has previously considered counsel's "[c]ommitment to prioritizing the interests of the putative class." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. Dec. 3, 2016), Dkt. 2 at 3.   Quinn Emanuel and Keller Lenkner have and will continue to prioritize the User Class's interests.

Consistent with the Court's consolidation order, we respectfully submit that appointing separate class counsel for the User Class, on the one hand, and for the Advertiser Class, on the other, will best serve each Class's respective interests.[7]  Once appointed, User Class Counsel and Advertiser Class Counsel can coordinate regarding pre-trial issues such as common discovery and strategy, which would promote efficiency while ensuring that each Class's interests are best represented.

Indeed, courts have recognized that appointing separate counsel for different classes of plaintiffs ensures that each class's interests are best represented.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262-NRB, 2011 WL 5007957, at *3 (S.D.N.Y. Oct. 18, 2011) (declining to appoint same interim lead counsel for multiple classes of purchasers because "[a] far more commonsense approach is to divide plaintiffs into two putative classes and appoint interim lead counsel for each class.  There is ample precedent for this approach at the pre-certification stage. In fact, the framework has been adopted specifically in the context of antitrust cases in which there are two distinct groups of plaintiffs[.]").[8]  This is because, among other reasons: (1) "two classes may be

---

[7]     Consistent with this approach, courts in the Northern District have appointed separate counsel for different plaintiff classes in other antitrust cases involving technology platforms such as Google and Apple.  *See In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792-JD (N.D. Cal. Dec. 11, 2020), Dkt. 79 (appointing counsel for developer class); *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-05761-JD (N.D. Cal. Dec. 16, 2020), Dkt. 128 (appointing different counsel for consumer class); *In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714-YGR (N.D. Cal. Apr. 9, 2012), Dkt. 34 (appointing counsel for consumer class); *Cameron et al v. Apple Inc.*, No. 4:19-cv-03074-YGR (N.D. Cal. Oct. 10, 2019), Dkt. 65 (appointing different counsel for developer class).

[8]     *See also In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 690 (9th Cir. 2011) (noting district court accepted proposal "that the 'direct' and 'indirect' cases be placed on coordinated but separate tracks for pretrial purposes" and recognizing district court appointed different lead counsel for each class); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 3:07-md-1827-SI (N.D. Cal. July 13, 2007), Dkt. 224 (appointing separate interim lead counsel for putative direct purchaser class on the one hand, and for putative indirect purchaser class, on the other).

differently positioned at various stages of the litigation, creating a potential conflict in their joint representation"; and (2) "because the two categories of plaintiffs may require different treatment in the event of settlement." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5007957, at *2. Appointing separate interim class counsel for the User Class, on the one hand, and for the Advertiser Class, on the other, would mitigate any risk of a conflict, potential or actual, between the Classes. *Compare In re Microsoft Corp. Antitrust Litig.*, 218 F.R.D. 449, 452 (D. Md. 2003) (denying motion to certify class of original equipment manufacturers because class counsel also represented a class of end-users, explaining that counsel's proposal to represent both classes was a "dual scenario" that placed "counsel in a position of irreconcilable conflict" since counsel could be placed in position of "arguing that different groups of their clients are the ones entitled to recover damages.").

Quinn Emanuel, Keller Lenkner, and our lawyers in this case have obtained record monetary recoveries for plaintiffs in class actions and antitrust cases. We have repeatedly demonstrated our personal and professional commitments to our class clients' best interests, which is why we have consistently been appointed to leadership positions in high-stake, complex class actions like this one. If appointed as Interim Co-Lead User Class Counsel, Quinn Emanuel and Keller Lenkner would continue to unflinchingly prioritize the User Class's interests. Should the Court determine that, at this juncture, appointment of the same interim class counsel for the Advertiser Class is appropriate, we would likewise prioritize the Advertiser Class's interests as well.

## CONCLUSION

For the foregoing reasons, the *Klein* Plaintiffs respectfully request that the Court appoint Stephen A. Swedlow, Warren Postman, and our respective firms—Quinn Emanuel and Keller Lenkner—as Interim Co-Lead Counsel for the User Class. In the alternative, should the Court determine that appointment of common class counsel for the User and Advertiser Classes is appropriate, the *Klein* Plaintiffs respectfully request that the Court appoint Mr. Swedlow, Mr. Postman, Quinn Emanuel, and Keller Lenkner as Interim Co-Lead Advertiser Class Counsel as well.

1    Dated: March 5, 2021                    Respectfully submitted,

2                                            /s/ Stephen A. Swedlow
     Stephen A. Swedlow (admitted *pro hac vice*)    Warren Postman (Bar No. 330869)
3      stephenswedlow@quinnemanuel.com         wdp@kellerlenkner.com
     **QUINN EMANUEL URQUHART & SULLIVAN, LLP**  Jason Ethridge (admitted *pro hac vice*)
4    191 N. Wacker Drive, Suite 2700            jason.ethridge@kellerlenkner.com
     Chicago, IL 60606-1881                   **KELLER LENKNER LLC**
5    (312) 705-7400                           1300 I Street, N.W., Suite 400E
                                              Washington, DC 20005
6    Kevin Y. Teruya (Bar No. 235916)         (202) 918-1123
       kevinteruya@quinnemanuel.com
7    Adam B. Wolfson (Bar No. 262125)         Ashley Keller (admitted *pro hac vice*)
       adamwolfson@quinnemanuel.com            ack@kellerlenkner.com
8    Brantley I. Pepperman (Bar No. 322057)   Ben Whiting (admitted *pro hac vice*)
       brantleypepperman@quinnemanuel.com      ben.whiting@kellerlenkner.com
9    **QUINN EMANUEL URQUHART & SULLIVAN, LLP**  Jason A. Zweig (admitted *pro hac vice*)
     865 South Figueroa Street, 10th Floor      jaz@kellerlenkner.com
10   Los Angeles, CA 90017-2543               **KELLER LENKNER LLC**
     (213) 443-3000                           150 N. Riverside Plaza, Suite 4270
11                                            Chicago, IL 60606
                                              (312) 741-5220
12
                                              *Attorneys for the Klein Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: March 5, 2021                    By   /s/ Stephen A. Swedlow
                                                          Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By   /s/ Stephen A. Swedlow
          Stephen A. Swedlow