Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

*Attorneys for the Klein Plaintiffs*

Warren Postman (Bar No. 330869)
  wdp@kellerlenkner.com
Jason Ethridge (admitted *pro hac vice*)
  jason.ethridge@kellerlenkner.com
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, DC 20005
(202) 918-1123

Ashley Keller (admitted *pro hac vice*)
  ack@kellerlenkner.com
Benjamin Whiting (admitted *pro hac vice*)
  ben.whiting@kellerlenkner.com
Jason A. Zweig (admitted *pro hac vice*)
  jaz@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN and SARAH GRABERT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation headquartered in California,<br><br>*Defendant.* | Case No. 5:20-cv-08570-LHK<br><br>Hon. Lucy H. Koh<br><br>Hearing Date:  March 18, 2021<br><br>**DECLARATION OF STEPHEN A. SWEDLOW IN SUPPORT OF *KLEIN* PLAINTIFFS' APPLICATION TO APPOINT QUINN EMANUEL URQUHART & SULLIVAN, LLP AND KELLER LENKNER LLC AS INTERIM CO-LEAD COUNSEL FOR THE USER CLASS** |

I, Stephen A. Swedlow, declare:

1.     I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and serve as lead counsel for Plaintiffs Maximilian Klein and Sarah Grabert ("the *Klein* Plaintiffs") in the case captioned *Klein et al v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK.  Warren Postman, of the law firm Keller Lenkner LLC ("Keller Lenkner"), serves as co-lead counsel for the *Klein* Plaintiffs.

2.     I respectfully submit this declaration in support of the *Klein* Plaintiffs' Application to appoint myself, Warren Postman, and our respective firms—Quinn Emanuel and Keller Lenkner—as interim co-lead User Class counsel.  I have been actively involved in this action, am familiar with the proceedings, and have personal knowledge of the matters stated herein.

**QUINN EMANUEL'S QUALIFICATIONS AND EXPERIENCE**

3.     Quinn Emanuel is the world's largest law firm devoted solely to business litigation, with over 800 attorneys in 25 offices spanning 10 countries and 4 continents.  Among other accolades, Quinn Emanuel has been named a "litigation powerhouse" by *The American Lawyer*, a "global force in litigation" by *The Wall Street Journal*, and one of "The Four Firms that GCs Fear The Most" by BTI Consulting Group (ten times).  *Benchmark Litigation* has named the firm "Tier One" in Antitrust, and we have received several repeat awards for the practice areas at issue in this case, including (among others) being named: "Antitrust Litigation Department of the Year" by *The Recorder* and "Class Action Group of the Year" by *Law360*.  True and correct copies of articles detailing these recognitions are attached hereto as **Exhibit A**.

4.     Quinn Emanuel is also the largest U.S. law firm with a female named partner, and many of its practice groups and its branch offices are headed by women and other diverse attorneys. The Human Rights Campaign Foundation has also awarded Quinn Emanuel a score of 100 percent on its Corporate Equality Index, naming Quinn Emanuel a "Best Place to Work for LGBTQ Equality." Many of Quinn Emanuel's female partners have been named to *Law360*'s "Top Female Trial Attorneys," *The Recorder*'s "Women Leaders in Law," *Daily Journal*'s "Top Women Lawyers" and "Top 75 Women Litigators," *Benchmark*'s "Top 250 Women in Litigation," and *The American Lawyer*'s "Top 45 Women Litigators Under 45."  *The American Lawyer* has repeatedly recognized

Quinn Emanuel as one of the "Top Firms for Diversity" and has ranked Quinn Emanuel near the top 10 percent in its annual diversity survey among the AmLaw 200 firms.

5.     As is particularly relevant to this case, Quinn Emanuel is a leader in both antitrust litigation and class-action litigation, including, in particular, antitrust class-action litigation like this. In connection with these cases, Quinn Emanuel has obtained billions of dollars in settlements and trial verdicts for hundreds of thousands of plaintiffs over the years.

6.     Quinn Emanuel's extraordinary success in antitrust and class-action litigation, on behalf of both plaintiffs and defendants, makes Quinn Emanuel and Keller Lenkner the team best qualified to lead the User Class in this case.

**The Quinn Emanuel Team in This Case.**

7.     I lead the *Klein* Plaintiffs' case along with my partners at Quinn Emanuel—Kevin Y. Teruya, Manisha Sheth, and Adam B. Wolfson—and our co-counsel at Keller Lenkner.  Below, I provide biographies summarizing some of our relevant experience.

8.     **Stephen A. Swedlow**: I am Co-Managing Partner of Quinn Emanuel's Chicago office. I have served as lead counsel in more than 20 trials.  I have tried—as lead trial counsel—two class actions to verdict, and represented litigants in over 100 class-action cases, and I have also achieved substantial class-action settlements on behalf of class members in various cases.  I was a Trial Lawyer of the Year finalist in 2003 for obtaining the largest civil verdict in Illinois history, and I have been named an Illinois "Super Lawyer" each year from 2006 through 2020.  I previously served as a law clerk to the Honorable Jerome Farris of the United States Court of Appeals for the Ninth Circuit.  My representative experiences include:

    a.     ***Health Republic Ins. Co. v. United States*, Case No. 1:16-cv-00259 (Fed. Cl.) and *Common Ground Healthcare Cooperative v. United States*, Case No. 1:17-cv-00877 (Fed. Cl.):**  I served as lead counsel representing certified classes of health insurers seeking recovery from the federal government based on the government's failure to make risk corridor payments in violation of Section 1342 of the Affordable Care Act.  Class members represented by Quinn Emanuel ultimately recovered **$3.7 billion** after the Quinn Emanuel

1  team, including myself and Mr. Wolfson, filed the first case on these issues in

2  the nation, setting forth the core legal and factual theory that the Supreme

3  Court ultimately blessed as correct in mid-2020.

4  b.  ***Hall-O'Neil et al v. Amazon Inc. et al*, Case No. 2:19-cv-00910 (W.D.**

5  **Wash.):**  I serve as co-lead counsel for a putative class of minors pursuing

6  claims against Amazon.  The minors allege that Amazon's Alexa Devices

7  recorded them without their consent.  The district court denied Amazon's

8  motion to compel arbitration of the minors' claims, and Amazon's appeal is

9  pending before the Ninth Circuit.

