# EXHIBIT B



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# How They Won It: Quinn Wins $12B DRAM Trial For Micron

By **Ben James**

Law360, New York (December 14, 2011, 8:49 PM EST) -- When Rambus Inc.'s $12 billion antitrust case against Micron Technology Inc. over dynamic random access memory went to trial, Quinn Emanuel Urquhart & Sullivan LLP turned to independent witnesses to support Micron's claim that Rambus' RDRAM product fell out of favor due to inherent flaws, not an illegal conspiracy.

Rambus sued Micron, Hynix Semiconductor Inc., Infineon AG and others in California court in 2004, claiming that the defendants had violated state antitrust law by conspiring to muscle Rambus' RDRAM out of the market, and inflating the price of RDRAM while lowering the price of the defendants' competing DDR technology.

The stakes were high. According to Rambus, the defendants blocked its memory product from mainstream acceptance and cost the plaintiff nearly $4 billion in lost profits. Under California's antitrust statute — the Cartwright Act — that damages figure could have been tripled had the jury found in Rambus' favor.

But a Quinn Emanuel team led by William Price — co-chair of the firm's national litigation group — made sure that didn't happen. Because of settlements, the trial went forward against only Micron and Hynix, and in June, what would turn out to be a three-month trial got under way.

In November, after eight weeks of deliberation, the jury found that Rambus had not sufficiently proved its case that Micron and Hynix engaged in concerted and unlawful efforts to eliminate competition and stifle innovation.

Defending the case was made more challenging by a previous and well-publicized federal probe into price-fixing in the DRAM industry, Price pointed out.

"We knew that they would believe that Micron had engaged in price-fixing activity," Price said of the jury in the Rambus case.

The U.S. Department of Justice which began investigating the activities of memory-chip makers in 2002 after computer manufacturers complained that inflated DRAM pricing was hindering their success in the market. Micron cooperated in that probe, which led to the Samsung Electronics Co. Ltd., Hynix and Infineon pleading guilty to price-fixing and coughing up hundreds of millions of dollars in fines.

The challenge for the defense was to draw a distinction between the specific allegations made by Rambus and the price-fixing allegations and admission that had already made headlines.

"Given all that, our game plan was to convince the jury that the reason RDRAM failed to become mainstream wasn't because of a conspiracy or price-fixing," Price said.

In his closing argument, Price likened Rambus to "ghost riders" who board city buses after a crash and claim to have been hurt in the accident.

Quinn Emanuel decided to directly confront the prior conduct issue, and concede that Micron had engaged in some past wrongful activity, according to Price. But Price also pointed out that that misconduct didn't relate to Rambus' allegations.

When the tech bubble burst, some memory-chip makers got together to try to slow down their losses, but that had nothing to do with any alleged plot to hurt Rambus, Price said. Rambus would actually have been helped by that alleged price-fixing because it would have raised prices on memory chips that competed with Rambus' technology, he told the jury.

The defense strategy for delineating between the Justice Department's price-fixing probe and the Rambus suit involved putting on credible witnesses from companies like Apple Inc. and Intel Corp. that didn't have a stake in the case's outcome and could objectively testify that RDRAM wasn't right for the mainstream market, Price explained.

It was an effective move, said Kenneth Nissly of O'Melveny & Myers LLP, who represented Hynix in the matter.

"That testimony of independent, third-party witnesses was important in convincing the jury that there was no conspiracy as alleged by Rambus," said Nissly, who said that O'Melveny and Quinn Emanuel cooperated with each other during the case on issues where they had a common interest.

"The Quinn guys are fine lawyers," Nissly added. "They did a great job."

Some of the trial's most compelling testimony came from Intel engineer Paul Fahey, Price said. Intel, which dominated the processor market, said in 1996 that it's next generation processor would work only with RDRAM chips, but after getting better acquainted with Rambus over the next few years, decided to go another way, according to Price.

"Rambus' case hinged on why Intel changed its mind and moved away from RDRAM," Quinn Emanuel partner Jon Steiger said. "Yet Rambus didn't call one live Intel witness to support their claim. That omission was telling."

Fahey was in charge of making RDRAM technology work and getting it to market, and was one of several Intel employees who worked "day and night" on RDRAM, Price said.

Intel workers were extremely dedicated to the RDRAM project, and felt that their company could lose a great deal of business to competitor Advanced Micro Devices Inc. if it fell through, Fahey said. Intel workers had to take medical leaves of absence, and Fahey saw colleagues whose marriages were ruined because they were working so hard, he said.

But people at Rambus never seemed that concerned, which puzzled Fahey, he said. Fahey concluded that Rambus had a Plan B — litigation — to turn to if RDRAM didn't pan out.

Price, a veteran trial lawyer, called Fahey's testimony "probably the most emotional testimony I've ever seen."

"He felt betrayed," Price said.

In November, Rambus said it was reviewing its options for challenging the verdict.

Micron is represented in the Rambus suit by William Price, Jon Steiger, Jon Cederberg, Kevin Teruya and Patrick Shields of Quinn Emanuel Urquhart & Sullivan LLP.

The case is Rambus Inc. v. Micron Technology Inc. et al., case number CGC-04-431105, in the Superior Court of the State of California, County of San Francisco.

--Editing by Andrew Park.

All Content © 2003-2021, Portfolio Media, Inc.