**AHDOOT & WOLFSON, PC**
Tina Wolfson (CA 174806)
Robert Ahdoot (CA 172098)
Theodore W. Maya (CA 223242)
Rachel Johnson (CA 331351)
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: 310-474-9111
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com
rjohnson@ahdootwolfson.com

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
David R. Scott (*pro hac vice* forthcoming)
Kristen M. Anderson (CA 246108)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
david.scott@scott-scott.com
kanderson@scott-scott.com

[Additional counsel on signature page.]

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
Austin B. Cohen (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Telephone: 215-592-1500
kverrier@lfsblaw.com
acohen@lfsblaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 20-CV-08570-LHK <br><br> **ADVERTISER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND EXECUTIVE COMMITTEE TO REPRESENT PROPOSED ADVERTISER CLASS** <br><br> Date:  March 18, 2021 <br> Time: 1:30 p.m. <br> Courtroom:  8 |
| VICKIE SHERMAN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No. 20-CV-08721-LHK |

| | |
|---|---|
| RACHEL BANKS KUPCHO, | Case No. 20-CV-08815-LHK |
| Plaintiffs, | |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| JESSICA L. LAYSER, | Case No. 21-CV-00337-LHK |
| Plaintiffs, | |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| AFFILIOUS, INC., et al., | Case No. 20-CV-09217-LHK |
| Plaintiffs, | |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| DEBORAH DAMES, et al., | Case No. 20-CV-08817-LHK |
| Plaintiffs, | |
| vs. | |
| FACEBOOK, INC., | |
| Defendant. | |
| CHARLES STEINBERG, | Case No. 20-CV-09130-LHK |
| Plaintiffs, | |
| vs. | |
| FACEBOOK, INC., | |
| Defendant | |

1   RITA GARVIN,                                    Case No. 21-CV-00618-LHK

2                              Plaintiffs,

3           vs.

4   FACEBOOK, INC.,

5                              Defendant.

6   JOE KOVACEVICH,                                 Case No. 21-CV-01117-LHK

7                              Plaintiffs,

8           vs.

9   FACEBOOK, INC.,

10                             Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on March 18, 2021, at 1:30 p.m. in the Courtroom of the Hon. Lucy H. Koh of the United States District Court for the Northern District of California, San Jose Division, located within the Robert F. Peck Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, in Courtroom 8, 4th Floor, Plaintiffs Katherine Loopers, Jarred Johnson, Affilious, Inc., Jessyca Frederick, NJ Premier Inc., Timothy Mills, Mark Young, Danny Collins, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, MarQuisha Cork, Jessica L. Layser, and Mark K. Wasvary, P.C. (collectively, "Advertiser Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23(g)(3) to appoint:

- Ahdoot & Wolfson, PC, Scott+Scott Attorneys at Law LLP, and Levin Sedran & Berman LLP as interim co-lead counsel for the proposed advertiser class (collectively, "Proposed Advertiser Counsel"), and

- Bathaee Dunne LLP and Reinhardt Wendorf & Blanchfield to serve as members of an executive committee on behalf of the proposed advertiser class,

for the following related and consolidated advertiser matters and all subsequently filed related advertiser matters:

- *Sherman v. Facebook, Inc.*, No. 5:20-cv-8721-LHK (N.D. Cal.)

- *Affilious, Inc. v. Facebook, Inc.*, No. 3:20-cv-09217-LHK (N.D. Cal.)

- *Layser v. Facebook, Inc.*, No. 5:21-cv-00337-LHK (N.D. Cal.)

- *Wasvary v. Facebook, Inc.*, No. 3:21-cv-01518 (N.D. Cal.)

Advertiser Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying [Proposed] Order Appointing Interim Co-Lead Counsel and Executive Committee to Represent Proposed Advertiser Class, the attached Declarations of Tina Wolfson, Kristen M. Anderson, and Keith J. Verrier in Support of Advertiser Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel and Executive Committee to Represent Proposed Advertiser Class, and such other written and oral arguments as may be presented to the Court.

1   DATED:  March 5, 2021                    **AHDOOT & WOLFSON, PC**

2                                            */s/ Tina Wolfson*

3                                            Tina Wolfson (CA 174806)
                                            Robert Ahdoot (CA 172098)

4                                            Theodore W. Maya (CA 223242)
                                            Rachel Johnson (CA 331351)

5                                            2600 West Olive Avenue, Suite 500
                                            Burbank, CA 91505

6                                            Telephone: 310-474-9111
                                            Facsimile:  310-474-8585

7                                            twolfson@ahdootwolfson.com
                                            rahdoot@ahdootwolfson.com

8                                            tmaya@ahdootwolfson.com
                                            rjohnson@ahdootwolfson.com

9

10                                           *Attorneys for Katherine Loopers and Jarred Johnson*

11                                           **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                            David R. Scott (*pro hac vice* forthcoming)

12                                           Kristen M. Anderson (CA 246108)
                                            The Helmsley Building

13                                           230 Park Avenue, 17th Floor
                                            New York, NY 10169

14                                           Telephone: 212-233-6444
                                            Facsimile:  212-233-6334

15                                           david.scott@scott-scott.com
                                            kanderson@scott-scott.com

16
                                            Christopher M. Burke (CA 214799)

17                                           David H. Goldberger (CA 225869)
                                            Yifan (Kate) Lv (CA 302704)

18                                           600 W. Broadway, Suite 3300
                                            San Diego, CA 92101

19                                           Telephone: 619-233-4565
                                            Facsimile:  619-233-0508

20                                           cburke@scott-scott.com
                                            dgoldberger@scott-scott.com

21                                           klv@scott-scott.com

22                                           Patrick J. McGahan (*pro hac vice*)
                                            Michael P. Srodoski (*pro hac vice*)

23                                           156 South Main Street, P.O. Box 192
                                            Colchester, CT 06415

24                                           Telephone: 860-537-5537
                                            Facsimile:  860-537-4432

25                                           pmcgahan@scott-scott.com
                                            msrodoski@scott-scott.com

26
                                            *Attorneys for Plaintiffs Affilious, Inc., Jessyca*

27                                           *Frederick, NJ Premier Inc., Timothy Mills, Mark*
                                            *Young, Danny Collins, Joshua Jeon, 406 Property*

28                                           *Services, PLLC, Mark Berney, and MarQuisha*
                                            *Cork*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
Austin B. Cohen (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Telephone: 215-592-1500
Facsimile:  215-592-4663
kverrier@lfsblaw.com
acohen@lfsblaw.com

*Attorneys for Plaintiffs Jessica L. Layser*

**BATHAEE DUNN LLP**
Yavar Bathaee (CA 282388)
Edward M. Grauman (*pro hac vice* forthcoming)
Andrew C. Wolinsky (*pro hac vice* forthcoming)
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: 332-205-7668
yavar@bathaeedunn.com
egrauman@bathaeedunne.com
awolinsky@bathaeedunne.com

Brian J. Dunne (CA 275689)
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: 213-462-2772
bdunne@bathaeedunne.com

*Attorneys for Plaintiffs Affilious, Inc., Jessyca Frederick, NJ Premier Inc., Timothy Mills, Mark Young, Danny Collins, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and MarQuisha Cork*

**REINHARDT WENDORF & BLANCHFIELD**
Garrett D. Blanchfield (*pro hac vice* forthcoming)
Brant Penney (*pro hac vice* forthcoming)
332 Minnesota Street, Suite W1050
St. Paul, MN 55101
Telephone: 651-287-2100
Facsimile:  651-287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiff Mark K. Wasvary, P.C.*

- 3 -

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 3

    A.     The Court Should Appoint Separate Interim Lead Counsel for the
        Advertiser and User Classes ............................................................................. 3

    B.     The Court Should Appoint Ahdoot Wolfson, Scott+Scott, and Levin
        Sedran & Berman as Interim Co-Lead Counsel for the Advertiser Class,
        and Bathaee Dunne and Reinhardt Wendorf & Blanchfield as Members of
        an Executive Committee ..................................................................................... 6

        1.     Proposed Advertiser Counsel Have Extensive Experience in
            Handling Class Actions, Including Antitrust Class Actions and
            Consumer Class Actions Involving Online Digital Platforms and
            Knowledge of the Applicable Law .......................................................... 8

            a.     Ahdoot & Wolfson, PC .................................................................. 9

            b.     Scott+Scott ................................................................................. 11

            c.     Levin Sedran & Berman .............................................................. 14

        2.     Proposed Advertiser Counsel Performed Substantial Work
            Identifying and Investigating the Claims in this Action ......................... 17

        3.     Proposed Advertiser Counsel Have the Necessary Resources to
            Properly Protect the Interests of the Proposed Advertiser Class ............. 18

