**AHDOOT & WOLFSON, PC**
Tina Wolfson (CA 174806)
Robert Ahdoot (CA 172098)
Theodore W. Maya (CA 223242)
Rachel Johnson (CA 331351)
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: 310-474-9111
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com
rjohnson@ahdootwolfson.com

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
David R. Scott (*pro hac vice* forthcoming)
Kristen M. Anderson (CA 246108)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-233-6444
david.scott@scott-scott.com
kanderson@scott-scott.com

[Additional counsel on signature page.]

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
Austin B. Cohen (*pro hac vice*)
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Telephone: 215-592-1500
kverrier@lfsblaw.com
acohen@lfsblaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 20-CV-08570-LHK<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF ADVERTISER PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL AND EXECUTIVE COMMITTEE TO REPRESENT PROPOSED ADVERTISER CLASS**<br><br>DATE:   March 18, 2021<br>TIME:   1:30 p.m.<br>JUDGE:  Hon. Lucy H. Koh<br>CTRM:   8 – 4th Floor |
| VICKIE SHERMAN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 20-CV-08721-LHK |

| | |
|---|---|
| RACHEL BANKS KUPCHO,<br><br>         Plaintiffs,<br><br>    vs.<br><br>FACEBOOK, INC.,<br><br>         Defendant. | Case No. 20-CV-08815-LHK |
| JESSICA L. LAYSER,<br><br>         Plaintiffs,<br><br>    vs.<br><br>FACEBOOK, INC.,<br><br>         Defendant. | Case No. 21-CV-00337-LHK |
| AFFILIOUS, INC., et al.,<br><br>         Plaintiffs,<br><br>    vs.<br><br>FACEBOOK, INC.,<br><br>         Defendant. | Case No. 20-CV-09217-LHK |
| DEBORAH DAMES, et al.,<br><br>         Plaintiffs,<br><br>    vs.<br><br>FACEBOOK, INC.,<br><br>         Defendant. | Case No. 20-CV-08817-LHK |
| CHARLES STEINBERG,<br><br>         Plaintiffs,<br><br>    vs.<br><br>FACEBOOK, INC.,<br><br>         Defendant | Case No. 20-CV-09130-LHK |

| | |
|---|---|
| RITA GARVIN,<br><br>              Plaintiffs,<br><br>      vs.<br><br>FACEBOOK, INC.,<br><br>              Defendant. | Case No. 21-CV-00618-LHK |
| JOE KOVACEVICH,<br><br>              Plaintiffs,<br><br>      vs.<br><br>FACEBOOK, INC.,<br><br>              Defendant. | Case No. 21-CV-01117-LHK |

I, Tina Wolfson, declare as follows:

1. I am a founding partner at the law firm of Ahdoot & Wolfson, PC ("Ahdoot Wolfson"), counsel for Plaintiffs Katherine Loopers and Jarred Johnson and counsel for plaitniffs in the *Sherman* matter, the first-filed case to include claims on behalf of advertisers. I am admitted to practice law in California and before this court and am a member in good standing with the State Bar of California, the D.C. Bar, and the New York State Bar. I make this Declaration in support of Advertiser Plaintiffs' Motion for Appointment of Interim Co-Lead Counsel and Executive Committee to Represent Proposed Advertiser Class. I make this declaration based on my personal knowledge of the matters set forth herein and based on my active participation in all material aspects of this litigation. If called upon to do so, I could and would testify competently thereto.

2. As an organic evolution of litigating privacy-related, cybersecurity and other unlawful business cases related to online technologies, Ahdoot Wolfson began investigating and researching antitrust and monopolization issues in online platforms in early 2020. Specifically, with respect to potential claims related to Facebook's monopoly in social networking and digital advertising and the anticompetitive conduct to acquire such monopoly, Ahdoot Wolfson committed significant resources to advance the proposed advertiser class' claims by thoroughly investigating Facebook's anticompetitive conduct as it relates to the social advertising market and advertisers. *See* Fed. R. Civ. P. 23(g)(1)(A)(i).

