# EXHIBIT J

# STANDARDS AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLs

*Best Practice* 4E:  The transferee judge should take into account whether the leadership team adequately reflects the diversity of legal talent available and the requirements of the case.[1]

Mass-tort MDL cases affect a large and diverse group of people, and ensuring diversity in the leadership of the cases will enhance public trust in the courts and will improve the likelihood of consideration of diverse ideas and perspectives that MDLs require. Litigants and the civil justice system benefit from the diversity of leadership.[2] Indeed, the same way that diversity improves companies' bottom lines, litigants and the civil justice system benefit from diversity of leadership.[3] Yet historically, women and minority lawyers have not been appointed to leadership positions at rates proportionate to their representation in the plaintiffs' bar generally.  It cannot be said that there are not enough talented individuals with the education, background and experience to effectively lead MDL litigation to permit greater diversity.[4]

Repeat player dynamics continue to persist, restricting diversity across MDL leadership.[5]  Research shows that having a mix of experienced and new players enhances creativity and innovation, leads to better decisionmaking and problem solving, and promotes discussion of novel concepts raised by those who historically have not been in leadership.[6]

Whatever application process is used, the court should bear in mind the value of diversity of all types as a component of obtaining the best possible representation for plaintiffs.  Judges should seek to appoint a diverse group, with respect to not only prior experience and skills, but also gender, race and national origin, age, and sexual orientation. Counsel may in turn consider this in deciding not only which individuals from the firm should seek appointment, but also — to the extent slates are still utilized — in selecting the slate.

In addition to demographic diversity, the judge should be mindful of creating a team with diversity of experience, balancing the benefits of selecting leadership members who have worked well together in the past with the benefits of having a leadership team that brings different experiences that can be brought to bear in the litigation.  The judge should also seek to ensure a variety of skill sets within the leadership team and the need for heightened financial resources in the executive committee.

Given the lack of commonality requirements in MDLs that are not class actions, substantially different claims may all be included in the same MDL.  In these cases, particularly when there are significant differences among identifiable groups of plaintiffs, the judge should ensure that the leadership is comprised of attorneys that reflect these variations in claims.[7]  In multidistrict litigation that is likely to involve the application of multiple states' laws, geographic diversity may be an important consideration as well.

By taking early control of the process through which counsel are appointed to leadership positions and clearly communicating the criteria for appointment, the court can ensure that composition of the plaintiffs' leadership team reflects the needs of the case and the available talent from a diverse pool.  The court should ensure that slates or, later in the litigation, formation of committees or allocation of work assignments, do not lead to the exclusion of attorneys who bring valuable skills, resources, or perspectives to the litigation.

(Over for Endnotes)

---

[1] *See* Duval, *supra* note 115, at 393.

[2] *See, e.g.*, Katherine W. Phillips, *How Diversity Makes Us Smarter*, SCIENTIFIC AMERICAN (Sept. 16, 2014), available at: http://www.scientificamerican.com/article/how-diversity-makes-us-smarter/.

[3] *See, e.g.*, Katherine W. Phillips, *How Diversity Makes Us Smarter*, SCIENTIFIC AMERICAN (Sept. 16, 2014) available at: http://www.scientificamerican.com/article/how-diversity-makes-us-smarter/.

[4] *See, generally,* Jaime Dodge, *Facilitating Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 EMORY L.J. ___ (2014) (noting the "deep bench" of qualified, MDL attorneys but presenting empirical data showing a continuing gender gap in appointments); *see also* Elizabeth J. Cabraser, *Where Are All the Women in the Courtroom?*, Feb. 28, 2014, available at http://www.liefcabraser.com/blog/2014/02/where-are-all-the-women-in-the-courtroom.shtml (noting anecdotally a persistent gender gap in representation, despite outstanding outcomes obtained by female attorneys in recent MDL cases).

[5] Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, N.Y.U. L. REV. (forthcoming 2015) (draft at 25-27), available at http://ssrn.com/abstract=2437853 presenting empirical study of repeat players in MDLs and noting gender gap within those repeat players); Jaime Dodge, *Facilitating Judging: Organizational Design in Mass-Multidistrict Litigation*, 64 EMORY L.J. ___ (2014) (presenting empirical data on PEC, PSC, and defense-side appointments, and noting a persistent but narrowing gender gap).

[6] Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, N.Y.U. L. REV. (forthcoming 2015) (draft at 25-27), available at http://ssrn.com/abstract=2437853.

[7] See generally ALI, *Principles of the Law of Aggregate Litigation*, section 2.07 (describing structural conflicts necessitating judicial intervention).  *See also* Roger H. Transgrud, *Aggregate Litigation Reconsidered*, 79 GEORGE WASHINGTON L. REV. 293, 303-05 (summarizing debate around structural conflicts of interest between plaintiffs).