Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Counsel for Plaintiff Rachel Banks Kupcho*
[*Additional Counsel Listed in Signature Block*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MAXIMILLIAN KLEIN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 20-cv-08570-LHK<br><br>PLAINTIFF BANKS KUPCHO'S RESPONSE TO KLEIN PLAINTIFFS' APPLICATION TO APPOINT QUINN EMANUEL URQUHART & SULLIVAN, LLP AND KELLER LENKNER LLC AS INTERIM CO-LEAD COUNSEL FOR THE USER CLASS |
| This document relates to:<br><br>*Banks Kupcho v. Facebook, Inc.*, No. 20-cv-08815-LHK | |

## I.     INTRODUCTION

Plaintiff Rachel Banks Kupcho respectfully submits this response to the Klein Plaintiffs' application to appoint Quinn Emmanuel Urquhart & Sullivan, LLP and Keller Lenkner LLC as interim-lead counsel. In their application, the Klein Plaintiffs rely heavily on the argument that the Klein Complaint[1] "did not rely on a government enforcement action, but instead was the result of an extensive factual and legal investigation which began in 2019." Klein Application at 6.[2] This characterization ought to be examined, since the Klein Complaint—consistent with all other complaints—heavily relies and follows on an extensive investigation performed by the United States House of Representatives. Given this context, who filed the first Complaint and the investigation of counsel is respectfully a non-factor. Plaintiff Banks Kupcho asks the Court to appoint the leadership structure that Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Lockridge Grindal Nauen P.L.L.P ("LGN") have proposed, since it is transparent, diverse, tailored to the needs of this case, and safeguards class resources.

## II.     ANALYSIS

In the summer of 2019, the United States House of Representatives' antitrust subcommittee announced an investigation into Facebook and Google.[3] Many antitrust attorneys, including attorneys at Hagens Berman and LGN, followed the hearings and investigation as it developed. The Klein Complaint—along with all other complaints—primarily relies on the fruits of this investigation and borrows both language and reasoning from the House Subcommittee Report, which was published in October 2020.[4]

---

[1] The "Klein Complaint" refers to Class Action Complaint, Dec. 3, 2020, ECF No. 1.

[2] "Klein Application" refers to the Klein Plaintiffs' Application to Appoint Quinn Emanuel Urquhart & Sullivan, LLP and Keller Lenkner LLC as Interim Co-Lead Counsel for the User Class, March 5, 2021, ECF No. 55.

[3] *See* Tony Romm & Elizabeth Dwoskin, *Facebook, Google and other tech giants to face antitrust investigation by House lawmakers*, The Washington Post (June 3. 2019) *available at* https://www.washingtonpost.com/technology/2019/06/03/facebook-google-other-tech-giants-face-antitrust-investigation-by-house-lawmakers.

[4] House Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary, 116th Cong., *Investigation of Competition in Digital Markets*, Majority Staff Report and Recommendations ("House Subcommittee Report"), *available at*

BANKS KUPCHO'S RESPONSE TO APPOINT QUINN EMANUEL & KELLER LENKNER AS INTERIM CO-LEAD COUNSEL FOR THE USER CLASS
Case No. 20-CV-08570-LHK

- 1 -

For example, the House Subcommittee Report emphasizes the "powerful direct network effects" that contribute to an anticompetitive market; the Klein Complaint mirrors this language. *Compare* House Subcommittee Report at 41 (noting "social networks like Facebook exhibit powerful direct network effects") to Klein Complaint, ¶ 77 (discussing "[t]he powerful direct network effects inherent in the Social Network and Social Media Markets"). Likewise, the House Subcommittee Report describes the high switching costs associated with leaving Facebook that the Klein Complaint adopts. *Compare* House Subcommittee Report at 145 to Klein Complaint, ¶ 198. The House Subcommittee Report also describes how Facebook's strategy to "acquire, copy, or kill" its competitors have created a monopoly that has eroded the privacy protections for its users over time, similarly adopted by *Klein*. *Compare* House Subcommittee Report at 14 to Klein Complaint, ¶ 169.

Given the Klein Complaint's reliance on and adoption of the House Subcommittee Report, it is no surprise that the complaints that were filed after—which were submitted within days of each other—contain similar allegations and reasoning.[5] This does not mean that the other complaints reflect an "endorsement of the theories that Quinn Emanuel and Keller Lenkner first developed." Klein Application at 6. Rather, all the complaints relied on the House Subcommittee's extensive investigation and reasoning.[6] And since the complaints all rely on the House Subcommittee Report,

https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf (last visited Mar. 10, 2021).

