Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

*Attorneys for the Klein Plaintiffs*

Warren Postman (Bar No. 330869)
  wdp@kellerlenkner.com
Jason Ethridge (admitted *pro hac vice*)
  jason.ethridge@kellerlenkner.com
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, DC 20005
(202) 918-1123

Ashley Keller (admitted *pro hac vice*)
  ack@kellerlenkner.com
Benjamin Whiting (admitted *pro hac vice*)
  ben.whiting@kellerlenkner.com
Jason A. Zweig (admitted *pro hac vice*)
  jaz@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN and SARAH GRABERT, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation headquartered in California,<br><br>*Defendant.* | Case No. 5:20-cv-08570-LHK<br><br>Hon. Lucy H. Koh<br><br>Hearing Date:  March 18, 2021<br><br>***KLEIN* PLAINTIFFS' RESPONSE TO COMPETING APPLICATION FOR APPOINTMENT AS INTERIM CO-LEAD USER CLASS COUNSEL** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .................................................................................................................................2

I.      QUINN EMANUEL AND KELLER LENKNER IDENTIFIED, INVESTIGATED, AND DEVELOPED THE USER CLASS'S CLAIMS..........................................................2

II.     QUINN EMANUEL AND KELLER LENKNER OFFER THE USER CLASS UNIQUE ANTITRUST KNOWLEDGE AND EXPERIENCE.............................................5

III.    APPOINTING QUINN EMANUEL AND KELLER LENKNER WILL FURTHER THE STRONG PUBLIC POLICY UNDERPINNING PRIVATE ENFORCEMENT OF THE ANTITRUST LAWS. ..........................................................................................5

IV.    *KUPCHO* COUNSEL'S INSINUATIONS AGAINST QUINN EMANUEL DO NOT IDENTIFY ANY INADEQUACIES AND DEMONSTRATE THAT *KUPCHO* COUNSEL DOES NOT UNDERSTAND THE CASE THEY COPIED. ...........7

CONCLUSION ...............................................................................................................................9

# TABLE OF AUTHORITIES

**Page**

### Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  No. 14-cv-7126-JMF, 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ........................................ 7

*Carlin v. DairyAmerica, Inc.*,
  No. 09-cv-0430-AWI, 2009 WL 1518058 (E.D. Cal. May 29, 2009) .................................... 4

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ..................................................................................................... 6

*Chacanaca v. Quaker Oats Co.*,
  No. 10-cv-0502-RS, 2011 WL 13141425 (N.D. Cal. June 14, 2011) .................................... 3

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972) ................................................................................................................. 6

*In re: Credit Default Swaps Antitrust Litig.*,
  13-md-2476-DLC (April 15, 2016) ......................................................................................... 7

*In re Facebook Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................................... 3

*In re GSE Bonds Antitrust Litig.*,
  377 F. Supp. 3d 437 (S.D.N.Y. 2019) ..................................................................................... 2

*In re MF Global Holdings, Ltd.*,
  464 B.R. 619 (Bankr. S.D.N.Y. 2012) .................................................................................... 6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................. 6

*In re iPhone 4S Consumer Litig.*,
  No. 12-cv-01127-CW, 2012 WL 12960637 (N.D. Cal. July 5, 2012) ............................... 3, 6

*In re Seagate Tech. LLC Litig.*,
  No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016) ................................ 2

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  No. 5:16-md-02752-LHK (N.D. Cal. Dec. 3, 2016) ................................................................ 3

*Levitte v. Google, Inc.*,
  No. 08-cv-03369-JW, 2009 WL 482252 (N.D. Cal. Feb. 25, 2009) ....................................... 2

*Michelle v. Arctic Zero, Inc.*,
  No. 3:12-cv-02063-GPC, 2013 WL 791145 (S.D. Cal. Mar. 1, 2013) ................................... 3

*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972) ................................................................................................................. 6

**Rules and Regulations**

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................... 1, 2

Fed. R. Civ. P. 23(g)(1)(A)(i).................................................................................... 4

**Additional Authorities**

1 *Newberg on Class Actions*, § 3.75 (5th ed.) ............................................................ 7

5 *Moore's Federal Practice*, § 23.120[3][a] (Matthew Bender 3d Ed.) ......................... 3

Bruce H. Kobayashi and Larry E. Ribstein, "Class Action Lawyers as Lawmakers",
    46 Ariz. L. Rev. 733 (2004) ................................................................................ 6

