# EXHIBIT C

| | |
|---|---|
| **From:** | Warren Postman <wdp@kellerlenkner.com> |
| **Sent:** | Wednesday, April 7, 2021 11:36 PM |
| **To:** | Mehta, Sonal |
| **Cc:** | Ashley Keller; Gringer, David |
| **Subject:** | Re: Confirmation of ethical screen in Klein v. Facebook |

**EXTERNAL SENDER**

Hi Sonal,

Responses to each of your questions are inline in red below. Please let me know if you have additional questions or would like to discuss further.

Sincerely,

**Warren Postman**
Partner

Keller | Lenkner

1300 I Street, N.W., Suite 400E | Washington, D.C., 20005
202.749.8334 | Email | Bio | Website

---

**From:** Mehta, Sonal
**Date:** Tuesday, March 30, 2021 at 11:24 PM
**To:** Warren Postman
**Cc:** Ashley Keller , Gringer, David
**Subject:** RE: Confirmation of ethical screen in Klein v. Facebook

Warren,
Thank you for your email. You are correct that we were referring to Albert Pak during the hearing in front of Judge Koh. As you know, Keller Lenkner hired Mr. Pak in June 2020. Immediately prior to that, Mr. Pak was an attorney at Kellogg Hansen. While at Kellogg Hansen, between December 2019 and June 2020, Mr. Pak spent hundreds of hours working on behalf of Facebook on the related FTC and state AG antitrust investigations. Kellogg Hansen represented Facebook during the government investigations and is currently serving as lead trial counsel for Facebook in the resulting litigation. Mr. Pak's involvement with this matter while at Kellogg Hansen was substantive, including, for example, participating in fact gathering for witness interviews, analyzing productions in this and related matters, and substantively engaging with expert witnesses. Thus, while we appreciate your commitment to honor screening procedures for the duration of the *Klein* case, you will understand the importance of and need for a robust screen that fully complies with all applicable ethical standards and protects Facebook's interests in these circumstances.
As a threshold matter, under DC Rule 1.10(b)(3), both Keller Lenkner and Mr. Pak individually were required to provide prompt notice to Facebook of the situation and the screening procedures. In your email below, you note that the screen was put in place on November 11, 2020. Mr. Pak joined Keller Lenkner in June 2020, several months before the screen was put in place. Facebook does not have any record of having received the required notices described above. In order to clarify the record and timing of the screen, please provide us with copies of the notices and let us know when they were provided to Facebook.

My prior email was the first notice that was provided to Facebook. Please consider that notice to be on behalf of Mr. Pak as well.

Thank you also for your offer to answer questions about the screening procedure. Facebook does have further questions and needs additional information or confirmation so that it can assess the adequacy of the screen. In particular:

● On what date in June 2020 did Mr. Pak begin working at Keller Lenkner?
Mr. Pak's first day at Keller Lenkner was June 29, 2020.

● Did Keller Lenkner perform a conflicts check for Mr. Pak before he began working at Keller Lenkner?
Keller Lenkner obtained a conflicts list from Mr. Pak and performed a conflicts check on July 1, 2020.

● When did Mr. Pak disclose his representation of Facebook to Keller Lenkner?
Mr. Pak disclosed his representation of Facebook as part of his conflicts list on July 1, 2020. I believe he also disclosed his representation of Facebook and other former clients to me verbally on June 30, 2020.

● Was any screen of Mr. Pak related to Facebook in place prior to November 11, 2020? If so, please describe the screen, including its scope and when it was implemented.
Before November 11, 2020, the firm had not decided to initiate a case against Facebook. As the firm considered the potential matter against Facebook, I instructed the small number of lawyers with whom I discussed the matter not to discuss the potential action or claims with Mr. Pak, and I instructed Mr. Pak not to discuss any potential action or claims against Facebook with anyone at the firm.

● Did Mr. Pak have access to any Facebook-related files or materials before implementation of the screen on November 11, 2020? For example, were there any technical restrictions on Mr. Pak's access to Keller Lenkner's cloud-based document management system prior to November 11, 2020?
Before the firm decided to pursue a case against Facebook, materials regarding potential claims were contained in emails between Ashley Keller, Ben Whiting, and me, and were stored locally on our hard drives, none of which could be accessed by Mr. Pak. Prior to November 11, 2020, only a single file relating to this case was saved on our cloud-based document management system, and our access records confirm that Mr. Pak never accessed it.

● Has any attorney or staff member at Keller Lenkner ever had any discussion with Mr. Pak regarding any potential claims against Facebook?
No. To be clear, in order to determine whether Mr. Pak would have to be screened, we asked Mr. Pak to describe generally, without disclosing confidential information, the subject matter of his prior representation of Facebook and whether he thought that representation might be deemed substantially related to antitrust claims brought on behalf of consumers against Facebook for monopolization of the social networking and social media markets. And we told Mr. Pak on November 11, 2020, that we were pursuing this case and that he was screened from it. But we understand this question to be asking if any attorney or staff member has ever discussed the substance of the claims with Mr. Pak, and the answer is no.

