<u>**VIA CM/ECF FILING**</u>

May 14, 2021

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   Joint Discovery Letter Brief Concerning Dispute Regarding Entry of Protective Order in <u>Maximilian Klein et al. v. Facebook, Inc. Case No. 5:20-cv-08570-LHK (N.D. Cal.)</u>

Dear Judge DeMarchi:

Pursuant to Section 4 of the Court's Standing Order for Civil Cases, the Consumer Plaintiffs, the Advertiser Plaintiffs, and Defendant Facebook, Inc. ("Facebook") respectfully request that the Court resolve a dispute concerning the entry of a protective order[1] that will govern discovery in these consolidated actions.[2]

## **STATEMENT OF THE DISPUTE**

The parties have met and conferred in good faith and agree on the parameters of a Protective Order.  But, the parties disagree as to the appropriate terms for several of the Protective Order's specific provisions.  These provisions—and the parties respective positions regarding them—are set forth below.

**A.**   **Sections 2.1 and 6.1**

**1.**   <u>**Plaintiffs' Position**</u>

The Northern District's Model Protective Order ("Model Order") provides that a non-party may challenge confidentiality designations.  § 2.1 (a "Challenging Party" includes a "Non-Party");

---

[1] Attached hereto are Ex. A (a redline reflecting the differences between the parties' proposed Protective Order); Ex. B (Plaintiffs' proposed Protective Order); Ex. C (a redline reflecting Plaintiffs' proposed changes to the Northern District's Model Protective Order); Ex. D (Facebook's proposed Protective Order); and Ex. E (a redline reflecting Facebook's proposed changes to the Northern District's Model Protective Order).

[2] The parties previously stipulated to an interim protective order for the sole purpose of facilitating Facebook's Court-ordered production of documents that Facebook previously produced to certain governmental entities.  *See* Dkt. 89.  The interim protective order was agreed to without prejudice to either party seeking different, additional, or fewer provisions in the final protective order.  *Id*.  The parties agreed to exchange their final positions on the final protective order by May 7, 2021, and to jointly submit any disputes to the Court in writing by May 14.  *Id.*

1

§ 6.1 ("Any . . . Non-Party may challenge a designation of confidentiality . . ."). Plaintiffs propose the Model Order language. Facebook seeks to deviate from the Model Order and preclude non-parties from challenging confidentiality designations. This is improper. *Harris v. City of Chicago*, 2008 WL 11516917, at *2 (N.D. Ill. Nov. 17, 2008) ("[D]efendants may not attempt to withdraw the public's right to intervene by language in a protective order.") (internal citations and quotations omitted).

### 2. **Facebook's Position**

Facebook is not seeking to withdraw the right of the public to intervene or to weigh in on sealing of court records, where the public or non-parties would otherwise have a basis to do so. But there is no reason to broadly authorize non-parties who have no interest in the outcome of the litigation to challenge confidentiality designations, especially where those non-parties may be competitors or otherwise have extra-judicial reasons for challenging confidentiality of Facebook material. If a non-party has standing and a legitimate basis to challenge a confidentiality designation, they can seek relief from the Court independent of the protective order. And of course, public access to court proceedings will be governed by applicable sealing standards in all events.

### B. Sections 2.2 and 3

### 1. **Plaintiffs' Position**

Plaintiffs propose the Model Order language of Section 3 (and corresponding language to Section 2.2), such that the protective order does not apply to information that becomes public "as a result of publication not involving a violation of this Order." Facebook seeks to deviate from the Model Order, contending the protective order should broadly apply to even publicly-available information, to the extent it becomes public in violation of *any* court order. The Model Order, however, "contains 'presumptively reasonable conditions' for managing the discovery of highly sensitive materials." *Corley v. Google, Inc.*, 2016 WL 3421402, at *1 (N.D. Cal. June 22, 2016). Moreover, "a district court's power to control discovery does not extend to material discovered in a separate action." *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1081 (9th Cir. 1988).

