1   Warren Postman (Bar No. 330869)
    wdp@kellerlenkner.com
2   Jason Ethridge (admitted *pro hac vice*)
    jason.ethridge@kellerlenkner.com
3   **KELLER LENKNER LLC**
    1300 I Street, N.W., Suite 400E
4   Washington, DC 20005
    (202) 918-1123
5

Ashley Keller (admitted *pro hac vice*)
    ack@kellerlenkner.com
Benjamin Whiting (admitted *pro hac vice*)
    ben.whiting@kellerlenkner.com
Jason A. Zweig (admitted *pro hac vice*)
    jaz@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
(312) 741-5220

6   *Interim Counsel for the Consumer Class*

7

8   **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

9

10  MAXIMILIAN KLEIN, SARAH GRABERT,
and RACHEL BANKS KUPCHO, on behalf
11  of themselves and all others similarly situated,

12          *Plaintiffs,*

13        vs.

14  FACEBOOK, INC.,

15          *Defendant.*

16  This Document Relates To: All Actions

Consolidated Case No. 5:20-cv-08570-LHK

**DECLARATION OF ALBERT Y. PAK IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO FACEBOOK'S
MOTION TO DISQUALIFY KELLER
LENKNER LLC**

Hon. Lucy H. Koh
Date: September 30, 2021
Time: 1:30 p.m.
Courtroom: 8

17

18

19

20

21

22

23

24

25

26

27

28

ALBERT Y. PAK DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FACEBOOK'S MOTION
TO DISQUALIFY KELLER LENKNER LLC

I, Albert Y. Pak, declare as follows:

1.     I am an associate at Keller Lenkner LLC ("Keller Lenkner").  I have personal knowledge of the facts stated herein, and, if called upon as a witness, I could and would competently testify thereto.  All of my statements below are made to the best of my current recollection and knowledge.

2.     I have not spoken about the substance of this declaration with anyone at Keller Lenkner.  In preparing this declaration, I have consulted with external counsel to ensure that I do not improperly reveal any privileged or confidential information.

3.     In May 2016, I graduated from Yale Law School with a Juris Doctor degree.  From August 2016 to August 2017, I served as a law clerk for Judge John M. Rogers of the United States Court of Appeals for the Sixth Circuit.  I was admitted to practice law in New York on October 17, 2017, and in the District of Columbia on February 5, 2018.   I am not barred in California.

4.     In September 2017, I began working at Kellogg, Hansen, Todd, Figel & Frederick PLLC ("Kellogg Hansen").

5.     In my first two years at Kellogg Hansen, I primarily worked on two matters.  In the first matter, I helped represent defendants in a securities litigation.  In the second matter, I helped represent class plaintiffs in an antitrust case.  Neither matter involved Facebook.  The second matter settled on the eve of trial in October 2019.

6.     Perhaps a couple months or so after that settlement—I do not remember an exact date—I began working on Kellogg Hansen's representation of Facebook in connection with antitrust investigations by the Federal Trade Commission and various state attorneys general.

7.     By then, those investigations had been underway for some time.  There were at least three large, prestigious law firms that had already been representing Facebook in those investigations.  There was a fourth large, prestigious law firm that was also representing Facebook at that time, but I do not know whether that law firm was actively involved in representing Facebook in the antitrust investigations.  I was not privy to the precise nature of that representation.

ALBERT Y. PAK DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FACEBOOK'S MOTION TO DISQUALIFY KELLER LENKNER LLC

8.      When I began my work on the matter, others at Kellogg Hansen had already been working on the investigations for months.

9.      At the same time, the investigations were still in their early stages.  There was no complaint filed.  There would be no complaint filed until a year after my work on the matter began, and until six months after my work on the matter had concluded.

10.     A big team of lawyers at Kellogg Hansen worked on this matter.  There were at least ten Kellogg Hansen partners working actively on the case.  There was a similar number of Kellogg Hansen associates working actively on the case.  There were Kellogg Hansen associates who had more central roles on the case than I did, who I believe billed more hours on the case than I did, and who had a broader understanding than I did of the overall status of the investigations.

11.     A much larger team of lawyers at other firms also worked on this matter.  It is difficult to estimate the total number of lawyers who represented Facebook in the antitrust investigations at that time because I did not have visibility into most of the representation.  I certainly did not know every individual co-counsel on the case.  Given the size of the case, there was a slide deck containing several organizational charts, and perhaps also a separate spreadsheet, that someone prepared in order to try to keep track of the various lawyers that were working on different aspects of the case.  Partners were named in those charts, but I am not sure whether associates were.  I would be surprised if there were fewer than 100 outside lawyers working for Facebook on the antitrust investigations at this time.

12.     To the best of my recollection, I primarily spent my time on the Facebook matter assisting Aaron M. Panner, a partner at Kellogg Hansen, with Mr. Panner's work with Facebook's experts.  Mr. Panner in turn assisted Mark C. Hansen, who was leading Kellogg Hansen's overall efforts.  Mr. Panner had a leading role in a team of outside lawyers working with those experts.  My role was to assist Mr. Panner, primarily with coordinating various workflows.

