UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 20-CV-08570-LHK<br><br>**ORDER GRANTING MOTION TO DISQUALIFY**<br><br>Re: Dkt. No. 93 |

Before the Court is Facebook's motion to disqualify Keller Lenkner LLC, which was appointed to Plaintiffs' Executive Committee for the consumer class. ECF No. 93. The hearing on the motion to disqualify was set for September 30, 2021. However, the Court granted the motion to disqualify on July 13, 2021, ECF No. 123, in advance of the July 15, 2021 hearing on Facebook's motion to dismiss in light of the importance of the issues raised by the motion to disqualify. *Id*. The Court noted that the Court was focusing on preparation for the motion to dismiss hearing and would issue a written decision on the motion to disqualify shortly. *Id.* This written decision follows.

**I. BACKGROUND**

   **A. Factual Background**

Facebook's motion to disqualify is based on Keller Lenkner's employment of Albert Pak, who previously worked at Kellogg, Hansen, Todd, Figel & Frederick ("Kellogg Hansen"). Mot. at 3–4. As a fourth-year associate at Kellogg Hansen, Mr. Pak represented Facebook in antitrust investigations brought by the Federal Trade Commission ("FTC") and a group of state Attorneys General ("the Facebook government investigations"). Pak Decl. ¶ 6. Those antitrust investigations culminated in the filing of *FTC v. Facebook, Inc.*, No. 20-CV-3590-JEB (D.D.C. filed Dec. 9, 2020), and *New York v. Facebook, Inc.*, No. 20-CV-3589-JEB (D.D.C. filed Dec. 9, 2020), which are related to the instant case. *See* ECF No. 78 at 35 (parties' joint case management statement, stating that the antitrust lawsuits filed by the FTC and the states are related to the instant case).

Between December 11, 2019 and June 24, 2020, Mr. Pak billed 824.5 hours to the Facebook government investigations, which was approximately three-quarters of the time that Mr. Pak billed during this period of his employment at the firm. Panner Decl. ¶ 8. While working on the Facebook government investigations, Mr. Pak was supervised by Aaron Panner, a Kellogg Hansen partner. *Id.* ¶ 4; Pak Decl. ¶ 12. Mr. Panner "had a leading role in a team of outside lawyers" working with consulting and potential testifying experts for Facebook. Pak Decl. ¶ 12; Panner Decl. ¶ 6. As a part of Mr. Pak's work, Mr. Pak reviewed and drafted legal memoranda; assisted with a witness interview; helped Facebook respond to an FTC civil investigative demand; worked with consulting and potential testifying experts for Facebook; reviewed Facebook's documents; attended team meetings; participated in several calls per week, including with Facebook's in-house counsel; and received hundreds if not thousands of case-related emails. Pak Decl. ¶¶ 13–15; Panner Decl. ¶¶ 5–6. According to Mr. Pak, "a large portion" of these case-related emails "were administrative, ministerial, or otherwise process-focused." Pak Decl. ¶ 15. Some of the emails that Mr. Pak received were daily emails from Mark Hansen, a Kellogg Hansen partner who serves as lead counsel for Facebook in the litigation against the FTC and state Attorneys General. Panner Decl. ¶ 7. In Mr. Hansen's daily emails, Mr. Hansen "shared his thinking on legal and trial strategy and forwarded documents and analysis from the client and counsel at other firms assisting Facebook on the investigations and potential litigation." *Id.*

2

On June 26, 2020, Mr. Pak left Kellogg Hansen. Pak Decl. ¶ 18. Mr. Pak did not take any case-related documents with him. *Id.*

On June 29, 2020, Mr. Pak began working at Keller Lenkner. *Id.* ¶ 19. "On that day or shortly thereafter," Mr. Pak spoke with Warren D. Postman, a partner at Keller Lenkner, about previous matters he had worked on for the purposes of performing a conflicts check. *Id.* On June 30, 2020, Mr. Pak told Mr. Postman that Mr. Pak had worked on the Facebook matter, but Mr. Pak did not reveal the substance of his work on the matter. *Id.*; Postman Decl. ¶ 13. On July 1, 2021, Mr. Pak asked Kellogg Hansen for a list of clients he had represented. Pak Decl. ¶ 19. That same day, Mr. Pak received the list and forwarded it to Mr. Postman. *Id.*

