**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

*Interim Co-Lead Advertiser Class Counsel*

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 5:20-cv-08570-LHK |
| Plaintiffs, | **Joint Rule 26(f) Report** |
| vs. | The Hon. Lucy H. Koh |
| FACEBOOK, INC., | |
| Defendant. | |
| This Document Relates To: All Actions | |

**Joint Rule 26(f) Report**

Pursuant to Federal Rule of Civil Procedure 26(f) and the Court's July 1, 2021 Case Management Order, Dkt. 115, lead counsel for each of the putative Consumer Class, the putative Advertiser Class, and defendant Facebook, Inc. have met and conferred pursuant to Rule 26(f) and respectfully submit this Rule 26(f) Report.

1. **Proposed Discovery Plan Pursuant to Rule 26(f)**

   a. **Proposed Changes in the Timing, Form, or Requirement for Initial Disclosures Pursuant to Rule 26(a)**

The parties will exchange Federal Rule of Civil Procedure 26(a) initial disclosures no later than today (August 13, 2021), pursuant to the Court's July 1, 2021 Case Management Order, Dkt 115.

   b. **Subjects on Which Discovery May Be Needed, When Discovery Should be Completed, and Whether Discovery Should be Conducted in Phases or be Limited to or Focused on Particular Issues**

This Court has set a deadline for fact discovery to close on September 2, 2022.  Dkts. 82, 115.  This Court has additionally held that discovery will not be bifurcated between class discovery and merits discovery.  Dkt. 82.  Following the Court's April 2, 2021 order, Dkt. 82, Facebook produced to the plaintiffs more than 12 million pages of documents previously provided to the Federal Trade Commission and the House Judiciary Committee in the course of their investigations of Facebook.

**Consumer Plaintiffs' Statement**:  The Consumer Class Plaintiffs set forth the subjects on which discovery may be needed in the March 31, 2021 Joint Case Management Statement, Dkt. 78, including documents and testimony from Facebook regarding, among other things: Facebook's representations to consumers regarding Facebook's privacy protections; Facebook's harvesting of consumer data; Facebook's disclosure of consumer data to third parties, including Facebook's sale of consumer data to advertisers; Facebook's intent to deceive consumers regarding Facebook's privacy protections and commercial surveillance; Facebook's surveillance of the websites and apps visited by Facebook's consumers; Facebook's acquisition of competitors and related negotiations;

Facebook's copying of competitors; Facebook's policies and practices relating to access to Facebook's Platform and consumer data; the relevant markets; Facebook's market power and expansion in the relevant markets; barriers to entry and network effects in the relevant markets; and the effects of Facebook's policies on competition and consumers.  The Consumer Class Plaintiffs will also seek documents and testimony from non-parties, including Facebook's (former) competitors.  Consumer Plaintiffs reserve the right to contest whether the topics identified in Facebook's statement concerning the subjects of discovery are relevant and proportional to the issues in this case.

**Advertiser Plaintiffs' Statement**:  The Advertiser Class Plaintiffs set forth the subjects on which discovery may be needed in the March 31, 2021 Joint Case Management Statement, Dkt. 78, including documents and testimony from Facebook regarding, among other things, Facebook's sales of and policies related to advertising; Facebook's surveillance of the websites and apps visited by Facebook's consumers; Facebook's acquisition of competitors and related negotiations; Facebook's copying of competitors; Facebook's policies and practices relating to access to Facebook's Platform and consumer data; the relevant markets; Facebook's market power and expansion in the relevant markets; barriers to entry and network effects in the relevant markets; Facebook's "Jedi Blue" agreement with Google; and the effects of Facebook's policies on competition and advertisers.  The Advertiser Class Plaintiffs will also seek documents and testimony from non-parties, including Facebook's (former) competitors.  Advertiser Plaintiffs reserve the right to contest whether the topics identified in Facebook's statement concerning the subjects of discovery are relevant and proportional to the issues in this case.

**Facebook's Statement**:  Based on the information available to Facebook at the present time, Facebook anticipates it will seek discovery regarding the following topics from the plaintiffs:

- Plaintiffs' use of Facebook, including but not limited to their reasons for using Facebook, their reasons for advertising on Facebook, and their understanding of Facebook's privacy protections, privacy policies, or privacy practices;

- Plaintiffs' time and attention devoted to other websites, applications, online entertainment services, or other online services;

- Data or personal information plaintiffs shared with other sources, including other websites, applications, online entertainment services, and internet-connected devices;

- Privacy practices of other websites, applications, online entertainment services, and internet-connected devices;

- Any monetary or pecuniary benefit plaintiffs received in exchange for providing personal information or devoting time or attention to any source;

- Advertising purchases from any source during the relevant time period, including but not limited to where the advertisement ran, the cost of the advertisement, any return on the advertisement;

- Plaintiffs' advertisement objectives and strategy;

- The quality-adjusted price plaintiffs paid for advertisements on any platform used, including but not limited to documents concerning the relative quality-adjusted price of advertising on Facebook versus other advertising channels, media, or services;

- Any agreements, arrangements, or understandings with potential or retained counsel for either class of plaintiffs;

- Communications between plaintiffs and members or potential members of the putative class;

- Plaintiffs' capacity to serve as representative plaintiffs in this matter;

- Documents concerning any losses, damages, or injuries alleged in the User/Advertiser Complaints, including but not limited to documents concerning the efforts to mitigate the losses, damages, or injuries alleged and documents concerning the quantification of losses, damages, or injuries alleged.

Facebook also anticipates seeking documents and testimony from non-parties, including companies with which it competes.

Facebook reserves the right to contest whether the topics identified in the plaintiffs' respective statements concerning the subjects of discovery are relevant and proportional to the issues in this case.

**c.  Any Issues About Disclosure, Discovery, or Preservation of Electronically Stored Information, Including the Form or Forms in Which it Should be Produced**

The parties have and are continuing to meet and confer regarding a joint stipulated ESI order, and have agreed to submit a joint stipulated ESI order as well as any disputes relating to the joint stipulated ESI order to Judge DeMarchi no later than Friday, August 20, 2021, pursuant to the discovery dispute resolution procedure outlined in Judge DeMarchi's Standing Order for Civil Cases.

**d.  Any Issues About Claims of Privilege or of Protection as Trial-Preparation Materials, Including Whether to Ask the Court to Include their Agreement in an Order under FRE 502**

The parties have and are continuing to meet and confer regarding a joint stipulated privilege protocol, addressing privilege logging, and have agreed to submit a joint stipulated privilege protocol as well as any disputes relating to the joint stipulated privilege protocol to Judge DeMarchi no later than Friday, August 20, 2021, pursuant to the discovery dispute resolution procedure outlined in Judge DeMarchi's Standing Order for Civil Cases.

With respect to the 502(d) Agreement, the parties agreed to an interim 502(d) Agreement to facilitate Facebook's Court-ordered production of documents on May 3, 2021.  Dkt. 90.  Judge DeMarchi entered a modified version of the parties' stipulated, interim 502(d) Agreement on May 3, 2021.  Dkt. 92.  The parties thereafter submitted their disputes on the 502(d) Agreement to Judge DeMarchi on May 14, 2021, via joint letter briefs.  Dkt. 94.  Judge DeMarchi held a hearing on the parties' disputes on May 25, 2021, Dkt. 99, and issued an order on the 502(d) Agreement on June

3, 2021, Dkt. 105.  In accordance with Judge DeMarchi's order, the parties submitted a revised 502(d) Agreement, which Judge DeMarchi entered on June 14, 2021.  Dkts. 106, 107.

> **e.  What Changes Should be Made in the Limitations on Discovery Imposed Under These Rules or by Local Rule, and What Other Limitations Should be Imposed**

As it relates to depositions, while the parties agree that Plaintiffs collectively may depose more than 10 current Facebook employees in this case, the parties are continuing to meet and confer regarding the appropriate number of depositions.  The parties have agreed to submit a joint stipulated deposition protocol addressing the number of depositions, and any disputes relating to the joint stipulated deposition protocol, to Judge DeMarchi no later than Friday, August 20, 2021, pursuant to the discovery dispute resolution procedure outlined in Judge DeMarchi's Standing Order for Civil Cases.

With respect to expert discovery, the parties have and are continuing to meet and confer regarding a joint stipulated expert discovery order, and have agreed to submit a joint stipulated expert discovery order as well as any disputes relating to the joint stipulated expert discovery order to Judge DeMarchi no later than Friday, August 20, 2021, pursuant to the discovery dispute resolution procedure outlined in Judge DeMarchi's Standing Order for Civil Cases.

The parties dispute limitations on interrogatories.

**Plaintiffs' Statement:**  Plaintiffs propose that Consumer Plaintiffs can collectively propound 25 interrogatories to Facebook, Advertiser Plaintiffs can collectively propound 25 interrogatories to Facebook, and Facebook can propound 25 interrogatories to each of Consumer Plaintiffs (collectively) and Advertiser Plaintiffs (collectively), with the right for any party to seek leave to serve additional interrogatories.  As set forth below, Plaintiffs' proposal provides Plaintiffs fewer interrogatories than otherwise provided by Rule 33's default limit of 25 interrogatories *per party*.

Facebook's proposal  runs contrary to Rule 33(a)'s plain reading and how courts have interpreted and applied the rule.  Rule 33(a) provides 25 written interrogatories **per party**.  *See* Fed. R. Civ. P. 33(a); *Dixon v. Spurlin*, No. 1:18-cv-00133, 2020 WL 6707325, at *3 (W.D. La. Nov. 13,

1   2020) ("Under the plain language of Rule 33(a), **each Plaintiff** is entitled to propound upon

2   [defendant] 25 interrogatories, including all discrete subparts, without leave of court.") (emphasis

3   added).   Courts have routinely applied this construction of Rule 33 in class actions involving

4   multiple class representatives.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-

5   5944 JST, 2015 WL 13756256, at *2 (N.D. Cal. Dec. 17, 2015) (Tigar, J.) (rejecting argument that

6   putative class had exceeded twenty-five interrogatory limit "given that each named plaintiff is

7   entitled to serve 25 interrogatories."); *Zamora v. D'Arrigo Bros. Co. of Cal.*, No. 04-cv-00047-JW,

8   2006 WL 931728, at *4 (N.D. Cal. Apr. 11, 2006) (Lloyd, J.) (similar).  And, contrary to Facebook's

9   position, courts in antitrust class actions involving multiple classes (like this one), have apportioned

10  interrogatories at a minimum **by class**.  *See In re Optical Disk Drive Antitrust Litigation*, Case No.

11  3:10-md-02143-RS (N.D. Cal.), Dkt. 606 at 3 (July 17, 2012) ("The DPPs and the IPPs will **each**

12  **be permitted** to propound up to 50 non-duplicative interrogatories of each Defendant family.")

13  (Illston, J.) (emphasis added).

14          While some courts have determined that "in some instances nominally separate parties

15  should be considered one party for purposes of the 25–interrogatory limitation," Consumer Plaintiffs

16  and Advertiser Plaintiffs are ***not*** "nominally separate parties." *Vinton v. Adam Aircraft Indus., Inc.*,

17  232 F.R.D. 650, 664 (D. Colo. 2005).  Consumer Plaintiffs and Advertiser Plaintiffs assert different

18  claims, based on different theories of liability and damages, turning on different events in different

19  relevant markets, which informed the Court's decision to appoint separate counsel for each class.

20  *Cf. Gucci Am., Inc. v. Exclusive Imports Int'l*, No. 99-cv-11490-RCC, 2002 WL 1870293, at *5

21  (S.D.N.Y. Aug. 13, 2002) ("where, as here, the parties are acting in unison and are represented by

22  the same counsel, they may be treated as one party for purposes of the interrogatory limits.").  Given

23  these differences and the non-overlapping discovery sought by Consumer and Advertiser Plaintiffs,

24  Facebook's proposal for multiple plaintiffs across different classes to collectively split 30

25  interrogatories is unworkable.  Facebook's cited cases do not suggest otherwise.  *See, e.g.*, *In re*

26  *Google Inc. Gmail Litigation*, 13-MD-02430-LHK (N.D. Cal. May 8, 2013) (allowing Plaintiffs

27  with common claims to serve 50 interrogatories).

28          **Facebook's Statement:**  Facebook proposes the following common interrogatory structure:

-6-

- Advertisers and Users may collectively serve 20 common interrogatories on Facebook
- Advertisers may serve 5 unique interrogatories on Facebook
- Users may serve 5 unique interrogatories on Facebook
- Facebook may serve 20 common interrogatories on plaintiffs, as well as 5 interrogatories on the Advertisers and 5 interrogatories on the Users.

This proposal allows each party access to 25 interrogatories, while also eliminating the potential for unnecessarily duplicative or burdensome use of interrogatories.

Absent some common-sense limitations on the use of interrogatories in this case, interrogatories risk becoming a tool for harassment rather than discovery.  The Advertisers' and Users' complaints address many of the same events, including Facebook's acquisitions of Instagram and WhatsApp; Facebook's acquisition of Onavo and purported use of Onavo data for market research; Facebook's purported "copying" of popular features associated with other apps; and policies on access to Facebook data through Facebook Platform.  Because the two classes will therefore be seeking substantially overlapping information from Facebook, the most efficient approach would be to require the two classes to serve their interrogatories jointly, and for those joint interrogatories to be subject to Rule 33's presumptive 25-interrogatory limit.

A common interrogatory structure will increase efficiency, both as between plaintiffs' counsel and for Facebook.  Common interrogatories will eliminate a situation where Facebook must respond to similar but not identical requests from each group of plaintiffs' counsel.  They will also inspire efficiency among the large group of counsel on the plaintiffs' side, because counsel for each class will not be carrying out parallel negotiations with Facebook over objections and scope, reviewing similar-but-not-identical responses to overlapping interrogatories, or independently seeking assistance from the Court to resolve any disputes between the parties.  At bottom, a common interrogatory structure will best implement the goal of the presumptive interrogatory limits in Rule 33, which is to "forc[e] counsel to make the best use of the limited number of interrogatories through skillful and thoughtful drafting designed to accomplish a legitimate purpose."  Manual for Complex Litigation § 11.46 (4th ed. 2004).  Indeed, this Court has imposed similar interrogatory limits in

other complex cases.  See Case Management Order, *In re Google Inc. Gmail Litigation*, 13-MD-02430-LHK (N.D. Cal. May 8, 2013) (setting single limit of 50 interrogatories for eight classes of plaintiffs in consolidated class action against Google); Case Management Order, *National Urban League et al. v. Ross*, 20-cv-05799-LHK (N.D. Cal. Nov. 13, 2020) (setting single limit on interrogatories for multiple plaintiffs).

Facebook's approach would similarly limit its own use of interrogatories.  Under Facebook's proposal, Facebook would be permitted to serve no more than 25 common interrogatories on the named plaintiffs, which the named plaintiffs would then answer jointly (for all plaintiffs), on a per-class basis, or on a per-plaintiff basis, depending on how the response to the interrogatory varied across the named plaintiffs, consistent with their Rule 33 obligation to answer interrogatories "fully." Fed. R. Civ. P. 33(b)(3).  *See also Marbet v. City of Portland*, 2004 WL 1737737, at *2 (D. Or. Aug. 3, 2004) (compelling separate answers to interrogatories from named plaintiffs where responses differed between plaintiffs).  This, too, will increase efficiency on both sides, allowing a single lawyer (or group of lawyers) on plaintiffs' side to draft all common responses and objections, rather than requiring counsel to draft eleven separate sets of responses that are common across the class.

Finally, Facebook recognize that the limits in Rule 33 are presumptive, and will negotiate in good faith to increase the proposed limits if, as discovery progresses, plaintiffs are able to justify the need for additional specific requests.

**f.   Any Other Orders that the Court Should Issue Under Rule 26(c) or Under Rule 16(b) and (c).**

With respect to the Protective Order, the parties agreed to an interim Protective Order to facilitate Facebook's Court-ordered production of documents on May 3, 2021.  Dkt. 89.  Judge DeMarchi entered a modified version of the parties' stipulated, interim Protective Order on May 3, 2021.  Dkt. 91.  The parties thereafter submitted their disputes on the Protective Order to Judge DeMarchi on May 14, 2021, via joint letter briefs.  Dkt. 95.  Judge DeMarchi held a hearing on the parties' disputes on May 25, 2021, Dkt. 99, and issued an order on the Protective Order on June 14,

2021, Dkt. 108.   In accordance with Judge DeMarchi's order, the parties submitted a revised

Protective Order, which Judge DeMarchi entered on June 14, 2021.  Dkts. 110, 111.

      With respect to the Scheduling Order, this Court previously set a case schedule in its April

2, 2021 Case Management Order (Dkt. 82) and its July 1, 2021 Case Management Order (Dkt. 115).

DATED:  August 13, 2021

Respectfully submitted,

By:  */s/ Yavar Bathaee*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (admitted *pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (admitted *pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
(213) 462-2772

By:  */s/ Kristen M. Anderson*

**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565

Patrick J. McGahan (admitted *pro hac vice*)

By:  */s/ Stephen A. Swedlow*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit (admitted *pro hac vice*)
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Manisha M. Sheth (admitted *pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

By:  */s/ Shana E. Scarlett*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman (admitted *pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Case No. 5:20-cv-08570-LHK
RULE 26(F) REPORT

pmcgahan@scott-scott.com
Michael P. Srodoski (admitted *pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
(310) 474-9111

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (admitted *pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (admitted *pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
(215) 592-1500

*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (admitted *pro hac vice*)
  aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

By:  */s/ Sonal N. Mehta*
WILMER CUTLER PICKERING HALE AND
DORR LLP
Sonal N. Mehta (SBN: 222086)
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Email: Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: David.Gringer@wilmerhale.com
Email: Ari.Holtzblatt@wilmerhale.com

Attorneys for Defendant Facebook, Inc.

1

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: August 13, 2021                    By /s/ Stephen A. Swedlow
                                                          Stephen A. Swedlow


## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By /s/ Stephen A. Swedlow
Stephen A. Swedlow