<u>**VIA CM/ECF FILING**</u>

August 20, 2021

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   Joint Discovery Letter Brief Concerning Dispute Regarding Entry of ESI Protocol in
<u>Maximilian Klein et al. v. Facebook, Inc.</u>, Case No. 5:20-cv-08570-LHK (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to Section 4 of the Court's Standing Order for Civil Cases, the Consumer Plaintiffs, the Advertiser Plaintiffs, and Defendant Facebook, Inc. ("Facebook") respectfully request that the Court resolve a dispute concerning the entry of an ESI Protocol[1] that will govern discovery of electronically stored information and hard copy documents in these consolidated actions.[2]

**<u>STATEMENT OF THE DISPUTE</u>**

The parties have met and conferred in good faith and agree on the parameters of an ESI Protocol. But the parties disagree as to the appropriate terms for several of the ESI Protocol's specific provisions. These provisions—and the parties' respective positions regarding them—are set forth below.

**A.   Sedona Conference Principle No. 6 (Defendant's Section 4)**

**1.   <u>Plaintiffs' Position</u>**

Facebook includes Sedona Principle 6 in an attempt to sanction Facebook's lack of transparency with Plaintiffs regarding Facebook's ESI preservation and production (*e.g.*, Facebook refuses to disclose how it will use technology assisted review to identify responsive documents for production, or to provide an unqualified agreement to provide search term hit reports, addressed below). Plaintiffs object to the one-sided inclusion of legal positioning—divorced from any concrete dispute—in the ESI Protocol. Moreover, Facebook's lack of

---

[1] Attached hereto are Ex. A (a redline reflecting the differences between the parties' proposed ESI Protocols); Ex. B (Plaintiffs' proposed ESI Protocol); Ex. C (a redline reflecting Plaintiffs' proposed changes to the Northern District's Model ESI Protocol in Standard Cases).

[2] The parties stipulated to August 20, 2021, as the date for submitting this dispute to the Court, which—per the parties' agreement—is more than 5 court days after lead counsel for all parties met and conferred as to this dispute. *See* Standing Order, § 4(b).

1

transparency in discovery is contrary to law. *See, e.g.*, Northern District of California Guidelines for the Discovery of ESI, 1.02 ("The Court expects cooperation on . . . preservation, collection, search, review, and production of ESI."); 2.02 (the parties should discuss "ESI that has been and will be preserved" and the "[s]earch and production of ESI" including "methods to identify discoverable ESI and filter out ESI that is not subject to discovery."); *see also*, *e.g.*, *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI."); *Del Campo v. Kennedy*, No. 01-cv-21151-JW, 2006 WL 2586633, at *2 (N.D. Cal. Sept. 8, 2006) ("the need [for parties] to meet and confer to develop a document preservation plan is obvious.").

### 2. **Facebook's Position**

Facebook proposes to memorialize Sedona Principle Six, which provides: "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, 118 (2018).

The Sedona Principles are a "guide for attorneys and judges confronting the novel challenges of eDiscovery," *id.* at 8, to which courts in this district often refer. *See In re Facebook PPC Ad. Litig.*, 2011 WL 1324516, at *2 (N.D. Cal. Apr. 6, 2011); *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *6 (N.D. Cal. Nov. 15, 2012).

Principle Six establishes that Facebook—not plaintiffs—is responsible for complying with its preservation obligations. Principle Six applies with particular force here because Facebook is one of the largest data companies in the world. Even seemingly mundane preservation requests may be more complicated to execute than the requesting party understands. Preservation is further complicated here because of various parallel investigations and lawsuits with overlapping preservation requirements.

Plaintiffs' refusal to accept Principle Six suggests an intent to use meet-and-confers as an improper backdoor route to "discovery on discovery." But "discovery into another party's discovery process is disfavored." *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). Meta-discovery is not allowed "without good cause" and parties seeking it "must show a specific deficiency in the other party's production." *Brewer v. BNSF Railway Co.*, 2018 WL 882812, at *2 (D. Mont. Feb. 14, 2018). No such showing has been made or even suggested.

Of course, Principle Six does not obviate Facebook's obligation to cooperate. Principle Six itself advises that it is "in the best interests of the responding party to engage in meaningful cooperation." *Sedona Principles*, 19 SEDONA CONF. J. at 125. Facebook has and will do just that.

**B.     Preservation of Particular Categories of Information (Plaintiffs' Sections 4(d) and 4(e), Defendant's Section 4(d))**

1. <u>**Plaintiffs' Position**</u>

Facebook identifies sixteen categories of documents that Facebook asserts "are not reasonably accessible" and therefore "*need not be preserved*." Ex. C, cl. 4 (emphasis added). Confusingly, Facebook then states that "to the extent that a party identifies relevant information" within the categories, the party will preserve and produce from such sources. It is inconsistent to simultaneously say that categories of documents are so inaccessible as to not need to be preserved, and that documents identified as relevant must be produced from these categories. Unless the parties know at the outset what ESI must be preserved, it may be impossible for that ESI to be produced.

First, as it relates to "[b]ackup systems and/or tapes for disaster recovery"; "individual user data"; and "systems no longer in use," the parties originally agreed that such categories would be preserved but not produced, unless otherwise ordered by the Court. Plaintiffs continue to propose this compromise. Ex. B, cl. 4. Facebook, however, now states that such categories should both (1) not be preserved; and (2) be produced to the extent relevant information is identified. Plaintiffs object to the non-preservation of these categories to the extent they contain relevant information. Facebook has agreed to preserve these categories in several cases. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. June 18, 2020), Dkt. 416 at 4; *Williams et al v. Facebook, Inc.*, No. 3:18-cv-01881-RS (N.D. Cal.), Dkt. 104 at 2; *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal), Dkt. 144 at 2.

Second, as relates to "voice messages"; "instant messages and chats"; "sound recordings"; "video recordings"; "information solely contained on mobile devices"; and "server, system, or network logs," Facebook again proposes that such categories should both (1) not be preserved; and (2) be produced to the extent that relevant information is identified in that category. Plaintiffs object to the non-preservation of these categories of information to the extent they contain relevant information. Far from such categories being too inaccessible to even preserve, Facebook has actually *agreed to preserve them* in other cases. *Williams et al v. Facebook, Inc.*, Dkt. 104-1, cl. 4(d)(5)(6)(7)(8) (preserving instant messages, chats, voice messages, sound, and video recordings); *In re Facebook Biometric Information Privacy Litig.*, Dkt. 144 at 4(e)(ii) (preserving "mobile devices" unless "such information is duplicative."). At this juncture, Facebook has not even identified the relevant custodians to Plaintiffs (addressed below) and refused to state during the meet and confer process whether custodial interviews have been conducted—in other words, Facebook has taken the position that highly relevant categories of ESI, *need not be preserved* wholesale, without having identified the extent to which relevant information exists in such locations.

As it relates to activity logs, Facebook itself proposed that neither party needed to preserve "[m]obile device activity logs," which Plaintiffs proposed expanding to include smart devices. In apparent agreement, Facebook incorporated this language into its version of the ESI Order. Then, yesterday, Facebook argued that "Plaintiffs' objection to preserving *any* activity logs from mobile and smart devices conflicts with their obligation to preserve." Consumer Plaintiffs do not agree that "activity logs" are relevant, proportional, or reasonably accessible. Nonetheless, Consumer

3

Plaintiffs have agreed not to delete or otherwise alter settings related to activity logs to the extent Consumer Plaintiffs can access that information. Consumer Plaintiffs are also currently investigating the extent to which forensic collection specialists can access and preserve this information.

### 2. Facebook's Position

Facebook has proposed that the parties preserve data from the categories listed in Ex. C §4.e to the extent those categories contain relevant information. Plaintiffs, by contrast, insist on wholesale preservation of categories that they want, while seeking to exclude from discovery altogether categories that Facebook intends to seek from plaintiffs (e.g., activity logs from smart devices). Plaintiffs' position is untenable. *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 419 (S.D. Cal. 2018) (rejecting an "all or nothing approach" to preservation in favor of a "tailored, more cost-effective solution").

Plaintiffs' insistence that Facebook preserve certain sources in their entirety contradicts the Federal Rules' emphasis on proportionality, whereas Facebook's proposed approach of preserving *relevant* material from those sources has been endorsed by multiple courts (including in at least one order cited by Plaintiffs). Stipulated Order Regarding Electronic Discovery, *Heeger v. Facebook, Inc.*, No. 3:18-cv-06399 (N.D. Cal. Oct. 2, 2019), Dkt. 57; *Gullen v. Facebook, Inc.*, No. 3:16-cv-00937 (N.D. Cal. Feb. 17, 2017); Stipulation and Order Re Discovery of ESI, *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal. Sept. 9, 2016), Dkt. 144; Stipulated Order Regarding Discovery of ESI, *Singer v. Facebook, Inc.*, No. 3:18-cv-04978 (N.D. Cal. June 6, 2019), Dkt. 86.

And Plaintiffs' complaint that Facebook has not disclosed information about custodial interviews is inappropriate because "[w]hat steps were taken regarding any such review fall within the parameters of attorney client privilege and the attorney work doctrine." *Tulip Computers Int'l., B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 107 (D. Del. 2002). Counsel for Plaintiffs have refused to share anything learned during their ***own*** custodial interviews on this basis.

On the other hand, Plaintiffs' objection to preserving *any* activity logs from mobile and smart devices conflicts with their obligation to preserve "evidence which [they] kno[w] or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Plaintiffs claim injury from dedicating time, attention, and data to Facebook. Dkt. 87 ¶¶ 18-28; Dkt. 109 at 1. Activity logs are therefore necessary to determine whether and to what extent the Users used Facebook and other apps that compete for their attention. Similarly, to the extent Users' theory of injury is predicated on lost data, Facebook is entitled to discover what data was "lost," and how Users protected that information more generally—information that, again, likely resides in activity logs.

Plaintiffs' objection to preserving this information appears to be that doing so may require hiring a vendor. But, at a minimum, counsel is surely capable of doing so. *See* Dkt. 55 at 6 (representing to the Court that plaintiffs' counsel "have extensive experience litigating complex class actions"). Nor can plaintiffs be heard to complain that discovery of their smart devices is too intrusive. As representatives of the class, each plaintiff "understood that [they] would have to

participate in discovery." *Fraley v. Facebook Inc.*, 2012 WL 555071, at *3 & n.9 (N.D. Cal. Feb. 21, 2012). That discovery fairly encompasses activity logs.

C.  **Use of Technology Assisted Review (Section 5(a))**

   1.  **Plaintiffs' Position**

   Plaintiffs propose that the parties "meet and confer . . . to negotiate a suitable TAR protocol." Ex. B, cl. 5. Facebook's position that it need not negotiate a suitable TAR protocol runs contrary to law. *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 337 F.R.D. 610, 618 (D.N.J. 2020) ("the backbone of TAR's use is transparency and collaboration"); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC*, No. 16-cv-81180, 2017 WL 4785457, at *4 (S.D. Fla. Oct. 20, 2017) ("Courts expect that counsel will endeavor to cooperate and reach agreements early in litigation regarding . . . the method of search (keyword, *TAR*, combination)") (quoting *The Federal Judges' Guide to Discovery, Edition 3.0*, The Electronic Discovery Institute (2017), at 50) (emphasis added). Facebook's position is also inconsistent with those it has taken in other cases. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. June 18, 2020), Dkt. 416 at 5–6, 6 n.1 (agreeing to negotiate TAR protocol).

   2.  **Facebook's Position**

   Facebook agrees that a party should disclose its use of Technology Assisted Review ("TAR"), but disagrees that a TAR protocol is appropriate. "Plaintiffs' insistence that [Facebook] must collaborate with them to establish a review protocol … has no foothold in the federal rules governing discovery." *Livingston v. City of Chicago*, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020). Facebook—not Plaintiffs—"is the one best situated to decide how to search for and produce ESI responsive to discovery requests," including by using TAR. *In re Viagra (Sildenafil Citrate) Products Liability Litig.*, 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016).

D.  **Hit Reports (Section 5(c))**

   1.  **Plaintiffs' Position**

   Plaintiffs propose that "the Producing Party will provide a hit report for proposed search terms if requested by the Requesting Party"—to which Facebook objects. Ex. B, cl. 5(c). Facebook's position that it will "provide hit reports where they will further the parties' discussions" is an illusory offer that will invite further disputes, particularly in light of Facebook's previous position that it need not provide hit reports to Plaintiffs at all. Courts routinely require the provision of hit reports. *See, e.g.*, *Lawson v. Love's Travel Stops & Country Stores*, *Inc.*, No. 1:17-cv-1266, 2019 WL 7102450, at *6 (M.D. Pa. Dec. 23, 2019) ("The defendant shall immediately disclose to the plaintiffs the results of its narrower word search, which used the plaintiffs' search terms"); *Castle Aero Fla. Int'l*, *Inc. v. Mktg. & Fin. Servs.*, *Inc.*, No. 11-cv-2672-PAM (D. Minn. Oct. 10, 2012), Dkt. 56 at 4 (granting request for "unredacted hit reports" since "this [is] an entirely reasonable request," and "there is virtually no burden on [d]efendants in executing a search and providing the results"). Indeed, Facebook has itself agreed to provide hit reports to plaintiffs in other cases. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, Dkt. 416 at 7.

## 2. Facebook's Position

Rather than pre-choreographing hit report exchanges, Facebook proposes to meet-and-confer about search terms, and provide hit reports only where they will further those discussions. While hit reports can help assess search terms, they can also be misleading if either party makes the common mistake of "conflat[ing] a hit on the parties' proposed search terms with responsiveness," *Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017). For example, the raw numbers associated with a term (e.g., "User Privacy") might lead a party to think that a custodian's documents are highly relevant, even though that custodian actually just subscribed to a "User Privacy" newsletter. In that circumstance, providing information other than hit data (e.g., the custodian's role) might be both less burdensome and more informative. Moreover, Plaintiffs' proposal for exchanging reports here is more detailed and burdensome than that which Facebook has previously agreed to. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. June 18, 2020), Dkt. 416 at 7. The Court should resist Plaintiffs' invitation to direct future meet-and-confers. *See Emanuel v. Gap, Inc.*, 2020 WL 5995134, at *3 (S.D.N.Y. Oct. 9, 2020) ("The Court will not direct that Defendants provide Plaintiffs with a hit report as Plaintiffs have pointed to no case law that establishes such a right, and the Court is aware of none.").

## E. Identification of Custodians

### 1. Plaintiffs' Position

The parties additionally dispute *when* Facebook must provide a list of custodians. This dispute arose in connection with the parties' meet and confers. Facebook's position is that it need not provide Plaintiffs with a list of custodians ***in this case*** at this juncture, but rather, may simply identify custodians by generic job title (such that Plaintiffs are unable to identify them). Facebook provided Plaintiffs with a list of custodians (including names and positions) from the FTC investigation, but confirmed this list is incomplete as Facebook has internally identified additional custodians specific to this case. Facebook has nevertheless refused to identify these additional custodians to Plaintiffs, stating only that they have "similar" job descriptions to the FTC custodians. Moreover, Facebook has attempted to shift the onus to Plaintiffs to propose custodians for whom Facebook should be preserving evidence (without disclosing *whose ESI is being preserved in the first place*). Facebook's proposal runs contrary to the very Sedona Conference Principles it relies on elsewhere. *See* Comment 6.b, Sedona Principles, at 124.

Plaintiffs propose that the parties exchange lists of custodians for whom ESI is being preserved now. Where a party has refused, during the Rule 26(f) process, to disclose the custodians for whom ESI is being preserved, courts have required that party to identify those persons. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, No. 07-cv-01882-JF, 2007 WL 2852364, at *1–3 (N.D. Cal. Oct. 2, 2007) (requiring defendant to "provide a list of names and job titles of the approximately 600 employees who received" document retention notices after defendant refused to do so during Rule 26(f) conference and plaintiffs raised concerns regarding defendant's preservation efforts).[3]

---

[3] In 2019, the DOJ determined that "[t]he full scale of unauthorized collection, use, and disclosure of consumer information resulting from Facebook's conduct is unknown due, at least

## 2. **Facebook's Position**

During prior meet-and-confers, Facebook proposed a reasonable process to ensure that custodial documents for the individuals whom plaintiffs care most are being preserved. Facebook provided Plaintiffs with a list of ninety-one custodians, identified by name and title, whose documents were produced to the FTC and whose materials are being preserved for this litigation. Facebook then asked Plaintiffs to identify any additional individuals they believed should be subject to legal hold, with the expectation that the parties would meet-and-confer on whether those individuals needed to be added to Facebook's existing hold.

Plaintiffs refused to engage in any meaningful discussion about custodians. Rather than reviewing the list Facebook has provided with the benefit of their "extensive" and "in-depth" pre-suit investigation, Dkt. 56 at 2, and the more than twelve million pages of documents Facebook has produced, Plaintiffs told Facebook that they could only identify relevant custodians if Facebook first provided a list of every individual subject to legal hold.

Plaintiffs' insistence that Facebook identify all individuals subject to legal hold at this stage is unfounded. Identifying custodians for preservation is an "iterative" process that requires both parties' participation. *See Hardin v. Mendocino Coast District Hosp.*, 17-cv-05554-JST (TSH), 2019 WL 4256383, at *2 (N.D. Cal. Sept. 9, 2019). It is not a one-sided opportunity to learn every person who Facebook thinks might have relevant information.

The parties also disagree whether, when negotiating search terms, the parties must identify *all* custodians and/or non-custodial sources that might have responsive information, or simply sources that are *most likely to* have responsive, *non-duplicative* information. *See* Ex. C §5.a. Search term negotiations that encompass all sources that might contain relevant information will, by definition, result in burdensome and cumulative discovery. *See Unishippers Global Logistics, LLC v. DHL Express (USA), Inc.*, 2009 WL 3297817, at *2 (D. Utah Oct. 12, 2009). Facebook's approach, by contrast, recognizes that the responding party is best "situated to decide how to search for and produce [its own] ESI," *In re Viagra*, 2016 WL 7336411, at *1, and has been adopted by multiple courts, *see Brewer v. BNSF Ry. Co.*, No. 14-cv-00065 (D. Mont. Feb. 10, 2015), Dkt. 32 at 2; Delaware Default Standard for Discovery, https://www.ded.uscourts.gov/sites/ded/files/pages/Electronic%20Discovery%20Default%20Standard_0.pdf.

## **NEED FOR HEARING**

Plaintiffs defer to the Court regarding the need for a hearing. To the extent that a hearing would assist the Court in resolving the parties' dispute, Plaintiffs will present these issues to the Court at the Court's convenience.

Given the significance of the disputes above to the course of discovery in this case, Facebook requests oral argument on the parties' disputes.

---

in part, to the company's lack of recordkeeping." *United States v. Facebook, Inc.*, Case No. 1:19-cv-02184 (D.D.C.), Dkt. 1, ¶ 126,

## **RELEVANT DATES**

The fact discovery cut-off for these consolidated actions is September 2, 2022.  Dkt. 115.  The expert discovery cut-off for these consolidated actions is November 4, 2022.  *Id.*

## **COMPLIANCE WITH LEAD COUNSEL MEETING REQUIREMENT**

The parties conferred about this dispute by Zoom on July 30 and August 6, 2021.  Participants included: Stephen Swedlow and Shana Scarlett (Co-Lead Interim Consumer Class Counsel); Yavar Bathaee and Kristen Anderson (Co-Lead Interim Advertiser Class Counsel); and Sonal Mehta and David Gringer (lead counsel for Facebook).  Additional counsel attended.

DATED: August 20, 2021

By: */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (admitted *pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (admitted *pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
(213) 462-2772


By: */s/ Kristen M. Anderson*
**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
(619) 233-4565

Respectfully submitted,

By: */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit (admitted *pro hac vice*)
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Manisha M. Sheth (admitted *pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000


By: */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman (admitted *pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Patrick J. McGahan (admitted *pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (admitted *pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537


**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
(310) 474-9111


**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (admitted *pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (admitted *pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
(215) 592-1500

*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (admitted *pro hac vice*)
  aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*


By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal N. Mehta (Cal. Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, PA 94306
(650) 858-6000

David Z. Gringer (admitted *pro hac vice*)
  David.Gringer@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated:  August 20, 2021                             By:    */s/ Stephen A. Swedlow*
                                                                        Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated:  August 20, 2021                             By:    */s/ Stephen A. Swedlow*
                                                                        Stephen A. Swedlow