# Exhibit A

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile:  (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:   (202) 663-6363

*Attorneys for Defendant Facebook, Inc.*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 233-6444

*Interim Co-Lead Advertiser Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al.<br><br>                      Plaintiff,<br><br>         v.<br><br>FACEBOOK, INC.,<br><br>                      Defendant. | Case No. 5:20-cv-08570-LHK<br><br>**[PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge: Hon. Virginia K. DeMarchi |

1

No. 5:20-cv-08570-LHK             [PROPOSED] JOINT STIPULATED ORDER REGARDING
                                  DISCOVERY OF ELECTRONICALLY STORED INFORMATION

1. ~~1.~~ **PURPOSE**

This Order ("ESI Protocol Order") will govern discovery of electronically stored information ("ESI") and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.[1]

2. ~~2.~~ **COOPERATION AND PROPORTIONALITY**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI, *see, e.g.*, §§ 1.01-.03, and to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1.

3. ~~3.~~ **ESI LIAISONS**

    a.    **Designation:**  Each Party will designate an ESI Liaison within 10 days of the entry of the order adopting this Stipulation.

    b.    **Duties of ESI Liaison:**  Each ESI Liaison will be prepared to participate in the meet and confer on eDiscovery related matters and the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible), be knowledgeable about the party's eDiscovery efforts, have reasonable access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, explain those systems and answer relevant questions, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter, and have reasonable access to those who are knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4.    **PRESERVATION**

The Parties agree that they shall continue to take reasonable and proportionate steps to preserve relevant and discoverable ESI in its possession, custody or control consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own

---

[1] Facebook has re-produced to Plaintiffs documents previously produced to the Federal Trade Commission and House Judiciary Committee in the format those documents were originally provided to the FTC and HJC.  For the avoidance of doubt, this ESI Protocol does not apply to those productions.  Likewise, in the event that a Party later re-produces materials previously produced in the course of an investigation or other litigation, it shall not be obligated by this ESI Protocol to alter the metadata with which those documents were originally produced.  The parties agree to meet and confer regarding any disputes over such re-productions and to submit any disputes to the Court pursuant to the discovery dispute resolution procedure outlined in Magistrate Judge DeMarchi's Standing Order for Civil Cases.

electronically stored information" and in accordance with their obligations under applicable law.  The Parties have discussed their preservation obligations and needs and agree that preservation of relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved the parties agree that:

 a. Parties shall preserve non-duplicative, relevant information currently in their possession, custody, or control; however, parties are not required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

 b. Subject to and without waiving any protection described in this same section above, the parties will endeavor to agree upon a date limitation for the preservation of ESI.

 c. The parties will endeavor to agree upon a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians (sufficient to identify each custodian), for whom they believe ESI should be preserved.  The parties shall add or remove custodians as reasonably necessary.

 ~~d. The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved, but not searched, reviewed, or produced, unless otherwise ordered by the Court upon a motion of a party:~~

  ~~1. backup systems and/or tapes used for disaster recovery;~~
  ~~2. individual user data subject to routine disposition required by privacy regulations; and~~
  ~~3. systems no longer in use that cannot be accessed.~~

 e. The parties agree, based on mutual representation of the parties' counsel, that, generally, the following sources of data are not reasonably accessible and need not be preserved, collected, processed, reviewed and/or produced; however, to the extent that a party identifies relevant information contained in the following sources in custodial or non-custodial files, the Parties will preserve, collect, process, review, and/or produce non-privileged, responsive material from such sources:

  1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
  2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
  3. On-line data such as temporary internet files, history, cache, cookies, and the like.
  4. Data in the metadata fields that are frequently updated automatically without end user intervention, including, but not limited to: last opened dates and times, last printed dates and times, last modified dates and times, and last modified by.

No. 5:20-cv-08570-LHK  [PROPOSED] JOINT STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

3

     5. Voice messages.
     6. Instant messages and chats that are not chronicled to an email archive system.
     7. Sound recordings, including, without limitation, .mp3 and .wav files.
     8. Video recordings.
     9. Information solely contained on mobile devices.
     10. ~~5.~~ Mobile device and smart device (e.g., smart TV, smart watch, smart speaker) activity logs.
     11. Server, system, or network logs.
     12. ~~6.~~ Dynamic fields in databases or log files not stored or retained in the usual course of business.
     13. ~~7.~~ Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party, to the extent such information is duplicative of information that resides in a reasonably accessible data source.
     14. Backup systems and/or tapes used for disaster recovery.
     15. Individual user data subject to routine disposition required by privacy regulations.
     16. Systems no longer in use that cannot be accessed.

5. **SEARCH**

 a. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The ~~parties agree to meet and confer concerning search methodologies, including without limitation, the identification of custodians, the use of keyword search terms, and the use of technology assisted review ("TAR"). The~~ producing party will disclose to the receiving party if they intend to use Technology Assisted Review ("TAR") ~~(including predictive coding or any other form of machine learning)~~ to filter out non-responsive documents. ~~The parties will meet and confer at that time to negotiate a suitable TAR protocol~~. The parties will meet-and-confer in good faith regarding custodians. Each party will provide a list of proposed document custodians and non-custodial document sources (e.g., centralized document sources other than an individual document custodian's files) reflecting those employees or sources most likely to have non-duplicative information and/or documents responsive to an agreed-on or Court-ordered scope of Rule 34 Requests.

 b. If, after the Parties identify initial document custodians, a Requesting Party believes that additional document custodians or sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional document custodians or sources and the basis for the request. The parties will meet and confer about the proposed additional custodians. Any disputes over additional custodians that cannot be resolved between the parties during meet and confer may be presented to the Court in accordance with the procedure outlined in Magistrate Judge DeMarchi's Standing Order for Civil Cases.

4

No. 5:20-cv-08570-LHK   [PROPOSED] JOINT STIPULATED ORDER REGARDING
             DISCOVERY OF ELECTRONICALLY STORED INFORMATION

c.      The parties will meet-and-confer in good faith regarding search terms. ~~As part of the meet-and-confer process to select search terms, the Producing Party will provide a hit report for proposed search terms if requested by the Requesting Party. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each Disputed Term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families)~~. If the Requesting Party objects to the sufficiency of the Producing Party's proposed search terms, the Requesting Party may propose modifications to the Producing Party's terms, or a list of additional terms. The parties will meet-and-confer in good faith about the Requesting Party's proposed changes. Any disputes over search terms that cannot be resolved between the parties during meet and confer may be presented to the Court in accordance with the procedure outlined in Magistrate Judge DeMarchi's Standing Order for Civil Cases.

d.      Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Nothing in this Order precludes a party from using Technology Assisted Review ("TAR") to fulfill their document production obligations. Similarly, nothing may be construed or interpreted as precluding a producing party from performing a privilege review of documents determined to be relevant by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting party's request or privileged.

e.      Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

f.      De-Duplication: Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. A producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or CustodianAll/Other. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated CustodianAll or CustodianOther information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata

"overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

g.      Email Threading: Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

c.      ~~h.~~On-site inspection will not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

## 6.   PRODUCTION FORMAT

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

## 7.   PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI by producing documents on a rolling basis. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

## 8.   DOCUMENTS PROTECTED FROM DISCOVERY

~~a.~~Nothing in this Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## 9.   LIMITATIONS AND NON-WAIVER

a.      Pursuant to the terms of this ESI Protocol, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

b.      Nothing in this ESI Protocol shall be construed to affect the discoverability of information or the admissibility of discoverable information.

      c.      Nor shall anything in this ESI Protocol be construed to affect the authenticity of any document or data.

Finally, nothing in this Order requires the parties to make changes to or modify productions made in other cases and reproduced here including the reproductions of Facebook's productions to the FTC and HJC. However, if a Receiving Party raises an issue regarding the usability or format of a produced Document, the parties will meet and confer regarding whether an alternative form of production is necessary or appropriate and seek Court intervention only if necessary

10. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____          _____

                                                        Hon. Virginia K. DeMarchi
                                                        United States Magistrate Judge

## APPENDIX 1: PRODUCTION FORMAT

A.  **Production Components**.  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1. an ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2. an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3. TIFF images;

4. document level .TXT files for all documents containing extracted full text or OCR text;

5. Parent-child relationships will be maintained in production;

6. Entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection.

If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

B.  **Production Media and Access Controls**.

1. Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

2. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

C.  **Data Load Files/Image Load Files**. All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

D.  **Metadata Fields**. With the exception of hard copy paper documents, which are separately addressed in paragraph L below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document to the extent reasonably practicable. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) ALLCUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name[2] | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |

---

[2] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| BEGATTACH | First production Bates number of the first document in a family |
|---|---|
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the document originated |
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |

| | |
|---|---|
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| REDACTIONS | Indicate Yes if document redacted |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations.  For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading.  (Microsoft application documents only) |
| EMAILSUBJECT | Subject line of email. |
| TIMESENT | Time email was sent. |

| | |
|---|---|
| TIMEZONEUSED | Time zone used to standardize date/time during document processing. |
| RECEIVETIME | Time email was received. |
| FILENAME | File name of the edoc or email. |
| TITLE | Any value populated in the Title field of the document properties. |
| SUBJECT | Any value populated in the Subject field of the document properties. |
| DOCEXT | File extension of the document. |
| WITHHELD PLACEHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |

E.   **TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall, to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in

their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats. Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

F. **Color**. Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this Paragraph II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

G. **Text Files**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

H. **Native Files**. Spreadsheets (e.g. MS Excel) and presentation files (e.g., MS PowerPoint) will be produced in native format unless redacted, in which instance, such documents shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

I. **Requests for Other Native Files:—.** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. The producing Party need only produce such a document in native format if reasonably

     practicable. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

J. **Confidentiality Designation**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

K. **Databases and Other Structured Data**. The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

L. **Paper Documents**: A producing Party may make paper documents available for inspection and copying in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) BegBates, (b) EndBates, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N). Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly. Where a document, or a document group – such as folder, clipped bundle, or ~~binder   has~~ binder   has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

M. **Date and Time**~~:~~. No party shall modify the date or time as contained in any original ESI. This provision does not prevent the parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

N. **Time Zone**~~:~~. To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., Pacific Standard Time), and the time zone used shall be disclosed to the requesting Party.

—

O. **Auto Date/Time Stamps**~~:~~.  To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

P. **Hidden Text**~~:~~.  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

Q. **Password-Protected, Encrypted, or Proprietary-Software Files**~~:~~.  With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.  In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party by producing a placeholder TIFF image stating "Technical Issue."  ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.