1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Facebook, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 5:20-cv-08570-LHK |
| Plaintiffs, | **THIRD JOINT CASE MANAGEMENT STATEMENT** |
| vs. | The Hon. Lucy H. Koh |
| FACEBOOK, INC., | Hearing Date:  September 1, 2021 at 2:00 p.m. |
| Defendant. | |
| This Document Relates To: All Actions | |

**THIRD JOINT CASE MANAGEMENT STATEMENT**

In advance of the September 1, 2021 Case Management Conference, counsel for the putative Consumer and Advertiser Classes and defendant Facebook, Inc. respectfully submit this Third Joint Case Management Statement.  This Case Management Statement updates the Court as to recent developments on pertinent matters.

### 1.    Jurisdiction and Service

**Plaintiffs' Position:**

The Court has (and Facebook has not disputed) subject matter jurisdiction over these consolidated actions pursuant to 28 U.S.C. §§ 1331, 1332, 1337(a), 1367, and 15 U.S.C. §§ 15, 26. As Plaintiffs indicated in the June 30, 2021 Joint Case Management Statement, should Facebook file any motion to compel arbitration, Plaintiffs reserve all rights to oppose that motion.

**Facebook's Position:**

As Facebook explained in the June 30, 2021 Joint Case Management Statement, certain Plaintiffs had raised the issue of arbitrability of Plaintiffs' claims, and Facebook would assess the issue and raise it with the Court as appropriate once the Consolidated Amended Complaints ("CACs") were filed.  *See* Dkt. No. 114 at 4.  Facebook continues to reserve all rights and defenses with respect to unnamed members of the putative classes alleged in the CACs, including but not limited to its right to move to compel arbitration of any unnamed putative class members' claims subject to an arbitration provision at the appropriate time or to oppose class certification on this basis.  *See, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018); *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135 (N.D. Cal. Oct. 8, 2020); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784 (N.D. Cal. May 9, 2011); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007).

### 2.    Motions

#### a.    Pending Motions

*Motion to Dismiss*:  On May 20, 2021, Facebook filed a motion to dismiss the CACs.  *See* Dkt. No. 97.  On June 17, 2021, Plaintiffs filed an opposition to Facebook's motion to dismiss.  *See* Dkt. No. 109.  On July 5, 2021, Plaintiffs filed a Supplemental Brief Regarding Government Orders.

1  *See* Dkt. No. 116.  Facebook filed its reply to Plaintiffs' opposition on July 7, 2021.  *See* Dkt. No.

2  117.  The Court heard arguments on Facebook's motion to dismiss on July 15, 2021.

3  *Motion to Remand*:  Facebook removed *Rosenman v. Facebook, Inc.* to the Northern District

4  on March 25, 2021.  No. 21-cv-02108 (N.D. Cal.) ("*Rosenman*"), Dkt. No. 1.  On April 9, 2021, the

5  Court related *Rosenman* to these consolidated actions.  *Rosenman*, Dkt. No. 14.  The *Rosenman*

6  plaintiff filed a motion to remand on April 26, 2021, and briefing on that motion has since closed.

7  *Rosenman*, Dkt. Nos. 17, 20, 21.  The matter will be decided on the papers.  *Rosenman*, Dkt. No.

8  25.

9  *Motion to Relate*:  The amended complaint in *Loveland v. Facebook, Inc.*, No. 21-CV-

10  03300-CRB, Dkt. No. 42, alleges antitrust violations which appear to be largely copied from those

11  advanced in the CACs.  On August 18, 2021, Facebook and the *Loveland* Plaintiffs jointly moved

12  to relate the *Loveland* case to these actions.  Dkt. No. 131.  Plaintiffs take no position on the motion.

13  **b.      Anticipated Motions**

14  In addition to the specific motions below, the parties also anticipate that there will be further

15  motions, including motions to exclude expert testimony and motions in limine.

16  **Plaintiffs' Anticipated Motions:**

17  *Motion for Class Certification*:  Consistent with the Court's July 1, 2021 Case Management

18  Order, Dkt. No. 115 at 2 ("July CMO"), Plaintiffs intend to move for class certification by March

19  15, 2022.

20  *Responses to Motions filed by Facebook*:  Plaintiffs reserve all rights and arguments to

21  respond to, or oppose, any future motions filed by Facebook.  Should Facebook file any motion to

22  compel arbitration, Plaintiffs reserve all rights to oppose that motion.  Consistent with the Court's

23  case management orders, Dkts. 82, 115, Plaintiffs will, by December 9, 2022, oppose any motion

24  for summary judgment filed by Facebook.

25  **Facebook's Anticipated Motions:**

26  *Motion to Compel Arbitration*:  Facebook reserves all rights and defenses with respect to

27  unnamed members of the putative classes alleged in the CACs, including but not limited to its right

28  to move to compel arbitration of any unnamed putative class members' claims subject to an

arbitration provision at the appropriate time.  *See, e.g.*, *Gutierrez*, 889 F.3d 1230; *Rushing*, 2020 WL 6787135; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784.

*Motion for Summary Judgment*:  In the event that this case survives the motion to dismiss, Facebook anticipates moving for summary judgment pursuant to Fed. R. Civ. P. 56.

*Responses to Motions filed by Plaintiffs*:  Facebook reserves all rights and arguments to respond to, or oppose, any future motions filed by Plaintiffs, including Plaintiffs' motions for class certification.

**3.**     **Amendment of Pleadings**

Pursuant to the Court's scheduling order, Dkt. No. 82, the Consumer Plaintiffs and the Advertiser Plaintiffs filed their respective consolidated class action complaints on April 22, 2021.  Dkt. Nos. 86, 87.

Pursuant to the July CMO, the last day to further amend pleadings or add parties is August 27, 2021.  Dkt. No. 115.

**4.**     **Discovery Updates**

**a.**     **Facebook's Production of Documents Produced to Public Regulators**

The Court's April 2, 2021 Case Management Order required Facebook to produce to Plaintiffs, within 30 days, "the documents Facebook produced to the Federal Trade Commission and the United States House of Representatives" in connection with those entities' parallel antitrust investigations into Facebook.  Dkt. No. 82 at 1.  On May 3, 2021, Facebook produced those documents to Plaintiffs, and Plaintiffs' review of that production is currently ongoing.

**b.**     **Stipulated Protective and 502(d) Orders**

The parties agreed to, and Judge DeMarchi entered (with modifications), an interim Protective Order and 502(d) Agreement to facilitate Facebook's May 3, 2021 production.  Dkt. Nos. 89–92.  On May 14, 2021, the parties submitted, via joint letter briefs to Judge DeMarchi, their disputes on the Protective Order and 502(d) Agreement.  Dkt. Nos. 94, 95.  Judge DeMarchi issued orders on the proposed 502(d) Agreement and Protective Order on June 3, 2021, Dkt. No. 105, and June 14, 2021, Dkt. No. 108, respectively.  The parties submitted a revised 502(d) Agreement and Protective Order on June 11, 2021, and June 18, 2021, respectively.  Dkt. Nos. 106, 110.  Judge

DeMarchi entered these orders on June 14, 2021, and June 21, 2021, respectively.  Dkt. Nos. 107, 111.

### c.     ESI, Privilege, Deposition, and Expert Protocols

As discussed in the parties' Rule 26(f) Report, the parties have met and conferred regarding ESI, privilege, deposition, and expert protocols.  Dkt No. 130 at 4–5.  The parties submitted joint stipulated orders (to the extent the parties agree on particular provisions), as well as joint letter briefs addressing the remaining disputes relating to those protocols, to Judge DeMarchi on August 20, 2021.  *See* Dkt. Nos. 132–35.  Judge DeMarchi set a hearing on the parties' disputes for August 31, 2021.  Dkt. No. 136.

### d.     Limitations on Interrogatories

The parties dispute limitations on interrogatories and set out their positions in the Rule 26(f) Report.  Dkt. No. 130 at 5–8.

### e.     Initial Disclosures

The parties exchanged Rule 26(a) initial disclosures on August 13, 2021.

The parties dispute whether Plaintiffs' initial disclosures satisfy Fed R. Civ P. 26(a)(1)(A)(iii).

**Facebook's Position:** User Plaintiffs and Advertiser Plaintiffs' initial disclosures do not satisfy Fed. R. Civ. P. 26(a)(1)(A)(iii) because they fail to make an informed, good faith ***computation*** of each (or any) category of damages they claim, and Advertiser Plaintiffs' initial disclosures do not satisfy Fed. R. Civ. P. 26(a)(1)(A)(i)'s requirement that a party identify not only the individuals who have information that the disclosing party may use to support its claims and defenses, but also the "subjects of that information."  Facebook timely raised these issues with both User Plaintiffs and Advertiser Plaintiffs less than a week after they were served, and requested a prompt turnaround time for compliant disclosures, because of their significance to the case and importance to keeping the case on its current schedule.  User Plaintiffs responded by providing Facebook with amended initial disclosures, which did not address these deficiencies.  Advertiser Plaintiffs responded by stating that they would provide Facebook with amended initial disclosures

by August 27, 2021—after the filing of this joint case management statement.  This issue is therefore not "moot."

First, both User and Advertiser Plaintiffs' initial disclosures still do not comply with Fed. R. Civ. P. 26(a)(1)(A)(iii) which requires, even at this stage of the litigation, the parties to make an informed, good-faith computation of each category of damages they claim.  *See, e.g.*, *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2020 WL 4747724, at *6 (S.D. Cal. Aug. 17, 2020) (a plaintiff's computation of damages "should provide sufficient detail to enable the defendants to understand the contours of their potential exposure and make informed decisions regarding settlement and discovery," and the plaintiff "must also timely disclose its theory of damages as well as the computation of those damages" and "should disclose the basic method or formula by which it contends its damages should or will be calculated even if it cannot identify the specific dollar amount of damages pending further discovery"); *City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) ("[T]he 'computation' of damages required by Rule 26(a)(1)(C) contemplates some analysis."); *Agena v. Cleaver-Brooks, Inc.*, 2020 WL 6888725, at *2-3 (D. Haw. July 31, 2020) (requiring supplemental disclosure where damages disclosure "fail[ed] to include any 'computation of each category of damages claimed'"); *Nathan Bell v. Nusil Tech. LLC*, 2020 WL 5371318, at *3-4 (E.D. Cal. Sept. 8, 2020) (requiring plaintiff to provide a calculation of damages for each cause of action); *cf. Cardoza v. Bloomin' Brands, Inc.*, 2015 WL 3875916, at *2 (D. Nev. June 22, 2015) ("the word 'computation' contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages").  This Rule also requires the party to "make available … the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).

In their original initial disclosures, User Plaintiffs' damages "computation" merely recited the relief sought in their Complaint—refusing to specify the amount, method, or formula on which User Plaintiffs intend to rely for a quantification of damages incurred.  The only information User Plaintiffs provided was that they "will likely require expert analysis and testimony."  That was clearly insufficient.  *See Hill v. Alpine Sheriff Dep't*, 2019 WL 5394524, at *3 (S.D. Cal. Oct. 22,

2019) (merely "referencing the complaint … undermines the very purpose of providing initial disclosures," particularly where the complaint "is completely devoid of any specific computation of damages and … Defendants have no way of guessing what Plaintiff's computation of each category of damages sought is").   User Plaintiffs' amended initial disclosures state that the putative class— which, of course, has not yet been certified—has "tens of billions of dollars" in damages, but does not provide any *computation* of those damages, let alone any documents or other evidentiary material on which that *computation* is based.  Furthermore, there is no computation for any damages from the named plaintiffs—information Plaintiffs should have but do not disclose.  *Agena*, 2020 WL 6888725, at *2-3 (finding disclosure deficient because it "did not provide a computation of damages for <u>each</u> plaintiff").

User Plaintiffs' reliance on *Focal Point Films*, *LLC v. Sandhu* is misplaced.  2020 WL 5760355, at *3 (N.D. Cal. Sept. 28, 2020).  There, the counterclaim plaintiff expressly stated that damages were not ascertainable at the time she made her initial disclosures and made clear the specific discovery she needed to ascertain damages.  *Id*.  Further, the holding in *Sandhu* can also be easily distinguished—there the court addressed whether to impose a severe sanction; the court was not evaluating whether counterclaim plaintiff's disclosure was adequate at the time it was made. *Id*.[1]

User Plaintiffs also seem to believe that their unprecedented damages theory, which lacks support, is excused from the requirements of the Rule.  But there is no exception in Rule 26 for dubious damages claims.  User Plaintiffs must do what the Rules require.  Advertiser Plaintiffs' damages "computation" admits that they "have not yet determined the full amount of compensatory damages"—which is no computation at all.  Plaintiffs are not excused from making the appropriate damages disclosures because they have not fully investigated their case.  The entire purpose of Rule 26(a)(1)(A)(iii) "is to ensure that defendants receive a preliminary damages estimate at the outset of litigation—before discovery has commenced."  *Holland Am. Line, N.V. v. Orient Denizcilik*

---

[1]     To the extent *Focal Point Films* can be read to excuse the requirement to provide some analysis or computation of damages, respectfully, it would be wrongly decided. *See, e.g.*, *Agena*, 2020 WL 6888725, at *2-3.

*Turizm Sanayi Ve Ticaret, A.S.*, 2020 WL 1689736, at *2 (W.D. Wash. Apr. 7, 2020).  Surely Plaintiffs must know if they suffered damages and, if so, how much damage they suffered.  Users' own suggestion that they have complied with the Rules—suggesting that it was adequate for them to simply multiply "tens to hundreds" of dollars per user by an unspecified number = "tens" of billions of dollars—only serves to illustrate the inadequacy of their disclosures and of their theory of injury.

Second, the Advertiser Plaintiffs' disclosures are additionally deficient because they do not comply with Rule 26(a)(1)(A)(i)'s requirement that a party identify not only the individuals who have information that the disclosing party may use to support its claims and defenses, but also the "subjects of that information."  This requirement is meaningful to "assist other parties in deciding which depositions will actually be needed."  Advisory Committee Notes to 1993 Amendments to Rule 26(a).  Advertiser Plaintiffs made only a blanket statement that the disclosed individuals might have "[i]nformation relating to allegations in the CAC."  This falls well short of what the Rule requires because there is no way to discern from Advertiser Plaintiffs' disclosures what information their witnesses may have, and thus who to depose, thereby "depriv[ing] [Facebook] the ability to pursue relevant evidence."  *See Ramirez v. Zimmerman*, 2019 WL 527462, at *8-9 (S.D. Cal. Feb. 8, 2019).

Plaintiffs' refusal to serve compliant initial disclosures threatens the viability of the case schedule set forth by the Court, by inhibiting Facebook's ability to proceed with nonparty discovery and targeted discovery of the named Plaintiffs.  *Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 5921767, at *2 (C.D. Cal. Mar. 18, 2016).  Advertiser Plaintiffs' argument to the contrary—that Facebook was able to serve an initial set of requests for production on the named Plaintiffs—is irrelevant, as Facebook remains unable to proceed with *targeted* discovery focused on the Plaintiffs' damages theory.  And tellingly, Plaintiffs have no answer for the delays their noncompliant disclosures have caused with respect to nonparty discovery, which Facebook has not yet served.[2]  .

---

[2]      Advertiser Plaintiffs' lament that Facebook only gave them four days to cure their deficient disclosures ignores that Advertiser Plaintiffs had ***nine months*** after filing their complaint to draft compliant disclosures in the first place.

1     Facebook anticipates moving to compel these required disclosures or to exclude Plaintiffs

2     from presenting certain evidence.  *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

3     1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use

4     at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

5     **Consumer Plaintiffs' Position:**  Consumer Plaintiffs served initial disclosures on Facebook

6     on August 13, 2021.  On the afternoon of Friday, August 20, 2021, as the parties were finalizing

7     their various joint discovery letter briefs and after Plaintiffs had submitted their proposed inserts for

8     this Joint Case Management Statement (per Facebook's requested schedule), Facebook, for the first

9     time, notified Consumer Plaintiffs of its position that Consumer Plaintiffs' "initial damages

10    disclosures are deficient[.]"  Facebook demanded a response by Tuesday, August 24, 2021.

11    Facebook's claim is belied by its own repeated acknowledgments (as early as March) that it

12    understands (but disputes the merits of) Consumer Plaintiffs' damages theory.  *See, e.g.*, Dkt. 78 at

13    8, 36.  Facebook's position that initial disclosures require a full-blown damages calculation (akin to

14    an expert report on damages, but before expert discovery has taken place) is also contrary to the

15    law.  *See, e.g.*, *Focal Point Films, LLC v. Sandhu*, No. 19-cv-02898-JCS, 2020 WL 5760355, at *3

16    (N.D. Cal. Sept. 28, 2020) ("Given the early stage of the case," initial disclosure which identified

17    type of damages sought and that precise calculation "may require expert testimony and discovery"

18    was "sufficient at the time it was made to meet [party's] obligations under Rule 26.") (Spero, J.).

19    Although Consumer Plaintiffs disagree with Facebook's characterization of Consumer

20    Plaintiffs' initial disclosures, Consumer Plaintiffs served amended initial disclosures on Facebook

21    on August 24, 2021, in the hopes of avoiding an unnecessary dispute.  Contrary to Facebook's

22    mischaracterizations, Consumer Plaintiffs' amended initial disclosures more than provide an

23    "explanation for the basis for" Consumer Plaintiffs' estimate that the Consumer Class has suffered,

24    at least, tens of billions of dollars in damages.  Calculating Consumer Plaintiffs' preliminary

25    estimate of, at least, tens of billions of dollars (before trebling, interest, costs, and reasonable

26    attorneys' fees) merely requires multiplying an estimated number of class members (hundreds of

27    millions), by an estimate of per-member damages (tens to hundreds of dollars each year), by the

28    number of years in the class period (2007 to the present).  All of this information is provided in

Consumer Plaintiffs' amended initial disclosures.  Those amended initial disclosures also identify public sources of information supporting each of these estimated figures, including: "Facebook presentations detailing the number of daily and monthly active Facebook user accounts" (which supports an estimated number of class members) and "public news reports indicating that Facebook has, itself, calculated a market price at which to pay users," based on its "compensating 'Facebook Research App' users at least $20.00 per month for their data" (which is an estimate of per-member damages, given that Facebook did not pay Consumer Class members at all for their data).

Consumer Plaintiffs' amended disclosures also explain, "[e]xact measures and computations of . . . damages will require expert analysis and testimony," and Consumer Plaintiffs "intend to provide an expert report on damages" consistent with the Court's schedule for expert discovery.

**Advertiser Plaintiffs' Position:**  On Friday, August 20, 2021, at 3:40 p.m., Facebook emailed Plaintiffs a four-page letter demanding that Plaintiffs amend their initial disclosures by Tuesday, August 24, 2021.  Facebook's demand for a response from Plaintiffs in two business days is unreasonable.[3]  In any event, the issue is not ripe for decision at this case management conference. Advertiser Plaintiffs have agreed to supplement their disclosures under Fed. R. Civ. P. 26(a)(1)(A)(i) and (iii) by August 27.

Advertiser Plaintiffs allege that their damages arise from overcharges paid to Facebook for advertising on Facebook's social network.  The information and sales data Advertiser Plaintiffs' experts will use to calculate damages is in the possession of Facebook and has not yet been produced, notwithstanding Facebook's obligations under Fed. R. Civ. P. 26(a)(1)(A)(ii).  Advertiser Plaintiffs' experts will analyze the amounts Facebook charged class members for social advertising during the damages class period.

---

[3]     Facebook's own conduct demonstrates this.  On the same day that Facebook made this request, Plaintiffs submitted a request to Facebook for an unredacted version of the Amended FTC Complaint.  Whereas Facebook's letter demanded a response in two business days (which Plaintiffs provided), Facebook has not, until today, even acknowledged Plaintiffs' request, today claiming for the first time in Section 6, *supra*, that it requires more time.  To the extent Facebook seeks more time for this and similar requests, Plaintiffs are happy to evaluate those requests.  But Plaintiffs should be afforded the same courtesy, rather than having their responses be unilaterally demanded by Facebook.

1    Advertiser Plaintiffs bring claims under Sections 1 and 2 of the Sherman Act and are seeking

2    damages arising from the alleged monopolist and conspirator, Facebook, imposing higher

3    advertising costs than would be charged in a competitive market.  Advertiser Plaintiffs' damages

4    theory is widely accepted and can be expressed in simplified form as: [Dollar Overcharge = (Pm –

5    Pc) x Qm] where Pm is the price charged for advertising, Pc is the but-for or competitive price

6    charged for advertising, and Qm is the quantity of advertising sold by Facebook to class members

7    during the class period.[4]   Once the necessary discovery from Facebook is completed and the

8    necessary information and data are disclosed, Advertiser Plaintiffs anticipate that their damages

9    experts will use various econometric tools including, inter alia, multivariate regressions to articulate

10    a class-wide formula for computing damages.

11    Facebook's demand for preliminary estimates of class wide damages at this time is

12    overreaching and premature.  *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C

13    5893, 2004 WL 2108410, at *2 (N.D. Ill. Sept. 21, 2004) ("It is unreasonable for defendants to

14    expect the exact damages formula from initial disclosures . . . where expert analysis is undoubtedly

15    necessary. . . .  Defendants have received the basic information – they know plaintiffs' general

16    theory of damages (and likely should have known the theory without a written submission).")

17    Facebook has not provided class wide sales data, let alone data pertaining to each class member,

18    and its demand comes five months prior to the due date for class certification expert reports and

19    over a year prior to merits expert reports.  Dkt. 115 at 2 (class certification motion due March 15,

20    2022, and opening expert reports due September 23, 2022).  Expert disclosure of damages formula

21    and calculations are governed by Fed. R. Civ. P. 26(a)(1)(A)(2) and are generally made concurrently

22    or in conjunction with motions pursuant to Fed. R. Civ. P. 23 and Fed. R. Civ. P. 56.  As a result,

23    there will likely be serial supplementation of Plaintiffs' damages calculations pursuant to Fed. R.

24    Civ. P. 26(e) and Fed. R. Civ. P. 26(a)(1)(A)(2)(e).

25    Finally, Facebook's claim that Plaintiffs' initial disclosures somehow threaten the viability

26    of the case schedule set by the Court—purportedly "by inhibiting Facebook's ability to proceed with

27

28    [4]    John Connor, *Price-Fixing Overcharges: Revised 3rd Edition*, SSRN, at 7 (2014), https://dx.doi.org/10.2139/ssrn.2400780.

1  . . . targeted discovery of the named Plaintiffs"—is clearly belied by its service of 41 expansive

2  requests for production on Plaintiffs today.

3  **f.        Discovery Propounded to Date**

4  On August 25, 2021, Facebook served Requests for Production of Documents on the named

5  User Plaintiffs and named Advertiser Plaintiffs that seek to test the validity of various assertions in

6  the CACs.

7  **Plaintiffs' Position:**  Less than fifteen minutes before Facebook's "final edits" to this Joint

8  Case Management Statement were due under the parties' agreement (but which Facebook did not

9  timely provide), Facebook served requests for production on Plaintiffs.  Given the timing between

10  Facebook's service of those requests and the filing of this Joint Case Management Statement,

11  Plaintiffs are continuing to evaluate Facebook's requests and reserve all rights to object or otherwise

12  respond to those requests.

13  **Facebook's Position**:  It is unclear what the Plaintiffs are complaining about here—

14  Facebook's service of written discovery has no bearing on the timing of the Case Management

15  Conference Statement or the parties' respective positions.  Facebook served discovery.  Facebook

16  then updated the draft statement, which includes a summary of discovery to date, to state that fact.

17  Plaintiffs do not need to "reserve" a right to serve objections or "otherwise respond" to the requests.

18  Plaintiffs must respond or object to the requests within 30 days after service, as the Federal Rules

19  require.

20  **g.        Close of Fact and Expert Discovery**

21  The July CMO set September 2, 2022, as the fact discovery cut-off, and November 4, 2022,

22  as the expert discovery cut-off.  Dkt. No. 115 at 2.

23  **5.        Related Cases**

24  **Plaintiffs' Position:**

25  Plaintiffs do not have any related cases to bring to the Court's attention.[5]  *See* Standing Order

26

27  _____
   [5]        Judge Freeman determined that these cases are not "related" to *Reveal Chat*.  *See Reveal*

28  *Chat Holdco LLC et al v. Facebook, Inc.*, Case No. 5:20-cv-00363-BLF (N.D. Cal. Jan. 21, 2021),
   Dkt. 110.

for All Judges of the Northern District of California, cl. 10 (https://www.cand.uscourts.gov/wp-content/uploads/judges/Standing_Order_All_Judges_11.1.2018.pdf).  As indicated *infra*, Plaintiffs take no position as to the pending motion to relate *Loveland*.

**Advertiser Plaintiffs' Position**:  Advertiser Plaintiffs reserve all rights to oppose any future motion to centralize Advertiser Plaintiffs' claims with the MDL pending in the Southern District of New York.

**Facebook's Position:**

Facebook has moved to relate the amended complaint in *Loveland v. Facebook, Inc.*, No. 21-CV-03300-CRB (transferred to N.D. Cal on May 4, 2021), to this case.  Dkt. No. 131.

After Judge Freeman dismissed their entire case on statute of limitations and laches grounds, plaintiffs in *Reveal Chat Holdco LLC v. Facebook, Inc.*, No. 5:20-cv-00363-BLF, filed a notice of appeal on May 6, 2021.  Dkt. No. 117.  Plaintiffs filed their opening brief on August 23, 2021. *Reveal Chat Holdco LLC v. Facebook, Inc.*, No. 21-15863, Dkt. No. 18.  Facebook will file its answering brief by October 25, 2021.  *See id.* Dkt. No. 22.

On July 29, 2021, the Judicial Panel on Multidistrict Litigation (JPML) held a hearing on Google's petition to centralize several lawsuits against Google and Facebook (or Google alone) alleging that one or both companies monopolized or suppressed competition in advertising-technology related markets, including by entering into an agreement in September 2018 known as the Google Network Bidding Agreement (GNBA).  The GNBA forms the basis of the Advertiser Plaintiffs' claim under Section 1 of the Sherman Act.  On August 10, 2021, the JPML ordered the actions transferred to the Southern District of New York, assigning them to Judge P. Kevin Castel as *In re: Google Digital Advertising Antitrust Litigation*, MDL No. 3010.  Dkt. No. 126.  Facebook will evaluate next steps concerning the MDL following the Court's ruling on the motion to dismiss the Advertisers' case.

### 6.    Lawsuits Filed by FTC and State Attorneys General

On June 28, 2021, Judge Boasberg issued opinions dismissing the antitrust complaints filed by the Federal Trade Commission ("FTC") and the Attorneys General of multiple states.  *See Fed. Trade Comm'n v. Facebook, Inc.*, No. 20-cv-03590-JEB, 2021 WL 2643627 (D.D.C. June 28, 2021);

1    *New York v. Facebook, Inc.*, No. 20-cv-03589-JEB, 2021 WL 2643724 (D.D.C. June 28, 2021).  On

2    July 28, 2021, the States filed a notice of their intent to appeal Judge Boasberg's decision to the

3    D.C. Circuit.  1:20-cv-03589, Dkt. 138.  On August 19, 2021, the FTC filed an amended complaint.

4    *Fed. Trade Comm'n*, 1:20-cv-03590, Dkt. No. 75 ("FTC Complaint").

5         **Plaintiffs' Position:**  The FTC Complaint contains redactions because portions of the

6    unredacted complaint contain information that Facebook has designated as confidential.  On August

7    20, 2021, Plaintiffs requested that Facebook provide Plaintiffs with an entirely unredacted version

8    of the FTC Complaint, or, at a minimum, a version that does not contain redactions of information

9    that Facebook has designated confidential.  Facebook has not responded to Plaintiffs' request.

10        **Consumer Plaintiffs' Position:**  As anticipated by Plaintiffs, the FTC's amended complaint

11   includes new and additional allegations regarding Facebook's alleged monopoly power, explaining

12   why other particular online services are not "social networks," and citing to the same metrics that

13   Plaintiffs allege competition authorities and Facebook itself have used to measure market share (*e.g.*,

14   "time spent" by users).  *Compare* FTC Complaint, ¶¶ 43, 175, 189, 192–93, 198, 202, *with Klein*

15   Dkt. No. 87, ¶¶ 65, 77–78, 163–65, 262, 286, *and Klein* Dkt. No. 116 at 3.

16        **Facebook's Position:**  A case management statement is not the appropriate place for a

17   nonparty to give an endorsement of someone else's lawsuit.  Facebook will respond to the amended

18   complaint filed by the FTC on October 4, 2021 per the order entered by Judge Boasberg.  *See* FTC

19   Case, Minute Order (July 23, 2021) (setting schedule).  Should Facebook renew its motion to

20   dismiss, briefing will be complete by December 1, 2021.  *Id.*  As for Plaintiffs' request for an

21   unredacted version of the FTC Complaint, Plaintiffs made the request just a couple of days ago and

22   Facebook will promptly respond.

23        **7.    Updates Regarding ADR**

24        The parties agreed, at the time they filed the March 31, 2021 and June 30, 2021 Case

25   Management Statements, that ADR would not be constructive at that time.  The parties continue to

26   believe that ADR would not be constructive at this time but may be willing to engage in ADR with

27   a private mediator as these actions progress.

28

8.     **Other Matters**

The parties' respective positions as to a protocol for future joint case management statements are set forth below.

**Facebook's Position:**

Facebook respectfully requests that the Court enter a protocol for the drafting and exchange of drafts of future joint case management statements.  During the drafting process for each of the three joint case management statements submitted to this Court, Plaintiffs have set deadlines they have then proceeded to ignore, have refused to allow Facebook appropriate time to respond to their edits to drafts in progress, and have engaged in gamesmanship through last minute substantive edits to the statements hours before filing. [6]  To address these recurring issues, Facebook requests that the Court order the below schedule to be followed for all future joint case management statements:

- **12 pm Pacific, 5 business days before filing:** Plaintiffs provide a draft joint case management statement to Facebook.

- **12 pm Pacific, 2 business days before filing:** Facebook provides its response to Plaintiffs' draft joint case management statement.

- **12 pm Pacific, 1 business day before filing:** Plaintiffs provide revisions to draft joint case management statement.

---

[6]     Plaintiffs mischaracterize the parties' agreement as to this particular joint case management statement.  Facebook never agreed to provide "final edits" to Plaintiffs by 12 pm Pacific on the day of filing; instead, Facebook agreed to provide its revisions to Plaintiffs' previous draft, at which point *the parties* would make final edits and prepare for filing.  In any case, Facebook's addition of "636 words and 5 case citations" was in response to Plaintiffs' revisions in the previous draft as well as subsequent events (including User Plaintiffs' amended initial disclosures and Advertiser Plaintiffs' responsive letter, both of which Facebook received only the day before) and made pursuant to the process agreed to by the parties.  Plaintiffs' suggestion that Facebook should not update the submission to the Court to reflect subsequent events and ensure that the Court has an up-to-date recitation of the joined issues as the parties' discussion evolved makes little sense.  Indeed, this is precisely the back-and-forth to ventilate positions and join issues for the Court that is contemplated in preparation for the joint submission.  If Plaintiffs' concern is timing, that concern is precisely the concern that Facebook has raised and that Facebook's proposal is intended to address.  And if Plaintiffs genuinely desire to have more time for the parties to consider one another's positions, Plaintiffs would not propose to compress the time for preparation of the statement as they have done here.

- **12 pm Pacific, day of filing:** Facebook provides revisions to draft joint case management statement.

- **Before midnight, day of filing:** The parties will work to make final edits and file the joint case management statement.

Facebook respectfully submits that the above schedule puts both sides in the best position to fairly and efficiently arrive at a joint submission that will facilitate the Court's management of the case.

By contrast, Plaintiffs' proposals will only hamper the fair exchange of positions and prejudice Facebook. At the outset, Plaintiffs' position that they should not have to provide a draft 5 business days (one week) before the statement is due makes little sense—there is no reason that Plaintiffs cannot provide a preliminary draft of the joint case management statement a week before the statement is due, especially where Facebook's proposal provides ample opportunity for Plaintiffs to continue to revise the statement in response to Facebook's positions and as the parties work to finalize it. On the flip side, Plaintiffs' proposal would be highly prejudicial to Facebook because it would have Plaintiffs providing their positions to Facebook on Friday at 12 pm Pacific / 3 pm Eastern and require Facebook to respond by 12 pm Pacific / 3 pm Eastern on Monday, depriving Facebook's outside and in-house counsel a reasonable opportunity to prepare their responsive sections.

Likewise, Plaintiffs' proposal that the parties should exchange simultaneous drafts will only hinder the efficient preparation of the joint submission. The parties have not previously exchanged joint case management statement drafts simultaneously and it does not make sense to do so going forward. Plaintiffs' proposal would only lead to greater inefficiency because it invites submissions that are ships passing in the night and will make it harder for the parties to join issues on which the Court's guidance is needed. Instead, Facebook's proposal provides ample opportunity for both sides to consider one another's proposals and try to narrow or resolve issues to provide a truly joint submission. That said, if the Court determines that the simultaneous exchange of drafts is preferable, Facebook requests that the Court order the below schedule to be followed for all future joint case management statements to correct the imbalances in Plaintiffs' proposal and to ensure that

there is a reasonable period for Facebook to prepare its positions (i.e., does not require Facebook to prepare its sections between Friday afternoon and Monday afternoon):

- **12 pm Pacific, 5 <u>business</u> days before filing:** Plaintiffs provide a draft outline of a joint case management statement to Facebook, identifying Plaintiffs' anticipated topics, headings, and joint positions including an identification of the specific issues or topics to be addressed.

- **12 pm Pacific, 2 business days before filing:** The parties simultaneously exchange their position statements for the joint case management statement.  If Facebook has identified other topics to raise in the joint case management statement that were not in Plaintiffs' draft outline, Facebook will identify those topics and provide its position statement on the topics.

- **12 pm Pacific, 1 calendar day before filing:** The parties simultaneously exchange a further round of responsive edits, including Plaintiffs' position statements on the topics identified by Facebook in the previous draft.

- **12 pm Pacific, day of filing:** The parties simultaneously exchange a further round of responsive edits.

- **Before midnight, day of filing:** The parties will work to make final edits and file the joint case management statement.

**Plaintiffs' Position:**

Plaintiffs believe the parties should themselves be able to negotiate briefing schedules for all joint submissions to the Court, as the parties have done to date.  In the interests of avoiding unnecessary disputes, Plaintiffs have repeatedly accommodated Facebook's proposed schedules or negotiated compromise ones, despite Facebook's unilateral taking of more time than provided for under the parties' agreed-upon schedules (including for this Joint Case Management Statement) and despite Facebook's raising new substantive issues and positions for the first time as part of its "final edits" to submissions (including this one).

To the extent the Court determines that a universal briefing schedule that would apply to future joint case management statements would be helpful for the parties (absent agreement of the

parties or Court order as to any one particular statement), Plaintiffs would welcome that guidance. To ensure fairness to all parties and to minimize the back-and-forth from Plaintiffs sending their proposed inserts on a Friday, Facebook providing its responsive inserts on Monday, and so on, Plaintiffs propose:[7]

1.   Plaintiffs provide to Facebook a draft outline of a statement at 12:00 p.m. PST on the Friday before the Wednesday that a joint case management statement is due.  This draft would identify all anticipated topics, headings, and joint positions but leave blank all position statements.

2.   The parties simultaneously exchange their position statements for the joint case management statement at 12:00 p.m. PST on the Monday before the Wednesday that a joint case management statement is due.

3.   The parties simultaneously exchange one further round of responsive edits at 12:00 p.m. PST on the day (Wednesday) the joint case management statement is due.  These edits would be limited to those which directly address points in the original position statements.  Absent agreement of the parties, no party is allowed further substantive revisions after this exchange.

4.   The parties file the joint case management statement on the Wednesday that joint case management statement is due.

The simultaneous exchange of drafts (and Plaintiffs' proposed timing) is consistent with the protocols entered in other class action cases (including those litigated by counsel in this case) and at least one pending against Facebook.  *See, e.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, Case No. 3:18-md-02843-VC (N.D. Cal.) (Corley, J.), Dkts. 404 at 2, 420 at 2 (requiring parties to "exchange their portions of the joint submissions by noon two days before the status conference").  Facebook's conduct in preparing this statement (and others) highlights the need for simultaneous exchanges.  Facebook's "final edits"—to which it insisted Plaintiffs could make

---

[7]      N.D. Cal. Civil L.R. 16-10(d) requires the parties to submit joint case management statements seven days before the Court holds joint case management conferences.  This Court holds those conferences on Wednesdays.

"only non-substantive edits"—added 636 words and 5 case citations to the initial disclosure section alone.  Allowing one party to unilaterally change its position after seeing the others' is prejudicial.

Were the Court inclined to adopt Facebook's proposal for staggered exchanges, Plaintiffs would propose that the Court implement such a schedule based on "calendar" days, rather than "business" days.  For previous submissions (including this one), Plaintiffs have agreed to provide their proposed inserts to Facebook on the Friday before the Wednesday that joint case management statements have been due, so long as Facebook provides its responsive inserts on the following Monday.  Facebook's proposal to tie Plaintiffs' exchange to "business" days would require Plaintiffs to provide their initial statements of drafts on the Wednesday before the Wednesday that joint case management statements are due, which is one week before the Court holds case management conferences.  Put differently, using "business days" would require Plaintiffs to submit initial drafts to Facebook one week before the joint statement is due and two weeks before the Court normally holds case management conferences.  Facebook, by contrast, would then be able to, for the first time, provide its responsive positions five calendar days later (the following Monday).

As to Facebook's alternative proposal for a simultaneous exchange, Facebook's proposal would give Facebook five calendar days to prepare its positions on the topics that Plaintiffs have identified, but would give Plaintiffs only one calendar day to prepare its positions on the topics that Facebook has identified.  If anything, fairness dictates that the parties should simultaneously exchange, in the first instance, the topics that the parties propose be included in the joint case management statement.  Moreover, Plaintiffs respectfully submit that the parties need not exchange (as Facebook proposes) four rounds of substantive edits, including three rounds of simultaneous exchanges.  The goal of subsequent case management statements is to "report[] progress or changes since the last statement was filed and mak[e] proposals for the remainder of the case development process."  N.D. Cal. Civil L.R. 16-10(d).  Rather than furthering this purpose, Facebook's proposal would unnecessarily complicate (not simplify) the substance of, and process for, these statements.

1    DATED:  August 25, 2021                    Respectfully submitted,

2

3    By:  /s/ Yavar Bathaee                      By:  /s/ Stephen A. Swedlow
     **BATHAEE DUNNE LLP**                        **QUINN EMANUEL URQUHART & SULLIVAN,**
4    Yavar Bathaee (Bar No. 282388)              **LLP**
       yavar@bathaeedunne.com                     Stephen A. Swedlow (admitted *pro hac vice*)
5    Edward M. Grauman (admitted *pro hac*          stephenswedlow@quinnemanuel.com
     *vice*)                                       Michelle Schmit (admitted *pro hac vice*)
6      egrauman@bathaeedunne.com                     michelleschmit@quinnemanuel.com
     Andrew C. Wolinsky (admitted *pro hac*        191 N. Wacker Drive, Suite 2700
7    *vice*)                                       Chicago, IL 60606-1881
       awolinsky@bathaeedunne.com                  (312) 705-7400
8    445 Park Avenue, 9th Floor
     New York, NY 10022
9    (332) 322-8835                               Kevin Y. Teruya (Bar No. 235916)
                                                    kevinteruya@quinnemanuel.com
10   Brian J. Dunne (Bar No. 275689)             Adam B. Wolfson (Bar No. 262125)
       bdunne@bathaeedunne.com                      adamwolfson@quinnemanuel.com
11   633 West Fifth Street, 26th Floor           Brantley I. Pepperman (Bar No. 322057)
     Los Angeles, CA 90071                          brantleypepperman@quinnemanuel.com
     (213) 462-2772                              865 South Figueroa Street, 10th Floor
12                                                Los Angeles, CA 90017-2543
                                                  (213) 443-3000
13   By:  /s/ Kristen M. Anderson
     **SCOTT + SCOTT ATTORNEYS AT LAW**           Manisha M. Sheth (admitted *pro hac vice*)
14   **LLP**                                        manishasheth@quinnemanuel.com
     Kristen M. Anderson (Bar No. 246108)        51 Madison Avenue, 22nd Floor
15     kanderson@scott-scott.com                  New York, New York 10010
     230 Park Avenue, 17th Floor                 (212) 849-7000
16   New York, NY 10169
     (212) 223-6444
17                                                By:  /s/ Shana E. Scarlett
     Christopher M. Burke (Bar No. 214799)        **HAGENS BERMAN SOBOL SHAPIRO LLP**
18     cburke@scott-scott.com                     Shana E. Scarlett (Bar No. 217895)
     David H. Goldberger (Bar No. 225869)           shanas@hbsslaw.com
19     dgoldberger@scott-scott.com                715 Hearst Avenue, Suite 202
     Yifan (Kate) Lv (Bar No. 302704)            Berkeley, CA 94710
20     klv@scott-scott.com                        (510) 725-3000
     600 W. Broadway, Suite 3300
21   San Diego, CA 92101                          Steve W. Berman (admitted *pro hac vice*)
     (619) 233-4565                                 steve@hbsslaw.com
22                                                1301 Second Avenue, Suite 2000
     Patrick J. McGahan (admitted *pro hac*        Seattle, WA 98101
23   *vice*)                                       (206) 623-7292
       pmcgahan@scott-scott.com
24   Michael P. Srodoski (admitted *pro hac*
     *vice*)
25     msrodoski@scott-scott.com
     156 South Main Street, P.O. Box 192
26   Colchester, CT 06415
     (860) 537-5537
27

28

1  **AHDOOT & WOLFSON, PC**
   Tina Wolfson (Bar No. 174806)
2     twolfson@ahdootwolfson.com
   Robert Ahdoot (Bar No. 172098)
3     rahdoot@ahdootwolfson.com
   Theodore W. Maya (Bar No. 223242)
4     tmaya@ahdootwolfson.com
   Rachel Johnson (Bar No. 331351)
5     rjohnson@ahdootwolfson.com
   2600 West Olive Avenue, Suite 500
6  Burbank, CA 91505
   (310) 474-9111
7

8  **LEVIN SEDRAN & BERMAN LLP**
   Keith J. Verrier (admitted *pro hac vice*)
9     kverrier@lfsblaw.com
   Austin B. Cohen (admitted *pro hac vice*)
10    acohen@lfsblaw.com
   510 Walnut Street, Suite 500
11 Philadelphia, PA 19106-3997
   (215) 592-1500
12

13 *Interim Counsel for the Advertiser Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
   wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
   rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
   bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
   rapeterson@locklaw.com
Arielle S. Wagner (admitted *pro hac vice*)
   aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

By:   /s/ Sonal N. Mehta
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
Sonal N. Mehta (SBN: 222086)
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Email: Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: David.Gringer@wilmerhale.com
Email: Ari.Holtzblatt@wilmerhale.com

*Attorneys for Defendant Facebook, Inc.*

1

## **ATTESTATION OF KRISTEN M. ANDERSON**

2

       This document is being filed through the Electronic Case Filing (ECF) system by attorney

3

Kristen M. Anderson.  By her signature, Ms. Anderson attests that she has obtained concurrence in

4

the filing of this document from each of the attorneys identified on the caption page and in the above

5

signature block.

6

       Dated: August 25, 2021                    By */s/* Kristen M. Anderson

7

                                                         Kristen M. Anderson

8

9

## **CERTIFICATE OF SERVICE**

10

11

       I hereby certify that on this 25th day of August 2021, I electronically transmitted the

12

foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be

13

electronically served on all attorneys of record.

14

                                    By */s/* Kristen M. Anderson

15

                                         Kristen M. Anderson

16

17

18

19

20

21

22

23

24

25

26

27

28