<u>**VIA CM/ECF FILING**</u>

September 28, 2021

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:  Joint Discovery Letter Brief re Plaintiffs' Initial Disclosures
     *Maximilian Klein et al. v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to Section 4 of the Court's Standing Order for Civil Cases, the Consumer Plaintiffs, the Advertiser Plaintiffs, and Defendant Facebook, Inc. respectfully request that the Court resolve a dispute concerning Plaintiffs' initial disclosures.[1]

Facebook respectfully requests that the Court order Plaintiffs to provide, within 10 days of the Court's order, supplemental initial disclosures that comply with the requirements of Rule 26, including (1) an informed, good-faith computation of each category of damages each plaintiff claims, (2) disclosure of any and all documents or evidence supporting that computation; and (3) identification of all materials bearing on the nature and extent of injuries suffered by each named plaintiff. If no such materials exist, Plaintiffs must so state. Plaintiffs respectfully request that the Court deny Facebook's requested relief in all respects and enter an order determining that Plaintiffs' respective initial disclosures are sufficient, at this early stage.

## **STATEMENT OF THE DISPUTE**

The parties met and conferred in good faith regarding Plaintiffs' initial disclosures. The parties disagree as to whether Plaintiffs' initial disclosures are deficient. The parties' respective positions regarding Plaintiffs' initial disclosures are set forth below.

**A.     Facebook's Position**

Plaintiffs' initial disclosures—already amended in response to a notice of deficiency—do not satisfy the basic discovery obligation to provide Facebook with a "computation of each category of damages" and "the documents or evidentiary material . . . on which each computation is based," as set forth in Rule 26(a)(1)(A)(iii). Plaintiffs' damages disclosures should provide sufficient detail to enable the defendants to understand their potential exposure and make informed decisions regarding discovery. *See City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).

---

[1] Attached hereto are Ex. A (Consumer Plaintiffs' amended initial disclosures); and Ex. B (Advertiser Plaintiffs' amended initial disclosures).

Plaintiffs deliberately mischaracterize Facebook's position to be asking for proof of Plaintiffs' damages. Not true—Facebook simply requests that Plaintiffs do what Rule 26 requires.[2] This requirement applies in every case, at the outset. Other plaintiffs routinely comply with this obligation and the plaintiffs in *this case* are particularly well-positioned to provide thorough disclosures. By their own account, Plaintiffs spent "hundreds of hours" in pre-litigation investigation, have litigated the case for 10 months, and have had 5 months with 12 million pages of Facebook documents. Yet, Plaintiffs seek to avoid this bedrock obligation with hollow excuses, and by haphazardly throwing out unsubstantiated lump-sum "estimate[s]." Notably, amidst all the rhetoric, Plaintiffs do not claim (because they cannot) that their disclosures provide a "computation," or any information that would "bear[] on the nature and extent of [any] injuries [purportedly] suffered." An empty estimate does not satisfy the Rule.

Users' initial disclosures simply recite the relief sought in their Complaint without specifying the amount or method for computing their damages or ***any*** documents or evidence on which Users intend to rely. Instead, Users wave their hand at damages based on the difference between some "reduced value" for their use of a *free product* and the value of unspecified "data" that Users purportedly "provided to Facebook." Ex. A at 13. Users posit that when you multiply some unspecified number by the "hundreds of millions" of putative class members, you get "at least, tens of billions of dollars." Ex. A at 13–14. A multiple of some arbitrary "quantum" plucked from thin air is not a damages computation. Even if it were, Users would still need to identify the supporting evidentiary material—citations to the Complaint are simply not sufficient. *See Hill v. Alpine Sheriff Dep't,* 2019 WL 5394524, at *3 (S.D. Cal. Oct. 22, 2019). These requirements are especially important here, where Users are making the unprecedented argument that they should be compensated for their use of a *free product*.

Advertisers' initial disclosures are similarly deficient. Advertisers set forth a purportedly "simplified" formula used in another kind of case: "[Dollar Overcharge = ($P_m$ – $P_c$) x $Q_m$] where $P_m$ is the price charged for advertising, $P_c$ is the but for or competitive price charged for advertising, and $Q_m$ is the quantity of advertising sold by Facebook to class members during the class period." Ex. B at 26. But Advertisers are required to provide some support for claiming that *they* were overcharged, and they do not. Advertisers merely assume, without factual support, "that Facebook's anticompetitive conduct resulted in an overcharge of at least 20%, suggesting . . . damages are at least $22.6 billion." *Id.* Advertisers cherry-pick that 20% figure from outdated articles relating only to bilateral collusive conduct—neither of which has or could have any bearing on this case.[3] *Id.*

Plaintiffs seek to justify these deficiencies by claiming that they are excused from Rule 26's requirements because we are in the initial stages of a complex antitrust case in which expert analysis will be required to evaluate damages. Not so.

---

[2] Plaintiffs profess that they need not provide a damages computation for their unjust enrichment claims (which should be dismissed outright), but they are wrong. *See, e.g.*, *Joshua David Mellberg, LLC v. Will*, 2020 WL 2569908, at *12-14 (D. Ariz. May 21, 2020).

[3] That a party in a different country with different laws has conjectured that the "methods" it applies to "cartel overcharge . . . *can in principle* be used to quantify the overcharge harm caused by other infringements" is of absolutely no consequence here. *See infra* n.6.

2

*First*, Plaintiffs are not excused from Rule 26(a)(1)(A)(iii) because we are early in the litigation (this is not early anyway). The purpose of the rule "is to ensure that defendants receive a preliminary damages estimate at the outset of litigation—before discovery has commenced." *Holland Am. Line, N.V. v. Orient Denizcilik Turizm Sanayi Ve Ticaret, A.S.*, 2020 WL 1689736, at *2 (W.D. Wash. Apr. 7, 2020); *Ketab Corp. v. Mesriani Law Grp.*, 2016 WL 5921767, at *2 (C.D. Cal. Mar. 18, 2016). Provision of a so-called "estimate" lump-sum based on nothing more than self-interested speculation does not cure Plaintiffs' deficiencies—indeed, it further impairs Facebook's ability to take discovery. *See Tutor-Saliba*, 218 F.R.D. at 221.

Nor are Plaintiffs excused from making disclosures because Plaintiffs have not fully investigated their case. *See Song v. Drenberg*, No. 18-cv-06283-LHK(VKD), 2019 WL 1949785, at *1–2 (N.D. Cal. May 2, 2019). As Plaintiffs acknowledge, a key inquiry is whether the initial disclosures include and are "based on the information reasonably available to" the party making the disclosure. *See id.*; Fed. R. Civ. P. 26(a)(1)(E). Plaintiffs have repeatedly represented to Facebook and the Court that they have "invested hundreds of hours and many, many expert dollars," March 18, 2021 Hr'g Tr. 68:10-11, and have since 2019, "expended extraordinary time and resources identifying, investigating, and developing the antitrust theories" and conducted "extensive investigation, research, and case development." Dkt. 55 at 5, 8. What is more, Plaintiffs have had access to more than 12,000,000 documents for 5 months, and have represented that they are diligently reviewing the production.

Plaintiffs nonetheless protest that they have given Facebook the information that is "reasonably available" to them. But that position is irreconcilable with their allegations. Plaintiffs have pleaded that they were injured by receiving "lower compensation for their time and attention" and by "paying supracompetitive prices for social advertising." Dkt. 86 ¶ 22; 87 ¶ 272. While Facebook disputes those allegations—and that Users have stated any claim at all—under their own theory, Users must have a basis for their allegations including, at a minimum, what each named plaintiff purportedly provided to Facebook in time and attention, what they should have been paid in return, and materials showing the supposed injury suffered from the privacy policies that are the crux of the lawsuit. And Advertisers must disclose the price they claim that they should have paid in a competitive market (*e.g.*, each plaintiff's supposed over-payment), and why that is true beyond the say-so of two articles that have nothing to do with monopolization. Whatever the deficiencies in their legal claims and theories (there are many), the Court should order Plaintiffs to produce this information, or if it does not exist, require Plaintiffs to so-state.

*Second*, the plain text of Rule 26 makes clear that antitrust cases are not exempt from the damages computation requirement. *See* Fed. R. Civ. P. 26(a)(1)(B). Courts have correctly excluded evidence and testimony on damages where antitrust claimants failed to make timely and complete disclosures. *See, e.g.*, *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 2017 WL 3016385, at *2-7 (N.D. Ind. July 17, 2017).[4]

---

[4] The case offered by Plaintiffs is not to the contrary. *Hyland*, 2008 WL 11357996, at *4. There, the court found the plaintiff's disclosures sufficient only after the plaintiff supplemented his initial disclosures with the "information available" to him, including a precise damages computation, and disclosed his methodology via an expert report. *Id.* at *1, *4. Plaintiffs have done neither here.

*Third*, that Plaintiffs intend to rely on unspecified expert testimony does not discharge their obligations under Rule 26.  *See* Fed. R. Civ. P. 26(a)(1)(E) (titled "Unacceptable Excuses"). "[F]uture expert analysis does not relieve a plaintiff of providing the information reasonably available to her regarding her damages computation." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017); *see also Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015).

Indeed, a damages computation is "especially necessary when [as here] plaintiff seeks complex damages." *Gumwood*, 2017 WL 3016385, at *2.  And regardless of a need to supplement with expert analysis, Plaintiffs are still required to disclose "factual underpinnings and evidence underlying its damages theory prior to expert discovery," a requirement Plaintiffs conveniently ignore.  *MLC Intellectual Prop. LLC v. Micron Tech., Inc.*, 2021 WL 3778405, at *10 (Fed. Cir. Aug. 26, 2021) (interpreting 9th Circuit law).

The harm to Facebook from these deficiencies is concrete:  Plaintiffs' failure to comply with Rule 26 materially hinders the progress of this litigation by, among other things, impairing the parties' ability to take discovery "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  It also inhibits Facebook's ability to effectively respond to Plaintiffs' claims for *tens of billions of dollars* in damages, especially here, where Plaintiffs advance novel, unprecedented claims.  Plaintiffs should be ordered to serve compliant initial disclosures.

**B.     Plaintiffs' Position**

Plaintiffs' operative disclosures contain sufficient damages computations, each providing: (a) estimated damages quantifications; (b) preliminary methods and inputs for calculating those sums; and (c) specific documents or categories of documents upon which they are based.  They are, and can only be, based on the information then reasonably available to Plaintiffs.  That is consistent with Fed. R. Civ. P. 26(a)(1)(E), not, as Facebook misstates, an assertion that antitrust cases are "exempt" from Rule 26.  By contrast, neither Rule 26 nor the case law countenance Facebook's position that Plaintiffs must ***prove*** their damages cases now.

Computation of Damages.  Plaintiffs' disclosures identify an estimated damages ***quantum***: for Consumers, class-wide damages of "at least, tens of billions of dollars"; for Advertisers, class-wide damages of "at least $22.6 billion[.]"  Ex. A at 13; Ex. B at 26.  Advertisers provide damages estimates and total Facebook advertising spend for each named Advertiser Plaintiff.  Ex. B at 27. Consumers calculate "per-member damages"—"at least tens to hundreds of dollars each year throughout the class period," Ex. A at 13—necessarily representing each named Consumer Plaintiff's estimated damages.  These estimates render inapt Facebook's authorities involving disclosures providing ***no*** dollar estimate, or doing so at a late stage.  *See Holland*, 2020 WL 1689736, at *2 (no estimate until motion to compel); *Corning*, 306 F.R.D. at 277–79 (no estimate "[j]ust a few months from trial, and a few weeks from the close of fact discovery"); *Ketab*, 2016 WL 5921767, at *1–2 (no estimate "more than three months after the discovery cut-off"); *Gumwood*, 2017 WL 3016385, at *2–3 ("parties may be unable to provide a precise computation . . . at the outset of discovery" but excluding computation because "first" disclosed in "present motion in limine, filed over 18 months after the close of discovery").

Moreover, in evaluating a party's damages computations, courts apply a "common sense" approach, and "[t]he level of specificity" required "varies depending on the stage of litigation and the claims at issue." *Silvagni*, 320 F.R.D. at 240. As Facebook's own authorities recognize, "***[a] precise damages computation may not be possible until the plaintiff obtains some discovery . . . and***, in some cases, ***obtains expert analysis***." *Id.* at 241 (emphases added); *accord Tutor-Saliba*, 218 F.R.D. at 222 (no "disclosure of precise calculations" necessary "given that many of the [required] documents . . . remain in the Defendants' hands and some level of expert analysis may be required"). Plaintiffs' disclosures explain (Ex. A at 14, Ex. B at 27–28) that more precise computations require expert testimony—*see ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012) ("Expert testimony is necessary to establish damages in an antitrust case.")—which Plaintiffs will provide once they obtain the necessary information and consistent with the expert discovery schedule. "Rule 26 disclosures and an expert report that comport with the court's case schedule are not untimely or improper." *Naxos, LLC v. Am. Fam. Ins. Co.*, 2020 WL 106740, at *5 (W.D. Wash. Jan. 9, 2020).

Plaintiffs' disclosures identify preliminary ***methods and inputs*** for calculating damages. Consumers' antitrust damages are "the difference between the reduced value that Facebook provided Consumer[s] . . . and the value that competition . . . would have required Facebook to provide" them on a ***market-wide basis***, "including adequate compensation for the[ir] data."[5] Ex. A at 13. These damages do not depend, as Facebook misstates, on data, time, or attention provided by ***individual*** Consumers. Based on the "market price" Facebook paid "Facebook Research App" users "for their data"—$20.00 per month—Consumers arrive at "at least . . . tens of billions of dollars" by multiplying "likely per member damages" per year ($20.00 per month, based on the difference between the $20.00 per month Facebook paid to Facebook Research App users for their data and the $0.00 Facebook paid Facebook users for their data) and "the number of years in the class period (2007 to the present)[.]" *Id.* Advertisers' damages are the "overcharge[s]" they paid for advertising, based on the difference between "the total value of advertising" they "purchased . . . from Facebook" and the "competitive price charged for advertising[.]" Ex. B at 26–27. Advertisers further estimate that the "overcharge" is "at least 20%," citing pertinent studies. *Id.*

Plaintiffs' disclosures constitute "computations" since they do "more than merely set[] forth [the] figure demanded." *Tutor-Saliba*, 218 F.R.D. at 221. Not only do they reflect, at least, "some analysis," *id.,* they are consistent "with the various traditional methods of proving the existence and measure of damages suffered by a class in an antitrust action." *Hyland*, 2008 WL 11357996, at *1, *4 (finding sufficient disclosures identifying antitrust damages as "the difference between the brokerage commissions paid . . . as a result of a conspiracy . . . and the brokerage commissions paid . . . absent the alleged conspiracy"). Facebook's own authority confirms that Plaintiffs' identified methods supply more detail than what Rule 26 requires at this early stage. *Silvagni*, 320 F.R.D. at 241 ("***a precise method of calculation need not be disclosed initially to***

---

[5] Consumers' unjust enrichment claim seeks disgorgement, "an equitable remedy to which . . . initial disclosure rules do not apply." *Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893, 909 (W.D. Ky. 2020). Even if they did, Consumers' disclosures seek "disgorgement of Facebook's ill-gotten gains stemming from its unjust enrichment," an estimated "tens of billions of dollars (or more)." Ex. A at 13, 13 n.1.

*the extent it is properly the subject of expert testimony that will be provided through future expert reports*.") (emphasis added).

At bottom, Facebook's challenges amount to "disputing the amount of damages," which is an improper objection to Plaintiffs' initial disclosures. *Pine Ridge Recycling, Inc. v. Butts Cty., Ga.*, 889 F. Supp. 1526, 1527 (M.D. Ga. 1995). Facebook's "[a]rguments over the method[s] of computation are similarly premature since th[os]e method[s] will necessitate expert testimony, which is not due" for nearly a year. *Id.*

Damages-Related Documents. Rule 26(a)(1)(A)(iii) "is limited by the quantity and quality of information available to the party who makes the damages production[.]" *Hyland*, 2008 WL 11357996, at *4. Plaintiffs have more than satisfied their obligations under Rule 26.

Consumers' disclosures identify documents supporting their computations, including for each input of their method. As for class size, their disclosures are based on Facebook's "presentations detailing the number of daily and monthly active" users. Ex. A at 13. As for per-member damages, their disclosures are based on "public news reports" describing Facebook's paying Facebook Research App users $20.00 per month, and "publicly-available articles regarding the rates at which other companies compensate users for their data." *Id.* at 14. Information for and hyperlinks to these sources are provided in their complaint. *See* Dkt. 87 ¶¶ 7 n.2, 223 nn.185–87, 224 n.188. Consumers have agreed to produce these ***documents*** and others cited in the complaint, distinguishing *Hill* (Facebook's authority). 2019 WL 5394524, at *1–3 (*pro se* plaintiff provided ***no*** disclosures (just his complaint), nor "any documents, or list describing documents [supporting] any computation of damages.").

Advertisers' disclosures identify concrete bases (Prof. John Connor's survey of historic antitrust harm and the European Commission's guide to calculating antitrust damages) for their overcharge methodology and current estimate that this overcharge is at least 20%, calculated against defined advertising purchases over a defined period.[6] Ex. B at 26 nn. 1–2. Their disclosures also identify Facebook's SEC filings as the bases for calculating Facebook's U.S. advertising sales to putative class members during the class period, and they have already produced to Facebook transaction records of the named Advertiser Plaintiffs' Facebook advertising purchases. They could do no more now: Facebook's existing production lacks transaction records sufficient to conduct even the most rudimentary econometric overcharge analysis.

There is no "gamesmanship, or an attempt by" Plaintiffs "to obtain some nebulous strategic advantage[.]" *Hyland*, 2008 WL 11357996, at *4. While Facebook casts aspersions as to Plaintiffs' pre-suit investigations, damages computations necessarily require discovery and expert testimony, and Plaintiffs' disclosures reflect the information that is "reasonably available" to Plaintiffs at present. Fed. R. Civ. P. 26(a)(1)(E). Indeed, to obtain additional information

---

[6] Even were it appropriate to consider Facebook's critiques of these documents (it is not), they are unfounded, as ¶¶ 172–74 of the cited EC guidelines (https://ec.europa.eu/competition/antitrust/actionsdamages/quantification_guide_en.pdf) confirm that monopoly overcharges may be quantified using the same "methods and techniques" used in "cartel" cases.

regarding Plaintiffs' damages, Plaintiffs recently served Facebook with document requests.[7] Plaintiffs will supplement their disclosures and damages computations as their investigation and discovery proceeds. Ex. A at 13, Ex. B at 27. No more is required now. *Hyland*, 2008 WL 11357996, at *4.

## **NEED FOR HEARING**

The parties defer to the Court regarding the need for a hearing. To the extent that a hearing would assist the Court in resolving the parties' dispute, the parties will present these issues to the Court at the Court's convenience.

## **RELEVANT DATES**

Plaintiffs' motion for class certification is due March 15, 2022. The fact discovery cut-off for these consolidated actions is September 2, 2022. Dkt. 115. The expert discovery cut-off for these consolidated actions is November 4, 2022. *Id.*

## **COMPLIANCE WITH LEAD COUNSEL MEETING REQUIREMENT**

The parties conferred about this dispute by Zoom on September 21, 2021. Participants included: Stephen Swedlow and Shana Scarlett (Co-Lead Interim Consumer Class Counsel); Yavar Bathaee and Kristen Anderson (Co-Lead Interim Advertiser Class Counsel); and Sonal Mehta and David Gringer (lead counsel for Facebook). Additional counsel attended.

---

[7] To the extent that Facebook seeks that Plaintiffs identify which of the 12 million pages of Facebook's documents support Plaintiffs' computations, that is a contention interrogatory and is inappropriate at this stage and while Plaintiffs' review of those documents is ongoing. *Tutor-Saliba*, 218 F.R.D. at 222.

DATED:  September 28, 2021

By */s/  Yavaar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (*pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 205-7668

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 462-2772

By */s/  Kristen M. Anderson*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger ( Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv ( Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192

Respectfully submitted,

By */s/  Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

By */s/  Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Colchester, CT 06415
Telephone: (860) 537-5537


**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500


**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111

*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900


*Interim Counsel for the Consumer Class*


By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000


*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION OF SONAL N. MEHTA

This document is being filed through the Electronic Case Filing (ECF) system by attorney Sonal N. Mehta. By her signature, Ms. Mehta attests that she has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 28, 2021  By:  */s/ Sonal N. Mehta*
Sonal N. Mehta

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: September 28, 2021  By:  */s/ Sonal N. Mehta*
Sonal N. Mehta