<u>**VIA CM/ECF FILING**</u>

October 4, 2021

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:  Supplemental Joint Discovery Letter Brief re: ESI Protocol Dispute
     *Maximilian Klein et al. v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to the Court's instructions in its September 3, 2021 Interim Discovery Order, Dkt. 145, the Consumer Plaintiffs, the Advertiser Plaintiffs, and Defendant Facebook, Inc. ("Facebook") respectfully request that the Court resolve a dispute concerning the entry of the ESI Protocol that will govern discovery in the above captioned case.

## STATEMENT OF THE PARTIES' AGREEMENTS AND REMAINING DISPUTES

The parties have met and conferred in good faith concerning Section 4 of the ESI protocol, which identifies certain sources of information that are not reasonably accessible and that are therefore excluded from preservation and production in this matter. The parties have largely reached agreement on the language of that paragraph, although two disputes remain.

In particular, the parties have agreed to remove several ESI sources from the list of information not reasonably accessible in Section 4.d of the ESI Protocol. Those categories include: (1) voice messages; (2) sound recordings, including, without limitation, .mp3 and .wav files; (3) video recordings; (4) information solely contained on mobile devices; (5) mobile and smart device activity logs; and (6) [i]nstant messages and chats that are not chronicled to an email archive system. The parties have agreed to include systems no longer in use that can no longer be accessed on that list. To the extent the parties agreed to remove a source of ESI from this section of the protocol, the parties each reserve the right to argue that information falling within that category is not discoverable (e.g., because it is not relevant to any claim or defense in this case, inaccessible, or otherwise unduly burdensome).

The parties additionally agreed to remove user data subject to routine disposition required by privacy regulations from the list of information not reasonably accessible, and instead have agreed to address this category with the following language: "The Parties acknowledge that Facebook is subject to various privacy regulations and court orders that require the disposition of identifiable user data. To the extent that identifiable user data subject to routine disposition as required by privacy regulations and court orders is identified as relevant to the claims or defenses in this case, the parties will meet and confer on preservation of such information as it exists at that

1

time, including the feasibility of such preservation and the type and import of the user data implicated."

Two disputes remain.  The parties' first dispute relates to "[b]ackup systems and/or tapes used for disaster recovery."  Facebook contends such information is not "reasonably accessible" and need not be preserved.  During the meet and confer process, Facebook proposed retaining such information pursuant to its routine retention practices.  Plaintiffs request that Facebook be ordered to identify its routine retention practices for backup systems and/or tapes used for disaster recovery, to facilitate further meet and confer over the preservation of backup systems and tapes.  Second, Facebook proposes the inclusion of the following language in the ESI Order, to which Plaintiffs object: "For any data sources not listed in paragraph 4(d) above [the list of information not reasonably accessible in Section 4.d of the ESI Protocol] in which non-duplicative responsive data is identified, the Parties will take steps to preserve the non-duplicative responsive information in such data sources in existence at that time taking into consideration proportionality and the costs and burden of preservation."

### 1. Plaintiffs' Position

*Backup Tapes*

As an initial matter, during the parties' meet and confer with respect to the preservation of "[b]ackup systems and/or tapes used for disaster recovery," Plaintiffs requested that Facebook represent that it is not aware of any gaps in its ESI for which backup tapes would be relevant. Facebook refused to do so, notwithstanding that Facebook has been the subject of relevant investigations and would thus be aware of any such gaps.[1]  Facebook's refusal to represent that it is not aware of gaps in its ESI which backup tapes may fill,[2] and its position that it need not preserve backup tapes at all, is concerning.  Plaintiffs are particularly concerned with tapes backing up employee communications (*e.g.*, messages, chats, and emails).  As even Facebook acknowledges, "tapes storing the documents of 'key players'" should be preserved, where such information is not otherwise available. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  By refusing to state whether it is aware of gaps in its ESI, including for "key players," Facebook has failed to establish that such tapes are duplicative and need not be preserved. *See Wells v. Xpedx*, 2007 WL 1200955, at *1–2 (M.D. Fla. Apr. 23, 2007) ("[t]he producing party has the obligation to search available electronic systems for deleted emails and files" and defendant

---

[1] Indeed, in 2019, after one such investigation, the Department of Justice specifically determined that "[t]he full scale of unauthorized collection, use, and disclosure of consumer information resulting from Facebook's conduct is unknown due, at least in part, to *the company's lack of recordkeeping*." *United States v. Facebook, Inc.*, Case No. 1:19-cv-02184 (D.D.C.), Dkt. 1, ¶ 126 (emphasis added).

[2] Facebook's last minute representation, hours before this filing was due, that "Facebook is not presently aware of any non-duplicative information on backup tapes that is relevant to any known claim or defense," does not directly address Plaintiffs' inquiry as to whether Facebook is aware of gaps in ESI, for which the backup tapes may be relevant.  For example, to the extent Facebook has not restored and reviewed its backup tapes to date, its vague representation of what information it is presently aware of does not appear to be meaningful.

2

had not "provided adequate information . . . to allow Plaintiff to evaluate the likelihood of finding responsive information" in various sources, including "backup tape systems").[3]

Facebook seeks not to preserve backup tapes on the basis that they are not reasonably accessible. It is Facebook's burden to establish as much. Fed. R. Civ. P. 26 ("[T]he party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Facebook's attempts to shift that burden onto Plaintiffs, to establish whether Facebook is missing documents for "key players," is improper and impractical, given Facebook's knowledge of its own documents, and refusal to respond to Plaintiffs' inquiries on whether any gaps in Facebook's ESI exist. It would be impossible for Plaintiffs to know, now, whether there are gaps in Facebook's ESI for key players. Absent such knowledge, and faced with Facebook's stonewalling, Plaintiffs request that such backup tapes be preserved (and not, at this juncture, restored, searched, collected, or produced).

Having failed to provide Plaintiffs (or this Court) any *meaningful* information regarding its backup tapes, Facebook cannot meet its burden to show they are not reasonably accessible. Facebook contends (incorrectly) that backup tapes *in general* are "categorically inaccessible" and "generally duplicative," without representing *Facebook's* backup tapes are not accessible because of undue burden or cost, or are otherwise cumulative (in fact, as noted above, Facebook refused to represent that the tapes are cumulative—i.e., that Facebook is not aware of any gaps in its ESI for which backup tapes would be relevant).

In *Mikron Indus., Inc. v. Hurd Windows & Doors, Inc.*, for example, the Court held defendants had "not met their burden of demonstrating that [backup tapes were] 'not reasonably accessible because of undue burden or cost.'" The Court reasoned that:

> Defendants have not provided the Court with details regarding, for example: (1) the number of back-up tapes to be searched; (2) the different methods defendants use to store electronic information; (3) defendants' electronic document retention policies . . .; (4) the extent to which the electronic information stored on back-up tapes overlaps with electronic information stored in more accessible formats; or (5) the extent to which the defendants have searched ESI that remains accessible.

2008 WL 1805727, at *2 (W.D. Wash. Apr. 21, 2008).[4] Far from creating a "default rule" that wholesale exempts back up tapes from preservation, Facebook's authorities recognize that

---

[3] Facebook attempts to distinguish *Xpedx* because, in moving to compel *production* of documents in that case, the plaintiff there asserted those documents "may" be contained in the defendant's back up systems. *Xpedx*, 2007 WL 1200955, at *1. Facebook's refusal to meaningfully state what *is* contained in its back up tapes only highlights why this information should be *preserved* now, so that the information is not lost forever.

[4] Facebook asserts *Mikron* is inapt because of "'gaps' in production" identified in that case. But that was not the basis for the court's reasoning that "the responding party should present details sufficient to allow the requesting party to evaluate the costs and benefits of searching and producing the identified sources[.]" *Id.* at *1. Instead, the court cited to the Advisory Committee's Notes on Rule 26(b)(2). *Id.* And, in all events, Facebook has *not* made the showing required in *Mikron* (and required by Rule 26(b)(2)(B)).

3

*Facebook* must make an *affirmative* showing regarding its investigation of its back up tapes. *See Margolis*, 2012 WL 2588704, at *2–3 (producing party provided declarations detailing burden and duplication associated with back up tapes); *cf. Nielsen*, 328 F.R.D. 421 (deciding whether *surveillance* tapes (not back up tapes) required to be preserved).

During the parties' meet and confer, Facebook offered to preserve backup tapes pursuant to its routine retention practices (although Facebook now takes the position in its briefing that it need not preserve backup tapes at all). Plaintiffs requested that Facebook identify its retention practices, particularly for employee communications, to enable Plaintiffs to evaluate Facebook's proposal. Plaintiffs requested this information during the parties' September 23, 2021 meet and confer, and reiterated their request in their September 29, 2021 draft of this filing provided to Facebook. Plaintiffs further proposed to extend the schedule for submitting this filing, to provide Facebook additional time to provide the requested information, which is necessary to facilitate further meet and confer on this issue. 9/29/21 M. Schmit Email ("[T]o the extent that Facebook's position, after reviewing our draft, is that further meet and confer would be fruitful, Plaintiffs would be willing to submit this filing on Monday, October 4 . . ."). Facebook has, however, refused to provide this requested information. Plaintiffs propose that Facebook be ordered to provide this information to Plaintiffs within 7 days, and that the parties thereafter advise the Court if this dispute remains.

*Facebook's Extraneous Language.*

Facebook's proposed language—that "the Parties will take steps to preserve" certain "non-duplicative responsive information . . . in existence at that time taking into consideration proportionality and the costs and burden of preservation"—is extraneous, as the parties' preservation obligations are already set forth by law. The Court has rejected Facebook's prior efforts to inject vague, one-sided, and unnecessary positioning into stipulated Orders. 8/31/21 Hearing Tr. at 28:10–18 ("I'm not inclined to say the statement must be included in the ESI order as . . . an operating principle, because I feel like that would be sort of tantamount to saying, 'I'm going to bake into your ESI order a statement of the law that I'm going to apply,' . . . It just strikes me as odd . . . [and] a little bit beside the point."). The Court should do so again.

Moreover, Facebook's view appears to be that despite having agreed to remove several sources of ESI from the list of information that need not be preserved—such as voice messages, information on mobile devices, and instant messages and chats—Facebook may now nevertheless unilaterally "determine that preservation of some set of material is not proportional to the needs of this case for reasons of cost or burden," and not preserve it anyway, apparently without advising

4

Plaintiffs. This would be an end-run around the parties' negotiations on the ESI protocol, and should be rejected.[5]

### 2. **Facebook's Position**

Since the August 31 hearing, Facebook has continued to take reasonable steps to identify and preserve potentially relevant information in its possession, custody, and control, and has engaged in good faith with plaintiffs in an attempt to reach common ground on the remaining disputes related to the ESI protocol.

The parties' meet-and-confer efforts, however, were substantially hindered by the plaintiffs' failure to serve their discovery requests (85 in all) until the afternoon of Friday, September 24—notwithstanding this Court's recognition that the discovery requests would be necessary to frame a meaningful dialogue on these issues. *See* Aug. 31 Hr'g 52:15-23. Those requests arrived after the parties' initial meet-and-confer, after the parties' agreed-upon deadline for Facebook to provide an initial draft of this joint filing, and only three business days before this filing was originally due.

Notwithstanding these difficulties, Facebook has made material concessions to its original positions in an attempt to reach common ground with plaintiffs, including by agreeing to remove sound recordings, video recordings, information contained solely on mobile devices, and IMs and chats not chronicled to Facebook's email servers from the list of sources excluded from preservation in this matter, notwithstanding that such materials are generally inaccessible. *See U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) ("'inaccessible' simply means that expenditure of resources required to access the contents is itself unreasonable.").

One source of inaccessible data, and one other paragraph of the ESI protocol, remain in dispute. As to the former, Plaintiffs maintain that Facebook must preserve "backup systems and/or tapes used for disaster recovery," ("backup tapes") even though these materials are categorically inaccessible and neither Plaintiffs nor Facebook have identified any material within these categories that is likely to be relevant to any claim or defense in this case. Furthermore, information in backup systems is generally duplicative of the information in the originating system. As for the latter, Facebook additionally seeks to include language in the ESI protocol clarifying that Rule 26's proportionality standard applies to all categories of ESI not specifically described in Paragraph 4(d).

---

[5] Facebook's characterization of Plaintiffs' discovery requests as "scorched-earth" is not correct. Plaintiffs' requests—served in view of Plaintiffs' review of the information produced by Facebook to-date—seek information concerning Plaintiffs' damages, Plaintiffs' concealment allegations, Facebook's anticompetitive conduct and any related compliance policies, Facebook's metrics for evaluating it and its competitors' competitive performance, Facebook's data collection and use practices and representations to the public, and unredacted pleadings and other materials produced in related proceedings concerning Facebook's privacy and/or advertising practices.

*Backup Tapes*

Backup tapes are the "paradigmatic example of an inaccessible ESI storage medium." *Al Otro Lado Inc. v. Nielsen*, 328 F.R.D. 408, 421 (S.D. Cal. 2018). Accordingly, "things that are on backup tapes aren't subject to preservation, absent some unusual or particular request." Aug. 31 Hr'g 32:9-10; *see also Zublake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Absent specific circumstances, preservation obligations should not extend to disaster recovery backup tapes."). This is the default rule, and Plaintiffs do not dispute it. *See Margolis v. Dial Corp.*, 2012 WL 2588704, at *2 (S.D. Cal. July 3, 2012).

Instead, they seek to flip the burden, requiring Facebook to demonstrate that no relevant information is contained on its backup tapes, and ask this Court to order Facebook to provide them information that is ultimately irrelevant to the question at hand (i.e., whether backup tapes are inaccessible). Plaintiffs apparently believe that backup tapes must be preserved unless a party represents that it is not aware of any gaps in its ESI to which backup tapes might be relevant. That is not the law, but to be clear, Facebook is not presently aware of any non-duplicative information on backup tapes that is relevant to any known claim or defense in this case.

Not only do Plaintiffs flip the applicable burden, but they also fail to satisfy the sole exception to the default rule that applies where plaintiffs make a specific request that implicates information stored only on backup tapes kept for disaster recovery. Specifically, the key question is whether the parties have identified a "key player" whose information is stored on backup tapes and not duplicated elsewhere. *Margolis*, 2012 WL 2588704, at *3; *see also* Aug. 31 Hr'g 32:12-15. In that situation, that critical person's data may be extracted and preserved. *See* Aug. 31 Hr'g 32:12-15. This particular rule exists because preserving backup tapes typically entails "extreme expens[e]," Aug. 31 Hr'g 32:7-8, and "substantial effort," *Nielsen*, 328 F.R.D. at 421, making wholesale or widespread preservation inappropriate in the vast majority of cases.

Plaintiffs have made *zero* attempt to identify "key players" whose data they care about, and whose data has not been independently retained or produced such that restoration of a back-up tape is necessary or required. *See Margolis,* 2012 WL 2588704, at *3. It bears repeating that plaintiffs have had more than 12 million pages of Facebook's internal documents since May of this year. Even with the benefit of those documents, and even after going through the exercise of preparing and serving their initial set of discovery requests, Plaintiffs have not identified any gaps in Facebook's prior productions to which backup tapes might even conceivably be relevant.

Further, Plaintiffs' references to *Mikron* and *Xpedx* undermine the very positions they now advance. In *Mikron*, plaintiffs "identified specific 'gaps' in production" and, on the basis of those gaps, requested that the defendant expend resources to search backup tapes. 2008 WL 1805727, at *1. And in *Xpedx*, the court's identification of defendants' deficiencies came *after* the defendant completed its productions and *after* plaintiffs asserted that a "permanent back-up computer system may contain copies of" emails of "seven Xpedx employees" identified by plaintiffs in their requests. 2007 WL 1200955, at *1. In short: both cases establish the burden is on Plaintiffs to identify gaps in the materials provided to date before resorting to backup media. Despite months with millions of pages of documents, Plaintiffs have not done so.

All of the above explains why Plaintiffs' request that Facebook be ordered to produce some unidentified set of retention policies is a red herring, irrelevant to resolution of the present dispute. Whatever those retention policies are, the fact remains that Plaintiffs have not made the threshold showing required to inflict upon Facebook the "extremely expensive" project of preserving backup tapes beyond its normal business retention periods. Aug. 31 Hr'g 32:7-10.

*Catch-all proportionality language*

Facebook has also proposed adding a new Section 4(e) making clear that the parties' agreement to preserve "non-duplicative, relevant information currently in their possession, custody, or control," Dkt. 133-1 at 2, does not expand the parties' preservation obligations beyond that which is proportional to the needs of the case. In other words, Facebook's position is that Federal Rules's proportionality limitations apply to sources of information that are not categorically excluded from discovery, including the sources of information Facebook agreed to remove from paragraph 4 of the ESI protocol.

This language should be unobjectionable to the plaintiffs, as it is hornbook discovery law that "[t]he scope of party's duty to preserve is the same as the scope of discovery articulated in Rule 26(b)(1); namely that a party 'may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Nielsen*, 328 F.R.D. at 416 (quoting Fed. R. Civ. P. 26). Proportionality necessarily entails an assessment of the burden or cost associated with preservation of particular material. *See id.* at 417.

At bottom, it is Facebook's view that, should it determine that preservation of some set of material is not proportional to the needs of this case for reasons of cost or burden, it may make that determination. This is not an "end run" around the ESI Order—it is simply clarification that the principles that animate the Federal Rules still apply to categories of information not expressly addressed in that order. Plaintiffs' refusal to agree to this unobjectionable proposition is telling. Taken together with extraordinarily sweeping and burdensome requests for production (which seek discovery ranging from personal cell phone records and travel and leisure expense reports from Facebook employees and executives to documents from numerous unrelated state and federal lawsuits, on top of the 12 million pages of material they already have), makes plain that plaintiffs intend to take a scorched-earth approach to all aspects of discovery in this case.

## NEED FOR HEARING

The parties appreciate the time that this Court previously spent hearing and providing guidance on this dispute (including during the August 31, 2021 hearing) and defer to the Court regarding whether an additional hearing would assist the Court in resolving the parties' narrowed dispute. The parties will be available to present these issues to the Court at the Court's convenience.

## RELEVANT DATES

The fact discovery cut-off for these consolidated actions is September 2, 2022. Dkt. 115. The expert discovery cut-off for these consolidated actions is November 4, 2022. *Id.*

7

## **COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT**

The parties conferred about this dispute by Zoom on September 23, 2021. Participants included: Stephen Swedlow, Michelle Schmit, and Shana Scarlett (interim counsel for the putative Consumer class); Yavar Bathaee, Brian Dunne, Andrew Williamson, Patrick McGahan, and Michael Srodoski (interim counsel for the putative Advertiser class); and Molly Jennings and Matthew Fischler (counsel for Facebook).

DATED:  October 4, 2021
By */s/  Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (*pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 205-7668

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 462-2772

By */s/  Kristen M. Anderson*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger ( Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv ( Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

Respectfully submitted,
By */s/  Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

By */s/  Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

9

| | |
|---|---|
| **LEVIN SEDRAN & BERMAN LLP**<br>Keith J. Verrier (*pro hac vice*)<br>  kverrier@lfsblaw.com<br>Austin B. Cohen (*pro hac vice*)<br>  acohen@lfsblaw.com<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>Telephone: (215) 592-1500<br><br>**AHDOOT & WOLFSON, PC**<br>Tina Wolfson (Bar No. 174806)<br>  twolfson@ahdootwolfson.com<br>Robert Ahdoot (CA 172098)<br>  rahdoot@ahdootwolfson.com<br>Theodore W. Maya (Bar No. 223242)<br>  tmaya@ahdootwolfson.com<br>Rachel Johnson (Bar No. 331351)<br>  rjohnson@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, CA 91505<br>Telephone: (310) 474-9111<br><br>*Interim Counsel for the Advertiser Class* | **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>W. Joseph Bruckner (*pro hac vice*)<br>  wjbruckner@locklaw.com<br>Robert K. Shelquist (*pro hac vice*)<br>  rkshelquist@locklaw.com<br>Brian D. Clark (*pro hac vice*)<br>  bdclark@locklaw.com<br>Rebecca A. Peterson (Bar No. 241858)<br>  rapeterson@locklaw.com<br>Arielle S. Wagner (*pro hac vice*)<br>  aswagner@locklaw.com<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br><br>*Interim Counsel for the Consumer Class*<br><br><br>By: */s/ Molly M. Jennings*<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>SONAL N. MEHTA (Bar No. 222086)<br>  Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000<br><br>DAVID Z. GRINGER (*pro hac vice*)<br>  David.Gringer@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone:  (212) 230-8800<br><br>ARI HOLTZBLATT (*pro hac vice*)<br>  Ari.Holtzblatt@wilmerhale.com<br>MOLLY M. JENNINGS (*pro hac vice*)<br>  Molly.Jennings@wilmerhale.com<br>1875 Pennsylvania Ave NW<br>Washington, DC 20006<br>Telephone:  (202) 663-6000<br><br>*Attorneys for Defendant Facebook, Inc.* |

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: October 4, 2021            By:   */s/ Stephen A. Swedlow*
                                        Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: October 4, 2021            By:   */s/ Stephen A. Swedlow*
                                        Stephen A. Swedlow