PAGES 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VIRGINIA K. DEMARCHI

MAXIMILLIAN KLEIN, ET AL.,          )
                                    )
              PLAINTIFFS,           )
                                    )
  VS.                               )  NO. 20-CV-08570 LHK
                                    )
FACEBOOK, INC.,                     )
                                    )  VIA ZOOM VIDEOCONFERENCE
              DEFENDANT.            )  TUESDAY, OCTOBER 6, 2021
                                    )
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  10:25 A.M. - 11:21 A.M.**

**APPEARANCES:**

**FOR CONSUMER**          **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
**PLAINTIFFS**            191 N. WACKER DRIVE, SUITE 2700
                          CHICAGO, ILLINOIS 60606
                    **BY:  STEPHEN A. SWEDLOW, ESQUIRE**


                          HAGENS BERMAN SOBOL SHAPIRO LLP
                          715 HEARST AVENUE, SUITE 202
                          BERKELEY, CALIFORNIA 94710
                    **BY:  SHANA E. SCARLETT, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*                 RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**


FOR ADVERTISER         **BATHAEE DUNNE LLP**
PLAINTIFFS              633 WEST FIFTH STREET, 26TH FLOOR
                      LOS ANGELES, CA 90071
          BY:  **BRIAN J. DUNNE, ESQUIRE**

                      **SCOTT & SCOTT, ATTORNEYS AT LAW, LLP**
                      156 SOUTH MAIN STREET, P.O. BOX 192
                      COLCHESTER, CT 06415
          BY:  **MICHAEL P. SRODOSKI, ESQUIRE**

FOR DEFENDANT           WILMER CUTLER PICKERING, HALE AND DORR
                      2600 EL CAMINO REAL, SUITE 400
                      PALO ALTO, CALIFORNIA 94306
          BY:  **SONAL N. MEHTA, ESQUIRE**

```
1   TUESDAY, OCTOBER 26, 2021                    10:25 A.M.
2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
5                          ---O0O---
6             ELECTRONICALLY RECORDED PROCEEDINGS
7             THE CLERK:  CALLING THE MATTER OF KLEIN VERSUS
8   FACEBOOK, CASE NO. 5-20-CV-8570.
9             THE COURT:  THANK YOU.
10            AND WHO APPEARS FOR THE CONSUMER PLAINTIFFS?
11            MR. SWEDLOW:  STEPHEN SWEDLOW OF QUINN EMANUEL.
12            MS. SCARLETT:  AND SHANNON SCARLETT FROM HAGENS
13   BERMAN, YOUR HONOR.
14            THE COURT:  AND WHO APPEARS FOR THE ADVERTISER
15   PLAINTIFFS?
16            MR. DUNNE:  BRIAN DUNNE OF BATHAEE DUNNE, LLP.
17            MR. SRODOSKI:  MICHAEL SRODOSKI, SCOTT & SCOTT.
18            THE COURT:  OKAY.  AND WHO APPEARS FOR DEFENDANT
19   FACEBOOK?
20            MS. MEHTA:  GOOD MORNING, YOUR HONOR.  SONAL MEHTA
21   FOR FACEBOOK.
22            THE COURT:  GOOD MORNING TO YOU ALL.
23            WE ARE HERE ON A DISCOVERY DISPUTE CONCERNING
24   PRIVILEGE AND, IN PARTICULAR, THE CLAWBACK NOTICES THAT
25   FACEBOOK ISSUED FOR CERTAIN DOCUMENTS.
```

1              I HAVE READ YOUR PAPERS, AND I UNDERSTAND THAT THE --

2    AS FRAMED BY THE PLAINTIFFS ANYWAY, THAT WHAT WE HAVE ARE 41

3    DOCUMENTS THAT ARE DISPUTED, AND THESE SHARE THE FEATURE THAT

4    THEY ARE EXCHANGES BETWEEN FACEBOOK AND PR CONSULTANTS THAT

5    WERE PRODUCED TO THE FTC IN PRIOR PROCEEDINGS.

6              DO I HAVE THAT CORRECT?

7              **MR. DUNNE:**  THAT'S THE --

8              (SIMULTANEOUS COLLOQUY.)

9              **THE COURT:**  OKAY.  ALL RIGHT.  SO LET ME ASK A COUPLE

10   OF QUESTIONS AT THE OUTSET.

11             I UNDERSTAND THAT ONE OF THE MATTERS IN DISPUTE IS

12   ABOUT WHETHER THE 502(D) ORDER THAT ULTIMATELY GOT ENTERED

13   AFTER WE HAD A COUPLE OF -- WE HAD A DISPUTE ABOUT THAT IN THE

14   FIRST INSTANCE.  BUT THE 502(D) ORDER PORTIONS OF THIS DISPUTE,

15   THE PLAINTIFFS ARE SAYING -- OR, RATHER, FACEBOOK IS SAYING

16   DON'T COMPLY WITH THE 502(D) ORDERS PROCESSES.  AND I JUST -- I

17   WANT TO UNDERSTAND THE PARTIES' POSITION ON THOSE MATTERS.

18             THERE ARE FOUR NOTICES, CLAWBACK NOTICES, AND AM I

19   CORRECT IN UNDERSTANDING THAT ALL PARTIES AGREE AT THE LEAST,

20   AT THE VERY LEAST, THE CHALLENGE THAT THE PLAINTIFFS MADE TO

21   FACEBOOK'S AUGUST 20TH CLAWBACK NOTICE IS TIMELY UNDER THE

22   502(D) ORDER?

23             I'M NOT SURE WHO'S GOING TO BE SPEAKING TO THAT ON

24   BEHALF OF THE PLAINTIFFS, IF YOU'RE EACH GOING TO ARGUE

25   SEPARATELY OR WHAT.  WHO'S SPEAKING?

1          **MR. DUNNE:**  I'M HAPPY TO HANDLE THIS COLLECTIVELY FOR

2    THE PLAINTIFFS, YOUR HONOR.

3          **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU, MR. DUNNE.

4          SO I TAKE IT THAT THE PLAINTIFFS THINK THAT ALL OF

5    THE NOTICES ARE TIMELY; IS THAT CORRECT?

6          **MR. DUNNE:**  NO.  SO I WANT TO BE REALLY CLEAR HERE,

7    YOUR HONOR.  WE DISAGGREGATED THIS IN OUR LETTER BRIEF AS WELL.

8    HERE'S THE ISSUE, OKAY.

9          THERE'S A RECURRING ISSUE WHICH HAS NOW RECURRED FOUR

10   TIMES, WHICH IS THAT PLAINTIFF -- OR EXCUSE ME -- FACEBOOK HAS

11   SENT US CLAWBACK NOTICES AND CLAWBACK PRODUCTIONS WITH

12   PRIVILEGE LOGS THAT -- ARE ON THEIR FACE SAY FTC CID.

13         THAT OCCURRED FOR THE FIRST TIME IN JUNE.  OCCURRED

14   FOR THE SECOND TIME ON JULY 13TH, AND WE TIMELY, UNDER THE

15   502(D) ORDER, SENT THEM A LETTER SAYING, HOLD ON, THESE SAY FTC

16   CID ON THEM, INFORMATION PRODUCED TO A GOVERNMENT AGENCY IS --

17   PRIVILEGE IS WAIVED UNDER THE NINTH CIRCUIT'S GOVERNING

18   STANDARDS, WHICH HAS EIGHT PRONGS, AS I'M SURE YOU ARE AWARE.

19         (SIMULTANEOUS COLLOQUY.)

20         **THE COURT:**  YEAH, YEAH.  WHEN DID YOU SEND THOSE --

21         **MR. DUNNE:**  JULY 29TH WAS OUR FIRST LETTER FOR THE

22   JULY 13TH.

23         THEN WE RECEIVED CLAWBACK NOTICES ON AUGUST 17TH AND

24   AUGUST 20TH, TO WHICH I SENT BACK A LETTER ON SEPTEMBER 7TH,

25   WHICH IS 14 BUSINESS DAYS AFTER THE AUGUST 17TH CLAWBACK

```
 1   NOTICE.  AND OUR POSITION IS, LOOK, FOR THE RECURRING ISSUE, WE
 2   JUST NEED FROM -- THE RECURRING ISSUE, MEANING THE THING THAT
 3   SWEEPS BACK TO JUNE AND JULY, WE'RE JUST ASKING FOR A
 4   DETERMINATION ON WAIVER.
 5             THE COURT:  OKAY.
 6             MR. DUNNE:  THAT'S WHAT WE'RE ASKING FOR.
 7             THE COURT:  BEFORE WE GET TO THE MERITS, I'M
 8   REALLY -- I'M REALLY HAVING SOME TROUBLE FIGURING OUT WHERE ALL
 9   THAT IS SAID IN YOUR PAPERS.  WHERE DO YOU TELL ME -- FACEBOOK
10   RAISES THE ISSUE THAT, I GUESS, WITH EXCEPT FOR THE AUGUST 20TH
11   NOTICE, ALL OF YOUR CHALLENGES WERE UNTIMELY.  SO WHERE DO I
12   FIND IT IN THE SUBMISSION THAT THOSE CHALLENGES WERE TIMELY?
13   CAN YOU JUST TELL ME WHERE IT IS?
14             MR. DUNNE:  YES, YOUR HONOR.  OKAY.  SO IN
15   FOOTNOTE 1.
16             THE COURT:  YEP.
17             MR. DUNNE:  WE DISCUSS THAT.
18             THE COURT:  OKAY.  NO, BUT IT SAYS THEY'RE ALL TIMELY
19   BECAUSE THEY'RE ALL RELATED.
20             MR. DUNNE:  RIGHT.  SO HOLD ON.  IT'S THE ACTUAL
21   FRAMING OF THE POSITION.  AND IF YOU LOOK AT THE REQUESTED
22   RESOLUTION --
23             THE COURT:  YES.
24             MR. DUNNE:  -- YOUR HONOR.
25             THE COURT:  YEAH.
```

```
 1           MR. DUNNE:  IT SAYS:

 2                    "PLAINTIFFS REQUEST THAT THE COURT

 3           ORDER THAT THE DOCUMENTS IN VOLUME 3 AND 4 BE

 4           PRODUCED UNREDACTED TO PLAINTIFFS BECAUSE

 5           THEY'RE NOT PRIVILEGED ON THEIR FACE."

 6           THOSE ARE THE -- THOSE ARE THE -- THOSE ARE THE

 7    SPECIFIC VOLUMES THAT I'M NOT EVEN CLEAR AS TO WHY FACEBOOK

 8    COULD SAY THAT WE WERE NOT TIMELY FOR THE AUGUST 17TH CLAWBACK

 9    BECAUSE MY LETTER IS DATED SEPTEMBER 7TH, WHICH IS 14 BUSINESS

10    DAYS.

11           THE COURT:  OKAY.  THEY SAY IT'S DATED SEPTEMBER

12    10TH.  AND YOUR FOOTNOTE 1 SAYS:

13                    "FACEBOOK CONCEDES PLAINTIFFS'

14           SEPTEMBER 10TH CHALLENGE TO THE AUGUST 20TH

15           CLAWBACK IS TIMELY."

16           SO WHY ARE WE REFERRING TO SEPTEMBER 7TH?

17           MR. DUNNE:  MY APOLOGIES I MUST HAVE BEEN

18    (INDISCERNIBLE).

19           THE COURT:  OKAY.  ALL RIGHT.  I AM DEALING WITH THE

20    TIMELINESS ISSUE FIRST.  I DON'T WANT TO HEAR ABOUT THE MERITS

21    YET.  I JUST WANT TO UNDERSTAND WHAT THE TIMING ISSUE IS FIRST.

22           LET ME HEAR FROM FACEBOOK.  WHAT -- IS FACEBOOK'S

23    (INDISCERNIBLE) THAT WITH RESPECT TO ALL OF THE AUGUST 20TH

24    LETTER, THAT THE CHALLENGE TO THAT LETTER, THE CHALLENGES TO

25    THOSE PRIOR LETTERS WERE UNTIMELY?
```

1          **MS. MEHTA:**  YES, YOUR HONOR, EXCEPT THAT WITH RESPECT

2     TO THE AUGUST 20TH LETTER, THERE'S A SEPARATE BASIS FOR AN

3     OBJECTION ON TIMELINESS GROUNDS.

4          **THE COURT:**  AND THAT'S ABOUT THE MEET AND CONFER?

5          **MS. MEHTA:**  THAT'S RIGHT, YOUR HONOR.

6          **THE COURT:**  OKAY.  ALL RIGHT.  OKAY.

7          SO FACEBOOK HAS PUT THE STAKE IN THE GROUND AND SAID

8     ALL YOUR CHALLENGES ARE UNTIMELY IN TERMS OF THE ACTUAL

9     CHALLENGE PART, SETTING ASIDE THE MEET AND CONFER.  HOW DO I

10    DETERMINE WHETHER THEY'RE RIGHT OR NOT ABOUT LETTERS DATED

11    JUNE 2ND, JULY 13TH, AND AUGUST 17TH?  THOSE ARE THE CLAWBACK

12    NOTICES.

13         **MR. DUNNE:**  SO, YOUR HONOR, WE -- WE -- YOU KNOW, IN

14    COMPLIANCE WITH YOUR PROCEDURES, WE DIDN'T WANT TO SUBMIT THOSE

15    LETTERS AS EXHIBITS, BUT THE LETTERS REQUEST INFORMATION FROM

16    FACEBOOK TO EVALUATE THEIR CLAIMS OF PRIVILEGE.  THAT'S WHY --

17    AND I APOLOGIZE, I WASN'T TRYING TO JUMP TO THE MERITS, YOUR

18    HONOR.

19         THE REALITY IS THAT FACEBOOK IS THE PROPONENT OF

20    PRIVILEGE AND HAS TO ESTABLISH IT NOW.  OBVIOUSLY, YOU'RE

21    PLAINLY CORRECT.  WE HAVE TO COMPLY WITH THE COURT'S ORDERS AS

22    TO THE TIMELINESS OF THE DETERMINATION BECAUSE WE'RE ASKING

23    YOUR HONOR FOR A DETERMINATION, RIGHT, AS TO WHETHER FACEBOOK

24    HAS PROPERLY ESTABLISHED PRIVILEGE HERE.

25         AND THE ISSUE IS, WE ASKED, AMONG OTHER THINGS,

1    RIGHT, IN THE TIMELY RESPONSE TO THE JULY LETTER, WE SAID THESE

2    LOOK LIKE THEY'VE BEEN PRODUCED TO GOVERNMENT AGENCIES; CAN YOU

3    EXPLAIN TO US HAVE THEY DONE SO, AND WHAT ARE THE

4    CIRCUMSTANCES?

5            AND FACEBOOK'S RESPONSE WAS:  YES, THEY'VE BEEN

6    PRODUCED TO PRIOR AGENCIES, RIGHT, IF SO THE PRODUCTION WAS

7    INADVERTENT.

8            WITHIN LESS THAN 14 BASE DAYS AFTER THAT JULY --

9    JULY 29TH LETTER FROM ME, FACEBOOK CLAWED BACK MORE -- OR SAID

10   ANOTHER THING SAYING THEY WERE GOING TO CLAW BACK MORE

11   DOCUMENTS.

12           NOW, THAT PRESENTED A RECURRING ISSUE, WHICH IS THE

13   ISSUE THAT WE'RE PRESENTING TO YOU TODAY, YOUR HONOR, WHICH

14   IS -- AND BY THE WAY, THEY DID IT AGAIN TEN DAYS AGO.  DURING

15   PENDENCY OF THE PROCEEDINGS THEY TRIED TO CLAW BACK MORE FTC

16   DOCUMENTS.  RIGHT?  WE ASKED THEM, AMONG OTHER THINGS, FOR

17   THEIR CLAIM AS TO WHY THINGS WERE INADVERTENT, AND THEIR

18   RESPONSE WAS:  IT'S INADVERTENT.

19           **THE COURT:**  OKAY.

20           **MR. DUNNE:**  SO THERE IS THIS -- THERE IS THIS

21   DIFFICULT -- I GUESS -- I DON'T KNOW IF I'D CALL IT A FULL

22   CATCH-22, BUT WHICH IS THAT, LOOK, WE'RE TRYING TO GET

23   INFORMATION FROM FACEBOOK TO EVALUATE THEIR CLAIM OF PRIVILEGE.

24           AND, BY THE WAY, THEIR CLAWBACK LOGS SAY NOTHING

25   ABOUT PAST PRODUCTION.  THEY DON'T SAY THE CIRCUMSTANCES OF IT.

1   THEY DON'T SAY THIS WAS PREVIOUSLY PRODUCED TO X, Y, AND Z ON

2   ONE, TWO, AND THREE DATES.  RIGHT?  SO THAT'S THE SORT OF THING

3   WE NEED FROM THEIR LETTERS.  THEY DON'T GET BACK TO US EITHER.

4          **THE COURT:**  THIS IS ALREADY GOING OFF THE RAILS, THIS

5   WHOLE PROCESS.

6          ALL RIGHT.  THIS IS WHAT I THOUGHT WE WERE DOING,

7   OKAY, WHEN WE HAD THIS DISPUTE AND IT GOT RESOLVED, AND YOU HAD

8   YOUR COMPETING PROPOSALS, AND WE HAD THE ORDER THAT I

9   ULTIMATELY ENTERED.

10         THE 502(D) ORDER REQUIRES THE CHALLENGING PARTY,

11  WHICH IN THIS CASE IS THE PLAINTIFFS, TO NOTIFY THE PRODUCING

12  PARTY -- HERE THE PLAINTIFF -- OF ANY CHALLENGE TO A CLAIM OF

13  PRIVILEGE IF IT GETS A CLAWBACK NOTICE.  WHEN PLAINTIFFS GET A

14  CLAWBACK NOTICE, YOU'RE SUPPOSED TO NOTIFY THEM OF THE

15  CHALLENGE, AND YOU'RE SUPPOSED TO DO THAT WITHIN 14 BUSINESS

16  DAYS.

17         AND SO THE CLAWBACK NOTICE ITSELF DOES NOT REQUIRE AN

18  EVIDENTIARY SHOWING.  THE CLAWBACK NOTICE SAYS -- IS SUPPOSED

19  TO INCLUDE AT LEAST -- HOW DO I PUT IT?  IT'S AT LEAST THE

20  INFORMATION THAT IS REQUIRED IN RULE 26(B)(5)(A)(2).

21              "DESCRIBE THE NATURE OF THE

22              DOCUMENTS, COMMUNICATIONS, OR TANGIBLE THINGS

23              NOT PRODUCED AND DISCLOSED AND DO SO IN A

24              MANNER THAT, WITHOUT REVEALING INFORMATION

25              ITSELF, IS PRIVILEGED OR PROTECTED AND WILL

1          ENABLE OTHER PARTIES TO ASSESS THE CLAIM."

2          SO THERE IS A LINE BETWEEN THAT KIND OF PRIVILEGE

3     LOG-LIKE DISCLOSURE, AND HERE'S THE EVIDENTIARY SUPPORT THAT'S

4     GOING TO ALLOW ME TO PROVE MY CLAIM OR THAT IT'S NOT PRIVILEGED

5     ON A MOTION BEFORE THE COURT.  AND IT SEEMS TO ME LIKE THIS IS

6     WHERE THE THING HAS BROKEN DOWN, BECAUSE THE PLAINTIFFS ARE

7     SAYING, WELL, WE CAN'T DECIDE BASED ON THE INFORMATION THAT HAS

8     BEEN SHARED IN THE CLAWBACK NOTICE.

9          FRANKLY, MY THOUGHT WAS THAT THE WHOLE MEET AND

10    CONFER PROCESS THAT HAPPENS AFTER THE EXCHANGE OF CLAWBACK

11    NOTICE AND CHALLENGE IS WHERE YOU ALL WOULD DUKE THIS OUT.

12         NOW, IT DOESN'T ACTUALLY SAY THAT EXPLICITLY IN THE

13    502(D) ORDER, BUT -- IF -- IF THE WHOLE PROCESS BREAKS DOWN

14    BECAUSE ONE PARTY CAN PERPETUALLY SAY, I DON'T HAVE ENOUGH

15    INFORMATION, IT'S JUST NOT GOING TO WORK GOING FORWARD, AND IT

16    JUST CAN'T WORK.

17         SO, YOU KNOW, I CAME TO THIS HEARING THINKING, OKAY,

18    I'M ONLY GOING TO DEAL WITH SOMETHING THAT'S TIMELY, IF IT'S

19    NOT TIMELY, I'M NOT GOING TO TALK ABOUT IT, BECAUSE THE WHOLE

20    THING WILL BREAK DOWN IF PEOPLE ARE NOT COMPLYING WITH THE

21    DEADLINES THAT YOU ALL AGREED ON.  THIS WAS NOT A DISPUTED

22    ISSUE.  THE ONLY THING THAT WAS DISPUTED WAS WHETHER, IF YOU

23    GOT TOO MANY CLAWBACK NOTICES IN TOO SHORT A PERIOD, COULD YOU

24    GET ADDITIONAL TIME TO MAKE YOUR CHALLENGES.

25         SO NOW I FEEL LIKE THE WHOLE PROCESS HAS KIND OF

1    FALLEN APART.  LET ME JUST PUT THAT OBSERVATION TO THE SIDE AND

2    ADDRESS WHAT I THINK IS UNDERLYING SORT OF THE PLAINTIFF'S KIND

3    OF PREMISE AND WHY YOU KEEP CHARACTERIZING IT AS A RECURRING

4    ISSUE, WHICH I DO THINK IS KIND OF A MERITS-TYPE QUESTION.

5         SO THE 502(D) ORDER BY ITS TERMS GOVERNS THE

6    DOCUMENTS THAT ARE PRODUCED IN THIS LITIGATION, WHETHER THEY'VE

7    BEEN PRODUCED BEFORE OR IN SOME OTHER PROCEEDING, WHATEVER.  IF

8    THEY'RE PRODUCED IN THIS LITIGATION, THE 502(D) ORDER GOVERNS

9    THEM.  IT DOESN'T IMMUNIZE DOCUMENTS THAT ARE PRODUCED IN OTHER

10   PROCEEDINGS OR THE CIRCUMSTANCES THAT MIGHT HAVE RESULTED IN A

11   WAIVER BEFORE THIS LITIGATION, BUT IT ALSO DOESN'T ELIMINATE

12   WHATEVER CONDITIONS OR CIRCUMSTANCES MIGHT HAVE IMPACTED THE

13   QUESTION OF WHETHER THERE'S PRIVILEGE OR WAIVER OF PRIVILEGE IN

14   THAT PRIOR PRODUCTION.

15        SO, TO BE CLEAR, THE 502(D) ORDER, AT LEAST IN MY

16   VIEW, DOESN'T MAKE DOCUMENTS PRODUCED IN PRIOR PROCEEDINGS

17   PRIVILEGED WHERE THEY OTHERWISE WOULDN'T BE, BUT IT ALSO

18   DOESN'T DO THE OPPOSITE.  SO WHAT IT DOES IS IT SETS DEADLINES

19   FOR BRINGING THOSE DISPUTES TO THE COURT.  SO THE FACT THAT

20   SOMETHING SAYS ON IT FTC CID, NEITHER HERE NOR THERE FOR

21   PURPOSES OF THIS MATTER.

22        THE CIRCUMSTANCES IN WHICH FACEBOOK MAY HAVE PRODUCED

23   DOCUMENTS IN SOME PRIOR PROCEEDING TO THE FTC OR SOMEBODY ELSE

24   MAY VERY WELL IMPACT ON THE MERITS, WHETHER THERE HAS BEEN A

25   WAIVER OF PRIVILEGE OR NOT, BUT THAT SHOULDN'T IMPACT WHAT YOU

1    ALL ARE DOING, WHICH IS CLAWBACK NOTICE, CHALLENGE, MEET AND

2    CONFER, SUBMIT THE DISPUTE TO THE COURT IF YOU CAN'T RESOLVE

3    IT.  AND THAT'S SUPPOSED TO HAPPEN ON A PRETTY SORT OF TIGHT

4    TIME FRAME, UNLESS YOU ALL AGREE OTHERWISE, RIGHT?

5         SO I -- IT'S NOT A GOOD SIGN THAT ON YOUR VERY FIRST

6    FORAY ON THIS ISSUE, IT SEEMS LIKE IT'S COMPLETELY BROKEN DOWN,

7    AND I'D LIKE TO UNDERSTAND WHY.

8         AND I DON'T KNOW IF WE CAN -- WE CAN DISCUSS THIS

9    WITHOUT DISCUSSING THE MERITS OF THIS PARTICULAR DISPUTE, BUT

10   LET ME JUST MAKE AN OBSERVATION.  AND I DON'T MEAN THIS TO BE A

11   SIGNAL OF MY THOUGHTS ON THE MERITS, BUT IF, AS THE PLAINTIFFS

12   SAY, IT WAS, LIKE, EVIDENT ON THE FACE OF THE DOCUMENT THAT IT

13   WASN'T PRIVILEGED OR THERE HAD BEEN A WAIVER BECAUSE OF THIS

14   THIRD PARTY PR CONSULTANT, YOU DON'T NEED A BUNCH OF

15   INFORMATION TO MAKE THAT CHALLENGE.  SO IF I TAKE YOU AT YOUR

16   WORD THAT THESE ARE SORT OF SELF-EVIDENTLY NOT PRIVILEGED

17   DOCUMENTS, JUST PUT THAT IN A LETTER, "I CHALLENGE THIS, THE

18   PRIVILEGE HAS BEEN WAIVED."

19        I DON'T KNOW WHY THAT COULDN'T HAVE HAPPENED.  SORRY.

20   AGAIN, I DON'T MEAN THAT TO BE MY DECISION ON THE MERITS.  I

21   JUST -- IT DOESN'T -- I DON'T UNDERSTAND WHY THE PROCESS THAT'S

22   IN THE 502(D) ORDER IS NOT WORKING.

23        MR. DUNNE.

24        **MR. DUNNE:**  SO, YOUR HONOR, AGAIN, IT'S -- THE JULY

25   AND THE JUNE THINGS ARE BY WAY OF -- BY WAY OF EXAMPLE.  WE

1    DIDN'T PRESENT THEM TO YOU.  WE DIDN'T ASK THEY BE SUBMITTED IN

2    CAMERA BECAUSE I GET IT, YOUR HONOR, RIGHT?  THIS STUFF NEEDS

3    TO BE STUFF THAT'S GOING ON NOW.  BUT THIS IS STUFF THAT WE

4    REALIZED HAS BEEN RECURRING.  THAT'S ALL.

5              NOW THE ISSUE THAT YOU'VE RAISED, RIGHT, WITH RESPECT

6    TO THE THIRD-PARTY CONSULTANT, IN THEIR PRIVILEGE LOGS THAT

7    WOMAN IS NOT LABELED AS A THIRD-PARTY CONSULTANT.  HER EMAIL IS

8    NOT IN THEIR CLAWBACK LOGS.

9              WE HAD TO GO PULL ALL OF THE THINGS.  FIRST WE HAD TO

10   DESTROY THE OLD ONES, AND THEN WE HAD TO OVERLAY THE NEW

11   PRODUCTION.  AND THEN WHEN WE LOOKED AT THEM, WE FOUND OUT THIS

12   (INDISCERNIBLE) AGENCY (INDISCERNIBLE).  AND SO, LOOK, I GET

13   THAT THAT IS -- YOUR QUESTION IS WHY COULDN'T WE HAVE DONE THAT

14   SOONER.

15             **THE COURT:**  NO, NO, NO.  LET ME JUST UNDERSTAND WHAT

16   YOU'RE SAYING.

17             SO WHEN YOU FIRST GOT THE CLAWBACK NOTICE AND YOU HAD

18   THE PRIVILEGE LOG, AND YOU HAD DOCUMENTS, OBVIOUSLY, YOU

19   COULDN'T TELL WITHOUT MORE INFORMATION FROM FACEBOOK THAT THIS

20   PR CONSULTANT WAS NOT A FACEBOOK EMPLOYEE AND WAS NOT A LAWYER?

21             **MR. DUNNE:**  SO, YOUR HONOR, WE ACTUALLY -- NO, NO,

22   THAT -- SO, AGAIN, THIS IS MAYBE AN INFORMATION PASSAGE OR

23   WHATEVER IN THE SENSE OF, LOOK, WE NEVER CONTENDED THAT WE NEED

24   MORE INFORMATION ABOUT THE THIRD-PARTY CONSULTANT PER SE TO,

25   RIGHT, WHETHER OR NOT SHE'S A THIRD-PARTY CONSULTANT.

1          THE ISSUE WAS WE WERE TRYING TO FRONTALLY RAISE THIS

2     ISSUE, WHICH HAD RECURRED FOUR TIMES THEN, OF THE WAIVER, WHICH

3     IS WHAT WE WERE ASKING QUESTIONS ABOUT IN OUR CORRESPONDENCE.

4          THEN THERE'S A SEPARATE ISSUE THAT THERE'S A

5     THIRD-PARTY CONSULTANT ON IT, WHICH FACEBOOK HAS NOW RAISED IN

6     THEIR LETTER BRIEF SAYING LOOK, RIGHT, IF THAT'S A -- IF THAT'S

7     AN APPARENT EMPLOYEE, THEN MAYBE THAT PERSON IS WITHIN THE

8     PRIVILEGE.  RIGHT?

9          IT'S OUR RESPONSE ON THE FACE, RIGHT, THESE ARE

10    NON-PRIVILEGED BECAUSE OF THE PRESENCE OF REBECCA HAHN OF THE

11    OUTCAST AGENCY, BUT WE ALSO SUBMITTED TO YOUR HONOR THE NOW

12    RECURRING ISSUE OF THE --

13         **THE COURT:**  OKAY.  LET ME JUST ASK THIS VERY

14    STRAIGHTFORWARD QUESTION, BECAUSE MAYBE I'M JUST

15    MISUNDERSTANDING YOUR JOINT SUBMISSION.

16         THE 41 DOCUMENTS, UNDER WHICH NOTICE FROM FACEBOOK

17    WERE THOSE CLAWED BACK?

18         **MR. DUNNE:**  AUGUST -- SO THEY ARE SPLIT BETWEEN

19    AUGUST 17TH AND AUGUST 20TH.

20         **THE COURT:**  OKAY.  SO THAT WASN'T CLEAR TO ME.  ALL

21    RIGHT.

22         AND THE AUGUST 17TH CLAWBACK NOTICE, IF YOU HAD 14

23    DAYS, THAT WOULD HAVE BEEN DUE SEPTEMBER 7TH, THAT LETTER,

24    BECAUSE THE 6TH IS A HOLIDAY.  SO SEPTEMBER 10TH IS THE DAY OF

25    THE LETTER.  THAT'S 14 DAYS FROM AUGUST 20TH.  SO HOW MANY OF

1    THESE DOCUMENTS ARE IN THE AUGUST 20TH CLAWBACK NOTICE?

2            **MR. DUNNE:**  I CAN CHECK THAT.  OKAY.  HERE WE GO.

3    CLAWBACK VOLUME 4 HAS ONE, TWO, THREE -- HAS 12.

4            **THE COURT:**  OKAY.  SO THESE 12 DOCUMENTS, THOSE WERE

5    PRODUCED BY FACEBOOK IN THIS ACTION, RIGHT?  THAT'S HOW YOU GOT

6    THEM?

7            **MR. DUNNE:**  YES.

8            **THE COURT:**  OKAY.  SO THOSE FALL UNDER THE ORDER.

9            AND IT SEEMS TO ME THAT THE CLAWBACK NOTICE NEEDED TO

10   GIVE INFORMATION ABOUT WHY THE PRIVILEGE WAS CLAIMED.  SO IT

11   NEEDED TO IDENTIFY WHAT THE PRIVILEGE WAS, WHO THE -- YOU KNOW,

12   THE AUTHOR AND RECIPIENTS WERE.  DID IT DO THAT, OR DID THE

13   PRIVILEGE LOG OTHERWISE DO THAT?

14           **MR. DUNNE:**  IT -- IT LISTED -- YEAH, IT LISTED

15   RECIPIENTS AND --

16           **THE COURT:**  OKAY.  AND IT INDICATED WHO WAS A LAWYER

17   AND WHO WAS NOT A LAWYER?

18           **MR. DUNNE:**  THERE WAS A -- THERE WAS AN ASTERISK THAT

19   SAYS LAWYER, NOT LAWYER, YES.

20           **THE COURT:**  OKAY.

21           **MR. DUNNE:**  IT SAYS FOR REBECCA HAHN, REBECCA HAHN.

22   IT DOESN'T SAY THE OUTCAST AGENCY.

23           **THE COURT:**  BUT THAT PERSON WAS INDICATED AS A

24   NONLAWYER?

25           **MR. DUNNE:**  YES.

 1                **THE COURT:**  OKAY.  WAS THE PERSON INDICATED AS A

 2     FACEBOOK OR A NOT FACEBOOK EMPLOYEE?

 3                **MR. DUNNE:**  NO.

 4                (SIMULTANEOUS COLLOQUY.)

 5                **MR. DUNNE:**  NO INFORMATION.

 6                **THE COURT:**  NO EMAIL.

 7                OKAY.  ALL RIGHT.  THEN YOU HAD THE DOCUMENTS BECAUSE

 8     THEY WERE BEING CLAWED BACK, SO YOU COULD SEE THEM.  AND WHEN

 9     YOU LOOKED AT THEM, YOU SAW THEY SAID WHAT?  "FTC CID" ON THEM.

10                **MR. DUNNE:**  YES.

11                **THE COURT:**  THAT WAS YOUR INITIAL BASIS FOR

12     CHALLENGING?

13                **MR. DUNNE:**  YES.

14                **THE COURT:**  AND DID YOUR SEPTEMBER 10TH NOTICE SAY WE

15     CHALLENGE THESE BECAUSE THEY'VE ALREADY BEEN PRODUCED TO THE

16     FTC, OR DID IT JUST SAY, WE CHALLENGE THESE?

17                **MR. DUNNE:**  YES, IT SAID, WE CHALLENGE THESE

18     BECAUSE -- BECAUSE THEY WERE PREVIOUSLY PRODUCED TO THE FTC.

19     THE ACTUAL LETTER SAID -- I DON'T NEED TO READ, BUT I SAID:

20                         "I WRITE IN RESPONSE TO YOUR

21                    CORRESPONDENCE DATED AUGUST 20TH,

22                    AUGUST 17TH, JULY 13TH, AND JUNE 2ND."

23                    AND THEN I SAY:

24                         "IN THESE LETTERS FACEBOOK

25                    PURPORTED THE CLAWBACK INFORMATION THAT

1              FACEBOOK PREVIOUSLY PRODUCED TO THE FEDERAL

2              TRADE COMMISSION AND PERHAPS OTHER GOVERNMENT

3              AGENCY PURSUANT TO A CIVIL INVESTIGATIVE

4              DEMAND."

5          **THE COURT:**  OKAY.

6          **MR. DUNNE:**  "BASED ON -- " I CAN GO ON.

7          **THE COURT:**  NO, THAT'S FINE.  OKAY.

8              SO YOU MADE THE CHALLENGE.  THEN WHAT HAPPENED AFTER

9    THAT?

10         **MR. DUNNE:**  THEY SENT BACK A LETTER THAT HAD SAID THE

11   SAME THING ALMOST WORD FOR WORD THAT THEY SAID A MONTH BEFORE,

12   WHICH WAS -- I HAVE THE ACTUAL WORDING, WHICH IS THAT FACEBOOK

13   INADVERTENTLY PRODUCED THESE IN A GOVERNMENT PROCEEDING.

14         **THE COURT:**  OKAY.  AND YOU GOT THAT LETTER WHEN?

15         **MR. DUNNE:**  THEIR EMAIL IN RESPONSE TO

16   SEPTEMBER 10TH -- LET ME DOUBLECHECK -- WAS MAYBE THE 14TH --

17         **THE COURT:**  OKAY.  THEN WHAT HAPPENED AFTER THAT?

18   DID THE PARTIES CONFER?

19         **MR. DUNNE:**  WE HAD AN EXCHANGE OF E-MAILS ABOUT WHEN

20   WE COULD MEET AND CONFER, AND WE ULTIMATELY MET AND CONFERRED

21   ON OCTOBER 6TH, 2021.

22         **THE COURT:**  OKAY.  NOW FACEBOOK SAYS I SHOULD

23   CONSIDER THIS WHOLE -- THIS AUGUST 20TH DISPUTE UNTIMELY

24   SUBMITTED BECAUSE YOU DIDN'T -- YOU DIDN'T RESPOND TO THEIR

25   OVERTURE ABOUT MEETING AND CONFERRING.  THEY SPECIFICALLY SAY

1    YOU DELAYED BY FAILING TO MEET AND CONFER WITHIN 14 BUSINESS

2    DAYS THAT THE 502(D) PRESCRIBES AFTER THE SEPTEMBER 10TH

3    CHALLENGE.  AND THERE'S NOT A RESPONSE IN YOUR SUBMISSION TO

4    THAT.

5           **MR. DUNNE:**  THAT'S BECAUSE WE -- WE GAVE -- WE

6    PROVIDED AN OPPORTUNITY -- PROVIDED A DATE FOR MEET AND CONFER

7    AND ASKED ABOUT THEIR AVAILABILITY AND ASKED ABOUT THEIR

8    AVAILABILITY BEFORE 14 DAYS WERE UP.  THEY HAD ISSUES WITH

9    AVAILABLE, AS DID WE, BUT WE DID NOT SAY, NO, WE CAN'T MEET AND

10   CONFER WITHIN 14 DAYS.

11          **THE COURT:**  OKAY.  ALL RIGHT.  I JUST WANTED TO

12   UNDERSTAND KIND OF HOW THINGS HAVE BEEN GOING WITH THIS

13   PROCESS, AND I HAVEN'T GIVEN FACEBOOK AN OPPORTUNITY TO TELL ME

14   ITS VIEW.

15       BUT AT THIS POINT, I AM INCLINED TO DEAL ONLY WITH

16   THE SET OF DOCUMENTS THAT HAD A CLAWBACK NOTICE THAT WAS

17   SUFFICIENT AND A CHALLENGE THAT WAS TIMELY AND NOT DEAL WITH

18   ANYTHING ELSE, EVEN IF THEY'RE THE SAME ISSUE.  I FEEL LIKE

19   THAT'S NOT APPROPRIATE.

20       SO LET ME JUST HEAR FROM FACEBOOK ON THE PROCESS.

21   AND, YOU KNOW WHAT, YOU NOTE THAT DESPITE THE ALLEGED

22   UNTIMELINESS OF THE MEET AND CONFER, THAT FACEBOOK,

23   NEVERTHELESS, AGREED TO MEET AND DID SO.  SO GOOD.  THAT'S WHAT

24   I WOULD EXPECT FROM COUNSEL TO DO, BUT IT'S NOT A BASIS FOR

25   THEM SAYING I SHOULDN'T RESOLVE THIS DISPUTE.

1          LET ME HEAR ABOUT THE PROCESS.  HOW'S THE PROCESS

2   BEEN WORKING ON THIS PARTICULAR MATTER OR GENERICALLY?

3          **MS. MEHTA:**  THANK YOU, YOUR HONOR.

4          SO I, UNFORTUNATELY, SHARE YOUR OBSERVATION THAT THE

5   PROCESS IS BROKEN.  OUR UNDERSTANDING OF THE PROCESS IS EXACTLY

6   WHAT YOUR HONOR ARTICULATED AND WHAT IS LAID OUT IN THE 502(D)

7   AND WE WOULD EXPECT THE PROCESS TO PROCEED ACCORDING TO THE

8   502(D).

9          IF WE FIND DOCUMENTS THAT NEED TO BE CLAWED BACK, WE

10  SEARCH NOTICE, WE EXPLAIN THE BASIS FOR THE PRIVILEGE CALL.  IF

11  THEY WANT TO MAKE A CHALLENGE, THEY MAKE A TIMELY CHALLENGE,

12  THEN THEY MAKE A REQUEST FOR MEET AND CONFER.  WE MEET AND

13  CONFER, AND IF THERE IS A SUBSTANTIVE ISSUE AFTER THE PARTIES

14  HAVE SUBSTANTIVELY MET AND CONFERRED AS TO THE BASIS FOR THE

15  PRIVILEGE CALL, WE WOULD PRESENT THAT ISSUE TO YOUR HONOR.

16         UNFORTUNATELY, THAT PROCESS DOESN'T SEEM TO BE THE

17  PROCESS THAT PLAINTIFFS UNDERSTOOD FROM THE 502(D) ORDER OR

18  THAT THEY WANTED TO FOLLOW IN THIS PARTICULAR CASE.

19         I WON'T GET INTO ALL OF THE TIMELINE AND THE BACK AND

20  FORTH WITH RESPECT TO THE EARLIER CHALLENGES.  I WILL FOCUS FOR

21  EFFICIENCY ON THE AUGUST 20TH CHALLENGE, BECAUSE I UNDERSTAND

22  THAT'S THE ONE YOUR HONOR IS CONSIDERING POTENTIALLY FINDING TO

23  BE TIMELY.

24         AND WITH RESPECT TO THE AUGUST 20TH CHALLENGE, I JUST

25  WANT TO CORRECT A COUPLE OF THINGS WITH RESPECT TO TIMELINE ON

1    THE MEET AND CONFER, WHICH I DO THINK ARE IMPORTANT IN TERMS OF

2    THE TIMELINESS OF THAT CHALLENGE.

3            THAT CHALLENGE WAS MADE ON SEPTEMBER 10TH.  WE AGREE

4    THAT THAT WAS WITHIN THE REQUIRED 14 BUSINESS DAYS.  HOWEVER,

5    PLAINTIFFS DID NOT REACH OUT TO US TO REQUEST A MEET AND CONFER

6    UNTIL SEPTEMBER 30TH.  AND IN THAT OUTREACH, THEY DID NOT

7    PROPOSE A MEET AND CONFER UNTIL OCTOBER 4TH.  SO THEIR PROPOSAL

8    WAS -- ON SEPTEMBER 30TH WAS, LET'S MEET ON OCTOBER 4TH, WHICH

9    WOULD BE OUTSIDE OF THE 14-DAY WINDOW BASED ON THEIR SCHEDULING

10   PROPOSAL.

11           WE THEN AGREED -- WE HAD A CONFLICT ON OCTOBER 4TH,

12   SO WE AGREED TO MEET AND CONFER WITH THEM ON OCTOBER 6TH.  SO

13   THAT MEET AND CONFER PROCESS, FROM OUR PERSPECTIVE, IS

14   UNTIMELY.

15           THEN -- AND I DON'T WANT TO GET INTO THE MERITS, BUT

16   THERE IS THE SEPARATE QUESTION OF ONCE WE MEET AND CONFER, WHAT

17   IS THE MEET AND CONFER ABOUT.  AND I THINK THIS IS ANOTHER

18   PLACE WHERE THE PROCESS HAS FUNDAMENTALLY BROKEN DOWN.

19           IF WE ARE GOING TO BE ABLE TO WORK TOGETHER TO TRY TO

20   ADDRESS THESE CLAWBACK DISPUTES OR OTHER DISPUTES THAT COME UP

21   IN DISCOVERY AND PRESENT JOINT ISSUES TO YOUR HONOR, THERE

22   NEEDS TO BE A MEET AND CONFER ON THE SUBSTANTIVE DISPUTES

23   BETWEEN THE PARTIES.

24           AS YOU HEARD FROM MR. DUNNE AND AS YOU SAW FROM OUR

25   SUBMISSION, THE ENTIRE PROCESS OF THE LETTER WRITING, ALL OF

1    THE LETTERS BACK AND FORTH, AND THE MEET AND CONFER THAT WE HAD

2    ON OCTOBER 6TH WAS FOCUSED ON THEIR POSITION THAT SOMEHOW

3    PRODUCTION TO THE FTC CONSTITUTED A WAIVER AS TO PRIVILEGE.

4         AND I'M HAPPY TO TALK FOR A MOMENT ABOUT THAT

5    SEPARATELY WHEN WE GET TO THE MERITS.

6         BUT THAT IS A FUNDAMENTALLY DIFFERENT POSITION.  THAT

7    WAS THE POSITION THEY TOOK IN ALL THE CORRESPONDENCE WE HAD IN

8    MEET AND CONFER, THE ONLY BASIS THAT THEY HAD TO ARGUE THE

9    PRIVILEGE CHALLENGE, UNTIL WE GOT TO TWO DAYS BEFORE THIS

10   LETTER BRIEF WAS TO BE SUBMITTED, AND, ALL OF A SUDDEN, THE

11   DISPUTE MORPHED INTO, WELL, NOW WE'RE CLAIMING THAT THE

12   DOCUMENTS WEREN'T PRIVILEGED BECAUSE OF MS. HAHN.

13        **THE COURT:**  THEY SAID IT'S BECAUSE THEY DIDN'T HAVE

14   ENOUGH INFORMATION FROM FACEBOOK TO IDENTIFY THE PROBLEMS

15   WITH --

16        **MS. MEHTA:**  NOT TRUE, YOUR HONOR, AND LET ME EXPLAIN

17   WHY.

18        SO MR. DUNNE IS SAYING, WELL, IT DOESN'T SAY ON THE

19   PRIVILEGE LOG THAT MS. HAHN IS NOT A FACEBOOK EMPLOYEE.  THE

20   PRIVILEGE LOG DOESN'T DESIGNATE FACEBOOK VERSUS NON-FACEBOOK.

21   IT DESIGNATES BETWEEN ATTORNEYS AND NON-ATTORNEYS.  BUT THEY

22   HAD THE DOCUMENTS THEMSELVES, BECAUSE THE DOCUMENTS THAT WE'RE

23   TALKING ABOUT IN THE AUGUST 20TH CLAWBACK ARE REDACTED

24   DOCUMENTS.  THEY WERE NOT DOCUMENTS THAT WERE WITHHELD IN FULL.

25   SO THEY HAD THE DOCUMENTS THEMSELVES WITH THE EMAIL HEADERS

1   WHICH SHOWED THE DATE AND ALL OF THE TO AND THE FROM, INCLUDING

2   THE EMAIL ADDRESS FROM MS. HAHN.

3          SO THIS IS NOT A CIRCUMSTANCE IN WHICH THE ONLY

4   INFORMATION THEY HAD WAS WHAT WAS ON THE LOG.  THEY ACTUALLY

5   HAD HER EMAIL ADDRESS AND THE DOCUMENTS WITH THE REDACTIONS

6   APPLIED.

7          SO IF THE BASIS FOR THE CHALLENGE NOW IS, WELL, IT

8   HAS MS. HAHN, WHO IS AN EMPLOYEE OF OUTCAST, AND, THEREFORE,

9   WE'RE SAYING THAT CAN NEVER BE PRIVILEGED, THEY KNEW THAT AS OF

10  THE MOMENT WE SERVED THE REDACTION NOTICE -- I'M SORRY -- THE

11  CLAWBACK NOTICE ON AUGUST 20TH AND THROUGHOUT THE ENTIRE

12  PROCESS AND NEVER RAISED THAT ARGUMENT UNTIL THE LAST MOMENT.

13  AND THE PROCESS CAN'T WORK IF THAT IS THE WAY THAT THE MEET AND

14  CONFER IS GOING TO HAPPEN.

15         AND THEN WE SEE THE GOTCHA IN THE LETTER BRIEF, WHICH

16  IS, WELL, FACEBOOK HADN'T ESTABLISHED BRIDGE PRIVILEGE OVER

17  THESE DOCUMENTS.  WELL, OF COURSE NOT.  THERE WAS NEVER A

18  CONVERSATION ABOUT THAT BECAUSE THEY WERE NEVER RAISING THAT

19  ARGUMENT THROUGHOUT THE MEET AND CONFER PROCESS.

20         SO, AGAIN, FROM OUR PERSPECTIVE, THE CHALLENGE ISN'T

21  TIMELY, AND THEY'VE WAIVED THE CHALLENGE WITH RESPECT TO THIS

22  MS. HAHN ISSUE BY NOT RAISING IT THROUGHOUT THE PROCESS.

23         IF YOUR HONOR WANTS TO GET THE MERITS OF WHY THOSE

24  DOCUMENTS ARE NONETHELESS PRIVILEGED, I'M HAPPY TO DO THAT.

25  BUT THE THING I WOULD ASK YOUR HONOR TO CLARIFY IS, FOR ANY

1    DOCUMENT THAT'S PRODUCED IN THIS LITIGATION, THE 502(D) PROCESS

2    APPLIES, THE ORDER APPLIES, AND THE PARTIES NEED TO COMPLY WITH

3    THE PROCESS AND, IN DOING SO, NEED TO ENGAGE IN GOOD FAITH ON

4    THE MERITS OF WHATEVER PRIVILEGE CHALLENGES THEY ARE DOING SO

5    WE CAN ACTUALLY JOIN REAL ISSUES TO YOUR HONOR AND NOT HAVE

6    THIS SORT OF ITERATIVE, WHACK-A-MOLE PROCESS OF TRYING TO

7    FIGURE OUT WHAT THE ACTUAL CHALLENGE IS.

8           **THE COURT:**  OKAY.  JUST TO PUT A FINE POINT ON IT, I

9    THINK THE ASK THAT THE PLAINTIFFS WOULD HAVE IS THAT THE

10   CLAWBACK NOTICE NEEDS TO BE A LOT MORE EXPLICIT ABOUT WHY IT

11   WAS INADVERTENT AND WHY YOU THINK IT'S PRIVILEGED.

12          SO I MAY HAVE TO DO SOME -- OR THE PARTIES MAY HAVE

13   TO CONFER AND DO SOME BALANCING HERE.  THERE MIGHT NEED TO BE A

14   REFINEMENT OF THE 502(D) ORDER.

15          SO THAT'S A -- AND I DO WANT TO TALK ABOUT THAT IN A

16   MOMENT, BECAUSE I MADE SOME NOTES ABOUT THAT, BUT LET ME JUST

17   ASK MR. DUNNE ONE QUESTION.

18          SO MS. MEHTA SAYS, ACTUALLY, THE EMAIL ADDRESS WAS

19   APPARENT ON THE FACE OF THE DOCUMENT.  IS THAT -- THAT'S NOT

20   WHAT YOU TOLD ME, SO I JUST WANT TO MAKE SURE I UNDERSTAND THE

21   FACTS.

22          **MR. DUNNE:**  IT'S FROM INSPECTION OF THE DOCUMENT, YOU

23   CAN TELL THAT THERE'S "AT THE OUTCAST AGENCY" ON THE REDACTED

24   DOCUMENTS.  THERE IS NOT A (INDISCERNIBLE) AND, BY THE WAY, AT

25   THE MEET AND CONFER, I STARTED -- THE FIRST THING THEY SAID IS,

1   TELL US WHY THIS IS TIMELY.  AND THEN WHEN I STARTED TALKING

2   ABOUT THE MERITS, WHAT I GOT FROM FACEBOOK'S COUNSEL WAS, HEY,

3   STOP THE MONOLOGUE, WE'RE AT IMPASSE.  AND WE MAY HAVE A

4   RECORDING OF IT.

5           **THE COURT:**  OKAY.

6           **MR. DUNNE:**  THAT I'M HEARING NOW THAT AT THE MEET AND

7   CONFER, I FIND THAT RATHER SURPRISING.

8           **THE COURT:**  OKAY, OKAY.  SO HERE'S WHAT I'M THINKING,

9   AND I'M NOT SURE THAT WE SHOULD HAVE A MERITS DISCUSSION RIGHT

10  NOW, AND LET ME TELL YOU WHY.

11          SO THE MERITS DISCUSSION IN THE JOINT SUBMISSION

12  REFLECTS THE FACT THAT THERE WAS NOT A MEET AND CONFER.  I'M

13  JUST GOING TO PUT IT OUT THERE.  IT WAS NOT REALLY A MEET AND

14  CONFER ON THE MERITS.  AND IF THERE ARE TWO MERITS ISSUES,

15  NAMELY, PRODUCTION TO THE FTC, AND THIS PERSON IS OUTSIDE THE

16  FOLD AND, THEREFORE, THE DOCUMENT WAS NEVER PRIVILEGED AND

17  COULDN'T NEVER BE PRIVILEGED BECAUSE THAT PERSON IS A THIRD

18  PARTY, THERE WAS NOT A JOINDER OF THE ARGUMENT ON THAT ISSUE.

19          AND THAT MAY SIMPLY BE A FUNCTION OF THE FACT THAT MY

20  EXPEDITED DISCOVERY DISPUTE PROCEDURE IS NOT WELL SUITED TO

21  RESOLVING THESE KINDS OF DISPUTES, BECAUSE, YOU KNOW, WHEN WE

22  GET TO THE QUESTION OF MERITS AND PRIVILEGE THE -- AND APART

23  FROM THE TIMING OF THE PROCESS, YOU KNOW, THE PLAINTIFFS -- OR,

24  LET ME PUT IT THIS WAY, FACEBOOK, THE PRIVILEGE HOLDER, HAS THE

25  BURDEN TO ESTABLISH PRIVILEGE, AND, AS THE PLAINTIFFS HAVE

1   POINTED OUT, NORMALLY THIS IS DONE BY AN EVIDENTIARY-TYPE

2   SUBMISSION WHERE THAT'S REQUIRED.

3          UNLESS IT'S A STRICTLY LEGAL ISSUE AND THERE'S NO

4   DISPUTE OF FACT, THERE'S USUALLY SOMETHING THAT'S REQUIRED TO

5   BE SHARED OF A FACTUAL NATURE WITH THE COURT ABOUT THE

6   CIRCUMSTANCES OR THE PERSON AND THAT PERSON'S ROLE.  AND, YOU

7   KNOW, IF FACEBOOK IS GOING TO ARGUE THIS PERSON IS A FUNCTIONAL

8   EMPLOYEE, I MEAN, THERE'S A WHOLE SET OF CRITERIA YOU NEED TO

9   MEET TO MAKE THAT ARGUMENT.

10          SO, YOU KNOW, EVEN IF THE MEET AND CONFER DIDN'T

11   TIMELY RAISE THIS ISSUE, IN THE FIRST INSTANCE ONE COULD ARGUE

12   FACEBOOK HAS THE OBLIGATION TO ESTABLISH PRIVILEGE.  AND THE

13   DISCUSSION IN THE JOINT SUBMISSION IS QUITE ABBREVIATED ON THAT

14   POINT.

15          SO, YOU KNOW -- SO MY THINKING IS, AT THIS POINT, I

16   ONLY -- ON THIS PARTICULAR DISPUTE, I ONLY WANT TO HEAR ABOUT

17   THE STUFF THAT'S ASSOCIATED WITH THE AUGUST 20TH NOTICE.

18   THAT'S THE ONLY ONE THAT SEEMS TO BE TIMELY.

19          THE FACT THAT FACEBOOK MET AND CONFERRED WITH THE

20   PLAINTIFFS IS NOT A BAD THING.  IT'S A GOOD THING.  AND HAD THE

21   PLAINTIFFS SAID, WE CAN'T GET IT DONE IN THE 14 DAYS BECAUSE

22   WE'RE TOO BUSY, CAN WE HAVE SOME MORE DAYS TO DO IT, I WOULD

23   HAVE SAID YES.

24          THIS IS THE KIND OF THING I EXPECT COUNSEL TO ENGAGE

25   WITH EACH OTHER AND REASONABLY ACCOMMODATE PEOPLE'S SCHEDULES.

```
 1   MAYBE YOU SHOULD HAVE REACHED OUT BEFORE THE VERY LAST DAY OF
 2   THE 14-DAY PERIOD, BUT YOU KNOW, PEOPLE ARE BUSY.  I GET IT.
 3   YOU KNOW, I EXPECT YOU ALL TO BE REASONABLE ON WHAT FACEBOOK
 4   DID IN RESPONDING AND AGREEING IS REASONABLE AND NOT A REASON
 5   FOR ME NOT TO CONSIDER IT.
 6            SO THE AUGUST 20TH CLAWBACK NOTICE AND CHALLENGE ARE
 7   TIMELY, AND THAT'S 12 DOCUMENTS.  SO THEN I THINK WE SHOULD
 8   HAVE A PROCEEDING ON THE MERITS, AND THAT'S WHERE I COME TO,
 9   WHAT'S THE BEST WAY TO DEAL WITH THESE DISPUTES.
10            I THINK THIS WILL REQUIRE IN MOST CASES A PROCEDURE
11   THAT'S DIFFERENT THAN MY NORMAL EXPEDITED PROCEDURE, AND THAT'S
12   FINE.  I MEAN, THE DRAWBACKS OF IT ARE -- THERE ARE A RANGE OF
13   THINGS YOU COULD DO.  YOU COULD DO A REGULARLY NOTICED MOTION,
14   35 DAYS NOTICE.  THAT'S JUST GOING TO TAKE A LONG TIME.  YOU
15   COULD DO SOMETHING KIND OF IN BETWEEN MY EXPEDITED JOINT
16   SUBMISSION AND A FULL-BLOWN NOTICE MOTION.
17            AND I'D CERTAINLY LIKE TO HEAR WHAT THE PARTIES WOULD
18   LIKE TO DO ABOUT THAT, BUT, YOU KNOW, NORMALLY, I DON'T HAVE
19   DECLARATIONS AND THAT KIND OF THING, AND I LIMIT WHAT CAN BE
20   ATTACHED.  MAYBE YOU WANT TO AGREE OR I CAN ORDER A PROCESS
21   THAT ALLOWS EVIDENTIARY SUBMISSIONS.
22            BUT I DO THINK THAT THE 502(D) ORDER NEEDS TO BE
23   MODIFIED TO THAT IN TERMS OF THE PART ABOUT SUBMITTING DISPUTES
24   TO THE COURT, BECAUSE OTHERWISE I'LL END UP IN A SITUATION
25   WHERE I JUST DON'T HAVE THE INFORMATION I NEED TO EVALUATE YOUR
```

1   DISPUTE, WHICH IS WHERE I FEEL I AM TODAY.  EVEN IF YOU HAD MET

2   AND CONFERRED, I'D BE FACED WITH NOT NECESSARILY HAVING ALL THE

3   INFORMATION I NEED.

4        OKAY.  HOW DO WE GET THERE IN THE FIRST PLACE?  RIGHT

5   NOW THE 502(D) ORDER DOESN'T REALLY DESCRIBE IN ANY DETAIL WHAT

6   THE CONTENTS OF THE CLAWBACK NOTICE ARE.  IT SAYS AT LEAST IT

7   HAS TO MEET THIS STANDARD FOR THE PRIVILEGE LOG TYPE STUFF IN

8   RULE 26, AND IT DOESN'T REALLY SAY WHAT THE CHALLENGE HAS TO

9   BE.

10       I DON'T WANT TO CREATE A SITUATION WHERE THE MEET AND

11  CONFER THAT YOU ALL HAVE AFTER THERE'S AN EXCHANGE OF A

12  CLAWBACK NOTICE AND A CHALLENGE IS LIMITED TO JUST WHAT SOMEONE

13  PUT IN PAPER IN THE NOTICE OR PUT IN THE CHALLENGE LETTER.  YOU

14  KNOW, I WANT YOU TO BE ABLE TO FULLY DISCUSS THE ISSUES THAT

15  COME UP BEFORE IT GETS TO ME, BECAUSE, OTHERWISE, THAT MAKES ME

16  HAVE TO RESOLVE MORE THINGS.  I DON'T THINK THAT'S A GOOD

17  PROCESS.  SO I'D LIKE TO GIVE YOU THE FLEXIBILITY TO DO THAT,

18  BUT YOU DO HAVE TO CONFER BEFORE YOU SUBMIT A DISCOVERY DISPUTE

19  TO ME.  SO YOU HAVE TO HAVE SOME VECTOR DOING THAT.

20       SO I THINK THAT THOSE THREE PIECES ARE NECESSARY:

21  NOTICE, CHALLENGE, AND CONFERENCE BEFORE YOU SUBMIT A DISCOVERY

22  DISPUTE.  IT JUST FEELS TO ME THAT MAYBE THERE OUGHT TO BE A

23  LITTLE BIT MORE REFINEMENT ABOUT WHAT THE CONTENTS OF EACH OF

24  THOSE EXCHANGES, THE NOTICE AND CHALLENGE, IS GOING TO INCLUDE.

25       I DON'T THINK, AS I SAID BEFORE TO THE PLAINTIFF'S

1   POINT, THAT THE CLAWBACK NOTICE HAS TO BE AN EVIDENTIARY

2   SUBMISSION.  BUT, YOU KNOW, AT A VERY HIGH LEVEL IT COULD SAY

3   WE MADE A BOOBOO, AND WE'RE CLAWING THIS BACK BECAUSE.

4        NOW, MAYBE THERE'S SOMETHING ELSE THAT COMES UP IN

5   THE MEET AND CONFER OR THAT YOU LEARN WHEN YOU'RE GOING BACK

6   AND FORTH THAT GIVES YOU AN ADDITIONAL REASON WHY IT SHOULDN'T

7   HAVE BEEN DISCLOSED.  THAT'S FINE.

8        SAME THING FOR THE CHALLENGE.  YOU IDENTIFY AN

9   ADDITIONAL REASON, AND THAT GETS SORTED OUT IN THE CONFERENCE

10   OF COUNSEL.  AND THEN WHATEVER THOSE THINGS ARE, YOU SHOULD

11   FULLY EXPLORE THEM BEFORE YOU SUBMIT THEM TO ME.

12        SO THAT WAS MY THINKING WHEN I GOT THIS DISPUTE AND

13   TRIED TO FIGURE OUT HOW TO IMPROVE THE PROCESS, IS THAT I THINK

14   SOME GREATER ATTENTION TO WHAT THE ORDER SAYS ABOUT THOSE THREE

15   STEPS IS IN ORDER AND A DIFFERENT PROCESS FOR SUBMITTING

16   DISPUTES.

17        LET ME PAUSE AND LET THE PARTIES COMMENT ON THOSE

18   OBSERVATIONS.  LET ME FIRST ASK THE PLAINTIFFS.  WHAT DO YOU

19   THINK ABOUT THE ISSUES I'VE RAISED AND HOW TO ADDRESS THEM?

20        **MR. DUNNE:**  SO, I THINK YOU'RE SPOT ON, AND I SAY

21   THAT (INDISCERNIBLE).  WE JUST WANT TO BE ABLE TO DO IS TO HAVE

22   A -- ALL RIGHT, LOOK, THIS IS FROM WHAT I CAN TELL A NUANCED

23   SUBSTANTIVE DISPUTE WITH TWO SUBSTANTIVE ISSUES.

24        I MEAN, YOU KNOW, THE STUFF DEVELOPS BECAUSE AMONG

25   OTHER THINGS WE DO GET A LOT OF CLAWBACKS FROM FACEBOOK.  WE

1    JUST GOT ANOTHER ONE.  AND WE HAVE, AS YOUR HONOR IS AWARE, AS

2    FACEBOOK IS AWARE, WE HAVE A LOT OF DOCUMENTS WE'RE GOING

3    THROUGH BESIDES THE CLAWBACKS.  AND THEN WE HAVE A LOT OF MEET

4    AND CONFERS ON OTHER ISSUES WITH THEM.  AND WE SEND A LOT OF

5    LETTERS THERE AND BACK.

6           LOOK, PART OF THE CONSTRAINTS OF THE STREAMLINING

7    PROCESS, RIGHT, THE LACK OF EXHIBITS HAD A LOT OF

8    CHARACTERIZATION ON BOTH SIDES IN THE SENSE THAT, LIKE, LOOK,

9    WE WOULD HAVE JUST SUBMITTED THE LETTERS BECAUSE WE THINK THAT,

10   YOU KNOW, THEY KIND OF SAID EVERYTHING.  BUT THEN AT THE SAME

11   TIME, WE HAD TWO SUBSTANTIVE ISSUES, RIGHT?  FACEBOOK HAD --

12   TWO-THIRDS OF THEIR SUBMISSION IS ABOUT THE PROCESS, RIGHT?

13          IT WASN'T THAT WE DIDN'T WANT TO ADDRESS THE PROCESS.

14   AS YOU KNOW, WE ADDRESSED IT WITH YOU RIGHT NOW.  I THINK I

15   ACTUALLY AGREE WITH YOU.  THESE 12 DOCUMENTS ARE EXACTLY WHAT

16   WE NEED TO BE GETTING TO THE BOTTOM OF SUBSTANTIVELY.

17          LOOK, I THINK SOME SORT OF MAYBE STREAMLINED OR

18   QUICKER DISCOVERY PROCESS WHERE WE STILL HAVE REAL MOTIONS, OR

19   EVEN IF THE JOINT SUBMISSION WHERE THERE'S -- I THINK MAYBE

20   REAL MOTIONS MIGHT MAKE SENSE HERE IN THE SENSE OF, RIGHT,

21   LIKE, LOOK, WE PROBABLY NEED PREFER BOTH OF THESE ISSUES.

22          I THINK -- LOOK, I THINK THE ASSERTION OF WHETHER,

23   LIKE, MS. HAHN IS A FUNCTIONAL EMPLOYEE, I MEAN, LOOK, EVEN THE

24   CASE THEY BRING UP, SCHAFER (PHONETIC) IT'S A VERY INTERESTING

25   AND NUANCED ISSUE, AND IT'S AN EVIDENTIARY ISSUE.

1          SO, YOU KNOW, ONE OF THE THINGS THAT WAS AN ISSUE FOR

2     US, RIGHT, GOING INTO THIS, ESPECIALLY GOING INTO, AMONG OTHER

3     THINGS, THE MEET AND CONFER IS THAT, LIKE, THEY LED REPEATEDLY

4     IN ALL THE CORRESPONDENCE, YOU'RE NOT TIMELY, YOU CAN'T

5     CHALLENGE THIS OTHER STUFF.

6          AND SO AT A CERTAIN POINT, I WAS JUST, LIKE, WE NEED

7     TO RACE TO THE COURTHOUSE OR ELSE THEY'RE GOING TO TELL US

8     THEY'RE NOT TIMELY.

9          **THE COURT:**  SO WHAT DO YOU THINK WOULD BE A GOOD

10    PROCESS FOR SUBMITTING THE DISPUTE TO THE COURT?

11         SO, AS I OBSERVED, THE REGULARLY-NOTICED MOTION IS

12    GOING TO SLOW YOU DOWN.  BUT I DO THINK THAT THE OPPORTUNITY TO

13    SUBMIT MORE MATERIAL TO THE COURT IS HELPFUL.  AND SO, YOU

14    KNOW, YOU COULD DO -- YOU COULD DO SORT OF -- WE COULD JUST DO

15    IT LIKE A MOTION AND OPPOSITION WITHOUT A REPLY.  YOU ALWAYS

16    ASK FOR A HEARING, OR YOU ALMOST ASK FOR A HEARING ON THESE

17    KINDS OF THINGS, AND I WOULD ALMOST ALWAYS GIVE A HEARING ON A

18    PRIVILEGE ISSUE BECAUSE OF THE SIGNIFICANCE OF THE RESULTS.

19         SO YOU COULD DO MOTION, OPPOSITION, HEARING, AND YOU

20    COULD DO IT ON A SCHEDULE THAT WAS LESS THAN 35 DAYS.  I WOULD

21    APPRECIATE IT IF YOU ALL WOULD AGREE TO WORD LIMITS, AT LEAST

22    ON THE BRIEFING.  YOU DO WHAT YOU NEED TO DO ON THE

23    DECLARATIONS AND OTHER SUBMISSIONS.

24         BUT THAT'S THE KIND OF SORT OF MIDDLE GROUND PROCESS

25    THAT I THINK MIGHT PRESERVE THE EFFICIENCIES FOR YOU ALL

1    WITHOUT -- WITHOUT COMPROMISING YOUR ABILITY TO FULLY EXPLAIN

2    YOUR POSITIONS.

3            **MR. DUNNE:**  I THINK THAT MAKES -- SORRY, YOUR HONOR.

4    I THINK THAT MAKES A LOT OF SENSE FOR PLAINTIFFS.  YOU KNOW,

5    I'VE BEEN LOOKING AT YOUR WEBSITE, AND I DON'T SEE ANYTHING ON,

6    LIKE, A PARTICULAR PROCESS THAT'S ALREADY --

7            **THE COURT:**  THIS WOULD BE SPECIAL FOR YOU

8    (INDISCERNIBLE).

9            **MR. DUNNE:**  I LOVE BESPOKE PROCESSES.  I'M SURE, YOU

10   KNOW, MS. MEHTA AND ALL OF US COULD PROBABLY, HOPEFULLY, WORK

11   OUT A WORKABLE BESPOKE PROCESS.

12           **THE COURT:**  OKAY.  LET ME HEAR FROM FACEBOOK ON THE

13   SORT OF PROCESS REFINEMENTS THAT I HAVE BEEN SUGGESTING AND

14   HAVE BEEN DISCUSSING WITH MR. DUNNE.

15           **MS. MEHTA:**  YES, YOUR HONOR.  THANK YOU.

16           I WANT TO MAKE SURE I BREAK THIS DOWN INTO THE THREE

17   AREAS THAT YOU IDENTIFIED.

18           THE FIRST IS WITH RESPECT TO THE CLAWBACK NOTICE.

19   THERE, I THINK THE 502 AGREEMENT AND WHAT WE'VE DONE IN TERMS

20   OF THE CLAWBACK NOTICE ACTUALLY ACCOMPLISHES EXACTLY WHAT YOUR

21   HONOR SAID, WHICH IS WE WOULD SAY TO THEM, WE FOUND A DOCUMENT,

22   IT WAS IMPROPERLY OR INADVERTENTLY PRODUCED, WE'RE CLAWING IT

23   BACK, IT'S PRIVILEGED, AND HERE'S THE PRIVILEGE LOG LEVEL

24   INFORMATION FOR WHY WE'RE CLAIMING PRIVILEGE OVER IT.  THAT'S

25   WHAT WE'VE BEEN DOING.  I THINK THAT'S ALL WE CAN OR SHOULD

1   HAVE TO DO IN THE FIRST CLAWBACK NOTICE.

2            THE SECOND STEP THEN WOULD BE A CHALLENGE THAT HAS TO

3   BE WITHIN 14 DAYS PER THE 502(D) AGREEMENT, AND WE WOULD ASK

4   FOR CLARIFICATION THAT THE CHALLENGES NEEDS TO IDENTIFY, AT

5   LEAST AT A HIGH LEVEL, WHAT THE BASIS FOR THE CHALLENGE IS.

6            IF WE'RE GOING TO HAVE A MEET AND CONFER WITH THEM

7   WHERE THEY'RE CLAIMING THAT SOMETHING IS NOT PRIVILEGED THAT

8   WE'RE CLAWING BACK, WE NEED TO UNDERSTAND WHY THEY THINK IT'S

9   NOT PRIVILEGED, AT LEAST AT A HIGH LEVEL, TO FACILITATE A

10  MEANINGFUL MEET AND CONFER.

11           THEN AFTER THEY GIVE US A CHALLENGE THAT IDENTIFIES

12  THE BASIS FOR THE CHALLENGE, WITHIN 14 DAYS THERE HAS TO BE A

13  MEET AND CONFER BETWEEN THE PARTIES WHERE WE ACTUALLY ENGAGE ON

14  THE SUBSTANCE OF THE DISPUTE.

15           THAT SEEMS TO ME TO BE WHAT WAS -- I THINK WHAT WAS

16  CONTEMPLATED BY THE 502(D) AGREEMENT, BUT I THINK IT SHOULD BE

17  CLEAR BETWEEN ALL OF US THAT THAT'S WHAT THE FIRST TWO STEPS OF

18  THE 502(D) AGREEMENT REQUIRE.

19           THEN THERE'S THE THIRD STEP, WHICH IS, IF THERE IS,

20  AFTER SUBSTANTIVE MEET AND CONFER, A DISPUTE, HOW DO WE RAISE

21  THAT WITH YOUR HONOR.  AND I THINK YOUR HONOR'S SUGGESTION OF

22  AN OPENING AND AN OPPOSITION BRIEF AND A HEARING MAKES GOOD

23  SENSE.

24           WE CAN TALK ABOUT -- EITHER WITH YOUR HONOR OR IF

25  YOU'D LIKE TO US MEET AND CONFER SEPARATELY ABOUT WHAT THE

1    APPROPRIATE PAGE OR WORD LIMITS FOR THAT WOULD BE AND WHAT THE

2    TIMELINE FOR THAT WOULD BE.  I THINK SOMETHING SHORT OF 35 DAYS

3    BUT SOMETHING LONGER THAN YOUR HONOR'S DEFAULT FIVE-DAY PROCESS

4    IS REQUIRED FOR US TO REALLY BE ABLE TO JOIN ISSUES ON THESE

5    PRIVILEGE CALLS.

6            **THE COURT:**  LET ME MAKE AN OBSERVATION IN RESPONSE TO

7    THE FIRST PART OF WHAT YOU SAID, MS. MEHTA.

8            SO I'M LOOKING AT THE ORDER RIGHT NOW, AND SECTION 1

9    DOES SAY THAT THE NOTICE MUST BE AS SPECIFIC AS POSSIBLE IN

10   IDENTIFYING THE BASIS FOR THE PRIVILEGE CLAIMED AND MUST

11   INCLUDE AT LEAST THE INFORMATION REQUIRED BY RULE 26

12   (B)(5)(A)(2) SO IT DOES HAVE -- THE ORDER CURRENTLY HAS A

13   SUBSTANTIVE CONTENT REQUIREMENT FOR THE CLAWBACK NOTICE.

14           AND WHEN WE GET TO SECTION (2), (2)(C), THAT

15   PROVISION IS ABOUT THE CHALLENGE.  IT JUST SAYS:

16               "THE RECEIVING PARTY SHALL NOTIFY

17               THE PRODUCING PARTY OF ITS CHALLENGE WITHIN

18               14 DAYS OF RECEIPT IN A CLAWBACK NOTICE."

19           SO RIGHT NOW IT'S NOT EXPLICIT ABOUT WHAT THAT

20   CHALLENGE HAS TO SAY.  SO I UNDERSTAND YOU TO BE PROPOSING THE

21   CHALLENGE SHOULD HAVE SOME SORT OF PARALLEL CONTENT.  I AGREE

22   THAT MIGHT BE USEFUL.

23           HOWEVER, THE THING THAT MOST -- THAT IS MOST -- WELL,

24   THE CHALLENGE NEEDS TO BE MADE TIMELY, BUT WHAT I REALLY WANT

25   TO EMPHASIZE TO THE PARTIES IS THAT WHAT HAPPENS AFTER THAT IS

1    THAT THE PARTIES NEED TO BE RESPONSIVE TO EACH OTHER.

2           SO IF MR. DUNNE SENDS A CHALLENGE THAT SAYS, HEY, WE

3    CHALLENGE THIS, IT LOOKS LIKE IT'S ALREADY BEEN DISCLOSED TO

4    THE FTC AND YOU WAIVED PRIVILEGE, AND THEN YOU HAVE A MEET AND

5    CONFER, OR, IN ADVANCE OF THE MEET AND CONFER, PLAINTIFFS SAY,

6    YOU KNOW WHAT, IT WOULD REALLY HELP US IF WE HAD THE FOLLOWING

7    INFORMATION:  WHO ARE THESE PEOPLE WHO ARE ON THERE, AND, YOU

8    KNOW, WHY WOULD YOU CONTEND THAT AN EMAIL THAT INCLUDES A

9    THIRD-PARTY PR CONSULTANT ON IT WOULD BE PRIVILEGED IN THE

10   FIRST PLACE.

11          AND I WOULD TOTALLY EXPECT FACEBOOK TO RESPOND TO

12   THAT SUBSTANTIVELY IN PREPARATION FOR THE MEET AND CONFER, OR

13   IF IT SHOWS UP AS A DISCUSSION POINT IN THE MEET AND CONFER, TO

14   ACTUALLY RESPOND TO IT, BECAUSE WHAT I REALLY WANT TO AVOID IS

15   HAVING SOMETHING COME BEFORE ME WHERE THE ISSUE IS NOT JOINED.

16          AND THE MOTION AND OPPOSITION WILL MITIGATE THAT

17   BECAUSE IF SOMETHING SHOWS UP IN A MOTION, IT'S GOING TO THEN

18   BE RESPONDED TO IN AN OPPOSITION.  BUT, STILL, MEETING AND

19   CONFERRING IN ADVANCE IS PRETTY IMPORTANT.

20          YOU KNOW, I THINK IT'S UNDERSTOOD AND PROBABLY WAS

21   UNDERSTOOD BY THE PLAINTIFFS IN THIS INSTANCE THAT THE

22   CHALLENGE SAYS SOMETHING ABOUT WHAT THE BASIS FOR THE CHALLENGE

23   IS, AND THAT'S FINE, BUT I DON'T THINK THAT A RIGID RULE THAT

24   SAYS, AND YOU'RE FORECLOSED, ON FACEBOOK'S SIDE, FROM EVER

25   ARGUING ANY BASIS THAT'S NOT ASSERTED IN THE NOTICE EXPLICITLY,

1    AND ON THE PLAINTIFFS' SIDE, THE CHALLENGING PARTY'S SIDE,

2    YOU'RE PRECLUDED FROM ARGUING ANY BASIS FOR A CHALLENGE THAT

3    WASN'T ASSERTED IN YOUR CHALLENGE NOTICE, I'M NOT GOING TO -- I

4    DON'T THINK THAT'S A GOOD IDEA, AND I'M NOT GOING TO REQUIRE

5    THAT.  OKAY.

6            MR. DUNNE, DID YOU WANT TO RESPOND ON THAT POINT?

7            **MR. DUNNE:**  LOOK, I AGREE WITH YOUR HONOR ON THE --

8    YOU ADDRESSED SOME OF WHAT I HAD A BIT OF -- MY PRINCIPAL

9    CONCERN WITH MS. MEHTA'S SET OUT, IF YOU WILL, IT WAS WITH THE

10   FIRST PART WHERE SHE'S TALKING -- WHERE YOU HAD RAISED NOTICE,

11   CHALLENGE, CONFERENCE, RIGHT, AS A TRIPART THINGS WE ALL NEED

12   TO DO.  AND THEN HER THING, THE FIRST THING, THE 502(D) ORDER

13   COVERED IT, I GOT A LITTLE BIT OF CONCERN WHEN SHE WAS TALKING

14   ABOUT, LOOK, RIGHT, THE PARTIES NEED TO MEET AND CONFER WITHIN

15   THE 14 DAYS, BECAUSE, YOU KNOW, I PULLED UP THIS EMAIL

16   CORRESPONDENCE HERE, RIGHT, AS TO WHAT ACTUALLY HAPPENED.

17           I SENT MY LETTER ON THE 10TH.  WE GOT THEIR RESPONSE

18   ON THE 27TH.  AND WITHIN THREE DAYS WE ASKED THEM FOR A MEET

19   AND CONFER, AND THAT'S WHAT THEY'RE SAYING WAS THE VERY LAST

20   DAY WE COULD POSSIBLY DO IT.

21           AND WE PROVIDED BY THE WAY, RIGHT, TWO DIFFERENT --

22   OR, SORRY, WE SAID WE COULD DO IT BETWEEN 10:00 AND NOON ON

23   MONDAY 10/4, AND THEIR RESPONSE WAS, WE CAN'T, BUT WE COULD DO

24   IT LATER, AND THAT'S FINE.

25           **THE COURT:**  THAT'S ALL GOOD.  THAT'S WHAT I EXPECT.

1          SO WHAT I WOULD PROPOSE TO YOU BOTH, AND WILL ORDER

2     IF YOU DON'T DO IT YOURSELVES, IS THAT SECTION (2)(D), WHICH IS

3     THE TIMING FOR CONFERENCE OF COUNSEL, IS THAT PARTIES SHALL

4     MEET AND CONFER IN AN EFFORT TO RESOLVE THEIR DISAGREEMENT, AND

5     THAT'S WITHIN THE 14 DAYS, UNLESS THEY AGREE OTHERWISE.

6          YOU SHOULD BE ABLE TO AGREE TO A DIFFERENT TIME

7     FRAME.  THAT'S WHAT ALL OF MY -- THAT'S WHAT MY STANDING ORDER

8     SAYS GENERALLY FOR DISCOVERY DISPUTE CONFERENCES.  I REALLY

9     WANT YOU TO WORK TOGETHER TO RESOLVE THE MATTER.  AND WHAT I

10    DON'T WANT IS ANYBODY TO HOLD OFF RESOLUTION BY DRAGGING THEIR

11    FEET.  THOSE ARE THE SORT OF TWIN COMPETING CONSIDERATIONS.  IS

12    YOU GET IT DONE TIMELY, YOU DON'T DRAG YOUR FEET TO PRECLUDE

13    SOMEBODY FROM GETTING RELIEF THAT THEY WANT, BUT YOU

14    ACCOMMODATE EACH OTHER'S BUSY SCHEDULES.

15         **MS. MEHTA:**  YOUR HONOR, ON THAT POINT, I THINK

16    ACTUALLY PROVISION (F) INCLUDES THAT.

17         **THE COURT:**  YEAH.

18         **MS. MEHTA:**  WE CAN CLARIFY (D) IF WE NEED, AND IF

19    THEY HAD MADE REQUEST TO GO AN -- YOU KNOW, I DON'T THINK THAT

20    THAT WILL --

21         **THE COURT:**  THAT'S A STIPULATION.  I'M TRYING TO

22    AVOID, LIKE, EVERYBODY --

23         **MS. MEHTA:**  UNDERSTOOD.

24         **THE COURT:**  YOU SHOULD WITNESS MY LAST DISPUTE.  YOU

25    KNOW, IF YOU'RE GOING TO CHANGE -- PROPOSE A CHANGE OR AGREE TO

1    CHANGE A DEADLINE THE COURT HAS SET, YOU ARE SUPPOSED TO DO IT

2    BY STIPULATION UNDER OUR LOCAL RULE AND HAVE IT BE OFFICIAL.  I

3    DON'T WANT TO SEE A BUNCH OF STIPULATIONS, CAN WE HAVE AN EXTRA

4    TWO DAYS TO CONFER.  NO, PLEASE DON'T DO THAT.

5         **MS. MEHTA:**  RIGHT.

6         **THE COURT:**  LET'S WORK IT OUT.

7         **MR. DUNNE:**  YES, YOUR HONOR.  LOOK, I COMPLETELY

8    AGREE WITH ALL THIS, AND WE SHOULD BE ABLE TO DO IT.  I JUST --

9         **THE COURT:**  OKAY.

10        **MR. DUNNE:**  RIGHT?  MY NIGHTMARE SCENARIO WHAT JUST

11   HAPPENED 40 MINUTES AGO, WHICH IS THAT WE HAVE AN EMAIL FROM

12   FACEBOOK SAYING, WITH THAT SAID, WE'RE AVAILABLE TO MEET AND

13   CONFER ON WEDNESDAY 10/6, AND THEN WE PRESENT TO IT TO THE

14   COURT, THEIR PRINCIPAL ARGUMENT, OR ONE OF THEM, IS THAT WE

15   DIDN'T MEET AND CONFER ON TIME.  THAT'S MY NIGHTMARE.

16        **THE COURT:**  LET'S NOT HAVE THAT BE AN ISSUE, BECAUSE

17   I'D RATHER RESOLVE THINGS ON THE MERITS THAN DEAL THE

18   PROCEDURAL MESS THAT CAN BE AVOIDED.

19        SO TWO THINGS.  FOR THIS PARTICULAR DISPUTE, WOULD

20   YOU ALL LIKE A CHANCE TO DO THE MOTION AND OPPOSITION THING?

21        **MR. DUNNE:**  PLAINTIFFS WOULD, YOUR HONOR.

22        **MS. MEHTA:**  YES, YOUR HONOR.

23        **THE COURT:**  OKAY.  SO LET'S DO THAT.

24        I'M GOING TO ASK YOU TO, ON THIS PARTICULAR DISPUTE,

25   MEANING THE AUGUST 20TH CLAWBACK NOTICE, FIGURE OUT A SCHEDULE

1  AND LET ME KNOW WHAT YOU WANT TO DO FOR THE MOTION, THE

2  OPPOSITION, AND IF YOU WANT ANOTHER HEARING, I THINK WE SHOULD

3  HAVE ONE.

4          I USUALLY -- AS YOU CAN KIND OF TELL, I SET THEM FOR

5  TUESDAYS, AND I USUALLY -- YOU KNOW, DEPENDING ON WHEN I GET

6  SUBMISSIONS, I SET IT FOR THE NEXT TUESDAY OR THE TUESDAY

7  AFTER.  SO I'M USUALLY ABLE TO ACCOMMODATE A HEARING ON PRETTY

8  SHORT NOTICE.  BUT YOU CAN MAKE A PROPOSAL.

9          AND THEN I WOULD LIKE YOU TO USE -- TO ALSO USE

10  WHATEVER TIME YOU'RE TAKING TO CONFER ABOUT THIS PARTICULAR

11  DISPUTE, TO TALK ABOUT MODIFYING THE 502(D) ORDER SO THAT THIS

12  IS A PRACTICE THAT -- THIS MOTION AND OPPOSITION PRACTICE IS

13  SOMETHING YOU BAKE INTO YOUR ORDER.

14          YOU MAY CHOOSE THAT -- SOME DISPUTES MAY BE SO

15  STRAIGHTFORWARD, IT'S JUST A LEGAL QUESTION, DOESN'T REQUIRE

16  ANY EVIDENTIARY SHOWING, IT'S JUST A QUESTION OF LAW, AND YOU

17  ARE FREE TO USE THE JOINT EXPEDITED PROCEDURE IF YOU WOULD LIKE

18  TO DO THAT.  BUT FOR PRIVILEGE DISPUTES UNDER THIS 502(D)

19  ORDER, I WILL GIVE YOU THE OPTION TO DO YOUR BESPOKE SPECIAL

20  THING.

21          SO JUST TALK TO EACH OTHER AND COME UP WITH A

22  PROPOSAL.  I HOPE THAT YOU WILL BE ABLE TO AGREE, BUT IF YOU

23  DON'T, LET ME KNOW YOUR COMPETING PROPOSALS, AND I WILL MAKE A

24  DECISION.

25          HOW LONG DO YOU NEED TO GET BACK TO ME ON THE 502(D)

```
 1   ORDER REVISIONS?  IS A WEEK ENOUGH?  DO YOU NEED LONGER?

 2            MR. DUNNE:  A WEEK SHOULD BE ENOUGH.

 3            MS. MEHTA:  (INDISCERNIBLE.)

 4            THE COURT:  FACEBOOK --

 5            (SIMULTANEOUS COLLOQUY.)

 6            THE COURT:  OKAY.  ALL RIGHT.  SO I'LL ASK YOU TO GET

 7   BACK TO ME IN A WEEK ABOUT THE 502(D) ORDER.

 8            AND THEN I'LL JUST -- I'LL LEAVE IT TO YOU WHEN YOU

 9   WANT TO BRIEF AND HOW YOU WANT TO DO THE BRIEFING ON THE

10   PARTICULAR DISPUTE THAT WE HAVE, AND I WON'T DECIDE THIS

11   DISPUTE UNTIL I GET THAT SUBMISSION -- THOSE SUBMISSIONS.

12            OKAY.  IS THERE ANYTHING FURTHER FOR TODAY FROM THE

13   PLAINTIFFS?

14            MR. DUNNE:  NOT FROM PLAINTIFFS.

15            MR. SWEDLOW:  YOUR HONOR, THIS IS STEVE SWEDLOW FOR

16   THE CONSUMER.  I DON'T WANT TO BE DISAPPOINTED IN THE FUTURE BY

17   HAVING ANY DISPUTES THAT WE MIGHT WANT TO RAISE AS BEING

18   CONSIDERED UNTIMELY.  I JUST WANT SOME CLARIFICATION.

19            IF WE SEND A LETTER IN 14 DAYS THAT SAID, WE HEREBY

20   CHALLENGE THESE CLAWBACKS, ARE WE GOING TO BE OKAY?  OR DO WE

21   ACTUALLY NEED TO SAY, FIRST, YOUR LOG IS INSUFFICIENT TO

22   SATISFY THE REQUIREMENTS UNDER THE FEDERAL RULES.  SECOND,

23   BASED ON OUR INVESTIGATION OF THE DOCUMENT, WE HAVE THE

24   FOLLOWING CHALLENGE TO PRIVILEGE BECAUSE I JUST -- I DON'T

25   WANT --
```

1          AND, SECONDLY, IF FACEBOOK SAYS, WE'RE AVAILABLE TO

2    MEET WITHIN 14 DAYS OF RECEIPT OF YOUR LETTER AND WE CAN'T MAKE

3    THAT, I DO NOT WANT TO BE -- WANT TO BE BARRED FROM BRINGING A

4    CHALLENGE BECAUSE FACEBOOK PICKED 14 DAYS, LIKE THEY JUST DID

5    BY PICKING OCTOBER 6TH.  SO I CAN'T HAVE THE BURDEN BE ON US TO

6    PICK THEIR 14 DAY DATE.

7          **THE COURT:**  MR. SWEDLOW, I THINK I ALREADY SHARED

8    SOME THOUGHTS ABOUT THIS SUBJECT, AND I'M HOPING THE PARTIES

9    CAN FIGURE IT OUT, BUT TO ANSWER YOUR QUESTION DIRECTLY, ON THE

10   FIRST PART OF IT, THE CLAWBACK -- SORRY -- THE CHALLENGE, AS

11   IT'S CURRENTLY STATED IN SECTION (2)(C) DOESN'T REQUIRE ANY

12   PARTICULAR CONTENT.

13         I AM SUGGESTING TO YOU ALL THAT IT WOULD BE USEFUL TO

14   HAVE A PARALLEL STATEMENT THAT SAYS WHAT THE CHALLENGE IS.

15   EVEN IF YOU DEVELOP SOME ADDITIONAL BASIS FOR A CHALLENGE OR,

16   ON THE FACEBOOK SIDE, YOU DEVELOP SOME ADDITIONAL ARGUMENT FOR

17   WHY SOMETHING IS PRIVILEGED AND NOT WAIVED, THE CHALLENGE

18   SHOULD SAY WHATEVER YOUR PRESENT -- I MEAN, YOU'RE NOT GOING TO

19   JUST CHALLENGE SOMETHING ARBITRARILY, I HOPE.

20         I DON'T WANT TO CREATE A SITUATION WHERE THE

21   AUTOMATIC RESPONSE TO A CLAWBACK NOTICE IS A CHALLENGE WITHOUT

22   THINKING.  JUST SAY, LOOKS LIKE YOU DISCLOSED THIS TO THE FTC,

23   IT'S NOT PRIVILEGED, PRIVILEGE'S BEEN WAIVED.  YOU JUST PUT,

24   LIKE, A REASON IN YOUR CHALLENGE.

25         I THINK YOU SHOULD AGREE TO SOMETHING LIKE THAT,

1    SOMETHING FAIRLY -- LIKE, IT SHOULD BE PARALLEL IN TERMS OF

2    THE -- TO TEE UP THE DISCUSSION BETWEEN THE PARTIES, PARALLEL,

3    NOT ONEROUS, NOT EVIDENTIARY ON EITHER SIDE AT THE INITIAL

4    STAGE.

5              SO THAT'S THE ANSWER TO THE FIRST QUESTION.

6              THE ANSWER TO THE SECOND QUESTION ABOUT TIMELINESS IS

7    I DO EXPECT THE PARTIES TO ACCOMMODATE REASONABLE REQUESTS FOR

8    MEETING AND CONFERRING OUTSIDE THE 14-DAY PERIOD.  THAT DOESN'T

9    MEAN THE ONLY DATE THAT ANYBODY SHOULD MEET IS ON DAY 14.  MEET

10   SOONER IF YOU CAN.  BUT IF YOU CAN'T, MEET AFTER, AND JUST --

11   YOU KNOW, I EXPECT -- YOU ALL ARE VERY ACCOMPLISHED,

12   PROFESSIONAL FOLKS, AND YOU SHOULD BE ABLE TO DEAL WITH THESE

13   THINGS.

14             YOU HAVE A LOT OF DISCOVERY DISPUTES IN YOUR FUTURE,

15   I EXPECT, AND THIS WILL BE A VERY DIFFICULT CASE NO MATTER

16   WHAT, BUT IT WILL BE EVEN MORE DIFFICULT IF YOU CAN'T DEAL WITH

17   THIS PROFESSIONAL COURTESY ISSUE.  OKAY?  SO YOU MIGHT WANT TO

18   ADJUST SECTION (2)(D) TO ACCOMMODATE THAT INTEREST.

19             OKAY.  ANYTHING ELSE FROM THE PLAINTIFFS -- SORRY.

20   PLAINTIFFS, NO?

21             **MR. DUNNE:**  NO, THANK YOU, YOUR HONOR.

22             **THE COURT:**  FOR THE DEFENDANT?

23             **MS. MEHTA:**  YES, YOUR HONOR.  SORRY TO RAISE THIS,

24   BUT SOMETHING MR. DUNNE SAID RAISED A FLAG FOR ME, WHICH IS THE

25   SUGGESTION THAT THERE MIGHT BE RECORDINGS OF MEET AND CONFERS.

1    THERE'S BEEN NO CONSENT TO RECORDING OF ANY MEET AND CONFERS.

2    IF WE WANT TO TALK ABOUT A PROCESS FOR HAVING A COURT REPORTER

3    PRESENT OR SOMETHING, I'M HAPPY TO DO THAT, BUT I JUST WANT

4    TO -- IT RAISED A CONCERN FOR ME THAT THERE MAY BE STUFF

5    HAPPENING THAT SHOULDN'T BE HAPPENING.

6          **MR. DUNNE:**  I NEVER RECORDED A MEET AND CONFER IN MY

7    LIFE.

8          **THE COURT:**  ALL RIGHT.

9          (SIMULTANEOUS COLLOQUY.)

10         **MR. DUNNE:**  I'VE HAD MS. MEHTA ON THE OTHER SIDE ON

11   OTHER CASES, AND SHE'S PROPOSED TO RECORD THEM.

12         (SIMULTANEOUS COLLOQUY.)

13         **THE COURT:**  OKAY, OKAY.  STOP.

14         I DO HAVE A MATTER, I WON'T SAY WHICH, WHERE THE

15   PARTIES ARE HAVING A REPORTER RECORD THEIR CONVERSATIONS

16   BECAUSE EVERY DISCOVERY DISPUTE I GOT SAID:  THIS PERSON SAID

17   THIS, AND THEN THE OTHER SIDE SAID, NO, I DIDN'T SAY THAT.  AND

18   I JUST GOT TIRED OF HEARING IT, SO NOW THEY DO IT.  PLEASE

19   DON'T BE LIKE THAT CASE.  THAT'S NOT GOOD.

20         **MR. DUNNE:**  I THINK, GENERALLY SPEAKING, MS. MEHTA

21   AND I GET ALONG AND WE DON'T --

22         **THE COURT:**  GREAT.  GLAD TO HEAR IT.  LET'S NOT WORRY

23   ABOUT THAT ISSUE THEN.  ALL RIGHT.  I THINK THAT COVERS IT.

24   THANK YOU ALL VERY MUCH.

25         **MS. MEHTA:**  THANK YOU, YOUR HONOR.

1          **THE COURT:**  THIS MATTER IS CONCLUDED.

2          (PROCEEDINGS ADJOURNED AT 11:21 A.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**CERTIFICATE OF TRANSCRIBER**</u>

1

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8   ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15

16              JOAN MARIE COLUMBINI

17               NOVEMBER 2, 2021