1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

2

3

4

5

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

**SCOTT + SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

6

7

8

9

*Interim Co-Lead Consumer Class Counsel*

10

[Additional counsel listed on signature page]

*Interim Co-Lead Advertiser Class Counsel*

11

12

13

# UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

### SAN JOSE DIVISION

16

17

MAXIMILIAN KLEIN, et al.,

Case No. 5:20-cv-08570-LHK (VKD)

18

Plaintiffs,

Hon. Virginia K. DiMarchi

19

vs.

**PLAINTIFFS' OPENING BRIEF REGARDING FACEBOOK, INC.'S AUGUST 20, 2021 CLAWBACK NOTICE**

20

FACEBOOK, INC.,

21

Defendant.

**FILED UNDER SEAL**

22

23

This Document Relates To: All Actions

24

25

26

27

28

FILED UNDER SEAL

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

ARGUMENT ........................................................................................................5

    I.      Facebook Cannot Establish That The Redacted Communications Were Primarily Made For The Purpose Of Giving Legal Advice.......................7

    II.     Each Challenged Communication Was Made To A Third Party Who Was Not A Functional Employee With Respect To The Claimed Privilege ..................10

    III.    Facebook Previously Produced The Challenged Communications, And Has Offered No Facts To Establish Its Past Production Was Inadvertent ....................14

CONCLUSION ....................................................................................................15

**FILED UNDER SEAL**

<u>**TABLE OF AUTHORITIES**</u>

Cases

*Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*,
  2021 WL 4283464 (N.D. Ill. Sep. 21, 2021) ...................................................9

*Calvin Klein Trademark Trust v. Wachner*,
  198 F.R.D. 53 (S.D.N.Y. 2000) ...................................................13

*Church & Dwight Co. v. Mayer Lab'ys, Inc.*,
  2011 WL 6119146 (N.D. Cal. Dec. 8, 2011) ...................................................14

*Coles Wexford Hotel, Inc. v. UPMC & Highmark, Inc.*,
  2016 WL 462856 (W.D. Pa. Feb. 8, 2016) ...................................................15

*Durling v. Papa John's Int'l, Inc.*,
  2018 WL 557915 (S.D.N.Y. Jan. 24, 2018) ...................................................13

*In re Bieter Co.*,
  16 F.3d 929 (8th Cir. 1994) ...................................................12

*In re Copper Market Antitrust Litig.*,
  200 F.R.D 213 (S.D.N.Y. 2001) ...................................................13

*In re Domestic Airline Travel Antitrust Litig.*,
  2020 WL 3496748 (D.D.C. Feb. 25, 2020) ...................................................10

*In re Grand Jury*,
  13 F.4th 710 (9th Cir. 2021) ...................................................6, 10

*In re Pacific Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ...................................................14

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  352 F. Supp. 3d 207 (E.D.N.Y. 2019) ...................................................12, 13

*In re Vioxx Prod. Liab. Litig.*,
  501 F. Supp. 2d 789 (E.D. La. 2007) ...................................................8

*IP Co., LLC v. Cellnet Tech., Inc.*,
  2008 WL 3876481 (N.D. Cal. Aug. 18, 2008) ...................................................9

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
  661 F. Supp. 2d 958 (N.D. Ill. 2009) ...................................................14

*Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*,
  2018 WL 1532614 (D. Mass. Mar. 28, 2018) ...................................................13

*Meade v. Gen. Motors, LLC*,
  250 F. Supp. 3d 1387 (N.D. Ga. 2017) ...................................................9

**FILED UNDER SEAL**

Cases
(*continued*)

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
  2019 WL 1950381 (N.D. Cal. May 1, 2019) ................................................................14

*Schaeffer v. Gregory Village Partners,*
  78 F. Supp. 3d 1198 (N.D. Cal. 2015) ....................................................11, 12, 13

*SPS Techs., LLC v. Briles Aerospace, Inc.,*
  2020 WL 3050777 (C.D. Cal. Feb. 18, 2020)............................................................9

*United States ex rel. Baklid-Kunz. v. Halifax Hosp. Med. Ctr.,*
  2012 WL 5515108 (M.D. Fla. Nov. 6, 2012) ............................................................9

*United States v. Chevron Corp.,*
  1996 WL 444597 (N.D. Cal. May 30, 1996) ............................................................8

*United States v. Graf,*
  610 F.3d 1148 (9th Cir. 2010) ........................................................................11, 12

*United States v. Int'l Bus. Machines Corp.,*
  66 F.R.D. 206 (S.D.N.Y. 1974) ................................................................................8

*United States v. Paulus,*
  2021 WL 4494607 (E.D. Ky. Sep. 30, 2021) ..........................................................14

*United States v. Ruehle,*
  583 F.3d 600 (9th Cir. 2009) ...........................................................................*passim*

*United States v. Sanmina Corp.,*
  968 F.3d 1107 (9th Cir. 2020) ..................................................................................5

*Universal Standard Inc. v. Target Corp.,*
  331 F.R.D. 80 (S.D.N.Y. 2019) ..............................................................................12

*Viamedia, Inc. v. Comcast Corp.,*
  2017 WL 2834535 (N.D. Ill. Jun. 30, 2017)............................................................15

*Wadler v. Bio-Rad Lab'ys, Inc.,*
  212 F. Supp. 3d 829 (N.D. Cal. 2016) ......................................................................5

Rules

Fed. R. Evid. 502(b)........................................................................................................15

FILED UNDER SEAL

**INTRODUCTION**

Facebook has clawed back nine communications from an April 8-9, 2018 email thread, asserting attorney-client privilege. These communications do not appear, based on their unredacted context, to be attorney-client privileged. First, they do not appear to have been primarily made for the purpose of providing legal advice. Second, they do not appear to have been made confidentially between attorney and client, as a third-party public relations consultant was a recipient of each challenged communication. Finally, Facebook has, despite repeated inquiries, declined to offer specific facts to support its claim of non-waiver over the subject communications—each of which was previously produced in unredacted form outside this litigation, perhaps on several occasions.

Facebook, which bears the burden of proving each aspect of the claimed privilege, has not carried its burden here with respect to any of the communications it seeks to withhold from Plaintiffs. Facebook should be compelled to produce each clawed-back communication in unredacted form.

**BACKGROUND**

On August 20, 2021, Facebook sent Plaintiffs a letter (Ex. A) and supplemental privilege log (Ex. B) seeking to claw back twelve documents. The twelve documents Facebook clawed back— all from a single email thread—include nine distinct communications that Facebook has now redacted on the basis of alleged attorney-client privilege. In the three representative documents submitted with this motion as Exhibits C-E, these redactions are labeled by Plaintiffs with "R1" to "R9" in order to ease the Court's understanding and review. Plaintiffs have not seen the actual underlying communications that Facebook has now redacted but have requested that Facebook produce Exhibits C-E, which comprise all nine challenged redactions, to the Court in unredacted form for *in camera* review.

██████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████. *See* Exs. C-
E. ██████████████████████████████████████
██████████████████████████████████████████

**FILED UNDER SEAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14  Ex. C at PALM-002033287-88; *see also* Ex. D at PALM-002033781; Ex. E at PALM-002033754.
15
16
17
18
19                                                                    Ex. C at PALM-002033287; *see* Ex.
20  F.
21                                                                                              Ex.
22  C at PALM-002033287.
23
24
25
26
27                  *Id.* at PALM-002033286-87.
28

**FILED UNDER SEAL**



*See* Ex. C at PALM-002033286.

. *See* Ex. C at PALM-002033283-85 (redactions R2-R5).

*See id.*

Ex. C at PALM-002033283. None of these emails appear to request or provide legal advice.

. *See* Ex. C at PALM-002033282.

Ex. C at PALM-002033282 (emphasis added).

*Id.*

**FILED UNDER SEAL**

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ██████████████████████████████████ *See* Ex. C at PALM-002033281-88.

4 ██████████████████████████████████████████████████████████

5 ████████████ *See* Ex. C at PALM-002033280-81. ████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████ *See, e.g.*, Ex. C at PALM-002033280 ████████████████████

9 ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████ *id.* at  PALM-002033279 ████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████ Ex. D at PALM-002033773 ████████████████████

14 ████████████████████████████████. It is unclear what is redacted in R7-R8 (in Ex. C)

15 and R9 (in Ex. D), but all information available to Plaintiffs indicates that public relations support

16 for Facebook as a business was the primary, and likely sole, purpose for these communications that

17 Facebook now claims are attorney-client privileged. *See* Ex. C at 2033279-80 (R7 and R8); Ex. D.

18 at PALM-002033773 (R9).

19       On September 10, 2021, Plaintiffs wrote a letter to Facebook challenging its clawback of the

20 redacted communications in Exs. C-E, including on the basis of waiver. *See* Ex. G. Facebook

21 responded that the "documents were produced to the FTC inadvertently" and that Facebook had

22 "also clawed back the documents from the FTC." *See* Ex H. On October 6, 2021, the parties met

23 and conferred, and on October 14, they submitted a joint discovery letter brief. *See* Ex. I. On October

24 26, the Court ordered briefing on the parties' privilege dispute regarding Facebook's August 20,

25 2021 clawback. On November 4, 2021, in response to an email from Plaintiffs, Facebook made

26 representations regarding its contention that Rebecca Hahn of The OutCast Agency—a recipient of

27 each clawed-back communication—████████████████████████████████████████

28 ████████████ *See* Ex. J.

FILED UNDER SEAL

## <u>ARGUMENT</u>

Facebook asserts that nine redacted communications contained in twelve clawed-back documents are attorney-client privileged.[1] "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (cleaned up). Under Ninth Circuit law, "an eight-part test determines whether information is covered by the attorney-client privilege:"

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (cleaned up); *see also Sanmina Corp.*, 968 F.3d at 1116 (reciting same test). "The party asserting the privilege bears the burden of proving each essential element." *Ruehle*, 583 F.3d at 607. Because the attorney-client privilege "contravenes the fundamental principle that the public has a right to every man's evidence, courts construe it narrowly to serve its purposes[.]" *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 850 (N.D. Cal. 2016) (cleaned up). Here, Facebook has not—as it is required to do—satisfied at least three essential elements necessary to establish that these clawed-back communications are privileged.

*First*, Facebook has not shown—and cannot show—that the communications it now claims are attorney-client privileged were made "for the purpose of giving legal advice." Based on the unredacted portions of the clawed-back documents and the recipients of the allegedly privileged communications, it is apparent that the clawed-back communications pertained to a public relations fiasco. What is *not* apparent—nor even, as far as Plaintiffs can tell, possible—is that the email threads in question primarily involve confidential requests for, and ultimately the confidential provision of, *legal advice* by Facebook attorneys to their corporate client. Under Ninth Circuit law, this means the communications in question, even though they involve Facebook attorneys, are *not*

---

[1] Facebook has not asserted work product protection or any other privilege over the twelve clawed-back documents.

**FILED UNDER SEAL**

1   attorney-client privileged. *See In re Grand Jury*, 13 F.4th 710, 713-14 (9th Cir. 2021) (adopting

2   "primary purpose" test to evaluate claims of privilege where attorney-client communications "might

3   have more than one purpose").

4       *Second*, Facebook has not shown that the communications it now claims are attorney-client

5   privileged were in fact made solely and confidentially between attorney and client. "[A] party

6   asserting the attorney-client privilege has the burden of establishing the relationship *and* the

7   privileged nature of the communication." *Ruehle*, 583 F.3d at 607 (emphasis in original). But *every*

8   communication that Facebook now claims is attorney-client privileged was made to a third-party

9   public relations consultant, Rebecca Hahn of The OutCast Agency. █████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ███████████████████████████████  *See* Ex. J at 1. But that does not help with the actual

13  privilege claim here. Either the redacted communications were primarily made for the purpose of

14  giving confidential *legal* advice (in which case Ms. Hahn was a third party, as Facebook makes no

15  claim she was functionally part of its legal team), or the redacted communications were made (as

16  seems evident from their unredacted context) principally for non-legal reasons—*i.e.*, █

17  ████████████████████████████████████████████████████████████

18  █████████████████████████████████████████████████████████ but

19  accepting its claim on that point means that it loses on the privilege issue: Ms. Hahn's presence on

20  every redacted communication lays bare the true nature of what Facebook seeks to claw back.

21      *Third*, Facebook has not established that its past production(s) of the communications it now

22  claims are privileged did not irrevocably waive privilege over these communications. As with every

23  other aspect of the Ninth Circuit test for attorney-client privilege, it is the privilege proponent's

24  burden to establish non-waiver. Facebook has not done so here. It has claimed that its past

25  production(s) of the communications in question was or were "inadvertent," but to this day,

26  Facebook has declined to tell Plaintiffs even *how many times* the clawed-back communications were

27  produced in unredacted form outside of this litigation—let alone when, to whom, and under what

28  circumstances. All Plaintiffs know at this point is that Facebook produced each challenged

**FILED UNDER SEAL**

communication at least one other time, at least two years ago, and outside the context of *any* litigation (let alone this one). And Facebook apparently never sought to claw the information back from *anyone* until mid-2021. To meet its burden to establish non-waiver under Ninth Circuit law, Facebook must explain to whom it previously produced the challenged communications; when; and in what context. Facebook has failed to do so.

I.   **Facebook Cannot Establish That The Redacted Communications Were Primarily Made For The Purpose Of Giving Legal Advice**

Each of the nine clawed-back communications (R1-R9 in Plaintiffs' Exs. C-E) appears in the midst of a lengthy email thread devoted principally—and as far as Plaintiffs can discern from its public portions, entirely—to ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Ex. C at PALM-002033287-88. ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████. *Id.* at PALM-002033286-87. ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. *See id.* at PALM-002033279-88; Ex. D at PALM-002033773.

On April 11, 2018—forty minutes after TechCrunch published a story titled "Zuckerberg claims competition from '8 social apps', but Facebook owns 3," Ex. K, ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

-7-

**FILED UNDER SEAL**

1     ███████████████ Ex. L at PALM-002033644-45).)[2] ████████████

2     ██████████████████████████████████████████████████████

3     ██████████████ *Id.* at PALM-002033644.

4         Given all the above the purpose of the entire email thread in Exs. C-E—and every

5 communication therein—was plainly ████████████████████████████████████

6 ████████████████████████ This is not a legal issue, there do not appear (based on the information

7 available to Plaintiffs) to be within Exs. C-E any requests for confidential legal advice—as opposed

8 to business/communications inquiries to lawyers with historical or contextual knowledge about

9 relevant issues. ████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ███████████████████████████[3] "████████████████████████

13 ████████████████████████[4] ███████████████████████████[5] ████████

14 █████████████████████████████████████████████████████████[6])

15 all indicate a non-legal purpose to the communications in Exs. A-C. *See, e.g.*, *In re Vioxx Prod.*

16 *Liab. Litig.*, 501 F. Supp. 2d 789, 809 (E.D. La. 2007) ("primary purpose" of communications

17 "addressed to both lawyers and non-lawyers for review, comment, and approval" was "not to obtain

18 legal assistance"); *United States v. Chevron Corp.*, 1996 WL 444597, at *2 (N.D. Cal. May 30,

19 1996); *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974). ████████

20 ██████████████████████████████████████████████████████

21 ██████████████████████████████████████████████████████

22 ██████████████████████████████████████████████████████

23 ██████, Ex. L at PALM-002033644, ███████████████████████████████

24

25 _____

26 [2] Plaintiffs do not challenge the non-overlapping redaction in Ex. K, as the Court has ruled such a challenge untimely.

27 [3] Ex. C at PALM-002033287 (emphasis added).

    [4] *Id.* at PALM-002033286.

    [5] *Id.* (emphasis added).

28 [6] *Id.* at PALM-002033281 (emphasis added).

-8-

**FILED UNDER SEAL**

1   ████████ *id.*—indicates that the actual thread, lawyer communications and all, was actually

2   about a ██████, and not anything else. *See, e.g.*, *Breuder v. Bd. of Trustees of Cmty. Coll. Dist.*

3   *No. 502*, 2021 WL 4283464, at *7 (N.D. Ill. Sep. 21, 2021) (noting that "general public relations

4   work . . . falls outside the scope of the narrowly construed attorney-client privilege" and rejecting

5   privilege claim where party did not establish that public relations consultants were "'necessary' to

6   enable counsel to provide legal advice").

7        Given that every redacted communication appears in an email thread solely directed toward

8   a ██████, and not toward any sort of legal proceeding, question, or investigation, it is possible

9   (even likely) that there is no legal purpose *at all* to one or more of the clawed-back communications.

10  The mere inclusion of in-house counsel on these documents does not transform their non-legal

11  nature. *See Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1393 (N.D. Ga. 2017) ("The number

12  of lawyers or non-lawyers to whom a communication was disseminated is not dispositive and a

13  corporation's choices of means and format in the communications between their lawyers and

14  employees cannot limit their adversaries' right of discovery of what otherwise is non-privileged and

15  discoverable." (cleaned up)); *IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL 3876481, at *3 (N.D. Cal.

16  Aug. 18, 2008). Nor does Facebook's casual use of ██████ Ex. C at PALM-002033282, as

17  confirmed by Facebook's choice *not* to redact information under this moniker in the very documents

18  at issue. *See, e.g.*, *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 3050777, at *5 n.7 (C.D.

19  Cal. Feb. 18, 2020) ("[I]nformation does not become privileged merely by marking it as such."); 

20  *United States ex rel. Baklid-Kunz. v. Halifax Hosp. Med. Ctr.*, 2012 WL 5415108, at *6 (M.D. Fla.

21  Nov. 6, 2012). And even for those documents that reflect communications *from* Facebook's in-

22  house counsel, "[i]t is not enough that a document was created by attorneys if the information that

23  it contains was not made for the purpose of facilitating the rendition of legal advice or services,"

24  *i.e.*, "the sort of advice that can be rendered *only* by consulting the legal authorities." *In re Domestic*

25  *Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *6 (D.D.C. Feb. 25, 2020) (emphasis added).

26       Facebook certainly has not met its burden to establish such a purpose from the privilege log

27  it provided (Ex. B), nor from the overall context of the clawed-back documents (Exs. C-E)—and

28  under Ninth Circuit law, it is Facebook's burden to establish that both "the [attorney-client]

**FILED UNDER SEAL**

1  relationship *and* the privileged nature of the communication." *Ruehle*, 583 F.3d at 607 (emphasis in

2  original). Moreover, to the extent Facebook is able to establish *any* connection to an ostensible legal

3  purpose in the redacted communications, the Ninth Circuit demands more: "where an attorney's

4  advice may integrally involve both legal and non-legal analysis," the Ninth Circuit applies the

5  "primary purpose test," in which "courts look at whether the *primary purpose* of the communication

6  is to give or receive legal advice as opposed to business or tax advice." *In re Grand Jury*, 13 F.4th

7  at 713-14. Given the unambiguously non-legal context of the entire thread—from start ████████

8  ██████████  to  finish ████████████████████████████████████████

9  ████—Facebook has failed to show that the redacted comments by attorneys throughout were

10 "primarily" made for the purpose of giving legal advice, as required under Ninth Circuit law.[7]

11 **II.  Each Challenged Communication Was Made To A Third Party Who Was Not A**

12 **Functional Employee With Respect To The Claimed Privilege**

13      Next, even if one or more of the redacted communications was made primarily for the

14 purpose of providing legal advice (which seems unlikely based on the information available to

15 Plaintiffs), there is a separate problem with Facebook's claims of attorney-client privilege over the

16 redacted communications in Exs. C-E: each clawed-back communication was made to a third-party

17 press consultant, Rebecca Hahn of The OutCast Agency. *See* Ex. C at R1-R8; Ex. D at R9.

18      "The transmission of a communication to a party outside the attorney-client relationship

19 destroys the confidentiality of the communication and therefore the privilege may not be invoked

20 as to that communication." *Schaeffer v. Gregory Village Partners*, 78 F. Supp. 3d 1198, 1202 (N.D.

21 Cal. 2015). Here, each clawed-back communication was sent to Ms. Hahn—a person who was not

22 a Facebook employee in April 2018 (or ever). In order to claim attorney-client privilege over the

23 _____

24 [7] The outcome does not change regardless of whether this Court inquires if "*the* primary purpose"
   or "*a* primary purpose" of each redacted communication was to provide confidential legal advice.

25 *See In re Grand Jury*, 13 F.4th at 716-17 (declining to choose between "the primary purpose" or "a
   primary purpose" because "the universe of documents in which the ['a primary purpose'] test would

26 make a difference is limited . . . [and] would only change the outcome of a privilege analysis in truly
   close cases, like where the legal purpose is just as significant as a non-legal purpose"); *cf. Ruehle*,

27 583 F.3d at 607 ("The fact that a person is a lawyer does not make all communications with that
   person privileged. Because it impedes full and free discovery of the truth, the attorney-client

28 privilege is strictly construed." (cleaned up)).

**FILED UNDER SEAL**

1   communications in question—and wholly aside from its burden to establish these communications'

2   legal purpose—Facebook bears the burden of showing that they were sent only "to the client," *i.e.*,

3   Facebook. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). ███████████

4   ████████████████████████████████████████████████████████,

5   Facebook must establish that Ms. Hahn was a "functional employee" of Facebook vis-à-vis the

6   communications in question to claim privilege. *See id.* at 1156-59.

7       On this issue, Plaintiffs have seen no actual evidence from Facebook, but did receive last

8   Thursday, November 4, 2021, a list of assertions that Facebook believes establish that ██████

9   █████████████████████████████████████████████████



25  Ex. J at 1.

26      Facebook provided Plaintiffs no actual evidence in support of the above allegations, so

27  Plaintiffs are unable to do much but take them at face value at this point—although under Ninth

28  Circuit law, the Court must actually evaluate Facebook's *proof* of its assertions about Ms. Hahn.

**FILED UNDER SEAL**

*See Graf*, 610 F.3d at 1157-59 (reviewing evidence and findings of fact relating to functional employee determination); *Schaeffer*, 78 F. Supp. 3d at 1200-02, 1203-05 (evaluating evidence relating to functional employee determination). On this score, Plaintiffs note that Ms. Hahn's own public statements about her work in the years immediately preceding 2018 indicate that she worked out of (and indeed founded) The OutCast Agency's Los Angeles office, and "worked with brands across diverse industries including: Andreessen Horowitz, Facebook, Fifth Wall Ventures, Intuit TurboTax, Instagram, Lyft, Mint.com, the NFL, Oculus, and Tanium." Ex. M at 1.

Based on Facebook's assertions about Ms. Hahn, and Ms. Hahn's own statements about her work while at The OutCast Agency, Ms. Hahn does not closely resemble the consultants found to be "functional employees" for privilege purposes in *Graf* and in *Schaeffer*. For example, in *Graf*, "[e]vidence at trial . . . showed Graf was heavily involved in all facets of the corporation's operations." 610 F.3d at 1153. Although ostensibly a "consultant," there was evidence that the only reason Graf was not hired formally as a company employee was that the state of California had banned him from insurance work, which was the company's business. *Id.*; *see also Schaeffer*, 78 F. Supp. 3d at 1203 (discussing *Graf*). This stands in contrast to Ms. Hahn, who was apparently a consultant in the truest sense of the word—working at (and out of) a third-party public relations agency on behalf of nearly a dozen major accounts, of which Facebook was one. *See* Ex. M at 1; *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 90 (S.D.N.Y. 2019) ("functional equivalent exception" inapplicable where third party lacked "independent decision-making authority, primary responsibility, and . . . *had numerous other customers*" (emphasis added and cleaned up)); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 215 (E.D.N.Y. 2019) (consultants not "functional employees" where they "likely served as consultants for other companies"); *Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *4 (D. Mass. Mar. 28, 2018) (consultants not functional employees where "not obligated to work exclusively for Zebra"); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *5 (S.D.N.Y. Jan. 24, 2018).

In *Schaeffer*—and in several cases analyzed by the Court in that decision—the consultants found to be functional employees with respect to allegedly privileged communications had specific legal bents to their responsibilities at the corporations in question. For example, in *In re Bieter Co.*,

-12-

**FILED UNDER SEAL**

16 F.3d 929 (8th Cir. 1994), "the consultant was intimately involved in the subject matter of litigation," *Schaeffer*, 78 F. Supp. 3d at 1203; in *In re Copper Market Antitrust Litigation*, 200 F.R.D 213 (S.D.N.Y. 2001), "the court found that the privilege extended to litigation-related communications to and from a public relations firm a corporation hired to respond to actual and anticipated litigation" *Schaeffer*, 78 F. Supp. 3d at 1203; and in *Schaeffer* itself, the consultant in question was hired amidst potential litigation and "acted as the public face of the company and provided information to [the company's] legal staff that was useful and necessary to evaluate legal strategy for the company going forward," *id.* at 1204. As a result, the consultant "acted as [the company's] functional employee *for the purpose of the attorney-client privilege.*" *Id.*

On this last score, Ms. Hahn's responsibilities and role stand in contrast to the cases cited and applied in *Schaeffer*, and to *Schaeffer* itself. ███████████████████████████████ ████████████████████████████████████████████████████████████████████ *See* Ex. J. ████████████████████████████████████ regarding Ms. Hahn's role in Facebook's legal strategy, or on Facebook's legal team. *See id.* ████████████████████████ ████████████████████████████████████████████████, which explains her presence throughout the decidedly non-legal communications in Exs. C-E. This is similar to the *Calvin Klein* case discussed in *Schaeffer* (*see Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53 (S.D.N.Y. 2000)), in which "the communications at issue appeared on their face to be routine suggestions from a public relations firm as to how to put the 'spin' most favorable to Calvin Klein on successive developments in the ongoing litigation." *Schaeffer*, 78 F. Supp. 3d at 1204 (cleaned up). "The [*Calvin Klein*] court found that few, if any of the documents in issue appear to contain or reveal confidential communications from the underlying client made for the purpose of obtaining legal advice." *Id.* (cleaned up).

So too here: even taking Facebook at its word, there is *no* evidence that Ms. Hahn was functionally part of Facebook's *legal* team, and thereby could be privy to confidential attorney-client communications for a *legal* purpose—and this makes perfect sense given the overall context of the challenged communications as non-legal in nature. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 2019 WL 1950381, at *6 (N.D. Cal. May 1, 2019) ("the

-13-

**FILED UNDER SEAL**

1 dispositive question [for the functional employee inquiry] is the consultant's relationship to the

2 company and whether by virtue of that relationship she possesses information about the company

3 that would assist the company's attorneys in *rendering legal advice*" (emphasis added and cleaned

4 up)); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 964 (N.D. Ill. 2009) (not

5 "functional equivalent" of employees where consultants' work not "necessary to assist counsel in

6 rendering legal advice"). ████████████████████████████████

7 ████████████████████████████████████████. Ms. Hahn's—a non-member of

8 the legal team, functional or otherwise—████████████████████████

9 ████ simply underscores that Exs. C-D do not contain any confidential attorney-client

10 communications made primarily for the purpose of legal advice.

11 **III.** **Facebook Previously Produced The Challenged Communications, And Has**

12 **Offered No Facts To Establish Its Past Production Was Inadvertent**

13 Each of the challenged communications was previously produced in unredacted form at least

14 once, outside the context of this litigation. For example, Facebook admittedly produced each of the

15 challenged communications to the Federal Trade Commission in 2019 as part of a civil investigation.

16 Ordinarily, such a disclosure would waive privilege over the produced information. *See In re Pacific*

17 *Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012); *see also Church & Dwight Co. v. Mayer Lab'ys,*

18 *Inc.*, 2011 WL 6119146, at *1 (N.D. Cal. Dec. 8, 2011) (prior production to FTC waived privilege

19 in subsequent private antitrust litigation); *United States v. Paulus*, 2021 WL 4494607, at *7 (E.D.

20 Ky. Sep. 30, 2021) (determining that production of documents to government in prior investigation

21 "resulted in waiver of both attorney-client and work product privileges" in subsequent litigation,

22 and Rule 502(d) clawback order entered in subsequent litigation did not "retroactively limit the

23 effect of [producing party's] disclosure" of documents in prior investigation because 502(d) order

24 "cannot govern an entirely separate disclosure that occurred in a different proceeding.").

25 It is Facebook's burden under Ninth Circuit law to *establish* (not just assert) non-waiver.

26 *See, e.g.*, *Ruehle*, 583 F.3d at 607-08 ("unless the protection be waived" is one of the eight essential

27 elements of attorney-client privilege, and "[t]he party asserting the privilege bears the burden of

28 *proving each essential element*" (emphasis added)). However, despite months of requests by

-14-

**FILED UNDER SEAL**

1  Plaintiffs, Facebook has declined to offer *any* specific facts regarding its past production(s) of the
2  challenged communications. *See* Ex. J at 1-7; Ex. N; Ex. O. Facebook has refused to even identify
3  to Plaintiffs (i) every entity Facebook previously produced these communications to; (ii) the dates
4  and other circumstances of those production(s); (iii) when and how a clawback communication was
5  made to those other entities; (iv) the circumstances of Facebook's review prior to previously
6  producing the communications in question; or (v) any specific facts at all to support Facebook's
7  claim that its previous production(s) of the information Facebook now claims privilege over was (or
8  were) "inadvertent." *See id.* This has made it impossible for Plaintiffs to actually rebut (or even
9  evaluate) Facebook's claim of inadvertent production in this brief—even though Plaintiffs
10  specifically asked for this information in order to draft this brief, most recently on November 2,
11  2021. *See* Ex. J at 3. And unless Facebook offers actual evidence on inadvertence—including at
12  minimum the basic facts outlined above—in its submission to the Court, it will have run afoul of its
13  evidentiary burden to establish non-waiver over the contested communications. *See Ruehle*, 583
14  F.3d at 607-08; *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *3-*7 (N.D. Ill. Jun. 30,
15  2017) (analyzing evidentiary support for claim of inadvertence); *Coles Wexford Hotel, Inc. v.*
16  *UPMC and Highmark, Inc.*, 2016 WL 462856, at *1-*3 (W.D. Pa. Feb. 8, 2016) (same); Fed. R.
17  Evid. 502(b).

18  <u>**CONCLUSION**</u>

19      For the foregoing reasons, the redacted communications in Exs. C-E are not attorney-client
20  privileged, and Facebook should be compelled to produce each of the documents listed in Ex. B to
21  Plaintiffs in fully unredacted form.

22

23

24

25

26

27

28

**FILED UNDER SEAL**

1  DATED:  November 8, 2021

2

By:    _/s/ Brian J. Dunne_
3  **BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
4   yavar@bathaeedunne.com
Edward M. Grauman (admitted *pro hac*
5  *vice*)
  egrauman@bathaeedunne.com
6  Andrew C. Wolinsky (admitted *pro hac*
*vice*)
7   awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
8  New York, NY 10022
(332) 206-7668
9
Brian J. Dunne (Bar No. 275689)
10   bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
11  Los Angeles, CA 90071
(213) 462-2772
12

13  **SCOTT + SCOTT ATTORNEYS AT LAW
LLP**
14  Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
15  230 Park Avenue, 17th Floor
New York, NY 10169
16  (212) 223-6444

17  Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
18  David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
19  Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
20  600 W. Broadway, Suite 3300
San Diego, CA 92101
21  (619) 233-4565

22  Patrick J. McGahan (admitted *pro hac
vice*)
23   pmcgahan@scott-scott.com
Michael P. Srodoski (admitted *pro hac
24  vice*)
  msrodoski@scott-scott.com
25  156 South Main Street, P.O. Box 192
Colchester, CT 06415
26  (860) 537-5537

27

28

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit (admitted *pro hac vice*)
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Manisha M. Sheth (admitted *pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman (admitted *pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (admitted *pro hac vice*)
  aswagner@locklaw.com

-16-

**FILED UNDER SEAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
(310) 474-9111

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (admitted *pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (admitted *pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
(215) 592-1500

*Interim Counsel for the Advertiser Class*

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

**FILED UNDER SEAL**

1

## <u>ATTESTATION OF BRIAN J. DUNNE</u>

2

   This document is being filed through the Electronic Case Filing (ECF) system by attorney

3  Brian J. Dunne.  By his signature, Mr. Dunne attests that he has obtained concurrence in the filing

4  of this document from each of the attorneys identified on the caption page and in the above signature

5  block.

6

   Dated: November 8, 2021          By   _/s/_ Brian J. Dunne _____

7                                               Brian J. Dunne

8

9

10

## <u>CERTIFICATE OF SERVICE</u>

11

   I hereby certify that on this 8th day of November 2021, I electronically transmitted the

12  foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be

13  electronically served on all attorneys of record.

14

                                By   _/s/_ Brian J. Dunne _____

15                                               Brian J. Dunne

16

17

18

19

20

21

22

23

24

25

26

27

28