# EXHIBIT I

October 14, 2021

The Honorable Virginia K. DeMarchi
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   Joint Discovery Letter Brief re: Privilege Dispute
      *Maximilian Klein et al. v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.)

Dear Judge DeMarchi:

Pursuant to the Court's Standing Order for Civil Cases, the Consumer Plaintiffs, the Advertiser Plaintiffs, and Defendant Facebook, Inc. ("Facebook") respectfully request that the Court resolve a dispute concerning Facebook's Clawback Notices dated June 2, 2021, July 13, 2021, August 17, 2021, and August 20, 2021.

## STATEMENT OF THE DISPUTE

In June–August, Facebook clawed back twenty-nine documents and portions of fifty-four others as privileged. Plaintiffs contend that Facebook's prior disclosure(s) waived privilege; that Facebook has not established that Fed. R. Evid. 502(b) applies to its past disclosure(s); and that certain communications Facebook now asserts are privileged are non-privileged on their face. Facebook contends that Plaintiffs' challenges are untimely and meritless under the 502(d) Order; that there was no waiver because prior production was inadvertent; and that the merits of the underlying privilege issue are not ripe.

### 1. Plaintiffs' Position

*Overview*

In a series of letters, Facebook has sought to claw back as attorney-client privileged forty-one documents in which Facebook and a third-party PR consultant discuss a press inquiry. Facebook previously produced all of these documents to the FTC (and perhaps others) in response to a 2019 CID and voluntary production letter. These documents are non-privileged on their face, and the Court should order their production on this basis alone. However, even if any portion was privileged at one point, Facebook waived such privilege through its voluntary production to regulators several years ago.

Facebook asserts that its past disclosure(s) to regulators were "inadvertent," yet has offered no specific facts, let alone evidence, to establish nonwaiver—an evidentiary inquiry for which Facebook bears the burden of proof. A review of the documents' redacted portions makes clear why: the documents do not seek or provide legal advice. Indeed, *every* redaction in the forty-one

1

documents is applied to communications that include *a non-lawyer third party*—a PR consultant—and were therefore never privileged.

Instead, Facebook asserts that the 502(d) order in this case permits the creation of a springing privilege for documents that were non-privileged before this action ever began—whether through the documents' contents (non-confidential, non-legal communications) or through their disclosure years ago outside this action. This is wrong. Rule 502(d) itself limits its application to "disclosure connected with the litigation pending before the court"—and Facebook does not dispute that all the information it has repeatedly sought to claw back since June was previously produced to the FTC (and potentially other entities).[1]

*Facebook's Attempt to Shield Facially Non-Privileged Documents*

The documents in question are non-privileged on their face.[2] For example, all forty-one documents in Vols. 3 and 4—apparently produced to the FTC without redactions in response to a 2019 CID—are from the same April 2018 email thread wherein a group of Facebook employees *and a third party*—Rebecca Hahn of The Outcast Agency, a non-lawyer from an outside PR firm—discuss Facebook's response to a forthcoming TechCrunch article regarding "Facebook's history of removing Find Friends access from apps that replicate core functionality or don't share content back." Hahn and Facebook's legal and non-legal teams discuss issues like:

> [Q:] [The reporter] is pushing on the list of apps against which we enforce our policy. We can not comment—but my q is whether or not he will be able to figure out which ones we do this for? – is there any way this could happen, other than talking to the app developers?
>
> [A:] He can't figure this out on his own. He can ask developers but there isn't an independent way for him to find this out.

PALM-002033234. Hahn, a third-party non-lawyer, is on *every single communication* clawed back by Facebook as "attorney-client privileged" on August 17 and 21. The subject of *all* these documents appears to be public relations triage—hence Hahn's presence—precipitated by a 2018 press inquiry into some of the very facts that Plaintiffs here allege Facebook fraudulently concealed, and which Facebook claims were publicly known by 2015.

---

[1] Facebook concedes Plaintiffs' September 10 challenge to the August 20 clawback is timely. But Plaintiffs' challenges to *all* FTC-related clawbacks are timely, since Facebook clawed back related documents *until* August 20. Any delay in resolving this dispute is attributable to Facebook's refusal to provide Plaintiffs the information necessary to properly evaluate its privilege claim. Anyhow, the clawback order here cannot create any privilege or revive one that was waived in earlier proceedings. Again, Rule 502(d) says this directly.

[2] Plaintiffs' challenge to the merits of Facebook's privilege claim is not, as Facebook asserts, a "sandbag." Presumably, Facebook formulated its position as to why it believes the challenged documents are in fact privileged when it decided to claw them back. The fact Facebook won't articulate this position to the Court is notable.

Attorney-client protection requires a "communication to be made for the primary purpose of securing either a legal opinion or legal services[.]" *In re Grand Jury*, __ F.4th __, 2021 WL 4143102, at *4 n.3, *5 (9th Cir. 2021) (internal citation omitted). Here, the documents appear to instead seek and provide "insight," "rationale," and "knowledge on how we've previously externally messaged the policy[.]" PALM-002033147–48, PALM-002033151. Far from having a "primary" purpose of seeking or providing legal advice, these communications involve *no* legal advice. *See In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 809 (E.D. La. 2007) (communications "for review, comment, and approval" are "not to obtain legal assistance"); *In re Grand Jury*, 2021 WL 4143102, at *1-*5; *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24-25 (9th Cir. 1981). The constant involvement of Hahn, a PR professional, elucidates the non-legal nature of these documents. *See Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2021 WL 4283464, at *7 (N.D. Ill. Sept. 21, 2021) ("general public relations work" not privileged). Moreover, Hahn's inclusion waives any privilege. *See Lights Out Holdings*, *LLC* v. *Nike, Inc.*, 2015 WL 11254687, at *3 (S.D. Cal. May 28, 2015) ("Disclosing confidential information to a third party, such as a public relations firm, generally waives privilege.").

Additionally, the mere inclusion of in-house counsel on the documents does not transform their non-legal nature. *See IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL 3876481, at *3 (N.D. Cal. Aug. 18, 2008) ("merely copying an attorney on an email" does not establish privilege). Nor does Facebook's casual use of "A/C Priv," which Facebook's documents confirm is often either a tactic to shield documents, or immaterial (as confirmed by Facebook's *post facto* choice *not* to redact information under this moniker in the challenged documents, as in PALM-002033558). *See SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 3050777, at *5 n.7 (C.D. Cal. Feb. 18, 2020) ("[I]nformation does not become privileged merely by marking it as such.").

*Facebook Has Offered No Evidence Supporting Its Privilege Claims*

Facebook's claim that the 502(d) order in this case somehow creates privilege that never existed or revives privilege waived in *prior proceedings* by *prior disclosure(s)* is wrong, and Facebook's selective reliance on excerpts from the 502(d) order and the hearing transcript is misplaced. The Court's resolution of the prior 502(d) dispute makes clear the 502(d) order is forward-looking. Dkt. 105 at 2-3 ("the order applies to documents and accompanying metadata produced or disclosed *in this action*" (emphasis added)). That is consistent with other courts' determinations that a 502(d) order in a subsequent case does not create or revive privilege that was waived when a party produced documents to a regulator in a prior investigation. *See United States v. Paulus*, 2021 WL 4494607, at *7 (E.D. Ky. Sept. 30, 2021) (compelling production because 502(d) order "cannot govern an entirely separate disclosure that occurred in a different proceeding"). Here, the "disclosure" appears to have been in 2019, to the FTC, in that agency's investigation. Any privilege was therefore waived *at that time, in that proceeding.* In fact, 502(d) itself limits its application to "disclosure connected with the litigation pending before the court."

Nor does Facebook's incantation of the word "inadvertent" establish nonwaiver. Under Rule 502(b), "[t]he producing party bears the burden of showing compliance." *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 28234535, at *5 (N.D. Ill. Sept. 30, 2017) (citations omitted); *see Weil*, 657 F.2d at 24-25. Yet Facebook has offered *no* evidence on *any* Rule 502(b) prong here. Facebook has refused to provide Plaintiffs the basic who-what-when-where-why of its collection, review, production, and correspondence regarding the 2019 FTC CID(s)—and potentially other

3

"inadvertent" productions of the same information since—to permit Plaintiffs (and the Court) to evaluate Facebook's claim of inadvertent disclosure; of reasonable steps to prevent disclosure; and of reasonable steps to rectify the error. This wholesale evidentiary failure—which stands in contrast to sworn evidentiary submissions in cases finding Rule 502(b) satisfied (*e.g.*, *Viamedia*)—makes clear that Facebook cannot claim the benefit of "inadvertent disclosure" as to any of the information it disclosed years ago in other proceeding(s). *See In re Pacific Pictures Corp.*, 678 F.3d 1121, 1130 (9th Cir. 2012) (whether party "chose not to assert the privilege when it was appropriate to do so is . . . relevant to the waiver analysis"); *Church & Dwight Co. v. Mayer Lab'ys, Inc.*, 2011 WL 6119146, at *1 (N.D. Cal. Dec. 8, 2011) (prior production to FTC waived privilege in subsequent private antitrust litigation).

*Requested Resolution*

Plaintiffs request that the Court order that: (1) the documents in Vols. 3 and 4 be produced unredacted to Plaintiffs because they are not privileged on their face; (2) the documents in, at least, Vols. 1 and 2 be produced to the Plaintiffs in unredacted form because any applicable privilege was waived by their disclosure to regulators; and (3) if Facebook seeks to claw back any information previously produced outside this litigation going forward, it must make an appropriate evidentiary submission to Plaintiffs to allow a proper, prompt evaluation of any assertion of "inadvertent" disclosure.

**2. Facebook's Position**

Plaintiffs' position mocks the Court's processes and is meritless. Through unexcused delay, Plaintiffs waived their challenges. Even if timely, the challenges fail because Facebook's clawbacks complied with the 502(d) Clawback Order, Dkt. 107, and because Facebook's inadvertent production to the FTC did not waive privilege. Finally, Plaintiffs' last-ditch effort to interject a dispute on the merits of Facebook's underlying privilege claim—a dispute they did not raise before this filing—should be rejected.

*Plaintiffs Waived Their Challenges*

Consistent with the 502(d) Order, Dkt. 107, Facebook informed Plaintiffs on June 2, July 13, August 12, and August 20 that it had identified protected or privileged information among the more than 12 million pages produced to the FTC and re-produced here.

Upon receiving these Notices, Plaintiffs had 14 business days to challenge. Dkt. 107 § 2(c). Plaintiffs, however, waited 69 business days after the June 2 Notice, 42 business days after the July 13 Notice, and 20 business days after the August 12 Notice to challenge.

Plaintiffs have no defense to their untimeliness, other than their assertion that any delay is attributable to Facebook's failure to provide Plaintiffs information they requested. That is untrue: Plaintiffs sent a letter asking if information clawed back on July 13 had been produced to the FTC. July 29 Dunne Letter. Facebook responded to that letter within four business days to confirm that it had been. Aug. 4 Callan Letter. Plaintiffs then did nothing for the next ***thirty-six days***. Sept. 10 Dunne Letter.

4

Then, after Facebook promptly responded to the September 10 challenge, Plaintiffs compounded their delay by failing to meet-and-confer within the 14 business days the Order prescribes. Plaintiffs did not even inquire about scheduling until the 14th business day, and proposed that the parties actually meet-and-confer five days later. September 30 Williamson Email. Facebook nonetheless agreed to meet as a courtesy.

Plaintiffs' clawback challenges are untimely twice over, and should not be considered.

*The 502(d) Order Permits These Clawbacks*

The 502(d) Order preempts the Plaintiffs' dispute. That Order states: "the production or disclosure of any documents … protected from discovery … does not result in the waiver of any privilege or protection … as to the receiving parties or any third parties in this or in any other state or federal proceeding." Dkt. 107 at 2. As this Court observed, the production of millions of pages to the FTC, and the subsequent re-production of those documents here, are "exactly the situations that 502(d) was adopted to address." May 25 Hr'g Tr. 6:23-24. That protection was critical because Facebook had to reproduce 12 million pages of documents to Plaintiffs without any opportunity to systematically re-review them for privilege. *Id.* at 11:11-13.

When the parties met and conferred, Plaintiffs argued that solely because Facebook produced the materials at issue to the FTC, it waived privilege and can never claw any of them back. But that directly contradicts this Court's recognition that Facebook might discover privileged information in the documents produced to the FTC, and that Facebook would be able to claw that information back upon discovery.

Plaintiffs' primary case, *Pacific Pictures Corp.*, involved the distinguishable situation where the producing party "solicited [a] subpoena and chose not to assert the privilege when it was appropriate to do so," 679 F.3d at 1130; under those circumstances, the party could not use privilege to shield the documents from production in subsequent civil litigation. That is a far cry from this case, where documents were inadvertently produced to the FTC, and where Facebook clawed those documents back from both the FTC and Plaintiffs. And the only other case Plaintiffs cite is entirely unrelated. *See Church & Dwight*, 2011 WL 6119146, at *1 (discussing the impact of confidentiality agreements on waiver).

Perhaps recognizing that the Rule 502(d) Order undermines their challenge, Plaintiffs argue that Rule 502(b), rather than the 502(d) Order, governs. Not so. The 502(d) Order is express that "502(b) does not apply to any disputes regarding Protected Documents," and that the Order "provides the maximum protection allowed by" Rule 502(d). Dkt. 107 at 2. This is the express purpose of a 502(d) order; Rule 502(d) itself "recognizes that the default test set forth in subsection (b) may be superseded by court order or by agreement of the parties." *In re Testosterone Replacement Therapy Prods. Liability Litig.*, 301 F. Supp. 3d 917, 924 (N.D. Ill. 2018).

The 502(d) Order was intended to preempt these kinds of disputes—which waste the parties' and the Court's resources. *See In re Processed Egg Products Antitrust Litig.*, 2014 WL 6388436, at *7 (E.D. Pa. Nov. 17, 2014). Plaintiffs' attempt to circumvent that Order should be rejected.

*Rule 502(b) Compels The Same Result*

5

Even if the 502(d) Order does not apply, there was no waiver. First, the FTC is bound by regulation to treat clawed-back documents as privileged until any dispute concerning those documents is resolved. 16 C.F.R. § 2.11(d)(1)(ii). And second, under 502(b), inadvertent disclosure does not waive privilege where the producing party took reasonable steps to prevent the disclosure and rectify the error. Fed. R. Evid. 502(b). The facts below—all of which have been disclosed to Plaintiffs notwithstanding their protestations—make clear there is no waiver.

**Inadvertence.** The clawed-back material was among more than 12 million pages produced to the FTC. High-volume productions are the textbook application of Rule 502(b). Explanatory Note, Fed. R. Evid. 502(b). Indeed, *Plaintiffs* acknowledged that "where there's a mass production like Facebook has done here … we would be very hard pressed to make a case to your Honor that any production in there was intentional as opposed to inadvertent." May 25 Hr'g Tr. 7:10-12; *see also Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1091-1092 (N.D. Cal. 2009) (Where "a massive amount of documents [are] swapped during discovery," "inadvertent disclosure is likely."). It is unclear why they have changed positions now.

**Reasonable Steps.** Facebook also took reasonable steps to prevent disclosure of privileged information. Facebook conducted a pre-production privilege review that generated an extensive privilege log, which was then provided to Plaintiffs. Such review constitutes reasonable steps to prevent disclosure. *Njenga v. San Mateo Cty. Superintendent of Sch.*, 2010 WL 1261493, at *17 n.2 (N.D. Cal. Mar. 30, 2010).

Facebook has also taken reasonable steps to rectify its error by clawing back privileged material once it comes to Facebook's attention. As an illustrative example, Facebook learned that privileged material had been inadvertently produced when Plaintiffs sent a Production Notice identifying certain documents. July 29 Srodoski Email. Facebook reviewed those documents and clawed back the privileged portions on August 12. Aug. 12 S. Mehta Letter. This is precisely the process contemplated by the 502(d) Order.

**Facebook Acted Promptly.** Plaintiffs suggest that Facebook did not act reasonably because Facebook clawed back documents years after production, once they came up in this litigation (e.g., after the Production Notice). But whether the clawbacks were prompt turns not on when the documents were produced, but instead on when the producing party "discovered the inadvertent disclosure." *Njenga*, 2010 WL 1261493, at *17 n.2. Only at that point—once a privileged document has gone from "1 in a pile of 12 million" to something that a party is "intentionally relying on," May 25 Hr'g Tr. 12:8, 17-18—does the producing party have an "obvious indication[] that a protected communication or information has been produced inadvertently," Explanatory Note, Fed. R. Evid. 502(b). And only at that point is the party obliged to claw the document back or risk waiver.

*The Court Should Not Reach The Merits Of Plaintiffs' Challenge*

Throughout multiple rounds of correspondence and the meet-and-confer prior to this filing, Plaintiffs argued only that production to the FTC waived privilege. *See, e.g.,* Sept. 10 Dunne Letter. Facebook repeatedly asked Plaintiffs to explain their challenge and to identify any authority that supported their position. Not once did Plaintiffs raise the issue that now dominates their brief: whether the underlying documents were privileged to begin with.

6

Plaintiffs waived any challenge to Facebook's substantive privilege claim by declining to address it through the process the 502(d) Order prescribes. The "lack of a meet and confer" on this issue "was not due to lack of opportunity," rather, it seems "an apparent attempt to sandbag." *Perry v. Brown*, 2019 WL 6888048, at *2 (C.D. Cal. June 11, 2019) (denying motion for failure to comply with meet-and-confer requirement).

Should the Court determine that Plaintiffs have not waived the merits of their privilege claim, Facebook respectfully requests to submit additional briefing concerning whether Rebecca Hahn's inclusion on the emails waived privilege. For now, Facebook notes that sharing confidential information with a functional employee like Hahn (who was integrated into the in-house communications team) does not waive privilege. *Schaeffer v. Gregory Vill. Partners*, 78 F. Supp. 3d 1198, 1202-1203 (N.D. Cal. 2015). Facebook would have explained that to Plaintiffs had the argument been raised before this brief.

* * *

Plaintiffs' request is meritless. Their ever-shifting arguments should be summarily rejected.

### NEED FOR HEARING

Plaintiffs believe that a hearing would assist the Court in resolving this dispute, because the issues involved are important and potentially recurring—particularly Facebook's positions regarding the privilege dispute process and the effect of the 502(d) order on privilege issues arising from disclosures outside of this case. Plaintiffs are available to present these issues to the Court at the Court's convenience.

Facebook defers to the Court regarding the need for a hearing. To the extent that a hearing would assist the Court in resolving the parties' dispute, Facebook will present these issues to the Court at the Court's convenience.

### RELEVANT DATES

The fact discovery cut-off for these consolidated actions is September 2, 2022. Dkt. 115. The expert discovery cut-off for these consolidated actions is November 4, 2022. *Id.*

### COMPLIANCE WITH MEET-AND-CONFER REQUIREMENT

The parties conferred about this dispute by Zoom on October 6, 2021. Participants included: Shana Scarlett (Co-Lead Interim Consumer Class Counsel); Yavar Bathaee (Co-Lead Interim Advertiser Class Counsel); and Sonal Mehta and David Gringer (lead counsel for Facebook). Additional counsel attended.

DATED: October 14, 2021

By /s/ Brian J. Dunne
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky (*pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 462-2772

By /s/ Kristen M. Anderson
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415

Respectfully submitted,

By /s/ Stephen A. Swedlow
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

By /s/ Shana E. Scarlett
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

8

Telephone: (860) 537-5537
**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500


**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Rachel Johnson (Bar No. 331351)
  rjohnson@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111


*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

*Interim Counsel for the Consumer Class*


By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Defendant Facebook, Inc.*

## ATTESTATION OF BRIAN J. DUNNE

This document is being filed through the Electronic Case Filing (ECF) system by attorney Brian J. Dunne. By his signature, Mr. Dunne attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: October 14, 2021      By:   */s/ Brian J. Dunne*
                                                  Brian J. Dunne

## CERTIFICATE OF SERVICE

I hereby certify that on this fourteenth day of October 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: October 14, 2021      By:   */s/ Brian J. Dunne*
                                                  Brian J. Dunne