WILMER CUTLER PICKERING
 HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FACEBOOK, INC., a Delaware Corporation headquartered in California,<br><br>　　　　　　　　　　Defendant. | Case No. 5:20-cv-08570-LHK<br><br>**DECLARATION OF MICHAEL KIRKLAND IN SUPPORT OF FACEBOOK INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>Judge: Hon. Lucy H. Koh |

I, Michael Kirkland, declare as follows:

1. I am currently a Vice President of Technology Communications for Defendant Facebook, Inc.[1] I have been employed by Facebook since September 2011 and have been in my current position since March 2019. Over the course of my employment at Facebook, I have acquired personal knowledge of Facebook's reliance on an outside marketing agency specializing in digital, communications, and creative services, The OutCast Agency ("OutCast"), and specifically Rebecca Hahn, to assist with Facebook's communications strategies.

2. I submit this Declaration in support of Facebook Inc.'s Opposition to the Motion to Compel in the above-captioned case. It is my understanding that the documents at issue [PALM-002018614-20, PALM-002018621-27; PALM-002018628-34; PALM-002033146-52; PALM-002033279-88; PALM-002033310-6; PALM-002033543-47; PALM-002033748-54; PALM-002033773-81; PALM-002033782-87; PALM-002033788-92; PALM-002033793-98] all include redactions related to communications between Facebook attorneys and employees. I have been asked to provide this declaration because Rebecca Hahn, who I worked with before and during the relevant time and who was managed by my former colleague, ▓▓▓▓▓▓▓, was included or copied on the communications at issue.

3. The contents of this declaration are based on my personal knowledge of Facebook's relationship with OutCast and interactions with Rebecca Hahn specifically, as well as materials that were provided to me and reviewed by me, or conversations with other knowledgeable Facebook employees. During the past ten years as a member of Facebook's communications team, I have worked with OutCast generally, and Rebecca Hahn specifically, on issues concerning Facebook communications relating to Facebook products, technology, or platform matters, among other issues. If called upon as a witness in this action, I could and would testify competently thereto.

4. OutCast has been one of Facebook's primary communications firms for over a decade, and has worked jointly during that period. Notably, a number of OutCast employees have

---

[1] On October 28, 2021, Facebook, Inc. changed its company name to Meta Platforms, Inc. I will refer to the company as Facebook, however, given that was the company name during the relevant time period.

1  subsequently been employed by Facebook as full-time employees, including in leadership
2  positions. For example, ▮▮▮▮▮▮▮▮, the founder of OutCast, served as Facebook's head of
3  communications for over eight years.

4  5. Ms. Hahn was a partner and Vice President at OutCast. From June 1, 2011 until
5  May 21, 2018 while employed by OutCast, Ms. Hahn was classified internally at Facebook as a
6  contingent worker. Throughout her time classified as a contingent worker by Facebook, Ms. Hahn
7  was an integral member of Facebook's communications team. At the time Hahn began working
8  for Facebook, its communications team had fewer than approximately 30 members, and some areas
9  of the business lacked any dedicated communications support. OutCast was retained to fill the
10 gap where full-time Facebook employees were not available. In this way, OutCast functioned
11 similar to a staffing agency.

12 6. In April 2018, the relevant period of the documents identified above, Ms. Hahn
13 worked on matters related to the Facebook platform. Also at that time, Ms. Hahn was the Account
14 Manager for the relationship between OutCast and Facebook, and was one of only two partners
15 from OutCast working on Facebook issues. Ms. Hahn was the most experienced member of the
16 OutCast team, both overall and with respect to addressing Facebook matters. Based on that level
17 of experience, Ms. Hahn was routinely entrusted with important matters for the Facebook
18 communications team, and I and my Facebook colleagues relied on her to execute assignments as
19 if she were just like any other Facebook employee, frequently working with the business
20 independently without a member of the Facebook communications team present. With respect to
21 the documents in question here, Ms. Hahn was included because she was assisting in preparing
22 Facebook's response to a press inquiry regarding platform issues—an area of the business she had
23 provided communications support for several years. As part of this role, Ms. Hahn participated in
24 communications with attorneys to understand and facilitate what information to include or exclude,
25 in part based on legal advice provided by those attorneys.

26 7. In her role as a senior member of OutCast and a contingent worker for Facebook,
27 Ms. Hahn had access to a number of Facebook communications and record-keeping systems,
28 similar to full-time Facebook employees, housing confidential or sensitive Facebook information.

1  Some of her peers at OutCast shared that same access.  Ms. Hahn's access to Facebook information
2  was subject to a non-disclosure agreement and was also restricted by confidentiality terms in the
3  Professional Services Agreement between Facebook and OutCast.  With respect to Ms. Hahn
4  personally, Facebook trusted her with handling sensitive and difficult projects including relying
5  on her and staffing her on major events for the company as a communications representative,
6  including at Facebook's annual F8 conference for developers and entrepreneurs and Oculus
7  connect events.  We also relied on Ms. Hahn to help staff Facebook executives for key media
8  interviews, and she served as the communications point person for interacting with many reporters.
9  Given her experience, the team did not hesitate to allow Ms. Hahn to interact with third-parties on
10 Facebook's behalf like a full-time employee member of the Facebook communications team and
11 shared information with her that the team understood would also be kept confidential pursuant to
12 non-disclosure and confidentiality terms.

13         8.      Ms. Hahn had badge access to Facebook facilities and routinely spent time on-site
14 at Facebook's campus, coming up from her home in Los Angeles several times a month to spend
15 the day working at the Facebook headquarters in Menlo Park.  During on-site visits, Ms. Hahn
16 would sit with the other members of the communications team.  Given the significance of OutCast
17 to the Facebook communications team, we had dedicated desk space for OutCast employees for
18 several years.  Ms. Hahn, and other OutCast team members, were also part of the communications
19 team for extracurricular activities.

20         9.      As part of her responsibilities, Ms. Hahn would often draft or comment on press
21 releases, communications plans, or responses to the press, as well as attend weekly or regular
22 communications team meetings.  As part of her responsibilities, Ms. Hahn would be included in
23 communications with attorneys seeking legal advice on such releases or communications plans
24 from Facebook before speaking on behalf of the company.

25         10.     Ms. Hahn, along with other members of the OutCast staff, was functionally
26 integrated into Facebook's communications staff and had responsibility and authority that was
27 indistinguishable from Facebook employees to outside observers.  For example, senior OutCast
28 employees, including Ms. Hahn, would routinely interact with members of the press on Facebook's

behalf.  In my experience, those members of the press rarely distinguished between a Facebook representative from OutCast or a Facebook employee.  The same was true of some Facebook employees outside the communications department.

11.   In short, in my time working with her, Ms. Hahn was an integral member of our communications team, and, despite being employed by OutCast, was integrated, regarded and acted equivalently to a full-time Facebook employee within the communications department.

I declare that the foregoing is true and correct under penalty of perjury.

Executed on this 22nd day of November, 2021, in Walnut Creek, California.

By: _____
       MICHAEL KIRKLAND