**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 5:20-cv-08570-LHK |
| Plaintiffs, | **FIFTH JOINT CASE MANAGEMENT STATEMENT** |
| vs. | The Hon. Lucy H. Koh |
| FACEBOOK, INC., | Hearing Date:  December 8, 2021 at 2:00 p.m. |
| Defendant. | |
| This Document Relates To: All Actions | |

**<u>FIFTH JOINT CASE MANAGEMENT STATEMENT</u>**

In advance of the December 8, 2021, Case Management Conference, counsel for the putative Consumer and Advertiser Classes and defendant Facebook, Inc. respectfully submit this Fifth Joint Case Management Statement.  This Case Management Statement updates the Court as to recent developments on pertinent matters.

> 1.   **<u>Motions</u>**

> > a.   **Pending Motions**

*Motion to Dismiss*:  On May 20, 2021, Facebook filed a motion to dismiss the Consolidated Amended Complaints ("CACs").  *See* Dkt. No. 97.  On June 17, 2021, Plaintiffs filed an opposition to Facebook's motion to dismiss.  *See* Dkt. No. 109.  On July 5, 2021, Plaintiffs filed a Supplemental Brief Regarding Government Orders.  *See* Dkt. No. 116.  Facebook filed its reply to Plaintiffs' opposition on July 7, 2021.  *See* Dkt. No. 117.  The Court heard arguments on Facebook's motion to dismiss on July 15, 2021.

*Administrative Motion for Clarification*:  On November 10, 2021, Facebook filed an administrative motion for clarification of the Court's orders consolidating *Rosenman v. Facebook, Inc.*, No. 21-cv-02108 (N.D. Cal.), and *Loveland v. Facebook, Inc.*, No. 21-cv-03300 (N.D. Cal.), with these consolidated actions, requesting the Court to confirm that if the *Rosenman* and *Loveland* plaintiffs wish to proceed with their antitrust claims against Facebook, they must do so as part of the Consumer CAC and through the interim class counsel structure that the Court has created, or they must dismiss their claims and assume the status of absent class members.  Dkt. No. 190.

On November 15, 2021, Consumer Plaintiffs and *Loveland* plaintiffs filed their respective responses to Facebook's administrative motion.  Consumer Plaintiffs assert that the *Rosenman* and *Loveland* plaintiffs may not "elect" to become named Consumer Plaintiffs in the pending *Klein* action and that a stay of the *Rosenman* and *Loveland* cases—rather than dismissal or a change to the Court-ordered leadership structure—is the appropriate remedy.  Dkt. No. 193.  The *Loveland* plaintiffs seek a stay of their case.  Dkt. No. 194.

1    On November 18, 2021, Facebook filed a motion for leave to file a reply in support of its

2    administrative motion for clarification.  Dkt. No. 196.  On November 22, 2021, the *Loveland*

3    plaintiffs filed an opposition to Facebook's motion for leave.  Dkt. No. 197.

4                        **b.      Anticipated Motions**

5        In addition to the specific motions below, the parties also anticipate that there will be further

6    motions, including motions to exclude expert testimony and motions in limine.

7        **Plaintiffs' Anticipated Motions:**

8        *Motions for Class Certification*:  Plaintiffs intend to move for class certification of the

9    putative Consumer and Advertiser classes.  The Court has set March 15, 2022 as the date for

10   Plaintiffs to move for class certification.

11       *Responses to Motions filed by Facebook*:  Plaintiffs reserve all rights and arguments to

12   respond to, or oppose, any future motions filed by Facebook.  Should Facebook file any motion to

13   compel arbitration, Plaintiffs reserve all rights to oppose that motion.  Plaintiffs will also oppose

14   any motion for summary judgment filed by Facebook.

15       **Facebook's Anticipated Motions:**

16       *Motion to Compel Arbitration*:  Facebook reserves all rights and defenses with respect to

17   unnamed members of the putative classes alleged in the CACs, including but not limited to its right

18   to move to compel arbitration of any unnamed putative class members' claims subject to an

19   arbitration provision at the appropriate time.  *See, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d

20   1230 (11th Cir. 2018); *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135 (N.D. Cal. Oct. 8,

21   2020); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784 (N.D. Cal. May 9, 2011).

22       *Motion for Summary Judgment*:  In the event that this case survives the motion to dismiss,

23   Facebook anticipates moving for summary judgment pursuant to Fed. R. Civ. P. 56.

24       *Responses to Motions filed by Plaintiffs*:  Facebook reserves all rights and arguments to

25   respond to, or oppose, any future motions filed by Plaintiffs, including Plaintiffs' motions for class

26   certification.

27

28

**2.** **Discovery Updates**

    **a. Discovery Propounded to Date**

*Discovery Propounded by Facebook*:  On August 25, 2021, Facebook served Requests for Production of Documents on Consumer Plaintiffs and Advertiser Plaintiffs.  On September 24, 2021, Consumer Plaintiffs and Advertiser Plaintiffs served their objections and responses.  After exchanging their positions in writing, the parties on October 20 and 21, and November 16, 2021, met and conferred about purported deficiencies in Plaintiffs' objections and responses identified by Facebook.

In response to certain of Facebook's document requests, Consumer Plaintiffs have produced their retainer agreements with Consumer counsel and the documents cited in the Consolidated Consumer Class Action Complaint and in their operative, second amended initial disclosures.  After having conducted a reasonable search of their files—and subject to any supplementation—Consumer Plaintiffs have notified Facebook that they are not aware of documents responsive to certain others of Facebook's requests.  Consumer Plaintiffs and Facebook continue to engage in discussions regarding the scope of Consumer Plaintiffs' document production, and—consistent with those discussions—Consumer Plaintiffs will accordingly continue to produce non-privileged documents responsive to Facebook's other requests.

On November 24, 2021, Advertiser Plaintiffs produced documents responsive to certain of Facebook's document requests.

*Discovery Propounded by Plaintiffs*:  On September 24, 2021, Consumer Plaintiffs and Advertiser Plaintiffs served a joint set of Requests for Production of Documents on Facebook.  On September 24, 2021, Consumer Plaintiffs served an additional set of Requests for Production of Documents on Facebook pertaining to Consumer-specific claims and issues.  On September 24, 2021, Advertiser Plaintiffs served an additional set of Requests for Production of Documents on Facebook pertaining to Advertiser-specific claims and issues.  On October 25, 2021, Facebook served its objections and responses to these requests.

Plaintiffs have identified to Facebook in writing purported deficiencies in Facebook's objections and responses to these three sets of document requests and have requested to meet-and-

confer with Facebook to discuss the scope and timing of Facebook's document productions.  The parties held their first meet-and-confer regarding Plaintiffs' document requests on December 1, 2021, and are currently discussing the scheduling of additional meet-and-confers.

On October 21, 2021, Advertiser Plaintiffs served their Second Set of Requests for Production of Documents on Facebook.  On November 22, 2021, Facebook served its objections and responses.

### b.  Privilege Dispute

On October 14, 2021, the parties submitted their dispute about certain documents that Facebook had initially produced to the FTC and subsequently clawed back in a joint discovery letter brief to Judge DeMarchi (Dkt. Nos. 163, 168), and on October 26, 2021, Judge DeMarchi held a hearing on the parties' dispute (Dkt. No. 169).  That same day, Judge DeMarchi issued an order dismissing as untimely three of Plaintiffs' challenges to clawback notices served by Facebook.  Dkt. No. 171.  Judge DeMarchi instead focused the dispute on Facebook's August 20, 2021 clawback notice.  *Id*.  Judge DeMarchi required the parties to confer and brief the remaining dispute and submit to the Court any proposed modifications to the 502(d) Order that may be required.  *Id*.  On November 8, 2021, Plaintiffs filed their brief.  Dkt. Nos. 184, 188.  Facebook filed its response on November 23, 2021.  Dkt. No. 198.  Judge DeMarchi has set a hearing for December 14, 2021, regarding this dispute.  Dkt. No. 200.

In addition, the parties exchanged proposed modifications to the 502(d) Order and, on November 10, 2021, submitted a joint stipulation requesting that the Court enter the parties' proposed First Amended 502(d) Order.  Dkt. No. 189.  Judge DeMarchi entered the proposed First Amended 502(d) Order on November 12, 2021.  Dkt. No. 191.

### c.  ESI, Privilege, Deposition, and Expert Protocols

Following Judge DeMarchi's orders resolving all outstanding issues related to the deposition, expert, and privilege protocols, on October 28, 2021, the parties submitted a joint stipulation requesting the Court to enter the parties' proposed stipulated deposition, expert, and privilege protocols.  Dkt. No. 173.  On October 29, 2021, Judge DeMarchi entered each of the stipulated protocols.  Dkt. Nos. 174–76.

1   On October 4, 2021, the parties submitted a joint discovery letter brief regarding two

2   disputes related to the ESI protocol.  Dkt. No. 160.  On October 12, 2021, Judge DeMarchi issued

3   an order resolving one of the disputes and requiring the parties to undertake further efforts to resolve

4   the remaining dispute related to preservation of backup systems and tapes.  Dkt. No. 161.  On

5   November 5, 2021, the parties filed a joint discovery letter updating the Court of their continued

6   efforts to exchange information and resolve their dispute in accordance with Judge DeMarchi's

7   guidance.  Dkt. No. 183.

8               **d.   Jessica Layser Subpoena Dispute**

9       On August 5, 2021, former named Advertiser Plaintiff Jessica Layser dismissed her

10  individual claims against Facebook without prejudice.  Dkt. No. 129.  On September 17, 2021,

11  Facebook served a Rule 45 subpoena on Ms. Layser, and on October 1, 2021, Ms. Layser served

12  her objections to Facebook's subpoena.  The parties submitted their dispute regarding the validity

13  of Ms. Layser's objections in a joint discovery letter brief to Judge DeMarchi on November 12,

14  2021.  Dkt. No. 192.

15              **e.   Zahara Mossman Dismissal**

16      On November 4, 2021, named Advertiser Plaintiff Zahara Mossman dismissed her claims

17  against Facebook with prejudice.  Dkt. No. 182.  Because the deadline for serving initial disclosures

18  had passed and discovery requests served by Facebook on Ms. Mossman were still pending at the

19  time of her dismissal, the parties are discussing Ms. Mossman's obligations (if any) to respond to

20  those discovery requests.

21              **f.   Limitations on Interrogatories**

22      The parties have an open dispute regarding the appropriate limit on interrogatories.  The

23  parties' positions are set out in the Rule 26(f) Report.  *See* Dkt. No. 130 at 5–8.

24              **g.   Initial Disclosures**

25      Following the parties' exchange of Rule 26(a) initial disclosures on August 13, 2021, the

26  parties disputed whether Plaintiffs' then-operative initial disclosures satisfied Fed. R. Civ. P.

27  26(a)(1)(A)(iii) and submitted their dispute in a joint letter brief to Judge DeMarchi on September

28  28, 2021.  Dkt. No. 156.  On October 13, 2021, Judge DeMarchi issued an order finding Advertiser

Plaintiffs' amended initial disclosures sufficient, but holding that Consumer Plaintiffs' initial disclosures remained deficient because they (a) did not "describe how the Consumer Plaintiffs compute damages" apart from "a reference to Facebook's purported 'market price' of $20.00 per month for user data," (b) referred only "in a superficial manner" to "'publicly-available documents' that the Consumer Plaintiffs say support a damages estimate of at least 'tens of billions of dollars,'" and (c) did not "identify the documents or other evidentiary material on which they rely, and they make no representations about [] producing these documents to Facebook."  Dkt. No. 162 at 3–4. The Court ordered Consumer Plaintiffs to supplement their initial disclosures regarding damages by November 3, 2021.  *Id.* at 4.  Consumer Plaintiffs thereafter supplemented their initial disclosures on November 3, 2021.

**Consumer Plaintiffs' Position:**

Despite having Consumer Plaintiffs' second amended initial disclosures for almost one month, Facebook waited to raise for the first time purported deficiencies in these disclosures until the evening before the deadline for filing this joint case management conference statement.  While Consumer Plaintiffs dispute that a case management conference statement is the appropriate place for Facebook to advance discovery disputes, Facebook's comments regarding Consumer Plaintiffs' supplemental disclosures require the following corrections.

*Facebook's Collection and Use of Data Without Adequate Compensation*:  Judge DeMarchi's October 13, 2021 order provided that to the extent Consumer Plaintiffs "seek damages based on provision of user data without adequate compensation, they must identify the data for which insufficient compensation was provided[.]"  Dkt. No. 162 at 4.  Contrary to Facebook's below objection, Consumer Plaintiffs' supplemental disclosures provide this information.

As explained in Consumer Plaintiffs' supplemental disclosures, the transaction between Facebook and Consumer Plaintiffs—Facebook's collection and use of their data in return for access to Facebook's services—does not result in receipts or any other such transaction records.  Based on the information currently available to Consumer Plaintiffs—including how ***Facebook*** has described to regulators the data it collects from its users—Consumer Plaintiffs' supplemental disclosures provide granular descriptions of all of the data that Consumer Plaintiffs presently understand (as

fact discovery is underway) Facebook collects from them.[1]  These supplemental disclosures further explain that Consumer Plaintiffs' damages are the difference between the compensation that Facebook provided for the data that Facebook actually collected from them and put to use (but did not disclose), and the compensation that they should have received for that data in a competitive world (either direct monetary payments, or in-kind consideration).  As to Facebook's non-disclosed collection and uses of data, the supplemental disclosures identify the following examples: Facebook's collection and use of "Affected Friends" (also known as "Friends of Friends") data— which was the subject of the Cambridge Analytica scandal and Facebook's 2019 payment of a $5 billion fine to the FTC—and Facebook's collection and use of data regarding users' "Off-Platform" activity (*i.e.*, data regarding users' activities outside Facebook, on other websites and applications).[2]

*Explanation of Consumer Plaintiffs' Damages Theory*:  Facebook also asserts that Consumer Plaintiffs "provide no support" for their damages theory (which Facebook continues to mischaracterize).  Consumer Plaintiffs' operative disclosures express damages per Consumer Class member as: the competitive market price Facebook would have paid a Consumer Class member per month in return for his or her data that was collected and/or used but not disclosed, subtracted by the actual monetary price paid to that Consumer Class member per month in return for his or her data that was collected and/or used but not disclosed ($0.00), and then multiplied by the duration of the Consumer Class member's injury (the number of months during the Consumer Class Period that the Consumer Class member has maintained a Facebook account—and thus provided data to Facebook—but has been subject to Facebook's anticompetitive data collection and use practices).

---

[1]  The descriptions in Consumer Plaintiffs' disclosures reflect the data that Facebook collects from users, the putative Consumer Class consists of Facebook users, and named Consumer Plaintiffs Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho are members of the Consumer Class.

[2]   As explained in Consumer Plaintiffs' supplemental disclosures, any further specifics regarding Facebook's data collection and use practices are likely contained in the files of Facebook (not Consumer Plaintiffs).  Consumer Plaintiffs' supplemental disclosures reflect the information available to Consumer Plaintiffs at present.  *See, e.g.*, Dkt. No. 162 at 2 (DeMarchi, J.) (explaining that Rule 26 "require[s] a plaintiff to disclose its computation of damages, in light of the information currently available to it"); *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220, 222 (N.D. Cal. 2003) (noting that "initial disclosure must be based on the information 'reasonably available' to the party" and that "[a]s discovery proceeds, Plaintiffs may . . . supplement their initial damages disclosure to reflect the information obtained through discovery.").

Consumer Plaintiffs' supplemental disclosures offer two preliminary estimates for the competitive price: $20.00 per month and $5.00 per month.  The $20.00 per month figure is based on the price that Facebook has actually paid users of its "Facebook Research App" in return for their data, and the $5.00 per month figure is based on the minimum price Facebook appears to pay users of its "Study from Facebook" and "Facebook Viewpoints" services, all of which are examples of services whereby Facebook has monetarily compensated users of those services in return for their data.  These competitive price figures are consistent with what other companies pay users for their data, including: Amazon ("Amazon Shopper Panel" service); Google ("Screenwise Meter", "Audience Measurement", and "Cross Media Panel" services); Microsoft ("Microsoft Rewards" and "Bing Rewards" services); Nielsen ("Mobile Panel" and "Consumer Panel" services); Embee ("Embee Mobile Performance Meter" service); and Luth Research ("SavvyConnect" service).

Based on this methodology, the materials available to them at present (while fact discovery is underway and in advance of expert discovery), and the dates that named Consumer Plaintiffs Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho created their Facebook accounts, Consumer Plaintiffs' disclosures preliminarily calculate their respective damages as $835.00, $835.000, and $775.00 (based on a competitive price of $5.00 per month), and $3,340.00, $3,340.00, and $3,100.00 (based on a competitive price of $20.00 per month).  Based on Facebook's reported estimates of its number of United States users (contained in its public filings with regulators and in other materials), Consumer Plaintiffs estimate that the putative Consumer Class consists of, at least, 200 million individuals.  Based on this 200 million user figure, Consumer Plaintiffs' disclosures calculate one year of Consumer Class-wide damages as $12 billion (based on a competitive price of $5.00 per month), and $48 billion (based on a competitive price of $20.00 per month).

"To the extent Facebook challenges the merits" of Consumer Plaintiffs' "methodology, its objection is not well taken;" Consumer Plaintiffs "have disclosed their methodology, which is all that Rule 26(a) requires."  Dkt. No. 162 at 3 (DeMarchi, J.).  Indeed, Consumer Plaintiffs' supplemental disclosures provide far further detail than those in any similar antitrust cases identified by the parties, and they certainly provide Facebook with an understanding of the damages suffered by Consumer Plaintiffs and the putative Consumer Class.  In all events, as indicated in their

1  operative disclosures, Consumer Plaintiffs will supplement these supplemental disclosures, as

2  necessary and appropriate, as their investigation and discovery proceed.[3]

3      *Disgorgement of Facebook's Ill-Gotten Gains*:  In connection with their unjust enrichment

4  claim, Consumer Plaintiffs seek disgorgement of Facebook's ill-gotten gains stemming from its

5  competition-reducing conduct, including its deception regarding its data collection and use

6  practices.  Although Rule 26(a)(1)(A)(iii) requires "a computation of each category of damages

7  claimed by the disclosing party" and disgorgement is an equitable remedy that differs from the legal

8  remedy of damages, Consumer Plaintiffs' supplemental disclosures explain their disgorgement

9  theory, provide a specific formula for calculating disgorgement per Consumer Class Member, and

10  describe the materials supporting that theory (which are also the subject of several of Consumer

11  Plaintiffs' outstanding discovery requests to Facebook).

12      Facebook complains that Consumer Plaintiffs are not yet able to provide a specific

13  calculation of Facebook's ill-gotten gains subject to disgorgement.  This should not be surprising

14  since discovery is ongoing (and those documents are in Facebook's possession, not Consumer

15  Plaintiffs'), the calculation will require expert analysis, and Rule 26 requires only that a party "make

16  its initial disclosures based on the information then reasonably available to it."  Fed. R. Civ. P.

17  26(a)(1)(E); s*ee also Focal Point Films*, *LLC v. Sandhu*, No. 19-cv-02898-JCS, 2020 WL 5760355,

18  at *3 (N.D. Cal. Sept. 28, 2020) (Spero, J.) (where "initial disclosure did not contain a damages

19  calculation with respect to [party's] unjust enrichment claim," "disclosure was sufficient at time it

20  was made to meet [party's] obligations under Rule 26" since amount "not ascertainable at th[at]

21  time," "required discovery," and "required an expert to analyze this information").  As they obtain

22  necessary discovery from Facebook and third parties and conduct expert analysis regarding their

23  disgorgement theory, Consumer Plaintiffs will supplement their disclosures.

24

25

_____

26  [3]    Consumer Plaintiffs provided Facebook with the specific document control numbers (Bates numbers) of the documents cited in their supplemental disclosures (including those of documents

27  that Facebook has itself produced).  *See* Dkt. No. 162 at 4.  Consumer Plaintiffs on October 21 and November 3, 2021, also produced to Facebook all documents cited in the supplemental disclosures

28  that were not themselves produced by Facebook.

**Facebook's Position:**

Remarkably, User Plaintiffs' Second Amended Initial Disclosures still do not comply with Federal Rule of Civil Procedure 26(a)(1)(A)(iii) or with Judge DeMarchi's October 13, 2021 Order, Dkt. No. 162.  First, Judge DeMarchi's Order explained that, if Users "seek damages based on provision of user data without adequate compensation," they must "identify the data for which insufficient compensation was provided."  Dkt. No. 162 at 4.  As their lengthy submission in this statement illustrates, Users' Disclosures fail to identify what data, if any, *each named plaintiff* provided to Facebook for which insufficient compensation was provided.  Instead, Users point only to vague "descriptions" given to the FTC drawn from Facebook's publicly available data policy of the "types of data" Facebook "*may* collect … from or about users."  Users' "belie[f] that these descriptions reasonably describe … the data that Facebook collects" from them is insufficient.  For a claim for uncompensated provision of data, there must be some information relating to the actual data provided by each of the plaintiffs.  *See also Agena v. Cleaver-Brooks, Inc.*, 2020 WL 6888725, at *2-3 (D. Haw. July 31, 2020) (disclosure deficient because it "did not provide a computation of damages for each plaintiff").  The Disclosures provide no information in this regard, nor do Users' multiple paragraphs of "corrections" above.

Second, Judge DeMarchi's Order stated that, if Users "seek damages based on something other than the uncompensated value of their data, they must describe with greater specificity the nature of the harm for which they claim damages, the methodology on which they rely to compute damages, and an estimate of the amount of damages claimed."  Dkt. No. 162 at 4.  Users' Disclosures now assert that they seek damages related to "the difference between the reduced value that Facebook provided [Users] as a result of Facebook's alleged competition-reducing conduct and the value that competition free of Facebook's anticompetitive restraints would have required Facebook to provide [Users] (including adequate compensation for the data that Facebook did not disclose it was collecting and using)."  But the Disclosures provide no support for this theory whatsoever.  And Users still have not disclosed any damages computation related to the alleged "lower compensation for [] time and attention" repeatedly referenced in the Complaint, but appear to still maintain this as a theory of damages.  User CAC ¶¶ 222, 272, 282.

1    Third, Users' disclosure concerning their disgorgement remedy is also deficient.  The

2    purpose of an initial disclosure "is to ensure that defendants receive a preliminary damages estimate

3    at the outset of litigation." *Holland Am. Line, N.V. v. Orient Denizcilik Turizm Sanayi Ve Ticaret,*

4    *A.S.*, 2020 WL 1689736, at *2 (W.D. Wash. Apr. 7, 2020).  It allows a defendant to "understand the

5    contours of its potential exposure and make informed decisions as to settlement and discovery."

6    *City & Cty. of S.F. v. Tutor-Sabila Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).  Accordingly,

7    Judge DeMarchi ordered Users to disclose "an estimate of the amount" of any claimed damages,

8    Dkt. No. 164 at 4, consistent with the great weight of authority concerning initial disclosures of

9    monetary remedies, *see Tutor-Sabila*, 218 F.R.D. at 221 (collecting cases).  While Users baldly

10   assert that Rule 26(a)(1)(A)(iii) does not require disclosure of a disgorgement computation, the

11   Advisory Committee noted in 1993 that the Rule applies to "[a] party claiming damages ***or other***

12   ***monetary relief***," and multiple courts have subsequently held the same.  *See, e.g.*, *United States v.*

13   *RaPower-3, LLC*, 960 F.3d 1240, 1253 (10th Cir. 2020); *FTC v. Cardiff*, 2021 WL 3616071, at *5

14   n.3 (C.D. Cal. June 29, 2021); *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 461 (D.D.C.

15   2020).  Further, it is no excuse that Users intend to rely on expert testimony to quantify the amount

16   of Facebook's profits purportedly subject to disgorgement.  Ongoing discovery and forthcoming

17   expert analysis are not a shield against timely disclosure.  *E.g.*, *Somers v. Digital Realty Tr. Inc.*,

18   2017 WL 2954909, at *9 (N.D. Cal. July 11, 2017).

19                    **h.  Close of Fact and Expert Discovery**

20           The July CMO set September 2, 2022, as the fact discovery cut-off, and November 4, 2022,

21   as the expert discovery cut-off.  Dkt. No. 115 at 2.

22           **3.     Related Cases**

23           **Facebook's Position:**

24           1.      After Judge Freeman dismissed their entire case on statute of limitations and laches

25   grounds, plaintiffs in *Reveal Chat Holdco LLC v. Facebook, Inc.*, No. 5:20-cv-00363-BLF, filed

26   their opening appellate brief on August 23, 2021.  *Reveal Chat Holdco LLC v. Facebook, Inc.*, No.

27   21-15863, Dkt. No. 18.  Facebook filed its answering brief on October 25, 2021.  *See id.*, Dkt. No.

28   25.  Plaintiffs-Appellants' reply brief is due on December 15, 2021.  *See id.*, Dkt. No. 35.

2.      On July 29, 2021, the Judicial Panel on Multidistrict Litigation (JPML) held a hearing on Google's petition to centralize several lawsuits against Google and Facebook (or Google alone) alleging that one or both companies monopolized or suppressed competition in advertising-technology related markets, including by entering into an agreement in September 2018 known as the Google Network Bidding Agreement (GNBA).  The GNBA forms the basis of the Advertiser Plaintiffs' claim in this case under Section 1 of the Sherman Act.  On August 10, 2021, the JPML ordered the actions transferred to the Southern District of New York, assigning them to Judge P. Kevin Castel as *In re: Google Digital Advertising Antitrust Litigation*, MDL No. 3010.  Dkt. No. 126.  Discovery in those cases is currently stayed pending the outcome of a motion to dismiss. Facebook will evaluate next steps concerning the MDL following the Court's ruling on the motion to dismiss the Advertisers' case.

**Plaintiffs' Position:**

At this time, Plaintiffs have no updates to bring to the Court's attention regarding any related cases.

**Advertiser Plaintiffs' Position:**

Advertiser Plaintiffs reserve all rights to oppose any future motion to centralize Advertiser Plaintiffs' claims with the MDL pending in the Southern District of New York.

**4.      Lawsuits Filed by FTC and State Attorneys General**

On June 28, 2021, Judge Boasberg issued opinions dismissing the antitrust complaint filed by the Federal Trade Commission and dismissing the entire case filed by the Attorneys General of multiple states.  *See Fed. Trade Comm'n v. Facebook, Inc.*, No. 20-cv-03590-JEB, 2021 WL 2643627 (D.D.C. June 28, 2021); *New York v. Facebook, Inc.*, No. 20-cv-03589-JEB, 2021 WL 2643724 (D.D.C. June 28, 2021).

On August 19, 2021, the FTC filed an amended complaint.  *Fed. Trade Comm'n*, 1:20-cv-03590, Dkt. No. 75.  On September 8, 2021, the FTC filed a substitute amended complaint.  *Id*., Dkt. Nos. 78, 82.  On October 4, 2021, Facebook filed its motion to dismiss the FTC's amended complaint, *id*., Dkt. No. 83, and on November 17, 2021, the FTC filed its opposition to Facebook's

1   motion to dismiss, *id.*, Dkt. No. 85.  Facebook filed its reply brief on December 1, 2021.  *See id.*,

2   Dkt. No. 87.

3          On July 28, 2021, the States filed a notice of their intent to appeal Judge Boasberg's decision

4   to the D.C. Circuit.  *New York*, 1:20-cv-03589, Dkt. No. 138.  According to the briefing schedule

5   jointly proposed by the States and Facebook and approved by the Court, the States' brief is due on

6   January 14, 2022, and Facebook's response brief is due on March 14, 2022.  *State of New York, et*

7   *al v. Facebook, Inc.*, No. 21-7078, Dkt. No. 1919569.

8          **5.      <u>Updates Regarding ADR</u>**

9          The parties continue to believe that ADR would not be constructive at this time but may be

10  willing to engage in ADR with a private mediator as these actions progress.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   DATED:  December 1, 2021                          Respectfully submitted,

2

3   By:   */s/* Yavar Bathaee                          By:   */s/* Stephen A. Swedlow
    **BATHAEE DUNNE LLP**                              **QUINN EMANUEL URQUHART & SULLIVAN,**
    Yavar Bathaee (Bar No. 282388)                     **LLP**
4     yavar@bathaeedunne.com                           Stephen A. Swedlow (admitted *pro hac vice*)
    Edward M. Grauman (admitted *pro hac*               stephenswedlow@quinnemanuel.com
5   *vice*)                                            Michelle Schmit (admitted *pro hac vice*)
      egrauman@bathaeedunne.com                         michelleschmit@quinnemanuel.com
6   Andrew C. Wolinsky (admitted *pro hac*             191 N. Wacker Drive, Suite 2700
    *vice*)                                            Chicago, IL 60606-1881
7     awolinsky@bathaeedunne.com                       (312) 705-7400
    445 Park Avenue, 9th Floor
8   New York, NY 10022                                 Kevin Y. Teruya (Bar No. 235916)
    (332) 322-8835                                       kevinteruya@quinnemanuel.com
9                                                      Adam B. Wolfson (Bar No. 262125)
    Brian J. Dunne (Bar No. 275689)                      adamwolfson@quinnemanuel.com
10    bdunne@bathaeedunne.com                          Brantley I. Pepperman (Bar No. 322057)
    633 West Fifth Street, 26th Floor                    brantleypepperman@quinnemanuel.com
11  Los Angeles, CA 90071                              865 South Figueroa Street, 10th Floor
    (213) 462-2772                                     Los Angeles, CA 90017-2543
12                                                     (213) 443-3000

13  By:   */s/* Kristen M. Anderson                    Manisha M. Sheth (admitted *pro hac vice*)
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**                 manishasheth@quinnemanuel.com
14  Kristen M. Anderson (Bar No. 246108)               51 Madison Avenue, 22nd Floor
      kanderson@scott-scott.com                        New York, New York 10010
15  230 Park Avenue, 17th Floor                        (212) 849-7000
    New York, NY 10169
16  (212) 223-6444

17  Christopher M. Burke (Bar No. 214799)              By:   */s/* Shana E. Scarlett
      cburke@scott-scott.com                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
18  David H. Goldberger (Bar No. 225869)               Shana E. Scarlett (Bar No. 217895)
      dgoldberger@scott-scott.com                        shanas@hbsslaw.com
19  Yifan (Kate) Lv (Bar No. 302704)                   715 Hearst Avenue, Suite 202
      klv@scott-scott.com                              Berkeley, CA 94710
20  600 W. Broadway, Suite 3300                        (510) 725-3000
    San Diego, CA 92101
21  (619) 233-4565                                     Steve W. Berman (admitted *pro hac vice*)
                                                         steve@hbsslaw.com
22  Patrick J. McGahan (admitted *pro hac*             1301 Second Avenue, Suite 2000
    *vice*)                                            Seattle, WA 98101
23    pmcgahan@scott-scott.com                         (206) 623-7292
    Michael P. Srodoski (admitted *pro hac*
24  *vice*)
      msrodoski@scott-scott.com
25  156 South Main Street, P.O. Box 192
    Colchester, CT 06415
26  (860) 537-5537

27

28

| | |
|---|---|
| **AHDOOT & WOLFSON, PC**<br>Tina Wolfson (Bar No. 174806)<br>  twolfson@ahdootwolfson.com<br>Robert Ahdoot (Bar No. 172098)<br>  rahdoot@ahdootwolfson.com<br>Theodore W. Maya (Bar No. 223242)<br>  tmaya@ahdootwolfson.com<br>Rachel Johnson (Bar No. 331351)<br>  rjohnson@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, CA 91505<br>(310) 474-9111 | **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**<br>W. Joseph Bruckner (admitted *pro hac vice*)<br>  wjbruckner@locklaw.com<br>Robert K. Shelquist (admitted *pro hac vice*)<br>  rkshelquist@locklaw.com<br>Brian D. Clark (admitted *pro hac vice*)<br>  bdclark@locklaw.com<br>Rebecca A. Peterson (Bar No. 241858)<br>  rapeterson@locklaw.com<br>Arielle S. Wagner (admitted *pro hac vice*)<br>  aswagner@locklaw.com<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>(612) 339-6900 |
| **LEVIN SEDRAN & BERMAN LLP**<br>Keith J. Verrier (admitted *pro hac vice*)<br>  kverrier@lfsblaw.com<br>Austin B. Cohen (admitted *pro hac vice*)<br>  acohen@lfsblaw.com<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3997<br>(215) 592-1500<br><br>*Interim Counsel for the Advertiser Class* | *Interim Counsel for the Consumer Class*<br><br><br>By:   */s/ Sonal N. Mehta*<br>**WILMER CUTLER PICKERING HALE AND DORR LLP**<br>Sonal N. Mehta (SBN: 222086)<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100<br>Email: Sonal.Mehta@wilmerhale.com<br><br>David Z. Gringer (*pro hac vice*)<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888<br>Email: David.Gringer@wilmerhale.com<br><br>Ari Holtzblatt (*pro hac vice*)<br>Molly M. Jennings (*pro hac vice*)<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>Email: Ari.Holtzblatt@wilmerhale.com<br>Email: Molly.Jennings@wilmerhale.com<br><br>*Attorneys for Defendant Facebook, Inc.* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION OF SONAL N. MEHTA**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Sonal N. Mehta.  By her signature, Ms. Mehta attests that she has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: December 1, 2021          By /s/ Sonal N. Mehta                          

Sonal N. Mehta

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of December 2021, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By /s/ Sonal N. Mehta                          

Sonal N. Mehta