WILMERHALE

February 23, 2022

Sonal Mehta
+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

      Re:    *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Meta submits this discovery letter brief, respectfully requesting the Court compel the User Plaintiffs and Advertiser Plaintiffs to respond substantively to Meta's Interrogatories.[1] Pursuant to Judge Donato's Standing Order for Discovery in Civil Cases ¶ 18 and Local Rule 37-1, the parties' lead counsel met and conferred on February 21, 2022 and reached an impasse.

On January 7, 2022, Meta served its First Set of Interrogatories to Users and Advertisers. *See* Exhibits A, B. Among other requests,[2] Meta asked Users to:

- **Interrogatory No. 1:** Identify all participants in their alleged "Social Network Market;"

- **Interrogatory No. 2:** Identify all participants in their alleged "Social Media Market;"

- **Interrogatory No. 3:** Identify and describe in detail all accounts or profiles on any online services that they used during the Relevant Time Period; and

- **Interrogatory No. 4:** Identify and describe in detail all privacy protections or privacy practices associated with all accounts or profiles identified in response to Interrogatory No. 3, including but not limited to all privacy settings on all accounts or profiles.

And among other requests, Meta asked Advertisers to:

- **Interrogatory No. 1:** Identify all participants in their alleged "Social Advertising Market."

These interrogatories are either (1) the basic building blocks of any antitrust litigation (identify participants in a candidate market); or (2) basic requests for facts necessary to facilitate discovery into Users' novel theory that Meta should retroactively pay the putative plaintiff class $2 trillion+ for their use of free services based on Meta's supposedly deceptive privacy policy.

---

[1] Meta is filing this pursuant to Judge Donato's Standing Order, pending guidance from the Court on whether Judge DeMarchi will continue handling discovery issues in the case.

[2] Meta is not seeking a response to Interrogatory 5 to the Users or Interrogatory 2 to the Advertisers at this time.

Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

**WilmerHale**

Hon. Judge James Donato
February 23, 2022
Page 2

Remarkably, Plaintiffs take the position that they do not need to respond to any of these interrogatories, not even as to the facts that they currently know. *See* Exhibits C, D. To justify their position, Plaintiffs served a series of strawmen objections, none of which excuse their failure to respond. *Cf. Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639 (1976) (dismissing antitrust lawsuit for complete failure to timely respond to defendant's interrogatories). For example, Users claim disingenuously that "the undefined term 'Participant(s)' is vague and ambiguous," but Meta specifically defined the term "Participant(s)" as "any actual or potential entrant(s) into" the alleged relevant product markets and Users did not object. Advertisers expressly re-define the term, "Participant(s)" to mean "any actual entrant(s) into the Social Advertising Market and persons, natural or otherwise, *known to Plaintiffs* to have considered entering" the alleged relevant market, yet decline to identify a single such "Participant."

At the lead counsel meet and confer, Plaintiffs stood on the position that all of Meta's interrogatories are "premature contention interrogatories," and so there would be no "utility" for Plaintiffs to respond now. Plaintiffs' "utility" in responding (or not responding) to discovery is irrelevant. And the interrogatories for which Meta seeks a response are not contention interrogatories. Contention interrogatories "ask parties to spell out the legal basis for, or theory behind, some specified contention." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985). Meta's interrogatories do not ask Plaintiffs for either "contentions or legal arguments," nor do they seek every item of evidence in support of Plaintiffs' claims. Rather, Meta's interrogatories seek only facts relevant to the antitrust issues in the case. *Id.*; *see also Boyd v. Tornier, Inc.*, 2008 WL 2691727, at *1 (S.D. Ill. June 30, 2008); *In re Peanut Farmers Antitrust Litig.*, 2020 WL 8970814, at *1 (E.D. Va. July 27, 2020).

Plaintiffs allege that Meta unlawfully monopolized three purported product markets. (Dkt. 86 ¶ 39; Dkt. 87 ¶ 55.) In reality, Meta faces vigorous competition from behemoths like Google, Apple, Amazon, and TikTok. Meta is entitled to information from Plaintiffs on the identity of the entities that participate in the purported markets, both so it can take discovery from those participants, and, if Meta's assessment of its competitors is at odds with Plaintiffs' view, develop a record to support its position. Meta's Interrogatories 1–2 to Users and Interrogatory 1 to Advertisers seek threshold *facts* and thus warrant an immediate, substantive response.

Similarly, Meta's Interrogatories 3–4 to Users request *facts* already within Users' possession— information about which online services Users maintain accounts for, and the privacy policies for those services. *Id*. This information is relevant to Users' claim that they "attempted to exercise reasonable diligence in maintaining the safety, security, and privacy of their data," when online. (Dkt. 87 ¶ 251.) Again, Users refuse to answer, claiming each is a "contention interrogatory." Far from it. These interrogatories seek only *facts* about users' online activities, not contentions.

Ultimately, the position that these interrogatories are premature is belied by Plaintiffs' refusal to agree that they would *ever* answer the interrogatories—when asked, lead counsel for Plaintiffs would "not say[ they] will ever answer them," and instead said that Plaintiffs position is that they would not commit to answering them at some future date. *See M & F Fishing, Inc. v. Certain Underwriters at Lloyds*, 2007 WL 9706573, at *9 (S.D. Cal. Apr. 13, 2007) (ordering answers

**WILMERHALE**

Hon. Judge James Donato
February 23, 2022
Page 3

where "Plaintiffs['] tactics subvert the goal of discovery, which is to obtain information about the facts underlying the contentions set forth in the pleadings, and will not be tolerated").

Even if these interrogatories were contention interrogatories (and they are not), Plaintiffs should still be ordered to answer them with the facts currently in their possession without further delay. Courts in the Ninth Circuit routinely "compel responses to contention interrogatories at an early stage in litigation" when the responses would "'contribute meaningfully' to one of the following: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56." *See, e.g.*, *AMEC Env't & Infrastructure, Inc. v. Geosyntec Consultants Inc.*, 2013 WL 3923459, at *2 (N.D. Cal. July 26, 2013). That is especially true where, as here, the interrogatories seek factual information which Plaintiffs should be able to answer now because they "must have some factual basis for the allegations in their complaint[s]." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997); *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4111728, at *3-4 (N.D. Cal. Sept. 17, 2012) ("the antitrust plaintiffs must respond with available information . . . the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information").

Meta's interrogatories will certainly "contribute meaningfully" to clarifying the issues, and to narrowing the scope of the dispute. *Id.* at *4. Plaintiffs press allegations that Meta dominates the alleged relevant markets. Plaintiffs have the burden of proving that Meta has monopoly power in each relevant market, *Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 993 (9th Cir. 1986), as they have so alleged. Obviously, the number and identity of participants in the relevant market bears directly on the definition of the market and the allegation of monopoly power. Nor can Plaintiffs claim that it is too soon to respond. Discovery has been open for nearly a year, and Plaintiffs have had ten months to review the 12.5 million pages that Meta produced on May 3, 2021, and have also obtained several more recent productions. *See In re Northrop Grumman Corporation ERISA Litigation*, 2010 WL 11468588, at *3 (C.D. Cal. May 17, 2010). This is not to say that Plaintiffs cannot supplement their responses—they can and should. Fed. R. Civ. Pro. 26(e); *see also Green Crush, LLC v. Paradise Splash I, Inc.*, 2019 WL 8640653, at *3 (C.D. Cal. Apr. 8, 2019). But that they may supplement their responses at a later date does not excuse them from their obligation to respond with the "information they now possess." *Cable*, 175 F.R.D. at 652.

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorneys for Defendant Meta Platforms, Inc.*