# Exhibit C

1  beyond those set forth in: (a) the Federal Rules of Civil Procedure; (b) the Local Rules of the United
2  States District Court for the Northern District of California; (c) any other applicable law, rules, or
3  orders of the Court; or (d) any applicable agreement between the parties.
4  　　　　2.　　Consumer Plaintiffs object to each Interrogatory, definition, or instruction on the
5  grounds and to the extent that they call for disclosure of documents, data, or information protected
6  by the attorney-client privilege, the work product doctrine, or any other applicable privilege or
7  protection afforded by the law, including but not limited to common interest or confidential
8  settlement or mediation privileges or protections.  Any disclosure of such privileged or protected
9  information in no way constitutes a waiver of any such privilege or protection concerning any such
10  information.
11  　　　　3.　　Consumer Plaintiffs object to each Interrogatory, definition, or instruction on the
12  grounds and to the extent that they require Consumer Plaintiffs to draw a legal conclusion.
13  　　　　4.　　Consumer Plaintiffs object to each Interrogatory, definition, or instruction on the
14  grounds and to the extent that they purport to seek every document or all information that support
15  or otherwise relates to specific contentions in this litigation.  Such "contention" interrogatories are
16  premature at this stage.
17  　　　　5.　　Consumer Plaintiffs object to each Interrogatory, definition, or instruction on the
18  grounds and to the extent that they impermissibly seek the premature and non-reciprocal disclosure
19  of experts and expert information, including analyses, opinions, theories, reports, or other matters
20  that will be the subject of expert testimony in advance of the deadlines set by the Court for such
21  disclosures.
22  　　　　6.　　Consumer Plaintiffs object to the definitions of "You" and "your" as vague,
23  ambiguous, disproportionate, and seeking irrelevant information not reasonably calculated to lead
24  to the discovery of admissible evidence, to the extent that these definitions: (a) purport to require
25  Consumer Plaintiffs to search for and provide information that is not in their possession, custody,
26  or control and/or to which Consumer Plaintiffs do not have access; and (b) include Consumer
27  Plaintiffs' legal counsel and attorneys, to the extent that these definitions seek to discover
28

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:**

Identify all Participant(s) in your alleged "Social Network Market."

**RESPONSE TO INTERROGATORY NO. 1:**

Consumer Plaintiffs object to this Interrogatory on the grounds set forth in detail above in their General Objections. Consumer Plaintiffs further object to this Interrogatory on the grounds that, in the context of this Interrogatory, the undefined term "Participant(s)" is vague and ambiguous.

Consumer Plaintiffs further object to this Interrogatory on the grounds that by seeking the identification of "all Participant(s)" in the Social Network Market, the Interrogatory is premature because fact discovery is ongoing, Consumer Plaintiffs' investigation is continuing, Meta has not yet substantially completed its production of documents in response to Consumer Plaintiffs' discovery requests, and expert discovery is not set to commence until September 23, 2022 under the previously set schedule. *See* Dkt. 115, at 2; *see also In re eBay Seller Antitrust Litig.*, No. 07-cv-01882-JF, 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) (in putative antitrust class action, where discovery ongoing, defendant's interrogatories to class plaintiffs regarding "market definition" were "premature at this stage of discovery").

Consumer Plaintiffs further object to this Interrogatory to the extent that the Interrogatory seeks information that will necessarily be the subject of expert testimony and analysis. Consumer Plaintiffs will make expert disclosures and produce their expert reports pursuant to the schedule for expert discovery set by the Court.

Consumer Plaintiffs further object to this Interrogatory to the extent that the Interrogatory seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery.

Consumer Plaintiffs will meet and confer with Meta regarding the timing of a response, the subject matters covered by this Interrogatory, and the Interrogatory's scope.

**INTERROGATORY NO. 2:**

Identify all Participant(s) in your alleged "Social Media Market."

**RESPONSE TO INTERROGATORY NO. 2:**

Consumer Plaintiffs object to this Interrogatory on the grounds set forth in detail above in their General Objections. Consumer Plaintiffs further object to this Interrogatory on the grounds that, in the context of this Interrogatory, the undefined term "Participant(s)" is vague and ambiguous.

Consumer Plaintiffs further object to this Interrogatory on the grounds that by seeking the identification of "all Participant(s)" in the Social Media Market, the Interrogatory is premature because fact discovery is ongoing, Consumer Plaintiffs' investigation is continuing, Meta has not yet substantially completed its production of documents in response to Consumer Plaintiffs' discovery requests, and expert discovery is not set to commence until September 23, 2022 under the previously set schedule. *See* Dkt. 115, at 2; *see also In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2 (in putative antitrust class action, where discovery ongoing, defendant's interrogatories to class plaintiffs regarding "market definition" were "premature at this stage of discovery").

Consumer Plaintiffs further object to this Interrogatory to the extent that the Interrogatory seeks information that will necessarily be the subject of expert testimony and analysis. Consumer Plaintiffs will make expert disclosures and produce their expert reports pursuant to the schedule for expert discovery set by the Court.

Consumer Plaintiffs further object to this Interrogatory to the extent that the Interrogatory seeks information protected by the attorney-client privilege, common interest privilege, or work product doctrine, or that is otherwise privileged or protected from discovery.

Consumer Plaintiffs will meet and confer with Meta regarding the timing of a response, the subject matters covered by this Interrogatory, and the Interrogatory's scope.

**INTERROGATORY NO. 3:**

Identify and describe in detail all accounts or profiles, including without limitation, Your user or login name(s), on any online services that You used during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 3:**

Consumer Plaintiffs object to this Interrogatory on the grounds set forth in detail above in their General Objections. Consumer Plaintiffs further object to this Interrogatory on the grounds that the undefined term "describe in detail all accounts or profiles" renders the Interrogatory vague and ambiguous as to the sorts of information being sought. For example, it is not clear whether any information is being sought beyond identification of "all accounts or profiles[.]" Consumer Plaintiffs further object to this Interrogatory because, in the context of this Interrogatory, the undefined term "used" is vague and ambiguous.

Consumer Plaintiffs further object to this Interrogatory on the grounds that by seeking "detail" about "all accounts or profiles" "on any online services" that any one Consumer Plaintiff may have "used" at any one time during a now nineteen-year time period, the Interrogatory seeks information that is not relevant, is overbroad, unduly burdensome, and disproportionate, and is unduly oppressive and harassing, especially given the Court's ruling that "[Meta]'s suggestion that all 'gaming, news, messaging, and other apps' must be included in the same market is implausible."[1] Dkt. 214, at 19. Moreover, Meta's definition of "online services" as used in this Interrogatory encompasses "any public-facing internet website, web application, digital application, or other service provided online in any form or by any method[.]" It is so unbounded that it implicates, for example, child care, food and beverage, travel, personal health, professional, and educational services that are wholly unrelated to this litigation.

Consumer Plaintiffs further object to this Interrogatory on the grounds that the burdens associated with identifying any "online services"—essentially consisting of any app or website on

---

[1] These same categories make up the "online services" that are the subject of this Interrogatory.

the entire internet—that any one Consumer Plaintiff may have "used" at any one time during a now nineteen-year time period is not proportional to the needs of the case (to the extent that such an overbroad inquiry is even possible). For example, Meta's Interrogatory would require, at least, the following: (a) inquiring of each Consumer Plaintiff on a per-plaintiff basis "all online services"— spanning all websites and apps over the entire internet—that he or she "used" at any one time during a now nineteen-year time period; (b) on a per-plaintiff basis, manually reviewing all of each Consumer Plaintiff's communications (whether by email, text message, or other means, and to the extent reasonably available) to determine whether any other "online services" are implicated; (c) on a per-plaintiff basis, manually examining each of Consumer Plaintiffs' devices—such as each computer and mobile device (to the extent each device is even accessible)—to determine "all" apps or websites visited or installed during a now nineteen-year time period (to the extent such information is even ascertainable); (d) manually querying each individual service implicated to determine whether Consumer Plaintiffs actually maintained "accounts or profiles" on that service, rather than having access without an account or profile, or receiving an errant communication (such as a "spam" email or text message from a service for which the Consumer Plaintiff has not actually maintained an account or profile); and then (e) compiling this information into an Interrogatory response.

Consumer Plaintiffs will meet and confer with Meta regarding the subject matters covered by this Interrogatory, as well as its scope.

**INTERROGATORY NO. 4:**

Identify and describe in detail all privacy protections or privacy practices associated with all accounts or profiles Identified in response to Interrogatory No. 3, including but not limited to all privacy settings on all Your accounts or profiles.

**RESPONSE TO INTERROGATORY NO. 4:**

Consumer Plaintiffs object to this Interrogatory on the grounds set forth in detail above in their General Objections. Consumer Plaintiffs further object to this Interrogatory because the

undefined terms "privacy protections," "privacy practices," and "associated with" render the Interrogatory vague and ambiguous as to the sorts of information being sought. For example, it is not clear whether the Interrogatory seeks information regarding Consumer Plaintiffs' privacy settings—*i.e.*, actual options set (by manual curation or by default)—or some other or additional but unspecified information. Consumer Plaintiffs further object to this Interrogatory because it incorporates Interrogatory No. 3's references to "all accounts or profiles used" and "used," which are undefined terms that are vague and ambiguous.

Consumer Plaintiffs further object to this Interrogatory on the grounds that by seeking "detail" regarding "all privacy protections or privacy practices associated with all accounts or profiles," the Interrogatory seeks information outside Consumer Plaintiffs' knowledge or possession, including, for example, third parties' "privacy practices" that may not be known by, or available to, Consumer Plaintiffs.

Consumer Plaintiffs further object to this Interrogatory on the grounds that by seeking "all privacy protections or privacy practices associated with all accounts or profiles" "on any online services" that any one Consumer Plaintiff may have "used" at any one time during a now nineteen-year time period, the Interrogatory seeks information that is not relevant, is overbroad, unduly burdensome, and disproportionate, and is unduly oppressive and harassing. As explained with respect to Consumer Plaintiffs' general objection to Meta's definition of "online services" and Consumer Plaintiffs' objections to Interrogatory No. 3, the Court has determined that "[Meta]'s suggestion that all 'gaming, news, messaging, and other apps' must be included in the same market is implausible." Dkt. 214, at 19. Yet Meta's definition of "online services" includes—and this Interrogatory seeks information regarding—these same categories of services. Moreover, Meta's definition of "online services" as used in this Interrogatory encompasses "any public-facing internet website, web application, digital application, or other service provided online in any form or by any method[.]" It is so unbounded that it implicates, for example, child care, food and beverage, travel, personal health, professional, and educational services that are wholly unrelated to this litigation.

Consumer Plaintiffs further object to this Interrogatory on the grounds that the burdens associated with identifying "all privacy protections or privacy practices associated" with any

account or profile on all "online services"—essentially consisting of any app or website on the entire internet—that any one Consumer Plaintiff may have "used" at any one time during a now nineteen-year time period is not proportional to the needs of the case (to the extent that such an overbroad inquiry is even possible). For example, Meta's Interrogatory would require, at least, the following: (a) inquiring of each Consumer Plaintiff on a per-plaintiff basis "all online services"—spanning all websites and apps over the entire internet—that he or she "used" at any one time during a now nineteen-year time period; (b) on a per-plaintiff basis, manually reviewing all of each Consumer Plaintiff's communications (whether by email, text message, or other means, and to the extent reasonably available) to determine whether any other "online services" are implicated; (c) on a per-plaintiff basis, manually examining each of Consumer Plaintiffs' devices—such as each computer and mobile device (to the extent each device is even accessible)—to determine "all" apps or websites visited or installed during a now nineteen-year time period (to the extent such information is even ascertainable); (d) manually querying each individual service implicated to determine whether Consumer Plaintiffs actually maintained "accounts or profiles" on that service, rather than having access without an account or profile, or receiving an errant communication (such as a "spam" email or text message from a service for which the Consumer Plaintiff has not actually maintained an account or profile); (e) if any one Consumer Plaintiff did maintain an "account or profile" for a given service, manually querying that service by (i) logging into each account or profile (to the extent reasonably accessible), and (ii) manually examining each page or window of the site or service to determine whether any "privacy protections or privacy practices" for that service exist; and then (f) compiling this information into an Interrogatory response.

Consumer Plaintiffs will meet and confer with Meta regarding the subject matters covered by this Interrogatory, as well as its scope.

**INTERROGATORY NO. 5:**

If You contend that Facebook has monopoly power in any alleged relevant product market during the Relevant Time Period, describe in detail the evidentiary basis for your contention (including all documents or witnesses that support your contention), including, without limitation,