WILMERHALE

March 14, 2022

**Sonal Mehta**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

<u>**VIA ECF**</u>

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

   Re: *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Meta respectfully requests that the Court compel User Plaintiffs to produce documents concerning the online services currently installed on Users' smartphones and other internet-connected devices, and those services that appear in screentime reports, battery reports, and other documents in Users' productions indicating that Users maintain or have maintained accounts on those services. The parties' lead counsel met and conferred on February 21, 2022 and reached an impasse.

Users' Complaint alleges that Meta misrepresented its practices concerning user privacy for "fifteen years" to acquire and maintain a monopoly. Dkt. 87 ¶ 111. Users complain they were left with "no suitable alternatives to connect with [their] friends and family," and that Meta was able to "extract supracompetitive" levels "of personal data and attention" and withhold competitive "compensation for" Users' "time and attention" from a massive proposed class comprising "[a]ll persons in the United States who maintained a Facebook profile." Dkt. 87 ¶¶ 20, 24, 27, 95, 248, 272, 282, 296, 306. Based on these supposed privacy misrepresentations, Users seek $2 trillion in class damages. Meta's requested discovery—seeking documents concerning the online services Users had accounts on, their reasons for creating those accounts, the amount of time they spent using those services, how much of their personal data they disclosed to those services, and what their privacy settings on those services were, *see* Ex. A—is important to test Users' theory.

On August 25, 2021, Meta served its First Set of Requests for Production to Users. Ex. A. Certain of Meta's requests for production employ the defined term "Online Service."[1] Users objected to Meta's definition of "Online Service," but otherwise largely agreed to produce responsive documents. Ex. B. At Meta's suggestion, on November 10, 2021 Users agreed to "identify the 'online services' for which" each User Plaintiff "recalls maintaining an account" and "use those 'online services' as the basis for conducting a reasonable search in response to [Meta's] Requests."

What Users have done since is insufficient. On December 17, 2021, Users provided Meta with a list of 32 online services purportedly "represent[ing]" the "'online services that each named plaintiff could remember maintaining an account on' and that are reasonably accessible."[2] Users'

---

[1] The term appears in requests for production 1, 2, 3, 4, 5, 6, 7, 10, 12, and 14.

[2] Meta has requested that Users confirm that none of the named plaintiffs have maintained an account on specific online services, such as Netflix, not included in Users' December 17 letter. Users have repeatedly refused to respond. *But see* Dkt. 249 at 2 (moving to quash subpoena to Netflix on grounds that responsive documents include "private data" Users "may have shared or

Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Beijing Berlin Boston Brussels Denver Frankfurt London Los Angeles New York Palo Alto San Francisco Washington

subsequent document productions reveal that their December 17 list is woefully incomplete. For example, Users produced images[3] of their recent iOS screentime and battery usage reports which show that—during the period in which these reports were generated—they used and had installed on their devices numerous online services that Users have not disclosed and have refused to produce documents concerning. Users' email productions also include messages from various other, undisclosed online services indicating that Users have or had accounts on these services. The extensive range of services that these documents reveal contradicts Users' allegations that they devoted too much time to Facebook and lacked alternatives to engage in similar activities. When pressed about these deficiencies, Users' counsel admitted that they made only a single inquiry of each User Plaintiff as to the online services that "come to mind," but have refused to undertake any other investigation to identify responsive services.

Users' superficial efforts to identify the online services on which they maintain or have maintained accounts do not constitute "a reasonable inquiry" into material that, as explained below, is discoverable. *Rodman v. Safeway Inc.*, 2016 WL 5791210, at *2-4 (N.D. Cal. Oct. 4, 2016) (imposing sanctions for "objectively unreasonable" search not "guided or monitored" by counsel and ignoring obviously responsive documents); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189-190 (C.D. Cal. Feb. 15, 2006) (ordering supplemental production and "declarations or affidavits detailing the nature of [party's] 'reasonable inquiry' to locate responsive documents" or "consent[] to release his documents from various nonparties" after "produc[ing] none of his records from several" relevant third parties "with which he … ha[s] dealings").

### I.    Users' Interactions With Online Services Are Directly Relevant To Nearly All Of The Central Issues In This Case

Users' principal objection appears to be that the requested discovery is irrelevant. Ex. B at 2. This makes little sense given Users' own allegations. *First*, this discovery is relevant to determining whether the named plaintiffs are suitable to represent the class, including whether a User suffered "the same or similar injury" (if any) as the class. *Sandoval v. County of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018). Indeed, for example, if a User shared "private data" and "consent[ed]" to be "track[ed] … across the internet" by other services, Dkt. 249 at 2, that User likely suffered no injury at all from Meta's similar alleged practices. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-md-2843, Dkt. 834 at 5 (N.D. Cal. Feb. 8, 2022) (how information shared elsewhere online "bear[s] on … expectation of privacy in the information").

*Second*, discovery concerning the data and personal information Users share with—or are required to share by—other online services is directly relevant to testing Users' theory of competitive harm. Documents revealing that Users shared similar levels of data with others, *see* Dkt. 249 at 2 (describing nonparty data-collection), would undermine their allegations that levels of data shared

---

had collected" by Netflix). Users have likewise refused to identify which online services a User maintained an account on but for which responsive documents are not "reasonably accessible."

[3] Underscoring Users' unserious approach to their discovery obligations, many of these and other responsive documents from Users' devices were produced in the form of Xeroxed images of smartphones, illegible "Microsoft Word document" screenshot compilations, and, in one instance, a photograph of a User Plaintiff's television—in contrast to the agreed-upon and presumably much easier-to-generate screenshots of Users' devices.

with Meta were supracompetitive, and that Users were harmed by any anticompetitive effect, *FTC v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) (injury from harm to competition required).

*Third*, the discovery is necessary to test Users' market definition allegations. Evidence that Users considered—or, in fact, used—a particular service as a substitute for Facebook would contradict their allegations that they lacked "suitable alternatives to connect with [their] friends and family," Dkt. 87 ¶¶ 20, 24, 27, and be relevant to establishing that Users' alleged markets are invalid, *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30-31 (D.D.C. 2007) (compelling production of "purchase data" regarding possible substitutes from named plaintiffs to test "interchangeability of products"). Users may not by fiat limit discovery to the "narrow relevant market[s]" they have alleged. *In re Loestrin 24 Fe Antitrust Litig.*, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017). Market definition is "a heavily contested merits question" in this case, and "[t]he Court can't manage discovery by assuming merits outcomes … core to these cases." *In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021). That Meta has not limited the online services at issue in discovery to those in a particular candidate market is irrelevant. Users—not Meta—must prove the appropriate market, *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991), and Meta "does not need to prove its case to be able to take discovery into evidence necessary to prove its case," *Apple iPhone*, 2021 WL 718650, at *3.

## II.     The Requested Discovery Is Proportional

Users' proportionality objections are likewise meritless. As a Special Master in this District held just last month, producing "information [] in Plaintiffs' own … accounts"—where nearly all the information resides—is not unduly burdensome. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-md-2843, Dkt. 834 at 5 (N.D. Cal. Feb. 8, 2022). Users' various complaints about the process of "logging into each [User] Plaintiff's accounts," "reviewing … the interface and history," and "exporting th[e] information" are not well-taken. *E.g.*, Ex. B at 10. Users have already done this for the limited range of services they have agreed to produce documents concerning. On December 3, 2021, Users informed Meta that they had determined that they could access responsive documents from 14 of the online services on which they had maintained accounts, and by January 27, 2022 had completed exports of that information for all but two of those. In any event, this is a case in which Users are represented by three massive, well-heeled law firms that have never suggested they lack the resources to comply with the critically important discovery requests at issue here. Moreover, any claim of undue burden ought to fall flat in the face of Users' exorbitant $2 trillion damages demand. Dkt. 227 at 1.

## III.    Users' Invasiveness Objections Fail

To the extent Users claim Meta's requests are "oppressive and harassing," *e.g.*, Ex. B at 10, Meta has already confirmed to Users that it is not seeking—in either these requests or any discovery— sensitive medical or financial information, privileged information, or protected information for minors. But, in view of the breadth of Users' allegations, "it should not come as any surprise … that [Meta] is seeking a wide range of information pertaining to the plaintiffs' habits relating to [online services]." *Fraley v. Facebook, Inc.*, 2012 WL 555071, at *3 n.9 (N.D. Cal. Feb. 21, 2012). Aside from their generalized assertion that information about their online lives—which they have directly put at issue by volunteering to be putative class representatives—is invasive, Users have never articulated any specific document that implicates any specific concern. If they do, Meta is happy to work with them to address any legitimate concerns.

Respectfully submitted,

By: */s/  Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorney for Defendant Meta Platforms, Inc.*