March 21, 2022                                                                                       **VIA CM/ECF FILING**

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:   Plaintiffs' Responsive Letter Brief Regarding Facebook's Interrogatories

Dear Judge Donato:

      Pursuant to the Court's March 7, 2022 order (Dkt. 243), Consumer Plaintiffs and Advertiser Plaintiffs ("Plaintiffs") submit this response to Facebook's February 23, 2022 letter brief regarding Plaintiffs' Responses and Objections to Facebook's First Set of Interrogatories (Dkt. 230, "Mot."). Consistent with their written objections, Plaintiffs attempted to meet-and-confer with Facebook regarding the scope and timing of Plaintiffs' responses. Facebook refused to compromise. Instead, it filed a letter brief the day before the parties' first appearance before this Court, misrepresenting Plaintiffs' objections. For the below reasons, Plaintiffs respectfully request the Court deny Facebook's request to compel further responses.

**I.   Facebook's Market Definition Interrogatories to Consumers and Advertisers**

      Interrogatories Nos. 1 and 2 to Consumers request they "[i]dentify all Participant(s)" in Consumers' alleged Social Network and Social Media Markets, while Interrogatory No. 1 to Advertisers requests the same as to Advertisers' alleged Social Advertising Market. Plaintiffs objected on multiple grounds, including that the interrogatories were premature given the early stage of fact discovery and seek information that will necessarily be the subject of expert analysis, and agreed to meet and confer regarding the scope and timing of a response. Ex. C to Mot. at 5-6; Ex. D to Mot. at 15. The Court should not compel further responses because the interrogatories: (1) are contention interrogatories that prematurely ask Plaintiffs to define the relevant markets; and (2) seek information that will necessarily be the subject of expert discovery. Providing responses now would be of limited value but impose a disproportionate burden.

      Facebook's request that Plaintiffs define the precise contours of the relevant markets at this early stage of fact discovery is premature. Courts have found interrogatories seeking information regarding how antitrust plaintiffs define the market to be "contention interrogatories" better answered after substantial completion of fact discovery. *See In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *1–*2 (N.D. Cal. Dec. 11, 2008) (deferring responses to defendant's interrogatories regarding "market definition" and "interchangeable alternatives" to later date). This case is not near that point, and requiring responses from Plaintiffs would be premature. The Court has not yet set discovery deadlines, and the parties' proposed schedule has fact discovery ending more than a year from now, and class certification motions due December 23, 2022. *Compare* Dkt. 227, at 11 *with In re NCAA Student-Athlete Litig.*, 2012 WL 4111728, at *4 (N.D. Cal. Sept. 17, 2012) (Facebook's cited authority, requiring answers to contention interrogatories with class certification motion already filed and fact discovery closing in two months). Facebook's assertion that "it is [not] too soon to respond" because "[d]iscovery has been open for nearly a year" and it has produced 12.5 million pages (Mot. at 3) is misleading. The Rule 26(f) conference was in August 2021, and the cited "pages" are a re-production of Facebook's prior FTC production, containing both relevant documents as well as documents Facebook itself describes as "far afield

of plaintiffs' claims," Dkt. 78, at 29. Facebook's assertion that its market definition interrogatories "seek threshold *facts*," to which it needs "an immediate, substantive response" so "it can take discovery from those participants" (Mot. at 3) is also baseless. First, Plaintiffs have adequately pleaded their relevant markets, putting Facebook on notice of what Plaintiffs will seek to prove. *See* Dkt. 214 at 7-38. Moreover, that Facebook has not been hindered in seeking nonparty discovery and "develop[ing]" its defenses, Mot. at 2, is clear from its serving 32 nonparty subpoenas (many of which seek documents regarding market definition) and its identification of 193 purported competitors in interrogatory responses served March 17, 2022. Given Plaintiffs define the market in their Complaints more narrowly than Facebook does, it is absolutely certain Facebook's broad nonparty discovery into market definition already encompasses any nonparties identified by Plaintiffs. *See* Dkt. 87 ¶¶ 56-100 (Consumer Plaintiffs' alleged relevant markets and competitors to Facebook); Dkt. 237 ¶¶ 765-83 (Advertiser Plaintiffs' allegations on same).

To the extent Facebook seeks "Plaintiffs' view" (Mot. at 2) of the relevant markets' contours, it seeks information that requires not-yet obtained expert analysis. "Determining the relevant market can involve a complicated economic analysis, including concepts like cross-elasticity of demand, and 'small but significant nontransitory increase in price' ("SSNIP") analysis." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008); *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 599 (1st Cir. 1993) ("[H]ow to define the product market is answered in antitrust cases by asking expert economists to testify."). Courts typically defer responses to interrogatories requiring expert analysis until later, including until expert discovery, rather than requiring parties to provide responses early in discovery. *See U.S. ex rel. Tyson v. Amerigroup Illinois*, *Inc.*, 230 F.R.D. 538, 541–42 & n.5 (N.D. Ill. 2005) (responses to interrogatories requiring expert analysis "before expert discovery" serves "no useful purpose" because "expert report[s]" are "fully revelatory of the . . . theories actually to be relied on"). Compelling Plaintiffs to provide responses now, before expert discovery, would not "clarify[] the issues" or "narrow[] the scope of the dispute," as Facebook contends, Mot. at 3. To the contrary, it would generate only "tentative" responses "of questionable value to the goal of efficiently advancing the litigation." *eBay*, 2008 WL 5212170, at *2 (deferring plaintiff's responses to "market definition" interrogatories that prematurely sought "answers" to "major issue[]"). Indeed, on March 17, 2022, Facebook objected to interrogatories requesting the basis for its contentions regarding the relevant markets, and also for its denial of Consumers' contentions, as premature. Regardless, Plaintiffs' complaints—which set forth non-exhaustive lists of alleged market participants—have provided Facebook sufficient notice of Plaintiffs' preliminary views regarding alleged market participants, and Plaintiffs have already produced all documents cited in their complaints. *See* Dkt. 214 at 7-38; *see also Campbell v. Facebook Inc.*, 2015 WL 3533221, at *4 (N.D. Cal. June 3, 2015) ("detailed factual allegations" in complaint "address[ed] Facebook's concern" about "clarifying the issues in the case or narrowing the scope of the dispute" and weighed against requiring interrogatory responses).

**II.     Facebook's "All Accounts" and "Privacy Settings" Interrogatories to Consumers**

Facebook's Interrogatory No. 3 to Consumers requests they "[i]dentify and describe in detail all accounts or profiles . . . on any online services" that they "used" during a ***nineteen-year*** time period, while Interrogatory No. 4 seeks "all privacy protections or privacy practices" associated with any such accounts, including "all privacy settings[.]" Facebook defines "online services" as "any public-facing internet website" or "digital application," "including but not limited to email or messaging," "news," "ecommerce," "entertainment," "streaming," "television,"

2

or "gaming." See Ex. A to Mot. at 3. Consumers objected on the grounds they are overbroad, seek irrelevant information, and are unduly burdensome and disproportionate, and requested to meet-and-confer regarding their timing and scope. Ex. C to Mot. at 8–10. Similar to Facebook's subpoenas to numerous non-parties which seek every detail of Consumers' digital lives over two decades (Dkt. 249), the breadth and subject matter of these interrogatories seems designed to chill participation in class actions.

*First*, Interrogatory Nos. 3 and 4 are overbroad. Facebook's definition of "online services" implicates numerous services far afield from this litigation, including childcare (*e.g.*, Tadpoles), food and drink (*e.g.*, Starbucks, Grubhub, OpenTable), and travel (*e.g.*, Uber). Consumers' objection is well-founded—Facebook has explicitly asked about these specific applications.

*Second*, these interrogatories seek irrelevant information. Facebook's claim that it needs to know Consumers' use of other services spanning the entire internet (No. 3)—including childcare apps, Starbucks, and Uber—to define the relevant market is not credible. *See* Dkt. 214 at 19:18–19 ("Facebook's suggestion that all 'gaming, news, messaging, and other apps' must be included in the same market is implausible"). Even if all these services were somehow relevant to market definition, named Consumers' use of them is not, because market definition turns on hundreds of millions of people's use, not these three plaintiffs'. *See In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *4 (E.D. Pa. Apr. 8, 2008) (rejecting discovery regarding class plaintiffs' sales for market definition purpose because "[a]ny analysis" of "multi-billion dollar" market "unlikely" "affected by this information"); *cf. Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 846 (D.N.J. 2015) ("Defining the relevant market focuses on common data, expert analysis, and economic tests; such proof generally does not vary by class member."). Facebook also claims it needs to know Consumers' privacy settings when using the entire internet (No. 4) because such information is relevant to Consumers' claim that privacy of their data mattered to them and "Plaintiffs and Class Members used Facebook" because of "Facebook's avowed commitments to its users' privacy." Dkt. 87 ¶ 243. But information about Consumers' privacy settings in their use of the entire internet is irrelevant to how *Facebook's* representations regarding privacy and data impacted Consumers' decision to use *Facebook*. A decision not to keep one's coffee orders on the Starbucks app private says nothing about how one, let alone the market as a whole, values privacy and data on *Facebook*, which people use very differently and store very different information on.

*Third*, these interrogatories are unduly burdensome and disproportionate given the lack of relevance. As written, they would require Consumers to attempt to log into every website or app used over a 19-year period, determine whether it has privacy settings, and identify the privacy settings. Consumers already did this for 32 services in response to document requests seeking similar information, and the process was a months-long effort requiring substantial labor and funds. Specifically, pursuant to the parties' agreement, Consumers identified which services they recalled maintaining accounts on from specific categories of online services identified by Facebook. Consumers identified more than 30, and then produced 43,000 pages of documents, including emails and other communications referencing the services, screentime, and battery reports reflecting "time spent" on each app, and screenshots of any privacy settings on these apps (including for Facebook, Instagram, Google, Snapchat, TikTok, Twitter, Apple, LinkedIn, Pinterest, Amazon, and others); Consumers also provided a chart with the services each Consumer recalled maintaining an account on in a December 17, 2021 letter. Facebook has now reneged on this agreement and seeks *more* information—Consumers' use and privacy settings for all online services over a 19-year period. Its request should be denied.

DATED: March 21, 2022
By */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
Andrew C. Wolinsky
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 462-2772

By */s/ Kristen M. Anderson*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
  kanderson@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 233-6444

Christopher M. Burke (Bar No. 214799)
  cburke@scott-scott.com
David H. Goldberger (Bar No. 225869)
  dgoldberger@scott-scott.com
Yifan (Kate) Lv (Bar No. 302704)
  klv@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Respectfully submitted,
By */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Henry Kelston (*pro hac vice*)
  hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111

*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
  kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
  lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

*Interim Counsel for the Consumer Class*

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: March 21, 2022               By:   */s/ Stephen A. Swedlow*
                                          Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: March 21, 2022               By:   */s/ Stephen A. Swedlow*
                                          Stephen A. Swedlow