April 1, 2022                                                                                                    **VIA CM/ECF FILING**

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:     <u>Consumers' Responsive Letter Brief Regarding Facebook's Document Requests</u>

Dear Judge Donato:

Pursuant to the Court's March 17, 2022 order (Dkt. 256), Consumer Plaintiffs submit this response to Facebook's March 14, 2022 letter brief (Dkt. 254) ("Mot.") regarding Consumers' document productions responsive to Facebook's first set of document requests ("Requests"). Facebook has filed a broad motion to compel additional documents from the named representatives relating to "online services," implicating ten separate document requests over a ***19-year*** period. It files this motion after an agreement on the scope of production, Consumer Plaintiffs' retention of a forensic vendor, and production of over 43,000 pages of documents. Given the scope of the documents already produced, the Court should not compel further productions.

**I.      Consumers Already Produced Responsive Documents Per the Parties' Agreement**

The *ten* document requests at issue concern the named Plaintiffs' use of "online services" during a *19-year period*—documents concerning Consumers': (a) accounts or profiles (Nos. 1–2, 5); (b) reasons for creating any accounts or using any online services (Nos. 3, 10); (c) use of the online services, including communications had on them (Nos. 4, 12); (d) time spent on and data or personal information shared with the online services (Nos. 6–7); and (e) privacy settings (No. 14). Dkt. 254-1. The Requests define "online services" as "any internet website, web application, digital application or other service provided online" including "email or messaging services, and any news, ecommerce, entertainment, streaming video, streaming audio, television, or gaming services, applications or websites." *Id.* at 2. Consumers objected to the over-breadth and burden of these requests, among other things.

During the parties' discussions, Consumers raised that it was impractical for them to identify all internet services they have used over a nearly 20-year period, as the Requests would require. As a compromise (not a starting point), Facebook offered—and Consumers agreed—that after identifying which online services Consumers recalled maintaining accounts on, Consumers could produce responsive documents for those accounts. Relying on this agreement, Consumers collectively identified *more than 30* online service accounts[1] and with the assistance of a forensic vendor examining multiple devices, produced 43,000 pages of documents, including emails and other communications referencing the services, screentime and battery reports reflecting time spent on each app, and privacy settings screenshots (for those services that offer such settings).[2]

---

[1]   A sampling of the 30 online services agreed to, include: Facebook, Instagram, TikTok, Twitter, LinkedIn, Pinterest, Snapchat, WhatsApp, Amazon, Apple, Google, Discord, Signal, and Skype.
[2]   Facebook incorrectly asserts Consumers have taken an "unserious approach to their discovery obligations" based on a few supposedly problematic documents. Mot at 2 n.3. Consumers twice told Facebook that they did not produce "Xeroxed images of smartphones" before it repeated that falsehood in its motion. The photo of a television (which cannot generate screenshots) identifies a

But much as art imitates life, Facebook's appetite for private information about the Plaintiffs *in* this litigation mirrors its appetite for private information which led *to* this litigation. After receiving the production, Facebook reneged on the parties' agreement, demanding Consumers identify more online services accounts and produce more responsive documents. Facebook's demands have no limiting principle, but require that (a) with every additional online service identified in documents produced by the Consumers, (b) any app currently installed on any smartphone or Internet-connected device, or (c) any service identified by counsel during discovery, additional documents must be produced. As Facebook has made clear, it believes that every step taken by these Plaintiffs on the Internet for the past near-two decades has now become fodder for its discovery requests. Facebook cites no case in which a court allowed such sweeping discovery into Plaintiffs' lives merely because they sought to represent a class against a monopolist.

In an attempt to resolve the dispute, on February 8, 2022, Consumers offered to search for and produce documents regarding 16 additional online services (including ones that had some arguable (although tangential) social component to them): Clubhouse, NextDoor, Microsoft (Bing Rewards and Xbox), Reddit, Quora, Tumblr, Flickr, WeChat, Triller, Untappd, Viber, Telegram, Myspace, Friendster, Front Porch Forum, and Yahoo. Without responding to Consumers' offer, Facebook declared an impasse on February 10, 2022, and filed its motion on March 14, 2022.

## II. Consumers Should Not Be Ordered To Produce Additional Documents Concerning Their Use of the Entire Internet in Violation of the Parties' Agreement

Consumers have already produced documents responsive to the Requests using the method suggested by Facebook and agreed to by the parties. The Court should not require Consumers to additionally produce all other documents concerning Consumers' use of any website, application, or service on the entire internet over a 19-year time period as Facebook now requests. Such a request seeks irrelevant documents, and is so overbroad, unduly burdensome and disproportionate as to be fairly read as interposed for the improper purpose of harassing Consumers.

**The additional discovery is irrelevant**: Facebook gives three baseless reasons for why the additional documents are relevant. Mot. at 2–3. *First*, the documents are not relevant to determining whether the named Plaintiffs suffered injuries typical of the class. Facebook contends the documents are relevant because if the named Plaintiffs "shared private data and consented to be tracked across the internet by other services," they cannot have been injured by Facebook's practices. *Id.* But Plaintiffs' consent to share data on *other* platforms is not consent to share data on Facebook's platform. Consent is not a transferable property. Moreover, Consumers allege injury based on a *market-wide* monetary price Facebook should have paid them for their data, but did not, because a monopolistic Facebook destroyed the competition that would have required such payment. Dkt. 87 ¶¶ 223–25; Dkt. 214, at 66–67. Consumers' injuries are thus based on Facebook's failure to provide this market-wide monetary payment for Consumers' data, *not* their subjective, individual privacy preferences. Consumers do not seek damages for "privacy misrepresentations," as Facebook wrongly asserts (Mot. at 1), nor have they alleged Facebook violated their privacy rights under various statutes like the plaintiffs in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-md-2843, Dkt. 148, at iv–v (N.D. Cal. Sept. 21, 2018). Furthermore, the Special Master in *Consumer Privacy* ordered the plaintiffs produce "instances in

---

Comcast Xfinity account, as Consumers previously informed Facebook. One Consumer compiled screentime and battery report screenshots in a single, legible Microsoft Word document; in any case, Consumers already replaced those screenshots *nearly two months ago* at Facebook's request.

which Plaintiffs shared on other *social media platforms* the same or similar information they claim they shared privately on Facebook." 3:18-md-2843, Dkt. 834, at 2 (emphasis added). Consumers already produced those documents for many social media and other services. *Supra* at 1 n.1.

*Second*, Facebook's unexplained claim that data Consumers shared with *all* other online services is relevant to whether "levels of data shared with Meta were supracompetitive" (Mot. at 2-3) is incorrect. The data Consumers shared on services at issue in this discovery motion that are not part of the Social Network and Social Media Markets, including childcare (*e.g.*, Tadpoles), food and drink (*e.g.*, Starbucks), and travel (*e.g.*, Uber), is not relevant to what is supracompetitive in those markets. *See* Dkt. 214, at 19:18–19.

*Third*, Facebook suggests its unlimited discovery into two decades of the Plaintiffs' internet usage is necessary to test Users' market definition allegations. Mot. at 3. But Judge Koh has already rejected as implausible Facebook's overreaching market definition which includes all gaming, news and messaging apps. *See* Dkt. 214, at 19:18–19 ("Facebook's suggestion that all 'gaming, news, messaging, and other apps' must be included in the same market is implausible"). And Consumers have produced documents for *30 online services* and offered to search for documents for *16 more*, including any website that had any arguable social component. Facebook's authority confirms, more is not required. *See In re Loestrin 24 Fe Antitrust Litig.*, 2017 WL 1491911, at *2 (D.R.I. Mar. 15, 2017) (discovery regarding *ten* possible substitutes); *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 33 (D.D.C. 2007) (similar, for *four* possible substitutes). Even if all online services were minimally relevant to market definition, three named Consumers' use is not, because market definition turns on use by hundreds of millions of consumers. *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 846 (D.N.J. 2015) (relevant market "proof generally does not vary by class member."); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at *4 (E.D. Pa. Apr. 8, 2008) (no class plaintiffs' sales discovery for market definition as "[a]ny analysis" of "multi-billion dollar" market "unlikely" "affected by this information").

**The additional discovery is disproportionate**: Facebook wrongly asserts that because Consumers produced documents based on the parties' agreement, producing documents for *all* online services used over 19 years cannot be unduly burdensome. Mot. at 3. An agreement to do "x" does not mean "100x" is reasonable. Nor did the *Consumer Privacy* Special Master find such a boundless production was "not unduly burdensome," as Facebook claims. *Id.* They were ordered to produce information from other *social media platforms* (3:18-md-2843, Dkt. 834, at 2), which Consumers have done. Moreover, retaining "well-heeled law firms" or making a large damages demand on behalf of a class does not render proportional a demand for irrelevant information from the named Consumers, requiring new searches and productions from new services derived from scouring already-produced documents and all "currently installed" apps (regardless of substance).

**The additional discovery is harassing**: The Requests seek all of Consumers' online activity over a 19-year period—websites visited, calls and messages made, items purchased, content watched, images and videos saved, games played, and restaurants visited. Facebook's statement that it is not seeking "sensitive medical" or "protected information for minors"[3] (Mot. at 3) does not address the invasiveness of the overbroad Requests. Consumers' entire "online lives" (*id.*) are not relevant because they are participating in a class action claiming Facebook destroyed competition, nor does it require them to forfeit the right to keep their personal lives private.

---

[3]   Despite this claim, Facebook has repeatedly reiterated its request for the Tadpoles application.

DATED: April 1, 2022

By */s/* Shana E. Scarlett
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
   shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292


**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
   wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
   rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
   bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
   rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
   aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
   kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
   lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Respectfully submitted,

By */s/* Stephen A. Swedlow
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
   stephenswedlow@quinnemanuel.com
Michelle Schmit
   michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
   kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
   adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
   brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
   manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000


*Interim Counsel for the Consumer Class*

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated:  April 1, 2022         By:    */s/ Stephen A. Swedlow*
                                     Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated:  April 1, 2022         By:    */s/ Stephen A. Swedlow*
                                     Stephen A. Swedlow