WILMERHALE

April 1, 2022

Sonal Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD, Dispute re Nonparty Subpoenas

Dear Judge Donato:

Users' request that the Court quash two requests in each challenged subpoena should be denied as premature. In the parties' March 10, 2022 meet and confer, and in correspondence both before and after, Users failed to identify any specific, legitimate privacy concerns arising from the challenged requests. Meta has repeatedly said it is willing to work with Users if and when they do so. Meta has also repeatedly confirmed to Users that it is not seeking sensitive medical, financial, privileged, or otherwise protected information. *See* Dkt. 254 at 3.[1] The Court's intervention is therefore unnecessary. *See Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (declining to quash subpoenas and ordering parties to "meet and confer … in [] good faith" because movants "have not identified exact nature of their" privacy interests).

On March 7, 2022, Users informed Meta that they objected to certain requests in various subpoenas calling for information concerning the named plaintiffs. Users' stated grounds were that the requests called for their "personal information and data"—including an unexplained assertion that responsive materials from streaming services like Netflix and Clubhouse would "likely involve privileged communications"—and called for "information about Plaintiffs' interactions with third party platforms and websites, not their interactions with Meta or Meta's apps and website."

The parties then met and conferred on March 10, 2022. Users were unable to articulate any specific concerns other than to claim that information concerning Plaintiff Klein's use of Signal—an app which Users have represented that Klein does not "remember maintaining an account on"—might include medical information because he is a doctor. Users also repeatedly asserted that documents concerning their interactions with non-Meta online services were irrelevant. Nevertheless, in the interest of avoiding an unnecessary dispute, Meta notified the non-parties that it was holding the challenged requests in abeyance except to the extent that they call for Plaintiffs' time spent, usage data, applicable privacy policies, and privacy settings on the non-parties' products pending resolution of a protocol for addressing any specific, legitimate concerns Plaintiffs identify.

Users ignored this proposal and filed the instant discovery letter, purportedly because Meta did not withdraw the requests entirely. Should the Court address the merits of Users' motion, it should be denied. Users do not have standing to challenge these requests, and their objections are meritless.

---

[1] Among the information that Meta is *not* seeking is information concerning minors from "Tadpoles," which has not even received a subpoena. *See* Dkt. 259 at 3.

Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

### I. Users Do Not Have Standing

"[T]he adversary of a party seeking the information cannot move to quash or otherwise challenge a third-party subpoena." *Hatamin v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *4 (N.D. Cal. Nov. 16, 2015). Users "have made no showing" that any exception to this rule applies. *Wells Fargo & Co. v. ABS Ins.*, 2012 WL 6115612, at *3 (N.D. Cal. Dec. 10, 2012).

Users do not have a cognizable "right or privilege" in the information sought. They offer only a cursory description of the "nature of the [] documents" whose production they seek to block, making it nearly impossible to "assess the claim."[2] Fed. R. Civ. P. 45(e)(2); *Glass Egg*, 2019 WL 2499710, at *5. Almost all of the supposedly "private data" Users do identify, such as "'device identifiers, geo-location, browser type, … cookies[,] and web beacons,'" Dkt. 249 at 2, is straightforwardly discoverable non-content electronic information, *e.g.*, *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013). And, having put information about their online lives—including the amount and nature of the data they share with or have collected about them by other services—directly at issue, Users may not invoke generalized privacy interests to shield that material. *Anderson v. Clawson*, 2014 WL 3725856, at *2 (N.D. Cal. July 25, 2014).

At most, Users only have standing to challenge requests in five of the fourteen subpoenas at issue here. Users claim that the challenged requests in all fourteen subpoenas "implicate their personal and protected data." Dkt. 249 at 1. But Users have only disclosed that one or more User Plaintiff "remember[s] maintaining an account on" services operated by LinkedIn, Pinterest, Signal, Discord, and Twitter.[3] Users offer no explanation of how the other nine services, on which they purportedly never maintained accounts, could possess responsive documents in which Users have "a personal right or privilege." *In re Rhodes Cos.*, 475 B.R. 733, 741 (D. Nev. 2012) (denying standing where party "never identified which, if any, of the subpoenaed" entities "maintained an account held by him" or "possessed personal information" about him). The Court should not permit Users to withhold discoverable information from Meta, Dkt. 254, while simultaneously objecting to non-party discovery that may contradict Users' representations in party discovery.

### II. Users' Objections Are Meritless

Users make much of the supposed irrelevance and breadth of the documents sought in the challenged requests. But, as Meta has explained, Dkt. 254 at 2-3, the nature of Users' interactions with other online services is directly relevant to nearly all of the central issues in this case.

Users' claim is that Meta engaged in unlawful monopolization through "deception about its data privacy practices," which were supposedly "a crucial form of competition" and "instrumental to [Meta] gaining and maintaining market share." Dkt. 87 ¶¶ 102, 108, 136. Assessing whether users of Meta's and its competitors' services sufficiently "care[] about [their] online privacy," *id.* ¶¶ 20, 24, 27, such that privacy representations could "bring about or protect" a monopoly is critical to testing this theory, *Rambus Inc. v. FTC*, 522 F.3d 456, 464 (D.C. Cir. 2008); Dkt. 214 at 67. User Plaintiffs cannot make allegations and then claim that their own experiences are irrelevant.

The materials concerning the User Plaintiffs that Meta seeks from non-parties go to this question.

---

[2] Any uncertainty about the contents of these documents underscores the need for disclosure given that Users allege they were "unaware" of "supracompetitive" data practices. Dkt. 87 ¶¶ 95, 139.

[3] Users represented that no User Plaintiff recalls maintaining an account on services operated by Smugmug, Alpha Exploration, Pagebites, Zoom, Quora, Yelp, Netflix, Tencent, or Nextdoor.

Contrary to Users' assertion, the issues in this case are not limited solely to "how [Users] … value[] privacy and data on *Facebook*." Dkt. 259 at 3. The jury will be entitled to consider documents demonstrating that Users widely shared information about themselves with other services. Those documents "bear[] on" Users' "expectation of privacy in the information" and, accordingly, the competitive significance of whatever purported misrepresentations Users provided information to Meta in reliance on. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 3:18-md-2843, Dkt. 834 at 5 (N.D. Cal. Feb. 8, 2022).

The requested information also goes to Users' theory of competitive harm, which involves Meta allegedly "extract[ing] supracompetitive rents from users in the form of personal data and attention." Dkt. 87 ¶ 95. To test whether the amount of data that Meta collects is, in fact, supracompetitive, Meta requires information from other online services showing the amount of data they collect. And to test Users' claim that they were injured by Meta's data collection practices, Meta needs to understand the corpus of data that Users shared and had collected about them by other services. The scope of the request for "[a]ll Documents and data" in the non-parties' possession "relating to each and every Named Plaintiff" is not of Meta's making; it is required by the scope of the allegations in Users' Complaint. "[I]t should not come as any surprise … that [Meta] is seeking a wide range of information pertaining to the plaintiffs' habits relating to [online services]." *Fraley v. Facebook Inc.*, 2012 WL 555071, at *3 n.9 (N.D. Cal. Feb. 21, 2012).[4]

Users take issue with the fact that Meta did not "tailor … the recipients … of its subpoenas" to firms in Users' alleged "social networking and social media markets." Dkt. 249 at 2. This is not a valid objection. The appropriate relevant market is "a heavily contested merits question" that will not be resolved until *after* discovery ends. *In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021). Meta is entitled to test Users' online privacy habits on services in and out of the "narrow relevant market[s]" Users allege. *In re Loestrin 24 Fe Antitrust Litig.*, 2017 WL 1491911, at *4 (D.R.I. Mar. 15, 2017).[5] This information is needed to rebut Users' purported markets by, among other things, testing their contention that "people use" other services "very differently and store very different information on" them. Dkt. 259 at 3; *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30-31 (D.D.C. 2007). It is also needed to test whether Users suffered a cognizable injury in the market Users ultimately prove (if any).

Finally, Users offer only cursory objections to Meta's request for documents showing Users' privacy settings on non-party services. This information is obviously relevant to testing the competitive significance of privacy misrepresentations and Users' contention that "privacy settings" are supposedly an important dimension of competition. Dkt. 87 ¶ 106. Further, major variation in Users' non-Meta privacy settings goes to, at least, their unsuitability to represent this proposed class, *see Sandoval v. County of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018), and the difficulty of proving class-wide damages, *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

---

[4] Users' insinuation that Meta is somehow seeking their "private information" for unspecified, nefarious purposes, Dkt. 249 at 2, makes little sense in view of the protective order, Dkt. 111, and Meta's stated need for it in this case.

[5] Users incorrectly assert that Meta has "claim[ed] that 'online services' … make up the relevant market." Dkt. 249 at 3. Meta need not and has not asserted a candidate market. *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991). Judge Koh's order, Dkt. 214, thus expressed no opinion on any candidate market Meta may (or may not) assert.

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorney for Defendant Meta Platforms, Inc.*