WILMER CUTLER PICKERING
 HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED ADVERTISER CLASS ACTION COMPLAINT**<br><br>Hearing Date: May 26, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

I. Plaintiffs Do Not State Valid Section 2 Claims ..................................................................1

    A. Plaintiffs' Attempts To Rely On "Monopoly Broth" Fail .......................................1

        1. The "Entry And Capture" Agreements Are Not Anticompetitive ...............3

        2. The "Data Sharing" Agreements Are Not Anticompetitive .......................4

        3. Improving Machine Learning Models Is Not Anticompetitive ...................5

        4. The Integration Of Instagram And WhatsApp Is Not Anticompetitive ....................................................................................................6

    B. Plaintiffs Did Not Suffer An Antitrust Injury ............................................................6

II. Plaintiffs' Latest Theory Of Liability Remains Untimely ...................................................6

    A. Plaintiffs Have Abandoned Their Defective Continuing Violation Theory, Making The Purported Amendment Improper .......................................................7

    B. The "Entry and Capture" Allegations Do Not Relate Back To The Initial Complaint And Should Be Dismissed As Untimely................................................8

    C. What Remains Of The Case Does Not State A Claim ............................................9

III. Count III Must Be Dismissed As To Named Plaintiffs For The Pre-2018 Class ..............10

IV. Dismissal Should Be With Prejudice .................................................................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group*,
    592 F.3d 991 (9th Cir. 2010) ................................................................................................ 4, 5

*American Ad Management, Inc. v. General Telephone Co. of California*,
    190 F.3d 1051 (9th Cir. 1999) ..................................................................................................... 6

*American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal &
Professional Pubs., Inc.*,
    108 F.3d 1147 (9th Cir. 1997) ..................................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................... 4

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ........................................................................................................ 5

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ................................................................................................ 3, 5

*City of Anaheim v. Southern California Edison Co.*,
    955 F.2d 1373 (9th Cir. 1992) ..................................................................................................... 2

*David Orgell, Inc. v. Geary's Stores, Inc.*,
    640 F.2d 936 (9th Cir. 1981) ...................................................................................................... 7

*Eastman v. Quest Diagnostics Inc.*,
    108 F. Supp. 3d 827 (N.D. Cal. 2015) ........................................................................................ 3

*Echlin v. PeaceHealth*,
    887 F.3d 967 (9th Cir. 2018) ...................................................................................................... 8

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ...................................................................................................... 6

*In re Harmonic, Inc., Securities Litigation*,
    2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ............................................................................ 2

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
    555 U.S. 438 (2009) .................................................................................................................... 2

*Pacific Steel Group v. Commercial Metals Co.*,
    2021 WL 2037961 (N.D. Cal. May 21, 2021) ............................................................................ 3

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008) .................................................................................................... 5

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020), *aff'd in part and appeal dismissed in part*,
    2022 WL 595696 (9th Cir. Feb. 28, 2022) ................................................................... 4, 7

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    2013 WL 5694452 (N.D. Cal. Oct. 18, 2013) ................................................................... 3

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
    747 F.3d 1199 (9th Cir. 2014) ......................................................................................... 9

*Simon & Simon, PC v. Align Technologies*,
    2020 WL 1975139 (D. Del. Apr. 24, 2020) ..................................................................... 2

*Tanaka v. University of Southern California*,
    252 F.3d 1059 (9th Cir. 2001) ......................................................................................... 5

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ....................................................................................... 5, 6

*United States v. Syufy Enterprises*,
    903 F.2d 659 (9th Cir. 1990) ........................................................................................... 4

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008) ......................................................................................... 8

*Z Technologies Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ........................................................................................... 7

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Civ. P. 15(c) ................................................................................................................ 7, 8

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law* (4th ed. 2015) ....................................................................................... 2, 9

# INTRODUCTION

Plaintiffs' case remains in search of a theory. Plaintiffs first tried alleging that Meta used a "Copy, Acquire, Kill" strategy to maintain monopoly power. Judge Koh dismissed those claims as untimely, so Plaintiffs added hundreds of paragraphs of allegations about purportedly new "Entry and Capture" conduct that supposedly followed the "sunset" of "Copy, Acquire, Kill." In opposition, Plaintiffs now disown both "Copy, Acquire, Kill" and "Entry and Capture," claiming that what they really meant to allege was a different "monopoly broth" of vertical agreements and product design changes that somehow relates back to, but does not actually include, their original allegations.

Plaintiffs have at least made clear that their Section 2 claims turn exclusively on their new allegations and are not based on "pre-limitations period conduct." Opp. 15. But abandoning the earlier versions of their case to avoid Meta's timeliness arguments cannot save Plaintiffs' claims. As Meta explained in its motion, the new allegations do not state a Section 2 violation. They still do not, even as recast in the opposition. Nor does the opposition's revised theory solve Plaintiffs' timeliness problem. Because Plaintiffs challenge only the newly alleged conduct, the statute of limitations runs from when the FAC was filed. Of the conduct challenged, only Meta's agreement with Foursquare falls within the limitations period, and that agreement—which is (as alleged) non-exclusive, does not foreclose competition, does not deny Meta's rivals the ability to obtain the same data, and did not injure Plaintiffs—cannot render the remainder of the new claims timely.

Plaintiffs' third attempt at finding a theory to support their Section 2 claims was pleaded with the benefit of Judge Koh's order detailing the defects in their claims that needed to be cured, over 12 million pages of documents comprising the entire documentary record of the FTC's antitrust investigation, and their own discovery of Meta. It still fails on both timeliness and the merits. There is no justification for allowing a fourth.

# ARGUMENT

## I. PLAINTIFFS DO NOT STATE VALID SECTION 2 CLAIMS

### A. Plaintiffs' Attempts To Rely On "Monopoly Broth" Fail

Plaintiffs have abandoned challenges to "Meta's refusal-to-deal conduct … or any pre-

limitations period conduct." Opp. 15. Hence, they no longer challenge Meta's acquisitions of Instagram and WhatsApp, its 2015 removal of third-party access to its platform, "data sharing" agreements entered into before December 18, 2016, or any other conduct occurring before that date.[1] And what remains of Plaintiffs' case—a "broth" consisting of (1) three non-exclusive vertical agreements, (2) Meta's use of user data to improve ad targeting, (3) back-end integration of Instagram and WhatsApp, which Meta acquired years earlier, (4) non-exclusive vertical data sharing agreements, and (5) a non-exclusive agreement with Google concerning off-Meta advertising exchanges—fails to adequately state a Section 2 claim. Opp. 1, 11.

Plaintiffs do not allege that any constituent act was exclusionary and, even taken together, they are insufficient. "Two wrong claims do not make one that is right." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). The five here do not either. The alleged "broth" consists only of product design changes or non-exclusive vertical agreements that left counterparties and other firms free to use and share data and other inputs for advertising purposes. Plaintiffs' core theory thus remains that the challenged conduct made Meta a stronger competitor, which is not exclusionary as a matter of law. Because the Court is shown only "a number of perfectly legal acts," it is " much more difficult to find overall wrongdoing." *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992); *Simon & Simon, PC v. Align Techs.*, 2020 WL 1975139, at *7 (D. Del. Apr. 24, 2020) (plaintiffs must "plead at least one instance of [anticompetitive] conduct"); 3B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 310c2 (4th ed. 2015) ("Aggregation meaningless" "when the plaintiff's proof fails on an element that is essential to each individual claim"). And Plaintiffs identify no company prevented or even inhibited from competing due to the challenged conduct. Rather, the opposition clarifies that this conduct improved Meta's products and so benefited consumers and advertisers alike.

---

[1] The FAC includes hundreds of paragraphs of allegations unaltered from the original Complaint for "context." Opp. 15. If Plaintiffs' claims survive, those paragraphs should be stricken or Plaintiffs should be ordered to file a complaint that removes them. Meta would be prejudiced if "compelled to respond to these allegations, or to respond to discovery propounded by plaintiffs into any issues" these allegations raise, because they are not the basis for Plaintiffs' claims. *In re Harmonic, Inc., Securities Litig.*, 2006 WL 3591148, at *17-19 (N.D. Cal. Dec. 11, 2006).

### 1.     The "Entry And Capture" Agreements Are Not Anticompetitive

Contrary to Plaintiffs' contention (Opp. 11-14), courts routinely dismiss claims premised on vertical agreements subject to the rule of reason at the motion-to-dismiss stage where, as here, plaintiffs fail to plausibly allege any injury to competition. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1195 (9th Cir. 2012) (affirming dismissal with prejudice); *see also Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2013 WL 5694452, at *12 (N.D. Cal. Oct. 18, 2013) ("plaintiffs do not sufficiently allege anticompetitive effects in a relevant market, whether through substantial foreclosure or otherwise"); *Pac. Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961, at *9 (N.D. Cal. May 21, 2021) (plaintiff did not plausibly allege it was prevented from entering the relevant market). Challenges to non-exclusive vertical agreements state a claim only if supported by plausible allegations that they "foreclose competitors from entering or competing in" the relevant market or "facilitat[e] horizontal collusion." *Brantley*, 675 F.3d at 1198. Plaintiffs do not allege either. The FAC does not plausibly allege that the "Entry and Capture" agreements with Netflix, eBay, and Foursquare "foreclosed competition in a substantial share" of any relevant market, *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 836-837 (N.D. Cal. 2015), nor is there any allegation that the non-exclusive agreements facilitated horizontal collusion.

Plaintiffs do not dispute that the three "Entry and Capture" agreements are vertical and did not restrict those counterparties' ability to use their own data or share their data with others, including in the "Social Advertising" market. *See* Mot. 9-10.[2] Plaintiffs do not dispute that none of the counterparties is alleged to have been a competitor (or even a potential competitor) in Plaintiffs' alleged social advertising market. *See id*. And Plaintiffs do not dispute that, whatever effect Meta's purportedly "taking a knee in video and e-commerce" might have had in those other markets, Opp. 12, it is outside the scope of Plaintiffs' antitrust claims here. *See* Mot. 11.

Instead, Plaintiffs' response is to repeatedly claim that their "FAC plausibly alleges" that each agreement "is anticompetitive," Opp. 12, and that their "anticompetitive effects" are "serious" and "specifically-pleaded," *id*. at 13. But these conclusory allegations are not enough. *Bell Atlantic*

---

[2] Plaintiffs refer to Foursquare as a horizontal competitor (Opp. 13) in the social *network* market, not the social *advertising* market.

*Corp. v. Twombly*, 550 U.S. 544, 557 (2007). And Plaintiffs' opposition does not explain how concededly non-exclusive agreements for data could have increased the alleged Data Targeting Barrier to Entry ("DTBE"). Plaintiffs' only contention is that the Foursquare agreement gave Meta "a superset of location … data," namely, "Meta's data *plus* the Foursquare data." Opp. 13. But Meta's access to Foursquare's data was not exclusive and therefore could not have increased any barrier to entry. Foursquare was free to do with its data what it wished after the agreement, including, as Plaintiffs concede, license its data to a new entrant (including Meta's competitors) or use its data for itself. *See id.* Moreover, even assuming that Plaintiffs had plausibly alleged an increase in the so-called "DTBE," Plaintiffs have no answer to Meta's showing that such an increase is not a cognizable anticompetitive effect. *See* Mot. 10-11. This supposed "barrier to entry" is only the need to "create even more value for users, developers, and advertisers." FAC ¶ 63. That is not a cognizable "structural barrier to entry," *United States v. Syufy Enters.*, 903 F.2d 659, 667-668 (9th Cir. 1990); it is simply a competitive marketplace.

Finally, Plaintiffs argue without support that it is "not necessarily the case" that the agreements improved Meta's products as compared to "a but-for world" in which Meta "vigorously competed" in other markets for "first-party 'intent' signals." Opp. 12-13. Speculation alone does not satisfy *Twombly*. And, again, Plaintiffs still concede that the conduct that they are challenging improved Meta's products in *this world*, which alone cannot amount to an antitrust violation. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.*, 592 F.3d 991, 999-1000 (9th Cir. 2010) (reciting "the uncontroversial proposition that product improvement by itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result").

### 2. The "Data Sharing" Agreements Are Not Anticompetitive

A court in this District has already held that claims challenging non-exclusive agreements substantially similar to those Plaintiffs challenge—*in addition to* the "Platform Scheme" described elsewhere in Plaintiffs' FAC, *e.g.*, ¶¶ 119-222—were not cognizable. *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1001-1002 (N.D. Cal. 2020). Unsurprisingly Plaintiffs' allegations that the 19 data sharing agreements are anticompetitive without the rest of the supposed scheme also fall short as a matter of law. As with the "Entry and Capture" agreements, these

agreements are vertical and non-exclusive. FAC ¶¶ 302-315. The FAC does not—contrary to Plaintiffs' bare assertion in their opposition—allege that the agreements "prevent[ed] social data covered by the agreements from being shared with or used by a competitive or nascent Social Advertising platform." Opp. 13. Rather, as alleged, signatories were free to use the data obtained for social advertising (or other) purposes. FAC ¶¶ 308, 310. Nor do Plaintiffs allege any foreclosure. *Brantley*, 675 F.3d at 1198; Mot. 14.

### 3. Improving Machine Learning Models Is Not Anticompetitive

The FAC makes clear, and Plaintiffs do not dispute, *see* Opp. 14, that the only effect on competition that Plaintiffs allege as a result of Meta's alleged "deceptive" use of Onavo data in its ad targeting systems is the improvement of those systems. Mot. 14. Again, "product improvement by itself does not violate Section 2." *Tyco*, 592 F.3d at 999. The conduct is non-actionable unless "'some associated'" or "coercive conduct" "'supplies the violation.'" *Id.* at 999-1000 (quoting *Berkey Photo, Inc v. Eastman Kodak Co.*, 603 F.2d 263, 286 n.30 (2d Cir. 1979)).

Plaintiffs do not identify any associated conduct Meta took in connection with the improvement of its ad targeting systems. Plaintiffs allege that Meta's Onavo apps were "deceptively labelled" and there was "no rational relationship between the data collected and the purported purpose of the application." FAC ¶¶ 237, 239; Opp. 14. Those alleged representations were towards Onavo *users*, and Plaintiffs provide no allegation or argument that the purported deception had any impact on the *advertising* market at issue here. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1064 (9th Cir. 2001) (affirming dismissal based on failure to allege "significant anticompetitive effect" in any relevant market). They were not directed at or disparaging of a competitive advertising service, *see Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pubs., Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997), and did not divert ad sales away from competitors to Meta, *see United States v. Microsoft Corp.*, 253 F.3d 34, 76 (D.C. Cir. 2001). Those are the only circumstances in which courts recognize deception as anticompetitive conduct. Plaintiffs may not rely on deception that did not "impair[] rivals" or affect advertisers in the alleged social advertising market to manufacture a violation in connection with conduct that is otherwise alleged as non-actionable product improvement. *Rambus Inc. v. FTC*, 522 F.3d 456, 464 (D.C.

Cir. 2008); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 999-1000 (9th Cir. 2020).

### 4. The Integration Of Instagram And WhatsApp Is Not Anticompetitive

Plaintiffs' challenge to the "backend" integration of Instagram and WhatsApp is not cognizable. Neither the FAC nor Plaintiffs' opposition offers a coherent explanation of how this "product- and data-architecture-redesign," Opp. 10, could have been anticompetitive. Meta's "intertwining and centralizing … infrastructure" that it already owned does not remove an independent competitor from the market. *Id.* at 14. And it does not restrict firms seeking to "ent[er] at scale" or affect what resources are available to them. *Id.* Plaintiffs' speculation about the integration's effect on the prospects of "regulatory intervention" in another case, *id.*, is not a competitive effect, Mot. 5 n.5. This integration, which did not make it harder for others to compete, is thus nothing like the Internet Explorer integration at issue in *Microsoft*, which had the direct foreclosing effect of "overriding the user's preference [and] prevent[ing] some people from using other browsers" offered by nascent operating system competitors. 253 F.3d at 65.

### B. Plaintiffs Did Not Suffer An Antitrust Injury

Plaintiffs offer no response to Meta's argument (Mot. 11 n.6) that conduct for which the only alleged effect is an increased barrier to entry cannot give rise to causal antitrust injury.

Connecting Plaintiffs' purported overcharge injury to an increased barrier to entry requires improper speculation. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). It would require surmising that some new unidentified competitor that could have entered the market and exerted competitive pressure on Meta was stopped by this marginal increase to the barrier to entry. Plaintiffs do not identify any of the 19 data sharing agreement signatories—or any other firm—as planning to enter social advertising or deterred by the conduct. Mot. 14. And the increased entry barrier Plaintiffs allege is in any case implausible because none of the conduct challenged changed what data was available to other advertising competitors. *See supra* pp.3-5. Because causal antitrust injury is necessary to Plaintiffs' Section 2 claims, its absence provides an independent basis for dismissal. *See Qualcomm Inc.*, 969 F.3d at 990.

## II. PLAINTIFFS' LATEST THEORY OF LIABILITY REMAINS UNTIMELY

Plaintiffs' opposition expressly abandons the original allegations (for good reason), and

disclaims any reliance on a continuing violation theory (also for good reason), which was the basis for Judge Koh's grant of leave to amend. Plaintiffs instead assert claims premised solely on the new conduct alleged in the FAC. The prior order does not permit such a fundamental refashioning of this case. And even if this Court were to consider the "amended" complaint, its central allegations are sufficiently divorced from the conduct described in the initial complaint that they do not relate back to that pleading. *See* Fed. R. Civ. P. 15(c). As a result, the applicable four-year statute of limitations runs from the filing of the FAC on February 28, 2022, rendering the majority of the newly alleged conduct facially untimely. That little which remains fails to state a claim.

### A. Plaintiffs Have Abandoned Their Defective Continuing Violation Theory, Making The Purported Amendment Improper

As Meta explained (Mot. 5-7), the FAC does not resolve the deficiencies Judge Koh identified. The continuing violation doctrine is inapplicable to claims premised on the 2015 decision to stop providing general access to Application Programming Interface ("API") data. *See David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981) (continuing violation doctrine does not apply to refusal-to-deal claims). Although Plaintiffs try to tie claims based on that initial refusal-to-deal to subsequent data sharing agreements, no further harm plausibly resulted from these "reaffirmation[s] of the original decision not to deal" with the broader developer community. *Id.* The allegations related to the integration of WhatsApp and Instagram suffer from similar defects. Contrary to Plaintiffs' assertion (Opp. 10), *damages* claims premised on the integration of those platforms have been dismissed as untimely. *Reveal Chat*, 471 F. Supp. 3d at 994-995 (dismissing Section 2 damages claim). And notwithstanding Plaintiffs' allegation that Meta strengthened its position in the social advertising market through the integration of its earlier acquisitions, *e.g.*, FAC ¶¶ 763-764, the "unabated inertial consequences" of an action taken outside the limitations period do not revive claims premised on the earlier act, *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014); Mot. 5-6. Said otherwise, that a defendant "may have benefitted from the consequences of [the defendant's] conduct during the limitations period does not render the act a continuing violation of the antitrust laws." *Z Techs.*, 753 F.3d at 600. Allegations related to Onavo also remain untimely, because the conduct newly alleged in the FAC

consists only of improvements to Meta's advertising offerings, which inflicted no injury on Plaintiffs at all. *See* Mot. 12; *supra* p.6.

Alerted to these failings, Plaintiffs improperly try to rewrite their complaint a third time in the opposition. They abandon the continuing violation theory that Judge Koh granted them leave to amend, *see* Dkt. 214 at 91-96, 107, and disclaim any reliance on the pre-limitations period conduct, *see, e.g.*, Opp. 7 (disputing that FAC relies on a continuing violation theory); Opp. 9-10 (same); Opp. 15 (stating that Plaintiffs do not "base their Section 2 claims on" conduct "outside the limitations period"). Because Judge Koh held that "Copy, Acquire, Kill" could be timely only on a continuing violation theory (Dkt. 214 at 91-100), the entirety of that scheme is now out of the case. These changes recast the FAC into something unrecognizable from any pleading previously filed in this case and exceed the scope of Judge Koh's order. This Court should not, accordingly, consider the allegations on which Plaintiffs now profess to exclusively rely.

    **B.**    **The "Entry and Capture" Allegations Do Not Relate Back To The Initial Complaint And Should Be Dismissed As Untimely**

The central allegations in the FAC fare no better if evaluated on their own terms. Plaintiffs concede that they were not aware of these agreements at the time of the initial complaint, Opp. 5, and new claims based on distinct conduct necessarily cannot relate back to the "conduct, transaction, or occurrence set out" in the previous filing, Fed. R. Civ. P. 15(c); *Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018) ("[A]n amendment will not relate back where the amended complaint had to include additional facts to support the [new] claim." (second alteration original)); *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (no relation back when amended complaint includes "a new legal theory depending on different facts").[3] Meta's alleged "us[e]" of "the lessons" learned during a now-abandoned plan—whether "scuttled" (Opp. 5) or "sunsetted" (FAC ¶ 347)—also does not give rise to a unified scheme. Opp. 6. The opposition's contrary characterization requires conflating "Entry and Capture" agreements (concerning competition in different markets and monetary payments) with the API data sharing agreements

---

[3] What Plaintiffs characterize as a concession that "Entry and Capture" was part of the same scheme alleged in the initial complaint, Opp. 5, is from Meta's discussion of a different topic.

alleged in the initial complaint. *Id.* at 5-6. After spending dozens of paragraphs describing how these "Entry and Capture" agreements are different in kind from the agreements previously at issue in this case, FAC ¶¶ 316-399, simply calling them "data sharing agreements," Opp. 3, does not connect them to the prior complaint. Thus, these new allegations do not relate back.

Plaintiffs do not dispute that if the statute of limitations runs from the FAC, then at best only *one* of the "Entry and Capture" agreements was entered within the applicable limitations period. Mot. 8-9. Absent a showing under the now-abandoned continuing violation doctrine, that later agreement with Foursquare cannot revive claims based on the eBay and Netflix deals, which were first entered more than four years before the filing of the FAC, *see* FAC ¶¶ 463-467, 510-511. But even if these three agreements are construed as part of an ongoing "Entry and Capture" scheme, the Foursquare agreement did not and could not plausibly cause Plaintiffs harm or maintain an unlawful monopoly. *Supra* pp.3-4; Mot. 11-12. Without some "new and accumulating injury," this agreement has no effect on the timeliness of claims based on pre-2018 conduct. *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

### C. What Remains Of The Case Does Not State A Claim

Plaintiffs' amendment-by-opposition thus leaves little for the Court to consider on the merits. Plaintiffs allege that Meta entered anticompetitive agreements concerning API access from 2016 to 2019, but as already explained, these non-exclusive agreements are not plausibly alleged to have harmed competition. Dkt. 97 at 36-37 (First Motion To Dismiss); Mot. 14; *supra* pp.4-5. Plaintiffs assert that Meta used Onavo to build machine-learning models and improve advertising from 2017 to 2019, but this too is not exclusionary as a matter of law. Mot. 12, *supra* pp.5-6. And any claims premised solely on the integration of Instagram and WhatsApp are entirely speculative, warmed-over efforts to revive belated challenges to the initial acquisitions. *Supra* p.6.

\* \* \*

The course of this litigation well demonstrates why the antitrust laws require strict adherence to the statute of limitations. *See, e.g.*, Areeda & Hovenkamp, *supra*, ¶ 320a ("Repose is especially valuable in antitrust, where tests of legality are often rather vague, [and] where many business practices can be simultaneously efficient and beneficial to consumers but also

challengeable as antitrust violations"). Plaintiffs brought a sprawling case premised on a hodgepodge of actions, most of which occurred nearly a decade ago. That complaint was rightly dismissed. Undeterred, Plaintiffs kept hundreds of paragraphs of untimely and meritless allegations and added hundreds more about admittedly unrelated conduct. After Meta's motion to dismiss made clear that these claims were untimely too, Plaintiffs reshuffled their allegations, abandoning some claims and wholly rewriting others. If such a maneuver can turn untimely, independently non-actionable allegations into a viable suit, no party could ever find repose.

### III. COUNT III MUST BE DISMISSED AS TO NAMED PLAINTIFFS FOR THE PRE-2018 CLASS

Plaintiffs do not dispute that named Plaintiffs for the putative pre-2018 class (and Young) lack standing to bring Count III. Indeed, they asserted in their motion opposing transfer of this case to an MDL that no pre-2018 class member is challenging the GNBA. *See* Dkt. 272-2 at 7. Plaintiffs instead contend that Meta cannot seek any relief as to Count III because it already moved to dismiss that count. Opp. 15. But Meta's request is proper because it raised its standing argument in its original motion to dismiss and Judge Koh's order did not address the argument. Mot. 15 n.8.[4]

### IV. DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiffs identify no good-faith basis for asserting that new allegations might cure the FAC's deficiencies. Their vague reference to "facts from Meta's document production" does not suffice. Opp. 15. Plaintiffs had over 12 million pages of Meta's document production for nearly a year before they filed the FAC and were not able to find adequate support for their claims; and they still identify no facts they could allege that would cure the fundamental defects in their case.

### CONCLUSION

For these reasons, the Court should grant Meta's motion to dismiss.

---

[4] Although Plaintiffs now contend that Judge Koh "sustained" a standalone Section 2 claim premised on the GNBA, Opp. 2, that is not true. No such claim was pled. Plaintiffs previously characterized any GNBA-related Section 2 allegations as one part of a monopoly broth. Dkt. 109 at 13 (describing the "agree[ment] to a market division with Google" as one aspect of a "multi-part scheme"). As noted, that "broth" fails to state a claim. *Supra* pp.1-6. Plaintiffs cannot now introduce an alternative theory of liability. And to the extent that Judge Koh *did* allow a Section 2 GNBA claim to proceed, that would have no effect on the meritless and untimely claims that permeate the FAC. Those superfluous allegations should be dismissed or stricken. *Supra* p.2 n.1.

| | | |
|---|---|---|
| 1 | Dated: April 25, 2022 | Respectfully submitted, |
| 2 | | By: /s/ Sonal N. Mehta |
| 3 | | SONAL N. MEHTA (SBN 222086) |
| 4 | | Sonal.Mehta@wilmerhale.com<br>WILMER CUTLER PICKERING HALE |
| 5 | | AND DORR LLP<br>2600 El Camino Real, Suite 400 |
| 6 | | Palo Alto, California 94306<br>Telephone: (650) 858-6000 |
| 7 | | |
| 8 | | DAVID Z. GRINGER (*pro hac vice*)<br>David.Gringer@wilmerhale.com |
| 9 | | WILMER CUTLER PICKERING HALE<br>AND DORR LLP |
| 10 | | 7 World Trade Center<br>250 Greenwich Street |
| 11 | | New York, New York 10007<br>Telephone: (212) 230-8800 |
| 12 | | |
| 13 | | ARI HOLTZBLATT (*pro hac vice*)<br>Ari.Holtzblatt@wilmerhale.com |
| 14 | | MOLLY M. JENNINGS (*pro hac vice*)<br>Molly.Jennings@wilmerhale.com |
| 15 | | WILMER CUTLER PICKERING HALE<br>AND DORR LLP |
| 16 | | 1875 Pennsylvania Ave NW |
| 17 | | Washington, DC 20006<br>Telephone: (202) 663-6000 |
| 18 | | |
| 19 | | *Attorneys for Defendant Meta Platforms, Inc.* |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

By: */s/ Sonal N. Mehta*
Sonal N. Mehta