# EXHIBIT A

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |
| Klein, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>Meta Platforms, Inc.<br><br>        Defendant. | Case No. 3:20-cv-08570 (N.D. Cal.) |

## META PLATFORMS, INC.'S MEMORANDUM IN OPPOSITION TO ADVERTISER PLAINTIFFS' MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER NO. 7

Meta Platforms, Inc. (f/k/a Facebook, Inc.)[1] ("Meta") respectfully submits this memorandum in opposition to the motions to vacate Conditional Transfer Order-7 ("CTO-7") (Dkt. No. 169) filed by Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Young, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and Katherine Looper in *Klein, et al. v. Meta Platforms, Inc.*, No. 3:20-cv-08570 (N.D. Cal.) (the "*Klein* Advertisers") (Dkt. No. 185), and Plaintiff Vitor Lindo and other advertiser plaintiffs in *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL Advertisers") (Dkt. No. 186) (collectively, the "Advertiser Plaintiffs").

## INTRODUCTION

The *Klein* Advertisers' putative class complaint concerns the same agreement and

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

underlying factual allegations that are at issue in MDL 3010: the Google Network Bidding Agreement ("GNBA"). The *Klein* Advertisers allege that the GNBA violates Section 1 and contributes to violations of Section 2 of the Sherman Act through Meta's alleged agreement not to challenge Google's dominance in the advertising exchange business in exchange for certain alleged benefits that Google provided to Meta. (*See Klein* Advertisers' Amended Complaint, Dkt. No. 263-3 ("*Klein* Am. Compl."), ¶¶ 614, 860, 866.) This is the same core allegation asserted in 27 actions brought by advertisers (some of whom fall in one of the putative classes alleged in *Klein*) currently centralized and proceeding in MDL 3010 in the Southern District of New York. The fundamental overlap of core issues in both the *Klein* Advertiser action and the MDL warrants denying Plaintiffs' motions to vacate CTO-7, and to finalize the transfer of the *Klein* Advertisers' action to the MDL for coordinated or consolidated pretrial proceedings. Doing so would avoid inconsistent rulings on important pretrial issues, avoid any issues with overlapping classes, and minimize duplicative discovery.

Plaintiffs oppose transfer of the *Klein* Advertisers' action by arguing that the *Klein* Advertisers' amended complaint includes allegations that do not overlap with the allegations raised in the MDL. But this Panel routinely transfers actions under such circumstances, reasoning that these differences readily can be managed by the range of tools available to transferee judges, including, as necessary, separate discovery and motion tracks. Indeed, this very MDL bears this out. While 27 of the 30 complaints centralized into the MDL include allegations concerning the GNBA, many of those complaints—including the lead *Texas* complaint—contain various allegations specific to Google that have nothing to do with Meta. Those differences did nothing to undermine the logic and efficiency of the initial centralization order, and the same reasoning holds here. Moreover, the Advertiser Plaintiffs offer no justifiable

argument for this Panel to keep the *Klein* Advertisers' action with the *Klein* Users' action—now involving wholly separate claims brought by wholly separate plaintiffs—at the cost of Meta having to litigate in parallel *nearly identical* claims brought by the *overlapping* plaintiffs in the MDL in two different courts on different coasts.  Simply put, Advertiser Plaintiffs seek an outcome in which Meta would face the substantial risk of inconsistent pretrial rulings and the near-certainty of duplicative discovery.  This is the very outcome the MDL statute was created to avoid.

Plaintiffs also raise a litany of other ancillary arguments that, for the reasons set forth below, are unpersuasive and fail to overcome the fundamental efficiencies to be gained by transferring the *Klein* Advertisers' amended complaint to the MDL.  Accordingly, Meta respectfully submits that the *Klein* Advertisers' action should be transferred to the MDL and the motions to vacate CTO-7 should be denied.

## **BACKGROUND**

Both the *Klein* Advertisers' action and MDL 3010 concern competition in digital advertising.

**The *Klein* Action:**  The *Klein* action originated from a series of complaints filed by putative classes of Meta users and Meta advertisers in late 2020 and early 2021 in the Northern District of California.  The plaintiffs generally alleged that Meta engaged in anticompetitive conduct in various alleged markets related to social networks, social media and social advertising.  The district court—with then-District Judge Lucy H. Koh presiding—consolidated the actions into two complaints:  one complaint on behalf of a putative class of Meta users ("*Klein* Users"), and one complaint on behalf of a putative class of Meta advertisers ("*Klein* Advertisers").  *See Klein et al. v. Meta Platforms, Inc.*, No. 3:20-cv-08570 (N.D. Cal.) ("Klein Dkt.") (*Klein* Dkt. No. 74).  On April 1, 2021, the *Klein* Users and the *Klein* Advertisers

filed their respective consolidated complaints. (*Klein* Dkt. Nos. 86, 87.)  The *Klein* Advertisers alleged generally that Meta harmed advertisers by engaging in an alleged strategy called "copy, acquire, kill" to neutralize competitive threats in social advertising, and further alleged that Meta entered into an agreement with Google that restrained trade in the relevant market (the "GNBA").[2]  (*Klein* Dkt. No. 86.)  According to the *Klein* Advertisers, as a part of this agreement, Meta agreed not to challenge Google's dominance by dropping its support for a practice called "header bidding", which allegedly "threatened to cut Google out" of exchange-based advertising, in exchange for Google providing Meta certain benefits.  (*Id.* ¶¶ 393, 401, 404.)  Notably, none of the pre-consolidated *Klein* advertiser complaints even referred to the GNBA.  The *Klein* Users alleged generally that Meta harmed its users by engaging in the same "copy, acquire, kill" strategy alleged in the *Klein* Advertisers' complaint, and by making false representations about its data privacy practices.  (*See Klein* Dkt. No. 87.)  The *Klein* Users' complaint did not include any allegations related to the GNBA.  (*See id.*)  On May 20, 2021, Meta moved to dismiss both the *Klein* Advertisers' and the *Klein* Users' complaints; with respect to the *Klein* Advertisers' complaint, Meta moved to dismiss the Advertisers' claim arising from the GNBA for lack of standing.  (*Klein* Dkt. No. 97.)

**MDL 3010:**  MDL 3010 originated from a number of complaints filed against Google arising from alleged anticompetitive conduct in digital advertising (the "Ad Tech cases").  Some of the Ad Tech cases named only Google as a defendant and asserted monopolization claims under Section 2 of the Sherman Act based on Google's alleged conduct

---

[2] The GNBA may be referred to as the "Jedi Blue Agreement" or the "Google-Facebook" agreement.

involving digital advertising.[3]  16 of the original 19 Ad Tech cases included claims under

Section 1 of the Sherman Act against Google and, in 14, also against Meta based on the GNBA

at issue in the *Klein* Advertisers' amended complaint.  All of the Ad Tech cases that include

GNBA allegations assert that Google and Meta reached an agreement in September 2018 in

which Meta agreed not to challenge Google's dominance in advertising technology in exchange

for Google giving Meta certain benefits.

On April 30, 2021, Google filed a motion before this Panel to centralize 19

different cases that asserted substantially overlapping allegations regarding advertising

technology.[4]  Despite the overlap between the allegations in the *Klein* Advertisers' complaint

and the Ad Tech cases, Google, which is not named as a defendant in *Klein*, did not include

*Klein* on its schedule of actions that it contended were appropriate for inclusion in the MDL.

(Dkt. No. 1-2.)  In its response to Google's motion, Meta supported centralization of the Ad Tech

cases and noted that:

> Another putative advertiser class action, *Klein v. Facebook, Inc.*,
> No. 20-cv-8570-LHK (N.D. Cal.), is currently pending in the
> Northern District of California before Judge Lucy Koh.  The *Klein*
> case broadly alleges that Facebook engaged in anticompetitive
> conduct in alleged markets related to digital advertising and
> includes, among others, a claim under Section 1 of the Sherman Act
> based on the [GNBA].

(Dkt. No. 75 at 6 n.5.)  On August 10, 2021, the Panel centralized the Ad Tech cases before

Judge P. Kevin Castel in the Southern District of New York.  (Dkt. No. 126, "Transfer Order".)

---

[3] One of those complaints already had been dismissed by the time that Google filed its transfer motion.  *See In re Google Digital Advertising Litigation*, No. 5:20-cv-03556 (N.D. Cal.) (Dkt. No. 143).

[4] Google initially named 20 actions in its motion; after the motion was filed, one action was closed following consolidation.

**The Recent Procedural History:**  After MDL 3010 was centralized in the Southern District of New York, the transferee judge, Judge Castel, stayed all response deadlines and discovery with respect to Meta pending the resolution of Google's motion to dismiss the third amended complaint in *Texas, et al. v. Google LLC*, No. 20-cv-00957 (E.D. Tex.).  *See In re Google Digital Advertising Antitrust Litig.*, 1:21-md-03010-PKC (S.D.N.Y.) ("MDL Dkt.") (MDL Dkt. No. 129).[5]  In the ensuing months, ten additional cases asserted on behalf of newspaper publishers that alleged Sherman Act Section 1 claims against Meta and Google based on the GNBA were filed and were transferred by the Panel to the MDL.  (Dkt. Nos. 135, 141, 147, 157, 163.)

During this same period, Meta filed numerous joint status reports with the *Klein* court in which it stated it would consider next steps regarding the overlap between the claims in *Klein* and MDL 3010 following the *Klein* court's ruling on Meta's motion to dismiss.  (*See Klein* Dkt. Nos. 139, 157, 201, 212.)  On January 14, 2022, Judge Koh granted in part and denied in part Meta's motion to dismiss both the *Klein* Advertisers' complaint and the *Klein* Users' complaint; Judge Koh dismissed (with leave to amend) the "copy, acquire, or kill" claims brought by the *Klein* Advertisers and the *Klein* Users, but denied Meta's motion with respect to the *Klein* Advertisers' GNBA claims and with respect to the *Klein* Users' data privacy claims. (*Klein* Dkt. No. 214 at 107.)

Following Judge Koh's ruling, with more clarity regarding the status of the *Klein* Advertisers' claims regarding the GNBA and the development that there no longer were any overlapping "copy, acquire, kill" claims between the *Klein* user and advertiser cases, Meta filed a notice of potential tag-along action with the JPML regarding *Klein*.  (Dkt. No. 149.)  Meta

---

[5] That motion will be fully briefed on May 5, 2022.  (MDL Dkt. No. 271.)

suggested in that notice that the *Klein* Advertisers' claims should be transferred to the MDL and that the *Klein* Users' claims should be severed by the Panel or the transferee court and remanded back to the Northern District of California. (*Id.*) In response to the notice, the Clerk of the Panel concluded that the notice was premature given the *Klein* Advertisers' anticipated amended complaint such that *Klein* was "not appropriate for inclusion in this MDL at this time". (Dkt. No. 150.) The Clerk of the Panel noted, however, that any party could re-notice *Klein* as a potential tag-along action after the *Klein* Advertisers filed their amended complaint. (*Id.*) On February 28, 2022, only the *Klein* Advertisers filed an amended complaint. (*Klein* Dkt. No. 236-3.)[6] The *Klein* Users elected not to amend their complaint and therefore are proceeding only on their data privacy claims.

   The *Klein* Advertisers' amended complaint contains three claims. Count III of the amended complaint concerns only the GNBA, alleging that the agreement violates Section 1 of the Sherman Act. (*Id.* ¶¶ 874-879; *Klein* Dkt. No. 271 at 15 (explaining that the *Klein* Advertisers' Section 1 claim is "directed solely to Meta's 2018 market division agreement with Google").) Counts I and II allege that the GNBA, along with a broader course of conduct related to Meta's advertising services, constitute monopolization and/or attempted monopolization under Section 2 of the Sherman Act. (*Id.* ¶¶ 857-873.) After the *Klein* Advertisers filed their amended complaint, and consistent with the Clerk of the Panel's instructions, Meta re-noticed *Klein* as a potential tag-along action. (Dkt. No. 164.) In the notice, Meta submitted again that all the *Klein* Advertisers' claims should be transferred to the MDL and the *Klein* Users' claims should be severed and remanded back to the Northern District of California. (*Id.*) On March 21, 2022, the

_____

[6] Meta submitted an unredacted version of the *Klein* Advertisers' complaint under seal. (*See* Dkt. No. 165.)

Clerk of the Panel entered a conditional transfer order ("CTO") transferring *Klein* to the MDL and simultaneously severing and remanding the *Klein* Users' claims back to the Northern District of California.  (Dkt. No. 169.)

The *Klein* Advertisers and the MDL Advertisers objected to the CTO and subsequently filed motions to vacate to the CTO.  (Dkt. Nos. 171, 176, 185, 186.)

## ARGUMENT

## I.    TRANSFERRING THE *KLEIN* ADVERTISERS' AMENDED COMPLAINT ADVANCES THE INTERESTS OF SECTION 1407.

The *Klein* Advertisers' amended complaint should be transferred to the MDL because it contains claims that arise from the same underlying allegations about the GNBA as the other claims against Meta centralized in the MDL—a Section 1 claim based entirely on GNBA allegations and two Section 2 claims based substantially on the same allegations.  It cannot reasonably be disputed that the *Klein* Advertisers' amended complaint has "one or more common questions of fact" with the MDL; transfer therefore maximizes "the convenience of parties and witnesses" and "promote[s] the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Advertiser Plaintiffs' Motions (Dkt. Nos. 185, 186) should be denied.

A.    The Factual Overlap Between the *Klein* Advertisers' Amended Complaint and the MDL Merits Transfer.

As the Panel's Transfer Order creating this MDL succinctly summarized, the "[c]ommon factual issues in all actions" include "Google's response to a competitive threat to its ad exchange known as 'header bidding,' which allegedly enabled publishers to use non-Google exchanges more effectively."  (Transfer Order at 3.)  "Sixteen of the 19 actions [transferred to MDL 3010] additionally assert that Google and alleged competitor Facebook entered into a secret agreement in 2018 [the GNBA] to suppress the alleged 'header bidding' threat to Google's market position."  (*Id.*)  Since the Panel entered the Transfer Order, the number of cases

asserting claims based on the GNBA have increased:  today, 27 of the 30 underlying actions in the MDL include GNBA allegations.

These are the same core allegations in the *Klein* Advertiser action.  In particular, the *Klein* Advertisers allege that the GNBA's purpose was to protect Google's competitive advantage in advertising markets, while providing Meta with incentives to prevent it from continuing to promote header bidding (which allegedly threatened Google's advertising business).  (*Klein* Am. Compl. ¶¶ 646-647; *see also id.* ¶ 860 (alleging Meta "enter[ed] into an anticompetitive agreement with Google to bolster and reinforce Facebook's dominant position in the Social Advertising Market"); *id.* ¶ 866 (same).)  The *Klein* Advertisers and MDL 3010 plaintiffs all allege benefits from this alleged anticompetitive agreement to both Meta and Google.  (*Klein* Am. Compl. ¶¶ 644-656, 860, 866; *Texas* Third Am. Compl. ¶¶ 420-436, MDL Dkt. No. 195.)  In short, the MDL Advertisers' and the *Klein* Advertisers' claims arise from the very same agreement between Google and Facebook,[7] and that same contract forms the basis for the claims of more than 23 publishers, as well as a putative publisher class, that already have been centralized in the MDL.  This common factual predicate justifies transfer for the very same reason the Panel originally created this MDL.  *See, e.g.*, *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (centralizing actions where all actions shared factual questions relating to whether multiple defendants violated the Sherman Act).

---

[7] (*See Klein* Am. Compl. ¶¶ 16, 17, 18, 628, 644-656, 658, 667, 689, 819, 821, 829-830, 847(j), 860, 866; *Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 1:21-cv-00360 (D.D.C.) (Dkt. No. 25 ¶¶ 3, 5, 49, 55, 60, 62); *SkinnySchool LLC d/b/a Maria Marques Fitness and Mint Rose Day Spa LLC v. Google LLC*, No. 3:21-cv-06011 (N.D. Cal.) (Dkt. No. 1 ¶¶ 91-116); *SPX Total Body Fitness LLC, d/b/a the Studio Empower v. Google LLC*, No. 4:21-cv-00801 (N.D. Cal.) (Dkt. No. 1 ¶¶ 90-115).)  The advertiser plaintiffs in one of the actions transferred to the MDL, *In re Google Digital Advertising Antitrust Litigation*, No. 5:20-cv-03556 (N.D. Cal.), did not include allegations related to the GNBA in their complaint, but have since represented their intention to add such allegations in an amended complaint.  (*See* MDL Dkt. No. 253 at 3.)

Advertiser Plaintiffs' primary argument against including the *Klein* Advertiser action in the MDL is that the complaint includes allegations about Meta that are not present in the MDL.[8] (*See Klein* Adv. Mot. at 9-12, Dkt. No. 185-1; MDL Adv. Mot. at 4-7, Dkt. No. 186-1.) As this Panel has explained many times before, however, "Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization and [] the presence of different nuances does not negate the existence of common questions of fact". *In re Travel Agent Com'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (centralizing cases that involved allegations related to a common conspiracy over objections that at least one of the cases involved unique issues). To the extent there are differences between cases, a "transferee court [], can employ any number of pretrial techniques—such as establishing claim-specific or defendant specific tracks and creating an attorney leadership structure that reflects the differences in the claims—to manage the differences that these actions may present". *See, e.g.*, *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 1258399, at *3 (J.P.M.L. 2021). Here, Judge Castel can do precisely that with respect to any unique issues presented in the *Klein* Advertisers' amended complaint.[9]

---

[8] The *Klein* Advertisers emphasize that the allegations devoted to the GNBA in their complaint make up a relatively low portion of the total number of pages in the complaint. (*Klein* Adv. Mot. at 10.) Meta notes, however, that the claims related to the GNBA were the only claims that survived Meta's initial motion to dismiss the *Klein* Advertiser complaint. (*Klein* Dkt. No. 214 at 107.) The new allegations in the *Klein* Advertiser amended complaint are untested and, for the reasons set forth in Meta's pending motion to dismiss the *Klein* Advertisers' amended complaint, do not state a claim. (*See Klein* Dkt. No. 262.) In opposing Meta's motion to dismiss, the *Klein* Advertisers emphasize the central role the GNBA plays in their claims. (*See, e.g.*, *Klein* Dkt. No. 271 at 11 (describing among the bases for their "monopoly broth" claim under Section 2 the allegedly "an unlawful market division and AI / targeting agreement with Google (already sustained as an adequately pleaded Section 1 and 2 violation)").)

[9] Separate discovery and motion tracks are likely to be necessary regardless of whether the *Klein* Advertiser action is transferred because the MDL actions are hardly monolithic. The MDL

The Advertiser Plaintiffs contend that the *Klein* Advertisers' amended complaint should not be transferred because it involves different alleged markets and different alleged antitrust injuries than those alleged in the MDL.  (*See Klein* Adv. Mot. at 11-12; MDL Adv. Mot. at 2-4.)  As an initial matter, there is overlap between the alleged markets, as the *Klein* Advertisers allege that the social advertising market is "a submarket of online advertising and more general advertising markets", such as those markets alleged in the MDL.  (*Klein* Am. Compl. ¶ 768; *see, e.g.*, *HD Media Co. v. Google, LLC*, No. 3:21-cv-00077 (S.D. W. Va.) (Dkt. No. 1 ¶ 5) (alleging the relevant antitrust market is the "digital advertising market").  Additionally, the same core injury is alleged:  harm to competition in digital advertising, which different plaintiff groups allege has harmed them in particular ways.

In any event, this Panel regularly centralizes actions that involve different alleged markets, different purported classes and different alleged injuries.  *See, e.g.*, *In re Generic Digoxin and Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017) (rejecting the argument that transfer is unwarranted where individual actions involve different liability issues, markets, discovery, classes and expert testimony since "[r]egardless of the differences among the actions, there will be significant factual overlap"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1272-73 (J.P.M.L. 1975) (rejecting arguments of parties opposing centralization that cases "bear virtually no resemblance" to other actions and concluding that all actions "regardless of the market area involved, share common questions of fact on the economic and conspiratorial issues").  That is precisely what this Panel did with this MDL, including publishers who claim the GNBA *decreased* the prices that advertisers paid and advertisers who

---

involves different plaintiff groups, both individual and putative class actions, different alleged anticompetitive conduct and different purported antitrust markets.  (*See* Transfer Order at 1-3.)

claim the GNBA *increased* the prices that advertisers paid.  (*See* Transfer Order at 4.)

None of the cases the Advertiser Plaintiffs cite provide otherwise.  (*See* MDL Adv. Mot. at 2; *Klein* Adv. Mot. at 10-12.)  *In re Google Antitrust Litigation*, for example, relied on a number of factors not present here in declining to centralize the case at issue, such as the lack of meaningful efficiencies that would be achieved from centralizing discovery in that case. 521 F. Supp. 3d 1358, 1359 (J.P.M.L. 2021).  *In re IBM*, another case upon which Advertiser Plaintiffs rely, is likewise distinguishable, as the parties there denied that "any degree of duplicitous discovery is likely to occur".  328 F. Supp. 509, 511 (J.P.M.L. 1971).  Here, there is no doubt that duplicative discovery will occur, as both the *Klein* Advertiser action and the MDL involve claims based on the GNBA.

Notwithstanding this common factual predicate, the *Klein* Advertisers insist that the Panel allow them to litigate their claims arising solely or substantially from the GNBA in the Northern District of California, alongside users who do not allege claims arising from the GNBA at all, while the remaining 27 complaints challenging the GNBA are litigated in New York.  That makes no sense.  While there previously was some logic to the consolidation of the *Klein* Advertisers' complaint and the *Klein* Users' complaint in one court when those complaints included overlapping claims related to the alleged "copy, acquire, kill" strategy, those overlapping claims have since been dismissed.  (*See Klein* Dkt. No. 214 at 107.)  What is left in the Northern District of California are two wholly distinct complaints that rely on different alleged anticompetitive conduct—one, the *Klein* User complaint, focuses on Meta's alleged misrepresentations regarding its data privacy practices, including, for example, alleged practices such as sharing users' data with third parties without their permission (*see, e.g.*, *Klein* Dkt. No. 87 ¶ 116), and the other, the *Klein* Advertiser amended complaint, focuses on the GNBA and

other alleged conduct to shore up Meta's advertising business, including, for example, the use of

alleged "whitelisting" agreements and machine learning (*see, e.g.*, *Klein* Am. Compl. ¶¶ 303-

315, 323-569). The absence of similarities in the *Klein* actions is in direct contrast to the

significant overlap the *Klein* Advertisers' claims have with the MDL—an overlap the MDL

statute was enacted to resolve.

B.  Transferring the *Klein* Advertisers' Amended Complaint Will Avoid Inconsistent
Rulings on Important Pre-Trial Issues.

Section 1407 was also enacted to avoid inconsistent rulings on pretrial issues

stemming from parallel litigation in different courts. *See, e.g., In re Nat'l Prescription Opiate*

*Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (recognizing that failure to centralize similar

cases "raises a significant risk of inconsistent rulings and inefficient pretrial proceedings"). The

threat of such colliding courses is evident here absent transfer.

As an initial matter, the question as to whether the GNBA is an anticompetitive

agreement is ***directly at issue*** both in the *Klein* Advertisers' action and in the MDL. Failing to

transfer the *Klein* Advertisers' action to the MDL risks disparate pretrial rulings on this key

substantive issue (and any other common issues in the amended pleadings the MDL private

plaintiffs are anticipated to file). *See In re Roadway Exp., Inc. Employ. Pracs. Litig.*, 384 F.

Supp. 612, 613 (J.P.M.L. 1974) (transferring case under Section 1407 to ensure there was a

"single ruling" on an important preliminary question and to prevent inconsistent rulings).

Declining to transfer the *Klein* Advertisers' amended complaint may also lead to

inconsistent rulings on the issue of class certification. This is one of the most important factors

relevant to this Panel's consideration of whether to transfer an action. *See id.* (granting transfer

motion where "crucially, the conflicting and overlapping class allegations contained in the

complaints raise the indubitable possibility of inconsistent class determinations" because "this

possibility presents a highly persuasive reason favoring transfer under § 1407").  At least two of

the underlying actions in the MDL were, like the *Klein* Advertisers action, brought on behalf of a

purported class of Meta advertisers.  (*Compare Klein* Am. Compl. ¶ 842 (one of purported

classes consists of "[a]ll persons, entities, and/or corporations in the United States who

purchased advertising from Facebook between April 4, 2018, and the present . . . ."); *with*

*SkinnySchool LLC d/b/a Maria Marques Fitness and Mint Rose Day Spa LLC v. Google LLC*,

No. 3:21-cv-06011 (N.D. Cal.) (Dkt. No. 1 ¶ 132) (purported class consists of "all persons and

entities who . . . purchased advertising on or over Facebook" from September 1, 2018 until the

effects of the anticompetitive conduct ceased); *with SPX Total Body Fitness LLC, d/b/a the*

*Studio Empower v. Google LLC*, No. 4:21-cv-00801 (N.D. Cal.) (Dkt. No. 1 ¶ 131) (same)).

This similarity alone merits transfer of the *Klein* Advertisers' action, as this Panel has

"consistently held that transfer of actions under Section 1407 is appropriate, *if not necessary*,

where the possibility of inconsistent class determinations exist."  *In re Sugar Indus. Antitrust*

*Litig.*, 395 F. Supp. at 1273 (emphasis added); *see also In re Progressive Corp. Ins.*

*Underwriting & Rating Pracs. Litig.*, 259 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (centralizing

actions avoids inconsistent pretrial rulings, "particularly with respect to class certification").

       Finally, declining to transfer the *Klein* Advertisers' amended complaint could also

lead to inconsistent rulings on key discovery issues given the overlap in discovery between the

matters.  *See In re Customs and Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund*

*Scheme Litig.*, 338 F. Supp. 3d 1347 (J.P.M.L. 2018) (transferring cases to "prevent inconsistent

pretrial rulings, especially with respect to dispositive motions and discovery disputes").

    C.   <u>Transferring the *Klein* Advertisers' Amended Complaint Will Be More
Convenient For All Parties.</u>

       Given the factual overlap between the GNBA allegations in the *Klein* Advertiser

action and the MDL, *supra* Section I.A, the cases are likely to involve substantially overlapping discovery and duplicative witnesses.  Where, as here, "plaintiffs will most certainly proceed along similar lines of inquiry" and the "depositions of common witnesses will be noticed and the documents and records of the common defendant will be subjected to intensive inspection", transfer is "necessary to avoid duplication in discovery [and] unnecessary inconvenience to the parties and their witnesses."  *In re King Res. Co. Sec. Litig.*, 352 F. Supp. 975, 976 (J.P.M.L. 1972); *In re Aviation Prods. Liab. Litig.*, 374 F. Supp. 1401, 1403-04 (J.P.M.L. 1972) ("[O]nly through a coordinated pretrial discovery program, tailored to fit the discovery needs of each party and supervised by a single judge, can overlapping and duplicitous discovery be avoided and the just and efficient conduct of the litigation assured.").  Indeed, without transfer, "there inevitably would be repetitious depositions of scores of witnesses, repetitious examinations of thousands of documents, and yet other myriad duplications of pretrial proceedings.  Much time and effort of numerous parties, witnesses, attorneys, and judges would be needlessly wasted."  *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 476 F. Supp. 445, 447 (J.P.M.L. 1979).  None of the Advertiser Plaintiffs' arguments to the contrary establishes otherwise.

   *First*, Advertiser Plaintiffs' contention that centralization would be inconvenient because a majority of potential witnesses are located in California (*Klein* Advertisers' Mot. at 12) is unconvincing.  As an initial matter, Meta maintains offices in New York as well as in California, and some of the percipient witnesses regarding the GNBA agreement are located in London.  More significantly, the Panel already considered and rejected this concern in creating this MDL in the first place:  the very same discovery concerning the GNBA that the *Klein* Advertiser Plaintiffs say will be inconvenient if conducted pursuant to an MDL in New York will already be conducted pursuant to an MDL in New York.  The notion that it would be more

convenient to have that same discovery *also* take place as part of litigation in the Northern District of California blinks at reality. Simply put, consolidated discovery in New York is more convenient for all parties than bicoastal duplicative discovery.

> *Second*, Advertiser Plaintiffs note that discovery already has commenced in the *Klein* action. (*See Klein* Advertisers' Mot. at 17; MDL Advertisers' Mot. at 5.) But the fact that discovery is underway in *Klein*, but not the MDL, does not militate against transferring the *Klein* Advertiser action. Discovery in the *Klein* Advertiser action is still in its early stages; no depositions have been taken and the parties are still negotiating the parameters of document discovery. Indeed, the *Klein* Advertisers only just amended their complaint on February 28, 2022 to include extensive new allegations, for which they served discovery requests only on March 31, 2022. Even in circumstances where plaintiffs alleged that "they [had] only a minimal amount of discovery remaining to complete", this Panel has denied motions to vacate conditional transfer orders. *See, e.g.*, *In re Penn Cent. Sec. Litig.*, 333 F. Supp. 382, 383-84 (J.P.M.L. 1971); *see also In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Pracs. And Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1381-82 (J.P.M.L. 2020) (centralizing actions even where plaintiffs contended the "vast majority of common document discovery [was] complete"); *In re Air Crash Disaster Near Pellston, Michigan on May 9, 1970*, 357 F. Supp. 1286, 1287 (1973) (centralizing cases at different stages of discovery because doing so would "eliminate the possibility of duplication of discovery and avoid unnecessary inconvenience").[10]

> *Third*, the *Klein* Advertisers fundamentally overstate the extent to which their

---

[10] This Panel rejected a similar argument by the *Texas* plaintiffs: "The difference in the discovery posture of the State Action also does not weigh against transfer . . . . That discovery, which is likely to be voluminous and complex, will overlap substantially with the discovery in the other actions on the motion, given that all actions raise the same core factual questions." (Transfer Order at 5.)

discovery would overlap with the ongoing *Klein* Users' action to warrant granting their motion to vacate CTO-7.  (*Klein* Adv. Mot. at 16.)  For example, the *Klein* Advertisers emphasize that both the *Klein* Advertisers and Users have 25 pending joint Requests for Production of Documents (RFPs).  (*Id.*)  But of those joint RFPs, the majority are boilerplate requests that have nothing to do with the substantive claims, such as seeking documents relied upon by the parties in preparing discovery responses or court filings, or about Meta's policies or custodians.  These types of RFPs do not reflect a *substantive* overlap across the wholly different claims brought by the *Klein* Advertisers and Users.  Excluding these RFPs leaves only 12 overlapping RFPs—a fraction of the 130 RFPs currently pending.  Similarly, as to document custodians, the *Klein* Advertisers and Users seek discovery from a total of 97 Meta custodians, of which only *nineteen* overlap between the *Klein* Advertisers' and Users' custodian lists.  Thus, rather than supporting vacating CTO-7, the *Klein* Advertisers' argument underscores the *dissimilarity* of the Advertisers' and Users' actions, compared to the fundamental *similarity* of the MDL Advertisers' and *Klein* Advertisers' claims.

        *Fourth*, the *Klein* Advertisers argue that adding their claim to the MDL would be inconvenient because many third parties headquartered or located in California already have been subpoenaed in their action.  (*Klein* Adv. Mot. at 12-13.)  This is a red herring.  Under Rule 45 of the Federal Rules of Civil Procedure, subpoenaing parties already are obligated to identify a location for document productions or depositions within 100 miles of the non-party—where the presiding trial court is located is of no moment.  *See* Fed. R. Civ. P. 45(c)(2)(A).[11]  The argument

---

[11] Indeed, it is unclear what concern the *Klein* Advertisers are raising in their argument. Should any third parties demand service of a new subpoena following transfer, "an MDL transferee court [can] exercise the powers of any other district court, including the enforcement of subpoenas".  *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No Civ.A 09-3073JAP, 2009 WL 3681986, at *2 (D.N.J. Nov. 4, 2009).

also makes no sense:  because the same third parties are likely to also be subject to discovery in the MDL, they of course would benefit from a single discovery program rather than two.

      *Fifth*, although Advertiser Plaintiffs argue informal coordination is possible (*Klein* Adv. Mot. at 19; MDL Adv. Mot. at 6-7), this Panel has recognized that where, as here, there are a "number of involved counsel, [a] large number of actions and district, [] complex[] factual issues" and disparate case schedules, there are "significant obstacles to informal coordination". *In re Eliquis (Apixaban) Prods. Liab. Litig.*, 282 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017); *see also In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Pracs. And Prods. Liab. Litig.*, 466 F. Supp. 3d at 1381-82 (rejecting informal coordination as a viable option when there were discovery disputes, significant expert discovery and *Daubert* motions and complex factual issues).  As explained in *In re Yosemite Nat'l Park Hantavirus Litig.*, voluntary efforts at coordination may be admirable but are often unconvincing as "a workable substitute for centralization".  24 F. Supp. 3d 1370, 1370-71 (J.P.M.L. 2014).

       In short, there is only one approach to "ensure[] that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the judiciary":  finalizing transfer of the *Klein* Advertiser amended complaint to the MDL.  *See id.* at 1371; *see also In re Med. Waste Servs. Antitrust Litig.*, 227 F. Supp. 2d at 1383 (recognizing that conservation of judicial and party resources is a factor supporting transfer to a MDL).

      D.    <u>The Other Arguments Advanced by the Advertiser Plaintiffs Are Unavailing</u>.

      The Advertiser Plaintiffs raise two other ad hominem arguments seeking to defeat transfer.  Neither is convincing.  *First*, they argue that Meta delayed tagging *Klein* to forum shop or to secure a second opportunity to move to dismiss the claims.  (*Klein* Adv. Mot. at 1-2; MDL Adv. Mot. at 8.)  This is inaccurate.  Meta has taken a consistent position about transferring the

*Klein* Advertiser action to the MDL. For example, the *Klein* Advertisers cite a March 31, 2021 case management statement to suggest Meta changed course on MDL transfer (*Klein* Adv. Mot. at 5), ignoring the fact that that statement was filed *a month prior* to Google's motion for MDL transfer (April 30, 2021). And as noted above, by the time this Panel centralized the Ad Tech cases, Meta's motion to dismiss in *Klein* had already been fully briefed and oral argument on the motion had been held. Since then, Meta repeatedly advised the *Klein* court that it would consider next steps regarding the overlap between the claims in *Klein* and the MDL following the ruling on the motion to dismiss. (*See Klein* Dkt. Nos. 139, 157, 201, 212.) Meta did precisely that.

*Second*, the *Klein* Advertisers claim that their action should not be transferred because of potential conflicts of interest by the firms participating in the *Klein* action and MDL 3010. (*Klein* Adv. Mot. at 18-20.) Specifically, they raise the potential conflict of Kellogg Hansen being involved on both the plaintiff and defendant side of the MDL.[12] (*Id*. at 18-19.) But a potential conflict of interest does not preclude transfer. *See, e.g.*, *In re Alfuzosin Hydrochloride Pat. Litig.*, 560 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (centralizing factually similar cases notwithstanding a law firm's apparent conflict of interest). As the Panel has explained, transferee judges are entirely capable of addressing conflicts of interest after cases are centralized. *See In re Sw. Bell Tel. Co. Maternity Benefits Litig.*, 400 F. Supp. 1400, 1401 (J.P.M.L. 1975) ("[R]esolution of this problem is a matter entirely within the discretion of the transferee judge."). Regardless, any conflict is easily addressed: Meta agrees that, if the *Klein*

---

[12] They also raise a potential conflict with Keller Lenkner (now Keller Postman), which represents the *Texas* plaintiffs in the MDL, and which has been disqualified from *Klein*. (*Id*. at 19.) Keller Lenkner was disqualified as interim class counsel for the users because it hired an attorney that had substantially participated in the representation of Meta in a substantially related case. Keller Lenker is not currently advancing claims against Meta in the MDL; its claims are directed to Google.

Advertiser action is transferred to the MDL, Kellogg Hansen will not serve as counsel to Meta in the MDL pretrial proceedings.  The appropriate team from Kellogg Hansen can continue to represent plaintiffs in the MDL (as they are now) and Kellogg Hansen may represent Meta in other matters outside of the MDL (as they are now).  Thus, consolidation would not change the status quo or create a potential conflict of interest.  Moreover, while Meta agrees that care must be taken to avoid conflicts of interest, any conflict of interest concerns weigh in *favor* of transferring the *Klein* Advertiser action, as it will allow one judge to enact procedures to govern communications among the parties and, as necessary, any potential procedures available under the ethical rules governing practice in the transferee court.

## II.   SEVERING COUNT III ALONE DOES NOT FULFILL THE INTERESTS OF SECTION 1407, BUT COUNT III AT MINIMUM SHOULD BE TRANSFERRED.

The *Klein* Advertisers' alternative proposal to sever and transfer only their Section 1 claim (Count III) would still burden Meta with duplicative discovery and the risk of inconsistent pretrial rulings.  As the *Klein* Advertisers stated, the GNBA is "one event . . . that forms the core of Advertisers' Section 2 claims [Counts I and II]."  (*Klein* Adv. Mot. at 20.) Therefore, the entirety of the *Klein* Advertisers' amended complaint should be transferred to the MDL.  Nevertheless, if the entire *Klein* Advertiser action is not transferred, Meta submits that, at minimum, the *Klein* Advertisers' Section 1 claim should be severed and transferred to the MDL to streamline discovery and reduce the risk of inconsistent pretrial rulings.  (*See* Section I.A.)

## CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Panel finalize CTO-7 and transfer the *Klein* Advertiser amended complaint to the MDL while simultaneously separating and remanding the *Klein* User complaint to the Northern District of California.

Dated: April 26, 2022

Respectfully Submitted,

CRAVATH, SWAINE & MOORE LLP

By: /s/ Kevin J. Orsini
Kevin J. Orsini
New York Bar No. 4261806
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel:    (212) 474-1000
Fax:    (212) 474-3700
korsini@cravath.com

*Attorneys for Defendant Meta Platforms,
Inc. (f/k/a Facebook, Inc.)*