# EXHIBIT A
# (TO NOTICE)

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |
| *Klein v. Meta Platforms, Inc.*, N.D. Cal. Case No. 3:20-08570 | |

## *KLEIN* ADVERTISERS' REPLY BRIEF IN SUPPORT OF THE MOTION TO VACATE <u>CONDITIONAL TRANSFER ORDER NO. 7</u>

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    ARGUMENT..................................................................................................3

    A.     Facebook Fails to Establish Any of the Section 1407 Factors ................3

          1.    Conflicts Preclude Efficient Consolidation of Pre-Trial Proceedings.........4

          2.    Transfer Would Produce Inefficiencies and Inconveniences ......................5

    B.     Alternatives to Transfer Can Prevent Duplication and Inconsistency....................7

    C.     The Panel Should Not Reward Facebook's Forum Shopping................................9

III.   CONCLUSION ...........................................................................................10

# <u>TABLE OF AUTHORITIES</u>

<b>Page(s)</b>

**Cases**

*Apple Inc. v. Pepper,*
  139 S. Ct. 1514 (2019)..............................................................................................9

*In re Acthar Gel Antitrust Litig.,*
  543 F. Supp. 3d 1375 (J.P.M.L. 2021) ...................................................................3

*In re: Alfuzosin Hydrochloride Patent Litig.,*
  560 F. Supp. 2d 1372 (J.P.M.L. 2008) ...................................................................4

*In re Asbestos & Asbestos Insulation Material Prod. Liab. Litig.,*
  431 F. Supp. 906 (J.P.M.L. 1977) ..........................................................................2

*In re: Best Buy Co. California Song-Beverly Credit Card Act. Litig.,*
  804 F. Supp. 2d 1376 (J.P.M.L. 2011) ...................................................................7

*In re Google Antitrust Litig.,*
  521 F. Supp. 3d 1358 (J.P.M.L. 2021) ...............................................................3, 4

*In re Google Play Store Simulated Casino-Style Games Litig.,*
  544 F. Supp. 3d 1364 (J.P.M.L. 2021) ...................................................................3

*In re Proton-Pump Inhibitor Prod. Liab. Litig.,*
  273 F. Supp. 3d 1360 (J.P.M.L. 2017) .................................................................10

*In re Qualcomm Antitrust Litig.,*
  273 F. Supp. 3d 1373 (J.P.M.L. 2017) ...................................................................3

*In re: Real Estate Transfer Tax Litig.,*
  895 F. Supp. 2d 1350 (J.P.M.L. 2012) ...................................................................8

*In re Sears, Roebuck & Co. Emp't Practices Litig.,*
  487 F. Supp. 1362 (J.P.M.L. 1980) ........................................................................7

*In re Sw. Bell Tel. Co. Maternity Benefits Litig.,*
  400 F. Supp. 1400 (J.P.M.L. 1975) .....................................................................4, 5

*Klein v. Facebook, Inc.,*
  No. 20-cv-08570, 2022 WL 141561 (N.D. Cal. Jan. 14, 2022) ....................8, 9, 10

**Statutes, Rules, and Regulations**

28 U.S.C.
  §1407 ................................................................................................................*passim*

Panel Rules

Rule 2.1(d) ................................................................................................................. 10

Rule 6.1(c) ................................................................................................................... 2

Rule 6.2(d) ............................................................................................................. 9, 10

Rule 7.1(a) ................................................................................................................... 9

Rule 7.1(f) ................................................................................................................... 1

**Other Authorities**

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (4th ed. 2004)

§ 10.23 ....................................................................................................................4

Advertisers[1] submit this reply brief in support of their motion (Panel Dkt. 185), pursuant to Panel Rule 7.1(f), to vacate CTO-7, which conditionally transfers their claims in *Klein* to the Google MDL.

## I.   PRELIMINARY STATEMENT

Facebook's arguments for transfer[2] are premised on a single piece of common evidence between *Klein* and the Google MDL: the GNBA. The commonality among the cases, however, ends there. Advertisers allege a multi-year monopolization case against Facebook centering on anticompetitive agreements with Netflix, eBay, and others; surveillance through Onavo spyware; and an anticompetitive integration of Facebook's AI/ML systems—all directed at strengthening the Data Targeting Barrier to Entry protecting Facebook's monopoly. Beyond this conduct, which makes up the bulk of Advertisers' FAC, Advertisers also allege an anticompetitive agreement with Google to share AI/ML technology with Facebook to help it preserve its walled-garden monopoly. The GNBA is just one piece of evidence as to this agreement, and Advertisers' market division claim, which only one of the two Advertiser classes asserts, concerns virtually nothing else even arguably at issue in the Google MDL.

The anticompetitive agreement with Google alleged in *Klein*, which is broader than the GNBA's terms, has now survived a rigorous motion to dismiss, and Advertisers have developed the facts of their broader monopolization claims after extensive joint discovery with the *Klein* Consumers. Indeed, Advertisers' FAC is redacted and shot through with citations to Bates-stamped documents precisely because it relies on evidence obtained from discovery (which

[1]   Unless otherwise indicated, capitalized terms have the meanings defined in Advertisers' opening brief. Panel Dkt. 185-1 ("Op. Br."). Additionally, unless otherwise indicated, emphases are added and citations are omitted.

[2]   *See* Meta Platforms, Inc.'s Memorandum in Opposition to Advertiser Plaintiffs' Motions to Vacate Conditional Transfer Order No. 7, Panel Dkt. 190 ("Resp. Br.").

Facebook incorrectly says is only beginning). With all this said, it is no mystery why Facebook waited a year before urging transfer to New York. Facebook was happy to litigate dispositive motions in California until it lost and a new judge (one that Facebook apparently does not prefer) was assigned. That Facebook is judge-shopping through the Panel is laid bare not only by what it does not dispute (and indeed admits) in its opposition, but by its recent conduct in the *Klein* case, including ***moving to continue its own fully briefed motion to dismiss on the avowed basis that Judge Donato shouldn't decide it while this CTO pends.***

Facebook's opposition stands alone among all the parties before this Panel[3] and is directed entirely at shoehorning this case into the Google MDL for litigation advantage. Facebook asks the Panel to ignore the problems transfer would create, including (1) conflicts arising from *Klein*'s disqualification of Keller Postman, which now leads the Google MDL bellwether case; and (2) conflicts arising from Kellogg Hansen concurrently representing plaintiffs in the Google MDL and Facebook in *Klein* and the FTC case. In supposed mitigation, Facebook proposes a separate track, safeguards limiting communication, and ***even terminating counsel*** in the Google MDL. This turns Section 1407 on its head, as it hamstrings any potential benefits from transferring *Klein* to the Google MDL to begin with. At bottom, Facebook does not explain why such acrobatics are necessary here, where informal coordination suffices and expanding the Google MDL can be avoided. The Panel's transfer authority is not a means to shop forums and judges. A transfer must create value and efficiency; CTO-7 offers none.

---

[3]  While the Panel Rules provide that "[a]ny other party may file a response" to Advertisers' motion, only Facebook chose to do so. Panel Rule 6.1(c). Therefore, "[f]ailure" by other parties—including Google—"to respond to a motion shall be treated as that party's acquiescence to it." *Id.* Except for Facebook, all parties who have taken a position on CTO-7 oppose the transfer Facebook advocates. *In re Asbestos & Asbestos Insulation Material Prod. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) (noting the "virtually unanimous opposition of the parties to transfer" is "a very persuasive factor," though "not by itself determinative").

## II.    ARGUMENT

### A.    Facebook Fails to Establish Any of the Section 1407 Factors

Facebook fails to explain why Section 1407 requires transfer. *See In re Acthar Gel Antitrust Litig.*, 543 F. Supp. 3d 1375, 1376 (J.P.M.L. 2021) ("Parties seeking centralization have the burden of demonstrating that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."). Advertisers have shown that transfer would complicate the Google MDL by introducing different markets, competitors, anticompetitive harms, and classes—all at different procedural postures. Op. Br. at 9-12, 17-18. Refusing to confront the practical differences between the Facebook and Google litigations and how forcing fundamentally separate litigations together will complicate their administration, Facebook inaccurately characterizes Advertisers' claims as "arising solely or substantially from the GNBA," ignoring the FAC's hundreds of detailed paragraphs concerning only Facebook's campaign to monopolize the Social Advertising Market (and an entire class whose claims predate the formation of the GNBA) that would be transferred.  Resp. Br. at 8, 10 n.8, 12.

The Panel should reject this invitation to expand the Google MDL solely to advance Facebook's litigation posture. *See In re Google Play Store Simulated Casino-Style Games Litig.*, 544 F. Supp. 3d 1364, 1366 (J.P.M.L. 2021) ("we do not change the scope of an MDL lightly"). Facebook does not even attempt to distinguish *In re Qualcomm Antitrust Litig.*, which declined to include plaintiff Apple in an antitrust MDL despite its pleading similar antitrust claims, because Apple "also assert[ed] unique contract and patent claims" whose inclusion "could significantly complicate the proceedings and cause delay or other inefficiencies." 273 F. Supp. 3d 1373, 1375-76 (J.P.M.L. 2017). Likewise, *In re Google Antitrust Litig.* rejected attempts to include advertiser antitrust claims in an MDL against Google because they, like here, "plainly involve different relevant markets," "the alleged anticompetitive conduct differs substantially,"

and proposed classes "present[] no overlap" notwithstanding "some overlap in the factual background from which the actions arise." 521 F. Supp. 3d 1358, 1359 (J.P.M.L. 2021). Rather than seriously attempt to distinguish these similar cases, Facebook states without elaboration that there are nonetheless meaningful efficiencies from transfer. Resp. Br. at 12. Facebook is wrong.

### 1.     Conflicts Preclude Efficient Consolidation of Pre-Trial Proceedings

Facebook does not indicate how it expects to simplify discovery and motion practice where conflicts prohibit communications between Advertisers and certain Google plaintiffs. Specifically, Keller Postman is disqualified from *Klein*, but currently helms the Google MDL's bellwether case. Op. Br. at 19; Panel Dkt. 185-4 & 185-5. Kellogg Hansen concurrently represents Facebook in both *Klein* and the FTC action, and also represents the Daily Mail Plaintiffs in the Google MDL. Op. Br. at 18-19. These conflicts introduce "uncertainty as to the status of counsel [that] hampers the progress of the litigation" and threaten additional delays if either firm is disqualified, or if counsel cannot use another firm's work product. Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, § 10.23 (4th ed. 2004).

Facebook concedes that if transfer occurs, the MDL Court will need to employ ***even more*** procedural safeguards to address these conflicts. Resp. Br. at 20. Facebook also recognizes that Advertisers will require a separate discovery and motion track. *Id.* at 10 n.9. The practical effect of Facebook's proposal is a *Klein* MDL within the Google MDL, which provides no efficiencies and merely approximates the adequate protections already in place. Neither of the cases Facebook cites (Resp. Br. at 19) support transfer in the face of such pervasive concurrent conflicts on both sides of the same MDL. *See In re: Alfuzosin Hydrochloride Patent Litig.*, 560 F. Supp. 2d 1372, 1373 (J.P.M.L. 2008) (defendant Barr did not oppose centralization, but reserved rights to move to disqualify Kirkland & Ellis based on its representation of multiple defendants in the same MDL); *In re Sw. Bell Tel. Co. Maternity Benefits Litig.*, 400 F. Supp.

1400 (J.P.M.L. 1975) (addressing attorney's potential conflict between former representation of individual plaintiffs in MDL and current representation of third-party defendant union).

Moreover, Facebook's offer to terminate Kellogg Hansen's representation in Advertisers' case (Resp. Br. at 19-20) only complicates the issue further. First, even if post-transfer Kellogg Hansen withdraws from its representation of Facebook in the Google MDL, its loyalties will still be divided by its concurrent representation of Facebook in the substantially related[4] FTC and *Klein* Consumer actions. Second, simple withdrawal cannot erase Kellogg Hansen's extensive role in *Klein* to date. Kellogg Hansen represented Facebook in meet and confers implicating client confidences and work product in *Klein*, including as recently as April 6. Kellogg Hansen presented oral argument for Facebook when Judge Koh considered Facebook's motion to dismiss. Tr. of Hr'g, *Klein* Dkt. 217, at 53:6-56:3, 71:13-73:12 (Jul. 15, 2021). And of the 32 third-party subpoenas referenced in Advertisers' opening brief (Op. Br. at 12-13), Kellogg Hansen issued 17. Kellogg Hansen's withdrawal would unravel progress in *Klein* without enhancing Advertisers' ability to coordinate with the Google Plaintiffs.

### 2.    Transfer Would Produce Inefficiencies and Inconveniences

Given the lack of efficiencies gained from transfer, disrupting Advertisers' and Consumers' coordinated discovery makes no sense and undermines the purpose of Section 1407. In their opening brief, Advertisers explained that even after Judge Koh's decision on Facebook's motion to dismiss and Advertisers' submission of the FAC, the *Klein* Advertiser and Consumer cases still broadly overlap as to issues like (1) barriers to entry in the relevant markets; (2)

---

[4]  *See* Order Granting Motion to Disqualify Keller Lenkner, *Klein* Dkt. 127 at 7 (Jul. 20, 2021) (finding *Klein* action and FTC investigation to be substantially related); Order Granting Motions to Relate; Consolidating Cases; Setting Case Schedule; Denying Stipulation and Motions as Moot, *Klein* Dkt. 47 at 2 (Feb. 9, 2021) (consolidating Advertiser and Consumer actions).

Facebook's use of privacy as pretext for its anticompetitive actions; (3) Facebook's evaluation of competition in these relevant markets; and (4) Facebook's use of Onavo spyware to extract data from Consumers and use that data to eliminate competition in the Social Advertising Market. Op. Br. at 14-16. As a result, Advertisers and Consumers have issued joint RFPs, Facebook has responded to those RFPs, and Facebook has produced over 12 million pages of documents,[5] for which Advertisers and Consumers have developed joint hosting and review protocols. Meanwhile, Facebook—predominantly through Kellogg Hansen—has issued 33 third-party subpoenas[6] targeted at these issues. And on April 29, 2022, Judge Donato entered a comprehensive case management plan indicating his intent to oversee discovery for Advertisers and Consumers as one consolidated case. *Klein* Dkt. 289.

Facebook cannot seriously dispute this overlap and the coordinated discovery it entails. It merely contends that Advertisers "overstate" the problem and that the same non-parties will be subject to the same discovery in the Google MDL. Resp. Br. at 15-18. The actual RFPs and third-party subpoenas show Facebook to be wrong on both counts. First, the joint RFPs, issued in September 2021,[7] concern, for example, Facebook's use of Onavo spyware, Facebook's implementation of the Facebook Research App, and written discovery from the FTC litigation. Whether or not Facebook views these topics as "substantive" (Resp. Br. at 17), none are relevant to the Google MDL. In contrast, Facebook identified a relevant joint custodian for Advertisers

---

[5]  Facebook does not contend that this document production overlaps with the Google MDL.

[6]  In addition to the 32 subpoenas referenced in Advertisers' opening brief, Facebook has since issued a subpoena to Apple, Inc., also headquartered in the Northern District of California.

[7]  Facebook misleadingly argues discovery "is still in its early stages" because Advertisers served discovery requests for the FAC "only on March 31, 2022." Resp. Br. at 16. Facebook is referring to Advertisers' **Third Set** of RFPs.  As Facebook knows, the parties have engaged in substantial discovery since May 2021, including Facebook's production of documents cited extensively in the FAC. Fact discovery is set to close on January 13, 2023. *Klein* Dkt. No. 289.

and Consumers for each RFP (whether issued by Consumers, Advertisers, or jointly) that will require Facebook to perform custodial searches. Op. Br. at 16. Second, Facebook's third-party discovery—*e.g.*, Kellogg Hansen's subpoena to Netflix—concerns topics such as the Facebook FTC Action (Request 3), Netflix's data collection and privacy policies (Requests 10-11), Netflix's ability to provide its users with social networking functionalities (Request 25), and Netflix's use of Facebook Audience Network to purchase advertising (Request 44). None of the requests concern the GNBA. Thus, Facebook's claim that the Google MDL will take the "very same discovery" concerning "the same third parties" lacks credibility. Resp. Br. at 15, 18.

**B.      Alternatives to Transfer Can Prevent Duplication and Inconsistency**

As previously stated, "[c]entralization under Section 1407 should be the last solution after considered review of all other options." Op. Br. at 9 (quoting *In re: Best Buy Co. California Song-Beverly Credit Card Act. Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)).

> [N]otices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; either party could seek orders from the appropriate district courts directing the parties to coordinate any pretrial efforts germane to more than one action; and either party may request from the appropriate district courts that discovery completed in any action and relevant to one or more of the other actions be made applicable to those actions.

*In re Sears, Roebuck & Co. Emp't Practices Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980). Facebook considers none of these options, and instead discounts any informal alternatives based on the perceived size and complexity of the Google MDL. Resp. Br. at 18. However, while Facebook stresses that "27 of the 30 underlying actions in the [Google] MDL include GNBA allegations" (Resp. Br. at 9), it omits that 23 of those cases are virtually identical actions initiated by individual newspaper publishers, represented by the same counsel and relying on near carbon

copies of the same complaint.[8] As a result, Facebook provides no indication why it believes these cases prevent the MDL Court from aligning any overlapping discovery goals with Judge Donato. Relevant discovery in *Klein* can be made available to the Google MDL when appropriate, just as discovery in the FTC action was produced in *Klein*.

Additionally, that both courts may assess similar legal questions, such as whether the GNBA is anticompetitive in the respective relevant markets (Resp. Br. at 13), is insufficient to merit transfer. *See, e.g.*, *In re: Real Estate Transfer Tax Litig.*, 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("'[m]erely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization.'"). Given that Advertisers' claims concern solely the Social Advertising Market, the potential for inconsistent pre-trial rulings is minimal and easily addressed by the parties. The MDL Court is fully capable of accounting for the *Klein* Court's rulings, just as the *Klein* Court has accounted for rulings in the FTC action. *See, e.g.*, *Klein v. Facebook, Inc.*, 2022 WL 141561, at *3 (N.D. Cal. Jan. 14, 2022) (*Klein* Court took judicial notice of the FTC action motion to dismiss decision and permitted supplemental briefing); *see also* State Plaintiffs' Opposition to Google's Motion to Dismiss, Google MDL No. 264, at 22, 37 (citing Judge Koh's analysis of the *Klein* Consumer claims).

Similarly, Facebook provides no reason to believe that the *Klein* Court and the MDL Court will make inconsistent class determinations. First, there is no present overlap among any of the advertiser classes because the Google advertisers, who oppose transfer, have not filed their operative consolidated complaint in the Google MDL. *See* Op. Br. 12 n.13; Panel Dkt. 186-1, at 7-8. Second, even in the two outdated complaints cited by Facebook proposing classes of

---

[8] *Compare Gould Enterprises, Inc. v. Google, LLC*, No. 1:22-cv-01705 (S.D.N.Y. Feb. 9, 2022), Dkt. 1, *with Coastal Point LLC v. Google LLC*, No. 1:21-cv-06824 (S.D.N.Y. Apr. 19, 2021), Dkt. 1.

individuals who "purchased advertising on or over Facebook" (Resp. Br. at 14), neither asserted claims **against** Facebook; their Class Period began September 1, 2018; and they only alleged harm in the ad-exchange market dominated by Google. *See SPX Total Body Fitness v. Google LLC*, No. 1:21-cv-06870 (S.D.N.Y. Aug. 16, 2021), Dkt. 1 at ¶¶ 119, 126, 130-31; *Skinny School LLC v. Google LLC*, No. 1:21-cv-07045 (S.D.N.Y. Aug. 21, 2021), Dkt. 1 at ¶¶ 120, 127, 131-32. Third, no formulation of the respective classes in *Klein* and the Google MDL presents a risk of inconsistent class determinations because the parties seek different class relief for harms in different markets. *Cf. Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1524-25 (2019) ("This is not a case where multiple parties at different levels of a distribution chain are trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain.").

### C. The Panel Should Not Reward Facebook's Forum Shopping

Facebook knew about Advertisers' GNBA allegations since April 22, 2021, when Advertisers filed their initial consolidated complaint. *Klein* Dkt. 86. On April 30, 2021, Google moved this Panel to centralize the Google MDL (Panel Dkt. 1), thereby triggering Facebook's affirmative obligation under Rule 6.2(d) to "promptly" notify the Panel Clerk of any potential tag-alongs so that the Panel could structure the MDL during the "optimal time . . . to maximize efficiencies." Transfer Order, Panel Dkt. No. 126, at 3; *see also* Panel Rule 7.1(a). Facebook, however, ignored the Panel Rules and instead moved to dismiss Advertisers' complaint in its entirety on May 20, 2021. *Klein* Dkt. No. 97. Having failed to accomplish that goal, Facebook admittedly seeks a fresh start in a new forum, unencumbered by Judge Koh's decisions,[9] progress made in discovery,[10] or any additional rulings from Judge Donato.[11]

---

[9] For example, Facebook now claims that the well-pleaded Social Advertising Market in *Klein* overlaps with the "digital advertising market" defined by some parties in the Google MDL

Facebook glosses over its circumvention of Rule 6.2(d) by asserting it maintained a "consistent position" to defer tagging *Klein* until after Judge Koh decided its first motion to dismiss. Resp. Br. at 18-19. That Facebook "consistently" tried to game the rules only makes matters worse; its "wait-and-see" approach finds no support in the Panel's Rules or decisions and has prejudiced *Klein*, the MDL Court, and the Panel. Advertisers' GNBA allegations have not changed since they were asserted in April 2021. Every argument Facebook now raises was equally available to it when the Panel first considered centralization. Likewise, the existence of a motion to dismiss did not prevent Facebook from tagging *Klein* last year any more than it does now. *See supra* n.11. Nor does Facebook's fleeting reference to *Klein* in its prior Panel briefing suffice. *See* Resp. Br. at 5; *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 n.7 (J.P.M.L. 2017) (reference to potential tag-alongs at oral argument did not satisfy Panel Rule 6.2(d)). Facebook does not deserve an opportunistic second bite at the apple.

## III. CONCLUSION

For the foregoing reasons, Advertisers respectfully request that the Panel vacate CTO-7.

---

(Resp. Br. at 11), ignoring Judge Koh's determination that "social advertisements and other types of online advertisements are not reasonably interchangeable." *Klein*, 2022 WL 141561, at *22.

[10] *See* Panel Dkt. No. 185-3 (noting Facebook's intent to re-evaluate "any and all agreements with respect to discovery . . . if and when the transfer to the MDL is memorialized").

[11] On April 27, 2022, Facebook's counsel, in an attempt to delay Judge Donato's ruling on Facebook's fully briefed partial motion to dismiss, notified Advertisers that "[i]n light of the conditional transfer order and pending motion to vacate in the JPML . . ., we plan to seek a continuance of the hearing date on [Facebook's] motion from May 26, 2022 to June 23, 2022." Ex. 1. On May 3, 2022, the date of this brief, Facebook filed its promised motion, arguing that Judge Donato should not rule on Facebook's own motion to dismiss because CTO-7 was pending. Ex. 2. Advertisers plan to oppose this motion, which ignores Panel Rule 2.1(d) and seeks to nullify the parties'—and the California court's—substantial efforts to close the pleadings on Advertisers' claims.

Dated:  May 3, 2022

Respectfully submitted,

**BATHAEE DUNNE LLP**

 s/ Brian J. Dunne
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Telephone: (213) 462-2772

Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
Andrew C. Wolinsky
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835

*Interim Co-Lead Counsel for Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Young, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and Katherine Looper*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (CA 246108)
kanderson@scott-scott.com
Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444

Christopher M. Burke (CA 214799)
cburke@scott-scott.com
David H. Goldberger (CA 225869)
dgoldberger@scott-scott.com
Kate Lv (CA 302704)
klv@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300

San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

*Interim Co-Lead Counsel for Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Young, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and Katherine Looper*

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Telephone: (215) 592-1500

*Plaintiffs' Executive Committee Counsel and Counsel for Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Young, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and Katherine Looper*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (CA 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (CA 223242)
tmaya@ahdootwolfson.com
Henry J. Kelson (*pro hac vice*)
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111

**AHDOOT & WOLFSON PC**
Andrew William Ferich
aferich@ahdootwolfson.com
201 King of Prussia Rd., Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111

*Plaintiffs' Executive Committee Counsel and Counsel for Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Young, Joshua Jeon, 406 Property Services, PLLC, Mark Berney, and Katherine Looper*

# EXHIBIT 1
# (TO REPLY)

**Subject:** Klein v. Meta Platforms -- May 26 motion-to-dismiss hearing
**Date:** Wednesday, April 27, 2022 at 1:59:23 PM Pacific Daylight Time
**From:** Jennings, Molly
**To:** FB_AdvertiserCounsel@scott-scott.com, facebook-consumer-leads@lists.locklaw.com
**CC:** WH Facebook Private Antitrust Litigation Service List

Counsel,

In light of the conditional transfer order and pending motion to vacate in the JPML and travel schedules of our team, we plan to seek a continuance of the hearing date on Meta's motion to dismiss from May 26, 2022 to June 23, 2022, at 10:00 am.  *See* Local Rule 7-7(b)(1).  If you agree, we can prepare a joint stipulation. Please let us know.

Thanks,

Molly

**Molly Jennings | <span style="color:#8b1a1a">WilmerHale</span>**
She/Her/Hers
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
+1 202 663 6947 (t)
+1 202 663 6363 (f)
molly.jennings@wilmerhale.com

**<span style="color:green">Please consider the environment before printing this email.</span>**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com— and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

# EXHIBIT 2
# (TO REPLY)

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone:  (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000
*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>      v.<br><br>META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>                    Defendant. | Case No. 3:20-cv-08570-JD<br><br>**MOTION TO CONTINUE HEARING ON DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PURSUANT TO LOCAL RULES 6-3 & 7-7(b)**<br><br>Judge: Hon. James Donato |

## **MOTION TO CONTINUE**

Pursuant to Civil Local Rules 6-3 and 7-7(b), Defendant Meta Platforms, Inc. hereby files this Motion to Continue the Hearing on Meta's Motion to Dismiss the Consolidated Advertiser Class Action Complaint from Thursday, May 26, 2022 at 10:00 AM, to Thursday, June 23, 2022 at 10:00 AM or thereafter as convenient for the Court to give the JPML time to resolve the Motion to Vacate pending before it and thereby allow this Court to avoid potentially unnecessary work resolving Meta's Motion to Dismiss.[1]  On April 27, 2022, Meta requested that Advertisers agree to stipulate to moving the hearing date from May 26 to June 23.  Counsel for Advertisers stated that they would not so stipulate, and would oppose any motion to continue the hearing.

On March 21, 2022, Meta noticed a hearing date of 10:00 AM on May 26, 2022 for its Motion to Dismiss.  *See* ECF No. 262.  As Meta has advised the Court (ECF Nos. 260, 262 at 1 n.1), on March 21, 2022—the same day that Meta filed its Motion to Dismiss and noticed a hearing on that motion—the JPML issued a Conditional Transfer Order with Simultaneous Separation and Remand, transferring Advertisers' First Amended Complaint to the multidistrict litigation *In re: Google Digital Advertising Antitrust Litigation*, MDL No. 3010 (J.P.M.L.).  *Id.* at ECF No. 169. Advertisers filed a Notice of Opposition to Conditional Transfer Order on March 28, 2022 (ECF Nos. 264, 272).  Three days later, on March 31, 2022, the JPML noticed an accelerated briefing schedule on Oppositions to its Conditional Transfer Order, and set the matter for its May 26, 2022 hearing session (ECF No. 265).  On April 14, 2022, the JPML designated Advertisers' Motion to Vacate Conditional Transfer Order ("Motion to Vacate") "for consideration without oral argument." *In re: Google*, MDL No. 3010, ECF No. 189.  Meta expects that the JPML will resolve Advertisers' Motion to Vacate on the papers close in time to its previously scheduled May 26, 2022 hearing.

Thus, Meta seeks to move the hearing on its Motion to Dismiss to Thursday, June 23, 2022 at 10:00 AM or thereafter so that the Court will not be unnecessarily burdened in the event the Motion to Vacate is denied in whole or in part.  If the JPML denies Advertisers' Motion to Vacate,

---

[1] Meta requests that the date not be reset earlier because Defendant's lead counsel has previously-booked non-refundable international family travel scheduled in early June.

then a hearing on Meta's Motion to Dismiss in this Court would be unnecessary because Advertisers' case will be transferred to the multidistrict litigation. If the JPML grants the motion, then a June 23 hearing date would give the Court sufficient time to prepare for the hearing after the JPML's decision issues. Moving the hearing date therefore conserves judicial resources by avoiding the possibility that the Court will prepare for a hearing that ultimately is unnecessary. On the flip side, while both sides of course share an interest in timely adjudication of the motion to dismiss, there is no prejudice to Plaintiffs from a brief delay in the hearing date. Discovery is ongoing and there is no deadline triggered by the hearing on Meta's Motion to Dismiss.

The parties have previously stipulated to time modifications to the briefing schedules for the Motion to Dismiss (ECF Nos. 241, 266). The Court has also adjusted the deadline for numerous discovery briefs, hearings, case management conferences, and other filings during the pendency of this litigation. The proposed change to the date of the hearing will not alter the date of any other event or deadline already fixed by Court order.

For the foregoing reasons, Meta requests that the hearing on its Motion to Dismiss, currently set for May 26, 2022, at 10:00 AM, be moved to June 23, 2022, at 10:00 AM.

DATED: May 3, 2022

Respectfully submitted,

By:  */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
Sonal N. Mehta (Bar No. 222086)
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Email: Sonal.Mehta@wilmerhale.com

David Z. Gringer (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Email: David.Gringer@wilmerhale.com

Ari Holtzblatt (admitted *pro hac vice*)
Molly M. Jennings (admitted *pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000

Email: Ari.Holtzblatt@wilmerhale.com
Email: Molly.Jennings@wilmerhale.com

*Attorneys for Defendant Meta Platforms, Inc.*