May 10, 2022 *Via ECF*

Hon. James Donato
U.S. District Court, N.D. Cal.
San Francisco Division
Courtroom 11 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Klein et al v. Meta Platforms*, No. 3:20-cv-08570, Dispute re Facebook Custodians

Dear Judge Donato:

  Under the Court's Standing Order and the Local Civil Rules, Consumers submit this dispute regarding the custodians whose documents will be gathered for search, review and production by Defendant Meta Platforms, Inc. ("Facebook"). After Facebook's February 18, 2022 proposal of a mere 22 document custodians, Consumers' counter-proposed 78 custodians in early March. In a two-hour teleconference on March 30, Consumers identified the factual bases for their custodians and followed up on a custodian-by-custodian basis in an April 1 letter. Facebook has declined Consumer's repeated offers to meaningfully discuss this issue and set deadlines for negotiating search terms and producing documents. While Consumers significantly cut their custodian list from 78 to 58, Facebook didn't budge off its opening proposal until last Friday, now agreeing to 31 custodians; Facebook further insists it will search each custodian's documents only for responsive information to a limited set of RFPs, and refuses to agree to any deadlines for agreeing to search terms or producing *any* documents. Because (i) the fact discovery cutoff is January 13, 2023; (ii) Facebook has made no material document production specific to this litigation;[1] and (iii) negotiations are at an impasse, Consumers bring this dispute to the Court so fact discovery may finally begin in earnest. Consumers seek an Order that (i) Facebook accept Consumers' 58-custodian proposal; (ii) the parties promptly agree on search terms to be run across each custodian's ESI without limitation by RFP; and (iii) Facebook produce responsive documents

---

[1] While Consumers served document requests in **September 2021,** Facebook has produced only (1) its code of conduct, whistleblower policy, terms of service, and publicly-available SEC filings; (2) 5 pages of organizational charts; (3) the outputs of named plaintiffs' and others' Facebook files; and (4) a deposition transcript and exhibits from the Cambridge Analytica MDL. While Facebook touts its mirrored production of millions of documents from the FTC investigation, that matter did not focus on Facebook's privacy practices and anticompetitive deception, or the value of and compensation for data, issues that are central to Consumers' claims here. Facebook offers strawman excuses for its delay, including: (i) Consumers serving RFPs in September 2021; (ii) motion practice re: Plaintiffs' initial disclosures; and (iii) the scheduling of meet-and-confers and exchanging of correspondence. But Facebook served mostly objections to Consumers' RFPs in October 2021, and did not meaningfully respond **until December 2021 and January 2022**. Facebook imposed a **unilateral stay** (which it euphemistically terms "phasing"), refusing to produce documents for particular substantive topics and temporal periods until its legal challenges to Consumers' claims were resolved. Only after Judge Koh largely denied Facebook's motion to dismiss in January 2022 did Facebook agree to revisit many of its prior objections to Consumers' RFPs. Consumers would have been met with this "stay" delay whether they served their RFPs in July or in September 2021. Any issues regarding **Consumers'** initial disclosures did not affect **Facebook**'s ability to timely and meaningfully engage as to Consumers' RFPs **to Facebook**. As to scheduling meet-and-confers and sending correspondence, Facebook has taken weeks for both.

for each custodian; and (iv) sets a schedule for these critical case events.

As an initial matter, Facebook refuses to meaningfully engage with Consumers in the custodian negotiation process. Its refusal to share even basic information—*e.g.*, the extent to which it has investigated Consumers' proposed custodians and what it has determined—is an improper attempt to cut discovery off at the pass without allowing Consumer input. *See Otto v. Abbott Labs., Inc.*, 2014 WL 12612682, at *4 (C.D. Cal. Mar. 10, 2014) (requiring addition of ESI custodians of plaintiff's choosing where "plaintiff's counsel has not been sufficiently involved in the selection [of custodian] process to ensure a fulsome production of responsive documents"); *Kleen Prod. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *16 (N.D. Ill. Sept. 28, 2012) (same).

Facebook mainly objects to the number of custodians Consumers propose. It misleadingly claims Consumers seek either 97 or 121 custodians by adding Advertisers' proposed custodians to Consumers'. But Facebook has argued and the JPML agreed that the Advertiser and Consumer cases "involve different alleged anticompetitive conduct, different purported classes, different alleged antitrust markets, and different alleged injuries." *In re: Google Digital Advertising Antitrust Litig.,* MDL No. 3010 (J.P.M.L.), ECF Nos. 164 at 3–4, 169 (JPML severing and remanding consumer action). As Facebook knows, this dispute and this letter apply to the Consumer litigation only.

While the mere number of custodians is not dispositive, 58 total custodians is a modest number in a case which challenges Facebook's anticompetitive deception for more than 13 years. In the Cambridge Analytica MDL, which does not involve all of Facebook's deceptive actions at issue here, Facebook proposed up to 72 custodians, and ultimately was ordered to include 81. *In re Facebook, Inc. Consumer Privacy User Profile Litig.,* No. 3:18-md-08243-VC (N.D. Cal.), Dkts. 413, 431, 436. Facebook does not explain why less than half this number of custodians is appropriate here; its only response is that this Court previously "approved" fewer custodians in other antitrust class actions. In *Capacitors* (a price-fixing case with multiple defendant families), the parties apparently agreed on 10-30 custodians per family, which informed the parties' negotiations in *Resistors*, a similar, multi-defendant price-fixing case this Court characterized as being "smaller . . . than Capacitors." *In re Resistors Antitrust Litig.*, Case No. 3:16-cv-03829-JD (N.D. Cal.), Dkts. 191 at 20, 256, 260. And, in *Google Play*; the parties agreed to 23 custodians, which the Court suggested was not a large number. *See In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD (N.D. Cal.), Dkt. 19 at 12:9 (Court asks "Just 23?"). Consumers' proposal of 58 custodians is far fewer than the number in other complex litigation. *See*, *e.g.*, *United States v. Google LLC*, No. 20-cv-03010-APM, Dkt. 120 (D.D.C. Mar. 3, 2021) (116 document custodians in antitrust monopolization case); *Oracle Corporation v. SAP AG*, No. 07-cv-1658-PJH, Dkt. 107 (N.D. Cal. July 3, 2008) (120 document custodians). Nor does a proposed custodian's also serving as a custodian in another matter (*e.g.*, the FTC investigation) discharge Facebook's obligations as to that proposed custodian here; in fact, that reduces much of the collection work.

Facebook also makes the unsubstantiated claim that some of Consumers' proposed custodians are duplicative. This objection is based on "bucketizing" Consumers' 12 pages of proffered explanations, rather than any disclosed investigation and determination of overlap. Custodians are not duplicative merely because they may have similar general "categories" of

information. Facebook must articulate "specific facts" showing that information possessed by proposed custodians is duplicative. *See, e.g.*, *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 197–99 (D.D.C. 2019); *see also Williams v. Apple, Inc.*, 2020 WL 5107639 at *2 (N.D. Cal. Aug. 31, 2020) (resolving duplicativeness objection, court finds any burden minimized by appropriate search terms and de-duping). And Facebook strains credulity to argue that custodians are duplicative since they may have relevant documents concerning, for example, "public representations regarding privacy." Custodians will, for example, necessarily have different documents concerning different public statements for different events or different product features; and, they may also have different documents regarding the same public statements (reflecting their own, unique views and understandings of those statements). It does not follow that custodians' documents—particularly those about each one's **own** respective statements—are duplicative merely because they concern the same general categories of information.

Consumers also reject Facebook's proposal to assign custodians only to specific RFPs. This unorthodox approach would artificially limit Facebook's production of responsive documents, and lead to further disputes. Search terms will determine whether a given custodian possesses documents responsive to a particular RFP, not Facebook's arbitrary assignment of that custodian to specific RFPs. Facebook's authorities are unavailing. *See Vasudevan Software, Inc, v. Microstrategy Inc.*, 2012 WL 5637611, *1 (N.D. Cal. Nov. 15, 2012) (tight limits of the Federal Circuit's Model Order on E–Discovery in Patent Cases, and a joint agreement of the parties); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2014 WL 5321095, at *1 (N.D. Cal. Oct. 17, 2014) (patent case, no dispute between parties on search term methodology); *Lawson v. Spirit AeroSystems*, *Inc.*, 2020 WL 1813395, at *1, *9 (D. Kan. Apr. 9, 2020) (court imposed specific ESI plan given specific negotiations in that case where TAR search already conducted). As for *Jones v. Varsity Brands*, *LLC*, 2021 WL 5889984, at *3 (W.D. Tenn. Dec. 13, 2021), Consumers agree it is productive to use search terms tied to specific RFPs. But, consistent with this Court's position in *Google Play,* Consumers simply request that Facebook run the same search terms across each of its custodians for Consumers' RFPs. *See* Case No. 3:21-md-02981-JD, Dkt. 19 at 12–15 (rejecting the same "silo" approach Facebook proposes here). Facebook's proposal is biased against Consumers who have no way to assess Facebook's unilateral assertion as to what information a given custodian might or might not possess.

Finally, because choosing custodians is just the first step in gathering responsive documents, Consumers further proposed schedules for: (i) exchanging search terms and submitting any ESI or custodial-search dispute to the Court; and (ii) for substantial completion by July 1 for currently-agreed custodians or centralized sources, and within 60 days of any subsequently-agreed (or Court-ordered) custodians. Facebook now agrees to provide its proposed search terms by May 13, but refuses to agree to any other aspect of Consumers' proposal. The Court should set deadlines for these events, as it has done previously. *Resistors*, Case No. 3:15-cv-03820-JD, Dkt. 251.

Consumers thus request that the Court order that (i) Facebook accept Consumers' 58-custodian proposal; (ii) the parties negotiate and agree to search terms to be run across each custodian's ESI without limit by RFP, within 10 days of the Court's Order; and (iii) Facebook produce responsive documents within 60 days of the date of any agreed (or ordered) custodians.

DATED: May 10, 2022                                 Respectfully submitted,

By */s/ Shana E. Scarlett*                          By */s/ Stephen A. Swedlow*
**HAGENS BERMAN SOBOL SHAPIRO LLP**                 **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shana E. Scarlett (Bar No. 217895)                  Stephen A. Swedlow (*pro hac vice*)
 shanas@hbsslaw.com                                  stephenswedlow@quinnemanuel.com
715 Hearst Avenue, Suite 202                        Michelle Schmit
Berkeley, CA 94710                                   michelleschmit@quinnemanuel.com
Telephone: (510) 725-3000                           191 N. Wacker Drive, Suite 2700
                                                    Chicago, IL 60606
Steve W. Berman (*pro hac vice*)                    Telephone: (312) 705-7400
steve@hbsslaw.com
1301 Second Avenue, Suite 2000                      Kevin Y. Teruya (Bar No. 235916)
Seattle, WA 98101                                    kevinteruya@quinnemanuel.com
Telephone: (206) 623-7292                           Adam B. Wolfson (Bar No. 262125)
                                                     adamwolfson@quinnemanuel.com
                                                    Brantley I. Pepperman (Bar No. 322057)
By */s/ Brian D. Clark*                              brantleypepperman@quinnemanuel.com
 **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**               865 South Figueroa Street, 10th Floor
 W. Joseph Bruckner (*pro hac vice*)                Los Angeles, CA 90017
  wjbruckner@locklaw.com                            Telephone: (213) 443-3000
 Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com                           Manisha M. Sheth (*pro hac vice*)
 Brian D. Clark (*pro hac vice*)                     manishasheth@quinnemanuel.com
  bdclark@locklaw.com                               51 Madison Avenue, 22nd Floor
 Rebecca A. Peterson (Bar No. 241858)               New York, New York 10010
  rapeterson@locklaw.com                            Telephone: (212) 849-7000
 Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
 Kyle J. Pozan (admitted *pro hac vice*)            *Interim Counsel for the Consumer Class*
  kjpozan@locklaw.com
 Laura M. Matson (admitted *pro hac vice*)
  lmmatson@locklaw.com
 100 Washington Avenue South, Suite 2200
 Minneapolis, MN 55401
Telephone: (612) 339-6900