WILMERHALE

May 13, 2022

Sonal Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:     *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

The Court should reject User Plaintiffs' unsupported and unusual (if not unprecedented) request that the Court require Meta to (1) permit Users' counsel to participate in any scheduled meet and confers related to compliance with Meta's subpoenas to non-parties; and (2) copy lead counsel for Users on all related written correspondence with those non-parties. Meta shares the Users' stated desire to lessen the burden on non-parties. It has already taken many measures to do so and is willing to work with Users to identify other reasonable efficiencies. But granting Users' request will have the opposite effect: it will create significant burdens on non-parties and will only complicate and delay non-party discovery that the parties must complete by the January 13, 2023 discovery deadline. Dkt. 289. In fact, that appears to be the real goal of the proposal. User Plaintiffs' request should be denied.

*Background*

Meta began serving non-party subpoenas in this matter on February 24, 2022. On March 10, 2022, Users asked Meta (1) for the contact information of all subpoenaed non-parties, (2) to inform Users of any objections made by non-parties, and (3) to produce correspondence with non-parties relating to compliance with the subpoenas on a contemporaneous basis. Meta promptly provided contact information for all outside counsel of non-party subpoena recipients known at the time. Meta also offered to produce its communications with non-parties relating to subpoenas issued in this case pursuant to a written request for production, if Users agreed to do the same.

On April 4, 2022, Users rejected mutual production of correspondence with non-parties relating to the subpoenas.[1] Instead, Users added for the first time a new demand: that they also be "included

---

[1] Users' suggestion that they declined Meta's proposal because providing correspondence in response to a written request for production would take too long makes no sense. Had the parties exchanged requests for production of non-party communications in early April, as Meta proposed, those productions would have begun weeks ago. Even now, Meta would be happy to accelerate that production as long as it is bilateral. The problem is that Users appear to want one-sided

Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Beijing     Berlin     Boston     Brussels     Denver     Frankfurt     London     Los Angeles     New York     Palo Alto     San Francisco     Washington

WILMERHALE

Hon. James Donato
May 13, 2022
Page 2

on any actual meet and confers regarding compliance with issued subpoenas." By this time, Meta was well into discussions with non-party subpoena recipients. Lead counsel met and conferred on Users' requests on April 8; lead counsel for Users acknowledged there was no authority supporting their request. After another two weeks, Users raised this dispute.

*Argument*

Users' request to be included in Meta's discussions with non-parties is inappropriate. Users cite no case requiring such a procedure, or any other authority supporting it, and Meta is aware of none. This is not surprising. Their proposal would only increase the burden on non-parties, while also contravening the principle that each side in litigation must be free to develop its own case.

Users' letter paints their demand that they "attend and participate" in meet-and-confers with non-parties to whom only Meta has issued a subpoena as having practical benefits, but those purported benefits are illusory. Far from creating efficiencies, Users' approach would increase the burdens on non-parties, cause more disputes, and delay non-party discovery that has been proceeding without Court intervention for months. It is common practice to negotiate the scope of a non-party subpoena, and for the non-party to share its unique insight into what responsive documents it possesses and how it stores information, which allows the party to provide additional guidance. Users' counsel's presence will naturally stifle direct and open conversations with non-parties regarding the discovery that Meta needs for its defenses, leading to a greater production burden on non-parties as they are unable to freely communicate with Meta about what documents will satisfy the subpoena. Users' participation also risks turning otherwise cooperative meet and confers between Meta and non-parties into negotiations (or arguments) between Meta and Users about what is and is not relevant based on the parties' competing views of the case. Non-parties should not be caught in the middle of extended back-and-forth between Meta and the Users about the appropriate scope of discovery, or, worse, be in the untenable position of trying to reconcile disputes between the parties about what information is relevant and discoverable. It is not at all difficult to imagine that the discussions where Meta negotiates with non-parties with the unrestrained, live input of its adversary could devolve into multi-hour conversations in which multiple counsel for Users seek to weigh in or challenge everything that Meta says and vice versa, creating greater burden on non-parties and extending the meet and confer process. Nor is it difficult to imagine that three-way negotiations will generate more discovery disputes requiring the Court's resolution. Ultimately, having adversaries with competing agendas present on these calls could very well chill non-parties' willingness to engage at all.

Users' proposal would also require ending a practice Meta adopted specifically to minimize the burden on non-parties. Nearly all of the subpoena recipients in this case received parallel

---

discovery into Meta's communications with non-parties while shielding their own.

**WILMERHALE**

subpoenas in *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.) (the "FTC Case"). To reduce the burden on non-parties, Meta has been negotiating subpoenas in this case and in the FTC Case simultaneously (i.e., on the same calls). But Meta could not continue this practice with Users present, because Users cannot receive confidential information non-parties produce under the protective order in the FTC Case. For example, Meta's discussions with certain non-parties have required engagement with those non-parties' confidential productions in the FTC's pre-suit investigation. Users' presence in those discussions would be unworkable without risking a violation of the protective order in the FTC Case. *See* Protective Order at Section B.2.c, FTC Case, Dkt. 134 (treating Investigation Materials as Highly Confidential or Confidential Information). Instead, non-parties would need to hold separate conversations with the same Meta counsel to address similar requests in the two separate cases—one with Users and one without them.

On the flip side, Users offer no appropriate role they could play in these discussions.[2] They have no standing to weigh in on the scope of discovery Meta seeks from non-parties to develop its defenses in its subpoenas: "Nowhere in [] Rule [45] is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012). Any commentary by Users on what non-parties should or should not produce would be wholly inappropriate. *See* Order, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 1:12-md-02335 (S.D.N.Y. Nov. 15, 2013), Dkt. 325 at 2 (enjoining plaintiffs from "engaging, directly or indirectly, in any future communications with any subpoena recipient with respect to its compliance with [its adversary's] subpoenas"). This is especially true where Users have already indicated their desire to inhibit Meta's efforts to support its defense through non-party discovery, *see* Dkt. 249 at 2 (describing Meta's requests as "scorched-earth subpoenas," criticizing the quantity of requests, and suggesting to non-parties that they should "address the burden these subpoenas impose"), and Meta has already heard from non-parties whom Users have not subpoenaed that Users have been talking to them about the scope of discovery Meta's subpoenas seek.

---

[2] Users' stated desire to "avoid Plaintiffs having to issue its own [non] party subpoenas in many circumstances" does not justify the requested relief. Users have been on notice of Meta's subpoenas for 11 weeks and will continue to receive notice before Meta serves additional subpoenas as required by Rule 45. To the extent Users wish to obtain discovery from these non-parties, they are of course free to serve their own subpoenas (with overlapping or identical or "me too" requests), as parties normally do. But Users cannot shift the burden of non-party discovery to Meta and to the non-parties themselves—especially where Users have otherwise shown a practically insatiable appetite for discovery in this matter.

Hon. James Donato
May 13, 2022
Page 4

**WILMERHALE**

          Respectfully submitted,

By: */s/ Sonal N. Mehta*
     WILMER CUTLER PICKERING HALE
     AND DORR LLP
     *Attorneys for Defendant Meta Platforms, Inc.*