May 13, 2022                                                                                        **VIA CM/ECF FILING**
The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:     Consumers' Letter Brief Seeking Facebook's Production of ADI Materials (RFP No. 3)

Dear Judge Donato:

      Plaintiffs Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho ("Consumers") submit this dispute regarding Consumers' document request ("RFP No. 3"). RFP No. 3 seeks production of certain documents relating to the App Developer Investigation ("ADI") that Facebook was ordered to produce—and has already produced—in *In re Facebook*, *Inc. Consumer Privacy User Profile Litig.*, Case No. 18-md-02843-VC (N.D. Cal.) ("CA MDL"). Consumers allege that Facebook gained and obtained monopoly power by deceiving the market about its data collection and use practices. Consumers therefore request that the Court order production of these relevant documents, as they bear on Facebook's investigation of apps that retained problematic access to Facebook users' data (and thus the veracity of Facebook's earlier public statements about its data practices).[1] The parties met and conferred on April 18, 2022, pursuant to the Court's Standing Order and the Civil Local Rules, but were unable to resolve this dispute.

**I.**     **Background Regarding Facebook's ADI Materials and Their Production**

      The 2018 Cambridge Analytica scandal revealed that certain apps retained problematic access to Facebook users' (*i.e.*, Consumer Class members') data. This was contrary to Facebook's public representations about its data collection and use practices. Thereafter, on March 21, 2018, CEO Mark Zuckerberg publicly apologized by stating "[w]e have a responsibility to protect your data, and if we can't then we don't deserve to serve you." https://www.facebook.com/zuck/posts/10104712037900071; CA MDL, Dkt. 736 at 3. Mr. Zuckerberg also announced that Facebook would "investigate all apps that had access to large amounts of information" so that Facebook could "understand exactly what happened and how to make sure this doesn't happen again" and "learn from this experience to secure our platform further and make our community safer for everyone going forward." *Id.* at 3–4. Facebook's App Developer Investigation (ADI) then followed. On May 14, 2018, Facebook's then-Vice President of Product Partnerships, Ime Archibong, updated the public on the ADI and disclosed: (1) "[t]he investigation process is in full swing"; (2) "[w]e have large teams of internal and external experts working hard to investigate these apps"; (3) "thousands of apps have been investigated and around 200 have been suspended"; (4) "[t]here is a lot more work to be done to find all the apps that may have misused people's Facebook data"; and (5) "**[w]e will keep you updated on our progress**." https://about.fb.com/news/2018/05/update-on-app-audit/; CA MDL, Dkt. 736 at 4. On September 20, 2019, Mr. Archibong issued a second update, reporting that the ADI "has involved hundreds of people: attorneys, external investigators, data scientists, engineers, policy specialists, platform partners and other teams across the company." https://about.fb.com/news/2019/09/an-update-on-our-app-developer-investigation/; CA MDL, Dkt. 736 at 5. Importantly, Mr. Archibong explained that "[o]ur goal is **to bring problems to light** so we can address them quickly, stay ahead of bad actors and **make sure that people can continue to enjoy engaging social experiences on Facebook while knowing their data will remain safe**." *Id.*

      In November 2019, the Cambridge Analytica MDL plaintiffs propounded document requests regarding the ADI's results. Facebook objected on privilege grounds, including because the ADI involved Facebook's outside counsel and purportedly was implemented in anticipation of litigation. During a July 13, 2020 hearing, Judge Corley suggested the parties submit a subset of

---

[1] Consumers' complaint refers to the ADI and Facebook's related public statements. Dkt. 87, ¶¶ 148, 238(o). Judge Koh's motion to dismiss order also refers to Mr. Zuckerberg's statement announcing the ADI, finding Consumers alleged this statement was deceptive. Dkt. 214 at 56.

ADI documents for *in camera* review. The parties submitted further briefing based on "six exemplar apps" and on September 8, 2021, Judge Corley determined that the submitted ADI materials were *not* protected by the attorney work-product doctrine or attorney-client privilege. *See* CA MDL, Dkt. 736. Judge Corley then ordered: (1) Facebook to "produce the background and technical reports, audits and developer interviews of the six exemplar apps"; and (2) the parties to "work with the Special Master regarding production of additional materials consistent with the guidance offered by this Order." *Id*. at 7. Facebook has since produced some 27,000 ADI-related documents in the Cambridge Analytica MDL in response to Judge Corley's order.

## II.     Facebook Should Be Compelled to Produce ADI Materials in Response to RFP No. 3

RFP No. 3 seeks the documents that Facebook "produced or will produce" in the Cambridge Analytica MDL in response to Judge Corley's order. Ex. A at 6. Facebook objects that[2]: (1) all the sought ADI materials are privileged; and (2) even if these materials are not privileged, a subset—those related to apps with no U.S.-based users—are not relevant.[3] The Court should overrule these objections and require production of these documents.

### A.     Facebook Has Failed to Establish the ADI Materials Are Privileged

Applying governing law, a judge in this district (Judge Corley) has previously held that absent a showing as to any specific document, the requested documents are "not protected attorney work-product and are not protected by the attorney-client privilege." CA MDL, Dkts. 736 at 2, 5–6; 806 at 2–3. Nothing changes that analysis with regard to this case. First, the documents are not protected by the attorney-client privilege because they do not involve counsel. *See Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp., Inc.*, 190 F.R.D. 505, 513 (W.D. Tenn. 1999) ("no attorney-client privilege with respect to these documents because there was no attorney involved"); *accord Sandoz Inc. v. Lannett Co., Inc.*, 2021 WL 5139975, at *3 (E.D. Pa. Nov. 4, 2021); *Jackson v. Cty. of Sacramento*, 175 F.R.D. 653, 657–58 (E.D. Cal. 1997). The Cambridge Analytica MDL plaintiffs sought (and obtained) ADI-related: (1) "background and technical reports"; (2) "audits"; (3) "developer interviews"; (4) non-attorney "communications"; and (5) consultants' "memoranda." CA MDL, Dkt. 806. Judge Corley found that these documents were "**created or conducted by non-attorneys**," such that "Facebook's suggestion that these materials may also be protected by the attorney-client privilege is unpersuasive given that Plaintiffs are **not seeking documents created by counsel, counsel's edits, or any communications with counsel**." CA MDL, Dkts. 736 at 1, 7; 806 at 2–3. Consumers' RFP No. 3 seeks a production of these same documents that do not implicate the attorney-client privilege.

Second, the work-product privilege is inapplicable because the documents were created for a business purpose. "When a document serves a dual purpose, the Ninth Circuit applies the 'because of' test to determine whether the document is" protected work product. *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1102 (N.D. Cal. 2016). Courts "must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and **would not have been created in substantially similar form but for the prospect of litigation**." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (internal quotations omitted). Applying this test, Judge Corley and the Special Master held that the subject ADI documents were **not** entitled to attorney work-product protection. CA MDL, Dkts. 736 at 3; 778. While ADI may have been implemented in part to address potential regulatory and litigation risks, Judge Corley determined that "Facebook's own public pronouncements about the ADI"—

---

[2]  After meeting-and-conferring as to its written objections (Ex. B at 4–5), Facebook has since represented that it stands only on its privilege and limited relevance objections to RFP No. 3.

[3]  Facebook offered to produce the ADI materials to Consumers if they agreed that the production would not result in any privilege waiver in this matter or others (to which Consumers were amenable). Facebook withdrew this offer after Judge DeMarchi's ruling in this case that Facebook selectively waived privilege over an unrelated document based on a limited agreement with the FTC over the same document in other litigation, *see* Dkt. 251 at 15–16.

described *supra*—"demonstrate that the documents were not created exclusively in anticipation of litigation and that, in fact, Facebook would have conducted the ADI in substantially similar form even in the absence of potential litigation." CA MDL, Dkt. 736 at 3. Thus, the ADI "was being conducted . . . **to assure the public that Facebook was cleaning up its platform and thus generate trust in its site—a classic business purpose**."[4] *Id.* at 5.

Facebook's argument that a contrary, earlier finding by the Supreme Judicial Court of Massachusetts supports a different outcome here is unpersuasive. That court applied state law and not the federal standard applicable here, stating: "[t]he fact that the ADI also serves business purposes does not alter the analysis." *Att'y Gen. v. Facebook, Inc.*, 487 Mass. 109, 130 (2021); *cf.* CA MDL, Dkt. 657 at 22 (Judge Corley noting, with respect to MA court, "I'm not sure they were applying the same rule as the Ninth Circuit"). Applying the correct standard for this case, this Court has stated documents' use for "non-litigation purposes" and "the absence of attorneys" on the documents are "important factor[s]" in "finding" documents "were not created because of the prospect of litigation," and thus **not** protected work-product. *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 2015 WL 124557, at *4–*6 (N.D. Cal. Jan. 8, 2015) (Donato, J.). The presence of these factors here confirms that Judge Corley's decision under the applicable federal standard was correct. In any case, and even applying the more stringent state standard, the Massachusetts court held that some of the ADI documents sought were "fact work product" such that a "significant amount of information" was subject to disclosure. *Att'y Gen.*, 487 Mass. at 129, 135.

Judge Corley's and the Special Master's orders requiring production after *in camera* review of over 6,000 of the ADI documents show the documents at issue here are likewise not protected.

### B. ADI Materials Are Relevant to Facebook's Anticompetitive Deception

Facebook asserts that if its privilege objection is overruled, relevancy should limit the production of a subset—those concerning "apps with no-U.S.-based users" (as distinct from apps **with** U.S.-based users, for which Facebook **would** produce documents)—on the ground that they are not relevant. Facebook has provided no basis for this distinction, and it should be rejected.

Consumers allege Facebook obtained and maintained monopoly power by deceiving the market about its data collection and use practices. The ADI documents are relevant to Consumers' anticompetitive conduct theory, as they bear on (at least): (1) the scope of apps that maintained problematic access to Facebook users' data; (2) what data was accessible; and thus (3) whether Facebook's actual practices deviated from its public representations. That an app may not have U.S.-based users does **not** necessarily mean it did not or could not access the data of U.S.-based Facebook users. Consumers allege—and the Cambridge Analytica scandal and the FTC's 2019, $5 billion fine of Facebook indicate—certain apps accessed the data of Facebook users (including through the users' Facebook friends), even if those users did not themselves install the apps. Separately, documents as to apps with no U.S.-based users may shed light on, at least: (i) the types of data that Facebook collects or makes available to third party apps (regardless of users' locations); and (ii) Facebook's public statements as to data collection and use and their veracity (*e.g.*, Facebook's communications with foreign apps may discuss its public statements).

Given Facebook has already collected and produced these documents, there is little or no burden to producing them here. Accordingly, their likely relevance outweighs the burden and expense of production, and they should be produced in this case. *See* Fed. R. Civ. P. 26(b)(1).

---

[4] Judge Corley also concluded that Facebook's assertion it would not have implemented ADI "in the absence of potential litigation . . . could only be true if . . . Facebook was lying to the public when it stated that the purpose of the ADI was to root out bad apps and secure Facebook's platform so that consumers could have faith in the company." CA MDL, Dkt. 736 at 6. Either Facebook's statements that ADI was implemented to protect Facebook's users are true (in which case the ADI materials are non-protected dual purpose documents), **or** they are not (which would corroborate Consumers' theory of anticompetitive conduct based on Facebook's deception).

DATED: May 13, 2022

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
 wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
 rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
 bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
 rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
 aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
 kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
 lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Respectfully submitted,

By */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
 stephenswedlow@quinnemanuel.com
Michelle Schmit
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Interim Counsel for the Consumer Class*

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

| | |
|---|---|
| Dated: May 13, 2022 | By:  */s/ Stephen A. Swedlow*  <br> Stephen A. Swedlow |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

| | |
|---|---|
| Dated: May 13, 2022 | By:  */s/ Stephen A. Swedlow*  <br> Stephen A. Swedlow |