# EXHIBIT A

1  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   Stephen A. Swedlow (admitted *pro hac vice*)
2     stephenswedlow@quinnemanuel.com
   191 N. Wacker Drive, Suite 2700
3  Chicago, IL 60606
   (312) 705-7400
4
   **HAGENS BERMAN SOBOL SHAPIRO LLP**
5  Shana E. Scarlett (Bar No. 217895)
      shanas@hbsslaw.com
6  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
7  (510) 725-3000

8  *Interim Co-Lead Consumer Class Counsel*

9  [Additional counsel listed on signature page]

10
                **UNITED STATES DISTRICT COURT**
11
                **NORTHERN DISTRICT OF CALIFORNIA**
12
                         **SAN JOSE DIVISION**
13

14
   | MAXIMILIAN KLEIN, et al., | Consolidated Case No. 5:20-cv-08570-LHK |
   |---|---|
   | Plaintiffs, | The Hon. Lucy H. Koh |
   | vs. | **CONSUMER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT FACEBOOK, INC.** |
   | FACEBOOK, INC., | |
   | Defendant. | |
   | This Document Relates To: All Actions | |

1  Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Northern District
2  of California Civil Local Rules 26-1 and 34-1, Plaintiffs Maximilian Klein, Sarah Grabert, and
3  Rachel Banks Kupcho ("Consumer Plaintiffs") hereby propound this First Set of Requests for the
4  Production of Documents (the "Requests") to Defendant Facebook, Inc. ("Facebook"), and request
5  that Facebook produce responsive documents and information requested below within thirty (30)
6  days, or at such time as may be agreed upon between the parties, at the offices of Quinn Emanuel
7  Urquhart & Sullivan, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California, or at such
8  place as may be agreed upon between the parties.

## DEFINITIONS

10  1.  The terms "Document" and "Documents" mean, in the broadest sense, all written or
11  graphic matter, or any other means of preserving through or expression of any type or description.
12  The terms encompass the scope of Rule 34(a) of the Federal Rules of Civil Procedure, and also
13  include, without limitation, any type of medium upon which intelligence or information may be
14  recorded or from which it may be retrieved, including but not limited to paper, photographs,
15  videotapes, sound recordings, computers, computer files, computer disks, electronic or digital
16  media, memoranda, notes, electronic mail (including metadata), instant messages, text messages,
17  reports, books, summaries and/or records of telephone conversations, summaries and/or records of
18  personal conversations, diaries, forecasts, orders, bills, invoices, checks, statistical elements, books
19  of account, studies, graphs, charts, accounts, work papers, indices, data sheets, data processing
20  cards, analytical records, minutes and/or records of meeting and conferences, reports and/or
21  summaries of interviews, reports and/or opinions of consultants, appraisals, records, reports and/or
22  summaries of negotiations, brochures, drafts of documents, working papers, marginal notations, and
23  other written, printed, or recorded or graphic matter or sound reproductions, however produced or
24  reproduced.  A draft or non-identical copy is a separate Document within the meaning of this term.
25  2.  As used herein, the terms "Person" and "Persons" refer to all natural persons,
26  proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations,
27  organizations, governmental agencies, and other entities.

3.     As used herein, the terms "You" and "Your" refer to Facebook (including all of its divisions, departments, subsidiaries, branches, parents, affiliates, predecessors in interest, and successors in interest), and to all agents, representatives, employees, officers, directors, and other Persons acting on Facebook's behalf.

4.     "Communication" shall include written, oral, recorded or other transmittal of words, ideas, thoughts, opinions, images, whether formal or informal, between or among Persons or groups of Persons, whether face-to-face, by letter, or by any other means, including electronic means. To the extent any Communication also constitutes a Document, such Communication shall be included in any response to a Request seeking Documents, regardless of whether the Request specifically references Communications.

5.     As used herein, the phrases "relate to," "related to," and "relating to" mean, without limitation, directly or indirectly supporting, constituting, respecting, regarding, reflecting, concerning, pertaining to, referring to, stating, establishing, showing, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, consisting of, evidencing, depicting, refuting, disproving, rebutting, contradicting, invalidating, negating, opposing or repudiating in any way the subject matter of the Request.

6.     As used herein, the term "Consumer Complaint" refers to the consolidated consumer class action complaint filed in this case by Consumer Plaintiffs on April 22, 2021. *See Klein v. Facebook, Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.), Dkt. 87.

7.     As used herein, the term "Growth Team" refers to Your personnel who have worked to further Your growth and adoption, including personnel who have worked as part of units You have identified as "Growth," "Product Growth," "User Growth," and other similar monikers.

8.     As used herein, the term "Research Platform" refers to Your personnel who have worked to further Your market intelligence efforts, including personnel who have worked as part of units You have identified as "MINT" and other similar monikers.

9. As used herein, "Facebook Research App" refers to the application (referenced in Paragraphs 211 and 224 of the Consumer Complaint) offered by You to incentivize, reward, or otherwise compensate users.

10. As used herein, "Study from Facebook" refers to Your application to incentivize, reward, or otherwise compensate users to "help" You "learn which apps people value and how they're used." *See* https://www.facebook.com/facebookstudy.

11. As used herein, "Facebook Viewpoints" refers to Your application to incentivize, reward, or otherwise compensate users to "help[] improve the technology that powers apps and services you use every day." *See* https://viewpoints.fb.com/.

12. As used herein, "Privacy Team" refers to Your personnel who have worked to further, implement, and monitor your privacy features and functionalities, including personnel who have worked as part of units You have identified as "XFN Privacy," "Privacy XFN," "Privacy Cross-Functional," "Privacy Program Management," "Privacy Product Team," "Privacy Governance Team," and other similar monikers.

13. As used herein, "Apple" refers to Apple Inc. (including all of its divisions, departments, subsidiaries, branches, parents, affiliates, predecessors in interest, and successors in interest), and to all agents, representatives, employees, officers, directors, and other persons acting on Apple's behalf.

14. As used herein, "Google" refers to Google LLC (including all of its divisions, departments, subsidiaries, branches, parents, affiliates, predecessors in interest, and successors in interest), and to all agents, representatives, employees, officers, directors, and other persons acting on Google's behalf.

15. As used herein, "Social Network Market" refers to the relevant market for social networks referenced in the Consumer Complaint, consisting of websites and applications that allow users to find, communicate, and interact with friends, family, personal acquaintances, and other people with whom the users have shared interests or connections.

16. As used herein, "Social Media Market" refers to the relevant market for social media applications and tools referenced in the Consumer Complaint, consisting of websites and

1  applications that allow users of a given application to distribute various forms of media to other
2  users of the same application.

3      17.    Any terms not otherwise defined shall be given their plain and ordinary meanings.

4  **INSTRUCTIONS**

5      1.    Unless otherwise specified, Documents (including electronically stored information)
6  shall be produced consistent with and in the manner set forth in the applicable ESI Protocol or, to
7  the extent such ESI Protocol has not yet been entered by the Court, the portions of the ESI Protocol
8  upon which the parties agree. *See* Dkt. 133-1 (including but not limited to Appendix 1 thereto).

9      2.    In providing responses, You are requested to furnish all information to You,
10 including any information in the possession, custody, or control of Facebook and any past or present
11 agents, attorneys, or other representatives of Yours.

12     3.    All responsive Documents within Your possession, custody or control, as defined
13 above, shall be produced.

14     4.    With respect to any Document responsive to a Request for which You wish to assert
15 a claim of privilege, please provide the information required by the applicable Privilege Protocol or,
16 to the extent such Privilege Protocol has not yet been entered by the Court, the Court's applicable
17 order and the portions of the Privilege Protocol upon which the parties agree. *See Klein v. Facebook,*
18 *Inc.*, Case No. 5:20-cv-08570-LHK (N.D. Cal.), Dkts. 135-1, 153.

19     5.    To the extent that Facebook objects to a particular Request or portion thereof, You
20 must produce all Documents called for which are not subject to the objection. Similarly, whenever
21 a Document is not produced in full, please state with particularity the reason or reasons it is not
22 being produced in full, and describe, to the best of Your knowledge, information and belief and with
23 as much particularity, those portions of the Document which are not produced.

24     6.    As used herein, the words "and" and "or" shall be construed both conjunctively and
25 disjunctively, and each shall include the other whenever such dual construction will serve to bring
26 within the scope of these Requests any Document which would not otherwise be brought within
27 their scope.

28

-4-    Case No. 5:20-cv-08570-LHK
CONSUMER PLAINTIFFS' FIRST SET OF RFPs TO FACEBOOK

7. As used herein, the singular forms shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of these Requests any Document which would otherwise not be brought within their scope.

8. The term "including" is used in certain Requests for purposes of illustration and emphasis and should not be construed as limiting or narrowing any Request.

9. Unless otherwise specified, these Requests seek information and Documents created or generated during the period January 1, 2007 through the present, or which contain information relating to that period.

10. The following Requests are continuing in nature pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require You to promptly produce supplemental or additional responsive Documents when You become aware of their existence, up to and including through the time of trial.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Documents sufficient to show the organizational structure of employees (including names, titles, and reporting relationships) that have or have had any role in the conception, creation, development, maintenance, or operation of Your Growth Team, Your Research Platform, and Your Privacy Team.

**REQUEST NO. 2:**

All Documents relied upon by You for Your provision of Court-ordered deposition testimony in the *Consumer Privacy User Profile Litigation* relating to "how" You "monetize" data, including but not limited to the topic on which You agreed to provide testimony: how You "in the regular course of business from 2012 to 2017, calculated the retail value of" Your "users' data" including "any such valuations." *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843-VC (N.D. Cal.), Dkt. 599 at 48.

**REQUEST NO. 3:**

All Documents that You produced or will produce in the *Consumer Privacy User Profile Litigation* in response to the September 8, 2021 order compelling You to produce Documents relating to Your "app developer investigation." *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843-VC (N.D. Cal.), Dkt. 736.

**REQUEST NO. 4:**

Documents sufficient to show the processes You used for calculating Your following user metrics: (1) Daily Active Users (or Persons); (2) Monthly Active Users (or Persons); (3) total "Daily Minutes" for all Daily Active Users; (4) Time or Minutes per Daily Active User; (5) total "Monthly Minutes" for Monthly Active Users; and (6) Time or Minutes per Monthly Active User.

**REQUEST NO. 5:**

Documents sufficient to show the values You used for calculating Your following user metrics: (1) Daily Active Users (or Persons); (2) Monthly Active Users (or Persons); (3) total "Daily Minutes" for all Daily Active Users; (4) Time or Minutes per Daily Active User; (5) total "Monthly Minutes" for Monthly Active Users; and (6) Time or Minutes per Monthly Active User.

**REQUEST NO. 6:**

All Documents relating to the origins, intent, purpose, motivations, and/or strategies for creating, developing, and implementing the Research Platform, including but not limited to business plans, analyses, reports, studies, and memoranda.

**REQUEST NO. 7:**

All Documents relating to Your review, analysis, evaluation, discussion, and/or selection of the price at which to compensate users of the Facebook Research App.