July 13, 2022

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

    Meta initiated custodian negotiations in February 2022 and continued to drive custodian and search term negotiations in response to Users' sweeping document requests, despite months of delay from Users. After seventeen weeks of discussions, Meta finally negotiated Users down from 78 custodians to 48 custodians—on top of the 12 million pages of documents from the FTC investigation Meta produced over a year ago *and* on top of non-custodial productions in this case. But the parties still cannot agree on search terms because Users' appetite for discovery is unbounded by the constraints of reasonableness, proportionality, or practicality. Users insist that Meta must run hundreds of terms that return more than 11 million documents that Meta would need to review and produce in the remaining months of discovery.[1] That volume of materials, when coupled with Users' feet-dragging on negotiations about custodians and search terms, would make it impossible to meet the Court's schedule. Accordingly, Meta asks the Court to order the parties to proceed with the 146 search strings that Meta proposed, which results in approximately 1,028,360 documents for review, or, in the alternative, to order Users to propose by July 27 a set of search strings to yield approximately that same number of documents for review, which will allow the case to move forward within the deadlines set by the Court, allow the parties and the Court to begin to focus on the merits, and provide the Users with more than enough documents and information to press their case. Counsel, who are located more than 50 miles apart, met and conferred about this issue by Zoom on May 26, 2022.

**I.      Background**

    On May 3, 2021, Meta produced over 12 million pages of documents from the FTC and House Judiciary Committee investigations. Users then delayed for 5 months to serve any RFPs, and did so only after Judge DeMarchi encouraged them to serve discovery at the August 31 hearing. After months of further delay from Users (who failed to propose custodians for more than five months after serving their RFPs and did so only after Meta initiated discussions with its own proposal), Meta sent its search-term proposal to Users on May 13. Meta's proposal included a

---

[1] Unless otherwise specified, the document hit counts are underinclusive insofar as they do not include families, ESI sources other than emails and messages, or certain additional collections that are still being processed. The hit counts also do not reflect global de-duping across the search strings. Because of the volume of custodians and search strings, the processing time required to dedupe would only delay resolution of the scope of custodial productions further. De-duping is also tangential to the core of this dispute—even without deduping across search strings, Users' proposal is overbroad. Just one of Users' search strings returns 2,739,958 documents, so even if that one search were somehow a superset of all of the other search strings (which is not possible given the breadth of subject matter covered by the strings), Users' requests would still be too broad.

1

search string for each of the 16 User RFPs that Meta had identified as calling for custodial productions and identified the custodians Meta expected would most likely have documents responsive to each RFP. A week later, plaintiffs responded by proposing **223** additional strings. Users' proposal produced a whopping **14 million documents**—after deduplication—across a mere subset of the 78 custodians Users originally requested. Users demanded review of these 14 million-plus documents on top of the 12 million pages of documents Users had previously received.

After multiple meet and confer calls and emails, Users "narrowed" their proposal to 201 search strings. Meta informed Users that this proposal would still require Meta to review and produce more than 6 million deduped documents. Instead of rethinking the overbroad proposal, Users cut a few search strings and revised others to arrive at 189 search strings.

Because Users' thrice-revised proposal remains dramatically overbroad (yielding, even after Users' revisions, more than 11 million documents across each of the 48 agreed-upon custodians prior to deduplication), Meta sent Users another counterproposal on June 27. Meta's counterproposal consists of 124 strings Users themselves proposed and an additional 22 strings that Meta believes would return documents responsive to Users' requests. Under Meta's proposal, those 146 search strings would still yield an additional 1,028,360 documents for review. As of the date of this filing, Users have not agreed to Meta's proposal and instead continue to press their own overbroad search strings. And while Meta has begun reviewing custodial documents for the agreed-upon search strings, it seeks the Court's assistance in bringing these negotiations to a close.

## II.     Argument

Where a propounding party refuses to compromise in the face of a good faith showing of undue burden by the producing party, this Court may under Rule 26(c) issue a protective order requiring search terms proposed by the receiving party. Fed. R. Civ. P. 26(c); *see, e.g.*, *Gravitt v. Mentor Worldwide, LLC*, 2020 WL 7381479, at *1 (N.D. Ill. Dec. 15, 2020); *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, 2014 WL 4373210, at *5-6 (M.D. La. Sept. 3, 2014). In light of the undue burden posed by Users' 189-string search term proposal and the pressing need to move discovery forward in this case, the Court should issue a protective order requiring the parties to use the 146 search strings Meta proposed.

### A.     Users' Search Term Proposal Is Unreasonable And Disproportionate To The Needs Of The Case

Users' proposal is massively burdensome and unnecessary to conduct a reasonable search for documents responsive to the 34 requests in Users' first set of RFPs.

On burden: Meta has run the search strings Users proposed across documents collected to date for each of the 48 custodians on which Meta and Users have now agreed. Of Users' 189 proposed search strings, more than 14 brought back over 100,000 documents each and some brought back more than 2 million hits.

Setting aside burden, Users' proposal is not tailored to produce responsive documents. *First*, Users refused to even consider Meta's proposal to run certain search strings across the subset of custodians who are expected to have documents responsive to a particular search string even though "using different search terms for different categories of custodians seems sensible." *Chen-Oster v. Goldman, Sachs & Co.*, 2019 WL 1250381, at *2 (S.D.N.Y. Mar. 19, 2019). This is not an unusual request. For example, the Court in *In re Facebook, Inc. Consumer Privacy User Profile Litigation* directed plaintiffs to do just that. No. 3:18-MD-02843-VC-JSC, Dkt. 517 at 6 (N.D. Cal.

Sept. 24, 2020). And for good reason: because no custodian is relevant to every aspect of Users' case, it is inefficient and senseless to search each custodian for every search string.

*Second*, Users failed to construct search strings focused on the issues in this case. Several of Users' search terms use "OR" connectors so liberally that they return extraordinary numbers of documents (and documents that are unlikely to be relevant to the case). For example, "((data* OR privacy OR information w/10 (collect* OR use* OR usage OR shar* OR control* OR limit*)) AND (statement* OR public* OR press* OR blog* OR release* OR draft* OR announc* OR testi* OR promis* OR disclos* OR newsroom)" returns 2,739,958 documents. Users also propose search strings that are not adequately tailored to yield a reasonable set of responsive documents. For example, Users propose "control w/5 (information w/5 shar*)." Given how common terms like "control," "information," "share," "shareholder," "sharing" are, it is little surprise the request sweeps in 22,871 documents.

*Third*, although courts have appropriately recognized that tailoring search terms to respond to specific RFPs is "the best available method for producing a responsive, proportional set of documents to the requests specified," *Jones v. Varsity Brands, LLC*, 2021 WL 5889984, at *3 (W.D. Tenn. Dec. 13, 2021), Users have refused to organize their proposal by RFP, hindering Meta's ability to ensure that their terms actually cohere with the scope of production the parties agreed to over months of negotiation.

### B. Meta's Proposal, By Contrast, Constitutes A Reasonable Search That Would Permit The Parties To Complete Fact Discovery On Time

Meta has drafted a reasonable proposal that produces approximately 1,028,360 emails and messages for review (even without document families or other ESI sources), which will allow Meta to collect, review, and produce documents by the fact discovery completion deadline, even while the same attorneys are simultaneously working to also review and produce materials responsive to the Advertiser RFPs, which are not reflected in these numbers. Meta is entitled to a "presumption . . . that it is in the best position to choose an appropriate method of searching and culling data" because Meta "has the best knowledge as to how documents have been preserved and maintained." *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (internal quotation and quotation marks omitted). Meta's proposal demonstrates why this presumption is warranted—it generates a set of materials that is reasonable and proportional to the scope of the case and that can actually be reviewed and produced within the time remaining for fact discovery. And importantly, it is a population that should more than satisfy any legitimate request for documents responsive to Users' requests or that Users could reasonably claim to need to develop their case. If Users cannot prove their claims on the basis of the 12+ million pages of documents they have had for over a year and millions more that Meta will review for responsiveness under its proposal, a fishing expedition based on search strings beyond the 146 Meta proposes is not going to help them.

Because Meta has proposed search terms proportionate to the needs of discovery in this case and because Users have failed to do so, Meta asks the Court to order the parties proceed with the search strings that Meta proposed, which result in approximately 1,028,360 documents for review. In the alternative, Meta asks the Court to order Users to propose by July 27 a set of search strings to yield approximately that same number of number of documents for review and production. Such an order will advance discovery and ensure that the parties can complete document review and production before the fact discovery deadline.

Respectfully submitted,

By: */s/  Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*