**VIA CM/ECF FILING**

July 15, 2022

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
Courtroom 11 – 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  Joint Discovery Letter Brief re Non-Party Subpoena Correspondence and ADI Disputes

Dear Judge Donato:

Pursuant to the Court's June 23, 2022 order (Dkt. 313), Consumer Plaintiffs and Defendant Meta Platforms, Inc. submit this joint discovery letter brief regarding their disputes as to: (1) Facebook's App Developer Investigation ("ADI") documents (Dkt. 298); and (2) non-party subpoena communications (Dkts. 282, 297). The parties met-and-conferred on May 27, 2022, and exchanged further correspondence following the meet-and-confer, but were unable to resolve their disputes. The parties' respective positions on these disputes are set forth below.

**I.      Consumers' Statement**

    **A.      Facebook's Previously-Produced App Developer Investigation Documents**

Consumers' RFP No. 3 seeks App Developer Investigation ("ADI") documents Facebook has been ordered to produce—and has *already produced*—in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, Case No. 18-md-02843-VC (N.D. Cal.) ("CA MDL"). Three judicial officers in this District—Judge Corley, Special Master Garrie, and Judge Chhabria—have repeatedly rejected Facebook's efforts to withhold these documents in the CA MDL on privilege grounds. Judge Chhabria has even invited a sanctions motion against Facebook for its discovery conduct as to these documents. *See* CA MDL, Dkt. 856 at 5:9–20. The Court should overrule Facebook's objections and order Facebook to produce these same documents to Consumers.

    **1.      RFP No. 3 Seeks Non-Privileged Documents**

Facebook objects all the App Developer Investigation documents requested in RFP No. 3 are privileged due to Gibson Dunn lawyers' supposed involvement. Like Judge Corley, Special Master Garrie, and Judge Chhabria, this Court should reject Facebook's recycled assertions.

*First*, the ADI documents largely **do not involve counsel**, and include: "background and technical reports"; "audits"; "developer interviews"; non-attorney "communications"; and consultants' "memoranda." CA MDL, Dkt. 806. After reviewing a sample set, Judge Corley determined they were "created or conducted by non-attorneys" and not attorney-client privileged, as they are not "created by counsel, counsel's edits, or any communications with counsel." *Id.*, Dkts. 736 at 1, 7; 806 at 2–3. To the extent any purportedly privileged attorney communications were at issue, Special Master Garrie provided instructions to exclude them. *Id.*, Dkt. 871 at 5.

*Second*, the requested documents are not protected work product under Ninth Circuit law. The Ninth Circuit applies the "because of test," under which a dual purpose document is protected work product **only** if "it would not have been created in substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). Judge Corley determined the ADI documents do not qualify because Facebook's own public statements confirm that the ADI "was being conducted . . . to assure the public that Facebook was cleaning up its platform and thus generate trust in its site—**a classic business purpose**." CA MDL, Dkt. 736 at 3–5; Dkt. 298 at 1–2 (ADI statements); *Allied Irish Banks v. Bank of Am.*, *N.A.*, 240 F.R.D. 96, 107–08 (S.D.N.Y. 2007) (investigation materials not work product under "because of" test where press releases tout post-scandal investigation). Judge Corley found Facebook's claim it would not have implemented the ADI absent potential litigation "could only be true if . . . **Facebook was lying to the public when it stated that the purpose of the ADI was to root out bad apps and secure Facebook's platform so that consumers could have faith**[.]" CA MDL, Dkt. 736 at 6. Judge Corley before ruling **considered declarations** from Facebook's in-house counsel and the Gibson Dunn lawyer who led ADI. *Id.* at 3, 6 (citing *Id.*, Dkts. 699-5, 720). Based on Judge Corley's order, Special Master Garrie ordered Facebook to produce more ADI documents. *Id.*, Dkts. 778, 953. Judge Chhabria has affirmed their orders and repeatedly ordered Facebook to complete its ADI production, noting these judges have been resolving ADI privilege issues for "years now." *Id.*, Dkts. 847, 895, 941, 947 at 7:17–19.

Facebook's primary justification for refusing to produce these documents in this case is that the decisions by Judge Corley, Special Master Garrie, and Judge Chhabria are "wrong." Facebook's argument relies upon the decisions of two state courts (Massachusetts' Supreme Court

2

and the D.C. Superior Court) which—applying their respective *state laws*—determined that *some* App Developer Investigation documents are entitled to *some* degree of work product protection. Notably, Facebook agreed—prior to Judge Corley's decision—that federal law governs its work product claims. *See* CA MDL, Dkt. 736 at 2. Facebook's arguments fail.

In *Att'y Gen. v. Facebook*, *Inc.*, the Massachusetts court determined certain ADI documents were work product under Massachusetts law. 487 Mass. 109, 130 (2021). In so holding, it did not apply the federal law "because of" test that controls here. Judge Corley recognized this, stating "I don't necessarily agree with the" MA court, and "I'm not sure they were applying the same rule as the Ninth Circuit." CA MDL, Dkt. 657 at 22. Indeed, the Massachusetts court reasoned, "[t]he fact that the **ADI also serves business purposes does not alter the analysis**." 487 Mass. 130. However, this Court has explained that under the Ninth Circuit's "because of" test, "[a]n **important factor**" is whether "documents appear to have been **created** . . . **for non-litigation purposes**," as that may indicate they "were not created because of the prospect of litigation" and thus are not protected work product. *Largan Precision Co*, *Ltd v. Genius Elec. Optical Co.*, 2015 WL 124557, at *4–*6 (N.D. Cal. Jan. 8, 2015) (Donato, J.). Anyway, the Massachusetts court held a "significant amount" of ADI documents, while work product under Massachusetts law, *were fact work product* subject to disclosure due to need and hardship. 487 Mass. at 129, 135–39.

The D.C. Superior Court's ruling is similarly inapt here. The D.C. court orally denied a motion to compel production of various ADI and non-ADI documents. A transcript of the oral ruling indicates it does not cite any legal authority, does not address Facebook's public statements or the reasoning of Judge Corley's order, and is based on the threshold determination that the ADI is not relevant to the D.C. case at all. Moreover, any work product determination in the D.C. case necessarily arose under D.C., not federal, law. Indeed, Facebook argued in the D.C. case that Judge Corley's order should not control because it applied federal, not D.C. law. Now, Facebook glosses over these distinctions between state and federal law (and its own prior arguments).

Facebook proposed Consumers drop their document request and instead "serve interrogatories seeking relevant facts from the ADI" to "avoid the attorney work product issue." Dkt. 312 at 2. Consumers declined Facebook's proposal because Facebook counsels' *post-facto*, lawyer-written interrogatory responses are no substitute for Facebook's contemporaneous documents. Charles A. Wright & Arthur R. Miller, 8B Fed. Prac. & Proc. Civ. § 2163 (3d ed.) ("interrogatories can readily be misused or employed in such a rote manner as almost to ensure unhelpful answers for any but the most basic or simple questions.").

Multiple judicial officers in this District have—applying the governing federal law—determined the requested documents are neither privileged, nor attorney work product. Facebook contends this Court should disregard these rulings in favor of state law ones. There is no basis to do so. The Court should compel production.

### 2. Facebook Should Produce All Previously-Produced ADI Documents

The Court should also overrule Facebook's other objections to Consumers' request for all previously-produced ADI documents. Contrary to Facebook's claims (some raised for the first time), these documents are relevant here, and there is no burden to Facebook in producing them.

Facebook's claim that "ADI has no articulated relevance" is wrong. Consumers allege Facebook obtained and maintained monopoly power by deceiving the market about its data practices. The ADI documents are relevant to Consumers' anticompetitive conduct theory, as they

3

bear on, at least, the scope of apps that maintained problematic access to Facebook users' data and what data was accessible by those apps. Comparing this information (as borne out in the ADI documents) to Facebook's prior statements about its data practices will thus establish whether those prior statements were false. Consumers' complaint references the ADI and Facebook's public statements as to its findings, and Judge Koh's order denying Facebook's motion to dismiss concluded that the ADI's finding that at least 10,000 apps retained problematic access to users' data rendered deceptive an earlier Facebook statement. Dkts. 87, ¶ 148, 238(o); Dkts. 214 at 56–57. Facebook's "cloned discovery" objection is also baseless. RFP No. 3 seeks documents on a single, specific topic relevant in this case and therefore is not overbroad. Facebook's objection that the requested discovery is "cumulative" given other document requests and a 30(b)(6) deposition notice is also not well-taken, as Facebook has produced *zero* custodial documents to date and not even agreed to a date for the noticed deposition, which nevertheless covers only ESI topics.

The Court should also reject Facebook's efforts to limit any ADI production to a subset of what Facebook has been compelled to produce—and ***has already produced***—in the CA MDL. ***First***, Facebook demands that any ADI documents "concerning apps with no U.S.-based users" be excluded. But this subset is relevant because even if an app had no U.S. users, it may still have accessed the data of U.S. Facebook users. Dkt. 298 at 3. ***Second***, Facebook asserts documents regarding the "process" for the ADI should also be excluded. These documents *are* relevant, because, *inter alia*, they relate to: (1) the accuracy of the Investigation's results (*e.g.*, the reliability of the determinations regarding which apps accessed users' data and what data they accessed); and (2) whether Facebook's public statements regarding the Investigation's robustness were deceptive. Moreover, Facebook's objection provides no clear distinction between documents Facebook would or would not produce. ***Third***, Facebook contends only documents relating to the 100 largest apps it investigated should be produced, without explaining how app size is significant. It is not. For example, the "This Is Your Digital Life" app gave rise to the Cambridge Analytica scandal and purportedly accessed the data of ***87 million*** Facebook users yet had only 270,000 users. Facebook's proposed limitation is arbitrary and risks excluding highly relevant documents.

Facebook's efforts to limit its production in response to RFP No. 3—based on "process," app size, or otherwise—introduce burden and inefficiency for no reason. There is little to no burden to Facebook in producing documents it has already collected, reviewed, and produced. This Court has stated it "do[es]n't find the idea of producing off-the-shelf discovery already done in another case to be inherently odd." *In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD (N.D. Cal.) (Donato, J.), Dkt. 38, at 17:1–3. Consumers request that the Court compel Facebook to produce, in full, the ADI documents it already produced in the CA MDL to avoid further delay.

### B.    Non-Party Subpoena Communications

Consumers proposed a simple protocol to reduce the burden on the parties and non-parties related to the numerous subpoenas served in this case: (1) each party will copy all lead counsel on written correspondence with non-party subpoena recipients regarding subpoena compliance, including providing the non-parties' responses and objections; and (2) each party will inform all lead counsel of meet-and-confers with non-parties related to subpoena compliance. Dkt. 282 at 1. The purpose of this proposal is to efficiently conduct discovery related to the 36 subpoenas Facebook has served and the 11 subpoenas Consumers have served to date. Without coordination, Consumers will need to issue duplicative subpoenas and hold duplicative meet-and-confers with non-parties, putting additional and unnecessary burden on both non-parties and parties. Notably, subpoena recipients who have received subpoenas from both parties have already requested

coordination given the overlap in the subpoenas. The burden of Consumers' proposed protocol on the parties is effectively none. It will largely require counsel to include opposing lead counsel in the "cc" line of email correspondence with subpoena recipients and on Outlook meeting invites.

Facebook refused to agree to this proposal, stating that under no circumstances would it permit Consumers to participate or even listen-in on its meet-and-confers with subpoena recipients (a proposal that would also apply to Facebook as to Consumers' meet-and-confers). As to correspondence and written objections and responses, Facebook refused to provide copies in real-time by "cc-ing" Consumers and stated it would at most agree to collect and produce this material within 5 to 10 business days. Facebook's objections to Consumers' proposal are baseless and its counter-proposal defeats the entire purpose of Consumers' common-sense proposal: efficiency. Consumers respectfully request the Court order the parties to comply with Consumers' proposed protocol. *See Lagunas-Salazar v. Summerlin*, 2013 WL 5493097, at *1 (D. Nev. Sept. 30, 2013) ("The Court has broad discretion to manage discovery, and craft any order that justice requires.").

*First*, Facebook objected that Consumers mere presence on meet-and-confer calls would somehow increase the burden on nonparties, including because "they are unable to freely communicate with Meta about what documents will satisfy the subpoena." Dkt 297 at 2. The opposite is true. Facebook is the party with adversarial business relationships with many of the subpoena recipients, not Consumers who are individuals with no competitive business interests. One subpoena recipient has already stated it believes meet-and-confers should include all parties. Another has delayed its response by weeks in an attempt to coordinate the overlapping subpoenas it received and avoid duplicative efforts. Allowing both parties to attend and participate in meet-and-confers will avoid duplication regarding overlapping subpoenas. It will also allow Consumers to avoid serving overlapping subpoenas altogether where Consumers are informed on the meet-and-confer that the non-party's scope of production will cover Consumers' discovery needs.

*Second*, Facebook's objection that Consumers will disrupt meet-and-confers by "challeng[ing]" Facebook's statements and arguing about "what non-parties should or should not produce" in response to Facebook's subpoena is unfounded. Consumers will not "challenge" Facebook on these calls. Dkt. 297 at 2–3. The parties previously agreed on the scope of information about named Consumers that Facebook may seek from non-parties. Dkt. 279 at 5. As to other documents, Consumers want to understand the scope of the non-parties' productions in response to Facebook's subpoenas so they can avoid (for all parties' and non-parties' benefits) unnecessarily duplicative and burdensome subpoenas, meet-and-confers, and correspondence.

*Third*, Facebook objects Consumers' protocol would prevent it from simultaneously negotiating subpoenas it served in the FTC case because it might violate that case's protective order. Dkt. 297 at 2–3. Not so. The non-parties can consent to provide whatever information they want. Moreover, the parties recently modified the protective order in this action to incorporate the more restrictive provisions of the FTC protective order limiting Facebook's receipt of non-parties' confidential information. Dkts. 314, 315. This should address any confidentiality concerns.

*Finally*, Facebook objects that copying lead counsel on correspondence and the written objections and responses of the non-parties is supposedly unnecessary because the parties can agree to collect and produce such documents within 5 to 10 business days. This is incorrect. Being perpetually one to two weeks behind negotiations will not prevent duplicative meet-and-confers on overlapping subpoenas. Lack of coordination has already introduced delays in non-parties responding to subpoenas as they seek to coordinate their responses between the parties.

## II.  Meta's Statement

### A.  Users' Request to Join in Nonparty Communications Should be Denied

Users make an unwarranted and unsupported demand: a court order requiring Meta to allow them to be "invited to" Meta's communications with non-parties about discovery. Such an order would increase the burden on non-parties, reduce efficiency, lead to more disputes, and is inconsistent with the rules of civil procedure. Meta proposed an efficiency-enhancing compromise: that each party produce all correspondence with non-parties relating to subpoena compliance within five (not ten) business days. Confirming that their true intent is not, as they claim, to understand the scope of documents non-parties agree to produce, Users rejected that proposal, saying they saw "no reason why they should compromise." Dkt. 312.

It is, of course, common practice to use non-party meet-and-confers to negotiate subpoena scope and allow non-parties to share insight into what documents they have. As part of such discussions, the subpoenaing party is often called upon to explain arguments it intends to make in the case and to explain why the non-party is of importance to the party's theory of the case. Users' presence risks turning otherwise cooperative meet-and-confers between Meta and non-parties into multi-hour negotiations (or arguments) between Meta and Users about relevance that will only impose burdens on non-parties and constrain what Meta can share with non-parties about the relevance of information sought. That is fundamentally contrary to the goal of reducing non-party burdens. *See* Fed. R. Civ. P. 45(d)(1).

That is more true here than in the average case. The vast majority of subpoenas Meta issued here included parallel non-party subpoenas in *FTC v. Meta Platforms*, No. 1:20-cv-03590-JEB (D.D.C.) (the "FTC Case") to minimize the burden on non-parties. Dkt. 297. Meta has been efficiently negotiating the *Klein* and FTC Case subpoenas simultaneously, engaging in extensive meet and confers with subpoenaed non-parties since February 2022. Due to the protective orders in each case, Users' request would require Meta to cease this efficiency-enhancing practice because Users cannot receive confidential information under the FTC protective order. *See* Protective Order at Section B.2.c, FTC Case, Dkt. 134.

Unsurprisingly, Users cite no case in support of their demand and Meta is aware of none. That is because Users have no role to play in the scope of Meta's non-party discovery: "Nowhere in [] Rule [45] is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012). Any commentary by Users on what non-parties should produce would be wholly inappropriate. *See* Order, *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 1:12-md-02335 (S.D.N.Y. Nov. 15, 2013), Dkt. 325 at 2 (enjoining plaintiffs from "engaging, directly or indirectly, in any future communications with any subpoena recipient with respect to its compliance … "). Meta provides Users with the required notice of its subpoenas under Rule 45 (and non-parties' outside counsel contact information), allowing Users to object, confer separately, or issue their own subpoenas (which Users have done for 11 non-parties, so far).

To resolve the dispute, at the May 27 meet and confer, Meta proposed that each party (1) produce all correspondence with non-parties relating to subpoena compliance in this case within five business days; (2) provide a non-party's responses and objections within five business days, and document productions within ten; (3) produce responses and objections already served by non-parties no later than June 6, 2022; and (4) for any correspondence relating to subpoenas in multiple

cases (such as the FTC Case), redact portions that do not relate to the subpoena issued in this case. Dkt. 312. If efficiency of non-party discovery were Users' actual concern, they would have accepted Meta's proposal or countered on the timing of exchanges. They did not. And Users are wrong that a "[l]ack of coordination" has introduced delays. It was Users that delayed—in some cases months—serving their own subpoenas, which Meta has heard *is* a source of frustration for several non-parties. Instead, Users reveal the true purpose of their unprecedented request: to intrude on Meta's communications with non-parties, disrupt Meta's non-party discovery efforts, and ultimately interfere with Meta's ability to develop its defenses.

### B.  Users' Request to Compel RFP No. 3 Should Be Denied

Users' demand for production of ADI materials should be denied for two reasons. *First*, as two other courts have held—one applying the exact "because of" standard used by the Ninth Circuit—these documents are work product protected and some are subject to the attorney client privilege. *See Att'y Gen. v. Facebook, Inc.*, 164 N.E.3d 873 (Mass. 2021); Order, *Dist. Columbia v. Facebook, Inc.*, No. 2018-CA-008715-B (D.C. Super. May 18, 2022) ("*D.C. Order*"). While Users are right that Judge Corley found to the contrary in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-MD-02843 (N.D. Cal. Sept. 8, 2021), Dkt. 736 at 7 ("*Cambridge MDL*"), Meta respectfully submits the better reasoning is found in the rulings that have held that these documents are protected.[1] *Second*, beyond that, Users' request for cloned discovery of 300,000+ documents not tailored to the needs of this case would sweep in countless irrelevant materials.

Meta respectfully requests the Court permit full briefing on this issue. The dispute raises significant work product, privilege, and proportionality issues, which have been resolved by different courts differently, and its resolution here potentially covers hundreds of thousands (and, when all is said and done, potentially millions) of documents. While Meta recognizes the Court's heavy docket and the importance of resolving discovery disputes efficiently, Meta respectfully submits that full consideration of this issue, including the opportunity for Meta to provide declarations and other evidence, is warranted.

#### 1.  Counsel Designed and Oversaw ADI In Anticipation of Litigation

In March 2018, news outlets reported that Cambridge Analytica, a British political consulting firm, had misused Meta's users' data. Meta anticipated litigation stemming from these reports. It was right. Within weeks, it faced several lawsuits and investigations from state, federal,

---

[1] Users are wrong to suggest that Judge Chhabria and Special Master Garrie have independently determined that the ADI documents are not attorney work product. Special Master Garrie implemented Judge Corley's order based on a sampling of certain categories of ADI documents (*i.e.*, generally deciding whether Judge Corley's order required production of all documents in those and other categories ), and Judge Chhabria has clarified and set deadlines for production of certain ADI documents under Special Master Garrie's orders without independently evaluating the work product issue. Users' transparent attempt to leverage an unresolved sanctions motion in that case (in which they are not involved) is not persuasive. Unlike the Massachusetts SJC's decision, Judge Corley's order was based on certain categories of ADI documents for a sample of apps and recognized that certain ADI documents may be subject to the attorney client privilege and work product protections. Meta's time to appeal Judge Corley's Order (as part of an appeal from any final judgment) has not expired.

and foreign agencies. Recognizing the legal risks associated with the Cambridge Analytica matter, Meta hired Gibson, Dunn & Crutcher LLP for legal advice. Outside and in-house counsel oversaw a new, and confidential, internal investigation known as ADI, which generated information used by counsel to advise Meta about legal risk and develop legal strategy for active and anticipated litigation. Consistent with its core purpose—identifying and assessing *legal* liabilities—ADI has informed Meta's legal decision-making. An attorney-led investigation was established because of the pending or anticipated litigation or regulatory inquiries. Because ADI was a historically focused investigation, Gibson Dunn and Meta's in-house counsel engaged forensic consultants to assist with the development of processes and methodologies that were distinct from Meta's real-time, routine, business-led enforcement efforts.

### 2. ADI Documents Are Protected Attorney Work Product

ADI documents are protected work product and Users fail to show otherwise. They were (1) "prepared in anticipation of litigation," and (2) "prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004); *United States v. Textron Inc. & Subs.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc). ADI documents, even if considered to have an ancillary business purpose, are still work product because they were "prepared or obtained because of the prospect of litigation." *Grand Jury*, 357 F.3d at 907-908. As work product, ADI documents would be discoverable only if they are so-called "fact" work product, and then only if Users show a "substantial need" and no ability to obtain equivalent information without "undue hardship." *See Upjohn v. United States*, 449 U.S. 383, 400 (1981).

First, ADI documents were prepared in anticipation of litigation. All three courts have already held so. *See Att'y Gen.*, 164 N.E.3d 873; *D.C. Order*; *Cambridge MDL*, Dkt. 736 at 3. The Massachusetts Supreme Judicial Court, assessing the same universe of documents under the same "because of" test the Ninth Circuit applies, concluded that the information "is clearly covered by the work product doctrine," finding that the 65 litigations and expansive regulatory scrutiny Meta faced established that "ADI was initiated, and the app information compiled, in anticipation of litigation." *Att'y Gen.*, 164 N.E.3d at 880, 889 891-92 (applying "because of" test set forth in *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998), adopted in *Grand Jury*, 357 F.3d at 908). The D.C. Superior Court found both that ADI was irrelevant to exactly what Users' seek to prove—"whether Facebook's disclosures to users were misleading"—and that ADI was a "classic crisis response" so "it was more than reasonable to anticipate that there would be litigation." *D.C. Order* 20:22-23, 31:23-25. Users' attempt to evade those decisions because they come from state courts does nothing to detract from their (correct) reasoning.

Second, Users' argument that ADI had a business purpose that precludes work product protection is wrong. As the Massachusetts and D.C. courts correctly held, that "ADI also serves [Meta's] business purposes … does not mean that the work product doctrine does not apply," *Att'y Gen*, 164 N.E.3d at 889-92; D.C. Order 31:1-32:2. Factually, Plaintiffs are wrong to assert that "the documents were created for a business purpose" primarily. Dkt. 298 at 2. ADI was an attorney-led and attorney-driven effort from the outset, and the documents were created because of anticipated litigation surrounding the Cambridge Analytica events. *Att'y Gen.*, 164 N.E.3d at 889, 891-92; *D.C. Order* 20:11-12, 31:10-32:2. ADI's primary purpose was to identify and assess legal liabilities, "rather than just improving its ongoing operations." *Att'y Gen.*, 164 N.E.3d at 891. Meta's public statements suggesting that a purpose of ADI was to "generate trust," do not indicate otherwise, Dkt. 298 at 1, as the Massachusetts SJC and D.C. Superior Court correctly held, *Att'y Gen.*, 164 N.E.3d at 891-92; *D.C. Order* 20:6-12. The "focus of [] ADI, its structure and design,

and its litigation purposes" were distinct from Meta's business-as-usual compliance program, establishing that the information would *not* have been created in the same form but for the prospect of litigation. *See Att'y Gen.*, 164 N.E.3d at 891; *D.C. Order* 25:16-17 ("[A]fter the press is going to come lawsuits … [ADI was] designed to respond to a crisis."). ADI documents reflect the innerworkings of attorney-created investigatory practices developed with litigation squarely in mind and thus are both opinion work product and distinct from what courts have found are not subject to protection. *Cf. United States v. Fredricks*, 187 F.3d 496, 501-02 (7th Cir. 1999) (tax worksheets); *Phoenix Techs. Ltd. v. VMware, Inc.* 195 F. Supp. 3d 1096, 1104 (N.D. Cal. July 1, 2016) (routine pricing documents); *Dewitt v. Walgreen*, 2012 WL 3837764, at *5 (D. Idaho Sept. 4, 2012) (draft policies). ADI's origin, focus, and design establish that the documents were "prepared or obtained because of the prospect of litigation." *Grand Jury*, 357 F.3d at 907-08.

Third, it is untrue that ADI documents "largely do not involve" counsel. Counsel oversaw and relied upon the subset of documents prepared by forensic experts at their direction to advise Meta on legal decisions. Attorneys need not write each document for the protection to apply: the doctrine "protect[s] materials prepared by agents for the attorneys." *AT&T v. Microsoft Corp.*, 2003 WL 21212614, at *6 (N.D. Cal. Apr. 18, 2003). These ADI documents are protected as well.

Finally, ADI documents are opinion work product. They reflect analyses requested by counsel based on counsel's judgments about legal risk. Users' reference to the SJC's decision on this point is inapt. Unlike here, the Massachusetts Attorney General sought only "the name of the apps" and other "purely factual information," which the court found "central to the … investigation." *Att'y Gen.*, 164 N.E.3d at 894-95. Even if some materials here could be considered "fact" work product (they cannot), Users do not show any need (let alone a substantial one) to "piggyback" off Meta's investigatory work. *See Adlman*, 68 F.3d at 1501; *D.C. Order* 32:15-18.

### 3. ADI Documents Are Not Relevant

Users' RFP No. 3 is also an improper request for "cloned discovery." *See King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). More than 300,000 ADI documents have been produced so far in *Cambridge MDL*, all under compulsion, where the Cambridge Analytica events animate the privacy-based claims. This is an antitrust case. Users allege ADI is relevant to supposed privacy misrepresentations; the D.C. Superior Court explicitly rejected that. *D.C. Order* 20:21-23, 31:10-32:3. The factual information Users are seeking could be obtained through interrogatories or narrower requests, allowing the parties to gauge the relevancy of the requests. *King Cty.*, 2011 WL 3438491, at *3. They did not serve those. Users claim ADI materials will shed light on the "scope of apps," "what data was accessible," and "deviat[ion] from [Meta's] public representations." None are revealed by ADI's focus on potential misuse of Facebook's historical platform. And all are covered by other requests and Users' blunderbuss deposition notice, rendering RFP No. 3 cumulative. *See, e.g.*, User RFP Nos. 31 & 32 (statements and evaluations regarding data collection); Users' Notice of 30(b)(6) Deposition Topic 2 (seeking "User data collected by Meta"); Fed. R. Civ. P. 26(b)(2)(C).

Finally, as ADI has no articulated relevance, Meta proposed—if compelled—that the parties agree to narrow the scope of RFP No. 3 to apps with only U.S. users. Meta also proposed limiting any compelled production to only the 100 largest apps investigated and excluding: the millions of apps with little to no user base and training, tracking, and process related documents. If compelled, these carve outs would align with the geographic scope of Users' claims and reduce the burden on both parties. Users rejected each without any counterproposal.

DATED: July 15, 2022

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Respectfully submitted,

By */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
  kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
  lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

*Interim Counsel for the Consumer Class*

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Defendant Meta Platforms, Inc.*

11

## ATTESTATION OF STEPHEN A. SWEDLOW

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow. By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: July 15, 2022　　　　　　　　　　　By:　*/s/ Stephen A. Swedlow*
　　　　　　　　　　　　　　　　　　　　　　　　　Stephen A. Swedlow

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: July 15, 2022　　　　　　　　　　　By:　*/s/ Stephen A. Swedlow*
　　　　　　　　　　　　　　　　　　　　　　　　　Stephen A. Swedlow