**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
   stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
   shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
   yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Kristen M. Anderson (Bar No. 246108)
   kanderson@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

MAXIMILIAN KLEIN, et al.,

                    Plaintiffs,

          vs.

META PLATFORMS, INC.,

                    Defendant.

This Document Relates To: All Actions

Consolidated Case No. 3:20-cv-08570-JD

**EIGHTH JOINT CASE MANAGEMENT STATEMENT**

The Hon. James Donato

Hearing Date:  August 11, 2022 at 11:00 a.m.

## EIGHTH JOINT CASE MANAGEMENT STATEMENT

In advance of the August 11, 2022 Status Conference, counsel for Consumer Plaintiffs ("Consumers" or "Users"), Advertiser Plaintiffs ("Advertisers"), and defendant Meta Platforms, Inc. ("Meta") respectfully submit this Eighth Joint Case Management Statement.  The parties' prior Joint Case Management Statement (Dkt. 227) provides summaries of Consumers' and Advertisers' respective antitrust claims against Meta, Meta's contentions, and the procedural history of these consolidated actions prior to their reassignment from Judge Koh to this Court, including Judge Koh's order (Dkt. 214) granting in part and denying in part Meta's motion to dismiss each of the Consolidated Consumer Complaint (Dkt. 87) and the Consolidated Advertiser Complaint (Dkt. 86). This Case Management Statement updates the Court as to recent developments on pertinent matters that have arisen since the parties submitted the last Joint Case Management Statement on February 17, 2022, and since the Court last held a status conference on February 24, 2022, and provides relevant background as context for such developments.[1]

---

[1]  **Plaintiffs' Position**:  The parties have submitted seven prior joint case management statements since the beginning of this litigation.  Although many of the parties' prior joint case management statements have exceeded ten pages, Meta for the first time raised for this statement a page limit objection.  Plaintiffs explained to Meta that even if The Standing Order for All Judges applies to subsequent case management statements (not just initial case management statements), The Standing Order itself indicates the ten page limit does not apply "in unusually complex cases[.]" Given the multiple parties and classes, the nature of the claims, and the issues have arisen since the last status conference in February, Plaintiffs submit this is such a case.

**Meta's Position**:   The Standing Order for All Judges provides that joint case management statements "should not exceed ten pages."  On August 2, 2022, Meta received a draft of this statement from Plaintiffs—which did not include Meta's sections—that was 14 pages long.  In an attempt to keep this joint statement streamlined and focused for the Court, Meta informed Plaintiffs that their draft would cause the parties to exceed the page limit, and asked Plaintiffs to shorten their sections.  Plaintiffs refused.  To ensure that the Court receives an accurate presentation of the facts and issues, Meta very reluctantly responds to Plaintiffs' sections herein. If the Court wishes to receive a ten-page CMC Statement, Meta is happy to work with Plaintiffs to provide one.

1.    **Motions**

    a.    **Pending Motions**

*Meta's Motion to Dismiss Advertisers' First Amended Complaint*:  On March 21, 2022, Meta filed a motion to dismiss the First Amended Consolidated Advertiser Class Action Complaint. Dkt. 262.  A hearing on the motion is scheduled for August 11, 2022.  Dkt. 320.

*Meta's Motion for Relief Concerning Search-Term Negotiations*: On August 4, 2022, Meta withdrew its search string motion (Dkt. 316) and will review the documents hit upon by the agreed-upon strings.  Dkt. 329.  Consumers reserve their rights as to the four strings that remain in dispute.

*Consumers' Motions Regarding Non-Party Subpoena Communications and Meta's App Developer Investigation Documents*:    Consumers and Meta have pending discovery disputes regarding Consumers' requests related to non-party subpoena communications (Dkts. 282, 297) and Consumers' motion to compel production of the App Developer Investigation documents that Meta has been ordered to produce in the Cambridge Analytica MDL pending in this District (Dkt. 298). Consumers and Meta have been unable to resolve these disputes, and the Court ordered Consumers and Meta to file a further joint discovery letter brief as to them.  Dkts. 310, 311, 312, 313.  Pursuant to the Court's June 23, 2022 order, Consumers and Meta on July 15, 2022, filed a joint discovery letter brief regarding these disputes.  Dkt. 319.  The Court has indicated that it will take up the parties' disputes as to non-party subpoena communications and Meta's App Developer Investigation documents during the August 11, 2022 status conference.  Dkt. 320.

*Advertisers' Motion to Compel Regarding Hyperlinked Documents*:  On July 27, 2022, Advertisers filed a discovery letter brief seeking to compel Meta to search for and produce relevant hyperlinked documents omitted from Meta's prior productions and for any future productions. Dkt. 322. Consistent with the Court's August 1, 2022 Order, Meta intends to file a response to Advertisers' motion by August 4, 2022. Dkt. 324. Additionally, the Court indicated that it would hear this dispute during the August 11, 2022 status conference. Dkt. 324.

*Motion to Compel Discovery from Non-Party Snap Inc.*: Meta served a Rule 45 subpoena on Snap, Inc., on February 22, 2022.  On August 3, 2022, Meta moved to compel a response in the Central District of California.  *Meta Platforms, Inc. v. Snap Inc.*, 22-mc-00147 (C.D. Cal.).

### b.   Anticipated Motions

In addition to the specific motions below, the parties also anticipate that there will be further motions, including motions to exclude expert testimony and motions *in limine*.

**Plaintiffs' Anticipated Motions:**

*Motions for Class Certification***:**  Plaintiffs intend to move for class certification of the putative Consumer and Advertiser classes.  The Court has set: (a) January 27, 2023, as the deadline for Plaintiffs' class certification expert disclosures; (b) March 24, 2023, as the deadline for Plaintiffs' class certification reply expert disclosures; (c) April 7, 2023, as the deadline to file class certification and class *Daubert* motions; (d) June 9, 2023, as the deadline to file replies to class certification and class *Daubert* motions; (e) June 12, 2023, as the deadline for the parties to file a joint submission for the class certification expert proceeding; (f) June 27, 2023, as the date for the class certification concurrent expert proceeding; and (g) July 13, 2023, as the date for the hearing on Plaintiffs' motions for class certification.

*Responses to Motions filed by Meta***:**  Plaintiffs reserve all rights and arguments to respond to, or oppose, any future motions filed by Meta.  Should Meta file any motion to compel arbitration, Plaintiffs reserve all rights to oppose that motion.  Plaintiffs will also oppose any motion for summary judgment filed by Meta.

**Meta's Anticipated Motions:**

*Motion to Compel Arbitration*:  Meta reserves all rights and defenses with respect to unnamed members of the putative classes alleged in the Users' Consolidated Amended Complaint and the Advertisers' First Amended Complaint, including but not limited to its right to move to compel arbitration of any unnamed putative class members' claims subject to an arbitration provision at the appropriate time.

*Motion for Summary Judgment*:  Meta will consider moving for summary judgment pursuant to Fed. R. Civ. P. 56 after assessing the fact and expert discovery record.

*Responses to Motions filed by Plaintiffs*:  Meta reserves all rights and arguments to oppose or otherwise respond to any motions filed by Plaintiffs, including any motions for class certification.

### 2.       Agreed-Upon, Previously Entered Case Protocols

The parties previously filed proposed Stipulated Deposition, Expert, Privilege, and Rule 502(d) Clawback Protocols.  *See*, *e.g.*, Dkts. 9, 173, 179.  After Judge DeMarchi heard argument on and adjudicated the parties' disputes, the parties reached agreement on these protocols and Judge DeMarchi entered them as court orders.  *See* Dkts. 174 (Deposition Protocol), 175 (Expert Protocol), 176 (Privilege Protocol), 191 (FRE 502(d) Clawback Order).  The parties understand that these agreed-upon, previously entered case protocols remain in effect, but respectfully request confirmation from the Court for the avoidance of doubt.

### 3.       Case and Discovery Updates

#### a.   Discovery Propounded to Date[2]

*Discovery Propounded by Meta*:

Requests for Production:   Since the February 24, 2022 status conference, Meta has propounded additional document requests on Consumers and Advertisers.  On June 9, 2022, Meta propounded its Second Set of Requests for Productions of Documents to Consumers.  Consumers served their responses and objections on July 11, 2022.  Consumers made their first production of documents in response to Meta's second set of document requests on July 14, 2022, made another production on August 4, 2022, and will continue to produce agreed-upon documents on a rolling basis.

Meta on June 13, 2022, propounded its Second Set of Requests for Production of Documents to Advertisers.  Advertisers served their responses and objections on July 13, 2022.  Advertisers have not produced any documents to date in response to Meta's second set of requests.

---

[2]   The parties' February 17, 2022 Joint Case Management Statement contains a summary of the discovery that Plaintiffs and Meta had propounded on one another between the start of fact-discovery and as of February 17, 2022.  Dkt. 227 at 6–9.  The parties' prior Joint Case Management Statements contain similar summaries of discovery propounded up to the dates of those statements' respective filings.  *See* Dkts. 78 at 15, 114 at 8, 139 at 11, 157 at 6–8, 201 at 3–4, 212 at 3–4, 227 at 6–7.  For conciseness, the parties focus this section of the Joint Case Management Statement on discovery since February 17, 2022, the date of the parties' last Joint Case Management Statement.

Interrogatories:

Meta propounded its Second Set of Interrogatories to Advertisers on June 24, 2022. Advertisers served their responses and objections on July 25, 2022.

Meta propounded its Second Set of Interrogatories to Consumers on July 15, 2022. Consumers' responses and objections are due August 15, 2022.

Requests for Admission:  Meta served its Second Set of Requests for Admission to Advertisers on June 24, 2022.  Advertisers served their responses and objections on July 13, 2022.

Meta served its First Set of Requests for Admission to Consumers on July 15, 2022. Consumers' responses and objections are due August 15, 2022.

Deposition Notices: On August 1, 2022, Meta informed Advertiser Plaintiffs that it intends to notice the deposition of Advertiser Plaintiff Joshua Jeon.

***Discovery Propounded by Plaintiffs***:

Requests for Production:  On March 7, 2022, Consumers served their Second Set of Requests for Production of Documents to Meta.  Meta served its objections to Consumers' second set of document requests on April 6, 2022.

Consumers served their Third Set of Requests for Production of Documents to Meta on May 16, 2022. Meta served its responses and objections to Consumers' third set of document requests on June 15, 2022.

On March 31, 2022 Advertisers served their Third Set of Requests for Production of Documents to Meta.  Meta served its responses and objections on May 13, 2022.

Consumers and Advertisers each served their respective Fourth Set of Requests for Production of Documents to Meta on July 29, 2022.

Interrogatories:  Meta provided responses to Advertisers' First Set of Interrogatories to Meta on March 17, 2022.  Meta also provided responses to Consumers' First Set of Interrogatories to Meta that same day.

Advertisers served their Second Set of Interrogatories to Meta on July 25, 2022.  Meta's responses and objections are due August 24, 2022.

Deposition Notices:  Consumers served their first Rule 30(b)(6) deposition notice of Meta on May 18, 2022.  Advertisers served their first Rule 30(b)(6) deposition notice of Meta on June 17, 2022.  Plaintiffs and Meta have held several meet-and-confers with Meta regarding their deposition notices, and have exchanged correspondence and written proposals.  The parties continue to discuss the scope of Meta's anticipated testimony on these topics, as well as possible deposition dates.

### b.  Limitations on Interrogatories

The parties have an open dispute regarding the appropriate limit on interrogatories.  The parties' positions are set out in the Rule 26(f) Report.  *See* Dkt. 130 at 5–8.

### c.  Motion and Discovery Cut-Off Dates

Following reassignment of these consolidated actions to this Court, the Court on February 3, 2022, vacated all previously set case management deadlines and motion hearing dates.  Dkt. 222.  The Court thereafter entered a scheduling order on April 29, 2022, setting: (1) January 13, 2023, as the fact discovery cut-off; (2) January 27, 2023, as the deadline for Plaintiffs' class certification expert disclosures; (3) April 7, 2023, as the deadline for class certification and class *Daubert* motions; (4) October 20, 2023, as the merits expert discovery cut-off; and (5) November 17, 2023, as the last day to file dispositive motions and merits *Daubert* motions.  Dkt. 289.

### d.  Plaintiffs' Further Position on Discovery

Although Consumers and Advertisers each served their first written discovery requests on Facebook in September 2021, Facebook's tactics have unfortunately impeded both classes from obtaining much-needed discovery and jeopardized the fact discovery and class certification schedule set by the Court.  Facebook did not make its first custodial document production specific to either class's document requests until July 21, 2022, the day after the Court set the upcoming August 11, 2022 status conference.  It is too little (consisting of less than 1,200 custodial documents to date, with  5,800 more estimated by Facebook to come before the August 11 status conference), too late (**almost ten months** to the date after Consumers and Advertisers each served their first set of document requests on September 24, 2021).  Facebook must expedite its production of documents if the parties are to meet the Court's fact discovery and class certification schedule.

Facebook's tactics have been two-fold. **First**, Facebook has repeatedly delayed responding to Plaintiffs' efforts to obtain document discovery. **Then**, after delaying its production of documents for nearly a year, Facebook has used upcoming case deadlines and its own delays and other excuses in seeking to justify its attempts to severely limit its production of documents Plaintiffs need to prove their claims.

At the start of discovery, Facebook stated that it would not meet-and-confer as to **any** of Plaintiffs' document requests (*i.e.*, Consumers' first set of RFPs, Advertisers' first set of RFPs, and Plaintiffs' first set of joint RFPs) **until** receiving written explanations as to **all sets** regarding why Facebook's responses and objections were deficient. After Plaintiffs provided these written explanations, Facebook next stated it would not meet-and-confer until both classes provided a list of "common issues" presented by Facebook's responses across all sets. Facebook and its demands delayed the parties' first meet-and-confers regarding Plaintiffs' September 2021 document requests until December 2021. Facebook then did not respond with a proposal regarding the scope of documents it would produce until a month later, in January 2022.

Facebook further significantly delayed its document production by initially refusing to produce documents regarding entire substantive topics and temporal periods that are clearly relevant, including while its motion to dismiss was pending. For example, although Consumers' complaint expressly alleges that Facebook's deception as to its data collection and use practices is anticompetitive (Dkt. 87), Facebook for months claimed documents concerning those practices and its related public statements were "irrelevant" unless and until Judge Koh determined otherwise in a motion to dismiss order, because Facebook's motion to dismiss disputed that deception could constitute anticompetitive conduct under Sherman Act Section 2. Similarly, as to Consumers' damages-related document requests based on the monetary value of data, Facebook objected this topic too was "not relevant," even at first refusing to produce documents related to one of Facebook's services (Facebook Research App) that has monetarily compensated users for their data and that is described in the Consumer Complaint.

With respect to Advertisers' requests, Facebook likewise refused to produce documents relating to Advertisers' Section 1 claims, including those related to the Google-Facebook Network

Bidding Agreement, until after its motion to dismiss was decided.[3]   In this way, Facebook unilaterally gave itself an unsanctioned discovery stay during the pendency of its prior motion to dismiss.   Only after Judge Koh's January 14, 2022 order denying in part Facebook's motion to dismiss did Facebook re-assess its prior objections.   Even then, it took additional weeks and rounds of negotiations, meet-and-confers, and detailed written correspondence for Facebook to agree to a scope of production in response to Plaintiffs' document requests.

Likewise, in response to Advertisers' second set of document requests, four requests seeking documents regarding Facebook's (and competitors') machine learning/AI systems and their use in ad targeting, Facebook's initial response in mid-November 2021 took the position that Facebook would not produce any documents until the parties had "mutually agreed on the scope of production and subject matters implicated by" those requests. On January 11, 2022, Advertisers wrote a letter objecting to Meta's position, explaining the unambiguous scope and relevance of Advertisers' ML/AI requests, and seeking an immediate meet-and-confer. In response, Meta explained in a January 13, 2022, email that it would "take this back and discuss it with our client . . . [and] provide a further response in writing" prior to agreeing to any meet-and-confer. Meta's internal review proceeded for approximately six weeks and culminated in a one-page letter sent to Advertisers on February 25, 2022, stating that Meta had searched its prior (FTC) production for the terms "ML," "artificial intelligence," and "AI," and had identified numerous documents within it that hit upon these terms. Meta then proposed to produce three narrow categories of "sufficient to show" documents in response to all four ML/AI requests. On March 14, Advertisers sent a letter rejecting Meta's proposal as unserious; explained the proposal's deficiencies; and sought "a lead counsel meet-and-confer . . . between now and March 25." On March 24, 2022, Meta finally agreed to meet-and-confer on Advertisers' six-month old requests. Meta had several "take backs" from this meet-and-confer, and suggested that overlapping custodian and search term negotiations might be a "gating issue" to producing documents in response to Advertisers' ML/AI document requests. On

---

[3]   Facebook then refused to produce documents regarding the alleged Google-Facebook Network Bidding Agreement pending its efforts to transfer Advertisers' claims to the *Google Digital Advertising* MDL in the Southern District of New York, which ultimately proved unsuccessful.

June 17, 2022, the parties again discussed Advertisers' second set of requests, this time at the lead counsel in-person meet-and-confer held that day. On June 30, 2022, Meta sent a letter proposing a compromise scope of production in response to Advertisers' second set of requests, which Advertisers conditionally accepted in a July 12, 2022, letter in which Advertisers also proposed ML/AI-related search terms. Nonetheless, since that letter, Meta has taken the position that it is still not ready to produce ML/AI documents, stating in correspondence that "despite agreement on many of [Advertisers'] requests," there are still areas of disagreement that prevent Meta from producing documents. Meta has not, to date, produced any documents in response to Advertisers' second set of requests.[4]

Also, Advertiser Plaintiffs sent an extensively researched and detailed letter to Meta on February 3, 2022, that clarified issues in purported dispute, provided clear scope limits, and suggested a procedure for further negotiation for the production of structured advertising data necessary for Advertiser Plaintiffs' Expert Class Certification Damages Methodology Report that was requested in Advertiser Plaintiffs' First Set of Requests for Production. Meta did not respond with a counterproposal until July 12, 2022 (*over six months later*), and indicated that significant departures from Meta's counterproposal would affect Meta's ability to meet the discovery deadline. To date, no structured advertising data has been produced by Meta.

Facebook's demand to stage document custodian negotiations resulted in further delay. Facebook was not willing to discuss proposed document custodians until Plaintiffs and Facebook first reached near-agreement on the scope of Facebook's document production. Once the parties did so, Facebook then took three weeks to propose custodians. When Facebook finally proposed custodians on February 18, 2022, its proposal of 22 custodians for Consumers and 10 custodians for Advertisers (with overlap between the two proposed sets) excluded highly relevant individuals, including, for example, individuals such as Mark Zuckerberg, Sheryl Sandberg, Chamath Palihapitiya, Bret Taylor, and others whose conduct and/or public statements regarding Facebook's

---

[4]   In addition to not yet producing documents in response to Advertisers' second set of document requests, Facebook has also not produced any documents in response to Advertisers' third set of requests (served March 31, 2022).

1  data collection and use practices feature prominently in Consumers' complaint and Judge Koh's

2  motion to dismiss order.  Facebook now points to its eventual agreement to these custodians as

3  evidence of its efforts to resolve the parties' custodian negotiations "in good faith," but does not

4  mention it refused to include these and other relevant individuals as custodians for ***months***.  Indeed,

5  it took months of additional meet-and-confers and correspondence (with Plaintiffs providing oral

6  and written explanations for all custodians on a custodian-by-custodian basis, sometimes multiple

7  times), Consumers' letter brief, and concessions by Plaintiffs regarding the numbers of custodians

8  before Facebook agreed to 40 custodians for Advertisers on June 9, 2022, and 48 custodians for

9  Consumers on June 16, 2022, half the number of custodians Facebook had recently agreed to in

10  other complex cases (at least 81 in the Cambridge Analytica MDL, and 96 in the FTC antitrust

11  litigation).  While Facebook complains the document custodians it has agreed to for Consumers and

12  Advertisers do not completely overlap, this is expected given the differences in anticompetitive

13  conduct, relevant market, damages, and other theories alleged by each class.

14       Facebook then further delayed its document production by refusing to run Plaintiffs'

15  proposed search terms based on the objections that they were overbroad and burdensome, while

16  simultaneously depriving Plaintiffs of any ability to narrow the number of documents their proposed

17  search terms hit upon.  When Consumers, for example, requested a "hit report" showing the number

18  of documents their proposed search terms hit upon, Facebook took two weeks to provide the report.

19  Consumers immediately revised their proposed search strings to reduce the number of hits.

20  Facebook again refused to review these search strings, but did not provide a hit report based on the

21  revised search strings for another two-and-a-half weeks.  Even then, that hit report did not contain

22  all the information Consumers requested, and when Consumers asked for this information,

23  Facebook responded by abruptly filing a letter brief (which it has now agreed to withdraw).

24       To avoid further delay in beginning to receive documents from Facebook, Consumers

25  requested that Facebook run, and start reviewing documents that hit upon search strings Facebook

26  did not object to.  Facebook agreed to do so on June 27, 2022, yet a month later, Consumers still

27  have not received a substantial production of documents.  On July 22, 2022, Consumers made a

28  compromise search string proposal.  Facebook responded a week later, agreeing to run certain of

Consumers' proposed strings and stating that Facebook would provide a response as to others at a later date.  On August 2, 2022, Facebook agreed to additional of Consumers' strings and provided a counterproposal as to all but 9 of the remaining other strings.  Consumers responded the next day, offering a global compromise that accepts the majority of Facebook's counterproposals, offers to cut other strings, and in return, asks Facebook to review the remaining six strings as previously proposed or as now revised by Consumers.

Facebook used the delay it created to for months argue that the number of documents it was obligated to produce should be limited.  On August 4, 2022, Facebook largely agreed to Consumers' compromise search string proposal (except for four strings it refuses to run relating to Facebook's "pain or pressure points" and its consent decrees with the Federal Trade Commission and United States Department of Justice).  Facebook has also indicated it will withdraw its pending search string letter brief (Dkt. 316).  While Consumers appreciate this development, Consumers note, however, that by the time of the conference, Facebook will have agreed to review custodial documents **a month-and-a-half prior**, but estimated its production during that time to amount to **fewer than 7,000 custodial documents**.  Advertisers' negotiations with Facebook regarding search terms have followed a similar trajectory.  A significantly faster pace of production is required in order for the current schedule to work.

Facebook also asserts that its production of documents in response to Plaintiffs' documents requests is appropriately limited because of its re-production to Plaintiffs of its prior document production to the FTC and House Antitrust Subcommittee during those entities' antitrust investigations of Facebook.  Facebook's re-production is not sufficient and does not discharge it of its obligation to collect, review, and produce the documents specific to ***this case*** and to do so swiftly. Facebook originally refused to make even this production available to Plaintiffs until Judge Koh ***compelled*** Facebook to do so.  *See* Dkt. 82.  In fact, Facebook previously stated the re-production contains "documents related to a number of topics that are far afield of plaintiffs' claims" and "it is

1    far from clear that the entire production set" is "relevant."  Dkt. 78 at 29, 30.[5]  And while Facebook

2    asserts that Plaintiffs were too slow in first serving discovery requests in September 2021, Facebook

3    leaves out that this timing was a result of Facebook's refusal to hold a Rule 26(f) conference with

4    Plaintiffs until July 30, 2021, when Judge Koh **compelled** Facebook to do so.  Dkts. 114 at 9–10,

5    15.  Plaintiffs used those intervening weeks to review Facebook's re-production (as Facebook

6    requested), so they could serve non-duplicative requests.

7          Finally, Facebook refuses to produce documents relevant to Plaintiffs' claims because these

8    documents were "hyperlinked" in Facebook's internal communications and documents, rather than

9    physically attached to these documents. Dkt. 322. Advertisers and Facebook have negotiated this

10   dispute since March 1, 2022, through email, letter exchanges, and three meet and confers, with no

11   resolution. Facebook has used this arbitrary distinction to avoid its discovery obligations, and

12   Plaintiffs have accordingly been deprived of evidence necessary to their cases.

13                       *                 *              *

14         Plaintiffs look forward to discussing these issues with Court, including their impact on the

15   parties' abilities to meet the current fact discovery and class certification schedule.  So that Plaintiffs

16   can begin receiving the custodial documents they require, Plaintiffs request that the Court order

17   Facebook to: (1) substantially begin its production of documents specific to this case immediately;

---

18

19   [5]  The prior FTC and House investigations differ from Plaintiffs' claims in substantive and temporal

20   scope, such that Facebook's re-production to Plaintiffs of the documents it previously provided to
     these entities do not suffice.  Whereas the FTC's and House's inquiries center on Facebook's

21   policies limiting developers' access to its "Platform" and on its acquisitions, Consumers' claims are
     based on the monetary value of data and Facebook's deception as to its data collection and use

22   practices.  Judge Boasberg expressly noted, for example, that "Facebook's data-collection and -use
     practices" were "**not the subject**" of the subsequent FTC and State Attorneys General cases against

23   Facebook. *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 15 (D.D.C. 2021).  And when Consumers
     served document requests seeking discovery from the FTC-Facebook case pending before Judge

24   Boasberg, Facebook refused, objecting that "Plaintiffs are not entitled . . . particularly where **large
     numbers of documents produced in that case will not relate to Plaintiffs' claims** and defenses."

25   Similarly, Advertisers' claims are based on Meta's monopolization of the social advertising market,
     which entailed anticompetitive data sharing agreements with eBay, Netflix, and Foursquare, and an

26   alleged market division agreement with Google, that were not the subject of the investigations
     spawning Facebook's prior production.  And, Facebook's prior production to the FTC and House

27   generally ends in 2019 or early 2020; Plaintiffs' claims here also implicate more recent events,
     including some occurring as recently as 2022, such as Meta's ongoing back-end integration of user

28   data and artificial intelligence/machine learning models and systems.

---

1   (2) thereafter make rolling productions on a weekly basis; and (3) substantially complete its

2   document production by September 30, 2022, which provides only three-and-a-half months to

3   review and analyze the documents for fact discovery and expert reports, as well as to prepare for

4   and take depositions based on the documents.  Facebook recognizes the need for a deadline for the

5   substantial completion of the production of documents (having asked Consumers and Advertisers

6   for one for Facebook's requests), but Facebook has not even substantially *begun* its production of

7   documents specific to this case.  Contrary to Facebook's claim, these proposals are far from new:

8   the parties proposed a substantial completion date for already-served discovery in their prior case

9   management statement (Dkt. 227 at 9), and Plaintiffs *for months* have raised with Facebook the

10  need for Facebook to start meaningfully producing custodial documents (which it has not).

11          **i.   Discovery Propounded by Plaintiffs [Plaintiffs Section]**

12              **1.   Requests for Production to Facebook [Plaintiffs Section]**

13          As stated above, Facebook has not made a substantial production of documents in response

14  to Plaintiffs' initial discovery requests.  Facebook did not make its first custodial production—

15  consisting of 1,200 documents—until July 21, 2022.  Facebook's statement that it had produced

16  more than 85,000 documents before then is misleading.  The vast of majority of those documents

17  are exports of each named Plaintiff's "Download Your Information" tool—a publicly-available tool,

18  which Plaintiffs can themselves access—and which allows users to download versions of their

19  information from their Facebook accounts (*e.g.*, wall posts, photos, and friends).

20          Facebook has also delayed in producing documents in response to Plaintiffs' subsequent sets

21  of discovery requests.  Consumers agreed Facebook could produce responsive documents to their

22  15 follow-up requests by running the existing search terms across the files of the parties' agreed set

23  of custodians and by searching central file sources.  To date, Facebook has not produced any

24  responsive documents or data for these requests from central sources, including documents

25  Consumers identified by name or hyperlink in previously produced documents.  Additionally,

26  Facebook has not produced any structured data in response to any of Plaintiffs' discovery requests,

27  despite lengthy negotiations with Advertisers on this subject.

28

## 2. Depositions [Plaintiffs Section]

Consumers served their first Notice of 30(b)(6) Deposition of Facebook on May 18, 2022, comprised of two topics regarding the user data that Facebook collects, as well as Facebook's systems for collecting, maintaining, and processing this data.  Advertisers served their first Notice of 30(b)(6) Deposition of Facebook on June 17, 2022.  Plaintiffs do not agree with Facebook's characterizations of their deposition notices, and they have continued to exchange correspondence and meet-and-confer with Facebook regarding the topics in a good-faith effort to reach agreement. Facebook made a proposal to Plaintiffs on August 3, 2022, which Plaintiffs are evaluating.

## 3. Discovery Propounded by Plaintiffs on Non-Parties [Plaintiffs Section]

To date, Consumers have propounded 11 document subpoenas to non-parties, and have received document productions from 4 non-parties.  Consumers are re-producing copies of these documents to Facebook after receiving them, to the extent that Facebook does not already have them (*i.e.*, no re-production is necessary if the producing non-party also copied Facebook on the production transmittal correspondence, or the producing non-party is making a courtesy re-production to Consumers of what it already produced to Facebook).  Consumers have not, as Facebook misstates, refused to produce correspondence with non-parties until the Court resolves the parties' dispute as to non-party subpoena correspondence.  The parties met-and-conferred regarding this issue on August 2, 2022, and the parties are considering proposals to produce this correspondence to one another while awaiting a ruling from the Court.

Advertisers have issued one non-party subpoena, and to date have not received any document productions.  Advertisers have agreed to re-produce to Facebook documents produced by non-parties, again to the extent that Facebook does not already have them.

## ii. Discovery Propounded by Facebook [Plaintiffs Section]

## 1. Requests for Production to Plaintiffs [Plaintiffs Section]

Facebook has served document requests on Plaintiffs seeking information regarding nearly every aspect of their lives, regardless of relevance.  Nonetheless, Plaintiffs have responded to Facebook's requests for written discovery to date in good-faith, producing documents and providing

written discovery responses.  Plaintiffs continue to do so.  To resolve a discovery dispute, the parties agreed that Facebook would not seek documents beyond Consumers' use of 99 specified "online services" absent a showing of good cause (Dkt. 279).  Facebook has now served additional document requests seeking information regarding additional "online services," and perhaps non-online services too (*e.g.*, gas station, hotel, and movie theater loyalty rewards programs).  Consumers do not agree with Facebook's statement that Consumers' document productions contain "deficiencies," and Consumers have and continue to comply with the parties' stipulation to produce specified documents regarding the enumerated 99 "online services."  Dkt. 279.  Consumers and Facebook have exchanged correspondence and met-and-conferred regarding these issues, and they will raise any dispute with the Court to the extent necessary.

Facebook's other aspersions are also unfounded.  Contrary to Facebook's lengthy statement to the contrary, Advertisers simply never ran search terms on the named Advertiser Plaintiffs' document sources, so there are no terms to disclose.  Relevant document sources were collected and are being reviewed *in toto*—just as Advertisers have repeatedly (and consistently, despite Facebook's odd attempt to claim otherwise) told Facebook.

Consumers have confirmed that they will provide the certification required by Paragraph 2 of this Court's Standing Order Regarding Civil Discovery.  Facebook's suggestion that Consumers did not comply with the parties' ESI Order by running search terms to conduct a reasonable search for documents is also conjecture.  Consumers made their first custodial document production (based on a reasonable investigation, using search terms) in response to Facebook's document requests in **December 2021**.  The ESI Order was not entered until June 2022.  Dkt. 304.  In any case, Facebook did not raise Consumers' use of search terms until ***seven months later***.  Nonetheless, Consumers and Facebook met-and-conferred regarding this issue on August 3, 2022, and Consumers confirmed they will provide Facebook with the search terms Consumers ran against their ESI.  To the extent Facebook wishes to further meet-and-confer after that, Consumers will do so, raising any disputes with the Court to the extent necessary.

Facebook has also served document requests on Advertisers seeking information far afield from (or wholly unrelated to) the facts or legal theories at issue in the Advertiser case.  Facebook

has acknowledged that these requests are designed to target information related to claims or defenses unique to the Consumer case, but contends that the administrative action of relating the Advertiser and Consumer cases subjects the named Advertiser Plaintiffs to discovery related to Consumers' case.  Advertisers disagree and will raise any dispute with the Court to the extent necessary.

### 2.  Interrogatories  and  Requests  for  Admission  to  Plaintiffs [Plaintiffs Section]

Facebook has served interrogatories and requests for admission to Plaintiffs.  Consistent with the parties' stipulation (Dkt. 279), Consumers' June 15, 2022 supplemental responses to certain of Facebook's interrogatories identify—based on a reasonable investigation, on a per-plaintiff basis, and where available—Consumers' accounts and usernames (if any) on the required 99 "online services," as well as any corresponding privacy settings via Rule 33(d) reference to produced screenshots.  Consumers and Facebook have exchanged correspondence regarding Consumers' responses to these interrogatories.  Consumers will also respond to Facebook's second set of interrogatories and first set of requests for admission by August 15, 2022.

In response to Facebook's interrogatories and requests for admission, Advertisers have identified market participants in their alleged relevant market known to Advertisers at this time, and responded to specific inquiries about Facebook, Instagram, WhatsApp, TikTok, and Snapchat.

### 3.  Discovery  Propounded  by  Facebook  on  Non-Parties [Plaintiffs Section]

Facebook states that it has served 38 subpoenas for documents on non-parties to date, so far obtaining document productions from 13 of them.  Despite Plaintiffs' requests, Facebook has refused to make these document productions available to Plaintiffs without a document request.  Plaintiffs do not agree that a formal request is required.  *See*, *e.g.*, Fed. R. Civ. P. 45(a), Advisory Committee's Note to 2013 Amendment ("The party serving the subpoena should in any event make reasonable provision for prompt access" by other parties to the litigation to information produced in response to the subpoena).  Nevertheless, Plaintiffs issued a written request for the documents Facebook has received and does receive in this litigation from non-parties to avoid further delay in receiving the documents.

### e.   Meta's Further Position on Discovery

The Plaintiffs have apparently realized that they have a weak case, and so have latched on to what they have read in the press about a different litigation—*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-02843-VC (N.D. Cal.)—in the hopes of manufacturing issues that distract from the problems with their underlying claims.  That cynical approach should be rejected.  This is not the *Consumer Privacy* case, and whatever criticisms of Meta and its lawyers in that case (and however unfair), ***in this case*** Meta and its lawyers have worked tirelessly to proactively move discovery forward despite feet-dragging and lack of coordination from plaintiffs, to respond to and collaborate with Plaintiffs in response to their unreasonable demands, and to raise issues with the Court where they need intervention.  If there is any party that has delayed and not fulfilled its obligations in this case, it is Plaintiffs who, for reasons unknown, focus on this case only sporadically, and when they do deign to communicate with Meta and its counsel, pursue discovery that is boundless in scope through an ever-changing cast of Plaintiffs' counsel.

### i.   Discovery Propounded by Plaintiffs [Meta Section]

### 1.   Requests for Production [Meta Section]

Pursuant to this Court's April 2, 2021 Case Management Order, Dkt. No. 82 at 1, and before receiving any document requests from Plaintiffs, on May 3, 2021 Meta timely provided to Plaintiffs more than twelve million pages of documents it had previously produced to the Federal Trade Commission and the U.S. House of Representatives in related antitrust investigations.  Plaintiffs did nothing for nearly five months.  Then, eight weeks after the Rule 26(f) conference[6]—and only after Judge DeMarchi recognized that Plaintiffs actually serving some discovery requests would be "helpful" to frame a meaningful dialogue on the parties' negotiation of discovery protocols, Dkt. 146 at 52:15-23 (Aug. 31, 2021 Hr'g Tr.)—Plaintiffs finally got around to serving requests. (Meanwhile, recognizing the need to move this case forward, Meta had already served its own

---

[6] Plaintiffs are apparently so intent to cast Meta as the villain in their rewrite of history that they do not let the facts stand in the way of their advocacy.  Plaintiffs' claim that Meta was "compelled" to participate in a Rule 26(f) conference is false.  Plaintiffs asked Judge Koh to set a schedule with a Rule 26(f) conference in July; Meta proposed August.  Dkt. 114 at 9-10.  Judge Koh set a July 30 deadline, Dkt. 115, and both sides complied with it.  And this was more than a year ago.

discovery requests on the named Plaintiffs, and sought and received an order compelling Plaintiffs to provide rules-compliant initial disclosures. Dkt. 162).

Plaintiffs' discovery requests called for documents spanning a nearly twenty-year time period and covering virtually all of Facebook's (now Meta's) business.  The requests made clear that Plaintiffs had done little to actually review the twelve million pages of documents that they had demanded, and Plaintiffs certainly did not tailor their requests based on previous materials produced by Meta or to subject matter actually relevant to this case.  Plaintiffs' requests included, for example, requests that Facebook produce "all … bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls … , including calls made using telephones not paid for by [Meta]"; "all … trip and travel logs and records, expense reports, and entertainment reports"; "[a]ll communications with [Facebook's] actual or potential advertising customers concerning [Meta's] advertising prices, advertising demand, and/or any third-party's online advertising services"—which on its face called for nearly all external statements Meta had ever made about advertising; and "[a]ll Documents concerning the Competitive Conditions."[7]   And, Plaintiffs have continued serving additional document requests, and have now in total served 144 requests:  25 joint requests, 49 from Users, and 70 from Advertisers.

Notwithstanding the expansive nature of the requests, Meta worked with Plaintiffs to focus Plaintiffs' requests so that Meta could evaluate and propose efficient, less burdensome ways of providing Plaintiffs the information needed to litigate their claims.  Indeed, in response to each of Plaintiffs' requests, Meta either agreed to search for and produce responsive documents or offered to meet and confer so that it could better understand the scope of the request.

After Meta timely served its responses and objections, Plaintiffs waited weeks to respond, such that the parties could not even begin to meet-and-confer by telephone until shortly after the Thanksgiving holiday in 2021.  Those meet-and-confers, too, were complicated by the sheer volume of requests that Plaintiffs served.  But, using what Plaintiffs refer to as the "common issues"

---

[7] Plaintiffs' Joint Requests for Production No. 25(c) & 25(d); Advertisers' Requests for Production Nos. 12, 16. To avoid burdening the Court with numerous attachments, Meta has not included the underlying correspondence and discovery materials cited in this joint statement, but would be happy to provide it at the Court's request.

approach that Meta proposed—and to which Plaintiffs appeared to agree—to organize what would otherwise have been a disorganized and inefficient meet-and-confer process, the parties were able to discuss each of Plaintiffs' then-outstanding 85 document requests.  One of the benefits of consolidated cases is to streamline discovery.  Meta will not apologize for seeking (and succeeding) to do so.

Plaintiffs also allege that Meta unduly delayed its document production while its first motion to dismiss was pending.  ***Not true.***  Rather, given the breadth and scope of Plaintiffs' document requests, Meta believed that it was necessary to order (or "roll") the production of its materials, and it made suggestions to Plaintiffs about how to efficiently roll productions.  For example, Meta explained—before the motion to dismiss was decided—that on three different occasions, courts had already held that challenges to Meta's 2015 API policy change are time barred.  Meta therefore proposed that requests targeted to this pre-limitations period event not be made a priority unless the Court allowed the claims to proceed.  This proposal was well-advised, as, after Judge Koh dismissed both Users' and Advertisers' challenges to the API change, Dkt. 214, Users did not re-assert the claim, and Advertisers decided—in their opposition to Meta's motion to dismiss their amended complaint—to abandon any renewed challenge to it, Dkt. 270-3 at 15.  And, where Plaintiffs sought documents going back nearly two decades or apparently concerning Advertisers' challenge to the Google Network Bidding Agreement—which the JPML conditionally severed and transferred to the Southern District of New York, Dkt. 260-1—Meta proposed that the parties first begin discovery within the relevant antitrust statute of limitations period while its first motion to dismiss on timeliness grounds was pending, and concerning topics germane to claims certain to stay before this Court.  Meta did not refuse to produce documents, and agreed to provide plenty of other discovery in the interim.  Indeed, before the Court's motion to dismiss ruling Meta both agreed to produce documents concerning other events predating the four-year statute of limitations period in response to requests calling for them, and began productions.  By the time the JPML vacated its conditional transfer order, Dkt. 303, Meta had produced over 85,000 documents totaling almost 380,000 pages. Finally, however Plaintiffs choose to characterize their allegations in this statement, Meta did not at the time understand certain of Plaintiffs' requests for documents and information that have nothing

1    to do with the user experience on Meta's applications to have anything to do with this case.  The

2    meet-and-confer process served its purpose, and Meta developed a better understanding of those

3    requests, which Meta communicated to Plaintiffs.

4          By contrast, Plaintiffs have not taken a constructive approach to the meet-and-confer

5    process, and the issues Plaintiffs highlight in their own section of this statement illustrate this issue.

6    Regarding Advertisers' second set of requests for production, Meta timely served its responses and

7    objections to these requests on November 22, 2021.  Advertisers waited *six weeks* to respond.  After

8    the parties exchanged written correspondence and then met and conferred, in the course of which—

9    contrary to Plaintiffs' assertion above—Meta offered to search for additional responsive

10   documents.[8]  But Advertisers failed to address many of Meta's questions about the requests,

11   demanded that Meta respond to the requests "as-worded, as-served," and rejected Meta's proposal

12   to search for and produce documents.[9]  The parties then met and conferred on this same issue three

13   months later, after which Advertisers finally agreed to negotiate search terms.  Any delay in

14   productions in response to these requests is thus entirely of Advertisers' making.

15         Advertisers' requests for "structured advertising data," on their face, called for well more

16   than a billion rows of data.  Advertisers acknowledged that the request was unmanageable, then

17   purported to "narrow" the request by letter on February 3, 2022.  This "narrow" proposal still called

18   for approximately 100 data fields associated with each and every advertising transaction that has

19   occurred in the past twelve years, which would again likely call for more than a billion rows of data,

20   much of which does not readily exist in Meta's systems.  In an effort to proactively move forward

21   with the process of identifying and producing structured advertising data, Meta undertook an

22   extraordinary, months-long process to identify responsive data that it could feasibly produce.

23   Following this work, Meta offered to produce 54 data fields associated with hundreds of millions of

24   advertising transactions dating back nearly ten years.[10]  Advertisers accepted Meta's proposal

25

26

27   _____

     [8] M. Jennings Ltr. to B. Dunne (Feb. 25, 2022).

28   [9] B. Dunne Ltr. to M. Jennings (Mar. 14, 2022).

     [10] M. Jennings Ltr. to K. Anderson (July 12, 2022).

"subject to two (2) modifications," which the parties are discussing.[11]  Meta's work to respond to Advertisers' request was diligence, not delay.

Advertisers have also recently moved to compel Meta's production of every hyperlinked document embedded within all prior and future document productions in this case.  Dkt. 322.  As Meta explained to Advertisers months ago, doing so would require Meta to manually review each of the hundreds of thousands of produced documents that include a hyperlink, retrieve the hyperlinked data, and create an association between the two that does not exist in Meta's systems.[12]  Advertisers ignored this information, rejected Meta's offer to produce hyperlinked material from documents that Advertisers consider important, and waited months—until near the close of fact discovery and on the eve of a status conference—to file a letter brief on the topic.  **This is a stunt.**

Plaintiffs also mischaracterize the facts in connection with the parties' negotiations concerning document custodians and search terms.  Plaintiffs made no effort to negotiate either until *Meta* took it upon itself to initiate those discussions by sending Plaintiffs a custodian proposal in February 2022.[13]  When Plaintiffs responded to this proposal weeks later, they proposed *121* custodians, which is wildly disproportionate to the case and far in excess of what this Court has permitted in other antitrust class actions.[14]  This proposal is emblematic of the problems that have been endemic throughout Plaintiffs' litigation of this case:  Plaintiffs made little effort to ensure that their set of proposed custodians was non-duplicative and proportional to the needs of the case, and Users' and Advertisers' separate lists of custodians—with little overlap—reflected Plaintiffs' failure to coordinate with one another despite the consolidation of the cases.  In any case, Meta embarked on a series of complex negotiations with Plaintiffs, during which it agreed to produce documents from Mark Zuckerberg, Sheryl Sandberg, and others whom Plaintiffs requested be included, and made other significant concessions to resolve the issue in good faith.  The parties have resolved their dispute (with Plaintiffs finally relenting and coming down to 73 custodians), but Plaintiffs' months-

---

[11] K. Anderson Ltr. to M. Jennings (July 29, 2022).
[12] M. Jennings Ltr. to A. Wolinsky (Mar. 31, 2022).
[13] M. Jennings Ltr. to Plaintiffs' Counsel (Feb. 18, 2022).
[14] K. Pozan Ltr. to Meta's Counsel (Mar. 7, 2022).

1    long insistence on an unreasonable number of custodians substantially impeded Meta's ability to

2    produce responsive documents.

3         Plaintiffs' unlimited appetite for unreasonable and sweeping discovery likewise interfered

4    with the parties' search term negotiations.  Meta provided an initial search-term proposal in May

5    2022 after Plaintiffs failed to raise the subject for months.[15]  Users responded by proposing 223

6    additional strings, which generated 14 million[16] document hits across just a subset of the custodians

7    then under discussion.[17]  Users' subsequent "narrow[ing]" proposals involved 201, and then 189,

8    search strings, which continued to generate over 10 million hits.  *See* Dkt. 316.[18]  Users' various

9    criticisms of the timing of Meta's hit report responses is, again, due almost entirely to the

10   unreasonable amount of information Users' proposals have required Meta to query and the technical

11   limitations of doing so on demand for the Users.  Users continued to negotiate in an entirely

12   unreasonable manner up until Meta filed its letter brief on the subject, Dkt. 316, which unfortunately

13   is what it took to get Users to be reasonable—after Meta filed its letter brief, Users withdrew search

14   terms that were generating *5.6 million* documents for review.  Dkt. 329.  Meta should not have to

15   involve the Court to force Plaintiffs to be reasonable.  And long-standing uncertainty over a final,

16   agreed-upon set of search terms due to Users' unreasonable proposals has delayed the export of

17   documents to Meta's vendor for review (which Plaintiffs have known for months), and therefore

18   interfered with Meta's ability to review and produce custodial documents.  Despite these challenges,

19   Meta has made extraordinary efforts to produce responsive documents.  In January 2022, Meta

20   began producing additional documents.  Even though the parties continue to negotiate search

21   strings, Meta has already begun producing custodial documents.

22                              *        *        *

23

24

25   [15] M. Jennings Ltr. to Plaintiffs' Counsel (May 13, 2022).

26   [16] Meta's hit counts are underinclusive insofar as they do not include families, ESI sources other
     than emails and messages.  The hit counts also do not reflect global de-duping across the search
27   strings.  *See* Dkt. 316 at 1 n.1.
     [17] L. Matson Ltr. to Meta's Counsel (May 19, 2022).

28   [18] C. Hausman Email to M. Jennings (June 7, 2022); C. Hausman Email to M. Jennings (June 24,
     2022).

Though Plaintiffs have been in possession of a remarkably large investigative record for over a year, they can only muster discovery theatrics to draw the Court's attention away from the fatal flaws in their claims. Indeed, despite having represented to the Court that the FTC and House Judiciary Committee productions—which Plaintiffs then claimed related to the "conduct at issue in this case"—would "be helpful in focusing" their "subsequent discovery efforts," Dkt. 78 at 15, 18, Plaintiffs have done nothing to focus their discovery, and now contend that this production has little to do with their claims. That is, of course, implausible—given that nearly all of the new allegations in Advertisers' amended complaint are plucked from documents in this production—and, even if true, not a problem of Meta's making—given that Users in this case are pursuing novel theories of conduct and competitive effects that the FTC wisely chose not to litigate.

In reality, what is really going on here is that Plaintiffs have not pursued their case efficiently or with the vigor they promised the Court in the interim class counsel appointment process. Perhaps that is because they have realized their claims have no merit, perhaps they have let other priorities get in the way. Maybe it is both. But if Plaintiffs believe they need more time to prosecute the case, the solution is not to conjure up disputes where none exist and to pretend that Meta has not been a collaborative partner. Instead, Plaintiffs should honestly communicate whatever internal issues they have had and explain why they believe more time will help.

The Court should see through Plaintiffs' conduct and should certainly not reward it with the discovery orders Plaintiffs request. In any event, Plaintiffs' proposals—which they raised *for the first time* in the draft of this statement, two days before its filing—are not warranted. Meta has already "substantially beg[un]" custodial productions, so an order compelling it to do so is unnecessary. And, considered in light of their recent search term proposals, Plaintiffs' substantial completion September 30, 2022 proposal would call for Meta to review well in excess of, at the very least, *3.6 million documents and produce responsive materials within eight weeks of the date of this joint statement*. That is not possible. Plaintiffs appear to know this, given that Advertisers—whose burden of production is several orders of magnitude less than Meta's—have represented that they cannot substantially complete their productions until November 18, 2022. While Meta is happy to discuss the fact discovery and class certification schedule with the Court, Plaintiffs should turn

their focus away from manufacturing disputes and towards the efficient litigation of their claims on the schedule the Court deems appropriate.

### 2.  Depositions [Meta Section]

On May 18, 2022, Users served a Notice of 30(b)(6) Deposition, containing two so-called "topics" that are comprised of at least 16 subtopics.  On June 17, 2022, Advertisers served their first Notice of 30(b)(6) Deposition, containing four so-called "topics" (two of which contained language identical to the Users' notice) that are comprised of at least 26 subtopics.  Both notices exceeded the 10-topics limit allowed by this Court.  Dkt. 174.  After Meta served timely responses and objections, the Parties met and conferred on July 8, July 14, and July 22, 2022 regarding the appropriate types of data and information that Plaintiffs seek to cover in their 30(b)(6) depositions.  That process is ongoing, in part because the notices exceed this Court's limit on topics, are overbroad, seek information without any apparent relevance to the claims at issue, and are not defined with sufficient particularity to allow a witness (or even multiple witnesses) to prepare to accurately convey information under oath.  Further evidencing Plaintiffs' lack of coordination, although Topics 1 and 2 of both notices are identical, Users have insisted that Topics 1 and 2 cover 31 potential areas of inquiry and Advertisers have insisted that they cover *more than 100 potential areas of inquiry*.

### ii.    Discovery Propounded by Meta [Meta Section]

### 1.   Requests for Production to Plaintiffs [Meta Section]

Meta has served two sets of document requests on Users and Advertisers (a total of 81 requests) on Plaintiffs.  Meta has informed Plaintiffs of several deficiencies in their productions to date, including, for example, Users' failure to produce any documents showing that the named Users have ever received monetary compensation in return for their personal data—a core premise of their case.  Users have produced only one document purportedly in response to Meta's requests on this subject, which does not actually show any monetary compensation received.  Since Users say their case is about the monetary value of data, perhaps their case is actually about nothing at all.  Users have thus far refused to respond to Meta's question as to whether they will provide a written certification stating that they have not produced documents responsive to these (or any other requests), stating only that they will provide the certification required by paragraph 2 of this Court's

Standing Order for Discovery in Civil Cases. Users also have refused to produce in response to duly served document requests correspondence with non-parties about subpoenas served in the case "unless and until" the Court resolves Users' request to attend Meta's meet-and-confers with non-parties. And while Users (incorrectly) complain above that Meta's document requests seek documents concerning additional "online services," and "perhaps non-online services too," Users have raised that issue with only one of Meta's document requests and Meta has offered in the first instance to accept discovery limited to the online services that are the subject of Users' own subpoenas to non-parties—services that Users themselves obviously believe to be relevant.

As for Advertisers, Meta pointed out that two of the five Advertiser Plaintiffs have only produced 19 documents **total** between the two of them. Others withdrew from the case entirely and have refused to respond to discovery or even, apparently, to return Advertiser Plaintiffs' phone calls. Advertisers also continue to refuse to produce documents regarding their use of Facebook and other online services, apparently taking the position that any discovery that might be relevant to Users' claims is automatically irrelevant to Advertisers' claims. This is, of course, non-sense, given that Advertisers' claims rely on nearly identical theories about the online ecosystem and the collection and use of user data on which Users' claims rely. Rather than "acknowledge" than such discovery concerns issues "unique" to the Users' case, Meta has explained to Advertisers how it seeks documents that are both directly relevant to Advertisers' own allegations and to Advertisers' roles as members of the proposed User class. Notwithstanding their protestations about Meta's purported discovery delays, Advertisers have announced that they do not anticipate completing substantial production in response to Meta's requests until **November 18** (stating only that they would "investigate" whether they could meet the September 30 deadline that they seek to impose on Meta for an exponentially larger production). Moreover, Advertisers will not give Meta a straight answer as to whether and if so to what extent they have used search terms to collect or review documents. Advertisers informed Meta for the first time on August 2, 2022 that, in collecting documents from the named Advertiser Plaintiffs' files, they had applied search terms to determine which documents were collected and produced. When Meta sent an email confirming what was stated on the July 28, 2022 call, Advertisers did not dispute Meta's understanding that Advertisers had used search terms.

1    However, after Meta asked Advertisers to disclose the search terms used, Advertisers reversed

2    course, contending that they never used or said they used search terms.  To the extent Advertisers

3    have used search terms, they have not disclosed such search terms to Meta, as they are required to

4    do.  Dkt. 304 § 5.c.  Advertisers' conduct in responding to Meta's discovery requests is unacceptable

5    and prejudicial to Meta, particularly given that Meta served its requests on August 21, 2021—15

6    months before Advertisers' proposed substantial completion date—and Advertisers' productions are

7    exponentially less burdensome than the productions Plaintiffs are demanding Meta make by

8    September 30, 2022.  Meta is evaluating appropriate relief for this breach of the Court's order.

9        Users, like Advertisers, also apparently applied search terms before producing documents,

10   and, like Advertisers, have not yet disclosed them to Meta as they required to do long ago, nor have

11   they committed to a date on which they will provide those search terms to Meta.  Dkt. 304 § 5.c.

12   Again, Meta is evaluating the appropriate relief to seek for the breach of the Court's order.   In

13   addition, Meta is concerned that Users have not fully complied with their commitment to produce

14   documents regarding their use of various online services required by the parties' joint stipulation at

15   Dkt. 279.  Although Users have produced certain responsive documents, they do not appear to have

16   produced any documents showing any privacy settings for certain online services, and an entire

17   category of privacy settings associated with all applicable online services.  The parties have since

18   exchanged correspondence regarding the subject.  Users have also recently begun using the parties'

19   online services stipulation as a shield against any further discovery into the unrelated topic of Users'

20   transactions with third parties that pay users for their use of the service, perhaps in recognition of

21   the fact that the absence of any responsive materials is devastating to their case.  Meta does not share

22   Plaintiffs' desire to run to the Court whenever something happens they do not like, and would prefer

23   to resolve disputes without burdening the Court.

24        **2.   Interrogatories & Requests for Admission to Plaintiffs [Meta**

25            **Section]**

26        Meta has raised apparent deficiencies in Users' June 15, 2022 responses to certain of Meta's

27   interrogatories concerning Users' use of online services, to which Users committed to provide a

28   response at Dkt. 279.  The parties exchanged correspondence on these deficiencies on July 1, July

15, and August 1, 2022.  Meta is still evaluating whether there are any other deficiencies in Users'

and Advertisers' objections and responses to Meta's first sets of interrogatories, and will promptly

inform Plaintiffs if there are.  On June 25, 2022, Meta served its Second Set of Interrogatories to

Advertisers.  On July 25, Advertisers served objections and responses.  Advertisers refused to

respond at all to Meta's Interrogatory seeking "the basis of plaintiffs' refusal to admit each of the

[two] requests for admission" referenced the Interrogatory, which Advertisers are obligated to

provide.  *E.g.*, *Kim Laube & Co. v. Wahl Clipper Corp.*, 2012 WL 12877945, at *5 (C.D. Cal. Aug.

28, 2012).  Meta intends to seek relief for this non-response and other deficiencies in Advertisers'

responses if Advertisers do not promptly comply with their discovery obligations.  On July 15, 2022,

Meta served its second set of interrogatories to Users.  Users' objections and responses are due by

August 15.

On June 24, 2022, Meta served its second set of Requests for Admission on Advertisers.  On

July 13, Advertisers served objections and responses.  On July 15, 2022, Meta served its first set of

Requests for Admission on Users.  Users' objections and responses are due by August 15.

### iii.  Discovery Propounded by Meta on Non-Parties [Meta Section]

Meta has served 38 subpoenas for documents on non-parties.  Meta continues to negotiate

with nearly all of these non-parties to align the scope of the subpoenas with the documents that each

non-party claims to possess, subject to privilege and the non-party's retention policies.  Most of

these non-parties have requested extensions to their deadline to produce documents.  Certain non-

parties, because they are competitors of Meta, refused to produce documents because they did not

view the Protective Order (Dkt. No. 111) as sufficiently protective of information that would be

provided to Meta.  To facilitate production, the Parties modified the protective order.  Dkt. Nos.

314, 315.  Nine of Meta's non-party competitors are represented by the same law firm and have

uniformly either refused to produce any discovery and/or requested costs and fees as a precondition

to complying with Meta's subpoenas.  With respect to one such company on which Meta served a

subpoena, Snap Inc., Meta was forced to file a motion to compel.  Meta is continuing to attempt to

resolve these disputes without burdening the Court but may be left with no choice but to pursue

motion practice with certain other non-parties.

### 4. **Related Cases**

At this time, the parties have no updates to bring to the Court's attention regarding any cases that are "related" to the consolidated *Klein* action under N.D. Cal. Civil Local Rule 3-12.

### 5. **Lawsuits Filed by FTC and State Attorneys General**

The action captioned *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.) is currently in fact discovery, which is scheduled to close on May 22, 2023.  Dkt. No. 103.  In *State of New York, et al v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.), oral argument on the States' appeal of the district court's dismissal order is scheduled to take place on September 19, 2022.  Dkt. 1950973.

### 6. **Updates Regarding ADR**

No settlement discussions have taken place.  The parties agreed, at the time they filed the March 31, 2021 Case Management Statement, that ADR would not be constructive at that time.  The parties continue to believe that ADR would not be productive but would of course be willing to engage in ADR with a private mediator as these actions progress.

1   DATED:  August 4, 2022                    Respectfully submitted,

2

3   By:   */s/ Yavar Bathaee*                 By:   */s/ Stephen A. Swedlow*
    **BATHAEE DUNNE LLP**                      **QUINN EMANUEL URQUHART & SULLIVAN,
    Yavar Bathaee (Bar No. 282388)            LLP**

4      yavar@bathaeedunne.com                  Stephen A. Swedlow (*pro hac vice*)
    Andrew C. Wolinsky (*pro hac vice*)           stephenswedlow@quinnemanuel.com

5      awolinsky@bathaeedunne.com              Michelle Schmit (*pro hac vice*)
    445 Park Avenue, 9th Floor                    michelleschmit@quinnemanuel.com

6   New York, NY 10022                         191 N. Wacker Drive, Suite 2700
    (332) 322-8835                             Chicago, IL 60606-1881

7                                              (312) 705-7400

    Brian J. Dunne (Bar No. 275689)

8      bdunne@bathaeedunne.com                 Kevin Y. Teruya (Bar No. 235916)
    Edward M. Grauman (*pro hac vice*)            kevinteruya@quinnemanuel.com

9      egrauman@bathaeednne.com                Adam B. Wolfson (Bar No. 262125)
    901 South MoPac Expressway                    adamwolfson@quinnemanuel.com

10  Plaza I, Suite 300                         Brantley I. Pepperman (Bar No. 322057)
    Austin, TX 78746                              brantleypepperman@quinnemanuel.com

11  (213) 462-2772                             865 South Figueroa Street, 10th Floor
                                               Los Angeles, CA 90017-2543

12                                             (213) 443-3000

    By:   */s/ Kristen M. Anderson*

13  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**       Manisha M. Sheth (*pro hac vice*)
    Kristen M. Anderson (Bar No. 246108)          manishasheth@quinnemanuel.com

14     kanderson@scott-scott.com               51 Madison Avenue, 22nd Floor
    Patrick J. Rodriguez (admitted *pro hac*   New York, New York 10010

15  *vice*)                                    (212) 849-7000
       prodriguez@scott-scott.com

16  230 Park Avenue, 17th Floor
    New York, NY 10169

17  (212) 223-6444                             By:   */s/ Shana E. Scarlett*
                                               **HAGENS BERMAN SOBOL SHAPIRO LLP**

18  Christopher M. Burke (Bar No. 214799)      Shana E. Scarlett (Bar No. 217895)
       cburke@scott-scott.com                     shanas@hbsslaw.com

19  David H. Goldberger (Bar No. 225869)       715 Hearst Avenue, Suite 202
       dgoldberger@scott-scott.com             Berkeley, CA 94710

20  Daniel J. Brockwell (Bar No. 335983)       (510) 725-3000
       dbrockwell@scott-scott.com

21  Hal Cunningham (Bar No. 243048)
       hcunningham@scott-scott.com             Steve W. Berman (*pro hac vice*)

22  Yifan (Kate) Lv (Bar No. 302704)              steve@hbsslaw.com
       klv@scott-scott.com                     1301 Second Avenue, Suite 2000

23  600 W. Broadway, Suite 3300                Seattle, WA 98101
    San Diego, CA 92101                        (206) 623-7292

24  (619) 233-4565

25  Patrick J. McGahan (*pro hac vice*)
       pmcgahan@scott-scott.com

26  Michael P. Srodoski (*pro hac vice*)
       msrodoski@scott-scott.com

27  156 South Main Street, P.O. Box 192
    Colchester, CT 06415

28  (860) 537-5537

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Henry Kelston (*pro hac vice*)
  hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
(310) 474-9111

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
(215) 592-1500

*Interim Counsel for the Advertiser Class*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
Kyle J. Pozan (*pro hac vice*)
  kjpozan@locklaw.com
Laura M. Matson (*pro hac vice*)
  lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

By:  */s/Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
Sonal N. Mehta (SBN: 222086)
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Email: Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: David.Gringer@wilmerhale.com

Ari Holtzblatt (*pro hac vice*)
Molly M. Jennings (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Ari.Holtzblatt@wilmerhale.com
Email: Molly.Jennings@wilmerhale.com

*Attorneys for Defendant Meta Platforms, Inc.*

## **ATTESTATION OF STEPHEN A. SWEDLOW**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: August 4, 2022              By */s/Stephen A. Swedlow*

Stephen A. Swedlow

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of August 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By */s/ Stephen A. Swedlow*

Stephen A. Swedlow