WILMERHALE

**David Gringer**

+1 212 230 8864 (t)
+1 212 230 8888 (f)
david.gringer@wilmerhale.com

September 2, 2022

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:     *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

    Meta moves to compel the production of certain documents from non-party Alpha Exploration Co. (*d/b/a* Clubhouse). Clubhouse is an online application where users orally communicate with friends and those with shared interests. It is important to this case: its recent entry followed by its amassing of tens of millions of users contradicts Plaintiffs' allegations that Meta's conduct created "[h]igh barriers to entry" that "make it unlikely, at any time in the foreseeable future, for a competitor to enter or take away" from Meta's purported market share. *Klein* Dkt. 87 ¶ 263. However, instead of working with Meta to produce documents, Clubhouse has engaged in a letter-writing campaign of obfuscation and threats, and it is only after repeated attempts to confer and resolve the issue that Meta must send the extant letter brief.

    Meta served its subpoena on Clubhouse six months ago.[1] From the start, Meta told Clubhouse that it would work with the company to reduce any burden. Since then, Meta has offered to meet and confer eight times, has four times extended the deadline by which Clubhouse was required to respond to Meta's subpoenas, and suggested in-person meetings with counsel for Clubhouse (both the undersigned and Clubhouse's counsel are based in NYC). Meta has provided many examples of the types of documents it would consider responsive to its requests. In an attempt to work with Clubhouse, Meta has substantially narrowed its subpoena, categorizing a subset of its requests into four "buckets" and telling Clubhouse that conducting a reasonably diligent search for documents and producing any responsive documents it found with regard to each bucket would satisfy all requests falling within that bucket.

    But at every turn, Clubhouse refused to engage with Meta, claiming undue burden—notwithstanding retaining a white-shoe law firm and having hundreds of millions in funding and a $4 billion valuation. Clubhouse repeatedly demanded that Meta withdraw the subpoenas in full, insisted that Meta preemptively assume any costs incurred by Clubhouse, and threatened sanctions if Meta did not comply with its demands. After months of delay, Clubhouse finally agreed to search for and produce documents responsive to Meta's four categories. Three weeks later, Clubhouse reported it had identified only 13 documents, but refused to produce them all and demanded Meta pay Clubhouse tens of thousands of dollars in fees before it produced anything (though Clubhouse has provided no evidence regarding the significance of the fees or how they were incurred).

    The Court should order Clubhouse to (1) produce all documents (including the two reports on competition) it has already offered; and (2) require Clubhouse to describe the searches it has conducted and conduct additional targeted searches (including in custodial files) for documents

---

[1] Meta served and is moving to compel and transfer a parallel subpoena to Clubhouse in *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.). *See Meta Platforms, Inc. v. Alpha Exploration Co, Inc.*, No. [INSERT] (N.D. Cal.), Dkt. Nos. [TK], [TK].

Hon. Judge James Donato
September 2, 2022
Page 2

**WILMERHALE**

responsive to Meta's four categories. The court should deny any request for costs.

## I. Discovery from Clubhouse is Warranted

The non-party discovery that Meta seeks from Clubhouse is warranted. *First*, permissible discovery in antitrust cases is uniquely broad because of the nature of antitrust claims. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 586 (N.D. Cal. 2009); *Markson v. CRST Int'l, Inc.*, 2021 WL 4027499, at *5 (C.D. Cal. May 14, 2021). *Second*, the discovery Meta seeks is relevant because Clubhouse's recent entry addresses Plaintiffs' theory that there are insurmountable barriers to entry. *Third*, the stakes of this case are significant.

Clubhouse's "[non]-party status does not confer [it] a right to obfuscation or obstinacy." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *1 (N.D. Cal. May 9, 2013). As a non-party, Clubhouse is expected to cooperate in discovery and produce responsive documents. *Id.*; *see also In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *1-3 (N.D. Cal. Feb. 24, 2021). Clubhouse is also obligated to describe the custodians searched and the searches it runs (if any). *See Apple, Inc.*, 2013 WL 1942163, at *3 (requiring disclosure of custodians and search terms to "uncover[] sufficiency of [non-party's] production"); *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (requiring party to "state with sufficient specificity" the reasonable inquiry conducted).

## II. Meta's Subpoena Seeks Critical Relevant Information From Clubhouse

The documents Meta seeks are relevant. Clubhouse agreed to search for and produce documents responsive to the four categories in Meta's proposal. The Court should enforce that agreement because Clubhouse's entry into the alleged markets is relevant to Meta's case.

*Category 1: Competitive Landscape* (RFP Nos. 1, 14, 22 & 25)

The first category seeks documents regarding Clubhouse's views on competition and comparing Clubhouse's products that compete with Meta, which are relevant to this antitrust case. After months, Clubhouse produced two reports 

But given its recent entry and its self-proclaimed "massive store of documents," it is inconceivable that only two responsive documents exist. Regardless, it is impossible for Meta to assess the sufficiency of Clubhouse's efforts because Clubhouse also refuses to describe its search or conduct custodial searches. This is improper. *See Apple, Inc.*, 2013 WL 1942163, at *3 (requiring cooperation over custodians and search terms to "uncover[] sufficiency of [non-party's] production"). Nor is this category of requests burdensome—it seeks ordinary business documents describing the competitive landscape—and it is plainly relevant. Meta requests the Court compel

Hon. Judge James Donato
September 2, 2022
Page 3

**WilmerHale**

Clubhouse to produce the documents it has found and to conduct targeted custodial searches of employees involved in competitive decision-making for documents responsive to this category.

*Category 2: Policies or Practices Surrounding Paying for User Data* (RFP No. 17)

Meta's second category seeks to understand if Clubhouse has considered paying users for their data (and the rationale for doing this). This is relevant to Users' far-fetched theory that applications would pay users to use them but for Meta's conduct. Clubhouse has stated it searched for documents and has never considered paying users for data. Meta requests the Court compel Clubhouse to describe its search and, if no documents exist, provide a statement to that effect.

*Category 3: Privacy/Data Collection Policies and Practices* (RFP Nos. 7, 10, 19, 32)

Meta sought Clubhouse's privacy policies (Clubhouse produced nine, comprising nine of the 13 documents produced), and documents regarding its strategic approach to implementing those policies. The information Meta seeks addresses Users' other far-fetched theory of competitive injury: that "users chose Facebook over other competing networks due to Facebook's stated commitment to its users' privacy," *Klein*, Dkt. 87 ¶ 3, and that Meta allegedly maintained its monopoly based on "deceptive privacy practices," *id.* ¶ 157. Clubhouse's views on whether its privacy practices create a competitive advantage relate to Meta's defense, especially given Clubhouse's growth despite reports that it may not have been adequately protecting its users' data.[2]

*Category 4: Time Spent/User Engagement Data* (RFP Nos. 24, 38)

Meta sought any user engagement metrics that Clubhouse tracks because Users may seek to calculate market share using those metrics. Clubhouse said it tracks Daily and Monthly Active User counts and produced this data. Meta asked if Clubhouse tracked any other metrics (e.g., time spent using the app). Clubhouse refused to respond. User engagement data is relevant because Users claim that Meta's alleged monopoly sucked up, and allowed it to unfairly profit off of, users' time and attention. *See, e.g.*, *Klein* Dkt. 87 ¶ 95. If Clubhouse does not track other engagement metrics, it must so state; otherwise, this Court should order Clubhouse to produce responsive data.

### III.  Clubhouse Is Not Entitled to Fees

Clubhouse's demand that it be compensated before producing documents is wrong. Cost-shifting is appropriate only *after* the party has complied with the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(ii), advisory committee notes to 1991 amendments (preference "to leave uncertain costs to be determined after the materials have been produced"). Clubhouse has not yet complied. Further, it is Clubhouse's burden to demonstrate that "all of their requested attorney's fees are reasonable," and that those "significant expenses result[ed] from compliance." *See United States v. McGraw-Hill Cos.*, Inc., 302 F.R.D. 532, 536-37 (C.D. Cal. 2014) ("Unnecessary … services do not 'result from compliance.'"). Clubhouse's demand to be compensated does not appear to have been incurred in complying with the subpoena given its minimal productions, and if they are incurred from compliance its resources render those expenses insignificant.[3] And regardless, Clubhouse's demands to date are premature. The Court should not shift Clubhouse's costs to Meta.

---

[2] Cable et al., *Clubhouse in China: Is the Data Safe?*, STANFORD INTERNET OBSERVATORY (Feb. 12, 2021), https://cyber.fsi.stanford.edu/io/news/clubhouse-china.

[3] Mike Butcher, *Clubhouse Closes an Undisclosed $4B Valuation Series C Round, As Tech Giants' Clones Circle*, TECHCRUNCH (Apr. 19, 2021), https://techcrunch.com/2021/04/19/clubhouse.

Hon. Judge James Donato
September 2, 2022
Page 4

WILMERHALE

Respectfully submitted,

By: */s/ David Z. Gringer*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*

**FILED UNDER SEAL**

## ATTESTATION

I, Sonal N. Mehta, attest that all other signatures listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.

*/s/ Sonal N. Mehta*
Sonal N. Mehta

**FILED UNDER SEAL**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of September, 2022, I transmitted the foregoing document to the Clerk's Office using the CM/ECF System, and to counsel for Alpha Exploration Co., Inc., d/b/a Clubhouse via Federal Express Overnight Mail.

*/s/ Sonal N. Mehta*
Sonal N. Mehta