**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen A. Swedlow (admitted *pro hac vice*)
  stephenswedlow@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
  alawrence@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 3:20-cv-08570-JD |
| Plaintiffs, | **NINTH JOINT CASE MANAGEMENT STATEMENT** |
| vs. | The Hon. James Donato |
| META PLATFORMS, INC., | Hearing Date:  October 20, 2022 at 10:00 a.m. |
| Defendant. | |
| This Document Relates To: All Actions | |

**NINTH JOINT CASE MANAGEMENT STATEMENT**

In advance of the October 20, 2022 Status Conference, counsel for Consumer Plaintiffs ("Consumers" or "Users"), Advertiser Plaintiffs ("Advertisers"), and defendant Meta Platforms, Inc. ("Meta" or "Facebook") respectfully submit this Ninth Joint Case Management Statement.  This statement summarizes for the Court open items that the parties either jointly or individually contend are ripe for the Court's consideration[1] and provides updates to the Court as to material developments on pertinent matters since the parties' prior Case Management Statement, dated August 4, 2022.

I.      **Pending Motions**

A.      **Stipulation Regarding Substantial Completion Date and Case Schedule**

Pursuant to the Court's order (Dkt. 334 at 2), the parties have met-and-conferred regarding a proposed date for substantial completion of document production.  Meta is reviewing more than 2.6 million documents, Consumers and Advertisers are continuing to review and produce additional documents in response to Meta's document requests, and many non-parties' document productions have not yet begun or are still ongoing.  Based on the extensive volume of documents that the parties and non-parties are continuing to collect, review, and produce, Consumers, Advertisers, and Meta believe that they can achieve substantial completion of documents in response to already-served document requests by December 19, 2022.

Because the current case schedule (Dkt. 289) calls for fact discovery to close on January 13, 2023, and extensive document discovery is still ongoing, the parties jointly and respectfully seek— after substantial consideration and discussion—an extension of the current case schedule by approximately six months.  Given the document discovery that is still underway, the parties submit that a modification to the case schedule will best allow the parties to complete document production, effectively coordinate, schedule, and complete depositions of parties and non-parties, and permit the parties' respective experts to prepare and complete their analyses in advance of the Court's class certification process.  To ensure that the parties meet their proposed, modified schedule, subject to

---

[1] Per the Court's guidance at the August 11, 2022 hearing, the parties have narrowed this statement to the issues that the parties either jointly or individually contend are ripe for the Court's consideration. Tr. 46:6-10.

subsequent court order, the parties will make good-faith efforts to consult in advance to schedule depositions at mutually convenient times and places and provide at least 14 calendar days between the request and the noticed deposition date.

The parties' agreement and proposed, modified case schedule are set forth in their Joint Stipulation Regarding Substantial Completion Date for Document Production and Modification of Case Schedule.  Dkt. No. 363.

**B.     Meta's Motion to Dismiss the First Amended Advertiser Complaint**

The Court heard argument on Meta's motion to dismiss almost all of the Advertiser Plaintiffs' case, Dkt. No. 262, on August 11, 2022.  Dkt. No. 334.

**C.     Advertiser Plaintiffs' Motion to Quash Deposition Subpoena**

Advertiser Plaintiffs moved to quash Meta's deposition subpoena to former named Advertiser plaintiff Joshua Jeon.  Dkt. No. 348.  Meta responded according to the Court's order, Dkt. No. 356,  Dkt. No. 359.

**II.     Ongoing Disputes**

**A.     Attendance at Federal Trade Commission's Facebook Depositions**

**1.     Plaintiffs' Statement**

The FTC is also pursuing antitrust claims against Facebook before Judge Boasberg in the District of Columbia.  Discovery and depositions in the FTC case are underway.  Plaintiffs seek to attend the FTC's depositions of Facebook and its current and former employees, and **the FTC does not oppose Plaintiffs' request**.  Plaintiffs have also made a commonsense proposal where further coordination of depositions between the FTC and *Klein* cases is practicable: if Plaintiffs have sufficient notice of the FTC's deposition of a Facebook witness, Facebook has substantially completed document production for that witness in *Klein* such that it is even possible for Plaintiffs to depose the witness at that time, and Plaintiffs agree there is an efficiency to be gained, Plaintiffs would coordinate and take their deposition of that witness at that time, to the extent feasible and agreeable between all parties.  Plaintiffs' reasonable proposal achieves the benefits of coordination where it is feasible, but avoids the pitfalls of rigidly requiring all depositions of "overlapping" witnesses and topics to be jointly scheduled across the *Klein* and FTC cases in all circumstances.

Facebook, by contrast, has refused to allow Plaintiffs' counsel to attend the FTC depositions, stating that Facebook "will not allow questioning to proceed in the presence of unauthorized persons."

Allowing Plaintiffs to attend the FTC's Facebook depositions will promote efficiency. For example, Plaintiffs' attendance will allow Plaintiffs to be kept apprised of developments in the FTC case in real time, rather than having to repeatedly seek updates after the fact from the FTC or Facebook (who is represented by multiple law firms across the *Klein* and FTC cases). Plaintiffs' attendance will also improve the deposition process *in this case*. To the extent that the FTC takes a deposition of a Facebook witness or on a topic that is also pertinent to Plaintiffs' claims, Plaintiffs' attendance at the FTC deposition will, for example, allow Plaintiffs to: (1) evaluate the witness and testimony live;[2] (2) make an educated choice regarding whether to seek testimony from that witness or on that topic in *Klein*; and (3) take an informed deposition of that witness or on that topic.

To the extent that Plaintiffs then wish to take a deposition of that witness or on that topic in *Klein*, Plaintiffs would then be better positioned to streamline the deposition. Alternatively, Plaintiffs may decide—based on the FTC deposition—***not*** to take that deposition in *Klein*, which avoids burdening Plaintiffs, Facebook, ***and*** the witness with the time and expense of preparing for and completing a deposition. Either way, there are efficiencies to be gained. While Facebook casts aspersions on these efficiencies by characterizing Plaintiffs' request as "scouting" or "lurking," they are efficiencies, nonetheless, and Facebook's characterizations do not somehow make Plaintiffs' request improper. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .").

Facebook's other objections and pre-conditions are easily addressed and would needlessly hamper, not improve, depositions in both the *Klein* and FTC cases. For example, Facebook has stated Plaintiffs cannot attend the FTC's Facebook depositions because Plaintiffs cannot obtain Facebook's confidential information under the FTC case's protective order. That is nonsensical. Facebook's confidential information will be kept confidential. Plaintiffs' counsel executed the FTC

---

[2] Facebook claims it is "puzzled at why" Plaintiffs seek to "watch a deposition in a different case." There are many benefits to observing a witness live, including the abilities to "see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice[.]" *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995)."

case's Protective Order (and provided executed copies to Facebook's counsel), and the parties are bound by a similar order in *Klein*.  In any case, Facebook can of course allow Plaintiffs to access Facebook's own confidential information—which the FTC protective order confirms.  *See Federal Trade Commission v. Meta Platforms*, *Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C.), Dkt. 134 at 19 ("Nothing in this Order . . . limits a Protected Person's . . . disclosure of its own information").

In response to Plaintiffs' request, Facebook has counter-proposed that where there are "overlapping" depositions of Facebook and its current or former employees, then the FTC, Consumers, and Advertisers must coordinate the date of the deposition, divide up the time, and complete the entire deposition (between the three plaintiff groups) within eight (8) hours. Facebook's proposal of eight hours between three plaintiff groups (the FTC, Consumers, and Advertisers) is unnecessarily limiting.[3]  While Facebook indicates an openness to negotiating additional time, even that proposal still would not provide Plaintiffs the requested access. Facebook's proposal would only allow Plaintiffs to attend FTC depositions of "overlapping" Facebook witnesses, *i.e.*, depositions of Facebook and its current and former employees that the FTC, Consumers, and Advertisers, all ***pre-determine*** that they wish to take.  However, one of the points of Plaintiffs' request to attend FTC depositions is to determine in the first instance—and informed by the witness's testimony—whether Plaintiffs wish to take a deposition of that witness or on that topic in *Klein*.  Facebook's pre-condition would necessarily preclude Plaintiffs from making this decision based on the witness's testimony in the FTC action, because Plaintiffs would have to take the deposition of that witness or on that topic at the same time as the FTC.

Moreover, Facebook's proposal provides Plaintiffs no access to the FTC's "non-overlapping" Facebook depositions.  While these depositions may be "non-overlapping" in the sense that Plaintiffs may, ultimately, choose not to take them in *Klein*, Facebook's proposal would again deprive Plaintiffs of information critical to making that determination in the first place: the witness's deposition testimony in the FTC case.  And even if Plaintiffs were hypothetically inclined, in

---

[3] Plaintiffs at present seek only to attend the FTC's depositions of Facebook and its current and former employees.  In the event that the FTC and the *Klein* Plaintiffs wish to depose an overlapping witness and if it is feasible and economical for them to do so at the same time, the parties can then, at that time, discuss time-limitations for that specific witness.  No blanket limits are required now.

advance of an FTC deposition, to not take a deposition of that witness or on that topic in *Klein*, that does not mean the FTC's deposition is not pertinent such that Plaintiffs should be denied access. Simply allowing Plaintiffs to observe the FTC deposition imposes zero additional burden or cost.

Facebook's pre-conditions are arbitrary and unnecessary. Facebook, for example, has proposed that if there an overlapping witness or topic between the FTC and *Klein* cases, then the FTC, Consumers, and Advertisers **must** coordinate the deposition between the cases so that a single deposition occurs, and at the same time. While Facebook claims the purpose of its "proposal is to allow Plaintiffs to coordinate scheduling with the FTC so that they have sufficient notice and preparation time for the depositions," Facebook's proposal would only create more difficulties, not efficiencies. Facebook's document productions in the FTC and *Klein* cases—including for any one document custodian—are not proceeding at the same pace (and even if they were at present, there is no guarantee that they will in the future). In these circumstances, Facebook's rigidly requiring across the FTC and *Klein* cases a single deposition of a witness could necessitate one plaintiff group taking a deposition prematurely (where Facebook has not substantially completed document production for that witness in that plaintiff group's case), and/or unduly delay another plaintiff group's deposition (where Facebook has already substantially completed document production for that witness in the other plaintiff group's case). This could have a ripple effect, particularly where one plaintiff group seeks to take the deposition of a specific witness before taking the depositions of other related witnesses (such as deposing direct reports before a supervisor), but cannot, because the other plaintiff groups also wish to depose that witness but Facebook has not yet substantially completed document production for that witness in the other cases.

While Facebook now claims it has always sought coordination between the *Klein* and FTC cases, the opposite is true. When Plaintiffs sought the documents that Facebook produced to the FTC during its pre-suit investigation, Facebook objected. When Plaintiffs have sought discovery from the FTC case pending before Judge Boasberg, Facebook refused. Facebook has consistently deprived Plaintiffs of real-time information in the FTC case, much less the information that would be necessary to mandate cross-scheduling of all depositions. To be sure, Plaintiffs have offered to coordinate depositions where feasible (*see supra*). Contrary to Facebook's assertions, that would

1  also include communicating with the FTC and providing advance notice of a deposition date.  But

2  Facebook's *requiring* rigid cross-scheduling, in all instances, is simply not workable.

3      Facebook's refusal to allow Plaintiffs to attend the FTC's Facebook depositions has already

4  caused Plaintiffs to miss the FTC's Rule 30(b)(6) deposition of Facebook regarding user surveys on

5  August 25, 2022.  The FTC's next Facebook deposition is scheduled for **tomorrow**, October 14.

6  Plaintiffs' attendance request comes at **no cost** to either the FTC (who does not oppose Plaintiffs'

7  request), or to Facebook.  To promote efficiency during discovery and improve the depositions in

8  *Klein*, Plaintiffs respectfully request that the Court order Facebook to allow Plaintiffs to remotely

9  attend the FTC's depositions of Facebook and its current and former employees going forward.

10              **2.      Meta's Statement**

11      Meta supports common sense coordination between this case and the FTC case.

12  Unfortunately, Plaintiffs wish to use the FTC case as a scouting mission for good deposition targets

13  with no promise of any efficiency or coordination.  That is unhelpful and their proposal should be

14  denied, either with Plaintiffs building their own case or with meaningful coordination between the

15  two cases.

16      Meta has proposed to Plaintiffs that, for depositions of Meta employees or Meta itself that

17  overlap between this case and the FTC case, Plaintiffs and the FTC agree to coordinate the date of

18  the deposition and divide the time, with the time Plaintiffs are on the record counting against the

19  time budget set forth in the scheduling order for this case.  For such coordinated depositions, Meta

20  is willing to extend the time allotted for the deposition to eight hours (and Plaintiffs can request

21  additional time if needed).  By requiring Plaintiffs to coordinate with the FTC in advance, Meta's

22  proposal ensures that the same witness will not be separately deposed by both the FTC and Plaintiffs

23  on the same subjects (e.g., overlapping alleged relevant markets and questions of competitive

24  conditions) and thereby avoids duplicative discovery.  And it allows Plaintiffs to participate in the

25  relevant depositions but not lurk as observers.  Plaintiffs have objected to this proposal on the ground

26  that it "does not provide for sufficient notice and preparation time," but that objection is nonsensical.

27  The purpose of the proposal is to allow Plaintiffs to coordinate scheduling with the FTC so that they

28  have sufficient notice and preparation time for the depositions.

Meta opposes Plaintiffs' proposal because it involves no real coordination and would not promote efficiency. Plaintiffs' proposal that they "observe" the FTC's depositions before asking to depose the same witnesses does not promote efficiency and Meta is frankly puzzled at why Plaintiffs believe it is efficient to *watch* a deposition in a different case. Indeed, the focus of Plaintiffs' proposal is not avoiding duplicative discovery but freeriding off of the depositions conducted in the FTC case. Their statement is quite transparent about that, objecting that Meta's proposal would "only" allow them to attend depositions of overlapping witnesses, when what they really want is to watch the FTC's depositions "to determine in the first instance" whether they even want to depose that witness. Their true goals become even clearer when one considers their supposed offer to "coordinate" depositions. Notably, they have not offered to communicate with the FTC in advance of depositions to determine what date works for both counsel or to agree how to allocate the deposition time between the cases. Instead, Plaintiffs have said that they may depose an overlapping witness at the same time as the FTC "to the extent feasible" when "Plaintiffs [unilaterally] agree there is an efficiency to be gained" and only if Meta has substantially completed document production for that witness in this case (apparently with no advance notice about the deposition date). This proposal amounts to no more than a suggestion that Plaintiffs will consider deposing an overlapping Facebook witness at the same time as the FTC if they want to do so.

Plaintiffs' refusal to offer a realistic plan for coordinating discovery with the FTC case is nothing new. From the outset, Meta has argued that discovery should be formally coordinated across the two cases to promote efficiency. *See* Joint Case Management Statement, Dkt. No. 78 at 24-25 (Mar. 31, 2021); Second Joint Case Management Statement, Dkt. No. 114 at 3, 10 (June 30, 2021); Seventh Joint Case Management Statement, Dkt. No. 227 at 10-11 (Feb. 17, 2022). While Plaintiffs at times have paid lip service to using "best efforts" to enable "some degree" of coordination, Dkt. No. 78 at 22, Dkt. No. 227 at 12, they have consistently rejected or refused to engage with Meta's concrete suggestions to enable it. After failing to engage on coordination for over a year, on August 23, 2022, Plaintiffs unilaterally announced that they planned to remotely attend the FTC's August 25 deposition of Facebook in the FTC case to "listen in on the testimony, not to ask questions." They also declared that they planned to attend the FTC's "future depositions of Facebook and

Facebook's current/former employees" in the FTC case.  As Meta explained, simply "sitting in on a deposition in the FTC case" is not actual coordination.  Meta therefore invited Plaintiffs to offer a plan that would involve "coordinated scheduling and questioning across the cases to avoid duplicative testimony or narrowing the discovery [Plaintiffs] intend to take in this case based on overlapping discovery in the FTC matter."  Nearly two months later, Plaintiffs still have not done so.

## B.    Expert Tutorial Regarding Relevant Market and Monopoly Power

### 1.    Consumers' Statement

During the parties' August 11, 2022 status conference, the Court requested that the parties consider a tutorial on relevant market and/or other issues.  Facebook has proposed a tutorial on issues of "market definition and monopoly power" to occur on July 14, 2023, one week prior to the date that the parties propose for Plaintiffs' class certification expert reports (and when Plaintiffs' experts will be finalizing their reports).  Consumers respectfully submit that these issues are best addressed after class certification expert and merits expert discovery—including both parties' disclosures of reports—and in the context of the Court's existing, specific processes for making class certification and summary decisions.  Consumers believe it would be most informative and efficient for the Court to hear the parties' respective views on these issues during the class certification and merits expert concurrent proceedings already provided for by the Court.  If the Court wishes to hold a tutorial, Consumers are happy to discuss an appropriate date with the Court.

### 2.    Advertisers' Statement

Advertiser Plaintiffs believe an expert tutorial regarding relevant market, monopoly power, and/or other issues would be appropriate for the Advertiser case, and are ready and willing to present one at the time and under the circumstances preferable to the Court.

### 3.    Meta's Statement

Meta proposed that the Joint Stipulation Regarding Substantial Completion Date and Case Schedule include July 14, 2023 as the date for a concurrent expert proceeding regarding issues of market definition and monopoly power, consistent with the Court's guidance at the August 11, 2022 hearing, Aug. 11 Tr. at 25:4-15, that the parties propose a date for a concurrent expert proceeding

that reflects the Court's desire to address market definition issues "sooner rather than later," *id*. at 25:4, by October 19, 2022.  Because the Plaintiffs did not agree to that date and did not offer an alternative, the Joint Stipulation includes no proposed date for that proceeding.  Meta maintains that the Court should enter July 14, 2023 as the date for a concurrent expert proceeding on market definition and monopoly power, with any preliminary dates that the Court deems appropriate.  Both sets of Plaintiffs' candidate "social" markets are gerrymandered so that the only company that meets the proposed definition is Meta.  This is simply not reality.  Meta faces vigorous competition from new entrants like TikTok and established market players like Google, Amazon, and the countless other websites and apps that compete for user time and attention and advertising revenue.  There is no reason for the parties and the Court to invest substantial time and effort in class certification briefing and merits expert reports on competitive effects, when the threshold issues of market definition and monopoly power are gating items to Plaintiffs' claims and stretch commercial realities in obvious ways.

### C.   Users' Response to Interrogatory Nos. 1, 2, 5, 9-14

#### 1.   Meta's Statement

Users refuse to provide any response—beyond a series of rote and baseless objections—to Interrogatory No. 5 of Meta's First Set of Interrogatories and Interrogatory Nos. 9-14 of Meta's Second of Interrogatories, and until receiving Meta's draft of this Case Management Statement refused to supplement their responses to Interrogatory Nos. 1 and 2 of Meta's First Set of Interrogatories.  As a general matter, Interrogatory Nos. 1, 2, 5, 13, and 14 seek information concerning Users' vague market definition and market power allegations, while Interrogatory Nos. 9-12 seek information concerning the purported market effects of Meta's alleged misstatements or omissions.  The parties met and conferred by telephone on September 30, 2022 after exchanging correspondence and several emails regarding these interrogatories.  During that meet and confer, Users informed Meta that they would confirm by October 7 whether they intended to provide substantive and/or supplemental responses to these interrogatories and, if so, by when they intended to make such responses.  However, as of the date of this Case Management Statement, Users have not informed Meta of their intentions with respect to all but two of these interrogatories.

Users have never substantively responded to Interrogatory Nos. 5 and 9-14, seeking the factual basis of Users' allegations concerning Meta's maintenance of monopoly power in any alleged relevant product market during the relevant time period, the features or activities available to Meta product users in the alleged relevant markets, and the anticompetitive effect of Meta's alleged misstatements or omissions on potential competitors and their product offerings, data privacy practices, and application quality. Rather than substantively respond, Users set forth numerous unsupported objections, including that the interrogatories are premature contention interrogatories and seek information that will necessarily be subject to expert discovery, while conveniently ignoring that Plaintiffs have served their own discovery requests seeking similar information from Meta.[4] Users also seek to justify their nonresponses by complaining that fact discovery "has only just begun," which is, of course, untrue.

While disputing Users' characterization of Meta's interrogatories as contention interrogatories, Meta informed Users that—even assuming they are contention interrogatories—the current case posture in which Users filed their Class Action Complaint nearly 18 months ago, the parties have actively engaged in both party and non-party discovery for months, Meta has produced millions of documents to Users, including 12 million pages of documents from the FTC and House investigations, which Users have had the opportunity to review since May 3, 2021, Meta is making rolling productions of custodial documents, and fact discovery is currently set to close in less than three months, demands that Users provide a response. *See, e.g.*, *Garza v. Brinderson Constructors, Inc.*, 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017) (ordering responses to contention interrogatories where case had been pending for well over a year, the parties had engaged in discovery for over six months, and fact discovery closed in just over four months); *Mailhoit v. Home Depot U.S.A., Inc.*, 2013 WL 12122580, at *6 (C.D. Cal. Jan. 24, 2013) (holding that objections to discovery as seeking information subject to expert discovery does not justify "incomplete

---

[4] For example, Advertisers' most recent set of interrogatories to Meta includes several interrogatories that seek the "full basis" of Meta's contentions, including, "[i]f You contend that the "Social Advertising Market," as defined in ¶¶ 765-815 of the Advertiser Complaint, is not a relevant product market, describe in detail the full basis for Your contention (including by identifying all facts, Documents, and witnesses that relate to Your contention)." Meta intends to timely respond to these interrogatories today.

interrogatory responses regarding" the allegations of their complaint).  The fact that Users are unable to provide a narrative response or identify a single document from Meta's production that supports the allegations in their Complaint speaks volumes.  Simply because  "discovery efforts are not yet complete is an insufficient justification for withholding the information [Users] currently ha[ve] from [Meta] and thereby limiting [Meta's] ability to develop evidence in [its] defense before the deadline for completion of fact discovery."  *See Rubalcava v. City of San Jose*, 2022 WL 2668379, at *3 (N.D. Cal. July 11, 2022).

In recognition of the fact that Meta's interrogatories seek the factual basis of Users' allegations, Users informed Meta that they have no obligation to respond to Meta's interrogatories because Users produced the documents cited in their Complaint—a position that Users repeat here.  Users' refusal to provide responses to Interrogatory Nos. 5 and 9-14 on the basis of document productions is wholly improper, particularly where Meta's interrogatories seek the factual basis of the allegations Users set forth in their Complaint.  *See* Fed. R. Civ. P. 33(d); *see also Hash v. Cate*, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) (holding that parties "must produce full, complete answers for each interrogatory [and] may not [simply] refer to other discovery responses or external documents in [their] responses").  Either Users had a factual basis for the allegations of their Complaint, in which case they must state that factual basis, or Users did not, in which case there are much more serious concerns about the initiation and pendency of this action.  Users must substantively respond to Interrogatory Nos. 5 and 9-14.  Users initially refused to provide any response to Interrogatory Nos. 1 and 2, which sought the identity of participants in Users' alleged Social Network Market and alleged Social Media Market, claiming such interrogatories were "premature" in light of ongoing discovery.  Only after Meta moved to compel Users' responses (Dkt. 230), and only after the Court ordered the parties to "to meet-and-confer by April 8, 2022, for four hours regarding the parties' interrogatories dispute," did Users agree to supplement their responses on April 29, 2022 (Dkt. 279).  In the nearly six months since Users served their April 29, 2022 responses, Users had not further supplemented their responses.  To ensure that Meta could focus discovery on any new claimed market participants while the discovery period remained open, Meta requested that Users either supplement their responses to identify any additional claimed

market participants or confirm in writing that they have not identified any.  Users refused until receiving Meta's draft of this statement earlier this week.  Unfortunately, it took raising this dispute to the Court for Users to "confirm that Consumers have not identified additional participants in the Social Network or Social Media Markets since responding to these interrogatories on April 29, 2022."  In light of Users' confirmation, Meta does not seek further supplementation at this time, but expects that Users will abide by their continuing obligation to supplement their responses to Interrogatory Nos. 1 and 2 "in a timely manner" if Users subsequently learn "additional or corrective information" bearing on their responses.  Fed. R. Civ. P. 26(e)(1)(A).

## 2. Plaintiffs' Statement

Consumers dispute Facebook's assertions regarding Consumers' responses and objections to Facebook's interrogatories.  As Facebook acknowledges, the Court previously ordered the parties to meet-and-confer regarding some of the very interrogatories that Facebook now raises, the parties have met-and-conferred regarding each of these interrogatories, and the parties' discussions are continuing.   Because Facebook has chosen to raise these interrogatories in this status report, Consumers below address Facebook's aspersions.

**Facebook's Interrogatory Nos. 1–2**: Interrogatory Nos. 1 and 2 request that Consumers identify "all Participant(s)" in Consumers' alleged Social Network and Social Media Markets. Based on the parties' prior agreement (Dkt. 279 at 6), Consumers responded to Interrogatory Nos. 1 and 2 on April 29, 2022.[5]  Facebook now demands that Consumers confirm whether they have identified additional market participants to supplement in their responses to these interrogatories. The Federal Rules of Civil Procedure do not require Consumers to answer Facebook's repeated questions regarding the status of Consumers' investigation and analysis whenever Facebook feels like posing them.  Nonetheless, Consumers do not believe a further dispute as to Interrogatory Nos. 1 and 2 is necessary and therefore confirm that Consumers have not identified additional participants

---

[5]   Facebook has suggested that the Court compelled Consumers to respond to Interrogatory Nos. 1 and 2. As Consumers have explained to Facebook, the Court did not do so; after the parties' briefed their dispute regarding these interrogatories, the Court ordered the parties to further meet-and-confer further regarding a possible resolution. Dkt. 263. In the interest of avoiding an unnecessary further dispute, Consumers then agreed to respond to Interrogatory Nos. 1 and 2.

in the Social Network or Social Media Markets since responding to these interrogatories on April 29, 2022.  To the extent necessary and appropriate, Consumers will, consistent with Rule 26(e), supplement their responses, including as additional discovery and expert analysis is obtained.

**Facebook's Interrogatory Nos. 5, 9–14**: Interrogatory No. 5 requests that Consumers "describe in detail the evidentiary basis for [Consumers'] contention" that "Facebook has monopoly power in any alleged relevant product market[.]"  Interrogatory Nos. 9–12 request that for each statement or omission Consumers challenge as deceptive, Consumers identify which firms would have entered or exerted competitive pressures in the relevant markets but did not, as well as each "feature or activity," the "data privacy practices," and "each change in 'application quality'" that those firms or Facebook would have made or implemented but did not.  Interrogatory Nos. 13 and 14 request that for "each feature or activity available to users on each Meta Product that is a Participant in" Consumers' Social Network and Social Media Markets, Consumers must "state whether the feature or activity is or is not within" those relevant markets.

Despite Facebook's attempts at linguistic gymnastics, Interrogatory Nos. 5 and 9–14 are "contention" interrogatories.  Interrogatory No. 5 itself uses the words "contend" and "contention." While Interrogatory Nos. 9–14 do not explicitly use the word "contention," Facebook's counsel has tellingly used that terminology in various discussions describing these interrogatories.   And, Facebook in this very status report indicates it is "seeking the factual basis of Users' allegations[.]" *Compare In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) ("contention interrogatories . . . seek to discover the factual basis for allegations in a complaint."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985) (describing one form of contention interrogatory as interrogatory that "asks an opponent to state all the *evidence* on which it *bases* some specified contention").  Facebook's contention interrogatories are premature.

While Facebook points to the April 2021 filing of the operative Consumer Complaint and Facebook's May 2021 re-production (under compulsion) to Plaintiffs of its prior document production to the FTC and House Antitrust Subcommittee, the reality is that document discovery specific to Consumers' claims ***has only just begun***.  Facebook did not make its first custodial production of documents in response to Consumers' document requests (served in September 2021)

1   until **July 21, 2022**.  While Facebook asserts that it "is making rolling productions of custodial

2   documents," it has, in total, produced less than **30,000** custodial documents to date (20,000 since

3   September 30, 2022)—the vast majority of which appear unrelated to market definition, monopoly

4   power, and "but-for world" issues (the subjects of the disputed interrogatories).   And while

5   Facebook points to the present January 2022 fact discovery cut-off, the current status of document

6   discovery is why the parties—***including Facebook***—have agreed an extension of the case schedule

7   is required and have therefore jointly and respectfully requested an extension from the Court.

8           That Interrogatory Nos. 5 and 9–14 are "contention" interrogatories is more than a semantic

9   point.  These interrogatories necessarily rely upon fact discovery that Facebook and non-parties are

10   only just beginning to provide.  The interrogatories—which seek Consumers' contentions and

11   assertions as to relevant market definition, monopoly power, and the "but-for world"—by their

12   nature also necessarily seek information that is the subject of, and requires, expert analysis.  As

13   Facebook is surely aware, experts are continuing to develop their views (including on these issues)

14   and will continue to do so going forward, as additional discovery is obtained.  Once those analyses

15   are complete, Facebook will receive Consumers' expert reports and be entitled to explore those

16   reports (and their opinions and bases) in multiple rounds of expert discovery.

17           In addition to all of this, Consumers have explained to Facebook that to the extent it seeks

18   the bases for Consumers' allegations in their complaint, Facebook has the complaint itself.  The

19   complaint is highly detailed and specific, providing source citations. Dkt. 87.  Consumers have also

20   already produced to Facebook the underlying documents cited in Consumers' complaint.  This is

21   more than sufficient, at this stage, to provide notice to Facebook of Consumers' claims and

22   allegations so as to allow Facebook to prepare its defenses.  *See Campbell v. Facebook Inc.*, 2015

23   WL 3533221, at *4–*5 (N.D. Cal. June 3, 2015) (denying Facebook's motion to compel responses

24   to contention interrogatories because plaintiffs' complaint "contains detailed factual allegations . . .

25   that address Facebook's concern").  Indeed, requiring Consumers to provide responses now would

26   be inefficient and disproportionate, as those responses would necessarily require supplementation

27   (likely multiple times) and given the ultimate disclosure of expert reports.  *See Id.* at *6 (denying

28   Facebook's motion to compel responses to contention interrogatories because "the Court does not

find much utility" in responses then as "the tentative nature of any responses generated at this stage would be of questionable value" and because it "strikes the Court as unnecessarily burdensome to constantly revise and update such responses.").  The Court should require no more at this juncture.

### III.   Other Updates

#### A.   Mediation Updates

##### 1.   Plaintiffs' Statement

At the last status conference on August 11, 2022, the Court directed the parties to designate a mediator.  Dkt. 334 at 2.  The parties have selected Gregory P. Lindstrom as mediator.  Dkt. 354.

Plaintiffs confirmed that Mediator Lindstrom is available to conduct separate mediation scoping discussions with each of Consumers, Advertisers, and Facebook.  Plaintiffs proposed dates to Facebook, and both Consumers and Advertisers will complete their initial mediation scoping discussions with Mediator Lindstrom on October 18, 2022.  Facebook has indicated that it will coordinate directly with Mediator Lindstrom about scheduling Facebook's separate scoping discussion "as appropriate."

##### 2.   Meta's Statement

Each party is directly coordinating with Mediator Lindstrom to schedule initial "scoping" calls with Mediator Lindstrom.  Meta looks forward to productive sessions and exploring whether a resolution can be reached.

#### B.   Update Regarding App Developer Investigation Documents

##### 1.   Consumers' Statement

Consumers and Facebook have a standing dispute regarding the discoverability of documents relating to Facebook's App Developer Investigation that Facebook was compelled to produce in the Cambridge Analytica MDL.  During the last status conference on August 11, 2022, the Court ordered Facebook to produce "whatever you think is nonprivileged and then . . . do a privilege log for the other ones."  Aug. 11, 2022 Hrg. Tr. at 35:13–13.  The Court instructed "three weeks, you produce the nonprivileged ADI and then a privilege log."  *Id.* at 36:18–19; Dkt. 334 at 1.  Facebook has not yet provided the privilege log, stating it will do so on or by October 31, 2022.

### 2.    Meta's Statement

There is no "standing dispute."  On August 11, 2022, the Court ordered Meta to produce, by September 1, 2022, all non-privileged App Developer Investigation ("ADI") documents originally produced in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-02843-VC (N.D. Cal.) ("MDL").  Dkt. No. 334.  Meta made that production on September 1, 2022.  The parties also agreed that Meta would provide the privilege logs that accompanied these productions in the MDL, updated to account for any privilege downgrades, by September 9, 2022.  Meta provided these logs, as agreed, on September 9, 2022.  Finally, as Plaintiffs note, the Court also ordered Meta to, after producing the non-privileged documents, to "then" provide "a privilege log" for the ADI-related material it did not produce.  Aug. 11, 2022 Hrg. Tr. at 35:13.  The parties' agreed-upon privilege protocol provides 60 days to provide a log after a document production, Dkt. No. 176, and Meta will provide its log on or before October 31, 2022.

### C.    Update Regarding Discovery Propounded to Date[6]

### 1.    Meta's Statement

*Discovery Propounded by Meta*:  On September 13, 2022, Meta served its Third Set of Interrogatories to Advertisers.  Advertisers' responses and objections are due October 13, 2022.

On September 9, 2022, Meta served notices of deposition on named Advertiser Plaintiffs, Katherine Looper and Mark Young.  Meta took the deposition of Ms. Looper on October 7, 2022.  Meta has informed Advertiser Plaintiffs that it will take Mr. Young's deposition after Mr. Young has substantially completed his document production in response to Meta's already-served document requests.

On September 29, 2022, Meta and Advertisers resolved outstanding disputes concerning Meta's Requests for Production Nos. 1-8, 10, 12, and 14, and Meta requested that Advertisers provide the search terms they propose to run for those RFPs by October 5, 2022.  Advertisers did

---

[6] For conciseness, the parties focus this section of the Joint Case Management Statement on discovery since August 4, 2022, the date of the parties' last Joint Case Management Statement.  The parties' prior Joint Case Management Statements contain similar summaries of discovery up to the dates of those statements' respective filings.

1  not provide the search terms until after 3:00 pm PT today, in a transparent attempt to prevent Meta

2  from raising any deficiencies with their proposal in this statement.

3      *Discovery Propounded by Plaintiffs*:  User and Advertiser Plaintiffs have served no new

4  discovery requests on Meta since August 4, 2022.

5      *Requests for Production*:  On August 29, 2022, Meta served its responses and objections to

6  Users' and Advertisers' respective Fourth Set of Requests for Production of Documents.  Meta is

7  continuing to produce documents in response to these Requests.  To date, Meta has produced more

8  than 130,000 responsive documents totaling almost 630,000 pages of material.  Meta's review and

9  production of the more than 2.5 million documents hitting on Plaintiffs' search terms is ongoing,

10  and Meta is continuing to make rolling productions approximately every two weeks.

11      *Interrogatories*:  Meta served its responses and objections to Advertisers' Second Set of

12  Interrogatories on August 24, 2022.

13      Advertisers served their Third Set of Interrogatories to Meta on September 13, 2022.  Meta's

14  responses and objections are due October 13, 2022.

15      *Deposition Notices*:  On September 3 and 6, 2022, Users and Advertisers, respectively,

16  withdrew their first Rule 30(b)(6) deposition notices of Meta.

17                    **2.      Plaintiffs' Statement**

18      **Consumer Plaintiffs**:  Consumers and Facebook on September 12, 2022, reached agreement

19  on the remaining search strings that Facebook would run to search for documents responsive to

20  Consumers' already-served document requests.  Facebook is continuing its investigation into several

21  of Consumers' inquiries, including with respect to Consumers' request for data that Facebook

22  maintains as to its Facebook Research, Study, and Viewpoints data compensation services.

23      Facebook has begun making custodial document productions in response to Consumers'

24  document requests.  Facebook on October 11, 2022, also provided a privilege log for one of its

25  productions.  Consumers are continuing to review these productions and Facebook's privilege log

26  and will raise any issues as to these or other items with Facebook, and the Court, as necessary.

27      **Advertiser Plaintiffs**:  Advertisers and Facebook continue to narrow remaining disputes as

28  to the search strings that Facebook will run to search for documents responsive to Advertisers'

already-served document requests.  Advertisers have already sent the first two updates to their curated list of hyperlinked documents for production, and Facebook has made its first production of such documents, which Advertisers are presently evaluating.

On September 13, 2022, Facebook served its Third Set of Interrogatories to Advertisers, and Advertisers served their Third Set of Interrogatories to Facebook.  Both Advertisers' and Facebook's responses and objections are due today.

### D.     Update Regarding Lawsuits Filed by FTC and State Attorneys General

The action captioned *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.) is currently in fact discovery, which is scheduled to close on May 22, 2023.  Dkt. No. 103.  In *State of New York, et al v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.), oral argument on the States' appeal of the district court's dismissal order took place on September 19, 2022.  Dkt. No. 1950973.

1    DATED:  October 13, 2022                    Respectfully submitted,

2

3    By:   /s/ Shana E. Scarlett                 By:   /s/ Stephen A. Swedlow
     **HAGENS BERMAN SOBOL SHAPIRO LLP**          **QUINN EMANUEL URQUHART & SULLIVAN,
     Shana E. Scarlett (Bar No. 217895)           LLP**
4       shanas@hbsslaw.com                        Stephen A. Swedlow (*pro hac vice*)
     715 Hearst Avenue, Suite 202                    stephenswedlow@quinnemanuel.com
5    Berkeley, CA 94710                           Michelle Schmit
     Telephone: (510) 725-3000                       michelleschmit@quinnemanuel.com
6                                                 191 N. Wacker Drive, Suite 2700
     Steve W. Berman (*pro hac vice*)             Chicago, IL 60606
7    steve@hbsslaw.com                            Telephone: (312) 705-7400
     1301 Second Avenue, Suite 2000
8    Seattle, WA 98101                            Kevin Y. Teruya (Bar No. 235916)
     Telephone: (206) 623-7292                       kevinteruya@quinnemanuel.com
9                                                 Adam B. Wolfson (Bar No. 262125)
     **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**            adamwolfson@quinnemanuel.com
10   W. Joseph Bruckner (*pro hac vice*)          Brantley I. Pepperman (Bar No. 322057)
        wjbruckner@locklaw.com                       brantleypepperman@quinnemanuel.com
11   Robert K. Shelquist (*pro hac vice*)         865 South Figueroa Street, 10th Floor
        rkshelquist@locklaw.com                   Los Angeles, CA 90017
12   Brian D. Clark (*pro hac vice*)              Telephone: (213) 443-3000
        bdclark@locklaw.com
13   Rebecca A. Peterson (Bar No. 241858)         Manisha M. Sheth (*pro hac vice*)
        rapeterson@locklaw.com                       manishasheth@quinnemanuel.com
14   Arielle S. Wagner (*pro hac vice*)           51 Madison Avenue, 22nd Floor
        aswagner@locklaw.com                      New York, New York 10010
15   Kyle J. Pozan (admitted *pro hac vice*)      Telephone: (212) 849-7000
        kjpozan@locklaw.com
16   Laura M. Matson (admitted *pro hac vice*)    *Interim Counsel for the Consumer Class*
        lmmatson@locklaw.com
17   100 Washington Avenue South, Suite 2200
     Minneapolis, MN 55401
18   Telephone: (612) 339-6900

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| By: */s/ Yavar Bathaee* | By: */s/ Amanda F. Lawrence* |
| **BATHAEE DUNNE LLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| Yavar Bathaee (Bar No. 282388) | Amanda F. Lawrence (*pro hac vice*) |
|   yavar@bathaeedunne.com |   alawrence@scott-scott.com |
| Andrew C. Wolinsky (*pro hac vice*) | Patrick J. McGahan (*pro hac vice*) |
|   awolinsky@bathaeedunne.com |   pmcgahan@scott-scott.com |
| 445 Park Avenue, 9th Floor | Michael P. Srodoski (*pro hac vice*) |
| New York, NY 10022 |   msrodoski@scott-scott.com |
| Telephone: (332) 322-8835 | 156 South Main Street, P.O. Box 192 |
| | Colchester, CT 06415 |
| Brian J. Dunne (Bar No. 275689) | Telephone: (860) 537-5537 |
|   bdunne@bathaeedunne.com | |
| Edward M. Grauman (*pro hac vice*) | Patrick J. Rodriguez (pro hac vice) |
|   egrauman@bathaeedunne.com |   prodriguez@scott-scott.com |
| 901 South MoPac Expressway | 230 Park Avenue, 17th Floor |
| Barton Oaks Plaza I, Suite 300 | New York, NY 10169 |
| Austin, TX 78746 | Telephone: (212) 223-6444 |
| Telephone: (512) 575-8848 | |
| | Christopher M. Burke (Bar No. 214799) |
| **AHDOOT & WOLFSON, PC** |   cburke@scott-scott.com |
| Tina Wolfson (Bar No. 174806) | David H. Goldberger (Bar No. 225869) |
|   twolfson@ahdootwolfson.com |   dgoldberger@scott-scott.com |
| Robert Ahdoot (Bar No. 172098) | Hal D. Cunningham (Bar No. 243048) |
|   rahdoot@ahdootwolfson.com |   hcunningham@scott-scott.com |
| Theodore W. Maya (Bar No. 223242) | Daniel J. Brockwell (Bar No. 335983) |
|   tmaya@ahdootwolfson.com |   dbrockwell@scott-scott.com |
| Henry Kelston (*pro hac vice*) | Yifan (Kate) Lv (Bar No. 302704) |
|   hkelston@ahdootwolfson.com |   klv@scott-scott.com |
| 2600 West Olive Avenue, Suite 500 | 600 W. Broadway, Suite 3300 |
| Burbank, CA 91505 | San Diego, CA 92101 |
|  Telephone: (310) 474-9111 | Telephone: (619) 233-4565 |
| | |
| | **LEVIN SEDRAN & BERMAN LLP** |
| | Keith J. Verrier (*pro hac vice*) |
| |   kverrier@lfsblaw.com |
| | Austin B. Cohen (*pro hac vice*) |
| |   acohen@lfsblaw.com |
| | 510 Walnut Street, Suite 500 |
| | Philadelphia, PA 19106 |
| | Telephone: (215) 592-1500 |
| | |
| | *Interim Counsel for the Advertiser Class* |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:   */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE**
**AND DORR LLP**
Sonal N. Mehta (SBN: 222086)
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Email: Sonal.Mehta@wilmerhale.com

David Z. Gringer (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: David.Gringer@wilmerhale.com

Ari Holtzblatt (*pro hac vice*)
Molly M. Jennings (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: Ari.Holtzblatt@wilmerhale.com
Email: Molly.Jennings@wilmerhale.com

*Attorneys for Defendant Meta Platforms, Inc.*

1

**ATTESTATION OF STEPHEN A. SWEDLOW**

2
3
4
5

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

6
7
8

Dated: October 13, 2022          By */s/ Stephen A. Swedlow*

Stephen A. Swedlow

9
10

**CERTIFICATE OF SERVICE**

11
12
13

I hereby certify that on this 13th day of October 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

14
15
16

By */s/ Stephen A. Swedlow*

Stephen A. Swedlow

17
18
19
20
21
22
23
24
25
26
27
28