WILMERHALE

October 19, 2022

VIA ECF

Sonal Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Meta respectfully requests that the Court compel User Plaintiffs to provide substantive responses to Meta's Interrogatory Nos. 5, 9-14. The parties met and conferred by telephone on September 12 and September 30, 2022 after exchanging several emails about Users' refusal to respond to Meta's interrogatories and have reached an impasse.[1]

Users' Complaint suffers from the same inherent flaws as that of the Advertisers: it gerrymanders purportedly "social" markets that ignore the intense competition that Meta faces from TikTok, Google, and the countless other websites and apps that compete with Meta's apps for user time and attention and for advertising revenue. Users also construct a false narrative about decades-old conduct, claiming that largely obscure statements by Meta gave rise to Meta's alleged monopoly. *See, e.g.*, Compl. ¶¶ 11, 55-140, 221-229. Meta served interrogatories requiring Users to identify the claimed factual basis of such allegations.[2] Exposing the lack of any facts supporting these allegations, Users have not provided factual information or cited any documents in response to these interrogatories, instead relying on meritless objections.

## I.     Users Must Respond to Meta's Interrogatory Regarding Market Power

Users allege that Meta obtained monopoly power in two alleged product markets: the Social Network and Social Media Markets. Compl. ¶¶ 261, 285. But Users do not allege what Meta's market share supposedly is in each of Users' self-constructed markets, let alone how Users reached any such conclusions, offering varying alleged data points instead. For example, at one point, Users allege that Meta maintains at least 65% market share in both alleged markets. Compl. ¶¶ 71, 78. Elsewhere, Users allege that "one of the best available metrics of market share in the Social Media Market is advertising revenue," which allegedly reflects that Meta "has over 85% of the U.S. market." Compl. ¶ 80. Yet elsewhere, Users allege that "more than 80% of the time that consumers in the United States spend using social media is spent on Facebook and Instagram." Compl. ¶ 262.

---

[1] Users confirmed in the Ninth Joint Case Management Statement that they do not intend to provide substantive responses to these interrogatories. Dkt. 364 at 13-15.

[2] Meta served its First and Second Sets of Interrogatories on January 7 and July 15, 2022, respectively.

Wilmer Cutler Pickering Hale and Dorr LLP, 2600 El Camino Real, Suite 400, Palo Alto, CA 94306

Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Palo Alto   San Francisco   Washington

Hon. James Donato
October 19, 2022
Page 2

**WilmerHale**

Interrogatory No. 5 requires Users to identify both (1) Meta's supposed market share in each alleged relevant product market and (2) how Users determined Meta's market share in both alleged markets, including any analyses or sources that Users relied upon in reaching such conclusion. Users have not provided a substantive response, even though this information goes to the heart of Users' case, as Users have the burden of proving a relevant product market and that Meta possesses durable monopoly power in that market. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990, 992 (9th Cir. 2020). Meta is entitled to know how Users are measuring the purported markets to allow Meta to fairly defend itself by conducting discovery and analysis into the alleged markets it is accused of monopolizing. *Callum v. Austin Cap. Bank*, 2021 WL 4594510, at *3 (E.D. Cal. Oct. 6, 2021) ("[Defendant] is not required to guess at what facts might underlie plaintiff's complaint.").

## II.     Users Must Respond to Meta's Interrogatories Regarding Market Definition

Users attempt in the Complaint to differentiate between an alleged "Social Media Market" and an alleged "Social Network Market" with the conclusory allegation that "social networks, such as Facebook, provide *specific product features* to users which social media applications generally do not provide at all." Compl. ¶ 67 (emphasis added). But Users fail to allege any "specific product features" that supposedly define or differentiate the two alleged markets.

Accordingly, Meta served Interrogatory Nos. 13 and 14, which require Users to state, "[f]or each feature or activity available to users on each Meta Product that is a Participant" in Users' alleged markets, "whether the feature or activity" is within that alleged market. Users have not provided a substantive response, even though the identification of features and activities allegedly included in each relevant alleged market is critical to determining whether such a market exists and, if so, its scope. *See NSS Labs, Inc. v. Symantec Corp.*, 2019 WL 3804679, at *9 (N.D. Cal. Aug. 13, 2019). Indeed, a district court recently granted Meta's motion to compel a plaintiff (the FTC) who alleges that Meta monopolized a similar gerrymandered market to answer an interrogatory materially identical to Interrogatory Nos. 13 and 14, ordering Meta to "submit to the FTC a list of each feature or activity available to users on Facebook, Instagram, WhatsApp, or Facebook Messenger," and requiring the FTC to "inform Meta whether each such feature or activity is or is not within" FTC's market definition. *See, e.g.*, Order, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB, Dkt. No. 165 (D.D.C. Aug. 1, 2022). The same result is warranted here.

## III.    Users Must Respond to Meta's Interrogatories Regarding Competitive Effects

Users allege in the Complaint that Meta supposedly obtained monopoly power in two alleged product markets through a number of alleged material misstatements. *See, e.g.*, Compl. ¶¶ 108, 111, 112. Users allege that such conduct was anti-competitive and that it (i) prevented users from "switch[ing] to a competing social network that offered users greater data privacy . . . or provided users with richer content, features, or monetary compensation," (ii) allowed Meta "to reap supra-competitive profits from its anticompetitive conduct without the typical pressures of competition from existing competitors or new entrants," and (iii) "substantially reduced, if not eliminated . . . competition in terms of non-price attributes such as data privacy practices and social network and social media application quality." Compl. ¶¶ 95, 226.

Interrogatory Nos. 9-12 require Users to identify the factual bases for these allegations, such as (1) which firms would have entered or been more competitive in each alleged market; (2) which

feature or activity Meta or such other firms would have made available to users in either market; (3) which data privacy practices Meta or such other firms would have maintained; and (4) which change in "application quality" would have occurred but for Meta's alleged conduct. Users have not provided substantive responses, even though such information is directly relevant to testing the merit (or demonstrating the lack thereof) of Users' allegations. *See Rambus Inc. v. FTC*, 522 F.3d 456, 463 (D.C. Cir. 2008).

## IV. Users' Objections Have No Merit

Users' objections to these interrogatories have no merit. First, these interrogatories are not "premature" contention interrogatories. This case is "not in its early stages"—Users filed their Complaint nearly 18 months ago, the parties have actively engaged in both party and nonparty discovery for over one year, Meta has produced millions of documents (including over 12 million pages of documents from the FTC and House investigations that Users have had the opportunity to review since May 3, 2021),[3] and fact discovery is currently set to close in less than three months.[4] *See Garza v. Brinderson Constructors, Inc.*, 2017 WL 2861128, at *2 (N.D. Cal. July 5, 2017). Indeed, the Advertiser Plaintiffs have served similar interrogatories on Meta,[5] and Meta served over 30 pages of substantive responses last week.

Second, Users object because the discovery sought will "necessarily be the subject of expert testimony and analysis." While Users cannot "be compelled to produce [expert reports] before the expert disclosure deadline, neither should [Users] be given an advantage at trial because [they] gave vague initial disclosures and incomplete interrogatory responses regarding" the allegations of their Complaint. *Mailhoit v. Home Depot U.S.A., Inc.*, 2013 WL 12122580, at *6 (C.D. Cal. Jan. 24, 2013). Meta is "entitled to discovery of [Users'] current information in [their] possession, custody or control . . . consistent with Rule 11 of the FRCP, which requires that [Users] must have some factual basis for the allegations in the complaint." *Vepo Design Corp. v. Am. Econ. Ins. Co.*, 2021 WL 6882161, at *3 (C.D. Cal. Sept. 23, 2021).

Finally, Users' contention that they are not required to provide substantive responses because their Complaint is "highly detailed" and Users "already produced to Facebook the underlying documents cited in [Users'] complaint," Dkt. 364 at 15, is not a valid objection to an interrogatory (and is also not true). *See Hash v. Cate*, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012). Users cannot simply refuse to answer Meta's interrogatories by asserting that they produced unidentified documents. Users must either provide a narrative response to Meta's interrogatories or specify responsive documents that answer each interrogatory separately. *See* Fed. R. Civ. P. 33(d).

---

[3] Users complain that Meta has not substantially completed its custodial productions, but the fact that "discovery efforts are not yet complete is an insufficient justification for withholding the information [Users] currently ha[ve] from [Meta]." *Rubalcava v. City of San Jose*, 2022 WL 2668379, at *3 (N.D. Cal. July 11, 2022).

[4] Although the parties have proposed a short extension, such an extension—should the Court order it—would not impact this analysis or Users' obligation to engage in discovery.

[5] For example, Advertisers' most recent set of interrogatories to Meta includes several interrogatories that seek the "full basis" of Meta's contentions, including, "[i]f You contend that the 'Social Advertising Market,' . . . is not a relevant product market, describe in detail the full basis for Your contention."

Hon. James Donato
October 19, 2022
Page 4

**WILMERHALE**

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorney for Defendant Meta Platforms, Inc.*