WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone:  (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:  (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S UNOPPOSED ADMINISTRATIVE MOTION FOR ISSUANCE OF LETTERS OF REQUEST**<br><br>Judge: Hon. James Donato |

1    Defendant Meta Platforms, Inc. ("Meta") respectfully submits this Memorandum of Points

2  and Authorities in support of its Unopposed Administrative Motion for Issuance of Letters of

3  Request for discovery from Telegram Messenger Inc. ("Telegram") and Tencent Holdings Ltd.

4  ("Tencent") (collectively, the "Foreign Non-Parties").

5                                    **INTRODUCTION**

6    Meta brings this Motion to obtain discovery from two non-parties headquartered outside

7  of the United States.  Meta believes that each of these non-parties possesses or controls information

8  relevant to its defenses in this action, including on issues related to market definition and market

9  power.  Although Meta has served these Foreign Non-Parties' domestic subsidiaries where

10  possible, Meta has reason to believe that these subsidiaries have limited responsive documents in

11  their custody or control, and Meta seeks information from the Foreign Non-Parties only where that

12  information is not in the possession or custody of the domestic subsidiary.

13    Meta expects that the Foreign Non-Parties' documents will show that they—along with

14  numerous other entities—compete with Meta, and that there is no "industry or public recognition

15  of" Plaintiffs' contrived "Social Advertising," "Social Network," or "Social Media" markets.

16  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *see also FTC v. Qualcomm Inc.*, 969

17  F.3d 974, 992 (9th Cir. 2020) ("A threshold step in any antitrust case is to accurately define the

18  relevant market, which refers to the area of effective competition.") (internal quotations omitted).

19  Meta also expects that the documents will show that its competitors do not use privacy policies or

20  privacy practices to differentiate Meta's offerings from their own.

21    Accordingly, Meta respectfully requests that the Court grant this motion to obtain limited

22  documents from the following entities, each of which is described in more detail in Section I, *infra*:

23

24

25

26

27

28

- Telegram, a cloud-based instant messaging service, is registered in the British Virgin Islands. In late 2021, when Meta's products experienced a six-hour long outage, Telegram reportedly gained 70 million new users.[1]

- Tencent, a Chinese internet technology company, owns WeChat and QQ, which Tencent labels as "social platform[s]."[2]

Specifically, Meta respectfully requests that this Court for each of Telegram and Tencent, issue letters of request for the collection of documentary evidence. For the Court's awareness, Judge Boasberg granted Meta's motion for the issuance of substantially similar letters of request to the same Foreign Non-Parties in *FTC v. Meta Platforms, Inc.*, Case No. 1:20-cv-03590 (D.D.C.), ECF No. 148. Meta has informed Consumer and Advertiser Plaintiffs of the relief it is seeking, and counsel for Plaintiffs stated that they take no position on the Motion.

**ARGUMENT**

**I.    THE COURT HAS AUTHORITY TO ISSUE THE REQUESTED LETTERS OF REQUEST.**

Congress has authorized this Court to issue letters of request for the production of documents from non-parties located in foreign countries such as the People's Republic of China and the British Virgin Islands for use in an action pending in the United States. *See* All Writs Act, 28 U.S.C. § 1781(b)(2) (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner").

---

[1] Jon Porter, *Telegram Gains 70M New Users in Just One Day After Facebook Outage*, THE VERGE (Oct. 6, 2021), https://www.theverge.com/2021/10/6/22712191/telegram-70-million-new-users-facebook-outage-surge-whatsapp; *see also* Stan Schroeder, *If You Think Facebook Has No Competition, Just Ask Telegram*, mashable.com (Mar. 14, 2019), https://mashable.com/article/telegram-3-million-users (noting that over 3 million users signed up for Telegram during the 24 hours after a brief outage of Facebook Messenger, Instagram, and WhatsApp).

[2] Tencent, Business, https://www.tencent.com/en-us/business.html (accessed March 26, 2022) (select "Weixin/WeChat" and "QQ" for description).

1   China and the United States are signatories to the Hague Convention on the Taking of

2   Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention").[3]  The British

3   Virgin Islands have given statutory effect to the Hague Evidence Convention through their own

4   legislation.  *See* Evidence (Proceedings in Foreign Jurisdictions) Act, 1988 art. 9(3) (BVI).

5   Pursuant to the Hague Evidence Convention, "[i]n civil or commercial matters a judicial authority

6   of a Contracting State may, in accordance with the provisions of the law of that State, request the

7   competent authority of another Contracting State, by means of a Letter of Request, to obtain

8   evidence, or to perform some other judicial act."  Hague Evidence Convention, Art. 1, Mar. 18,

9   1970, 23 U.S.T. 2555.  The Supreme Court has recognized that the Hague Evidence Convention

10  is "intended to establish optional procedures that would facilitate the taking of evidence abroad."

11  *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522,

12  538 (1987).

13  **II.    META'S REQUESTS ARE RELEVANT AND LIKELY TO LEAD TO MATERIAL EVIDENCE.**

14  In deciding whether to issue letters of request, "U.S. courts apply the discovery principles

15  contained in Rule 26 [of the Federal Rules of Civil Procedure]."  *Lantheus Med. Imaging, Inc. v.*

16  *Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012); *see Zoho Corp. Pvt. Ltd. v.*

17  *Freshworks, Inc.*, 2021 WL 2769009, at *2 (N.D. Cal. July 2, 2021) (applying Rule 26 in

18  evaluating whether to issue letters of request under the Hague Evidence Convention); Restatement

19  (Third) of Foreign Relations Law § 442 (1987).  Federal Rule of Civil Procedure 26(b)(1) permits

20  parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim

21  or defense and proportional to the needs of the case," including material that is not admissible.

22  Because the bar for granting a motion for issuance of a letter of request is low, "judges in this

23  district have held that motions requesting issuance of a letter of request or letter rogatory should

24  generally be granted and that '[t]he opposing party must show good reason for a court to deny an

---

25  [3] *See* Status Table, *Convention of 18 March 1970 on the Taking of Evidence Abroad in*

26  *Civil or Commercial Matters*, Hague Conference on Private Int'l Law,

    http://www.hcch.net/index_en.php?act=conventions.status&cid=82 (last visited March 7, 2022) ;

27  *Hague Evidence Convention - Acceptances of Accessions*, Hague Conference on Private Int'l

28  Law, https://assets.hcch.net/docs/f094fd72-6213-4950-96ea-955f41a311eb.pdf (last updated

    August 1, 2022).

application for a letter rogatory.'" *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 2020 WL 7042860, at *2 (N.D. Cal. Dec. 1, 2020) (quoting *SEC v. Leslie*, 2009 WL 688836, at *2 (N.D. Cal. Mar. 16, 2009)).

As set forth below, all of the information that Meta seeks from the Foreign Non-Parties clears this threshold because it is relevant to Meta's defenses—specifically, the competition that it faces; the low barriers to entry as evidenced by the ability of small upstarts to achieve runaway success; the contours of the relevant product and geographic market; data regarding market size and share; and the lack of a plausible theory of antitrust harm based on the idea that companies that vie for the time and attention of Meta's users compete on the basis of privacy practices.

### A.    Telegram

Telegram is a free, cross-platform, cloud-based service registered in the British Virgin Islands.  Telegram expressly bills itself as an alternative to WhatsApp.[4]  Telegram's mission is "to provide a secure means of communication that works everywhere on the planet."[5]  Telegram launched in late 2013 and boasts simultaneous message syncing on all user devices.[6]  By the time Meta closed its acquisition of WhatsApp in October 2014, Telegram already had close to 50 million monthly active users.[7]  In 2020, Telegram introduced video calling with end-to-end encryption.[8]  In January 2021, Telegram's CEO & Founder, Pavel Durov, announced the company had surpassed 500 million monthly active users.[9]  In late 2021, when Meta's products experienced

---

[4] *Telegram FAQ*, https://telegram.org/faq (accessed March 8, 2022).

[5] *Id.*

[6] *Id.*

[7] *Number of Monthly Active Telegram Users Worldwide from March 2014 to April 2020*, STATISTA (March 2, 2022), https://www.statista.com/statistics/234038/telegram-messenger-mau-users/.

[8] Ivan Mehta, *Telegram Introduces End-to-End Encrypted Video Calls*, thenextweb.com (Aug. 14, 2020), https://thenextweb.com/news/telegram-introduces-end-to-end-encrypted-video-calls.

[9] Phoebe Magdirila, *Telegram Crosses 500 Million Monthly Active Users*, S&P GLOBAL (Jan. 13, 2021), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/telegram-crosses-500-million-monthly-active-users-62094638.

1    a six-hour-long outage, Telegram reportedly gained 70 million new users.[10]

2        Meta seeks discovery from Telegram to show that Telegram has competed with Meta's

3    products.  Meta seeks documents related to how Telegram views competition between Telegram

4    and Meta (Document Request No. 1) and whether Telegram's services provide users with features

5    substantially similar to those provided by Meta (Document Request No. 2).  Meta also asks

6    whether Telegram has considered compensating its users for data to test Plaintiffs' damages theory

7    (Document Request No. 3).  To address Plaintiffs' allegations related to market power, Meta is

8    requesting documents related to whether Telegram believes that its privacy policies and practices

9    differentiate its products from those offered by its competitors or impact user satisfaction or

10   engagement (Document Request Nos. 4 & 5).  Lastly, Meta has two limited data requests related

11   to Plaintiffs' allegations of market share and market definition regarding time spent on Telegram

12   and the number of Daily Active Users (Document Request Nos. 6 & 7).  Meta believes that this

13   information is relevant to countering Plaintiffs' allegations that Meta has monopoly power in any

14   cognizable market.  Meta limited these requests to time spent, active users, and daily active users,

15   which have been recognized as "appropriate indicators" of "market share."  *See Fed. Trade*

16   *Comm'n v. Facebook, Inc.*, 2022 WL 103308, at *7 (D.D.C. Jan. 11, 2022).  Request Number 6

17   seeks data limited to specific periods of time when there was an outage on Meta's products and

18   seeks information related to diversion from Meta's products.  In Request Number 7, Meta has

19   asked for data from 2013-2016 and 2021 to help respond to Plaintiffs' allegations that Meta has

20   any type of durable monopoly power.

21       Meta has served document requests on Telegram LLC for documents in the custody and

22   control of Telegram's United States subsidiary, but Meta is also seeking relevant documents that

23   it believes are only available in the British Virgin Islands, where Telegram is headquartered.  Meta

24   

25       [10] Jon Porter, *Telegram Gains 70M Users in Just One Day After Facebook Outage*, THE
     VERGE (Oct. 6, 2021), https://www.theverge.com/2021/10/6/22712191/telegram-70-million-new-
26   users-facebook-outage-surge-whatsapp; *see also* Stan Schroeder, *If You Think Facebook Has No
     Competition, Just Ask Telegram* (March 14, 2019), mashable.com,
27   https://mashable.com/article/telegram-3-million-users (noting that over 3 million users signed up
     for Telegram during the 24 hours after a brief outage of Facebook Messenger, Instagram, and
28   WhatsApp).

seeks documents only where they are not in the possession or control of the United States subsidiary.

### B.    Tencent

Tencent is a multinational internet technology company headquartered in Shenzhen, China. It owns and operates WeChat and QQ, which it refers to as "social platform[s]."[11]  As of June 30, 2021, WeChat had over 1.2 billion monthly active users worldwide and QQ had over 590 million.[12] Indeed, as of late 2021, WeChat is the most used social networking app in China.[13]  WeChat supports text messaging, video and voice calling, and group messaging and calling.[14]  WeChat offers a feature called "moments" which "functions like the Facebook Wall and allows users to share their thoughts and photos in a social media feed."[15]  QQ also allows its "users [to] socialize, watch shows and play games together."[16]  Tencent has explained that QQ provides "immersive social and entertainment experiences."[17]

Meta seeks discovery from Tencent to show that Tencent's products have competed with Meta's products.  Meta seeks documents related to how Tencent views competition between its products and Meta (Document Request No. 1) and whether WeChat or QQ's services provide users with features substantially similar to those provided by Meta (Document Request No. 2).  Meta also asks whether Tencent has considered compensating its users for data to test Plaintiffs' damages theory (Document Request No. 3).  To address Plaintiffs' allegations related to market power, Meta is requesting documents related to whether Tencent believes that its privacy policies

---

[11] *See* Tencent, Business, https://www.tencent.com/en-us/business.html (accessed March 26, 2022) (select "Weixin/WeChat" and "QQ" for description).

[12] Tencent Holdings Ltd., 2021 Interim Report at 5, https://static.www.tencent.com/uploads/2021/08/31/7276c2279348d70e0b0f74f6c470f92e.pdf.

[13] Lai Lin Thomala, *Most Popular Social Media in China Q3 2021*, Statista (Feb. 14, 2022), https://www.statista.com/statistics/250546/leading-social-network-sites-in-china/.

[14] *Everything You Need to Know About WeChat*, https://washington.org/welcomechina/angs-chat/blog-1-wechat (accessed March 31, 2022).

[15] *Id.*

[16] Priyanka Boghani, *Tencent Poised to lead China's Charge into the Metaverse*, S&P Global (Mar. 17, 2022), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/tencent-poised-to-lead-china-s-charge-into-the-metaverse-69311462.

[17] Tencent Holdings Ltd., 2021 Interim Report at 6, *supra*.

and practices differentiate its products from those offered by its competitors or impact user satisfaction or engagement (Document Request Nos. 4 & 5). Meta also seeks documents related to Tencent's acquisition of certain U.S.-based companies that compete with Meta (Document Request No. 6). Lastly, Meta has two limited data requests related to Plaintiffs' allegations of market share and market definition regarding time spent on WeChat and QQ and the number of Daily Active Users (Document Request Nos. 7 & 8). Meta believes that this information is relevant to countering Plaintiffs' allegations that Meta has monopoly power in any cognizable market. Meta limited these requests to time spent, active users, and daily active users, which have been recognized as "appropriate indicators" of "market share." *See Fed. Trade Comm'n v. Facebook, Inc.*, 2022 WL 103308, at *7 (D.D.C. Jan. 11, 2022). Request Number 7 seeks data limited to specific periods of time when there was an outage on Meta's products and seeks information related to diversion from Meta's products. In Request Number 8, Meta has asked for data from 2011-2014 and 2021 to help respond to Plaintiffs' allegations that Meta has any type of durable monopoly power.

Meta has served document requests on Tencent America LLC for documents in the custody and control of Tencent's United States subsidiary, but Meta is also seeking documents that it believes are only available in China, where Tencent is headquartered. Meta seeks documents only where they are not in the possession or custody of the United States subsidiary.

## III. COMITY CONSIDERATIONS FAVOR ISSUING THESE LETTERS.

When considering whether to authorize international discovery through the Hague Evidence Convention, the Court also considers international comity concerns. *See Radware, Ltd. v. A10 Networks, Inc.*, 2014 WL 631537, at *2 (N.D. Cal. Feb. 18, 2014). Courts generally apply the following comity factors to determine whether to grant a request for international discovery: (1) the importance to the litigation of the documents requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request

would undermine important interests of the state where the information is located.  *See Société*

*Nationale Industrielle Aérospatiale*, 482 U.S. at 544 n.28.

Here, these factors support issuing the letters.  *First*, as set out above, the document requests are important to Meta's defenses in this litigation.  *Second*, the narrow requests for each entity are specific, seek only a limited set of evidence, and are directly relevant to issues in this case.  *Third* and *fourth*, even if the documents may have originated overseas, Meta specifically seeks only those documents that are unlikely to be found in the United States, which counterbalances the foreign origin of the documents and favors disclosure.  *See Lantheus Med. Imaging*, 841 F. Supp. 2d at 793.  *Finally*, "[w]hen a court orders resort to the [Hague] Convention or to other means of international judicial assistance, it commits the issue whether compliance with the request would undermine important interests of the state where the information is located to the courts or other authorities of that state."  Restatement (Third) of Foreign Relations Law § 473 Reporter's Notes at n.5 (1987). When that is true, Courts need "not assess the fifth factor."  *Jaguar Land Rover Ltd. v. DR. ING. H.C. F. Porsche AG*, 2021 WL 3075698, at *2 (D.D.C. June 22, 2021); *see also Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2019 WL 6134958, at *3-4 (N.D. Cal. Nov. 19, 2019) (finding this factor neutral in the absence of evidence that discovery through the Hague Evidence Convention would thwart the requesting party's ability to "obtain documents necessary to litigate its claims").

## CONCLUSION

For the reasons above, Meta respectfully requests that the Court grant this motion and execute the attached letters of request.

1    Dated:  October 28, 2022                    Respectfully submitted,

2                                                By: /s/  Sonal N. Mehta

3                                                SONAL N. MEHTA (SBN 222086)
4                                                  Sonal.Mehta@wilmerhale.com
                                                 WILMER CUTLER PICKERING HALE
5                                                AND DORR LLP
                                                 2600 El Camino Real, Suite 400
6                                                Palo Alto, California 94306
                                                 Telephone: (650) 858-6000
7

8                                                DAVID Z. GRINGER (*pro hac vice*)
                                                   David.Gringer@wilmerhale.com
9                                                WILMER CUTLER PICKERING HALE
                                                 AND DORR LLP
10                                               7 World Trade Center
                                                 250 Greenwich Street
11                                               New York, New York 10007
                                                 Telephone:  (212) 230-8800
12

13                                               ARI HOLTZBLATT (*pro hac vice*)
                                                   Ari.Holtzblatt@wilmerhale.com
14                                               MOLLY M. JENNINGS (*pro hac vice*)
                                                   Molly.Jennings@wilmerhale.com
15                                               WILMER CUTLER PICKERING HALE
                                                 AND DORR LLP
16                                               1875 Pennsylvania Ave NW
                                                 Washington, DC 20006
17                                               Telephone:  (202) 663-6000
18

19                                               *Attorneys for Defendant Meta Platforms, Inc.*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

By:   */s/  Sonal N. Mehta*
         Sonal N. Mehta