November 16, 2022                                                    **VIA CM/ECF FILING**

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:    Consumers' Response to Facebook's Motion Relating to Interrogatory Nos. 5, 9–14

Dear Judge Donato:

Facebook's overbroad contention Interrogatory No. 5 seeks market share analysis that is both the subject of expert disclosure, and premature. Interrogatory Nos. 9–14—which seek information on the "but-for world" and market definition—are improper because they seek irrelevant information that, in any case, would require expert analysis itself also based on ongoing fact discovery. And while Facebook claims it needs to know the "claimed factual basis" for Consumers' complaint, Consumers have already provided it. Facebook's motion should be denied.

I.     **Facebook's Motion to Compel Regarding Interrogatory No. 5 Should Be Denied**

Interrogatory No. 5 is an overbroad contention interrogatory. It asks whether Consumers "contend that Facebook has monopoly power in any alleged relevant product market," and, if so, to "describe in detail the evidentiary basis for your contention . . . (including all documents or witnesses that support your contention), including, without limitation, Facebook's **market share in each relevant product market at all times in the Relevant Time Period, how the shares were calculated, and any analyses or sources upon which You base your share calculations**." Consumers objected, including on grounds: (1) the request for Facebook's precise market share and the underlying analysis used to determine it is the subject of expert disclosures; and (2) providing a response **now** as to Consumers' evidentiary basis for Facebook's alleged monopoly power is premature because fact discovery is not substantially complete. Consumers proposed the parties negotiate a mutual schedule for responding to contention interrogatories near the end of fact discovery, including a narrowed version of this interrogatory. Facebook rejected this proposal.

The law disfavors a premature response to this type of contention interrogatory. *See, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at \*2 (N.D. Cal. Dec. 11, 2008) (denying motion to compel, finding "contention interrogatories" regarding "market definition" were "premature at this stage of discovery"); *Campbell v. Facebook Inc.*, 2015 WL 3533221, at \*5 (N.D. Cal. June 3, 2015) (denying Facebook's motion to compel response to contention interrogatories); *Grouse River Outfitters Ltd. v. Netsuite, Inc.*, 2017 WL 1330202, at \*2 (N.D. Cal. Apr. 6, 2017) (denying motion to compel, and finding "little value" in responding to contention interrogatories that "effectively ask the plaintiff to repeat its allegations"). "The purpose of contention interrogatories is to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Campbell*, 2015 WL 3533221, at \*3. Courts are "expressly authorized to defer an answer." Fed. R. Civ. P. 33 adv. Comm. note (1970 am.). "Consequently, *courts in this district have placed 'a burden of justification' on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed*." *Campbell*, 2015 WL 353321, at \*4 (collecting cases) (emphasis added). "[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule

56." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 338-39 (N.D. Cal. 1985).

Facebook has not met its "burden of justification" for compelling an early response to its contention interrogatory. *First*, document and deposition discovery is not substantially complete. While Facebook points to the complaint's filing date and Facebook's compelled re-production of its prior FTC and House Antitrust Subcommittee production, Facebook made its first significant custodial production in response to Consumers' document requests in **September 2022**. Important non-parties have not yet produced documents in response to subpoenas. And, no depositions have been taken. The pace of Facebook's and non-parties' document productions is why the parties jointly sought an extension of the fact-discovery deadline until **June 23, 2022**. Dkt. 376.

*Second*, Facebook does not need a premature response to clarify whether Consumers contend Facebook has monopoly power, or the bases for this contention. Consumers' complaint is clear: it alleges two relevant markets, the Social Network Market and the Social Media Market, and that "Facebook has unlawfully acquired and maintained monopoly power in both markets." Dkt. 87 ¶ 55. The complaint alleges direct and circumstantial evidence of Facebook's monopoly power. As to direct evidence, for example, the complaint alleges Facebook has been able to degrade its products' quality and cites to the House Report and identified Facebook documents. *Id.* ¶¶ 70, 77. As to circumstantial evidence, the complaint alleges Facebook's market share exceeds 65% (the generally required legal minimum), and then provides two supporting metrics: (1) "time spent" on Facebook and its family of apps, compared to other social media apps and social networks (at least 80%); and (2) ad revenue (at least 85%), which is a proxy for Facebook's power because the more users a social network or social media app has, the more popular it is with advertisers. *Id.* ¶¶ 80, 286. Contrary to Facebook's claim, these are not "varying alleged data points." Mot. at 1. They are alternative bases for circumstantially inferring Facebook's monopoly power. Compelling Consumers to repeat these allegations, without the benefit of substantial fact discovery, is "unproductive and wasteful." *See Grouse*, 2017 WL 1330202, at *2. Consumers produced the underlying documents cited in their complaint a year ago.

*Third*, a response will not narrow the scope of the dispute, set up early settlement discussions, or expose a basis for a motion under Rule 11 or 56. Facebook has subpoenaed **dozens** of non-parties with subpoenas seeking their "time spent," ad revenue, and user engagement data, showing it understands Consumers' monopoly power allegations and metrics. Requiring a response to Interrogatory No. 5 now would be premature and of little to no value. *Cf. eBay* , 2008 WL 5212170, at *2 (early response on market definition, a "major issue" in the case, will not "serve to clarify the issues or narrow the scope of the litigation").

*Finally*, Facebook's demand for its precise "market share in each relevant product market at all times" and supporting analysis is the subject of expert disclosures, and should be denied.

## II.   Facebook's Motion to Compel Regarding Interrogatory Nos. 9-12 Should Be Denied

Interrogatory No. 6 requests that Consumers "Identify each statement or omission made by Meta that You challenge as misleading or deceptive." Interrogatory Nos. 9–12 request that for each statement or omission identified, Consumers "describe in full and complete detail":

- "which firms would have entered or exerted increased competitive pressure in" the relevant markets "but did not because of (in full or in part) the statement or omission" (No. 9);
- "each feature or activity that Meta and any other firms . . . would have introduced" and "made available . . . but did not because of (in full or in part) the statement or omission" (No. 10);

- "the 'data privacy practices,' . . . that Meta and any other firms . . . would have maintained . . . but did not because of (in full or in part) the statement or omission" (No. 11);
- "each change in 'application quality,' . . . that Meta and any other firms . . . would have made . . . but did not because of (in full or in part) the statement or omission" (No. 12).

Consumers objected, including on grounds the interrogatories: (1) seek irrelevant information; (2) are, in any case, the subject of expert disclosures; and (3) are premature given fact discovery is not substantially complete and expert reports have not been served. *First*, these contention interrogatories seek answers to hypotheticals at a level of detail that is not required for Consumers to prove their claims. Consumers allege Facebook consistently and intentionally deceived the market about the data it collected from users, and the uses to which that data was put, which diminished competition and resulted in them receiving inadequate compensation for their data. It is basic economics that increased competition tends to yields superior quality products, while a monopolist—free from that increased competition—can suppress quality. Facebook's hypotheticals break down this claim into a level of detail which is both irrelevant and nonsensical. *Second*, the interrogatories require expert analysis of the but-for world (which will be based on fact discovery that is ongoing), including on market definition, barriers to entry, network effects, and compensation for data. Facebook's request for this expert analysis as part of fact discovery— particularly where that analysis will turn on fact discovery that is ongoing—is improper. *Third*, to the extent Consumers are required to respond (and they should not be), the interrogatories are premature because they seek information regarding what non-party competitors would have done absent Facebook's anticompetitive deception; yet, many non-parties have not yet produced documents, including as to their evaluation of Facebook's deception. Facebook has not met its "burden of justification" for compelling an early response. *Campbell*, 2015 WL 353321, at *4.

## III. Facebook's Motion to Compel Regarding Interrogatory Nos. 13-14 Should Be Denied

Interrogatory No. 13 requests, "For **each feature or activity** available to users on each Meta Product that is a Participant in your alleged 'Social Network Market,' state whether the feature or activity is or is not within your alleged 'Social Network Market.'" Interrogatory No. 14 is an identical request regarding the Social Media Market. Consumers objected, including on grounds that they seek irrelevant information and the undefined terms "feature or activity" render the interrogatories vague and ambiguous. *First*, these interrogatories seek irrelevant information (and are nonsensical). Consumers allege Facebook monopolized the Social network and Media Markets, and now Facebook **products** have a large market share. In an antitrust case where the alleged relevant market was office supply stores, it would make no sense to ask Staples whether pens and binders are in the relevant market. The same is true for "features and activities" that are part of the single, integrated Facebook product that a user logs into. Facebook's assertion it needs responses to determine the validity of "gerrymandered" markets (Mot. at 2) is baseless. The alleged markets are well-recognized by government entities such as the House Antitrust Subcommittee, U.K. Competition & Markets Authority, German Federal Cartel Office, and Australian Competition & Consumer Commission. Indeed, Facebook often refers to itself as a "social network" and "social media" service. Facebook does not need a response to take discovery on the relevant markets. Consumers have already identified market participants in other interrogatory responses, and Facebook has subpoenaed them and others. *Second*, Facebook knows "each feature or activity available to users" on its own products; Consumers do not. Consumers cannot respond to this undefined, improper interrogatory unless Facebook identifies each feature or activity it is asking about. Judge Boasberg agreed, compelling Facebook to produce such a list to the FTC.

DATED:  November 16, 2022

Respectfully submitted,

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
  kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
  lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

By */s/ Stephen A. Swedlow*
**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Stephen A. Swedlow (*pro hac vice*)
  stephenswedlow@quinnemanuel.com
Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Interim Counsel for the Consumer Class*

## <u>ATTESTATION OF STEPHEN A. SWEDLOW</u>

This document is being filed through the Electronic Case Filing (ECF) system by attorney Stephen A. Swedlow.  By his signature, Mr. Swedlow attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.


Dated:  November 16, 2022              By:    */s/ Stephen A. Swedlow*
                                                      Stephen A. Swedlow

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of November 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.


Dated:  November 16, 2022              By:    */s/ Stephen A. Swedlow*
                                                      Stephen A. Swedlow