# Bathaee :: Dunne :: LLP

November 29, 2022  **VIA CM/ECF FILING**

The Honorable James Donato, U.S. District Judge
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:   Facebook's Refusal to Answer *Klein* Advertiser Plaintiffs' Interrogatory Nos. 5, 7, and 8

Dear Judge Donato:

On July 25, 2022, Advertiser Plaintiffs served five interrogatories on Defendant Meta Platforms, Inc. ("Facebook"). Each interrogatory is straightforwardly worded and seeks information that is indisputably relevant to Advertisers' operative complaint ("FAC," filed Feb. 28, 2022). On August 24, 2022, Facebook refused to provide **any** substantive response to three of Advertisers' interrogatories (Nos. 5, 7, and 8). After numerous lengthy emails and two separate meet-and-confers—on September 1, 2022, and September 22, 2022, respectively—Facebook still has not provided any substantive response to these interrogatories, five months after they were served. Advertisers are entitled to substantive responses and seek Court intervention.

**Facebook Has Refused to Provide *Any* Response to Advertiser Interrogatory Nos. 5, 7, 8**

**Advertisers' Interrogatory No. 5** states, in full:

> Identify and describe, with specificity, all data, including what Meta internally refers to as "signal," "intent," "identity," or "offsite signal" data, that Meta received from Google, Netflix, eBay, or Amazon, respectively, pursuant to agreements or otherwise. (Ex. A at 5.)[1]

Interrogatory No. 5 is unambiguous and targets facts that are plainly in dispute. Facebook's need for "signal" data for its advertising business after the self-inflicted cratering of its developer Platform in 2015, and its agreements with third parties including Google, Netflix, and eBay to obtain such data, are a centerpiece of the monopoly maintenance scheme alleged in the Advertiser FAC. *See* FAC ¶¶ 6-10 & 15-17 (overview of signals, intent, and identity data, Facebook's acquisition of this data from eBay, Netflix, and Google, and how these actions fit into the monopoly maintenance scheme alleged in this case); 316-33 (Facebook's need for signal, intent, identity, and offsite signal to drive its ads business); 334-64 (Facebook's need for e-commerce signals); 379-93 (Facebook's need for video streaming signals); 394-536 (Facebook's anticompetitive efforts to obtain closely-guarded signal data from eBay and Netflix); 644-56 (Facebook's anticompetitive agreement with Google, in which Google agrees to provide data identifying Facebook users outside Facebook's walled garden) 819, 821, & 828-33 (how Facebook's acquisition and control of this data resulted in antitrust injury); *see also id.* at ¶¶ 860 & 866 (Section 2 claims); 874 (Section 1 claim).

---

[1] Citations to Exhibits A and B refer to the numbers on the bottom of the page of these exhibits (*i.e.*, the original page numbering of the discovery requests and responses).

Additionally, Facebook itself has sought similar information through interrogatories in this case, asking Advertisers to "[i]dentify each piece of 'valuable signal data' and 'AI/ML' that Meta obtained from the 'deals' referenced in Paragraph 828 and 831 of your Amended Complaint" (Facebook's Interrogatory No. 6 to Advertiser Plaintiffs).

Disregarding all this, Facebook responded to Interrogatory No. 5 that it was "unable to provide a response to Interrogatory No. 5 as framed. Meta is willing to meet and confer to discuss the relevance and scope of this interrogatory." (Ex. B at 6.) Despite the impropriety of Facebook's initial (non-)response, Advertisers engaged in good faith with Facebook's request to meet and confer, drafting multiple letters and participating in two meet-and-confers, including a lengthy discussion about exactly why this interrogatory was relevant to the case as written and served. Nonetheless, Facebook has never amended or supplemented its response to Interrogatory No. 5. It has simply refused to provide *any* substantive answer, more than five months after Interrogatory No. 5 was served and more than two months after the parties' second meet-and-confer.

**Advertisers' Interrogatory No. 7** states:

> Identify and describe, with specificity, all data and AI/machine learning models obtained, derived, trained and/or validated using data collected by Onavo or through Onavo apps (e.g., Onavo Protect). (Ex. A at 5.)

Like Interrogatory No. 5, Advertiser Interrogatory No. 7 is concrete, specific, and clear—and relevant to issues in dispute. The Advertiser FAC devotes an entire subsection to Facebook's "Anticompetitive[] Use [of] Onavo Data to Build a Massive, Machine Learning-Driven Surveillance System and to Spy on Facebook Users Even When Using Non-Facebook Apps," FAC ¶¶ 538-69, and specifically ties these allegations into Advertisers' antitrust injury and Section 2 claims, *see id.* at ¶¶ 819 ("Facebook engaged in a series of acts in furtherance of its scheme, including . . . using deceptively-obtained Onavo data to identify and surveil competitive threats, train AI/ML models using information not reasonably available to potential Social Advertising competitors and/or entrants, thereby maintaining the DTBE and Facebook's Social Advertising monopoly"); 821 ("Facebook used deception to obtain through Onavo spyware user information that ordinary competitors would not have access to—and used that information to surveil competitive threats and to train Facebook's ML and AI models"); 823 ("Facebook's Onavo surveillance system exfiltrated personal and sensitive data from user devices, then stored that data in Facebook's massive database, the 'Hive.' . . . Facebook used all the exfiltrated data to build Machine Learning and AI systems as well as other statistical models that provided it real-time insights into competition and user behavior. . . . [T]his stolen Onavo data was not available to rivals or potential entrants in the Social Advertising Market, ensuring that there would be no competitive price check to Facebook's supracompetitive social advertising prices."); *see also id.* at ¶¶ 860 & 866 (Section 2 claims).

Facebook has itself sought substantially the same information from Advertisers via interrogatories, asking Advertisers to "[i]dentify all information, in detail, that you believe Meta obtained or 'stole' through Onavo that 'ordinary competitors would not have access to'" (Facebook's Interrogatory No. 4 to Advertiser Plaintiffs).

Again, Facebook responded to Interrogatory No. 7 that it was "unable to provide a response to Interrogatory No. 7 as framed. Meta is willing to meet and confer to discuss the relevance and scope of this interrogatory." (Ex. B at 8.) After multiple letters, two meet-and-confers, and more than five months' time, Facebook has never provided *any* substantive response to this plainly relevant interrogatory. In fact, during the parties' meet-and-confer process on this interrogatory, Facebook solicited lengthy explanations of this interrogatory's relevance, committed to reevaluate its non-response, and then simply did nothing.

**Advertisers' Interrogatory No. 8** states:

> Identify and describe, with specificity, all machine learning and AI systems used to match users while "offsite" (as that word is used at Meta) to their Facebook IDs, Facebook profiles, and/or "shadow" profiles. (Ex. A at 5.)

Advertiser Interrogatory No. 8 is, like its predecessors, plainly and unambiguously worded, and directed toward information that is clearly relevant to Advertisers' case. Indeed, Advertisers' FAC explains how Facebook used identity matching and "shadow profiles," in conjunction with its ML/AI systems, to maintain its Social Advertising monopoly. *See* FAC ¶¶ 564-69 (Facebook's use of identity matching and shadow profiles in connection with Onavo); 599-614 (relevance of Facebook's identity matching and shadow profiles to its market division agreement with Google); *see also id.* at ¶¶ 819, 821, 823 (antitrust injury from Facebook's Onavo conduct); 819, 821, 829-30 (antitrust injury from Facebook-Google agreement); 860 & 866 (Section 2); 874 (Section 1).

Facebook responded to Interrogatory No. 8 that it was "unable to provide a response to Interrogatory No. 8 as framed. Meta is willing to meet and confer to discuss the relevance and scope of this Interrogatory." (Ex. B at 9.) Multiple letters, two meet-and-confers, and five months after service of Interrogatory No. 8, Facebook has never provided *any* substantive response to it. As with the other subject interrogatories, Facebook's counsel solicited—and received—a lengthy explanation of this interrogatory's relevance from Advertiser counsel, committed to reevaluate Facebook's non-response, and then proceeded to do nothing for more than two months. Advertisers deserve—and seek the Court's assistance in obtaining—a substantive response to this and other plainly relevant interrogatories served nearly half a year ago.

* * *

The Court should compel Facebook to provide complete, substantive responses to Advertisers' Interrogatory Nos. 5, 7, and 8.

DATED: November 29, 2022                        Respectfully submitted,

                                                By:  /s/ Yavar Bathaee

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**            **BATHAEE DUNNE LLP**

Amanda F. Lawrence (*pro hac vice*)             Yavar Bathaee (CA 282388)
alawrence@scott-scott.com                       yavar@bathaeedunne.com
Patrick J. McGahan (*pro hac vice*)             Andrew C. Wolinsky (*pro hac vice*)
pmcgahan@scott-scott.com                        awolinsky@bathaeedunne.com
Michael P. Srodoski (*pro hac vice*)            445 Park Avenue, 9th Floor
msrodoski@scott-scott.com                       New York, NY 10022
156 South Main Street, P.O. Box 192             (332) 322-8835
Colchester, CT 06415
Tel.: (860) 537-5537                            Brian J. Dunne (CA 275689)
                                                bdunne@bathaeedunne.com
Hal D. Cunningham (CA 243048)                   Edward M. Grauman (*pro hac vice*)
hcunningham@scott-scott.com                     egrauman@bathaeedunne.com
Daniel J. Brockwell (CA 335983)                 901 S. MoPac Expressway
dbrockwell@scott-scott.com                      Barton Oaks Plaza I, Suite 300
600 W. Broadway, Suite 3300                     Austin, TX 78746
San Diego, CA 92101                             (213) 462-2772
Tel.: (619) 233-4565
                                                *Interim Co-Lead Counsel for the Advertiser Classes*
Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

## ATTESTATION OF BRIAN J. DUNNE

This document is being filed through the Electronic Case Filing (ECF) system by attorney Brian J. Dunne. By his signature, Mr. Dunne attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: November 29, 2022          By: */s/ Brian J. Dunne*
                                      Brian J. Dunne

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

                                  By: */s/ Brian J. Dunne*
                                      Brian J. Dunne