<u>FILED UNDER SEAL</u>

Bathaee :: Dunne :: LLP

July 27, 2022                                                                                                                  <u>Via CM/ECF Filing</u>

The Honorable James Donato
United States District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94012

Re:     *Klein* Advertisers' Letter Brief Seeking Facebook's Production of Hyperlinked Documents

Dear Judge Donato:

Advertiser Plaintiffs in the *Klein* case respectfully move to compel Defendant Meta Platforms, Inc. ("Facebook") to search for and produce relevant hyperlinked documents embedded within Facebook's prior and future productions. Advertisers and Facebook have been exchanging letters and meeting-and-conferring about this subject for months now, and have reached impasse multiple times.[1] With no movement from Facebook, with fact discovery deadlines approaching, and with the problem continuing in Facebook's most recent productions, Advertisers have no choice but to move the Court for relief. Advertisers ask that the Court order Facebook to: (1) go through its existing production and evaluate the documents sitting behind hyperlinks throughout for relevance; (2) produce all relevant hyperlinked documents to Advertisers, linked through metadata to their parent documents; and (3) produce all hyperlinked documents, linked through metadata to their parents, going forward.

On Apr. 2, 2021, Judge Koh (then presiding over these consolidated actions) ordered Facebook (over its objections) to "produce to Plaintiffs the documents Facebook produced to the Federal Trade Commission and the United States House of Representatives within 30 days." (Dkt. 82.) This production comprised several million documents and represents, more than a year later, nearly the entire universe of documents produced by Facebook in this case. However, there is a huge problem with the documents Facebook has produced here, both in that first production and since: hundreds of thousands of as-produced documents across Facebook's entire production are missing facially relevant (indeed, critical) child documents, which were embedded as hyperlinks and have never been (despite months of requests by Advertisers) reviewed and produced by Facebook.

An email thread produced at PALM-008845039 is instructive as to what's at stake. In this thread, which includes emails from Feb. 15, 2018, to Feb. 26, 2018, Facebook's highest-level executives, including Mark Zuckerberg and Sheryl Sandberg, discuss "a go/no-go decision about entering into a commercial deal with google for Audience Network"—a deal that would ultimately be approved by Zuckerberg and personally signed by Sandberg, and which is a central issue in Advertisers' case. The case for this deal with Google, later known internally as "Jedi Blue," was made to Zuckerberg and Sandberg in a so-called "pre-read," an executive summary of why Facebook should make (or not make) an advertising deal with Google in 2018. The as-produced email on this subject appears below:

---

[1] Advertisers and Facebook discussed the problem of hyperlinked documents at meet-and-confers on Apr. 6, 2022 (virtual), Apr. 8, 2022 (in-person), and Jun. 17, 2022 (virtual), and the parties have exchanged several letters on this subject since Mar. 1, 2022.

July 27, 2022                          **FILED UNDER SEAL**
Page 2

> **Sent:** Thursday, February 15, 2018 8:50 AM
> **To:** Mark Zuckerberg ▮▮▮ Rob Goldman ▮▮▮ Andrew Bosworth ▮▮▮ Mark Rabkin ▮▮▮ Mike Schroepfer ▮▮▮ David Fischer ▮▮▮ Dan Rose ▮▮▮ Sheryl Sandberg ▮▮▮ Alex Musil ▮▮▮ Ami Vora ▮▮▮ Vladimir Fedorov ▮▮▮ Andrea Besmehn ▮▮▮
> **Subject:** Review for AN/Google relationship
>
> Hi All,
>
> We would like to make a go/no-go decision about entering into a commercial deal with google for Audience Network, and more broadly on pursuing a strategy of partnering with ad tech companies in order to get fair access to impressions in the $52B publisher ecosystem. Without which, it will be hard to scale Audience Network to a meaningful source of supply for Facebook ads marketplace.
>
> Here is the pre-read for the proposal: https://fb.quip.com/8tFYAOz0gOXr

As is evident from the above screenshot, the "pre-read" for the potential agreement with Google—the executive summary prepared for and, based on Sheryl Sandberg's direct response,[2] reviewed by the highest-level executives at Facebook—is not attached or excerpted in the as-produced email thread, but rather hyperlinked: "https://fb.quip.com/8tFYAOz0qQXr." Thus, an email thread about Jedi Blue involving Facebook's highest-level executives is, as-produced, missing its central piece.

This is a big problem for Advertisers (as it would be for any plaintiff to be faced with incomplete versions of key documents), and it is repeated literally thousands of times throughout Facebook's production in this case. For example, a search of Facebook's production for "fb.quip.com"—the type of hyperlink used in the above screenshot—hits upon 86,752 documents. Many of these documents contain multiple fb.quip.com hyperlinks within them. As far as Advertisers can tell, *none* of these hyperlinked documents have been produced along with their parents.

Thousands more documents in Facebook's production contain hyperlinks structured as "FB URLs"—shortened, FB-specific hyperlinks that are totally opaque to the reviewer. Thus, for example, a January 2019 document regarding "Marketplace Verticals"[3]—another issue of indisputable relevance to Advertisers' case—links to multiple "fburl.com" documents (and also a Quip link for good measure):

| CREATED | Jan 8, 2019, 11:21 AM by Max Niu |
|---|---|
| DESCRIPTION | Capability Approval Objective Criteria - Marketplace Verticals: Real Estate (https://fb.quip.com/SS2PAMopNYFQ) |
| | Review post in A/C priv Triage group: https://fburl.com/w6at5yem (https://fburl.com/gy5dp5gt) |

None of the embedded documents were produced along with the above parent. And once again, this is not isolated: a search of "fburl.com" in Facebook's production comes back with 127,442 hits.

Thousands of other facially relevant (indeed, critical) documents are hyperlinked—and therefore, entirely missing—from Facebook's production. Thus, for example, a December 2017 email within

---

[2] Ms Sandberg directly responded to the above-quoted email saying: "This is a big deal strategically. When are we meeting to discuss? (I need to be there . . . .)"
[3] PALM-007774344.

Facebook's FTC production discusses the 2018 Facebook Watch budget and the "Competitive Landscape" for Facebook's then-nascent video streaming product. (PALM-003570025.) On the first page of this email thread, Facebook employees discuss a list of video competitors, including Netflix, and state "here is a cut-down of a 150 slide recent competitive analysis – https://www.dropbox.com/s/jys94d3celnji0x/Video%20Competitive%20Presentation_V5.pptx?dl=0." The hyperlinked "competitive analysis" of, among other companies, Netflix, against Facebook's nascent Watch product, was not produced along with PALM-003570025. Advertisers do not have the precise version—or, based upon a search for "Video Competitive Presentation" in Facebook's production, *any* version—of this linked presentation, despite its facial relevance to Advertisers' case.

At the same time, in lengthy meet-and-confers and letters regarding custodians, search terms, and Facebook's responses to Advertisers' requests for production—which seek exactly the sort of documents apparently hyperlinked in the above examples, *e.g.*, documents pertinent to Jedi Blue; to FB Marketplace strategy; and to competition between FB Watch and Netflix prior to those companies cutting a deal as alleged in the FAC (*see, e.g.,* FAC ¶¶ 463-536)—Facebook's position has been that (1) it will not produce documents embedded within its FTC production unless Advertisers first identify potentially relevant linked documents (which are, by definition, not actually reviewable by Advertisers, as only Facebook knows what is behind hyperlinks), and at the same time (2) the FTC search and production "discharged [Facebook]'s obligation to conduct a reasonable search for documents related to [Advertisers'] RFPs." In sum, Facebook has made it clear that where Advertisers' Requests overlap with the FTC production, the FTC production is all Facebook will affirmatively produce.

As a result of the above, Advertisers find themselves in an impossible position: there are thousands of potentially relevant, but opaquely linked, documents embedded throughout Facebook's past productions. Advertisers are entitled, under the Federal Rules, to have Facebook review and (if relevant) produce such documents. Yet Facebook's present discovery position demands that Advertisers conduct a "re-relevance" review on hundreds of thousands of Facebook parent documents that *were produced by Facebook*—just *incompletely*. This Court (or for newer productions, Facebook) has already determined the parent documents in question to be sufficiently relevant to warrant production. Facebook must produce these documents in their entirety—*i.e.*, together with relevant embedded documents, with parent-child relationships maintained.

The harm to Advertisers is ongoing. On Thursday, Jul. 21, 2022, Facebook produced an email from March 2019 with the subject "Onavo Data Replacement," in which Facebook employees discuss "the pain about going 'blind'" after the public shuttering of Onavo, and the need for "an Onavo replacement." (PALM-012828139.) The centerpiece of this conversation is an opaque link—without even a URL—to a Facebook-internal post regarding data usage in Marketplace. Advertisers don't know what the linked documents says, and Facebook's just-last-week production of the parent, even after months of discussions on hyperlinked documents, doesn't include the linked document.

The situation is untenable, and across three meet-and-confers and voluminous letters spread over nearly five months, Facebook has refused to actually go through its existing production; evaluate the documents sitting behind hyperlinks throughout for relevance; and produce those documents to Advertisers, linked through metadata to their parent documents. Yet anything less represents a failure by Facebook to comply with its most basic discovery obligations. *See* J. Donato Standing Order Regarding Civil Discovery at ¶ 6 ("A burden, overbreadth or similar objection shall not be a valid reason for withholding requested, responsive materials actually known to counsel or the party.").

July 27, 2022                          **FILED UNDER SEAL**
Page 4

| | |
|---|---|
| Dated: July 27, 2022 | Respectfully Submitted, |
| **BATHAEE DUNNE LLP** | **SCOTT+SCOTT,**<br>**ATTORNEYS AT LAW, LLP** |
| /s/ Yavar Bathaee<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (*pro hac vice*)<br>awolinsky@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772 | /s/ Kristen M. Anderson<br>Kristen M. Anderson (CA 246108)<br>kanderson@scott-scott.com<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Tel.: (212) 223-6444<br>Fax: (212) 223-6334<br><br>Christopher M. Burke (CA 214799)<br>cburke@scott-scott.com<br>David H. Goldberger (CA 225869)<br>dgoldberger@scott-scott.com<br>Kate Lv (CA 302704)<br>klv@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br>Fax: (619) 233-0508<br><br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br>Fax: (860) 537-4432 |

*Interim Co-Lead Counsel for the Advertiser Class*

| | |
|---|---|
| **LEVIN SEDRAN & BERMAN LLP** | **AHDOOT & WOLFSON, PC** |
| Keith J. Verrier (*pro hac vice*)<br>Austin B. Cohen (*pro hac vice*)<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3997<br>Tel.: (215) 592-1500 | Tina Wolfson (CA 174806)<br>Robert Ahdoot (CA 172098)<br>Theodore W. Maya (CA 223242)<br>Henry J. Kelson (*pro hac vice*)<br>2600 West Olive Avenue, Suite 500 |

July 27, 2022 **FILED UNDER SEAL**
Page 5

Fax: (215) 592-4663
kverrier@lfsblaw.com
acohen@lfsblaw.com

Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com

*Members of Executive Committee for the Advertiser Class*

## ATTESTATION OF BRIAN J. DUNNE

This document is being filed through the Electronic Case Filing (ECF) system by attorney Brian J. Dunne. By his signature, Mr. Dunne attests that he has obtained concurrence in the filing of this document from each of the attorneys identified in its signature block.

Dated: July 27, 2022               By:   */s/ Brian J. Dunne*
                                         Brian J. Dunne

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, and served a true and correct copy of the unredacted document by electronic mail upon all counsel of record.

Dated: July 27, 2022               By:   */s/ Brian J. Dunne*
                                         Brian J. Dunne