UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Case No. 3:20-cv-08570-JD <br><br> **ORDER RE MOTION TO DISMISS** |

This case features two groups of plaintiffs who allege antitrust injuries caused by defendant Meta Platforms, Inc. (Meta), which was rebranded from Facebook, Inc. The allegations in the complaints are directed at the Facebook social networking service, and the Court will use Facebook for clarity. One plaintiff group consists of Facebook users, who call themselves "consumers." They allege that Facebook illegally acquired and maintained "a stranglehold on the Social Network and Social Media Markets." Dkt. No. 87 ¶ 3 (consolidated consumer class action complaint). The consumer complaint is not in issue for present purposes.

The focus here is on the other plaintiff group, namely individuals and entities who bought advertising on Facebook. They allege that they paid artificially inflated ad prices as a result of Facebook's illegal monopolization of "the market for social advertising." Dkt. No. 391 ¶ 1 (first amended consolidated advertiser class action complaint) (FAC).[1] They allege three claims: monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15

---

[1] The advertisers' complaint has a rather tortured ECF docket history because the advertisers filed a redacted version that the Court determined was overdone. The first amended consolidated advertiser complaint was originally filed at Dkt. No. 237. The Court rejected the overbroad redactions. Dkt. No. 344. A revised first amended complaint was refiled pursuant to the order at Dkt. No. 353-1. Dkt. No. 391 is a separate ECF entry for No. 353-1, and is the operative complaint for the advertiser group.

U.S.C. § 2, and an unlawful restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 857-79.

A prior district judge who presided over this litigation granted and denied in part Facebook's motion to dismiss the advertiser and consumer complaints under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 214. Each plaintiff group was granted leave to amend. Only the advertiser group elected to file an amended complaint, which is the FAC. Facebook asks to dismiss the FAC under Rule 12(b)(6). Dkt. No. 395.[2] The parties' familiarity with the record is assumed, and the motion is denied.

The parties have resolved most of Facebook's objections to the timeliness of the Section 2 claims. Facebook read the FAC to continue to challenge: (1) the acquisitions of Instagram and WhatsApp in 2012 and 2014, respectively; (2) the use of Onavo starting in 2011; and (3) changes to Facebook's Platform policies in 2015, along with data sharing agreements that followed those policy changes. Dkt. No. 395 at 5. Facebook suggested that conduct preceding December 2016 would be untimely under the applicable four-year statute of limitations, 15 U.S.C. § 15b, given that the advertisers' original complaint was filed on December 18, 2020. *See Affilious, Inc. v. Facebook, Inc.*, No. 3:20-cv-09217-JD, Dkt. No. 1. In response, the advertisers stated that they will not seek damages for, or otherwise base their Section 2 claims on, "any pre-limitations period conduct." Dkt. No. 392 at 15. Facebook has no substantive concerns about this representation, *see* Dkt. No. 283 at 1, and the advertisers will be held to it.

The sole remaining timeliness question relates to the filing of the amended complaint. Facebook says that the FAC, which was filed on February 28, 2022, presents new allegations that "do not relate back to the conduct, transaction, or occurrence set out" in the initial complaint. Dkt. No. 395 at 8 (internal quotation and citation omitted). Consequently, Facebook suggests that February 28, 2018, forward is the relevant time period, and that conduct preceding this date should be disregarded and the FAC trimmed or dismissed.

---

[2] The motion to dismiss has its own convoluted history from overbroad redactions. The motion and opposition were filed with redactions. Dkt. Nos. 262, 271. The Court directed the parties to file unredacted versions of the motion to dismiss briefing. Dkt. No. 344. The citations here are to the unredacted versions, Dkt. Nos. 395 (motion), 392 (opposition).

The point is not well taken. The amended complaint responded to the shortfalls identified in the order of dismissal. If anything, the new allegations simply add detail to the prior ones; they are not radical changes or entirely new topics. The new allegations arise out of the same conduct stated in the original complaint, and Facebook has not demonstrated that a relation back will unfairly prejudice it in any way. Consequently, they relate back to the date of the original complaint for limitations purposes. *See* Fed. R. Civ. P. 15(c); *Bebault v. DMG Mori USA, Inc.*, No. 18-cv-02373-JD, 2020 WL 2065646, at *3 (N.D. Cal. Apr. 29, 2020); *see also ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("The relation back doctrine of Rule 15(c) is liberally applied.") (internal quotation and citation omitted).

Facebook also challenges the Section 2 claims as failing to "plausibly allege any cognizable anticompetitive effect from the challenged conduct, let alone one that caused them antitrust injury." Dkt. No. 395 at 9. These are elements of a Section 2 claim. *See In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD, 2022 WL 17252587, at *8 (N.D. Cal. Nov. 28, 2022) (to state a Section 2 claim, plaintiffs must show "(a) [Facebook's] possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury") (quoting *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020)).

This too is unavailing. The FAC describes a "monopoly broth" of anticompetitive conduct, which the prior district judge sustained as a plausible approach. *See* Dkt. No. 214 at 71 ("Under a 'monopoly broth' theory of liability, a plaintiff 'can state a Section 2 claim by alleging a series of practices that are anticompetitive, even if some of the activities would be lawful if viewed in isolation.'") (citation omitted). The ingredients of the broth are said to be: (1) the targeting of competitors for whitelist and data sharing agreements "on pain of denial of access to Facebook's Platform and APIs"; (2) entering into unlawful data and market division agreements with Netflix, eBay, and Foursquare; (3) using data that was deceptively obtained through the Onavo app to surveil and target competition; (4) integrating artificial intelligence and machine learning models from Facebook, Instagram, and WhatsApp; and (5) entering into an agreement with Google to reinforce Facebook's position in the social advertising market. Dkt. No. 391 ¶¶ 860, 866.

This is enough to go forward. The advertisers have plausibly alleged "predatory and exclusionary conduct" that caused the social advertising market to be less competitive. *Qualcomm*, 969 F.3d at 990. This is said to have "resulted in fewer Social Advertising choices for advertisers and left only Facebook's monopoly rents as available prices in the" market. Dkt. No. 391 ¶ 825; *see also id.* ¶ 835 (advertisers paid "supracompetitive prices inflated by Facebook's anticompetitive scheme"). Facebook's contentions to the contrary raise factual disputes that are not amenable to resolution in a motion to dismiss.

As a closing point, Facebook says that plaintiffs Affilious, Inc., Jessyca Frederick, and 406 Property Services, PLLC, lack Article III standing to bring the Section 1 claim alleged in Count III. Dkt. No. 395 at 15. The claim is based on an agreement Facebook entered with Google, codenamed "Jedi Blue," in September 2018. Dkt. No. 391 ¶¶ 645-47. By the advertisers' own class definition, Jedi Blue could not have injured the pre-2018 named plaintiffs, "who purchased advertising from Facebook between December 1, 2016, and April 3, 2018, but not after April 3, 2018." *Id.* ¶ 839.

The Court declines to resolve the question at this stage of the case. Facebook may ask to revisit it if a fully developed record so warrants. The same goes for plaintiff Mark Young. *See* Dkt. No. 395 at 15 n.9.

**IT IS SO ORDERED.**

Dated:  December 6, 2022

JAMES DONATO
United States District Judge