December 15, 2022                                                                                                    **VIA CM/ECF FILING**

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 —19th Floor
San Francisco, CA 94102

Re:     <u>Discovery Letter Brief to Compel Production from Apple Inc.</u>

Dear Judge Donato:

   Consumer Plaintiffs ("Consumers") move to compel production from non-party Apple Inc. Consumers subpoenaed Apple on April 6, 2022. Consumers and Apple have conferred five times, most recently on December 1, 2022, and have exchanged multiple rounds of correspondence, where Consumers narrowed many of the requests. Yet Apple objects that its documents are irrelevant to this case, and even if they are relevant, it is too burdensome to even discuss the possibility of searching for them. Apple refuses to search the documents of ***any*** custodian in response to Consumers' requests. To date, Apple has produced 24 documents in response to Consumers' subpoena—23 of which are screenshots of Apple's publicly available website. Consumers file this letter to compel production of four categories of documents: (1) Apple's App Tracking Transparency feature ("ATT") (RFPs 6, 8), (2) the 2019 Sun Valley meeting between Tim Cook and Mark Zuckerberg (RFP 10), (3) Apple's review, evaluation, and analysis of Facebook's data collection and use practices (RFPs 3-5), and (4) Apple's review, evaluation, and analysis of Facebook's services that compensate users for their data (RFP 10).

   **<u>Apple's documents are relevant.</u>** The Consumer Class consists of individuals that have used Facebook. Apple acts as a gatekeeper to Facebook through Apple's App Store, devices (iPhone, iPad, Mac), and browser (Safari), necessarily influencing these users' (*i.e.*, Consumer Class members') use and experience of Facebook in ways critical to this case. For example, during the class period Apple controlled device-identification tracking, which was central to Facebook's ability to harvest data on users and deliver personalized ads. Apple often inserts itself into the public debate on privacy and data issues, positioning itself in opposition to Facebook.[1]

   <u>(1) App Tracking Transparency</u> is an Apple feature that permits users to choose whether an app (like Facebook) can track their activity across other apps and websites—exactly the kind of data practice at issue in this case. ATT strikes at the heart of Facebook's business model, and indeed *directly caused $10 billion in lost sales*.[2] Facebook admitted in its most recent SEC filing that the change in Apple's tracking policies: "reduce[d] our . . . ability to target and measure advertising, which has negatively impacted, and we expect will continue to negatively impact, the size of the budgets marketers are willing to commit to us."[3] Apple's launch of ATT appears to be an almost perfect natural experiment demonstrating that if users were given the knowledge and choice to prevent Facebook from collecting and using their data, they would—and Facebook's

---

[1] *See*, *e.g.*, Kate O'Flaherty, *Apple Slams Facebook And Google With Bold New Privacy Ad*, FORBES (May 25, 2022), https://www.forbes.com/sites/kateoflahertyuk/2022/05/25/apple-slams-facebook-and-google-with-bold-new-privacy-ad/?sh=53e3c8233287.

[2] Meghan Bobrowsky, *Facebook Feels $10 Billion Sting From Apple's Privacy Push*, WALL ST. J. (Feb. 3, 2022), https://www.wsj.com/articles/facebook-feels-10-billion-sting-from-apples-privacy-push-11643898139 (citing Facebook CFO David Wehner).

[3] *See* Meta Platforms, Inc., Quarterly Report (Form 10-Q) (Sept. 30, 2022) at 64.

monopoly would not exist as it does today, and Facebook would have to provide compensation for users' data. Consumers seek Apple's documents relating to (a) ATT's origins, intent, purpose, motivations, and/or strategies (RFP 6), and (b) the dollar value of data as shown by Facebook's representations, discussions, or threats of legal or other punitive action related to ATT (RFP 8).

Each of these categories of documents is relevant. *First*, if Apple developed ATT because it recognized there is consumer demand for such a tool, that would tend to establish users care about collection and use of their data. *See* ECF No. 214 at 64 (whether "data privacy practices" are material is an element of Consumers' antitrust claim). Additionally, researchers found Facebook and others "have been allowed to keep sharing user-level signals from iPhones," despite ATT's promises of privacy.[4] Apple's internal evaluation of the success or failure of Facebook's efforts to continue gathering data is directly relevant to Consumers' claims about Facebook's misrepresentations to users regarding its practices of collecting their data. *Second*, documents regarding the dollar value of data relate to Consumers' allegations that user data has monetary value and absent Facebook's monopolization, Facebook would have had to provide compensation for users' data. Apple appears to have documents supporting this claim, and it should be required to produce them. For example, Apple's ATT promotional materials state "data" is "fueling a $227 billion-a-year industry." *Third*, ATT participation rates are relevant to Consumer's claim that users care about collection and use of their data.

Apple argues Consumers should get such information from public sources or from Facebook itself. But the information Consumers seek is not available publicly or from Facebook. Neither have documents reflecting *why Apple* developed and implemented ATT; nor do they possess documents regarding *Apple's* views on the *multi-billion-dollar* data "industry."

(2) Documents relating to the 2019 Sun Valley Meeting between Tim Cook and Mark Zuckerberg are relevant to establishing whether Facebook's statements as to its data practices were deceptive or omitted material information. ECF No. 214 at 54–57 (falsity of Facebook's statements is an element of Consumers' antitrust claim). They also tend to establish only a sophisticated entity like Apple—not everyday individuals (Consumers)—could even possibly begin to uncover Facebook's deception. *Id*. at 59 (Facebook's "false representations . . . could not have been revealed by anybody without significant technical expertise" is an element of Consumers' antitrust claim). Reportedly, at this meeting Mr. Cook "blasted" Facebook for its role in the Cambridge Analytica scandal, stated that "Facebook should delete any information that it collected about people outside of its core apps," and told Mr. Zuckerberg that his core business was untenable.[5] Consumers seek Apple's documents reflecting this meeting, including what was said during it and by whom. Such documents bear on the facts underlying the Cambridge Analytica scandal, such as the basis for Mr. Cook's belief that Facebook had engaged in data-related misconduct.

Consumers cannot obtain from public sources *Apple's* documents related to this meeting. Nor can they obtain these materials from Facebook, whose recounting of the meeting may well be

---

[4] Patrick McGee, *Apple Reaches Quiet Truce Over iPhone Privacy Changes*, FINANCIAL TIMES (Dec. 8, 2021), https://www.ft.com/content/69396795-f6e1-4624-95d8-121e4e5d7839; *see also* Sarah Krouse & Josh Sisco, *Apple's Empty Threat? Silence Over iPhone Ad Workarounds Sows Confusion*, THE INFORMATION (Dec. 10, 2021), https://www.theinformation.com/articles/apples-empty-threat-silence-over-iphone-ad-workarounds-sows-confusion.

[5] Mike Isaac and Jack Nicas, *Breaking Point: How Mark Zuckerberg and Tim Cook Became Foes*, N.Y. TIMES (Apr. 26, 2021), https://www.nytimes.com/2021/04/26/technology/mark-zuckerberg-tim-cook-facebook-apple.html.

different than Apple's. Due to the extremely specific nature of this request, it would be a simple matter to find responsive documents through meeting attendees, date range, or targeted and specific search strings. But Apple has so far refused to run even a single search string on this topic.

(3) Apple's evaluation, and discussion of Facebook's data collection and use practices are relevant to Consumers' antitrust claims, which are based on Facebook's deceptive statements and omissions as to its data practices. Apple has repeatedly commented publicly on Facebook's practices, including that users' data is used "often *without their knowledge or permission*" and that Facebook "*paid millions in fines* for using personal data for purposes *outside those they had specified*." *E.g.*, "A Day in the Life of Your Data" presentation (link) at 3, 5, 13 (referencing articles about Facebook). Consumers seek documents from Apple regarding the bases for Apple's comments, *i.e.*, its review, analysis, and discussion of Facebook's data collection and use practices.

Consumers have limited their request to three incidents, Facebook's: (a) 2011 consent decree with the FTC, (b) exchange of user data with third parties (including Apple), and (c) 2019 consent decree with the FTC. Apple apparently believes Facebook engaged in deception as to its data practices. Apple should produce evidence supporting those views, which would tend to establish Facebook's deception. Apple's documents also tend to establish only a sophisticated entity—not everyday individuals like Consumers—could have uncovered Facebook's deception.

(4) Documents related to Facebook's programs that compensate users for their data are relevant to Consumers' damages theories. Consumers allege that in the but-for world, Facebook would have been required to compensate users for their data. In the actual world, Facebook has already monetarily compensated users for their data through its Research, Study, and Viewpoints apps. Apple's analysis of these Facebook programs bears on, at least, Consumers' claim Facebook could have feasibly compensated users for their data. Apple's position in the market where it hosts these apps on the App Store also suggests that Apple is likely to possess unique documents, including discussion of Facebook's requests to list or maintain these apps in the App Store.

Apple's vague offer to produce only "correspondence" with Facebook as to "enforcement decisions" for Facebook Blue (the social network) and other Facebook family apps is insufficient. It does not at all address Consumers' specific request for documents related to Facebook's **data compensation apps,** Research, Study, and Viewpoints. Producing only bilateral Facebook-Apple communications would also exclude (for no reason) Apple's unique, internal documents which do not include Facebook. Consumers also seek Apple's review and analysis of Facebook's data compensation services and proposals, not just Apple's "enforcement decisions" as to other Facebook apps (*i.e.*, whether those other apps did or did not comply with Apple's App Store rules).

**Apple cannot plausibly claim undue burden.** With a market cap of $2.3 trillion, Apple Inc. is the largest tech company in the world. But even setting this aside, Consumers have proposed multiple methods of reducing the burden on Apple, including the use of limited search terms and custodians. Apple is routinely required to produce, as a non-party, custodial documents in antitrust cases. *FTC v. Qualcomm Inc.*, No. 17-cv-00220 (N.D. Cal.), Dkts. 445-1 and 663 (45 custodians); *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C.), Dkt. 177 (19 custodians). Other non-parties are doing so in this case. Apple has failed to articulate any particularized burden, such as any estimation of a dollar cost or personnel hours. *Belcher v. Lopinto*, 2019 WL 12093916, at *4 (E.D. La. Dec. 23, 2019). This, despite agreeing to search three custodians for documents in response to requests from Facebook. Consumers request that the Court order Apple to conduct a reasonable search for documents responsive to the categories set forth above.

DATED: December 15, 2022

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
 steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

By */s/ Brian D. Clark*
 **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
 wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
 rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
 bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
 rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
 aswagner@locklaw.com
Kyle J. Pozan (*pro hac vice*)
 kjpozan@locklaw.com
Laura M. Matson (*pro hac vice*)
 lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Respectfully submitted,

By */s/ Kevin Y. Teruya*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Michelle Schmit (*pro hac vice*)
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

*Interim Counsel for the Consumer Class*

# Excerpts of Plaintiffs' Document Requests to Apple Inc.

1 features, policies, or practices, including to third parties or internally for any purpose, whether or
2 not specifically consented to by users.

3     16.    As used herein, "Identifiers" refers to the real name, username, email address,
4 mailing address, User ID, Device ID, Advertising ID (also called IDFA, identifier for advertising),
5 Cookie ID, IP address, or any other online identifier that is used as a mean of uniquely identifying
6 a user or device.

7     17.    Any terms not otherwise defined shall be given their plain and ordinary meanings.

## DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Documents You produce voluntarily or pursuant to a Subpoena issued by any other Party in the above-captioned action.

**REQUEST NO. 2:**

All Documents You produce voluntarily or pursuant to a Subpoena, Civil Investigative Demand, Information Request, or informal request issued by any Party in the action captioned *Federal Trade Commission v. Meta Platforms, Inc.*, 1:20-cv-03590-JEB (D.D.C.) or to the Federal Trade Commission.

**REQUEST NO. 3:**

All Documents and Communications relating to Facebook's User Data Practices or Facebook's representations regarding its User Data Practices.

**REQUEST NO. 4:**

All Documents and Communications relating to Your review, analysis, evaluation, and/or discussion of the following acts or events, including Facebook's User Data Practices or Facebook's representations regarding its User Data Practices in connection with those acts or events: (1) Facebook's News Feed feature; (2) Facebook's Beacon program; (3) Facebook's Central Privacy Page; (4) Facebook's Like button; (5) Facebook's use of "cookies"; (6) Facebook's 2009 decision to change users' default sharing settings to "public"; (7) Facebook's 2012 settlement with the Federal Trade Commission; (8) Facebook's announcement (and revocation) of a policy that future changes affecting Facebook's users' privacy would require Facebook's users' approval through

5

voting; (9) Facebook's View Tags feature; (10) Facebook's creation of "dossiers" on Facebook users and non-users; (11) third-parties' access to Facebook "Affected Friends" and "Friends of Friends" data; (12) Facebook's use of users' and non-users' geolocation data; (13) Facebook's use of users' and nonusers' biometric information; (14) Facebook's use of users' and nonusers' contact information (*e.g.*, telephone numbers); (15) Cambridge Analytica; (16) Facebook's 2019 settlement with the Federal Trade Commission and the United States Department of Justice; and (17) Facebook's access to and provision of data through "whitelisting" and "Preferred Partner" arrangements.

**REQUEST NO. 5:**

All Documents and Communications relating to the effects of Facebook's User Data Practices or Facebook's representations regarding its User Data Practices on competing services in the Social Network Market and Social Media Market.

**REQUEST NO. 6:**

All Documents and Communications relating to the origins, intent, purpose, motivations, and/or strategies for Your User Data Practices, including but not limited to the following User Data Practices: (1) App Tracking Transparency; (2) Do-Not-Track privacy setting for Safari, released as part of the Lion Mac OS X operating system; (3) Content Blockers for Safari; (4) Cross-Site Tracking; (5) Intelligent Tracking Prevention (ITP); (6) Hide IP Address; and (7) Fingerprinting Defense.

**REQUEST NO. 7:**

All Documents sufficient to identify the number and identity of consumers or users who opted out of being tracked across applications using Apple's App Tracking Transparency feature[1], including whether the consumer or user opted to use this feature on individual apps by selecting "Ask App Not to Track" (and if so, which apps) or as a global setting by turning off "Allow Apps to Request to Track" in Settings.

6

**REQUEST NO. 8:**

All Documents and Communications regarding Facebook's representations, discussions, or threats of legal or other punitive action related to Apple's App Tracking Transparency feature and other User Data Practices.

**REQUEST NO. 9:**

All Documents sufficient to identify consumers or users who have opted into or did not opt out of Apple's browser privacy features on iOS, iPadOS, MacOS, and any other operating systems or browsers including but not limited to:

1. Do-Not-Track privacy setting for Safari, released as part of the Lion Mac OS X operating system,
2. Content Blockers for Safari,
3. Cross-Site Tracking,
4. Intelligent Tracking Prevention (ITP),
5. Hide IP Address, and
6. Fingerprinting Defense.

**REQUEST NO. 10:**

All Documents and Communications, including but not limited to notes, calendar entries, and presentation slides, relating to Your meetings with Facebook, including Mark Zuckerberg and Tim Cook's meeting at the Sun Valley retreat in Idaho in July 2019, regardless of the time they were created.

**REQUEST NO. 11:**

All Documents and Communications relating to Your review, analysis, evaluation, and/or discussion of Facebook's Onavo products (*e.g.*, Onavo Protect, Onavo Bolt App Lock, Onavo Extend), including but not limited to Facebook's User Data Practices in connection with its Onavo products, Facebook's representations regarding those practices, and the contemplated or actual availability, maintenance, and/or removal of Facebook's Onavo products in or from Apple's App Store and/or Enterprise Certification Program.

# Excerpts of Apple Inc.'s Responses and Objections to Plaintiffs' Document Requests

**REQUEST FOR PRODUCTION NO. 3**:

All Documents and Communications relating to Facebook's User Data Practices or Facebook's representations regarding its User Data Practices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Apple objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation. More specifically, it is overbroad and unduly burdensome to demand that a non-party, such as Apple, search for and produce documents concerning Facebook's practices and representations when any necessary information concerning Facebook's practices and representations can be obtained from Facebook itself. Further, Apple's internal documents and communications concerning Apple's views of Facebook's practices or representations (if any) are not relevant to any claims or defenses, so Request No. 3 is overbroad and unduly burdensome. Apple also objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, not proportionate to the needs of this action, and duplicative to the extent that it seeks documents sought by another Request. Apple further objects to Request No. 3 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets. Finally, even with Plaintiffs' offer[2] to limit the Request to: (i) Apple's internal documents, internal communications, and communications with non-Facebook entities and (ii) a custodial search of eleven Apple executives and employees, the Request remains overbroad and unduly burdensome for the reasons listed above.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

---

[2] On May 20, 2022, Plaintiffs sent Apple a letter in which Plaintiffs offered to limit certain of the Requests. Throughout these Responses, Apple will refer to the limitations proposed in Plaintiffs' May 20, 2022 letter as "Plaintiffs' offer."

**REQUEST FOR PRODUCTION NO. 4**:

All Documents and Communications relating to Your review, analysis, evaluation, and/or discussion of the following acts or events, including Facebook's User Data Practices or Facebook's representations regarding its User Data Practices in connection with those acts or events: (1) Facebook's News Feed feature; (2) Facebook's Beacon program; (3) Facebook's Central Privacy Page; (4) Facebook's Like button; (5) Facebook's use of "cookies"; (6) Facebook's 2009 decision to change users' default sharing settings to "public"; (7) Facebook's 2012 settlement with the Federal Trade Commission; (8) Facebook's announcement (and revocation) of a policy that future changes affecting Facebook's users' privacy would require Facebook's users' approval through voting; (9) Facebook's View Tags feature; (10) Facebook's creation of "dossiers" on Facebook users and non-users; (11) third-parties' access to Facebook "Affected Friends" and "Friends of Friends" data; (12) Facebook's use of users' and non-users' geolocation data; (13) Facebook's use of users' and nonusers' biometric information; (14) Facebook's use of users' and nonusers' contact information (e.g., telephone numbers); (15) Cambridge Analytica; (16) Facebook's 2019 settlement with the Federal Trade Commission and the United States Department of Justice; and (17) Facebook's access to and provision of data through "whitelisting" and "Preferred Partner" arrangements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

Apple objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation.  More specifically, it is overbroad and unduly burdensome to demand that a non-party, such as Apple, search for and produce documents concerning Facebook's practices and representations and various "acts or events" involving Facebook when the necessary information can be obtained from Facebook itself.  Further, Apple's internal documents and communications concerning Apple's review, analysis, evaluation, and/or discussion (if any) of Facebook's listed acts or events are not relevant to any claims or defenses, so Request No. 4 is overbroad and unduly burdensome.  Apple also objects to Request No. 4 on the grounds that is it vague and ambiguous to the extent it seeks documents and communications regarding "Facebook's News Feed feature," "Facebook's Beacon program," "Facebook's Central Privacy Page," "Facebook's Like button," "Facebook's 2012 settlement with the Federal Trade Commission," "Facebook's View Tags feature," "dossiers," "Affected Friends," "Friends of Friends," "Cambridge Analytica," "Facebook's 2019 settlement with the Federal Trade

Commission and the United States Department of Justice," "whitelisting," and "Preferred Partner" because those terms or phrases are undefined and open to interpretation. Apple further objects to Request No. 4 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets. Finally, even with Plaintiffs' offer to limit the Request to: (i) Apple's internal documents, internal communications, and communications with non-Facebook entities and (ii) a custodial search of eleven Apple executives and employees, the Request remains overbroad and unduly burdensome for the reasons listed above.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 5**:

All Documents and Communications relating to the effects of Facebook's User Data Practices or Facebook's representations regarding its User Data Practices on competing services in the Social Network Market and Social Media Market.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

Apple objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation. More specifically, it is overbroad and unduly burdensome to demand that a non-party, such as Apple, search for and produce documents concerning the effects of Facebook's practices and representations when the necessary information can be obtained from Facebook itself. Further, Apple's internal documents and communications relating to Facebook's practices or representations (if any) are not relevant to any claims or defenses, including because Apple does not operate a "competing service[]," so Request No. 5 is overbroad and unduly burdensome. Apple also objects to Request No. 5 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets. Finally,

even with Plaintiffs' offer to limit the Request to: (i) Apple's internal documents, internal communications, and communications with non-Facebook entities and (ii) a custodial search of eleven Apple executives and employees, the Request remains overbroad and unduly burdensome for the reasons listed above.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 6**:

All Documents and Communications relating to the origins, intent, purpose, motivations, and/or strategies for Your User Data Practices, including but not limited to the following User Data Practices: (1) App Tracking Transparency; (2) Do-Not-Track privacy setting for Safari, released as part of the Lion Mac OS X operating system; (3) Content Blockers for Safari; (4) Cross-Site Tracking; (5) Intelligent Tracking Prevention (ITP); (6) Hide IP Address; and (7) Fingerprinting Defense.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

Apple objects to Request No. 6 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) Apple's User Data Practices are of no (or, at most, minimal) relevance to the claims or defenses in this case. Moreover, even with Plaintiffs' offer to limit the Request to documents and communications that refer or relate to Facebook, the Request remains overbroad and unduly burdensome for the reasons listed above. Apple further objects to Request No. 6 on the grounds that it is vague and ambiguous to the extent it seeks documents and communications regarding "App Tracking Transparency," "Do-Not-Track privacy setting for Safari," "Content Blockers for Safari," "Cross-Site Tracking," "Intelligent Tracking Prevention (ITP)," "Hide IP Address," and "Fingerprinting Defense" because the terms and/or phrases are undefined and open to interpretation. Apple will interpret the terms and/or phrases in accordance with the ways that they are defined and used in the support, developer, and privacy sections of Apple's websites.[3]

---

[3] *See, e.g.,* https://support.apple.com/en-us/HT212025 ("App Tracking Transparency"); https://developer.apple.com/documentation/safariservices/creating_a_content_blocker ("Content

*(cont'd)*

Apple also objects to Request No. 6 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets.

Subject to and without waiving the foregoing objections, Apple is willing to produce documents sufficient to show the contours of the listed User Data Practices, to the extent such documents are readily available.

**REQUEST FOR PRODUCTION NO. 7**:

All Documents sufficient to identify the number and identity of consumers or users who opted out of being tracked across applications using Apple's App Tracking Transparency feature, including whether the consumer or user opted to use this feature on individual apps by selecting "Ask App Not to Track" (and if so, which apps) or as a global setting by turning off "Allow Apps to Request to Track" in Settings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

Apple objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the requested information is of no (or, at most, minimal) relevance to the claims or defenses in this case, and/or (c) identifying and producing the requested documents would impose an undue burden on Apple. Apple further objects on the grounds that the Request is overly broad, unduly burdensome, vague and ambiguous, including, but not limited to, the extent it requests information regarding the number of consumers or users who opted out of being tracked, the identity of consumers or users who opted out of being tracked, and the method by which those consumers or users opted out of being tracked (including information about consumer opt out across any and all "individual apps"). Apple further objects to this Request to the extent that it seeks materials that, if disclosed, would violate the privacy interests of others. Apple also objects to Request No. 7 on the grounds that it is vague and ambiguous to the extent it seeks documents regarding "App Tracking Transparency," "Ask App Not to Track," and "Allow Apps to Request to Track" because the terms

---

Blockers for Safari"); https://support.apple.com/guide/safari/prevent-cross-site-tracking-sfri40732/mac ("Cross-Site Tracking"); https://www.apple.com/privacy/features/ ("Intelligent Tracking Prevention" and "Fingerprinting Defense");
https://support.apple.com/guide/safari/privacy-sfri35610/mac ("Hide IP Address").

*(cont'd)*

Responses & Objections Of Apple Inc To Plaintiffs' Subpoena                                         3:20-cv-08570-JD
To Produce Documents Dated April 11, 2022

are undefined and open to interpretation. Apple will interpret the terms in accordance with the ways that they are defined and used in the support, developer, and privacy sections of Apple's websites.[4] Apple further objects to Request No. 7 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents regarding non-U.S. markets.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 8**:

All Documents and Communications regarding Facebook's representations, discussions, or threats of legal or other punitive action related to Apple's App Tracking Transparency feature and other User Data Practices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

Apple objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation. More specifically, it is overbroad and unduly burdensome to demand that a non-party, such as Apple, search for and produce documents concerning Facebook's representations, discussions, or threats when the necessary information can be obtained from Facebook itself. Further, Apple's internal documents and communications regarding Facebook's representations, discussions, or threats (if any) are not relevant to any claims or defenses, so Request No. 8 is overbroad and unduly burdensome. Apple also objects to Request No. 8 on the grounds that it is vague and ambiguous to the extent it seeks documents and communications regarding "App Tracking Transparency" because the term is undefined and open to interpretation. Apple will interpret the term in accordance with the it is defined and used in the support, developer, and/or privacy sections of Apple's websites. Apple further objects to Request

---

[4] *See, e.g.*, https://support.apple.com/en-us/HT212025 ("Ask App Not to Track" and "Allow Apps to Request to Track").

No. 8 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets.  Apple also objects to Request No. 8 to the extent it seeks documents and communications that may be protected by the attorney-client privilege, the work product doctrine, the joint defense doctrine, or any other applicable protection, privilege, or immunity. Finally, even with Plaintiffs' offer to limit the Request to: (i) Apple's internal documents, internal communications, and communications with non-Facebook entities and (ii) a custodial search of eleven Apple executives and employees, the Request remains overbroad and unduly burdensome for the reasons listed above.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 9**:

All Documents sufficient to identify consumers or users who have opted into or did not opt out of Apple's browser privacy features on iOS, iPadOS, MacOS, and any other operating systems or browsers including but not limited to:

1. Do-Not-Track privacy setting for Safari, released as part of the Lion Mac OS X operating system,

2. Content Blockers for Safari,

3. Cross-Site Tracking,

4. Intelligent Tracking Prevention (ITP),

5. Hide IP Address, and

6. Fingerprinting Defense.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

Apple objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the requested information is of no (or, at most, minimal) relevance to the claims or defenses in this case, and/or (c) identifying and producing the requested documents would impose an undue burden on Apple.  Apple further objects to Request No. 9 on the grounds that it is overly broad, unduly

burdensome, vague and ambiguous, including, but not limited to, the extent it requests information regarding the identity of consumers or users who opted into or did not opt out of Apple's browser privacy features. Apple also objects to Request No. 9 to the extent that it requests materials that, if disclosed, would violate the privacy interests of others. Apple further objects to Request No. 9 on the grounds that it is vague and ambiguous to the extent it seeks documents regarding "Do-Not-Track privacy setting for Safari," "Content Blockers for Safari," "Cross-Site Tracking," "Intelligent Tracking Prevention (ITP)," "Hide IP Address," and "Fingerprinting Defense" because the terms and/or phrases are undefined and open to interpretation. Apple will interpret the terms in accordance with the ways that they are defined and used in the support, developer, and privacy sections of Apple's websites. Apple also objects to Request No. 9 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents regarding non-U.S. markets.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 10**:

All Documents and Communications, including but not limited to notes, calendar entries, and presentation slides, relating to Your meetings with Facebook, including Mark Zuckerberg and Tim Cook's meeting at the Sun Valley retreat in Idaho in July 2019, regardless of the time they were created.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

Apple objects to Request No. 10 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, (c) the Request seeks information that is likely of no (or, at most, minimal) relevance to the claims or defenses in this case, and/or (d) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation. Apple further objects to Request No. 10 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks documents unknown to Apple, not in the possession, custody, or control of Apple, or not

maintained by Apple in the ordinary course of business.  Moreover, even with Plaintiffs' offer to limit the Request to documents and communications relating to a July 2019 meeting between Tim Cook and Mark Zuckerberg, the Request remains overbroad and unduly burdensome for the reasons listed above.

Subject to and without waiving the foregoing objections, Apple states that it is willing to meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 11**:

All Documents and Communications relating to Your review, analysis, evaluation, and/or discussion of Facebook's Onavo products (e.g., Onavo Protect, Onavo Bolt App Lock, Onavo Extend), including but not limited to Facebook's User Data Practices in connection with its Onavo products, Facebook's representations regarding those practices, and the contemplated or actual availability, maintenance, and/or removal of Facebook's Onavo products in or from Apple's App Store and/or Enterprise Certification Program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

Apple objects to Request No. 11 on the grounds that it is overbroad, unduly burdensome, and not proportionate to the needs of this action, including because (a) Apple is a non-party, (b) the Request seeks, without limitation, "all documents and communications" relating to an overbroad topic, and/or (c) the Request seeks documents and communications that are available from Facebook, which is a party to this litigation.  More specifically, it is overbroad and unduly burdensome to demand that a non-party, such as Apple, search for and produce documents concerning Facebook's products, practices, and representations when the necessary information concerning Facebook's products, practices, and representations can be obtained from Facebook itself.  Further, Apple's internal documents and communications regarding Facebook's products, practices, and representations (if any) are not relevant to any claims or defenses, so Request No. 11 is overbroad and unduly burdensome.  Apple also objects to Request No. 11 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and not proportionate to the needs of this action to the extent that it seeks documents and communications regarding non-U.S. markets. Finally, even with Plaintiffs' offer to limit the Request to: (i) Apple's internal documents, internal communications, and communications with non-Facebook entities and (ii) a custodial search of