**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

December 30, 2022

**Via ECF**

The Honorable Judge James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

      Re:    *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

      Meta moves to compel production of certain documents from non-party Apple Inc. Meta served its subpoena on Apple on June 3, 2022. In the interim, Meta has worked extensively with Apple to minimize any burden on Apple. Meta extended Apple's deadlines multiple times and has had numerous meet-and-confers with Apple. Further, Meta agreed to drop many of its requests in the subpoena and has narrowed other requests significantly. Through these negotiations, Meta and Apple have reached agreement on the vast majority of their disputes regarding the scope of Apple's obligations. One dispute remains. In connection with RFP No. 11,[1] Meta requests that the Court compel Apple to produce documents regarding the impact of Apple's App Tracking Transparency feature on Apple's own advertising business. This information is both highly relevant and necessary to rebutting Advertiser Plaintiffs' claim that Meta is a monopolist in the advertising sub-market of "social advertising." *Klein* Dkt. 237, ¶¶ 766-788.

      Plaintiffs allege that Meta's advertising products do not compete with offerings provided by Apple, Google, YouTube, and countless competitors, and that Meta's dominance in that purported advertising market is protected by significant barriers to entry. The documents Meta seeks from one of its core competitors—Apple—undermines Plaintiffs' theory. Apple's devices are some of the most popular in the U.S. market and provide a critical platform for digital advertising. Meta does not control that environment, Apple does. That Apple stands as a gatekeeper over Meta's ability to offer advertising on its apps, and has wielded that power to exclude Meta through App Tracking Transparency,[2] demonstrates that Meta does not hold monopoly power in the relevant market.

---

[1] **Request For Production No. 11:** All Documents concerning Your decision to implement App Tracking Transparency, including, but not limited to, Documents identifying Your rationale for the decision, and Documents concerning Your assessments of its projected or actual impact on Your Advertising Products and Your actual or potential competitors' Advertising Products.

[2] Meghan Bobrowsky, *Facebook Feels $10 Billion Sting From Apple's Privacy Push*, Wall St. J. (Feb. 3, 2022), https://www.wsj.com/articles/facebook-feels-10-billion-sting-from-apples-privacy-push-11643898139.

Moreover, Apple's power to exclude Meta only paints half the picture. Apple did not merely exclude Meta, Apple advantaged its own advertising business. Information reflecting that Apple's advertising business expanded significantly as a result of App Tracking Transparency demonstrates Meta's inability to exclude competitors and contradicts Plaintiffs' allegation that Meta's position is protected by significant barriers to entry. Apple is a key competitor in the market and Meta is entitled to take discovery to support its definition of the market. *See In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021) (holding that financial information of a purported competitor was relevant to market definition). Further, given that Apple uses data about user activity on its products to target and serve advertising, the information is relevant even under Plaintiffs' alleged sub-market of social advertising. *See Klein* Dkt. 237, ¶ 766 (alleging that "social advertising allows advertisers to granularly target groups of users for ads by their attributes"). The concept of "relevance" is "extremely broad," *Braun v. Primary Distrib. Doe No. 1*, 2012 WL 12895846, at *2 (N.D. Cal. Dec. 12, 2012), and the permissible scope of discovery is particularly broad in antitrust cases. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756255, at *4-6 (N.D. Cal. Oct. 22, 2015) (recognizing the broad "extent of discovery customarily involved in complex antitrust cases"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 586 (N.D. Cal. 2009) ("The broad discovery that is allowed in anti-trust cases is equally applicable to [requests by] defendants."). The relevance of the information sought by Meta is further supported by the User Plaintiff's motion to compel Apple to produce similar information. *See Klein* Dkt. 398, at 2 (seeking, among other information, "Apple's documents relating to . . . ATT's origins, intent, purpose, motivations, and/or strategies (RFP 6)").

As demonstrated, information reflecting the impact of App Tracking Transparency on Apple's advertising business is relevant and necessary to defending the allegations in case. In the course of negotiations, Meta asked Apple if it would be willing to produce *any* information in response to this request, such as information reflecting the impact of App Tracking Transparency on Apple's current and projected advertising revenue. But after substantial delay, Apple refused to produce any responsive documents, merely stating that it could produce data reflecting its Services revenue, which Apple reports quarterly in SEC filings. That information is plainly insufficient. As Apple's Form 10-Q makes clear, Apple's reported Services revenue encompasses revenue from many different sources, not solely advertising. Form 10-Q, Apple, Inc., at 7 (July 28, 2022) ("Services net sales include sales from the Company's advertising, AppleCare, cloud, digital content, payment and other services. Services net sales also include amortization of the deferred value of services bundled in the sales price of certain products."). As a result, Apple's Services revenue provides zero insight into Apple's advertising revenue, much less its projected revenue or the overarching impact on Apple's advertising business. In a quarter where Apple's advertising revenue increased, Apple's overall Services revenue could have decreased due to revenue losses in other services, and vice versa. Apple understood this information was inadequate when it offered to produce it, because when Meta reiterated this facial deficiency to Apple, Apple did not defend it, and merely stood on it is objection, asserting that "Apple's advertising business is irrelevant to this litigation." Due to this impasse, Meta must send the instant letter brief, and Meta seeks the full scope of information it is entitled to: documents relating to the impact of Apple's App Tracking Transparency feature on Apple's advertising business that can be identified through a reasonable search.

Hon. Judge James Donato
December 30, 2022
Page 3

      Meta's request is not unduly burdensome. Apple is the largest technology company in the world and has a market cap over $2 trillion. Besides raising a general, boilerplate objection, Apple has not articulated any specific facts why responding to Meta's request would be unduly burdensome. "Given the broad scope of discovery in federal cases, a party objecting to discovery on the basis of vagueness, overbreadth, oppression or burden must state specific facts in support of its objection." *Johnson & Johnston v. R.E. Serv.*, 2004 WL 3174428, at *2 (N.D. Cal. Nov. 2, 2004). Apple has not done so here. Additionally, to reduce any burden on Apple, Meta does not seek custodial productions for this category of documents.

For these reasons, the Court should compel Apple to produce documents relating to the impact of Apple's App Tracking Transparency feature on Apple's own advertising business.

                                                                    Respectfully submitted,

                                                                    */s/ Mark C. Hansen*
                                                                    Mark C. Hansen

                                                                  Counsel for Meta Platforms, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December, 2022, I transmitted the foregoing document to the Clerk's Office using the CM/ECF System, and to counsel for Apple Inc. via Federal Express Overnight Mail.

*/s/   Mark C. Hansen*
Mark C. Hansen
