# WILMERHALE

January 11, 2023

**Sonal Mehta**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

VIA ECF

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:     *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

After over two years, multiple motions to dismiss, and extensive party and nonparty discovery, Advertiser Plaintiffs still are unwilling, or perhaps unable, to state when Meta supposedly acquired a monopoly and when that alleged monopoly ended. Meta respectfully requests that the Court compel Advertiser Plaintiffs to respond to Meta's Interrogatory No. 10, by identifying when Advertisers' claim Meta obtained and lost its supposed monopoly in the alleged Social Advertising Market. The parties met and conferred by telephone on December 8, 2022 to discuss the deficiencies Meta identified in Advertisers' responses to Meta's interrogatories and have reached an impasse.[1]

## I.     Advertisers Must Identify When Meta Obtained and Lost Its Supposed Monopoly

Meta faces vigorous competition in the sale of advertising from Google, TikTok, Apple, Amazon, and countless others. Nonetheless, Advertisers allege that Meta obtained (*see, e.g.*, Compl, ¶¶ 3, 64, 818), maintained (*see, e.g.*, Compl. ¶¶ 66, 417, 857), and lost (*see* Aug. 11, 2022 Hr'g Tr. at 12:23-25) a monopoly in their self-constructed alleged Social Advertising Market, but do not provide the dates upon which these events supposedly occurred. For example, at certain points in Advertisers' Complaint they allege that Meta obtained a monopoly in the purported Social Advertising Market as early as 2010 while at others they seem to allege that Meta obtained its supposed monopoly in 2015. *Compare* Compl. ¶ 3 ("By the end of 2010 . . . Facebook had

---

[1] In addition to identifying the dates upon which Advertisers believe Meta obtained and lost its supposed monopoly, Interrogatory No. 10 also requires Advertisers to state the factual basis—if one exists—for Advertisers' claim that Meta had or has a monopoly in the alleged Social Advertising Market. During the parties' December 8 meet and confer, Advertisers agreed to supplement their deficient response to identify additional factual support for their claim and, by email dated December 22, expressly agreed to do so by January 9, 2023. However, on January 9, Advertisers unilaterally informed Meta, without explanation, that they would not supplement their deficient response to Interrogatory No. 10 until Friday, January 13, further delaying Advertisers' complete response to Meta's interrogatory, served nearly four months ago.

Hon. James Donato
January 11, 2023
Page 2

WilmerHale

obtained a monopoly in . . . social advertising."), *with* Compl. ¶ 859 ("Facebook's revenue share of the Social Advertising Market . . . has been above 70% since 2015."). And although Advertisers have more recently indicated that they believe Meta's alleged monopoly ended when "TikTok enters [the alleged market] because the exclusionary acts stop" (Aug. 11, 2022 Hr'g Tr. at 12:23-25), they have refused to confirm whether they are asserting that Meta's monopoly power ended in 2019, whether it continues, or whether it stopped at a different time (*see id*. at 13:19-24).

Meta therefore served Interrogatory No. 10, which seeks the basis for Advertisers' contention "that Meta had or has a monopoly in the 'Social Advertising Market,' including without limitation the date(s) on which [Advertisers] contend th[at] Meta obtained a monopoly in said market, the date on which [Advertisers] contend Meta's monopoly ended in said market." In response, Advertisers dodged: responding only that "Meta attained monopoly power in the Social Advertising Market *no later than 2012-2015*" and that "[t]his case challenges Meta's scheme to use anticompetitive actions to maintain that Social Advertising monopoly from 2016 *until at least 2020*." (Emphasis added.) In so doing, Advertisers' non-response says nothing about when Meta supposedly acquired monopoly power, and whether (if ever) Advertisers claim that Meta lost monopoly power.[2]

Advertisers refuse to amend their deficient response, asserting during the parties' meet and confer that, because this is a "monopoly maintenance case," they need not identify the start of Meta's supposed monopoly, and that their response places Meta on "notice" that Advertisers claim that Meta maintained a monopoly in the alleged Social Advertising Market by December 2016.[3]

Advertisers are plainly incorrect. To make out their antitrust claim, Advertisers must establish that Meta not only "possess[ed] [] monopoly power in the relevant market" but that Meta also "willfully acquir[ed] or maint[ained monopoly] . . . power, as distinguished from growth or development as

---

[2] Advertisers' response to Interrogatory No. 10 is attached to this letter brief as Exhibit B. Advertisers' interrogatory response references portions of a document, bearing Bates number LI_METALIT_00004223, produced and designated as Highly Confidential by non-party LinkedIn. Prior to filing this letter brief, Meta conferred with LinkedIn's counsel, who informed Meta that LinkedIn does not object to the filing of the language quoted in Advertisers' interrogatory response on the public docket, but that LinkedIn maintains its confidentiality designation for the remainder of the document.

[3] As this Court recently held, although Advertisers allege facts concerning Meta's supposed exclusionary acts prior to the applicable limitations period (i.e., December 2016), "advertisers stated that they will not seek damages for, or otherwise base their Section 2 claims on, 'any pre-limitations period conduct[]' . . . and the advertisers will be held to it." Dkt. 396 at 2 (citing Dkt. 392 at 15). Nonetheless, Advertisers maintain that pre-limitations period conduct "provides relevant factual context for the exclusionary conduct alleged within the limitations period," Dkt. 392 at 15, and have since informed Meta that they will not amend their Complaint to remove such allegations, Email from B. Dunne to M. Jennings (Dec. 7, 2022). Given Advertisers' belief that pre-limitations exclusionary acts are relevant to their claimed damages, they cannot contend that the date upon which Meta obtained a monopoly is irrelevant to their case.

a consequence of a superior product, business acumen, or historic accident." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N.D. Cal. 2008). Advertisers must also establish "injury to competition" resulting from Meta's anticompetitive conduct through evidence of a change in market facts, such as domestic advertising revenue or advertising pricing, consistent with Meta's alleged acquisition and maintenance of monopoly power. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964, 67 (9th Cir. 2013) (monopolization theory was "implausible in the face of contradictory market facts alleged in her complaint" during the period of alleged market power).

Fundamental to Advertisers' alleged antitrust injury is their allegation that Meta "was able to (and did) charge supracompetitive prices for social advertisements" during the period in which it maintained its supposed monopoly. Compl. ¶ 1. Advertisers must therefore provide a benchmark to assess whether the prices charged were supracompetitive. *See Intel Corp. v. Fortress Inv. Grp. LLC*, 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022). That is, Advertisers need to show that Meta's supposed monopoly changed pricing. That requires an understanding of what prices were *before* Meta obtained monopoly power. *See Somers*, 729 F.3d 953 at 964. Thus, Meta is entitled to know the date that Advertisers believe Meta obtained a monopoly.

Similarly, Advertisers must amend their response to identify the date upon which they assert that Meta's monopoly ended. By identifying the date upon which Meta's alleged monopoly ended, Meta can prepare its defense to evaluate supposed barriers to entry and to demonstrate the ease with which those supposed barriers were overcome. At the very least, Advertisers should be required to amend their response to be consistent with their prior representation to the Court that Meta's monopoly ended when "TikTok enter[ed] [the alleged market] because the exclusionary acts stop." Aug. 11, 2022 Hr'g Tr. at 12:23-25.

## II. Advertisers' Objections Have No Merit

Advertisers' objection that "third-party discovery is just commencing" is wrong factually and inconsistent with the rule that a "party may not simply delay answering interrogatories until shortly before trial when all facts are known and theories finalized." *Nguyen v. Lowe's Home Centers, LLC*, 2015 WL 12672153, at *2 (S.D. Cal. Nov. 19, 2015). The parties have been issuing nonparty subpoenas since February 23, 2022 and hundreds of thousands of pages of nonparty documents have been produced. Likewise, their objection that "expert discovery has not yet even opened" is a red herring given their own position that the start and end of Meta's alleged monopoly is a "completely fact-based question." Aug. 11, 2022 Hr'g Tr. at 13:21-22.

Meta respectfully requests that the Court order Advertisers to amend their response to Interrogatory No. 10 to state clearly when they believe Meta obtained monopoly power and lost monopoly power in the contrived Social Advertising Market.

Hon. James Donato
January 11, 2023
Page 4

WILMERHALE

Respectfully submitted,

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorney for Defendant Meta Platforms, Inc.*