# EXHIBIT B

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (*pro hac vice*)<br>awolinsky@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 S. MoPac Expressway,<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>*Interim Co-Lead Counsel for the Advertiser Class* | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Christopher M. Burke (CA 214799)<br>cburke@scott-scott.com<br>David H. Goldberger (CA 225869)<br>dgoldberger@scott-scott.com<br>Kate Lv (CA 302704)<br>klv@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>(Additional counsel on signature page) |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>META PLATFORMS, INC.,<br><br>  Defendant. | Case No. 3:20-cv-08570-JD<br><br>Hon. James Donato<br><br>**ADVERTISER PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT META PLATFORMS, INC.'S THIRD SET OF INTERROGATORIES TO ADVERTISER PLAINTIFFS** |

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL**

Advertisers anticipate proving the above through substantial documentary and testimonial evidence—including through third-party discovery; from the documents and testimony of Meta's own witnesses; from the named Advertiser Plaintiffs and potentially other members of the Proposed Advertiser Classes (*i.e.*, customers who bought Social Advertising from Meta between late 2016 and the present); and through expert testimony—which is in the process of being gathered, although Meta's failure to produce new documents beyond its initial government production has delayed the evidence-gathering process.

Advertisers anticipate updating this Response as necessary and/or appropriate based on information learned in fact and expert discovery.

**INTERROGATORY NO. 10:**

Describe in detail the full basis for Your contention (including by identifying all facts, Documents, and witnesses that relate to Your contention) that Meta had or has a monopoly in the "Social Advertising Market," including without limitation the date(s) on which you contend the Meta obtained a monopoly in said market, the date on which you contend Meta's monopoly ended in said market, and the reasons that Meta supposedly had a monopoly that began and ended on those dates.

**RESPONSE:**

Advertiser Plaintiffs incorporate by reference their general objections and specific objections to Defendants' preamble, definitions, and instructions.

Advertiser Plaintiffs object to Interrogatory No. 10 because it is overbroad and unduly burdensome. Advertiser Plaintiffs object that Interrogatory No. 10 is vague, ambiguous, and unintelligible. Advertiser Plaintiffs also object to Interrogatory No. 10 on the grounds that it calls for a legal conclusion and/or assumes legal conclusions as part of the question posed. Advertiser Plaintiffs further object to Interrogatory No. 10 because it seeks information in Meta's own possession, custody, and control that has not yet been produced in discovery in this case. Indeed, as of the date of this Interrogatory Response, Meta has not produced any substantial first-party production beyond its initial production of documents previously produced to the FTC. Additionally, no Meta or third-party depositions have yet occurred; third-party discovery is just commencing; and expert discovery has

33

Case No. 3:20-cv-08570-JD                  Advertiser Plaintiffs' Objections and Responses to Meta
                                           Platforms, Inc.'s Third Set of Interrogatories

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL**

not yet even opened. Moreover, Meta has refused to respond to Interrogatories posed by Advertiser Plaintiffs and has not even provided a date by which it will provide any substantive response to many of the Interrogatories posed, further depriving Advertiser Plaintiffs of potentially responsive information. Advertiser Plaintiffs further object to Interrogatory No. 10 on the ground that it is compound.

Subject to the foregoing general and specific objections, Advertiser Plaintiffs respond as follows:

Meta has not yet produced pricing information. However, a preliminary analysis based on public information regarding market shares and revenue indicates that Meta attained monopoly power in the Social Advertising Market no later than 2012-2015, when it executed an anticompetitive scheme to leverage its developer Platform, anticompetitive spyware, and certain acquisitions to create and fortify a Data Targeting Barrier to Entry ("DTBE") in the network-laden Social Advertising Market. This case challenges Meta's scheme to use anticompetitive actions to maintain that Social Advertising monopoly from 2016 until at least 2020, as changes in technology, in market dynamics, and in overall competitive landscape threatened to erode the DTBE and expose Meta's Social Advertising products to competitive price checks, which would lessen Meta's ability to extract supracompetitive prices from Social Advertising consumers like the named Plaintiffs and members of the Proposed Advertiser Classes. Based on Advertisers' investigation to date, Meta's anticompetitive scheme to maintain its Social Advertising monopoly and the DTBE surrounding it in and after 2016 largely succeeded, despite massively-resourced technology companies like Twitter, LinkedIn (backed by Microsoft), Snap, Pinterest, Foursquare, and eventually Google seeking to enter or expand their presence in the Social Advertising Market leading up to and during this period.

Thus, for example, Twitter, Microsoft-backed LinkedIn, Pinterest, Snapchat, and Foursquare all actually marketed and sold Social Advertising products between 2015 and the present. Each of these companies was incredibly well-financed, incredibly sophisticated, and had large, engaged user bases. None of them made even a dent in Meta's Social Advertising Market share or pricing between 2016 and 2020. Indeed, LinkedIn lamented as much in early 2017, saying "[i]t's like deja vu, all over

34

Case No. 3:20-cv-08570-JD    Advertiser Plaintiffs' Objections and Responses to Meta Platforms, Inc.'s Third Set of Interrogatories

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

again" in analyzing Facebook's Q4 2016 earnings. LI_METALIT_00004244. As LinkedIn explained: "We continue to struggle to find a parallel to this level of growth at this scale . . . ." *Id.*

Snapchat, which was widely seen as a potential threat to Meta's Social Advertising dominance after its launch in 2011 and expansion in 2014, never managed to make serious inroads on the DTBE surrounding Meta's Social Advertising business. LinkedIn, in an early 2017 competitive analysis, explained why: it was just too expensive for Snap, even with its extensive user base, novel technology, and significant funding, to monetize against the likes of Facebook—particularly with Instagram cloning Snapchat's user-facing product. LI_METALIT_00004237-44. As LinkedIn noted, Snap's ability to monetize was hampered by "shockingly high costs," a "[c]ost structure [that] seems unsustainable...and nothing gives confidence it can fix it," and "[q]uestion remains whether [Snap] can offer the same ID, targeting, ROI analytics that FB provides . . . ." LI_METALIT_00004237-38. Over 2016-2021, it became clear from revenue numbers that Snap was unable to even threaten, let alone materially erode, Meta's DTBE or market dominance.

With its failure to materially check Meta's market share (or prices) for Social Advertising, Snap joined a long line of some of the world's most riches, most experienced, and most popular companies, platforms, and apps that sought to challenge Meta's Social Advertising dominance over the past decade—from Myspace, to Google+, to Foursquare, to Twitter, to Pinterest, to LinkedIn— and failed in doing so.

Finally, beginning in 2018-2019, a new would-be entrant, again backed by billions of dollars, international knowhow, new technology, and a massive user base, moved to challenge Meta's Social Advertising dominance and the DTBE around its advertising business: TikTok. For several years, Meta's DTBE held—even as its active user base grew, TikTok's U.S. ad revenue was minuscule in 2018, 2019, 2020, and into 2021, representing less than a thirtieth of Meta's Social Advertising revenue even in 2021.

As of March 2021, no competitor—despite untold billions of dollars (and Yuan), arsenals of high-end technology, and hundreds of millions of collective users poured into eroding Meta's DTBE and market dominance—had made even a slight inroads on Meta's United States Social Advertising

35

Case No. 3:20-cv-08570-JD   Advertiser Plaintiffs' Objections and Responses to Meta Platforms, Inc.'s Third Set of Interrogatories

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL**

revenue, as shown in the below ad revenue graph from Statista, which includes every would-be Social Advertising competitor as of March 2021, including LinkedIn, Pinterest, Snapchat, Twitter, and TikTok:



In short, by March 2021, despite massive resources thrown at the DTBE and the Social Advertising market by some of the biggest companies and backing entities in the world, Facebook claimed approximately $73.53 billion in annual U.S. Social Advertising revenue. Every one of its ostensible Social Advertising competitors—LinkedIn, Pinterest, Snapchat, Twitter, TikTok, and everyone else—combined had approximately $9.93 billion in annual U.S. advertising revenue.

The story was similar in 2016, 2017, 2018, 2019, and 2020. Meta's domestic advertising revenue for 2016-2020 is shown below, in billions USD:

**Meta U.S. Advertising Revenue, 2016-2020**

2016: $13.43 billion

2017: $19.07 billion

36

CASE NO. 3:20-cv-08570-JD    ADVERTISER PLAINTIFFS' OBJECTIONS AND RESPONSES TO META PLATFORMS, INC.'S THIRD SET OF INTERROGATORIES

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

2018: $25.73 billion

2019: $32.21 billion

2020: $38.43 billion

By contrast, approximate United States advertising revenues for Meta's principal Social Advertising competitors Twitter, LinkedIn, Pinterest, Snap, and TikTok over that same time period are below:

**Twitter U.S. Advertising Revenue, 2017-2021**

2017: $1.1 billion

2018: $1.32 billion

2019: $1.47 billion

2020: $1.62 billion

**LinkedIn U.S. Advertising revenue, 2017-2020**

2017: $1.75 billion

2018: $2.1 billion

2019: $2.51 billion

2020: $3 billion

**Pinterest U.S. Advertising revenue, 2016-2020**

2016: $269.4 million

2017: $384.7 million

2018: $553.3 million

2019: $771.4 million

2020: $1.002 billion

**Snapchat U.S. Advertising revenue, 2016-2020**

2016: $355.3 million

2017: $643 million

2018: $752.9 million

2019: $1000 million

37

CASE NO. 3:20-cv-08570-JD            ADVERTISER PLAINTIFFS' OBJECTIONS AND RESPONSES TO META PLATFORMS, INC.'S THIRD SET OF INTERROGATORIES

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

2020: $1.600 billion

**TikTok U.S. Advertising Revenue, 2019-2020 (approx.)**

2019: $170 million

2020: $700 million

Advertisers anticipate that the named Advertiser Plaintiffs, numerous Meta deponents/witnesses, and relevant third parties (including participants or would-be entrants in the Social Advertising Market such as Twitter, LinkedIn, Pinterest, Snap, TikTok, and Foursquare), will provide relevant testimony and documents that will establish Meta's monopoly power. Additionally, Advertisers anticipate offering expert testimony on the subject. Discovery is ongoing, although Meta's failure to produce new documents beyond its initial government production has delayed the evidence-gathering process.

Advertisers anticipate updating this Response as necessary and/or appropriate based on information learned in fact and expert discovery.

**INTERROGATORY NO. 11:**

Separately for each act by Meta that You contend to be exclusionary, describe in detail the full basis for Your contention (including by identifying all facts, Documents, and witnesses that relate to Your contention) including without limitation all actual or potential competitors excluded from any candidate relevant market.

**RESPONSE:**

Advertiser Plaintiffs incorporate by reference their general objections and specific objections to Defendants' preamble, definitions, and instructions.

Advertiser Plaintiffs object to Interrogatory No. 11 because it is overbroad. Advertiser Plaintiffs object to Interrogatory No. 11 because it is vague, ambiguous, and unintelligible. Advertiser Plaintiffs also object to Interrogatory No. 11 on the grounds that it calls for a legal conclusion and/or assumes legal conclusions as part of the question posed. Advertiser Plaintiffs further object to Interrogatory No. 11 because it seeks information in Meta's own possession, custody, and control, including information that has not yet been produced in discovery in this case. Indeed, as of the date

38

Case No. 3:20-cv-08570-JD                     Advertiser Plaintiffs' Objections and Responses to Meta Platforms, Inc.'s Third Set of Interrogatories