**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
  alawrence@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

MAXIMILIAN KLEIN, et al.,

             Plaintiffs,

      vs.

META PLATFORMS, INC.,

             Defendant.

This Document Relates To: All Actions

Consolidated Case No. 3:20-cv-08570-JD

**TENTH JOINT CASE MANAGEMENT STATEMENT**

The Hon. James Donato

Hearing Date:  January 19, 2023 at 10:00 a.m.

**TENTH JOINT CASE MANAGEMENT STATEMENT**

In advance of the January 19, 2023 Status Conference, counsel for Consumer Plaintiffs ("Consumers" or "Users"), Advertiser Plaintiffs ("Advertisers"), and defendant Meta Platforms, Inc. ("Meta" or "Facebook") respectfully submit this Tenth Joint Case Management Statement.  This statement summarizes for the Court open items that the parties either jointly or individually contend are ripe for the Court's consideration[1] and provides updates to the Court as to material developments on pertinent matters since the parties' prior Case Management Statement, dated October 13, 2022.

**I.      Pending Motions**

**A.      Meta's Discovery Letter Brief to Compel Consumer Plaintiffs' Responses to Interrogatory Nos. 5, 9-14**

On October 19, 2022, Meta moved to compel Consumer Plaintiffs' Responses to Interrogatory No. 5 of Meta's First Set of Interrogatories and Interrogatory Nos. 9-14 of Meta's Second Set of Interrogatories to Consumer Plaintiffs.  Dkt. No. 365.  Pursuant to the Court's order, dated October 26, 2022, Consumer Plaintiffs filed their response on November 16, 2022.  Dkt. Nos. 372, 378.

**1.      Meta's Further Statement**

In light of Users' attempt to differentiate between an alleged "Social Media Market" and an alleged "Social Network Market" with the conclusory allegation that "social networks, such as Facebook, provide ***specific product features*** to users which social media applications generally do not provide at all," Compl. ¶ 67 (emphasis added), Interrogatory Nos. 13 and 14 ask Users to state, "[f]or each ***feature or activity*** available to users on each Meta Product that is a Participant" in Users' alleged Social Network Market and Social Media Market "whether the ***feature or activity***" is within that alleged market (emphasis added).  Users refuse to provide responsive information, instead asserting that Meta's requests seek irrelevant information and that Meta's request for supplementation should be denied because only "Facebook knows 'each feature or activity available

---

[1] Per the Court's guidance at the August 11, 2022 hearing, the parties have narrowed this statement to the issues that the parties either jointly or individually contend are ripe for the Court's consideration.  Aug. 11, 2022 Hrg. Tr. at 46:6–10.

to users' on its own products; [Users] do not.  [Users] cannot respond to this undefined, improper interrogatory unless Facebook identifies each feature or activity it is asking about.  Judge Boasberg agreed, compelling Facebook to produce such a list to the FTC."  Dkt. No. 378 at 3.  Accordingly, on December 13, 2022, Meta sent Users the features and activities list provided to the FTC, as well as an additional 25 features or activities that Meta requested that Users categorize.  Meta requested that Users supplement their responses to Interrogatory Nos. 13 and 14 to identify whether each feature or activity included in Meta's December 13 letter is or is not within Users' alleged (i) Social Network Market (Interrog. No. 13), or (ii) Social Media Market (Interrog. No. 14).   On December 22, 2022, Users refused.  Thus, the issue is ripe for the Court's decision.

### 2.      Consumers' Response

Consumers and Facebook have a standing dispute as to Facebook's Interrogatory Nos. 13 and 14, which ask Consumers to state for each "feature or activity" of a Facebook product, whether that feature or activity is or is not with Consumers' alleged relevant markets.  The parties completed letter briefing to the Court regarding their dispute on November 16, 2022.  Dkts. 365, 372, 378.  On December 13, 2022—nearly one month after briefing on the parties' dispute closed—Facebook again demanded that Consumers respond to Interrogatory Nos. 13 and 14, even though Consumers have made clear that they object to these interrogatories and the parties' dispute as to these very interrogatories is already before the Court.

Facebook states the "only" reason Consumers object to Facebook's interrogatories is because only Facebook knows each feature or activity it offers on its products, and Consumers did not have this information.  According to Facebook, then, Consumers must now respond because Facebook has since provided a cobbled-together list of more than 320 "features or activities" supposedly available across Facebook, Instagram, WhatsApp, and Messenger.  Facebook is wrong.  Contrary to Facebook's contention, Facebook's failure to identify the features or activities it was asking about in Interrogatory Nos. 13 and 14 was not the only basis on which Consumers objected to these interrogatories.  Among other objections they stated, Consumers reject the premise that it is relevant to Consumers' claims whether individual "features or activities" of a product—rather than the product itself—are in or out of a relevant market.  Facebook knows this: Consumers have

explained this point to Facebook in multiple correspondence and meet-and-confers, and Consumers' letter brief makes exactly this point. *See* Dkt. 378 at 3.

Moreover, Facebook's list of hundreds of supposed features and activities provides strong support for Consumers' objection. Many of the items on the list are incomprehensible to anyone but a Facebook engineer. They include, for example: "oEmbed (Legacy) Plugin," "App Events via Facebook SDK," and "Offline Conversions" and distinguish, for example, between "Viewing or posting content in a Group of any size where 0-15% of pairs of members of the Group are Facebook Friends" (one supposed feature) v. "Viewing or posting content in a Group of any size where 16-50% of pairs of members in the Group are Facebook Friends" (a different supposed feature).

Facebook's motion to compel should be denied.

### B. Consumers' Letter Brief Regarding FTC Deposition Transcripts

Consumers moved to compel Meta to: (1) produce transcripts of two depositions of Meta in the pending *FTC v. Meta* antitrust litigation; and (2) provide a list of all depositions of Meta and its current and former employees in *FTC v. Meta* that are currently scheduled and update that list weekly going forward, to facilitate Consumers' future requests for select, relevant deposition transcripts and marked exhibits. Dkt. No. 377. Pursuant to the Court's order, Meta responded to Consumers' motion. Dkt. No. 382, Dkt. No. 390.

### C. Quinn Emanuel's Substitution Motion

Quinn Emanuel Urquhart & Sullivan, LLP filed a motion and supporting brief to substitute Quinn Emanuel attorney Kevin Y. Teruya for former Quinn Emanuel attorney Stephen A. Swedlow as Interim Co-Lead Consumer Class Counsel. Dkt. No. 381, Dkt. No. 384. Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen P.L.L.P. filed a brief in response. Dkt. No. 383. The Court has indicated that it will take up the substitution of counsel at the upcoming January 19, 2023 status conference. Dkt. No. 388.

### D. Consumers' and Meta's Discovery Letter Briefs to Compel Production From Apple

On December 15, 2022, Consumer Plaintiffs moved to compel non-party Apple Inc.'s production of documents in response to Consumer Plaintiffs' subpoena dated April 6, 2022.

Dkt. No. 398.  On December 30, 2022, Meta moved to compel non-party Apple Inc.'s production of documents in response to Meta's subpoena dated June 3, 2022.  Dkt. No. 406.  Pursuant to the Court's order, dated January 5, 2023, non-party Apple Inc. is directed to file a response by January 26, 2023.  Dkt. No. 407.

**E.     Meta's Discovery Letter Brief to Compel Advertisers' Response to Interrogatory No. 10**

On January 11, 2023, Meta moved to compel Advertiser Plaintiffs' response to Interrogatory No. 10 of Meta's Third Set of Interrogatories to Advertiser Plaintiffs.  Dkt. No. 409.

**II.     Additional Disputes**

**A.     Plaintiffs' Request for Facebook Deposition and Interview Transcripts**

**1.     Plaintiffs' Statement**

On September 24, 2021, Plaintiffs served a straightforward document request, Joint RFP No. 1, seeking from Facebook, in pertinent part, deposition transcripts and their equivalents from other relevant lawsuits and government investigations involving Facebook.  For nearly 16 months, Facebook has refused Plaintiffs' request, stating that Plaintiffs seek supposedly improper "cloned" discovery.  The reality is that Plaintiffs' request for transcripts from other Facebook-related lawsuits and government investigations is entirely appropriate and routine.  *See In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD (N.D. Cal.) (Donato, J.), Dkt. 38 at 17:1–3, 17:10–13 (compelling production of deposition transcripts from other case, explaining "I don't find the idea of producing off-the-shelf discovery already done in another case to be inherently odd.").  Facebook's objections are based on a series of false premises, and the Court should reject them.

*First*, Facebook maintains that producing transcripts from other lawsuits and investigations is somehow "wildly overbroad and burdensome."  But Facebook provides no explanation for why, especially when it is clear those other matters involve highly similar factual and legal issues, and Facebook does not substantiate any burden.  Similarly large companies regularly compile deposition and other transcripts to maintain in those companies' files for litigation, investigatory, and other purposes.  Moreover, the firms handling the other matters certainly have the transcripts handy (or can obtain them quickly).  Given Facebook's resources and the number of litigations and

investigations it acknowledges, it is highly improbable that Facebook does not already have the requested transcripts compiled in a computer database or other central system.  And to the extent that "coordination" between Facebook's in-house counsel and other outside counsel is purportedly required, Facebook vastly overstates the supposed efforts that are required to identify and compile transcripts in the digital era, *i.e.*, sending and uploading transcripts and related files electronically.

*Second*, Facebook's offer to "meet-and-confer further with Plaintiffs" as to specific transcripts is an empty one.  Facebook refused Plaintiffs' request for transcripts.  Plaintiffs then offered to limit their request using a list-based approach like the one that the Court directed the parties to employ as to Plaintiffs' request for *FTC v. Meta* deposition transcripts.  Facebook refused that, too.  Further discussions on the exact same topic would therefore be unproductive.  The parties' negotiations regarding select deposition transcripts from *FTC v. Meta* confirm this.  When Plaintiffs provided  a good faith statement of the relevance of the select transcripts they requested, Facebook for weeks stated that Plaintiffs had not adequately described the relevance of the transcripts to Facebook's unilateral liking.  There is no reason to think Facebook will do anything other than insist on continuing to play gatekeeper and demand Plaintiffs provide explanations that will never satisfy Facebook, resulting in further delay and further disputes.

*Finally*, there is no reason to condition Plaintiffs' receipt of the requested transcripts on a reduction in Plaintiffs' deposition time in this case.  At the last status conference, the Court did not require Plaintiffs to reduce their deposition time in return for receiving transcripts from other litigations.  Moreover, Plaintiffs seek the prior transcripts of possible fact witnesses to inform, improve, and streamline depositions in this case, not to completely replicate them.  And as to Rule 30(b)(6) deposition time, the parties' deposition protocol provides both Consumers and Advertisers 21 hours of questioning, collectively.  Given the presence of two classes, the differences in their claims, and the complexity of issues, 21 hours of Facebook's corporate testimony between them is not a lot.

As explained below, the Court should similarly order Facebook to produce select unredacted transcripts and exhibits that Plaintiffs request from each identified lawsuit and government investigation.  Specifically, to the extent that Plaintiffs are already aware of them, Plaintiffs identify

below those specific transcripts that they seek, without prejudice to making additional select requests from these lawsuits and investigations should it become appropriate.  For those matters where Plaintiffs are presently unaware of the identities of Facebook witnesses, Plaintiffs request that Facebook: (1) immediately provide Plaintiffs lists of the transcripts from each identified lawsuit and government investigation; and (2) then produce to Plaintiffs—within **5 business days of Plaintiffs' request for a given transcript**—the specific unredacted transcript that Plaintiffs request (along with any marked exhibits).  Depositions will soon begin: Plaintiffs' first deposition of a Facebook employee has been noticed for February 3, 2023.  Plaintiffs' request will thus assist Plaintiffs in their selection of, and preparation for, depositions of Facebook and its current and former employees in this case.

**Transcripts from U.S. Antitrust Authorities' Investigations.**  Plaintiffs seek lists of transcripts of "witness interviews" and other testimony that current and former Facebook employees provided to the FTC and the House Antitrust Subcommittee.  Based on the lists, Plaintiffs then seek to make select transcript requests.

In 2019, the FTC commenced a pre-suit antitrust investigation into Facebook that later culminated in the federal *FTC v. Meta* antitrust case currently pending before Judge Boasberg in the District of Columbia.  As part of this pre-suit investigation, the FTC conducted transcribed witness interviews, including of current and former Facebook employees.  The FTC has already produced these transcripts to Facebook in the *FTC v. Meta* case.  Facebook suggests that transcripts from the FTC's pre-suit investigation and the later *FTC v. Meta* case are "cumulative."  This is conjecture: Facebook has refused to identify the individuals that provided testimony to the FTC during its pre-suit investigation, so Plaintiffs cannot compare the overlap (if any) between those individuals and the deponents providing testimony in *FTC v. Meta*.  And while Facebook previously offered to produce transcripts of testimony that Facebook employees provided to the FTC during its pre-suit investigation if Plaintiffs agreed to limit the depositions of any such employees in this case to four hours, Facebook demanded Plaintiffs agree to Facebook's request without Plaintiffs knowing the identity of these individuals nor the scope of their prior testimony.  Even if Plaintiffs had this information, there is no reason to limit Plaintiffs' deposition time here.

Similarly, the House Antitrust Subcommittee conducted its own antitrust investigation of Facebook, which also consisted of Facebook employee interviews and culminated in the Subcommittee's widely-publicized "Investigation of Competition in Digital Markets" report. Again, Facebook has declined to identify the Facebook witnesses that provided testimony to the House Antitrust Subcommittee.

Facebook was already ordered in this case to re-produce to Plaintiffs Facebook's document productions to the FTC and House Antitrust Subcommittee as part of their respective antitrust investigations. *See* Dkt. 82. It should also produce the requested transcripts in its possession.

**Transcripts from Foreign Antitrust Authorities' Investigations.** The Australian Competition & Consumer Commission, the U.K. Competition & Markets Authority, and the German Federal Cartel Office have also conducted antitrust investigations regarding Facebook. The ACCC investigated competition in the "Social Media Services" market and in digital advertising, concluding that Facebook has substantial market power. The U.K. CMA: (a) investigated competition in "social media" and "digital advertising" services, concluding that Facebook has market power in each; and (b) is investigating Facebook's alleged anticompetitive "Network Bidding Agreement" with Google. Finally, the German FCO investigated and concluded that Facebook has a dominant position "in the market for social networks for private users."

Facebook notes that these competition authorities are foreign and therefore investigated Facebook pursuant to foreign antitrust law. Facebook misses the point. Notwithstanding their foreign nature, these investigations bear, for example, on the relevant *product* market(s) in which Facebook competes and market participants and entry barriers in those *product* markets; Facebook's dominant position and the metrics for measuring it; and the anticompetitive effects of Facebook's conduct on Facebook users and advertisers. The U.K. CMA's GNBA investigation also bears on an alleged anticompetitive advertising agreement with Google that forms the partial basis for Advertisers' claims. All of these are disputed issues among Plaintiffs and Facebook in this case. Plaintiffs seek lists of current and former Facebook employees that provided testimony to these competition authorities, so that Plaintiffs can make requests for specific transcripts.

**Transcripts from Domestic Regulators' Investigations Regarding Facebook's Data**

**Practices.**   In the wake of the Cambridge Analytica scandal in 2018, domestic government regulators investigated Facebook's data practices and related public statements, including whether those practices and statements were deceptive.   These include, for example: (a) the Securities and Exchange Commission; (b) the Federal Trade Commission; and (c) several State Attorneys General, including the D.C. Attorney General.   Consumers allege that Facebook obtained and maintained monopoly power by deceiving the market as to its data collection and use practices.   Facebook employees' testimony from these investigations bears on those data practices and the veracity of Facebook's related statements and is therefore relevant to Consumers' antitrust claims.

Facebook has identified these investigations in the Cambridge Analytica MDL and stated that its current and former employees provided testimony in these investigations.   While Facebook appears to separately count these investigations, Facebook overstates the count because the investigations are related to one another.   In any case, Facebook also appears to have already compiled and produced transcripts from at least some of these investigations to the Cambridge Analytica MDL plaintiffs.   *See In re Facebook, Inc. Consumer Privacy User Profile*, Case No. 3:18-md-02843-VC (N.D. Cal.), Dkts. 619-4, 662.   There is no reason Facebook should not also produce the relevant transcripts from these investigations here, which Plaintiffs requested prior to this case management statement (and which Facebook rejected).

Facebook also claims that Plaintiffs do not explain why Plaintiffs' request from these investigations "is not duplicative of their requests."   To be clear, Facebook has declined to provide Plaintiffs in this case with the identities of its current and former employees that provided testimony to these regulators during their investigations.   In any event, publicly available information indicates that, at least, CEO Mark Zuckerberg provided testimony to the SEC, and former Platform Operations Manager Sandy Parakilas provided testimony to the D.C. Attorney General.

Plaintiffs in this case have already noticed the deposition of Mr. Parakilas and stated to Facebook their intention to depose Mr. Zuckerberg.   Contrary to Facebook's assertion, Plaintiffs requested Mr. Zuckerberg's SEC transcript in correspondence prior to this case management statement.   Moreover, the SEC took testimony from Mr. Zuckerberg regarding the Cambridge Analytica scandal, when Mr. Zuckerberg and Facebook learned of the scandal, and the veracity of

Facebook's and its executives' statements concerning the scandal, all of which are pertinent to Consumers' deception-based antitrust claims.  In addition to Mr. Zuckerberg's transcript, Plaintiffs also request that Facebook produce lists of the other current and former Facebook employees that provided testimony in these investigations, so that Plaintiffs can request select, additional transcripts.[2]

**Cambridge Analytica MDL Deposition Transcripts.**  From the Cambridge Analytica MDL, Plaintiffs seek: (a) specific Rule 30(b)(1) deposition transcripts identified below; and (b) a list of Rule 30(b)(6) topics, so Plaintiffs can make requests for select transcripts.  The MDL involved claims regarding the data that Facebook collects and shares with third parties, how that data is used, and the deceptive nature of these practices and Facebook's related public statements.  Testimony from this case is thus relevant to, among other things, Consumers' deception-based antitrust claims.

Facebook has refused to share with Plaintiffs the list of depositions in the Cambridge Analytica MDL.  Plaintiffs therefore request a complete list of the Rule 30(b)(6) deposition topics, so that Plaintiffs can request select transcripts of Facebook's testimony on pertinent topics.  As to Rule 30(b)(1) depositions from the MDL—and despite Facebook's refusal to provide the list— recent public filings identify the current and former employees that were deposed.  Based on this list—and without prejudice to making additional, select requests in the future—Plaintiffs request that Facebook produce the deposition transcripts of the following pertinent Facebook employees: Sam Lessin; Steven Elia; Antonio Garcia-Martinez; Shirine Sajjadi; Mike Vernal; Bill Fusz; Aldo King; Yul Kwon; Vladimir Fedorov; Monicka Bickert; Rob Sherman; Eddie O'Neil; Konstantinos Papamiltiadis; Erin Egan; Steve Satterfield; Dan Rose; Ime Archibong; and Allison Hendrix.

***Social Ranger* Deposition Transcripts.**  Plaintiffs seek deposition transcripts from the *Social Ranger* case.  *Social Ranger* is a previous antitrust case against Facebook involving similar issues over the relevant market for "social game networks".[3]  While Facebook has refused to provide

---

[2] Mr. Parakilas' counsel has offered to produce to Plaintiffs the transcript of Mr. Parakilas' testimony to the D.C. Attorney General.  Plaintiffs continue to seek from Facebook a list of other witnesses that provided testimony to the D.C. Attorney General.

[3]  Facebook chooses to ignore the "social games network" market and focus on the "virtual currency services" market that was also at issue in *Social Ranger*.

a list of the depositions in *Social Ranger*, the public docket in that case indicates that Facebook employees such as Mark Zuckerberg, Dan Rose, Dan Levy, and David Ebersman were deposed. *See Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525 (D. Del.).  Dr. Dennis Carlton—Facebook's liability expert, and whom Facebook is also using this case—was also deposed.

Plaintiffs have already stated to Facebook their intentions to depose Messrs. Zuckerberg, Rose, and Levy in this case.  In this case, Facebook also produced to Plaintiffs documents from former CFO Mr. Ebersman's files.  In addition to the Zuckerberg, Rose, Levy, Ebersman, and Carlton transcripts, Plaintiffs seek a list of the Rule 30(b)(6) and 30(b)(1) transcripts from *Social Ranger*, so that Plaintiffs can make any additional requests for select transcripts.

***Fraley* Deposition Transcripts.**  Plaintiffs request a full list of Rule 30(b)(1) and Rule 30(b)(6) depositions from *Fraley*, a case involving Facebook's "sponsored stories" feature. Testimony from this case bears on Facebook's data and advertising practices, representations, and omissions concerning this feature.  Publicly available filings indicate, for example, that Gokul Rajaram (Facebook's former Product Director for Ads) and John Hegeman (a then-engineer, and now Facebook's Vice President of Monetization) were deposed.  Facebook has produced documents from Messrs.' Rajaram's and Hegeman's files to Plaintiffs in this case.  Moreover, Facebook Dr. Catherine Tucker—who Facebook is also using as an expert in this case—was also deposed.

***FTC v. Meta* Transcripts and Depositions.**  During the October 20, 2022 status conference, the Court provided guidance to the parties on a process by which Plaintiffs could request transcripts from the *FTC v. Meta* antitrust lawsuit, in which depositions are ongoing.  Specifically, the Court already directed Facebook to provide a list of the depositions, so that Plaintiffs could periodically request—and Facebook could then produce—a subset of transcripts.  Facebook is not complying with the Court's instructions to provide the complete list of depositions; instead, Facebook has only agreed to provide dates for the depositions of Facebook witnesses in the FTC case who are also document custodians in this case or appear on Plaintiffs' initial disclosures.  That excludes possibly relevant witnesses, and Plaintiffs cannot identify such witnesses in order to request their transcripts unless Facebook first provides notice of their depositions to Plaintiffs.

Even in this case management statement, Facebook still refuses to ultimately produce the

subset of *FTC v. Meta* transcripts that Plaintiffs request.  Facebook commits only to "**consider** Plaintiffs' requests . . . to the extent Plaintiffs demonstrate the relevance[.]"  That is not what the Court ordered; the Court did not confer on Facebook the role of unilaterally determining what is relevant and what is not; nor do the Federal Rules of Civil Procedure.  Plaintiffs repeat their request that Facebook be ordered to provide the list of **all** Facebook employee depositions in *FTC v. Meta*, so Plaintiffs can make select requests.

Plaintiffs nearly three months ago requested two *FTC v. Meta* Rule 30(b)(6) transcripts.  Dkt. 377.  Facebook refused Plaintiffs' request unless Plaintiffs agreed to a series of unnecessary pre-conditions, including reductions in Plaintiffs' deposition time in this case.  Plaintiffs have not yet received those transcripts, and the parties' dispute is presently before the Court.  Plaintiffs continue to seek these 30(b)(6) transcripts and a list of future 30(b)(6) depositions as they are scheduled.

Facebook has continued to request that Plaintiffs coordinate deposition dates of witnesses that will be deposed in both *FTC v. Meta* and this case.  In response to Facebook's request—and while Plaintiffs do not agree it is required—Plaintiffs have so far identified 11 Rule 30(b)(1) depositions of current and former Facebook employees that the FTC will take in the future and Plaintiffs also seek to take, including: Brad Smallwood, Dan Rose, Keval Patel, David Fischer, Guy Rosen, Dave Wehner, Javier Olivan, Dan Levy, Sheryl Sandberg, Mark Zuckerberg, and Erin Egan.

For Facebook witness depositions that Plaintiffs will take and have agreed to schedule close in time to the FTC's deposition of that witness, Plaintiffs request that the Court order Facebook to allow Plaintiffs to attend that deposition.  The FTC does not oppose Plaintiffs' request.  Facebook's assertion that Plaintiffs are attempting to "relitigate" Plaintiffs' prior request is incorrect.  Plaintiffs are requesting to attend the FTC's depositions of witnesses that Plaintiffs agree to and will depose "close in time" to the FTC's depositions.  If, for example, Plaintiffs take a deposition of a witness on the day after the FTC deposes that witness, Plaintiffs are likely unable to receive the transcript before taking their own deposition.  That is why Plaintiffs seek to attend those depositions of those witnesses.

For all other depositions that Plaintiffs will take of a Facebook witness that will also be deposed in *FTC v. Meta* but that are not feasible to take close in time to the FTC's deposition,

Plaintiffs request that Facebook be ordered to produce the transcripts within 5 business days of the FTC's deposition of that witness.  To be clear, Plaintiffs are not—as Facebook misstates—seeking "the transcripts of each deposition taken in the *FTC* action."  Plaintiffs are seeking the transcripts of the FTC's depositions of Facebook witnesses who Plaintiffs also intend to depose.

**Plaintiffs' Request Will Improve the Deposition Process.**  Though only Facebook knows the identities of all witnesses who have provided testimony in these other litigations and investigations—information that Facebook refuses to provide to Plaintiffs in full—publicly available information confirms that witnesses who have provided testimony in the aforementioned litigations and investigations are possible, if not likely, deponents in this case too.  As described above, these include, for example, CEO Mark Zuckerberg, Chief Privacy Officer Erin Egan, Vice President and Deputy Chief Privacy Officer Rob Sherman, Vice President of Business Messaging Dan Levy, Head of New Product Experimentation Ime Archibong, Public Policy Director for Privacy and Data Policy Allison Hendrix, former Vice President of Partnerships Dan Rose, former Product Manager Yul Kwon, and former Platform Operations Manager Sandy Parakilas, among others.

Facebook's production of the transcripts specifically identified above—as well as lists of transcripts to facilitate future requests—will allow Plaintiffs in this case to identify relevant witnesses more efficiently, avoid burdening less relevant witnesses with unnecessary depositions, and prepare and take more efficient depositions which will also reduce the burden on these witnesses.  It will also prevent Facebook from testifying inconsistently among the matters.

**Plaintiffs' Request Imposes No Burden.**  Plaintiffs' request imposes little to no burden on Facebook.  For depositions and interviews that have already occurred, Facebook has already gathered these transcripts, and re-producing them to Plaintiffs costs nothing.  In any case, and to further limit any supposed burden, Plaintiffs already agreed to limit their request to select, relevant transcripts, using a process similar to the one the Court outlined with respect to deposition transcripts from the pending *FTC v. Meta* antitrust case.  *See* Oct. 20, 2022 Hrg. Tr. at 5–7.  Specifically, when Facebook previously refused to produce all transcripts from these matters, Plaintiffs proposed that Facebook provide a list of transcripts from the requested litigations and investigations so that

1  Plaintiffs could request select, relevant transcripts which Facebook would then produce.  Facebook

2  rejected Plaintiffs' proposal.

3      **Plaintiffs' Requested Relief.**  Plaintiffs were optimistic that a process for requesting

4  transcripts from other Facebook litigations and investigations like the one the Court outlined for

5  requesting transcripts from *FTC v. Meta* would resolve the parties' dispute without the need for

6  Court intervention.  But Facebook has failed even to follow the Court's instructions to provide

7  Plaintiffs a list of all depositions in *FTC v. Meta* and then produce the select transcripts Plaintiffs

8  requested.  As a result, Facebook has to date—and in response to Joint RFP No. 1—produced **zero**

9  transcripts from *FTC v. Meta* and from other Facebook-related lawsuits or investigations.

10      Depositions in this case are scheduled to begin in early February.  Accordingly, in order for

11  Plaintiffs to receive the requested transcripts from the specified lawsuits and investigations in time

12  to assist with the evaluation, selection, and preparation of depositions in this case—and in a manner

13  consistent with the Court's guidance regarding a list-based approach for *FTC v. Meta* transcripts—

14  Plaintiffs respectfully request that the Court order Facebook to: (1) immediately produce the specific

15  witness transcripts identified above; (2) immediately provide Plaintiffs with the lists of depositions

16  and transcripts in the other specified lawsuits and investigations for which Plaintiffs do not already

17  have the lists, and then produce to Plaintiffs the select transcripts that Plaintiffs request, within five

18  business days of Plaintiffs' making such a request.  Without such relief, Facebook will continue to

19  refuse to provide the lists of depositions and transcripts from these relevant lawsuits and

20  investigations.  Even assuming Plaintiffs are somehow able to discover the identities of these

21  witnesses and deponents, Facebook will also likely continue to refuse each of Plaintiffs' select

22  requests once Plaintiffs make them, requiring piecemeal motion practice and resolution.

23                  **2.**       **Meta's Statement**

24      The Court need not address Plaintiffs' lengthy arguments about Joint RFP 1 because this

25  dispute is not ripe for the Court's resolution.  If Plaintiffs want to bring this dispute to the Court's

26  attention, they are required to file a three-page discovery dispute letter.  S.O. for Discovery in Civil

27  Cases ¶ 18.  Instead, Plaintiffs improperly attempt to circumvent the Court's orderly rules by

28  elaborating on this topic for nearly *ten* pages of this statement.  While Meta responds to this issue,

1   below, to preserve its rights, assuming the Court would prefer to decide this issue pursuant to its

2   orderly process for resolving discovery disputes, it may go directly to page 22 of this statement.

3           Even if this Court were to consider Plaintiffs' wildly overbroad and unduly burdensome

4   requests, it should reject them.  *First,* some context.  These cases are not filed by plaintiffs with

5   legitimate grievances with Meta.  They were brought originally to follow on lawsuits filed by the

6   FTC and State Attorneys General.  Things did not go as Plaintiffs planned when the FTC and State

7   AG cases were initially dismissed, and substantial portions of the User and Advertiser cases were

8   too.  Those joint dismissals severed much of the overlap between the government cases and these

9   cases, requiring Plaintiffs to fend for themselves.

10          That is why this is at least the third time Plaintiffs have come to the Court begging for bizarre

11  requests like watching other depositions in other cases or seeking cloned discovery from myriad

12  proceedings on unrelated (or tangentially related) proceedings from other countries.  Plaintiffs

13  simply do not know where to turn next.  But that is not how the Federal Rules work.  Plaintiffs may

14  not, as they seem intent on doing, freeride on the back of foreign litigation and wholly unrelated

15  matters in the hope of turning up some theory to again replace their own misbegotten ones.  As

16  discussed below, Plaintiffs repeatedly request that Meta produce to them a complete list of all

17  depositions or investigative hearings that occurred in numerous litigations and investigations (many

18  of which occurred in foreign jurisdictions) of at best minimal relevance, so that Plaintiffs can then

19  select individual transcripts and demand that Meta produce them.  But even when they made similar

20  requests to this Court with respect to depositions in the FTC case—which includes a substantially

21  similar alleged market for the users and many overlapping allegations as to conduct as the

22  advertisers—they openly admitted that the cases were not that similar.  For example, when asked

23  by this Court to identify the degree of overlap between the FTC action and the Users' case, Users

24  stated, "we believe there is some degree of overlap, but the claims and conduct at issue are different."

25  Oct. 20, 2022 Hr'g Tr. at 4:24-5:1.  For their part, Advertisers admitted that the overlap between

26  their case and the FTC action is "[v]ery minimal . . . as far as it's different markets."  *Id.* at 5:14-15.

27  On that basis alone, this Court rejected Plaintiffs' requests for every deposition transcript.  *See id.*

28  at 6:5-6.  Apparently undeterred, Plaintiffs now ask that this Court order Meta to produce transcripts

1  of depositions in various other far-flung investigations and litigations that are even more attenuated

2  from this case.  The Court should deny Plaintiffs' requests.

3  **Plaintiffs' Request Is Grossly Overbroad and Unduly Burdensome.**

4  Joint RFP 1 is far from "a straightforward document request."  Plaintiffs' original request

5  sought *all* pleadings, dispositive motions, summary judgment motions, expert reports, and

6  deposition transcripts from over *twenty* different matters.  Despite the request's facial overbreadth,

7  Meta has from the start attempted to work with Plaintiffs to identify a reasonable and proportionate

8  scope of production, but Plaintiffs have refused to do so in any meaningful way.  By way of example,

9  with respect to the many hours of 30(b)(6) testimony Users demand from the FTC litigation, Users'

10  position has been decidedly uncompromising and contradictory.  In an effort to have their cake and

11  eat it too, Users argue that they are entitled to the transcripts because the deponents were designated

12  on "highly relevant" topics and the testimony would streamline their discovery efforts, but they

13  refuse to have the 11 hours of testimony they request count toward any amount of their 21 hours of

14  30(b)(6) deposition time.  Dkt. 174 at ¶ 1(a) (parties agreeing that "the total number of hours of

15  30(b)(6) testimony of Facebook shall not exceed 21 hours").  If the topics are "highly relevant,"

16  they should be the subject of a 30(b)(6) notice properly served in this case.[4]  Users should not be

17  allowed to skirt 30(b)(6) limits and subject Meta's witnesses to needless duplicative testimony.

18  Moreover, until just recently and contrary to Plaintiffs' narrative that they urgently require

19  this information, Plaintiffs failed to seriously pursue this request for *16 months*.  For example, Meta

20  heard nothing from Plaintiffs *for five months* after serving Plaintiffs with a letter in April 2022, in

21  which Meta offered to further meet-and-confer so that Plaintiffs could explain why the materials

22  they were seeking were relevant to this action.  Similarly, though Plaintiffs now proclaim to need

23  immediate production of investigative hearing transcripts from the FTC's pre-suit investigation,

24  Plaintiffs have had Meta's document production from that investigation for over 18 months, yet

25  Meta heard nothing from them on this request between early August and the Friday before this filing

26  was due.  If Plaintiffs genuinely considered this information critical to their case, they would not

27

28

---

[4] Users have no pending Rule 30(b)(6) deposition notices to Meta.

have sat on their hands for months.  Indeed, when Plaintiffs have bothered to engage meaningfully on Joint RFP No. 1, Meta has worked collaboratively with them to identify a reasonable scope of production.  For example, when Plaintiffs identified specific unredacted filings and expert reports from other cases, Meta assessed those requests and produced much of what Plaintiffs requested (or pointed them to the requested information in its existing productions).  The parties' practice simply does not bear out Plaintiffs' claim that further discussions would be unproductive.  When Plaintiffs make reasonable requests, Meta responds to them in kind.

Furthermore, Plaintiffs' assertion that their requests will impose little to no burden on Meta is not based in reality.  They now request that the Court order Meta to provide them with complete lists of transcripts for *more than twenty* litigations and investigations, many of which were conducted by non-U.S. regulators, with the ultimate goal of forcing Meta to produce to Plaintiffs transcripts for some unspecified number of current or former Meta employees.  Contrary to Plaintiffs' apparent belief, Meta does not maintain a central repository of every deposition taken or testimony given by any current or former Meta employee that has occurred in every proceeding. The depositions from which Plaintiffs seek transcripts took place, in some instances, more than a decade ago.  *Fraley*, for instance, was filed in March 2011, and *Social Ranger*, in December 2014. To generate the lists that Plaintiffs request, Meta would need to coordinate with each of the disparate in-house teams and outside law firms that represented Meta in those twenty-plus actions or investigations, many of which are based in non-U.S. jurisdictions, and also confirm that there are no protective orders or other concerns inherent in providing the material in this unrelated litigation. At this time, given Plaintiffs' cursory articulation of the reason why these investigations are relevant, and the likelihood that depositions concerning overlapping issues are cumulative of each other, the burden of producing this information is unwarranted.

**Transcripts from U.S. Antitrust Authorities' Investigations.**  Plaintiffs' request lacks any explanation for why these are relevant or non-cumulative to deposition transcripts and exhibits from the *FTC* action.  Indeed, as noted below, Meta has already provided Plaintiffs with a list of depositions occurring in the *FTC* action for any of 73 custodians in this case and any individuals appearing on any party's initial disclosures in this case (of which there are a total of 165 individuals),

1   and will agree to consider Plaintiffs' requests for transcripts of witnesses from the *FTC* action that

2   Plaintiffs indicate an intention to depose in this case.

3       Furthermore, Users already served a request for production (User RFP No. 35) of the FTC

4   pre-suit investigation hearing transcripts and have not meaningfully met-and-conferred with Meta

5   on its proposed resolution to that request.  Meta proposed to produce the FTC pre-suit investigation

6   hearing transcripts on August 4, 2022, subject to reasonable limitations on their use and subject to

7   the agreement that should Plaintiffs wish to pursue a deposition of an individual whose transcript

8   Meta agreed to produce, the deposition would last no more than four hours.  Counsel for Users

9   responded in a one-line email that Users would not accept Meta's proposal, without explanation.

10  Meta requested an explanation for why Users rejected that proposal on August 10, 2022, and

11  indicated that they would be willing to remove the deposition hour limitation in the interest of

12  compromise, or otherwise entertain a counterproposal.  Users never responded—or said anything

13  else about the FTC pre-suit investigation transcripts—until nearly *five months* later, the Friday

14  before this filing was due.

15      **Transcripts from Foreign Antitrust Authorities' Investigations.**  Users' and Advertisers'

16  cases, involving alleged markets confined to the U.S., will be decided under U.S. antitrust law.  Yet

17  Plaintiffs next demand a list of current and former Facebook employees who provided testimony to

18  various foreign competition authorities, including the Australian Competition & Consumer

19  Commission, the U.K. Competition & Markets Authority, and the German Federal Cartel Office, so

20  that Plaintiffs can make requests for specific transcripts.  Yet again, Plaintiffs fail to explain why

21  they need transcripts from foreign actions in addition to transcripts from actions involving U.S.

22  antitrust law and alleged U.S. markets.  Plaintiffs appear to suggest that because the markets alleged

23  or discussed in those foreign investigations are similar to the markets they have constructed, they

24  are somehow entitled to the transcripts that they want.  This ignores that those countries have

25  different laws, legal standards, facts, and competitive dynamics.

26      **Transcripts from Domestic Regulators' Investigations Regarding Facebook's Data**

27  **Practices.**    Plaintiffs' request—seeking transcripts from litigation, including, *SEC v. Facebook,*

28  *Inc.*, No. 3:19-cv-04241 (N.D. Cal.), *District of Columbia v. Facebook, Inc.*, 2018 CA 008715 B

(D.C. Super. Ct.), and *People of the State of Illinois v. Facebook, Inc.*, 2018 CH 03868 (Ill. Cir. Ct.)—violates their prior agreement to narrow the litigations from which Plaintiffs seek deposition and expert materials to: (1) the Cambridge Analytica MDL; (2) the *Fraley* case; (3) the *Social Ranger* case; and (4) the *FTC* case.  Dec. 2, 2022 Email from B. Pepperman to M. Jennings.[5]   And the breadth of Plaintiffs' next request—made for the first time in this case management statement—that Meta produce lists of the other current and former Facebook employees that provided testimony in *nearly ten different* investigations by the SEC, the FTC, and several State Attorneys General, including the D.C. Attorney General, that they claim relate to "data practices" compounds that violation.[6]  Again, Plaintiffs fail to explain how any such testimony has any relevance to this action, let alone why the "data practices" that were at issue in any of these investigations are relevant here. The mere fact that domestic government regulators have conducted various investigations since 2018 does not automatically render those investigations relevant here.  Nor have Plaintiffs offered any explanation as to how this request is not duplicative of their other requests, including their Cambridge MDL transcript request noted below.

**Cambridge Analytica MDL Deposition Transcripts.**  Plaintiffs' request for the deposition transcripts of Sam Lessin, Steven Elia, Antonio Garcia-Martinez, Shirine Sajjadi, Mike Vernal, Bill Fusz, Aldo King, Yul Kwon, Vladimir Fedorov, Monicka Bickert, Rob Sherman, Eddie O'Neil, Konstantinos Papamiltiadis, Erin Egan, Steve Satterfield, Dan Rose, Ime Archibong, and Allison Hendrix is premature.  Indeed, Plaintiffs made this request for the first time in this filing.  Meta is

---

[5] Plaintiffs also request a transcript of Sandy Parakilas's D.C. Attorney General testimony.  On January 10, 2023 Plaintiffs informed Meta that Mr. Parakilas' counsel offered to produce to Plaintiffs the transcript of Mr. Parakilas' testimony to the D.C. Attorney General solely in order for Plaintiffs to undertake a reasonable and good faith assessment of whether Plaintiffs could forego burdening Mr. Parakilas—a nonparty—with a deposition in this matter, and subject to Meta's agreement.  On January 11, Meta as a courtesy to Mr. Parakilas, who is a nonparty, informed Plaintiffs that it is willing to agree that his counsel may share the transcript with Plaintiffs for the purpose of making a good faith determination as to whether Plaintiffs can forego his deposition in this case, subject to treatment under the highest level of confidentiality provided for in the protective order in that matter.

[6] To the extent Plaintiffs seek (also for the first time) a transcript of Mark Zuckerberg's SEC testimony, that request should also be denied because Plaintiffs have failed to provide any explanation as to how Mr. Zuckerberg's testimony may bear on Plaintiffs' allegations at issue in this action.

happy to meet-and-confer further with Plaintiffs on this request and to hear why they think the individuals identified are relevant—particularly since many of them are not document custodians in this case, are not included in any party's initial disclosures, and all but two have not been noticed for a deposition in this action.  Concerning Plaintiffs' additional request for a complete list of the Rule 30(b)(6) deposition topics, if the 30(b)(6) material from the Cambridge Analytica MDL is, in fact, highly relevant to this case (again, Plaintiffs have provided no explanation why they believe that to be the case), it should be the subject of a proper 30(b)(6) notice served *in this action*.  If Plaintiffs will inform Meta of the topics on which they plan to request 30(b)(6) testimony, Meta is willing to work with Plaintiffs to determine whether prior 30(b)(6) transcripts might assist in narrowing or focusing those topics.  Any other course of action simply permits Plaintiffs to skirt 30(b)(6) limits and subject Meta and its witnesses to an obligation to provide needless, duplicative testimony.

***Social Ranger* Deposition Transcripts.**  As an initial matter, Meta has already agreed to produce the unredacted expert report of Dr. Dennis Carlton from *Social Ranger*, which Plaintiffs agreed resolves the request for expert reports as to *Social Ranger*.  Nevertheless, they now seek more.  As with nearly every other request for specific deposition testimony made in this filing, Plaintiffs' request for specific transcripts from the *Social Ranger* litigation is not ripe, as Plaintiffs informed Meta of their request for the first time while the parties were exchanging drafts.  Nor have Plaintiffs provided any good reason why these transcripts are relevant—a particular problem because *Social Ranger* differs in multiple significant ways from this case.  *Social Ranger* was brought by a developer, not users or advertisers, and involved distinct theories of exclusionary conduct (related to developer-facing policies that Meta adopted in 2011), distinct markets (a "virtual currency services" market and a "social games" market), and distinct theories of harm (lost profits by a Facebook Platform developer).

***Fraley* Deposition Transcripts.**  Plaintiffs include no explanation whatsoever for why the "sponsored stories" transcripts they seek are relevant to this case.  For good reason:  neither the product itself nor the conduct alleged in *Fraley*—alleged appropriation of users' names, photographs, and likenesses for advertising purposes—is a meaningful part of either class's claims.

1   That Meta has produced documents that *mention* Messrs. Rajaram and Hegeman—who are *not*

2   document custodians in this action—is of no consequence.  The mere fact that certain non-custodian

3   depositions were taken in *Fraley* does not render those transcripts relevant here.  In the same vein,

4   the use of the same expert witness (Dr. Tucker) that Meta used in *Fraley more than a decade ago*

5   does not make her testimony relevant in this action; expert witnesses routinely offer opinions in

6   unrelated cases.  Nonetheless, Meta has already agreed to produce the class certification filings from

7   *Fraley*.  The Court should reject Plaintiffs' demand that Meta be forced to do any more without a

8   clear and cogent explanation as to the relevance of those materials. No such explanation exists here.

9           ***FTC v. Meta* Transcripts and Depositions.**  Depositions of current and former Meta

10   employees are underway in *Federal Trade Commission v. Meta Platforms, Inc.*, Case No. 1:20-cv-

11   03590-JEB (D.D.C.) ("*FTC* action").  The FTC has thus far served three rounds of deposition notices

12   on Meta, the first on November 3, 2022, the second on November 23, 2022, and the third on

13   December 22, 2022, seeking depositions of a total of 50 current and former Meta employees.  Of

14   the depositions noticed in the *FTC* action, Meta identified 27 current or former Meta employees

15   who are included in the initial disclosures of a party to this action or are document custodians in this

16   action or both.  Although a few of these overlapping depositions are scheduled for January, the bulk

17   are scheduled for February through April.

18           Consistent with the Court's guidance at the October 20, 2022 status conference (which was

19   in line with what Meta had long suggested to Plaintiffs), on December 5, 2022, Meta asked Plaintiffs

20   to inform Meta which of these overlapping depositions Plaintiffs intend to pursue in this case and,

21   for any such depositions, whether Plaintiffs would agree schedule the depositions in this action close

22   in time—either on consecutive days or at least within a week or so—of the deposition in the *FTC*

23   action to minimize the burden on the witnesses, many of whom are non-parties.  Plaintiffs initially

24   refused Meta's requests outright.  However, on January 6, 2023, after months of efforts by Meta to

25   discuss deposition coordination across the matters, Plaintiffs for the first time indicated a willingness

26   to coordinate the depositions of certain overlapping witnesses, consistent with their prior

27   representation to this Court that they would do so.  Dkt. 364 at 2.  Plaintiffs indicated that they

28   intended to depose 11 of the 27 overlapping witnesses and proposed deposition dates for five of

1   those witnesses near in time to the witnesses' depositions in the *FTC* action.

2        In tentatively agreeing to coordination for certain depositions, however, Plaintiffs included

3   a host of additional demands that—despite Plaintiffs' representations to the contrary—find no

4   support in the Court's guidance during the parties' October 20, 2022 status conference or in law or

5   logic.  Plaintiffs repeat many of those same demands here.  For example, Plaintiffs represent that

6   this Court previously directed Meta to produce to Plaintiffs a list of every witness noticed for a

7   deposition by the FTC, without regard to relevance.  The Court did not direct Meta to do this.

8   Rather, in response to Plaintiffs' prior request that the Court permit them to receive every *FTC*

9   deposition transcript, the Court clarified that Plaintiffs' request was limited to only the witnesses

10  that Plaintiffs identified as relevant to this action.  Oct. 20, 2022 Hr'g Tr. at 6:5-6.  Consistent with

11  the Court's guidance, Meta provided Plaintiffs with a list of every witness noticed by the FTC and

12  included in the initial disclosures of any party to this action or who is a custodian in this action.[7]

13  Even amongst that set (which is presumably the set that is *most relevant* under Plaintiffs' own theory

14  of the case), Plaintiffs have only indicated a present desire to depose 11 of the 27 witnesses so

15  identified.  It is unclear to Meta what relevance current or former Meta witnesses who are not

16  included in any party's initial disclosures and who are not custodians in this action would have to

17  this case, especially since Plaintiffs have attempted to distance their claims and allegations from

18  those present in the *FTC* action.[8]

19        Plaintiffs' attempt to relitigate their request to attend depositions in a different case, in a

20  different district, and be provided with all the transcripts from that case on demand (without a

21  showing of relevance) should be rejected . . . again.  The Court previously rejected Plaintiffs'

22  request, stating, "I just don't understand why you want to sit in.  I mean, I'm not hearing an

23  overwhelming case about they are so similar you should just sit in on all these depos."  Oct. 20,

24  2022 Hr'g Tr. at 5:16-19.  Meta is not asking to be anointed the unilateral arbiter of relevance; it is

25

26  [7] Between both Users' and Advertisers' cases, there are a total of 73 document custodians, and 165
    individuals included on a parties' initial disclosures.  Should the FTC notice the deposition of any
27  of these individuals (beyond the 27 witnesses Meta has already identified), Meta will so inform
    Plaintiffs.

28  [8] It is also unclear why Plaintiffs refuse to speak to the FTC about deposition scheduling, especially
    given that Plaintiffs and FTC have had such discussions in the past.

simply asking Plaintiffs to comply with the Court's instruction that Plaintiffs have "some reason" for requesting a particular deposition transcript from the *FTC* case. *Id.* at 7:11-12. The Court similarly rejected Plaintiffs' request that Meta produce the transcripts of each deposition taken in the *FTC* action, holding that—to the extent Plaintiffs would get transcripts at all—they would be limited to only those transcripts that Plaintiffs specifically identify as relevant to this action. *Id.* at 6:5-9. Consistent with the Court's guidance, Meta will agree to consider Plaintiffs' requests for *FTC* deposition transcripts to the extent Plaintiffs demonstrate the relevance of the witness and his or her testimony to this action. In the event a dispute about relevance, or the propriety of a particular transcript request arises, Plaintiffs can seek the Court's guidance—as they have done with regard to Users' request for particular 30(b)(6) transcripts. But Plaintiffs cannot outright ignore the Court's prior rulings, as they presently do.

### B.      Protocol for Upcoming Relevant Market Tutorial

#### 1.      Plaintiffs' Statement

The Court scheduled a relevant market tutorial for each of the Consumer and Advertiser cases to occur February 28, 2023, at 11:00 a.m. Dkt. 379; Oct. 20, 2022 Hrg. Tr. at 10:11–17. During the prior October 20, 2022 status conference, the Court directed the parties to consult the Court's standing order regarding patent tutorials for guidance. *See* Oct. 20, 2022 Hrg. Tr. at 9:14–18. After consulting the "Tutorial and Claim Construction Hearing" section of the Court's Standing Order for Claim Construction in Patent Cases—and given the particulars of an antitrust relevant product market tutorial—Plaintiffs proposed to Facebook a protocol to govern submissions to the Court and exchanges of information in advance of the February 28, 2023 tutorial. In particular, Plaintiffs proposed that:

- In advance of the tutorial, the parties exchange the names of their respective proposed presenters at the tutorial;

- As to written submissions to the Court, Plaintiffs have a total of 12 pages (Consumers have 6 pages, and Advertisers have 6 pages), and Facebook has a total of 12 pages for both cases (presumptively 6 pages for the Consumer case, and 6 pages for the Advertiser case); and

- The parties exchange their respective visual demonstratives for the tutorial 48 hours in advance of the tutorial.

Facebook has agreed to Plaintiffs' proposal to exchange visual demonstratives for the tutorial 48 hours in advance of the tutorial. While Facebook responded to Plaintiffs' proposal with questions, Facebook did not—prior to this case management statement—provide direct responses as to Plaintiffs' proposals regarding the exchange of proposed presenters and the format of written submissions.

Plaintiffs request that the parties exchange the names of proposed presenters sufficiently in advance of the tutorial, so that the parties can each ensure their respective presentations squarely address the issues most helpful to the Court. Facebook's statement that Plaintiffs' proposal somehow is intended to make the tutorial a "gotcha exercise" is unfounded. If anything, Facebook's refusal to commit to providing the name of its presenter until 7 days before the tutorial evinces a gotcha-style attitude. Plaintiffs merely seek the reciprocal exchange of presenters sufficiently in advance of the tutorial to ensure that the parties' respective presenters are addressing the same subject matter and from a similar perspective.

To further ensure an orderly tutorial, Plaintiffs also requested that the parties agree on page limits for written submissions to the Court in advance of the tutorial. Plaintiffs appreciate Facebook's confirmation that Facebook's submission will not exceed 12 total pages.

### 2.  Meta's Statement

Meta has substantively responded to each portion of Plaintiffs' three-part proposal concerning the relevant market tutorial. Meta's response to Plaintiffs' proposal is consistent with this Court's Standing Order and discussions between the parties are ongoing. Nonetheless, because Plaintiffs are intent on raising this issue with the Court before it is ripe, Meta provides its response here.

First, Meta informed Plaintiffs that it was uncertain of the utility of the exchange of names between the parties because this is not an adverse process, and it is not yet (nearly seven weeks before the scheduled tutorial) in a position to identify who will be its representative(s). However, if this issue is important to Plaintiffs, Meta anticipates that it will be in a position to share the name(s) of its presenter(s) no later than one week before the tutorial—i.e., February 21. In any event, the Court's Standing Order does not require names of presenters be exchanged, and it is not clear how

knowing the identity of the individual(s) who will appear at the tutorial would, as Plaintiffs suggest in this filing, "ensure their respective presentations squarely address the issues most helpful to the Court."  Plaintiffs apparently view the tutorial as some sort of opportunity to impeach or make this into a "gotcha" exercise.  As the Court knows, that is not the purpose of a tutorial.  Second, consistent with the Court's Standing Order, Meta informed Plaintiffs that it plans to file a written submission of no more than 12 pages in total.  However, the relevant Standing Order does not dictate how pages must be allocated, and Meta will allocate the pages of its written submission as appropriate, so as, to turn a phrase, "squarely address the issues most helpful to the Court."  Plaintiffs are of course free to allocate their pages as they would like.  Third, although not required by the Standing Order, Meta agreed to Plaintiffs' requested exchange of visual demonstratives 48 hours in advance of the relevant market tutorial.

### C.     Protocol Regarding Non-Party Depositions

Pursuant to the Stipulated Deposition Protocol entered in this action, the parties agreed that Plaintiffs are collectively entitled to depose current Meta employees for a total of 200 hours of testimony, but left open for the parties to determine "limitations on additional categories of depositions as the case progresses, including non-party depositions (including former Facebook employees)." (Dkt. No. 174 at 2.)  The parties' respective positions regarding non-party depositions are described below.

### 1.     Meta's Statement

Meta proposes that Plaintiffs collectively and Meta each may take up to 175 hours of non-party deposition testimony (including former Meta employees), not to exceed 30 total depositions. In the event that a deposition is cross-noticed by multiple parties, the combined deposition will be limited to no more than 10 hours of deposition testimony, divided equitably among the noticing parties, unless otherwise agreed by the parties or ordered by the Court.  In making this proposal, Meta expects that the remaining provisions of the Stipulated Deposition Protocol (to the extent they do not conflict) will continue to apply with equal effect.

### 2.     Plaintiffs' Statement

Plaintiffs propose that the following parameters apply to non-party depositions taken in this

case, subject to further agreement by counsel or by Court order.

**175 Hours of Non-Party Deposition Time Per Side.**  The parties' Stipulated Deposition Protocol provides hours-based limits, rather than limits based on numbers of depositions.  For consistency, and to provide each side flexibility, Plaintiffs propose that a similar, hours-based approach apply to non-party depositions.  Specifically, Plaintiffs propose that Plaintiffs (collectively) and Facebook each may take up to 175 hours of non-party deposition testimony (including former Facebook employees).  This is the equivalent of Facebook's 25-deposition proposal in hours.  Plaintiffs also propose that there be no minimum time for non-party depositions, meaning each side's on-the-record time will be the time that counts toward each side's hours total (rather than some other minimum amount of hours that counts toward each side's total, regardless of the actual total number of hours that that side spends on-the-record during the deposition).

**Depositions of Former Facebook Employees.**  For the depositions of former Facebook employees that Plaintiffs notice, Plaintiffs propose that Plaintiffs may question the witness for up to 7 hours, and Facebook may question the witness for up to 1 hour.  If Facebook cross-notices the deposition of a former Facebook employee that Plaintiffs have noticed, then Facebook may question the witness for up to 3 hours, and the deposition will be continued to a second day if the questioning proceeds for more than 8 hours on the record (subject to the witness's agreement).

**Depositions of Other Non-Parties.**  For all other non-party depositions (i.e., non-Facebook witnesses), Plaintiffs propose that the side noticing the party may question the witness for up to 6 hours, and the non-noticing side may question the witness for up to 1 hour.  Assuming both Plaintiffs and Facebook notice the non-party deposition, then each side may question the witness for up to 5 hours, and the deposition will be continued to a second day if the question proceed for more than 8 hours on the record (subject to witness agreement).

### D.    Advertisers' Production of Privacy Setting Screenshots

#### 1.    Meta's Statement

In response to Meta's Request for Production No. 14, seeking "[a]ll documents concerning the privacy protections, privacy policies, or privacy practices of any online services that you used during the Relevant Time Period, including but not limited to documents sufficient to show all

privacy settings on all your accounts," Advertisers produced various partially or entirely illegible images of their web-based privacy settings.  In addition, Advertisers did not produce any documents showing their mobile privacy settings, despite having agreed to do so.  Meta has asked that Advertisers replace the illegible privacy setting screenshots and produce screenshots of Advertisers' mobile privacy settings for Plaintiff Mark Young by January 30 (in advance of his upcoming deposition) and for the other Advertiser named Plaintiffs as soon as possible thereafter.  Advertisers have not yet responded to Meta's request.

### 2. Advertisers' Statement

The above issue was first presented to Advertisers after business hours on January 11, 2023, the day before this Statement was to be filed.  Advertisers are investigating Facebook's assertion, and will respond as soon as practicable.

### III. Update Regarding Discovery Propounded to Date[9]

#### A. Plaintiffs' Statement

With the exception of Joint RFP 1, discussed above, Facebook substantially completed its document production in response to Plaintiffs' already-served document requests during the week of December 19, 2022; December 19, 2022 is the substantial completion deadline set by the Court.  Dkt. 379.  This excludes documents that Facebook intends to include on privilege logs.  It also excludes the responsive, non-privileged documents that Facebook anticipates producing by January 13, 2023, following Facebook's discovery of a vendor issue that caused approximately 465,000 documents to be erroneously excluded from Facebook's review queue and which Facebook began reviewing on December 6, 2022.  *See* Dkts. 400, 403.  As a courtesy, and while reserving their rights, Plaintiffs agreed to Facebook's request for an extension.

Plaintiffs served their first six Rule 30(b)(1) deposition notices for certain current and former Facebook employees on January 4, 2023, seeking deposition dates in February 2023.  Plaintiffs await Facebook's response, including whether Facebook's counsel represents—and will accept

---

[9] For conciseness, the parties focus this section of the Joint Case Management Statement on discovery since October 13, 2022, the date of the parties' last Joint Case Management Statement.  The parties' prior Joint Case Management Statements contain similar summaries of discovery up to the dates of those statements' respective filings.

1   service of the subpoenas for—certain of the requested former Facebook employees.   Plaintiffs

2   anticipate issuing additional deposition notices and subpoenas in the near term.

3   **Consumers' Further Statement:** Consumers continue to discuss with Facebook the scope

4   of Facebook's document production regarding its "Commitment Manager" efforts and data

5   regarding its Study and Viewpoints data compensation services.   Consumers also propounded their

6   Fifth Set of Requests for Production to Facebook seeking certain documents and structured data,

7   and Facebook's responses and objections are due on January 23, 2023.

8   Consumers have continued to negotiate with certain non-parties the scope of those non-

9   parties' document productions in response to Consumers' document subpoenas.   Since the prior

10   October 13, 2022, case management statement, Consumers have also issued additional non-party

11   subpoenas, including to possible vendors for the "Facebook Research App" data compensation

12   service.   In addition, and as stated above, Consumers have filed a discovery letter brief seeking to

13   compel further document production from non-party Apple Inc., which is currently pending before

14   the Court.   Dkt. 398.   Apple's response is due on January 16, 2023.   Dkt. 404.

15   Consumers will raise with the Court any disputes regarding the above discovery items,

16   should it become necessary.

17   **Advertisers' Further Statement:** Advertisers have served subpoenas on several non-

18   parties and continue to negotiate with those non-parties as to their respective productions.

19   Advertisers anticipate serving additional non-party subpoenas in the near future.

20   **B.      Meta's Further Statement**

21   **Discovery Propounded by Meta**.   On November 29, 2022, Meta served its Third Set of

22   Requests for Production to Users.   On December 29, 2022, Users served their responses and

23   objections.

24   On December 19, 2022, Meta served its Third Set of Interrogatories to Users.   Users'

25   responses and objections are due January 18, 2023.

26   On January 5, 2023, Meta noticed the deposition of named Advertiser Plaintiff, Mark Young.

27   Mr. Young's deposition will take place on February 23, 2023.

28

On January 11, 2023, Meta served its Fourth Set of Interrogatories to Advertiser Plaintiffs. Advertisers' responses and objections are due February 10, 2023.

**Requests for Production**.  Meta substantially completed production on December 19, 2022 of all email and workchat data for the 73 agreed custodians with the exception of material being considered for inclusion on Meta's privilege logs and approximately 500 documents Meta identified as potentially subject to various confidentiality agreements with non-parties.[10]  The December 19 production also substantially completed Meta's anticipated production of non-custodial documents responsive to plaintiffs' Requests for Production.

**Interrogatories**.  On December 16, 2022, Meta served supplemental responses to Advertiser Plaintiffs' Interrogatory Nos. 5, 7, and 8 of their Second Set of Interrogatories.  As a result, Advertisers withdrew their discovery letter brief seeking supplemental responses to Interrogatory Nos. 5, 7, and 8.  Dkt. Nos. 385, 402.

**IV.**    **Update Regarding Lawsuits Filed by FTC and State Attorneys General**

In *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.), fact discovery, including depositions, is underway and scheduled to close on May 22, 2023.  Dkt. No. 103.  In *State of New York, et al v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.), oral argument on the States' appeal of the district court's dismissal order took place on September 19, 2022.  Dkt. No. 1950973.

**V.**    **Joint Case Management Statement Exchange Schedule**

**A.**    **Meta's Statement**

Meta respectfully requests that the Court enter a protocol for the drafting and exchange of drafts of future joint case management statements.  During the drafting process for numerous of the parties' joint case management statements—including this one—submitted to this Court, Plaintiffs have set deadlines they have then proceeded to ignore, have refused to allow Meta appropriate time

---

[10] As described in the parties' Joint Stipulation Regarding Substantial Completion Date for Document Production, on December 6, 2022, Meta's document-review vendor advised Meta that it had used an incorrect date field to search certain non-email document collections. Dkt. No. 400. At the parties' request, the Court extended the substantial completion deadline for the documents described in their Joint Stipulation to January 13, 2023. Dkt. Nos. 400, 403.

to respond to their edits to drafts in progress, and have engaged in gamesmanship through last minute substantive edits to the statements hours before filing.  To address these recurring issues, Meta requests that the Court order the below schedule to be followed for all future joint case management statements:

- **12 pm Pacific, 3 business days before filing**:  Parties exchange initial drafts of their respective joint case management statements.

- **9 am Pacific, day of filing**:  Parties exchange revisions to initial drafts of their respective joint case management statements.

- **5 pm Pacific, day of filing**:  Parties exchange final drafts of their respective portions of the joint case management statement.  Plaintiffs collate the draft, and file shortly thereafter.

The need for this schedule is borne out by the parties' most recent exchange leading to this filing.  More than one week before this joint case management was due, Meta proposed a schedule by which the parties exchange drafts of their portions.  Meta asked that the parties conduct a first exchange on Monday, January 9, a second exchange at 9am PT on Thursday, January 12, and a final exchange at 5 pm PT that same day with Plaintiffs to file shortly thereafter.  Plaintiffs insisted on delaying the first exchange until Tuesday, January 10, and the second exchange until 12 pm PT on Thursday, January 12.  Plaintiffs then demanded that the parties exchange final file-ready copies at 3 pm PT, which would have deprived Meta's outside counsel and in-house counsel a reasonable opportunity to prepare their responsive sections.  But after the second exchange, Plaintiffs failed to communicate with Meta regarding the final exchange, ignoring three outreaches from Meta until after 6 pm PT.  Plaintiffs' actions in this and in prior preparations of joint submissions have hampered the fair exchange of positions and prejudiced Meta.

Meta respectfully submits that the above schedule puts both sides in the best position to fairly and efficiently arrive at a joint submission that will facilitate the Court's management of the case.

**B.    Plaintiffs' Statement**

Plaintiffs strongly dispute Facebook's mischaracterizations regarding the source of

difficulties regarding the parties' exchange of portions for case management statements.  To the extent that the Court would like to discuss this issue further, Plaintiffs are happy to do so at the upcoming status conference.

**VI.     Other Developments**

**1.     Joint Mediation Update**

The parties have agreed upon an experienced mediator with significant relevant experience, Greg Lindstrom.  All parties have had initial discussions with the mediator.

**2.     Update Regarding Advertisers' FAC**

On December 6, 2022, the Court denied Facebook's motion to dismiss Advertisers' First Amended Complaint ("FAC").  Dkt. 396.  On December 12, 2022, Facebook and Advertisers stipulated to extend Facebook's deadline to respond to the FAC by twenty-one days, up to and including January 10, 2023.  Dkt. 397.  On January 10, 2023, Facebook filed its Answer.  Dkt. 408.

1    DATED:  January 12, 2023                   Respectfully submitted,

2

By:  */s/ Shana E. Scarlett*                 By:  */s/ Kevin Y. Teruya*
3    **HAGENS BERMAN SOBOL SHAPIRO LLP**       **QUINN EMANUEL URQUHART & SULLIVAN,**
     Shana E. Scarlett (Bar No. 217895)        **LLP**
4      shanas@hbsslaw.com                       Kevin Y. Teruya (Bar No. 235916)
     715 Hearst Avenue, Suite 202                 kevinteruya@quinnemanuel.com
5    Berkeley, CA 94710                         Adam B. Wolfson (Bar No. 262125)
     Telephone: (510) 725-3000                    adamwolfson@quinnemanuel.com
6                                               Claire D. Hausman (Bar No. 282091)
     Steve W. Berman (*pro hac vice*)            clairehausman@quinnemanuel.com
7    steve@hbsslaw.com                          Brantley I. Pepperman (Bar No. 322057)
     1301 Second Avenue, Suite 2000              brantleypepperman@quinnemanuel.com
8    Seattle, WA 98101                          865 South Figueroa Street, 10th Floor
     Telephone: (206) 623-7292                  Los Angeles, CA 90017-2543
9                                               (213) 443-3000

10   **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
     W. Joseph Bruckner (*pro hac vice*)        Michelle Schmit
11     wjbruckner@locklaw.com                     michelleschmit@quinnemanuel.com
     Robert K. Shelquist (*pro hac vice*)       191 N. Wacker Drive, Suite 2700
12     rkshelquist@locklaw.com                  Chicago, IL 60606
     Brian D. Clark (*pro hac vice*)            Telephone: (312) 705-7400
13     bdclark@locklaw.com
     Rebecca A. Peterson (Bar No. 241858)       Manisha M. Sheth (admitted *pro hac vice*)
14     rapeterson@locklaw.com                     manishasheth@quinnemanuel.com
     Arielle S. Wagner (*pro hac vice*)         51 Madison Avenue, 22nd Floor
15     aswagner@locklaw.com                     New York, New York 10010
     Kyle J. Pozan (admitted *pro hac vice*)    (212) 849-7000
16     kjpozan@locklaw.com
     Laura M. Matson (admitted *pro hac vice*)  *Interim Counsel for the Consumer Class*
17     lmmatson@locklaw.com
     100 Washington Avenue South, Suite 2200
18   Minneapolis, MN 55401
     Telephone: (612) 339-6900

19

20

21

22

23

24

25

26

27

28

By:  */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Andrew C. Wolinsky (*pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Telephone: (512) 575-8848

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Henry Kelston (*pro hac vice*)
  hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
 Telephone: (310) 474-9111

By:  */s/ Amanda F. Lawrence*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
  alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

Hal D. Cunningham (Bar No. 243048)
  hcunningham@scott-scott.com
Daniel J. Brockwell (Bar No. 335983)
  dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. Rodriguez (pro hac vice)
  prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500

*Interim Counsel for the Advertiser Class*

1

By:  */s/ Sonal N. Mehta*

2

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Sonal N. Mehta (SBN: 222086)

3

2600 El Camino Real, Suite 400
Palo Alto, California 94306

4

Telephone: (650) 858-6000
Facsimile: (650) 858-6100

5

Email: Sonal.Mehta@wilmerhale.com

6

David Z. Gringer (*pro hac vice*)

7

7 World Trade Center
250 Greenwich Street

8

New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

9

Email: David.Gringer@wilmerhale.com

10

Ari Holtzblatt (*pro hac vice*)
Molly M. Jennings (*pro hac vice*)

11

1875 Pennsylvania Avenue NW
Washington, DC 20006

12

Telephone: (202) 663-6000
Facsimile: (202) 663-6363

13

Email: Ari.Holtzblatt@wilmerhale.com
Email: Molly.Jennings@wilmerhale.com

14

*Attorneys for Defendant Meta Platforms, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:20-cv-08570-JD

TENTH CASE MANAGEMENT STATEMENT

### ATTESTATION OF KEVIN Y. TERUYA

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya.  By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: January 12, 2023         By */s/ Kevin Y. Teruya*

Kevin Y. Teruya

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By */s/ Kevin Y. Teruya*

Kevin Y. Teruya