January 16, 2023                                                                               **VIA CM/ECF FILING**
The Hon. James Donato, San Francisco Courthouse
450 Golden Gate Avenue, Courtroom 11
San Francisco, CA 94102

Re:     Response to Discovery Letter Brief to Compel Production from Apple Inc.

Dear Judge Donato:

Apple has negotiated in good faith with Consumer Plaintiffs ("Consumers"), agreeing to produce documents and data proportional to the needs of the action and Apple's (at most) minimal relevance, but declining to produce irrelevant business-sensitive documents for which Consumers do not have a substantial need.[1] Far from refusing to "even discuss" Consumers' requests (Dkt. No. 398 ("Br.") 1), Apple has negotiated in good faith for nine months, doing so despite the overbreadth and patent irrelevance of Consumers' demands and Consumers' unwillingness to materially narrow their subpoena.[2] For the reasons below, Consumers' motion to compel should be denied.

**Consumers Fail to Establish a Substantial Need for the Requested Material**. Where, as here, a subpoena seeks "trade secret[s] or other confidential research, development or commercial information," discovery is only permissible if the requesting party "show[s] a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (citing Fed. R. Civ. P. 45(d)(3)(C)(i)). To show a substantial need, the requesting party must demonstrate that the subpoenaed information is relevant and important to the action, and not available from other sources. See *id.* at 685. The requesting party must also establish a "clear-cut need" for this discovery, and must "narrowly draw[] [requests] to meet specific needs." *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011).

Consumers cannot show a substantial need for the documents they demand from Apple. The crux of Consumers' claim is that "[Meta] acquired and maintained monopoly power [in a purported Social Network Market] by making false representations to users about [Meta's] data privacy practices." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022). But, fatal to their motion, Consumers do not allege that Apple participates in the purported market, and the requests here do not seek any essential or unique information as to whether Meta "deceiv[ed] Consumers about [Meta's] data privacy practices." *Id.* at 786.

**(1) App Tracking Transparency ("ATT")**. ATT is a privacy feature that limits the ability of app

---

[1] Apple is also producing documents in response to a 98-request subpoena from Meta. All of the documents Apple produced to Meta will be produced concurrently to Consumers. Despite the overbreadth of Meta's subpoena, through good-faith negotiations, Apple and Meta reached a compromise eliminating the need for court intervention with respect to all but one request. (*See* Dkt. 406.)

[2] At Your Honor's request, Apple would be happy to provide correspondence setting forth its compromise proposals and rationale for declining Consumers' demands.

developers to track iPhone and iPad users across other companies' apps. Consumers request documents from 13 proposed custodians, including Apple's CEO and other high-level employees, relating to "ATT's origins, intent, purpose, motivations, and/or strategies." (Br. 2.) Because privacy and security are integral to Apple's business model, documents concerning Apple's development of ATT contain highly confidential information and Consumers must show a "substantial need" to compel their production. Consumers cannot meet this burden. *First*, the launch of ATT in April 2021 post-dates the class period, which ends on December 3, 2020. (*See* Dkt. No. 87 at ¶ 248.) *Second*, the reasons *Apple* implemented ATT bear no relevance to whether *Meta's* "deceptive practices allowed [Meta] to maximize its user base and its revenue." *Klein*, 580 F. Supp. 3d at 793. *Third*, Consumers do not need Apple's internal documents to show whether Apple's privacy policies have affected industry participants (including Meta), that Apple believes privacy is a fundamental human right, or to make the simple point that "users care about collection and use of their data." (Br. 2.) *Fourth*, Meta is in a much better position than Apple to provide information concerning how ATT has impacted Meta's own privacy practices and revenue. Indeed, Apple lacks direct insight into how its policies have impacted Meta's revenue aside from Meta's public statements (which are available to Consumers), or from Meta's communications to Apple (which Apple has offered to produce to Consumers).[3]

Consumers also request documents relating to "the dollar value of data as shown by [Meta's] representations, discussions, or threats of legal or other punitive action related to ATT." (Br. 2.) While Apple's internal communications following "threats of legal or other punitive action" are likely privileged (and thus not discoverable), any information concerning the value of user data collected by Meta should be obtained directly from Meta, as Apple would have limited (if any) insight into what value Meta places on user data beyond what Meta has publicly expressed.

Finally, Consumers fail to mention that Apple agreed to produce anonymized ATT user opt-in data that it maintains in the ordinary course, and that Meta almost certainly maintains more data about its own users' ATT participation than Apple.

**(2) 2019 Sun Valley Meeting**. Consumers seek Apple's internal documents relating to a purported meeting in 2019 between Tim Cook and Mark Zuckerberg. Because "documents created by or provided to [company] executives . . . definitely count[] as 'confidential research, development, or commercial information,'" *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *9, Consumers must show a substantial need for documents that fall into this category, to the extent any such documents exist. Consumers cannot make this showing: they wrongly argue these documents "tend to establish only a sophisticated entity like Apple . . . could even possibly begin to uncover [Meta]'s deception," as they "bear on the facts underlying the Cambridge Analytica scandal, such as the basis for Mr. Cook's [reported] belief that [Meta] had engaged in data-related misconduct." (Br. 2.) However, Consumers overlook that Mr. Cook reportedly criticized Meta's privacy practices *after* news outlets (several of which Consumers cite) widely reported the

---

[3] *See In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *8 (N.D. Cal. Oct. 9, 2020) ("Forcing [non-party] to identify document custodians and non-custodial sources of data, image those data sources, run search terms and have people review the documents is a much more laborious way to obtain this type of information than acquiring already-existing market intelligence . . . or even [a party's] own competitive intelligence from that period of time . . . .")

Cambridge Analytica scandal. To the extent any of the requested documents exist within Apple, Consumers have provided no reason to believe that they would include any unique information about the Cambridge Analytica scandal or any of the other incidents at issue in this litigation.

**(3) Apple's Evaluation of Meta's Data Collection and Use Practices.** Consumers wrongly argue that documents related to "Apple's evaluation and discussion of Meta's data collection and use practices" (if any) are relevant to their antitrust claims because "Apple has repeatedly commented publicly on [Meta's] practices." (Br. 3.) Apple's relationship with developers and implementation of the App Store Guidelines concern sensitive and confidential business issues, and Consumers do not have a substantial need for this discovery. *First*, Consumers' assertion that "only a sophisticated entity . . . could have uncovered [Meta's] deception" (Br. 3) is obviously untrue—the Apple paper Consumers cite itself relies on public information (citing over 20 articles published prior to the filing of this action) and does not identify any non-public source. *Second*, unlike information that can be obtained from Meta about its own purported deceptions, Apple's deliberations (if any) about, or analysis of, Meta's conduct would be mere speculation about what Meta did and why. Consumers' request amounts to a fishing expedition for non-essential quotes showing a non-party taking an unflattering view of Meta's privacy practices. Apple's "views" are neither "important" nor necessary to Consumers' claims, and this request should be denied. See *In re Apple iPhone*, 2020 WL 5993223, at *6.

**(4) Meta Apps That Compensate Users for Their Data.** Consumers incorrectly claim that Apple's internal analysis of Meta's Research, Study, and Viewpoints apps are relevant to their damages theories because such documents "bear[] on, at least, Consumers' claim [that Meta] could have feasibly compensated users for their data." (Br. 3.) These internal files concern confidential information regarding how Apple runs its App Store, which is not at issue in this litigation. Moreover, Consumers do not have a substantial need for this information because they could easily obtain more fulsome information regarding Meta's user compensation practices from Meta itself. Consumers do not, and cannot, explain how any information Apple could have about these apps is relevant *or* unique and of more value than the information Meta already keeps.

Nevertheless, despite Consumers' failure to show a substantial need for Apple's documents, Apple offered to produce correspondence with Meta regarding Meta's apps' compliance with the App Store Guidelines that govern compensation to customers. Further, Apple is and has been willing to produce correspondence with Meta concerning the Research, Study, and Viewpoints apps.

\* \* \*

Consumers have this Court's burden analysis backwards. Custodial productions in response to a third-party subpoena are not automatic, regardless of whether the subpoena target has made such productions in other matters or in response to subpoenas from other parties (*see* Br. 3). Further, Apple's relevance in the cases Consumers cite was entirely distinct from any *de minimis* role Apple might have here. In *United States v. Google LLC*, Apple **is the counterparty** to contracts the DOJ has challenged under the Sherman Act. *See* Am. Compl., No. 1:20-cv-03010, Dkt. 94 at ¶¶ 121-22 (D.D.C.). And in *Fed. Trade Comm'n v. Qualcomm Inc.*, "Qualcomm's exclusive deals **with Apple**" were core to the FTC's case. 411 F. Supp. 3d 658, 762 (N.D. Cal. 2019) (emphasis added).

Consumers have not shown a substantial need for the information they seek from Apple. This motion should be denied.

DATED: January 16, 2023                    Respectfully submitted,

By /s/ Caroline Van Ness

Caroline Van Ness (Bar No. 281675)
caroline.vanness@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, California 94301
Tel: (650) 470-4500

Karen Hoffman Lent (*pro hac vice* pending)
karen.lent@skadden.com
Evan Kreiner (*pro hac vice* pending)
evan.kreiner@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000

*Counsel for Apple Inc.*