January 18, 2023                                                    **VIA CM/ECF FILING**

The Hon. James Donato, San Francisco Courthouse
450 Golden Gate Avenue, Courtroom 11
San Francisco, CA 94102

Re:    Response to Meta Discovery Letter Brief (ECF No. 406, "Br.") to Compel Production from
       Apple Inc.

Dear Judge Donato:

Meta lacks a substantial need for the irrelevant, highly confidential information it moves to compel from Apple, and its motion should be denied.  The Advertiser Plaintiffs' ("Advertisers") case is about Meta's alleged unlawful monopolization of a purported "social advertising market."  (ECF No. 391 ¶¶ 766–803, 860, 866.)  Apple is not a party to Meta's alleged monopolization scheme and does not compete in the purported social advertising market, as it does not sell advertising on a social networking or social media platform.  Nevertheless, on June 3, 2022, Meta served Apple with an exceptionally overbroad third-party subpoena, which includes 98 individual requests for production (not including sub-parts) and seeks information from across numerous areas of Apple's business.  Despite the facial unreasonableness of Meta's subpoena, Apple has negotiated with Meta in good faith, and has resolved disagreements concerning each of Meta's 98 requests, except for one—RFP No. 11—on which Meta now moves to compel.

RFP No. 11 seeks confidential commercial information from Apple that is irrelevant to this action—specifically, "documents regarding the impact of Apple's App Tracking Transparency [("ATT")] feature on [Apple's] advertising business."  (Br. 1.)  ATT is a privacy feature that gives users of Apple's iPhone and iPad products a choice as to whether they will permit the apps they use on these devices to track their activity across other apps and websites.  With ATT, a developer—like Meta—may not track an iPhone or iPad user's activity across other developers' apps if the user does not give the developer permission to do so.  Meta has repeatedly stated that these privacy enhancements have reduced Meta's advertising revenue, and Meta has been a vocal critic of ATT since its inception.[1]

Meta cannot meet the heightened burden it faces to obtain the documents and information it demands from Apple.  Where, as here, a subpoena seeks confidential "commercial information" from a nonparty, discovery is permissible only if the requesting party "show[s] a substantial need for" such information "that cannot be otherwise met without undue hardship."  Fed. R. Civ. P. 45(d)(3)(B)–(C).  To make that showing, Meta must demonstrate that the discovery is not only relevant but also "essential to a judicial determination of its case."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006).  Apple's internal documents and data reflecting the performance of its advertising business and its assessment of ATT qualify for these enhanced protections, as Apple "has historically sought to maintain the confidentiality" of this information.  *SPS Techs.,*

---

[1] *See, e.g.*, Megan Graham, *Facebook Blasts Apple in New Ads Over iPhone Privacy Change*, CNBC (Dec. 16, 2020), https://www.cnbc.com/2020/12/16/facebook-blasts-apple-in-new-ads-over-iphone-privacy-change-.html.

*LLC v. Briles Aerospace, Inc.*, 2019 WL 13108018, at *1 (C.D. Cal. June 24, 2019) (citation omitted).[2]  Indeed, Apple's assessment of ATT goes to the very "heart of [its] confidential strategic thinking" regarding privacy- and security-based innovations on its devices.  *See In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *6 (W.D. Wash. Aug. 17, 2009).  And the risk of disclosing this information to Meta is particularly acute given Meta's public and strident opposition to ATT.[3]

**ATT's effect, if any, on Apple's advertising business is not probative of Meta's alleged monopoly power**.   According to Meta, the information it seeks to compel from Apple "demonstrates that Meta does not hold monopoly power in the relevant market."  (Br. 1.)  Meta fails to establish a substantial need for this information, which is not "essential" to the judicial determination of its case, for multiple independent reasons.

***First***, the impact of ATT on ***Apple's*** advertising products is not at all probative as to whether ***Meta*** has monopoly power (Br. 1–2) in the alleged social advertising market in which, as explained below, Apple does not compete.  Whether ATT has impacted Apple's advertising business would not tend to make any more or less likely Meta's ability to "control prices or exclude competition" in that market—i.e., the key, definitional characteristics of monopoly power.  *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022) (citation omitted).  The only information Meta could conceivably need with respect to ATT that bears on this issue is information reflecting whether, and the extent to which, ATT has impacted ***Meta's*** advertising business—e.g., Meta's profit margins, Meta's share of the alleged social advertising market, Meta's output, and/or Meta's ability to exclude other social advertising services (which Apple does not provide).  Meta itself is uniquely situated to produce that information, into which Apple has no direct insight.[4]  Meta has thus failed to make any showing that Apple's confidential commercial information reflecting the impact of ATT on Apple's own products is relevant, let alone ***essential***, to the resolution of this case.  For this reason alone, Meta lacks a substantial need for documents regarding the impact of ATT on Apple's advertising business, and its motion should be denied.  *See Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (party seeking third-party confidential information must establish that claims or defenses "virtually rise[] or fall[] with the admission or exclusion" of that information (citation omitted)).

***Second***, Meta's argument is premised on its assertion that Apple is a competitor to its advertising business in both Advertisers' proffered social advertising market and some broader, undefined advertising market that Meta contends is the proper relevant market.  (*See* Br. 1–2 (asserting that

---

[2] Meta concedes that even its narrowed request for information related to Apple's advertising revenue is not public knowledge.  (Br. 2.)  Apple's "confidential *projections*" regarding its advertising revenue are "well within the scope of information deemed by the Ninth Circuit to be . . . confidential commercial information."  *Sci. Games Corp. v. AGS LLC*, 2018 WL 2292811, at *4 (D. Nev. May 18, 2018) (emphasis added) (citation omitted).

[3] *See, e.g.*, Kif Leswing, *Facebook Says Apple iOS Privacy Change Will Result in $10 Billion Revenue Hit this Year*, CNBC (Feb. 2, 2022), https://www.cnbc.com/2022/02/02/facebook-says-apple-ios-privacy-change-will-cost-10-billion-this-year.html.

[4] Meta neglects to mention that Apple agreed with Meta and the Consumer Plaintiffs to provide data into which it *does* have unique insight: data that Apple maintains in the ordinary course reflecting ATT opt-in rates across apps.

"[i]nformation reflecting that Apple's advertising business expanded significantly as a result of [ATT] demonstrates Meta's inability to ***exclude competitors***" (emphasis added)).)  But Apple does not sell advertising on social media or social networking platforms and thus does not compete in Advertisers' alleged social advertising market.[5]  Indeed, tellingly, Meta dropped all of its other requests for production related to Apple's advertising products aside from the request at issue here.

Moreover, Meta does not (and cannot) explain ***why*** information about how ATT has impacted Apple's advertising products is "essential"—much less relevant—to prove that the market is broader than the alleged social advertising market.  *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *6 (N.D. Cal. Oct. 9, 2020) (concluding that the requesting party failed to show a substantial need for documents reflecting the breadth of the relevant market).  All Meta offers is the conclusory assertion that information reflecting the impact of ATT on Apple would "undermine[] Plaintiffs' theory" that "Meta's advertising products do not compete with offerings provided by Apple." (Br. 1.)  While Meta's failure to explain why this information is essential on its own dooms Meta' motion, information reflecting the impact of ATT on Apple also provides no insight into whether Apple's advertising products are reasonable "economic substitutes" for advertising on any individual social media or social networking platform—which is central to the market definition inquiry.  *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).[6]

***Third***, Meta's attempt to cast Apple as a "gatekeeper" over its platform (Br. 1) merely distracts from the core issues in this case.  Apple's ability to govern its own platform, which provides an important source of differentiation in the sale of its devices, bears no relevance to ***Meta's*** ability to exclude ***its competitors*** in the alleged market, particularly given that Meta and its competitors operate on numerous other platforms.  And Meta's assertion that Apple has "exclude[d] Meta through" ATT (Br. 1) is blatantly false, as ATT does not restrict Meta's data collection on its own apps.  The gatekeepers, if any, are the users.  Meta can still track user activity across apps it does not own if the user agrees to allow such data collection.  Regardless, Meta can make the point that app developers must adhere to Apple's policies to offer apps on Apple's platform by reference to publicly available sources (like Apple's App Review Guidelines) or its own documents.

*     *     *

Meta has this Court's burden analysis backwards.  That "Apple is the largest technology company in the world" (Br. 3) says nothing about whether Meta has a substantial need for the information it seeks—let alone whether that information is essential to the resolution of its case.  In the end, Meta's request amounts to no more than a fishing expedition for documents to support its circumstantial, baseless, and irrelevant theory that Apple's decision to implement ATT was motivated by a desire to preference its own advertising products—rather than to improve user experience on its core products by implementing greater privacy protections.  Meta's motion should be denied.

---

[5] Apple sells advertising services only on its App Store and on its Apple News and Stocks apps.

[6] Even assuming *arguendo* Meta is correct that some broader advertising market provides the correct market definition in this action, then Advertisers' "antitrust claims would appear to be doomed" at the outset, rendering Meta's request for Apple's information all the more unnecessary. *In re eBay*, 2009 WL 10677051, at *3.

DATED: January 18, 2023

Respectfully submitted,

By */s/ Caroline Van Ness*

Caroline Van Ness (Bar No. 281675)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, California 94301
Tel: (650) 470-4500
caroline.vanness@skadden.com

Karen Hoffman Lent (*pro hac vice*)
Evan Kreiner (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
evan.kreiner@skadden.com

*Counsel for Apple Inc.*