**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Claire D. Hausman (Bar No. 282091)
 clairehausman@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Manisha M. Sheth (admitted *pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Michelle Schmit (admitted *pro hac vice*)
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

*Attorneys for Plaintiffs Maximilian Klein
and Sarah Grabert*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Case No. 3:20-cv-08570-JD |
| Plaintiffs, | Hon. James Donato |
| vs. | **APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS INTERIM LEAD COUNSEL FOR THE CONSUMER CLASS** |
| META PLATFORMS, INC., | |
| Defendant. | |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................2

I.    EACH RULE 23(G) FACTOR STRONGLY SUPPORTS APPOINTING MR. TERUYA TO LEAD LITIGATION ON THE CLAIMS HE DEVELOPED FOR THE CONSUMER CLASS .............................................................................................2

    A.    Mr. Teruya and QE Developed the Consumer Class's Claims ...................................2

    B.    Mr. Teruya and QE Are and Have Been the Most Proactive Consumer Counsel .....4

    C.    Mr. Teruya and QE Draw on Their Robust Antitrust / Class Action Experience ......5

    D.    A Team Of Hyper-Qualified, Diverse QE Attorneys Supports Mr. Teruya ..............7

    E.    QE Will Continue to Devote Unmatched Resources to the Consumer Class ...........9

II.    APPOINTING MR. TERUYA WILL STRONGLY PROMOTE DIVERSITY .................10

    A.    Mr. Teruya Is a Diverse and Highly Qualified Attorney, Whose Appointment Would Also Avoid the "Repeat Player" Problem ....................................................10

    B.    Mr. Teruya and QE Are Committed to Diversity and Mentorship .........................11

    C.    Mr. Teruya and the QE Team Will Continue to Work Respectfully, Cooperatively, and Professionally With Counsel of All Backgrounds ...................12

III.    QE WILL MAXIMIZE EFFICIENCIES AND IMPLEMENT PROPER CONTROLS.....14

CONCLUSION .........................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................................ 3

*Chacanaca v. Quaker Oats Co.*,
2011 WL 13141425 (N.D. Cal. June 14, 2011) ........................................... 4

*In re Credit Default Swaps Antitrust Litig.*,
Case No. 13-md-02476 (S.D.N.Y. Dec. 5, 2013) ................................. 6, 10

*In re GSE Bonds Antitrust Litig.*,
377 F. Supp. 3d 437 (S.D.N.Y. 2019) ............................................................ 3

*In re Robinhood Outage Litigation*,
Case No. 3:20-cv-01626-JD (N.D. Cal.) ................................. 10, 11, 14, 15

## Rules and Regulations

Fed. R. Civ. P. 23(g)(1)(A)(i) ................................................................................ 3

Fed. R. Civ. P. 23(g)(1)(A)(ii) .............................................................................. 7

Fed. R. Civ. P. 23(g)(1)(A)(iii) ............................................................................. 7

Fed. R. Civ. P. 23(g)(1)(A)(iv) ............................................................................. 9

**PRELIMINARY STATEMENT**

Following the recent status conference, Kevin Teruya and the Quinn Emanuel Urquhart & Sullivan, LLP ("QE") team once again proposed to Hagens Berman Sobol Shapiro LLP ("HB"), and Lockridge Grindal Nauen P.L.L.P. ("LGN"), that the firms work cooperatively together under the co-leadership of Mr. Teruya and Ms. Scarlett. They refused, insisting that Ms. Scarlett be appointed sole lead of this class action, regardless of whether that was in the Consumer Class's best interests. It is for that reason that Mr. Teruya applies for sole (rather than co-) leadership here, even though his and QE's preference has always been to simply continue leading the case with their appointed-co-counsel.

Mr. Teruya is the architect of the Consumer Class's case. He identified the core damages and liabilities theories; he developed and led drafting of the first-filed complaint, which HB and LGN copied almost wholesale; he led drafting on the Class's briefs in opposition to Facebook's motion to dismiss and helped craft the successful oral argument on the same; he has personally pushed discovery forward at every step and led discussions with Advertiser and Facebook counsel. There is no other attorney more knowledgeable about the Class's claims, nor as dedicated to vindicating their rights.

The objective facts back this up. Through December 2022, Mr. Teruya alone had worked nearly 2,650 hours on this case, more than 3.25 times the amount of hours Ms. Scarlett and Mr. Clark have billed, combined. The QE team, which (including Mr. Teruya) has collectively obtained over *$30 billion* for plaintiffs, also accounts for nearly half of all hours worked by QE, HB, and LGN. QE cares deeply about the Class and this case, and has demonstrated that care by action. By appointing Mr. Teruya as Interim Lead Consumer Class Counsel, supported by the QE team discussed below, this Court will ensure the Class continues to receive the very best representation available.

Mr. Teruya's appointment will also strongly promote diversity by addressing the problems of "repeat players" and dramatic underrepresentation of Asian Americans in class leadership. Despite 25 years of practice in high stakes antitrust and unfair competition litigation where he had played lead roles, this would be Mr. Teruya's first individual court appointment as lead class counsel. As lead counsel, Mr. Teruya and the QE team—which is a mix of male and females attorneys, and attorneys with diverse backgrounds—will continue to work respectfully and cooperatively with counsel of all backgrounds to efficiently and successfully resolve this litigation, as they have done to date.

1   Finally, Mr. Teruya is committed to maximizing efficiencies and implementing fee, time, and

2   cost controls so the Court will have clear and definitive records at the end of this case. Moreover, QE

3   has uniquely deep financial and attorney resources to take this case through trial or appeal—resources

4   it has been more than willing to devote to this case.

5   For these reasons, the Court should appoint Mr. Teruya as Interim Lead Consumer Class

6   Counsel, so he and the QE team can continue to build upon the case he originated and their more than

7   two years of successful work for the Consumer Class.

8   ## ARGUMENT

9   **I.    EACH RULE 23(G) FACTOR STRONGLY SUPPORTS APPOINTING MR. TERUYA
        TO LEAD LITIGATION ON THE CLAIMS HE DEVELOPED FOR THE
10       CONSUMER CLASS**

11   ### A.    Mr. Teruya and QE Developed the Consumer Class's Claims

12   On December 3, 2020, QE and Keller Postman (then known as Keller Lenkner) filed the very

13   first of these now-consolidated cases. Mr. Teruya was one of the attorneys who signed on to that

14   complaint, but the reality is he began working on the claims in early 2019, when he personally met

15   with industry expert Dina Srinivasan. *See* Declaration of Kevin Y. Teruya ("Teruya Decl.") ¶ 5. This

16   makes Mr. Teruya the first attorney to work on this case, which he did more than a year before anyone

17   else. *Id.* ¶ 4. The difficulty, however, laid in how exactly to articulate the Consumers' liability and

18   damages theories—many had discussed the issue, but none figured out how to plausibly explain the

19   issues. It was this problem that Mr. Teruya set himself to solve, which he finally did in late 2020.

20   The resulting complaint incorporated Mr. Teruya's core theories. It explained clearly, for the

21   first time, why *consumers* had cognizable antitrust claims to seek redress from Facebook. As to

22   anticompetitive conduct, the complaint explained that Facebook has been able to obtain and maintain

23   monopoly power by deceiving the market as to its data collection and use practices. As to damages,

24   the complaint explained that Facebook's ill-gotten monopoly power has allowed it to provide

25   inadequate compensation—including monetary compensation—to consumers in return for their data.

26   Importantly, the complaint also describes why these issues—including the anticompetitive conduct,

27   the impact of that conduct on the Consumer Class, and the resulting damages—are all common ones

28   affecting consumers across the country. These core theories that Mr. Teruya developed form the heart

of the Consolidated Consumer Complaint. They are also the theories that remain after Judge Koh largely denied Facebook's motion to dismiss, and which the Class is pursuing today.

Notably, the Federal Trade Commission and a coalition of State Attorneys General did not file their own respective antitrust lawsuits against Facebook until December 9, 2020, *after* Mr. Teruya and QE filed theirs on December 3, 2020. The public enforcement actions and the House Antitrust Subcommittee's October 2020 "Investigation of Competition in Digital Markets" report have focused on Facebook's anticompetitive acquisitions and "Platform" API policies, whereas Mr. Teruya's and QE's original *Klein* complaint focused on Facebook's anticompetitive deception as to Facebook's data practices. Moreover, as public enforcers, the FTC and State Attorneys General do not seek damages. Consequently, their complaints do not feature the damages theory based on compensation for data Mr. Teruya developed and which is present in his and QE's original complaint. Put simply, the case Mr. Teruya developed was no copycat action; it was the result of his dedication to articulating why and how Facebook harmed hundreds of millions of consumers over several years. Teruya Decl. ¶¶ 3–12.

If imitation is the sincerest form of flattery, then HB and LGN's original joint complaint is a resounding endorsement of Mr. Teruya's ability to serve as Interim Lead Consumer Class Counsel. Those two firms filed a follow-on complaint that verbatim copied and pasted more than 60 pages of QE's complaint, including the core liability and damages theories Mr. Teruya articulated. Teruya Decl. ¶ 14. This is immediately obvious because their complaint contains near-identical headings, footnotes, and custom hyperlinks lifted from Mr. Teruya's and QE's original complaint. *See Id.* ¶¶ 14–19; *cf. In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) ("[C]opycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status."). Looking at this record, Judge Koh stated at the prior leadership hearing: "I do have the impression that Quinn Emanuel and Keller Lenkner did the legwork, and I hear you about the Me, Too, Complaint." March 3, 2021 Hrg. Tr. at 54:5–7.

That Mr. Teruya is the single individual who has most advanced the class's interests by identifying the core theories and making them a reality is an extraordinarily compelling reason to appoint him lead counsel under Rule 23(g)(1)(A)(i). *See*, *e.g.*, *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (appointing first-to-file counsel that developed claims and whose

1    complaint was template for later firms); *Chacanaca v. Quaker Oats Co*., 2011 WL 13141425, at *3

2    (N.D. Cal. June 14, 2011) (appointing interim counsel because "makes sense" for them "to continue as

3    counsel in a case that appears to be essentially the product of their work and design").

4         **B.**     **Mr. Teruya and QE Are and Have Been the Most Proactive Consumer Counsel**

5         Beyond originating Consumers' claims, Mr. Teruya and QE have continued to put in an

6    extraordinary amount of effort to push this case forward. This is clear from the substantive tasks they

7    have undertaken since the Court's appointment order, which include drafting the Consolidated

8    Consumer Complaint; briefing, arguing, and largely defeating Facebook's motion to dismiss; arguing

9    every issue at every hearing in the case until the recent status conference, when HB and LGN

10   contested Mr. Teruya's substitution as co-lead counsel, where he split argument; continuing to

11   develop the case, including drafting discovery requests and responses, identifying deponents, taking

12   Consumers' first deposition in the case yesterday and the second next Tuesday (which Mr. Teruya will

13   take), working with multiple experts, and co-managing the document review process; leading

14   discussions with Advertiser and Facebook counsel; and pushing fact and expert discovery forward.

15   The docket also objectively confirms QE has filed the vast majority of Consumers' submissions.

16        Mr. Teruya's and QE's substantive efforts are also clear from the numbers. Through December

17   2022, Mr. Teruya worked over 2,650 hours on this case. That is more than 3.25 times the hours Ms.

18   Scarlett and Mr. Clark worked through December 2022, *combined*. As a firm, QE has accounted for

19   nearly *half* of all hours leadership put into the case through December 2022. The difference becomes

20   even more stark when one filters out hours devoted to document review. Excluding document review

21   hours (which, while important, are separate from the day-to-day tasks that push forward and develop

22   Consumers' claims), QE worked nearly 9,160 hours through December 2022; double the amount HB

23   and LGN billed, combined. Thus, looking at hours worked on substantive tasks, Mr. Teruya

24   individually has worked more hours than either HB *or* LGN, and the QE team has double their hours.

25        None of this is meant to minimize the work HB or LGN have put in to date. As Mr. Teruya

26   stated in his motion to substitute and reiterated both at and after the recent status conference, he and

27   QE were happy to work in essentially the same leadership structure as before. What these metrics help

28   explain is who is actually *leading* the case and why appointing Mr. Teruya and the QE team behind

1    him to continue that leadership will best benefit and protect the Consumer Class moving forward.

2          **C.**      **Mr. Teruya and QE Draw on Their Robust Antitrust / Class Action Experience**

3          Mr. Teruya has the significant background in antitrust and class action litigation necessary to

4    successfully to continue leading the Consumer Class's case. He is a Japanese-American partner in

5    QE's Los Angeles office, and a 1998 graduate of Harvard Law School. His practice focuses primarily

6    on antitrust and unfair competition litigation. Mr. Teruya's successful representation of both antitrust

7    plaintiffs and defendants is well-recognized: he was named a "Top Antitrust Lawyer" in California by

8    the Daily Journal in 2022, a "Super Lawyer" in antitrust by *Southern California Super Lawyer* for

9    years, and one of the 500 leading plaintiff financial lawyers by *Lawdragon*. Teruya Decl. ¶ 27. Mr.

10   Teruya has also served as an officer of the Executive Committee of the Antitrust & Unfair

11   Competition Law Section of the State Bar of California, an officer of the Executive Committee of the

12   Antitrust Section of the Los Angeles County Bar Association, and as a member of the editorial board

13   for the "California Antitrust and Unfair Competition Law" treatise. *Id.* Originally from Hawaii, Mr.

14   Teruya also previously served as a law clerk to the Honorable Herbert Y.C. Choy of the United States

15   Court of Appeals for the Ninth Circuit (the first Asian American to serve as a federal judge). *Id.*

16         Mr. Teruya has extensive and impressive experience litigating high stakes antitrust cases, and

17   he has been instrumental in obtaining eight- and nine-figure recoveries for plaintiffs. *See* Teruya Decl.

18   ¶ 28. This includes substantial experience litigating antitrust claims against Facebook, including work

19   on this case, but also the earlier *Social Ranger* antitrust case against Facebook (which resolved shortly

20   before trial, after Mr. Teruya and QE successfully compelled the deposition of Mark Zuckerberg). In

21   the *Polyurethane Foam Antitrust Litig.*, Mr. Teruya was a lead member of the team that represented a

22   direct purchaser class pursuing price-fixing claims, obtained class certification, withstood multiple

23   defense summary judgment motions, and obtained more than $430 million in settlements. He also

24   represented plaintiff Songkick in an antitrust action against Live Nation and Ticketmaster, obtaining

25   $110 million in public settlement payments shortly before trial, plus the confidential acquisition of its

26   assets. Mr. Teruya has also represented antitrust opt-out plaintiffs, such as Fiat Chrysler in a billion-

27   dollar antitrust action as part of the *In re Automotive Parts Antitrust* multidistrict litigation, which he

28   litigated through discovery and resolved shortly before trial. Similarly, he represented homebuilders

1    seeking $200 million (pre-trebling) in the *In re Domestic Drywall Antitrust* multidistrict litigation,

2    which also resolved confidentially shortly before trial. On the defense side, Mr. Teruya was a lead

3    member of the team that obtained a complete defense verdict for Micron Technology in an antitrust

4    case where Rambus sought $4 billion (pre-trebling) from Micron. Additional detail regarding Mr.

5    Teruya's experiences in these and other matters is included in his declaration. *See* Teruya Decl. ¶ 28.

6         Mr. Teruya is supported by other QE attorneys who also have significant experience litigating

7    complex, landmark antitrust and class action cases. QE, the world's largest law firm devoted solely to

8    business litigation, has built its reputation on effectively litigating high-stakes cases against the most

9    formidable adversaries, including Facebook. Teruya Decl. ¶ 35. Among other accolades, the firm has

10   been named a "litigation powerhouse" by *The American Lawyer*, a "global force in litigation" by *The*

11   *Wall Street Journal*, one of "The Four Firms that GCs Fear The Most" by BTI Consulting Group (for

12   ten years running), a "Tier One" antitrust practice by *Benchmark Litigation*, "Antitrust Litigation

13   Department of the Year" by *The Recorder*, and "Class Action Group of the Year" by *Law360*. *Id.*

14        These recognitions come with good reason—QE has a long string of victories on behalf of

15   antitrust and class plaintiffs. These include, for example, recoveries of: $3.7 billion for a certified class

16   of health insurers in *Health Republic Ins. Co. v. United States*, Case No. 1:16-cv-00259 (Fed. Cl.);

17   $1.87 billion in *In re Credit Default Swaps Antitrust Litig.*, Case No. 13-md-02476 (S.D.N.Y.)

18   ("*CDS*"); $500 million in *ISDAfix Antitrust Litig.*, Case No. 14-cv-7126 (S.D.N.Y.); and $430 million

19   in *Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio). These and others of QE's

20   substantial victories for antitrust and class plaintiffs are described in greater detail in Mr. Teruya's

21   declaration accompanying this application. *See* Teruya Decl. ¶¶ 36, 38–39.

22        QE's success in antitrust cases is not limited to just the plaintiff side of the "v." QE has also

23   achieved monumental successes on behalf of antitrust defendants. For example, QE (including Mr.

24   Teruya, as a key team member) obtained a complete defense verdict for Micron Technology in an

25   antitrust case where Rambus Inc. sought $4 billion—trebled to $12 billion—at trial. Teruya Decl. ¶

26   41. Others of QE's substantial victories for antitrust defendants are described in greater detail in Mr.

27   Teruya's declaration. *See Id.* ¶¶ 40–43. This "both sides of the v." practice provides QE with unique

28   insights, particularly in antitrust cases, and allows Mr. Teruya and his colleagues to maximize the

Consumers' chances and settlement opportunities in this case. Teruya Decl. ¶ 43.

For all these reasons, Mr. Teruya is positioned to draw on his and QE's unparalleled antitrust and class action litigation practices to expeditiously and efficiently pursue claims on behalf of the Consumer Class. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii); Fed. R. Civ. P. 23(g)(1)(A)(iii).

### D.   A Team Of Hyper-Qualified, Diverse QE Attorneys Supports Mr. Teruya

For this case, Mr. Teruya has been and will be assisted by a strong, diverse team, including:

**Manisha M. Sheth**—Ms. Sheth is a partner in QE's New York office and also serves as co-chair of the firm's Government and Regulatory Litigation and Sexual Harassment and Employment Discrimination practices. She is a seasoned trial lawyer with over 20 years of experience in both private practice and as a former federal and state prosecutor. Teruya Decl. ¶ 29. Ms. Sheth and the firm were recently appointed co-lead counsel in the aerospace no-poach litigation pending in the District of Connecticut. Ms. Sheth served as the Executive Deputy Attorney General for the Economic Justice Division at the Office of the New York Attorney General, where she supervised all complex commercial investigations and civil enforcement actions involving antitrust, data security and privacy, consumer frauds, securities, government fraud, and real estate finance. *Id*. In that role, she supervised the Office of the New York Attorney General's Antitrust Bureau. *Id.*

Ms. Sheth has extensive experience representing plaintiffs, defendants, and public entities in a wide range of complex commercial disputes and government investigations involving antitrust, securities fraud, and other business frauds and torts. Teruya Decl. ¶ 29. Ms. Sheth has also represented the Federal Housing Finance Agency in landmark litigation resulting in approximately $23 billion in recoveries, and recently obtained a $1.84 billion settlement for Ambac Financial Group. *Id.* Ms. Sheth also represented the State of New York in a number of antitrust settlements arising out of multiple financial institutions' collusive setting of the London Interbank Offered Rate. *Id.* Among other accolades, Ms. Sheth was named in *Crain's New York Business* "Notable Women in Law" list (2021); Lawdragon's 500 Leading Plaintiff Financial Lawyers Guide in business litigation (2019–2020); *Crain's New York Business* "40 under 40" list (2013); and The National Law Journal's "Minority 40 under 40" list (2011). *Id.* Ms. Sheth served as a law clerk to the Honorable William H. Pauley III of the United States District Court for the Southern District of New York. *Id.*

1    ***Adam B. Wolfson***—Mr. Wolfson is a partner in QE's San Francisco and Los Angeles offices

2    who represents both plaintiffs and defendants in antitrust, class action, and other litigation, and has

3    obtained over $8 billion in recoveries to date. Teruya Decl. ¶ 30. Mr. Wolfson was named an "MVP"

4    in Class Actions by *Law360* in 2022 and a "Rising Star" in the same category in 2019. *Benchmark*

5    *Litigation* recognized him as a 2023 Future Star, and he has been listed among the top 500 plaintiffs'

6    financial lawyers in the nation by *Lawdragon* every year since 2019, as well as a Recommended

7    Lawyer in Antitrust repeatedly by *Legal 500 USA. Id.* Mr. Wolfson currently serves on the Executive

8    Committee in *In re 3M Combat Arms Earplug Products Liability Litig.*, Case No. 3:19-md-2885 (N.D.

9    Fla.), a mass tort seeking compensation for over 250,000 former service members injured by defective

10   earplugs 3M sold to the military. *Id.* ¶ 30. He recently tried three jury trials and one bench trial in 14

11   months, winning each of his jury trials (and is currently in post-hearing briefing in his bench trial).

12   Mr. Wolfson has participated (and is participating) in lead roles in a number of other antitrust

13   and competitor cases and class actions. *See* Teruya Decl. ¶ 30 (describing representative cases). As

14   particularly relevant to Facebook, Mr. Wolfson was also the core associate in the Winklevoss twins'

15   case against Facebook and Mark Zuckerberg, a dispute that settled confidentially and was later

16   dramatized in the movie, *The Social Network*.

17   ***Michelle Schmit***—Ms. Schmit is a partner in QE's Chicago office. She regularly represents

18   litigants in antitrust, class-action, and data privacy litigation. *See* Teruya Decl. ¶ 31. For example, she

19   represented Qualcomm in multi-billion dollar antitrust litigation adverse to Apple. *Id.* Ms. Schmit also

20   represented comScore in a data privacy class action lawsuit, in what was, at the time, reported to be

21   the largest class ever certified under federal electronic privacy laws. *Id.* Ms. Schmit currently

22   represents IQVIA, a pharmaceutical data company, in antitrust litigation in federal court. *Id.* Ms.

23   Schmit has been ranked by *Best Lawyers in America* for Commercial Litigation for each of the past

24   three years, and recognized by *Best Lawyers in America* as one to watch, "Women in the Law," in

25   2022. *Id.* She also argued many of the core early motions in this case. *Id.* ¶ 47.

26   ***Claire D. Hausman***—Ms. Hausman, an of counsel in QE's Los Angeles office, has

27   represented multiple plaintiffs in complex antitrust litigations, including two MDLs. *See* Teruya Decl.

28   ¶ 32. Ms. Hausman has litigated in MDLs and large consolidated state and federal actions throughout

1   her career, including in antitrust, structured finance, and products liability cases. Teruya Decl. ¶ 32.

2   These representations include plaintiff ResCap Liquidating Trust in more than 50 lawsuits seeking to

3   recovery indemnity and damages arising from lenders' sale of defective mortgage loans which

4   resulted in recoveries of more than $1.3 billion. *Id.* They also include a defendant pharmaceutical

5   manufacturer in an MDL involving allegedly contaminated products in which summary judgment

6   motions resulted in dismissal or favorable settlement of hundreds of claims. *Id.*

7       ***Brantley I. Pepperman***—Mr. Pepperman is a fifth-year associate specializing in antitrust and

8   unfair competition matters. He has litigated a number of other antitrust matters for both plaintiffs and

9   defendants. *See* Teruya Decl. ¶ 33. Mr. Pepperman also has deep knowledge of the factual and legal

10  issues in this case, having worked primarily on this litigation for more than two years, including prior

11  to its filing. *Id.* Mr. Pepperman also previously served as a law clerk to the Honorable Christina A.

12  Snyder of the United States District Court for the Central District of California. *Id.*

13      The team also includes associates: ***Richard Jagdishwar Millett***, who clerked for this Court and

14  the Honorable Milan D. Smith, Jr., of the United States Court of Appeals for the Ninth Circuit;

15  ***Andrew Mather***, who previously served as a software architect and data privacy analyst on

16  transformative big data projects for a major Fortune 500 company; and ***Krishna Shah***, who is

17  currently pursuing Big Tech-related antitrust claims in this District. *See* Teruya Decl. ¶ 34. Additional

18  QE attorneys standby ready, willing, and able to join the QE team in service to the Consumer Class.

19      **E.      QE Will Continue to Devote Unmatched Resources to the Consumer Class**

20      QE has already committed substantial resources to this case. It will continue to bring them

21  fully to bear on behalf of the Consumer Class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).

22      ***Financial and attorney resources***. As a full-service law firm, QE is well-capitalized and not

23  beholden to contingent income. Over the last two years, the firm has already made significant

24  financial contributions on the Consumer Class's behalf. QE has paid, and committed to pay, more than

25  either HB or LGN towards expenses. QE will continue to deploy its unmatched financial resources

26  should the Court appoint Mr. Teruya. And, as the world's largest law firm devoted solely to business

27  litigation, QE has a deep bench to assist Mr. Teruya and the team in this case, should the need arise.

28      ***Litigation support services***. QE can offer the Consumer Class unrivaled in-house litigation

services, direct attention, and battle-tested analytical tools. Such analytical tools have already allowed QE to effectively and efficiently cut through the massive volumes of documents produced in this case, saving the Class attorney time and money. Indeed, courts have appointed QE as interim co-lead class counsel in complex antitrust class actions (like this one) precisely because QE has the resources to "run massive discovery cases[.]" *In re CDS*, Case No. 13-md-2476 (S.D.N.Y.), Dkt. 244 at 37–38.

*Trial resources*. QE offers the Consumer Class a head start should this case go to trial. As another court noted when appointing QE as co-lead class counsel in a different case, QE boasts attorneys who are not just litigators but "trial lawyers who can actually go into court and try a case." *CDS*, Dkt. 244 at 37–38. The partners *on this case* have successfully tried multiple antitrust cases to juries and judges, and they are versed on the issues *in this case* given QE's substantial work to date. QE is stocked with additional, seasoned trial lawyers who are available to join the team, if needed. These capabilities will ensure that every decision as to what to do—and not do—is appropriately tailored to the specific question of how to get this case ready for trial without unnecessary delay, and will also encourage potentially quicker and greater settlement.

*Appellate resources*. Winning this case may require winning appeals. QE is home to one of the nation's leading Ninth Circuit appellate practices, headed by name partner Kathleen Sullivan, one of the nation's preeminent appellate advocates and Stanford Law School's former Dean. QE's appellate practice is also experienced in antitrust matters, and it has always worked hand-in glove with QE's litigators to ensure that our theories are well-grounded in law and will withstand appellate scrutiny.

## II.   APPOINTING MR. TERUYA WILL STRONGLY PROMOTE DIVERSITY

As this Court has explained, promoting diversity in class leadership is important. *In re Robinhood Outage Litig.*, Case No. 3:20-cv-01626-JD (N.D. Cal.) (Donato, J.), Dkt. 59, at 3. This includes ensuring leadership "reflect[s] the diversity of the proposed national class" and avoiding the "'repeat player' problem in class counsel appointments that has burdened class action litigation and MDL proceedings." *Id*. Appointing Mr. Teruya will serve both of these goals.

### A.   Mr. Teruya Is a Diverse and Highly Qualified Attorney, Whose Appointment Would Also Avoid the "Repeat Player" Problem

As described *supra* at Section I(C), Mr. Teruya is a well-qualified attorney with 25 years of

successful antitrust experience at the highest levels. And although he has served as lead lawyer in other contexts and played a key role in supporting other court-appointed lead class counsel, this would be Mr. Teruya's first individual court appointment as lead class counsel. Mr. Teruya's appointment would thus address the "repeat player" problem this Court has identified. *Robinhood*, Dkt. 59 at 3. QE fully supports Mr. Teruya. This includes the many QE partners that have served in scores of appointed leadership roles in class actions, such as team members Ms. Sheth and Mr. Wolfson.

Importantly, Mr. Teruya's appointment would also promote the appointment of a dramatically underrepresented ethnic group, Asian Americans, in class leadership positions. An influential 2017 study authored by California Supreme Court Justice Goodwin H. Liu and others, and released by the National Asian Pacific American Bar Association and Yale Law School, found that Asian Americans "are significantly underrepresented in the leadership ranks" in the legal profession. Teruya Decl. ¶ 45; Ex. A. Just last year in 2022, an updated version of the study concluded, "Underrepresentation of Asian Americans in the top ranks of the legal profession persists." Teruya Decl. ¶ 45; Ex. A.

Unfortunately, this underrepresentation also persists in the context of leadership appointments. Despite constituting nearly 16% of the population in California, Asian American representation in class counsel leadership positions is scarce. Teruya Decl. ¶ 45. A 2020 study by Law.com concluded that, between 2016 and 2019, less than 9% (and perhaps even as low as 5%) of appointments in MDLs went to non-White attorneys. *Id.*; *see also* Ex. B. As one of several ethnic groups that make up the non-White population, Asian Americans necessarily reflect a fraction of those already-small number of appointments. Mr. Teruya's appointment would thus serve the Consumer Class not only by providing the Class the architect of their claims as lead counsel, but also by helping address the problem of underrepresentation of Asian Americans in class counsel leadership positions.

**B.   Mr. Teruya and QE Are Committed to Diversity and Mentorship**

Mr. Teruya and QE firmly believe that the best ideas come from teams composed of individuals with different backgrounds who can contribute diverse perspectives. Indeed, the QE team in this case includes members of different genders, ages, racial and ethnic identities, and life experiences whose diversity of experience and perspective will benefit the Consumer Class. QE's commitment to diversity is also well-recognized: *The American Lawyer* has repeatedly named the firm

as one of the "Top Firms for Diversity" and has ranked the firm near the top 10 percent in its annual diversity survey among the AmLaw 200 firms. The Human Rights Campaign Foundation has also awarded the firm a score of 100 percent on its Corporate Equality Index, naming the firm a "Best Place to Work for LGBTQ Equality." QE is also the largest U.S. law firm with a female name partner, and many of its practice groups and its branch offices are headed by women and other diverse attorneys. *See* Declaration of Kathleen M. Sullivan ("Sullivan Decl.") ¶ 4. Many QE female partners have been named to *Law360*'s "Top Female Trial Attorneys," *The Recorder*'s "Women Leaders in Law," *Daily Journal*'s "Top Women Lawyers" and "Top 75 Women Litigators," *Benchmark*'s "Top 250 Women in Litigation," and *The American Lawyer*'s "Top 45 Women Litigators Under 45." *Id.*

Mr. Teruya and QE actively promote diversity, including by staffing attorneys with diverse backgrounds and mentoring younger attorneys. For example, *in this case*, Mr. Teruya and QE asked a female, then-associate at QE, Michelle Schmit, to lead Consumers at the parties' Rule 26(f) conference, negotiate with Facebook counsel a number of key discovery protocols, and lead Consumers' letter briefing on these issues. Teruya Decl. ¶ 47. With Mr. Teruya's and QE's full support, Ms. Schmit then argued these key discovery disputes on Consumers' behalf at May 25, 2021 and August 31, 2021 hearings before Magistrate Judge DeMarchi (when Judge DeMarchi presided over discovery issues in these cases). *Id.* The next year, Ms. Schmit was promoted to partner at QE.

Mr. Teruya and QE have also provided early experience to other associates working on this case. Teruya Decl. ¶ 48. For example, QE associates have played key roles in drafting pleadings and briefs, leading discussions and meet-and-confers with Facebook and other counsel, managing discovery, coordinating with the Consumer Class representatives, working with experts, and other case development efforts. *See* Standing Order for Civil Cases Before Judge Donato, ¶ 13 ("The Court has a strong commitment to supporting the development of our next generation of trial lawyers.").

### C. Mr. Teruya and the QE Team Will Continue to Work Respectfully, Cooperatively, and Professionally With Counsel of All Backgrounds

Mr. Teruya and QE firmly believe in the value of collaboration and seeking to build consensus. Teruya Decl. ¶ 49. That approach is how individuals with different perspectives can share their diverse views. It also results in more informed and balanced decision-making, based on reflection and

consideration of everyone's views, because that is the best way to reach agreement among multiple stakeholders. Mr. Teruya has employed this framework to great success in this case—it is why various counsel have often personally asked Mr. Teruya to lead important discussions with other counsel on case management and discovery issues, including with Facebook's counsel. If appointed, Mr. Teruya and the QE team will continue to employ this collaborative framework and approach.

Any suggestion Mr. Teruya or others on the QE team do not respect the voices of female counsel remains completely untrue. Teruya Decl. ¶50. Although such allegations must be taken seriously so women feel comfortable raising concerns of gender bias and discrimination, the women on QE's team all strongly support Mr. Teruya and are willing to provide the Court with their views on Mr. Teruya's respect, courteousness, and professionalism. Furthermore, recognizing Mr. Teruya's friendly demeanor, collaborative nature, and utmost respect for all counsel, multiple female attorneys—who are completely unconnected to this litigation and do not work at QE, but who have worked with Mr. Teruya on other matters—have submitted declarations on his behalf. *See* Declarations of Cindy Reichline, Melissa B. Willett, Amy T. Brantly. So has Kathleen Sullivan, a QE name partner, who has worked closely with Mr. Teruya over the years. *See* Sullivan Decl.

To be frank, the insinuations in HB's and LGN's prior response to Mr. Teruya's motion for appointment as Co-Lead Counsel remain a mystery to him and QE. Mr. Teruya and the QE team have never discounted Ms. Scarlett's (or any other female attorney's) views on this case. They have also frequently agreed with Ms. Scarlett's decisions, and when they have disagreed, Mr. Teruya and the QE team have attempted to do so respectfully, while providing their thoughts and inviting discussion in order to make the best decision for the Class. Mr. Teruya's or the QE team's providing their views or requesting a discussion has nothing to do with gender; they are meant to ensure case tasks are completed and the firms attempt to reach consensus. Mr. Teruya's advice has been specifically requested, welcomed, and appreciated by multiple HB and LGN attorneys working on this case.

Mr. Teruya and the QE team have done all they can to ensure a functional and professional co-counsel relationship where every team member feels respected, including asking Ms. Scarlett to share the basis for her concerns about any lack of respect toward her. The example she raised centered around an incident that involved two other ***female*** attorneys at QE who Ms. Scarlett felt were not

sufficiently respectful of her because they disagreed with her on a discovery letter brief and attempted to reach consensus by discussing the issue; a request she derided as "really beyond belief" in a Consumer attorney-wide email, even though one of the QE attorneys in question has been practicing for 14 years and is more senior than Mr. Clark. In that and similar instances, Mr. Teruya and QE have declined to respond in kind, choosing to try to move forward productively (including through today). To the extent the Court finds it helpful, Mr. Teruya and QE can provide the Court with additional details and evidence regarding these issues *in camera*, but they believe this application stands on its own for why Mr. Teruya should be appointed Interim Lead Consumer Class Counsel.

The truth is that Mr. Teruya and QE have, at all times, sought to work collaboratively, respectfully, and professionally with all counsel, as is their nature. Teruya Decl. ¶ 51. After a prior contested leadership process, Judge Koh appointed QE and HB as Interim Co-Leads, and Keller Postman and LGN as the two and only members of the Consumer Executive Committee.[1] Mr. Teruya and the QE team thereafter sought to integrate HB and LGN as part of the Consumer team, and have consistently sought their cooperation and input in an effort to reach consensus, including most recently by collaboratively splitting up depositions and other tasks so that each firm can contribute. HB and LGN filed their follow-on complaint together, previously sought leadership positions jointly, give each other their "proxy" without even knowing how the other will "vote," and now seek to deprive Mr. Teruya and QE of any meaningful say in this case. Mr. Teruya and QE respectfully submit that is neither productive, nor beneficial to the Consumer Class.

If appointed, Mr. Teruya unequivocally will continue to work respectfully, cooperatively, and professionally, as he and the QE team have done to date. Teruya Decl. ¶ 49.

## III.    QE WILL MAXIMIZE EFFICIENCIES AND IMPLEMENT PROPER CONTROLS

This Court has explained that important goals in appointing interim class counsel include maximizing efficiencies and ensuring "that any party seeking fees at the end of this litigation will be able to present to the Court clear and definitive records that were prepared as the fees and costs were incurred." *Robinhood*, Dkt. 59 at 4–5. Appointing Mr. Teruya will serve these goals.

---

[1] Keller Postman was subsequently disqualified. Since then, only QE, HB, and LGN have performed work on the Consumer Class's behalf.

1    Litigating cases efficiently is part and parcel to QE's success in complex cases like this one.

2    For example, the Honorable Daniel Weinstein (retired from the San Francisco County Superior Court)

3    explained that in a case he mediated where QE served as co-lead class counsel: "in 30-plus years of

4    mediating high-stakes disputes, this was one of the finest examples of efficient and effective

5    lawyering by plaintiffs' counsel that I have ever witnessed." *See* Teruya Decl. ¶ 53. This case is no

6    different—QE has litigated and will continue to litigate the Consumer Class's claims as efficiently as

7    possible. QE also regularly employs other case management strategies to streamline complex cases,

8    including staffing the case leanly, eliminating redundancies by assigning discrete tasks to specific

9    team members, and altering, reducing, and ramping up staffing on cases as appropriate.

10    Mr. Teruya and the QE team are mindful of the Court's views as to committees. *Robinhood*,

11    Dkt. 65, at 2. Indeed, QE previously maintained in its prior leadership application that no formal

12    "committee" structure was necessary for the Consumer Class. *See* Dkt. 55 at 22:24–26. Mr. Teruya

13    and QE maintain that position now. Consistent with the Court's guidance in *Robinhood*, Mr. Teruya

14    and QE would delegate specific tasks to other firms, if and as needed.

15    Mr. Teruya and the QE team are also familiar with this Court's requirements regarding fees,

16    costs, expenses, and records as to the same. *See*, *e.g.*, *Robinhood*, Dkt. No. 59 at 4–5. The Court's

17    requirements are consistent with QE's already-existing practices, and Mr. Teruya and the QE team

18    commit to following the Court's requirements in this regard and ensuring proper controls are in place.

19    <u>**CONCLUSION**</u>

20    Mr. Teruya and QE have repeatedly demonstrated their tremendous personal and professional

21    commitments to the Consumer Class, including developing the claims at issue and pushing them

22    forward at all stages. In recognition of Mr. Teruya's and QE's dedication to the Class, two of the

23    Consumer Class representatives have submitted declarations in support of Mr. Teruya's application.

24    *See* Declarations of Maximilian Klein and Sarah Grabert. If appointed, Mr. Teruya and QE will

25    continue to unflinchingly prioritize the Consumer Class's interests. The Court should therefore

26    appoint Kevin Y. Teruya as Interim Lead Consumer Class Counsel, so Mr. Teruya and QE can

27    continue to build upon their years of substantial work in this case in service of the Consumer Class.

28

1   DATED: February 3, 2023              Respectfully submitted,

2

3                                                By: */s/ Kevin Y. Teruya*

                                               QUINN EMANUEL URQUHART & SULLIVAN, LLP

4                                                Kevin Y. Teruya (Bar No. 235916)

                                               kevinteruya@quinnemanuel.com

5                                                Adam B. Wolfson (Bar No. 262125)

                                               adamwolfson@quinnemanuel.com

6                                                Claire D. Hausman (Bar No. 282091)

                                               clairehausman@quinnemanuel.com

7                                                Brantley I. Pepperman (Bar No. 322057)

                                               brantleypepperman@quinnemanuel.com

8                                                865 South Figueroa Street, 10th Floor

                                               Los Angeles, CA 90017-2543

9                                                (213) 443-3000

10                                             Manisha M. Sheth (admitted *pro hac vice*)

                                               manishasheth@quinnemanuel.com

11                                             51 Madison Avenue, 22nd Floor

                                            New York, New York 10010

12                                             (212) 849-7000

13                                             Michelle Schmit (admitted *pro hac vice*)

                                               michelleschmit@quinnemanuel.com

14                                             191 N. Wacker Drive, Suite 2700

                                               Chicago, IL 60606

15                                             Telephone: (312) 705-7400

16                                             *Interim Counsel for the Consumer Class*

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>ATTESTATION OF KEVIN Y. TERUYA</u>

2       This document is being filed through the Electronic Case Filing (ECF) system by attorney

3   Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of

4   this document from each of the attorneys identified on the caption page and in the above signature

5   block.

6

Dated: February 3, 2023              By   */s/ Kevin Y. Teruya*

7                                              Kevin Y. Teruya

8

9

## <u>CERTIFICATE OF SERVICE</u>

10       I hereby certify that on this 3rd day of February 2023, I electronically transmitted the

11   foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically

12   served on all attorneys of record.

13

14                                 By   */s/ Kevin Y. Teruya*

                                             Kevin Y. Teruya

15

16

17

18

19

20

21

22

23

24

25

26

27

28