1  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   Kevin Y. Teruya (Bar No. 235916)
2   kevinteruya@quinnemanuel.com
   Adam B. Wolfson (Bar No. 262125)
3   adamwolfson@quinnemanuel.com
   Claire D. Hausman (Bar No. 282091)
4   clairehausman@quinnemanuel.com
   Brantley I. Pepperman (Bar No. 322057)
5   brantleypepperman@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, CA 90017-2543
   (213) 443-3000
7
   Manisha M. Sheth (admitted *pro hac vice*)
8   manishasheth@quinnemanuel.com
   51 Madison Avenue, 22nd Floor
9  New York, New York 10010
   (212) 849-7000
10
   Michelle Schmit (admitted *pro hac vice*)
11  michelleschmit@quinnemanuel.com
   191 N. Wacker Drive, Suite 2700
12 Chicago, IL 60606
   Telephone: (312) 705-7400
13
   *Attorneys for Plaintiffs Maximilian Klein*
14 *and Sarah Grabert*

15

16
                    **UNITED STATES DISTRICT COURT**
17                **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN FRANCISCO DIVISION**
18

19 MAXIMILIAN KLEIN, et al.,                  | Case No. 3:20-cv-08570-JD

20              Plaintiffs,                    | Hon. James Donato

21        vs.                                 | **DECLARATION OF KEVIN Y. TERUYA
                                              | IN SUPPORT OF APPLICATION TO
22 META PLATFORMS, INC.,                      | APPOINT KEVIN T. TERUYA OF QUINN
                                              | EMANUEL URQUHART & SULLIVAN,
23              Defendant.                     | LLP AS INTERIM LEAD COUNSEL FOR
                                              | THE CONSUMER CLASS**
24 This Document Relates To: All Actions

25

26

27

28

I, Kevin Y. Teruya, declare:

1.      I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I and my firm represent named Plaintiffs Maximilian Klein and Sarah Grabert, who serve as two representatives of the Consumer Class.

2.      I respectfully submit this declaration in support of the application to appoint myself as Interim Lead Consumer Class Counsel. I have been actively involved in this action, am familiar with the proceedings, and have personal knowledge of the matters stated herein.

### MY AND QUINN EMANUEL'S RIGOROUS PRE-FILING INVESTIGATION

3.      I lead Quinn Emanuel's efforts on behalf of the Consumer Class in these consolidated cases. Below, I provide additional detail regarding my and Quinn Emanuel's rigorous original investigation, which culminated in my and Quinn Emanuel's filing the very first of these consolidated cases on December 3, 2020.

4.      I first began investigating possible antitrust claims against Facebook in early 2019. I was therefore the first attorney—and, for more than a year, the only attorney—to work on this case.

5.      As the first step of my investigation, I personally met with and consulted industry expert Dina Srinivasan, an antitrust and data privacy academic, in February 2019. Srinivasan is the author of *The Antitrust Case Against Facebook: A Monopolist's Journey Towards Pervasive Surveillance In Spite of Consumers' Preference for Privacy*, 16:1 Berkeley Bus. L. J. 39 (2019).

6.      In the months that followed, I, and, later, other Quinn Emanuel attorneys continued to investigate Facebook's anticompetitive conduct, carefully reviewing the reports of various governmental tribunals, including:

        a.      *Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations*, prepared by the Antitrust Subcommittee of the United States House of Representatives;

        b.      *Disinformation and 'Fake News': Final Report*, prepared by the Digital, Culture, Media and Sport Committee of the United Kingdom's House of Commons; and

> c.   The German Federal Cartel Office's decision against Facebook: *Administrative Proceedings*, *Bundeskartellamt, B6-22/16.*

7.   My and Quinn Emanuel's investigation included an expansive review of other materials, including news articles, industry reports, academic and economic literature, and documents that Facebook produced in response to governmental inquiries.

8.   I and Quinn Emanuel also undertook an extensive legal analysis of the possible antitrust claims presented by Facebook's misconduct.  These discussions centered on, *inter alia*, defining the relevant markets and refining the theories for how Facebook's data collection and use practices: (a) constituted anticompetitive conduct under the antitrust laws; and (b) harmed consumers.

9.   My and Quinn Emanuel's exhaustive investigation culminated in Quinn Emanuel and another law firm, Keller Lenkner LLC (now Keller Postman LLC), filing the first-of-its-kind antitrust complaint against Facebook on December 3, 2020.  *See Klein et al. v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt 1.

10.   The original *Klein* complaint reflects my substantial, independent research and analysis, including the liability and damages theories that I personally developed.  As to anticompetitive conduct, the complaint explained that Facebook has obtained and maintained monopoly power by deceiving the market as to its data collection and use practices.  As to damages, the complaint explained that as a result of its ill-gotten monopoly power, Facebook has provided its users (*i.e.*, Consumer Class members) inadequate compensation—including monetary compensation—in return for their data.  The complaint also reflects my research and analysis as to why these issues—including the anticompetitive conduct, the impact of that conduct on the Consumer Class, and the resulting damages—are all common ones affecting consumers on a class-wide basis.

11.   The core theories reflected in the original *Klein* complaint are ***not*** lifted from a prior government case or investigation.  It was not until nearly one week later, on December 9, 2020, that a coalition of State Attorneys General and the Federal Trade Commission each filed antitrust lawsuits against Facebook in the United States District Court for the District of Columbia.  *See State of New York et al v. Meta Platforms, Inc.*, Case No. 1:20-cv-03589-JEB (D.D.C.), Dkt. 1; *Federal Trade Commission v. Meta Platforms, Inc.*, Case No. 1:20-cv-03590-JEB (D.D.C.), Dkt. 1.  Therefore, these

cases came nearly one week *after* I and Quinn Emanuel filed the original *Klein* complaint.

12.   Moreover, the FTC and State AG cases have focused on Facebook's anticompetitive acquisitions and "Platform" API policies, whereas my and Quinn Emanuel's original *Klein* complaint focused on Facebook's anticompetitive deception as to Facebook's data practices.   As public enforcers, the FTC and State AGs also do not seek damages.   Their complaints thus do not feature the damages theory based on compensation for data that I developed and which is present in my and Quinn Emanuel's original complaint.

13.   It was not until after I and the Quinn Emanuel team, the FTC, and the State AGs filed their respective cases that other law firms began to file pile-on suits against Facebook.   Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Lockridge Grindal Nauen P.L.L.P. ("Lockridge"), for example, did not file their *Kupcho* lawsuit until December 11, 2020, nearly 8 days *after* Quinn Emanuel and I filed this case.   *See Kupcho* Complaint, Case No. 20-cv-08815 (N.D. Cal.), Dkt. 1.

14.   Many of these complaints—particularly those filed on behalf of classes of Facebook consumers—were substantially similar to the complaint that I and the Quinn Emanuel team prepared and filed in the first *Klein* case.   In fact, some of these later complaints, are ***nearly identical*** to the complaint that I and Quinn Emanuel filed in the *Klein* case.

15.   In particular, the *Kupcho* complaint that Hagens Berman and Lockridge jointly filed appears to have verbatim copied and pasted more than 60 pages of my and Quinn Emanuel's complaint, including the core liability and damages theories I came up with.   *Compare Klein* Complaint, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt 1 *with Kupcho* Complaint, Case No. 20-cv-08815 (N.D. Cal.), Dkt. 1.   This is immediately obvious for several reasons.

16.   First, the Hagens Berman's and Lockridge's later *Kupcho* complaint contains headings that are ***nearly identical*** to those in my and Quinn Emanuel's first-filed *Klein* complaint.   A comparison is reflected below:

| **First-Filed *Klein* Complaint** | **Later-Filed *Banks Kupcho* Complaint** |
|---|---|
| PRELIMINARY STATEMENT.................................................................1 | SUMMARY OF THE ACTION.................................................................1 |
| PARTIES.................................................................................5 | PARTIES.................................................................................6 |
|     Defendant.......................................................................5 |     Plaintiff.......................................................................6 |
|     Plaintiffs......................................................................6 |     Defendant.......................................................................7 |
| JURISDICTION, VENUE, AND CHOICE OF LAW.................................7 | JURISDICTION, VENUE, AND CHOICE OF LAW.................................8 |
| INTRADISTRICT ASSIGNMENT.....................................................8 | INTRADISTRICT ASSIGNMENT.....................................................9 |
| FACTUAL ALLEGATIONS............................................................8 | FACTUAL ALLEGATIONS............................................................10 |
|     General Background on the Social Media Industry.................8 |     General Background on the Social Media Industry.................10 |
|     General Background on Facebook.......................................10 |     General Background on Facebook.......................................12 |
|     Facebook is Dominant in the Social Network and Social Media Relevant Markets.........14 |     Facebook is Dominant in the Social Network and Social Media Relevant Markets.........16 |
|         The Social Network Market..........................................14 |         The Social Network Market..........................................16 |
|         The Social Media Market.............................................20 |         The Social Media Market.............................................23 |
|         Relevant Geographic Market.........................................23 |         Relevant Geographic Market.........................................27 |
|         The Social Network and Social Media Markets Feature High Entry Barriers.........23 |         The Social Network and Social Media Markets Feature High Entry Barriers.........27 |
|     Facebook Has Attempted to Acquire Market Power (and Has Succeeded in Acquiring Market Power) by Deceiving Consumers about Its Privacy Practices.........28 |     Facebook Has Attempted to Acquire Market Power (and Has Succeeded in Acquiring Market Power) by Deceiving Consumers about Its Privacy Practices.........33 |
|     The Cambridge Analytica Scandal Partially Reveals the Extent of Facebook's Deception.........39 |     The Cambridge Analytica Scandal Partially Reveals the Extent of Facebook's Deception.........45 |
|     Facebook is Attempting to Use (and Has Successfully Used) Anticompetitive Acquisitions and Threats to Destroy Competition in the Social Network and Social Media Markets.........43 |     Facebook is Attempting to Use (and Has Successfully Used) Anticompetitive Acquisitions and Threats to Destroy Competition in the Social Network and Social Media Markets.........49 |
|         Facebook's Tracking of Consumers' Personal Data Allowed it to Identify Competitors and then Eliminate Them Through a Strategy of Copy, Acquire, or Kill.........43 |         Facebook's Tracking of Consumers' Personal Data Allowed it to Identify Competitors and then Eliminate Them Through a Strategy of Copy, Acquire, or Kill.........50 |
|         Facebook Threatened Competitors with Discriminatory Practices to Help Drive its Anticompetitive Acquisition Strategy.........46 |         Facebook Threatened Competitors with Discriminatory Practices to Help Drive its Anticompetitive Acquisition Strategy.........53 |

17.     In addition, Hagens Berman's and Lockridge's later-filed *Kupcho* complaint contains footnotes that are ***identical*** to those in my and Quinn Emanuel's first-filed *Klein* complaint. *Compare, e.g.*, *Klein* Complaint, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt. 1, ¶ 47 n. 17 (footnote in *Klein* complaint citing November 19, 2020 letter from Apple), with *Kupcho* Complaint, Case No. 20-cv-08815 (N.D. Cal.), Dkt. 1, ¶ 48 n. 17 (identically-numbered, verbatim footnote in *Kupcho* complaint citing same Apple letter).

18.     Indeed, Hagens Berman's and Lockridge's later-filed *Kupcho* complaint is rife with additional footnotes that appear to be lifted wholesale from my and Quinn Email's first-filed *Klein* complaint. *Compare, e.g.*, *Klein* Complaint, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt. 1, ¶ 56 n. 25 (footnote in *Klein* complaint citing LinkedIn's "The Mindset Divide" presentation), with *Kupcho* Complaint, Case No. 20-cv-08815 (N.D. Cal.), Dkt. 1, ¶ 57 n. 25 (identically-numbered, verbatim footnote in *Kupcho* complaint citing same LinkedIn presentation).

19.     Moreover, Hagens Berman's and Lockridge's *Kupcho* complaint even contains the same custom hyperlinks that Quinn Emanuel and Keller Postman created to host some of the documents that we cited to in the *Klein* complaint.  For example, Quinn Emanuel's *Klein* complaint cites to a number of sources which Quinn Emanuel and Keller Postman made available through hyperlinks hosted at the domain "https://kl.link."  Hagens Berman's and Lockridge's *Kupcho* complaint features these exact same custom hyperlinks.  *Compare, e.g.*, *Klein* Complaint, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt. 1, ¶ 7, n.2 (hyperlink in *Klein* complaint making document available through custom hyperlink hosted at https://kl.link/3jGISfK), *with Kupcho* Complaint, Case No. 20-cv-08815 (N.D. Cal.), Dkt. 1, ¶ 13, n.2 (*Kupcho* complaint citing same document hosted at same hyperlink).  There are many instances of Hagens Berman's and Lockridge's *Kupcho* complaint citing the custom hyperlinks from my and Quinn Emanuel's first-filed complaint; one such instance is provided below for illustrative purposes:

### First-Filed *Klein* Complaint

[2] *See Investigation of Competition in Digital Markets*, Majority Staff Report and Recommendations ("House Report"), Subcommittee on Antitrust, Commercial, and Administrative Law of the Committee on the Judiciary, at 18 (emphasis added), October 6, 2020, available at https://kl.link/3jGISfK.

### Later-Filed *Kupcho* Complaint

[2] *See Investigation of Competition in Digital Markets*, Majority Staff Report and Recommendations ("House Report"), Subcommittee on Antitrust, Commercial, and Administrative Law of the Committee on the Judiciary, at 18 (emphasis added), October 6, 2020, available at https://kl.link/3jGISfK.

### MY AND QUINN EMANUEL'S CONTINUED EFFORTS FOR THE CLASS

20.     On March 18, 2021, Judge Koh appointed Quinn Emanuel and Hagens Berman as Interim Co-Lead Consumer Class Counsel, and Keller Postman and Lockridge as the two and only members of the Consumer Executive Committee.[1]

---

[1] Keller Postman was later disqualified from this case.  Dkts. 123, 127.  Since then, only Quinn Emanuel, Hagens Berman, and Lockridge have performed work on the Consumer Class's behalf.

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

21.     Since the appointment order—and since developing the claims at issue and filing the first complaint—I and the Quinn Emanuel team in this case have continued to build upon our substantial work for the Consumer Class.

22.     For example, I led the drafting of the Consumer Class's briefs in opposition to Facebook's motion to dismiss (Dkts. 109, 116).  I also led the crafting of the successful oral argument in opposition to Facebook's motion, and the Court then largely denied Facebook's motion as to Consumers' claims (Dkt. 214).

23.     Until the Court's recent January 19, 2023 status conference, I or other Quinn Emanuel attorneys also argued every issue for Consumers at every hearing in this case.  These include, for example: (1) the May 25, 2021 discovery hearing before Magistrate Judge DeMarchi, (2) the July 15, 2021 motion to dismiss hearing before Judge Koh; (3) the August 31, 2021 discovery hearing before Magistrate Judge DeMarchi; (4) the February 24, 2022 status conference before Your Honor; (5) the August 11, 2022 status conference before Your Honor; and (6) the October 20, 2022 status conference before Your Honor.

24.     I and the Quinn Emanuel team have also played a key role in continuing to develop this case, including drafting discovery requests and responses, identifying deponents, taking Consumers' first deposition in the case yesterday and the second next Tuesday (which I will take), working with multiple experts, co-managing the document review process, leading discussions with Advertiser and Facebook counsel, and pushing fact and expert discovery forward.

25.     The docket also objectively confirms Quinn Emanuel has filed the vast majority of Consumers' submissions.

### MY AND QUINN EMANUEL'S QUALIFICATIONS AND EXPERIENCE

26.     I lead the Consumer Plaintiffs' case along with my partners at Quinn Emanuel, Manisha Sheth, Adam B. Wolfson, and Michelle Schmit.  Below, I provide biographies summarizing some of our relevant experience.

**The Quinn Emanuel Team in This Case.**

27.     **Kevin Y. Teruya**: I am a partner in Quinn Emanuel's Los Angeles office and a 1998 graduate of Harvard Law School.  My practice focuses primarily on antitrust and unfair competition

litigation.  I was named a "Top Antitrust Lawyer" in California by the *Daily Journal* in 2022, have been recognized as a "Super Lawyer" by *Southern California Super Lawyer* for years, and am one of the 500 leading plaintiff financial lawyers according to *Lawdragon*.  I have served as an officer of the Executive Committee of the Antitrust & Unfair Competition Law Section of the State Bar of California, an officer of the Executive Committee of the Antitrust Section of the Los Angeles County Bar Association, and as a member of the editorial board for the annual "California Antitrust and Unfair Competition Law" treatise.  Originally from Hawaii, I previously served as a law clerk to the Honorable Herbert Y.C. Choy of the United States Court of Appeals for the Ninth Circuit, who was the first Asian American to serve as a federal judge.

28.    Some of my representative experiences include:

a.    ***Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.):**  I served as part of the trial team for defendant Micron Technology, Inc. in an antitrust action involving an alleged conspiracy to boycott certain computer memory chips.  Plaintiff Rambus sought **$4 billion**—**trebled to $12 billion**—from Micron.  After a three month trial, the jury rejected Rambus' claims, **awarding no damages**.

b.    ***Polyurethane Foam Antitrust Litig*., Case No. 10-md-02196 (N.D. Ohio):**  I served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam industry.  In that case, which I helped lead day-to-day, the Court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues.  Through my and my team's efforts, the class obtained more than **$430 million** in settlements.

c.    ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.):**  I was a lead member of the team that represented Songkick, a startup innovator in the live music industry, which

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for artist presale ticketing services. Through my and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

d.   ***Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525-LPS (D. Del.)**: I served as counsel for plaintiff Social Ranger LLC in an antitrust action against Facebook. The plaintiff, a technology company, asserted claims against Facebook for tying and monopolization in the market for virtual currency services on social game networks. The case was resolved shortly before trial in 2017.

e.   ***FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.)**: I served as part of a team that represented Fiat Chrysler Automobiles US LLC in a billion-dollar antitrust action against Yazaki Corporation and Yazaki North America, Inc. This action was part of the multi-district litigation (*In re Automotive Parts Antitrust Litigation*) arising from the largest criminal antitrust investigation in U.S. history. The action arose from a long-running global conspiracy by Yazaki and its co-conspirators to fix prices, rig bids, and allocate customers for wire harnesses sold to original equipment manufacturers for automobiles. The matter was resolved after summary judgment briefing in 2020.

f.   ***Van Iderstine et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888-GW (C.D. Cal.)**: I currently serve as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster. The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing and/or attempting to monopolize the relevant markets for primary and secondary ticketing

services for major concert venues, and by restraining competition in those markets.  The case is currently pending.

g.  ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.):**  I was part of the trial team representing homebuilder plaintiffs against drywall manufacturers.  Plaintiffs alleged that the defendants conspired to fix the prices of drywall in the United States, and sought damages (before trebling) in excess of $200 million.  This action was part of multi-district litigation (*In re: Domestic Drywall Antitrust Litigation*) then-pending in the United States District Court for the Eastern District of Pennsylvania that was remanded back to the Northern District of California for trial.  The case resolved confidentially shortly before trial.

h.  ***Jones et al v. PGA Tour, Inc.,* Case No. 5:22-cv-04486-BLF (N.D. Cal.):**  I am a member of the team pursuing antitrust claims against the PGA Tour on behalf of LIV Golf, Inc. and certain professional golfers regarding the PGA Tour's monopsonization of the market for the services of professional golfers for elite events and its monopolization of the market of the promotion of elite professional golf events.  The case is currently pending.

i.  ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 1:21-cv-01175-MKB (E.D.N.Y.):**  I serve as part of the team pursuing treble damages antitrust claims against Visa and MasterCard based on their use of anti-competitive agreements which limit competition and fix the interchange fees paid by merchants and payment processors.  The case is currently pending.

j.  ***In re: German Automotive Manufacturers Antitrust Litig.,* Case No. 3:17-md-02796-CRB (N.D. Cal.):**  I served as defense counsel for Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-action litigation involving claims that major German auto manufacturers conspired to reduce innovation in their passenger vehicles throughout the world.  The Court

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

recently **dismissed**—**with prejudice**—the putative consumer and auto dealers classes' claims.

k.  ***In re Cathode Ray Tube Antitrust Litig.*, Case No. 07-cv-05944-JST (N.D. Cal.):**  I served as part of the team that defended Mitsubishi Electric Corporation and two of its U.S. subsidiaries in multiple antitrust class and individual actions involving allegations of an international price-fixing conspiracy spanning more than a decade in the multi-billion dollar market for cathode ray tubes.

l.  ***Clemmy's LLC v. Nestlé USA, Inc. and Nestlé Dreyer's Ice Cream Company, Inc.*, Case No. BC500811 (Los Angeles Super. Ct.):**  I co-led the defense of Nestlé USA, Inc. and Nestlé Dreyer's Ice Cream Company in an antitrust action under the California Cartwright Act involving an alleged conspiracy to exclude competition in a claimed market for "better for you" ice cream.  The Court granted Nestlé's motion for summary judgment, dismissing the plaintiff's antitrust claim.

m.  ***Calabasas Luxury Motorcars, Inc. v. General Motors LLC et al*, Case No. 2:21-cv-09566-TJH (C.D. Cal.):**  I co-lead the team defending General Motors LLC in a putative class action asserting antitrust and unfair competition claims arising out of a supposed conspiracy between GM LLC and General Motors Financial (General Motors' leasing subsidiary) regarding the automobile lease pay-off process.  The Court granted GM LLC's motion to dismiss and dismissed plaintiff's claims without prejudice.

29.  **Manisha M. Sheth**:  Ms. Sheth is a partner in Quinn Emanuel's New York office and also serves as co-chair of the firm's Government and Regulatory Litigation and Sexual Harassment and Employment Discrimination practices.  She is a seasoned trial lawyer with over 20 years of experience in both private practice and as a former federal and state prosecutor.  Ms. Sheth and the firm were recently appointed co-lead counsel in the aerospace no-poach litigation pending in the District of Connecticut.  Ms. Sheth served as the Executive Deputy Attorney General for the

1  Economic Justice Division at the Office of the New York Attorney General, where she supervised all
2  complex commercial investigations and civil enforcement actions in the areas of antitrust, data
3  security and privacy, consumer frauds, securities, government fraud, and real estate finance.  In that
4  role, Ms. Sheth was responsible for the decision to open an investigation, file an enforcement action,
5  case development and strategy, and matter resolution, whether by trial or settlement.  Ms. Sheth was
6  responsible for all civil and criminal antitrust matters in the State of New York, including supervising
7  the Office of the New York Attorney General's Antitrust Bureau.  Among other accolades, Ms. Sheth
8  was named in *Crain's New York Business* "Notable Women in Law" list (2021); *Lawdragon*'s 500
9  Leading Plaintiff Financial Lawyers Guide in business litigation (2019–2022); *Crain's New York*
10 *Business* "Notable Women in Law" list (2021) and "40 under 40" list (2013); and *The National Law*
11 *Journal*'s "Minority 40 under 40" list (2011).  Ms. Sheth previously served as a federal prosecutor for
12 five years, during which time she indicted over thirty-five cases, conducted numerous trials, and
13 argued several appeals before the United States Court of Appeals for the Third Circuit.  Ms. Sheth
14 previously served as a law clerk to the Honorable William H. Pauley III of the United States District
15 Court for the Southern District of New York.  Some of Ms. Sheth's representative experiences
16 include:

   a.  ***Borozny et al. v. Raytheon Tech. Corp., Pratt & Whitney Div. et al.*, Case No.
17     **3:21-cv-01657 (D. Conn.)**:  Ms. Sheth and Quinn Emanuel are co-lead interim
18     class counsel on behalf of a class of engineers and other skilled workers in a
19     class action alleging a "no poach" conspiracy among several aerospace firms
20     designed to depress the wages of their workers.  In January 2023, the district
21     court denied the defendants' motion to dismiss in its entirety.

   b.  ***Ambac Assurance Corp., et al. v. Countrywide Home Loans, Inc. et al.*, Case
23     No. 653979/2014 (Sup. Ct. N.Y.):** Ms. Sheth was co-lead trial lawyer on
24     behalf of Ambac Financial Group in a 5-week trial against Countrywide, for
25     alleged breaches of contract.  She was named "Litigator of the Week" by the
26     American Lawyer after obtaining a **$1.84 billion** settlement for Ambac
27     Financial Group.

c.  ***Federal Housing Finance Agency v. Nomura Holding America*, Inc. *et al*,** **Case No. 1:11-cv-06201-DLC (S.D.N.Y.):**  Ms. Sheth was part of the team that represented the Federal Housing Finance Agency ("FHFA") in its landmark Residential Mortgage-Backed Security ("RMBS") litigation against numerous financial institutions arising from its Conservatorship for Fannie Mae and Freddie Mac, resulting in a total recovery of approximately **$23 billion**.  Ms. Sheth served as trial counsel in the case against Nomura Holdings Inc. and RBS Securities, Inc., and she and the trial team obtained an **$806 million** judgment on behalf of the FHFA, which the United States Court of Appeals for the Second Circuit subsequently affirmed on appeal.

d.  ***In the Matter of Royal Bank of Scotland*, (N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$500 million** settlement against the Royal Bank of Scotland regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

e.  ***The People of the State of New York v. Sprint Communications*, Inc. *et al*,** **Case No. 103917/2011 (Sup. Ct. N.Y.):**  Ms. Sheth represented the State of New York in obtaining a record **$330 million** settlement against Sprint Communications, Inc. in groundbreaking False Claims Act litigation regarding Sprint's failure to collect and remit state and local sales taxes.

f.  ***In the Matter of UBS Securities LLC et al*, (N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$230 million** settlement against UBS Securities regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

g.  ***State Attorneys' General Antitrust Investigation Regarding London Interbank Offered Rate ("LIBOR"):***  On behalf of a multi-state group, Ms. Sheth helped obtain civil settlements against Deutsche Bank AG for **$220**

**million**, Barclays PLC for **$100 million**, Citibank NA for **$100 million**, and UBS AG for **$68 million**.

h.  ***The People of the State of New York v. Charter Communications, Inc. et al,*** **Case No. 450318/2017 (Sup. Ct. N.Y.):**  Ms. Sheth represented the State of New York in an enforcement action against Charter Communications, Inc. and Spectrum Management Holding Company, f/k/a Time Warner Cable, obtaining a record-breaking **$174.2 million** settlement related to misrepresentations regarding internet speed, reliability, and access to content.

i.  ***In the Matter of Wells Fargo & Company,*** **(N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$65 million** settlement against Wells Fargo in connection with its cross-selling practices.

j.  ***In the Matter of Bank of America Corp. et al,*** **(N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a record-breaking **$42 million** settlement against Bank of America and Merrill Lynch regarding their fraudulent electronic trading practices.

k.  ***State of New York ex rel. v. Harbinger Capital Partners Offshore Manager,*** ***L.L.C., et al,*** **Case No. 100416/2015 (Sup. Ct. N.Y.):**  Ms. Sheth represented the State of New York in its suit against a New York-based hedge fund manager, obtaining a **$30 million** settlement to resolve claims that the manager knowingly evaded New York State and New York City taxes.

l.  ***In the Matter of Credit Suisse Securities (USA) LLC,*** **(N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in obtaining a **$10 million** settlement against Credit Suisse for fraudulent electronic trading practices.

m.  ***In the Matter of Simon Property Group, Inc.,*** **(N.Y.O.A.G.):**  Ms. Sheth represented the State of New York in its monopolization investigation into Simon Properties, developer of the Woodbury Commons Outlet Mall, obtaining a civil settlement.

n.   ***In the Matter of Taylor Garbage Service, Inc.*, (N.Y.O.A.G.):**  Ms. Sheth helped obtain a civil settlement and criminal pleas against two trash hauling companies in Broome County, New York, regarding the companies' price-fixing and market allocation scheme.

o.   ***Representation of Gilead Sciences, Inc.:***  Ms. Sheth represents Gilead Sciences in multiple cases arising under the False Claims Act and its state-law equivalents, which remain pending in multiple state and federal courts.

30.   **Adam B. Wolfson:**  Mr. Wolfson is a partner in Quinn Emanuel's San Francisco and Los Angeles offices, who represents both plaintiffs and defendants in antitrust, class-action, and other litigation.  Mr. Wolfson was named an "MVP" in Class Actions by *Law360* in 2022 and a "Rising Star" in the same category in 2019.  *Benchmark Litigation* recognized him as a 2023 Future Star, and he has been listed among the top 500 plaintiffs' financial lawyers in the nation by *Lawdragon* every year since 2019, as well as a Recommended Lawyer in Antitrust repeatedly by *Legal 500 USA*.  He recently tried three jury trials and one bench trial in 14 months, winning each of his jury trials (and is currently in post-hearing briefing in his bench trial).   Some of Mr. Wolfson's representative experiences include:

a.   ***Health Republic Insurance Co. v. United States*, Case No. 1:16-cv-00259 (Fed. Cl.):**  Mr. Wolfson served as part of the lead counsel team that represented a certified class of health insurers seeking recovery from the federal government based on the government's failure to make risk corridor payments in violation of Section 1342 of the Affordable Care Act.  Class members ultimately recovered **$3.7 billion** after Mr. Swedlow, Mr. Wolfson, and the Quinn Emanuel team filed the first case on these issues in the nation, setting forth the core legal and factual theory that the Supreme Court ultimately blessed as correct in mid-2020.

b.   ***In re: 3M Combat Arms Earplug Products Liability Litig.*, Case No. 3:19-md-2885 (N.D. Fla.):**  Mr. Wolfson serves on the Executive Committee in this multi-district litigation involving product liability and other claims on behalf of

over 250,000 military veterans who suffered hearing loss and other injuries as a result of defective earplugs. Notably, during the bellwether trial process in that mass tort, he won two "defense pick" trials (*i.e.*, trials for plaintiffs the defendants selected, presumably because they thought those plaintiffs' claims were weak/unwinnable).

    c.    ***In re Valve Antitrust Litig.*, Case No. 2:21-cv-00563-JCC (W.D. Wash.):** Mr. Wolfson currently serves as co-lead counsel in this antitrust class action alleging that Valve Corporation, the creator of the PC desktop gaming platform, Steam, has illegally applied platform most-favored nations policies to artificially maintain monopoly power and keep its commission prices at supracompetitive levels. After an initial dismissal without prejudice, Mr. Wolfson helped lead drafting of an amended complaint that made clear to the court why plaintiffs' claims are plausible; the case is now in the midst of fact discovery.

    d.    ***In re Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio):** Mr. Wolfson served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam industry. In that case, which Mr. Wolfson helped lead day-to-day from the complaint forward, the court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues. Through Mr. Wolfson's and the team's effort, the class obtained more than **$430 million** in settlements.

    e.    ***AliveCor, Inc. v. Apple Inc.*, Case No. 4:21-cv-03958-JSW (N.D. Cal.):** Mr. Wolfson is lead counsel in this case alleging that, after copying the plaintiff's groundbreaking heart health technology on the Apple Watch, Apple anticompetitively excluded both the plaintiff and all other heart rhythm

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

analysis app providers from the relevant markets.  The case is currently at the end of fact discovery and scheduled to go to trial in February 2024.

f. ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.):**  Mr. Wolfson served as part of a team that represented Songkick, a startup innovator in the live music industry, which brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for artist presale ticketing services.  Through Mr. Wolfson's and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

g. ***Oberstein et al v. Live Nation Entertainment, Inc. et al*, Case No. 2:20-cv-03888-GW (C.D. Cal.):**  Mr. Wolfson currently serves as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster.  The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing and/or attempting to monopolize the relevant markets for primary and secondary ticketing services for major concert venues, and by restraining competition in those markets.  The case is currently pending.

h. ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.):**  Mr. Wolfson served as part of the trial team representing homebuilder plaintiffs against drywall manufacturers.  Plaintiffs alleged that the defendants conspired to fix the prices of drywall in the United States, and sought damages (before trebling) in excess of $200 million.  This action was part of multi-district litigation (*In re: Domestic Drywall Antitrust Litigation*) then-pending in the United States District Court for the Eastern

1   District of Pennsylvania that was remanded back to the Northern District of
2   California for trial.  The case resolved confidentially shortly before trial.

3   i.   ***Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-01831 (D.D.C.):**  Mr.
4        Wolfson currently serves as co-lead interim class counsel for consumers in an
5        antitrust action seeking remuneration for artificially-inflated, supra-competitive
6        surcharges at bank-owned ATMs throughout the country.   The plaintiffs
7        recently reached a settlement with three of the bank defendants in that case for
8        **$66.7 million**, and the court recently granted class certification against the
9        remaining defendants.  The plaintiffs continue to pursue claims against the
10       remaining defendants for more than $1 billion, and Mr. Wolfson leads that
11       case day-to-day.

12   j.   ***In re German Automotive Manufacturers Antitrust Litigation*, Case No.**
13        **3:17-md-02796-CRB (N.D. Cal.):** Mr. Wolfson served as defense counsel for
14        Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-
15        action litigation involving claims that major German auto manufacturers
16        conspired to reduce innovation in their passenger vehicles throughout the
17        world.  Based on arguments Mr. Wolfson developed and briefed, the Court
18        dismissed with prejudice the putative consumer and auto dealers classes'
19        claims, a decision the Ninth Circuit upheld on appeal and for which the
20        Supreme Court denied *certiorari*.

21   k.   ***Transweb, LLC v. 3M Innovative Properties Company et al*, Case No. 2:10-**
22        **cv-04413-FSH (D.N.J.):**  Mr. Wolfson served as part of the trial team that
23        represented plaintiff Transweb, LLC in an antitrust and patent dispute.  The
24        plaintiff prevailed at trial and obtained a rare *Walker Process* antitrust fraud
25        verdict, including **$26 million** in antitrust damages.

26   l.   ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 1:21-cv-01175-MKB (E.D.N.Y.):**
27        Mr. Wolfson, along with Mr. Teruya, leads a team pursuing treble damages
28        antitrust claims against Visa and MasterCard based on their use of anti-

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

competitive agreements which limit competition and fix the interchange fees paid by merchants and payment processors.  The case is currently pending.

31.    **Michelle R. Schmit:**  Ms. Schmit is a partner in Quinn Emanuel's Chicago office. She regularly represents litigants in antitrust, class-action, and data privacy litigation.  Ms. Schmit has been ranked by *Best Lawyers in America* for Commercial Litigation for each of the past three years, and recognized by *Best Lawyers in America* as one to watch, "Women in the Law," in 2022.  She also argued many of the core early motions in this case.  Some of Ms. Schmit's representations include:

a.    ***Apple v. Qualcomm*, Case No. 3:17-cv-00108-GPC (S.D. Cal.):**  Ms. Schmit represented Qualcomm in multi-billion dollar antitrust litigation adverse to Apple, relating to Qualcomm's patent licensing model.  Qualcomm and Apple reached a global settlement just after opening statements.

b.    ***Harris v. comScore, Inc.*, Case No. 1:11-cv-05807 (N.D. Ill.):**  Ms. Schmit represented comScore in a data privacy class action lawsuit, in what was, at the time, reported to be the largest class ever certified under federal electronic privacy laws.  The case favorably settled following certification of the class.

c.    ***Martin et al v. KCBX Terminals Company et al.*, Case No. 1:13-cv-08376 (N.D. Ill.):**  Ms. Schmit successfully defended KCBX against three class actions brought by nearby residents relating to alleged air pollution at a petroleum coke facility, leading the case to a favorable settlement.

d.    ***Storey et al. v. Attends Healthcare Products, Inc*., Case No. 15-13577 (E.D. Mi.):**  Ms. Schmit prevailed in her representation of Attends in a product liability class action case, achieving dismissal of the case following seriatim motions to dismiss.

e.    ***IQVIA, Inc. v. Veeva Systems, Inc.*, Case No. 2:17-cv-00177 (D.N.J.):**  Ms. Schmit currently represents IQVIA, a pharmaceutical data company, in a series of antitrust cases pending in federal court in New Jersey.

32.    **Claire D. Hausman:**  Ms. Hausman, an of counsel in Quinn Emanuel's Los Angeles office, has represented multiple plaintiffs in complex antitrust litigations, including two MDLs.  Ms.

Hausman has litigated in MDLs and large consolidated state and federal actions throughout her career, including in antitrust, structured finance, and products liability cases. Some of Ms. Hausman's representative experiences include: *FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.); *In Re: RFC and RESCAP Liquidating Trust Action*, Case No. 13-cv-3451 (D. Minn.); *In Re: Heparin Products Liability Litigation*, Case No. 1:08-60000 (N.D. Ohio); *In Re: Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, Case No. 11-ML-02265 (C.D. Cal.); *Massachusetts Mutual Life Insurance Co. v. DB Structured Products Inc.*, Case No. 3:11-cv-30039 (D. Mass.).

33.     My partners and I are supported by a team of associates and other legal professionals in this case who regularly handle extraordinarily complex and high-stakes litigation disputes. For example, associate **Brantley I. Pepperman** is a fifth-year associate in Quinn Emanuel's Los Angeles office and specializes in antitrust and unfair competition matters. Mr. Pepperman has deep knowledge of the factual and legal issues in this case, having worked primarily on this litigation for more than two years, including prior to its filing. Mr. Pepperman has also litigated a number of antitrust matters, including: *FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.); *Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-01831 (D.D.C.); and *Calabasas Luxury Motorcars, Inc. v. General Motors LLC et al*, Case No. 2:21-cv-09566-TJH (C.D. Cal.). Mr. Pepperman has also served as a contributor to the "California Antitrust and Unfair Competition Law" treatise and other publications of the Antitrust & Unfair Competition Law Section of the State Bar of California. Mr. Pepperman previously served as a law clerk to the Honorable Christina A. Snyder of the United States District Court for the Central District of California.

34.     The Quinn Emanuel team also includes junior associates: ***Richard Jagdishwar Millett***, who clerked for the Court and the Honorable Milan D. Smith, Jr., of the United States Court of Appeals for the Ninth Circuit; ***Andrew Mather***, a first-year associate who prior to law school served as a principal software architect and data privacy analyst on transformative big data projects for a

major Fortune 500 company; and **Krishna Shah**, who is currently pursuing Big Tech-related antitrust claims in this District.

### Quinn Emanuel's Unparalleled Antitrust and Class Action Experience

35.     Quinn Emanuel is the world's largest law firm devoted solely to business litigation, with over 900 attorneys in 31 offices spanning 11 countries and 4 continents.  Among other accolades, Quinn Emanuel has been named a "litigation powerhouse" by *The American Lawyer*, a "global force in litigation" by *The Wall Street Journal*, and one of "The Four Firms that GCs Fear The Most" by BTI Consulting Group (eleven times).  Quinn Emanuel's Antitrust and Competition practice has been listed in *Global Competition Review*'s GCR100 2023 rankings.  The firm has not only been ranked within the top 25 "Global Elite" law firms, but also within the top 10 ranking of the world's 10 best private litigation firms.  Recently, the *Global Competition Review* awarded Quinn Emanuel "Litigation of the Year—Cartel Defense" for the firm's work for on the German Automotive Manufacturers Antitrust Multidistrict Litigation.  *Chambers USA 2022* ranked the firm's nationwide plaintiff antitrust practice "Band 1," and we have received several repeat awards for the practice areas at issue in this case, including (among others) being named: one of the "Top 20 Trial Law Firms" and a "Tier One" antitrust law firm in 2021 by *Benchmark Litigation USA*, "Antitrust Litigation Department of the Year" by *The Recorder*, and "Class Action Group of the Year" by *Law360*.

36.     As is particularly relevant to this case, Quinn Emanuel is a leader in both antitrust litigation and class-action litigation, including, in particular, antitrust class-action litigation like this.  In connection with these cases, Quinn Emanuel has obtained billions of dollars in settlements and trial verdicts for hundreds of thousands of plaintiffs over the years.

37.     I respectfully submit that Quinn Emanuel's extraordinary success in antitrust and class-action litigation on behalf of both plaintiffs and defendants, along with its demonstrated commitment to fully utilizing the talents of its female and diverse attorneys, makes Quinn Emanuel best-qualified to lead the Consumer Class in this case.  Some of Quinn Emanuel's significant successes are further described below.

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

1 **Quinn Emanuel's Success On Behalf of Antitrust Plaintiffs.**

2      38.      When representing antitrust plaintiffs, Quinn Emanuel has recovered billions of dollars

3 in both class actions and representations of plaintiffs in private litigation and "opt-out" cases.   In

4 addition to the cases identified above, below is a representative sample of some of Quinn Emanuel's

5 other recent representations and successes on behalf of antitrust plaintiffs:

6      a.      ***In re: Credit Default Swaps Antitrust Litig.*, Case No. 13-md-02476**

7           **(S.D.N.Y.):**  Quinn Emanuel acted as one of two co-lead class counsel in this

8           multi-district litigation, in which the plaintiffs alleged the defendants entered

9           into a conspiracy to shut down and not do business with a rival credit default

10           swaps ("CDS") trading platform, which inflated the spread on CDS products.

11           In this role, which involved crafting the initial complaints, conducting

12           discovery, and moving for class certification, Quinn Emanuel obtained over

13           **$1.87 billion** in settlements from the defendants, plus injunctive relief.

14      b.      ***Alaska Electrical Pension Fund v. Bank of America N.A.*, Case No. 14-cv-**

15           **7126-JMF (S.D.N.Y.):**  Quinn Emanuel served as co-lead class counsel for a

16           class of investors asserting antitrust claims against large investment banks and

17           their interest rate swaps broker-dealer.   The court gave final approval to

18           settlements in excess of **$500 million**, described the case as "the most

19           complicated" it had ever seen, and observed that it could "not really imagine"

20           how much more complicated "it would have been if I didn't have counsel who

21           had done as admirable a job in briefing it and arguing it" as Quinn Emanuel.

22      c.      ***In re SSA Bonds Antitrust Litig.*, Case No. 1:16-cv-03711-ER (S.D.N.Y.):**

23           Quinn Emanuel was appointed to serve as co-lead class counsel in this antitrust

24           action alleging that certain banks conspired to fix the prices of SSA bonds.

25           The class secured settlements totaling **$95.5 million**, and final approval of the

26           settlement is pending.

27      d.      ***In Re: Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*,**

28           **Case No. 1:14-md-02548 (S.D.N.Y.):**  Quinn Emanuel was appointed lead

1   counsel, progressed past a motion to dismiss, and secured settlements worth

2   **$60 million** in this antitrust class action alleging manipulation of the "London

3   PM Gold Fix" and the price of gold derivatives worldwide.

4   e.   ***AliveCor, Inc. v. Apple Inc.*, Case No. 21-cv-03958-JSW (N.D. Cal.):** Quinn

5   Emanuel represents AliveCor, a heart health company, in litigation against

6   Apple related to various anticompetitive practices surrounding the Apple

7   Watch.  In March 2022, the district court denied the bulk of Apple's motion to

8   dismiss, and fact discovery is ongoing.

9   f.   ***In re Interest Rate Swaps Antitrust Litig.*, Case No. 16-md-02704-JPO**

10   **(S.D.N.Y.):**  Quinn Emanuel was appointed co-lead class counsel in this class

11   action asserting antitrust claims against financial institutions based on their

12   refusal to open up interest rate swaps to exchange trading.  The class has so far

13   secured **$25 million** in settlements, and Plaintiffs' motion for class

14   certification remains pending.

15   g.   ***In re Payment Card Interchange Fee and Merchant Discount Antitrust***

16   ***Litig.*, Case No. 05-md-1720-JG (E.D.N.Y.):**  Quinn Emanuel represents,

17   among others, The Home Depot as opt-out counsel in this multi-district

18   litigation, where the plaintiffs allege that Visa, Mastercard, and several banks

19   established anticompetitive rules and prices for interchange fees in the credit

20   and debit card markets.  Quinn Emanuel successfully appealed the entry of a

21   2012 settlement that would have waived all merchants' future claims against

22   the defendants, even though the merchants ostensibly had no ability to object

23   to the settlement waiving those rights.  Following remand, Quinn Emanuel is

24   now litigating The Home Depot's and certain other opt-out plaintiffs' claims.

25   39.   Quinn Emanuel has also litigated antitrust claims against Facebook.  In 2014, a Quinn

26   Emanuel team—including myself—filed suit against Facebook on behalf of plaintiff Social Ranger

27   LLC.  *See Social Ranger LLC v. Facebook Inc.,* Case No. 1:14-cv-01525-LPS (D. Del.), Dkt. 1.  In

28   that case, Social Ranger—a software company that offered virtual currency services—alleged that

1  Facebook used its dominance  to monopolize the market for virtual currency services on social game

2  networks.  During the course of the *Social Ranger* case, Quinn Emanuel and its co-counsel were able

3  to compel the deposition of Facebook Chief Executive Officer Mark Zuckerberg.  *See Social Ranger*,

4  Dkt. 206.  The case was ultimately resolved shortly before trial in 2017.

5  **Quinn Emanuel's Success on Behalf of Antitrust Defendants.**

6         40.     Unlike many plaintiffs' firms, Quinn Emanuel also regularly represents defendants in

7  antitrust and class-action litigation, which provides Quinn Emanuel with unique experience and

8  expertise.  On the defense side, Quinn Emanuel has achieved victories for companies—in a range of

9  industries—accused of antitrust and competition law violations.  We have won dismissals by motion,

10  and we have negotiated excellent settlements for our clients, including several settlements not

11  requiring any monetary payment.

12         41.     But Quinn Emanuel is also a firm with the genuine ability to take antitrust cases to trial,

13  and it has done so with frequent success.  For example, Quinn Emanuel led the trial defense team—of

14  which I was a leading member—for defendant Micron Technology, Inc. in an antitrust action

15  involving an alleged conspiracy to boycott certain computer memory chips.  *See Rambus Inc. v.*

16  *Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.).  Plaintiff Rambus sought

17  **$4 billion**—**trebled to $12 billion**—from Micron.  After a three month trial, the jury rejected

18  Rambus' claims and **awarded no damages**.

19         42.     Some of Quinn Emanuel's other successes representing antitrust defendants include:

20              a.    ***In re: German Automotive Manufacturers Antitrust Litig.*, Case No. 3:17-**

21                    **md-02796-CRB (N.D. Cal.):**   Quinn Emanuel was defense counsel for

22                    Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-

23                    action litigation involving claims that major German auto manufacturers

24                    conspired to reduce innovation in their passenger vehicles throughout the

25                    world.   The Court in 2020 **dismissed**—**with prejudice**—the putative

26                    consumer and auto dealers classes' claims, a decision that was affirmed by the

27                    Ninth Circuit in 2021.

28

b.   *In re Flash Memory Antitrust Litig.*, **Case No. 4:07-cv-00086-SBA (N.D. Cal.):**  Quinn Emanuel defended Samsung in two price-fixing class actions, brought by direct and indirect purchasers of NAND flash memory.  Although classes had been certified in similar cases, Quinn Emanuel successfully defeated class certification motions in both actions.

c.   *In re: January 2021 Short Squeeze Trading Litig.*, **Case No. 21-2989-md-CMA (S.D. Fla.):**  Quinn Emanuel represented defendant Citadel, LLC in multidistrict litigation brought by individual investors who alleged Citadel colluded with a brokerage firm to restrict trading in "meme stocks."  Quinn Emanuel obtained a **dismissal—with prejudice—**of all claims at the pleading stage.

d.   *Palivos et al v. Federation Internationale Football Association et al*, **Case No. 2:15-cv-01721-JCM (D. Nev.):**  Quinn Emanuel represented defendant FIFA in this antitrust class action that alleged FIFA was engaged in a conspiracy regarding the sale of hospitality packages to the 2014 World Cup. Plaintiffs sought hundreds of millions of dollars.  Quinn Emanuel obtained **dismissal with prejudice** at the pleading stage.

e.   *Pro Music Rights, LLC v. Apple Inc. et al*, **Case No. 3:20-cv-00309-JAM (D. Conn.):**  Quinn Emanuel secured the dismissal of all claims against defendant SoundCloud in this antitrust action alleging that SoundCloud and other companies conspired to drive the plaintiff out of business by refusing to license any of the plaintiff's works.  Quinn Emanuel obtained a stay of discovery pending a motion to dismiss, and the court granted SoundCloud's motion to dismiss, instructing the plaintiff to file an amended complaint only if it had "good faith grounds" to do so.  The court **dismissed the plaintiff's case** after the plaintiff failed to file an amended complaint.

f.   *Golden Boy Promotions LLC et al v. Alan Haymon et al*, **Case No. 2:15-cv-03378-JFW (C.D. Cal.):**  Quinn Emanuel defended Haymon Sports—a

prominent boxing management company—in a $300 million antitrust lawsuit filed by boxing promotion companies. The plaintiffs alleged that Haymon attempted to monopolize the market for Championship-Caliber Boxers through a "tie-out" and a series of exclusive contracts. Quinn Emanuel obtained **summary judgment** on the plaintiffs' claims.

    g.    ***Basic Your Best Buy, Inc., v. DirecTV, Inc.*, Case No. BC467034 (Cal. Super. Ct.):** Quinn Emanuel defended DirecTV in this $83.7 million antitrust lawsuit. The plaintiff, a terminated retailer, asserted California Cartwright Act Claims based on DirecTV's restrictions on its retailers. Quinn Emanuel prevailed in the trial court, obtaining **summary judgment**. The California Court of Appeal affirmed the trial court's grant of summary judgment.

    h.    ***Novation Ventures, LLC v. The J.G. Wentworth Company, LLC et al*, Case No. 2:15-cv-00954 (C.D. Cal.):** Quinn Emanuel defended J.G. Wentworth in this antitrust case where the plaintiff, a competitor in the structured settlement market, challenged J.G. Wentworth's acquisition of Peach Holdings. The plaintiff also alleged that J.G. Wentworth's online advertising practices were themselves anticompetitive. Quinn Emanuel obtained **dismissal** of the plaintiff's claims **with prejudice**. The Ninth Circuit subsequently affirmed the district court's dismissal of the plaintiff's claims.

    43.    Quinn Emanuel's "both sides of the v." practice provides what I believe are unique insights into both the plaintiffs' and defendants' bar, and benefits our clients no matter on which side of a dispute they find themselves.

## MY APPOINTMENT WILL STRONGLY PROMOTE DIVERSITY

    44.    Quinn Emanuel has a demonstrated commitment to diversity. The firm is composed of individuals with different backgrounds who can contribute diverse perspectives. Indeed, the Quinn Emanuel team in this case includes members of different genders, ages, racial and ethnic identities, and life experiences whose diversity of experience and perspective will benefit the Consumer Class.

As name partner Kathleen Sullivan explains in her accompanying declaration, Quinn Emanuel's commitment to diversity is well-recognized.  *See* **Declaration of Kathleen M. Sullivan** ¶ 4.

45.     I respectfully submit that my appointment as Interim Lead Consumer Class Counsel would also promote diversity in multiple ways.  For example, I am a Japanese-American attorney, and my appointment would promote diversity in class action leadership appointments.  An influential 2017 study authored by California Supreme Court Justice Goodwin H. Liu and others, and released by the National Asian Pacific American Bar Association and Yale Law School, found that Asian Americans "are significantly underrepresented in the leadership ranks" in the legal profession.  *A Portrait of Asian Americans in the Law*, Goodwin Liu et al. (2017) at 3 (available at: https://www.apaportraitproject.org).  Just last year in 2022, an updated version of the study concluded, "Underrepresentation of Asian Americans in the top ranks of the legal profession persists." *A Portrait of Asian Americans in the Law 2.0*, Goodwin Liu at al. (2022) at 3 (available at: https://www.apaportraitproject.org).  The U.S. Census estimates that people of Asian origin were 15.9% of the population in 2021.  United States Census Bureau, QuickFacts, California (available here: https://www.census.gov/quickfacts/CA).  A 2020 study by Law.com, however, concluded that, between 2016 and 2019, less than 9% and perhaps even as low as 5% of appointments in MDLs went to non-White attorneys.  *Despite Diversity Efforts, Fewer Than 10% of MDL Leadership Posts Are Going to Attorneys Who Are Not White*, Amanda Bronstad (2020) (available here: https://www.law.com/2020/08/17/despite-diversity-efforts-fewer-than-10-of-mdl-leadership-posts-are-going-to-attorneys-who-are-not-white/?slreturn=20230103185415).  As one of several ethnic groups that make up the non-White population, Asian Americans necessarily reflect a fraction of those already-small number of appointments.  True and correct copies of these articles regarding these studies and statistics are attached hereto as **Exhibit A** and **Exhibit B**.

46.     My appointment would also address the "repeat player" problem the Court has identified.  *See In re Robinhood Outage Litigation*, Case No. 3:20-cv-01626-JD (N.D. Cal.) (Donato, J.), Dkt. No. 59, at 4-5.  Although I have served as a lead lawyer in other contexts and played a key role in supporting other court-appointed lead class counsel, this would be my first individual court appointment as lead class counsel.

47.    I am also committed to providing opportunities to young and diverse attorneys, including those involved in this case.  For example, in this case, I and the Quinn Emanuel team asked then-associate Michelle Schmit (whose qualifications are described further above) to lead Consumers at the parties' Rule 26(f) conference, negotiate with Facebook counsel a number of foundational discovery protocols, and lead Consumers' discovery dispute letter briefing on these issues.  Ms. Schmit then argued these key discovery disputes on Consumers' behalf at May 25, 2021 and August 31, 2021 hearings before Magistrate Judge DeMarchi (when Judge DeMarchi presided over discovery issues in these cases).  The next year, Ms. Schmit was promoted to partner at Quinn Emanuel.

48.    My team and I have also given other associates in this case key roles in drafting pleadings and briefs, leading discussions and meet-and-confers with Facebook and other counsel, managing discovery, coordinating with the Consumer Class representatives, working with experts, and other case development efforts.

## THE QUINN EMANUEL TEAM AND I WILL WORK RESPECTFULLY, COOPERATIVELY, AND PROFESSIONALLY WITH OTHER COUNSEL

49.    I and the Quinn Emanuel team believe strongly in the value of collaboration and seeking to build consensus.  If appointed, I and the Quinn Emanuel team unequivocally commit to work respectfully, cooperatively, and professionally with other counsel, as we have done for more than two years on this case.

50.    Any suggestion that I or others do not work well with others or do not respect the voices of female counsel is inaccurate.  Amy Brantly, Cindy Reichline, and Melissa Willett, three female counsel with whom I have worked previously, whom do not work on this case, and whom do not work at Quinn Emanuel, have submitted declarations attesting to my respect, courteousness, and professionalism towards all counsel, including female counsel.  *See* **Declaration of Amy T. Brantly**; **Declaration of Cindy Reichline**; **Declaration of Melissa B. Willett**.  Amy Brantly is my opposing counsel in another currently pending antitrust case.  Cindy Reichline was my co-counsel in our previous *Social Ranger* antitrust case against Facebook and in the *Drywall* antitrust action.  Melissa Willett was my co-counsel in the *Polyurethane Foam Antitrust* litigation.  Kathleen Sullivan, Quinn

TERUYA DECLARATION ISO APPLICATION TO APPOINT KEVIN Y. TERUYA OF QUINN EMANUEL

Emanuel's female name partner, has likewise submitted a declaration recognizing my respect for all counsel, including female counsel. *See* **Sullivan Decl. ¶¶** 5–6.

51.    I and my team have, at all times, sought to work collaboratively, respectfully, and professionally with all counsel, including our co-counsel at Hagens Berman and Lockridge. The record is clear that we have done so over the last nearly two years. To the extent the Court finds it helpful, I can provide the Court with additional details and evidence regarding these issues *in camera*.

## COMMITMENT TO FEE, TIME, AND COST CONTROLS

52.    I and the other Quinn Emanuel attorneys pursing this case are committed to litigating the Consumer Class's claims as efficiently as possible.

53.    Litigating claims efficiently is part and parcel to our success in complex cases like this one. For example, in supporting the $1.87 billion settlements that Quinn Emanuel helped secure as co-lead class counsel in the *CDS* case, the mediator—the Honorable Daniel Weinstein (a retired San Francisco County Superior Court Judge)—explained: "I would go so far as to say that, in 30-plus years of mediating high-stakes disputes, this was ***one of the finest examples of efficient and effective lawyering by plaintiffs' counsel that I have ever witnessed***." *See In re Credit Default Swaps Antitrust Litigation*, Case No. 1:13-md-2476-DLC (S.D.N.Y.), Dkt. 447, ¶ 4.

54.    I and the other Quinn Emanuel attorneys pursuing this case are familiar with the Court's expectations regarding attorneys' fees, costs, expenses, and records as to the same in class actions, as reflected in the Court's orders appointing interim class counsel in other cases, *e.g.*, *Robinhood* and *In re Google Play Store Antitrust*. These requirements are consistent with Quinn Emanuel's already-existing practices, and I and the Quinn Emanuel team commit to following the Court's requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of February 2023 in Los Angeles, California.

By    */s/ Kevin Y. Teruya*

Kevin Y. Teruya