# EXHIBIT B

## *Despite Diversity Efforts, Fewer Than 10% of MDL Leadership Posts Are Going to Attorneys Who Are Not White*

Law.com Online

This article also appears in the following ALM publications:

Connecticut Law Tribune

New York Law Journal

New Jersey Law Journal

The National Law Journal

The Legal Intelligencer

Texas Lawyer

August 17, 2020 Monday

Copyright 2020 Copyright Holder for ALM Media Properties, LLC

THE AMERICAN LAWYER

**Length:** 1952 words

**Body**

Sabita Soneji had tried several times to get leadership roles in multidistrict litigation, but it wasn't until last December that she landed a position on the plaintiffs' steering committee overseeing cases against electronic cigarette maker Juul Labs.

The difference? A federal judge focused on diversity, she said.

Despite Diversity Efforts, Fewer Than 10% of MDL Leadership Posts Are Going to Attorneys Who Are Not White

"It's very rare, and as a result kind of disappointing, but when it happens it's wonderful," said Soneji, a partner at Tycko & Zavereei in Oakland, California. "If you are new to the MDL game, it's a pretty demoralizing reality. You have as much enthusiasm and subject-matter experience, and financial investment as everyone else, but the inertia is quite powerful in this world, where people who've already been in leadership roles continue to get them. I don't know if that's a function of familiarity or comfort, but a lot of judges, unfortunately, do go that way."

Diversity has been a frequent topic in the past five years among the bench, the bar and academia when it comes to plaintiffs attorneys who are appointed to lead MDLs, a close-knit legal practice *largely held by white, male attorneys*. Yet, data gathered by Law.com shows very little progress in ethnic diversity of MDL plaintiffs' leadership teams: only 5% of appointments, on average, went to lawyers who identified as "nonwhite" in MDLs created from 2016 through 2019. About 4% of attorneys, on average, had undetermined ethnicity in the data, but, even when accounting for that factor, 91% were white.

Attorneys of color point to a number of factors: Minority attorneys are poorly represented in the legal profession overall, many work at smaller plaintiffs' firms with limited resources to fund MDLs, and veteran firm partners still fail to put them in charge of the cases.

"We obviously have a long way to go to diversifying representation in MDL leadership role," said Kalpana Srinivasan, who was *elected managing partner* of Susman Godfrey this month.

'Super Slow Progress'

The lackluster change in the representation of attorneys of color in MDL leadership contrasts with that of women-primarily white-who have managed to *make inroads*, making up *more than 30% of lead counsel slots* in 2018. In an analysis of the Law.com data from 2016 to 2019, *women made up 40%* of the top 30 lawyers who received leadership appointments to more than three MDLs.

Yet, in the same data, only 4% of attorneys identified as "nonwhite" got leadership appointments of any kind to MDLs in 2016 and 2018, with 5% in 2017. In 2019, the figure was 7%, or just 19 lawyers.

"I am not too surprised," said Peter Prieto, a partner at Miami's Podhurst Orseck appointed to leadership teams in cases over Allergan breast implants and ZF-TRW air bags. "There is a larger pool of female

attorneys to draw from who practice in the MDL world, and the pool for nonwhite attorneys in the MDL world is smaller."

The representation is even less than in the legal profession as a whole, according to the National Association for Law Placement's "2019 Report on Diversity at U.S. Law Firms," which found that nearly 17% identified as attorneys of color last year.

The data shows "super slow progress in terms of an increase in the number of women and people of color," said James Leipold, executive director of the NALP in Washington, D.C. He said the percentage of attorneys of color drops as they move from associate ranks to partnership levels, noting that many join the corporate or private sectors, or take government jobs, both of which may have more diverse work environments.

The American Bar Association, in its *2020 Profile of the Legal Profession*, found similar statistics: 14.1% of the legal profession were lawyers of color, up slightly from 11.4% in 2010. Of those, 5% were Black and 5% Hispanic.

But those figures include lawyers in all practice areas, in both the plaintiffs and defense bars.

"I know that law is one of the least diverse professions out there," said Diandra "Fu" Debrosse Zimmermann, a director at Grant & Eisenhofer who is on the plaintiffs' steering committee in the MDL over Smith & Nephew hip implants. "It is more difficult for Black and brown people to be hired at major firms. You start there. And if you want to be a plaintiffs lawyer, you could probably go to 30 or 40 firms, nationally. This is a different beast."

It's About Relationships

The low percentage comes despite the intervention of some federal judges, many of whom are *not white or male*, to take a more active role in insisting that the plaintiffs' team, historically organized by the lawyers themselves, is diverse.

In the Juul MDL, for example, U.S. District Judge William Orrick, of the Northern District of California in San Francisco, appointed 21 lawyers, including Soneji and at least two other attorneys of color in positions of leadership. In West Palm Beach, Florida, U.S. District Judge Robin Rosenberg of the

Southern District of Florida *appointed 26 lawyers* on May 8, nearly half of whom were women and four were minorities, plus a "leadership development committee" that will provide "mentorship and experience."

"There certainly have been efforts over the years, concerted efforts by judges, that require that diversity be looked at," said Navan Ward, a principal at Beasley, Allen, Crow, Methvin, Portis & Miles who was appointed in 2017 to the plaintiffs' executive committee of the MDL over the medications called proton-pump inhibitors. "At the end of the day, they're the ones who are ultimately selecting a slate. And so, at the end of the day, it definitely starts with them."

Soneji acknowledged the bench's involvement but insisted those judges are the exception. Moreover, she said, the MDL plaintiffs bar is still a small and limited group that is hard for newcomers to break into.

"So much of our practice is about relationships," she said. "But everyone's engaged in the MDL world, it's a ton of politics, and there's a bunch of people who fraternize with each other and know each other, and they always call each other, and I'm not in that network yet."

Lawyers on MDLs can spend four or five years together with a group of more than a dozen other attorneys, developing a strong bond with one another, Ward said.

"They are going to want people they know, and it leaves really [little] room for outsiders to be able to break in if they're new to it," he said. "And if the judge knows or has a close relationship with one of the attorneys who eventually will be one of the leaders of it, I certainly can see a situation where they are dependent on that particular attorney to offer up suggestions for a slate."

MDLs also cost a lot of money up front to invest in bringing the cases. That's particularly difficult for minority attorneys, who disproportionately work at small or midsized plaintiffs firms, sometimes with one or two people, said Samuel Fisher, a partner at Birmingham, Alabama-based Wiggins Childs Pantazis Fisher Goldfarb who joined the plaintiffs' steering committee last year in the MDL over blood pressure medication valsartan.

"And they don't have $100,000 or $75,000 lying around to join an MDL," he said. "Plus, it's not just a matter of paying the money. You have to be able to participate and do the work, so you have to have the freedom of time to put into that effort to make it worthwhile. So, there are some limitations on what a smaller practitioner can do."

Soneji said that when she started delving into MDLs several years ago, she knew that her firm, based in Washington, D.C., would have to align itself with other firms more connected to MDL work. But she also praised her firm's commitment to diversity.

"It's definitely not the same experience for a white man than a minority woman, in any effort, whether you're getting clients or seeking leadership or becoming partner," she said. "To be in a place with a lot of support makes a difference."

Prieto agreed that it's difficult to break into the MDL world without the right relationships. When he joined his firm a decade ago, he got involved in an MDL against banks over checking account overdrafts. That was how he first developed relationships with lawyers at firms such as Baron & Budd and Lieff, Cabraser, Heimann & Bernstein.

But it's not just about connections.

"Do quality work, because the MDL work and MDL practice is very sophisticated," he said. "There's a lot at stake, a lot of money involved, and the issues are complex, so you need to do really, really good work."

And, he said, a lawyer must get along with others. "You need to be a team player, because you are truly working as a team and a group," he said. "And you're putting essentially a law firm together on the plaintiffs' side to take on some of the most sophisticated lawyers and defendants on the other side."

Sending a Message

Many, but not all, of the attorneys of color who have received appointments from 2016 to 2019 come from firms traditionally involved in MDLs, such as Baron & Budd and Susman Godfrey.

Srinivasan said the involvement of judges makes a difference in pushing firms to act, but up to a point.

"I do think it makes a difference, and you see firms reacting to the desire of courts to see different compositions in the leadership slate," said Srinivasan. "To me, the question is, 'how are the lawyers going about that?' If it's just to say we have diverse lawyers somewhere, that's not achieving the long-term aims that are needed in the profession, and that I believe the courts would like to see."

In class actions and mass torts, she said, lawyers work together closely, and visibility is key. An attorney who references in his leadership application that he has a diverse team working "in the background" is not

enough, she said. Attorneys of color need to be the ones who handle key hearings, depositions or other parts of the case that shine a light on their skills.

"It sends a message to the other people in the bar and defense counsel who might, again, be repeat players, that this lawyer has a presence," she said.

Firms also need to think outside the box, rather than pitching a lawyer for leadership based on her long list of prior MDL work, she said. She said she *got her first MDL appointment in 2017*, as co-lead counsel in antitrust class actions against Qualcomm, because she had handled a patent case before the same judge, U.S. District Judge Lucy Koh of the Northern District of California, in San Jose, California.

Then there is racial discrimination, which still exists. Zimmermann, a Black lawyer who is a first-generation American, said attorneys of color have to decide early on in their careers whether to embrace the truth that no one in the room will look like them, or walk away. They also will face a different standard, where there "may not be as much room for error."

"I think that's a decision a lot of folks have had to make that, maybe, if you're not a lawyer of color, you never would have thought about it," she said. "Will I let things slide? How will I confront people? How will I balance the cost of confronting someone, whether it's a lawyer or a firm, vis-Ã¡-vis the outcome of my client?"

Fisher, 70, said the discrimination he has experienced often comes in the form of "subtle exclusions," rather than overt comments. But he and other lawyers consistently agreed that racial discrimination was not unique to the MDL plaintiffs bar; rather, it's a challenge they face every day in the legal profession and American society, in general.

"Anecdotally, I can tell you I've never felt overly welcomed generally in any group I've practiced in," Fisher said. "When you get to be my age, and have done it for 45 years, you know that it's there, you feel it, but you are used to not letting it stop you or turn you around."

*Click here for related ALM content*

**Load-Date:** February 2, 2023

**End of Document**