<u>DECLARATION OF MELISSA B. WILLETT</u>

I, Melissa B. Willett, declare:

1. I am an attorney at law duly admitted to practice law before the courts of the District of Columbia and the state of Maryland.

2. I opened my own practice in 2021 concentrating on assisting law firms with large-scale complex commercial litigation.

3. I worked in the Washington, D.C. office of Boies, Schiller & Flexner, LLP from 1999 until 2020, where I worked primarily on large scale complex commercial class action litigation.

4. A representation of my work includes In re Vitamins Antitrust Class Actions, 327 F.3d 1207 (D.C. Cir. 2003), In re First Databank Antitrust Litigation, 209 F. Supp. 2d 96 (D.D.C. 2002), In re Vitamin C Antitrust Litig., 810 F. Supp. 2d 522 (E.D.N.Y. 2011), In re General Motors LLC Ignition Switch Litigation, 80 F. Supp. 3d 521 (S.D.N.Y. 2015), In re Blue Cross Blue Shield Antitrust Litig., 26 F. Supp. 3d 1172 (N.D. Ala. 2014), In re Polyurethane Foam Antitrust Litig., 178 F. Supp. 3d 635 (N.D. Ohio 2016), Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., 138 S. Ct. 1865 (2018).

5. When Boies Schiller & Flexner was appointed co-lead counsel with Quinn Emanuel Urquhart in the In re Polyurethane Foam matter I had the pleasure of meeting and working with Kevin Teruya. Bill Isaacson of Boies Schiller and Steve Neuwirth of Quinn Emanuel were appointed co-lead counsel. I worked under Bill Isaacson and Kevin worked under Steve Neuwirth.

6. Kevin and I spent many hours, in-person and via telephone, working on the legal aspects of the case: motions, memos, briefs, discovery, fact investigations, status conference agendas, settlement term sheets, settlement conferences, etc.

7. Kevin and I also spent many hours, in-person and via telephone, working on the non-legal aspects of the case: travel logistics, court room logistics, computer capabilities, transcription services, supplies, document production and preparation.

8. We traveled to Cleveland, Ohio for all status conferences and hearings and Kevin and I would prepare for those hearings together.

9. In addition to impressive credentials, Kevin also has what many lawyers (and many people in general) are lacking – humility.

10. Kevin could easily have treated me as someone "junior" to him. In fact, when he joined the case I thought he was junior to me. Since I was more experienced in the case, he treated me as such.

11. Kevin joined the Polyurethane Foam case for Quinn well after I had been working on the case and very often, he came to me for guidance, advice, and direction on specific areas of

the case. He always deferred to anyone who had more knowledge, or information or experience than he did.

12. Kevin was an immediate team player. Whatever benefited the team he was happy to do. I had more experience "in the trenches" when he started working with Steve, so he relied on me to bring him up to speed on certain things and he also deferred to me on decisions that he knew I had more knowledge of and experience with.

13. Honestly, as I think back on those days I remember not knowing what his "rank" was in the firm. I didn't know his title. And in this area of the law that tells you something about a person.

14. Kevin never flaunted his position or title or pedigree. He never pulled rank. He always trusted the people who could make the team stronger. And he respected them and deferred to them.

15. Respect does not come easily in this industry. Ego and bravado are often the first things you notice when meeting a lawyer. But Kevin has no ego and no bravado.

16. A particular incident stands out: One evening we were in Cleveland preparing for a In re Polyurethane Foam hearing the next day. It was late and we were tired. We were using the office of a local firm, so we were not familiar with the office equipment or the staff. Around 9 p.m. the copier jammed. We had to call someone to repair it. When the repairman arrived, Kevin was on his hands and knees with the paper trays of the copier pulled out, looking to see if he could find the source of the problem. The repairman thought Kevin was one of the Cleveland firm's office services team and barked some instruction to him about "finding the power source for the copier". Instead of telling the repairman who he was, or that he didn't work in that office, Kevin just went to find the power source.

17. Kevin is a pleasure to work with because you can trust he will always be looking out for the team's goals, not just his own. Everyone wins.

18. Kevin does not ask anyone to do anything he would not do himself. If he has one fault it is that he is too humble. He allows the team to benefit for work he has done single-handedly.

19. Kevin personifies this quote by Supreme Court Justice John Marshall, "To listen well is as powerful a means of communication as to talk well."

20. Kevin Teruya is a consummate professional who listens before he talks. All too often in this industry, and in life, we must contend with people who do just the opposite.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of February 2023 in Bryans Road, Maryland.

By: /s/ *Melissa B. Willett*

Melissa B. Willett