WILMERHALE

April 3, 2023                                                                                                    Sonal N. Mehta

**VIA ECF**                                                                                                 +1 650 600 5051 (t)
                                                                                                                       +1 650 858 6100 (f)
The Honorable James Donato                                                      sonal.mehta@wilmerhale.com
U.S. District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:     *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

After multiple requests to Advertisers, all of which have been rejected, Meta seeks the Court's assistance in directing Advertisers to comply with the Protective Order governing this case. The Protective Order provides that a party may show a deponent material designated "Confidential" or "Highly Confidential" only where the party has a good-faith basis to believe that the deponent was "the author, addressee, recipient, custodian, or source of the document" or otherwise "previously received or had access to the document." Dkt. 314 §§ 7.2(g), 7.3(f). Yet in several depositions to date—including in depositions of non-party former Meta employees—Advertisers have shown "Confidential" or "Highly Confidential" documents to deponents without any apparent good-faith basis to believe that the deponent was the author, addressee, recipient, custodian, or source of the document, or otherwise had previously received or had access to it. For example, Advertisers have shown deponents emails between other people at Meta that they were not on, documents that predate their time at Meta, and even communications that they necessarily would not have had access to (*e.g.*, emails reflecting Meta's internal discussions about a transaction that the deponent was on the other side of). Although this is violation of the Protective Order and an utter waste of party and nonparty witness time, Meta thus far has allowed depositions to proceed: Meta has noted its objection for the record (and raised the issue with counsel again after the depositions) but has not prohibited Advertisers from showing protected documents or instructed deponents not to answer questions. In parallel, Meta has asked Advertisers to explain the good-faith basis for their actions or confirm that they will abide by the Protective Order going forward. Advertisers have refused. With numerous depositions to come, Meta is forced to ask for the Court's assistance.

The parties met and conferred by telephone on March 30, 2023 and reached impasse. Meta respectfully requests that the Court order Advertisers to stop violating the Protective Order by improperly disclosing Confidential or Highly Confidential material during depositions.

I.     **Advertisers Are Violating The Protective Order**

The Protective Order provides that a Receiving Party may during depositions disclose materials designated "Confidential" or "Highly Confidential" only to:

> a Party or Non-Party witness in the action, who the [Highly] Confidential Information or Items indicate, or who the Receiving Party has ***a good-faith basis to believe, was the author, addressee, recipient, custodian, or source of the***

>    *document*, to the extent he or she previously had lawful access to the document disclosed or to be disclosed; any witness for whom the Receiving Party ***believes in good faith previously received or had access to the document***, unless counsel for the Designating Party or the witness indicates that he or she did not have access to the document, or unless otherwise agreed by the Designating Party or ordered by the court.

Dkt. 314, §§ 7.2(g), 7.3(f) (emphasis added).

Despite this clear language, Advertisers have repeatedly shown deponents Confidential and Highly Confidential materials with no apparent basis to believe that the deponents authored, sent, received, or otherwise accessed the materials. For example, in his February 24 deposition, Advertisers showed one Meta employee nine different email chains that he was not on that were designated "Confidential" or "Highly Confidential."[1] Indeed, in one instance, Advertisers showed the employee emails between several Meta senior executives from December 2012—almost a year *before* the employee joined Meta—regarding the potential acquisition of his then-separate company. It was clear on the face of the emails that he had neither sent nor received them, and he himself stated on the record that Advertisers were showing him emails that he was "not on" and had "never seen until today."[2] Advertisers never attempted to lay any foundation for showing him the emails and had no apparent good-faith basis for showing him the document, given that he was not on the emails, the emails predated his employment at Meta, and he himself told Advertisers' counsel on the record that he had never seen the emails before.

Advertisers have continued this practice even for non-party deponents, questioning former Meta employees about emails that they neither sent nor received. Again, Advertisers laid no foundation, and indeed even refused Meta's request for an explanation on the record of their alleged good-faith basis to show protected materials to a deponent that had not authored, sent, or received them. These are non-party witnesses who are no longer working at Meta and do not have access to Meta's systems or sensitive information; showing them protected Meta materials that they never accessed is highly improper and a clear violation of the Protective Order.

When Meta asked in correspondence what good-faith basis Advertisers had under the Protective Order to believe that the deponents had received or had access to such protected material,[3] Advertisers did not provide one. Instead, they insisted the documents were "relevant" to Advertisers' claims.[4] But whether a document is "relevant" has nothing to do with whether there

---

[1] Advertisers showed at least 15 protected documents to the Meta employee that he never authored, sent, received, or otherwise accessed—nearly half of the documents used in his deposition.

[2] Feb. 24, 2023 Tr. 28:2-5. The same witness made the same point for several other Confidential or Highly Confidential documents shown to him by Advertisers during the deposition. *See, e.g.*, Feb. 24, 2023 Tr. 53:25-54:1 ("It appears to be a message thread I was not on."); 87:15-16 ("I don't appear to be on what seems to be a message thread."); 98:12 ("I see that, and I'm not on this email.").

[3] Letter from Meta Counsel to Advertisers' Counsel (Mar. 16, 2023).

[4] Email from Advertisers' Counsel to Meta's Counsel (Mar. 17, 2023).

2

is a reason to believe in good faith that a deponent who is not on the document had access to it—which is the relevant question under the Protective Order. Advertisers also suggested during the parties' meet-and-confer that they can show deponents protected documents if the deponent has or previously had "lawful access" to the documents. But Advertisers made no effort to explain what good-faith basis they had to believe that Meta employees or former employees have legal access to, for example, emails that they are not on—indeed, Meta employees do not have access to other employees' emails in the ordinary course of business.

To be clear, in no deposition has Meta prohibited deponents from answering questions on the documents. Instead, it has concisely stated its objection for the record and agreed to a standing objection to avoid the need to make further on the record objections.[5] And, as noted above, Meta sought to meet and confer with Advertisers outside of depositions to get their agreement to abide by the Protective Order. When it continued to happen—after Meta explained in correspondence that it was a violation of the Protective Order—Meta requested an explanation on the record of Advertisers' alleged good-faith basis to show protected material to a deponent that had not authored, sent, or received it. Advertisers refused to provide one, disavowing the Protective Order's clear requirements and denying any obligation to have a good-faith basis to show protected information to a witness.[6]

Questioning a deponent on a document that is clear on its face was not authored, sent, received or otherwise accessed by the deponent—and without making any attempt to lay any foundation that the deponent had previously accessed it—violates the Protective Order. Not only that, but extended questioning about documents on which a deponent has no foundation to testify—and on which Advertisers must know the deponent has no foundation to testify—is wasteful, inefficient, and unduly burdensome on current and former Meta employees who are taking time out of their jobs to sit for depositions in this case. Meta accordingly respectfully requests that the Court order Advertisers to stop violating the Protective Order by improperly disclosing protected material in depositions.

---

[5] *See, e.g.*, Feb. 24, 2023 Tr. 26:1-12 ("MR. KLINEBERG: Excuse me, Mr. Dunne, I'm sorry. [The witness] is not actually on these emails; is that correct? MR. DUNNE: Yes. MR. KLINEBERG: So these are designated as confidential or maybe highly confidential under the protective order. I don't know that he should be shown these documents. MR. DUNNE: Are you instructing him not to read them? MR. KLINEBERG: No, I'm just pointing out that this may violate the protective order."), 53:6-18 ("MR. KLINEBERG: Mr. Dunne, I just want to note that we have the same objection to the previous exhibit. MR. DUNNE: Yeah, so I will note that I will understand you have a standing objection that says I'm violating the protective order whenever I show him a document from Meta that he's not on. But if you want to instruct him at any point, let me know. Otherwise we'll deal with that outside the content, okay? MR. KLINEBERG: That's fine. As long as the objection is noted, that's all. MR. DUNNE: Understood."); Mar. 9, 2023 Tr. 134:21-136:6; Mar. 10, 2023 Tr. 124:8-125:9; Mar. 28, 2023 Rough Tr. 248:20-250:8.

[6] Mar. 9, 2023 Tr. 134:21-136:6; Mar. 28, 2023 Rough Tr. 250:6-9. In the fourth deposition—despite Meta having raised the issue numerous times with Advertisers—Advertisers' counsel stated, "I frankly don't understand what had a [sic] dispute is about at all I think the standard is like whether or not it's reasonable to ask somebody a question about" and "I don't think I have to provide you with a good-faith basis." Mar. 28, 2023 Rough Tr. 248:20-250:8.

3

Respectfully submitted,

By: */s/ Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*