# Bathaee :: Dunne :: LLP

**FILED UNDER SEAL**

April 4, 2023                                                                                                                Via CM/ECF

Re:   *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

Plaintiffs respectfully request relief from a serious, ongoing discovery problem that has already prejudiced them, and that Meta has refused to remedy. Pursuant to this Court's order, Meta certified on December 19, 2022, that it had (with a discrete exception) substantially completed its document production. The parties then began scheduling depositions. Yet despite certifying that it had substantially completed its document production, Meta has for approximately two years withheld from review and production in this case several hundred thousand documents, based on a privilege review Meta now concedes to be badly flawed. Meta's partial re-review of these same documents in the FTC's antitrust suit led to a **60% downgrade rate**, and ended up with an 11th-hour (March 21, to be precise) production in this case of nearly 30,000 previously withheld documents—thousands of which were pertinent to then-imminent, and in some cases, already completed, depositions. Yet when Plaintiffs asked Meta to review the rest of the wrongfully withheld documents and to work with Plaintiffs to mitigate the prejudice, Meta called Plaintiffs' proposal a "nonstarter." The parties met and conferred on March 30, 2023, and reached impasse.

On April 2, 2021, Judge Koh, then presiding over this action, ordered Meta to "produce to Plaintiffs the documents Facebook produced to the Federal Trade Commission and the United States House of Representatives within 30 days." Dkt. 11. In early May 2021, Meta made that production ("FTC CID production"), which comprised approximately 3 million, already-produced documents collected from several dozen current and former Meta employees' files during the FTC's prior antitrust investigation into Meta. In June 2021, Meta served on Plaintiffs a privilege log with 1,046,992 entries, representing documents withheld or redacted from its FTC CID production based on supposed claims of attorney-client privilege, work product, or both.

The FTC CID production's contours have impacted Plaintiffs' discovery strategy throughout this action. Meta insisted its FTC CID production be the foundation from which all other document discovery in this case must flow. When Plaintiffs served document requests—Advertiser-specific, Consumer-specific, and joint—Meta insisted it would not search for and produce documents covering substantive topics Meta claimed were the subject of its FTC CID production. When the parties negotiated custodians and search terms, Meta asserted it would not repeat search parameters it used to collect, search, and review the documents ultimately produced as part of the FTC CID production. Meta affirmatively pressed Plaintiffs to identify custodians whose documents had not "already been collected" as part of the FTC investigation, carved out responsiveness dates for "overlapping" custodians to remove date ranges already collected in the FTC CID production, and used that production as a shield in the parties' search term negotiations.

Plaintiffs now know why Meta took the above positions—which continue to this day. When Meta collected, reviewed, and produced documents to the FTC during its investigation, Meta improperly withheld **hundreds of thousands of documents** as allegedly privileged or work product, when in fact they were not. As Meta's own lawyers conceded two weeks ago in federal court, Meta's privilege calls throughout its 1-million-entry investigational privilege log were badly flawed. *See FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.), Dkt. 257. Indeed, a court-guided re-review of approximately 100,000 entries from this log revealed that **sixty percent** of the re-reviewed documents—ninety percent of which were withheld completely—were non- or less-privileged. *See id.* at 11-15. It is not clear (yet) the precise date on which Meta and its lawyers

discovered that Meta had improperly designated hundreds of thousands of documents during its FTC investigation review, but by taking the position in *this case* that it would not re-review any documents previously reviewed as part of the FTC investigation, Meta has kept the near 1 million documents on its FTC privilege log from ever being independently reviewed for this case.

And Meta *continued* to keep the deficiencies in its FTC investigation privilege calls—and the hundreds of thousands of not-actually-privileged documents implicated by these deficiencies—out of this case for *months* after Meta indisputably *knew* its privilege log from the FTC investigation was irredeemably flawed. A recent status report in the FTC case (*id.* at 13) reveals that Meta agreed to re-review more than 100,000 documents on its investigation log—the same log covering the same FTC CID production Meta re-produced to Plaintiffs—in or around late November 2022, and that this review was actively underway when Meta told the *Klein* Plaintiffs and this Court that its document production was substantially complete, for all custodians.

It was at this time—when Meta was engaging in a re-review of its FTC investigation log but also certifying its document production in *Klein* was substantially complete—that Meta demanded Plaintiffs schedule and start fact depositions. Plaintiffs did indeed start fact depositions, deposing (among other witnesses) Meta's Dan Rose, David Wehner, Guy Rosen, Jay Parikh, Keval Patel, John Fernandes, and Josh Grossnickle between February 2 and March 20, 2023. In the middle of this, Plaintiffs made a discrete privilege challenge regarding a document redacting as privileged ▇▇▇▇▇▇. The response from Meta was problematic: it produced the ▇▇▇▇▇▇ along with 20 GB of other redaction downgrades on March 20, and produced *27,857 previously withheld documents* on March 21. Among the previously withheld documents were *several thousand* that included or referenced already-completed Meta deponents (2,795 for Mr. Wehner, 2,505 for Mr. Rose, 795 for Mr. Rosen, 461 for Mr. Parikh, 335 for Mr. Grossnickle, 269 for Mr. Patel, and 68 for Mr. Fernandes). And these were hardly irrelevant or of even secondary importance.

For example, Advertiser Plaintiffs assert as part of their monopoly maintenance claims that between late 2016 and early 2018, Meta used deceptively-obtained competitive intelligence—



to cripple the then-nascent advertising business of Meta's principal would-be social advertising rival, Snap. ▇▇▇▇▇▇ A consistent argument from Meta about the foregoing scheme—repeated as recently as last month, in a brief to this Court—was that Meta's highest-level executives had nothing to do with it, such that Plaintiffs' time deposing those executives should be limited. But among the documents produced for the first time on March 21, 2023, were:

- ▇▇▇▇▇▇

- 

The above are just specific examples, on a single relevant subject, of documents produced for the first time by Meta on March 21, 2023. These documents had nearly 28,000 companions—thousands of which are clearly relevant to issues cutting across both Advertisers' and Consumers' cases. Worse yet, Meta still hasn't re-reviewed *several hundred thousand* documents it withheld as privileged in the FTC investigation and thus never reviewed for responsiveness in this case. There are, based on Meta's own analysis and admissions regarding its FTC investigation log, no doubt hundreds of thousands of non-privileged documents in that group. And it unquestionably includes thousands upon thousands of relevant—indeed, hot and unique—documents responsive to Advertisers' discovery requests, Consumers' discovery requests, or both. Yet Meta to this day refuses to re-review the remainder of its FTC investigation privilege calls—or even to engage meaningfully on a protocol for doing so. This is despite Meta's concession that its prior privilege review and logging of the same, at-issue documents was flawed. When Plaintiffs contacted Meta about this issue, Meta asserted it had no obligation to produce in this case anything it downgraded from its FTC CID production—the same universe of documents Meta had insisted for two years could not be re-reviewed, in any circumstance, for responsiveness here.

Plaintiffs have incurred and will continue to incur significant prejudice from Meta's conduct with respect to its FTC investigation privilege calls. Depositions are underway. Many of Meta's downgrade productions that have occurred have come on the eve or near-eve of a witness's deposition (such as with Meta COO Javier Olivan), or worse, *after* that witness's deposition. That Meta has already downgraded so many of these documents suggests that many more would be downgraded were Meta to complete re-review of the log's remainder. This conclusion is also consistent with Meta's erroneous over-designation in the first place: another court recently observed that Meta, as a company, apparently has engaged in a practice of over-designating documents as privileged, whereby Meta "employees are taught to improperly 'privilege' documents based on their perceived sensitivity." *Cambridge Analytica MDL*, No. 18-md-2843-VC (N.D. Cal.), Dkt. 1104 at 47. Given Meta's refusal to work cooperatively to mitigate this prejudice, Plaintiffs respectfully request that the Court order that Meta:

1. Promptly re-review all remaining entries—*i.e.*, all entries not yet rereviewed—on its FTC investigational privilege log.
2. Provide a date certain by which an amended privilege log will be produced, and complete production of all newly-identified downgraded documents will be made, in this case.
3. Answer the following questions, which Meta has to-date refused to answer: (i) When did Meta internally determine that the documents it reproduced to Plaintiffs on March 20, 2023, and March 21, 2023, were non- or less-privileged? (ii) If Meta's internal determinations differ for different documents or groups of documents, when was each respective downgrade decision made?
4. Engage in good faith negotiations with Plaintiffs for appropriate deposition and schedule relief to mitigate the prejudice from Meta's delayed production of downgraded documents.

**FILED UNDER SEAL**

Respectfully submitted,

 /s/ *Brian J. Dunne*
On Behalf of Interim Co-Lead Counsel for the
Advertiser and Consumer Classes

| | |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
| /s/ *Amanda F. Lawrence* | /s/ *Yavar Bathaee* |
| Amanda F. Lawrence (*pro hac vice*) | Yavar Bathaee (CA 282388) |
| alawrence@scott-scott.com | yavar@bathaeedunne.com |
| Patrick J. McGahan (*pro hac vice*) | Andrew C. Wolinsky (CA 345965) |
| pmcgahan@scott-scott.com | awolinsky@bathaeedunne.com |
| Michael P. Srodoski (*pro hac vice*) | Adam Ernette (*pro hac vice*) |
| msrodoski@scott-scott.com | aernette@bathaeedunne.com |
| 156 South Main Street, P.O. Box 192 | Priscilla Ghita (*pro hac vice*) |
| Colchester, CT 06415 | pghita@bathaeedunne.com |
| Tel.: (860) 537-5537 | Chang Hahn (*pro hac vice*) |
| | chahn@bathaeedunne.com |
| Patrick J. Coughlin (CA 111070) | 445 Park Avenue, 9th Floor |
| pcoughlin@scott-scott.com | New York, NY 10022 |
| Carmen A. Medici (CA 248417) | (332) 322-8835 |
| cmedici@scott-scott.com | |
| Hal D. Cunningham (CA 243048) | Brian J. Dunne (CA 275689) |
| hcunningham@scott-scott.com | bdunne@bathaeedunne.com |
| Daniel J. Brockwell (CA 335983) | Edward M. Grauman (*pro hac vice*) |
| dbrockwell@scott-scott.com | egrauman@bathaeedunne.com |
| 600 W. Broadway, Suite 3300 | Andrew M. Williamson (CA 344695) |
| San Diego, CA  92101 | awilliamson@bathaeedunne.com |
| Tel.: (619) 233-4565 | 901 S. MoPac Expressway |
| | Barton Oaks Plaza I, Suite 300 |
| Patrick J. Rodriguez (*pro hac vice*) | Austin, TX 78746 |
| prodriguez@scott-scott.com | (213) 462-2772 |
| 230 Park Avenue, 17th Floor | |
| New York, NY 10169 | Allison Watson Cross (CA 328596) |
| Tel.: (212) 223-6444 | across@bathaeedunne.com |
| | 3420 Bristol St., Ste 600 |
| | Costa Mesa, CA 92626-7133 |
| | |
| | *Interim Co-Lead Counsel for the Advertiser Classes* |

**FILED UNDER SEAL**

| | |
|---|---|
| **HAGENS BERMAN SOBOL SHAPIRO LLP** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |

 /s/ *Shana E. Scarlett*  
Shana E. Scarlett (Bar No. 217895)  
Hannah Song (Bar No. 343110)  
715 Hearst Avenue, Suite 202  
Berkeley, CA 94710  
Telephone: (510) 725-3000  
Email: shanas@hbsslaw.com  

Steve W. Berman (*pro hac vice*)  
1301 Second Avenue, Suite 2000  
Seattle, WA 98101  
Telephone: (206) 623-7292  
Email: steve@hbsslaw.com  

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

W. Joseph Bruckner (*pro hac vice*)  
Brian D. Clark (*pro hac vice*)  
Rebecca A. Peterson (Bar No. 241858)  
Kyle J. Pozan (*pro hac vice*)  
Laura M. Matson (*pro hac vice*)  
100 Washington Avenue South, Suite 2200  
Minneapolis, MN 55401  
Telephone: (612) 339-6900  
Email: wjbruckner@locklaw.com  
         bdclark@locklaw.com  
         rapeterson@locklaw.com  
         kjpozan@locklaw.com  
         lmmatson@locklaw.com  

 /s/ *Kevin Y. Teruya*  
Kevin Y. Teruya (Bar No. 235916)  
Adam B. Wolfson (Bar No. 262125)  
Claire D. Hausman (Bar No. 282091)  
Brantley I. Pepperman (Bar No. 322057)  
865 South Figueroa Street, 10th Floor  
Los Angeles, CA 90017-2543  
Telephone: (213) 443-3000  
Email: kevinteruya@quinnemanuel.com  
         adamwolfson@quinnemanuel.com  
         clairehausman@quinnemanuel.com  
         brantleypepperman@quinnemanuel.com  

Michelle Schmit (*pro hac vice*)  
191 N. Wacker Drive, Suite 2700  
Chicago, IL 60606  
Telephone: (312) 705-7400  
Email: michelleschmit@quinnemanuel.com  

Manisha M. Sheth (*pro hac vice*)  
51 Madison Avenue, 22nd Floor  
New York, NY 10010  
Telephone: (212) 849-7000  
Email: manishasheth@quinnemanuel.com  

*Counsel for the Consumer Class*

**FILED UNDER SEAL**

## FILER ATTESTATION

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 4, 2023                By:   */s/ Brian J. Dunne*
                                          Brian J. Dunne