# Bathaee :: Dunne :: LLP

**FILED UNDER SEAL**

April 13, 2023                                                                                                               Via CM/ECF

Re:    *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

      On February 9, 2023, near the beginning of fact depositions in this case, Advertiser Plaintiffs ("Advertisers") took the Rule 30(b)(6) deposition of defendant Meta Platforms, Inc. ("Meta") on a single topic addressing Meta's AI/ML systems used in ad ranking and delivery. Meta's designee was unprepared (indeed, by his own admission)—a problem that has become even more glaring as fact depositions have proceeded since. However, Meta has refused Advertisers' requests to return the deposition time wasted by Meta's unprepared deponent and to produce a properly prepared designee. Advertisers now respectfully request this relief from the Court. The parties met and conferred on March 16, 2023, and are at impasse.

      This is a monopoly maintenance case brought on behalf of people and companies that bought advertising on Meta properties from December 2016 onwards. As Advertisers' operative First Amended Complaint, Dkt. 391 ("FAC") explains, and as fact discovery in this case is confirming, Meta's ad business dominates a distinct submarket of online advertising that uses a particular type of data—"social data" generated within an identity-linked, signal-rich online environment—and powerful machine learning ("ML")/artificial intelligence ("AI") systems designed specifically for this data, to offer a unique product: personalized online advertising tailored to a particular, identified person. *See* FAC ¶¶ 782-88, 804-13. Meta's multibillion dollar online advertising business is built on providing this capability as a distinct value proposition, one not generally available from other online platforms (let alone offline ads). A powerful barrier to entry surrounding Meta's advertising business has allowed Meta to increase prices without losing market share nearly every year since the company began selling advertising.

      Meta's journey has not been without speedbumps, however. For example, after Meta scuttled its public developer Platform in 2015, restricting access to a handful of whitelisted developers, it was faced with a paucity of "signals"—data used as inputs to targeting and ranking models—needed to train its ML/AI systems that personalize ads and other content for users. FAC ¶¶ 316-33. This led to [REDACTED], and a companywide reckoning about how to maintain Meta's market dominance, including against then-nascent social advertising entrant Snapchat, [REDACTED]. Advertisers' case stems from what happened next. Beginning in 2016, [REDACTED]

[REDACTED] To obtain signals [REDACTED], and to maintain Meta's data targeting barrier to entry against new entrants like Snapchat, Meta undertook an aggressive campaign of exclusionary conduct. For example, to obtain critical eCommerce signals from longtime Meta advertiser eBay—[REDACTED]—Meta agreed to weaken its directly competitive Marketplace product in early 2017. *See* FAC ¶¶ 334-78, 429-72. Between late 2017 and early 2018, after Meta's direct competition with Netflix through its video streaming product Watch threatened Meta's special relationship with one of its most important signal sources, Meta agreed—apparently at the apex level—to withdraw from Netflix's streaming market in exchange for continuing and expanded signals access. [REDACTED] In late 2019, Meta began integrating data features (engineered data used in AI systems) from across its lines of

business into a central repository called F3, FAC ¶¶ 728-748,



In short, Meta's AI/ML systems are central to Advertisers' case. They lie at the heart of market definition, of barriers to entry, of Meta's market power, and indeed of the supracompetitive price increases suffered by the Advertiser Plaintiffs since December 2016. Moreover, Advertisers will prove at trial, among other things, that Meta (a) changed ███████ ███████ as part of agreements with eBay and with Netflix, including in ways that were technically and economically irrational but for the anticompetitive effect of the agreements, FAC ¶¶ 468-72, 515-536; (b) gathered and integrated signals/features/user data from across its business, ███████ ███████, *id.* ¶¶ 728-42; 750-64; and (c) used sensitive data deceptively taken from users' mobile devices to validate Meta's offsite identity-matching AI/ML systems, *id.* ¶¶ 537-42. Given the foregoing, to streamline discovery and reduce the need for 30(b)(1) depositions covering Meta's AI/ML systems, Advertisers sought a 30(b)(6) deposition on the following topic: "The artificial intelligence and machine learning algorithms, software, and systems used in connection with Meta's ad and content targeting during the Relevant Period, including the data sources used by them." In a January 19, 2023 letter sent after Advertisers served the above 30(b)(6) topic, Meta wrote that it disagreed that "content targeting" was within an appropriate scope of deposition, but agreed to designee prepare to testify "about the types of machine learning . . . Meta has used since April 30, 2015 to deliver/rank advertisements, including generally the types of algorithms, software, systems and source data used in connection with that machine learning."

On February 9, 2023, Meta produced ███████ as its 30(b)(6) representative for Advertisers' AI/ML topic. Over the course of a frustrating 6+ hour deposition, ███████ could not provide any specific testimony on any aspect of the noticed topic—nor even Meta's narrowed proposal as to what its designee would be reasonably prepared to cover. For example,

---

[1] Given space constraints, Advertisers have been minimalistic in their quotations throughout this letter brief. Advertisers can and will provide any document cited in this motion, including relevant excerpts (or the entirety, should the Court so desire it) of Mr. ███████ deposition transcript, to the Court as exhibits should the Court wish a more detailed evidentiary record for this motion.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ At one point, ▓▓▓▓ made clear that he had not prepared to testify on an issue despite acknowledging it was within the scope of the deposition as he understood it. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

A 30(b)(6) witness must "give complete, knowledgeable, and binding answers on the corporation's behalf." *In re Facebook, Inc.*, 2023 WL 1871107, at *26 (N.D. Cal. Feb. 9, 2023). Meta's designee fell far short of this standard. To begin with, ▓▓▓▓ knowledge, including about Meta's AI/ML systems for ad ranking, included only the period after he began working at Meta— ▓▓▓▓. But a 30(b)(6) designee has a "duty to prepare . . . beyond matters personally known to the witness or to matters in which the designated witness was personally involved." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008) (cleaned up). Moreover, as described above, with respect to topics plainly within the scope of the deposition, ▓▓▓▓ admitted he lacked preparation. ▓▓▓▓ could not provide knowledgeable testimony about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Meta has argued that ▓▓▓▓ spoke generally ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, but such testimony is trivially available from public sources, and patently insufficient for the noticed topic. Stated simply, it is unremarkable that Meta ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but that is largely the extent of what ▓▓▓▓ could say over six hours of testimony. Further exacerbating the problem, Meta made long speaking objections at ▓▓▓▓ deposition—at one point reading an entire letter into the record, ▓▓▓▓▓▓▓▓, and at another having the deponent leave the room during a lengthy speaking objection, ▓▓▓▓▓▓▓▓. This is the sort of conduct for which Meta has (in part) recently been sanctioned. *In re Facebook, Inc.*, 2023 WL 1871107, at *26 (speaking objections and evasive testimony at a 30(b)(6) deposition). Many of the facts ▓▓▓▓ could not provide—and that Meta did not prepare him to provide—have now been obtained through 30(b)(1) depositions, but this is precisely the sort of expenditure of limited fact deposition time that Advertisers' 30(b)(6) deposition was noticed to avoid. Meta's conduct has wasted hours of preparation and hours of 30(b)(1) deposition time. Advertiser Plaintiffs respectfully request that Meta be required to prepare another witness (or witnesses) on its noticed topic, and that the time used for ▓▓▓▓ deposition be restored to Plaintiffs' deposition time allotment in this case.

**FILED UNDER SEAL**

Respectfully submitted,

By: _Yavar Bathaee_

| | |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
| | |
| _/s/ Amanda F. Lawrence_ | _/s/ Yavar Bathaee_ |
| Amanda F. Lawrence (*pro hac vice*) | Yavar Bathaee (CA 282388) |
| alawrence@scott-scott.com | yavar@bathaeedunne.com |
| Patrick J. McGahan (*pro hac vice*) | Andrew C. Wolinsky (CA 345965) |
| pmcgahan@scott-scott.com | awolinsky@bathaeedunne.com |
| Michael P. Srodoski (*pro hac vice*) | Adam Ernette (*pro hac vice*) |
| msrodoski@scott-scott.com | aernette@bathaeedunne.com |
| 156 South Main Street, P.O. Box 192 | Priscilla Ghita (*pro hac vice*) |
| Colchester, CT 06415 | pghita@bathaeedunne.com |
| Tel.: (860) 537-5537 | Chang Hahn (*pro hac vice*) |
| | chahn@bathaeedunne.com |
| | 445 Park Avenue, 9th Floor |
| Patrick J. Coughlin (CA 111070) | New York, NY 10022 |
| pcoughlin@scott-scott.com | (332) 322-8835 |
| Carmen A. Medici (CA 248417) | |
| cmedici@scott-scott.com | |
| Hal D. Cunningham (CA 243048) | Brian J. Dunne (CA 275689) |
| hcunningham@scott-scott.com | bdunne@bathaeedunne.com |
| Daniel J. Brockwell (CA 335983) | Edward M. Grauman (*pro hac vice*) |
| dbrockwell@scott-scott.com | egrauman@bathaeedunne.com |
| 600 W. Broadway, Suite 3300 | Andrew M. Williamson (CA 344695) |
| San Diego, CA 92101 | awilliamson@bathaeedunne.com |
| Tel.: (619) 233-4565 | 901 S. MoPac Expressway |
| | Barton Oaks Plaza I, Suite 300 |
| | Austin, TX 78746 |
| Patrick J. Rodriguez (*pro hac vice*) | (213) 462-2772 |
| prodriguez@scott-scott.com | |
| 230 Park Avenue, 17th Floor | |
| New York, NY 10169 | Allison Watson Cross (CA 328596) |
| Tel.: (212) 223-6444 | across@bathaeedunne.com |
| | 3420 Bristol St., Ste 600 |
| | Costa Mesa, CA 92626-7133 |
| | |
| | *Interim Co-Lead Counsel for the Advertiser Classes* |

**FILED UNDER SEAL**

## FILER ATTESTATION

    I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 13, 2023            By:  */s/ Brian J. Dunne*
                                                    Brian J. Dunne