# Bathaee :: Dunne :: LLP

**FILED UNDER SEAL**

April 17, 2023                                                                                                                                                      Via CM/ECF

Re:    *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

      Advertiser Plaintiffs ("Advertisers") in the *Klein* litigation respectfully request that the Court compel Netflix, Inc. ("Netflix") to produce documents in response to a subpoena served upon it nearly a full calendar year ago. After numerous letters and multiple meet-and-confers, Netflix has produced, in response to Advertisers' year-old subpoena, just ***fifty-four*** documents, all of which are collateral (at best) to the issues Advertisers asked for documents on, and ***none*** of which fall within the clearly defined categories of documents that Advertisers repeatedly told Netflix were at the core of what was sought for Advertisers' case. Netflix has repeatedly delayed proceedings, implying it was working on a substantial production or was planning to produce documents responsive to Advertisers' subpoena as part of its production to Defendant Meta Platforms, Inc. ("Facebook"), but that has been definitively revealed at this point to have been purely a ruse. Netflix has produced ***nothing*** among the topics and types of documents Advertisers have specifically targeted in correspondence, and (given the 54-document universe of Netflix's entire production) next to nothing ***at all***. In view of the importance of Netflix's documents and actions to the monopoly maintenance scheme at issue in Advertisers' case—Netflix is specifically alleged, at some length and with details from Facebook-internal documents, to have entered an anticompetitive agreement with Facebook as one of the exclusionary acts in Advertisers' monopoly broth—there can be no serious dispute that Netflix has improperly refused to search for, review, and produce relevant, reasonably proportional documents in response to Advertisers' eleven-month-old subpoena. Advertisers and Netflix are at impasse after several meet-and-confers, forcing Advertisers to seek relief from this Court.

* * *

      This is a monopoly maintenance case. As set forth in Advertisers' First Amended Complaint ("FAC") and in other recent filings by Advertisers, *see, e.g.,* Dkt. 501 & 512, Facebook's ad business dominates a distinct submarket of online advertising, and a powerful data targeting barrier to entry has emerged around that business, allowing the company to charge a significant price premium for its AI-personalized "social advertising," FAC ¶¶ 766-813. Indeed, Facebook has been able to—and has in fact—significantly raised prices nearly every year since it began selling ads, without ceding substantial market share to would-be rivals like Snapchat, Twitter, LinkedIn, Pinterest, and Foursquare.

      This case stems from a pattern of anticompetitive behavior beginning in 2016, after Facebook's social advertising monopoly was threatened by a paucity of "signals"—data used as inputs to targeting and ranking models—as well as a new social advertising entrant, Snapchat. FAC ¶¶ 316-33; PALM-014640328. In order to obtain signals and maintain Facebook's DTBE against new entrants like Snapchat, Facebook undertook an aggressive campaign of exclusionary conduct.

      As relevant here, between late 2017 and early 2018, after Facebook's direct competition with Netflix through its newly launched video streaming product Watch threatened Facebook's special relationship with one of its most important advertisers and signal sources, Facebook agreed—apparently at the apex level—to withdraw from Netflix's streaming market in exchange for Netflix's agreement to continue to purchase large quantities of Facebook advertising and

provide Facebook with continued and expanded access to its proprietary signals. *See* FAC ¶¶ 473-536;

[redacted]

  Advertisers will prove at trial that the signals data that Facebook obtained from Netflix in conjunction with Facebook's agreement to withdraw from direct video streaming competition with Netflix meaningfully contributed to the barrier to entry protecting Facebook's advertising business, and thereby to monopolistic price inflation paid by Facebook advertisers, during the relevant period.

  In short, between 2017 and 2018, as part of a scheme to maintain its monopoly in the United States Social Advertising Market, Facebook entered into an anticompetitive agreement with Netflix that materially contributed to its Social Advertising monopoly. ***And Facebook's monopoly maintenance scheme succeeded***.

[redacted]

Advertiser Plaintiffs and the ad purchaser classes they seek to represent paid these inflated prices—prices inflated by, among other things, Facebook's agreement with Netflix, which fortified the barrier to entry surrounding Facebook's ad business.

  The above is pleaded with particularity in Advertisers' FAC. On May 5, 2022, Advertisers served on Netflix a subpoena with sixteen document requests. Ex. A. Closely hewing to the details of Advertisers' FAC allegations—themselves carefully sourced from and indeed citing to specific Facebook-produced documents—Advertisers' subpoena to Netflix seeks (i) documents regarding Netflix's communications with Facebook relating to Facebook Watch (Request Nos. 1-2); (ii) documents regarding Netflix's communications with Facebook regarding data sharing (Request Nos. 3-4); (iii) documents regarding Netflix's communications with Facebook regarding Facebook's APIs (Request Nos. 5-6); (iv) documents regarding Netflix's agreements with Facebook regarding Facebook's Developer Platform, APIs, advertising, advertising measurement, data access/exchange, analytics, content, or video streaming (Request Nos. 7-9); (v) documents regarding Netflix's communications with Facebook about Netflix's purchase of Facebook advertising (Request Nos. 10-11); (vi) documents regarding Netflix's communications with Facebook regarding Reed Hastings's role as a member of Facebook's board of directors (Request Nos. 12-13); (vii) documents regarding Reed Hastings's communications with Facebook related to competition in online video streaming, advertising on Facebook, data collection/exchange, or Netflix's business relationship/agreements with Facebook (Request Nos. 14-15); and (viii)

---

[1] Facebook's North American ad prices rose by a near-identical amount, 59%, on a cost-per-click (CPC) basis over this same time period. *Id.* (from $0.22 in 2016 to $0.35 in 2018).

documents produced by Netflix to regulators in connection with Facebook (Request No. 16). *See id.*

Advertisers' subpoena to Netflix focuses on documents pertaining to Facebook-facing issues relevant to Advertisers' monopolization claims, and expressly limits its reach to documents that could not be produced by Facebook. Thus, Request Nos. 2, 4, 6, 9, 11, 13, and 15 explicitly seek only "*internal communications* relating to any Communication between You and Facebook relating to" specified relevant subjects. Ex. A at 1-3 (emphasis added). And Request Nos. 1, 3, 5, 8, 10, and 12 seek documents relating to "Communication[s] between You and Facebook . . . *except for any Documents that were shared with or communicated with Facebook*" on specific relevant subjects. *Id.* (emphasis added).

Despite the obvious relevance and limited scope of Advertisers' subpoena, Netflix has spent the past calendar year playing games. In June 2022, Netflix objected to producing *any* documents due to a then-pending motion to dismiss. *See* Ex. B. Netflix stood on those objections for months, refusing to produce a single document to Advertisers even as Advertisers explained in letters and via Zoom Netflix's relevance to Advertisers' case and the specific types and categories Advertisers wished Netflix to prioritize in order to minimize any unnecessary burden. In November 2022—six months after being served with Advertisers' subpoena—Netflix produced its first fifty-four documents (purportedly) in response to Advertisers' subpoena. These comprised, with almost no exceptions, ███████████████████████████████████████████████. No other documents were in Netflix's production. Essentially, Netflix's initial production was completely unresponsive—and indisputably irrelevant. *Netflix has never made another one.*

When Advertisers raised this to Netflix, they were met either with surprise (even though Advertisers had previously explained exactly what was sought by their subpoena—to the extent there could ever have been any lack of clarity), indifference, or an exhortation to wait and see, as Facebook had also subpoenaed Netflix. However, by the start of fact depositions, it had become clear that Netflix was simply choosing not to produce any meaningful documents in this case.[2] Advertisers and Netflix again met and conferred, and reached impasse. Advertisers submit, based on the straightforward relevance and proportionality of its document requests, and the indisputable fact that Netflix has in practice simply refused to perform any reasonable search for, review, and production of documents in response to Advertiser' as-written subpoena, that Netflix should be compelled to do so, and request an order to that effect here.

---

[2] By Advertisers' count, Netflix produced 17 documents in response to Facebook's subpoena—all irrelevant to Advertisers' case.

**FILED UNDER SEAL**

Respectfully submitted,

By: *Brian J. Dunne*
*On Behalf of Interim Co-Lead Counsel*
*for the Advertiser Classes*

| | |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
| */s/ Amanda F. Lawrence* | */s/ Yavar Bathaee* |
| Amanda F. Lawrence (*pro hac vice*) | Yavar Bathaee (CA 282388) |
| alawrence@scott-scott.com | yavar@bathaeedunne.com |
| Patrick J. McGahan (*pro hac vice*) | Andrew C. Wolinsky (CA 345965) |
| pmcgahan@scott-scott.com | awolinsky@bathaeedunne.com |
| Michael P. Srodoski (*pro hac vice*) | Adam Ernette (*pro hac vice*) |
| msrodoski@scott-scott.com | aernette@bathaeedunne.com |
| 156 South Main Street, P.O. Box 192 | Priscilla Ghita (*pro hac vice*) |
| Colchester, CT 06415 | pghita@bathaeedunne.com |
| Tel.: (860) 537-5537 | Chang Hahn (*pro hac vice*) |
| | chahn@bathaeedunne.com |
| Patrick J. Coughlin (CA 111070) | 445 Park Avenue, 9th Floor |
| pcoughlin@scott-scott.com | New York, NY 10022 |
| Carmen A. Medici (CA 248417) | (332) 322-8835 |
| cmedici@scott-scott.com | |
| Hal D. Cunningham (CA 243048) | Brian J. Dunne (CA 275689) |
| hcunningham@scott-scott.com | bdunne@bathaeedunne.com |
| Daniel J. Brockwell (CA 335983) | Edward M. Grauman (*pro hac vice*) |
| dbrockwell@scott-scott.com | egrauman@bathaeedunne.com |
| 600 W. Broadway, Suite 3300 | Andrew M. Williamson (CA 344695) |
| San Diego, CA 92101 | awilliamson@bathaeedunne.com |
| Tel.: (619) 233-4565 | 901 S. MoPac Expressway |
| | Barton Oaks Plaza I, Suite 300 |
| | Austin, TX 78746 |
| Patrick J. Rodriguez (*pro hac vice*) | (213) 462-2772 |
| prodriguez@scott-scott.com | |
| 230 Park Avenue, 17th Floor | Allison Watson Cross (CA 328596) |
| New York, NY 10169 | across@bathaeedunne.com |
| Tel.: (212) 223-6444 | 3420 Bristol St., Ste 600 |
| | Costa Mesa, CA 92626-7133 |
| | |
| | *Interim Co-Lead Counsel for the Advertiser Classes* |

**FILED UNDER SEAL**

# **FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 17, 2023          By:   */s/ Brian J. Dunne*
                                    Brian J. Dunne