**WILMERHALE**

April 17, 2023

**VIA ECF**

Sonal N. Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Named Plaintiff Mark Young refuses to produce certain documents responsive to Meta's Requests for Production Nos. 33-41, which seek documents concerning Mr. Young's advertising on Meta's advertising competitors. Mr. Young does not credibly dispute the relevance of these materials: he has already produced these documents for one of his businesses, Dinkum Hair. But he refuses to produce materials related to his book publishing business, Dolyttle & Seamore, where he ███████████████████████████████████████████████████████████████ Advertisers refuse to supplement their production to correct this obvious deficiency, and decline to even explain whether any searches were conducted to find such documents. The parties met and conferred on March 16 and have reached an impasse.

**I.   Mr. Young Responded to the Requests as "Mark Young, d/b/a Dinkum Hair" but Seeks Damages Based on Advertising Purchased for Other Companies**

For over two years, Mr. Young proceeded as a plaintiff in this action as "Mark Young d/b/a Dinkum Hair." In each of the three complaints he filed in this action he alleged that he brought claims solely in relation to ads he purchased "d/b/a Dinkum Hair"—for Dinkum Hair, his hair salon. Amended Advertiser Compl., Dkt. 237 ¶ 26; Original Advertiser Compl., Dkt. 86 ¶ 26; *Affilious Inc. v. Facebook, Inc.*, 20-cv-09217-EMC, Dkt. 1 ¶ 23. Consistent with his pleadings, Advertisers agreed to produce documents responsive to the Requests solely relating to Dinkum Hair, asserting a general objection that "[i]n these Responses, as to Mark Young, 'You' means Mark Young d/b/a Dinkum Hair." Sept. 24, 2021 Resp. & Objs. at 3-4 (the "<u>General Objection</u>").

Mr. Young reversed course during his February 13, 2023 deposition, when he testified that ███████████████████████████████████████████████████████████████ This sudden shift likely is connected to ███████████████████████████████████████ which would render him ineligible to serve as a class plaintiff (Mr. Young would join Pastor Jeon, who likewise did not purchase ads during the class period).

1

After Mr. Young testified ▮▮▮▮▮ Meta asked Advertisers to produce Mr. Young's documents responsive to the Requests as they relate to those two businesses. In response, Advertisers stated that they "have never limited their response to any Meta discovery request regarding Mr. Young, including the search for and production of Mr. Young's documents, to documents or information associated with Dinkum Hair," and pointed to their production of documents showing Dolyttle & Seamore and Cinekinetic's ads *with Meta*. Email from B. Dunne to O. Greene (Mar. 10, 2023).

While Advertisers may have produced Dolyttle & Seamore and Cinekinetic's ads with Meta–documents that Advertisers need to produce to attempt to advance their claims—that does not satisfy their obligation to produce documents concerning their advertising on other mediums, which are relevant to Meta's defenses. Mr. Young testified ▮▮▮▮▮ When Meta raised this deficiency with Advertisers, Advertisers merely repeated their statement that they have not limited their search and production to documents about Dinkum Hair but failed to explain why no such documents had been produced notwithstanding Mr. Young's confirmation under oath ▮▮▮▮▮ Advertisers also refused to answer Meta's questions during the meet-and-confer as to what searches were conducted (if any) to find such documents.

## II. Mr. Young Must Produce Responsive Documents Concerning Dolyttle & Seamore and Cinekinetic's Advertising on Non-Meta Mediums

Mr. Young and his fellow Advertiser Plaintiffs allege the existence of a purported "Social Advertising Market" and that "social advertising" is distinct from other advertising because it "allows advertisers to granularly target groups of users for ads by their attributes." Dkt. 237 ¶¶ 766, 790. To test these allegations, Meta propounded the Requests, which, among other things, seek documents sufficient to identify all advertisements Mr. Young placed or purchased, all advertising mediums Mr. Young used or considered, and all documents concerning any targeted advertising that Mr. Young utilized or considered. Such documents are reasonably likely to help show that Meta competes for the sale of advertising in a market far broader than the alleged "Social Advertising Market," and that advertisers routinely use non-"social" ads to target groups of individuals based on their attributes, such as geography, demographics or other information. This is not in dispute, as Advertisers, and Mr. Young, have produced such documents for other plaintiffs and Mr. Young's other businesses.

Mr. Young testified that  Documents concerning Mr. Young's advertising on ▮▮▮▮▮ are responsive to Meta's

Requests, but Mr. Young has not produced any of them and Advertisers have refused to explain why.

Advertisers also allege that "social advertising" has a unique pricing model, which allegedly makes "social advertising" less expensive on a cost-per-click basis than search, print and television advertising, and that small businesses can use "social advertising" while search advertising would be too expensive. Dkt. 237 ¶¶ 791-96. In response to these allegations, Meta propounded the Requests, which, among other things, seek documents concerning the pricing of the advertisements that Mr. Young placed, and the return on his investment in advertising on Meta and on other advertising mediums. Such documents are reasonably likely to show that "social advertising" does not have unique pricing characteristics that render search and other advertising not suitable substitutes, and that Mr. Young – a small business owner – had reasonable alternatives to Meta advertising at comparable prices. Mr. Young should be expected to have documents concerning the relative prices he paid for Meta and non-Meta advertising and the return on his investment in different advertising mediums. He testified tha[REDACTED] Yet, he has not produced any documents concerning [REDACTED] the prices he paid for those ads, or his return on advertising investment, and Advertisers have again refused to explain why.

Mr. Young's deposition testimony [REDACTED] However, to the extent Mr. Young did so, any documents about such advertising are responsive to the Requests and must be produced as well.

\* \* \*

For these reasons, Meta respectfully requests the Court order Mr. Young to produce all documents responsive to the Requests as they relate to Dolyttle & Seamore and Cinekinetic's advertising on mediums other than Meta.

Respectfully submitted,

By: /s/ Sonal N. Mehta

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*