April 20, 2023

**WilmerHale**
**Sonal Mehta**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

  After sitting on their hands for nearly two years, Plaintiffs come to this Court with little time left for merits discovery demanding that Meta re-review privilege logs from a years' old FTC investigation—a request that they acknowledge would, if granted, throw the Court's carefully considered (and already extended) case schedule into complete disarray. More than a third of those documents have already been re-reviewed pursuant to an agreement with the FTC in the FTC litigation, and any downgrades from that review have already been reproduced to Plaintiffs here. Plaintiffs are entitled to nothing more. The Court should deny their request.

  The privilege logs Plaintiffs claim need urgent re-review came from a 2019-2020 FTC investigation that "center[ed] on Facebook's policies limiting developers' access to its 'Platform' and on its acquisitions." Dkt. 330 at 12 n.5. As Plaintiffs themselves have told this Court, it did not focus on "Facebook's data-collection and -use practices," the alleged "data sharing agreements with eBay, Netflix and Foursquare," the alleged "agreement with Google" or the alleged "ongoing back-end integration of user data and artificial intelligence/machine learning models and systems" that are the focus of Plaintiffs' respective complaints. Dkt. 330 at 12 n.5.

  Based on the initial scope of the allegations in this case (which mirrored those in the FTC investigation and current FTC litigation at the time but have since narrowed through Rule 12 motions and Plaintiffs' own jettisoning of their failed theories), Judge Koh ordered Meta (over Meta's objection that this would sow disorganization that has, ultimately, proven prescient) to produce the "documents Facebook produced to the Federal Trade Commission." Dkt. 82. Meta complied nearly two years ago, in May 2021, by providing copies of the documents produced to the FTC during its investigation. It produced the associated privilege logs shortly thereafter.

  The FTC's re-production contained more than 12 million pages. Although Plaintiffs pretend that their discovery in this case was built around that production, the reality is otherwise. Ultimately, in response to Plaintiffs' demands for reams of additional information that they claimed are relevant to their current theories, the parties negotiated *Klein*-specific discovery involving 78 custodians, hundreds of detailed search strings, and review of more than 2.5 million documents. As a result, Meta has produced an additional 4.2 million pages in this case.

  Now, rather than litigate using documents that they sought *in this case*, that actually relate to the issues at stake *in this case*, Plaintiffs ask to upend the case schedule so that they can re-litigate years-old privilege calls made by a different review team, in a different proceeding that—

as Plaintiffs have repeatedly argued—only partially overlaps with the issues before the Court.

Plaintiffs have no legitimate basis to demand re-review of hundreds of thousands of privilege calls from the FTC investigation. Neither Plaintiffs' original request nor Judge Koh's order contemplated an ongoing obligation to produce materials beyond what Meta produced to the FTC during its investigation. To the contrary, when seeking the production, Plaintiffs noted it would "requir[e] little more than making a copy of the productions previously made." Dkt. 78 at 16. Meta satisfied that obligation in May 2021.[1]

Nor have Plaintiffs provided any explanation why the burdensome re-review they demand is necessary or appropriate now, with less than three months of fact discovery to go, and when they delayed for so long to raise this issue. Meta provided the FTC investigation logs to Plaintiffs in *July 2021*. After Meta responded to Plaintiffs' initial questions concerning the logs, see M. Jennings Ltr. to R. Peterson (Aug. 23, 2021), Plaintiffs went dark. Meta proceeded to negotiate the scope of its (massive) document collection efforts for this case (which themselves set the foundation for the schedule the parties jointly proposed to the Court and the Court adopted) on the understanding that Plaintiffs' concerns with the logs from the FTC investigation, however unfounded, were resolved. The Court should not now upend those settled expectations.

And even if Plaintiffs did have some legitimate basis to demand re-review of the documents appearing on privilege logs from a separate investigation (they do not), they have not shown that they are entitled to *more* re-review than has already occurred. In the context of the parallel FTC litigation, Meta has already re-reviewed more than 150,000 documents from those logs (corresponding to approximately 1/3 of the log entries), and Plaintiffs already have the results of that re-review. The agreed-upon scope of the re-review included, among other categories, all documents (based on a reasonable search) associated with certain executives – including Mr. Zuckerberg, Ms. Sandberg, Mr. Olivan, Mr. Schultz, Mr. Acton, and members of Meta's Board. Plaintiffs have not explained why anything more is necessary, beyond a vague suggestion that they might be missing out on some scrap of paper with some tangential relationship to their claims. But the volume of material produced following this review shows that is vanishingly unlikely. Even for Mr. Olivan – whose documents appearing on the FTC investigation log were re-reviewed – the documents produced following re-review represented *only 1.3%* of the total documents involving him produced in this case.[2] Plaintiffs' two cherry-picked exemplar documents fall similarly short. Meta produced a more-inclusive version of the first document, a June 2016 email thread between Javier Olivan and 15 other Meta employees, PALM-01680253, *nearly two years ago*. *See* PALM-009293278. As for the second—a June 2016 email discussing the use of analytics to monitor the

---

[1] Though not contemplated by Plaintiffs or Judge Koh, Meta has, as a courtesy, provided Plaintiffs with documents initially withheld or redacted in the FTC investigation that it has since determined are not privileged. Meta made the first such production on October 26, 2022, and has made similar productions on a rolling basis since then. Apparently no good deed goes unpunished.

[2] The percentages were even lower for many of the other deponents named in Plaintiffs' letter brief (less than .5% for each of Mr. Grossnickle, Mr. Patel, Mr. Fernandes, and Mr. Wehner) and were similarly low for the others (less than 2% for each of Mr. Rose and Mr. Rosen, and approximately 2.6% for Mr. Parikh).

2

growth of Snapchat and other competitors—a cursory search reveals that Meta has produced other email threads from June 2016 regarding the use of analytics to monitor the very same competitors. *E.g.,* PALM-003910259. And in all events, if Plaintiffs' concern is that they cannot prove their case with the documents they already have—more than 12 million pages from the FTC investigation and 4.2 million pages from their own 100+ search strings and 78 custodians—it is time for Plaintiffs to face the reality that their problems will not be solved by whatever document they may find at the margins of the production from an allegedly tangentially-related investigation.

Finally, indignant of this Court's imposition of reasonable time limits with respect to the depositions of four of Meta's most senior executives (Dkt. 477), Plaintiffs cite documents concerning those executives' purported involvement in a supposed scheme by Meta to deceptively obtain data through its Onavo app and use that data to cripple Meta's would-be "social advertising" rival, Snap. Setting aside the issues with the Plaintiffs' conspiracy theory and their plain misrepresentation of Meta's statements to this Court,[3] not one of these documents cited even suggests the executives' unique and non-repetitive involvement in this so-called scheme. *See* PALM-014640328 (11-page, single-spaced email from Sheryl Sandberg containing a single sentence concerning Snapchat); PALM-009631966 (chat between Chief Marketing Officer & VP Analytics, who Plaintiffs recently deposed, and Meta's former VP of Business Platform Partnerships); PALM-010629831 & PALM-010629833 (email and presentation sent amongst Meta's Chief Information Security Officer, Guy Rosen, and Meta's current COO, Javier Olivan—both of whom Plaintiffs recently deposed—and others). In any case, to the extent these documents are really central to Plaintiffs' case (which may say more about their case than about the documents themselves), Plaintiffs have them—in addition to thousands of other documents and numerous public statements concerning Meta's competition with and analysis of Snap—in advance of the depositions of Mr. Cox, Ms. Sandberg, and Mr. Zuckerberg.

Plaintiffs' attempt to manufacture a discovery crisis (whether to extend the case schedule or gain some perceived tactical advantage by casting aspersions on Meta) should be denied.[4]

---

[3] Plaintiffs claim that Meta represented to the Court that Meta's executives had nothing to do with Onavo data. Not so. In requesting reasonable deposition limits, Meta explained that Plaintiffs have deposed or will depose numerous Meta witnesses, including other C-suite executives, that have knowledge of the collection and use of Onavo data, Dkt. 476 at 3, such that the individuals in question did not have "unique, non-repetitive, firsthand knowledge" of relevant facts. That statement was, and remains, accurate.

[4] Plaintiffs also ask the Court to order Meta to tell them the date on which Meta decided that each of the formerly privileged documents it produced were not privileged. It is not clear why plaintiffs are seeking this relief; Meta already told them that it completed the re-review in the *FTC* litigation in early March. To the extent their complaint is that Meta should have rolled productions to them as the review continued, Meta did exactly that – Meta made interim productions of downgrades on February 22 and February 24, 2023.

Respectfully submitted,

By: */s/  Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*