| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Kevin Y. Teruya (Bar No. 235916)<br>　kevinteruya@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>(213) 443-3000<br><br>**HAGENS BERMAN SOBOL SHAPIRO LLP**<br>Shana E. Scarlett (Bar No. 217895)<br>　shanas@hbsslaw.com<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA 94710<br>(510) 725-3000<br><br>*Interim Co-Lead Consumer Class Counsel*<br><br>**BATHAEE DUNNE LLP**<br>Yavar Bathaee (Bar No. 282388)<br>　yavar@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>(332) 322-8835<br><br>**SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>Amanda F. Lawrence (*pro hac vice*)<br>　alawrence@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>(860) 537-5537<br><br>*Interim Co-Lead Advertiser Class Counsel*<br><br>[Additional counsel listed on signature page] | **WILMER CUTLER PICKERING HALE AND DORR LLP**<br>SONAL N. MEHTA (SBN 222086)<br>Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000<br>Facsimile: (650) 858-6100<br><br>DAVID Z. GRINGER (*pro hac vice*)<br>David.Gringer@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888<br><br>ARI HOLTZBLATT (*pro hac vice*)<br>Ari.Holtzblatt@wilmerhale.com<br>MOLLY M. JENNINGS (*pro hac vice*)<br>Molly.Jennings@wilmerhale.com<br>1875 Pennsylvania Ave NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br><br>*Attorneys for Defendant Meta Platforms, Inc.*<br><br>[Additional counsel listed on signature page] |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>META PLATFORMS, INC.,<br><br>　　　　　Defendant.<br><br>This Document Relates To: All Actions | Consolidated Case No. 3:20-cv-08570-JD<br><br>**ELEVENTH JOINT CASE MANAGEMENT STATEMENT**<br><br>The Hon. James Donato<br><br>Hearing Date: April 27, 2023 at 10:00 a.m. |

# ELEVENTH JOINT CASE MANAGEMENT STATEMENT

In advance of the April 27, 2023 Status Conference, counsel for Consumer Plaintiffs ("Consumers" or "Users"), Advertiser Plaintiffs ("Advertisers"), and defendant Meta Platforms, Inc. ("Meta" or "Facebook") respectfully submit this Eleventh Joint Case Management Statement. This statement summarizes for the Court open items that the parties either jointly or individually contend are ripe for the Court's consideration[1] and provides updates to the Court as to material developments on pertinent matters since the parties' prior Case Management Statement, dated January 12, 2023.

## I.    Pending Motions

### A.    Advertisers' Use of Protected Materials During Depositions

On April 3, 2023, Meta filed a letter brief regarding Advertisers' use of certain Meta documents during depositions of current and former Meta employees. Dkt. No. 485.

#### 1.    Meta's Statement

Unfortunately, after Meta filed its letter brief, Advertisers' violations of the Protective Order during depositions have only worsened. As just one particularly egregious example demonstrates: during last week's deposition of Brian Acton—the co-founder of WhatsApp and the current interim CEO of a direct competitor to Meta, Signal—Advertisers showed Mr. Acton multiple internal Meta emails designated either Confidential or Highly Confidential that bore no indication that Mr. Acton had drafted, seen, received, or otherwise previously had access to them. When asked to articulate their good-faith basis for believing that Mr. Acton "received or had lawful access to the document[s]," Advertisers claimed that Mr. Acton "had legal access" to emails he was not on, Acton Rough Tr. at 100:17-18—even though Mr. Acton had just testified under oath that, when he was a Facebook employee after the WhatsApp acquisition, he "didn't have the authorization to go look at people's email," Acton Rough Tr. at 75:16-17.

Advertisers have shown no inclination to heed the Court's prior orders, or even to work with Meta on commonsense accommodations that might prevent them from showing Confidential and

---

[1] Per the Court's guidance at the August 11, 2022 hearing, the parties have narrowed this statement to the issues that the parties either jointly or individually contend are ripe for the Court's consideration. Aug. 11, 2022 Hrg. Tr. at 46:6–10.

Highly Confidential information to executives at Meta's direct competitors. Meta accordingly reiterates its request for Court intervention. Dkt. 485. The matter is ripe for decision.

### B. Plaintiffs' Letter Brief Regarding Re-Review of Meta's FTC Investigational Privilege Logs

On April 4, 2023, Plaintiffs filed a letter brief seeking an order requiring Meta to provide further clarification regarding the circumstances surrounding Meta's recent production in this case of certain documents it previously claimed were privileged and included on its FTC investigational log (which Meta also produced in this case), to engage in a re-review of the remaining entries on that log, and other related relief. Dkt. No. 486. Pursuant to the Court's order, Meta responded to Plaintiffs' motion on April 20, 2023. Dkt. Nos. 507, 531. The Court has indicated it will take up the parties' dispute at the upcoming April 27, 2023 status conference. Dkt. No. 507.

### C. Netflix's Request for A Protective Order Regarding Advertisers' Notice of Deposition of Mr. Wilmot Reed Hastings

On April 12, 2023, non-parties Netflix, Inc. and Wilmot Reed Hastings filed a letter brief seeking a protective order quashing Advertisers' Rule 30(b)(1) notice of Mr. Hastings' deposition. Dkt. No. 505.

### D. Advertisers' Letter Brief Regarding Meta's 30(b)(6) Designee

On April 13, 2023, Advertisers filed a letter brief seeking an order requiring Meta to prepare another 30(b)(6) designee on Advertisers' noticed deposition topic concerning Meta's AI/ML systems. Dkt. No. 510.

### E. Advertisers' Motions to Compel Document Productions from Reed Hastings and Netflix, Inc.

On April 14, 2023, and April 17, 2023, Advertisers filed letter briefs seeking to compel non-parties Reed Hastings—the founder and ex-CEO of Netflix, Inc. and a longtime member of Meta's board of directors—and Netflix, Inc., respectively, to produce documents in response to Advertisers' document subpoenas. Dkt. Nos. 512, 515.

### F. Documents of Advertiser Plaintiff Mark Young

On April 17, 2023, Meta moved to compel Advertiser Plaintiff Mark Young to produce all

documents responsive to certain Requests for Production as they relate to his purchase of advertisements on platforms other than Meta related to his business selling joke books. Mr. Young is claiming damages for his purchases on behalf of those businesses but has not provided any documents related to purchases of advertising on behalf of those businesses that he made from other sources. Dkt. No. 525.

### G. Plaintiffs' Letter Brief Regarding Meta's Privilege Logs Produced in This Case

On April 18, 2023, Plaintiffs filed a letter brief arguing that Meta's privilege logs in this case are inadequate. Dkt. No. 529.

## II. Update Regarding Discovery Propounded to Date[2]

### A. Plaintiffs' Statement

Since the parties' prior January 19, 2023 status conference with the Court, depositions have commenced in earnest and are currently underway. To date, Plaintiffs have deposed 17 current and former Meta employees, Facebook has deposed several of the named Plaintiffs, and each side has deposed 7 non-parties and related non-party witnesses. A number of additional depositions have been scheduled, more depositions have been or will soon be noticed, and Plaintiffs are working diligently to schedule and complete the remaining depositions in the next two months. Meta has noticed more than 30 third-party depositions, and those depositions are ongoing.

Scheduling and conducting depositions with Meta have not been without their challenges. Plaintiffs recently withdrew their deposition notice for one foreign Meta witness, Mr. Nick Clegg, after Meta demanded that Plaintiffs begin their questioning at 1:00 a.m. PT. Meta refused to either start the remote, four-hour deposition at a more reasonable time (6:00 a.m. Pacific Time), or to re-schedule to another date when Mr. Clegg could begin sitting at a more reasonable time (and that would still end for Mr. Clegg in the afternoon, his time). Meta's refusal came after Plaintiffs had already accommodated Mr. Clegg's own request to re-schedule his previously-confirmed deposition

---

[2] For conciseness, the parties focus this section of the Joint Case Management Statement on discovery since January 12, 2023, the date of the parties' last Joint Case Management Statement. The parties' prior Joint Case Management Statements contain similar summaries of discovery up to the dates of those statements' respective filings.

date. Though Plaintiffs have sought to work with Meta in good faith to negotiate deposition start times that fairly and reasonably accommodate the locations of both the witness and counsel, Meta continues to insist on similar deposition start times for other foreign witnesses.

**Consumers' Further Statement:** Consumers on April 13, 2023, issued their Second Set of Interrogatories to Facebook. These interrogatories seek information regarding Facebook's response(s) to competitive threat(s), as well as regarding Facebook's identification, review, and analysis of its own data collection and use practices and commitments. Facebook's responses and objections are due on May 15, 2023.

Multiple of Consumers' requests for certain documents and structured data to Facebook also remain outstanding. Consumers' December 2022 Fifth Set of Requests for Production, for example, seek structured data showing information that Facebook has collected, used, shared, and monetized from an anonymized sample of Consumer Class members, as well as data regarding Facebook's user engagement metrics, number of ads served, total revenues, and average revenue per user. In February 2023, Consumers requested that Facebook query its "MINT Portal" for data that Facebook itself maintains on its actual or potential competitors.

Contrary to Facebook's assertions, Consumers did not "sit" on their structured data requests. Consumers served their Fifth Set of RFPs in December 2022. After receiving Facebook's responses and objections, Consumers sought to meet-and-confer with Facebook, Facebook did not agree to do so until February 15, 2023, and then Facebook did not provide its promised proposal until one month later, on March 17. As to the MINT Portal, a Facebook employee in February 2023 first testified regarding it, the data it contains, and how it works. Consumers that month then followed-up with Facebook and requested that Facebook query the MINT Portal in the same manner that Facebook's own employee testified is possible and straightforward. Facebook then waited one month to respond to Consumers' MINT Portal request. After receiving Facebook's proposals regarding the MINT Portal and Consumers' Fifth Set of RFPs, Consumers reviewed them and investigated their contents based on Facebook's document productions to date , ultimately making counter-proposals.

While Facebook indicates it "expects to respond" to Consumers "in the near term" regarding the Fifth Set of RFPs and the MINT Portal, Facebook has not done so. Consequently, Consumers

have not yet received the data they requested months ago. As a stop-gap measure—and to ensure that Consumers' expert team receives at least some of the data necessary to prepare Consumers' case—Consumers proposed that Facebook simply re-produce to Consumers the same structured data that Facebook has already produced to the FTC in its pending antitrust case against Facebook. To the extent there is certain structured data Facebook produced to the FTC that Facebook believes is not relevant here, Consumers offered to forego it if Facebook identified the specific data Facebook refused to produce, and if the data is genuinely not relevant to Consumers' claims. Facebook's re-production of the FTC data would impose no burden—Facebook has already queried, compiled, and produced the data to the FTC—and re-production of it may also help move along more quickly the parties' negotiations as to Consumers' requests.

Given the impending close of fact discovery on June 23, 2023, and so that Consumers' expert team can receive the requested data in time to make use of it for opening class certification reports which are due on July 7, 2023, it is imperative that Facebook begin producing the requested data. Consumers therefore request that the Court order Facebook to: (1) produce by May 5, 2023 (one week after the status conference) the structured data that Facebook has already produced to the FTC; and (2) produce by May 12, 2023 (two weeks after the status conference) the structured data Consumers requested from the MINT Portal and in Consumers' Fifth Set of RFPs.

To the extent any additional outstanding disputes remain between Consumers and Facebook as to requested discovery, Consumers will work with Facebook to resolve them in good faith. If Consumers are unable to resolve any outstanding disputes, Consumers will raise those disputes with the Court so that the Court can resolve them prior to the close of fact discovery.

      **B.**     **Meta's Statement**

**Discovery Propounded by Meta**. On February 22, 2023, Meta served its Fourth Set of Interrogatories on Users. On March 24, 2023, Users served their responses and objections.

**Requests for Production**. Meta has substantially completed its production of documents, having produced over 3.9 million documents to date. Limited document productions are ongoing.

**Meta's Response to Consumers' Further Statement**. User Plaintiffs' "Further Statement" on structured data and other documents misleadingly implies that Meta has been dilatory in its

document productions. Not so. User Plaintiffs served their Fifth Set of Requests for Production more than two years into the case (on December 23, 2022), which asked for, among other things, complicated structured data from various tables in Meta's database. Though this exceedingly overbroad request came just six months before the close of fact discovery, on the eve of a major holiday, and required significant data engineering resources to complete, Meta timely served responses and objections on January 23, 2023. Meta and User Plaintiffs met and conferred to narrow the requests on February 15, 2023, after which Meta worked diligently to prepare a robust proposal, which it sent to User Plaintiffs on March 17, 2023. User Plaintiffs proceeded to sit on Meta's letter until April 11—almost a month—before responding and accepting Meta's proposal in part and noting that "we are close to agreement" on other parts. To date, User Plaintiffs have accepted Meta's proposal with respect to their Request No. 54, and Meta is currently preparing this data for production as soon as practicable. Meta expects to respond to User Plaintiffs' letter regarding the outstanding structured data requests in the near term, and to begin producing the requested data as soon as an agreement is reached with User Plaintiffs.

In light of the parties' ongoing negotiations, User Plaintiffs' demand that Meta produce the structured data that the parties agree falls within the scope of User Plaintiffs' Fifth Set of RFPs by May 12 is simply not practicable. Meta continues to engage with User Plaintiffs in good faith and will produce the agreed-upon set of structured data prior to the close of fact discovery.

User Plaintiffs' request for all structured data already produced in the FTC litigation is brand new and came to Meta via email after business hours on April 19 (yesterday). The JCMS is not an opportunity to gain leverage in discovery disputes. Meta has produced or will produce an enormous amount of data to the FTC—estimated between 350-500 GB—and is still assessing Plaintiffs' proposal. Meta expects to respond fully to Plaintiffs' late-breaking proposal in advance of the Case Management Conference scheduled for April 27.

User Plaintiffs also requested data from the MINT Portal, a data repository. On March 17, Meta offered to produce underlying data for the MINT Portal, which contains third-party data. Again, User Plaintiffs waited almost a month to respond (until April 11) only to reject Meta's proposal to produce the relevant data and to demand that Meta produce not only the data offered but

also create numerous custom reports from the MINT Portal.  Meta is evaluating the feasibility of that request—particularly in the context of Users' additional late-breaking demand that Meta re-produce to them the hundreds of gigabytes of data produced in the FTC litigation, and expects to respond in the near term.  Again, in light of the parties' ongoing negotiations, setting a May 12 deadline is infeasible.

In short, despite User Plaintiffs' delay in seeking this information, Meta continues to negotiate with User Plaintiffs actively and productively and does not believe these issues are ripe for Court intervention.

**Depositions**.  Depositions are ongoing.  Meta has conducted two depositions of named plaintiffs and five nonparty depositions.  Plaintiffs have conducted 17 depositions of current or former Meta employees, one 30(b)(6) deposition, and two nonparty depositions.

Plaintiffs' allegations about purported "challenges" in deposition scheduling are entirely unfounded and of Plaintiffs' own making.  Indeed, just over a month ago, Plaintiffs demanded seven hours of deposition time for all Meta apex executive witnesses—including for Nick Clegg and Chris Cox.  Meta was forced to seek relief from the Court, and the Court entered a protective order limiting the depositions to four hours.  See Dkts. 476 & 477.  Just weeks after the Court's decision, Plaintiffs proceeded to use only three and a quarter hours for Mr. Cox's deposition and canceled Mr. Clegg's deposition altogether *less than three days* before it was scheduled to begin in London (after Meta's counsel had already flown from San Francisco to the UK for the deposition) because Mr. Clegg needed to begin the deposition at 9am London time due to a preexisting obligation precisely as the Deposition Protocol expressly contemplates.  Dkt. 174 at 11:1-2.  Instead of accommodating the witness's schedule and following the default rule that depositions will begin at 9am in the time zone of the deponent,[3] Plaintiffs made the decision to cancel it—a decision they claimed, the next day,

---

[3] The Stipulated Deposition Protocol requires Plaintiffs to "make *reasonable efforts* to schedule depositions to begin at *9:00 a.m. (time zone of the deponent during deposition)*."  Dkt. 174 at 11:1-2 (emphasis added).  Plaintiffs made no such efforts.  Indeed, Meta informed Plaintiffs that Mr. Clegg was located in the United Kingdom *over two months prior* to his scheduled deposition.  Given the number of depositions remaining in this case, Meta remains hopeful that—despite the events surrounding Mr. Clegg's deposition—Plaintiffs will abide by their prior agreement to use

1  was because "Plaintiffs [were] prioritizing depositions as they gain more information."  Apr. 11,
2  2023 Email from A. Wolfson to Meta.  Meta offered to Plaintiffs' attorneys the option of taking the
3  deposition remotely or flying to the UK to proceed on the deponent's time zone (as Meta's attorney,
4  also on Pacific Standard Time, had already done), but instead Plaintiffs chose to cancel.

### III.   Additional Requests

#### A.   Authenticity and Business Records Stipulation

The parties are continuing to discuss proposed draft stipulations addressing the authenticity of documents and the application of the business-records exception to the hearsay rule.  The parties anticipate submitting joint stipulations to the Court soon for the Court's review and consideration.

#### B.   Documents Produced After Substantial Completion

##### 1.   Plaintiffs' Statement

Based on the understanding that Meta would substantially complete its document production by December 19, 2022, the parties in November 2022 agreed to a proposed case schedule, which the Court then entered.  Dkt. Nos. 376, 379.  In December 2022, Meta then certified it substantially completed its document production, with the exception of certain documents Meta indicated it intended to produce by January 13, 2023.  Dkt. No. 400. Based on these representations and Meta's insistence, Plaintiffs began scheduling depositions in January 2023 and taking them in early February.  Despite first committing to reach substantial completion in December 2022, Meta has since made more than 30 productions, consisting of more than 200,000 documents, totaling more than 2 million pages, as depositions are underway.  As examples, Meta produced nearly 84,000 documents on January 11; 34,000 documents on January 13; 25,000 documents on February 23; 33,000 documents on February 28; 28,000 documents on March 21; and 2,100 documents on April 12. Many documents have come on the eve or near-eve of depositions.  The most recent of these productions was yesterday.  While Meta references productions of its non-party correspondence and deposition transcripts and exhibits, these figures exclude those categories of documents.

Many of Meta's late productions feature boilerplate transmittal correspondence that do not

---

reasonable efforts to conduct depositions of Meta's witnesses beginning at 9am in the time zone of the witness.

indicate the substance of the documents being produced—they provide only a Bates range, and a generic description that the documents being produced are responsive to basically every set of document requests that Consumers and Advertisers have served. These descriptions often do not allow Plaintiffs to discern *what*, specifically and substantively, is being produced, to which Class's document requests the documents relate (since the same generic language referencing both Class's requests is repeated), and what remains to be produced.

Unfortunately, these late productions have contained thousands of documents produced to Plaintiffs either days before the document's custodian was due to be deposed, or after the custodian had already been deposed. Plaintiffs have been holding open depositions because of these late productions. And while Plaintiffs have worked diligently to ingest and review these documents as fast as possible, given the sheer volume of documents still being produced, Plaintiffs have growing concerns that Meta's actions have imperiled the fact discovery cutoff date.

Given the approaching June 23, 2023 fact discovery cut-off, and so that Plaintiffs can understand the status of Meta's document production given the pendency of depositions, Plaintiffs therefore respectfully request that the Court order Meta to explain by **May 5, 2023** (one week after the status conference): (1) what categories of documents are being reviewed or remain to be reviewed; (2) how many documents are being reviewed or remain to be reviewed; and (3) when Meta will complete its review and production of those remaining documents.

## 2. Meta's Statement

Meta has produced over 3.9 million responsive, non-privileged documents (totaling more than 17 million pages) in response to Plaintiffs' requests. Perhaps faced with the reality that, despite millions of documents, their market definitions and legal theories are tenuous and that Meta faces substantial competition for advertising dollars and user engagement, Plaintiffs now apparently seek to improperly lay the groundwork to delay the case by extending the close of fact discovery. In so doing, Plaintiffs make numerous misrepresentations. First, Plaintiffs disingenuously state that Meta has produced more than 200,000 documents since certifying substantial completion. More than half of these documents—nearly 130,000—were produced after the parties stipulated to (and the Court approved) an extension of the substantial completion deadline to January 13, 2023. *See* Dkt. Nos.

400, 403.  The vast majority of the remaining documents were either privilege downgrades from the FTC matter produced by Meta as a courtesy, Dkt. No. 531, or were the result of a vendor error which inadvertently excluded documents from Meta's review population that Meta disclosed to Plaintiffs on February 3, 2023—immediately after learning of the issue.  After learning of the error, Meta met its commitments, including completing production of all affected documents by February 28 and producing documents for the deponents whose depositions were scheduled for February or the first week of March no later than one week in advance of their depositions.  Plaintiffs never objected to Meta's proposed corrective action—indeed, they never even responded to Meta's email notifying them of the issue.[4]  If you remove the documents reproduced from other matters and the documents from the vendor error, only about two tenths of a percent of the overall volume of documents produced were produced after the substantial completion deadline of January 13, 2023.  Finally, Plaintiffs note that Meta made a production yesterday.  Meta produced fifteen documents in advance of a former Meta employee's deposition.  Meta prioritized reviewing these documents as a courtesy to Plaintiffs because of the upcoming deposition.

        Meta continues to make limited productions—as is standard in any complex litigation.  Meta has produced around 50,000 documents since February 28—the majority of which are documents that were downgraded from Meta's FTC investigational privilege logs, which Meta is producing despite no affirmative obligation to produce in this case at all).  Several hundred of the documents are deposition transcripts and exhibits of upcoming deponents to those depositions that Meta has been producing on the schedule set by the Court or non-party communications (that Meta, like Plaintiffs, is producing on a rolling basis as they occur).  The remaining balance are with limited exceptions privilege downgrades and documents Plaintiffs requested after the substantial completion deadline, like unredacted references to Meta's source code.  This is run-of-the-mill, standard procedure in a large, complex case, which is why the deadlines are for substantial completion, not final "completion."  Plaintiffs' suggestion that the Court should *order* Meta to

---

[4] The only deposition postponed in the case to date for failure to produce documents was one that *Meta* was forced to postpone from October 17, 2022 until February 13, 2023 because of *Plaintiffs'* failure to timely produce named Plaintiff Mark Young's documents until January 30, 2023.

explain what documents remain to be produced is an improper use of the Court's time, as Plaintiff has never once asked Meta any of these questions directly. The matter is not ripe for Court intervention, and Plaintiffs know this.

None of these recent productions have impacted depositions. Plaintiffs' contention that Meta produced documents on the "eve of depositions" willfully misses the point. Meta did produce documents in the days before certain depositions—*in response to Plaintiffs' specific requests that it do so*. For example, in accordance with the Stipulated Privilege Protocol, Plaintiff requested that Meta re-review over 100 documents on Meta's privilege logs before the deposition of a Meta employee, which Meta promptly reviewed and produced, just seven days after Plaintiffs made the request and well before the 14 days Meta was entitled to take under the parties' Stipulated Privilege Protocol. Dkt. No. 176. Plaintiffs have introduced an average of 26 exhibits per deposition, suggesting they have ample relevant documents.

### C. Request to Advance June 22, 2023 Status Conference to June 15

The Court previously set a status conference for June 22, 2023. Dkt. No. 449. Fact discovery is set to close on June 23, 2023. Dkt. No. 379. Given that fact discovery and depositions are ongoing, and so that that the Court can resolve any remaining discovery disputes sufficiently in advance of the June 23 discovery cut-off, the parties respectfully request that—subject to the Court's availability—the Court advance the status conference from June 22 to June 15, 2023.

### IV. Update Regarding Related Lawsuits

In *Federal Trade Commission v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.), fact discovery, including depositions, is underway and scheduled to close on May 22, 2023. Dkt. No. 103.

In *State of New York, et al v. Meta Platforms, Inc.*, No. 21-7078 (D.C. Cir.), oral argument on the States' appeal of the district court's dismissal order took place on September 19, 2022. Dkt. No. 1950973.

| | |
|---|---|
| DATED:  April 20, 2023 | Respectfully submitted, |
| By: */s/ Shana E. Scarlett* <br> **HAGENS BERMAN SOBOL SHAPIRO LLP** <br> Shana E. Scarlett (Bar No. 217895) <br>   shanas@hbsslaw.com <br> 715 Hearst Avenue, Suite 202 <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br><br> Steve W. Berman (*pro hac vice*) <br> steve@hbsslaw.com <br> 1301 Second Avenue, Suite 2000 <br> Seattle, WA 98101 <br> Telephone: (206) 623-7292 <br><br> **LOCKRIDGE GRINDAL NAUEN P.L.L.P.** <br> W. Joseph Bruckner (*pro hac vice*) <br>   wjbruckner@locklaw.com <br> Robert K. Shelquist (*pro hac vice*) <br>   rkshelquist@locklaw.com <br> Brian D. Clark (*pro hac vice*) <br>   bdclark@locklaw.com <br> Rebecca A. Peterson (Bar No. 241858) <br>   rapeterson@locklaw.com <br> Arielle S. Wagner (*pro hac vice*) <br>   aswagner@locklaw.com <br> Kyle J. Pozan (admitted *pro hac vice*) <br>   kjpozan@locklaw.com <br> Laura M. Matson (admitted *pro hac vice*) <br>   lmmatson@locklaw.com <br> 100 Washington Avenue South, Suite 2200 <br> Minneapolis, MN 55401 <br> Telephone: (612) 339-6900 | By: */s/ Kevin Y. Teruya* <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> Kevin Y. Teruya (Bar No. 235916) <br>   kevinteruya@quinnemanuel.com <br> Adam B. Wolfson (Bar No. 262125) <br>   adamwolfson@quinnemanuel.com <br> Claire D. Hausman (Bar No. 282091) <br>   clairehausman@quinnemanuel.com <br> Brantley I. Pepperman (Bar No. 322057) <br>   brantleypepperman@quinnemanuel.com <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, CA 90017-2543 <br> (213) 443-3000 <br><br> Michelle Schmit <br>   michelleschmit@quinnemanuel.com <br> 191 N. Wacker Drive, Suite 2700 <br> Chicago, IL 60606 <br> Telephone: (312) 705-7400 <br><br> Manisha M. Sheth (admitted *pro hac vice*) <br>   manishasheth@quinnemanuel.com <br> 51 Madison Avenue, 22nd Floor <br> New York, New York 10010 <br> (212) 849-7000 <br><br> *Interim Counsel for the Consumer Class* |

1  By: */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
2  Yavar Bathaee (Bar No. 282388)
   yavar@bathaeedunne.com
3  Andrew C. Wolinsky (*pro hac vice*)
   awolinsky@bathaeedunne.com
4  445 Park Avenue, 9th Floor
   New York, NY 10022
5  Telephone: (332) 322-8835

6  Brian J. Dunne (Bar No. 275689)
   bdunne@bathaeedunne.com
7  Edward M. Grauman (*pro hac vice*)
   egrauman@bathaeedunne.com
8  901 South MoPac Expressway
   Barton Oaks Plaza I, Suite 300
9  Austin, TX 78746
   Telephone: (512) 575-8848
10
   **AHDOOT & WOLFSON, PC**
11 Tina Wolfson (Bar No. 174806)
   twolfson@ahdootwolfson.com
12 Robert Ahdoot (Bar No. 172098)
   rahdoot@ahdootwolfson.com
13 Theodore W. Maya (Bar No. 223242)
   tmaya@ahdootwolfson.com
14 Henry Kelston (*pro hac vice*)
   hkelston@ahdootwolfson.com
15 2600 West Olive Avenue, Suite 500
   Burbank, CA 91505
16  Telephone: (310) 474-9111

By: */s/ Amanda F. Lawrence*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
   alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
   pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
   msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

Hal D. Cunningham (Bar No. 243048)
   hcunningham@scott-scott.com
Daniel J. Brockwell (Bar No. 335983)
   dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. Rodriguez (pro hac vice)
   prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
   kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
   acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500

*Interim Counsel for the Advertiser Class*

By: */s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
 Ross.Firsenbaum@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
 Michaela.Sewall@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION OF KEVIN Y. TERUYA**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: April 20, 2023     By */s/ Kevin Y. Teruya*
                                              Kevin Y. Teruya

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

By */s/ Kevin Y. Teruya*
Kevin Y. Teruya