WILMERHALE

May 25, 2023

**VIA ECF**

The Honorable James Donato
U.S. District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Sonal N. Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

Dear Judge Donato:

Plaintiffs' letter brief—filed without notice to Meta or any attempt to meet and confer[1]—asks the Court to reconsider its well-reasoned Order from just weeks ago. Indeed, at the April 27 conference, in response to Meta's motion seeking to enforce the Protective Order (Dkt. 485), the Court held that Plaintiffs must abide by the Protective Order and not disclose protected material to deponents "unless [Plaintiffs] have a good-faith basis . . . that the witness you want to show it to, who is not on the face of the document and otherwise has no connection to it on any obvious way, somehow may have seen it."[2] Yet Advertisers have continued to disclose protected information to deponents without a good-faith basis to do so.

For example, in the deposition of Sheryl Sandberg, which took place just days after the April 27 conference, Advertisers deliberately attempted to skirt the Court's ruling by reading verbatim from a Highly Confidential email that Ms. Sandberg was not on and was written by another Meta employee.[3] Ms. Sandberg even testified to not knowing the Meta employee who wrote it. Nonetheless, after establishing these facts, Advertisers read part of the email verbatim into the record as part of their questioning, while failing to articulate any good-faith basis that Ms. Sandberg had received or otherwise accessed the document. They went so far as to explain that the email was "between" two employees, including one that she had just testified she did not know. Advertisers used a similar maneuver twice more during the deposition, disclosing more protected material that Ms. Sandberg was not permitted to be shown.[4]

And just last week, Advertisers spent more than an hour of a three-hour deposition of Mark Zuckerberg asking him about documents he was not on, that he repeatedly testified he had never seen, and for which he was not involved in the underlying discussions or technical details. *Every* exhibit introduced by Advertisers disclosed material that he was not "author, addressee, recipient, custodian, or source" of, as required by the Protective Order. Dkt. 314 §§ 7.2(g), 7.3(f). Advertisers did not articulate a good-faith basis under the Protective Order for showing him the documents and never attempted to lay any foundation to show he had prior access to them. Instead, Mr. Zuckerberg had to continuously explain to Advertisers that he had "no particular knowledge" about what the writers of the emails meant,[5] and that it was "hard for [him] to exactly understand what

---

[1] Plaintiffs characterized the parties' dispute as "ongoing." Dkt. 559 at 1. But their letter brief seeks new relief that they have not raised with Meta. Meta promptly requested that they comply with this Court's standing orders by meeting and conferring with Meta. They refused.
[2] Apr. 27, 2023 Hr'g Tr. 10:8-11:2.
[3] May 2, 2023 Tr. 169:6-170:4.
[4] *See id.* 121:4-13; 171:1-171:22.
[5] May 16, 2023 Tr. 87:1-7.

[their] intent was" because he was not on and did not write the emails.[6] Similar exchanges recurred for another document—an entire email chain that Mr. Zuckerberg never received.[7] All told, Advertisers spent nearly all of their allocated deposition time discussing three documents, the use of each violating this Court's orders. Advertisers' only justification for this conduct is that they have a good-faith basis to believe that Mr. Zuckerberg, as CEO, "has and had lawful access (and access) to the Meta e-mails you've produced in this case."[8] But the Protective Order only allows material to be shown where a deponent was the "author, addressee, recipient, custodian, or source of the document," or Advertisers "believe in good faith previously received or had access to the document." Dkt. 314 §§ 7.2(g), 7.3(f). Meta employees, including its CEO, do not receive or have access to other employees' emails in the ordinary course of business. Indeed, Mr. Zuckerberg repeatedly testified he had not seen the emails he was being questioned on.

These are not isolated incidents. Just last Friday, Advertisers showed another former Meta employee a Confidential presentation that he was not on, and, even after the deponent confirmed that he had no memory of ever seeing the document and Meta lodged an objection, Advertisers continued to question him on the document.[9] And since April 27, Advertisers have also presented multiple witnesses with email threads where the witness authored or received one email earlier in the chain (which they would of course be permitted to see) but not later emails in an email chain (for example, where they were dropped from a reply that was sent to only a subgroup of executives or where the original email was forwarded to others) and would not have had access to those emails.[10] This is precisely the practice that Meta raised in its prior motion (Dkt. 485) that the Court has already found improper.[11] Yet rather than redact the entirety of the emails that the witness is not authorized to access (as Meta has suggested) or identify in Meta's production the underlying emails that witnesses are permitted to access (which at least in some cases exist in Meta's production), Advertisers have continued to show witnesses materials in violation of the Protective Order. The straightforward measures are not burdensome, as Advertisers proved last week when—in one instance—they redacted portions of an email chain that the deponent never received.[12]

As the Court has already held, questioning a deponent on a document that is clear on its face was not authored, sent, received or otherwise accessed by the deponent—and without making any attempt to lay any foundation that the deponent had previously accessed it—violates the Protective Order. Because there are dozens more depositions scheduled in the discovery period, not just for current Meta employees but also former employees and nonparties (a number of whom work for Meta's competitors), and because Advertisers have not heeded and indeed have attempted to circumvent the Court's prior order, **Meta respectfully requests that the Court not only deny Plaintiffs' motion but also enter an order that (1) Plaintiffs may not circumvent the Protective Order by reading or otherwise disclosing protected information in questioning; (2) where Plaintiffs are using long email threads that include later-in-time emails that do not include a deponent, Plaintiffs must redact any later-in-time email that the deponent is not on before presenting it to the deponent; and (3) future violations of the Protective Order will subject Advertisers to an order to show cause why sanctions should not be imposed.**

\*   \*   \*

---

[6] May 16, 2023 Tr. 88:8-12; 93:9-17; 95:14-20.
[7] *Id.* at 100:10-11 ("Again, I'm not on this email[.]"); *see also id.* at 125:6-15.
[8] Email from Y. Bathaee to S. Mehta (May 11, 2023).
[9] May 19, 2023 Tr. 74:2-15.
[10] *See, e.g.,* May 9, 2023 Tr. 234:21-237:2; May 5, 2023 Tr. 89:19-90:6-21.
[11] Apr. 27, 2023 Hr'g Tr. 10:8-11:2.
[12] May 19, 2023 Tr. 18:10-23.

2

As for the allegations in Plaintiffs' letter brief, Advertisers were apparently so eager to get out ahead of Meta's anticipated request for relief for their ongoing (and, as now clear, intentional) violation of the Protective Order, that they did not let the facts stand in their way. To be clear: Meta has not impeded Plaintiffs' questioning in any deposition—before or after the Court's April 27 order. Meta has not objected where a witness is on a document or where Plaintiffs' counsel has represented that a document came from a witness's custodial files. Instead, where a witness is being shown material to which they did not have access, Meta has concisely stated its objection for the record and allowed questioning to proceed.[13]

Each of Plaintiffs' allegations to the contrary is without merit. Should the Court wish to confirm for itself that Plaintiffs' complaints are made-up, Meta stands ready to submit the relevant deposition excerpts (which is a discrete set of pages) to demonstrate just that. Plaintiffs allegations are simply untrue:

- They claim that "[t]here have been numerous instances where Meta stopped the questioning" of a deponent. Dkt. 559 at 2. Plaintiffs do not cite to a single instance of this, nor could they, because Meta has *not once* stopped questioning or instructed a witness not to answer.
- They claim that Meta objected where Plaintiffs showed former employee John Fernandes a document from his custodial files. *Id.* Plaintiffs provide no citation to support their allegation because it never happened. Also, an objection does not thwart questioning.
- Plaintiffs claim (with no citation) that Meta prepared one witness, Jackie Chang, on a lengthy email chain that Ms. Chang was not on. *Id.* at 3. Again, this simply never occurred.
- Plaintiffs claim that Meta objected to a public document being used with Ms. Sandberg. *Id.* Plaintiffs neglect to mention that once Plaintiffs' counsel represented that the document was public, Meta's counsel no longer objected and that, after that exchange, Plaintiffs' counsel introduced four other public documents without objection.[14] Again, an objection is irrelevant.
- Plaintiffs claim that Meta has unfairly objected to "documents deponents could clearly access," giving the deposition of Guy Rosen as one example. Dkt. 559 at 2. This deposition took place before the April 27 hearing and the issue was expressly raised in Meta's initial motion (Dkt. 485) and decided by the Court. Plaintiffs questioned Mr. Rosen on, for example, an email dated almost a year ***before*** he joined the company that was plain on its face he had never sent or received. Dkt. 485 at 2. What Plaintiffs appear to suggest—that Mr. Rosen, or any witness, should be allowed to be presented with a document that relates in some way to areas he has worked on (*e.g.*, information security or Onavo)—is not the relevant question.[15]

---

[13] Ironically, it is Plaintiffs that have engaged in long colloquies on the record on this issue—attempting to argue with Meta's objections or engage in debates on why they should not be bound to the Protective Order to which they agreed. *See, e.g.*, May 9, 2023 Tr. 234:18-237:2.

[14] Tr. 124:16-125:2, 151:2-12, 167:12-19, 168:15-18. Plaintiffs also claim that Meta objected to a public document used at the Pinterest deposition, but neglect to mention that the document was marked "Highly Confidential" by Pinterest. Ex. 709. For Plaintiffs to suggest that Meta has made a habit of objecting to the use of public documents is an unfortunate but transparent attempt to mislead the Court.

[15] Plaintiffs also complain that Meta objected during Mr. Acton's deposition to their introduction of a document he was not on, claiming that he testified he could have accessed the document. Dkt. 559 at 2. Plaintiffs fail to mention that Mr. Action is the CEO of one of Meta's competitors (Signal), and that it was only *after* Meta made its objection that Plaintiffs' counsel attempted to lay any foundation for showing Mr. Acton the document and that, once that foundation was laid, Meta did not renew its objection. Tr. 94:5-95:25.

Respectfully submitted,

By: */s/ Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*

4