# Bathaee :: Dunne :: LLP

June 2, 2023                                                                                                      Via CM/ECF

Re:     <u>Klein v. Meta Platforms, Inc.</u>, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

      Advertiser Plaintiffs in the *Klein* matter respectfully request that the Court order Defendant Meta Platforms, Inc. ("Meta") to re-review the remaining documents on its FTC investigation privilege log. A court-ordered re-review of a randomly selected 2,500 document sample from this log resulted in a 55% downgrade rate—1,096 newly produced documents plus 278 less-redacted documents. These downgraded documents are relevant to nearly every live issue in the respective *Klein* cases (Advertisers' and Consumers'). Unbelievably, Meta's response to its 55% downgrade rate was to state that "[i]t remains our view that any further re-review of materials from the FTC privilege log is unnecessary, inappropriate, and unduly burdensome for multiple reasons," and to offer to re-review only a small subset of remaining entries—limited to actual deponents in this case—such that **123,000** entries from Meta's log would never be re-reviewed. The parties met and conferred on May 31 and are at impasse.

      On April 4, Plaintiffs filed a letter brief regarding a "serious, ongoing discovery problem":

> [D]espite certifying that it had substantially completed its document production, Meta has for approximately two years withheld from review and production in this case several hundred thousand documents based on a privilege review Meta now concedes to be badly flawed. Meta's partial re-review of these same documents in the FTC's antitrust suit led to a **60% downgrade rate**, and ended up with an 11th-hour (March 21, to be precise) production in this case of nearly 30,000 previously withheld documents—thousands of which were pertinent to then-imminent, and in some cases, already completed, depositions. Yet when Plaintiffs asked Meta to review the rest of the wrongfully withheld documents and to work with Plaintiffs to mitigate the prejudice, Meta called Plaintiffs' proposal a "nonstarter."

Dkt. 486 at 1 (emphasis in original). This problem—which stemmed from a massive, incredibly flawed privilege log that Meta created during the FTC's antitrust investigation into the company, then reused without any re-review in this case—impacted hundreds of thousands of potentially relevant documents, by Meta's own count. *See* Apr. 27, 2023 Hrg. Tr. at 14:3-23 (330,000 entries on FTC investigation log), 17:8-9 (160,000 entries never re-reviewed as of Apr. 27 hearing).

      The Court heard argument on Plaintiffs' letter on April 27, and "directed [Meta] to re-review a random sample of 2,500 documents from its FTC investigation privilege log, not including any documents that have already been re-reviewed." Dkt. 545 at 1. Meta was ordered to "produce by May 15, 2023, the results of its review, an amended privilege log, and any newly redacted/downgraded documents." *Id.*

      At 11:34 pm Pacific time on May 15, Plaintiffs received an email from Meta regarding its court-ordered re-review. The substantive entirety of Meta's communication—there was no other message or explanation, except for an attached privilege log—appears below:

> On behalf of Meta Platforms, Inc., enclosed are documents bearing bates PALM-017056004 - PALM-017063050. The documents are encrypted and the associated password is being emailed to you separately.
>
> This production contains documents which Meta is downgrading in full, producing with redactions, or producing with narrower redactions. These documents are part of a randomly selected set of 2,500 documents listed on Meta's FTC investigation privilege log that underwent further review for privilege, pursuant to the Court's April 27, 2023 Order. Dkt. 545. We are also enclosing revised privilege log entries (PALM-PRIVLOG-052677) for the subset of the 2500 documents over which Meta continues to assert privilege.

Meta also produced to Plaintiffs—as required by the Court—two volumes of documents that resulted from its 2,500-document re-review. One production volume comprised newly-produced documents that had previously been withheld in full. This volume, labeled FB_PALM_PROD096, comprised 1,096 documents. A second production volume comprised documents previously produced with redactions, which were being re-produced with fewer redactions. This volume, labeled FB_PALM_REPROD012, contained 278 documents. Together, Meta downgraded (*i.e.*, produced for the first time or removed redactions from) 1,374 documents after re-reviewing 2,500 of them. Put simply, ***Meta downgraded 55% of its FTC investigation log privilege calls in its court-ordered re-review***.

A 55% downgrade rate for a privilege log sample is, to put it mildly, inappropriately high. It would be inaccurate to call it "shockingly high," but only because it is in concinnity with the 60% downgrade rate for other samples from Meta's FTC investigation log, *see* Apr. 27, 2023 Hearing Tr. at 14:1-15:9, so any surprise would be feigned.[1] But it is certainly problematic; in any court in the country, a 55% downgrade rate within a sample would justify re-review of the population from which the sample was drawn. *See In re Facebook Inc. Consumer Privacy User Profile Litig.*, 2023 WL 1871107, at *18-*19 (N.D. Cal. Feb. 9, 2023) (identifying downgrade rate of 63% in sample of 3,062 documents as "significant rate of error"); *FTC v. Qualcomm Inc.*, 2018 WL 11420853, at *1 (N.D. Cal. Mar. 16, 2018) ("After re-review, Qualcomm reversed more than half of its previous privilege assertions, producing 25,000 documents to plaintiffs. The percentage of reversals is notable because it reveals that Qualcomm improperly withheld a large number of non-privileged documents until about a month before the close of fact discovery."); *cf. Clemente v. F.B.I.*, 854 F. Supp. 2d 49, 59 (D.D.C. 2012) (in FOIA sampling context, "[t]he D.C. Circuit has said that an error rate of even 25% is 'unacceptably high.'"); *Natural Resources Defense Council v. U.S. Dept. of Defense*, 442 F. Supp. 2d 857, 879 (N.D. Cal. 2006) (citing same 25% error rate).

That is certainly the case here: Meta's 55% downgrade rate from its random sample is consistent with the 60% rate it found in prior samples of its FTC investigation log, and indicates that out of the 160,000 documents that to this day have never been re-reviewed from Meta's FTC investigation log,[2] something like ***90,000*** are non- or less-privileged—and thus have been (and continue to be) improperly withheld from Plaintiffs in this case. And there can be no serious argument that this massive trove of never-reviewed documents is irrelevant—among the

---

[1] In Court, Meta attributed its previous 60% downgrade rate to "the way those samples were chosen." Apr. 27, 2023 Hearing Tr. at 14:17-19; *see also id.* at 15:7-9 ("that gets into sampling methodology and all of that"). The results of Meta's court-ordered re-review—2,500 documents chosen wholly at random from the 160,000-odd remaining on the company's FTC investigation log—put the sampling bias theory to rest.

[2] *See* Apr. 27, 2023 Hearing Tr. at 17:8-9.

previously-withheld documents produced as a result of Meta's court-ordered re-review are emails and presentations about Onavo (and Meta's related "In-App Action Panel" (IAAP) program); about eBay and Marketplace; about Netflix; about Meta's developer Platform, including abuses by Cambridge Analytica and other developers; about Meta's machine learning/AI systems used in ad ranking and targeting; and about Meta's privacy practices across more than a decade.

In view of the above, Plaintiffs are entitled to, and requested of Meta, a re-review of the remaining documents on Meta's flawed FTC investigation privilege log. Again, ***more than half of the 160,000 documents remaining on that log are likely not- or less-privileged***. Multiple samples in the FTC's D.C. case, and now a 2,500-count random sample in this Court, have shown that the foregoing is statistically *certain* to be the case. And Meta knows this—including because Plaintiffs said as much in a detailed letter after Meta's court-ordered re-review was completed and Plaintiffs had parsed its results. Yet Meta's response has been déjà vu all over again. On May 17, 2023, Meta sent an email stating the following:

> Meta produced to you earlier this week the results of its further review for privilege of a random sample of 2,500 entries from the privilege log originally provided to the FTC during its investigation. It remains our view that any further re-review of materials from the FTC privilege log is unnecessary, inappropriate, and unduly burdensome for multiple reasons—including the immense volume of material produced in this case already, as well as the various factual questions probed during the FTC's investigation that are no longer at issue in the case at bar (e.g., the acquisitions of Instagram and WhatsApp).
>
> Nonetheless, in the interest of resolving any further disputes concerning re-review of the FTC investigation logs without burdening the Court, we have begun the process to re-review all documents associated with current or former Meta employees who have been noticed for deposition in this matter (with the exception of those whose notices plaintiffs have since withdrawn). This amounts to a re-review of approximately 142,000 entries from the final privilege log provided to the FTC. We will endeavor to produce the resulting documents to you on a rolling basis as they become available.

Meta's offer, which shows no self-reflection or contrition whatsoever for what is objectively terrible, prejudicial litigation conduct—Meta for years shielded ***hundreds of thousands*** of potentially relevant documents on specious privilege claims, and ***learned as much late last year***—is also simply not curative of Plaintiffs' prejudice. <u>First</u>, Meta's attempt to limit its re-review to "current or former Meta employees who have been noticed for deposition in this matter" is doubly problematic: (i) it does not account for the fact that many of the most relevant documents for two distinct antitrust cases, from a company with 50,000 employees, drawn from an investigatory collection from close to 100 custodians (plus non-custodial documents), are necessarily from outside a list of forty-odd deponents; and (ii) it does not account for the fact that Meta itself insisted on a hard deposition cap in this case, thereby ensuring that the universe of actually-relevant documents is even further from the subset of actual Meta deponents. Meta's own math confirms this: in an email follow-up, Meta admitted that its offer ***would leave unreviewed 123,000 of the 160,000 remaining documents on the FTC investigation log.*** <u>Second</u>, Meta's proposal (which would leave unreviewed about 77% of the remaining documents on Meta's FTC log) is simply not a proper remedy for a large-scale withholding of tens of thousands of non-privileged documents that was (and remains) ***Meta's fault***.

Advertiser Plaintiffs respectfully request that the Court order Meta to re-review the remainder of its FTC investigation privilege log, and order whatever additional curative measures are reasonable under the circumstances to mitigate Plaintiffs' prejudice from Meta's wide-scale improper withholding of documents from review and production in this action.

Respectfully submitted,

By: *Brian J. Dunne*
*On Behalf of Interim Co-Lead Counsel for the Advertiser Classes*

| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
|---|---|
| */s/ Amanda F. Lawrence* <br> Amanda F. Lawrence (*pro hac vice*) <br> alawrence@scott-scott.com <br> Patrick J. McGahan (*pro hac vice*) <br> pmcgahan@scott-scott.com <br> Michael P. Srodoski (*pro hac vice*) <br> msrodoski@scott-scott.com <br> 156 South Main Street, P.O. Box 192 <br> Colchester, CT 06415 <br> Tel.: (860) 537-5537 <br><br> Patrick J. Coughlin (CA 111070) <br> pcoughlin@scott-scott.com <br> Carmen A. Medici (CA 248417) <br> cmedici@scott-scott.com <br> Hal D. Cunningham (CA 243048) <br> hcunningham@scott-scott.com <br> Daniel J. Brockwell (CA 335983) <br> dbrockwell@scott-scott.com <br> 600 W. Broadway, Suite 3300 <br> San Diego, CA 92101 <br> Tel.: (619) 233-4565 <br><br> Patrick J. Rodriguez (*pro hac vice*) <br> prodriguez@scott-scott.com <br> 230 Park Avenue, 17th Floor <br> New York, NY 10169 <br> Tel.: (212) 223-6444 | */s/ Yavar Bathaee* <br> Yavar Bathaee (CA 282388) <br> yavar@bathaeedunne.com <br> Andrew C. Wolinsky (CA 345965) <br> awolinsky@bathaeedunne.com <br> Adam Ernette (*pro hac vice*) <br> aernette@bathaeedunne.com <br> Priscilla Ghita (*pro hac vice*) <br> pghita@bathaeedunne.com <br> Chang Hahn (*pro hac vice*) <br> chahn@bathaeedunne.com <br> 445 Park Avenue, 9th Floor <br> New York, NY 10022 <br> (332) 322-8835 <br><br> Brian J. Dunne (CA 275689) <br> bdunne@bathaeedunne.com <br> Edward M. Grauman (*pro hac vice*) <br> egrauman@bathaeedunne.com <br> Andrew M. Williamson (CA 344695) <br> awilliamson@bathaeedunne.com <br> 901 S. MoPac Expressway <br> Barton Oaks Plaza I, Suite 300 <br> Austin, TX 78746 <br> (213) 462-2772 <br><br> Allison Watson Cross (CA 328596) <br> across@bathaeedunne.com <br> 3420 Bristol St., Ste 600 <br> Costa Mesa, CA 92626-7133 <br><br> *Interim Co-Lead Counsel for the Advertiser Classes* |

**FILER ATTESTATION**

    I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: June 2, 2023            By:    */s/ Brian J. Dunne*
                                                       Brian J. Dunne