June 9, 2023                                                                    **VIA CM/ECF FILING**

The Honorable James Donato
San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:    <u>Request to Extend Consumers' Opening Expert Report Deadline by Ninety Days</u>

Dear Judge Donato:

Consumer Plaintiffs ("Consumers") respectfully request a brief extension to their opening expert report deadline, in order to mitigate the substantial prejudice they will suffer absent an extension due to Facebook's ongoing and belated production of critical documents and data. Much of the recently-produced and yet-to-be produced materials—which come months after the December 19, 2022 substantial completion deadline and just before the June 23, 2023 close of fact discovery—consist of key structured data that Consumers' experts require for their expert reports (including for relevant market definition and monopoly power analyses), but which must first be received, then "cleaned," and then analyzed. Consumers thus seek a **ninety-day (90) extension** of the opening report deadline with corresponding extensions to the remainder of the case schedule, as detailed below. The parties met and conferred on June 6, 2023, Facebook rejected Consumers' request and refused to make a counter-proposal, and the parties are at an impasse.

This extension will not affect the separate Advertiser case, which can proceed on the current schedule (and which the Advertiser Plaintiffs do not seek to extend). Thus, with this extension, the Court will still be able to maintain the trial date for the Advertisers, decouple cases that have little relevance to one another in the expert phase (because they involve different classes, different market definitions, and different theories of anticompetitive conduct and harm), and mitigate undue prejudice to Consumers from Facebook's conduct.

**Background.** Consumers have worked diligently to meet and abide by the schedule, including completing nearly 60 depositions since February—many on back-to-back or even the same days (or nights, as many depositions have occurred internationally and have been set at the time of the witness regardless of the location of the deposing attorney). Depositions will continue through the close of fact discovery. Since the substantial completion deadline, Facebook has produced more than **2.2 million pages of substantive documents**, and more than **1.2 terabytes of data**. Facebook is **still** producing tens of thousands of pages of documents and massive amounts of data, sometimes multiple times a day, including just two nights ago (only a scant 16 days before the close of fact discovery). Consumers give a brief description below of the progress to date, what remains outstanding, and its importance to the coming class certification expert reports and motion.

**FTC Structured Data.** In December 2022, Consumers served their fifth set of document requests, seeking structured data regarding, *inter alia*: (a) the data Facebook collects on Consumer Class members, (b) Facebook's engagement metrics (*e.g.*, number of "daily" and "monthly" active users on Facebook, and average "time spent" by user on Facebook); (c) Facebook's revenues; and (d) the ads Facebook serves. Facebook delayed meeting and conferring for weeks. In mid-February, however, Facebook promised to make a proposal, but did not do so for another month, despite repeated follow-up requests. Facebook's ultimate proposal was then wholly inadequate.

The data Consumers sought was readily accessible to Facebook; indeed, Facebook's witness used exactly this type of data in his presentation to the Court at the February 2023 tutorial. Nevertheless, Facebook continued to resist producing the requested data. To move the parties' discussions forward and resolve their disputes, Consumers in April proposed that Facebook simply re-produce the structured data that it had already produced to the FTC, as that data seemed to overlap with Consumers' fifth set of document requests (*e.g.*, "time spent" data). Facebook took a

week to respond to even that common-sense proposal, finally agreeing on April 28, 2023, to avoid having to argue the issue to the Court at the status conference occurring that same morning.

Material to the agreement was that Facebook **timely** re-produce the structured data in an understandable format. This is because parties receiving such data must "clean" it, which is a multi-step, often months-long, process to render it capable of analysis. So far, the data itself consists of **nearly 1,250 individual files**. More are on the way. Each of these files must be opened, examined, and indexed in some way for Consumers' experts to log, digest, and understand them.

Unfortunately, Facebook has fallen short of its commitments with respect to the FTC data. Facebook took **weeks** to make its first data production. It then produced more data on June 7, 2023, including data that corrects errors in previously-produced data, raising questions as to whether other previously-produced data will require correction (and when that corrective data may come). Facebook has also stated it will produce more data sometime **on or after June 14**. This means that—at best—Consumers will still be receiving data one week prior to the close of fact discovery, and three weeks before expert reports are due. Consumers' expert team advises that cleaning and then analyzing data of similar size and complexity typically requires up to six months; yet, they believe 90 days of extra time will be adequate **if** Facebook produces the promised data by June 14.

But the problems do not stop at when Facebook produces the actual data. The data Consumers have seen thus far lacks data dictionaries that explain the data. Facebook has pointed them to correspondence between Facebook and the FTC for such explanations, but Consumers' review indicates there is often no correspondence explaining the data. The only correspondence there is refers to the data by FTC Bates numbering, which Facebook did not reproduce here. Consumers are thus left to manually cross-reference the FTC Bates numbers to the Bates numbers Facebook uses in this case—an incredibly time-consuming task; apparently, by design. Consumers sent Facebook an initial letter with questions and outlining some of these issues on **May 26**; Facebook has failed to provide any response in almost two weeks, which is a prejudicial delay.

**MINT Portal Data.** Consumers served their first set of document requests in **September 2021**. Those requests sought, among other things, documents (including data) relating to: (a) Facebook's number of monthly active users and daily active users and average "time spent" per user; and (b) reports of the market shares of Facebook and other market participants. Despite months of negotiations, Facebook omitted that it maintained a central repository of this exact type of information, called the "MINT [Market Intelligence] Portal." Consumers discovered this fact in February 2023, during the very first deposition in this case. They then followed up after the deposition to request production of the MINT Portal data. Despite multiple follow-up requests, Facebook provided no response for more than one month. When Facebook finally did respond, it made an inadequate proposal that was not fully responsive to Consumers' request and failed to include sources of MINT Portal data the witness testified existed during his deposition.

As part of the parties' April 28, 2023 agreement regarding the FTC data, Facebook finally committed to substantively respond regarding the MINT Portal. It then did not do so—again, despite multiple follow ups—until May 22. Facebook finally produced what it claims is the requested MINT Portal data on June 1, 2023. That production consisted of hundreds of individual data files, which Consumers and their expert team are still reviewing in a manner similar to the FTC data; *i.e.*, in a very time-consuming way that appears to be by Facebook's design. The 90-day extension Consumers request is to enable their expert team to incorporate MINT Portal data into their analysis—this is impossible under the current schedule due to Facebook's conduct.

**Late and Ongoing Production of Documents.** Facebook did not begin producing custodial documents in earnest until Fall 2022. When the parties subsequently negotiated a revised case schedule, Consumers were clear that the dates to which they stipulated could work only if Facebook substantially completed its production by December 2022. Facebook said it could, the

parties so stipulated, and the Court ordered that deadline as a result. Nevertheless, Facebook continues to produce new documents near daily, which prejudices Consumers' ability to meet the July 7 date for opening class certification reports on equal grounds with Facebook.

Several examples are illustrative. Due to supposed "vendor errors" in December 2022 and February 2023, Facebook excluded a combined **561,000 documents** from its document review population and produced a substantial portion of those after December 2022. Even if that might have been excusable, Facebook has since continued to regularly produce "downgrades" of documents from its FTC investigation log—the same log that accompanied Facebook's initial production of documents in this case. By its own admission, Facebook produced nearly **50,000** of these "downgrades" between late February and April 2023. Dkt. 533 at 10. Based on Facebook's erroneous privilege calls, the Court then ordered Facebook to re-review a sample of 2,500 documents from the FTC investigation log. Dkt. 545. Facebook has now completed that re-review, resulting in a privilege downgrade rate of **up to 55%**. Dkt. 583. This downgrade rate is unfortunately not surprising given Facebook has "a culture hostile to litigation" and regularly engages in the over and erroneous designation of documents as privileged. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 1871107, at \*27 (N.D. Cal. Feb. 9, 2023).

But, even more importantly, Facebook is currently re-reviewing all remaining documents on the investigation log related to deponents in this case, which it estimates to be around **89,000 entries**. Given its historical downgrade rates, Facebook is thus statistically likely to produce tens of thousands of documents shortly before the close of fact discovery, and less than one month before opening expert reports are due on July 7. This is already coming to pass: since May 31, Facebook has produced nearly **29,000 documents** as part of this re-review, with **26,000** alone coming on June 6 and June 7—**22,000** of *those* concern a **witness being deposed today** (Facebook's Chief Privacy Officer). That these documents are being "downgraded" and in such high amounts means they never should have been withheld in the first place. Absent an extension, Consumers and their expert team will be unable to meaningfully review and analyze these new documents before the July 7 deadline—a problem exacerbated by the fact that they are likely to be among the more important document in the case, given their apparent relationship to Facebook's privacy practices and related deception. To the extent any depositions need to be re-opened based on Facebook's late production, completing those depositions by July 7 also will not be feasible.

**Consumers' Pending 30(b)(6) Notice.** Consumers timely served a Rule 30(b)(6) notice seeking testimony as to: (a) Facebook's supposed "competitors"; (b) Facebook's data practices and related deception; (c) Facebook's consideration of compensating users for their data; (d) Facebook's use of the "social graph"; and (e) the impact of Apple's App Tracking Transparency on Facebook and its related planning. These topics bear on issues regarding Consumers' relevant market, anticompetitive conduct, and damages theories and their expert team's related opinions.

Facebook has refused to provide live testimony regarding certain of these topics, and Consumers will seek relief from the Court in short order. The earliest the Court could resolve those issues is the upcoming June 22 status conference. Facebook has already indicated Consumers' topics require multiple designees. To the extent the Court orders Facebook to provide testimony on Consumers' topics, it will then take time for Facebook to select those designees and prepare them, for Consumers to complete the depositions, and for Consumers' expert team to review and analyze the depositions for inclusion in their expert reports.

Consumers are mindful of the Court's preferences for keeping case schedule dates and a 2024 trial date, and they have abided by their discovery obligations for that reason. But Facebook's discovery conduct and delays have made the current schedule unworkable and prejudicial. Consumers respectfully seek a 90-day extension of all dates, starting with class certification expert reports, and reiterate that this request will not affect the Advertiser case or its schedule. Consumers are happy to discuss their proposal with the Court at the upcoming status conference.

DATED: June 9, 2023

Respectfully submitted,

By */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
 wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
 rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
 bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
 rapeterson@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
 kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
 lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

By */s/ Kevin Y. Teruya*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Manisha M. Sheth (*pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Michelle Schmit (*pro hac vice*)
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

*Interim Counsel for the Consumer Class*

## **ATTESTATION OF KEVIN Y. TERUYA**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: June 9, 2023                    By:   */s/ Kevin Y. Teruya*_____
                                                    Kevin Y. Teruya

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing the document to be electronically served on all attorneys of record.

Dated: June 9, 2023                    By:   */s/ Kevin Y. Teruya*_____
                                                    Kevin Y. Teruya