WILMERHALE

June 15, 2023

Sonal N. Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Despite representing that the FTC investigation "differ[s] from Plaintiffs' claims in substantive and temporal scope," Dkt. No. 330 at 12 n.5, Advertiser Plaintiffs are again attempting to delay the case and force Meta to re-review more than 100,000 entries on Meta's FTC investigation privilege logs that Advertisers have not shown to be relevant to this case, let alone non-cumulative of the eighteen million pages of documents they already have.  Notably, while Advertisers and Users jointly sought re-review of a sample of the FTC investigation logs in April, Dkt. No. 486, Users appear to be satisfied and do not join in Advertisers' current demand.

As a reminder of the long history of this issue, on May 3, 2021, Meta produced to Plaintiffs over twelve million pages of cloned discovery from the FTC investigation and all accompanying privilege logs.  Plaintiffs then sat on those productions and logs until March 2023, before raising any issues with Meta—nearly two full years after receiving the productions and just three months before the close of fact discovery.  Meta then re-reviewed a random 2,500-entry sample of the FTC investigation privilege logs pursuant to the Court's direction, Dkt. No. 545, and is currently finishing an additional voluntary re-review of another approximately 90,000 entries.  Now, just eight days before the close of fact discovery, Advertisers are demanding that Meta re-review approximately 100,000+ additional entries on the FTC logs.

Advertisers' position, as outlined in their June 2 letter brief, Dkt. No. 583, is meritless because Meta has (1) already re-reviewed a random 2,500-entry sample in accordance with the Court's April 27, 2023 Minute Entry, Dkt. No. 545, and (2) voluntarily agreed to conduct an expansive re-review of the approximately 90,000 additional entries on the FTC investigation privilege logs most targeted to Plaintiffs' case.  Meta's voluntary re-review—which will be completed by tomorrow, June 16, 2023 (with the revised privilege log to follow by June 23, 2023, before the close of fact discovery)—includes all entries on the logs that are associated with any of the 45 current or former Meta employees who have been or will be deposed in this case, and that have not already been re-reviewed.  This substantial re-review is not, as Advertisers' claim, "a small subset of remaining entries."  Dkt. No. 583.  Quite the contrary:  Meta is reviewing approximately *90,000 additional entries*.  Between this re-review and all of the other re-reviews Meta has conducted to date, *Meta will have re-reviewed over 200,000 of the approximately 330,000 documents logged during the FTC investigation*.  Meta respectfully requests that the Court deny Advertisers' wholly unproportionate and burdensome demand and agree that Meta's additional re-review of the approximately 90,000 entries on the FTC privilege log associated with the 45 current and former employees Plaintiffs have elected to depose in this case is reasonable and proportional.

The Court recently directed Meta to re-review a random sample of Meta's 2019-2020 FTC investigation privilege logs. *See* Dkt. Nos. 486, 531, 545. Meta immediately identified the 2,500-entry re-review population using Relativity's random sample generator, consistent with industry best practices. Then, consistent with the Court's direction, Meta produced downgraded documents from its re-review (including documents downgraded in full, documents produced with redactions, and documents produced with narrower redactions) and a revised privilege log on May 15, 2023. Meta also sent a cover letter detailing exactly what it was producing in connection with the sample. Meta's careful privilege re-review resulted in approximately 38% of entries downgraded in full (*i.e.*, produced with no redactions) and approximately 7% produced with lesser or modified redactions.[1] Less than 48 hours after Meta provided Plaintiffs with the results of its 2,500-entry privilege re-review, Meta informed Plaintiffs that it planned to voluntarily re-review all entries associated with all Meta employees who have been or will be deposed from the FTC investigation privilege logs. Meta made this offer without any prompting from Plaintiffs and did so quickly in order to avoid further dispute and to complete the re-review before the close of fact discovery.

The re-review covers all entries on the FTC investigation privilege logs that have not previously been re-reviewed and that are associated with the 45 current and former Meta employees that Plaintiffs have noticed for deposition. Meta has taken a broad view of what it means for a document to be "associated" with a particular deponent, meaning that the re-review is not limited to documents for which the deponents are custodians. The re-review also includes a reasonable search for any email thread where a deponent's name appears in any of the to, from, cc, or bcc fields, and any documents they are listed as the author of, even if the metadata does not reflect the deponent as a custodian.[2] In order to limit any potential disruption to the existing deposition schedule, Meta told Plaintiffs that it would produce downgraded documents on a rolling basis, focusing first on reviewing and producing documents associated with upcoming depositions in advance of those depositions. Meta did exactly that: Meta produced documents from this review on May 30, June 6, and June 7, and expects to make its final production of downgraded documents tomorrow, with the revised privilege log to follow next week.

Despite the enormous scope of this re-review, Advertisers continue to push for Meta to re-review every single document on the FTC investigation privilege logs, to the tune of over *100,000 additional entries* (on top of the approximately 90,000 Meta is already reviewing). Expanding the re-review to include these additional documents is unlikely to meaningfully increase the volume of *relevant* material reviewed, would jeopardize the timely close of fact discovery, and would create an undue burden on Meta.

---

[1] Advertisers willfully misrepresent this downgrade rate in their letter brief not once, but *six times*, despite being told by Meta—in writing, days before Advertisers filed their letter brief—that their calculations were artificially inflated because of the inclusion of family members for which no change was made to the privilege coding. Advertisers appear to have ignored this communication in order to cite a higher—and wrong—downgrade rate.

[2] This new re-review is in addition to the 2,500 entries Meta just finished re-reviewing and the more than 110,000 entries Meta re-reviewed in connection with the FTC case—the results of which Plaintiffs already have.

As Plaintiffs have previously represented to this Court, the 2019-2020 FTC investigation "center[ed] on Facebook's policies limiting developers' access to its 'Platform' and on its acquisitions." Dkt. No. 330 at 12 n.5. That is not the focus of *these* cases. Among other differences, Plaintiffs themselves have noted that the FTC investigation did not center on "Facebook's data-collection and -use practices," the alleged "data sharing agreements with eBay, Netflix and Foursquare," the alleged "agreement with Google," or the alleged "ongoing back-end integration of user data and artificial intelligence/machine learning models and systems" that are the focus of Plaintiffs' respective complaints. *Id.* It is of no surprise, then, that 52 of the 91 witnesses who were custodians in the FTC investigation are neither deponents nor custodians in *Klein*, suggesting Plaintiffs' cases do not implicate a large percentage of the body of documents from the FTC investigation. Re-reviewing an extra approximately 100,000+ entries not associated with *any of Plaintiffs' 45 current and former Meta employee deponents* would result in a wasteful re-review of documents likely to be irrelevant to Plaintiffs' cases.

The re-review also would be unduly burdensome and jeopardize the fact discovery schedule. Meta's review of the approximately 90,000 entries is already an enormous undertaking. Meta is expending millions of dollars to complete the re-review in the days remaining in fact discovery. To accomplish this, Meta has onboarded over 150 reviewers and devoted additional senior attorney resources to undertake further quality checks and prepare an updated privilege log. Adding the approximately 100,000+ additional entries Advertisers demand would make completion of this re-review by June 23 impossible, even with hundreds of attorneys spending thousands of hours on the re-review. This last-minute review could have been avoided if Advertisers had not *waited nearly two years* from when they received these privilege logs to raise any issues with the quality of the logs or to seek a re-review.

Ultimately, there is no need—and Advertisers have certainly not articulated one—for Advertisers' continued demands regarding cloned discovery from the FTC's wide-ranging investigation. Advertisers already have more than twelve million pages of documents from that investigation (as attenuated as they themselves acknowledge it is from their claims) and will soon have a re-review of 200,000+ of the 330,000 entries on the privilege logs from that investigation (including log entries associated with every witness in this case).

Meta respectfully requests that the Court deny Advertisers' motion and limit Meta's additional FTC investigation privilege log re-review to the approximately 90,000 entries associated with the 45 current and former Meta employees who are the subject of active deposition notices in the case.

Respectfully submitted,

By: */s/ Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*