WILMERHALE

June 15, 2023

**Sonal N. Mehta**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

**VIA ECF**

The Honorable James Donato
U.S. District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Dear Judge Donato:

The Court limited Plaintiffs to three hours of deposition time with Meta's CEO, Mr. Zuckerberg. Advertisers alone seek three additional hours. But they fall far short of establishing a "good-faith basis for seeking additional time." Dkt. 477. Advertisers present a distorted (and sometimes downright fictional) view of Mr. Zuckerberg's May 16 deposition that is belied by the transcript. Advertisers' frustration with that deposition is attributable entirely to their decision to question Mr. Zuckerberg on details of a newly concocted theory of alleged wiretapping about which he lacks unique knowledge, using documents he never sent, received, or otherwise accessed. That decision cannot be used as a basis to further burden Mr. Zuckerberg—especially as it is clear they would not use additional time differently.

*First*, Advertisers ask the Court to force Mr. Zuckerberg to sit for another three hours of deposition where they have already promised to waste his time. Advertisers themselves state they plan to question Mr. Zuckerberg about *the same allegations* (ones Mr. Zuckerberg testified he does not recall or have knowledge of) using *the same or same type of documents* (ones Mr. Zuckerberg did not send, receive, or otherwise access). Any request for apex testimony requires a demonstration that the witness has "unique, non-repetitive, firsthand knowledge." *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). Even more so after the witness has already been subjected to deposition. Advertisers have not come close to making that showing.

Advertisers acknowledge that they already questioned Mr. Zuckerberg *at length* about their new theory. Dkt. 569 ("Most of this [deposition] time was devoted to an attempt . . . to elicit Zuckerberg's testimony on . . . [the] 'In-App Action Panel' (IAAP) program . . . .").[1] They similarly have *already* questioned him about documents excerpted in their motion, including the single email he authored at PX 2255[2] and an "IAAP Technical Analysis" document he was not on at PX 2256.[3] Despite his limited knowledge and recollection of Advertisers' new allegations, Advertisers chose to use virtually all the time the Court granted questioning him about technical details he was not involved in.[4] The transcript for their questioning on these details spans nearly 70 pages. As

---

[1] Advertisers' claim in a single sentence footnote at the end of their brief that they have remaining questions on other topics is not close to a good cause showing that might warrant another three hours of deposition testimony from Mr. Zuckerberg. Moreover, Advertisers do not even attempt to establish that Mr. Zuckerberg has *unique* knowledge about these topics.

[2] Zuckerberg Tr. 76:19-82:9.

[3] *Id*. 107:25-130:3. Mr. Zuckerberg testified he believed he had never seen the document before. *See, e.g.*, 116:21-22 ("I wasn't included on this document, so I don't believe I've ever seen this until now."), 125:7-9 ("I wasn't on this document. I don't believe it was ever presented to me.").

[4] *See, e.g., id.* 92:18-21 ("I don't remember that specifically . . . I'm not sure that I was ever in this level of detail on how Onavo worked."); *id.* 111:9-11, 15-16 (testifying that he had never heard of "SSL bump" before); *id.* 128:21-23 ("I'm not sure if I ever knew this, but I certainly don't remember it at this point."); *see also, e.g., id.* 120:14-15, 121:7-8, 129:18-19, 132:21-22 (testifying

those pages show, Advertisers squandered their time asking Mr. Zuckerberg about specific documents and topics that, as CEO of one of the world's leading companies with tens of thousands of employees across the globe, he understandably did not have personal knowledge or recollection of. Again and again, Mr. Zuckerberg had to explain he could not testify as to what the authors of those documents meant or on subjects or details he was not involved with. *See* Dkt. 564.

If Advertisers were genuinely interested in learning about these subjects (as opposed to some ill-conceived attempt to gain perceived leverage by burdening Meta's CEO), the solution would be to depose other witnesses who may be able to answer their questions. Indeed, this is borne out by the documents Advertisers cite in their motion. These documents establish the involvement of numerous other current and former Meta employees who have been, or will be, deposed in this action, including among others: Guy Rosen (Feb. 24), David Wehner (Mar. 20), Jay Parikh (Mar. 24), Javier Olivan (Mar. 24), Ash Jhaveri (Apr. 27), Sheryl Sandberg (May 2), Erez Naveh (May 5), David Wei (June 19), and Naomi Gleit (June 20). Combined, Plaintiffs will have had nearly 50 hours on the record with those witnesses (and over 250 hours of deposition time with current and former employees) during which time Advertisers could have sought (and in many cases did seek) testimony related to their theories. Plaintiffs do not explain how Mr. Zuckerberg has unique knowledge beyond these individuals; in fact, as described above, his deposition demonstrates he does not. To the extent Advertisers questioned these witnesses on these documents, none suggested Mr. Zuckerberg had any unique knowledge. To the extent Advertisers elected not to question the other witnesses on these documents, that was their choice. Regardless, they have failed to show that Mr. Zuckerberg has unique, nonrepetitive knowledge over the dozens of other witnesses they will depose in this case. That alone dooms their request for additional time with Mr. Zuckerberg.

But Advertisers' attempted good-cause showing is further defective because Advertisers ask to depose Mr. Zuckerberg again on details and documents he has said he has no personal knowledge or recollection of (let alone *unique* nonrepetitive knowledge).[5] Advertisers' brief does not cite a single document that Mr. Zuckerberg actually authored, sent, or received. Only two cited documents include *any* material that he authored, sent, or received, PALM-016895582, PX 2255, and Advertisers already questioned Mr. Zuckerberg extensively about one.[6] And of the others (documents that he did not send or receive), Advertisers already sought to question Mr. Zuckerberg about one, PX 2256. Mr. Zuckerberg testified during the deposition that he believed he had never seen the document before, and Advertisers have articulated no good-faith basis otherwise.

**Second**, Advertisers' attempt to justify additional deposition time with fabricated claims that Meta "cut off" Advertisers' questioning, that counsel improperly "coach[ed]" Mr. Zuckerberg into not answering Advertisers' questions, that Mr. Zuckerberg was "combative" during the deposition, and that Mr. Zuckerberg himself expressed a desire for additional time, are unfounded. The transcript demonstrates that Advertisers' claims are false. If the Court is inclined to consider Advertisers' arguments on these points, Meta respectfully requests that the Court review narrowly tailored deposition excerpts, which Meta is happy to submit.

Meta did not "cut off" Advertisers' questioning. Meta simply noted that Plaintiffs were collectively past the Court-ordered three-hour time limit, which Advertisers' counsel acknowledged: "MR. HANSEN: I think we're at time, Mr. Bathaee, past it. MR. BATHAEE: I understand." Zuckerberg

---

repeatedly that he does not know and/or cannot remember how the alleged "IAAP Program" was implemented).

[5] Advertisers grasp at straws by quoting a Snap executive's testimony grossly out of context. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Levenson Tr. 49:10-50:17.

[6] Zuckerberg Tr. 76:19-22 (introducing PX 2255); *id.* 107:25-108:4 (introducing the next exhibit).

Tr. 144:7-9. Indeed, this came right after Advertisers' counsel acknowledged that he may have already been out of time and suggested just one more question—which Meta permitted: "Mr. Zuckerberg, I think I'm out of time. I may not be. Let me ask you one more question . . . ." *Id.* 143:6-8.

Nor did Meta "coach[]" the witness. Throughout the deposition, Meta's objections were limited to "Objection" and "Objection to the Form" and "Objection, Privileged" except where Advertisers violated the Court's Protective Order and subsequent order that Advertisers must abide by it.[7] Even then, Meta simply stated, "Objection. Protective Order," which is precisely what Meta told Advertisers in advance it would do.[8] Meta's counsel further accommodated Advertisers by requesting a standing objection to the use of such protected documents, which Advertisers' counsel welcomed, admitting that it was to Advertisers' "benefit too given the time."[9] Throughout, Meta allowed questioning to proceed.

Likewise, Advertisers' claim that Mr. Zuckerberg was somehow encouraged by Meta's counsel to "avoid answering questions about PX 2256" is demonstrably false. Meta did nothing more than request a standing objection at the start of questioning, which Advertisers acknowledged.[10] Meta's counsel then said nothing else about the document—or to Mr. Zuckerberg—during Advertisers' questioning on this document beyond single-word objections to specific questions.[11] Mr. Zuckerberg patiently answered questions about the document for a full 28 minutes.

Advertisers' allegation that Mr. Zuckerberg was "combative" during the deposition also is without merit. Their *only* support for this claim is that Mr. Zuckerberg informed them he "wasn't on [a] document" they showed him (which he was not). And as the rest of the transcript shows, Mr. Zuckerberg simply explained he was doing his best to answer despite not having the context for the underlying discussions reflected in documents he had never seen or on issues that he had no memory of ever being involved in. *See, e.g., id.* 98:18-19 ("I'm giving you my best understanding from reading the email, but I'm not in his shoes here.").

Finally, Advertisers' allegation that Mr. Zuckerberg "complained" that he did not have enough time to review documents is false. Mr. Zuckerberg facilitated an efficient deposition in which Advertisers insisted on asking him about documents that he was seeing for the first time. For example, in response to Advertisers showing him a 25-page document that he had neither sent nor received, Mr. Zuckerberg asked Advertisers to direct him to the relevant portion so that he knew what to review and could do so quickly.[12]

\* \* \*

Advertisers' disappointment with the testimony that their misguided deposition strategy elicited is not good cause to allow them to waste Mr. Zuckerberg's time yet again.

---

[7] *See, e.g., id.* 75:9, 111:7, 143:12 ("Objection."); 86:12, 89:3 ("Objection, protective order."); 138:5 ("Objection to the form."); 101:12 ("Objection, privileged.").

[8] *See, e.g., id.* 86:12, 89:3 ("Objection, protective order.").

[9] *See, e.g., id.* 102:25-103:5 ("MR. HANSEN: . . . [I]s it acceptable to you, sir, that I can have a standing objection on the questioning of this document? MR. BATHAEE: Absolutely, Mr. Hansen, I think it's to my benefit too given the time.").

[10] *Id.* 108:18-23 ("MR. HANSEN: I haven't looked at the whole document, but I'm going to ask for a standing objection to the extent that Mr. Zuckerberg is not on this document, if that's okay with you. MR. BATHAEE: Understood. MR. HANSEN: Thank you.").

[11] *See, e.g., id.* 110:13, 123:19, 125:20, 126:7, 128:14, 129:17 ("MR. HANSEN: Objection.").

[12] *Id.* 109:6-11 ("Well, if there's a specific subpart of this that you want me focus on, I can try to do that.").

Respectfully submitted,

By: /s/ Sonal N. Mehta

WILMER CUTLER PICKERING HALE AND DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*