WILMERHALE

June 15, 2023

**Sonal N. Mehta**

**VIA ECF**

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

The Honorable James Donato
U.S. District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

Under the pretext of the crime-fraud exception, Advertisers demand access to irrelevant and privileged legal advice from Meta's attorneys about Meta's market research programs. Dkt. 565. Advertisers insist on access to these privileged communications because they claim (outside their pleadings or sworn responses) that Meta violated federal law when users of the Facebook Research App (what Advertisers call the "IAAP Program") consented to provide Meta with data about their usage of other apps for market research purposes. Because the information Advertisers seek is irrelevant, Advertisers' wiretap allegations are barred by statute, and the communications in question are quintessentially privileged, the Court should deny Advertisers' meritless request.

**First**, additional information about the Facebook Research App is not relevant, and Advertisers do not explain how the information they request relates to competition for the sale of advertising. Indeed, information about the app's technology has been public since 2019, over a year before the Advertisers filed the initial complaint in this matter, yet Advertisers still fail to articulate any cognizable theory for how the Facebook Research App had any effect on competition—and therefore cannot show how additional evidence about it could be relevant to their claims. Advertisers' allegations concerning YouTube and Amazon are especially confounding. Advertisers have told the Court and Meta throughout this case that those companies are not in the alleged "social advertising" market. Yet Advertisers now appear to concede that those companies are competitors by claiming that Meta's gathering information on them had anticompetitive effects in the social advertising market. Advertisers cannot have it both ways. And although Advertisers fleetingly claim that testimony from a Snapchat official ███████████████████████ ███████████████████████████████, Dkt. 565 at 3, they ignore that "a design change that improves a product … does not violate Section 2 absent some associated anticompetitive conduct." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.*, 592 F.3d 991, 998-999 (9th Cir. 2010). That associated conduct cannot be the Facebook Research App, because the app itself had no effect on competition and thus did not "independently violate[] the antitrust laws." *Id.* at 1002.

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

**Second**, the crime-fraud exception is irrelevant because there is no crime or fraud. To start, Advertisers entirely fail to explain how the app violated the Wiretap Act. Dkt. 565 at 3 (asserting, without explanation, that the app "squarely meets the statutory proscriptions"). Because

Advertisers "bear[] the burden of proving that the attorney-client privilege does not apply," that alone should doom their request.[1] *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002).

In any event, the Wiretap Act provides that an interception is not unlawful if a party to the communication "has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Advertisers conspicuously fail to mention—and apparently do not contest—that Meta obtained participants' prior consent to participate in the Facebook Research App, and with good reason: Participants affirmatively consented to "Facebook … collecting data about [their] Internet browsing activity and app usage" to enable Facebook to "understand how [they] browse the Internet, how [they] use the features in the apps [they've] installed, and how people interact with the content [they] send and receive." PALM-004240021, 013157221; Centercode_00000081, 00000117, 00000127, 00000138; *see also* Naveh Dep. Tr. 213:2-6 (explaining that Meta acquired "explicit permission" and "informed consent" from users).

Rather than challenge whether users consented to the program, Advertisers assert in a single sentence that Meta's alleged interceptions intentionally interfered with Snapchat's contractual relationships by inducing users to violate some unspecified terms of their contracts with Snapchat. Dkt. 565 at 3. And that, they believe, means that Meta intercepted communications "for the purpose of committing [a] criminal or tortious act" and thus cannot rely on the Wiretap Act's consent exception. 18 U.S.C. § 2511(2)(d). But Advertisers' argument turns on a misunderstanding of Section 2511(2)(d). A consented-to interception is unlawful under the Wiretap Act only if it is done "for the purpose of facilitating some *further* impropriety." *Sussman v. American Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). That "criminal or tortious purpose must be separate and independent from the act of recording." *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). "'[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use— was criminal or tortious.'" *Sussman*, 186 F.3d at 1202. But Advertisers argue that Meta's purported interception *was itself* tortious because it violated Snapchat's terms of service—not that Meta used the fruits of the alleged wiretap for some separate, further criminal purpose.[2] Dkt. 565 at 3. The law in this Circuit is clear that those sorts of allegations are irrelevant to the Wiretap Act's consent exception. And since the exception *does* apply, Meta has committed no crime that could justify Advertisers' access to the privileged legal advice of Meta's attorneys.

**Third**, even if Advertisers could show a crime or fraud (which they cannot, as explained above),

---

[1] The Court should not reward Advertisers' failure to state the basis of their legal claim by inviting "a lengthier analysis" exceeding this Court's page limits for letter briefs. Dkt. 565 at 3 n.2.

[2] Advertisers do not argue that a violation of antitrust law provides the requisite tort for Section 2511(2)(d). For good reason. An antitrust claim premised on an unlawful interception assumes exactly what such antitrust allegations would be invoked to prove: that the interception was indeed unlawful. The Ninth Circuit has rejected such "circular" reasoning. *Planned Parenthood*, 51 F.4th at 1136 (RICO allegations could not establish tortious purpose under § 2511(2)(d), where basis for applying exception was the "circular" theory that "the civil RICO conspiracy is furthered by the recordings, and the recordings themselves further the ongoing civil RICO conspiracy"). Plus, it is doubtful that antitrust violations constitute "torts" at all, as required to trigger the exception-to-the-exception (which applies only to "criminal" or "tortious" purposes, not to all unlawful purposes). *See, e.g.*, *Shell v. Henderson*, 2013 WL 4838907, at *5 (D. Colo. Sept. 10, 2013) ("statutory … antitrust claims … may not be considered 'torts'").

they cannot show that advice was sought "in furtherance" of it. Advertisers cite to three documents that show only that Meta consulted with its lawyers to obtain legal advice concerning the app. Dkt. 565 at 1-3 (citing PX2255, a produced email chain noting that Meta legal would need to approve proposed market research), 3 (citing PX2256, a produced document reflecting that Meta legal received information about the app's technical details), 2 (citing PX414, a produced email chain and slideshow about the app, on which Meta's associate general counsel is cc'd). Asking a lawyer whether conduct is legal, and how to ensure that such conduct conforms to the law, is not soliciting legal advice in "furtherance" of a crime—even if it turns out (as Advertisers wrongly believe) that the client and lawyer wrongly concluded the conduct was lawful. The reality is the opposite: "The attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014). A litigant cannot pierce the privilege merely by stating that routine legal advice concluded that unlawful conduct was, instead, lawful. *See United States v. Doe*, 429 F.3d 450, 453 (3d Cir. 2005) ("The privilege is not lost if the client innocently proposes an illegal course of conduct to explore with his counsel what he may or may not do."); *State ex rel. North Pacific Lumber Co. v. Unis*, 282 Ore. 457, 464 (1978) ("Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper."). That is for good reason: applying the crime-fraud exception too broadly risks "discourag[ing] … clients from consulting an attorney about entirely legitimate legal dilemmas." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996).

Were it otherwise, attorney-client privilege would be a dead letter for sophisticated entities. Corporations routinely consult counsel on the legality of business decisions. And plaintiffs routinely bring lawsuits contending that conduct blessed by counsel was actually unlawful. "Companies operating in today's complex legal and regulatory environments routinely seek legal advice about how to handle all sorts of matters … . There is nothing necessarily suspicious about the officers of [a] corporation getting such advice … . Showing temporal proximity between the communication and a crime is not enough." *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997). In the same vein, "it is not enough to show that an attorney's advice was sought before a decision was made … that is alleged, as a matter of hindsight, to have been" unlawful. *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643-44 (8th Cir. 2001). But that is all that Advertisers even claim to show: that the Research App needed to be "approved" and "monitored" by lawyers. Dkt. 565 at 3. This falls well short of showing that the "narrow and precise" crime-fraud exception applies here. *Jacobs*, 117 F.3d at 88.

*     *     *

Rather than focusing the limited time remaining in discovery on developing the claims pleaded in their complaint, Advertisers have pivoted to accusing Meta employees and executives of serious felonies. They have done so to obtain clearly privileged materials, and with little regard for the requirements of the statute on which their allegations are premised. Their request should be denied.

Respectfully submitted,


By: */s/ Sonal N. Mehta*

WILMER CUTLER PICKERING HALE AND
DORR LLP
*Attorneys for Defendant Meta Platforms, Inc.*