# EXHIBIT B

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 S. MoPac Expressway,
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Interim Co-Lead Counsel for the Advertiser Class*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

(Additional counsel on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>Hon. James Donato<br><br>**ADVERTISER PLAINTIFFS' FIRST SUPPLEMENTAL RESPONSE AND OBJECTIONS TO DEFENDANT META PLATFORMS, INC.'S INTERROGATORY NO. 16 TO ADVERTISER PLAINTIFFS** |

**INTERROGATORIES**

**INTERROGATORY NO. 16:**

Identify each agreement, whether written or unwritten, between Meta and any Person that You contend to be "exclusionary," as alleged in the Advertiser Complaint.

**SUPPLEMENTAL RESPONSE:**

Advertiser Plaintiffs incorporate by reference their general objections and specific objections to Defendants' preamble, definitions, and instructions.

Advertiser Plaintiffs object to Interrogatory No. 16 because it is overbroad and unduly burdensome. Advertiser Plaintiffs also object to Interrogatory No. 16 on the grounds that it calls for a legal conclusion and/or assumes legal conclusions as part of the question posed. Advertiser Plaintiffs additionally object to Interrogatory No. 16 on the grounds that it seeks information in Facebook's possession, custody, or control that has not yet been produced in discovery in this case, including through Facebook's contumacious withholding and redaction of unprivileged material from Facebook's FTC Investigation document search and review (which materials Facebook has flatly refused to review in conjunction with this case, contrary to the Federal Rules and other applicable law) and Facebook's *Klein*-specific document search and review; through Facebook's refusal to search for, review, and produce relevant information from specific non-email electronic sources; through Facebook's refusal to produce source code and its improper redaction of that source code from as-produced documents, which it has refused to remedy in connection with its FTC Investigation production; through Facebook's refusal to produce indisputably relevant logs and tables from Hive and other data sources, including those pertaining to Onavo; through Facebook's unprepared corporate designee at a 30(b)(6) deposition; and through other prejudicial discovery conduct by Facebook that is gradually coming to light as fact discovery proceeds. Advertiser Plaintiffs further object to Interrogatory No. 16 on the ground that it asks about "agreements" that Advertiser Plaintiffs "contend to be 'exclusionary,'" when in fact the Advertiser Complaint contends that Facebook committed exclusionary acts (as that term is derived from Sherman Act case law) to anticompetitively maintain its monopoly, including by entering into anticompetitive agreements that, when viewed in

13

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL

the context of Facebook's anticompetitive course of conduct alleged in the Advertiser Complaint, constitute exclusionary conduct by Facebook (again, using "exclusionary" as a term of art derived from Sherman Act case law). Advertiser Plaintiffs also object to Interrogatory No. 16 on the grounds that it is premature, given that fact discovery is ongoing, thousands of documents continue to be produced every week by Facebook and third-parties, fact depositions are proceeding, and expert discovery has not yet even commenced in earnest. Relatedly, Advertiser Plaintiffs object to Interrogatory No. 16 on the grounds that it calls for expert testimony, which is not yet due under the Court's scheduling order, particularly in connection with the Interrogatory's demand that Advertiser Plaintiffs "identify each agreement . . . contend[ed] to be 'exclusionary.'" This expert testimony, in turn, requires and/or will be based on factual discovery that is ongoing and has not yet been completed.

Subject to the foregoing general and specific objections, Advertiser Plaintiffs respond as follows:

This is a monopoly maintenance case in which Advertiser Plaintiffs allege that Facebook ulawfully maintained its monopoly power in the United States Social Advertising Market since December 2016 through an anticompetitive course of conduct that includes, among other things, several agreements with third parties. Facebook's unlawful monopoly-maintaining conduct comprises "exclusionary acts," as that term is used in Sherman Act case law. Advertiser Plaintiffs also allege that Facebook entered into a *per se* illegal market division agreement with Google, which injured competition in the United States Social Advertising Market and the Advertiser Plaintiffs and Proposed Advertiser Classes.

Facebook's monopoly maintenance scheme—at issue in Advertiser Plaintiffs' case—comprises conduct starting in December 2016 that had the specific intent, and the actual net effect, of anticompetitively preserving Facebook's United States Social Advertising Market dominance, which conduct included the following express or implicit agreements:

14

Case No. 3:20-cv-08570-JD   Advertiser Plaintiffs' First Supplemental Response and Objections to Meta Platforms, Inc.'s Interrogatory No. 16

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL**

| Parties | Subject Matter | Approximate Date(s) |
|---|---|---|
| Facebook and Microsoft | Windows Phone Extended API Agreement | June 2015; enforced through at least 2018 |
| Facebook and Sony | Extended API Agreement | July 2015; enforced through at least 2018 |
| Facebook and Microsoft | Xbox Live Extended API Agreement | August 2015; enforced through at least 2018 |
| Facebook and Amazon | Extended API Agreement | November 2015; enforced through at least 2018 |
| Facebook and Apple | Extended API Agreement (Graph API) | approx. 2015-2016; enforced through at least April 2018 |
| Facebook and Blizzard Entertainment | Extended API Addendum (Friends) | Aug. 2016; enforced through at least 2018 |
| Facebook and NVIDIA | Extended API Addendum (Friends) | Dec. 27, 2016 |
| Facebook and BigTree Entertainment Private Limited | Extended API Agreement (Events) | Jan. 2017 |
| Facebook and Vendini Ticketing US LLC | Extended API Agreement (Events) | Jan. 2017; Apr. 2017 |
| Facebook and Eventim | Extended API Agreement (Events) | Feb. 2017; Aug. 2019 |
| Facebook and Songkick | Extended API Agreement (Events) | Feb. 2017 |
| Facebook and eBay | Marketplace and ads signals | Mar. 2017; enforcement activities through at least 2020 |
| Facebook and SuperBoletos | Extended API Agreement (Events) | Apr. 2017 |
| Facebook and Ticketbox Pte. Ltd. | Extended API Agreement (Events) | May 2017 |
| Facebook and LiveNation | Extended API Agreement (Events) | May 2017; amended Apr. 2018 |
| Facebook and Boletia | Extended API Agreement (Events) | Jun. 2017 |
| Facebook and eTicket | Extended API Agreement (Events) | Jul. 2017 |
| Facebook and SeatGeek | Extended API Agreement (Events) | Jul. 2019 |
| Facebook and Netflix | Watch and ads signals | Aug. 2017-Mar. 2018; enforcement activities |

15

CASE NO. 3:20-cv-08570-JD  ADVERTISER PLAINTIFFS' FIRST SUPPLEMENTAL RESPONSE AND OBJECTIONS TO META PLATFORMS, INC.'S INTERROGATORY NO. 16

**CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL**

| Parties | Subject Matter | Approximate Date(s) |
|---|---|---|
| | | throughout 2018 into at least 2019 |
| Facebook and Ticketbooth | Extended API Agreement (Events) | Sep. 2017 |
| Facebook and Showpass | Extended API Agreement (Events) | Oct. 2017; Dec. 2017 |
| Facebook and ETK Boletos, S.A. de C.V. | Extended API Agreement (Events) | Dec. 2017 |
| Facebook and Eventbrite | Extended API Agreement (Events) | Mar. 2018 |
| Facebook and Google | Header bidding, exchange auctions, user identification and targeting | Sep. 2018; enforcement activities through at least 2020 |
| Facebook and Big Neon | Extended API Agreement (Events) | May 2019 |
| Facebook and Xorbia Technologies Inc. d/b/a Big Tickets | Extended API Agreement (Events) | May 2019 |
| Facebook and Humantix | Extended API Agreement (Events) | May 2019 |

These agreements were "exclusionary" because during the Advertiser Class Periods (*i.e.*, since December 2016), Facebook had monopoly power in the United States Social Advertising Market, and sought to (and successfully did) maintain that monopoly power through exclusionary acts that included each of the above agreements. The contours of Facebook's monopoly in the United States Social Advertising Market, and the details of how the above-referenced agreements anticompetitively contributed to it, thereby constituting "exclusionary" acts under Sherman Act case law, are explained in the following subjections, based on the information presently known to Advertiser Plaintiffs, in the midst of fact discovery and prior to expert discovery in this case. Advertiser Plaintiffs note, although this has already been specifically stated in an objection, that answering this interrogatory in the manner Facebook seeks requires a well-defined understanding of the Social Advertising Market and its barriers to entry, a well-defined understanding of Facebook's conduct in connection with each referenced agreement during the Relevant Period, and an expert evaluation of pricing and competition in the United States Social Advertising Market during the Relevant Time Period. Given that expert

16

CASE NO. 3:20-cv-08570-JD        ADVERTISER PLAINTIFFS' FIRST SUPPLEMENTAL RESPONSE AND OBJECTIONS
                                              TO META PLATFORMS, INC.'S INTERROGATORY NO. 16