WILMERHALE

June 20, 2023

VIA ECF

Sonal Mehta

+1 650 600 5051 (t)
+1 650 858 6100 (f)
sonal.mehta@wilmerhale.com

The Honorable James Donato
United States District Judge for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:   *Klein v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD

Dear Judge Donato:

The Court should reject Users' request—filed less than a month before the Court-ordered July 7, 2023 deadline for Users' opening class certification expert reports—for a 90-day extension of their opening expert reports and to "decouple" Users' and Advertisers' cases after years of coordination. Dkt. No. 587. Users' request throws out the Court's carefully considered case management plan and consolidation order, resulting in two distinct class certification, expert discovery, and summary judgment phases, and pushes trial on Users' allegations into 2025. There is no reason to do any of this, let alone all of it. Contrary to Users' attempts to rewrite history, Meta has expended extraordinary effort and resources to address Plaintiffs' sweeping discovery requests, including production of over four million documents and presentation of nearly 45 Meta witnesses along with four Rule 30(b)(6) witnesses for deposition. Any prejudice Users claim they will suffer is attributable to their own delay or the realities of complex litigation.

***Case Consolidation.*** Users' and Advertisers' cases should remain consolidated through dispositive motion practice. Consolidation of these two related cases has ensured consistency and efficiency for all parties, particularly since many of the issues are intertwined. For example, Meta presented one executive to discuss the competition it faces for both users' time and attention and advertising dollars at the Court's market definition tutorial and Meta presently anticipates using one or more common experts for both classes on class certification. This reflects the integrated nature of these two cases and counsels against creating two distinct case schedules, which would also double the burden on the Court and Meta.

Meta has urged consolidation all along. In March 2021, Meta asked Judge Koh to "consolidate the user and advertiser cases in view of the overlapping issues of law and fact," Dkt. 60, and further stated that from Meta's "perspective there should be one complaint," Mar. 18, 2021 Hr'g Tr. 30:17. Judge Koh ultimately consolidated the cases but permitted Plaintiffs to file separate complaints, which Meta objected to: "we did raise this issue with Judge Koh…Our view is that the cases should not be consolidated in the way they have been"—in other words, Meta cautioned against unconsolidated complaints not consolidation itself. Aug. 11, 2022 Hr'g Tr. 27:13-17.

***FTC Structured Data.*** Users criticize Meta for its purported delays in producing structured data after December 19, 2022. These complaints are misguided. Users failed to serve their requests for production of this data until **December 23, 2022**—four days after the substantial completion deadline and more than one-and-a-half years after fact discovery began. Users are unable to explain

Hon. James Donato
June 20, 2023
Page 2

this delay, other than to suggest that they could not serve these requests until after Meta had begun custodial productions, despite the fact that Users had access to Meta's reproduction of over 12 million pages of documents from the FTC investigation since May 3, 2021. Moreover, this is a complex antitrust case in which Users' counsel claimed to have done extensive investigation even before filing their original complaints in 2020, two years before they sent data requests. Users could have started asking for structured data sooner. Indeed, Advertisers requested structured data nearly fifteen months earlier.

Users also suggest that following receipt of the structured data, Users' experts must "clean" the data, which is a "months-long[] process." Dkt. 587 at 2. During the parties' meet and confer, Users stated that it would take them *six months* to "clean" this data. If true, that makes Users' year-and-a-half delay in seeking this data all the more confounding. Even if Meta produced all of its structured data in response to Users' overbroad requests on the very day that Meta served its responses, on January 23, 2023 (which was infeasible, given their overbreadth), Users' experts would apparently *still* be in the process of rendering the data in a manner "capable of analysis."

Users' claim surprise at the quantity of structured data that Meta has reproduced from the *FTC* litigation, but Meta expressly warned Users that the data they were asking for was voluminous. Apr. 26, 2023 E-mail from S. Mehta to K. Teruya ("As you will see – this is a substantial volume of data. It's hundreds of GB."). The very next day, Users' counsel reported to this Court that the parties' disputes with respect to structured data had been resolved by virtue of Meta's agreement to reproduce this data. Users provided no indication that Meta's production would necessitate an extension.

Finally, Users fault Meta for not producing "data dictionaries that explain the data" and for only producing correspondence that "refers to the data by FTC Bates numbering." Dkt. 587 at 2. When the parties agreed to Meta's production of structured data, Meta explicitly warned: "Our understanding is that *data dictionaries generally do not exist for this data*, and were not produced in the *FTC* case." Apr. 26, 2023 E-mail from S. Mehta to K. Teruya (emphasis added). Users knew this data would not be accompanied by "data dictionaries," and again, did not raise any concern when this topic came up at the April 27 status conference. Meta has since provided Users with cross-references that show which PALM file relates to the FTC Bates number alongside each structured data production. In short: Meta has produced the data it said it would.

***MINT Portal Data.*** Users next challenge Meta's production of data from its MINT Portal, suggesting Meta did not begin production of this data until May 22. That is untrue. As Meta has explained to Users, Meta produced hundreds of documents containing MINT data in the course of its custodial productions. Users were not satisfied with that production, however, and requested that Meta run specific queries in the MINT Portal data ***on April 11, 2023***. Before the April 27 status conference, Meta informed Users that they "w[ould] receive a substantial amount of MINT-related data in the *FTC* productions" but could not commit to produce certain files because recent personnel changes had impacted Meta's ability to identify if any such files existed. Apr. 26, 2023 E-mail from S. Mehta to K. Teruya. The next day, Users' counsel reported to this Court that the parties' disputes with respect to MINT data had been resolved and provided no indication that the parties' ongoing discussions as to the data they waited until April 11 to request necessitated an extension. Meta completed that production on June 1.

Hon. James Donato
June 20, 2023
Page 3

***FTC Investigation Privilege Log.*** Users further cite Meta's agreement to re-review 90,000 of the documents remaining on the privilege log from the FTC's 2019-2020 antitrust investigation as grounds for an extension. To be clear, Meta reproduced over 12 million pages of documents from the FTC investigation ***over two years ago***. Yet Plaintiffs waited nearly two years to challenge the privilege logs from this investigation. *See* Apr. 27, 2023 Hr'g Tr. 16:17-20 ("MS. MEHTA: They have had these logs since July of 2021. THE COURT: Is it the same log? MR. DUNNE: Yes, Your Honor."). Despite the supposed importance of these documents, of the privileged documents that Meta has already downgraded and produced to Plaintiffs to date, not a single document has been the basis for a request to reopen a deposition. And notably, while it was Advertisers that pushed for the re-review, they have not joined Users in seeking this extension.

Users recently claimed that Meta's re-review stemmed from vendor errors in December 2022 and February 2023. It did not. Meta's FTC re-review concerns privilege logs associated with Meta's production to the FTC during its *2019-2020 antitrust investigation*. Meta reproduced that production here in May 2021, pursuant to an order from Judge Koh at Plaintiffs' request. That privilege re-review has nothing to do with the vendor errors Users cite, which concerned Meta's production of documents in response to Plaintiffs' requests *in this litigation*; Meta disclosed those vendor errors to Plaintiffs on February 3, 2023—immediately after learning of the issue—and undertook herculean efforts to immediately address those errors and produce documents in time for depositions. Meta completed its production of all such affected documents by February 28. Plaintiffs never objected to Meta's proposed corrective action. Dkt. Nos. 486, 533, 545, 583.

***Ongoing Productions and Users' Rule 30(b)(6) Notice***. Users' final attempts to justify an extension are based on (1) feigned confusion at the scope of Meta' ongoing productions; and (2) a pending dispute as to Users' Rule 30(b)(6) Notice. *First,* Meta's limited document productions since January 23 include: privilege downgrades produced pursuant to Plaintiffs' requests and on the Court-ordered procedure and timeline (Dkt. 545); correspondence with non-parties (which both sides continue to produce on a rolling basis); materials covered by non-disclosure agreements, requiring notification before production, consistent with the Stipulated Protective Order (Dkt. 314 ¶ 9); production of prior deposition transcripts in advance of depositions, pursuant to the Court's order (Dkt. 424); productions related to Meta's Commitments Review, produced by May 5 pursuant to the parties' agreement; downgraded materials that were previously redacted for source code, produced in April pursuant to the parties' agreement; hyperlinks, produced pursuant to the Court's instruction (Dkt. 334); or limited materials that Meta is affirmatively producing and may later rely upon. In other words, the documents that Users complain about are being produced ***pursuant to the parties' agreements or orders of the Court***. *Second,* Users are in no position to complain about the status of their Rule 30(b)(6) Notice. Although Meta repeatedly urged Users to serve Rule 30(b)(6) notices months in advance of the discovery deadline, Users waited until just weeks before the cutoff to serve an overbroad and non-compliant notice. Meta has put witnesses up on the topics that it could reasonably scope; as to the rest, Users decided to serve topics that do not comply with this Court's rules, and they must live with the consequences. (Dkt. 586.)

Meta respectfully requests that this Court deny Users' request. To the extent the Court is inclined to grant Users' any extension, Meta requests that the Court order that the cases remain consolidated and direct all parties to confer on a schedule that gives Meta equitable time to respond on class certification.

Hon. James Donato
June 20, 2023
Page 4

Respectfully submitted,

By: */s/ Sonal N. Mehta*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
*Attorney for Defendant Meta Platforms, Inc.*