June 20, 2023                                                                                    **FILED VIA CM/ECF**

The Honorable James Donato, U.S. District Judge San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:     <u>*Klein v. Meta Platforms. Inc.*, Case No. 3:20-cv-08570-JD | 30(b)(6) deposition of Advertiser Plaintiff Affilious, Inc.</u>

Dear Judge Donato:

      Advertiser Plaintiffs respectfully submit that Meta's demand for an additional three hours of Rule 30(b)(6) deposition time with Affilious, Inc. ("Affilious") should be rejected. Despite Meta's contention otherwise, Advertiser Plaintiff Affilious's Rule 30(b)(6) designee, Company principal, and co-Plaintiff Jessyca Frederick, was more than adequately prepared for her appearance as Affilious's corporate representative. During Meta's abbreviated and, at points, hostile examination, Ms. Frederick provided fulsome and knowledgeable testimony on a wide range of questions related to Meta's deposition topics.

      Meta attempts to capitalize on certain of Ms. Frederick's statements regarding her review of documents and her preparation to claim that Ms. Frederick failed to prepare ***at all*** and was "woefully unprepared to speak to any of the eight topics included in Meta's Rule 30(b)(6) Notice." This is simply not true. In addition to her extensive personal knowledge as the principal of Affilious, Ms. Frederick made a reasonable and good-faith effort to prepare for Affilious's deposition - spending several hours over the course of three weeks, in preparation.

      Rule 30(b)(6) does not obligate a deponent to memorize specific details, and a 30(b)(6) witness's occasional inability to answer questions due to lack of knowledge or memory does not require designation of additional witnesses. *See United States ex rel Fago v. M&T Mort. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006). To determine whether a deponent's testimony is adequate, "it is necessary to consider the challenged testimony in the context of [the deponent's] complete testimony." *Laforest v. Honeywell Int'l, Inc.*, 2004 WL 1811415 at *3 (W.D.N.Y. Aug. 11, 2004). It is not sufficient to claim a deponent was unprepared, simply because they could not recall certain facts. *DarbeeVision, Inc. v. C&A Mktg., Inc.*, No. CV 18-0725, 2019 WL 2902697, at *8 (C.D. Cal. Jan. 28, 2019) ("A 30(b)(6) deposition is not a quiz.") (citations omitted).

      Here, the record reflects that Ms. Frederick gave more than adequate testimony on the full range of noticed topics. Specifically:

***Topic 1: Your understanding of the facts that form the basis for your claims in this lawsuit.***

      Ms. Frederick testified as to Affilious's understanding of the case: "that Facebook used its monopoly to set prices which may or may not have been fair." Frederick Rough Tr. 10:25-11:2; 50:23-25; and 107:18-23 (noting the understanding that Facebook had "the ability to set the price however they wanted without much competitive marketplace impact or any"); *id.* at 16:11-19 ("I believe that the price at Facebook was set in a way that didn't necessarily reflect competitive practices . . . Going back to the example of my website, typically I can only charge advertisers what other sites are charging, and in the case of the prices I paid at Facebook there are no other places for me to place those same ads to get competitive pricing.").

*Topic 2: All Advertising Channels on which you have advertised, Your reasons for doing so, the prices You paid, and the results You received from those Advertising Channels.*

  Ms. Frederick testified that Affilious had advertised using multiple advertising channels including Google Ads, Facebook, as well as its rationale for doing so. *Id*. at 52:21-25. For instance, Ms. Frederick explained that Affilious's reasons for advertising on Google Ads was to reach "customers who were actively searching for wine clubs," and even provided examples of specific keyword search terms she utilized including "best wine clubs," "wine club reviews," and "red wine clubs." *Id.* at 53:1-54:2. She testified regarding the process Affilious used to select these terms as well. *Id*. ("[F]or search terms that I believed had potential to generate ROI, I picked the pages on my website that were most relevant to them to match them. And so that's how I selected those key terms.").

  Ms. Frederick also testified as to the reasons Affilious advertised on Facebook as well as her return on that investment. *Id.* at 55:4-18; 55:15-18; 19:8-20:9 (discussing Facebook's self-service advertising system); 57:8-19 (discussing reasons Affilious used different targeting strategies when advertising on Google and Facebook's systems); 29:1-12 (discussing its return on investment on Google and Facebook campaigns); 65:25-66:20 (discussing its consideration of advertising on Pinterest.)

  Ms. Frederick did not specifically recall the exact price Affilious paid for advertisements when asked to recall them from memory. *Id*. at 58:7-15. When Ms. Frederick was later presented with documents containing specific figures, she was able to competently testify regarding these expenses. *Id. at* 142:1-143:9.

*Topic 3: Your consideration of Advertising Channels, including Advertising Channels on which You did not advertise, and the factors You relied on in Your consideration, including but not limited to targeting capabilities, reach, and price*.

  Ms. Frederick provided detailed testimony on this topic. When asked about advertising channels Affilious considered but decided not to use for advertising, Ms. Frederick discussed Twitter and Reddit. *Id*. at 67:3-9; 67:20-24; and 68:11-15 ("very often people who talk about wine on Twitter are other media sites that are wine oriented or advertisers and those would not be my customers"). Ms. Frederick testified Affilious was also interested in advertising on Reddit because Reddit users are engaged and "talk about wine clubs" *(id*. at 68:24-69:1), but ultimately did not advertise more. *Id*. at 68:20-21; *id.* at 71:19-72:6 (discussion of direct mail advertising); 69:12-76:2-8 (discussion of why other advertising channels such as YouTube, TikTok, television, radio, and LinkedIn were not considered by Affilious).

*Topic 4: Your advertising strategy, including Your overall advertising objectives, Your campaign-specific objectives, and the factors You considered in selecting those objectives.*

  Ms. Frederick testified concerning Affilious's advertising objectives and strategies vis-à-vis specific campaigns. *Id.* at 53:1-54:2 (discussion of Google Ads strategy); 55:4-18 (discussion of Facebook strategy); 65:25-66:20 (discussion of Pinterest strategy). Ms. Frederick was also able to testify about Affilious's specific objectives regarding individual campaigns. For example, Affilious ran a campaign from August 23, 2017, until October 13, 2017, and Ms. Frederick was able to identify Affilious's campaign-specific objections and the factors she considered in selecting an objective. *Id.* at 142:11-14 ("this is an ad promoting whether or not people were interested in

affordable wine clubs"); 142:22-143:4 (discussing Affilious's campaign objective); 140:12-23 (discussing why Affilious selected a particular campaign objective).

***Topic 5: Your advertising budget, including Your overall budget and Your campaign-specific budgets, any changes to Your advertising budget over time, and Your assessment of the impact of Your budget on the results You received from Your advertising***.

Ms. Frederick was able to competently and accurately recount the changes made to Affilious's advertising budget over time. She described Affilious's various paid advertising efforts and further testified that its advertising budget had shifted from these paid opportunities to solely operating using search engine optimization. *Id.* at 74:4-25. She explained that Affilious made this change because "[i]t is the best place to find new customers in a cost-effective way." *Id*. at 24:1-4; *id.* at 28:7-8; 28:12-25; 29:6-12; 29:18-20; 54:11-14; 59:3-14; 71:4-6; 97:2-12 (discussing impact of ROI in Affilious's decision-making regarding advertising channels); 59:3-9. ("Early in working with -- or buying Google ads, I saw greater ROI and was able to use that to grow my business. Over time, as the ads got more expensive, ROI decreased to a point where eventually it was breaking even."); and *id*. at 62:20-63:19 (discussing Affilious's ROI-tracking systems).

***Topic 6: Your use of advertising agencies, consultants, or other third parties to advise You on Your advertising strategy, budget, spend, or creative.***

Ms. Frederick was fully prepared to testify regarding Topic 6. Affilious never used advertising agencies or consultants to advise Affilious on these topics. *Id.* at 30:17-25; 31:7-10.

***Topic 7: All unpaid or free methods by which You promoted Your business, product, or service, Your reasons for doing so, and the results You received from those methods***.

Ms. Frederick testified that Affilious used search engine optimization methods to market its business. *Id.* at 74:4-10. She further testified that Affilious's only costs associated with SEO are Ms. Frederick's time and the cost to purchase software tools. *Id.* at 74:11-19. Affilious has had success with this kind of marketing and no longer engages in paid advertising as a result. *Id.* at 23:17-21; 24:1-4; 74:20-24. Ms. Frederick testified that Affilious does SEO because "[i]t is the best place to find new customers in a cost-effective way, and if you don't do any you may not get any customers." *Id.* at 24:2-4.

***Topic 8: Your understanding of the conduct challenged in this lawsuit.***

Meta's eighth topic, Affilious's understanding of the conduct challenged in the lawsuit, overlaps considerably with the first noticed topic, its understanding of the facts that form the basis for Affilious's claims in the lawsuit. As described above, Ms. Frederick provided detailed testimony as to Affilious's understanding of the conduct challenged in the lawsuit. *Id.* at 75:4-8.

In sum, Ms. Frederick offered testimony as the corporate representative of Affilious based on information reasonably available to her within Meta's noticed topics. That is exactly what Rule 30(b)(6) requires. For this reason, Advertiser Plaintiffs respectfully request that Meta's motion be denied.

Respectfully submitted,

By: */s/ Amanda F. Lawrence*

| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
|---|---|

Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Adam Ernette (*pro hac vice*)
aernette@bathaeedunne.com
Priscilla Ghita (*pro hac vice*)
pghita@bathaeedunne.com
Chang Hahn (*pro hac vice*)
chahn@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com
901 S. MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Allison Watson Cross (CA 328596)
across@bathaeedunne.com
3420 Bristol St., Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser Classes*