

**VIA CM/ECF**

The Honorable James Donato
United States District Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

**Silicon Valley**
855 Main Street
Redwood City, CA  94063

**Justina Sessions**
**T**  +1 (650) 618-9250
**E**  justina.sessions@freshfields.com

**freshfields.us**

RE:     *Klein et al. v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato,

      Non-party Netflix, Inc. ("Netflix") respectfully requests the Court deny Advertiser Plaintiffs' motion to compel the production of additional documents beyond those Netflix has already searched for and produced. Advertiser Plaintiffs' claims regarding Netflix's prior document searches and the parties' discussions to date are simply not true.

      Netflix has fulfilled every commitment it made to Plaintiffs and to the Court. Its searches did not result in the evidence that Advertiser Plaintiffs had hoped to find, but that is a reason to end discovery of Netflix, not to expand it. Back in November, Netflix produced documents resulting from a custodial ESI search and survey of the competitive analysis team relating to competition between Netflix and Facebook or Instagram. And more recently, Netflix searched Reed Hastings' personal email account and produced responsive documents. Advertisers now complain about the volume of documents that Netflix produced. Advertisers' true problem is not with Netflix's searches, but with the fact that there are no Netflix documents that would support Advertisers' speculation regarding an alleged secret agreement between Netflix and Meta that somehow contributed to Meta's alleged social advertising monopoly.

      Unsatisfied with the results of the burdensome discovery they have already obtained from non-party Netflix, Advertiser Plaintiffs now grasp at straws. They ask the Court to compel Netflix to search for irrelevant documents—while failing to limit their requests, make any compromises, or provide any guidance on how Netflix could even begin to conduct a satisfactory search. Advertiser Plaintiffs also moved to compel on RFPs 1 and 2 of the subpoena, reneging on an agreement they made with Netflix *only two days prior* not to move to compel on those RFPs.

      ***Advertiser Plaintiffs' letter brief wrongly characterizes Netflix's searches.*** Plaintiffs have known the scope of the search Netflix undertook for competition-related documents for over seven months. Their claim that Netflix somehow misrepresented this search, either to Advertiser Plaintiffs themselves or to the Court at the April 27 Case Management Conference, is baseless.

      On December 14, 2022, Netflix counsel explained to Advertiser Plaintiffs that Netflix's November 8, 2022 production of documents resulted from "(1) a custodial ESI search of the files of Kevin Creighton, Netflix's Director of Market Intelligence and (2) a survey of the Netflix team responsible for competitive analysis for any documents analyzing Netflix's competition with

Facebook or Instagram created over the last three years."[1] Netflix further explained this search was sufficient to capture documents responsive to RFPs 1 and 2 of Advertiser Plaintiffs' subpoena, which call for documents regarding competition between Netflix and Facebook Watch. Netflix provided the *same* description of its search in correspondence to Advertiser Plaintiffs on February 7, 2023, March 9, 2023, and May 21, 2023. The March 9 and May 21 communications also gave Advertiser Plaintiffs the specific search terms Netflix used. Netflix's counsel provided the *same* explanation to the Court on April 27:

> "[W]e did a custodial search of the documents for Netflix's director of competitive intelligence, and we also surveyed the team responsible for analyzing competition. And so the custodial search that we did involved a word search for words like Meta or Facebook or Instagram and other things and competition." Tr. at 30:18-24.

Netflix has been clear about the scope of the search it did to respond to RFPs 1 and 2 throughout this process. These searches were more than sufficient to respond to RFPs 1 and 2, and would have pulled in any documents relating to Advertiser Plaintiffs' requests for documents relating to competition with Facebook Watch—if they had existed, which they did not. While Advertiser Plaintiffs are obviously unhappy the search did not return documents supporting their conspiracy theory, it does not follow the search was inadequate.[2]

Advertiser Plaintiffs appear to claim Netflix misled the Court because Netflix's searches were not responsive to RFPs 3 through 16 of the subpoena. But Netflix never represented its search as responsive to those RFPs. More importantly, Advertiser Plaintiffs failed to tell the Court that they have known since June 2022 that Netflix objects to RFPs 3 through 16 as vague, overbroad, duplicative of Meta's documents, and irrelevant to their claims in this matter—and that Netflix would not provide responses to those RFPs as written. It is disingenuous for Advertiser Plaintiffs to feign surprise at Netflix's position.

***Advertiser Plaintiffs' conspiracy theory regarding Netflix and Meta is baseless.*** In addition to the document search and production described above, Netflix collected and reviewed Reed Hastings's personal emails as the Court ordered on April 27. Netflix negotiated and reached agreement with Advertiser Plaintiffs on the search terms and time period (2015 to 2019) to be used in that review. Netflix did not limit its search to documents relating to the alleged agreement, but also searched for documents relating to Meta executive compensation, corporate governance, and meetings or discussions between Mr. Hastings and Facebook executives. Netflix found and produced a total of ***thirteen*** responsive documents in Mr. Hastings' email, none of which suggest any anticompetitive, improper, or secret agreement between Netflix and Meta. The outcome of these searches suggest that Netflix's non-party document production obligations are complete, not that they should be expanded to sweep in more plainly irrelevant documents.

***RFPs 12 through 15 are overbroad and untethered to Advertiser Plaintiffs' allegations.*** Advertiser Plaintiffs have made no effort whatsoever to narrow RFPs 12 or 13 or propose any means by which Netflix could begin to search for responsive or relevant documents. Their motion

---

[1] Netflix will provide copies of its responses and objections and correspondence with Advertiser Plaintiffs upon request.

[2] Plaintiffs also complain about the search's time period. Netflix collected all documents in Mr. Creighton's files. He began working at Netflix in April 2018. The time period of this search is sufficient to look for documents concerning Facebook Watch, which Advertiser Plaintiffs claim that Facebook "began dismantling" in May 2018, *see* Dkt. 512 at 3, by cutting funding for news in December 2018 and original content in January 2020.  Amended Compl. (Dkt. 391) ¶¶ 526-27.  As Advertiser Plaintiffs acknowledge, Netflix produced documents from this time period that relate to competition from other video streaming companies—there just were no such documents relating to Facebook Watch.  *See* Dkt. 515 at 3.

to compel should be denied for this reason alone. As written, these requests are also overbroad and seek irrelevant information: RFPs 12 and 13 demand *internal Netflix* documents on "Reed Hastings's role as a member of Facebook's Board of Directors," which encompass any internal Netflix document authored by any employee at the company discussing Mr. Hastings's board service, regardless of whether the document says anything about purported competition, agreements, or alleged conspiracies between Meta and Netflix. RFPs 14 and 15 request *internal Netflix* documents on "any Communication between Reed Hastings and any Facebook employee, officer, or director related to competition in online video streaming and original content creation, advertising on Facebook, collection or exchange of data, or [Netflix's] business relationship or Agreements with Facebook"—in other words, any internal Netflix document authored by any employee about commercial agreements with Meta that are completely legal and have no bearing on Advertiser Plaintiffs' allegations that Meta monopolized a social advertising market.

Netflix has already searched for and produced documents discussing competition with Meta and Mr. Hastings' correspondence relating to his board service. The additional, internal-to-Netflix material that Advertiser Plaintiffs seek (if it exists at all) would be irrelevant. RFPs 12 and 13 would call for discussions about such mundane things as scheduling or what Mr. Hastings might like to eat for lunch at a board meeting. Documents responsive to RFPs 14 and 15 would merely confirm the existence and nature of agreements between Netflix and Meta—information which can be obtained from Meta—or describe Netflix's *own* motivations for entering into agreements with Meta, which are irrelevant to proving Advertiser Plaintiffs' claims against Meta.[3] Advertiser Plaintiffs have made no efforts whatsoever to compromise or narrow these requests, and the time for such compromise has passed.

Advertiser Plaintiffs moved to compel on the full scope of RFPs 1, 2, and 12 through 15 as originally written, despite their previous agreement not to move to compel on RFPs 1 and 2, and in defiance of the Court's instruction for Netflix and Advertiser Plaintiffs to "work it out." April 27, 2023 Tr. at 32:11-12. During a June 13 meet-and-confer, Netflix counsel asked Advertiser Plaintiffs to narrow their requests and explain what they really wanted from these RFPs. Advertiser Plaintiffs said they would consider whether there was some "core thing we really need from Netflix," and that they would follow up to advise. Netflix would have considered any reasonable proposal. Instead of compromising or identifying any potentially relevant material, however, Advertiser Plaintiffs sent an email the next day merely telling Netflix counsel to look at their complaint. They then filed a motion one day later to compel on the full scope of their demands. Their overreach should not be rewarded with another opportunity to narrow their requests only after subjecting non-party Netflix to motion practice.

**Advertiser Plaintiffs reneged on agreements previously reached with Netflix.** During the June 13, 2023 meet-and-confer described above, Advertiser Plaintiffs told Netflix counsel they would not bring a motion to compel on RFPs 1 through 11 of their subpoena. In a follow-up email sent to Netflix counsel on June 14, 2023, Advertiser Plaintiffs confirmed that they "will only be moving to compel a search for and production of documents in response to Request Nos. 12-15." Advertiser Plaintiffs brought the instant motion to compel ***the next day***, which asks the Court to compel Netflix to make additional productions on RFPs 1 and 2, along with RFPs 12 through 15. The Court should consider Advertiser Plaintiffs' willingness to renege on commitments made only two days prior when evaluating the credibility of the statements they have made to the Court.

---

[3] *Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271-HRL, 2017 U.S. Dist. LEXIS 34913, at *11 (N.D. Cal. Mar. 10, 2017) ("A non-party's motivations and understanding of its relationship with a party accused of monopolization has no bearing on any of [the elements of a Section 2 claim].").

DATED: June 20, 2023                           Respectfully submitted,

                                                                 FRESHFIELDS BRUCKHAUS DERINGER U.S. LLP

By: /s/ *Justina Sessions*
Justina Sessions
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Matthew Macdonald*
Matthew Macdonald
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2953
Facsimile: (650) 493 6811
Email: matthew.macdonald@wsgr.com

*Counsel for Non-Party Netflix Inc.*

**ATTESTATION**

I, Justina Sessions, am the ECF user whose identification and password are being used to file this letter. Pursuant to LR 5-1(h)(3), I hereby attest the concurrence of the filing of this document has been obtained from the other signatories hereto.

Dated: June 20, 2023                           By: /s/ *Justina Sessions*
                                                                                       Justina Sessions