**PUBLIC REDACTED VERSION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILMER CUTLER PICKERING
 HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
 Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
 Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
 Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware Corporation, <br><br> Defendant. | Case No. 3:20-cv-08570-JD <br><br> **META PLATFORMS, INC.'S MOTION TO EXCLUDE TESTIMONY OF SCOTT FASSER AND JOSHUA GANS** <br><br> Hearing Date: December 14, 2023 <br> Time: 10:00 a.m. <br> Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ......................................................................................1

STATEMENT OF REQUESTED RELIEF..............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

INTRODUCTION ......................................................................................................................1

BACKGROUND ........................................................................................................................2

LEGAL STANDARD.................................................................................................................3

ARGUMENT ..............................................................................................................................4

I.       FASSER'S "FACTUAL BACKGROUND" SHOULD BE EXCLUDED ........................4

II.      SECTION IV OF GANS'S REPORT SHOULD BE EXCLUDED...................................8

         A.      Gans's Recitation Of Advertisers' Gloss On The Facts Cannot Support His
                 Classwide Impact Opinion ......................................................................................9

         B.      Gans Does Not Explain The Basis For His Classwide Impact Opinion ...............11

         C.      Gans's "Intuition" About Advertiser Willingness to Pay Cannot Support
                 His Classwide Impact Opinion .............................................................................13

CONCLUSION..........................................................................................................................15

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*640 Octavia, LLC v. Pieper*,
  2019 WL 1201581 (N.D. Cal. Mar. 14, 2019)............................................................7

*AFMS LLC v. United Parcel Serv. Co.*,
  2014 WL 12515335 (C.D. Cal. Feb. 5, 2014)..................................................14, 15

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) ...........................................................................8

*Caldwell v. City of S.F.*,
  2021 WL 1391464 (N.D. Cal. Apr. 13, 2021) ................................................3, 7

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
  55 F. Supp. 2d 1024 (N.D. Cal. 1999) .............................................................12

*Chen-Oster v. Goldman, Sachs & Co.*,
  114 F. Supp. 3d 110 (S.D.N.Y. 2015)...........................................................8, 10

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) .........................................................................3, 7

*City & County of San Francisco v. Purdue Pharma L.P.*,
  2022 WL 1203075 (N.D. Cal. Apr. 22, 2022) ....................................................14

*City of Pomona v. SQM North America Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ...........................................................................12

*Claar v. Burlington Northern R.R. Co.*,
  29 F.3d 499 (9th Cir. 1994) .................................................................................3

*DZ Reserve v. Meta Platforms, Inc.*,
  2022 WL 912890 (N.D. Cal. Mar. 29, 2022).......................................3, 6, 9, 14

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ...............................................................................4

*In re Google Play Store Antitrust Litig.*,
  2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ..............................................3, 9, 12

*GPNE Corp. v. Apple, Inc.*,
  2014 WL 1494247 (N.D. Cal. Apr. 16, 2014), and (2)...........................................12

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
  2019 WL 12074086 (C.D. Cal. July 1, 2019) ........................................................15

**PUBLIC REDACTED VERSION**

*Guidroz-Brault v. Missouri Pacific R.R. Co.*,
    254 F.3d 825 (9th Cir. 2001) .................................................................8

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) .................................................................8

*Johns v. Bayer Corp.*,
    2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)...........................................9

*Matthew Enterprise, Inc. v. Chrysler Group, LLC*,
    2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ......................................14

*Moussouris v. Microsoft Corp.*,
    311 F. Supp. 3d 1223 (W.D. Wash. 2018) ............................................8

*In re MyFord Touch Consumer Litig.*,
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) (en banc) ..................................................3

*Oracle America, Inc. v. Hewlett Packard Enter. Co.*,
    2018 WL 6511146 (N.D. Cal. Dec. 11, 2018).............................3, 10, 11

*Stephens v. Union Pacific R.R. Co.*,
    935 F.3d 852 (9th Cir. 2019) ....................................................7, 8, 13

*United States v. Brody*,
    2023 WL 2541118 (N.D. Cal. Mar. 16. 2023) ........................................7

*United States v. Fuentes-Cariaga*,
    209 F.3d 1140 (9th Cir. 2000) .........................................................3, 9

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)...................................................................9

*Waymo, LLC v. Uber Techs.*,
    2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) .................................6, 9, 11

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702 ..............................................................................1, 4, 9

Fed. R. Evid. 702 advisory committee's note..............................................7

Fed. R. Evid. 703 ..................................................................................7

**OTHER AUTHORITIES**

*Intuition*, Merriam-Webster.com Dictionary,
    https://www.merriam-webster.com/dictionary/intuition (last visited Sept. 15, 2023).............14

     - iii -      MOTION TO EXCLUDE TESTIMONY OF
SCOTT FASSER AND JOSHUA GANS

**PUBLIC REDACTED VERSION**

Susan Athey & Joshua Gans, *The Impact of Targeting Technology on Advertising Markets and Media Competition*, 100 Am. Econ. Rev. 608 (2010) ................................. 15

**PUBLIC REDACTED VERSION**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on December 14, 2023, at 10:00 a.m. in Courtroom 19 of the U.S. District Court for the Northern District of California, San Francisco Division, at 450 Golden Gate Avenue, San Francisco, CA, this Motion to Exclude Testimony of Joshua S. Gans and Scott Fasser filed by Defendant Meta Platforms, Inc. will be heard. Pursuant to Federal Rule of Evidence 702, Meta moves to exclude testimony of Scott Fasser and Joshua Gans. Meta's motion is based on this Notice of Motion and the supporting Memorandum of Points and Authorities.

## STATEMENT OF REQUESTED RELIEF

Meta requests that the Court exclude (i) the testimony of Scott Fasser in its entirety, and (ii) the testimony described in Section IV of Joshua Gans's Expert Report.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Expert witnesses must apply specialized knowledge to aid the factfinder in understanding the evidence or deciding an issue. Two of the putative experts Advertiser Plaintiffs put forward for class certification do not. Scott Fasser and Joshua Gans intend to offer testimony that would usurp—not aid—the factfinder. Both should be excluded.

Fasser provided a nine-paragraph report assuming two "facts" not in evidence about how advertisements are allegedly priced and purchased on Meta's properties. Fasser's own reply report and deposition testimony make clear, however, that he lacked any basis to testify on those topics. Moreover, because he was insufficiently acquainted with Meta's affairs, he conceded he was speculating in places, and admitted that his opening report was "██████" in others. And even beyond that, Fasser's testimony goes only to straightforward factual questions that are not proper subjects for expert testimony to begin with.

For his part, Gans conducted no analysis of the competitive effects of Meta's alleged conduct. He is principally offered to opine only that, whatever those effects were, they caused a classwide impact. Gans does not explain how he reached this conclusion, which is based on no identifiable methodology. Instead, he summarizes record evidence and reads documents into the

**PUBLIC REDACTED VERSION**

record (with Advertisers' gloss). Interpreting the evidence is a job for the factfinder, not an expert witness.

Meta brings this motion concerning both witnesses together given the overlapping grounds for exclusion.

## BACKGROUND

**<u>Fasser Report:</u>** Scott Fasser is offered to provide "████████████████████ ████████████████████████████████████" and "████" Ex. 1, Fasser Report ¶ 5.[1] His opening Report is nine paragraphs long and consists of two assertions: "███████████████████████████████████" and "███████████████████████████████████████" *Id.* ¶¶ 6-9. Fasser later admitted he was "███████": not all Meta advertisers purchase through the auction, and he "███████████████████████████████" when he offered his Report. Ex. 3, Fasser Tr. 23, 134-135. Fasser also admitted that ████████████████████████████████████████████████████████████████. *Id.* at 96-97. Fasser conceded under oath that "████████████████████████████████████████████████████████." *Id.* at 148-149.

**<u>Gans Report:</u>** Advertiser Plaintiffs put forward Gans to opine on, as relevant here, whether "███████████████████████████████████████████████" Ex. 4, Gans Report ¶ 49. In Section IV of his Report, Gans concludes that it did, asserting that ██████ Meta's alleged conduct all "██████████████████████████████████" *Id.* ¶ 50.[2] By the Report's own terms, this conclusion is based on "██████████" of a cherry-picked portion of the evidentiary record. *Id.* ¶¶ 52, 54. Long summaries of Plaintiffs' allegations about Meta's alleged conduct are followed by conclusory

---

[1] "Ex." citations reference exhibits to the Jennings Declaration filed herewith.

[2] Gans offers other opinions in other Sections of his Report, including that ████████████████ ████████████████████████████████████████████████████ Gans Report ¶ 13(f). Meta reserves the right to challenge the admissibility of these opinions if Advertisers offer them at the merits stage.

<u>**PUBLIC REDACTED VERSION**</u>

1   assertions that it "████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████" *Id.*

3   ¶ 110. Gans quotes the work of other researchers about competition in digital markets, but does

4   not explain how that bears on the distinct issue of classwide impact, which is the topic on which

5   he opines. Gans also relies on his self-described "intuition" that advertisers are willing to pay more

6   to advertise on Meta because it offers a higher quality product than its competitors, which

7   continued to be the case as Meta improved its advertising services through the conduct Advertisers

8   challenge. *Id.* ¶ 40; Ex. 5, Gans Reply ¶¶ 28-29 & n.32. This intuition, however, is contradicted in

9   part by Gans's own scholarship, which recognizes that improvements in ad "targeting … pushes

10  prices downwards" for some advertisers. Section IV of the Gans Report does not account for that

11  possibility.

12  **LEGAL STANDARD**

13          Even at the class certification stage, the party offering expert testimony bears the burden

14  of proving that it is admissible. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

15  31 F.4th 651, 683 (9th Cir. 2022) (en banc). An expert's testimony cannot be a mere conduit for

16  admitting factual material into the record as substantive evidence. *Caldwell v. City of S.F.*, 2021

17  WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021); *see also In re Citric Acid Litig.*, 191 F.3d 1090,

18  1102 (9th Cir. 1999) ("[A]n expert report cannot be used to prove the existence of facts set forth

19  therein."). Moreover, an expert must offer "specialized or scientific expertise," or something

20  "beyond the typical knowledge and experience of a jury." *DZ Reserve v. Meta Platforms, Inc.*,

21  2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022). That is why courts exclude expert testimony

22  on subjects the factfinder can readily understand on their own, *United States v. Fuentes-Cariaga*,

23  209 F.3d 1140, 1142 n.3 (9th Cir. 2000), or that "subsitut[es] the expert's judgment for the jury's

24  [factfinder]," *Oracle America, Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D.

25  Cal. Dec. 11, 2018). Experts must also "explain the basis for [their] conclusions." *Claar v.

26  Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). A court is not required to "admit opinion

27  evidence that is connected to existing data only by the *ipse dixit* of the expert." *In re Google Play

28  Store Antitrust Litig.*, 2023 WL 5532128, at *10 (N.D. Cal. Aug. 28, 2023).

<u>**PUBLIC REDACTED VERSION**</u>

1

2

3

**ARGUMENT**

The Court should exclude Fasser's testimony in full, and exclude testimony drawn from Section IV of Gans's Report, which contains his classwide impact opinion.

4    **I.    FASSER'S "FACTUAL BACKGROUND" SHOULD BE EXCLUDED**

5

6

7

8

9

10

11

12

13

14

15

16

Fasser is a putative industry expert who proposes to offer two opinions as factual background based on his personal experience working in advertising. But Fasser's testimony is far from the sort of expert opinion based on industry experience that might pass muster under the *Daubert* standard. Fasser lacks foundation for both of his opinions and has already admitted that one is wrong. His opinions are instead an inappropriate attempt by Advertisers to rewrite the factual record to support their class certification contentions, retreading—inaccurately—ground that has already been covered in the extraordinarily extensive discovery record in this case, including through many fact witnesses. Smuggling in false "facts" under the guise of expert testimony to support Advertisers' litigation narrative is not a permissible use of Fed. R. Evid. 702. To the contrary, Fasser's baseless and inaccurate "factual background" will not "assist the trier of fact … to determine a fact in issue" and should be excluded for that reason. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010).

17

18

19

20

21

22

23

24

Advertisers' contention that they can establish classwide antitrust injury depends on the existence of a common price-setting mechanism applicable to all Meta advertisers. If ad pricing is individualized, then there is no way for Advertisers to show by common proof that all Meta advertisers were overcharged. To establish this foundational point, Advertisers offer Fasser's opinions that "███████████████████████████████████████████████████████ ████████████████████████████████████████████ Fasser Report ¶¶ 8-9. Advertisers' primary expert, Michael A. Williams, relies on this testimony to support his conclusion that antitrust injury can be established on a classwide basis. Ex. 6, Williams Report ¶¶ 352-353.[3]

25

26

The problem for Advertisers is that Fasser has now admitted that he had no basis to offer these opinions in the first place, and as it turns out, his opinions are wrong. As Fasser explained:

27

28

---

[3] This conclusion depends on another premise that Advertisers cannot establish: that the auction prices are not individualized. Those prices are based on highly individualized factors.

**PUBLIC REDACTED VERSION**

Fasser Tr. 23.[4] Fasser did not undertake any investigation to determine the answer to this question before serving his opening Report. Instead, his opening Report was based entirely on his own "belief" at the time concerning topics Advertisers asked him to opine on:

Fasser Tr. 21-22. In other words, Fasser offered a guess—framed as expert opinion based on industry experience—and guessed wrong. Fasser conceded as much in his deposition:

Fasser Tr. 134-135.

Had Fasser investigated this question before serving his report, he would have learned from documents Meta produced in discovery, and discussed in the report of Meta's rebuttal expert Catherine Tucker, that many ads on Meta properties are sold outside the auction through a direct sales tool called Reach and Frequency. As Fasser admitted:

---
[4] Emphasis added throughout, unless otherwise noted.

**PUBLIC REDACTED VERSION**

Fasser Tr. 145. He did not know about them because he apparently performed no investigation into this question before submitting his report, and did not have any personal experience purchasing ads in this manner:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████
████████████████████████████████████████████████████████
███████████

Fasser Tr. 23; *id.* at 22 ("████████████████████████████████████████████████").

Unfortunately, this was not his only error. Fasser also conceded that his claim that "████████████████████████████" is wrong, agreeing that Meta has offered discounts to both "████████████████████████" and "████████████" Ex. 2, Fasser Reply ¶¶ 8-10.[5] Fasser did no work to investigate this claim before serving his report, and indeed admitted that he only ████████████████████████████████████████████████ Fasser Tr. 165, 177-178 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

These are not small or insignificant errors. His primary opinions are based on premises that are incorrect. They demonstrate the fundamental lack of foundation for Fasser's opinions—and for Advertisers' argument that they can prove a classwide overcharge without individualized inquiry based on his testimony that there is a common price-setting mechanism. So much so that, when he was confronted with evidence establishing that he was wrong about this, Fasser was ultimately forced to contradict the foundational point for which Advertisers offer his opinions:

---

[5] In response, Fasser retreats and claims that ████████████████████████████████████████████████████████████████████████████████████████████████████ Fasser Reply ¶¶ 4, 12. But what the evidence shows about the significance of these pricing mechanisms is "reasonably intelligible" to factfinder without Fasser's commentary, which is unnecessary and should be disregarded. *DZ Reserve*, 2022 WL 912890, at *9; *Waymo v. Uber Techs, Inc.*, 2017 WL 5148390, at *2-6 (N.D. Cal. Nov. 6, 2017).

**PUBLIC REDACTED VERSION**

Fasser Tr. 148-149.[6]

The net of all of this is that Fasser has no permissible foundation for the "factual background" about which he intends to testify. An "expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quoting Fed. R. Evid. 703). "If the witness is relying solely … on experience"—as Fasser is here—"then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Brody*, 2023 WL 2541118, at *5 (N.D. Cal. Mar. 16, 2023) (quoting Fed. R. Evid. 702 advisory committee's note) (quotation marks omitted). Fasser provides no such explanation. The only identified basis for Fasser's testimony is that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Fasser Report ¶ 1; Fasser Tr. 91 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮"). But he does not explain how his personal experience in digital product and marketing allowed him to reach the conclusions in his report about Meta's pricing mechanisms and ad auctions. His testimony should be excluded for that reason alone. *640 Octavia, LLC v. Pieper*, 2019 WL 1201581, at *2 (N.D. Cal. Mar. 14, 2019) (excluding expert who did not "explain[] why and how he came to his conclusions").

Fasser's testimony is doubly problematic because Advertisers also seek to use Fasser to "insert non-existent facts" they need to support their class certification bid "into the record through [an] expert report[]." *Caldwell*, 2021 WL 1391464, at *5. That is something experts simply cannot do, *id.*; *In re Citric Acid Litig.*, 191 F.3d at 1102, and this case is a perfect example of why not. The topics Fasser's report addresses have already been covered extensively in fact discovery from

---

[6] Fasser also lacks foundation for his other assertion about Meta's pricing: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fasser Report ¶ 6. When pressed, Fasser was unable to answer basic questions about Meta's use of this pricing method. Fasser Tr. 112 ("▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Advertisers rely on this groundless testimony in support of their market definition contentions.

**PUBLIC REDACTED VERSION**

current and former Meta employees. Multiple Meta witnesses testified about Meta's pricing mechanisms, Meta's ad auctions, and in many instances both.[7] The pricing of Meta's advertising and the methods employed for selling it are precisely the kind of information that should not come into evidence through the speculation of an outside expert; it is instead the province of "the employees or managers who have first-hand knowledge" of these subjects. *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1241 (W.D. Wash. 2018); *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 124 (S.D.N.Y. 2015) (same). Advertisers may be unhappy with the record they have made on this subject based on the information they gathered from the people who know about it, but that record is what it is. That Advertisers "f[ound] an expert who is willing to assume [the] correctness" of their "own speculation" about facts they wish were true cannot change that. *Stephens*, 935 F.3d at 856-57.

While the Court in its gatekeeping role "is not tasked with deciding whether the expert is right or wrong," *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013), expert testimony should be excluded where, as here, the "factual assumptions" on which it is based are "'indisputably wrong,'" *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Certainly nothing in Rule 703 requires a court to admit an opinion based on facts that are indisputably wrong.")); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001). Fasser is admittedly wrong and his opinions must be excluded.

## II.   SECTION IV OF GANS'S REPORT SHOULD BE EXCLUDED

Gans likewise fails to apply any discernible expertise or methodology in Section IV of his report, in which he opines that Advertisers can demonstrate classwide impact. Advertisers'

---

[7] *See, e.g.*, Ex. 7, Smallwood Tr. 117 ("███████████████████████████████████████████ ████████████████████████████████"); Ex. 8, Eide Tr. 314-315 (Meta "███████████████ ██████████████████████████████████"); Ex. 9, Bosworth Tr. 174 ("████████████████"); Ex. 10, Goldman Tr. 26-27 ("███████████████████████████████████████████████████████████ █████████"); Ex. 11, Baser Tr. 275-279 (discussing both at length). Meta also supplemented its initial disclosures nearly two months before the close of fact discovery with a witness specifically identified to testify about the topic of "Meta's advertising auctions." Ex. 12 at 5 (May 1, 2023 Supplemental Initial Disclosures). Advertisers never attempted to depose this witness.

1   principal expert, Williams, relies on Gans's opinion to suggest that Advertisers can demonstrate

2   antitrust impact on a classwide basis, which is obviously critical to any effort to certify a class

3   here. But, as with Fasser, the inputs Gans offers to Williams's analysis and Advertisers' class

4   certification bid are not the product of specialized expertise or application of economic analysis.

5   Instead, Gans recites Advertisers' factual contentions—arguments Advertiser counsel can make,

6   and have already made, without him, *Waymo*, 2017 WL 5148390, at *2-6—and asserts at the end

7   that "███████████████████" the conduct caused a classwide impact, Gans Report ¶ 110. This

8   opinion is not based on any discernable methodology or "real analysis" at all and must be excluded.

9   *Play Store*, 2023 WL 5532128, at *10.

10      A.   **Gans's Recitation Of Advertisers' Gloss On The Facts Cannot Support His**

11           **Classwide Impact Opinion**

12      The bulk of Section IV of Gans's Report "████████████████████

13   ███████████████████████████████████████████████████████

14   ████" Gans Report ¶ 54. This discussion involves no specialized expertise and intrudes on the

15   role of the factfinder. "Where an expert offers general testimony about an issue within the ken of

16   the [factfinder's] knowledge," it is not admissible under Rule 702. *Fuentes-Cariaga*, 209 F.3d at

17   1142 n.3; *United States v. Mejia*, 545 F.3d 179, 194-96 (2d Cir. 2008) ("Testimony is properly

18   characterized as 'expert' only if it concerns matters that the average juror is not capable of

19   understanding on his or her own."). Here, Gans purports to interpret documents and testimony that

20   are available to the factfinder to consider directly. This is not permissible expert testimony, nor is

21   it a permissible basis for Gans's classwide impact opinion. *Johns v. Bayer Corp.*, 2013 WL

22   1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding expert's "synopsis" of the factual record).

23      *First*, "the documents [Gans] interprets are reasonably intelligible to [the factfinder]

24   without special assistance." *DZ Reserve*, 2022 WL 912890, at *9. As one example, Gans states:

25   ████████████████████████████████████

26   ████████████████████████████████████

27   ████████████████████████████████████

28   ████████████████████████████████████

**PUBLIC REDACTED VERSION**

Gans Report ¶ 66-67. The factfinder can examine these documents and testimony independently to see what Meta executives "▮▮▮▮▮▮▮▮" and whether they credibly show what "▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" or the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Gans's personal views on this evidence are untethered from his economics background and are not expert opinion.

Elsewhere, Gans describes a presentation Meta gave to the FTC based on his review of the slide deck used and deposition testimony of the presenter:

Gans Report ¶ 103 & nn.99-100 (footnotes omitted). Whether the evidence shows that something was "▮▮▮▮▮▮▮" during a presentation is a determination that a lay factfinder is perfectly capable of drawing on his own. What happened in a meeting is a topic for "percipient witness[es]" with "first-hand knowledge," not a paid expert who was not present for the conversation. *Chen-Oster*, 114 F. Supp. 3d at 125. Indeed, Advertiser Plaintiffs have already argued these points, with exactly this framing, without Gans's assistance in multiple discovery motions. *See, e.g.*, Dkt. 577-3 (analysis discussed in Gans Report ¶ 66 "was described both internally and externally as devastating to Snapchat's ad business"); Dkt. 511-3 (asserting that Meta "t[old] the FTC" during the presentation referenced in Gans Report ¶ 103 "there was no new integration of its products"). Gans does not offer any economic analysis (or expertise of any sort) in interpreting these facts. He is simply putting an imprimatur of expert testimony on the arguments Advertisers' counsel seek to advance. That is precisely the sort of misuse of the expert process *Daubert* is intended to weed out.

*Second*, other conclusions Gans draws from the evidence are outside the scope of proper expert testimony. "Courts routinely exclude … expert testimony as to intent, motive, or state of mind." *Oracle*, 2018 WL 6511146, at *3. But that is precisely what Gans offers when, for example, he opines:

**PUBLIC REDACTED VERSION**

1

2

3

4

5

6

Gans Report ¶¶ 63-64 (footnotes omitted); *see also* Dkt. 565-3 (discussing the "importan[ce]" of

same topic based on same documents). Gans elsewhere contends:

9

10

11

12

Gans Report ¶ 90 (footnotes omitted). The factfinder can independently decide what was Meta's

"████████████," what was "████████" to its "████████████," and what its executives

"████████" Expert testimony like this "merely substitute[es] the expert's judgment for the

jury's and would not be helpful." *Oracle*, 2018 WL 6511146, at *3.

 *Third*, Gans's discussion of the evidence "ma[kes] the same arguments that the [Advertiser

Plaintiffs'] lawyers can make." *Waymo*, 2017 WL 5148390, at *2. Indeed, Gans at times uses

phrases and characterizations lifted directly from Advertisers' Complaint. *Compare, e.g.*, Gans

Report ¶ 85 ("███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████"), *with* Dkt. 391, Am. Compl. ¶¶ 512-513 ("Facebook agreed to segregate its

Watch product from its most powerful AI and ML systems …. In return, Netflix would permit

Facebook to use some of its most powerful data signals in Facebook's ad-targeting systems and

models."). "[T]he evidence [Gans] relied on can speak for itself, and his only contribution would

be to pile on a misleading façade of expertise." *Waymo*, 2017 WL 5148390, at *5.

 **B.** **Gans Does Not Explain The Basis For His Classwide Impact Opinion**

 After reciting Advertisers' factual contentions for each category of conduct challenged,

**PUBLIC REDACTED VERSION**

1    Gans simply states—without elaboration—that ████████████████████████████████

2    ████████████████████████"[8] Gans Report ¶¶ 73, 86, 107, or that it "███████████████

3    ████████████████" *id.* ¶¶ 88, 95; *see also id.* ¶ 71 ("████████████████████████

4    ████"). Gans does not "explain why or how" he reached those conclusions. *Play Store*, 2023

5    WL 5532128, at *10. All he says is that his opinion is true "████████████████████ ¶ 100.

6    That does not comply with the requirements that an expert (1) "follow some discernable

7    methodology," *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014),

8    and (2) "explain precisely how he went about reaching his conclusions and point to some objective

9    source … to show that he has followed the scientific method," *Carnegie Mellon Univ. v. Hoffmann-*

10   *LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1030 (N.D. Cal. 1999).

11       Consider Gans's discussion of Advertisers' contention that Meta "███████████████

12   ████████████████████████████████████" Gans Report ¶ 72. His analysis of this

13   alleged conduct is set forth in full below:

14   ██████████████████████████████████████████
      ██████████████████████████████████████████
15   ██████████████████████████████████████████
      ██████████████████████████████████████████
16   ██████████████████████████████████████████
      ██████████████████████████████████████████
17   ██████████████████████████████████████████
      ██████████████████████████████████████████
18   ██████████████████████████████████████████
      ██████████████████████████████████████████
19   ██████████████████████████████████████████
      ██████████████████████████████████████████
20   ██████████████████████████████████████████
      ████████████████████████████████████

21   Gans Report ¶ 73 (footnotes omitted). This is classic *ipse dixit*. *Play Store*, 2023 WL 5532128, at

22   *10. There is no way to replicate Gans's analysis other than just making the equivalent opposite

23   pronouncement. *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1047 (9th Cir.

24   2014) ("Under *Daubert*'s testability factor, the primary requirement is that '[s]omeone else using

25   the same data and methods … be able to replicate the result[s].'" (alterations in original)). The

26   _____

27   [8] He does not explain what market "████████" he is referring to here or how that supports his
     opinion. Indeed, Gans takes Advertisers' alleged social advertising market as a given and expressly

28   says he does not perform any "████████████████████████." Gans Report ¶ 7.

1    remainder of Section IV of Gans's Report proceeds in a similar fashion.

2          To be sure, Section IV of Gans' Report contains citations to and block quotations from

3    various other researchers. But these references have nothing to do with Gans's classwide injury

4    opinion, discussing concepts that are far afield from the topic. For example, Gans references the

5    work of the economist Jean Tirole when discussing Advertisers' theory that Meta excluded firms

6    like Ticketmaster from entering social advertising through contractual restrictions on their use of

7    Facebook users' data. Gans Report ¶¶ 78-79. Gans quotes Tirole for the proposition that

8    "███████████████" should be "███████████" with a "platform's desire to protect its natural-

9    monopoly segment … by depriving alternative platforms from the apps that they need to compete

10   with the incumbent platform." *Id.* ¶ 79. This observation has no bearing on classwide impact. By

11   its terms, it reflects someone else's policy "concern," and is not an assessment of whether any

12   adverse effects from that conduct would be felt classwide. Indeed, none of the references to

13   economic literature in Section IV of Gans's Report discuss any methods for assessing the existence

14   of classwide impact. *Id.* ¶¶ 52-53, 55-57, 70, 78-79, 85, 102, 106, 108-109. All relate instead to

15   the *potential* competitive effects of certain conduct, a subject on which Gans has done no analysis.

16   *See id.* ¶¶ 10-11, 110 (describing "█████████████████████████████████████

17   ████"). And while Gans characterizes some of the analysis in his Report as an assessment of the

18   "███████████████████" of the challenged conduct, *id.* ¶ 11, he does not connect any of that

19   analysis to the question on which he ultimately opines, namely, whether these potential effects

20   ("██████████" or not) would have a classwide impact.

21       **C.**    **Gans's "Intuition" About Advertiser Willingness to Pay Cannot Support His**

22           **Classwide Impact Opinion**

23         The closest Gans comes to offering an explanation as to why the conduct at issue could

24   have any impact at all (classwide or otherwise) appears in a completely different section of his

25   Report, where he "████████████████████████████████████████████████

26   ██████████████████████████████" Gans Report ¶¶ 37-41. But scientific expert testimony

27   must be based on science, "not merely assumptions and speculation." *Stephens*, 935 F.3d at 856.

28         In his Reply Report, Gans seems to suggest that this "intuition" was his original basis for

**PUBLIC REDACTED VERSION**

1    the classwide impact opinion he offers in Section IV of his opening Report. *See* Gans Reply ¶¶ 28-

2    29 & n.32. The Court should not allow Gans to backfill the gap in his original Report in this

3    manner. It is improper to "offer new bases for an old opinion" in a reply report. *Matthew Enter.,*

4    *Inc. v. Chrysler Grp., LLC*, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016). "Using a [reply]

5    report as a backdoor to introduce analysis that could have been included in the opening report is

6    squarely foreclosed by Rule 26." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 2022 WL

7    1203075, at *2 (N.D. Cal. Apr. 22, 2022). But regardless of whether it was properly disclosed,

8    Gans's intuition is not a sufficiently reliable basis for his opinion that all Meta advertisers suffered

9    a common injury. This is especially true because Gans's "intuition" amounts only to stating the

10   unremarkable proposition that some advertisers are willing to pay more for a higher quality

11   advertising product. He states that "███████████████████████████████████████

12   ███████" will "████████████" an advertising platform with "███████████████

13   ███████████████████████" its competitors, enabling "███████████████████████

14   ███████████████████" Gans Report ¶ 40. And Meta, by allegedly maintaining its status as

15   "a market leader in the social advertising market[,] can charge advertisers a premium." *Id.* ¶ 13(c).

16   But none of this is appropriate expert testimony.

17         As a threshold matter, "intuition" is definitionally non-scientific. It is defined as

18   "knowledge or conviction gained … without evident rational thought and inference." *Intuition*,

19   Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/intuition (last

20   visited Sept. 15, 2023). This is no mere semantics issue—it describes what Gans is doing and why

21   the opinion must be excluded.[9]

22         Moreover, as Gans has recognized in his own scholarship, this "intuition" is only half the

23   story. Improvement in targeting in advertising in some circumstances decreases rather than

24

25   ───────────────

     [9] Gans's "intuition" is also obvious. "Expert testimony on [an] obvious conclusion is unnecessary."

26   *AFMS LLC v. United Parcel Serv. Co.*, 2014 WL 12515335, at *4 (C.D. Cal. Feb. 5, 2014)
     (excluding "opinion [] that coincidences are unlikely"). It does not offer "anything beyond the

27   typical knowledge and experience of a jury." *DZ Reserve*, 2022 WL 912890, at *9. The factfinder
     can consider Advertiser Plaintiffs' arguments about the significance of advertisers' willingness to

28   pay more for a higher quality advertising product without Gans's assistance.

**PUBLIC REDACTED VERSION**

increases prices. In a paper he co-authored in 2010, Gans wrote that while "[i]ntuition suggests that an outlet adopting targeting technologies will increase demand for advertising and with that prices," he concluded that "targeting [also] allows general outlets to more efficiently allocate scarce advertising space." Ex. 13, Athey & Gans, *The Impact of Targeting Technology on Advertising Markets and Media Competition*, 100 Am. Econ. Rev. 608, 608 (2010). "This increase in effective supply pushes prices downwards." *Id.* Despite having "develop[ed] a formal model which identifies [this] separate supply-side impact of targeting" and opining on the "resolution of these demand and supply effects" under various conditions, *id.*, Gans does not apply this model. Nor does the Gans Report even seriously account for the possibility that enhanced ad targeting may result in downward pricing pressure. This would be the sort of "detailed examination of market data" and "thorough economic analysis" that courts have "required for admissibility of 'antitrust economics' opinions" like Gans's, but that are missing from his Report. *AFMS*, 2014 WL 12515335, at *8.

The only excuse Gans offers for having skipped this step is his assertion that it is inapplicable because Meta, he claims, is a monopolist that does not have any competitors. Gans Reply ¶¶ 19, 29. But he has done no work to verify that claim. Having ignored his own research on this subject, Gans's common injury opinion is "nothing more than [an] unsupported, untestable conclusion[]." *AFMS*, 2014 WL 12515335, at *8.

In sum, because Gans's classwide impact opinion is based on his reading of the evidence, and not any expertise, it is not admissible. Testimony from an expert that relies on the "conclusory statements of the expert's, rather than" his own "independent evaluation," lacks a reliable basis and is not admissible. *Grasshopper House, LLC v. Clean & Sober Media LLC*, 2019 WL 12074086, at *3 (C.D. Cal. July 1, 2019).

**CONCLUSION**

The Court should exclude the testimony from Scott Fasser in full and the testimony drawn from Section IV of Joshua S. Gans's Report.

-15-           MOTION TO EXCLUDE TESTIMONY OF
SCOTT FASSER AND JOSHUA GANS

**PUBLIC REDACTED VERSION**

1    Dated: September 15, 2023

By: */s/ Sonal N. Mehta*

2    SONAL N. MEHTA (SBN 222086)
      Sonal.Mehta@wilmerhale.com
3    WILMER CUTLER PICKERING HALE
      AND DORR LLP
4    2600 El Camino Real, Suite 400
      Palo Alto, California 94306
5    Telephone: (650) 858-6000

6
      DAVID Z. GRINGER (*pro hac vice*)
7      David.Gringer@wilmerhale.com
      ROSS E. FIRSENBAUM (*pro hac vice*)
8      Ross.Firsenbaum@wilmerhale.com
      RYAN CHABOT (*pro hac vice*)
9      Ryan.Chabot@wilmerhale.com
      PAUL VANDERSLICE (*pro hac vice*)
10     Paul.Vanderslice@wilmerhale.com
      WILMER CUTLER PICKERING HALE
11    AND DORR LLP
      7 World Trade Center
12    250 Greenwich Street
      New York, New York 10007
13    Telephone: (212) 230-8800

14
      ARI HOLTZBLATT (*pro hac vice*)
15     Ari.Holtzblatt@wilmerhale.com
      MOLLY M. JENNINGS (*pro hac vice*)
16     Molly.Jennings@wilmerhale.com
      WILMER CUTLER PICKERING HALE
17    AND DORR LLP
      2100 Pennsylvania Avenue NW
18    Washington, DC 20037
      Telephone: (202) 663-6000
19

20    MICHAELA P. SEWALL (*pro hac vice*)
21     Michaela.Sewall@wilmerhale.com
      WILMER CUTLER PICKERING HALE
22    AND DORR LLP
      60 State Street
23    Boston, Massachusetts 02109
      Telephone: (617) 526-6000
24

25
      *Attorneys for Defendant Meta Platforms, Inc.*
26

27

28

<u>**PUBLIC REDACTED VERSION**</u>

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this 15th day of September 2023, I electronically transmitted the

3   foregoing document to the Clerk's Office using the CM/ECF System.

4

5                                        By:   */s/ Sonal N. Mehta*
                                               _____
                                               Sonal N. Mehta
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28