UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILLIAN KLEIN, *et al.*,<br><br>                                Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>                                Defendant.<br><br>This document relates to: *All Consumer Actions* | Consolidated Case No. 3:20-cv-08570-JD<br><br>**[PROPOSED] ORDER GRANTING CONSUMER PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. CATHERINE TUCKER**<br><br>The Hon. James Donato<br><br>Hearing Date: Dec. 14, 2023<br>Hearing Time: 10:00 a.m. |

1  Now before the Court is Consumer Plaintiffs' Motion to Exclude Portions of the Expert
2  Report and Testimony of Dr. Catherine Tucker (the "Motion"). The Court, having considered the
3  Motion and its accompanying memorandum, hereby finds that the Motion is **GRANTED**.

4  Expert opinion evidence is admissible under Federal Rule of Evidence 702 unless "the
5  proponent demonstrates that the expert is qualified and (a) the expert's scientific, technical, or other
6  specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in
7  issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable
8  principles and methods; and (d) the expert has reliably applied the principles and methods to the facts
9  of the case." *Stiner v. Brookdale Senior Living, Inc.*, No. 17-cv-03962-HSG, 2023 WL 2722294, at
10 *5 (N.D. Cal. Mar. 30, 2023). The proponent of the opinion bears the burden of establishing each
11 element. *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2022 WL 4468266, at *2 (N.D. Cal. Sept.
12 26, 2022). The Court, accordingly, may "exclude junk science." *Day v. GEICO Cas. Co.*, No. 21-cv-
13 02103-BLF, 2022 WL 16556802, at *2 (N.D. Cal. Oct. 31, 2022).

14 Consumer Plaintiffs' expert, Dr. Nicholas Economides—a Professor of Economics at the
15 Stern School of Business of New York University—offers a number of opinions in this litigation,
16 one of which is that there is a methodology to calculate class wide *and* individual damages from the
17 *but-for* world where Facebook would need to make complete disclosures about its data collection and
18 use practices and compensate class members in return. To offer this opinion, Dr. Economides draws
19 on twelve, real world yardstick programs (including from Facebook itself) that identify the market
20 price users receive when paid for their data.

21 Facebook's expert, Dr. Catherine Tucker, makes a number of criticisms of these yardstick
22 programs, but one criticism must be excluded from the record. Dr. Tucker makes the misguided
23 criticism that these yardsticks are flawed because they are not in the same relevant product market as
24 Facebook itself (namely, the personal social network market). "'[T]he yardstick approach is a well-
25 established methodology' in antitrust actions." *Moehrl v. The Nat'l Assoc. of Realtors*, No. 1:19-cv-
26 01610, 2023 WL 2683199, at *8 (N.D. Ill. Mar. 29, 2023) (citing *In re Dealer Mgmt. Sys.*, 581 F.

27
28

Supp. 3d 1029, 1073 (N.D. Ill. 2022). *See also Fishman v. Est. of Wirtz,* 807 F.2d 520, 551 (7th Cir. 1986) ("The concept of a 'yardstick' measure of damages, that is, linking the plaintiff's experience in a hypothetical free market to the experience of a comparable firm in an actual free market, is . . . well accepted.").

Dr. Tucker criticizes this yardstick methodology, in part, because it supposedly "makes no attempt to connect its yardstick programs to the alleged 'Personal Social Network Market,'" Tucker VII.A.2, and because the personal social network market "does not include any of the yardstick programs." Tucker ¶ 192 (criticizing the yardsticks because they lack the characteristics of the personal social network program, including "the ability to find family and friends," a "centralized activity feed," a means to communicate with other participants "by posting or commenting" or a "social graph."); *id.* (criticizing criticizes Dr. Economides for using the prices offered by these market research programs "which are not in the alleged 'Personal Social Network Market'" as yardsticks for the monetary compensation that would have been paid to users in the *but-for* world.). Said another way, Dr. Tucker criticizes the dozen yardsticks Dr. Economides identified and used for his analysis ***because they themselves are not in the same relevant market as*** Facebook. Dr. Tucker's mistake is somewhat shocking for an economist because it fundamentally misunderstands the purposes of a yardstick program. However, when asked at her deposition, Dr. Tucker conceded she had never performed a yardstick damages analysis herself, perhaps identifying the reason for her clear error. *See* Ex. 75, Tucker Dep. 297:23–298:6.

To put it plainly, Dr. Tucker has confused yardsticks with "before-and-after" benchmarks. As explained by Drs. Rubinfeld and McCrary in *Measuring Benchmark Damages in Antitrust Litigation*—an article that Dr. Tucker herself cites in her report—in the yardstick method, "one compares prices during the period in which the antitrust violation is believed to have had an effect (the 'impact period') to prices in other markets that are deemed to be reasonably comparable to the market at issue." Tucker ¶ 195 fn.436; *see also* Justin McCrary and Daniel L. Rubinfeld, *Measuring Benchmark Damages in Antitrust Litigation*, 3 Journal of Econometric Methods 63–74 (2014). This

is different from a benchmark approach, which "refers to comparisons to the same market but in a time period free from the conduct, and yardstick refers to comparisons to other markets in the same time period." Economides Reply ¶ 142. Because Facebook has dominated the personal social network market for so long, a "pre-conduct" benchmark was not feasible here—a point Dr. Tucker does not contest. Economides Reply ¶ 142. Instead, Dr. Economides turned to the series of twelve yardsticks where multiple different companies (including Facebook itself) compensated users for the same sort of data at issue in this case.

Paragraphs 189 through 197 of Dr. Catherine Tucker's Report, and any other testimony that Dr. Nicholas Economides's yardstick methodologies are flawed either because the entities are not in the relevant market or because the entities are not comparable, is hereby excluded from the record under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and related precedents.

**IT IS SO ORDERED.**

Dated: _____, 2023

HONORABLE JAMES DONATO
UNITED STATES DISTRICT JUDGE