1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Kevin Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Interim Co-Lead Consumer Class Counsel*

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

11

## NORTHERN DISTRICT OF CALIFORNIA

12

## SAN FRANCISCO DIVISION

13

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 3:20-cv-08570-JD |
| Plaintiffs, | |
| vs. | **DECLARATION OF KEVIN Y. TERUYA IN SUPPORT OF CONSUMER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL; AND MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. CATHERINE TUCKER** |
| META PLATFORMS, INC., | |
| Defendant. | |
| This Document Relates To: All Actions | The Hon. James Donato |
| | Hearing Date: Dec. 14, 2023 at 10:00 a.m. |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Kevin Y. Teruya, declare:

1.      I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). I serve as Interim Co-Lead Consumer Class Counsel for the Consumer Class in this action.

2.      I respectfully submit this declaration in support of Consumer Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, and Consumer Plaintiffs' Motion to Exclude Portions of the Expert Report and Testimony of Dr. Catherine Tucker. I have been actively involved in this action, am familiar with the proceedings, and have personal knowledge of the matters stated herein.

**EXHIBITS REGARDING CONSUMERS' MOTIONS**

3.      On July 7, 2023, Dr. Nicholas Economides submitted an opening expert class certification report on behalf of Consumer Plaintiffs ("Consumers"). On July 27, 2023, Dr. Economides submitted a corrected version of his July 7, 2023 report reflecting errata. A true and correct copy of the corrected version of Prof. Economides' opening class certification expert report is attached hereto as **Economides Report** and is filed provisionally under seal.

4.      On July 7, 2023, Dr. Joseph Farrell submitted an opening expert class certification report on behalf of Consumers. A true and correct copy of Dr. Farrell's opening class certification expert report is attached hereto as **Farrell Report** and is filed provisionally under seal.

5.      On July 7, 2023, Mr. Robert L. Klein submitted an opening expert class certification report on behalf of Consumers. A true and correct copy of Mr. Klein's opening class certification expert report is attached hereto as **B. Klein Report**.

6.      On July 7, 2023, Professor Sarah Lamdan submitted an opening expert class certification report on behalf of Consumers. A true and correct copy of Prof. Lamdan's opening class certification expert report is attached hereto as **Lamdan Report** and is filed provisionally under seal.

7.      On August 4, 2023, Dr. Catherine Tucker submitted a User Class Rebuttal Report on behalf of Facebook in opposition to Consumers' motion for class certification. A true and correct copy of Dr. Tucker's class certification expert report is attached hereto as **Tucker Consumer Report** and is filed provisionally under seal.

8.      On August 4, 2023, Ms. Rebecca Kirk Fair submitted an expert class certification

report on behalf of Facebook in opposition to Consumers' motion for class certification. A true and correct copy of Ms. Kirk Fair's class certification expert report is attached hereto as **Kirk Fair Report** and is filed provisionally under seal.

9.    On September 1, 2023, Dr. Nicholas Economides submitted a reply expert class certification report on behalf of Consumers. A true and correct copy of Dr. Economides' reply class certification expert report is attached hereto as **Economides Reply Report** and is filed provisionally under seal.

10.    On September 1, 2023, Mr. Robert L. Klein submitted a reply expert class certification report on behalf of Consumers. A true and correct copy of Mr. Klein's reply expert class certification expert report is attached hereto as **B. Klein Reply Report** and is filed provisionally under seal.

11.    On September 1, 2023, Professor Sarah Lamdan submitted a reply expert class certification report on behalf of Consumers. A true and correct copy of Prof. Lamdan's reply class certification expert report is attached hereto as **Lamdan Reply Report** and is filed provisionally under seal.

12.    Consumers also submit additional exhibits regarding Consumers' Motions, including documents and deposition transcripts. For the Court's convenience, the relevant portions of the documents and deposition transcripts have been highlighted and, where applicable, excerpted.[1] True and correct copies of these exhibits are attached here as **Exs. 1–78** and are further described below.

| Ex. No. | Description of Exhibit | Provisionally Filed Under Seal |
|---|---|---|
| 1 | Article entitled "*Well, These New Zuckerberg IMs Won't Help Facebook's Privacy Problems*," Business Insider (May 13, 2010) | No |
| 2 | CONSUMER-FB-0000001857 | No |
| 3 | Excerpts from CONSUMER-FB-0000002291 | No |
| 4 | CONSUMER-FB-0000044206 | No |
| 5 | CONSUMER-FB-0000044208 | No |

---

[1]    Should the Court find it helpful, Consumers can submit any cited materials in full.

| Ex. No. | Description of Exhibit | Provisionally Filed Under Seal |
|---|---|---|
| 6 | CONSUMER-FB-0000044213 | No |
| 7 | CONSUMER-FB-0000044232 | No |
| 8 | Excerpts from Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, § 782b (2023 Supplement) | No |
| 9 | Excerpts from Post on Facebook Website regarding "Privacy Progress Update" | No |
| 10 | Excerpts from Post on Facebook Website entitled "*Introducing Study from Facebook*," Sagee Ben Zedeff (June 11, 2019) | No |
| 11 | Article entitled "*Here's the transcript of Recode's interview with Facebook CEO Mark Zuckerberg about the Cambridge Analytica controversy and more*," Vox (Mar. 22, 2018) | No |
| 12 | Excerpts from Publicly-Available Presentation Regarding Facebook's App Developer Investigation (Sept. 2018) | No |
| 13 | Letter from U.S. Senate Select Committee on Intelligence to Mark Zuckerberg (Feb. 6, 2023) | No |
| 14 | Post on Facebook Website entitled "*An Update on Our Plans to Restrict Data Access on Facebook*," Mike Schroepfer (April 4, 2018) | No |
| 15 | Post on Facebook Website (via Wayback Machine) entitled "*A New Suite of Safety Tools*," Arturo Bejar (Apr. 19, 2011) | No |
| 16 | Article Entitled "*Mark Zuckerberg's Privacy Shell Game*," Wired (Apr. 10, 2018) | No |
| 17 | Summary Exhibit of Illustrative Examples of Facebook's Deceptive Statements and Omissions Regarding Data Practices | Yes |
| 18 | PALM-002447238 | Yes |
| 19 | Excerpts from PALM-002469803 | Yes |
| 20 | PALM-003182426 | Yes |
| 21 | PALM-003543014 | Yes |
| 22 | PALM-003823269 | Yes |
| 23 | PALM-003961720 | Yes |
| 24 | Excerpts from PALM-004235531 | Yes |
| 25 | PALM-004257464 | Yes |

| Ex. No. | Description of Exhibit | Provisionally Filed Under Seal |
|---------|----------------------|-------------------------------|
| 26 | PALM-005598229 | Yes |
| 27 | PALM-006273517 | Yes |
| 28 | PALM-008881801 | Yes |
| 29 | PALM-009048148 | Yes |
| 30 | PALM-009278820 | Yes |
| 31 | Excerpts from PALM-010069776 | Yes |
| 32 | PALM-010314434 | Yes |
| 33 | PALM-010595431 | Yes |
| 34 | PALM-010644865 | Yes |
| 35 | Excerpts from PALM-011140935 | Yes |
| 36 | Excerpts from PALM-012003899 | Yes |
| 37 | PALM-012266626 | Yes |
| 38 | PALM-012841182 | Yes |
| 39 | Excerpts from PALM-012846445 | Yes |
| 40 | Excerpts from PALM-012965558 | Yes |
| 41 | Excerpts from PALM-012991911 | Yes |
| 42 | Excerpts from PALM-013003886 | Yes |
| 43 | Excerpts from PALM-013008413 | Yes |
| 44 | PALM-013086782 | Yes |
| 45 | Excerpts from PALM-014362572 | Yes |
| 46 | Excerpts from PALM-015654588 | Yes |
| 47 | PALM-016517685 | Yes |
| 48 | PALM-016555802 | Yes |
| 49 | PALM-016881862 | Yes |
| 50 | Excerpts from PALM-016904790 | Yes |

| Ex. No. | Description of Exhibit | Provisionally Filed Under Seal |
|---------|----------------------|-------------------------------|
| 51 | Excerpts from PALM-017036460 | Yes |
| 52 | PALM-017042298 | Yes |
| 53 | Excerpts from PALM-017042708 | Yes |
| 54 | Excerpts from PALM-017069195 | Yes |
| 55 | PALM-ADI-0000653883 | Yes |
| 56 | PALM-FTC-00001385 | Yes |
| 57 | Article Entitled "*Facebook pays teens to install VPN that spies on them*," TechCrunch (Jan. 29, 2019) | No |
| 58 | Witness Background Document re Rule 30(b)(6) Deposition of Facebook Regarding Compensating Users for Data | Yes |
| 59 | Excerpts from the Deposition Transcript of Brian Acton, taken in *Klein v. Meta Platforms* on April 12, 2023 | Yes |
| 60 | Excerpts from the Deposition Transcript of Sagee Ben-Zedeff (Rule 30(b)(6) Deposition), taken in *Klein v. Meta Platforms* on July 27, 2023 | Yes |
| 61 | Excerpts from the Deposition Transcript of Jacqueline Chang, taken in *Klein v. Meta Platforms* on April 25, 2023 | Yes |
| 62 | Excerpts from the Deposition Transcript of Stacy Chen (Rule 30(b)(6) Deposition), taken in *Klein v. Meta Platforms* on June 15, 2023 | Yes |
| 63 | Excerpts from the Deposition Transcript of Tom Cunningham, taken in *Klein v. Meta Platforms* on June 21, 2023 | Yes |
| 64 | Excerpts from the Deposition Transcript of Erin Egan, taken in *Klein v. Meta Platforms* on June 9, 2023 | Yes |
| 65 | Excerpts from the Deposition Transcript of David Levenson, taken in *Klein v. Meta Platforms* on May 10, 2023 | Yes |
| 66 | Excerpts from the Deposition Transcript of Javier Olivan, taken in *Klein v. Meta Platforms* on March 24, 2023 | Yes |
| 67 | Excerpts from the Deposition Transcript of Michel Protti, taken in *Klein v. Meta Platforms* on June 23, 2023 | Yes |
| 68 | Excerpts from the Deposition Transcript of Guy Rosen, taken in *Klein v. Meta Platforms* on February 24, 2023 | Yes |
| 69 | Excerpts from the Deposition Transcript of Gregg Stefancik (Rule 30(b)(6) Deposition), taken in *Klein v. Meta Platforms* on | Yes |

| Ex. No. | Description of Exhibit | Provisionally Filed Under Seal |
|---|---|---|
|  | June 23, 2023 |  |
| 70 | Excerpts from the Deposition Transcript of David Wehner, taken in *Klein v. Meta Platforms* on March 20, 2023 | Yes |
| 71 | Excerpts from the Deposition Transcript of Mark Weinstein, taken in *Federal Trade Commission v. Meta Platforms* and *Klein v. Meta Platforms* jointly on April 28, 2023 | Yes |
| 72 | Excerpts from the Deposition Transcript of Mark Weinstein, taken in *Klein v. Meta Platforms only* on April 28, 2023 | Yes |
| 73 | Excerpts from the Deposition Transcript of Mark Zuckerberg, taken in *Klein v. Meta Platforms* on May 16, 2023 | Yes |
| 74 | PALM-006006351 | Yes |
| 75 | Excerpts from the Deposition Transcript of Dr. Catherine Tucker, taken in *Klein v. Meta Platforms only* on April 28, 2023 | Yes |
| 76 | Excerpts from PALM-016440640 | Yes |
| 77 | Excerpts from PALM-016440707 | Yes |
| 78 | Excerpts from the Deposition Transcript of Jay Parikh, taken in *Klein v. Meta Platforms only* on March 9, 2023 | Yes |

## MY AND QUINN EMANUEL'S QUALIFICATIONS AND EXPERIENCE

13.     I lead the Consumer Plaintiffs' case along with my Interim Co-Lead Consumer Class Counsel Shana E. Scarlett of Hagens Berman Sobol Shapiro LLP. Below, I provide biographies summarizing some of my and Quinn Emanuel's relevant experience. Ms. Scarlett provides biographies summarizing her and Hagens Berman's relevant experience in her accompanying declaration contemporaneously filed with Consumer Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

### The Quinn Emanuel Team in This Case.

14.     **Kevin Y. Teruya**: I am a partner in Quinn Emanuel's Los Angeles office and a 1998 graduate of Harvard Law School. My practice focuses primarily on antitrust and unfair competition litigation. I was named a "Top Antitrust Lawyer" in California by the *Daily Journal* in 2022, have been recognized as a "Super Lawyer" by *Southern California Super Lawyer* for years, and am one of

the 500 leading plaintiff financial lawyers according to *Lawdragon*. I have served as an officer of both the Executive Committee of the Antitrust & Unfair Competition Law Section of the State Bar of California, and of the Executive Committee of the Antitrust Section of the Los Angeles County Bar Association, and as a member of the editorial board for the annual "California Antitrust and Unfair Competition Law" treatise. I am originally from Hawaii and previously served as a law clerk to the Honorable Herbert Y.C. Choy of the United States Court of Appeals for the Ninth Circuit, who was the first Asian American to serve as a federal judge.

15.     Some of my representative experiences include:

a.     ***Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.):** I served as part of the trial team for defendant Micron Technology, Inc. in an antitrust action involving an alleged conspiracy to boycott certain computer memory chips. Plaintiff Rambus sought **$4 billion—trebled to $12 billion**—from Micron. After a three-month trial, the jury rejected Rambus' claims, **awarding no damages**.

b.     ***Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio):** I served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam industry. In that case, which I helped lead day-to-day, the court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues. Through my and my team's efforts, the class obtained more than **$430 million** in settlements.

c.     ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.):** I was a lead member of the team that represented Songkick, a startup innovator in the live music industry, which brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for

artist presale ticketing services. Through my and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

d. ***Social Ranger LLC v. Facebook Inc.*, Case No. 1:14-cv-01525-LPS (D. Del.)**: I served as counsel for plaintiff Social Ranger LLC in an antitrust action against Facebook. The plaintiff, a technology company, asserted claims against Facebook for tying and monopolization in the market for virtual currency services on social game networks. The case was resolved shortly before trial in 2017.

e. ***FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.):** I served as part of a team that represented Fiat Chrysler Automobiles US LLC in a billion-dollar antitrust action against Yazaki Corporation and Yazaki North America, Inc. This action was part of the multi-district litigation (*In re Automotive Parts Antitrust Litigation*) arising from the largest criminal antitrust investigation in U.S. history. The action arose from a long-running global conspiracy by Yazaki and its co-conspirators to fix prices, rig bids, and allocate customers for wire harnesses sold to original equipment manufacturers for automobiles. The matter was resolved after summary judgment briefing in 2020.

f. ***Heckman v. Live Nation Entertainment, Inc. et al*, Case No. 2:22-cv-00047-GW (C.D. Cal.):** I currently serve as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster. The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing and/or attempting to monopolize the relevant markets for primary and secondary ticketing services for major concert venues, and by restraining competition in those

markets. The court recently denied Live Nation's motion to compel arbitration, and the case is currently pending.

g. ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.):** I was part of the trial team representing homebuilder plaintiffs against drywall manufacturers. Plaintiffs alleged that the defendants conspired to fix the prices of drywall in the United States and sought damages (before trebling) in excess of $200 million. This action was part of multi-district litigation (*In re: Domestic Drywall Antitrust Litigation*) then-pending in the United States District Court for the Eastern District of Pennsylvania that was remanded back to the Northern District of California for trial. The case resolved confidentially shortly before trial.

h. ***Jones et al v. PGA Tour, Inc.,* Case No. 5:22-cv-04486-BLF (N.D. Cal.):** I served as a member of the team pursuing antitrust claims against the PGA Tour on behalf of LIV Golf, Inc. and certain professional golfers regarding the PGA Tour's monopsonization of the market for the services of professional golfers for elite events and its monopolization of the market of the promotion of elite professional golf events. The case resolved during discovery.

i. ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 1:21-cv-01175-MKB (E.D.N.Y.):** I serve as part of the team pursuing treble damages antitrust claims against Visa and MasterCard based on their use of anti-competitive agreements which limit competition and fix the interchange fees paid by merchants and payment processors. The case is currently pending.

j. ***In re: German Automotive Manufacturers Antitrust Litig.*, Case No. 3:17-md-02796-CRB (N.D. Cal.):** I served as defense counsel for Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-action litigation involving claims that major German auto manufacturers conspired to reduce innovation in their passenger vehicles throughout the world. The court

1    dismissed—**with prejudice**—the putative consumer and auto dealers classes'

2    claims.

3    k.   *In re Cathode Ray Tube Antitrust Litig.*, **Case No. 07-cv-05944-JST (N.D.**

4    **Cal.):** I served as part of the team that defended Mitsubishi Electric

5    Corporation and two of its U.S. subsidiaries in multiple antitrust class and

6    individual actions involving allegations of an international price-fixing

7    conspiracy spanning more than a decade in the multi-billion dollar market for

8    cathode ray tubes.

9    l.   *Clemmy's LLC v. Nestlé USA, Inc. and Nestlé Dreyer's Ice Cream Company,*

10   ***Inc.*, Case No. BC500811 (Los Angeles Super. Ct.)**: I co-led the defense of

11   Nestlé USA, Inc. and Nestlé Dreyer's Ice Cream Company in an antitrust

12   action under the California Cartwright Act involving an alleged conspiracy to

13   exclude competition in a claimed market for "better for you" ice cream. The

14   court granted Nestlé's motion for summary judgment, dismissing the plaintiff's

15   antitrust claim.

16   m.   *Calabasas Luxury Motorcars, Inc. v. General Motors LLC et al*, **Case No.**

17   **2:21-cv-09566-TJH (C.D. Cal.):** I co-lead the team defending General Motors

18   LLC in a putative class action asserting antitrust and unfair competition claims

19   arising out of a supposed conspiracy between GM LLC and General Motors

20   Financial (General Motors' leasing subsidiary) regarding the automobile lease

21   pay-off process. The court granted GM LLC's motion to dismiss and dismissed

22   plaintiff's claims without prejudice.

23   16.   **Manisha M. Sheth**: Ms. Sheth is a partner in Quinn Emanuel's New York office and

24   also serves as co-chair of the firm's Government and Regulatory Litigation and Sexual Harassment

25   and Employment Discrimination practices. She is a seasoned trial lawyer with over 24 years of

26   experience in both private practice and government service as a former federal and state prosecutor.

27   Ms. Sheth and the firm were recently appointed co-lead counsel in the aerospace no-poach litigation

28   pending in the District of Connecticut. Ms. Sheth served as the Executive Deputy Attorney General

for the Economic Justice Division at the Office of the New York Attorney General, where she supervised all complex commercial investigations and civil enforcement actions in the areas of antitrust, data security and privacy, consumer frauds, securities, government fraud, and real estate finance. In that role, Ms. Sheth was responsible for the decision to open an investigation, file an enforcement action, case development and strategy, and matter resolution, whether by trial or settlement. Ms. Sheth was responsible for all civil and criminal antitrust matters in the State of New York, including supervising the Office of the New York Attorney General's Antitrust Bureau. Among other accolades, Ms. Sheth has been named to "*The Best Lawyers in America*" for securities litigation (2023); *Legal 500 USA Dispute Resolution* for Financial Services Litigation (2023); *Crain's New York Business* "Notable Women in Law" list (2021); *Lawdragon*'s 500 Leading Plaintiff Financial Lawyers Guide in business litigation (2019–2023); *Lawdragon* 500 as a Leading Litigator in Complex Civil Litigation, White Collar Investigations (2023); *Crain's New York Business* "Notable Women in Law" list (2021) and "40 under 40" list (2013); and *The National Law Journal*'s "Minority 40 under 40" list (2011). Ms. Sheth previously served as a federal prosecutor for five years, during which time she indicted over thirty-five cases, conducted numerous trials, and argued several appeals before the United States Court of Appeals for the Third Circuit. Ms. Sheth previously served as a law clerk to the Honorable William H. Pauley III of the United States District Court for the Southern District of New York. Some of Ms. Sheth's representative experiences include:

a. ***Borozny et al. v. RTX Corporation, Pratt & Whitney Div. et al.*, Case No. 3:21-cv-01657 (D. Conn.)**: Ms. Sheth and Quinn Emanuel are co-lead interim class counsel on behalf of a class of engineers and other skilled workers in a class action alleging a "no poach" conspiracy among several aerospace firms designed to depress the wages of their workers. In January 2023, the district court denied the defendants' motion to dismiss in its entirety, and discovery is ongoing.

b. ***Ambac Assurance Corp., et al. v. Countrywide Home Loans, Inc. et al.,* Case No. 653979/2014 (Sup. Ct. N.Y.):** Ms. Sheth was co-lead trial lawyer on behalf of Ambac Financial Group in a 5-week trial against Countrywide, for

alleged breaches of contract. She was named "Litigator of the Week" by the American Lawyer after obtaining a **$1.84 billion** settlement for Ambac Financial Group.

c.  ***Federal Housing Finance Agency v. Nomura Holding America, Inc. et al, Case No. 1:11-cv-06201-DLC (S.D.N.Y.):*** Ms. Sheth was part of the team that represented the Federal Housing Finance Agency ("FHFA") in its landmark Residential Mortgage-Backed Security ("RMBS") litigation against numerous financial institutions arising from its Conservatorship for Fannie Mae and Freddie Mac, resulting in a total recovery of approximately **$23 billion**. Ms. Sheth served as trial counsel in the case against Nomura Holdings Inc. and RBS Securities, Inc., and she and the trial team obtained an **$806 million** judgment on behalf of the FHFA, which the United States Court of Appeals for the Second Circuit subsequently affirmed on appeal.

d.  ***Representation of Gilead Sciences, Inc.:*** Ms. Sheth represents Gilead Sciences in multiple cases arising under the False Claims Act and its state-law equivalents, which remain pending in multiple state and federal courts.

e.  ***Block, Inc. v. Visa Inc. et al, 23-cv-5377-MKB-VMS (E.D.N.Y.):*** Ms. Sheth is counsel for Block in its recently-filed antitrust lawsuit challenging price-fixing by Visa and Mastercard of fees charged in connection with the use of credit and debit cards. Through its products and services under the name Square, Block accepts credit and debit cards for payment on behalf of millions of clients.  Block's case is an opt-out direct action related to the long-running *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*

f.  ***In the Matter of Royal Bank of Scotland:*** Ms. Sheth represented the State of New York in obtaining a **$500 million** settlement against the Royal Bank of Scotland regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

g.  ***The People of the State of New York v. Sprint Communications, Inc. et al*:** Ms. Sheth represented the State of New York in obtaining a record **$330 million** settlement against Sprint Communications, Inc. in groundbreaking False Claims Act litigation regarding Sprint's failure to collect and remit state and local sales taxes.

h.  ***In the Matter of UBS Securities LLC et al*:** Ms. Sheth represented the State of New York in obtaining a **$230 million** settlement against UBS Securities regarding its deceptive practices and misrepresentations to investors in connection with the packaging, marketing, sale, and issuance of residential mortgage-backed securities.

i.  ***State Attorneys' General Antitrust Investigation Regarding London Interbank Offered Rate ("LIBOR")*:** On behalf of a multi-state group, Ms. Sheth helped obtain civil settlements against Deutsche Bank AG for **$220 million**, Barclays PLC for **$100 million**, Citibank NA for **$100 million**, and UBS AG for **$68 million**.

j.  ***The People of the State of New York v. Charter Communications, Inc. et al*:** Ms. Sheth represented the State of New York in an enforcement action against Charter Communications, Inc. and Spectrum Management Holding Company, f/k/a Time Warner Cable, obtaining a record-breaking **$174.2 million** settlement related to misrepresentations regarding internet speed, reliability, and access to content.

k.  ***In the Matter of Wells Fargo & Company*:** Ms. Sheth represented the State of New York in obtaining a **$65 million** settlement against Wells Fargo in connection with its cross-selling practices.

l.  ***In the Matter of Bank of America Corp. et al*:** Ms. Sheth represented the State of New York in obtaining a record-breaking **$42 million** settlement against Bank of America and Merrill Lynch regarding their fraudulent electronic trading practices.

m. ***State of New York ex rel. v. Harbinger Capital Partners Offshore Manager, L.L.C., et al***: Ms. Sheth represented the State of New York in its suit against a New York-based hedge fund manager, obtaining a **$30 million** settlement to resolve claims that the manager knowingly evaded New York State and New York City taxes.

n. ***In the Matter of Credit Suisse Securities (USA) LLC***: Ms. Sheth represented the State of New York in investigating Credit Suisse for fraudulent electronic trading practices and obtaining a **$10 million** settlement.

o. ***In the Matter of Simon Property Group, Inc.***: Ms. Sheth represented the State of New York in its monopolization investigation into Simon Properties, developer of the Woodbury Commons Outlet Mall, and obtained a favorable settlement.

p. ***In the Matter of Taylor Garbage Service, Inc.***: Ms. Sheth represented the State of New York in helping to obtain a civil settlement and criminal pleas against two trash hauling companies in Broome County, New York, regarding the companies' price-fixing and market allocation scheme.

17.    **Adam B. Wolfson:** Mr. Wolfson is a partner in Quinn Emanuel's San Francisco and Los Angeles offices, who represents both plaintiffs and defendants in antitrust, class-action, and other litigation. Mr. Wolfson was named an "MVP" in Class Actions by *Law360* in 2022 and a "Rising Star" in the same category in 2019. *Benchmark Litigation* recognized him as a 2023 Future Star, and he has been listed among the top 500 plaintiffs' financial lawyers in the nation by *Lawdragon* every year since 2019, as well as a Recommended Lawyer in Antitrust repeatedly by *Legal 500 USA*. He recently tried three jury trials and one bench trial in 14 months, winning each of his jury trials (and is currently in post-hearing briefing in his bench trial). Some of Mr. Wolfson's representative experiences include:

a. ***Health Republic Insurance Co. v. United States***, **Case No. 1:16-cv-00259 (Fed. Cl.):** Mr. Wolfson served as part of the lead counsel team that represented a certified class of health insurers seeking recovery from the

federal government based on the government's failure to make risk corridor payments in violation of Section 1342 of the Affordable Care Act. Class members ultimately recovered **$3.7 billion** after Mr. Wolfson and the Quinn Emanuel team filed the first case on these issues in the nation, setting forth the core legal and factual theory that the Supreme Court ultimately blessed as correct in mid-2020.

b.  ***In re: 3M Combat Arms Earplug Products Liability Litig.*, Case No. 3:19-md-2885 (N.D. Fla.):** Mr. Wolfson serves on the Executive Committee in this multi-district litigation involving product liability and other claims on behalf of over 250,000 military veterans who suffered hearing loss and other injuries as a result of defective earplugs. Notably, during the bellwether trial process in that mass tort, he won two "defense pick" trials (*i.e.*, trials for plaintiffs the defendants selected, presumably because they thought those plaintiffs' claims were weak/unwinnable). As a result of Mr. Wolfson's and our co-counsel's efforts, the plaintiffs recently secured a **$6.01 billion settlement**.

c.  ***In re Valve Antitrust Litig.*, Case No. 2:21-cv-00563-JCC (W.D. Wash.):** Mr. Wolfson currently serves as co-lead counsel in this antitrust class action alleging that Valve Corporation, the creator of the PC desktop gaming platform, Steam, has illegally applied platform most-favored nations policies to artificially maintain monopoly power and keep its commission prices at supracompetitive levels. After an initial dismissal without prejudice, Mr. Wolfson helped lead drafting of an amended complaint that made clear to the court why plaintiffs' claims are plausible; the case is now in the midst of fact discovery.

d.  ***In re Polyurethane Foam Antitrust Litig.*, Case No. 10-md-02196 (N.D. Ohio):** Mr. Wolfson served as part of a lead counsel team that represented a class of direct purchaser plaintiffs in an antitrust action involving a price-fixing conspiracy between over two dozen defendants in the polyurethane foam

industry. In that case, which Mr. Wolfson helped lead day-to-day from the complaint forward, the court certified a nationwide class of direct purchasers, denied the defendants' multiple summary judgment motions, and brought the case within two weeks of trial after ruling on all major pretrial issues. Through Mr. Wolfson's and the team's effort, the class obtained more than **$430 million** in settlements.

e.   ***AliveCor, Inc. v. Apple Inc.*, Case No. 4:21-cv-03958-JSW (N.D. Cal.):** Mr. Wolfson is lead counsel in this case alleging that, after copying the plaintiff's groundbreaking heart health technology on the Apple Watch, Apple anticompetitively excluded both the plaintiff and all other heart rhythm analysis app providers from the relevant markets. The parties are awaiting summary judgment rulings, and the case is scheduled to go to trial in February 2024.

f.   ***Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al*, Case No. 2:15-cv-09814 (C.D. Cal.):** Mr. Wolfson served as part of a team that represented Songkick, a startup innovator in the live music industry, which brought an antitrust action against Live Nation and Ticketmaster regarding exclusive dealing, tying, and other acts of monopolization in the market for artist presale ticketing services. Through Mr. Wolfson's and the team's efforts, Songkick was the first plaintiff to survive a motion for summary judgment on antitrust claims against Ticketmaster and obtained **$110 million** in settlement plus the acquisition of its assets (for a confidential sum) just shortly before trial.

g.   ***Heckman v. Live Nation Entertainment, Inc. et al*, Case No. 2:22-cv-00047-GW (C.D. Cal.):** I currently serve as part of a team that represents a putative class of ticket purchasers in an antitrust class action against Live Nation and Ticketmaster. The plaintiffs allege, *inter alia*, that Live Nation and Ticketmaster violated federal antitrust laws by monopolizing and/or attempting

1   to monopolize the relevant markets for primary and secondary ticketing
2   services for major concert venues, and by restraining competition in those
3   markets. The court recently denied Live Nation's motion to compel arbitration,
4   and the case is currently pending.

5   h.   ***Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-**
6       **01247-HSG (N.D. Cal.):** Mr. Wolfson served as part of the trial team
7       representing homebuilder plaintiffs against drywall manufacturers. Plaintiffs
8       alleged that the defendants conspired to fix the prices of drywall in the United
9       States and sought damages (before trebling) in excess of $200 million. This
10      action was part of multi-district litigation (*In re: Domestic Drywall Antitrust*
11      *Litigation*) then-pending in the United States District Court for the Eastern
12      District of Pennsylvania that was remanded back to the Northern District of
13      California for trial. The case resolved confidentially shortly before trial.

14  i.   ***Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-01831 (D.D.C.):** Mr.
15      Wolfson currently serves as co-lead interim class counsel for consumers in an
16      antitrust action seeking remuneration for artificially-inflated, supra-competitive
17      surcharges at bank-owned ATMs throughout the country. The plaintiffs
18      recently reached a settlement with three of the bank defendants in that case for
19      **$66.7 million**, and the court recently granted class certification against the
20      remaining defendants, which the D.C. Circuit affirmed on appeal. The
21      plaintiffs continue to pursue claims against the remaining defendants for more
22      than $1 billion, and Mr. Wolfson leads that case day-to-day.

23  j.   ***In re German Automotive Manufacturers Antitrust Litigation*, Case No.**
24      **3:17-md-02796-CRB (N.D. Cal.):** Mr. Wolfson served as defense counsel for
25      Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-
26      action litigation involving claims that major German auto manufacturers
27      conspired to reduce innovation in their passenger vehicles throughout the
28      world. Based on arguments Mr. Wolfson developed and briefed, the court

dismissed with prejudice the putative consumer and auto dealers classes' claims, a decision the Ninth Circuit upheld on appeal and for which the Supreme Court denied *certiorari*.

k. ***Transweb, LLC v. 3M Innovative Properties Company et al*, Case No. 2:10-cv-04413-FSH (D.N.J.):** Mr. Wolfson served as part of the trial team that represented plaintiff Transweb, LLC in an antitrust and patent dispute. The plaintiff prevailed at trial and obtained a rare *Walker Process* antitrust fraud verdict, including **$26 million** in antitrust damages.

l. ***Intuit Inc. et al v. Visa Inc. et al*, Case No. 1:21-cv-01175-MKB (E.D.N.Y.):** Mr. Wolfson, along with Mr. Teruya, leads a team pursuing treble damages antitrust claims against Visa and MasterCard based on their use of anti-competitive agreements which limit competition and fix the interchange fees paid by merchants and payment processors. The case is currently pending.

18.    **Scott L. Watson**: Mr. Watson is a partner in Quinn Emanuel's Los Angeles office. He has litigated some of the largest intellectual property disputes in history, as well as tort claims, securities and corporate fraud claims, antitrust actions, class actions and large contractual disputes. Mr. Watson was named in *The Best Lawyers in Americ*a: *Ones to Watch* for Mass Tort Litigation/ Class Actions—Plaintiffs *2023-24,* named one of *Lawdragon*'s 500 Leading Energy Lawyers, a "Rising Star" for intellectual property law by *Law360*, and was recognized in *The National Law Journal*'s "Appellate Hot List." After law school Mr. Watson clerked for the Hon. A Raymond Randolph on the United Sates Court of Appeals for the D.C. Circuit. Some of Mr. Watson's representative experiences include:

a. ***TRC Operating Co. Inc v. Chevron U.S.A. Inc.*, Case No. S1500CV282520 (Kern County Super. Ct.):** Mr. Watson served as trial counsel for TRC, an independent oil company, in a suit against Chevron, in a case involving negligence and trespass claims. The jury awarded TRC $120 million in damages and prejudgment interest, also rejecting all of Chevron's counterclaims. The matter is currently on appeal.

b.    ***Qualcomm Inc. v. Apple Inc.*, Case No. 3:17-cv-1375-DMS-MDD (S.D. Cal.):** Mr. Watson was trial counsel for Qualcomm in a patent case against Apple, alleging the iPhone infringed three Qualcomm patents. The jury found all of Qualcomm's at-issue patents to be valid, that Apple infringed them, and awarded $31 million in damages—the full amount sought by Qualcomm.

c.    ***Apple v. Qualcomm*, Case No. 3:17-cv-00108-GPC (S.D. Cal.):** Mr. Watson represented Qualcomm in multi-billion dollar antitrust litigation adverse to Apple, relating to Qualcomm's patent licensing model. Qualcomm and Apple reached a global settlement just after opening statements.

d.    ***Apple Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-cv-0630-LHK (N.D. Cal.):** Mr. Watson was part of the team that defeated Apple's motion for a preliminary injunction on the Galaxy Nexus smartphone, including at the Federal Circuit, as part of global litigation between Apple and Samsung.  He led Samsung's causation and damages strategy in the second Apple-Samsung trial, resulting in a damages award of less than 5.5% of the amount Apple sought.

e.    ***Vertellus Holdings LLC v. W.R. Grace & Co. -Conn.*, Case No. Civil SAG-18-3298 (D. Md.):**  Mr. Watson was lead counsel for plaintiff Vertellus against W.R. Grace in a case asserting trade secret theft and breach of contract claims. Vertellus defeated Grace's counterclaims at summary judgment and the case settled shortly before trial.

19.    **Michelle R. Schmit:** Ms. Schmit is a partner in Quinn Emanuel's Chicago office. She regularly represents litigants in antitrust, class-action, and data privacy litigation. Ms. Schmit has been ranked by *Best Lawyers in America* for Commercial Litigation for each of the past three years, and recognized by *Best Lawyers in America* as one to watch, "Women in the Law," in 2022. She also argued many of the core early motions in this case. Some of Ms. Schmit's representations include:

a.    ***Apple v. Qualcomm*, Case No. 3:17-cv-00108-GPC (S.D. Cal.):** Ms. Schmit represented Qualcomm in multi-billion dollar antitrust litigation adverse to

Apple, relating to Qualcomm's patent licensing model. Qualcomm and Apple reached a global settlement just after opening statements.

b.   ***Harris v. comScore, Inc.*, Case No. 1:11-cv-05807 (N.D. Ill.):** Ms. Schmit represented comScore in a data privacy class action lawsuit, in what was, at the time, reported to be the largest class ever certified under federal electronic privacy laws. The case favorably settled following certification of the class.

c.   ***Martin et al v. KCBX Terminals Company et al.*, Case No. 1:13-cv-08376 (N.D. Ill.)**: Ms. Schmit successfully defended KCBX against three class actions brought by nearby residents relating to alleged air pollution at a petroleum coke facility, leading the case to a favorable settlement.

d.   ***Storey et al. v. Attends Healthcare Products, Inc*., Case No. 15-13577 (E.D. Mi.)**: Ms. Schmit prevailed in her representation of Attends in a product liability class action case, achieving dismissal of the case following seriatim motions to dismiss.

e.   ***IQVIA, Inc. v. Veeva Systems, Inc.*, Case No. 2:17-cv-00177 (D.N.J.):** Ms. Schmit currently represents IQVIA, a pharmaceutical data company, in a series of antitrust cases pending in federal court in New Jersey.

20.   **Claire D. Hausman:** Ms. Hausman, an of counsel in Quinn Emanuel's Los Angeles office, has represented multiple plaintiffs in complex antitrust litigations, including two MDLs. Ms. Hausman has litigated in MDLs and large consolidated state and federal actions throughout her career, including in antitrust, structured finance, and products liability cases. Some of Ms. Hausman's representative experiences include: *FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.); *In Re: RFC and RESCAP Liquidating Trust Action*, Case No. 13-cv-3451 (D. Minn.); *In Re: Heparin Products Liability Litigation*, Case No. 1:08-60000 (N.D. Ohio); *In Re: Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, Case No. 11-ML-02265 (C.D. Cal.); and *Massachusetts Mutual Life Insurance Co. v. DB Structured Products Inc.*, Case No. 3:11-cv-30039 (D. Mass.).

21.     My partners and I are supported by a team of associates and other legal professionals in this case who regularly handle extraordinarily complex and high-stakes litigation disputes. For example, associate **Brantley I. Pepperman** is a fifth-year associate in Quinn Emanuel's Los Angeles office and specializes in antitrust and unfair competition matters. Mr. Pepperman has deep knowledge of the factual and legal issues in this case, having worked primarily on this litigation for nearly three years, including prior to its filing. Mr. Pepperman has also litigated a number of antitrust matters, including: *FCA US LLC v. Yazaki Corp. et al*, Case No. 2:17-cv-14138 (E.D. Mich.); *Ashton Woods Holdings L.L.C. et al v. USG Corp. et al*, Case No. 4:15-cv-01247-HSG (N.D. Cal.); *Mackmin et al v. Visa Inc. et al*, Case No. 1:11-cv-01831 (D.D.C.); and *Calabasas Luxury Motorcars*, *Inc. v. General Motors LLC et al*, Case No. 2:21-cv-09566-TJH (C.D. Cal.). *Super Lawyers* recently named Mr. Pepperman a Southern California "Rising Star" for antitrust litigation in 2023. Mr. Pepperman has also served as a contributor to the "California Antitrust and Unfair Competition Law" treatise and other publications of the Antitrust & Unfair Competition Law Section of the State Bar of California. Mr. Pepperman previously served as a law clerk to the Honorable Christina A. Snyder of the United States District Court for the Central District of California.

22.     The Quinn Emanuel team also includes junior associates: ***Richard Jagdishwar Millett***, who clerked for the Court and the Honorable Milan D. Smith, Jr., of the United States Court of Appeals for the Ninth Circuit; ***Andrew Mather***, who prior to law school served as a principal software architect and data privacy analyst on transformative big data projects for a major Fortune 500 company; and ***Krishna Shah***, who is currently pursuing Big Tech-related antitrust claims in this District.

**Quinn Emanuel's Unparalleled Antitrust and Class Action Experience**

23.     Quinn Emanuel is the world's largest law firm devoted solely to business litigation, with over 1000 attorneys in 33 offices spanning 11 countries and 4 continents. Among other accolades, Quinn Emanuel has been named a "litigation powerhouse" by *The American Lawyer*, a "global force in litigation" by *The Wall Street Journal*, and one of "The Four Firms that GCs Fear The Most" by BTI Consulting Group (eleven times). Quinn Emanuel's Antitrust and Competition practice has been listed in *Global Competition Review*'s GCR100 2023 rankings. The firm has not only been

ranked within the top 25 "Global Elite" law firms, but also within the top 10 ranking of the world's 10 best private litigation firms. Recently, the *Global Competition Review* awarded Quinn Emanuel "Litigation of the Year—Cartel Defense" for the firm's work for on the German Automotive Manufacturers Antitrust Multidistrict Litigation. *Chambers USA 2023* ranked the firm's nationwide plaintiff antitrust practice "Band 1," and we have received several repeat awards for the practice areas at issue in this case, including (among others) being named: one of the "Top 20 Trial Law Firms" in 2023 by *Benchmark Litigation USA*, "Antitrust Litigation Department of the Year" by *The Recorder*, and "Class Action Group of the Year" by *Law360*.

24.    As is particularly relevant to this case, Quinn Emanuel is a leader in both antitrust litigation and class-action litigation, including, in particular, antitrust class-action litigation like this. In connection with these cases, Quinn Emanuel has obtained billions of dollars in settlements and trial verdicts for hundreds of thousands of plaintiffs over the years.

25.    I respectfully submit that Quinn Emanuel's extraordinary success in antitrust and class-action litigation on behalf of both plaintiffs and defendants, along with its demonstrated commitment to fully utilizing the talents of its female and diverse attorneys, makes Quinn Emanuel well-qualified to co-lead the Consumer Class in this case. Some of Quinn Emanuel's significant successes are further described below.

**Quinn Emanuel's Success On Behalf of Antitrust Plaintiffs.**

26.    When representing antitrust plaintiffs, Quinn Emanuel has recovered billions of dollars in both class actions and representations of plaintiffs in private litigation and "opt-out" cases. In addition to the cases identified above, below is a representative sample of some of Quinn Emanuel's other recent representations and successes on behalf of antitrust plaintiffs:

> a.    ***In re: Credit Default Swaps Antitrust Litig*., Case No. 13-md-02476 (S.D.N.Y.):** Quinn Emanuel acted as one of two co-lead class counsel in this multi-district litigation, in which the plaintiffs alleged the defendants entered into a conspiracy to shut down and not do business with a rival credit default swaps ("CDS") trading platform, which inflated the spread on CDS products. In this role, which involved crafting the initial complaints, conducting

discovery, and moving for class certification, Quinn Emanuel obtained over **$1.87 billion** in settlements from the defendants, plus injunctive relief.

b. ***Alaska Electrical Pension Fund v. Bank of America N.A.,* Case No. 14-cv-7126-JMF (S.D.N.Y.):** Quinn Emanuel served as co-lead class counsel for a class of investors asserting antitrust claims against large investment banks and their interest rate swaps broker-dealer. The court gave final approval to settlements in excess of **$500 million**, described the case as "the most complicated" it had ever seen, and observed that it could "not really imagine" how much more complicated "it would have been if I didn't have counsel who had done as admirable a job in briefing it and arguing it" as Quinn Emanuel.

c. ***In re SSA Bonds Antitrust Litig.,* Case No. 1:16-cv-03711-ER (S.D.N.Y.):** Quinn Emanuel was appointed to serve as co-lead class counsel in this antitrust action alleging that certain banks conspired to fix the prices of SSA bonds. The class secured settlements totaling **$95.5 million**, and final approval of the settlement is pending.

d. ***In Re: Commodity Exchange, Inc., Gold Futures and Options Trading Litig.,* Case No. 1:14-md-02548 (S.D.N.Y.):** Quinn Emanuel was appointed lead counsel, progressed past a motion to dismiss, and secured settlements worth **$60 million** in this antitrust class action alleging manipulation of the "London PM Gold Fix" and the price of gold derivatives worldwide.

e. ***AliveCor, Inc. v. Apple Inc.*, Case No. 21-cv-03958-JSW (N.D. Cal.):** Quinn Emanuel represents AliveCor, a heart health company, in litigation against Apple related to various anticompetitive practices surrounding the Apple Watch. The parties are awaiting summary judgment rulings, and the case is scheduled to go to trial in February 2024.

f. ***In re Interest Rate Swaps Antitrust Litig.,* Case No. 16-md-02704-JPO (S.D.N.Y.):** Quinn Emanuel was appointed co-lead class counsel in this class action asserting antitrust claims against financial institutions based on their

refusal to open up interest rate swaps to exchange trading. The class has so far secured **$25 million** in settlements, and Plaintiffs' motion for class certification remains pending.

g. ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., Case No. 05-md-1720-JG (E.D.N.Y.):*** Quinn Emanuel represented, among others, The Home Depot as opt-out counsel in this multi-district litigation, where the plaintiffs allege that Visa, Mastercard, and several banks established anticompetitive rules and prices for interchange fees in the credit and debit card markets. Quinn Emanuel successfully appealed the entry of a 2012 settlement that would have waived all merchants' future claims against the defendants, even though the merchants ostensibly had no ability to object to the settlement waiving those rights.

h. ***Edmar Financial Company, LLC et al v. Currenex, Inc. et al., 1:21-cv-06598-LAK (S.D.N.Y.)***: following an extensive pre-complaint investigation, Quinn Emanuel filed an antitrust class action against Currenex, Goldman Sachs, and several other major financial companies alleging a conspiracy to grant certain defendants special privileges on Currenex's foreign exchange platform. In May, 2023, the court largely denied defendants' motions to dismiss.

27. Quinn Emanuel has also litigated antitrust claims against Facebook. In 2014, a Quinn Emanuel team—including myself—filed suit against Facebook on behalf of plaintiff Social Ranger LLC. *See Social Ranger LLC v. Facebook Inc.,* Case No. 1:14-cv-01525-LPS (D. Del.), Dkt. 1. In that case, Social Ranger—a software company that offered virtual currency services—alleged that Facebook used its dominance to monopolize the market for virtual currency services on social game networks. During the course of the *Social Ranger* case, Quinn Emanuel and its co-counsel were able to compel the deposition of Facebook Chief Executive Officer Mark Zuckerberg. *See Social Ranger*, Dkt. 206. The case was ultimately resolved shortly before trial in 2017.

**Quinn Emanuel's Success on Behalf of Antitrust Defendants.**

28.     Unlike many plaintiffs' firms, Quinn Emanuel also regularly represents defendants in antitrust and class-action litigation, which provides Quinn Emanuel with unique experience and expertise. On the defense side, Quinn Emanuel has achieved victories for companies—in a range of industries—accused of antitrust and competition law violations. We have won dismissals by motion, and we have negotiated excellent settlements for our clients, including several settlements not requiring any monetary payment.

29.     But Quinn Emanuel is also a firm with the genuine ability to take antitrust cases to trial, and it has done so with frequent success. For example, Quinn Emanuel led the trial defense team—of which I was a leading member—for defendant Micron Technology, Inc. in an antitrust action involving an alleged conspiracy to boycott certain computer memory chips. *See Rambus Inc. v. Micron Technology Inc. et al*, Case No. CGC-04-431105 (Cal. Super. Ct.). Plaintiff Rambus sought **$4 billion—trebled to $12 billion**—from Micron. After a three-month trial, the jury rejected Rambus' claims and **awarded no damages**.

30.     Some of Quinn Emanuel's other successes representing antitrust defendants include:

  a.     ***In re: German Automotive Manufacturers Antitrust Litig.*, Case No. 3:17-md-02796-CRB (N.D. Cal.):** Quinn Emanuel was defense counsel for Daimler AG and Mercedes-Benz USA, LLC in multi-district, antitrust class-action litigation involving claims that major German auto manufacturers conspired to reduce innovation in their passenger vehicles throughout the world. The Court in 2020 **dismissed—with prejudice**—the putative consumer and auto dealers classes' claims, a decision that was affirmed by the Ninth Circuit in 2021.

  b.     ***In re Flash Memory Antitrust Litig.*, Case No. 4:07-cv-00086-SBA (N.D. Cal.):** Quinn Emanuel defended Samsung in two price-fixing class actions, brought by direct and indirect purchasers of NAND flash memory. Although classes had been certified in similar cases, Quinn Emanuel successfully defeated class certification motions in both actions.

c.  ***In re: January 2021 Short Squeeze Trading Litig.*, Case No. 21-2989-md-CMA (S.D. Fla.):** Quinn Emanuel represented defendant Citadel, LLC in multidistrict litigation brought by individual investors who alleged Citadel colluded with a brokerage firm to restrict trading in "meme stocks." Quinn Emanuel obtained a **dismissal—with prejudice—**of all claims at the pleading stage.

d.  ***Palivos et al v. Federation Internationale Football Association et al*, Case No. 2:15-cv-01721-JCM (D. Nev.):** Quinn Emanuel represented defendant FIFA in this antitrust class action that alleged FIFA was engaged in a conspiracy regarding the sale of hospitality packages to the 2014 World Cup. Plaintiffs sought hundreds of millions of dollars. Quinn Emanuel obtained **dismissal with prejudice** at the pleading stage.

e.  ***Pro Music Rights, LLC v. Apple Inc. et al*, Case No. 3:20-cv-00309-JAM (D. Conn.):** Quinn Emanuel secured the dismissal of all claims against defendant SoundCloud in this antitrust action alleging that SoundCloud and other companies conspired to drive the plaintiff out of business by refusing to license any of the plaintiff's works. Quinn Emanuel obtained a stay of discovery pending a motion to dismiss, and the court granted SoundCloud's motion to dismiss, instructing the plaintiff to file an amended complaint only if it had "good faith grounds" to do so. The court **dismissed the plaintiff's case** after the plaintiff failed to file an amended complaint.

f.  ***Golden Boy Promotions LLC et al v. Alan Haymon et al*, Case No. 2:15-cv-03378-JFW (C.D. Cal.):** Quinn Emanuel defended Haymon Sports—a prominent boxing management company—in a $300 million antitrust lawsuit filed by boxing promotion companies. The plaintiffs alleged that Haymon attempted to monopolize the market for Championship-Caliber Boxers through a "tie-out" and a series of exclusive contracts. Quinn Emanuel obtained **summary judgment** on the plaintiffs' claims.

g.   ***Basic Your Best Buy, Inc.*, *v. DirecTV, Inc.*, Case No. BC467034 (Cal. Super. Ct.):*** Quinn Emanuel defended DirecTV in this $83.7 million antitrust lawsuit. The plaintiff, a terminated retailer, asserted California Cartwright Act Claims based on DirecTV's restrictions on its retailers. Quinn Emanuel prevailed in the trial court, obtaining **summary judgment**. The California Court of Appeal affirmed the trial court's grant of summary judgment.

h.   ***Novation Ventures, LLC v. The J.G. Wentworth Company, LLC et al*, Case No. 2:15-cv-00954 (C.D. Cal.):*** Quinn Emanuel defended J.G. Wentworth in this antitrust case where the plaintiff, a competitor in the structured settlement market, challenged J.G. Wentworth's acquisition of Peach Holdings. The plaintiff also alleged that J.G. Wentworth's online advertising practices were themselves anticompetitive. Quinn Emanuel obtained **dismissal** of the plaintiff's claims **with prejudice**. The Ninth Circuit subsequently affirmed the district court's dismissal of the plaintiff's claims.

31.   Quinn Emanuel's "both sides of the v." practice provides what I believe are unique insights into both the plaintiffs' and defendants' bar, and benefits our clients no matter on which side of a dispute they find themselves.

## MY AND QUINN EMANUEL'S EFFORTS FOR THE CONSUMER CLASS

32.   To date, I, the Quinn Emanuel team supporting me, and our co-counsel at Hagens Berman have invested tremendous time, resources, and efforts on the Consumer Class's behalf.

33.   I first began investigating possible antitrust claims against Facebook in early 2019. As the first step of my investigation, I personally met with and consulted industry expert Dina Srinivasan, an antitrust and data privacy academic, in February 2019. Ms. Srinivasan is the author of *The Antitrust Case Against Facebook: A Monopolist's Journey Towards Pervasive Surveillance In Spite of Consumers' Preference for Privacy*, 16:1 Berkeley Bus. L. J. 39 (2019).

34.   In the months that followed, I, and, later, other Quinn Emanuel attorneys continued to investigate Facebook's anticompetitive conduct, carefully reviewing the reports of various governmental tribunals. My and Quinn Emanuel's investigation included an expansive review of other

materials, including news articles, industry reports, academic and economic literature, and documents that Facebook produced in response to governmental inquiries.

35.     Quinn Emanuel and I also undertook an extensive legal analysis of the possible antitrust claims presented by Facebook's misconduct. These discussions centered on, *inter alia*, defining the relevant markets and refining the theories for how Facebook's data collection and use practices: (a) constituted anticompetitive conduct under the antitrust laws; and (b) harmed consumers.

36.     Our work led to Quinn Emanuel filing the first-of-its-kind antitrust complaint against Facebook on December 3, 2020. *See Klein et al. v. Meta Platforms, Inc.*, Case No. 3:20-cv-08570-JD (N.D. Cal.), Dkt 1.

37.     On March 18, 2021, the prior district judge presiding over this action appointed my then-partner Stephen A. Swedlow, and Ms. Scarlett of Hagens Berman, as Interim Co-Lead Consumer Class Counsel. *See* Dkt. 73.

38.     On February 21, 2023, the Court confirmed Ms. Scarlett's appointment and appointed me as Interim Co-Lead Consumer Class Counsel following Mr. Swedlow's departure. *See* Dkt. 456.

39.     I, Ms. Scarlett, and our respective firms have vigorously prosecuted this case and pushed the Consumer Class's claims forward. For example, we have successfully briefed, argued, and defeated Facebook's motion to dismiss; retained and coordinated with well-qualified experts who submit detailed expert reports demonstrating the appropriateness of class treatment for the Consumer Class's claims; coordinated with the named Consumer Plaintiffs to gather and produce materials in response to Facebook's voluminous discovery requests and prepare them for deposition; obtained extensive discovery from Facebook and non-parties, including millions of pages of documents and more than 80 depositions; and performed extensive legal and factual analyses in connection with Consumer Plaintiffs' motion for class certification.

40.     If appointed as Co-Lead Consumer Class Counsel, I will continue to zealously and cooperatively litigate this case with Ms. Scarlett. Together, Ms. Scarlett and I—and our respective firms—will continue to fairly and adequately safeguard the Consumer Class's interests. We will also bring our respective firms' resources to bear in service to the Consumer Class.

**COMMITMENT TO FEE, TIME, AND COST CONTROLS**

41.     I and the other Quinn Emanuel attorneys pursing this case are committed to litigating the Consumer Class's claims as efficiently as possible. Litigating claims efficiently is part and parcel to our success in complex cases like this one.

42.     I and the other Quinn Emanuel attorneys pursuing this case are familiar with the Court's expectations regarding attorneys' fees, costs, expenses, and records as to the same in class actions. We have followed—and will continue to follow—the Court's requirements regarding fees, costs, and expenses, which the Court set forth in its February 21, 2023 order. *See* Dkt. 456 at 3–5.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 15th day of September 2023 in Los Angeles, California.

By ___*/s/ Kevin Y. Teruya*___

Kevin Y. Teruya

TERUYA DECLARATION ISO CONSUMER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION