<u>**FILED UNDER SEAL**</u>

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>(Additional counsel on signature page)<br><br>*Interim Co-Lead Counsel for the Advertiser Classes* | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>(Additional counsel on signature page) |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:20-cv-08570-JD<br><br>Hon. James Donato<br><br>**ADVERTISER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. CATHERINE TUCKER**<br><br>Hearing Date: December 14, 2023<br><br>Hearing Time: 10:00 a.m.<br><br>Courtroom 11, 19th Floor |

**FILED UNDER SEAL**

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

PLEASE TAKE NOTICE that on December 14, 2023, at 10:00 a.m., before the Honorable James Donato, of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Courtroom 11, 19th Floor, Advertiser Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Berney, 406 Property Services, PLLC, Mark Young, and Katherine Looper, on behalf of themselves and all others similarly situated, will and now do move the Court for an order excluding the Advertiser Class Rebuttal Report and related testimony of Dr. Catherine Tucker.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all filed supporting declarations and exhibits, the records, pleadings, and other documents on file in this consolidated action, and any argument that may be presented at or before the hearing on this Motion.

**FILED UNDER SEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................4

    I.    Dr. Tucker's opinions regarding Facebook's sale of Social Advertising during the Class Period should be excluded ............................................................4

    II.    Dr. Tucker's opinions regarding the impact of Facebook's alleged conduct should be excluded because they do not analyze the presence or absence of monopoly ..........................................................................................................8

    III.    Dr. Tucker's opinions regarding alleged ▮▮▮▮▮ from Facebook's anticompetitive conduct should be excluded ......................................................10

CONCLUSION .............................................................................................................................13

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Cases**

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .................................................................................................. 13

*Stiner v. Brookdale Senior Living, Inc.*,
    2023 WL 2722294 (N.D. Cal. Mar. 20, 2023) ................................................................ 4

**Rules**

FED. R. EVID. 702 ................................................................................................................ 4

**PRELIMINARY STATEMENT**

On August 4, 2023, Defendant Meta Platforms, Inc. ("Facebook") served on Advertiser Plaintiffs an expert report by Dr. Catherine Tucker. Dr. Tucker's report—one of two expert reports she signed that day in this case—purported to rebut opinions from two of Advertisers' experts, Dr. Michael Williams and Professor Joshua Gans. Dr. Tucker's Advertiser report offered opinions about Facebook's sale of Social Advertising during the Class Period, about ███████████ ███████████ due to the company's anticompetitive conduct, and about supposed variations in injury and damages to Facebook advertisers if the company's anticompetitive conduct were proved. Upon examination, Dr. Tucker's opinions on these topics are junk science. They ignore the record, including the actual opinions Dr. Tucker purports to rebut; they ignore basic economics, including the impact of monopoly on product innovation, efficiency passthrough, and price inflation; and they pertain to evidentiary issues (*e.g.*, ███████████████████ ███) about which Dr. Tucker admitted at deposition she had no personal knowledge or expertise.

Collectively, Dr. Tucker's unreliable opinions comprise the entire substance of her class certification expert report and testimony. As a result, Advertiser Plaintiffs respectively move to exclude Dr. Tucker's report and testimony in its entirety at this class certification stage.

**BACKGROUND**[1]

On July 7, 2023, Advertiser Plaintiffs served four expert reports, including the Expert Report of Michael A. Williams, Ph.D.,[2] and the Expert Report of Joshua S. Gans.[3] The Williams Report disclosed opinions pertaining to the relevant antitrust market for Advertiser Plaintiffs' case—the United States Social Advertising Market;[4] Facebook's monopoly power in that market;[5] classwide

---

[1] All exhibits are attached to the Declaration of Brian J. Dunne ("Dunne Dec.").

[2] Ex. 1 ("Williams Rpt.).

[3] Ex. 2 ("Gans Rpt.").

[4] Williams Rpt. ¶¶ 16-215.

[5] *Id.* ¶¶ 216-322.

antitrust impact;[6] and classwide damages.[7] The Gans Report analyzed the impact of Facebook's allegedly anticompetitive conduct on the Social Advertising market,[8] evaluating five categories of conduct and opining that the conduct "had impacts that can be demonstrated on a classwide basis."[9]

Dr. Williams defined the Social Advertising market by conducting a full *Brown Shoe* analysis;[10] applying the Horizontal Merger Guidelines methodology, including by conducting a SSNIP test;[11] and evaluating more than thirty distinct sources, including competition authorities, industry analysts, and market participants to explain "[w]hat is social advertising," "[w]hat is not social advertising," and to evaluate whether and to what extent Facebook's advertising products during the Class Period qualified as Social Advertising.[12] Dr. Williams explained that "[s]ocial advertising is advertising that can be targeted based on social data contained in a 'social graph'" at the outset of his lengthy market definition analysis.[13] Professor Gans understood the Social Advertising market to "comprise[] suppliers of ad placement services with access to a social graph that establishes direct connections between users," which defines a "specific data advantage" for providers,[14] but understood that "[t]he analysis of the relevant market definition and Facebook's position in it will . . . be provided in other reports."[15]

The Williams Report showed Facebook's monopoly power in the Social Advertising market using direct and indirect evidence, including by analyzing Facebook's economic profit rate, return on

---

[6] *Id.* ¶¶ 323-54.

[7] *Id.* ¶¶ 355-64.

[8] Gans Rpt. ¶¶ 49-109.

[9] *Id.* ¶ 49.

[10] Williams Rpt. ¶¶ 144-211.

[11] *Id.* ¶¶ 134-43.

[12] *Id.* ¶¶ 16-126.

[13] *Id.* ¶ 19.

[14] Gans Rpt. ¶ 7, *see also id.* ¶ 13.

[15] *Id.* ¶ 7.

1  capital employed, operating margins, and advertising prices during the Class Period.[16] Dr. Williams
2  analyzed classwide antitrust injury and damages by performing a yardstick analysis using economic
3  profit rates from comparable firms[17]—identified using six stated criteria[18]—to construct a but-for
4  competitive world, and measuring Facebook's actual advertising revenues during the Class Period
5  against it.[19]

6  On August 4, Facebook served the Advertiser Class Rebuttal Report of Catherine Tucker.[20]
7  Dr. Tucker's Report opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[21] asserted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,"[22] and posited that Dr. Williams's injury and damages
10 methodology was not tethered to conduct challenged by Advertiser Plaintiffs.[23]

11 Professor Gans and Dr. Williams served reply reports on September 1 and 15, respectively.[24]
12 Professor Gans's reply opined that Dr. Tucker had asserted, but not shown, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, had not tied ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to the presence of
14 Facebook's monopoly (or accounted for the absence of it in a but-for world), and noted that social
15 data are typically subject to diminishing returns.[25] Dr. Williams's reply explained that Dr. Tucker
16 mischaracterized and largely ignored his market definition analysis,[26] and reiterated ▮▮▮▮▮▮

---

[16] Williams Rpt. ¶¶ 217-83 (direct evidence), 284-322 (indirect evidence).

[17] *Id.* ¶¶ 323-54.

[18] *Id.* ¶ 336.

[19] *Id.* ¶¶ 355-64.

[20] Ex. 3 ("Tucker Rpt.").

[21] Tucker Rpt. ¶¶ 21-51.

[22] *Id.* ¶¶ 58-94.

[23] *Id.* ¶¶ 95-135.

[24] *See* Exs. 4 ("Gans Reply"), 5 ("Williams Reply").

[25] Gans Reply ¶ 5-8.

[26] Williams Reply ¶¶ 34-60.

**FILED UNDER SEAL**

1   ███████████████████████████████████████████████████████████.[27] The Williams

2   Reply also responded to Dr. Tucker's arguments regarding █████████████,[28] and alleged

3   variations in classwide injury and damages,[29] explaining that Dr. Tucker had failed to analyze the

4   presence or effect of monopoly power due to the challenged conduct—the centerpiece of Advertiser

5   Plaintiffs' case and the cause of the price inflation in Facebook advertisements during the Class

6   Period—and that her other opinions were without evidentiary basis or simply wrong.

7   On September 26, Dr. Tucker sat for a deposition.[30]

**ARGUMENT**

In order to admit expert testimony under Federal Rule of Evidence 702, "the proponent" must "demonstrate[] that the expert is qualified and (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principle and methods to the facts of the case."[31] As explained below, Dr. Tucker's class certification opinions regarding the Advertiser case do not meet this standard.

**I.   DR. TUCKER'S OPINIONS REGARDING FACEBOOK'S SALE OF SOCIAL ADVERTISING DURING THE CLASS PERIOD SHOULD BE EXCLUDED**

A centerpiece of Dr. Tucker's report is her assertion that ██████████████████ ████████████████████████ as defined by Dr. Williams and discussed by Professor Gans.[32] This opinion underpins not just Section III of Tucker's report,[33] but paragraph 100 in Section

---

[27] *Id.* ¶ 49.

[28] *Id.* ¶¶ 65-83.

[29] *Id.* ¶¶ 62-65, 84-133.

[30] *See* Ex. 6 ("Tucker Dep.").

[31] *Stiner v. Brookdale Senior Living, Inc.*, 2023 WL 2722294, at *5 (N.D. Cal. Mar. 20, 2023); *see* FED. R. EVID. 702.

[32] Tucker Rpt. ¶¶ 21-51, 100, 104-06.

[33] *Id.* ¶¶ 21-51 ("███████████████████████████████████████████████").

1 IV of her report as well. Dr. Tucker's opinions regarding Facebook's sale of Social Advertising during the Class Period should be excluded as unreliable, as they fail to address Dr. Williams's (or Professor Gans's) actual opinions regarding Social Advertising and lack any evidentiary or scientific basis regarding the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

The Williams Report contains two hundred paragraphs, spanning eighty-eight pages, on the "Relevant Antitrust Market."[34] Dr. Williams defined the Social Advertising market by conducting a full *Brown Shoe* analysis;[35] applying the Horizontal Merger Guidelines methodology, including by conducting a SSNIP test;[36] and evaluating more than thirty distinct sources, including competition authorities, industry analysts, and market participants to explain "[w]hat is social advertising," "[w]hat is not social advertising," and to evaluate whether and to what extent Facebook's advertising products during the Class Period qualified as Social Advertising.[37] Dr. Williams explained that "[s]ocial advertising is advertising that can be targeted based on social data contained in a 'social graph'" at the outset of his market definition analysis,[38] and Professor Gans understood the Social Advertising market to "comprise[] suppliers of ad placement services with access to a social graph that establishes direct connections between users," which defines a "specific data advantage" for providers.[39] (Professor Gans did not attempt to define the relevant market, but understood that "[t]he analysis of the relevant market definition and Facebook's position in it will . . . be provided in other reports."[40])

Dr. Tucker's report ignored nearly every aspect of the above opinions, despite purporting to rebut them. As Dr. Tucker admitted at deposition, her report did not address Dr. Williams's Horizontal

---

[34] Williams Rpt. ¶¶ 16-215.

[35] *Id.* ¶¶ 144-211.

[36] *Id.* ¶¶ 134-43.

[37] *Id.* ¶¶ 16-126; *see* Williams Reply ¶ 48 & Table 1.

[38] *Id.* ¶ 19.

[39] Gans Rpt. ¶ 7, *see also id.* ¶ 13.

[40] *Id.* ¶ 7.

Merger Guidelines analysis and SSNIP test.[41] As to the *Brown Shoe* factors (Dr. Williams addressed all seven of them), Dr. Tucker admitted she did not "███████████████,"[42] but asserted that her report did impliedly address the first *Brown Shoe* factor, industry recognition of a submarket.[43] However, upon examination, Dr. Tucker admitted that she didn't actually respond to—or perhaps even review—thirty different sources of industry recognition, including competition authorities, industry analysts, and market participants, analyzed by Dr. Williams in his opening report.[44] These sources supported Dr. Williams's opinion—unequivocally expressed in his opening report and reaffirmed in his reply—that ███████████████████████████████████████████████████.[45]

Similarly, Dr. Tucker's report effectively ignored Dr. Williams's explanation—concurred with by Professor Gans—that "[s]ocial advertising is advertising that can be targeted based on social data contained in a 'social graph,'"[46] as well as the forty-five pages following it explaining ███████████████████████████████████,[47] who else sold or sells Social Advertising,[48] and what is not Social Advertising.[49] It is not clear how any rebuttal opinion that avowedly ignores essentially the entire opinion it purports to rebut could ever be reliable—let

---

[41] Tucker Dep. 12:21-25 (███████████████████████████████████").

[42] *Id.* 13:16-25.

[43] *Id.* 15:12-17.

[44] *Id.* 20:18-24 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

[45] Williams Reply ¶ 48 & Table 1; *see* Williams Rpt. ¶¶ 30-53.

[46] Williams Rpt. ¶ 19; *see* Gans Rpt. ¶¶ 7, 13.

[47] Williams Rpt. ¶¶ 22-53.

[48] *Id.* ¶¶ 54-68.

[49] *Id.* ¶¶ 69-126.

1  alone helpful—but that is what Dr. Tucker did in Section III of her report, ignoring Dr. Williams's
2  and Professor Gans's actual opinions to explain repeatedly that ▬▬▬ a product not
3  specifically discussed (or even named) by either Dr. Williams or Professor Gans, ▬▬▬
4  ▬▬▬.[50]
5      Put simply, Dr. Tucker's analysis of ▬▬▬
6  ▬▬▬ ignored the market definition actually set forth by
7  Plaintiffs' expert Dr. Williams, used as the basis for his and Professor Gans's injury and damages
8  analyses. This makes her opinion unreliable and unhelpful, as ▬▬▬
9  ▬▬▬ is not an issue
10 underpinning either Dr. Williams' or Professor Gans's analysis; is not an issue Advertiser Plaintiffs
11 will seek to prove in this case; and accordingly is simply irrelevant to class certification analysis.
12     Moreover, Dr. Tucker's deposition revealed a concerning lack of basic knowledge about the
13 very ad systems and formats about which she purports to expertly opine. For example, Dr. Tucker
14 opined (although this was not in her report), that a ▬▬▬
15 ▬▬▬
16 ▬▬▬.[51] However, upon examination, Dr. Tucker revealed she was simply making this up
17 on the fly based on her experience "▬▬▬."[52] When pressed about
18 the details of the ▬▬▬
19 ▬▬▬, Tucker admitted ▬▬▬,"[53] and "▬▬▬
20 ▬▬▬."[54] On that subject, Dr. Tucker did not realize that
21 Plaintiffs *had* asked a Facebook engineer—and other witnesses, including Facebook's Chief
22 Marketing Officer Alex Schultz—▬▬▬

---

[50] *See* Tucker Rpt. ¶¶ 23, 31-33.

[51] Tucker Dep. 26:17-19.

[52] *Id.* 31:8-9; *see also id.* 36:23-37:1 ("▬▬▬
▬▬▬.").

[53] *Id.* 31:9-10

[54] *Id.* 31:17-19

1   ▓▓▓▓▓ and Dr. Tucker was simply wrong; ▓▓▓▓▓
2   ▓▓▓▓▓
3   ▓▓▓▓▓.[55]
4   Between Dr. Tucker's ignorance of Facebook's actual ▓▓▓▓▓
5   ▓▓▓▓▓ and her avowed refusal to analyze the actual Social Advertising definition put forth by
6   Advertiser Plaintiffs' experts, her opinions regarding Facebook's sale of Social Advertising during
7   the Class Period must be excluded as junk science. There is nothing reliable behind them, and they
8   would be unhelpful to the Court. This impacts Section III of Dr. Tucker's report (paragraphs 21-51)
9   as well as paragraph 100 in Dr. Tucker's Section IV.

## II. DR. TUCKER'S OPINIONS REGARDING THE IMPACT OF FACEBOOK'S ALLEGED CONDUCT SHOULD BE EXCLUDED BECAUSE THEY DO NOT ANALYZE THE PRESENCE OR ABSENCE OF MONOPOLY

Sections IV and V of Dr. Tucker's report suffer from a glaring problem that warrants exclusion—Dr. Tucker never assesses the effects of Facebook's monopoly. To begin with, Dr. Tucker criticizes Professor Gans and Dr. Williams for failing to take into account ▓▓▓▓▓ ▓▓▓▓▓ resulting from the exclusionary acts undertaken by Facebook. Dr. Tucker, however, sidesteps the question actually at the heart of the Gans and Williams reports: What was the effect of Meta's unlawful monopoly on the class and the prices they paid? On that question, Dr. Tucker admits she has nothing to say, as she never even assessed the absence or presence of monopoly as part of her opinion on damages and injury. Without addressing that question, Dr. Tucker's report is not only beside the point on injury and damages, it is functionally without substance—at best, lawyers' argument cloaked in junk science.

Indeed, it is undisputed that Dr. Tucker never actually addressed what both Dr. Williams and Professor Gans analyzed. Dr. Williams directly addressed whether prices for Facebook's ads were inflated due to Facebook's monopoly, and Dr. Gans opined that Meta's exclusionary conduct, if

---

[55] *See, e.g.*, Ex. 7 (A. Schultz Dep.) 154:23-155:6 (▓▓▓▓▓); *id.* 158:6-16 (▓▓▓▓▓); *id.* 159:3-5 ▓▓▓▓▓.

proven, would have unlawfully maintained that monopoly and injured the class members. Both Dr. Williams and Dr. Gans were quite explicit about what they analyzed in their opening reports.[56][57] And there is no question that Dr. Tucker did not consider the absence or presence of monopoly—████████████████.[58] Dr. Williams and Professor Gans each noticed this glaring issue, and opined on it in their respective reply reports.[59]

Not only did Dr. Tucker have nothing to say about the monopoly question, she does not dispute that Dr. Williams's injury and damages methodology is ████████████████████████████████████████████████████████████████████████████

---

[56] *See, e.g.,* Williams Rpt. ¶¶ 324 ("For damages purposes, I assess whether Facebook's social advertising prices in the . . . Class Period were higher (or lower) than the social advertising prices that would have existed in the but-for world in the absence of the alleged conduct that maintained Facebook's monopoly."), 328 ("To estimate overcharges and damages, if any, I have assumed that the five categories of conduct that Plaintiffs contend helped Facebook maintain its monopoly in the U.S. social advertising market are true. However, even if certain of those categories of exclusionary conduct were not ultimately proven at trial, the methodology outlined below can still be used to show antitrust impact and damages on a classwide basis. That is, since the Class's damages stem from Facebook's monopoly maintenance—rather than any individual exclusionary act—if Facebook's monopoly is judged unlawful, the damages methodology remains the same.").

[57] *See, e.g.,* Gans Rpt. ¶¶ 14a ("Common evidence can be used to determine that the five categories of anticompetitive conduct identified above helped Facebook maintain its monopoly in the United States social advertising market, including by strengthening a Data Targeting Barrier to Entry."); 14c ("I understand that Dr. Williams and Mr. Kreitzman show in their reports, to the extent Facebook unlawfully maintained its monopoly during the Class Period, all Class Members were harmed by Facebook's conduct in the form of inflated advertising prices that could not have been charged absent Facebook's monopoly.").

[58] Tucker Dep. 317:12-17 ("Q. ████████████████████████████████████████████ "); *id.* 250:4-19 (" ████████████████████████████████████████████████████████ "); *id.* 203:14-204:1 (" ████████████████████████████████████████████████████████████████████████ ").

[59] Williams Reply ¶¶ 72-79, 84-88, 100-11, 123-25; Gans Reply ¶¶ 18-21, 29.

[60] Tucker Dep. 316:9-13 (████████████████████████████████████████████████████).

[61] *Id.* 252:21-253:3 (████████████████████████████████████████████████████████████████████████.").

1 ███████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████████

None of this provides any substantive rebuttal to Professor Gans's or Dr. Williams's opinions, and more problematically, none of Dr. Tucker's opinions on these issues pass muster as admissible expert opinions at all. Put simply, Dr. Tucker did not address the question of monopoly in a monopolization case, does not challenge the ███████ of Dr. Williams's methodology on injury and damages, and ████████████████████████████████████████ Her opinion is impertinent to the central questions of injury and damages before the Court on class certification, and her report is devoid of the sort of scientific substance that distinguishes expert testimony from additional briefing from Facebook's lawyers.

Sections IV and V of Dr. Tucker's report, comprising paragraphs 52-135, and any related testimony, should be excluded on this distinct basis.

### III.  DR. TUCKER'S OPINIONS REGARDING ALLEGED ███████████ FROM FACEBOOK'S ANTICOMPETITIVE CONDUCT SHOULD BE EXCLUDED

In Section IV of her report (paragraphs 52-94), and in several subparts of Section V (paragraphs 104-06 and 111-20), Dr. Tucker opines that Facebook's alleged conduct would, if proven, ██████████████████████████████ and that Dr. Williams and Prof. Gans should have accounted for ████████ in their injury and damages analyses. However, here too, Dr. Tucker's opinions are without reliable basis.

As an initial matter, as both Dr. Williams and Professor Gans point out in their respective replies, Dr. Tucker's opinions regarding ████████████████████████████████████ are methodologically unsound because they do not account for the presence or absence of monopoly.[64] That is, Dr. Tucker writes at length about how particular categories of anticompetitive behavior

---

[62] *Id.* 257:14-258:8 (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

[63] *Id.* 258:2-8.

[64] Williams Reply ¶¶ 72-79; Gans Reply ¶¶ 18-21, 29.

allegedly would—and, supposedly, did— ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉,[65] yet her analysis simply looks at various categories of alleged conduct, posits ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—with no analysis of monopoly power in the actual world, or the absence of that monopoly in the but-for world.[66] This is a problem for at least the reasons explained in the prior section—that Dr. Tucker simply doesn't analyze the correct but-for world—but also because of the economic problems with Dr. Tucker's approach to the actual world, as pointed out by Dr. Williams and Professor Gans in their respective replies.[67] Well-regarded economic theory holds that innovation and product improvement tend to diminish in the presence of monopoly, and the but-for world in this monopoly maintenance case **is one in which Facebook did not unlawfully maintain its monopoly during the Class Period**.

Dr. Tucker's opinion on product improvement has an even more glaring problem: it's factually baseless and in no way grounded in any sort of expertise. Dr. Tucker's actual opinions about ▉▉▉▉▉▉▉▉▉▉ have all the hallmarks of junk science, pure paid *ipse dixit*. For example, in paragraphs 64-94 of her report, Dr. Tucker opines that various categories of allegedly anticompetitive conduct ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, with almost no evidentiary citations (outside of citations to Plaintiffs' own experts). The apparent basis for Dr. Tucker to simply opine, with no serious evidence, about quality improvement in Facebook's ads products in the but-for world is her self-proclaimed expertise: in

---

[65] Tucker Rpt. ¶¶ 52-94.

[66] Tucker Dep. 250:4-19 ("Q ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"); *id.* 203:14-204:1 ("▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉").

[67] *See, e.g.*, Williams Reply ¶ 72 ("Dr. Tucker ignores the fact that competition rather than monopolization leads to more innovation and product improvement. . . . The economics literature shows that monopoly power has a negative effect on innovation."); Gans Reply ¶ 18 ("A monopolist, in contrast to a competitive seller . . . has the ability to choose not to pass on any [increased] efficiencies.").

addition to being an expert in the economics of advertising markets,[68] an expert in the economics of digital data and artificial intelligence,[69] an expert in economics,[70] an expert in the economics of privacy,[71] and an expert in the economics of digital data, consumer behavior, and the monetization of platforms,[72] Dr. Tucker is (according to her own testimony) also an " ██████████ ██████████ ."[73] There appears little in which Dr. Tucker does not proclaim herself an expert.

None of that self-proclaimed expertise, however, is congruent with what Dr. Tucker actually knows about ██████████. *See, e.g.*, Tucker Dep. 27:20-28 (██████████ ██████████ ██████████); *id.* 31:18-19 (██████████); *id.* 32:15-17 ██████████; *id.* 33:19-21 (██████████); *id.* 36:23 (██████████; *id.* 108:1-23 (██████████ ██████████ ██████████ ██████████ ██████████ ██████████); *id.* 108:24-109:5

---

[68] Tucker Dep. 284:22-24.

[69] *Id.* 284:25-285:3.

[70] *Id.* 285:4-7.

[71] *Id.* 285:8-10.

[72] *Id.* 285:11-15.

[73] *Id.* 285:16-287:1.

**FILED UNDER SEAL**

(███████████████████████████████████████
███████████████████████████████████).

Dr. Tucker knows nothing of substance about ████████████████. She has no understanding of ██████████████. She has no knowledge about ████████ ████████████████████████. It strains credulity that a person with so little technical knowledge—and no apparent expertise—can competently testify about how ████████ ████████████████. With this in mind, it is perhaps unsurprising that Dr. Tucker's testimony about supposed ████████████ directly contradicts an empirical analysis performed by Dr. Williams in his reply report.[74] This analysis, ████████████ ████████████████████████████████████████████ ████████████████████████.[75] Dr. Tucker's error shows that her opinion does not scientifically explain the empirical facts—a hallmark of inadmissibility under the *Daubert* standard. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Dr. Tucker offered no serious evidence of ████████████, did not know any technical details about ████████████████████████████████, and failed to analyze the presence or absence of monopoly in the actual or but-for worlds. Her opinions regarding alleged ████████████ are unreliable, unscientific, and inadmissible. The Court should exclude paragraphs 52-94, 104-06, and 111-20 of the Tucker Report, and any related testimony, on this distinct basis.

## CONCLUSION

For the foregoing reasons, Advertiser Plaintiffs respectfully request that the Advertiser Class Rebuttal Report of Catherine Tucker, as well as any related testimony, be excluded.

---

[74] Williams Reply ¶¶ 80-83 & Fig. 2.

[75] *Id.*

**FILED UNDER SEAL**

Dated: October 6, 2023

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br><br>By: */s/ Yavar Bathaee*<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>Andrew M. Williamson (CA 344695)<br>awilliamson@bathaeedunne.com<br>Adam Ernette (*pro hac vice*)<br>aernette@bathaeedunne.com<br>Priscilla Ghiță (*pro hac vice*)<br>pghita@bathaeedunne.com<br>Chang Hahn (*pro hac vice*)<br>chahn@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>Allison Watson Cross (CA 328596)<br>across@bathaeedunne.com<br>3420 Bristol St, Ste 600<br>Costa Mesa, CA 92626-7133<br><br>*Interim Co-Lead Counsel for the Advertiser Classes*<br><br>**LEVIN SEDRAN & BERMAN LLP**<br><br>Keith J. Verrier (*pro hac vice*)<br>kverrier@lfsblaw.com<br>Austin B. Cohen (*pro hac vice*)<br>acohen@lfsblaw.com<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3997<br>Tel.: (215) 592-1500<br><br>*Members of Executive Committee for the Advertiser Classes* | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br><br>By: */s/ Amanda F. Lawrence*<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>Patrick J. Rodriguez (*pro hac vice*)<br>prodriguez@scott-scott.com<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Tel.: (212) 223-6444<br><br>**AHDOOT & WOLFSON, PC**<br><br>Tina Wolfson (CA 174806)<br>twolfson@ahdootwolfson.com<br>Robert Ahdoot (CA 172098)<br>rahdoot@ahdootwolfson.com<br>Theodore W. Maya (CA 223242)<br>tmaya@ahdootwolfson.com<br>Henry J. Kelson (*pro hac vice*)<br>hkelston@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, CA 91505<br>Tel.: (310) 474-9111 |

**FILED UNDER SEAL**

**FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: October 6, 2023                    By: */s/ Brian J. Dunne*