**PUBLIC REDACTED VERSION**

WILMER CUTLER PICKERING
 HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
 Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
 Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
 Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**META PLATFORMS, INC.'S MEMORANDUM IN OPPOSITION TO USER PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF TESTIMONY OF DR. CATHERINE TUCKER**<br><br>Judge: Hon. James Donato<br><br>Hearing Date: December 14, 2023<br>Time: 10:00 a.m. |

**PUBLIC REDACTED VERSION**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

BACKGROUND ................................................................................................................................1

LEGAL STANDARD .........................................................................................................................3

ARGUMENT ......................................................................................................................................3

CONCLUSION ...................................................................................................................................7

**PUBLIC REDACTED VERSION**

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Blood Reagents Antitrust Litigation*,
 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015)..................................................................................7

*In re High-Tech Employee Antitrust Litigation*,
 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) .................................................................................3

*Morris v. Mitsubishi Motors North America, Inc.*,
 2011 WL 13228439 (E.D. Wash. Mar. 31, 2011).........................................................................3

*Todd v. Tempur-Sealy International, Inc.*,
 2016 WL 5462428 (N.D. Cal. Sept. 28, 2016) ..............................................................................3

*Walsh v. LG Chem America*,
 2021 WL 4167310 (D. Ariz. Sept. 14, 2021).................................................................................3

*Wiley v. Unum Life Insurance Company of America*,
 2022 WL 1500552 (N.D. Cal. May 12, 2022)...............................................................................3

**OTHER AUTHORITIES**

A.B.A. SECTION OF ANTITRUST LAW, PROVING ANTITRUST DAMAGES: LEGAL AND
 ECONOMIC ISSUES (2d ed. 2010) ..................................................................................................5

Expert Class Certification Report of Dr. Nicholas Economides, *Moehrl v. Nat'l
 Ass'n of Realtors*, No. 1:19-cv-01610 (N.D. Ill. June 7, 2022) (Dkt. 324-5) ...........................5

Herbert J. Hovenkamp, *A Primer on Antitrust Damages*, Faculty Scholarship at
 Penn Carey Law (2011) ............................................................................................................2, 5

Justin McCrary & Daniel L. Rubinfeld, *Measuring Benchmark Damages in
 Antitrust Litigation* 3 J. ECONOMETRIC METHODS 63 (2014).......................................................5

Sagee Ben-Zedeff, *Introducing Study From Facebook*, META (June 11, 2019) ..............................6

**INTRODUCTION**

Users move to exclude an opinion that Meta's expert Catherine Tucker does not give. By their telling, Tucker opines that a yardstick analysis, like the one Users' expert Nicholas Economides claims to have performed, must use comparators from within the purportedly monopolized market. What Tucker actually opines—an opinion Users do *not* challenge—is that ███████████████████████████████████████████. That is a foundational economic principle that neither Users nor Economides dispute, and that Economides's analysis nonetheless ignores. Tucker's opinions are well-founded. Users' challenge is not. The Court should deny Users' motion.

**BACKGROUND**

Economides opines that ███████████████████████████████████████████████████████████████████████████████████████████████████████. Jennings Decl. Ex. 1, Economides Rep. ¶ 409. To arrive at this █████████████, Economides points to ████████████████████████████ that do not provide participants any services, "personal social networking" or otherwise, engaging content, or any other form of non-monetary value. *Id.* at Section XII(A). When asked at his deposition how he selected his yardsticks, Economides testified that █████████████████████████████████████████████████████████████████████████████████████████████████ Jennings Decl. Ex. 2, Economides Dep. Tr. 166:17-22. Meta has moved to exclude this "I know it when I see it" junk science. Dkt. 651-4.

Though Users now seek to exclude a non-existent criticism of Economides's deficient yardstick analysis, Jennings Decl. Ex. 3, Tucker Rep. ¶¶ 189-197, most of their brief concerns unrelated issues. For example, they devote a full quarter of their brief to "Background on Dr. Tucker and Her Opinions," which appears aimed at little more than aggrandizing their own experts while critiquing Tucker's experience in ways that have nothing to do with Users' actual *Daubert* challenge. But Tucker's qualifications are unimpeachable, and Users do not (and could not) credibly impeach them.

**PUBLIC REDACTED VERSION**

1  When these collateral points are stripped away, what remains is Users' challenge that
2  "[t]here is no basis to opine that yardsticks must come from the same market (versus a reasonably
3  comparable market)." Mot. 4. Tucker does not give that opinion. Tucker observes instead that
4  ████████████████████████████████████████████████████████████████████████████
5  ██████████████████████████████████████████████ Jennings Decl. Ex. 3,
6  Tucker Rep. ¶ 189. She explains that:

  - ████████████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████████████
     ██████████████████████████████████████
  - ████████████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████████████
     ████████████████████████████████ and
  - ████████████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████████████
     ████████████████████████████

16 *Id.* at ¶¶ 192-194. Tucker also notes that ████████████████████████████████████
17 ██████████████████████████████████████████████████ *Id.*

18  Tucker then opines, and the economic scholarship Economides relies on provides, that
19  when conducting yardstick analysis across different markets, adjustments must be made for
20  potentially confounding factors, and if the firms "used for comparison stand in the same relative
21  position in those markets, offer the same product mix, have comparable managements and are
22  comparable in all other respects," only "then the fact finder may infer that the two would have had
23  comparable revenues or profits but for the violation." *Id*. at ¶ 195 n.436 (quoting Herbert J.
24  Hovenkamp, *A Primer on Antitrust Damages*, Faculty Scholarship at Penn Carey Law 31, 46
25  (2011)); *see also* Jennings Decl. Ex. 4, Economides Reply Rep. ¶ 143 n.242 (citing same).  She
26  observes that ████████████████████████████████████████████████. *See* Jennings Decl. Ex. 3,
27  Tucker Rep. ¶ 195.
28

1   Based on these observations, Tucker opines that (1) ▮

2   ▮

3   ▮

4   ▮ and (2) ▮

5   ▮

6   ▮ Jennings Decl. Ex. 3, Tucker Rep. ¶ 195. As a result,

7   Tucker concludes, ▮ *Id.*

**LEGAL STANDARD**

Courts uniformly deny motions to exclude when the "main basis for exclusion hinges on a misleading characterization of" the challenged opinion. *In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *23 (N.D. Cal. Apr. 4, 2014); *accord Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5462428, at *5 (N.D. Cal. Sept. 28, 2016) (denying *Daubert* motion that "mischaracterize[d]" the expert's report); *Walsh v. LG Chem Am.*, 2021 WL 4167310, at *6 (D. Ariz. Sept. 14, 2021) (same). Courts reach the same result when a movant "has taken the experts' statements out of context and misconstrued the methodology that they pursued." *Morris v. Mitsubishi Motors N. Am., Inc.*, 2011 WL 13228439, at *3 (E.D. Wash. Mar. 31, 2011); *Wiley v. Unum Life Ins. Co. of Am.*, 2022 WL 1500552, at *2 (N.D. Cal. May 12, 2022) (denying *Daubert* motion that "cobble[d] together some portions of depositions" and used "out-of-context snippets" to challenge opinion).

**ARGUMENT**

Users move to exclude an opinion Tucker has not offered: that Economides's yardsticks must "come from the same relevant product market as the one in which Facebook operates." Mot. 4. Tellingly, every time they state this "opinion" of hers, it is through their own restatement of her opinion. *See, e.g.*, *id.* at 6 ("Said another way, Dr. Tucker criticizes . . . ."). Users cannot muster a single quote where Tucker actually said this because she did not.

What Tucker opines is that Economides ▮ ▮. Her opinion is not that the yardsticks must come from the relevant market, but that ▮ ▮. This could not be clearer. Tucker writes, ▮

▮▮▮

▮▮▮ Jennings Decl. Ex. 3, Tucker Rep. ¶ 152 (emphasis added). She emphasizes repeatedly:

- ▮▮▮

- ▮▮▮

- ▮▮▮

Jennings Decl. Ex. 3, Tucker Rep. ¶¶ 194-196 (emphases added).

Far from "backpedal[ing]" in her deposition (Mot. 6-7), Tucker gave responses that should have disabused Users of any possible misunderstanding of her point: ▮▮▮ Jennings Decl. Ex. 5, Tucker Dep. Tr. 296:16-297:4; *see also id.* at 295:16-20 ▮▮▮; *id.* at 295:23-296:5 ▮▮▮; *id.* at 298:16-20 ▮▮▮.[1]

---

[1] Users also argue that Tucker confuses before-and-after benchmarks in the same market with a yardstick analysis comparing different markets. Mot. 7. Not so. Tucker repeatedly stated that ▮▮▮, and nowhere discusses the kind of within-market temporal comparison that Users suggest she mistakenly invoked. Indeed, Users again have nothing in her report to cite for their mischaracterization, beyond identifying

1  Users do not challenge Tucker's actual opinion in their *Daubert* motion; they agree with
2  it. They acknowledge that yardstick comparators "must come" from "a reasonably comparable
3  market." Mot. 4. As Tucker explains, and as the economic literature that Economides relies on
4  shows, ▮
5  ▮ Jennings
6  Decl. Ex. 3, Tucker Rep. ¶ 195 n.436; *see also* A.B.A. SECTION OF ANTITRUST LAW, PROVING
7  ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES 250 (2d ed. 2010) ("[A]ny market selected
8  as the yardstick must be sufficiently comparable to the litigants' market to permit nonspeculative
9  conclusions[.]"); Hovenkamp, *supra* at 46-47 ("To the extent that either the markets or firms being
10 compared are dissimilar, the yardstick theory will not produce a trustworthy estimate . . . .").
11 Users' putative expert Joseph Farrell testified in accord: ▮
12 ▮ and ▮
13 ▮ Jennings Decl. Ex. 6, Farrell Dep. Tr. 122:10-11, 122:23-25.
14 Economides too has recognized this principle, although he does not apply it here. For
15 example, Users rely on the *Realtors* case "upholding a yardstick damages [analysis] by
16 Dr. Economides only a few months ago," Mot. 4, in which Economides offered a report with more
17 than 10 pages dedicated to identifying confounding factors and removing potentially misleading
18 would-be yardsticks from the analysis. *See* Expert Class Certification Report of Dr. Nicholas
19 Economides at 11-23, *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610 (N.D. Ill. June 7,
20 2022) (Dkt. 324-5); *see also* Jennings Decl. Ex. 2, Economides Dep. Tr. 190-191. Contrast that
21 effort to Economides's opinions in this case: His reports look to supposed yardsticks without
22 considering and correcting for the facts that ▮
23 ▮
24 ▮, *see* Jennings Decl. Ex. 2, Economides Dep. Tr. 72:9-12, 162:12-163:21; ▮

---

26 (Mot. 7 n.28) a different portion of a paper she quoted for the proposition that "a typical yardstick
27 approach" uses "prices in other markets that are deemed to be reasonably comparable to the market at issue," Jennings Decl. Ex. 3, Tucker Rep. ¶ 195 n.436 (quoting Justin McCrary & Daniel L.
28 Rubinfeld, *Measuring Benchmark Damages in Antitrust Litigation*, 3 J. ECONOMETRIC METHODS 63, 63 (2014)).

1   ████████████████████████████████████████████████████████████

2   ██████████████ Jennings Decl. Ex. 3, Tucker Rep. ¶ 132; █████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ███████████████, *see id.* at ¶¶ 132-138, 168-169. Indeed, even while acknowledging the need

6   to account for differences, he makes no effort to reliably do so. *See, e.g.*, Jennings Decl. Ex. 4,

7   Economides Reply Rep. ¶ 143 ███████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████. As Meta's *Daubert* motion explains, these failures render

12  Economides's opinion inadmissible junk science. Dkt. 651-4 at 9-13.

13         Users now misleadingly suggest that Economides *did* conduct a comparability analysis, at

14  least with respect to the data his yardsticks collected. They first claim that the "twelve yardsticks

15  . . . compensated users for the same sort of data at issue in this case," Mot. 7, and ████████

16  ████████████████████████████████████ Jennings Decl. Ex. 4, Economides Reply

17  Rep. ¶ 148. But Economides conceded that the yardsticks ████████████████

18  ████████████████ Jennings Decl. Ex. 2, Economides Dep. Tr. 197:24-198:3. Users also

19  assert that Economides surveyed "multiple examples where Facebook itself paid for the exact same

20  type of user data at issue in this case," Mot. 4, apparently referring to data that Facebook obtained

21  from a small number of participants in its Facebook Research and Facebook Study programs. This

22  is obviously wrong, as Economides correctly testified that ███████████████

23  ████████████████████████████████████████ Jennings Decl. Ex. 2, Economides

24  Dep. Tr. 196:24-197:1. This ██████████ includes, for example, information about the non-Meta

25  apps that program participants installed on their phone, the time they spend on those apps, and

26  which features are used in those apps. *See, e.g.*, Jennings Decl. Ex. 7, Sagee Ben-Zedeff,

27  *Introducing Study From Facebook*, META (June 11, 2019). Indeed, that the Research and Study

28  apps provided ████████████████████ that ██████████████

1 ███████████████████████████████████ is ████████████████████████████
2 ██████████ Jennings Decl. Ex. 2, Economides Dep. Tr. 161:3-11. So Users provide no basis
3 for saying that the yardsticks collect comparable data; their own expert contradicts them.
4   Moreover, Economides ignored entirely platforms ██████████████████
5 ███████████████████████████████████████████████████████████████████
6 ████. Jennings Decl. Ex. 3, Tucker Rep. ¶ 144 (discussing ████████████████
7 ███████████████████████████). That is because his work assumed the conclusion.
8 ███████████████████████████████████████████████████████████████████
9 ████████████████████████. Jennings Decl. Ex. 2, Economides Dep. Tr. 166:17-22.
10 Unsurprisingly, he found that ██████████████████████. But Economides's approach of
11 starting with what he wanted to find rather than first looking at comparable services to Facebook
12 is exactly backward. And, critically, he made no effort to show how he "perform[ed] any
13 substantive analysis of those factors most relevant to comparability." *In re Blood Reagents*
14 *Antitrust Litig.*, 2015 WL 6123211, at *22 (E.D. Pa. Oct. 19, 2015). This is junk science that
15 Tucker rightly criticized, and Meta rightly moved to exclude.

## CONCLUSION

For these reasons, the Court should deny Users' motion to exclude.

**PUBLIC REDACTED VERSION**

| | |
|---|---|
| Dated: October 13, 2023 | Respectfully submitted, |
| | By: */s/ Sonal N. Mehta* |
| | |
| | SONAL N. MEHTA (SBN 222086) |
| | Sonal.Mehta@wilmerhale.com |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 2600 El Camino Real, Suite 400 |
| | Palo Alto, California 94306 |
| | Telephone: (650) 858-6000 |
| | |
| | DAVID Z. GRINGER (pro hac vice) |
| | David.Gringer@wilmerhale.com |
| | ROSS E. FIRSENBAUM (pro hac vice) |
| | Ross.Firsenbaum@wilmerhale.com |
| | RYAN CHABOT (pro hac vice) |
| | Ryan.Chabot@wilmerhale.com |
| | PAUL VANDERSLICE (pro hac vice) |
| | Paul.Vanderslice@wilmerhale.com |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 7 World Trade Center |
| | 250 Greenwich Street |
| | New York, New York 10007 |
| | Telephone: (212) 230-8800 |
| | |
| | ARI HOLTZBLATT (pro hac vice) |
| | Ari.Holtzblatt@wilmerhale.com |
| | MOLLY M. JENNINGS (pro hac vice) |
| | Molly.Jennings@wilmerhale.com |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 2100 Pennsylvania Avenue NW |
| | Washington, DC 20037 |
| | Telephone: (202) 663-6000 |
| | |
| | MICHAELA P. SEWALL (pro hac vice) |
| | Michaela.Sewall@wilmerhale.com |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 60 State Street |
| | Boston, Massachusetts 02109 |
| | Telephone: (617) 526-6000 |
| | |
| | *Attorneys for Defendant Meta Platforms, Inc.* |

**PUBLIC REDACTED VERSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of October, 2023, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:   */s/ Sonal N. Mehta*
         Sonal N. Mehta