**FILED UNDER SEAL**

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>(Additional counsel on signature page)<br><br>*Interim Co-Lead Counsel for the Advertiser Classes* | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>(Additional counsel on signature page) |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:20-cv-08570-JD<br><br>Hon. James Donato<br><br>**ADVERTISER PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO EXCLUDE TESTIMONY OF JOSHUA GANS**<br><br>Hearing Date: December 14, 2023<br><br>Hearing Time: 10:00 a.m.<br><br>Courtroom 11, 19th Floor |

**FILED UNDER SEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................................1

BACKGROUND ..............................................................................................................................2

LEGAL STANDARD........................................................................................................................3

ARGUMENT ...................................................................................................................................4

    I.    PROF. GANS APPROPRIATELY ASSUMED FACTS TO BE PROVEN AT TRIAL ................................................................................................................4

    II.    PROF. GANS APPLIED EXTENSIVE ECONOMIC ANALYSIS TO ARRIVE AT HIS OPINIONS ..................................................................................7

CONCLUSION.................................................................................................................................8

**FILED UNDER SEAL**

# TABLE OF AUTHORITIES

**Cases**

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
    829 F.3d 370 (5th Cir. 2016) .................................................................................................. 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................................ 3

*Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) (en banc) .................................................................................. 5

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ............................................................................................. 3-4

*Williams v. Illinois*,
    567 U.S. 50 (2012) .................................................................................................................. 5

**Rules**

FED. R. EVID. 702 ............................................................................................................................ 3

**PRELIMINARY STATEMENT**

Professor Joshua Gans is an expert economist who has offered opinions in support of Advertiser Plaintiffs' ("Advertisers") motion for class certification. His opening and reply reports provide extensive economic analysis of the data targeting barrier to entry ("DTBE") protecting Meta's social advertising monopoly, and of the effect of Meta's exclusionary conduct on the DTBE. Prof. Gans offers two central opinions in support of class certification: (1) if the facts and factual assertions offered by Advertisers on the merits of their case are proven at trial, it would follow as an economic matter that the DTBE was strengthened, resulting in the maintenance of Meta's monopoly and causing classwide injury and harm to competition; and (2) the effect on the DTBE, the harm to competition, and classwide injury can all be proven based on common evidence, which Prof. Gans surveys and describes in his reports. Meta has filed a *Daubert* motion to exclude only a portion of Prof. Gans's opening report—Section IV, the section applying his economic analysis to the asserted facts—and offers the Court two supposed bases to do so. Neither have any merit.

First, Meta faults Prof. Gans for echoing Advertisers' characterizations and descriptions of Meta's exclusionary conduct in his opening report. Meta contends that because Prof. Gans describes its conduct the same way Advertisers do, he must be offering lawyers' argument under the guise of expert testimony. Meta's argument is an exercise in obfuscation—and contrary to law. Prof. Gans assumed that Advertisers' factual contentions would be proven at trial, then analyzed the economic effects of those facts on the DTBE, on the relevant market, and on class members. Prof. Gans expressly stated as much—and that he was not opining on whether or not any of the factual contentions he analyzed are in fact true or already proved. Meta ignores this, probably because what Prof. Gans did—assume facts that will be proven at trial—is perfectly appropriate according to no less than the Supreme Court. *See Williams v. Illinois*, 567 U.S. 50, 57 (2012). Indeed, had Prof. Gans recited and adopted his own characterizations of the facts, he would have impermissibly intruded on the province of the factfinder—the very no-no that Meta incorrectly accuses in its motion. Meta's first argument for exclusion is meritless.

Meta's second argument for exclusion fares no better—and it is not only meritless, it is misleading. Meta argues that Section IV of Prof. Gans's opening report should be excluded because

it supposedly lacks expert economic analysis. But this is an ostrich argument, which requires that the reader (and the Court) pretend that Prof. Gans's actual economic analysis—largely set forth in **Section III** of his report—does not exist. Meta does not discuss (or even acknowledge) any of the analysis in Prof. Gans's Section III in its motion, but instead asks the Court to read only Section IV of his report in isolation—and then exclude it for allegedly lacking what Prof. Gans already wrote, in the same document, just in a portion Meta doesn't want the Court to read.

Put simply, Meta's Motion is factually manufactured and legally foreclosed. It presents no viable grounds to exclude Prof. Gans's testimony, and it should be denied.

## BACKGROUND[1]

Joshua Gans is an economist and chaired professor at the University of Toronto, with extensive research and publications on technological competition and innovation, licensing/tariff negotiations, industrial organization, and regulatory economics. Prof. Gans submitted an opening report on July 7, 2023, Ex. 1 ("Gans Rpt."), and a reply report on September 1, 2023, Ex. 2 ("Gans Reply"), in support of Advertisers' Motion for Class Certification, Dkt. No. 643. In his report, Prof. Gans offers two primary opinions: (a) if proven at trial, Advertisers' factual contentions about Meta's conduct would support a finding of classwide injury and harm to competition; and (b) based on an examination of some of the evidence, injury and harm to competition can be proven by common, non-individualized, evidence at trial. Gans Rpt. ¶¶ 13-14.

***Classwide injury and harm to competition.*** Prof. Gans examined Meta's alleged conduct, including Advertisers' supporting evidence, and determined that if proven at trial, such conduct would have a classwide impact on competition in the Social Advertising Market by strengthening the DTBE, and would result in classwide injury as a result of Meta's monopoly and the lack of a competitive price check in the market. Gans Rpt. ¶¶ 13-14, 49-109. In Section IV of his report, Prof. Gans considered five exclusionary acts and their effects on the DTBE protecting Meta's monopoly: (a) ███████████████████████████████████████████████ (b) ██████████████ ████████████████████████████████████████████████████████████████████████

---

[1] All exhibits are attached to the Declaration of Yavar Bathaee ("Bathaee Decl.").

██████████████████████████ (c) ████████████
████████████████████████████████████████████
████████████████████████ (d) ███████████████
██████████████████████████████████ ; and (e) ████
████████████████████████████████████. *See id*. ¶¶ 55-109. Prof. Gans reviewed each category of conduct and explained how such conduct, if proven at trial, would strengthen the DTBE protecting Meta's monopoly and prevent rivals from serving as competitive price checks in the Social Advertising Market. *See id*. As part of this analysis, Prof. Gans provided an extensive economic analysis of the DTBE, drawing on economic literature on barriers to entry in advertising and technology markets, including his own published research and economic models. *See id*. ¶¶ 15-48. Much of that analysis was set forth in Section III of his report, preceding his analysis of the impact of the exclusionary acts if ultimately proven at trial. *See id*.

***Common evidence.*** Prof. Gans examined the evidence and conduct alleged by Advertiser Plaintiffs and concluded that classwide injury and impact could be proven from common evidence, meaning evidence that does not vary as to each class member. *See id*. ¶¶ 49-51. In doing so, Prof. Gans's report recounted Plaintiffs' factual assertions and their characterization of evidence supporting those assertions. *See id*. ¶¶ 55-109. Prof. Gans was, however, clear that he undertook only to determine whether the evidence and factual assertions to be proffered at trial could support proof of anticompetitive harm and injury based on common evidence. *See id*. ¶¶ 9-10. Prof. Gans repeatedly explained that his analysis of the evidence was not an opinion on the facts of the case. For example, as to Meta's ███ conduct, Prof. Gans stated: "I have been asked, in my analysis, to assume the above-described conduct, in fact, occurred—I do not have an opinion at this time about whether it did, in fact, or did not in fact, happen." Gans Rpt. ¶ 75; *see also, e.g.*, ¶ 88 (as to ███). Prof. Gans was deposed on September 26, 2023. *See* Ex. 3 ("Gans Dep.").

## LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert witness's testimony is admissible if the "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the

knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (cleaned up).

## ARGUMENT

### I. PROF. GANS APPROPRIATELY ASSUMED FACTS TO BE PROVEN AT TRIAL

Prof. Gans opined that Meta's conduct, namely the five exclusionary acts described above, pp. 2-3, *supra*, if proven at trial, would strengthen the DTBE, allowing Meta to maintain its monopoly in the Social Advertising Market. As part of his opinion, Prof. Gans reviewed Plaintiffs' factual contentions and evidentiary support to determine whether if proven at trial, they could, as matter of economics, show harm to competition and classwide injury through price inflation.

Prof. Gans's opinions on classwide injury and anticompetitive harm are based entirely on his economic analysis, not factfinding. Indeed, Prof. Gans's reports are clear that he assumed the facts and evidence, as asserted and characterized by Advertisers, will be proven at trial. *See, e.g.,* Gans Rpt. ¶ 9 ("While I do not provide an independent analysis evaluating whether these conducts took place and the nature of the intent of the parties involved (that is, I take the conducts as described by the Plaintiffs as assumed facts), I do provide economic analysis of their likely consequences with regard to a Data Targeting Barrier to Entry specifically and competition in the social advertising market generally."); ¶¶ 75, 88 ("I have been asked, in my analysis, to assume that the above-described conduct, in fact, occurred—I do not have an opinion at this time about whether it did, in fact, or did not in fact, happen."); ¶¶ 60, 75, 94, 97, 100 (conclusions stand if certain facts are proven). He then provided an economic analysis of the resulting effects of that conduct, if proven, on the DTBE that protected Meta's social advertising monopoly from competition. *Id*. ¶¶ 49-109. Prof. Gans examined evidence in support of Plaintiffs' factual contentions to determine whether proof could be made based on common evidence (rather than individualized inquiry). *Id*. ¶¶ 55-109.

Yet Meta's motion turns Prof. Gans's actual analysis on its head. Meta faults Prof. Gans for supposedly "intrud[ing] on the role of the factfinder," Mot. at 9, by adopting characterizations of the evidence that mirror those of Advertisers' lawyers, arguing that by doing so, Prof. Gans is offering lawyer argument, not expert testimony. *See* Mot. at 10 ("Advertiser Plaintiffs have already argued

1  these points, with exactly this framing, without Gans's assistance in multiple discovery motions.").
2  But this argument is spurious—indeed, upside-down. The Supreme Court has explained: "Under
3  settled evidence law, an expert may express an opinion that is based on facts that the expert assumes,
4  but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence
5  establishing the facts assumed by the expert." *Williams v. Illinois*, 567 U.S. 50, 57 (2012). **Of course**
6  Prof. Gans assumed the facts to be as Advertisers assert them for purposes of his economic analysis
7  of class certification issues—that is a "settled" expert function according to no less than the Supreme
8  Court, and is entirely appropriate at this stage, before any merits questions have been resolved. *See*
9  *Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022)
10 (en banc) ("In determining whether the 'common question' prerequisite is met, a district court is
11 limited to resolving whether the evidence establishes that a common question is capable of class-wide
12 resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.").

13         Indeed, a central question before the Court on class certification under Rule 23(b)(3) is "what
14 a class trial will look like," including whether the trial will be overwhelmed by individualized
15 inquiries. *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 796 (Hurwitz, J. concurring) (quoting
16 *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016)). It is
17 impossible for Prof. Gans to determine whether classwide injury and harm to competition can be
18 proven with common evidence if he does not examine, and assume the proof of, some of the central
19 evidence and factual assertions that Plaintiffs will present at a trial on the merits.

20         Moreover, Prof. Gans's own reports make expressly clear that he did ***not*** find facts or advance
21 lawyers' arguments, as Meta incorrectly asserts. *See* Mot. at 10 ("He is simply putting an imprimatur
22 of expert testimony on the arguments Advertisers' counsel seek to advance."). To the contrary, Prof.
23 Gans assumed Advertisers' factual contentions as to Meta's exclusionary acts so that his opinion
24 would be limited to a discussion of economics—his undisputed area of expertise. His report is express
25 on this point. For example, in Section IV(A) of his report, Prof. Gans considered Meta's ████████
26 ████████████████████████████████ which Prof. Gans "underst[ood]" allowed Meta to ████
27 ████████████████████████████████████████████████████████████████
28 ████████████████████████████████████. Gans Rpt. ¶ 59. Prof.

1  Gans's description of the conduct hewed closely to Plaintiffs' contentions and characterizations of
2  the evidence, and, importantly, Prof. Gans was clear that he was describing Plaintiffs' factual
3  assertions, not adopting those assertions as part of his opinion:

4          ***Plaintiffs assert*** that Facebook used technology ██████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████.

7  *Id.* (emphasis added). Prof. Gans explained that his opinion was that if the ████ conduct was
8  "proven at trial," it would be the sort of "common, classwide evidence" that could demonstrate
9  classwide economic impact on Facebook advertisers . . . ." *Id.* at 60; *see also id.* ¶ 75 ("I have been
10 asked, in my analysis, to assume that the above-described conduct, in fact, occurred—I do not have
11 an opinion at this time about whether it did, in fact, or did not in fact, happen.").

12     Meta leaves out these express statements and instead pretends that Prof. Gans himself
13 characterized the evidence he examined and opined on those facts. For example, Meta takes issue
14 with Prof. Gans's reference to "Facebook's strategic purpose for ████████████" and his
15 description of ████████████████████████████████████
16 ████████████████████████████████████████
17 ████████████████████████████████████ Mot. at 10-
18 11 (quoting (in part) Gans Rpt. ¶¶ 63-64). Meta argues that this supposedly shows that Prof. Gans
19 draws "conclusions" from "the evidence [that] are outside the scope of proper expert testimony," Mot.
20 at 10, but Prof. Gans drew no conclusions about the truth or falsity of these documents. He concluded
21 only that "[t]hese documents provide common evidence regarding Facebook's strategic purpose for
22 ████████████," Gans Rpt. ¶ 64, not that these documents factually establish what Meta's
23 strategic purposes were or were not, *id.* ¶ 75 ("I do not have an opinion at this time about whether it
24 did, in fact, or did not in fact, happen."). At bottom, Meta's argument that Prof. Gans improperly
25 invaded the province of the factfinder by making factual arguments is based on a demonstrably false
26 premise. When this premise is set aside, there remains no basis for excluding Prof. Gans's testimony.

## II. PROF. GANS APPLIED EXTENSIVE ECONOMIC ANALYSIS TO ARRIVE AT HIS OPINIONS

Meta's second argument to exclude Prof. Gans's testimony is not just incorrect, it is outright misleading. Meta argues that Prof. Gans, in Section IV of his report, simply concluded, with no economic analysis, that the evidence (if proven at trial) would establish classwide injury. To make this assertion, Meta ignores entirely Section III of that same report, which analyzes economic literature and sets forth the economic framework for his analysis of the anticompetitive effects of Meta's conduct. In sum, Prof. Gans's Section III sets out a detailed economic analysis, and Section IV applies it to Meta's alleged conduct. As Prof. Gans explained to Meta's lawyers at deposition:

> Q: Have you read Meta's motion to exclude Section [IV] of your testimony?
>
> A: I have read that. I've read that in full.
>
> Q: Any reactions? . . .
>
> A: My overall reaction is that you have trouble understanding what a full report is and the choices an expert might make in structuring that report, and that your confusion will be apparent to the Court.
>
> Q: What do you understand that confusion to be?
>
> A: Well, you—moving to exclude Part IV of the report on the basis that it contains no analysis, whereas Part III of the report was drawing out the analysis and creating the set of conditions that would allow me to look at the conduct and draw conclusions from them. So in effect, the report—it's not correct to say that there was no analysis in Part IV being given because that analysis was in Part III and was drawn upon in Part IV, and, in fact, that's what I outlined that I was going to do.

Gans Dep. 65:16-66:16.

Meta also argues that Prof. Gans's economic opinion is unreliable because it fails to consider ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. at 14-15. Prof. Gans, however, is clear that he did in fact consider such ▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As Prof. Gans explained in his reply report, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Gans Reply ¶ 19. Contrary to Meta's argument that Prof. Gans has done nothing to "verify that claim," Prof. Gans made clear that his own published economic model "supports the analysis in [his] first report that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[REDACTED]." *Id.* ¶ 29; Gans Dep. 303:10-304:15. Meta pretends that Prof. Gans failed to provide economic support for his conclusion, but ignores that his own published economic model accounts for precisely Meta's critique. *See* Gans Dep. 303:10-304:15 ("[REDACTED].").

Finally, Meta makes the contradictory argument that Prof. Gans's opinions are "obvious" and should be excluded on that ground. Mot. at 14 n.9. If Prof. Gans's opinions are in such accord with economic principles and common sense that they appear obvious to Meta, that is grounds to deny Meta's *Daubert* motion, not grant it.

## CONCLUSION

Meta's Motion to Exclude the Testimony of Joshua Gans should be denied.

**FILED UNDER SEAL**

Dated: October 13, 2023

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br><br>By: */s/ Yavar Bathaee*<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>Andrew M. Williamson (CA 344695)<br>awilliamson@bathaeedunne.com<br>Adam Ernette (*pro hac vice*)<br>aernette@bathaeedunne.com<br>Priscilla Ghiță (*pro hac vice*)<br>pghita@bathaeedunne.com<br>Chang Hahn (*pro hac vice*)<br>chahn@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>Allison Watson Cross (CA 328596)<br>across@bathaeedunne.com<br>3420 Bristol St, Ste 600<br>Costa Mesa, CA 92626-7133<br><br>*Interim Co-Lead Counsel for the Advertiser Classes*<br><br>**LEVIN SEDRAN & BERMAN LLP**<br><br>Keith J. Verrier (*pro hac vice*)<br>kverrier@lfsblaw.com<br>Austin B. Cohen (*pro hac vice*)<br>acohen@lfsblaw.com<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3997<br>Tel.: (215) 592-1500<br><br><br>*Members of Executive Committee for the Advertiser Classes* | **SCOTT+SCOTT<br>ATTORNEYS AT LAW LLP**<br><br>By: */s/ Amanda F. Lawrence*<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>Patrick J. Rodriguez (*pro hac vice*)<br>prodriguez@scott-scott.com<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Tel.: (212) 223-6444<br><br><br>**AHDOOT & WOLFSON, PC**<br><br>Tina Wolfson (CA 174806)<br>twolfson@ahdootwolfson.com<br>Robert Ahdoot (CA 172098)<br>rahdoot@ahdootwolfson.com<br>Theodore W. Maya (CA 223242)<br>tmaya@ahdootwolfson.com<br>Henry J. Kelson (*pro hac vice*)<br>hkelston@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, CA 91505<br>Tel.: (310) 474-9111 |

**FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: October 13, 2023                    By: */s/ Brian J. Dunne*