**PUBLIC REDACTED VERSION**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP | ARI HOLTZBLATT (*pro hac vice*)<br> Ari.Holtzblatt@wilmerhale.com |
| SONAL N. MEHTA (SBN 222086)<br> Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000 | MOLLY M. JENNINGS (*pro hac vice*)<br> Molly.Jennings@wilmerhale.com<br>1875 Pennsylvania Ave NW<br>Washington, DC 20006<br>Telephone: (202) 663-6000 |
| DAVID Z. GRINGER (*pro hac vice*)<br> David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br> Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br> Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br> Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | MICHAELA P. SEWALL (*pro hac vice*)<br> Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**META PLATFORMS, INC.'S OPPOSITION TO ADVERTISER PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF DR. HOCHBERG**<br><br>Hearing Date: December 14, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

LEGAL STANDARD .............................................................................................................4

ARGUMENT ..........................................................................................................................5

    I.     Hochberg Is Qualified To Rebut The Kreitzman-Williams Conclusions About Meta's Profitability And What It Shows .......................................................5

    II.    Advertisers Misstate Hochberg's Use of Monopoly Power ...................................7

    III.   Hochberg's Empirical Analysis Is Not "Cherry Picked"—It Is A Robust Rejection Of The Kreitzman-Williams Study .............................................9

    IV.   Hochberg's Sections V And VI Offer Opinions From Her Expertise In Financial Economics That Will Aid The Court ......................................................11

CONCLUSION .......................................................................................................................13

**PUBLIC REDACTED VERSION**

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ............................................................................................... 4

*Apple Inc. v. Psystar Corp.*,
    673 F. Supp. 2d 926 (N.D. Cal. 2009) ................................................................................ 8

*Blanton v. Domino's Pizza Franchising LLC*,
    2019 WL 5543027 (E.D. Mich. Oct. 25, 2019), *aff'd*, 962 F.3d 842 (6th Cir. 2020) ........................................................................................................................... 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................................ 4

*DZ Reserve v. Meta Platforms, Inc.*,
    2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ................................................................... 12

*Elosu v. Middlefork Ranch Inc.*,
    26 F.4th 1017 (9th Cir. 2022) ............................................................................................. 4

*Gulf States Reorg. Grp. v. Nucor Gorp.*,
    822 F. Supp. 2d 1201 (N.D. Ala. 2011), *aff'd*, 721 F.3d 1280 (11th Cir. 2013) ................ 6

*High Tech. Careers v. San Jose Mercury News*,
    1995 WL 115480 (N.D. Cal. Mar. 14, 1995), *aff'd*, 94 F.3d 651 (9th Cir. 1996) .............. 8

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
    2016 WL 7479402 (C.D. Cal. July 7, 2016) ..................................................................... 10

*In re Aluminum Warehousing Antitrust Litig.*,
    336 F.R.D. 5 (S.D.N.Y. 2020) .......................................................................................... 13

*In re Apple iPhone Antitrust Litigation*,
    2022 WL 1284104 (N.D. Cal. March 29, 2022) ............................................................... 11

*In re Capacitors Antitrust Litig.*,
    2020 WL 870927 (N.D. Cal. Feb. 21, 2020) .................................................................... 11

*In re Capacitors Antitrust Litig. (No. III)*,
    2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ................................................................. 13

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
    2014 WL 3557345 (N.D. Tex. July 18, 2014) ................................................................... 9

*In re High-Tech Emp. Antitrust Litig.*,
    2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ..................................................................... 7

**PUBLIC REDACTED VERSION**

*In re Payment Card Interchange Fee & March. Disc. Antitrust Litig.*,
   638 F. Supp. 3d 227 (E.D.N.Y. 2022) .................................................................................. 7

*Kuhmo Tire Co., Ltd. V. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................. 9

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ..................................................................... 8

*Morris v. Mitsubishi Motors N. Am., Inc.*,
   2011 WL 13228439 (E.D. Wash. Mar. 31, 2011) ................................................................ 7

*Nelson v. Monroe Reg'l Med. Ctr.*,
   925 F.2d 1555 (7th Cir. 1991) .............................................................................................. 6

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................................................ 4

*Sumotext Corp. v. Zoove, Inc.*,
   2020 WL 264701 (N.D. Cal. Jan. 17, 2020) ........................................................................ 9

*Thomas J. Kline, Inc. v. Lorillard, Inc.*,
   878 F.2d 791 (4th Cir. 1989) ................................................................................................ 6

*Todd v. Tempur-Sealy Int'l, Inc.*,
   2016 WL 5462428 (N.D. Cal. Sept. 28, 2016) .................................................................... 7

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) ................................................................................................ 4

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) .............................................................................................. 4

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702 ............................................................................................................................ 4

**OTHER AUTHORITIES**

*Concentrator Guide*, Harvard Univ., https://economics.harvard.edu/concentrator-guide
   (last visited Oct. 20, 2023) .................................................................................................... 5

*Curriculum and Thesis*, MIT Economics, https://economics.mit.edu/academic-programs/
   phd-program/curriculum-and-thesis (last visited Oct. 20, 2023) ......................................... 5

*Doctoral Program*, Stanford Univ. Dep't of Econ., https://economics.stanford.edu/
   graduategraduate-degree-programs/doctoral-program (last visited Oct. 20, 2023) ............ 5

*Economics*, Rice Univ., https://ga.rice.edu/programs-study/courses/econ/ (last visited Oct.
   20, 2023) ............................................................................................................................... 5

**PUBLIC REDACTED VERSION**

Franklin M. Fisher, *Economic Analysis and "Bright-Line Tests,"*
    4 J. Comp. L. & Econs. 129 (2008) .................................................................................. 8, 9

*Program Requirements*, Harvard Univ. Dep't of Econ., https://economics.harvard.edu/
    graduate-program-requirements (last visited Oct. 20, 2023) ............................................. 5

*The Sedona Conference Commentary on the Role of Economics in Antitrust Law*,
    7 Sedona Conf. J. 69 (2006) ............................................................................................... 5

**PUBLIC REDACTED VERSION**

# INTRODUCTION

Meta's expert Dr. Yael Hochberg persuasively rebuts the opinion of Advertisers' putative expert Kevin Kreitzman that Meta's profitability exceeds that of supposed "yardstick firms," which is then relied on by Advertisers' putative expert Michael Williams as per se evidence of Meta's unlawful monopoly power and purported class-wide "but-for" damages. This Kreitzman-Williams study falls well short of the standard for admission into federal court, and Meta has moved to exclude it. Dkt. 662. Recognizing the vulnerability of their analysis, and the class certification bid that depends on it, Advertisers move to exclude Hochberg's entire opinion rebutting the Kreitzman-Williams study. Their scattershot bases for exclusion have no merit.

First, Advertisers claim that Hochberg's opinions should be excluded because she is supposedly unqualified to opine on "antitrust economics." Dkt. 658 ("Mot.") 1-3, 5. There is no economic field of "antitrust economics." If there were, then Kreitzman—a professional litigation consultant with a Masters—would certainly not be qualified in it. Hochberg, on the other hand, is a highly qualified Ph.D. professor of finance and economist with two decades' experience analyzing the relationship between profits, firm entry, and competition. The Kreitzman-Williams study is about the causes of firms' success, and about how to compare firms against one another. That lies at the core of Hochberg's expertise, which she uses to explain that—contrary to the assumptions of their study—high profits can exist and persist for many reasons unrelated to anticompetitive conduct. ▮

Second, Advertisers accuse Hochberg of failing to comprehend the difference between lawful and unlawful monopoly. Mot. 7-10. Not so. Hochberg's rebuttal report criticizes the Kreitzman-Williams study because *they* have not done *anything* to support their own assumption of monopoly power or show that Meta's purported profit margins relative to purported yardstick firms are due to the unlawful behavior alleged, as opposed to factors such as product quality, product innovation, and management and employee quality. Ex. 1, Hochberg Report ¶ 33.[1]

Third, Advertisers accuse Hochberg of "cherry-picking" firms for her dataset, which supposedly renders her opinions "irrelevant." Mot. 10-12. This is ironic given that Advertisers are

---

[1] "Ex." citations reference exhibits to the Jennings Declaration filed herewith.

**PUBLIC REDACTED VERSION**

proffering and defending a study that hinges on comparing Meta to just *three* hand-picked firms, two of which are obviously nothing like Meta. It is also wrong. Hochberg reviewed a vast set of firms to determine whether, applying Kreitzman's accounting methodology, many firms other than Meta maintained similarly high EPRs and returns on capital despite operating in what are obviously competitive markets. The answer was yes—suggesting that the Kreitzman-Williams study errs in reflexively attributing high profits and returns to anticompetitive conduct or monopoly power. That is indisputably "relevant" to the issues in this case.

Last, Advertisers argue that the opinions Hochberg offers in her final two sections are "lay observation." Mot. 12-13. In those sections, Hochberg uses her expertise in financial economics to explain certain limitations of the Kreitzman-Williams study—namely, that it can only be applied to claims for *all* the conduct alleged for the *entire* putative advertiser class and *entire* class period, and that it does not and cannot reliably account for the *Users'* claims in this case, which provide yet another alternative explanation for Meta's supposedly high profitability that Kreitzman and Williams do not take into account. These limits of their model are within Hochberg's expertise, not lay understanding. The fact that it is straightforward to observe Kreitzman's and Williams' failings reflects only on the (lack of) reliability of their reports.

The Court should deny Advertisers' motion in its entirety.

## BACKGROUND

Yael Hochberg received her Ph.D. in finance and Masters in economics from Stanford University and currently serves as a Professor of Entrepreneurship and Finance at Rice University. She previously served as a Professor of Entrepreneurship at the University of Chicago, and a Professor of Finance at the Massachusetts Institute of Technology, Northwestern University, and Cornell University. She is a Research Associate at the National Bureau of Economic Research; has received numerous awards and academic distinctions; has obtained prestigious grants totaling millions of dollars, including from the National Science Foundation, Kauffman Foundation, and NASA's Translational Research Institute for Space Health; and has published in each of the top three peer-reviewed financial journals, including winning an award for the top cited paper in the *Journal of Finance* in 2009. Ex. 1, Hochberg Report ¶¶ 11-14, App'x A at 2.

**PUBLIC REDACTED VERSION**

Hochberg responds to the opinions offered by Advertisers' putative experts Kevin Kreitzman and Michael Williams (who are both professional, full-time litigation consultants) on Meta's profitability and associated "but-for" damages—i.e., the Kreitzman-Williams "yardstick" study. *Id.* ¶ 20. Advertisers offered the Kreitzman-Williams study with the hope of providing a common method of showing injury and calculating damages attributable to the higher advertising prices that Advertisers claim Meta charged. Kreitzman first calculated and then compared an accounting profit rate (what Kreitzman refers to as an economic profit rate, or "EPR") for Meta's advertising business against the weighted average EPRs for three purported "yardstick" firms— ▮▮▮▮▮▮—which he selected using entirely arbitrary criteria. Ex. 2, Kreitzman Report ¶¶ 30-49. He then proposes that a hypothetical ▮% decrease in Meta's advertising revenue would bring Meta's profit rate in line with the supposed yardstick firms. *Id.* ¶¶ 9, 53. Williams, relying on Kreitzman's analysis, purports to calculate class-wide damages by ▮▮▮▮▮▮ Ex. 3, Williams Report ¶ 364. Kreitzman also calculated Meta's return on capital employed ("ROCE") in excess of the weighted average cost of capital ("WACC"), and its operating margins, Ex. 2, Kreitzman Report ¶¶ 20-24, which Williams ▮▮▮▮▮▮ Ex. 3, Williams Report ¶¶ 220-221.

Hochberg rebuts the Kreitzman-Williams study. Drawing on her decades of experience and academic work, she explains that economic profits—far from being definitive evidence of unlawfully maintained monopoly power—can exist for entirely lawful and even pro-competitive reasons, such as product innovation and quality, or managerial quality and expertise. Ex. 1, Hochberg Report ¶¶ 25-36; *see also id.* ¶ 2(a) ("The Kreitzman-Williams Method ignores that positive economic profits and return on capital employed might exist and persist due to reasons other than monopoly power, in particular due to product innovation, product quality, management practices, and employee ability. Their methodology cannot and does not isolate or even consider these issues."). She goes on to provide empirical analysis applying Kreitzman's own methodology to show that it is common for firms that obviously do not have monopoly power to have

persistently positive EPR and ROCE in excess of WACC. *Id.* ¶¶ 37-42; *see also id.* ¶ 2(b) ("[E]mpirical analysis applying the methodology in the Kreitzman Report to a broad range of companies shows that it is common for companies to have positive and persistent excess economic profits and return on capital employed (as defined in the Kreitzman Report) across a range of industries."). She also explains why the "criteria the Kreitzman-Williams Method uses to identify yardstick firms are arbitrary and flawed, and the way the yardstick firms are used to compare them to Facebook are arbitrary and flawed." *Id.* ¶¶ 3(b), 53-61. She demonstrates that Kreitzman's calculation of Meta's EPR and comparison to yardstick firms' EPRs fails to account for how User Plaintiffs' claims could impact Meta's profits, *id.* ¶¶ 65-68, and that Williams' application of a 20% reduction to Meta's ad revenue is incapable "of disentangling certain revenue streams, customers or time periods" and cannot be adjusted if any of the challenged conduct is found to be lawful or any advertisers are found to be non-class members, *id.* ¶¶ 62-64. Ultimately, Hochberg concludes that Kreitzman's and Williams' approach offers no way to determine what portion of Meta's purportedly inflated economic profits are attributable to the conduct Advertisers challenge, as opposed to other possible causes of Meta's profits. *Id.* ¶ 69.

## LEGAL STANDARD

An expert is qualified in a particular field if she has "sufficient" "knowledge, skill, experience, training, or education" necessary to "assist the trier of fact to understand the evidence or determine a fact in issue." *Primiano v. Cook*, 598 F.3d 558, 563-564, 567 (9th Cir. 2010) (quoting Fed. R. Evid. 702) (internal quotation marks omitted). Expert testimony is admissible if it "is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Expert testimony is relevant if "it has a valid connection to the pertinent inquiry." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-970 (9th Cir. 2013) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)) (internal quotation marks omitted). It is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car*, 472 F.3d at 969; *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022).

**PUBLIC REDACTED VERSION**

ARGUMENT

I. **HOCHBERG IS QUALIFIED TO REBUT THE KREITZMAN-WILLIAMS CONCLUSIONS ABOUT META'S PROFITABILITY AND WHAT IT SHOWS**

Advertisers first argue that Hochberg "lacks any experience or training in the highly specialized field of antitrust economics." Mot. 5-6. Antitrust, of course, is the name of a body of law, not an economic discipline. Leading economics departments like the ones at Stanford (where Hochberg was a student) and Rice (where she teaches) do not offer "antitrust economics" doctoral courses.[2] At her deposition, Hochberg █████████████████████████████ because Advertisers were making it up. Mot. 6. The single source Advertisers cite to prove this supposedly defined and "highly specialized field" does not recognize the field at all or stand for the proposition that an expert opinion on economic issues in antitrust cases must be an "antitrust economist." *See* Mot. 5 (citing Ex. 4, *The Sedona Conference Commentary on the Role of Economics in Antitrust Law*, 7 SEDONA CONF. J. 69, 6 (2006)). Instead, it states that an economic expert witness must have adequate training and offer testimony grounded in economics—both of which Hochberg has in spades. *See* Ex. 4, *The Sedona Conference*, at 6. Of course, if Advertisers are correct that you can only opine in an antitrust case with an expertise in "antitrust economics," the Court would have to exclude Kreitzman first and foremost: he testified that ████████ ████ Ex. 5, Kreitzman Tr. 24:21-23 ███████████████████████████████████ ███████████████████

Hochberg's opinions address matters squarely within her expertise. Advertisers concede, as they must, that Hochberg is a finance expert specializing in venture capital and entrepreneurship. Mot. 3. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

---

[2] *Doctoral Program*, Stanford Univ. Dep't of Econ., https://economics.stanford.edu/graduategraduate-degree-programs/doctoral-program (last visited Oct. 20, 2023); *Economics*, Rice Univ., https://ga.rice.edu/programs-study/courses/econ/ (last visited Oct. 20, 2023); *see also Program Requirements*, Harvard Univ. Dep't of Econ., https://economics.harvard.edu/graduate-program-requirements (last visited Oct. 20, 2023); *Concentrator Guide*, Harvard Univ., https://economics.harvard.edu/concentrator-guide (last visited Oct. 20, 2023); *Curriculum and Thesis*, MIT Economics, https://economics.mit.edu/academic-programs/phd-program/curriculum-and-thesis (last visited Oct. 20, 2023).

1  Ex. 6, Hochberg Tr. 32:8-14. Moreover, Hochberg specifically researches and teaches about firm
2  entry, competition, and innovation. *Id.* at 23:18-22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This expertise more than qualifies Hochberg to
5  opine in a case that is, as Advertisers have it, about barriers to ***entry*** and supposedly high profits
6  and their causes.

7  From her expertise, Hochberg explains why the Kreitzman-Williams study draws improper
8  inferences from Meta's profitability, relies on flawed criteria for identifying comparable firms, and
9  fails to provide reliable information about firms' underlying opportunity costs and invested capital.
10 *See* Ex. 1, Hochberg Report ¶¶ 52, 61. She explains that the accounting calculations that Kreitzman
11 performs do not support an assumption of monopoly power or but-for damages for several reasons,
12 including that they do not isolate or control for the many other reasons for Meta's purported excess
13 profitability. *See, e.g., Id.* ¶ 2(a) ("The Kreitzman-Williams Method ignores that positive economic
14 profits and return on capital employed might exist and persist due to reasons other than monopoly
15 power, in particular due to product innovation, product quality, management practices, and
16 employee ability. Their methodology cannot and does not isolate or even consider these issues.").
17 These are all opinions that Hochberg is amply qualified to give.

18 The cases Advertisers cite demonstrate how far from meritorious this *Daubert* challenge
19 is. Each involved a putative expert opining on antitrust issues, such as market definition or price
20 discrimination, with no relevant experience on the subject on which they were offering testimony.
21 *See Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1572 (7th Cir. 1991) (Pell, J., concurring)
22 (excluding putative market definition expert who conceded he was "not an expert" in "antitrust
23 markets, either geographic or product"); *Gulf States Reorg. Grp. v. Nucor Gorp.*, 822 F. Supp. 2d
24 1201, 1232 (N.D. Ala. 2011) (excluding two putative market definition experts with no economics
25 expertise whatsoever), *aff'd*, 721 F.3d 1280 (11th Cir. 2013); *Thomas J. Kline, Inc. v. Lorillard,*
26 *Inc.*, 878 F.2d 791, 799-800 (4th Cir. 1989) (excluding putative expert who "by her own admission
27 [was] not an economist" and whose experience had "nothing to do" with the issues in the case,
28 "credit discrimination and price discrimination"). Here, in contrast, Hochberg is more than

qualified to "identify empirical information that casts doubt on the plausibility of Plaintiffs' experts' opinions about the" conditions "that would prevail in their but-for world" and "question the reliability of the assumptions underlying Plaintiffs' expert opinions." *See In re Payment Card Interchange Fee & March. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 245-250 (E.D.N.Y. 2022). She did so effectively, as Meta's motion to exclude the Kreitzman-Williams study shows.

## II.  ADVERTISERS MISSTATE HOCHBERG'S USE OF MONOPOLY POWER

Advertisers next argue that ████████████████████████████████████████████████████████████████████████████ and that this "demonstrate[s] her lack of qualifications" and "renders the whole of Section III of her report unreliable." Mot. 7. Hochberg does not make this assumption. Because Advertisers' "asserted basis for exclusion"—that Hochberg's rebuttal assumed a firm must have engaged in anticompetitive acts to have monopoly power—is "incorrect," their motion should be denied on this basis alone. *See In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *23 (N.D. Cal. Apr. 4, 2014); *accord Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5462428, at *5 (N.D. Cal. Sept. 28, 2016) (denying *Daubert* motion where expert's report never gave the opinion cited as the basis for exclusion); *Morris v. Mitsubishi Motors N. Am., Inc.*, 2011 WL 13228439, at *3 (E.D. Wash. Mar. 31, 2011) (denying *Daubert* motion that "ha[d] taken the experts' statements out of context and misconstrued the[ir] methodology").

Advertisers are apparently attempting a "gotcha" argument because Hochberg's report refers to "monopoly power" in critiquing how Kreitzman and Williams calculate damages. But there is no credible argument that Hochberg mistakes monopoly power acquired anticompetitively with monopoly power acquired through skill or product superiority. Quite the contrary. Her central critique is that the **Kreitzman-Williams study** fails to distinguish between competitively and anticompetitively obtained profitability, and that profitability alone evinces nothing about unlawful monopoly power at all. Her report clearly opines that "[s]ince product differentiation, investments in quality and innovation, or quality of management and human capital can yield ROCE in excess of WACC and positive economic profit that exceeds competitors' economic profits, there are no bright-line tests to identify monopoly power by simply looking at observed

**PUBLIC REDACTED VERSION**

1 profits." Ex. 1, Hochberg Report ¶ 32. At her deposition, she explained that ▮
2 ▮
3 ▮
4 ▮ Ex. 6, Hochberg Tr. 14:22-15:4. When asked ▮
5 ▮
6 ▮ Hochberg testified ▮
7 ▮
8 ▮ *Id.* at 76:23-77:6 (emphasis added).

9   At bottom, Advertisers' critique appears to be that she should have phrased her opinions
10 differently. They argue that sometimes Hochberg wrote "monopoly power" when she should have
11 written "unlawful monopoly power." She is not the first to use "monopoly power" or "market
12 power" as shorthand for "unlawful monopoly power." *See, e.g.*, *High Tech. Careers v. San Jose
13 Mercury News*, 1995 WL 115480, at *3 (N.D. Cal. Mar. 14, 1995), *aff'd*, 94 F.3d 651 (9th Cir.
14 1996); *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 926, 931 (N.D. Cal. 2009). It is clear what
15 Hochberg meant, and inconsequential nitpicking is no ground for exclusion under *Daubert*.
16 *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *5 (E.D. Cal. Mar. 29, 2019) (denying
17 *Daubert* motion that merely "nitpick[ed]" rebuttal expert's criticism of plaintiff's expert opinions).

18   Nor is Advertisers' bizarre critique about whose expert was more faithful to Franklin Fisher
19 grounds for exclusion. Hochberg testified that ▮
20 ▮
21 ▮
22 ▮
23 ▮ Ex. 6, Hochberg Tr. 58:23-59:6. Advertisers say that she is mistaken, and that Fisher
24 defines monopoly power as "the power to raise prices above (or reduce quality below) the
25 competitive level or a significant period of time." Mot. 9 (citing Ex. 7, Franklin M. Fisher,
26 *Economic Analysis and "Bright-Line Tests"*, 4 J. Comp. L. & Econs. 129, 137 (2008)). They
27 ignore the pertinent part of Fisher's article, which states: "I believe that the correct view of
28 monopoly power … is the power to control price and exclude competitors by means other than

1  'superior skill, foresight, and industry,' combining the two prongs of Hand's test in *ALCOA*." Ex. 7, Fisher, *Economic Analysis*, at 148 (emphasis omitted). In other words, Hochberg is correct that she uses the term "monopoly" consistent with Fisher's definition. And even if she didn't, it would not matter. *See Sumotext Corp. v. Zoove, Inc.*, 2020 WL 264701, at *5 (N.D. Cal. Jan. 17, 2020) ("'conflicting views about the effect of a particular economic principle' should be addressed by 'allow[ing] each side to attack the other's [view] with contrary expert opinion, other contrary evidence, and cross examination,' rather than exclusion); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2014 WL 3557345, at *12 (N.D. Tex. July 18, 2014) ("A difference of opinion in interpreting the literature is not grounds for a *Daubert* challenge." (citing *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999)).

### III.   HOCHBERG'S EMPIRICAL ANALYSIS IS NOT "CHERRY PICKED"—IT IS A ROBUST REJECTION OF THE KREITZMAN-WILLIAMS STUDY

Advertisers next cobble together a string of complaints about Hochberg's empirical analysis—none of which requires exclusion and are, at most, weak grist for cross-examination.

*First*, Advertisers claim that Hochberg's empirical analysis is "simply irrelevant." Mot. 10. They state that Kreitzman and Williams never ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* This is bizarre to say the least. In the very next sentences, Advertisers admit that Williams based his opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 10-11; *see also* Ex. 3, Williams Report ¶ 220 ▮▮▮▮▮▮▮▮▮▮ Hochberg's rebuttal shows *both* that firms frequently have persistently positive values for these metrics *and* that many industries include firms whose EPRs exceed the industry average by at least the same amount that Meta's EPR exceeded the supposed "yardsticks'" during the class period (a point which Advertisers' motion entirely ignores). Ex. 1, Hochberg Report ¶¶ 37-40 & figs. 1-3. Both findings are relevant to testing the Kreitzman-Williams theory that EPR, ROCE, and operating margin values ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are evidence of monopoly power. The fact that this theory would result in a finding that firms like ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—both of whose EPRs were higher than Meta's during the

**PUBLIC REDACTED VERSION**

1   class period, *id.* ¶ 38—also have monopoly power obviously calls its validity into question.[3]

2   *Second*, Advertisers argue that Hochberg's analysis is ▮▮▮▮▮
3   ▮▮▮▮▮ Mot. 11. But what Hochberg showed in
4   evaluating over 1,000 firms is that it is "not uncommon to see successful companies across many
5   industries," Ex. 1, Hochberg Report ¶ 37—including several with profitability measures at or
6   above the levels that Williams asserts are ▮▮▮▮▮ Ex. 3,
7   Williams Report ¶¶ 217-222. That analysis undermines the Kreitzman-Williams conclusion that
8   Meta's profitability demonstrates unlawful monopoly power. That 17 firms in Hochberg's analysis
9   had an EPR or ROCE-WACC of ▮% or that 14 firms had ROCE-WACC of ▮% during the class
10  period is consistent with Hochberg's opinion, not Kreitzman's and Williams's, that Meta's
11  profitability level does not evidence an unlawful monopoly—not unless all 17 of those firms
12  ▮▮▮▮▮ are unlawful monopolists
13  too. *See* Ex. 1, Hochberg Report ¶¶ 38-39 & figs. 1-2. Advertisers recognize this absurdity, but
14  lean into it: in a footnote, they suggest that ▮▮▮▮▮
15  ▮▮▮▮▮ Mot. 11 n.13, citing only two such actions that were both
16  dismissed, one of which was not even a monopolization claim.[4] So Advertisers have proven
17  Hochberg's point, not the other way around.

18      *Third*, Advertisers criticize Hochberg for supposedly "cherry picking" data from ▮▮
19  ▮▮▮▮▮ to show that persistently positive EPRs and ROCE in excess of WACC are
20  common. *Id.* at 11. But Hochberg identified **over 1,000** firms with such characteristics. Ex. 1,
21  Hochberg Report ¶¶ 38-39 & figs. 1-2 (showing 1,126 firms experienced positive EPR in at least
22  one year, and nearly 500 persistently over the class period). If Hochberg is picking cherries, she
23  has picked an entire bushel of them. And if Advertisers nonetheless believe that this is too few,

---

[3] These firms' EPRs therefore necessarily also ▮▮▮▮▮
▮▮▮▮▮ Mot. 10 (emphasis omitted).

[4] ▮▮▮▮▮

**PUBLIC REDACTED VERSION**

they are welcome to cross-examine Hochberg about it. But this too is not a basis for exclusion. *See In re Apple iPhone Antitrust Litigation*, 2022 WL 1284104, at *3-4 (N.D. Cal. March 29, 2022) (rejecting plaintiffs' putative expert for a "cherry picked" but-for commission rate only because "no analysis was actually conducted … to justify these findings.").[5]

*Fourth*, Advertisers argue that Hochberg also "cherry picked" her comparisons of industry leader EPRs to industry averages and of Meta's EPRs and ▮▮▮▮ EPRs to the EPR ranges of Kreitzman's "yardstick" firms. Mot. 12; *see* Ex. 1, Hochberg Report ¶¶ 37, 40-42 & figs. 3-5. These criticisms do not make sense. Hochberg is not positing an alternative yardstick model. She is performing EPR calculations ("[m]irroring Mr. Kreitzman's approach") involving over 500 firms—including Advertisers' own yardstick firms—to demonstrate that the Kreitzman-Williams study does not prove what Kreitzman-Williams say it does. *Id.* ¶ 40 n.53; *see also id.* ("I consider my analysis illustrative of the conceptual problems with Mr. Kreitzman's approach[.]").

### IV. HOCHBERG'S SECTIONS V AND VI OFFER OPINIONS FROM HER EXPERTISE IN FINANCIAL ECONOMICS THAT WILL AID THE COURT

Last, Advertisers move to exclude Hochberg's opinions in Section V and VI as offering lay, not expert, testimony. Both Section V and VI offer opinions about the limits of the Kreitzman-Williams study—what it can and cannot demonstrate, and how it can and cannot be applied. Both sections provide opinions based on Hochberg's expertise in financial economics that will aid the Court at class certification.

In Section V, Hochberg opines that the Kreitzman-Williams study "provides no way of disentangling certain revenue streams, customers, or time periods" because it assumes that "each and every advertisement sold globally by Meta during the entire Proposed Class Period earned the same economic profit rate." Ex. 1, Hochberg Report ¶¶ 62-63. How a (purported) financial economics study can be interpreted and applied is squarely a matter of financial economics expertise, not lay knowledge. Whether ▮▮▮▮▮▮▮▮ could reach these conclusions about how

---

[5] Advertisers also briefly suggest that Hochberg's EPR calculations contain supposed errors concerning minutiae such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. 11 n.12. None of this remotely rises to the level of "dismiss[ing]" Hochberg "as a quack." *In re Capacitors Antitrust Litig.*, 2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020).

1  the Kreitzman-Williams study can or cannot be applied says nothing about whether a *lay* witness
2  could. *See* Mot. 13. In fact, Hochberg said so specifically: ███████████████████████████
3  ████████████████████████████████████████████████████████████████████████████████████████
4  ████ Ex. 6, Hochberg Tr. 117:17-118:8 (emphasis added). And, by their argument that anyone
5  would reach this conclusion, Advertisers apparently concede that Hochberg's conclusion is
6  correct—establishing, helpfully to the Court, that Advertisers fail *Comcast*'s requirement of a
7  reliable damages model. *See* Dkt. 672 at 17-19.
8       In Section VI, Hochberg opines that "the Kreitzman-Williams Method fails to provide any
9  method at all for calculating the damages attributable to the conduct challenged by Advertisers, as
10 distinguished from other possible causes of Meta's allegedly excess profits." Ex. 1, Hochberg
11 Report ¶ 69. This is consistent with Hochberg's opinions throughout her report. In this section, she
12 identified another particular possible cause of Meta's profits that Kreitzman and Williams
13 overlook: the claim Users have made in this same case, that Meta would have paid its users in a
14 but-for world. Hochberg notes that the Kreitzman-Williams study does not take this possible cause
15 of allegedly excess profits into account. *See id.* ¶ 65. Hochberg then calculates Meta's EPR—just
16 as Kreitzman does—in Users' but-for world. The result is a substantially lower EPR that is
17 comparable to the rates of Kreitzman' yardstick firms, which would impact any damages
18 Advertisers could derive from their experts' method of multiplying Meta's revenue by the
19 difference between Meta's and the yardsticks' EPRs. *Id.* ¶¶ 67-68. Unlike in *DZ Reserve*, on which
20 Advertisers rely, this is not an observation that is "reasonably intelligible" to a lay person "without
21 special assistance." *DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar.
22 29, 2022) (excluding a purported expert whose "report does not offer any specialized or scientific
23 expertise, or anything beyond the typical knowledge and experience of a jury," because it merely
24 "interprets" "documents … reasonably intelligible to a jury without special assistance"). Of course,
25 a lay witness who *could* calculate the effect of Users' damages on the Kreitzman-Williams EPR
26 figures could also perform Williams' calculation of damages, which simply █████████████████
27 █████████████████████████████████████████████████
28      Advertisers also include a throwaway footnote that Section V and VI's "contentions are

**PUBLIC REDACTED VERSION**

1  fatally unreliable." Mot. 13 & n.14. The *legal* questions about whether Advertisers' ▮▮▮
2  ▮▮▮ are viable or whether ▮▮▮
3  are outside Hochberg's opinion. Mot. 13 n.14. While Advertisers make conclusory statements that
4  Hochberg's calculations in these sections lack ▮▮▮ *id.*, they identify no missing
5  ▮▮▮ or any other basis for questioning their reliability at all. And their arguments that Hochberg
6  did not prove that ▮▮▮ and that she
7  recognized that ▮▮▮, Mot.
8  13 n.14, say nothing about the reliability of her opinions. Her opinions critique ***Kreitzman's and***
9  ***Williams'*** failure to consider at all the effect of Users' claim on their profitability-based damages
10 model. It is ***Advertisers'*** burden to present a proper damages model, not Hochberg's. Her rebuttal
11 report may "properly concern criticizing" Kreitzman's and Williams' model without "offer[ing] a
12 competing analysis." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y.
13 2020); *see also In re Capacitors Antitrust Litig. (No. III)*, 2018 WL 5980139, at *6 (N.D. Cal.
14 Nov. 14, 2018).

## CONCLUSION

For these reasons, the Court should deny Advertisers' motion to exclude.

**PUBLIC REDACTED VERSION**

| | | |
|---|---|---|
| 1 | DATED: October 20, 2023 | Respectfully submitted, |
| 2 | | |
| | | By: */s/ Sonal N. Mehta* |
| 3 | | |
| | | SONAL N. MEHTA (Bar No. 222086) |
| 4 | |   Sonal.Mehta@wilmerhale.com |
| | | WILMER CUTLER PICKERING HALE |
| 5 | | AND DORR LLP |
| | | 2600 El Camino Real, Suite 400 |
| 6 | | Palo Alto, California 94306 |
| 7 | | Telephone: (650) 858-6000 |
| | | |
| 8 | | DAVID Z. GRINGER (*pro hac vice*) |
| | |   David.Gringer@wilmerhale.com |
| 9 | | ROSS E. FIRSENBAUM (*pro hac vice*) |
| | |   Ross.Firsenbaum@wilmerhale.com |
| 10 | | RYAN CHABOT (*pro hac vice*) |
| | |   Ryan.Chabot@wilmerhale.com |
| 11 | | PAUL VANDERSLICE (*pro hac vice*) |
| | |   Paul.Vanderslice@wilmerhale.com |
| 12 | | WILMER CUTLER PICKERING HALE |
| | | AND DORR LLP |
| 13 | | 7 World Trade Center |
| 14 | | 250 Greenwich Street |
| | | New York, New York 10007 |
| 15 | | Telephone: (212) 230-8800 |
| 16 | | |
| | | ARI HOLTZBLATT (*pro hac vice*) |
| 17 | |   Ari.Holtzblatt@wilmerhale.com |
| | | MOLLY M. JENNINGS (*pro hac vice*) |
| 18 | |   Molly.Jennings@wilmerhale.com |
| | | WILMER CUTLER PICKERING HALE |
| 19 | | AND DORR LLP |
| | | 2100 Pennsylvania Avenue NW |
| 20 | | Washington, DC 20037 |
| 21 | | Telephone: (202) 663-6000 |
| | | |
| 22 | | MICHAELA P. SEWALL (*pro hac vice*) |
| | |   Michaela.Sewall@wilmerhale.com |
| 23 | | WILMER CUTLER PICKERING HALE |
| | | AND DORR LLP |
| 24 | | 60 State Street |
| | | Boston, MA 02109 |
| 25 | | Telephone: (617) 526-6000 |
| 26 | | |
| 27 | | *Attorneys for Defendant Meta Platforms, Inc.* |
| 28 | | |

**PUBLIC REDACTED VERSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October, 2023, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:    */s/ Sonal N. Mehta*
           Sonal N. Mehta