10  c.  ***SaurikIT, LLC v. Apple Inc.*, Case No. 4:20-cv-08733-YGR (N.D. Cal.):**  I

11  represent plaintiff Cydia—a software company that launched an app store for

12  the Apple iPhone—in an antitrust action against Apple.  Cydia alleges that

13  Apple has monopolized the iOS app distribution and iOS app payment

14  processing markets and engaged in unreasonable restraints of trade as well as

15  unfair competition.  The case is currently pending.

16  d.  ***IQVIA Inc. et al. v. Veeva Systems, Inc.*, Case Nos. 2:17-cv-00177-CCC**

17  **(D.N.J) and 2:19-cv-15517-CCC (D.N.J.):**  I represent plaintiff IQVIA—a

18  life science data company—in a series of lawsuits currently pending against

19  Veeva.  IQVIA is pursuing trade secret misappropriation claims against Veeva,

20  and defending against Veeva's antitrust counterclaims, brought under federal

21  and state (California) law.

22  e.  ***Apple Inc. v. Qualcomm* Inc., Case No. 3:17-cv-00108-GPC (S.D. Cal.):**  I

23  was trial counsel for Qualcomm in its multi-billion dollar litigation against

24  Apple.  In addition to the parties' contract, patent, and other claims at issue in

25  the case, Apple pursued antitrust claims against Qualcomm under federal and

26  state (California) law.  The case settled favorably during opening arguments.

27  f.  ***Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, Case No.**

28  **3:16-cv-07014-VC (N.D. Cal.):**  I was trial counsel on behalf of plaintiff

1    Oakland Bulk & Oversized Terminal, a real estate developer, in a bench trial

2    against the City of Oakland.  Following trial, the Court found in the plaintiff's

3    favor on every issue, holding that the City had breached its Development

4    Agreement with the plaintiff, and enjoining the enforcement of the City's

5    legislation proscribing coal from being handled at the terminal.

6    g.   ***KCBX Terminals Co. v. IEPA*, Case No. PCB 2014-110 (Illinois Pollution**

7    **Control Board); *Martin et al v. KCBX Terminals Company et al.*, Case No.**

8    **1:13-cv-08376 (N.D. Ill.):** I served as lead counsel on behalf of Defendants in

9    a number of lawsuits relating to the handling of petroleum coke and coal at

10   transfer terminals in Chicago.  I was lead counsel in a trial against the Illinois

11   Environmental Protection Agency, in which the Illinois Pollution Control

12   Board found in my client's favor on every issue.  In addition, I represented

13   Defendants in a class-action lawsuit in federal court, which concluded in a

14   favorable settlement for our clients.

15   h.   ***Harris et al v. comScore, Inc.*, Case No. 1:11-cv-05807 (N.D. Ill.):** I

16   represented comScore in one of the largest certified data privacy class actions

17   in the country, successfully negotiating a favorable settlement with counsel for

18   the class.

19   i.   ***Adaptix, Inc. v. Alcatel-Lucent USA, Inc. et al.*, Case No. 6:12-cv-00022-**

20   **RWS (E.D. Tex.):** I was co-lead trial counsel on behalf of Defendants Alcatel

21   Lucent, AT&T, Verizon, and Sprint, in a $100 million patent infringement

22   case.  At trial, Defendants won a **complete defense verdict** from the jury,

23   which found all of the asserted claims not infringed and otherwise invalid.

24   j.   ***Price et al v. Philip Morris, Inc.*, Case No. 00-L-112 (Ill. Cir. Ct.):** I served

25   as trial counsel for a class of consumers asserting consumer protection claims

26   against Philip Morris.  At trial, the class obtained **$10.1 billion**—the largest

27   verdict in the history of the Illinois court system.

28

9.    **Kevin Y. Teruya**:  Mr. Teruya is a partner in Quinn Emanuel's Los Angeles office. Mr. Teruya's practice focuses primarily on antitrust and unfair competition litigation, and he has been recognized as a "Super Lawyer" by *Southern California Super Lawyer* for years and one of the 500 leading plaintiff financial lawyers by *Lawdragon*.  Mr. Teruya has served as an officer of the Executive Committee of the Antitrust & Unfair Competition Law Section of the State Bar of California, an officer of the Executive Committee of the Antitrust Section of the Los Angeles County Bar Association, and as a member of the editorial board for the annual "California Antitrust and Unfair Competition Law" treatise.  Mr. Teruya previously served as a law clerk to the Honorable Herbert Y.C. Choy of the United States Court of Appeals for the Ninth Circuit.  Some of Mr. Teruya's representative experiences include:

a.    ***Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.):**  Mr. Teruya served as part of the trial team for defendant Micron Technology, Inc. in an antitrust action involving an alleged conspiracy to boycott certain computer memory chips.  Plaintiff Rambus sought **$4 billion—trebled to $12 billion**—from Micron.  After a three month trial, the jury rejected Rambus' claims, **awarding no damages**.

b.    ***Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525-LPS (D. Del.):**  Mr. Teruya served as counsel for plaintiff Social Ranger LLC in an antitrust action against Facebook.  The plaintiff, a technology company, asserted claims against Facebook for tying and monopolization in the market for virtual currency services on social game networks.  The case was resolved shortly before trial in 2017.

c.    ***FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.):**  Mr. Teruya served as part of a team that represented Fiat Chrysler Automobiles US LLC in a billion-dollar antitrust action against Yazaki Corporation and Yazaki North America, Inc.  This action was part of the multi-district litigation (*In re Automotive Parts Antitrust Litigation*) arising from the largest criminal antitrust investigation in U.S. history.  The action arose from a long-running

global conspiracy by Yazaki and its co-conspirators to fix prices, rig bids, and allocate customers for wire harnesses sold to original equipment manufacturers for automobiles.  The matter was resolved after summary judgment briefing in 2020.

d.   ***Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio):**  Mr. Teruya served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam industry.  In that case, which Mr. Teruya helped lead day-to-day, the Court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues.  Through Mr. Teruya's and the team's efforts, the class obtained more than **$430 million** in settlements.

e.   ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.):**  Mr. Teruya served as part of a team that represented Songkick, a startup innovator in the live music industry, which brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for artist presale ticketing services.  Through Mr. Teruya's and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

f.   ***Van Iderstine et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888-GW (C.D. Cal.):**  Mr. Teruya currently serves as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster.  The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing

1  and/or attempting to monopolize the relevant markets for primary and
2  secondary ticketing services for major concert venues, and by restraining
3  competition in those markets.  The case is currently pending.

4  g.  ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-**
5  **01247-HSG (N.D. Cal.):**  Mr. Teruya is part of the trial team representing
6  homebuilder plaintiffs against drywall manufacturers.  Plaintiffs allege that the
7  defendants conspired to fix the prices of drywall in the United States, and
8  plaintiffs seek damages (before trebling) in excess of $200 million.  This
9  action was part of multi-district litigation (*In re: Domestic Drywall Antitrust*
10  *Litigation*) then-pending in the United States District Court for the Eastern
11  District of Pennsylvania and was recently remanded back to the Northern
12  District of California for trial.

13  h.  ***In re: German Automotive Manufacturers Antitrust Litig., Case No. 3:17-***
14  **md-02796-CRB (N.D. Cal.):**  Mr. Teruya served as defense counsel for
15  Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-
16  action litigation involving claims that major German auto manufacturers
17  conspired to reduce innovation in their passenger vehicles throughout the
18  world.  The Court recently **dismissed—with prejudice**—the putative
19  consumer and auto dealers classes' claims.

20  i.  ***In re Cathode Ray Tube Antitrust Litig., Case No. 07-cv-05944-JST (N.D.***
21  **Cal.):**  Mr. Teruya served as part of the team that defended Mitsubishi Electric
22  Corporation and two of its U.S. subsidiaries in multiple antitrust class and
23  individual actions involving allegations of an international price-fixing
24  conspiracy spanning more than a decade in the multi-billion dollar market for
25  cathode ray tubes.

26  j.  ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 3:21-cv-01234-EMC (N.D. Cal.):**
27  Mr. Teruya serves as part of the team pursuing treble damages antitrust claims
28  against Visa and MasterCard based on their use of anti-competitive agreements

which limit competition and fix the interchange fees paid by merchants and payment processors.  The case is currently pending.

10.    **Manisha M. Sheth**: Ms. Sheth is a partner in Quinn Emanuel's New York office.  She is a seasoned trial lawyer with over 20 years of experience in both private practice and as a former federal state and prosecutor.  Ms. Sheth  recently served as the Executive Deputy Attorney General for the Economic Justice Division at the Office of the New York Attorney General, where she supervised all complex commercial investigations and civil enforcement actions in the areas of antitrust, data security and privacy, consumer frauds, securities, government fraud, and real estate finance.  In that role, Ms. Sheth was responsible for the decision to open an investigation, file an enforcement action, case development and strategy, and matter resolution, whether by trial or settlement.  Ms. Sheth was responsible for all civil and criminal antitrust matters in the State of New York, including supervising the Office of the New York Attorney General's Antitrust Bureau.  Among other accolades, Ms. Sheth was named in *Crain's New York Business* "Notable Women in Law" list (2021); *Lawdragon*'s 500 Leading Plaintiff Financial Lawyers Guide in business litigation (2019–2020); *Crain's New York Business* "40 under 40" list (2013); and *The National Law Journal*'s "Minority 40 under 40" list (2011).  Ms. Sheth previously served as a federal prosecutor for five years, during which time she indicted over thirty-five cases, conducted numerous trials, and argued several appeals before the United States Court of Appeals for the Third Circuit.  Ms. Sheth previously served as a law clerk to the Honorable William H. Pauley III of the United States District Court for the Southern District of New York.  Some of Ms. Sheth's representative experiences include:

a.    ***Federal Housing Finance Agency v. Nomura Holding America***, ***Inc. et al***, **Case No. 1:11-cv-06201-DLC (S.D.N.Y.):**  Ms. Sheth was part of the team that represented the Federal Housing Finance Agency ("FHFA") in its landmark Residential Mortgage-Backed Security ("RMBS") litigation against numerous financial institutions arising from its Conservatorship for Fannie Made and Freddie Mac, resulting in a total recovery of approximately **$23 billion**.  Ms. Sheth served as trial counsel in the case against Nomura Holdings Inc. and RBS Securities, Inc., and she and the trial team obtained an **$806**

**million** judgment on behalf of the FHFA which the United States Court of Appeals for the Second Circuit subsequently affirmed on appeal.

b. ***In the Matter of Royal Bank of Scotland*, (N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$500 million** settlement against the Royal Bank of Scotland regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

c. ***The People of the State of New York v. Sprint Communications, Inc. et al*, Case No. 103917/2011 (Sup. Ct. N.Y.):**  Ms. Sheth represented the State of New York in obtaining a record **$330 million** settlement against Sprint Communications, Inc. in groundbreaking False Claims Act litigation regarding Sprint's failure to collect and remit state and local sales taxes.

d. ***In the Matter of UBS Securities LLC et al*, (N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$230 million** settlement against UBS Securities regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

e. ***State Attorneys' General Antitrust Investigation Regarding London Interbank Offered Rate ("LIBOR"):***  On behalf of a multi-state group, Ms. Sheth helped obtain civil settlements against Deutsche Bank AG for **$220 million**, Barclays PLC for **$100 million**, Citibank NA for **$100 million**, and UBS AG for **$68 million**.

f. ***The People of the State of New York v. Charter Communications, Inc. et al*, Case No. 450318/2017 (Sup. Ct. N.Y.):**  Ms. Sheth represented the State of New York in an enforcement action against Charter Communications, Inc. and Spectrum Management Holding Company, f/k/a Time Warner Cable, obtaining a record-breaking **$174.2 million** settlement related to misrepresentations regarding internet speed, reliability, and access to content.

g.   *In the Matter of Wells Fargo & Company*, **(N.Y.O.A.G.):**   Ms. Sheth represented the State of New York in obtaining a **$65 million** settlement against Wells Fargo in connection with its cross-selling practices.

h.   *In the Matter of Bank of America Corp. et al*, **(N.Y.O.A.G.):**   Ms. Sheth represented the State of New York in obtaining a record-breaking **$42 million** settlement against Bank of America and Merrill Lynch regarding their fraudulent electronic trading practices.

i.   *State of New York ex rel. v. Harbringer Capital Partners Offshore Manager, L.L.C., et al*, **Case No. 100416/2015 (Sup. Ct. N.Y.):** Ms. Sheth represented the State of New York in its suit against a New York-based hedge fund manager, obtaining a **$30 million** settlement to resolve claims that the manager knowingly evaded New York State and New York City taxes.

j.   *In the Matter of Credit Suisse Securities (USA) LLC*, **(N.Y.O.A.G.):**   Ms. Sheth represented the State of New York in obtaining a **$10 million** settlement against Credit Suisse for fraudulent electronic trading practices.

k.   *In the Matter of Simon Property Group, Inc.*, **(N.Y.O.A.G.):**   Ms. Sheth represented the State of New York in its monopolization investigation into Simon Properties, developer of the Woodbury Commons Outlet Mall, obtain a civil settlement.

l.   *In the Matter of Taylor Garbage Service, Inc.*, **(N.Y.O.A.G.):**   Ms. Sheth helped obtain a civil settlement and criminal pleas against two trash hauling companies in Broome County, New York, regarding the companies' price-fixing and market allocation scheme.

m.   *Representation of Gilead Sciences, Inc.*:   Ms. Sheth represents Gilead Sciences in multiple cases arising under the False Claims Act and its state-law equivalents, which remain pending in multiple state and federal courts.

11.   **Adam B. Wolfson:** Mr. Wolfson is a partner in Quinn Emanuel's Los Angeles office who represents both plaintiffs and defendants in antitrust, class-action, and other litigation.   Mr.

Wolfson has been named a "Rising Star" in Class Actions by *Law360*, among the top 500 plaintiffs' financial lawyers in the nation by *Lawdragon*, and a Recommended Lawyer in Antitrust by *Legal 500 USA*.  Some of Mr. Wolfson's representative experiences include:

       a.     ***Health Republic Insurance Co. v. United States***, **Case No. 1:16-cv-00259 (Fed. Cl.):**  Mr. Wolfson served as part of the lead counsel team that represented a certified class of health insurers seeking recovery from the federal government based on the government's failure to make risk corridor payments in violation of Section 1342 of the Affordable Care Act.  Class members ultimately recovered **$3.7 billion** after Mr. Swedlow, Mr. Wolfson, and the Quinn Emanuel team filed the first case on these issues in the nation, setting forth the core legal and factual theory that the Supreme Court ultimately blessed as correct in mid-2020.

       b.     ***In re: 3M Combat Arms Earplug Products Liability Litig.***, **Case No. 3:19-md-2885 (N.D. Fla.):**  Mr. Wolfson serves on the Executive Committee in this multi-district litigation involving product liability and other claims on behalf of over 250,000 military veterans who suffered hearing loss and other injuries as a result of defective earplugs.

       c.     ***Polyurethane Foam Antitrust Litig.***, **Case No. 10-md-02196 (N.D. Ohio):**  Mr. Wolfson served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam industry.  In that case, which Mr. Wolfson helped lead day-to-day from the complaint forward, the Court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues.  Through Mr. Wolfson's and the team's effort, the class obtained more than **$430 million** in settlements.

d. ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al***, **Case No. 2:15-cv-09814 (C.D. Cal.):**  Mr. Wolfson served as part of a team that represented Songkick, a startup innovator in the live music industry, which brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for artist presale ticketing services.  Through Mr. Wolfson's and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

e. ***Van Iderstine et al v. Live Nation Entertainment, Inc. et al***, **Case No. 2:20-cv-03888-GW (C.D. Cal.):**  Mr. Wolfson currently serves as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster.  The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing and/or attempting to monopolize the relevant markets for primary and secondary ticketing services for major concert venues, and by restraining competition in those markets.  The case is currently pending.

f. ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al***, **Case No. 4:15-cv-01247-HSG (N.D. Cal.):**  Mr. Wolfson is part of the trial team representing homebuilder plaintiffs against drywall manufacturers.  Plaintiffs allege that the defendants conspired to fix the prices of drywall in the United States, and plaintiffs seek damages (before trebling) in excess of $200 million.  This action was part of multi-district litigation (*In re: Domestic Drywall Antitrust Litigation*) then-pending in the United States District Court for the Eastern District of Pennsylvania and was recently remanded back to the Northern District of California for trial.

g.  ***Mackmin et al v. Visa Inc. et al***, **Case No. 1:11-cv-01831 (D.D.C.):**  Mr. Wolfson currently serves as part of the team acting as co-lead interim class counsel for consumers in an antitrust action seeking remuneration for artificially-inflated, supra-competitive surcharges at bank-owned ATMs throughout the country.  The plaintiffs recently reached a settlement with three of the bank defendants in that case for **$66.7 million** and have fully briefed their motion for class certification, which remains pending as of this submission.  The plaintiffs continue to pursue claims against the remaining defendants for more than $1 billion, and Mr. Wolfson leads that case day-to-day.

h.  ***In re: German Automotive Manufacturers Antitrust Litigation***, **Case No. 3:17-md-02796-CRB (N.D. Cal.):**  Mr. Wolfson served as defense counsel for Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-action litigation involving claims that major German auto manufacturers conspired to reduce innovation in their passenger vehicles throughout the world.  The Court recently **dismissed**—**with prejudice**—the putative consumer and auto dealers classes' claims.

i.  ***SaurikIT, LLC v. Apple Inc.***, **Case No. 4:20-cv-08733-YGR (N.D. Cal.):**  Along with Mr. Swedlow, Mr. Wolfson currently serves as part of a team representing plaintiff Cydia—a software company that launched an app store for the Apple iPhone before Apple created its own—in an antitrust action against Apple.  Cydia alleges that Apple has monopolized the iOS app distribution and iOS app payment processing markets and engaged in unreasonable restraints of trade as well as unfair competition.  The case is currently pending.

j.  ***Transweb, LLC v. 3M Innovative Properties Company et al***, **Case No. 2:10-cv-04413-FSH (D.N.J.):**  Mr. Wolfson served as part of the trial team that represented plaintiff Transweb, LLC in an antitrust and patent dispute.  The

plaintiff prevailed at trial and obtained a rare *Walker Process* antitrust fraud verdict, including **$26 million** in antitrust damages.

     k.    ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 3:21-cv-01234-EMC (N.D. Cal.):** Mr. Wolfson serves as part of the team pursuing treble damages antitrust claims against Visa and MasterCard based on their use of anti-competitive agreements which limit competition and fix the interchange fees paid by merchants and payment processors.  The case is currently pending.

12.    My partners and I are supported by a team of associates and other legal professionals in this case who regularly handle extraordinarily complex and high-stakes litigation disputes.  For example, Quinn Emanuel associate **Michelle R. Schmit** regularly represents litigants in antitrust, class-action, and consumer privacy litigation, among other cases.  Ms. Schmit's representative experience includes *IQVIA Inc. et al v. Veeva Systems, Inc.*, Case Nos. 2:17-cv-00177-CCC (D.N.J) and 2:19-cv-15517-CCC (D.N.J.); *Apple Inc. v. Qualcomm* Inc., Case No. 3:17-cv-00108-GPC(S.D. Cal.); *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, Case No. 3:16-cv-07014-VC (N.D. Cal.); *KCBX Terminals Company v. IEPA*, Case No. PCB 2014-110 (Illinois Pollution Control Board); *Martin et al v. KCBX Terminals Company et al.*, Case No. 1:13-cv-08376 (N.D. Ill.); *Harris et al v. comScore, Inc.*, Case No. 1:11-cv-05807 (N.D. Ill.); and *Adaptix, Inc. v. Alcatel-Lucent USA, Inc. et al.*, Case No. 6:12-cv-00022-RWS (E.D. Tex.), each described in ¶ 8 above.

13.    Quinn Emanuel associate **Brantley I. Pepperman**—a former law clerk to the Honorable Christina A. Snyder of the United States District Court for the Central District of California—has, in addition to this case, litigated a number of other antitrust matters including (among others): *FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.); and *Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-01831 (D.D.C.).  Mr. Pepperman has previously served as a contributor to the "California Antitrust and Unfair Competition Law" treatise.

**<u>Quinn Emanuel's Success On Behalf of Antitrust Plaintiffs.</u>**

14.    When representing antitrust plaintiffs, Quinn Emanuel has recovered billions of dollars in both class actions and representations of plaintiffs in private litigation and "opt-out" cases.  In

addition to the cases identified above, below is a representative sample of some of Quinn Emanuel's other recent representations and successes on behalf of antitrust plaintiffs:

a.  ***In re: Credit Default Swaps Antitrust Litig.*, Case No. 13-md-02476 (S.D.N.Y.):** Quinn Emanuel acted as one of two co-lead class counsel in this multi-district litigation, in which the plaintiffs alleged the defendants entered into a conspiracy to shut down and not do business with a rival credit default swaps ("CDS") trading platform, which inflated the spread on CDS products. In this role, which involved crafting the initial complaints, conducting discovery, and moving for class certification, Quinn Emanuel obtained over **$1.87 billion** in settlements from the defendants.

b.  ***Alaska Electrical Pension Fund v. Bank of America N.A.,* Case No. 14-cv-7126-JMF (S.D.N.Y.):** Quinn Emanuel served as co-lead class counsel for a class of investors asserting antitrust claims against large investment banks and their interest rate swaps broker-dealer.  The Court gave final approval to settlements in excess of **$500 million**, described the case as "the most complicated" it had ever seen, and observed that it could "not really imagine" how much more complicated "it would have been if I didn't have counsel who had done as admirable a job in briefing it and arguing it" as Quinn Emanuel.

c.  ***In re SSA Bonds Antitrust Litig.*, Case No. 1:16-cv-03711-ER (S.D.N.Y.):** Quinn Emanuel was appointed to serve as co-lead class counsel in this antitrust action alleging that certain banks conspired to fix the prices of SSA bonds. The class secured settlements totaling **$95.5 million**, and final approval of the settlement is pending.

d.  ***In Re: Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, Case No. 1:14-md-02548 (S.D.N.Y.):**  Quinn Emanuel was appointed lead counsel, progressed past a motion to dismiss, and secured settlements worth **$60 million** in this antitrust class action alleging manipulation of the "London PM Gold Fix" and the price of gold derivatives worldwide.

e.  ***In re Interest Rate Swaps Antitrust Litig.,* Case No. 16-md-02704-JPO (S.D.N.Y.):** Quinn Emanuel was appointed co-lead class counsel in this class action asserting antitrust claims against financial institutions based on their refusal to open up interest rate swaps to exchange trading.  Plaintiffs' motion for class certification remains pending.

f.  ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* Case No. 05-md-1720-JG (E.D.N.Y.):** Quinn Emanuel represents, among others, The Home Depot as opt-out counsel in this multi-district litigation, where the plaintiffs allege that Visa, Mastercard, and several banks established anticompetitive rules and prices for interchange fees in the credit and debit card markets.  Quinn Emanuel successfully appealed the entry of a 2012 settlement that would have waived all merchants' future claims against the defendants, even though the merchants ostensibly had no ability to object to the settlement waiving those rights.  Following remand, Quinn Emanuel is now litigating The Homes Depot's and certain other opt-out plaintiffs' claims.

15.     Quinn Emanuel has also litigated antitrust claims against Facebook.  In 2014, Quinn Emanuel filed suit against Facebook on behalf of plaintiff Social Ranger LLC.  *See Social Ranger LLC v. Facebook Inc.,* Case No. 1:14-cv-01525-LPS (D. Del.), Dkt. 1.  In that case, Social Ranger—a software company that offered virtual currency services—alleged that Facebook used its dominance to monopolize the market for virtual currency services on social game networks.  *Id.*  During the course of the *Social Ranger* case, Quinn Emanuel and its co-counsel were able to compel the deposition of Facebook Chief Executive Officer Mark Zuckerberg.  *See Social Ranger*, Dkt. 206.  The case was ultimately resolved shortly before trial in 2017.

**Quinn Emanuel's Success on Behalf of Antitrust Defendants.**

16.     Unlike many plaintiffs' firms, Quinn Emanuel also regularly represents defendants in antitrust and class-action litigation, which provides Quinn Emanuel with unique experience and expertise.  On the defense side, Quinn Emanuel has achieved victories for companies—in a range of industries—accused of antitrust and competition law violations.  We have won dismissals by motion,

and we have negotiated excellent settlements for our clients, including several settlements not requiring any monetary payment.

17.    But we are also a firm with the genuine ability to take antitrust cases to trial, and we have done so with frequent success.  For example, Quinn Emanuel led the trial defense team for defendant Micron Technology, Inc. in an antitrust action involving an alleged conspiracy to boycott certain computer memory chips.  *See Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.).  Plaintiff Rambus sought **$4 billion**—**trebled to $12 billion**—from Micron. After a three month trial, the jury rejected Rambus' claims and **awarded no damages**.  A true and correct copy of a *Law360* article describing this victory—entitled "How They Won It: Quinn Wins $12B DRAM Trial for Micron"—is attached hereto as **Exhibit B**.

18.    Some of Quinn Emanuel's other successes representing antitrust defendants include:

a.    ***In re: German Automotive Manufacturers Antitrust Litig.*, Case No. 3:17-md-02796-CRB (N.D. Cal.):**   Quinn Emanuel was defense counsel for Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-action litigation involving claims that major German auto manufacturers conspired to reduce innovation in their passenger vehicles throughout the world.   The Court recently **dismissed**—**with prejudice**—the putative consumer and auto dealers classes' claims.

b.    ***In re Flash Memory Antitrust Litig.*, Case No. 4:07-cv-00086-SBA (N.D. Cal.):**  Quinn Emanuel defended Samsung in two price-fixing class actions, brought by direct and indirect purchasers of NAND flash memory.  Although classes had been certified in similar cases, Quinn Emanuel successfully defeated class certification motions in both actions.

c.    ***Palivos et al v. Federation Internationale Football Association et al*, Case No. 2:15-cv-01721-JCM (D. Nev.):**  Quinn Emanuel represented defendant FIFA in this antitrust class action that alleged FIFA was engaged in a conspiracy regarding the sale of hospitality packages to the 2014 World Cup.

1    Plaintiffs sought hundreds of millions of dollars.  Quinn Emanuel obtained

2    **dismissal with prejudice** at the pleading stage.

3    d.   ***Pro Music Rights, LLC v. Apple Inc. et al*, Case No. 3:20-cv-00309-JAM (D.**

4         **Conn.):**  Quinn Emanuel secured the dismissal of all claims against defendant

5         SoundCloud in this antitrust action alleging that SoundCloud and other

6         companies conspired to drive the plaintiff out of business by refusing to license

7         any of the plaintiff's works.  Quinn Emanuel obtained a stay of discovery

8         pending a motion to dismiss, and the Court granted SoundCloud's motion to

9         dismiss, instructing the plaintiff to file an amended complaint only if it had

10        "good faith grounds" to do so.  The Court **dismissed the plaintiff's case** after

11        the plaintiff failed to file an amended complaint.

12   e.   ***Golden Boy Promotions LLC et al v. Alan Haymon et al*, Case No. 2:15-cv-**

13        **03378-JFW (C.D. Cal.):**   Quinn Emanuel defended Haymon Sports—a

14        prominent boxing management company—in a $300 million antitrust lawsuit

15        filed by boxing promotion companies.  The plaintiffs alleged that Haymon

16        attempted to monopolize the market for Championship-Caliber Boxers through

17        a "tie-out" and a series of exclusive contracts.  Quinn Emanuel obtained

18        **summary judgment** on the plaintiffs' claims.

19   f.   ***Basic Your Best Buy, Inc.*, *v. DirecTV, Inc.*, Case No. BC467034 (Cal.**

20        **Super. Ct.):**  Quinn Emanuel defended DirecTV in this $83.7 million antitrust

21        lawsuit.  The plaintiff, a terminated retailer, asserted California Cartwright Act

22        Claims based on DirecTV's restrictions on its retailers.  Quinn Emanuel

23        prevailed in the trial court, obtaining **summary judgment**.  The California

24        Court of Appeal affirmed the trial court's grant of summary judgment.

25   g.   ***Novation Ventures, LLC v. The J.G. Wentworth Company, LLC et al*, Case**

26        **No. 2:15-cv-00954 (C.D. Cal.):**  Quinn Emanuel defended J.G. Wentworth in

27        this antitrust case where the plaintiff, a competitor in the structured settlement

28        market, challenged J.G. Wentworth's acquisition of Peach Holdings.  The

plaintiff also alleged that J.G. Wentworth's online advertising practices were themselves anticompetitive.   Quinn Emanuel obtained **dismissal** of the plaintiff's claims **with prejudice**.  The Ninth Circuit subsequently affirmed the district court's dismissal of the plaintiff's claims.

19.     Quinn Emanuel's "both sides of the v." practice provides what I believe are unique insights into both the plaintiffs' and defendants' bar, and benefits our clients no matter on which side of a dispute they find themselves.

## QUINN EMANUEL'S AND KELLER LENKNER'S RIGOROUS PRE-FILING INVESTIGATION AND FIRST-FILED COMPLAINT

20.     Quinn Emanuel began investigating Facebook's anticompetitive conduct in 2019.

21.     In connection with Quinn Emanuel's investigation, Quinn consulted with industry expert Dina Srinivasan, an antitrust and data privacy academic, in February 2019.  Srinivasan is the author of  *The Antitrust Case Against Facebook: A Monopolist's Journey Towards Pervasive Surveillance In Spite of Consumers' Preference for Privacy*, 16:1 Berkeley Bus. L. J. 39 (2019).

22.     Quinn Emanuel and Keller Lenkner continued to investigate Facebook's anticompetitive conduct, carefully reviewing the reports of various governmental tribunals, including:

    a.     *Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations*, prepared by the Antitrust Subcommittee of the United States House of Representatives;

    b.     *Disinformation and 'Fake News': Final Report*, prepared by the Digital, Culture, Media and Sport Committee of the United Kingdom's House of Commons; and

    c.     The German Federal Cartel Office's decision against Facebook: *Administrative Proceedings*, *Bundeskartellamt, B6-22/16*.

23.     Quinn Emanuel's and Keller Lenkner's investigation included an expansive review of other materials, including news articles, industry reports, academic and economic literature, and documents that Facebook produced in response to governmental inquiries.

24.     During this time, Quinn Emanuel and Keller Lenkner undertook an extensive legal analysis of the possible antitrust claims presented by Facebook's misconduct.   These discussions centered on, *inter alia*, defining the relevant markets and refining the theories for how Facebook's privacy practices: (a) constituted anticompetitive conduct under the antitrust laws, (b) reinforced the anticompetitive nature of Facebook's acquisition strategies, and (c) harmed the user class.

25.     Quinn Emanuel's and KL's exhaustive investigation culminated in Quinn Emanuel and Keller Lenkner filing the first of its kind antitrust complaint against Facebook on December 3, 2020. *See Klein et al. v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.), Dkt 1.

26.     It was not until nearly one week later, on December 9, 2020, that a coalition of State Attorneys General and the Federal Trade Commission each filed antitrust lawsuits against Facebook in the United States District Court for the District of Columbia.  *See State of New York et al v. Facebook, Inc.*, Case No. 1:20-cv-03589-JEB (D.D.C.), Dkt. 1; *Federal Trade Commission v. Facebook, Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C.), Dkt. 1.  It was not until after *that* that other law firms began to file pile-on suits against Facebook.

27.     Below is a table briefly describing the various antitrust class actions against Facebook pending before the Court:

| | **Putative Class(es)** | **Relevant Market(s)** |
|---|---|---|
| ***Klein***<br>5:20-cv-08570<br>(filed 12/3/2020) | The Antitrust Consumer Class and the Unjust Enrichment Class. | The Social Network Market and the Social Media Market in the United States. |
| ***Sherman***<br>5:20-cv-08721<br>(filed 12/9/2020) | Antitrust Facebook User Class; Unjust Enrichment Class; and Antitrust Facebook Advertiser Class. | The Social Network Market and the Social Media Market in the United States. |
| ***Kupcho***<br>5:20-cv-08815<br>(filed 12/11/2020) | The Antitrust Consumer Class and the Unjust Enrichment Consumer Class. | The Social Network Market and the Social Media Market in the United States. |
| ***Dames***<br>5:20-cv-08817<br>(filed 12/11/2020) | The Antitrust Class and the Unjust Enrichment Class. | The Personal Social Networking Market in the United States. |

|  | **Putative Class(es)** | **Relevant Market(s)** |
|---|---|---|
| **_Steinberg_** 5:20-cv-09130 (filed 12/17/2020) | The Antitrust Class and the Unjust Enrichment Class. | The Personal Social Networking Market in the United States. |
| **_Affilious_** 5:20-cv-09217 (filed 12/18/2020) | The Pre-2018 Nationwide Advertiser Class and the Post-2018 Nationwide Advertiser Class. | The Social Advertising Market in the United States. |
| **_Layser_** 5:21-cv-00337 (filed 1/13/2021) | Advertiser Purchaser Class. | The Social Network Market and the Social Advertising Market in the United States. |
| **_Garvin_** 5:21-cv-00618 (filed 1/26/2021) | The Nationwide Consumer Class and the California Consumer Class. | The Social Network Market and the Social Media Market in the United States. |
| **_Kovacevich_** 5:21-cv-01117 (filed 2/15/2021) | Nationwide Consumer Class. | The Social Network Market and the Social Media Market in the United States. |

28.     Many of these complaints—particularly those filed on behalf of putative classes of Facebook users (as opposed to advertisers that purchase Facebook's advertising services)—are substantially similar to the complaint that Quinn Emanuel and Keller Lenkner prepared and filed in the _Klein_ case.

29.     Some of these later complaints, including those filed in the _Kupcho_, _Garvin_, and _Kovacevich_ cases, are **_nearly identical_** to the complaint that Quinn Emanuel and Keller Lenkner filed in the _Klein_ case. _Compare Klein et al v. Facebook, Inc._, Case No. 5:20-cv-08570-LHK, Dkt. 1 (_Klein_ complaint) _with Kupcho v. Facebook, Inc._, Case No. 5:20-cv-08815-LHK, Dkt. 1 (_Kupcho_ complaint); _Garvin v. Facebook, Inc._, Case No. 5:21-cv-00618-LHK, Dkt. 1 (_Garvin_ complaint); _Kovacevich v. Facebook, Inc._, Case No. 5:21-cv-0117-LHK, Dkt. 1 (_Kovacevich_ complaint).

30.     In particular, the _Kupcho_ and _Garvin_ complaints even include the same custom hyperlinks that Quinn Emanuel and Keller Lenkner created to host some of the documents that we cited to in the _Klein_ complaint. For example, Quinn Emanuel's and Keller Lenkner's _Klein_ complaint

cites to the House Antitrust Subcommittee Report, which Keller Lenkner has made available through a link it hosts at https://kl.link/3jGISfK ("kl" for Keller Lenkner).  *Compare Klein*, Dkt. 1 at 3 n.2 (hyperlink in *Klein* complaint making document available through a link hosted by Keller Lenkner at https://kl.link/3jGISfK.); *with Kupcho*, Dkt. 1 at 4 n.2 (*Kupcho* complaint citing same document hosted at same Keller Lenkner hyperlink); *Garvin*, Dkt. 1 at 2 n.2 (*Garvin* complaint citing same document at same Keller Lenkner hyperlink).

### QUINN EMANUEL AND KELLER LENKNER HAVE WORKED COOPERATIVELY WITH OTHER COUNSEL AND WILL CONTINUE TO DO SO

31.     After various State Attorneys General and the Federal Trade Commission each filed antitrust suits against Facebook, Quinn Emanuel and Keller Lenkner reached out to the various State Attorneys General and the Federal Trade Commission to establish open channels of communication as the various private plaintiff and public entities cases proceed.  As a result of our outreach in this case, and by virtue of the number of attorneys at each of our firms that have served in the highest levels of state and federal governments, Quinn Emanuel and Keller Lenkner have strong relationships with these public entities.

32.     Quinn Emanuel and Keller Lenkner have also worked constructively with counsel for Facebook and cooperatively with counsel for the other User and Advertiser plaintiffs.  For example, prior to filing a motion to relate *Kupcho*, *Dames*, and *Steinberg* to *Klein* on January 4, 2021, Quinn Emanuel and Keller Lenkner reached out to counsel for these other plaintiffs and counsel for Facebook on December 30, 2020, to determine whether they would stipulate to the *Klein* Plaintiffs' motion.  *See Klein*, Dkt. 34-2, at ¶¶ 6–9.

33.     Counsel for the *Dames* and *Steinberg* plaintiffs agreed to stipulate to the *Klein* Plaintiffs' motion.  *See Klein*, Dkt. 34-2, at ¶¶ 6, 9.  Counsel for the *Kupcho* plaintiff indicated that the *Kupcho* plaintiff took no position on the *Klein* Plaintiffs' motion while the various motions to relate in *Reveal Chat* were pending before Judge Freeman.  *Id.* ¶ 8.

34.     After Judge Freeman denied the various motions to relate in *Reveal Chat* on January 21, 2021, Quinn Emanuel and Keller Lenkner again reached out to counsel for the *Kupcho*, *Dames*, and *Steinberg* plaintiffs and counsel for Facebook on January 22, 2021, proposing a solution that

addressed case management issues such as the proper assignment of these cases to this Court, the filing of a consolidated complaint, and allowing Facebook to respond to a consolidated complaint instead of any individual complaint.

35.     Between January 23 and January 24, 2021, counsel for the *Kupcho*, *Dames*, and *Steinberg* plaintiffs agreed to Quinn Emanuel's and Keller Lenkner's proposal.  Quinn Emanuel and Keller Lenkner further discussed the proposal with counsel for the *Kupcho*, *Dames*, and *Steinberg* plaintiffs during a group discussion on January 27, 2021, and Quinn Emanuel and Keller Lenkner took the lead in reducing the agreed-upon proposal to writing.

36.     Quinn Emanuel and Keller Lenkner likewise discussed the proposal with counsel for Facebook during a telephonic conference on January 27, 2021.

37.     On January 31, 2021, Quinn Emanuel and Keller Lenkner circulated the proposal to counsel for plaintiffs in all of the then-pending User and Advertiser cases.

38.     Between January 31, 2021, and February 8, 2021, Quinn Emanuel and Keller Lenkner had continued discussions with counsel for various of the other User and Advertiser plaintiffs regarding Quinn Emanuel's and Keller Lenkner's proposal.

39.     On February 9, 2021, the Court issued an order addressing the relation of cases and setting a schedule for the appointment of class counsel, among other dates.

40.     Following the Court's order, and in an effort to work cooperatively with counsel for other the other User and Advertiser plaintiffs, Quinn Emanuel and Keller Lenkner have continued to build consensus among the various User and Advertiser plaintiffs regarding case management issues.

41.     Should the Court appoint me, Warren Postman, and our respective firms—Quinn Emanuel and Keller Lenkner—as Interim Co-Lead User Class Counsel, we will continue to work cooperatively with other counsel.

## QUINN EMANUEL AND KELLER LENKNER HAVE ALREADY RETAINED AND ARE CONSULTING WITH RENOWNED EXPERTS

42.     Litigating the User Class's claims will required the support of experts.  Quinn Emanuel and Keller Lenkner have already retained and consulted with several renowned experts with extensive academic and government backgrounds who would opine on liability and damages issues.

43.     In addition, should Quinn Emanuel and Keller Lenkner be appointed, Dina Srinivasan, a retained consultant, will continue to provide important industry expertise regarding social media platforms, social networks, data privacy issues, and other critical matters.

## COMMITMENT TO FEE, TIME, AND COST CONTROLS

44.     I, Warren Postman, and the other Quinn Emanuel and Keller Lenkner attorneys pursing this case are committed to litigating the User Class's claims as efficiently as possible.

45.     Quinn Emanuel and Keller Lenkner each have renowned technological capabilities that we have utilized to reduce costs.

46.     In recent times, including during the COVID-19 pandemic, Quinn Emanuel has taken advantage of these technological capabilities to—by completely remote means—open new offices and prevail at trial and in arbitrations.

47.     Quinn Emanuel's use of such technology has been recognized in various legal publications, including *Law360*, *The National Law Journal*, and *The American Lawyer*.  A true and correct copy of the *Law360* article entitled "10 Tips For A Successful Remote Arbitration Hearing" is attached hereto as **Exhibit C**.  A true and correct copy of *The National Law Journal* article entitled "In Their Words: How Lawyers Are Handling Virtual Trials" is attached hereto as **Exhibit D**.  A true and correct copy of *The American Lawyer* article entitled "Learning From the Pandemic, Quinn Emanuel Will Now Hire Attorneys Outside Its Footprint" is attached hereto as **Exhibit E**.

48.     I, Warren Postman, and the other Quinn Emanuel and Keller Lenkner attorneys pursuing this case are familiar with the Court's expectations regarding attorneys' fees in class actions, as reflected in the Court's orders appointing interim class counsel in other cases.

49.     Should the Court appoint Quinn Emanuel and Keller Lenkner as Interim Co-Lead User Class Counsel, Mr. Postman and I will:

    a.     Perform a monthly review of all billing records for all staff, consultants, experts, and attorneys performing work on behalf of the User Class, striking duplicative or inefficient billing.

    b.     Require that all billing be by task, and that such billing be contemporaneous, meaning that billing for each task will be recorded within 7 days of the task.

c.    Ensure that only those law firms that the Court has previously authorized will perform work on behalf of the User Class.  Should the assistance of additional firms be required, Quinn Emanuel and Keller Lenkner will seek approval from the Court, identifying the additional counsel, their background, the specific proposed tasks, and why such additional assistance is required.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of March 2021 in Chicago, Illinois.

By   */s/ Stephen A. Swedlow*

Stephen A. Swedlow