        4.     A Plaintiffs' Executive Committee Is Appropriate .................................. 19

        5.     The Proposed Leadership Structure Ensures Diverse
            Representation ......................................................................................... 21

III.   CONCLUSION .......................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2
**Pages**

3

### <u>Cases</u>

4
*Alaska Electrical Pension Fund v. Bank of America, N.A.*,
5
    No. 14-cv-7126 (JMF) (S.D.N.Y.) ................................................................. 12, 13, 14, 18

6
*Alvarez v. Sirius XM Radio Inc.*,
    No. 2:18-cv-08605-JVS-SS (C.D. Cal.) ................................................................. 9

7
*Apple Inc. Device Performance Litig.*,
8
    No. 5:18-md-2827-EJD (N.D. Cal.) ....................................................................... 9

9
*Bartling v. Apple Inc.*,
    No. 5:18-cv-00147-EJD, 2018 WL 4804735 (N.D. Cal. Apr. 27, 2018) ........................ 7

10
*Cameron v. Apple Inc.*,
    No. 4:19-cv-3074-YGR (N.D. Cal.) ....................................................................... 5

11
*City of Providence, Rhode Island v. AbbVie Inc.*,
12
    No. 20-CV-5538 (LJL), 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020) ........................ 22

13
*Dahl v. Bain Capital Partners, LLC*,
    No. 07-cv-12388 (WGY) (D. Mass.) ................................................................. 12, 13, 14

14
*Dental Supplies Antitrust Litig.*,
    No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.) ............................................................. 9
15

*Eck v. City of Los Angeles*,
16
    No. BC577028 (L.A. Cnty. Super. Ct.) ................................................................. 10

17
*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-01775-BMC, MDL No. 1775 (E.D.N.Y.) ........................................... 15, 17, 19

18
*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
19
    No. 2:19-md-2921-BRM (D.N.J.) ....................................................................... 6

20
*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
    No. 2:19-md-2904-MCA-MAH (D.N.J.) ............................................................. 6

21
*In re American Express Anti-Steering Rules Antitrust Litig. (II)*,
    No. 11-MD-02221(E.D.N.Y.) ............................................................................. 21
22

*In re American Express Consolidated Merchants Litig.*,
23
    No. 04-CV-00366 (S.D.N.Y.) ............................................................................. 21

24
*In re Animation Workers Antitrust Litig.*,
    No. 5:14-cv-04062-LHK (N.D. Cal. Nov. 20, 2014) ................................................ 8

25
*In re Apple iPhone Antitrust Litig.*,
26
    No. 11-cv-6714 (N.D. Cal.) ................................................................................. 5

27
*In re Automotive Parts Antitrust Litig.*,
    No. 12-md-02311-SFC-RSW, MDL No. 2311 (E.D. Mich.) ...................................... 16

28

- ii -

*In re Bromine Antitrust Litig.*,
No. IP 99-9310-C-B/S, (S.D. Ind.) ............................................................ 21

*In re Capacitors Antitrust Litig.*,
No. 14-cv-03264-JD (N.D. Cal.) .......................................................... 16, 17

*In re Cattle Antitrust Litig.*,
No. 19-cv-01222 (JRT-HB) (D. Minn.) ...................................................... 13

*In re Chinese-Manufactured Drywall Product Liability Litig*,
424 F. Supp. 3d 456 (E.D. La. 2020) ........................................................ 17

*In re Chinese-Manufactured Drywall Product Liability Litig.*,
No. 09-md-02047-EEF-JCW, MDL No. 2047 (E.D. La.) ................................ 14, 18, 19

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
MDL No. 1674, 2011 WL 4382942 (W.D. Pa. Sept. 20, 2011) ........................... 7

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01-md-01409, MDL No. 1409 (WHP) (S.D.N.Y.) ..................................... 14

*In re: Diet Drug Product Liability Litig.*,
No. 98-cv-20626-HB, MDL No. 1203 (E.D. Pa.) ........................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. 02-md-1486 (PJH) (N.D. Cal. July 19, 2005) ........................................... 4

*In re Elec. Carbon Prod. Antitrust Litig.*,
No. 03-cv-2182, MDL No. 1514 (D.N.J.) .............................................. 15, 16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
No. 03-md-01542-SRU, MDL No. 1542 (D. Conn.) .................................. 6, 15, 16

*In re Facebook Biometric Info. Privacy Litig.*,
No. 15-cv-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ........................ 8

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
 No 13-cv-7789 (LGS) (S.D.N.Y) ................................................. 6, 12, 13, 14

*In re Google Play Consumer Antitrust Litig.*,
No. 3:20-cv-5761-JD (N.D. Cal.) .............................................................. 5

*In re Google Play Developer Antitrust Litig.*,
No. 3:20-cv-5792-JD (N.D. Cal.) .............................................................. 5

*In re Graphite Electrodes Litig.*,
No. 10-md-1244-NS, MDL No. 1244 (E.D. Pa.) ........................................... 17

*In re GSE Bonds Antitrust Litig.*,
No. 19-cv-1704 (JSR) (S.D.N.Y.) ......................................................... 13, 14

*In re High-Tech Employee Antitrust Litig.*,
289 F.R.D. 555, 584 (N.D. Cal. 2013) ...................................................... 19

*In re: Industrial Silicon Antitrust Litig.*,
No. 95-2104 (W.D. Pa.) ....................................................................... 21

*In re Korean Air Lines Co. Antitrust Litig.*,
    642 F.3d 685 (9th Cir. 2011) ................................................................................... 4

*In re Korean Air Lines Co. Antitrust Litig.*,
    No. 07-md-01891 (SJO) (C.D. Cal.) .......................................................................... 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 NRB, 2011
    WL 5007957 (S.D.N.Y. Oct. 18, 2011) ................................................................. 4, 5

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    No. 16-md-2687-MCA-JAD, MDL No. 2687 (D.N.J.) ............................................. 16

*In re Literary Works in Electronic Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) ..................................................................................... 5

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ..................................................................................... 5

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    No. 05-cv-1720, MDL No. 1720 (MKB) (JO) (E.D.N.Y.) ....................................... 14

*In re: Potash Antitrust Litig.*,
    No. 3-93-197 (D. Minn.) ........................................................................................ 21

*In re Qualcomm Antitrust Litig.*,
    No. 17-md-2773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017) ................. 19

*In re Seagate Tech. LLC Litig.*,
    No. 16-CV-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016) ...................... 7

*In re: The Vioxx Product Liability Litig.*,
    No. 05-md-01657-EEF-DEK, MDL No. 1657 (E.D. La.) ....................................... 15

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    No. 9:20-md-2924-RLR (S.D. Fla. May 5, 2020) ................................................... 22

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ............................................................................... 21

*Robertson v. Sea Pines Real Estate Co.*,
    679 F.3d 278 (4th Cir. 2012) ................................................................................. 21

*Ross v. Am. Express Co.*,
    No. 04-cv-5723, MDL No. 1409 (WHP) (S.D.N.Y) ............................................... 13

*Ross v. Bank of Am., N.A.*,
    No. 05-cv-7116, MDL No. 1409 (WHP-JCF) (S.D.N.Y.) ...................................... 13

*Sutton v. Hoffman La Roche, Inc.*,
    No. ES-L-008724-14 (N.J. Super.) ......................................................................... 17

*United Wisconsin Grain Producers, LLC, et al. v. Archer Daniels Midland Co.*,
    No. 20-cv-2314 (C.D. Ill.) ....................................................................................... 6

## Other Authorities

*Guidelines and Best Practices for Large and Mass-Tort MDLs*, BOLCH JUDICIAL
INSTITUTE, DUKE LAW SCHOOL (2d Ed.), at 37–38 (Sept. 2018) .......................... 22

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)
    § 10.22 ............................................................................................................... 7
    § 21.11 ............................................................................................................... 7
    § 21.272 ............................................................................................................. 7

## Rules

Fed. R. Civ. P.
    23(2)(A) advisory committee's note to 2003 amendment ................................... 6
    23(a)(4) ............................................................................................................. 5
    23(g) ................................................................................................................ 22
    23(g)(1)(A) ........................................................................................................ 7
    23(g)(1)(A)(i) ................................................................................................... 18
    23(g)(1)(A)(ii)-(iii) ............................................................................................ 8
    23(g)(1)(A)(iv) ................................................................................................. 18
    23(g)(1)(B) .................................................................................................. 7, 21
    23(g)(1)(c) advisory committee's note to 2003 amendment ............................... 7
    23(g)(3) ............................................................................................................. 6
    23(g)(1)(A)(i)-(iv) ............................................................................................ 21

## I.   INTRODUCTION

Facebook has emerged as the indisputable king of an entirely new market – the social network market – a market built not on hardware or operating system dominance, but one built on a social network of people, with its power and value derived from its engagement with that network. In exchange for providing social network services to its billions of users around the globe, Facebook collects user data, which it monetizes by selling advertising services as the company's principal source of revenue. In 2020 alone, Facebook generated $70 billion in advertising revenue through Facebook and Instagram. Facebook achieved dominance in the social network market, cementing Facebook's dominance in the social advertising market. Through a campaign of continued anticompetitive conduct, Facebook has unlawfully maintained monopoly power in the market for social advertising.

Unable to find substitutes, advertisers paid supracompetitive prices for Facebook's advertising services. Throughout the class period, Facebook continually increased prices for social advertising as it also grew the number of advertisements it displayed on its site, indicating durable monopoly power in the social advertising market. For example, the average cost per mile or cost per thousand views (CPM) cost increased from $3.23 in 2016 to $5.96 in 2017 to $9.40 in 2018, while click through rates (CTR) decreased, fluctuated, or were stagnant. At the same time as these prices are rising, some reports suggest that the quality of the ad services is declining, yet Facebook still doesn't lose any market share.  With these price increases and declining quality of services, many businesses feel like their paid Facebook ads are becoming less effective as they struggle to keep up with the ever-increasing threshold of advertising costs. All of these indicators illustrate Facebook's market dominance in the social advertising market.

Advertiser Plaintiffs brought four actions on behalf of proposed classes of similarly situated persons and entities to restore competition in the social advertising market and to pursue damages incurred by advertisers flowing from Facebook's anticompetitive conduct.

Facebook is extremely well resourced (with a market capitalization of $733 billion, it is the fifth largest company in the United States) and has engaged esteemed defense counsel to represent its interests.  The interests of Advertiser Plaintiffs and the proposed advertiser class

demand equally talented representation by law firms that can commit the necessary resources to prosecute the claims aggressively on a contingency basis.   Advertiser Plaintiffs propose a leadership structure that will best represent the interests of the proposed advertiser class and request that the Court enter an order establishing the following appointments:

**Interim Co-Lead Counsel for the Advertiser Class**:  Ahdoot & Wolfson PC ("Ahdoot Wolfson"), Scott+Scott Attorneys at Law LLP ("Scott+Scott"), and Levin Sedran & Berman LLP ("Levin Sedran & Berman").

**Executive Committee**:  Bathaee Dunne LLP ("Bathaee Dunne") and Reinhardt Wendorf & Blanchfield.

This private-ordering leadership structure is supported by all 14 Advertiser Plaintiffs who have brought suit against Facebook in this proceeding.

At the outset, Facebook advertisers and users allege that they suffered distinct and unique harms. Accordingly, appointing separate firms to represent advertisers, on the one hand, and Facebook users on the other, will ensure that advertisers' and users' interests are fairly and adequately represented. While both advertisers and users allege that Facebook weaponized the valuable social data its engaged users generated in order to identify nascent competitors and acquire, copy, or kill those firms, the two plaintiff groups allege that Facebook's anticompetitive conduct had impact and caused harm in separate relevant markets. The advertisers allege that Facebook's anticompetitive conduct prevented competitors from entering the social advertising market, allowing Facebook, unrestrained by competition, to continually hike its advertising prices during the class period to supracompetitive levels. By contrast, the social advertising market has no role in the user case.

The differences between the advertiser and user cases counsel favor appointing separate interim lead counsel in the decision-making roles for each class. This will ensure that counsel in each case will be free to present all legal theories and arguments that might best enhance their clients' respective interests, regardless of how those decisions might impact the other class. To that end, Advertiser Plaintiffs also seek to file a consolidated complaint on behalf of the proposed

advertiser class.  The appointment of separate interim lead counsel for the advertiser and user classes will not sacrifice efficiency because counsel for both groups are committed to close coordination of scheduling and discovery.

As Advertiser Plaintiffs demonstrate below, appointment of Proposed Advertiser Counsel as interim class counsel is warranted pursuant to Federal Rule of Civil Procedure ("Rule") 23(g) and appointment of an executive committee will prove beneficial to the efficient and successful representation of the proposed advertiser class.

## II.   ARGUMENT

### A.   The Court Should Appoint Separate Interim Lead Counsel for the Advertiser and User Classes

While the advertisers and users make similar allegations regarding Facebook's conduct in excluding potential competitors through an acquire, copy, or kill strategy, there are two distinct categories of plaintiffs who allege different theories of liability and damages in different relevant markets. Advertiser Plaintiffs allege Facebook illegally monopolized the social advertising market. As a result, advertisers had no choice but to purchase advertising services from Facebook at artificially inflated prices.  Accordingly, even as Facebook raised its prices and reportedly reduced the quality of its product, it didn't lose market share.  The users allege that Facebook monopolized the social network market, and as a result, they received less value for their social data than they otherwise would have if Facebook had been forced to compete with other social networks.

Given the different theories of liability, antitrust injury, and damages occurring in different relevant markets, the advertisers' priorities and concerns in discovery will vary from those of the users. For example, while the users allege that Facebook concealed the scope of the data it harvested and the ways it used that data, that is not the primary focus of the advertisers' allegations. Further, because the two plaintiff groups allege Facebook's anticompetitive conduct affected separate and distinct markets, each plaintiff group will be best served by engaging separate experts to define those markets and opine on the impact of Facebook's conduct in those markets and measure of damages.

Even at the pleadings stage, it is clear that the cases have no overlap on damages theories. As currently pleaded, Advertiser Plaintiffs will offer a but-for damages model, measuring the difference between social advertising prices paid by the proposed advertiser class and the prices the class would have paid absent Facebook's anticompetitive conduct. Meanwhile, the users' damages approach depends on an entirely different measure, given that Facebook's social network services are offered at no monetary cost to its users. The users' pleadings indicate that they will measure the increased value Facebook would have provided to users in return for user data in a competitive social network market, including possibly monetary compensation and/or non-monetary consideration, better quality, innovations, more transparency, and enhanced disclosure and privacy controls. Given the different theories of the case, the equitable and injunctive relief to be sought by the two groups of plaintiffs will also likely differ in scope. Regardless of what theories are eventually included in the consolidated complaint or complaints, interim lead counsel of the proposed advertiser class should be free to assess all theories without owing a duty of loyalty to the proposed user class.

Courts, including those in the Ninth Circuit, have routinely appointed separate lead counsel when multiple proposed class actions with distinct groups of plaintiffs are consolidated in a single district, as in the context of direct and indirect purchasers.[1] Similarly, an approach adopted in many antitrust cases where there are "two distinct groups of plaintiffs"—such as two discrete groups of market participants—is "to divide the plaintiffs into two proposed classes and appoint interim lead counsel for each class." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 NRB, 2011 WL 5007957, at *3 (S.D.N.Y. Oct. 18, 2011) (holding separate representation required for over-the-counter purchasers and exchange purchaser classes). Appointment of separate lead counsel is often ordered in such cases due to concerns that the "classes may be differently positioned at various stages of the litigation," and therefore create a "potential conflict in their joint

---

[1]     *See, e.g.*, *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685, 690 (9th Cir. 2011) (describing the appointment of separate interim class counsel for direct and indirect purchaser classes); Further Case Management Order, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486 (PJH), ECF No. 482, slip op. at 1 (N.D. Cal. July 19, 2005) (ordering separate leadership structure for direct and indirect purchasers and filing of separate consolidated complaints).

representation." *Id.* at *2. Courts in this District have recently followed this approach by appointing leadership structures for class actions that were brought separately against Google and Apple relating to their app store transactions, where developers and consumers classes both seek to recover based on monopolization theories.[2]

Further, where, as here, each class possesses separate and distinct claims that cannot be alleged by members of the other class, and market definition and standing issues are different for each class, the appointment of separate lead counsel ensures that the unique interests of each class will be protected in the event of settlement. *See In re LIBOR*, 2011 WL 5007957, at *2 (stating that "separate representation is advisable because the two categories of plaintiffs may require different treatment in the event of settlement").[3]

The appointment of separate interim lead counsel for the proposed advertiser and user classes will not create inefficiencies in discovery or the case schedule. The two plaintiff groups will be able to coordinate discovery, as is common in antitrust cases where similar claims are asserted on behalf of different plaintiff groups, to avoid duplicative document productions and depositions. Because much of the discovery will be equally applicable to both the advertisers and users, coordinated pretrial discovery will save time and expense for all parties. Proposed

---

[2]     *In re Google Play Consumer Antitrust Litig.*, No. 3:20-cv-5761-JD, ECF No. 53, 78, 128, slip ops. (N.D. Cal. Oct. 9, Nov. 20, Dec. 16, 2020) (appointing two firms as co-lead for consumers, a liaison counsel, and three additional firms to a steering committee); Orders, *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-5792-JD, ECF No. 53, 72, 79, slip ops. (N.D. Cal. Oct. 9, Nov. 20, Dec. 11, 2020) (appointing three firms as co-lead for developers); Order Granting Plaintiffs' Motion for Appointment of Interim Lead Class Counsel and Executive Committee, *Cameron v. Apple Inc.*, No. 4:19-cv-3074-YGR, ECF No. 65, slip op. (N.D. Cal. Oct. 10, 2019) (appointing one firm as lead for developers and three additional firms to an executive committee); Order Appointing Interim Class Counsel, *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714, ECF No. 34, slip op. (N.D. Cal. April 9, 2012) (appointing one firm as lead counsel for consumers).

[3]     *See also In re Payment Card Interchange Fee & Merchant Discount Litig.*, 827 F.3d 223, 233-34 (2d Cir. 2016) (reversing certification of settlement class on Fed. R. Civ. P. 23(a)(4) adequacy of representation grounds where the same counsel simultaneously represented a damages class incentivized to "maximize cash compensation for past harm" and an injunctive class, which valued prospective relief more than cash); *In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 254-55 (2d Cir. 2011) (reversing certification of settlement class that included three distinct types of copyright claims on Fed. R. Civ. P. 23(a)(4) adequacy of representation grounds where the same counsel represented all categories of claims, and finding subclasses with separate representation were necessary to eliminate conflicts arising from differences in settlement value of the claims).

1    Advertiser Counsel have the requisite skill and experience in coordinating among different groups

2    of plaintiffs through frequent participation in multi-lane class actions involving claims of multiple

3    plaintiff groups with adverse or different interests.[4] In addition, Proposed Advertiser Counsel have

4    had the opportunity to collaborate on prior cases with many of their colleagues who have filed

5    cases on behalf of users.

6         Proposed Advertiser Counsel therefore propose to meet and confer with counsel for the

7    user plaintiffs and Facebook in advance of the March 31, 2021 submission of a joint case

8    management statement regarding the consolidated complaint or complaints, a plan for coordinating

9    discovery, and scheduling between the two plaintiff groups.

10        **B.    The Court Should Appoint Ahdoot Wolfson, Scott+Scott, and Levin Sedran
               & Berman as Interim Co-Lead Counsel for the Advertiser Class, and
11             Bathaee Dunne and Reinhardt Wendorf & Blanchfield as Members of an
               Executive Committee**

12        Rule 23 (g)(3) provides that "[t]he court may designate interim counsel to act on behalf of

13   a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P.

14   23(g)(3). The Advisory Committee notes explain that the rule "authorizes the court to designate

15   interim counsel during the pre-certification period if necessary to protect the interests of the

---

[4]      *See, e.g.*, *In re Korean Air Lines Co. Antitrust Litig.*, No. 07-md-01891 (SJO) (C.D. Cal.)
(Scott+Scott was co-lead for indirect purchasers and coordinated with direct purchasers); *In re
Foreign Exchange Benchmark Rates Antitrust Litig.*, No 13-cv-7789 (LGS) (S.D.N.Y)
(Scott+Scott is co-lead for over-the-counter and exchange plaintiffs and has coordinated with
ERISA plaintiffs, consumer-indirect purchaser plaintiffs, retail-indirect purchaser plaintiffs, and
direct action plaintiffs); *United Wisconsin Grain Producers, LLC, et al. v. Archer Daniels Midland
Co.*, No. 20-cv-2314 (C.D. Ill.) (Levin Sedran & Berman representing a large group of ethanol
producers is coordinating with counsel for direct-purchaser class as well as counsel for a class of
derivative traders who brought distinct claims arising from the same alleged market manipulation);
*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, No. 03-md-1542 (D. Conn.)
(Levin Sedran & Berman was co-lead counsel for direct purchasers and coordinated with lead
counsel in two cases involving related products); *In re Allergan Biocell Textured Breast Implant
Prods. Liab. Litig.*, No. 2:19-md-2921-BRM (D.N.J.).
(Ahdoot Wolfson coordinating discovery between product liability and personal injury sub-classes
as a member of the Executive Committee); *In re Am. Med. Collection Agency, Inc., Customer Data
Sec. Breach Litig.*, No. 2:19-md-2904-MCA-MAH (D.N.J.) (Ahdoot Wolfson coordinating
discovery among counsel representing patient subclasses of different laboratories affected by the
data breach).

ADVERTISER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD
COUNSEL AND EXECUTIVE COMMITTEE TO REPRESENT PROPOSED ADVERTISER CLASS
CASE NO. 20-CV-08570-LHK

putative class." Fed. R. Civ. P. 23(2)(A) advisory committee's note to 2003 amendment. Appointment of interim class counsel is particularly suited to complex actions where, as here, there are a number of competing suits and lawyers seeking interim class counsel appointments. *In re Seagate Tech. LLC Litig.*, No. 16-CV-00523-RMW, 2016 WL 3401989, at *2–3 (N.D. Cal. June 21, 2016) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004)). The Manual for Complex Litigation further elaborates that "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004).

In selecting interim class counsel, district courts typically look to the mandatory criteria of Rule 23(g)(1)(A) governing the appointment of class counsel, namely, "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *See, e.g., Bartling v. Apple Inc.*, No. 5:18-cv-00147-EJD, 2018 WL 4804735, at *1 (N.D. Cal. Apr. 27, 2018). None of those factors are individually determinative. Fed. R. Civ. P. 23(g)(1)(c) advisory committee's note to 2003 amendment. Instead, they provide a framework to determine whether counsel seeking appointment can fairly and adequately represent the class. Further, Rule 23(g)(1)(B) provides that a district court may, in its discretion, "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

As demonstrated below, Ahdoot Wolfson, Scott+Scott, and Levin Sedran & Berman satisfy all of these requirements. Importantly, all 14 plaintiffs bringing claims on behalf of advertisers have engaged in and consented to "private ordering." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.272 (private ordering is when "lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests"). Such private ordering is the most common and desirable means of selecting class counsel. *See id.* at § 10.22 (efforts by attorneys to "coordinate their activities

without the court's assistance . . . should be encouraged"); *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, MDL No. 1674, 2011 WL 4382942, at *2 (W.D. Pa. Sept. 20, 2011) ("[T]he private ordering method of selecting interim lead counsel has long been the preferred approach.").

The leadership structure proposed by Advertiser Plaintiffs draws on a team of diverse and experienced individuals with track records of success in litigating high stakes and resource intensive antitrust and consumer class actions. The interests of the class are best served through experienced counsel organized into an efficient leadership structure coupled with strict oversight. Proposed Advertiser Counsel will closely monitor attorney time and assignments by instituting a protocol for submission and review of attorneys' fees and expenses. The protocol will establish a formal system for submitting time and expenses on a monthly basis, provide clear guidance on the type of activities that are compensable, and outline limits on compensable expenses, as further detailed in the concurrently filed [Proposed] Order Appointing Interim Co-Lead Counsel and Executive Committee to Represent Proposed Advertiser Class ("Proposed Order"). Further, Proposed Advertiser Counsel will staff the case only by firms appointed to interim co-lead or executive committee roles, and no other firms will work on this matter without leave of this Court.

### 1. Proposed Advertiser Counsel Have Extensive Experience in Handling Class Actions, Including Antitrust Class Actions and Consumer Class Actions Involving Online Digital Platforms and Knowledge of the Applicable Law

Advertiser Plaintiffs' proposed leadership structure brings to the class the best representation possible. Given the size and complexity of the case and Facebook's vast resources, the appointment of three co-leads –Ahdoot Wolfson, Scott+Scott, and Levin Sedran & Berman –  will best serve the interests of the proposed advertiser class. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-03747-JD, 2021 WL 757025, at *5 (N.D. Cal. Feb. 26, 2021) (appointing three firms as co-lead counsel); Order Appointing Interim Co-Lead Plaintiffs' Counsel, *In re Animation Workers Antitrust Litig.*, Case No. 5:14-cv-04062-LHK, ECF No. 54, slip op. (N.D. Cal. Nov. 20, 2014) (same). As discussed in more detail below, the Proposed Advertiser Counsel firms have deep experience and knowledge of class actions,

1   including antitrust class actions and consumer class actions involving online technologies. *See*

2   Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii).

### a.   Ahdoot & Wolfson, PC

4   **Ahdoot & Wolfson, PC** is a nationally recognized law firm with offices in Los Angeles,

5   New York, the Philadelphia area, and soon to come, Palo Alto. Ahdoot Wolfson is specialized in

6   complex and class action litigation, with a focus on anticompetitive business practices, unfair

7   business practices, consumer fraud, and privacy rights. Ahdoot Wolfson has successfully

8   vindicated the rights of millions of class members in protracted, complex litigation, conferring

9   billions of dollars in settlement value to victims, and affecting meaningful change in corporate

10  behavior. The attorneys at Ahdoot Wolfson pride themselves on their staying power, the high

11  quality of their work product, their zealous advocacy, and their staunch commitment to ethics and

12  collegial cooperation with co-counsel and opposing counsel. A small sample of Ahdoot Wolfson's

13  recent successes include:

14  In the ***Dental Supplies Antitrust Litig.***, No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.) (Hon.

15  Brian M. Cogan), a class action alleging an anticompetitive conspiracy among three dominant

16  dental supply companies in the United States, Ahdoot Wolfson served on the plaintiffs' counsel

17  team that brought in an $80 million cash settlement for the benefit of a class of approximately

18  200,000 dental practitioners, clinics, and laboratories.

19  In ***Alvarez v. Sirius XM Radio Inc.***, No. 2:18-cv-08605-JVS-SS (C.D. Cal.) (Hon. James

20  V. Selna)—a breach of contract class action alleging that defendant did not honor its lifetime

21  subscriptions—Ahdoot Wolfson reached a nationwide class action settlement conservatively

22  valued at approximately $420 million. The settlement extends the promised lifetime subscription

23  for the lifetime of class members who have active accounts and provides the opportunity for class

24  members with closed accounts to reactivate their accounts and enjoy a true lifetime subscription

25  or recover $100. The district court had granted the motion to compel arbitration on an individual

26  basis, and Ahdoot Wolfson appealed. Ms. Wolfson reached the final deal points of the nationwide

27  class action settlement literally minutes prior to oral argument in the Ninth Circuit.

28

1  As a member of the Plaintiffs' Executive Committee in the ***Apple Inc. Device Performance***

2  ***Litig.***, No. 5:18-md-2827-EJD (N.D. Cal.) (Hon. Edward J. Davila), Ahdoot Wolfson helped

3  achieve a nationwide settlement of $310 million minimum and $500 million maximum. The case

4  arose from Apple's alleged practice of deploying software updates to iPhones that deliberately

5  degraded the devices' performance and battery life.

6  In ***Eck v. City of Los Angeles***, No. BC577028 (L.A. Cnty. Super. Ct.) (Hon. Ann I. Jones),

7  Ahdoot Wolfson achieved a $295 million class settlement in a case alleging that an 8% surcharge

8  on Los Angeles electricity rates was an illegal tax. Final settlement approval was affirmed on

9  appeal in October 2019.

10  If appointed interim lead counsel, the following attorneys will lead the Ahdoot Wolfson

11  team in this litigation:

12  **Tina Wolfson** was born in the former Soviet Union, and her family escaped when she was

13  11 years old. Seven years after arriving as an indigent refugee who spoke no English, Ms. Wolfson

14  attended Columbia College, and then Harvard Law School, graduating both cum laude. As one of

15  the very few female founders of a national class action firm, Ms. Wolfson has gained extensive

16  experience leading major class actions during her 26-year career and has been selected over

17  competing applicants in a myriad of cases by federal and state court judges across the country,

18  including many in the Northern District of California. Her extensive accomplishments and

19  achievements are set forth in the firm CV, Exhibit 1 to Declaration of Tina Wolfson.

20  **Rachel Johnson** joined Ahdoot Wolfson in spring of 2020 as an associate and has already

21  proved herself to be an extremely talented and devoted litigator. She holds a Master's Degree from

22  Stanford University School of Engineering (class of 2012) and had a technical career as a scientist

23  and engineer prior to and while attending law school. After graduate school, Ms. Johnson served

24  as a senior data scientist and technical advisor for the US Department of Interior where she

25  validated 3D hydrodynamic models using Bayesian statistics, developed predictive algorithms,

26  and analyzed big data sets and time series using multivariate statistics tools. Ms. Johnson graduated

27  from Santa Clara University School of Law as an Emery Merit Scholar with a certificate in High

28  Tech Law. During law school, she worked on patent drafting, prosecution, and portfolio

management for Silicon Valley tech companies and consulted for startups on intellectual property strategy and employment law issues. While balancing a fulltime legal education and professional demands, she also became a first-time mother. At six months pregnant, Ms. Johnson free climbed Eichorn's Pinnacle, Cathedral Peak, and Third Pillar of Dana in Yosemite National Park. At Ahdoot Wolfson, Ms. Johnson has successfully applied her technical aptitude to manage fact finding and development of factually complex class action litigation in the areas of privacy, antitrust, and consumer protection.

**Theodore W. Maya**, a partner at Ahdoot Wolfson, graduated from UCLA Law School in 2002 after serving as Editor-in-Chief of the UCLA Law Review. From July 2003 to August 2004, Mr. Maya served as Law Clerk to the Honorable Gary Allen Feess in the United States District Court for the Central District of California. Mr. Maya was also a litigation associate in the Los Angeles offices of Kaye Scholer LLP for approximately eight years where he worked on a large variety of complex commercial litigation from inception through trial. Mr. Maya was named "Advocate of the Year" for 2007 by the Consumer Law Project of Public Counsel for successful pro bono representation of a victim of a large-scale equity fraud ring.

If appointed, this core team of Ahdoot Wolfson attorneys will be supported by a diverse group of talented associates and salaried staff attorneys; the firm does not use contract attorneys.

### b.      Scott+Scott

**Scott+Scott** is an international plaintiffs' litigation law firm with over 100 attorneys in offices spanning from San Diego to New York and also in Europe (Amsterdam, Berlin, and London). The firm has longstanding commitment to diversity and gender parity. Scott+Scott was recognized by Law360 as a "Ceiling Smasher," ranking in the top 10 among firms with the highest representation of women in equity partnerships. Scott+Scott's complete firm resume is attached as Exhibit A to the accompanying Declaration of Kristen M. Anderson.

Scott+Scott has an extraordinary record of success in antitrust class actions. Between 2009-2019, when in lead counsel positions, Scott+Scott recovered $3,472,275,000 in antitrust class action settlements, earning the firm the number two rank in recoveries by an individual firm during

the last decade. Scott+Scott also held the number two rank for settlements as lead counsel between

2013-2018.[5] Scott+Scott's recoveries in lead counsel roles include:

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No 13-cv-7789 (LGS)

(S.D.N.Y) ("*FX*"). Scott+Scott serves as co-lead counsel in this antitrust class action that alleges

major banks and financial institutions conspired to fix the prices of foreign exchange transactions.

The firm obtained final approval of settlements with 15 of the 16 defendants, totaling over

$2.3 billion, and continues to litigate against the remaining defendant. Renowned mediator,

Kenneth R. Feinberg, concluded that the *FX* settlements "represent[] some of the finest lawyering

toward a negotiated resolution that I have witnessed in my career" and that co-lead counsel were

"superlative, sophisticated, and determined plaintiff's lawyers."  *See FX*, ECF No. 926, ¶29.

*Alaska Electrical Pension Fund v. Bank of America, N.A.*, No. 14-cv-7126 (JMF)

(S.D.N.Y.) ("*ISDAfix*"). Scott+Scott served as co-lead counsel in this antitrust class action that

alleged 14 major banks and a broker conspired to manipulate the ISDAfix rate, a key benchmark

interest rate for a broad range of interest rate derivatives and other financial instruments. The Court

approved $504 million in class settlements. Judge Furman praised co-lead counsel as having done

"an extraordinary job" in "probably the most complicated case" he has had. *ISDAfix*, ECF No. 743

at 27:14-28:6 (S.D.N.Y. Nov. 8, 2018). Judge Furman further elaborated, "I cannot really imagine

how complicated it would have been if I didn't have counsel who had done as admirable job in

briefing it and arguing as you have done. You have in my view done an extraordinary service to

the class." *Id*.

*Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (WGY) (D. Mass.) ("*Dahl*").

Scott+Scott served as co-lead counsel in this antitrust class action that alleged private equity firms

colluded to restrain competition and depress prices paid to shareholders of public companies in

---

5    Davis, Josh Paul and Kohles, Rose, 2019 Antitrust Annual Report: Class Action Filings in
Federal Court, at 31 (August 2020) (available at https://ssrn.com/abstract=3696575) (last accessed
March 5, 2021); Davis, Josh Paul and Kohles, Rose, 2018 Antitrust Annual Report: Class Action
Filings in Federal Court, at 27 (May 1, 2019) (available at https://ssrn.com/abstract=3386424) (last
accessed March 5, 2021).

1    connection with leveraged buyouts. Although the DOJ declined to prosecute, the case recovered

2    $590.5 million in settlements on behalf of the class.

3        Continuing the firm's success in securing "mega fund" antitrust class action settlements,

4    in 2020, Scott+Scott obtained approval of $386.5 million in settlements in *In re GSE Bonds*

5    *Antitrust Litig.*, No. 19-cv-1704 (JSR) (S.D.N.Y.) ("*GSE*"). Scott+Scott served as co-lead counsel

6    in this case brought against 16 major banks and financial institutions, alleging a conspiracy to fix

7    the prices of government sponsored entity bonds. In approving the settlements, Judge Rackoff

8    noted the "high quality of plaintiffs' counsel's work, both in briefs and oral argument. Moreover,

9    counsel's achievement in 'obtaining valuable recompense and forward-looking protections for its

10   clients is particularly noteworthy given the caliber and vigor of its adversaries.'"  *GSE*, ECF No.

11   430, slip op. at 13 (S.D.N.Y. June 16, 2020).

12       If appointed interim lead counsel, the following attorneys will lead Scott+Scott's team in

13   this litigation:

14       **Kristen M. Anderson** is a partner in the firm's competition practice and has focused

15   exclusively on antitrust class action litigation for 14 years. Ms. Anderson was a key leader of

16   Scott+Scott's teams that prosecuted the *FX*, *ISDAfix*, *Dahl*, and *GSE* matters, taking a prominent

17   role in discovery, as well as arguing and briefing motions. In *GSE*, Ms. Anderson was one of three

18   women at Scott+Scott who argued all major motions in the case. She was honored for her work on

19   *GSE* by the American Antitrust Institute for Outstanding Antitrust Litigation Achievement in

20   Private Practice. Further, Ms. Anderson brings trial skills to the proposed advertiser class. She

21   served on the trial team representing certified classes of cardholders in antitrust cases challenging

22   class action-banning arbitration clauses in credit card agreements as restraints of trade in *Ross v.*

23   *Bank of Am., N.A.*, No. 05-cv-7116, MDL No. 1409 (WHP-JCF) (S.D.N.Y.) and *Ross v. Am.*

24   *Express Co.*, No. 04-cv-5723, MDL No. 1409 (WHP) (S.D.N.Y.) Ms. Anderson has been named

25   a Super Lawyer Rising Star numerous times and is a frequent speaker on antitrust and women in

26   the law panels for the ABA and other organizations.

27       **Patrick McGahan** is a partner in the firm's competition practice. He currently serves as

28   co-lead counsel in *In re Cattle Antitrust Litig.*, No. 19-cv-01222 (JRT-HB) (D. Minn.) (alleging

that the nation's meatpackers conspired to depress fed cattle prices and manipulated live cattle futures). Mr. McGahan works closely with the firm's corporate and institutional clients in relation to private enforcement actions to recover losses caused by anticompetitive conduct. Prior to joining Scott+Scott, Mr. McGahan worked at a large international defense firm in London and regularly counseled financial institutions, tech companies, and industrialists in relation to antitrust regulatory investigations and litigation. He is also admitted to practice in England & Wales and Queensland, Australia.

**Christopher M. Burke** chairs Scott+Scott's global competition practice. He has served as co-lead counsel in, *inter alia*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-cv-1720, MDL No. 1720 (MKB) (JO) (E.D.N.Y.) (and subsequently on the executive committee after joining Scott+Scott) (over $6 billion settlement), *FX*, *GSE*, *ISDAfix*, *Dahl*, *GSE*, and *In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-01409, MDL No. 1409 (WHP) (S.D.N.Y.) ($336 million settlement). Prior to joining the class action bar, Mr. Burke was an Assistant Attorney General at the Wisconsin Department of Justice. He been honored three times by the American Antitrust Institute for Outstanding Antitrust Litigation Achievement in Private Law Practice.

Scott+Scott's core leadership team will be supported by a diverse group of talented associate and salaried staff attorneys with experience in antitrust litigation; the firm does not use contract attorneys.

### c.   Levin Sedran & Berman

**Levin Sedran & Berman** is a complex class action and mass tort litigation firm that, over the past 40 years, has built a reputation as one of the top plaintiffs' law firms in the country, successfully prosecuting, as lead counsel or as part of the leadership team, several of the largest and most complex class actions and mass torts in the nation. *See, e.g.*, *In re: Diet Drug Product Liability Litig.*, No. 98-cv-20626-HB, MDL No. 1203 (E.D. Pa.) (Liaison and Co-Lead Counsel) (obtained a $6.75 billion-dollar settlement); *In re: Chinese-Manufactured Drywall Product Liability Litig.*, No. 09-md-02047-EEF-JCW, MDL No. 2047 (E.D. La.) ("*Chinese Drywall*") (Lead Counsel) (obtained settlements with a value that exceeds $1.3 billion dollars); *In re: The*

*Vioxx Product Liability Litig.*, No. 05-md-01657-EEF-DEK, MDL No. 1657 (E.D. La.) (member of the PSC and Plaintiffs' Negotiating Committee) ($4.85 billion-dollar settlement achieved on behalf of consumers who ingested Vioxx). Among the firm's achievements are its significant success in numerous antitrust class actions. *See, e.g.*, *In re: Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-01775-BMC, MDL No. 1775 (E.D.N.Y.) (Co-Lead Counsel) (over $1.25 billion in settlements); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, No. 03-md-01542-SRU, MDL No. 1542 (D. Conn.) (Co-Lead Counsel) (nearly $90 million in settlements representing close to 100% of single damages). For the period 2009-2019, Levin Sedran & Berman ranked in the top 15 law firms in the country for the total amount of recoveries achieved in antitrust class action settlements.[6] Examples of Levin Sedran & Berman's successes in lead counsel roles in antitrust cases include:

*In re: Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-01775-BMC, MDL No. 1775 (E.D.N.Y.) ("*Air Cargo*"). Levin Sedran & Berman served as co-lead counsel in this antitrust class action alleging that international airlines engaged in a global conspiracy to fix the price of fuel surcharges on routes across the globe. Over the course of this ten-year litigation, the firm obtained final approval of settlements with 28 defendant airlines totaling over $1.2 billion. In its opinion granting class certification, the court noted that "[e]ach counselor brings to this case ample experience in complex class action litigation, and they have consistently proven their competence and expertise throughout the life of this extended litigation." *See Air Cargo*, 2014 WL 7882100, at *34 (E.D.N.Y. Oct. 15, 2014). In 2016, the *Air Cargo* litigation team was awarded the "Outstanding Antitrust Litigation Achievement in Private Law Practice" award from the American Antitrust Institute for their work on this case.

*In re Elec. Carbon Prod. Antitrust Litig.*, No. 03-cv-2182, MDL No. 1514 (D.N.J.) ("*Carbon Products*"). Levin Sedran & Berman served as co-lead counsel in this antitrust class action alleging that an international cartel of manufacturers conspired to fix prices for electrical

---

[6]     *See* Davis, Josh Paul and Kohles, Rose, 2019 Antitrust Annual Report: Class Action Filings in Federal Court, at 31 (August 2020) (available at https://ssrn.com/abstract=3696575) (last accessed March 5, 2021).

carbon products sold in the United States. The firm reached settlements with the defendants for over $24 million only after Levin Sedran & Berman and its co-counsel prevailed over "substantive and procedural difficulties [that] were numerous and would lie beyond the abilities and resources of less capable counsel." *Carbon Products*, 447 F. Supp. 2d 389, 407 (D.N.J. 2006). At the end of the litigation, the court noted that "Class Counsel and Liaison Counsel demonstrated the skills and effectiveness that come from seasoning and experience in class action litigation, and more particularly in antitrust cases. In this case, the Court observed Class Counsel closely and found them to be well-prepared, knowledgeable, industrious, fair with opposing counsel, and unfailingly candid with the Court." *Id*. at 406.

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig*., No. 03-md-1542-SRU, MDL No. 1542 (D. Conn.). Levin Sedran & Berman served as co-lead counsel in this antitrust class action alleging 15 defendants engaged in a global conspiracy to fix prices and allocate customers and markets for products made from EPDM, a synthetic rubber compound used extensively for automotive products and roofing. The firm was able to obtain settlements close to $90 million which represented nearly 100% of estimated single damages.

If appointed interim lead counsel, the following Levin Sedran & Berman attorneys will lead the firm's team in this litigation:

**Keith J. Verrier** is a partner in the firm whose practice has been focused on antitrust class action litigation for over fifteen years. Mr. Verrier was a key member of the team that prosecuted the *Air Cargo* litigation taking a prominent role in discovery, as well as arguing and briefing motions. During that time, Mr. Verrier also worked on numerous other large antitrust class action matters where the firm was playing a supporting role such as *In re Automotive Parts Antitrust Litig*., No. 12-md-02311-SFC-RSW, MDL No. 2311 (E.D. Mich.), *In re Liquid Aluminum Sulfate Antitrust Litig*., No. 16-md-2687-MCA-JAD, MDL No. 2687 (D.N.J.), and *In re Capacitors Antitrust Litig*., No. 14-cv-03264-JD (N.D. Cal.). In addition, stepping outside of the antitrust context, Mr. Verrier was part of the team that led the trial efforts on behalf of over fifty select cases in the federal courts in Florida, Louisiana, and Virginia after remand by the MDL court in the *Chinese Drywall* litigation, efforts that led directly to a $248 million settlement with the remaining

defendants. *See Chinese Drywall*, 424 F. Supp. 3d 456 (E.D. La. 2020). Mr. Verrier has been named a Super Lawyer in Antitrust each year since 2015.

**Austin B. Cohen** is a partner in the firm whose practice has been focused on antitrust and class action litigation for over 22 years. Mr. Cohen was a key member of the team that prosecuted the *Air Cargo* litigation taking a prominent role in discovery, as well as arguing and briefing motions. Mr. Cohen was also instrumental in the firm's prosecution of the *Carbon Products* litigation, No. 03-cv-2182, MDL No. 1514 (D.N.J.), and *In re Graphite Electrodes Litig.*, No. 10-md-1244-NS, MDL No. 1244 (E.D. Pa.). Mr. Cohen brings trial experience to the proposed advertiser class, having recently served on the trial team in *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD (N.D. Cal.). Outside of the antitrust context, Mr. Cohen is currently serving as co-lead counsel in *Sutton v. Hoffman La Roche, Inc.*, ES-L-008724-14 (N.J. Super.), an environmental case where he represents a class of homeowners seeking to recover diminished property values resulting from groundwater contamination emanating from Roche's former New Jersey manufacturing facilities. Mr. Cohen has been regularly named an Antitrust "Super Lawyer," most recently in 2021.

Mr. Verrier and Mr. Cohen also have experience dealing with the complex market issues that can arise in a Sherman Act Section 2 claim. They are currently prosecuting a case on behalf of a group of ethanol producers asserting, among other things, Section 2 damages arising from a cross-market manipulation scheme by defendant Archer Daniels Midland Company involving the U.S. market for ethanol and ethanol derivatives. They previously brought a Section 2 market manipulation claim against New England energy companies on behalf of a class of electricity wholesalers.

Levin Sedran & Berman's core leadership team will be supported by a diverse group of talented attorneys with experience in antitrust litigation.

### 2. Proposed Advertiser Counsel Performed Substantial Work Identifying and Investigating the Claims in this Action

Proposed Advertiser Counsel and executive committee firms have already committed significant resources in investigating this matter before filing the underlying complaints on behalf

of Advertiser Plaintiffs. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). The firms have advanced the proposed advertiser class' claims by thoroughly investigating Facebook's anticompetitive conduct as it relates to the social advertising market and advertisers. *See* Wolfson Decl. ¶¶ 2-10; Anderson Decl., ¶¶ 3-6; Verrier Decl. ¶¶ 3-6. Proposed Advertiser Counsel researched scholarly articles, industry reports, and governmental reports to assess the structure of the numerous markets at issue including, but not limited to the social network market and the social advertising market, as well as the impact of Facebook's conduct on those markets. Extensive review of a variety of documents, reports, and interviews with industry experts resulted in thoroughly crafted complaints and detailed allegations, including the "who, what, and where," of Facebook's anticompetitive conduct and its impact on the proposed advertiser class. Proposed Advertiser Counsel are also consulting with experts to ensure that Advertisers Plaintiffs and the proposed class will have the best prospects for success in their consolidated complaint and throughout the course of this litigation. *Id.*

### 3. Proposed Advertiser Counsel Have the Necessary Resources to Properly Protect the Interests of the Proposed Advertiser Class

Proposed Advertiser Counsel are well-versed in what it takes to prosecute complex, large scale class actions and have sufficient monetary resources to bear the burden of expenses that will need to be advanced long before any recovery. Proposed Advertiser Counsel will commit the necessary experienced attorneys, professional staff, and human resources to effectively and efficiently prosecute the action. Proposed Advertiser Counsel are also willing and able to front large costs to make sure that the class is properly represented. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). For example, in *FX*, Scott+Scott advanced over $6.4 million in costs. During the same time frame, Scott+Scott advanced over $4.1 million in costs to fund the *ISDAfix* litigation.[7] Similarly, Levin Sedran & Berman advanced over $2.5 million in costs during the prosecution of the *Chinese Drywall* litigation at the same time that they were advancing close to $1 million in costs to fund

---

[7]     Declaration in Support of Attorneys' Fees, *FX*, ECF No. 939-2, at Exhibit 2 (S.D.N.Y. Jan. 12, 2018); Declaration in Support of Attorneys' Fees, *ISDAfix*, ECF No. 701, at Exhibit 3 (S.D.N.Y. Sept. 28, 2018).

1   the *Air Cargo* litigation.[8] Similarly, Ahdoot Wolfson has always met its assessments in all cases,

2   amounting to tens of millions of dollars at any one time. Wolfson Decl. ¶ 12. The appointment of

3   an executive committee also ensures that the necessary resources are available to litigate this case,

4   as the proposed executive committee firms stand ready to devote their resources to funding the

5   litigation.

6        Moreover, Proposed Advertiser Counsel are well-aware of the Court's expectations

7   regarding efficiency, economy, and accountability and pledge to adhere to the guidelines set out

8   in the accompanying Proposed Order regarding the recording and submission of time and expense

9   reports.

10              **4.        A Plaintiffs' Executive Committee Is Appropriate**

11       Given the magnitude of this litigation, a plaintiffs' executive committee would be useful

12  in managing and coordinating the case, as it has been in other successfully prosecuted antitrust

13  class actions. Accordingly, Advertiser Plaintiffs propose that the Court appoint a plaintiffs'

14  executive committee, comprised of Bathaee Dunne LLP and Reinhardt Wendorf & Blanchfield.

15  Courts in this district have regularly appointed multi-firm co-lead and executive committees in

16  complicated and resource intensive antirust cases, such as the one here. *E.g.*, *In re High-Tech*

17  *Employee Antitrust Litig.*, 289 F.R.D. 555, 584 (N.D. Cal. 2013) (appointing two firms as co-lead

18  counsel and two additional firms as members of an executive committee); *In re Qualcomm*

19  *Antitrust Litig.*, No. 17-md-2773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017)

20  (appointing individuals from three firms to a plaintiffs' steering committee and designating two of

21  them as co-lead counsel).

22

23

---

24  [8]    *Chinese Drywall*, No. 09-md-2047, Fee Committee Recommendation Regarding

25  Allocation of the Common Benefit, Exhibit A, ECF No. 21455-1 (E.D. La. July 3, 2018) (showing both held costs and unpaid assessments advanced by Levin Sedran & Berman); *Chinese Drywall*,

26  09-md-2047, Motion for an Award of Attorney's Fees and Cost Reimbursements at Exhibit 1 to Exhibit A, ECF No. 22363-5, at Ex. 3-4 (E.D. La. Nov. 19, 2019) (same); *Air Cargo*, 06-md-1775

27  (E.D.N.Y.), Declarations in Supp. of Attorneys' Fees, Ex. 3 to Declarations in Support of Joint Applications for Attorneys' Fees, ECF Nos. 1474-5 (May 10, 2011), 1717-3 (June 22, 2012), 2082-

28  3 (Dec. 1, 2014), and 2472-3 (Aug. 19, 2016) (showing Levin Sedran & Berman's expenses and assessment payments).

**Bathaee Dunne** is a boutique litigation firm that brings cases that are novel, complex, and significant. If appointed the executive committee, the following attorneys will lead Bathaee Dunne's team in this litigation:

**Yavar Bathaee** has represented clients in some of the largest class actions, multidistrict litigations, and trials in the last decade, including in antitrust, RICO, securities, and bankruptcy cases. Mr. Bathaee holds a bachelor's degree in Computer Science and Engineering from the University of California, Davis, and is a magna cum laude, Order of the Coif graduate of Fordham Law School. **Brian Dunne** has been lead or co-lead plaintiffs' counsel in consumer and competitor class actions, antitrust and patent cases, and other complex civil cases for nearly a decade, many of which were in the Northern District of California. Mr. Dunne holds a bachelor's degree in Physics from Stanford University and graduated with Honors, Order of the Coif, from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. Prior to private practice, Mr. Dunne clerked for Hon. Jay S. Bybee of the United States Court of Appeals for the Ninth Circuit and Hon. Susan P. Read of the New York Court of Appeals. **Edward Grauman** is currently counsel in multiple class actions, and for fifteen years has litigated high-stakes, complex cases, including several notable antitrust and environmental cases. Mr. Grauman holds a bachelor's degree from the Massachusetts Institute of Technology and is a cum laude graduate of Harvard Law School. Prior to practice he clerked for Hon. William H. Walls of the United States District Court for the District of New Jersey. **Andrew Wolinsky** represents clients in class actions throughout the country. He has represented clients as both plaintiffs and defendants in complex and class cases, including in the areas of antitrust, bankruptcy, commodities, and manufacturing. He holds an undergraduate degree from Tufts University, graduating magna cum laude, and is a cum laude graduate of Fordham Law School. Prior to private practice, Mr. Wolinsky clerked for Hon. Jane R. Roth of the United States Court of Appeals for the Third Circuit and Hon. Loretta A. Preska, then-Chief Judge of the United States District Court for the Southern District of New York.

**Reinhardt Wendorf & Blanchfield** (RWB) is a small firm with an outsized reputation for skill and innovation in antitrust class action litigation. RWB has been lead counsel in several

antitrust class actions, including *In re American Express Consolidated Merchants Litig.*, No. 04-CV-00366 (S.D.N.Y.), *In re American Express Anti-Steering Rules Antitrust Litig. (II)*, No. 11-MD-02221(E.D.N.Y.), *In re Bromine Antitrust Litig.*, No. IP 99-9310-C-B/S, (S.D. Ind.), and *In re: Potash Antitrust Litig.*, No. 3-93-197 (D. Minn.). RWB is among a small handful of firms in this country to have successfully tried an antitrust class action to verdict. *See In re: Industrial Silicon Antitrust Litig.*, No. 95-2104 (W.D. Pa.). RWB's success in leading the prosecution of antitrust class actions is attributable to its reputation; its ability to work well and efficiently with co-counsel; and its demonstrated willingness to invest substantial resources in the prosecution of complicated cases. The following RWB attorneys would be responsible for work on the executive committee. **Garrett Blanchfield** has represented plaintiffs in antitrust class action litigation for more than 20 years. He has routinely been named a Minnesota Super Lawyer – a recognition determined by a voting process and limited to only 5% of lawyers – in antitrust law. Mr. Blanchfield has also successfully argued antitrust matters in the appellate courts. F or example, he successfully argued on behalf of plaintiff in *Robertson v. Sea Pines Real Estate Co*., 679 F.3d. 278 (4th Cir. 2012), in which the 4th Circuit upheld a District Court decision denying motions to dismiss cases alleging that defendants' rules that effectively eliminated competition violated the Sherman Act. And in *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007), the Minnesota Supreme Court unanimously reversed the state court of appeals, significantly expanding the scope of standing of indirect purchasers under Minnesota's Antitrust Act. **Brant Penney** has more than 15 years of experience litigating class actions in the areas of antitrust, consumer protection, and employment law. He serves as a Council Member of the Antitrust Law Section of the Minnesota State Bar Association, and has been extensively involved in all aspects of litigation at the state and federal level.

### 5. The Proposed Leadership Structure Ensures Diverse Representation

As noted above, in addition to the Rule 23(g)(1)(A)(i)-(iv) factors, courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(1)(B). "For well over a decade now, the courts have

- 21 -

1  emphasized the importance of diversity in their selection of counsel." *City of Providence, Rhode*

2  *Island v. AbbVie Inc.*, No. 20-CV-5538 (LJL), 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020)

3  (collecting cases); *see also Guidelines and Best Practices for Large and Mass-Tort MDLs*, BOLCH

4  JUDICIAL INSTITUTE, DUKE LAW SCHOOL (2d Ed.), at 37–38 (Sept. 2018).

5        The Proposed Advertiser Counsel and the firms proposed to serve on the executive

6  committee include members of diverse genders, races, ages, geographies, and life experiences

7  who, if appointed, will serve in substantial roles to lead this litigation. In addition, all firms are

8  committed to delegating substantial responsibly to younger attorneys. *See In re Zantac (Ranitidine)*

9  *Prods. Liab. Litig.*, No. 9:20-md-2924-RLR, ECF No. 685 (PTO # 20), at 2-3 (S.D. Fla. May 5,

10  2020) ("The Court also sought to appoint a diverse leadership team that is representative of the

11  inevitable diversity of the Plaintiffs in this case, and a team that affords younger and slightly less

12  experienced attorneys an opportunity to participate in a leadership role in an MDL. The Court

13  sought to create a team that would collectively bring to bear both wisdom and judgment, and also

14  new approaches and ideas.").

15  **III.   CONCLUSION**

16        Advertiser Plaintiffs' proposed leadership structure will best represent the proposed

17  advertiser class. Appointing interim co-lead counsel and an executive committee and assigning

18  responsibility to them, as set forth in the accompany [Proposed] Order, is consistent with Rule

19  23(g) and will further the goal of achieving efficiency in the prosecution of this litigation.

20  DATED:  March 5, 2021                    **AHDOOT & WOLFSON, PC**

21                                          */s/ Tina Wolfson*
                                            Tina Wolfson (CA 174806)
22                                          Robert Ahdoot (CA 172098)
                                            Theodore W. Maya (CA 223242)
23                                          Rachel Johnson (CA 331351)
                                            2600 West Olive Avenue, Suite 500
24                                          Burbank, CA 91505
                                            Telephone: 310-474-9111
25                                          Facsimile:  310-474-8585
                                            twolfson@ahdootwolfson.com
26                                          rahdoot@ahdootwolfson.com
                                            tmaya@ahdootwolfson.com
27                                          rjohnson@ahdootwolfson.com
28

- 22 -

1

2

*Attorneys for Katherine Loopers and Jarred Johnson*

3

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
David R. Scott (*pro hac vice* forthcoming)

4

Kristen M. Anderson (CA 246108)
The Helmsley Building

5

230 Park Avenue, 17th Floor
New York, NY 10169

6

Telephone: 212-233-6444
Facsimile:  212-233-6334

7

david.scott@scott-scott.com
kanderson@scott-scott.com

8

9

Christopher M. Burke (CA 214799)
David H. Goldberger (CA 225869)

10

Yifan (Kate) Lv (CA 302704)
600 W. Broadway, Suite 3300
San Diego, CA 92101

11

Telephone: 619-233-4565
Facsimile:  619-233-0508

12

cburke@scott-scott.com
dgoldberger@scott-scott.com

13

klv@scott-scott.com

14

Patrick J. McGahan (*pro hac vice*)
Michael P. Srodoski (*pro hac vice*)

15

156 South Main Street, P.O. Box 192
Colchester, CT 06415

16

Telephone: 860-537-5537
Facsimile:  860-537-4432

17

pmcgahan@scott-scott.com
msrodoski@scott-scott.com

18

*Attorneys for Plaintiffs Affilious, Inc., Jessyca*

19

*Frederick, NJ Premier Inc., Timothy Mills, Mark*
*Young, Danny Collins, Joshua Jeon, 406 Property*

20

*Services, PLLC, Mark Berney, and MarQuisha*
*Cork*

21

22

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)

23

Austin B. Cohen (*pro hac vice*)
510 Walnut Street, Suite 500

24

Philadelphia, PA 19106-3997
Telephone: 215-592-1500
Facsimile:  215-592-4663

25

kverrier@lfsblaw.com
acohen@lfsblaw.com

26

*Attorneys for Plaintiffs Jessica L. Layser*

27

28

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BATHAEE DUNN LLP**
Yavar Bathaee (CA 282388)
Edward M. Grauman (*pro hac vice* forthcoming)
Andrew C. Wolinsky (*pro hac vice* forthcoming)
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: 332-205-7668
yavar@bathaeedunn.com
egrauman@bathaeedunne.com
awolinsky@bathaeedunne.com

Brian J. Dunne (CA 275689)
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: 213-462-2772
bdunne@bathaeedunne.com

*Attorneys for Plaintiffs Affilious, Inc., Jessyca
Frederick, NJ Premier Inc., Timothy Mills, Mark
Young, Danny Collins, Joshua Jeon, 406 Property
Services, PLLC, Mark Berney, and MarQuisha
Cork*

**REINHARDT WENDORF & BLANCHFIELD**
Garrett D. Blanchfield (*pro hac vice* forthcoming)
Brant Penney (*pro hac vice* forthcoming)
332 Minnesota Street, Suite W1050
St. Paul, MN 55101
Telephone: 651-287-2100
Facsimile: 651-287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiff Mark K. Wasvary, P.C.*

ADVERTISER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD
COUNSEL AND EXECUTIVE COMMITTEE TO REPRESENT PROPOSED ADVERTISER CLASS
CASE NO. 20-CV-08570-LHK