3. AW reviewed several thousands of pages of government investigation reports, highly reputable, academic articles, industry-focused sourced reports, and publicly available report and documents from Facebook, including, without limitation:

4. <u>Academic reports on anticompetitive deceptive practices around privacy, user preferences, and consumer harm:</u> AW examined a rich collection of materials on the evolution of Facebook and its representations to consumers, social media platforms, and consumer preferences and habits dating back to 2004. In addition to reporting from major news outlets like the *New York Times* and *Wall Street Journal,* AW reviewed reports from Yale University's Thurman Arnold Project (antitrust research focus group); white papers and reports from the University of

Chicago Stigler Center Committee for the Study of Digital Platforms, Market Structure, and Antitrust; University of Pennsylvania Law Review and Berkeley Law Review articles; surveys and articles on social platform use and privacy preferences from research groups like Pew Research Center, Electronic Privacy Information Center, and Privacy International; articles and texts by scholars and experts such as Tim Wu, Ashkan Soltani, Dina Srinivasan, Fiona Scott Morton, Phillip Areeda, and Herbert Hovenkamp; and tech-industry focused reporting from *Wired Magazine, Tech Crunch*, and *CNET*.

5.  Government investigation-based reporting by the Federal Trade Commission; US House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary; Germany's Federal Cartel Office (Bundeskartellamt); Norwegian Consumer Council; and the United Kingdom's Competition and Markets Authority (CMA). Extensive review of a variety of documents, reports, and interviews with industry experts resulted in thoroughly crafted complaints and detailed allegations, including the "who, what, and where," of Facebook's anticompetitive conduct and its impact on the proposed advertiser class.

6.  <u>Digital Advertising Industry focused materials:</u> numerous reports and articles from the online advertising and marketing industry such as the *Interactive Advertising Bureau* (IAB), an advertising business organization that develops industry standards, conducts research, and provides legal support for the online advertising industry; *eMarketer*, a digital marketing research company and go-to source for industry professionals to get independent analysis based on vetted and transparently sourced data; *AdWeek,* a leading source of news and insight serving the brand marketing ecosystem; *AdExchanger,* a media company that provides research, news, and analysis services to the data-driven digital marketing ecosystem including publishers, data providers, advertisers, and marketing agencies; *Marketingland,* a daily publication that covers all aspects of the digital marketing industry, features contributed articles by subject matter experts across all digital marketing disciplines; *AdEspresso,* an online publication focused exclusively on Facebook's advertising services offering eBooks, case studies, guides, and webinars; and *Clearcode,* an online advertising and marketing software development firm that publishes regularly on the digital ad industry. These sources report not only on industry trends, market

- 3 -

share, and marketing strategies, but also on consumer preferences, and behaviors and advertising effectiveness. For example, since Facebook's inception, *AdWeek, eMarketer*, and *AdExchanger* have reported not only on Facebook's advertising services, but also extensively on changes to Facebook's platform, Facebook's acquisitions, and user facing privacy practices.

7. AW conducted a detailed examination of the universe of Facebook's online advertising services (e.g., Facebook Ads Manager, Facebook Ads, Instagram Ads, Messenger Ads, Facebook Audience Network); Privacy Policies and user settings dating back to 2004; historic Facebook Newsroom and blog posts on privacy, user settings, and advertising services; analytics and tracking tools found on Facebook for Developers (developers.facebook.com) and Facebook for Business (www.facebook.com/business); and several Facebook's Patents regarding how Facebook collects information on users and its digital ad technology. Reviews of Facebook's financial statements and filings with the Securities and Exchange Commission such as annual (10-K) and quarterly (10-Q) reports as well as several earnings call transcripts over the last several years provided insight into revenue growth overtime and internal business strategy implications as to anticompetitive conduct.

8. In its investigation, Ahdoot Wolfson consulted with numerous privacy, user experience, and digital advertising experts, including: several scholars in data privacy and an antitrust professor at a Silicon Valley law school; a former FTC technologist; a mathematician and algorithm expert; an independent digital ad fraud auditor and consultant for advertisers and author for major business and marketing publication with 25 years-experience as a digital marketer and researcher and PhD from MIT; a media buyer and marketer for major Silicon Valley tech companies with 10 years-experience using Facebook's ad tools; a postdoctoral fellow with a PhD in Computer Sciences with focus on Real Time Bidding; five potential antitrust class action damages experts; a complex litigation ethics scholar and professor at a Northern California law school. AW continues to consult with experts to ensure that Advertisers Plaintiffs and the proposed class will have the best prospects for success in their consolidated complaint and throughout the course of this litigation.

- 4 -

9. Ahdoot Wolfson also extensively interviewed numerous advertisers and marketers – including those who use Facebook's advertising services and those who use alternatives - to better understand their experience "on the ground" and the factual support for potential claims against Facebook.

10. In sum, Ahdoot Wolfson has invested hundreds of hours to research and thoroughly vet and develop the factual issues and market components relevant to a monopolization case against Facebook.

11. Attached hereto as **EXHIBIT 1** is the firm's curriculum vitae. All of its contents are true and correct.

12. Ahdoot Wolfson has the necessary human and financial resources to prosecute this matter. Ahdoot Wolfson has never used third party litigation funding and has always met its assessments in all of its cases, amounting to tens of millions of dollars at any one time.

I declare under penalty of perjury under the laws of the United States and the State of California this 5th day of March, 2021 in Los Angeles, California that the foregoing is true and correct.

               */s/ Tina Wolfson*
               Tina Wolfson

EXHIBIT 1



Ahdoot & Wolfson, PC ("AW") is a nationally recognized law firm founded in 1998 that specializes in complex and class action litigation, with a focus on unfair and anti-competitive business practices, consumer fraud, privacy rights, employee rights, defective products, civil rights, and taxpayer rights and unfair practices by municipalities. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its successful existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring billions of dollars to the victims, and affecting real change in corporate behavior.

## Results

AW has achieved excellent results as lead counsel in numerous complex class actions.

In *Alvarez v. Sirius XM Radio Inc.*, No. 2:18-cv-08605-JVS-SS (C.D. Cal.) (Hon. James V. Selna), a breach of contract class action alleging that defendant did not honor its lifetime subscriptions, AW reached a nationwide class action settlement conservatively valued at approximately $420 million. The settlement extends the promised lifetime subscription for the lifetime of class members who have active accounts, and provides the opportunity for class members with closed accounts to reactivate their accounts and enjoy a true lifetime subscription or recover $100. The district court had granted the motion to compel arbitration on an individual basis, and AW appealed. Ms. Wolfson reached the final deal points of the nationwide class action settlement literally minutes prior to oral argument in the Ninth Circuit.

As a member of the Plaintiffs' Executive Committee in the *Apple Inc. Device Performance Litigation*, No. 5:18-md-2827-EJD (N.D. Cal.) (Hon. Edward J. Davila), AW helped achieve a nationwide settlement of $310 million minimum and $500 million maximum. The case arose from Apple's alleged practice of deploying software updates to iPhones that deliberately degraded the devices' performance and battery life.

In *Eck v. City of Los Angeles*, No. BC577028 (LASC) (Hon. Ann I. Jones), AW achieved a $295 million class settlement in a case alleging that an 8% surcharge on Los Angeles electricity rates was an illegal tax. Final settlement approval was affirmed on appeal in October 2019.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, AW achieved a settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

In *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon. Edward J. Davila), a case arising from McAfee's auto renewal and discount practices, AW and co-counsel achieved a settlement that made $80 million available to the class and required McAfee to notify customers regarding auto-renewals at an undiscounted subscription price and change its policy regarding the past pricing it lists as a reference to any current discount.

In *Lavinsky v. City of Los Angeles*, No. BC542245 (LASC) (Hon. Ann I. Jones), a class action alleging the city unlawfully overcharged residents for utility taxes, AW certified the plaintiff class in litigation and then achieved a $51 million class settlement.

As co-lead counsel in *Berman v. Gen. Motors, LLC*, No. 2:18-cv-14371-RLR (S.D. Fla.) (Hon. Robin L. Rosenberg) (vehicle oil consumption defect class action), AW achieved a $40 million settlement.

*Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing & Sales Practices Litigation*, No. 1:16-md-02743-AJT-TRJ (E.D. Va.) (Hon. Anthony J. Trenga) arose from alleged misrepresentations of laminate flooring durability, which was coordinated with MDL proceedings regarding formaldehyde emissions. As co-lead class counsel for the durability class, AW was instrumental in achieving a $36 million settlement.

In *McKnight v. Uber Technologies, Inc.*, No. 4:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar), AW achieved a $32.5 million settlement for the passenger plaintiff class alleging that Uber falsely advertised and illegally charged a "safe rides fee."

In *Pantelyat v. Bank of America, N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan), a class action arising from allegedly improper overdraft fees, AW, serving as sole class counsel for plaintiffs, achieved a $22 million class settlement, representing approximately 80% of total revenues gleaned by the bank's alleged conduct.

### Current Noteworthy Leadership Roles

Most recently, Ms. Wolfson and AW were selected to serve as interim co-lead class counsel in the *StubHub Refund Litigation*, No. 4:20-md-02951-HSG (N.D. Cal.) (Hon. Haywood S. Gilliam, Jr.). This consolidated multidistrict litigation alleges that StubHub retroactively changed its policies for refunds for cancelled or rescheduled events as a result of the Covid-19 pandemic and refused to

offer refunds despite promising consumers 100% of their money back if events are cancelled. In appointing Ms. Wolfson as Interim Co-Lead Counsel, Judge Gilliam noted that while competing counsel were qualified, her team "proposed a cogent legal strategy," "a process for ensuring that counsel work and bill efficiently" and "demonstrated careful attention to creating a diverse team."

Ms. Wolfson was appointed, after competing applications, to serve as interim co-lead class counsel in the *Ring LLC Privacy Litigation*, No. 2:19-cv-10899-MWF-RAO (C.D. Cal.) (Hon. Michael W. Fitzgerald), a consolidated class action arising from Ring's failure to implement necessary measures to secure the privacy of Ring user accounts and home-security devices, and failure to protect its customers from hackers despite being on notice of the inadequacies of its cybersecurity.

Judge Koh selected Ms. Wolfson and AW to serve as interim co-lead class counsel in the *ZOOM Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.) (Hon. Lucy H. Koh), a class action alleging Zoom's failure to implement adequate security protocols for its video-conferencing platform that breached millions of consumers' privacy, fell well short of its promises, and diminished the value of the products and services it provided.

In *Clark v. American Honda Motor Co., Inc.*, No. 2:20-cv-03147-AB-MRW (C.D. Cal.) (Hon. André Birotte Jr.), Ms. Wolfson was appointed co-lead counsel in a class action arising from unintended and uncontrolled deceleration in certain Acura vehicles. In selecting Ms. Wolfson from competing applications, Judge Birotte noted: "The Court believes that Ms. Wolfson brings particular attention to the virtues of collaboration, efficiency, and cost-containment which strike the Court as especially necessary in a case such as this. Ms. Wolfson's appointment as Co-Lead also brings diversity to the ranks of attorneys appointed to such positions: such diversity is not simply a "plus factor" but the Court firmly believes that diverse perspectives improve decision-making and leadership."

AW was appointed to serve as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), a consumer class action arising out of Google's allegedly unlawful collection and use of mobile device location information on all Android and iPhone devices.

AW also serves on the Plaintiffs' Executive Committees in *Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-2921-BRM-JAD (D.N.J.) (Hon. Brian R. Martinotti), a class action alleging textured breast implants caused a rare type of lymphoma and in *ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-2905-JAK-FFM (C.D. Cal.) (Hon. John A. Kronstadt), a class action alleging a dangerous defect in car airbag component units.

AW also was recently selected to serve on the PEC in the *Robinhood Outage Litigation*, No. 3:20-cv-1626-JD (N.D. Cal.) (Hon. James Donato), a consolidated case arising from a March 2020 outage of the online stock trading platform.

In the *Kind LLC "All Natural" Litigation*, No. 1:15-md-02645-WHP (S.D.N.Y.) (Hon. William H. Pauley III), a false labeling food MDL, AW was selected as interim co-lead class counsel after competing applications. Plaintiffs' motion for class certification is under submission.

As part of the leadership team in *Novoa v. The Geo Group, Inc.*, No. 5:17-cv-2514-JGB-SHK (C.D. Cal.) (Hon. Jesus G. Bernal), AW certified a class of immigration detainees challenging private prison's alleged forced labor practices.

### Anti-trust Cases

In the *Dental Supplies Antitrust Litigation*, No. 1:16-cv-00696-BMC-GRB (E.D.N.Y.) (Hon. Brian M. Cogan), a class action alleging an anticompetitive conspiracy among three dominant dental supply companies in the United States, AW served on the plaintiffs' counsel team that brought in an $80 million cash settlement for the benefit of a class of approximately 200,000 dental practitioners, clinics, and laboratories.

In *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-09066-SDW-ESK (D.N.J.) (Hon. Susan D. Wigenton), a class action alleging that a standardized "no-poach" agreement among Jackson Hewitt and its franchisees limited mobility and compensation prospects for the tax preparer employees, AW is asserting claims on behalf of consumers under both federal antitrust and California employment laws.

In *Powell Prescription Center v. Surescripts, LLC*, No. 1:19-cv-00627 (N.D. Ill.) (Hon. John J. Tharp. Jr.), AW represents pharmacies in a class action arising from Surescripts' alleged monopolies in both the routing and eligibility markets of the e-prescription industry.

### Privacy Class Actions

AW has been prosecuting cutting edge privacy cases on behalf of consumers since the late 1990s. AW was among the first group of attorneys who successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without the consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, at the time AW was prosecuting these cases before the Hon. Richard R. Kramer, (Ret.) in the complex department of San Francisco Superior Court, such practices were novel and hidden from public scrutiny. AW's work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation. AW has been at the forefront of privacy-related litigation since then.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, AW achieved a settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge

Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

As an invaluable member of a five-firm Plaintiffs' Steering Committee ("PSC") in the *Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.) (Hon. Michael H. Simon), arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members, AW was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million.

In *The Home Depot, Inc., Customer Data Sec. Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (Hon. Thomas W. Thrash Jr.), AW served on the consumer PSC and was instrumental in achieving a $29 million settlement fund and robust injunctive relief for the consumer class. As co-lead counsel in *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello), AW secured a settlement for the nationwide class that provides for up to $250 in claimed damages or $10,000 in extraordinary damages.

AW was appointed to serve as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), a consumer class action arising out of Google's allegedly unlawful collection and use of mobile device location information on all Android and iPhone devices.

AW also currently serves on the PSC in *Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litigation*, No. 2:19-md-2904-MCA-MAH (D.N.J.) (Hon. Madeline Cox Arleo), a class action arising out of a medical data breach that disclosed the personal and financial information of over 20 million patients, as well as many other data breach class actions.

AW's efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), AW's attorneys successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), AW, as a member of the PSC, briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

AW is also serving as plaintiffs' counsel in consumer privacy rights cases involving the right to control the collection and use of biometric information, successfully opposing motions to dismiss

based on lack of standing. *See, e.g.*, *Rivera v. Google LLC*, No. 19-1182 (7th Cir.) (order granting summary judgment currently on appeal to the Seventh Circuit); *Azzano v. Google LLC*, No. 2019-CH-11153 (Ill. Cir. Ct.) (Hon. Anna M. Loftus); *Molander v. Google LLC*, No. 5:20-cv-00918-EJD (N.D. Cal.) (Hon. Edward J. Davila); *Miracle-Pond v. Shutterfly, Inc.*, No. 1:19-cv-4722 (N.D. Ill.) (Hon. Mary M. Rowland); *Acaley v. Vimeo, Inc.*, No. 1:19-cv-7164 (N.D. Ill.) (Hon. Matthew F. Kennelly).

In addition, AW has served and is serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

### Attorney Profiles

**Tina Wolfson** graduated Harvard Law School *cum laude* in 1994. Ms. Wolfson began her civil litigation career at the Los Angeles office of Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration and deportation trials as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm, focusing on representing plaintiffs on a contingency basis in civil rights and employee rights cases. Since co-founding AW in 1998, Ms. Wolfson had lead numerous class actions to successful results. Ms. Wolfson is a member of the California, New York and District of Columbia Bars.

Recognized for her deep class action experience, Ms. Wolfson frequently lectures on numerous class action topics across the country. She is a guest lecturer on class actions at the University of California at Irvine Law School. Her notable speaking engagements include:

- Class Action Mastery Forum at the University Of San Diego School of Law (Consumer Class Actions Roundtable) March 2020, featuring Hon. Lucy H. Koh, Hon. Edward M. Chen, and Hon. Fernando M. Olguin.
- Class Action Mastery Forum at the University Of San Diego School of Law (Data Breach/Privacy Class Action Panel) January 16, 2019.
- Association of Business Trial Lawyers: "Navigating Class Action Settlement Negotiations and Court Approval: A Discussion with the Experts," Los Angeles May 2017, featuring Hon. Philip S. Gutierrez and Hon. Jay C. Gandhi.
- CalBar Privacy Panel: "Privacy Law Symposium: Insider Views on Emerging Trends in Privacy Law Litigation and Enforcement Actions in California," Los Angeles Mar. 2017 (Moderator), featuring Hon. Kim Dunning.
- American Conference Institute: "2nd Cross-Industry and Interdisciplinary Summit on Defending and Managing Complex Class Actions," April 2016, New York: Class Action Mock Settlement Exercise featuring the Hon. Anthony J. Mohr.

- Federal Bar Association: N.D. Cal. Chapter "2016 Class Action Symposium," San Francisco Dec. 2016 (Co-Chair), featuring Hon. Joseph F. Anderson, Jr. and Hon. Susan Y. Illston.
- Federal Bar Association: "The Future of Class Actions: Cutting Edge Topics in Class Action Litigation," San Francisco Nov. 2015 (Co-Chair &Faculty), featuring Hon. Jon S. Tigar and Hon. Laurel Beeler.
- American Association for Justice: AAJ 2015 Annual Convention – "The Mechanics of Class Action Certification," July 2015, Montreal, Canada.
- HarrisMartin: Data Breach Litigation Conference: The Coming of Age – "The First Hurdles: Standing and Other Motion to Dismiss Arguments," March 2015, San Diego.
- Bridgeport: 2015 Annual Consumer Class Action Conference, February 2015, Miami (Co-Chair).
- Venable, LLP: Invited by former opposing counsel to present mock oral argument on a motion to certify the class in a food labeling case, Hon. Marilyn Hall Patel (Ret.) presiding, October 2014, San Francisco.
- Bridgeport: 15th Annual Class Action Litigation Conference – "Food Labeling and Nutritional Claim Specific Class Actions," September 2014, San Francisco (Co-Chair and Panelist).
- Bridgeport: 2014 Consumer Class Action Conference – "Hot Topics in Food Class Action Litigation," June 2014, Chicago.
- Perrin Conferences: Challenges Facing the Food and Beverage Industries in Complex Consumer Litigations, invited to discuss cutting edge developments in settlement negotiations, notice, and other topics, April 2014, Chicago.
- Bridgeport: Class Action Litigation & Management Conference – "Getting Your Settlement Approved," April 2014, Los Angeles.
- HarrisMartin: Target Data Security Breach Litigation Conference – "Neiman Marcus and Michael's Data Breach Cases and the Future of Data Breach Cases," March 2014, San Diego.
- Bridgeport: Advertising, Marketing & Media Law: Litigation and Best Management Practices – "Class Waivers and Arbitration Provisions Post-*Concepcion / Oxford Health Care*," March 2014, Los Angeles.

Ms. Wolfson currently serves as a Ninth Circuit Lawyer Representative for the Central District of California, as Vice President of the Federal Litigation Section of the Federal Bar Association, as a member of the American Business Trial Lawyer Association, as a participant at the Duke Law School Conferences and the Institute for the Advancement of the American Legal System, and on the Board of Public Justice.

**Robert Ahdoot** graduated from Pepperdine Law School *cum laude* in 1994, where he served as Literary Editor of the Pepperdine Law Review.  Mr. Ahdoot clerked for the Honorable Paul Flynn at the California Court of Appeals, and then began his career as a civil litigator at the Los Angeles office of Mendes & Mount, LLP, where he defended large corporations and syndicates such as Lloyds of London in complex environmental and construction-related litigation as well as a variety of other matters.  Since co-founding AW in 1998, Mr. Ahdoot had led numerous class actions to successful results. Recognized for his deep class action experience, Mr. Ahdoot frequently lectures on numerous class action topics across the country. His notable speaking engagements include:

- MassTorts Made Perfect:  Speaker Conference, April 2019, Las Vegas: "Llegal Fees: How Companies and Governments Charge The Public, and How You Can Fight Back."
- HarrisMartin: Lumber Liquidators Flooring Litigation Conference, May 2015, Minneapolis: "Best Legal Claims and Defenses."
- Bridgeport: 15th Annual Class Action Litigation Conference, September 2014, San Francisco: "The Scourge of the System: Serial Objectors."
- Strafford Webinars: Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates and More, February 2014: "Minimizing Court Scrutiny and Overcoming Objector Challenges."
- Pincus: Wage & Hour and Consumer Class Actions for Newer Attorneys: The Do's and Don'ts, January 2014, Los Angeles: "Current Uses for the 17200, the CLRA an PAGA."
- Bridgeport: 2013 Class Action Litigation & Management Conference, August 2013, San Francisco: "Settlement Mechanics and Strategy."

**Theodore W. Maya** graduated from UCLA Law School in 2002 after serving as Editor-in-Chief of the UCLA Law Review. From July 2003 to August 2004, Mr. Maya served as Law Clerk to the Honorable Gary Allen Feess in the United States District Court for the Central District of California. Mr. Maya was also a litigation associate in the Los Angeles offices of Kaye Scholer LLP for approximately eight years where he worked on a large variety of complex commercial litigation from inception through trial. Mr. Maya was named "Advocate of the Year" for 2007 by the Consumer Law Project of Public Counsel for successful pro bono representation of a victim of a large-scale equity fraud ring.

**Bradley K. King** is a member of the State Bars of California, New Jersey, New York, and the District of Columbia. He graduated from Pepperdine University School of Law in 2010, where he served as Associate Editor of the Pepperdine Law Review. He worked as a law clerk for the California Office of the Attorney General, Correctional Law Section in Los Angeles and was a certified law clerk for the Ventura County District Attorney's Office. Mr. King began his legal career at a boutique civil rights law firm, gaining litigation experience in a wide variety of practice areas, including employment law, police misconduct, municipal contracts, criminal defense, and premises liability

8

cases. During his nine-year career at AW, Mr. King has focused on consumer class actions, and data breach class actions in particular. He has extensive experience litigating consolidated and MDL class actions with AW serving in leadership roles, including numerous large data breach cases that have resulted in nationwide class settlements.

**Henry Kelston** graduated from New York University School of Law in 1978 and is a member of the New York and Connecticut Bars. Mr. Kelston has litigated a broad array of class actions for more than two decades, including actions challenging improperly charged bank fees, unauthorized collection of biometric data, and unlawful no-poach agreements among employers. He has been on the front lines in major data breach cases against companies such as Yahoo! and Facebook, and has represented consumers in class actions challenging food labeling practices, including the use of "natural" claims on products containing GMOs. His work in *In re Conagra Foods, Inc.*, contributed to a groundbreaking decision by the Ninth Circuit Court of Appeals, significantly strengthening the rights of consumers to bring class actions. Mr. Kelston is also a frequent speaker and CLE presenter on electronic discovery, and a member of The Sedona Conference® Working Group 1 on Electronic Document Retention and Production.

**Christopher E. Stiner** graduated from Duke University School of Law *cum laude* in 2007 and is a member of the California and New York Bars. Mr. Stiner began his legal career at the New York office of Milbank Tweed working on finance matters for some of the world's largest financial institutions. Several years later Mr. Stiner transitioned to a litigation practice at the Los Angeles office of Katten Muchin, again representing large financial institutions and other corporate clients. Chris also worked as a clerk for the Honorable Thomas B. Donavan in the Central District of California Bankruptcy Court. In 2020 Mr. Stiner joined AW to pursue his desired focus on consumer class actions with a particular interest in consumer finance and banking matters.

**Andrew W. Ferich** is admitted to the bars of Pennsylvania, New Jersey, and the District of Columbia. Mr. Ferich received his law degree from Villanova University's Charles Widger School of Law in 2012, where he served as Executive Editor of the *Journal of Catholic Social Thought*. Mr. Ferich has significant experience in consumer protection, data privacy, ERISA/retirement plan, and whistleblower/*qui tam* litigation. Prior to joining the firm, Mr. Ferich was a senior associate at a well-known Philadelphia-area class action law firm. Before joining the plaintiffs' bar, Mr. Ferich was an associate at an AmLaw 200 national litigation firm in Philadelphia where he focused his practice on commercial litigation and financial services litigation. Mr. Ferich has represented a wide array of clients and has received numerous court-appointed leadership positions in large class actions. Mr. Ferich possesses major jury trial experience and has assisted in litigating cases that have collectively resulted in over $100 million in settlement value in damages and injunctive relief for various classes and groups of people.

**Rachel Johnson** graduated from Santa Clara University School of Law in 2019 as an Emery Merit Scholar with a certificate in High Tech Law and is a member of the State Bar of California. Ms. Johnson holds a Master's Degree from Stanford University School of Engineering and had a technical career as a scientist and engineer prior to and during attending law school. After graduate school, Ms. Johnson served as a senior data scientist and technical advisor for the US Department of Interior where she validated 3D hydrodynamic models using Bayesian statistics, developed predictive algorithms, and analyzed big data sets and time series using multivariate statistics tools. At AW, Ms. Johnson focuses on consumer protection and class actions.

\* \* \*