[5] The Klein Complaint was filed on December 3, 2020. ECF No. 1. Six days later, 46 states and the District of Columbia filed their own complaint, alleging similar antitrust misconduct. *See* Complaint, *State of New York v. Facebook, Inc.*, No. 20-cv-03589-JEB (D.D.C. Dec. 9, 2020), ECF No. 4 ("New York Complaint"). Plaintiff Banks Kupcho's Complaint was filed two days after that, on December 11, 2020. Class Action Complaint, *Banks Kupcho v. Facebook Inc.*, No. 20-cv-8815 LKH (N.D. Cal. Dec. 11, 2020), ECF No. 1.

[6] While the Klein Application suggests that its counsel engaged in substantive legal discussions "defining the relevant markets and refining the theories for how Facebook's privacy practices [] constituted anticompetitive conduct" (Klein Application at 5), the House Subcommittee Report was the first to articulate a relevant market and provide a framework for liability. *See* House Subcommittee Report at 37-46 (defining the relevant market and describing the high switching costs); 43 (noting that "a dominant platform can use its market power to extract more data from users, undermining their privacy"). Tellingly, the New York Complaint includes discussion of a similar relevant market. *See* New York Complaint, ¶¶ 26-46.

this case is unlike the case law cited by the Klein Plaintiffs, much of which involved a truly independent investigation by counsel.[7] *See* Klein Application at 6 (citing cases).

Given these facts, this is not a case where the analysis for appointing interim class counsel should begin and end by analyzing which firm conducted the investigation into the facts; nor in this case could the Court rightly conclude that only one group of firms initiated this investigation. Here, the United States government led the investigation into Facebook's misconduct—reviewing more than 125,000 documents produced by Facebook and performing extensive public hearings. *See* House Subcommittee Report at 25 (describing the government's document requests and hearings). Plaintiff Banks Kupcho asks the Court to instead focus its analysis on which firms have the best plan to represent the class and avoid "unnecessarily duplicative or inefficient work by virtue of the fact that so many billers needed to familiarize themselves with the case and keep abreast of case developments."[8]

Hagens Berman and LGN have proposed a structure that is distinct from others because it assigns responsibilities to specific attorneys who have committed to leading and supporting this litigation. This proposed structure provides unmatched efficiency, transparency, and accountability: the Court and the class will know which attorneys are responsible for the development of each aspect of this case. This structure will also ensure that each stage of litigation proceeds efficiently, with a focused group of attorneys who will know the facts. And to avoid unnecessary and duplicative billing, Hagens Berman and LGN have also proposed significant billing limits unmatched by other proposals. For example, Hagens Berman and LGN commits that reviewers for Tier 1 document review will be capped at $250 per hour.[9] And both firms have committed that they

[7] For example, there was no common investigative source for the allegations in *In re iPhone 4S Consumer Litig.*, No. 12-cv-01127-CW, 2012 WL 12960637, at *1 (N.D. Cal. July 5, 2012), and yet the complaints mirrored each other's structure and language.

[8] *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2018 WL 11195115, at *3 (N.D. Cal. Feb. 2, 2018).

[9] $250 per hour is near the low end of the range that courts have approved in similar class actions. *See In re Anthem, Inc. Data Breach Litig.*, 15-md-02617-LHK, 2018 WL 3960068, at *20 (N.D. Cal. Aug. 17, 2018) ("This Court will use an hourly rate of $240.00—the low end of the range that Professor Rubenstein has identified as having been approved in federal class actions.").

BANKS KUPCHO'S RESPONSE TO APPOINT QUINN EMANUEL & KELLER LENKNER AS INTERIM CO-LEAD COUNSEL FOR THE USER CLASS
Case No. 20-CV-08570-LHK

- 3 -

will not bill time for more than two attorneys to attend any deposition.[10] The number of attorneys attending hearings and meetings will also be limited. These measures are unmatched by any other leadership application before this Court and guard class resources.

## III. CONCLUSION

This litigation follows on the heels of an extensive investigation performed by the United States House of Representatives. All the firms that have proposed leadership structures employ many well-qualified and distinguished attorneys.[11] Hagens Berman and LGN propose a leadership structure that meets the needs of this case: the leadership structure provides unmatched accountability and carefully guards class resources.

DATED: March 8, 2021

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

*s/ Shana E. Scarlett*
SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

W. Joseph Bruckner *(pro hac vice)*
Robert K. Shelquist *(pro hac vice)*
Brian D. Clark *(pro hac vice)*
Rebecca A. Peterson (SBN 241858)
Arielle S. Wagner *(pro hac vice)*
Stephanie A. Chen *(pro hac vice)*
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200

---

[10] Both firms have also committed that most fact depositions will be attended by one attorney.

[11] While Keller Lenkner is a relatively new firm, Hagens Berman and LGN have worked with Quinn Emanuel's attorneys in past cases both as co-lead and on opposing sides. In opposing their application, Hagens Berman and LGN respect counsel at both these firms and do not diminish their experience or qualifications.

Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com
rapeterson@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

*Counsel for Plaintiff Rachel Banks Kupcho*