Charles Silver, "Class-Actions-Representative Proceedings",
    5 *Encyclopedia of Law and Economics*, 194 (2000) ........................................... 6

QUINN EMANUEL AND KELLER LENKNER RESPONSE TO COMPETING APPLICATION

**PRELIMINARY STATEMENT**

Quinn Emanuel's and Keller Lenkner's application detailed their multi-year investigation in this case. *See Klein*, Dkt. 55 ("Mot.") at 4–7.  It detailed how they consulted extensively with leading industry and economic experts; how they carefully thought through the issues in the case, pressure-testing various market definitions, theories of anticompetitive conduct, antitrust injury, damages, and causes of action; and how they crafted a detailed, well-sourced complaint that was filed before any other related litigation, private or public.  *Id.*  Quinn Emanuel and Keller Lenkner also detailed how they possess unparalleled resources, have a stellar record of success, offer a diverse team with varied perspectives, and have committed to moving this case forward as quickly and efficiently as possible.  *Id.* at 7–25.

Reflecting the lead role that Quinn Emanuel and Keller Lenkner have already taken in advancing the interests of the User Class, two other firms have agreed that Quinn Emanuel and Keller Lenkner are best positioned to serve as lead counsel for the User Class.  *Klein*, Dkts. 56, 57.  Only one competing application has been filed to represent the User Class.  *Klein*, Dkt. 59.  Tellingly, that application fails to contain ***a single line*** addressing the first Rule 23(g)(1)(A) factor: "the work counsel has done in identifying or investigating potential claims in the action."  That application does not even suggest that *Kupcho* counsel did any investigation of the claims and issues in this case before Quinn Emanuel and Keller Lenkner filed *Klein*.  Nor does it proffer any evidence that *Kupcho* counsel conducted its own investigation or original analysis even *after Klein* was filed.  The reality is that *Kupcho* counsel essentially copied over 60 pages from the *Klein* complaint, verbatim, including custom hyperlinks from Quinn Emanuel's and Keller Lenkner's factual investigation.  *See, e.g.*, *Kupcho*, Dkt. 1 at ¶ 60 n.31 (citing decision of German Federal Cartel Office and copying the custom hyperlink hosted at https://kl.link/39AxErE).

Given the strength of Quinn Emanuel's and Keller Lenkner's application regarding each and every one of the Rule 23(g)(1)(A) factors, we respectfully submit that the Court should appoint the counsel that, *without dispute*, have put the most time, thought, and initiative into developing and advancing this case.  This result best serves the interests of the User Class.  And, it furthers an important public policy: preserving the incentive for firms to investigate and file private antitrust

cases of public importance like this one.  Quinn Emanuel and Keller Lenkner have already demonstrated investment and initiative into developing the case and its theories, which will translate into initiative and investment in zealously representing the User Class.  The deep issue understanding that Quinn Emanuel and Keller Lenkner have demonstrated thus far should result in our firms' effective and efficient prosecution of the User Class's claims.

## ARGUMENT

Rule 23(g)(1)(A) enumerates the criteria that govern the Court's appointment of class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  *Levitte v. Google, Inc.*, No. 08-cv-03369-JW, 2009 WL 482252, at *2 (N.D. Cal. Feb. 25, 2009).  The Court "may also consider 'any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'"  *In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016).  As laid out in the *Klein* Plaintiffs' application, each and every one of the pertinent factors favors the appointment of Mr. Swedlow and Mr. Postman as Interim Co-Lead User Class Counsel.

## I.  QUINN EMANUEL AND KELLER LENKNER IDENTIFIED, INVESTIGATED, AND DEVELOPED THE USER CLASS'S CLAIMS.

Where multiple firms bring significant experience, knowledge, and resources to the table in seeking to lead a putative class, it best serves the putative class to appoint the firms that first developed and filed the claims at issue.  *See In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (determining that Rule 23(g) favored appointment of firms as interim co-lead class counsel because firms "represent[ed] the plaintiffs who filed the first . . . actions," "did substantial investigative work and invested significant resources," and firms' complaint "is clearly the template for the great majority of the cases filed[.]").  That is because the counsel who first develop a case have demonstrated important qualities that will benefit the class.  The counsel that thoroughly investigate a case and are the first to file it have shown greater creativity and initiative than counsel who merely file a "copycat" complaint, and those qualities will serve the class

throughout the litigation of the case. And, the counsel that most thoroughly investigate and develop a case are also likely to have a deeper understanding of the relevant factual and legal issues, which makes them better positioned to effectively move the case forward. *Cf. In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. Dec. 3, 2016) (Koh, J.), Dkt. 2 at 3 (noting counsel's "[w]illingness and ability to commit to a time-consuming process" among the "chief criteria" governing the selection of interim class counsel). In short, "if an attorney has performed the investigatory and analytical tasks necessary to draft the complaint, . . . 'he or she is in a better position to represent the class fairly and adequately than attorneys who have not undertaken those tasks.'" *In re iPhone 4S Consumer Litig.*, No. 12-cv-01127-CW, 2012 WL 12960637, at *1 (N.D. Cal. July 5, 2012) (quoting 5 *Moore's Federal Practice*, § 23.120[3][a] (Matthew Bender 3d Ed.)); *see also Michelle v. Arctic Zero, Inc.*, No. 3:12-cv-02063-GPC, 2013 WL 791145, at * 3 (S.D. Cal. Mar. 1, 2013) (selecting counsel who "demonstrated they have conducted more research and investigation in developing the case."); *In re Facebook Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012) (appointing firm that "already devoted substantial time and resources . . . in identifying and investigating the claims set forth in the complaint"); *Chacanaca v. Quaker Oats Co*., No. 10-cv-0502-RS, 2011 WL 13141425, at *3 (N.D. Cal. June 14, 2011) ("[I]t makes sense for the Weston firm, and its co-counsel the Marron firm, to continue as counsel in a case that appears to be essentially the product of their work and design, and they therefore will be appointed as interim class counsel.").

In a case of this importance, the User Class deserves counsel who are able to hit the ground running and use their deep understanding of the issues to push the case forward skillfully and efficiently. This is not a case in which lead counsel can just learn the issues on the job. Quinn Emanuel and Keller Lenkner developed the User Class's claims after conducting an exhaustive factual and legal investigation which first began in 2019. *See* Mot. at 4–7. Because of our extensive investigation, which resulted in the first-of-its-kind *Klein* complaint, our firms have an intimate understanding of the key factual, legal, and technical issues at play, including: defining the relevant markets, the nature of Facebook's anticompetitive conduct, viable theories of antitrust injury, how to model damages, and countless other important issues and nuances. Indeed, although public

sources and government investigations—such as that of the House Subcommittee on Antitrust, Commercial and Administrative Law—had previously suggested that Facebook's serial acquisitions may have given Facebook monopoly power, Quinn Emanuel and Keller Lenkner identified a distinct and critical dimension of Facebook's anticompetitive scheme.  As detailed in the *Klein* complaint, Facebook's systematic deception of consumers regarding the amount of data Facebook collected and shared allowed Facebook to: (a) win the race to dominate the Social Network and Social Media Markets; and (b) surveil users in order to enable and reinforce Facebook's anticompetitive acquisition strategy.  *See, e.g., Klein*, Dkt. 1, ¶¶ 91–125, 144–53.  This theory—which forms one of the two main pillars of this case—was a significant advancement beyond any prior government investigation, can be traced directly to the *Klein* complaint, and was copied verbatim by *Kupcho* counsel.  *Compare Kupcho*, Dkt. 1, ¶¶ 92–126, 145–54.

By contrast, and despite trumpeting the critical importance of their own investigative efforts in connection with the appointment of lead counsel in ***other*** cases,[1] *Kupcho* counsel tellingly did not even attempt to address Rule 23(g)(1)(A)(i) here.[2]  Nor could they, since the *Kupcho* complaint wholesale copies more than 60 pages of the *Klein* complaint.  *See Carlin v. DairyAmerica, Inc.*, No. 09-cv-0430-AWI, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (declining to appoint Hagens Berman as lead counsel and rejecting its arguments regarding its purported pre-filing investigation work since "Cohen Milstein has done a majority of the preparation work leading to the filing of these actions, . . . a simple comparison of the original complaint in this action with the two filed by Hagens Berman reveals that they are almost identical.").  The failure of *Kupcho* counsel's

---

[1]  *See, e.g., Fremgen et al v. Amazon.com, Inc*, et al., No. 1:21-cv-00351-GHW (S.D.N.Y.), Dkt. 35 at 1–2, 5 (arguing that Hagens Berman should be appointed lead counsel because it filed the first case, conducted a "thorough pre-filing investigation of the alleged antitrust violations," and "[t]he later-filed actions are derivative of (and often incorporate verbatim) the allegations in" their first-filed complaint).

[2]  Should *Kupcho* counsel attempt to raise, for the first time, their purported investigative efforts in any responsive filings, any such contention is belied by the fact that the *Kupcho* complaint cuts and pastes over 60 pages from the *Klein* complaint.  And, to the extent that *Kupcho* counsel did do any work whatsoever beyond cutting and pasting, such efforts could and should have been described in their application so that other parties could respond.

application to provide any objective evidence of their independent investigation or thought should end the analysis.

## II.   QUINN EMANUEL AND KELLER LENKNER OFFER THE USER CLASS UNIQUE ANTITRUST KNOWLEDGE AND EXPERIENCE.

As described in Quinn Emanuel's and Keller's Lenkner's application, *see* Mot. at 7–17, this litigation sits squarely in our firms' wheelhouses. Our firms have collectively recovered billions of dollars on behalf of antitrust plaintiffs in private, class-action, and opt-out cases and arbitrations. Beyond our other qualifications, as well as our development of the theories of liability and damages against Facebook in this case, we offer the User Class a critical tool: unique experience and expertise in litigating these types of issues directly against Facebook.

In *Social Ranger, LLC v. Facebook, Inc.*, C.A. No. 14-1525-LPS (D. Del.), Quinn Emanuel (including Mr. Teruya, an attorney in this case), with other co-counsel, brought against Facebook an antitrust case alleging its monopolization of the relevant market for virtual currency services using its power in the relevant market for social game networks. Mot. at 9. Quinn Emanuel litigated the case from and through the pleadings phase, fact and expert discovery, summary judgment and *Daubert* briefing, preparation of pre-trial submissions, and trial preparation. Notably (and among other things), Quinn Emanuel took the deposition of Mark Zuckerberg during the case, after multiple rounds of briefing seeking to compel the deposition. *Id.* All of these efforts led to significant expertise in Facebook-specific antitrust issues, including market definition, anticompetitive conduct, and anticompetitive effects. Ultimately, the parties resolved the case shortly before trial.

Quinn Emanuel's specific experience and expertise against Facebook—along with Keller Lenkner's substantial antitrust and class-action experience—has and will continue to significantly benefit the User Class.

## III.   APPOINTING QUINN EMANUEL AND KELLER LENKNER WILL FURTHER THE STRONG PUBLIC POLICY UNDERPINNING PRIVATE ENFORCEMENT OF THE ANTITRUST LAWS.

Quinn Emanuel and Keller Lenkner respectfully submit that appointing our firms as Interim Co-Lead User Class Counsel will not only best serve the User Class—given that our firms developed

1  the claims at issue and are therefore uniquely positioned to expeditiously litigate them—but will

2  also best promote the strong public policy of vigorous private antitrust enforcement.  *See United*

3  *States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman

4  Act in particular, are the Magna Carta of free enterprise.  They are as important to the preservation

5  of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our

6  fundamental personal freedoms."); *accord Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266

7  (1972); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 487–88 (S.D.N.Y.

8  1998) ("Meritorious class actions . . . promote private enforcement of, and compliance with, the

9  antitrust laws.").

10       The mere filing of a "copycat" complaint advances neither the strong public policy

11  underpinning the antitrust laws, nor the interests of the Class.  Instead, "copycat complaints . . . are

12  merely entrepreneurial efforts taken by firms attempting to secure lead counsel status."  *In re*

13  *Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005).  That is why courts routinely appoint

14  as class counsel those firms with a greater role in developing a case over firms that have simply

15  copied and pasted the work of other firms.  *See*, *e.g., In re MF Global Holdings, Ltd.*, 464 B.R. 619,

16  625 n. 4 (Bankr. S.D.N.Y. 2012) (declining to appoint as lead counsel an applicant who filed a

17  complaint that "appear[ed] to be a nearly word-for-word copy of the complaint" filed by other

18  counsel seeking appointment.); *In re iPhone 4S Consumer Litig*., 2012 WL 12960637 at *1

19  (appointing counsel in first-filed case where a "comparison of the complaints reveals that the Jones

20  complaint contains strikingly similarl[] allegations to those in the original Fazio complaint.").

21       To appoint counsel other than Quinn Emanuel and Keller Lenkner would allow lawyers

22  merely filing copycat complaints to "free-ride on the considerable investments made by the drafting

23  attorney" and "reduce the incentive to engage in such activity."  Bruce H. Kobayashi and Larry E.

24  Ribstein, *Class Action Lawyers as Lawmakers*, 46 Ariz. L. Rev. 733, 752–53 (2004).  This is

25  important because "[j]udges are rightly concerned about denying lawyers who uncover wrongdoing

26  the reward of serving as class counsel.  Unless lawyers are compensated for time spent inventing

27  liability theories and investigating misconduct, they will be discouraged from doing so."  Charles

28

Silver, "Class-Actions-Representative Proceedings", 5 *Encyclopedia of Law and Economics*, 194, 221 (2000).

Incentivizing attorneys to uncover and pursue wrongdoing is particularly important in antitrust cases and, in particular, antitrust class actions.  Judge Denise L. Cote of the Southern District of New York, for example, has observed:

> [T]here is a public policy that is important in this land to encourage top-tiered litigators to pursue challenging cases like this.  Antitrust violations go to the heart of our economy.  Our economic health and stability as a nation depend on the rule of law and trust in the fairness and transparency of our marketplace.

*In re: Credit Default Swaps Antitrust Litig.*, 13-md-2476-DLC (April 15, 2016), Dkt. No. 563 at 31; *accord Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126-JMF, 2018 WL 6250657, at *1 (S.D.N.Y. Nov. 29, 2018) ("[P]ublic policy favors rewarding the successful prosecution of antitrust claims.").  Appointing Quinn Emanuel and Keller Lenkner as Interim Co-Lead User Class Counsel will continue to incentivize attorneys to investigate, uncover, and pursue antitrust wrongs while discouraging the conduct of those who merely file "copycat" complaints.

## IV.  *KUPCHO* COUNSEL'S INSINUATIONS AGAINST QUINN EMANUEL DO NOT IDENTIFY ANY INADEQUACIES AND DEMONSTRATE THAT *KUPCHO* COUNSEL DOES NOT UNDERSTAND THE CASE THEY COPIED.

*Kupcho* counsel speculates that Quinn Emanuel's leadership could be "problematic" because other attorneys in that firm represent Google in a data-privacy case currently before this Court. *Klein*, Dkt. 59 at 19 n.7 (referencing *Calhoun et al. v. Google LLC*, No. 5:20-cv-05146 (N.D. Cal.) (Koh, J.)).  Such unsupported and vague speculation is not a basis to pass over qualified, dedicated counsel for leadership.[3]  Quinn Emanuel takes its ethical responsibilities to the putative class it seeks to represent as paramount, has no conflict of any kind, and has a record of leadership and results in cases like this one that makes it implausible to suggest Quinn Emanuel would provide anything less than the best possible representation to the User Class.

---

[3]  1 *Newberg on Class Actions*, § 3.75 (5th ed.) ("[O]nly client conflicts that are material and presently manifest—rather than merely trivial, speculative, or contingent on the occurrence of a future event—will affect the adequacy of class counsel.").

1        More important, however, is that *Kupcho* counsel's argument demonstrates their inadequacy

2  for a lead counsel role because they do not seem to understand the claims they copied from Quinn

3  Emanuel's and Keller Lenker's complaint.  This is not a data privacy case; it is an antitrust case

4  based on a monopolist's anticompetitive misuse of its users' data.  The antitrust claims against

5  Facebook that the *Klein* plaintiffs assert, and therefore that the *Kupcho* plaintiff asserts, are

6  predicated on what users lost in the market—in terms of competitive options and competitive

7  compensation—due to Facebook's illegal acquisition and maintenance of social media and social

8  network monopoly power, stemming from its systematic deception of its users in how it would use

9  their data.  In contrast, the *Calhoun* plaintiffs appear to assert claims predicated on initial access to

10  data, in the context of the Google Chrome web browser.

11        Perhaps because *Kupcho* counsel have misunderstood the core theory of this case, they also

12  appear to have missed that the *Klein* Plaintiffs' case is not adverse to Google, even indirectly.  Both

13  the *Klein* and *Kupcho* complaints—and, indeed, every User complaint currently before this Court—

14  allege that Facebook's deception, bolstered by strong network effects and high switching costs,

15  enabled Facebook to obtain and maintain social network and social media monopoly power, which

16  improperly avoided competition from—and thus caused injury to—Google.[4]  *Kupcho* counsel

17  adopted this same formulation of the User Class's harm when they engaged in wholesale copying

18  of the *Klein* complaint.[5]  Indeed, the *Kupcho* complaint expressly details (in allegations copied

19  verbatim from the *Klein* complaint) how, previously, "Google's attempt to compete with Facebook

20  [with Google+] failed because it could not attract the critical mass necessary to deliver a viable

21  social network and therefore to overcome the network-based switching costs Facebook enjoyed as

22  a result of its deception."[6]  Google is therefore an ***injured competitor*** in this antitrust case.  And, a

23  _____

24     [4]  *See*, *e.g.*, *Klein*, Dkt. 1, ¶¶ 120, 198; *Kupcho*, Dkt. 1, ¶¶ 121, 200 (same).

25     [5]  Public entities that have since filed their own complaints against Facebook have also
agreed with the same formulation: 48 Attorneys General ***and*** the Federal Trade Commission assert

26  virtually identical theories of harm to competition.  *See e.g.*, *The State of New York et al v. Facebook,
Inc.*, Case No. 1:20-cv-03589-JEB (D.D.C. Dec. 9, 2020), Dkt. 4 at ¶¶ 95–97; *Federal Trade

27  Commission*, *v. Facebook, Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C. Dec. 9, 2020), Dkt. 3 at ¶¶
65, 161–63.

28     [6]  *See*, *e.g.*, *Klein*, Dkt. 1, ¶ 120; *Kupcho*, Dkt. 1, ¶¶ 121 (same).

1  case that alleges unilateral acquisition of monopoly power, as this one does, can by definition focus

2  on only one monopolist, which is Facebook.  Any suggestion by counsel in this case that Google

3  engaged in similar anticompetitive conduct in the same market would not only be incorrect, but

4  actually would **undermine** the claims of the User Class.

5      *Kupcho* counsel's failure to appreciate these dynamics is an unfortunate indication that,

6  despite copying the *Klein* complaint, they do not fully understand the nature of the claims.  Their

7  argument thus bolsters why the counsel that actually developed the liability and damages theories

8  at issue (*i.e.*, Quinn Emanuel and Keller Lenkner) are the best to pursue it for the User Class.

9                                    **CONCLUSION**

10     For the foregoing reasons, the *Klein* Plaintiffs respectfully request that the Court appoint

11  Stephen A. Swedlow, Warren Postman, and our respective firms—Quinn Emanuel and Keller

12  Lenkner—as Interim Co-Lead Counsel for the User Class.

13

14     Dated: March 10, 2021                         Respectfully submitted,

15                                                    */s/ Stephen A. Swedlow*
    Stephen A. Swedlow (admitted *pro hac vice*)     Warren Postman (Bar No. 330869)
16     stephenswedlow@quinnemanuel.com                  wdp@kellerlenkner.com
    **QUINN EMANUEL URQUHART & SULLIVAN, LLP**        Jason Ethridge (admitted *pro hac vice*)
17  191 N. Wacker Drive, Suite 2700                     jason.ethridge@kellerlenkner.com
    Chicago, IL 60606-1881                            **KELLER LENKNER LLC**
18  (312) 705-7400                                    1300 I Street, N.W., Suite 400E
                                                      Washington, DC 20005
19  Kevin Y. Teruya (Bar No. 235916)                  (202) 918-1123
       kevinteruya@quinnemanuel.com
20  Adam B. Wolfson (Bar No. 262125)                  Ashley Keller (admitted *pro hac vice*)
       adamwolfson@quinnemanuel.com                     ack@kellerlenkner.com
21  Brantley I. Pepperman (Bar No. 322057)            Ben Whiting (admitted *pro hac vice*)
       brantleypepperman@quinnemanuel.com               ben.whiting@kellerlenkner.com
22  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**        Jason A. Zweig (admitted *pro hac vice* )
    865 South Figueroa Street, 10th Floor                jaz@kellerlenkner.com
23  Los Angeles, CA 90017-2543                        **KELLER LENKNER LLC**
    (213) 443-3000                                    150 N. Riverside Plaza, Suite 4270
24                                                    Chicago, IL 60606
                                                      (312) 741-5220
25

26                                                    *Attorneys for the Klein Plaintiffs*

27

28

1

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: March 10, 2021                    By   /s/ Stephen A. Swedlow
                                                      Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By   /s/ Stephen A. Swedlow
        Stephen A. Swedlow