● You represented to the Court: "We've spent *months and years* thinking not about the high-level fact that an antitrust case could exist against Facebook, but the real nitty gritty. I've spent many late nights working on the complaint, the memos and before the cases." See March 18, 2021 Hearing Tr. at 48 (emphasis added). When did Keller Lenkner begin investigating or analyzing potential claims against Facebook?
The language quoted above was referring to the *combined* efforts of Keller Lenkner and Quinn Emanuel, and the fact that Quinn Emanuel began investigating the claims at issue in this case in 2019. Ashley Keller and I have followed developments in antitrust law, with a focus on technology companies such as Facebook, on an ongoing basis; that said, we began investigating and analyzing the claims in this case in August of 2020, after the House Judiciary Committee hearings.

● On what specific date did Keller Lenkner begin working to identify potential plaintiffs for any antitrust claims relating to Facebook?

2

November 22, 2020.

● Your email states "Only after the screening procedures were put in place did Keller Lenkner agree to join Quinn Emanuel in pursuing claims against Facebook and begin working on a draft complaint." What is the relevance of your affiliation with Quinn Emanuel to your implementation of a screen of Mr. Pak?

Before that point, Keller Lenkner had not fully decided to pursue a case against Facebook (and, as noted above, had no client adverse to Facebook). At any given time, Keller Lenkner is considering dozens of *potential* cases that we might pursue. We imposed the formal screen as soon as we were reasonably confident that we would, in fact, pursue claims against Facebook and before we affiliated with co-counsel, began drafting a complaint, or were retained by a client.

● You represented to the Court: "We -- Keller Lenkner worked to develop this case independently from Quinn Emanuel not knowing the work that they were doing. Once we had in our minds the theories worked through, we reached out to them." See March 18, 2021 Hearing Tr. at 47. On what specific date did Keller Lenkner first reach out to Quinn Emanuel? On what specific date did Keller Lenkner first discuss a potential co-counsel relationship or otherwise discuss any potential case against Facebook with Quinn Emanuel?

I am co-counsel with Steve Swedlow on another matter and so speak with him regularly. That said, based on my best recollection as well as a review of my emails and calendar entries, I first spoke with Quinn Emanuel regarding a potential antitrust case against Facebook and the possibility of partnering on such a case on October 14, 2020.

● Has Keller Lenkner screened Mr. Pak from the Texas AG antitrust litigation adverse to Google in which Facebook has been identified as a purported "co-conspirator"? If so, please describe the screen, including its scope and when it was implemented.

Yes, out of an abundance of caution, Keller Lenkner imposed a screen on December 15, 2020, which was the same day we decided to accept the engagement. The screen walled off Mr. Pak from the Google case to the same degree as the screen walling him off from the Facebook matter described in my prior email.

● Has Mr. Pak been screened from other matters involving Facebook aside from the *Klein* matter?

Keller Lenkner does not represent any other clients or have any other matters adverse to Facebook.

Thank you in advance for your prompt response to these questions. We may have additional questions as Facebook evaluates these issues. I am sure it goes without saying, Facebook reserves all rights.

Best,

**Sonal N. Mehta | WilmerHale**
2600 El Camino Real

Suite 400

Palo Alto, CA 94306 USA
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**Please consider the environment before printing this email.**

---

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Warren Postman
**Sent:** Friday, March 19, 2021 3:45 PM
**To:** Mehta, Sonal
**Cc:** Ashley Keller ; Gringer, David
**Subject:** Confirmation of ethical screen in Klein v. Facebook

**EXTERNAL SENDER**

Sonal,

At the hearing yesterday, you noted that, as part of his former employment at Kellogg Hansen, a lawyer at Keller Lenkner represented Facebook in an antitrust matter. You also said Facebook would want to determine whether that attorney has been screened from the *Klein* case.

We assume that the lawyer to whom you were referring is Albert Pak. I'm writing to confirm that Albert was promptly screened from the *Klein* matter. KL imposed a screen to wall off Mr. Pak from the *Klein* matter beginning on November 11, 2020. At that time, KL had not been retained by any client adverse to Facebook; Quinn Emanuel and KL had not yet agreed to co-counsel on, or file any case against, Facebook, and no KL lawyer had yet worked on any draft of the *Klein* complaint. Only after the screening procedures were put in place did KL agree to join Quinn Emanuel in pursuing claims against Facebook and begin working on a draft complaint.

KL imposed the following screening measures:

- All KL attorneys and staff are required to store electronic documents on our cloud-based document management system. Access to all documents related to the *Klein* matter is restricted to exclude Albert.

- All KL attorneys and staff were notified by email, marked "high priority," on November 11, 2020 that Albert had been screened from—and could not have any involvement in—the potential antitrust case KL was considering pursuing against Facebook.

- All attorneys and staff were further directed not to:

   o Speak to Albert about the potential case or any related issues;

   o Save any Facebook-related files outside of the Facebook workspace on the document management system; or

   o Leave physical case materials in unlocked or open areas that could be accessed by anyone not working on the matter.

- During a quarterly all-firm meeting conducted via Zoom on December 4, 2020, all KL attorneys and staff were reminded of this (and other) ethical screens in place at the firm and the attendant restrictions.

- All attorneys and staff who join KL are informed of this (and other) ethical screens in place at the firm and the attendant restrictions.

- The main KL "intranet" page for attorneys and staff lists current ethical screens in place at the firm, including this one.

We are committed to honoring these procedures scrupulously throughout the life of the *Klein* case. If you would like to discuss or have further questions about these procedures, please let us know and we will respond promptly.

Sincerely,

4

**Warren Postman**
Partner

## Keller | Lenkner

1300 I Street, N.W., Suite 400E | Washington, D.C., 20005
202.749.8334 | Email | Bio | Website