Facebook's attempt to insert similar language into a protective order was recently rejected by another court, which reasoned that "[d]ocuments that are in the public domain as a result of leaks in other litigation are in the public domain." *Styleform, IT, v. Facebook, Inc., et al.*, Case No. CGC-18-571075 (S.F. Sup. Ct.) (Feb. 17, 2021), at 2; *see also Schlicksup v. Caterpillar, Inc.*, 2011 WL 13217322, at *1–2 (C.D. Ill. Jan. 19, 2011) ("A Rule 26(c) protective order cannot protect information that is part of the public record, because that information has already been disclosed. . . . Rule 26 governs only the discovery process, so Rule 26(c) protective orders necessarily cover information produced through that process, not information gained outside that process."); *Culinary Foods, Inc. v. Raychem Corp.*, 153 F.R.D. 614, 615 (N.D. Ill. 1993) ("information received by Culinary in violation of [an]other court's protective orders may not be subject to protection by this court . . .").

The *Six4Three* documents prompting Facebook's objection were made public by the U.K. Parliament and media a few years ago. There is no prejudice from disclosure of widely available

information. *See Pullman v. Alpha Media Publishing, Inc.*, 624 F. App'x 774 (2d Cir. 2015) (cited by Facebook, acknowledging there is no way "to put the genie back [in the bottle].") Moreover, Facebook's proposal is impractical because Advertiser Plaintiffs incorporated certain of these public documents into their publicly-filed complaint already. The public has a strong interest in access to judicial proceedings.

### 2. **Facebook's Position**

The parties' dispute is whether protected information loses protection if it is leaked or made public in violation of a court order (Facebook's position) or only if it is made public in violation of *this* protective order (Plaintiffs' position). Protected information should not lose protection if it is in the public domain only as a result of a violation of a court order. Courts have repeatedly recognized that a party's non-public and sensitive information is not stripped of its confidentiality because of someone else's bad act.[3] *See, e.g.*, *City of Almaty v. Ablyazov*, 2018 WL 1229730 (S.D.N.Y. Mar. 5, 2018); *Pullman v. Alpha Media Publ'g, Inc.*, 624 F. App'x 774, 778–79 (2d Cir. 2015); *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *1, *5 (N.D. Cal. Mar. 26, 2013).

This is not a hypothetical concern. In *Six4Three LLC v. Facebook, Inc. et al.*, Case No. CIV533328 (San Mateo Sup. Ct.), plaintiff Six4Three's principal and former legal team leaked thousands of pages of Facebook's confidential and highly confidential information in violation of both the protective order and other court orders (including an order specifically preventing disclosure of the documents). *See* Order re: Facebook's Motion to Open Discovery and to Compel, (San Mateo Sup. Ct. Mar. 15, 2019).[4] Discovery and proceedings as to the appropriate remedy for these violations are still ongoing, and Six4Three is now represented by counsel for the advertiser class in this case. A protective order from this Court adopting a definition of confidential documents that would exclude the leaked documents would compound Six4Three's misconduct and further harm Facebook by allowing Plaintiffs in this case to proliferate the publication of a curated, one-sided set of confidential materials, based solely on contemptuous violation of multiple court orders by another litigant. Equally bad, it would create perverse incentives by allowing leaks from one bad actor to broadly eliminate confidentiality for otherwise protected materials.

There is also no countervailing interest. Allowing confidential documents to be marked confidential does not unduly restrict the parties' ability to use these documents in this case, and there is no public interest in removing confidentiality designations from the documents more broadly in this circumstance. And while Advertiser Plaintiffs (whose co-lead counsel now represent Six4Three) have referenced some of the leaked documents in their complaint, there is no basis to proliferate the publication of the confidential documents themselves or to eliminate confidentiality of all the leaked documents. Endorsing plaintiffs' approach would allow parties (or counsel) in subsequent litigation to exploit the bad acts of others (or even of their own clients),

---

[3] This issue is fully briefed before Judge Corley. *See In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-MD-02843 (Dkt. No. 643) (N.D. Cal. Mar. 19, 2021).

[4] *California Judge Condemns Startup For Giving Secret Facebook Papers To UK*, The Guardian, https://tinyurl.com/4p3ru8wc (Nov. 30, 2018).

and threatens the integrity of the judicial system and of the protective orders upon which parties to litigation rely.

**C.     Section 2.7**

**1.     Plaintiffs' Position**

Plaintiffs' proposed definition of "Highly Confidential" mirrors the definition proposed by the FTC and 48 Attorneys General in their draft protective order in parallel cases against Facebook. Maintaining consistency in the designation of "Highly Confidential" documents between this case and the parallel government cases will best facilitate the cross-use of discovery and maximize efficiencies.  *See*, *e.g.*, *Manual for Complex Litigation*, § 11.423 at 57 ("Coordination of 'common' discovery in related litigation may also save costs" and "can prevent duplication and conflicts."); *Linex Tech Inc. v. Hewlett Packard Co.*, 2013 WL 1820909, at *1 (N.D. Cal. Apr. 30, 2013) (adopting party's proposed protective order mirroring terms of protective order governing parallel proceedings before the ITC); *Synopsys Inc. v. Mentor Graphics Corp.*, 2014 WL 324629, at *4 (N.D. Cal. Jan. 29, 2014) (considering, in crafting protective order, "the extent that having a different protective order in this case [as opposed to that in parallel case] would create confusing obligations for the parties.").

**2.     Facebook's Position**

Facebook's proposed protective order uses the standard definition for highly confidential material.  *See* N.D. Cal Patent Model, §2.8.  Plaintiffs' proposed definition goes beyond the standard definition in the N.D. Cal. Patent Model and seeks to pre-judge which materials may be designated highly confidential.  This is both unnecessary and unworkable.  Facebook cannot comprehensively define all categories of materials that may be highly confidential at this early stage—and without having reviewed any materials that may be responsive to Plaintiffs' future discovery requests.

Further, there is no reason to mirror the definition *proposed* by the FTC and State Attorneys General in the government antitrust cases, where discovery is not open and no protective order has even been proposed to, let alone entered, by the Court. Facebook may well propose the same definition in those cases as here, if and when the time for discovery arrives.

**D.     Section 7.4**

**1.     Plaintiffs' Position**

Non-parties have produced documents to government entities in connection with their investigations into Facebook, which will be produced in the government cases.  Plaintiffs intend to serve discovery requesting that Facebook re-produce such documents here.

After conferring with the government entities, Plaintiffs propose language providing that any non-party documents produced in connection with the government investigations shall be governed by the protective order entered in the government cases.  This language preserves the protections afforded to non-party investigation documents in the government cases, and precludes Facebook from circumventing them in this case.  More specifically, the government entities have

4

proposed greater restrictions than Plaintiffs have here on providing non-party designated information to Facebook employees, including in-house counsel, which should apply to any non-party investigation materials. This provision is necessary to facilitate the production of non-party investigation documents in this case, and to streamline potential objections from non-parties to the re-production of their documents here.

Contrary to Facebook's response, the parties have *not* agreed to Facebook's access to non-party investigation documents—hence this dispute.

### 2. Facebook's Position

Plaintiffs propose a requirement that disclosure of non-party protected materials from the government antitrust cases be governed by protective orders yet to be entered in the government cases. Plaintiffs further propose that prior to the entry of protective orders in those cases, Facebook should not disclose non-party protected materials to Facebook's officers, directors, employees, or in-house counsel. But Plaintiffs have no interest in non-party protected materials from the government antitrust cases, and the protective order in this matter is not the appropriate venue to address the use of these materials. The parties have otherwise agreed to a procedure for in-house access to materials produced in this litigation, and the protective order here should apply. Tethering the protective order in this case to protective orders not yet entered in other cases, with terms currently unknown, is both illogical and unworkable.

## E. Sections 7.2 and 7.3

### 1. Plaintiffs' Position

The Model Order broadly allows the disclosure of confidential information to witnesses during depositions where "reasonably necessary." § 7.2(f). Facebook, however, seeks to limit the documents that a witness may be shown, to documents the witness was either on or otherwise had lawful access to.

Facebook's proposal is too narrow and would insulate Facebook executives from proper lines of questioning based on documentary evidence. Courts routinely enter protective orders allowing witnesses to be questioned regarding designated documents they did not personally send, receive, or access. For example, in *In re Harmonic Inc. Securities Litig.*, over defendants' objections, the court entered a protective order providing that "confidential documents may be shown to former Harmonic employees whom Plaintiffs have a good-faith reasonable belief may have relevant information." Case No. 4:00-cv-02287-PJH (N.D. Cal.), Dkts. 265 at 5, 276 at 2. As the plaintiffs in that case explained, "many witnesses can provide useful information about documents that they have not authored or received" and such documents may "refresh a former employee's memory about past events and [a] Company's general practices." Dkt. 258 at 6. S*ee also U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 2013 WL 5882921, at *1 (S.D.N.Y. Oct. 25, 2013) (allowing "any third-party or party-employee witness to a deposition" to view producing party's documents designated "Highly Confidential" so long as they "execute a declaration of compliance with the protective order before viewing any such document," even where witness "is not a producing party, author, sender, address or copy recipient").

As a compromise position, Plaintiffs propose that in addition to being able to show a witness documents that the witness was either on or had lawful access to, a Party witness (including former employees) may be shown designated information from that Party's files, from the time the witness was employed by the Party,[5] and a Non-Party witness may be shown designated information from that Non-Party's files, quoting, recounting, or summarizing that witness' statements.

## 2. Facebook's Position

Facebook proposes limiting disclosure of protected information during depositions to witnesses who the document indicates, or where the deponent has a good-faith basis to believe, were an author, addressee, recipient, custodian, or source of the document or previously received or had access to the document.[6] Plaintiffs propose significantly expanding access in two ways.

First, Plaintiffs' proposal would allow parties to disclose protected information to former Facebook employees (including, e.g., those that may now work for a competitor) solely on the basis that the material was in Facebook's files at the time the witness was employed by Facebook—whether or not the deponent accessed, or even had access to, those materials at the time. Facebook has tens of thousands of employees; employees do not have access to all information at the company, especially sensitive information. Sharing information with a *former* employee just because the material existed in the company's files at the time of employment would mean that former employees could have access through litigation to information they never had access to while employed. The risk of potential misuse (even inadvertent) is substantial, especially because it would be nearly impossible for Facebook to police whether the deponent later disclosed or misused the protected material. And once the harm is done, it cannot be undone. On the flip side, there is no good reason that Plaintiffs should need to examine a witness on a document that they are not an author or recipient of, or to which they never had access, and thus have no foundation to testify. Plaintiffs' proposal is an invitation to mischief.

Second, for the same reasons, Facebook objects to Plaintiffs' proposal to show protected material to non-party witnesses if the material quotes, recounts, or summarizes the statements or communications of the witness. If Plaintiffs want to ask a non-party witness about something they said or did, they should ask the witness about it. But they don't need—and are not entitled—to disclose confidential material to that witness where the witness was not otherwise privy to it.

Facebook's proposal appropriately balances the need to protect Facebook's protected material with the interests of receiving parties in depositions.

---

[5] Facebook's proposal to limit disclosures to witnesses who had lawful access to a document—rather than documents in a party's files at the time the party witness was employed—will introduce issues surrounding witness' access rights while employed by Facebook.

[6] For Highly Confidential information, this goes beyond what even the model order permits.

F.  **Section 7.5**

  1.  **Plaintiffs' Position**

At Facebook's request, Plaintiffs have agreed not to disclose "Highly Confidential" information to class representatives. Because of this, Plaintiffs must be allowed to provide "high level summaries or characterizations" of such information to their clients, for purposes of advising their clients. Facebook's objection to Plaintiffs' ability to advise their clients—who are not competitors of Facebook—is unreasonable.

Contrary to Facebook's hypothetical below, Plaintiffs' proposal would not allow Plaintiffs' counsel to provide summaries of confidential materials to regulators and media outlets, but rather, to provide summaries to Plaintiffs so that counsel advise their clients and help them satisfy their duties as class representatives.

  2.  **Facebook's Position**

Plaintiffs propose allowing outside counsel to provide "summaries or characterizations" of Facebook's Confidential and Highly Confidential materials to class representatives and their employees. This would defeat the purpose of a protective order. There would be no way to police the "summaries or characterizations" outside counsel share, and the risk of potential misuse—whether deliberate or inadvertent—is substantial. Indeed, in the *Six4Three* litigation, the judge presiding over the matter at the time found that a *prima facie* showing under the crime-fraud exception had been made where it was revealed plaintiffs emailed extensive "summaries" of confidential Facebook materials to the client's principal (who subsequently disclosed the summary) and directly to numerous regulators and media outlets. *See* Order re: Facebook's Motion to Open Discovery and to Compel, *Six4Three LLC v. Facebook, Inc. et al.*, Case No. CIV533328 (San Mateo Sup. Ct. Mar. 15, 2019). Facebook's alternative appropriately allows Plaintiffs' counsel to rely upon their examination and knowledge of protected materials when rendering legal advice, without disclosing the protected information itself, whether in summary form or otherwise.

G.  **Section 9(c)**

  1.  **Plaintiffs' Position**

Plaintiffs propose the Model Order language of Section 9(c), such that where a Party is required to produce a Non-Party's information that is subject to a confidentiality agreement, the Party must promptly provide notice to the Non-Party and may produce the Non-Party's confidential information absent objection within 14 days. Facebook seeks to extend this 14-day period by tacking on additional days as specified in "any contractual notice period" in the relevant confidentiality agreement. Facebook's proposal threatens to indefinitely delay Facebook's production of Non-Party information subject to a confidentiality agreement. The purpose of Section 9(c) is to provide a Non-Party reasonable time to object—14 days—and to otherwise facilitate production.

7

### 2. Facebook's Position

Plaintiffs seek a requirement that Facebook produce non-party confidential information within 14 days of the date that Facebook notifies the non-party that the information has been requested. This rule would be highly prejudicial to non-parties that have contractual notice periods covering the disclosure of confidential information that exceed 14 days. Plaintiffs' proposed rule would force Facebook to violate those contractual obligations without any compelling reason to do so. Further, no contractual notice period is "indefinite," so observing contractual notice periods would not "indefinitely delay" production.

## NEED FOR HEARING

Plaintiffs defer to the Court regarding the need for a hearing. To the extent the Court feels that a hearing would assist it in resolving the parties' dispute, Plaintiffs will present these issues to the Court at the Court's convenience.

Given the expected volume and potential sensitivity of the materials that may be produced in this case, and the significant risk of harm to Facebook should some of plaintiffs' proposals be adopted, Facebook requests a hearing.

## RELEVANT DATES

The fact discovery cut-off for these consolidated actions is September 2, 2022. Dkt. 87. The expert discovery cut-off for these consolidated actions is November 4, 2022. *Id.*

## COMPLIANCE WITH LEAD COUNSEL MEETING REQUIREMENT

The parties conferred about this dispute by Zoom conference on May 6, 2021. Participants included: Stephen Swedlow and Shana Scarlett (Co-Lead Interim Consumer Class Counsel); Yavar Bathaee and Kristen Anderson (Co-Lead Interim Advertiser Class Counsel); and Sonal Mehta and David Gringer (lead counsel for Facebook). Additional Plaintiffs' counsel attended.

DATED:  May 14, 2021

By:  */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward N. Grauman (admitted *pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (admitted *pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 206-7668

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
(213) 462-2772


By:  */s/ Kristen M. Anderson*
**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565

Respectfully submitted,

By:  */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit (admitted *pro hac vice*)
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Manisha M. Sheth (admitted *pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000


By:  */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman (admitted *pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Patrick J. McGahan (admitted *pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (admitted *pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537

**AHDOOT & WOLFON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
(310) 474-9111

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (admitted *pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (admitted *pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
(215) 592-1500

*Interim Counsel for the Advertiser Class*

**KELLER LENKNER LLC**
Warren Postman (Bar No. 330869)
  wdp@kellerlenkner.com
Jason Ethridge (admitted *pro hac vice*)
  jason.ethridge@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, DC 20005
(202) 918-1123

Ashley Keller (admitted *pro hac vice*)
  ack@kellerlenkner.com
Ben Whiting (admitted *pro hac vice*)
  ben.whiting@kellerlenkner.com
Jason A. Zweig (admitted *pro hac vice*)
  jaz@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (admitted *pro hac vice*)
  aswagner@locklaw.com
Stephanie A. Chen (admitted *pro hac vice*)
  sachen@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

By: */s/ Sonal M. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal N. Mehta (Cal. Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, PA 94306
(650) 858-6000

David Z. Gringer (admitted *pro hac vice*)
  David.Gringer@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

*Attorneys for Defendant Facebook, Inc.*

## **SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatories have concurred in this filing.

Dated: May 14, 2021                             By:   */s/ Stephen A. Swedlow*
                                                                   Stephen A. Swedlow