13.     There were several weekly calls with various members of the expert team.  Regular attendees on those calls included multiple attorneys, including Mr. Panner from Kellogg Hansen; a partner, an of counsel, and a senior associate from one large law firm; and a partner, an of counsel, and perhaps also an associate from a second large law firm.  This expert team included a former

Director of the FTC's Bureau of Economics, whose involvement in the matter has been publicly disclosed. This partner had a leading voice in these calls, as did an of counsel from another firm, who appeared to have institutional knowledge about the expert work that had been done to date for Facebook. I did not speak frequently (if at all) during these calls. To the best of my recollection, I was the most junior lawyer in the team listed above. Over the course of my work on the expert team, I took notes of the weekly calls and videocalls, but I do not recall speaking on a call that involved a potential testifying expert.

14.     Apart from my work on the expert team, I recall helping Mr. Panner with one witness interview. I did not conduct this interview. Mr. Panner did. My primary responsibilities were to review documents, draft an outline of topics to cover, take notes, and draft a summary after the interview. I believe that the vast majority of the time I spent on that witness interview was in performing the document review.

15.     As for my other tasks on the Facebook matter, I recall drafting or contributing to the drafting of a few legal memoranda on discrete topics. I recall helping Mr. Panner and another Kellogg Hansen partner try to understand what responsive information may be available in light of the FTC's civil investigative demands. I recall receiving hundreds if not thousands of case-related emails, a large portion of which were administrative, ministerial, or otherwise process-focused.

16.     Outside of the weekly group calls and the group emails, the one witness interview, and the other tasks described above, I do not recall having contact with Facebook's in-house lawyers and employees. I do not recall directly advising Facebook's in-house lawyers and likely would not have been permitted to do so without supervision by a Kellogg Hansen partner. I do not recall having any direct, one-on-one communication with Facebook's in-house lawyers or employees at any point during my time at Kellogg Hansen. At all times, I understood my work to be in assisting and supporting Mr. Panner and other Kellogg Hansen partners, who handled client communications.

17.     On April 22, 2020, my wife and I had our first child. In the days leading up to her birth, and in particular in the weeks thereafter, I worked less than I normally do. Although I do not have access to my time entries, I believe I took a few weeks off in full (or close to full), and

1  then worked reduced hours thereafter.  Mr. Panner and others at Kellogg Hansen made it clear to

2  me that I was free to take as much time off as I wanted to.  Before that period of reduced work, I

3  billed around 3,000 hours per year during my time at Kellogg Hansen.

4         18.    Text messages from friends confirm that, on June 10, 2020, I notified Kellogg

5  Hansen that I would be leaving the firm.  I made sure to give Kellogg Hansen at least two weeks'

6  notice.  I had also informed Mr. Panner and other Kellogg Hansen partners before then that I was

7  considering switching firms—specifically, that I was considering joining Keller Lenkner.  My last

8  day at Kellogg Hansen was June 26, 2020.  I did not take with me any case-related documents.

9         19.    My first day at Keller Lenkner was June 29, 2020.  On that day or shortly

10  thereafter, I spoke to Warren D. Postman, a Keller Lenkner partner.  As part of the onboarding

11  process, Mr. Postman asked me about previous matters that I had worked on for the purposes of

12  performing an analysis of potential conflicts.  In response, I told him about the matters that I had

13  previously worked on, including the Facebook matter.  I never revealed the substance of my work

14  on that matter.  On July 1, 2020, I requested that Kellogg Hansen send me a list of clients for

15  whom I worked during my time there, and, upon receipt of that list later that day, I forwarded it to

16  Mr. Postman.

17         20.    Some time after I began working at Keller Lenkner—I do not recall an exact date—

18  Mr. Postman informed me that Keller Lenkner was evaluating a potential antitrust lawsuit against

19  Facebook.  Even before that conversation, I had not discussed the substance of my prior work for

20  Facebook with anyone at Keller Lenkner.  As part of that conversation, Mr. Postman and I

21  confirmed that I would not discuss my prior work for Facebook, and would not discuss Keller

22  Lenkner's potential new case against Facebook, with anyone at Keller Lenkner.

23         21.    My email records confirm that, on November 11, 2020, I received a firm-wide

24  email from Keller Lenkner's managing partner stating that I was screened from, and could not

25  have any involvement in, Keller Lenkner's potential antitrust case against Facebook.  The email

26  instructed all Keller Lenkner attorneys and staff not to speak to me about the potential case or

27  about related issues, not to keep any electronic files related to that potential case in a location other

28  than the one that had been designated for that potential case, and not to leave hard copies of any

-4-

ALBERT Y. PAK DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FACEBOOK'S MOTION
TO DISQUALIFY KELLER LENKNER LLC

files related to that potential case in a physical location that could be accessed by people not working on the potential case.  During a quarterly all-firm meeting conducted via Zoom on December 4, 2020, all attorneys and staff were reminded of this (and other) ethical screens in place.  Keller Lenkner's case against Facebook was not discussed during that meeting or any other meeting that I attended.

22.     I have never been involved in Keller Lenkner's antitrust suit against Facebook.  I have never discussed the claims in that case with anyone at Keller Lenkner.  I have never accessed Keller Lenkner's internal files on that case, and I understand I lack access to those files.  Although I discussed the general nature of my prior work for Facebook for the purpose of Keller Lenkner's conflicts analysis, I have never discussed the substance of that work with anyone at Keller Lenkner—or to anyone else upon ceasing my work on that matter.

I declare that the foregoing is true and correct under penalty of perjury. Executed May 21, 2021, in Arlington, Virginia.

*/s/ Albert Pak*
Albert Y. Pak

ALBERT Y. PAK DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FACEBOOK'S MOTION TO DISQUALIFY KELLER LENKNER LLC