Mr. Pak states that, "[s]ome time after I began working at Keller Lenkner—I do not recall an exact date," Mr. Postman told Mr. Pak that Keller Lenkner was evaluating a potential antitrust lawsuit against Facebook. Pak Decl. ¶ 20; Postman Decl. ¶ 15. Mr. Pak and Mr. Postman confirmed that Mr. Pak would not discuss Mr. Pak's prior work for Facebook and would not discuss Keller Lenkner's potential new case against Facebook with anyone at Keller Lenkner. *Id.*

On November 11, 2020, a firm-wide email was sent from Keller Lenkner's managing partner stating that Mr. Pak was screened from, and could not have any involvement in, Keller Lenkner's potential antitrust case against Facebook. *Id.* ¶ 21; Postman Decl. ¶ 17. All attorneys were directed not to: speak to Mr. Pak about the potential case or any related issues, save any Facebook-related documents outside of the Facebook workspace on the document management system, or leave physical case materials in open or unlocked areas. Postman Decl. ¶ 17. On November 11, 2020, access to all documents related to Facebook was restricted to exclude Mr. Pak. *Id.* During an all-firm meeting conducted on December 4, 2020, all attorneys and staff were reminded of this screen and others in place. *Id.* All attorneys who join Keller Lenkner are informed of this screen and others in place. *Id.* The main Intranet page for Keller Lenkner attorneys lists this screen and others in place. *Id.*

Mr. Pak has never worked on the instant case. *Id.* ¶ 22. Mr. Pak has never accessed Keller Lenkner's internal files on the instant case. *Id.* Mr. Pak has never discussed the instant case with

3

anyone at Keller Lenkner. *Id.*; Dravillas Decl. ¶ 2; Ethridge Decl. ¶ 2; Hanna Decl. ¶ 2; Heinz Decl. ¶ 2; Keller Decl. ¶ 2; Longtin Decl. ¶ 2; Postman Decl. ¶ 18; Whiting Decl. ¶ 2; Zweig Decl. ¶ 2. Although Mr. Pak spoke with Mr. Postman about the general nature of his prior work for Facebook for the purpose of Keller Lenkner's conflicts analysis, Mr. Pak never discussed the substance of that work with anyone at Keller Lenkner. *Id.*

**B. Procedural History**

On December 3, 2020, Quinn Emanuel Urquhart & Sullivan ("Quinn Emanuel") and Keller Lenkner filed the complaint in the instant case. ECF No. 1. Subsequently, 11 other cases were filed by consumers or advertisers against Facebook. The Court related and consolidated these cases. ECF Nos. 47, 50, 68, 85.

On March 18, 2021, the Court held a hearing on motions for appointment as interim class counsel. ECF No. 77. That same day, the Court appointed Stephen A. Swedlow of Quinn Emanuel and Shana A. Scarlett of Hagens Berman Sobol Shapiro LLP as Interim Class Counsel for the consumer class and appointed Warren Postman of Keller Lenkner and Brian D. Clark of Lockridge Grindal Nauen P.L.L.P. to serve on Plaintiffs' Executive Committee for the consumer class. ECF No. 73.

On March 19, 2021, Keller Lenkner gave notice to Facebook regarding Mr. Pak's prior representation of Facebook in the Facebook government antitrust investigations. Mehta Decl. Exh. B. Specifically, Keller Lenkner emailed Facebook's counsel and described the screening procedure that was used with respect to Mr. Pak. *Id.*

On April 22, 2021, Plaintiffs filed a Consolidated Consumer Complaint ("CC") and a Consolidated Advertiser Complaint ("AC"). CC; AC. The CC alleges five causes of action: (1) monopolization of the Social Network Market in violation of § 2 of the Sherman Act; (2) attempted monopolization of the Social Network Market in violation of § 2 of the Sherman Act; (3) monopolization of the Social Medial Market in violation of § 2 of the Sherman Act; (4) attempted monopolization of the Social Media Market in violation of § 2 of the Sherman Act; and (5) unjust enrichment under California common law. CC ¶¶ 260–317. The AC alleges three causes

of action: (1) monopolization of the Social Advertising Market in violation of § 2 of the Sherman Act; (2) attempted monopolization of the Social Advertising Market in violation of § 2 of the Sherman Act; and (3) restraint of trade in violation of § 1 of the Sherman Act. AC ¶¶ 547–69.

On May 7, 2021, Facebook filed a motion to disqualify Keller Lenkner. ECF No. 93 ("Mot."). On May 21, 2021, Plaintiffs filed an opposition. ECF No. 98 ("Opp'n"). On May 28, 2021, Facebook filed a reply. ECF No. 103 ("Reply").

## II. LEGAL STANDARD

Under Civil Local Rule 11–4(a)(1), all attorneys who practice in this Court must comply with the standards of professional conduct required of members of the State Bar of California. This Court, therefore, applies state law in determining matters of disqualification. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir.2000) ("[W]e apply state law in determining matters of disqualification.").

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 918 (N.D. Cal. 2003). "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in the furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every manner pertaining thereto.'" *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1837–38 (1995).

Courts must subject motions for disqualification to "strict judicial scrutiny" because they present the threat of tactical abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). In deciding a motion for disqualification, a court should consider "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999). "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional

5

1  responsibility." *Id.* "The paramount concern must be to preserve public trust in the scrupulous
2  administration of justice and the integrity of the bar." *Id.* "Thus, while the 'drastic measure' of
3  disqualification is 'generally disfavored and should only be imposed when absolutely necessary,'
4  '[t]he important right to counsel of one's choice must yield to ethical consideration that affect the
5  fundamental principles of our judicial process.'" *Diva Limousine, Ltd., v. Uber Techs., Inc.*, 2019
6  WL 144589, at *13 (N.D. Cal. Jan. 9, 2019) (internal citation omitted) (quotations omitted).

## III. DISCUSSION

As both parties agree, two requirements must be met in order for the Court to disqualify counsel. *See* Mot. at 10, 20; Opp'n at 8–9. First, counsel must have violated the Rules of Professional Conduct. *See, e.g.*, *Neil v. Health Net, Inc.*, 100 Cal. App. 831, 850 (2002) ("Because there was no violation of [the relevant rule], disqualification . . . was not legally authorized."). Second, the Court must conclude that it is appropriate to order disqualification. *See Diva Limousine, Ltd., v. Uber Techs., Inc.*, 2019 WL 144589, at *13 (N.D. Cal. Jan. 9, 2019) (stating that the Court "must determine whether it is appropriate to order disqualification"). The Court addresses each requirement in turn.

### A. Keller Lenkner violated the California Rules of Professional Conduct.

Facebook contends that Keller Lenkner violated the California Rules of Professional Conduct because Keller Lenkner hired and failed to timely screen Mr. Pak, who previously represented Facebook in the Facebook government investigations brought by the FTC and several state Attorneys General. Mot. at 3–4. As both parties agree, three Rules are of particular relevance to Facebook's motion to disqualify: California Rules of Professional Conduct Rules 1.9(a), 1.10(a), and 1.10(a)(2). Mot. at 11, 14; Opp'n at 9–11. The Court discusses in turn each Rule and its application to the instant case.

First, California Rule of Professional Conduct 1.9(a) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R.

6

Prof'l Conduct 1.9(a).

According to Facebook, Rule 1.9(a) prohibits Mr. Pak from representing Plaintiffs in the instant case because: (1) Mr. Pak formerly represented Facebook in the Facebook government investigations; (2) the Facebook government investigations are substantially related to the instant case; (3) Plaintiffs' interests are materially adverse to Facebook's; and (4) Facebook has not given informed written consent. Mot. at 11–14. In their opposition, Plaintiffs do not contest that the Facebook government investigations are substantially related to the instant case. To the contrary, Plaintiffs have acknowledged that the antitrust lawsuits that stemmed from the Facebook government investigations are related to the instant case. *See* ECF No. 78 at 35 (parties' joint case management statement, stating that the antitrust lawsuits filed by the FTC and the states are related to the instant case). Furthermore, it is undisputed that Plaintiffs' interests are materially adverse to Facebook's. Moreover, it is undisputed that Facebook has not given informed written consent to Mr. Pak's representation of Plaintiffs. Accordingly, the Court concludes that, under Rule 1.9, Mr. Pak is prohibited from representing Plaintiffs.

Second, California Rule of Professional Conduct 1.10(a) states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [Rule] 1.9." Cal. R. Prof'l Conduct 1.10(a); *see also SpeeDee Oil*, 20 Cal. 4th at 1139 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."). Accordingly, Rule 1.10(a) imputes Mr. Pak's conflict to Keller Lenkner, where Mr. Pak is employed.

Thus, the parties' dispute centers upon the third rule, California Rule of Professional Conduct 1.10(a)(2), which provides an exception to the prohibition on representation when:

> The prohibition [on representation] is based upon rule 1.9(a) . . . and arises out of the prohibited lawyer's association with a prior firm, and:
>
> (i) the prohibited lawyer did not substantially participate in the same or a substantially related matter;

7
Case No. 20-CV-08570-LHK
ORDER GRANTING MOTION TO DISQUALIFY

> (ii) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (iii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this rule, which shall include a description of the screening procedures employed; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures.

Cal. R. Prof'l Conduct 1.10(a)(2).

The parties dispute whether Keller Lenkner has satisfied the requirements of this Rule 1.10(a)(2) exception. Mot. at 14–20; Opp'n at 11–21. In other words, the parties dispute: (1) whether Mr. Pak substantially participated in the Facebook government investigations; (2) whether Mr. Pak was timely screened; and (3) whether Facebook received prompt notice. Below the Court addresses each requirement in turn. Because the Court concludes that Keller Lenkner did not satisfy any of the three requirements, the Court concludes that the Rule 1.10(a)(2) exception does not apply.

### 1. Substantial Participation

The State Bar of California's Executive Summary of Rule 1.10 states that screening is permitted "only in limited situations," when the lawyer did not substantially participate in the matter at issue. State Bar of California, *Executive Summary: Rule 1.10 Imputation of Conflicts of Interest*, *available at* http://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.10-Exec_Summary-Redline.pdf. Permitting screening for a lawyer who did not substantially participate in the matter at issue is intended to "provide flexibility for lawyers to move laterally without creating a significant risk that a lawyer who has acquired sensitive confidential information about the former clients is now in the opposing party's law firm." *Id.*

The Comments to Rule 1.10(a)(2) identify four factors that should be considered in determining whether a prohibited lawyer's previous participation was substantial: "[1] the lawyer's level of responsibility in the prior matter, [2] the duration of the lawyer's participation, [3] the extent to which the lawyer advised or had personal contact with the former client, and [4] the extent to which the lawyer was exposed to confidential information of the former client likely to

be material in the current matter." *Id.* The Court addresses each factor in turn.

The Court concludes that the first factor (Mr. Pak's level of responsibility) weighs against a finding of substantial participation because Mr. Pak was a fourth-year associate who was primarily assisting Mr. Panner, a partner. Pak Decl. ¶ 12; Panner Decl. ¶ 4.

The Court finds that the second factor (the duration of Mr. Pak's participation) weighs heavily in favor of a finding of substantial participation because Mr. Pak worked on the Facebook government investigations for six months. Panner Decl. ¶ 8. Mr. Pak billed over 800 hours, or three-quarters of the time he billed during that period, to the Facebook government investigations. *Id.*

The Court concludes that the third factor (the extent to which Mr. Pak advised or had personal contact with Facebook) weighs slightly against a finding of substantial participation because Mr. Pak did not advise Facebook, although Mr. Pak did have regular phone calls with Facebook's in-house counsel. Pak Decl. ¶¶ 13–15; Panner Decl. ¶¶ 5–6.

The Court concludes that the fourth factor (the extent to which Mr. Pak was exposed to confidential information of Facebook likely to be material in the current matter) weighs in favor of a finding of substantial participation because Mr. Pak was exposed to confidential information as part of Mr. Pak's work. Mr. Pak's work involved reviewing and drafting legal memoranda; assisting with a witness interview; helping Facebook respond to an FTC civil investigative demand; working with consulting and potential testifying experts for Facebook; reviewing Facebook's documents; attending team meetings; participating in several calls per week, including with Facebook's in-house counsel; and receiving hundreds if not thousands of case-related emails. Although Mr. Pak states that "a large portion" of these emails "were administrative, ministerial, or otherwise process-focused," some of these emails were substantive. Pak Decl. ¶ 15. For instance, Mr. Pak received daily emails from Mr. Hansen, Facebook's lead counsel in the government cases, where Mr. Hansen "shared his thinking on legal and trial strategy." Panner Decl. ¶ 7. Moreover, the confidential information to which Mr. Pak was exposed is likely to be material in the instant case because, as Plaintiffs concede, the instant case is related to the government litigation. *See*

ECF No. 78 at 35.

In sum, the Court concludes that the duration of Mr. Pak's participation weighs heavily in favor of a finding of substantial participation; the extent to which Mr. Pak was exposed to confidential information of Facebook likely to be material in the current matter weighs in favor of a finding of substantial participation; Mr. Pak's level of responsibility weighs against a finding of substantial participation; and the extent to which Mr. Pak advised or had personal contact with Facebook weighs slightly against a finding of substantial participation.

Weighing these factors, the Court concludes that Mr. Pak substantially participated in the Facebook government investigations. Although Mr. Pak did not have a high level of responsibility in the Facebook government investigations, Mr. Pak worked for six months and billed over 800 hours on the Facebook government investigations. Panner Decl. ¶ 8. During this time, Mr. Pak reviewed and drafted legal memoranda, assisted with a witness interview; helped Facebook respond to an FTC civil investigative demand; worked with consulting and potential testifying experts for Facebook; reviewed Facebook's documents; attended team meetings; participated in several calls per week, including with Facebook's in-house counsel; and received hundreds if not thousands of case-related emails. Pak Decl. ¶¶ 13–15; Panner Decl. ¶¶ 5–6. According to Mr. Pak, "a large portion" of these emails "were administrative, ministerial, or otherwise process-focused," but some of these emails were substantive, including daily emails from Facebook's lead counsel in the government cases, Mr. Hansen. Pak Decl. ¶ 15; Panner Decl. ¶ 7. Thus, Mr. Pak's work exposed him to Facebook's confidential information that is likely to be relevant in the instant case. Pak Decl. ¶¶ 13–15; Panner Decl. ¶¶ 5–6. Thus, Mr. Pak substantially participated in the Facebook government investigations.

Because Mr. Pak substantially participated in the Facebook government investigations, the Rule 1.10(a)(2) exception does not apply. However, the Court proceeds to discuss the other requirements of Rule 1.10(a)(2), which provide independent grounds for the Court's conclusion that the Rule 1.10(a)(2) exception does not apply.

**2. Timely Screening**

10

Case No. 20-CV-08570-LHK
ORDER GRANTING MOTION TO DISQUALIFY

Moreover, even assuming that Mr. Pak did not substantially participate in the Facebook government investigations, Keller Lenkner did not timely screen Mr. Pak from the instant case. "[A] firm must impose screening measures when the conflict first arises." *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 810 (2010). Specifically, "screening should be implemented before undertaking the challenged representation or hiring the tainted individual." *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 732, 745 (1991). "Screening must take place at the outset to prevent any confidences from being shared." *Id.*

In the instant case, Mr. Pak reported his involvement in the Facebook government investigations to Mr. Postman on June 30, 2020, one day after he started work at Keller Lenkner. Postman Decl. ¶ 13. Mr. Pak states in his declaration that "[s]ome time after [he] began working at Keller Lenkner," Mr. Postman informed Mr. Pak that Keller Lenkner was evaluating a potential case against Facebook and told Mr. Pak not to discuss Mr. Pak's prior work or the potential case. Pak Decl. ¶ 20; Postman Decl. ¶ 15. However, a formal screen was not imposed until November 11, 2020, over four months after Mr. Pak arrived at the firm and reported that he had worked on the Facebook antitrust investigations, and only three weeks before the *Klein* complaint was filed. Postman Decl. ¶ 17.

Plaintiffs contend that on June 30, 2020, there was nothing to screen Mr. Pak from because Keller Lenkner did not represent a client adverse to Facebook. Opp'n at 17. However, the record reflects that Keller Lenkner began work on an antitrust case against Facebook far earlier than November 11, 2020, when a formal screen was imposed. In their March 3, 2021 application for appointment as interim co-lead counsel for the user class, Quinn Emanuel and Keller Lenkner stated that "Quinn Emanuel and Keller Lenkner developed the User Class's claims after conducting an exhaustive factual and legal investigation which first began in 2019." ECF No. 62 at 3. Similarly, Quinn Emanuel and Keller Lenkner's March 10, 2021 response to a competing application for appointment as interim co-lead user class counsel, ECF No. 62, stated that their application "detailed their multi-year investigation in this case." ECF No. 62 at 1. In the March 18, 2021 hearing on motions for appointment as interim class counsel, Mr. Postman stated that "Keller

Lenkner worked to develop this case independently from Quinn Emanuel." Tr. of Mar. 18, 2021 Hearing, ECF No. 77 at 47:19–20.  Mr. Postman further stated: "We've spent months and years thinking not about the high level that an antitrust case could exist against Facebook, but the real nitty gritty. I've spent many late nights working on the complaint, the memos and before the cases." *Id*. at 48:7–8. During the March 18, 2021 hearing, Mr. Swedlow of Quinn Emanuel stated that "Quinn Emanuel and Keller Lenker had put in a significant amount of time and money for two-plus years." *Id*. at 52:22–23. Based on these representations, the Court is not persuaded that Keller Lenkner had not begun work on the instant case before November 11, 2020.

Plaintiffs contend that Keller Lenkner needed to employ a screen only when the representation commenced in the instant case. However, California courts have stated that "screening should be implemented before undertaking the challenged representation or hiring the tainted individual. . . to prevent any confidences from being shared." *In re Complex Asbestos Litig.,* 232 Cal. App. 3d at 745; *see also Export-Import Bank of Korea v. ASI Corp.*, 2019 WL 8200603, at *11 (C.D. Cal. Jan. 16, 2019) ("Courts routinely disqualify counsel for failing to implement ethical screens *before* representing a prospective client."). Accordingly, the Court concludes that Keller Lenkner needed to impose a screen when the conflict first arose. Thus, the Court concludes that Keller Lenkner failed to timely screen Mr. Pak.

### 3. Prompt Notice

Finally, Keller Lenker did not provide prompt notice to Facebook. Rule 1.10(a)(2) does not impose a concrete timing requirement, but rather is designed "to enable the former client to ascertain compliance" with the provisions of Rule 1.10, and to "inquir[e] or object[]" to the screening procedures being used. Cal. R. Prof'l Conduct 1.10(a)(2)(iii). In the instant case, Keller Lenkner gave notice to Facebook on March 19, 2021, the day after Facebook (and not Keller Lenkner) raised the conflict issue at the March 18, 2021 hearing on motions for appointment of interim class counsel and more than three months after filing the initial complaint in the instant case. Mehta Decl. Exh. B. Moreover, Keller Lenkner does not provide a reason why it could not have provided notice to Facebook sooner, such as at the time that the instant case was filed.

Accordingly, the Court concludes that Keller Lenkner's notice was not prompt.

Because the Court concludes that Keller Lenkner did not satisfy any of the three requirements of Rule 1.10(a)(2), the Court concludes that the Rule 1.10(a)(2) exception does not apply. Accordingly, Keller Lenkner violated the California Rules of Professional Conduct.

**B.  Disqualification of Keller Lenkner is appropriate.**

For the Court to order disqualification, Facebook must not show not only a violation of the California Rules of Professional Conduct, but also that disqualification is an appropriate remedy. Disqualification is "generally disfavored and should only be imposed when absolutely necessary." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004). However, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *SpeeDee* Oil, 20 Cal. 4th at 1145. Accordingly, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.*

 "Generally, when there is a substantial relationship between the two representations, courts disqualify counsel from representing the second client." *Diva Limousine, Ltd., v. Uber Techs., Inc.*, 2019 WL 144589, at *13 (N.D. Cal. Jan. 9, 2019); *see also Epikhin v. Game Insight N. Am.*, 2015 WL 2229225, at *3 (N.D. Cal. May 12, 2015) ("When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client.") (quoting *City & County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006)).

In the instant case, the Court concludes that disqualification is appropriate. As explained above, Mr. Pak billed over 800 hours on the Facebook government investigations. Panner Decl. ¶ 8. During that time, Mr. Pak was exposed to Facebook's confidential information because Mr. Pak reviewed and drafted legal memoranda, assisted with a witness interview; helped Facebook respond to an FTC civil investigative demand; worked with consulting and potential testifying experts for Facebook; reviewed Facebook's documents; attended team meetings; participated in several calls per week, including with Facebook's in-house counsel; and received hundreds if not

thousands of case-related emails. Pak Decl. ¶¶ 13–15; Panner Decl. ¶¶ 5–6. Although Mr. Pak states that "a large portion" of these emails "were administrative, ministerial, or otherwise process-focused," Pak Decl. ¶ 15, some were substantive. For instance, Mr. Pak received daily emails from Mr. Hansen, Facebook's lead counsel in the government cases, where Mr. Hansen "shared his thinking on legal and trial strategy." Panner Decl. ¶ 7. Moreover, the close relationship between the Facebook government litigation and the instant case means that the confidential information to which Mr. Pak was exposed is likely to be relevant in the instant case. Furthermore, as explained above, Keller Lenkner neither timely screened Mr. Pak nor provided prompt notice to Facebook. *See* Sections III(A)(2)–(3), *supra*. Finally, the Court notes that Plaintiffs are unlikely to be significantly prejudiced because Keller Lenkner is one of four law firms representing consumers in the instant case. *See* ECF No. 78 (appointing four law firms to represent consumers). Accordingly, the Court concludes that disqualification of Keller Lenkner is appropriate in the instant case.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Facebook's motion to disqualify Keller Lenkner LLC.

**IT IS SO ORDERED.**

Dated: July 20, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge