**FILED UNDER SEAL**

1

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Interim Co-Lead Counsel for the
Advertiser Classes*

[Additional counsel on signature page]

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

2
3
4
5
6
7
8
9
10
11
12
13
14

15

**UNITED STATES DISTRICT COURT**

16

**NORTHERN DISTRICT OF CALIFORNIA**

17

**SAN FRANCISCO DIVISION**

18

MAXIMILIAN KLEIN, et al.,

19

Plaintiffs,

20

v.

21

META PLATFORMS, INC.,

22

Defendant.

Case No. 3:20-cv-08570-JD

**ADVERTISER PLAINTIFFS'
OPPOSITION TO MOTION TO
EXCLUDE TESTIMONY OF DR.
MICHAEL WILLIAMS AND KEVIN
KREITZMAN**

Hearing Date: December 14, 2023
Hearing Time: 10:00 a.m.
Courtroom 11, 19th Floor
Judge: The Honorable James Donato

23
24
25
26
27
28

**FILED UNDER SEAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD.............................................................................................................2

ARGUMENT ..........................................................................................................................2

       I.     WILLIAMS' AND KREITZMAN'S OPINIONS ARE ADMISSIBLE.................2

          A.    Dr. Williams Explored that Meta's Profits May Be Due to Something Other than Anticompetitive Conduct ............................................................2

              i.     By Definition the EPR Yardstick Analysis Controls for Lawful Conduct .................................................................3

              ii.    Meta Cannot Demonstrate Any Advertising Was "Non-Social".......................................................................5

          B.    The Williams-Kreitzman Yardstick Analysis Is Reliable...........................6

              i.     The Selection Criteria, Considered Together, Are Proper and Robust ............................................................6

              ii.    The Resulting Yardstick Firms Are Comparable and Appropriate ......................................................11

CONCLUSION......................................................................................................................13

    ADVERTISER PLAINTIFFS' OPP. TO MOTION
TO EXCLUDE TESTIMONY OF DR. MICHAEL WILLIAMS AND KEVIN KREITZMAN

**FILED UNDER SEAL**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ...............................................................................................2

*Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, No. 1:12-cv-448-WTL-DKL,
    ECF No. 319 (S.D. Ind. Feb. 2, 2015)  ................................................................................8

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ...............................................................................................4

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) .............................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................................................2

*Eleven Line, Inc. v. North Texas State Soccer Ass'n*,
    213 F.3d 198 (5th Cir. 2000) ...............................................................................................7

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966 (C.D. Cal. 2012) .................................................................................4

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005).........................................................................................6

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
    No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 5, 2008).................................................6

*Kentucky v. Marathon Petroleum Co.*,
    464 F. Supp. 3d 880 (W.D. Ky. 2020).................................................................................4

*Persian Gulf v. BP W. Coast Prods LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022)..............................................................11

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ...............................................................................................2

*Shannon v. Crowley*,
    538 F. Supp. 476 (N.D. Cal. 1981) ......................................................................................7

*Tawfilis, DDS v. Allergen, Inc.*,
    No. 8:15-cv-00307-JLS-JCG, 2017 WL 3084275 (C.D. Cal. June 26, 2017)...........................7

*US Airways v. Sabre Holdings Corp*,
    938 F.3d 43 (2nd Cir. 2019)..................................................................................................1

ii

**FILED UNDER SEAL**

1

**Statutes, Rules, and Regulations**

2

Federal Rules of Evidence
    Rule 702 ...................................................................................................................................2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Meta seeks to exclude portions of the reports and testimony of Advertiser Plaintiffs' expert, Dr. Michael Williams ("Dr. Williams") and the entire testimony and reports of another of their experts, Kevin Kreitzman ("Mr. Kreitzman"). Dr. Williams is a Ph.D. economist specializing in antitrust, industrial organization, and regulation who has testified numerous times and is extremely well-published. *See* Report of Dr. Michael Williams, dated July 7, 2023 ("Williams Report") (ECF No. 642-11) at 1. Mr. Kreitzman has been a professional in valuation and financial modeling for over 30 years. *See* Report of Kevin Kreitzman, dated July 7, 2023 ("Kreitzman Report") (ECF No. 642-13) at 1. Dr. Williams opined on market definition (which Meta does not challenge), monopoly power (which Meta largely does not challenge except for the part that relies on the yardstick analysis), and common impact and damages. In his damages analysis, Dr. Williams worked with Mr. Kreitzman to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Williams Report at 7. To select those yardstick firms, Dr. Williams and Mr. Kreitzman ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ultimately, ▓▓▓▓▓▓ resulted in three appropriate yardstick firms. Dr. Williams then ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to determine what Meta's profitability would have been in the but-for world in the absence of the alleged conduct. His damages conclusions stemmed from that calculation.

In the face of this sound, respected, and reliable methodology, Meta effectively makes two arguments to have the yardstick analysis rejected:[1] (1) that Dr. Williams does not account for any potential non-challenged conduct that may have led to Meta's dominance in the relevant market; and (2) that the robust yardstick model employed is merely throwing "darts at a wall." Neither one holds water and both suffer from the same basic infirmities: Meta conflates EPRs with accounting profits,

---

[1]     Meta is simply incorrect that there are no other cases inferring supracompetitive prices from profits. Meta's Motion to Exclude Testimony of Kevin Kreitzman and Michael A. Williams ("Motion") at 3 n.3. *See, e.g., US Airways v. Sabre Holdings Corp,* 938 F.3d 43, 61-63 (2nd Cir. 2019) (Nobel prize winning experts for the plaintiff conducted a damages analysis that compared the EPR of Sabre to the EPRs of yardstick firms). *See also In re Google Play Store Antitrust Litig.,* No. 3:21-md-02981-JD *(*N.D. Cal. 2023) (Dr. Williams and Mr. Kreitzman also conducted a damages analysis that compared Google Play's EPR to a set of yardstick firms' EPRs).

FILED UNDER SEAL

1 prices, and even income in damages models and looks at each yardstick criterion in isolation rather

2 than together.   These mistakes are fatal as they demonstrate a deep misunderstanding and

3 misappreciation of what Dr. Williams and Mr. Kreitzman actually did.  Furthermore, Meta's isolated

4 quibbles with the criteria used in the yardstick analysis go entirely to the weight, rather than the

5 admissibility, of Advertisers experts' opinions.

## LEGAL STANDARD

7 Under Federal Rule of Evidence 702, an expert witness's testimony is admissible if the

8 "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell*

9 *Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  "'Expert opinion testimony is relevant if the

10 knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the

11 knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

12 discipline.'"  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).[2]  The district court's task is not

13 to "decid[e] whether the expert is right or wrong, just whether his testimony has substance such that

14 it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-

15 70 (9th Cir. 2013).  "Challenges that go to the weight of the evidence are within the province of a fact

16 finder, not a trial court judge.  A district court should not make credibility determinations that are

17 reserved for the jury." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

## ARGUMENT

### I.  WILLIAMS' AND KREITZMAN'S OPINIONS ARE ADMISSIBLE

**A.      Dr. Williams Explored that Meta's Profits May Be Due to Something Other than Anticompetitive Conduct**

22 Meta makes two disjointed arguments in Section I of its Motion: (i) that Dr. Williams and Mr.

23 Kreitzman did not consider potential "lawful" reasons for Meta's extremely high EPR; and (ii) that

24 they considered all Meta products as social advertisements.  Neither bears scrutiny and under no

25 circumstances mandates exclusion.

26

27 ---

[2]      Citations are omitted and emphasis is added throughout unless otherwise noted.  Exhibit citations are to the Declaration of Amanda F. Lawrence in Support of Advertiser Plaintiffs'
28 Opposition, filed concurrently herewith.

2

1        **i.    By Definition the EPR Yardstick Analysis Controls for Lawful Conduct**

2        Meta's first attempt to exclude Dr. Williams and Mr. Kreitzman is to suggest that they do not

3   control for "lawful" factors potentially affecting profits.   Motion at 5-6.   Right out of the gate,

4   however, Meta reveals a fundamental flaw that permeates its Motion:  it conflates the use of EPRs

5   with the use of accounting profits and/or prices.  However, using EPRs in a yardstick analysis, as Dr.

6   Williams did, necessarily accounts for any purported lawful conduct.  Different measures used for

7   comparison across firms have different implications about the additional factors that need to be

8   controlled for in a yardstick analysis.  Accounting profits and prices may not be comparable due to

9   differences in product quality, product innovation, etc.  *See* Ex. 1.

10        In contrast, EPRs, which measure economic profits as a percentage of economic capital, by

11  design are comparable across firms.  In fact, the very purpose behind using EPRs is to enable apples-

12  to-apples comparisons of firms to be made (based on their economic profits and capital) in a

13  methodology that does not require further analyses of firm characteristics such as prices, costs,

14  management styles, and innovation.  *See* Ex. 2; s*ee also* Ex. 3.[3]  All firms, regardless of the products

15  or services they produce, can be evaluated on an apples-to-apples basis by calculating and comparing

16  their EPRs.  Firms' valuations are calculated based on their fundamental financial characteristics:

17  economic profits and capital.  After measuring firms' economic profits and capital, their EPRs can be

18  used to compare economic profitability regardless of differences in, for example, "product quality,

19  product innovation, the quality of a firm's management, and human capital" across firms.  That is,

20  Meta's "further controls" are already taken into account in the calculation of a firm's economic profits

21  and capital.  This explains why, for example, basic economic theory shows that all firms in a perfectly

22  competitive market earn the same zero EPR regardless of their differences in product quality,

23  management, and so on.  *See* Ex. 5 at 269, Table 8.1.

24        Each and every one of the citations Meta provides in Section I of its motion shows this

25  fundamental misunderstanding.  First, Meta cites Phillip A. Areeda & Herbert Hovenkamp, *Antitrust*

26  _____

27  [3]   *See also* Ex. 4 at 3 ("The guiding principle of business value creation is a refreshingly simple
    construct: companies that grow and earn a return on capital that exceeds their cost of capital create
    value.  Articulated as early as 1890 by Alfred Marshall, the concept has proven to be both enduring

28  in its validity and elusive in its application.").

**FILED UNDER SEAL**

1  *Law: An Analysis of Antitrust Principles and Their Application* (2023), §397 (attached as Ex. 6),

2  which is about a completely different type of analysis that measures lost accounting profits of

3  competing firms in foreclosure cases.  Second, Meta cites David L. Faigman, et al., *5 Mod. Sci. Evid.:*

4  *The Law and Science of Expert Testimony*, §43.35 (2022-2023 ed.) (attached as Ex. 7), but the very

5  section cited by Meta "uses the *price* that prevails in a different but similar market as the point of

6  comparison."  Although prices of different firms may not be comparable due to differences in product

7  quality, product innovation, management quality, or human capital, EPRs do take these into account.

8  Third and fourth, Meta cites *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d

9  588 (7th Cir. 1998) and *Kentucky v. Marathon Petroleum Co.*, 464 F. Supp. 3d 880 (W.D. Ky. 2020),

10  which again directly compare prices instead of EPRs across firms.  Finally, Meta cites to *In re Live*

11  *Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012), but again, this case compared *prices*

12  and not EPRs.  Indeed, Meta cites no authority dictating that, when comparing EPRs, one must take

13  varying differences into account.  That is because none exist.

14        Meta further confuses (1) its economic profit rate with (2) its economic profit rate *in excess*

15  *of the yardstick economic profit rate*.  Dr. Williams was abundantly clear that ███████████

16  ████████████████████████████████████████████, such as those offered in Meta's

17  Motion.  However, ████████████████████████████████████.[4]

18  Indeed, he was precisely in line with the ABA's monograph, *Proving Antitrust Damages* (Ex. 8),

19  which sets forth that, to compute antitrust damages, an economist must "hold[] every other feature of

20  the actual world constant."  *See also* Ex. 9 at 432 ("damages measured in this way isolate the loss of

21  value caused by the harmful act and exclude any change in the plaintiff's value arising from other

22  sources").

23        Meta disingenuously states that █████████████████████████

24  ████████████████████████████████████████████████████████

25

26  [4] ████████████████████████████████████

    Motion at 6.  Instead, he said ████████████████████████

27  ████████████████████████████████████████████████████████

28  █████████████████████████████████

ADVERTISER PLAINTIFFS' OPP. TO MOTION
TO EXCLUDE TESTIMONY OF DR. MICHAEL WILLIAMS AND KEVIN KREITZMAN

**FILED UNDER SEAL**

1  ████████████████████████████████████████. Motion at 7.  However, a closer

2  reading of the cited deposition testimony reveals that █████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████ Ex. 10 at 46-48; 48:11-12. ██

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████ Ex. 11 at 231:23-234:2.[5]

> ### ii.    Meta Cannot Demonstrate Any Advertising Was "Non-Social"

Meta's second attempt to exclude Advertiser Plaintiffs' experts in this section is to claim that some of Meta's advertising was "non social" and therefore must be removed from Dr. Williams' analysis.  Motion at 8-9.  Of note is that Meta does not challenge Dr. Williams' market definition itself in its Motion. ███████████████████████████████████████

███████████████████████ Williams Reply, ¶49.  And, crucially, Meta has provided nothing to rebut this conclusion made by Dr. Williams.  To begin with, their experts fail to show that some of Meta's ads are non-social.  As set forth in the motion to exclude Dr. Tucker (ECF No. 660), Meta's critical expert admitted: █████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[5] ██████████████████████████ (Motion at 7).

████████████████████████████████████████████████████████████████

Reply Report of Dr. Michael Williams, dated September 15, 2023 ("Williams Reply"), ¶65.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Ex. 10 at 69:5-20.

5

**FILED UNDER SEAL**

1 ████████████████████████████████████████████████████████████████

2 ████████████████████.

3    Next, Meta's attempts to cherry pick quotations from the depositions of other experts for

4 Advertisers fare no better. As to Dr. Gans, all Meta cites is him stating that ████████████████

5 ████████████████████████████████████████████████████ Motion at 9.

6 ████████████████████████████████████████████████████████████████

7 ████████  making the isolated quotation from Dr. Gans completely irrelevant. Mr. Fasser –

8 who is not an economist and was not put forward to opine on market definition – allegedly stated that

9 ████████████████████████████████████ (Exs. 12-13), ████

10 ████████████████████████████ (Williams Report, ¶52) ████

11 ████████████████ Motion at 8-9. ████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████. *See* Williams

14 Report at Section II(B)(iii) ████████████████████████████

15 ████████████  For these reasons, Meta's first batch of criticisms fall flat.

16 **B.     The Williams-Kreitzman Yardstick Analysis Is Reliable**

17    Defendants' second categorical attack on Dr. Williams and Mr. Kreitzman focuses on the

18 yardstick analysis performed by them, going so far as to call it "junk science." Motion at 9-15.

19 However, the yardstick model is a well-respected and oft-used economic method to ascertain damages

20 in antitrust cases. *See e.g., In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 354 (N.D. Cal.

21 2005); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008 WL 1946848, at *8-

22 *9 (E.D. Pa. May 5, 2008). Plus Dr. Williams and Mr. Kreitzman used ██ separate, highly credible

23 criteria that, ***when taken together***, result in the most appropriate yardstick firms: ████

24 ████████.

25    **i.     The Selection Criteria, Considered Together, Are Proper and Robust**

26    Meta attempts the "death by a thousand cuts" approach in trying to knock down the criteria

27 used by Dr. Williams and Mr. Kreitzman to come to the final three yardstick firms. In doing so, it

28 patently overlooks that the choice of yardstick criteria generally involves a tradeoff: when tightening

6

1    one filter, it is often necessary to loosen another in order for there to be any firms left in the final set

2    of comparator companies.  Therefore, to identify a set of yardstick firms, all selection criteria must

3    be considered jointly.   The Williams-Kreitzman criteria reflect the combination of filters and

4    thresholds that, in Mr. Kreitzman's and Dr. Williams' assessment, closely follow the relevant

5    literature and were most likely to generate a comparison set of "reasonably similar"[6] firms to Meta's

6    advertising business, given the available information.  And, once again, Meta cites to dissimilar cases

7    and authorities to criticize the yardstick model employed here as they continue to conflate EPRs with

8    accounting profits, revenue, and net income.  *See, e.g.*, *Shannon v. Crowley*, 538 F. Supp. 476 (N.D.

9    Cal. 1981) (comparing prices); Ex. 14; and *Eleven Line*, 213 F.3d at 208 (comparison of accounting

10   net income, accounting revenues, and accounting profits in lost profit analysis).  Motion at 9.

11          Therefore, Mr. Kreitzman and Dr. Williams did exactly what they should have to come to a

12   list of comparable firms.  Indeed: "In most analyses . . . analysts define comparable firms to be other

13   firms in the firm's business or businesses. ***If there are enough firms in the industry to allow for it***,

14   this list is pruned further using other criteria; for instance, only firms of similar size ***may*** be

15   considered."[7] ███████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████ None of Meta's nit-

20   picking serves to invalidate the filters employed.

21          Additionally, "[a]rguments about what factors an expert should have controlled for in

22   conducting a yardstick analysis generally go to the weight, rather than the admissibility, of an expert's

23   testimony." *Tawfilis, DDS v. Allergen, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2017 WL 3084275, at *6

---

6    *Eleven Line, Inc. v. North Texas State Soccer Ass'n*, 213 F.3d 198, 208 (5th Cir. 2000).  Meta's repeated reliance on this case alone reveals the infirmity of its Motion.  That case concerned a yardstick model comparing indoor soccer facilities to estimate lost accounting profits.  The expert used one criterion for comparable indoor soccer facilities: that they were owned by the plaintiff.  The Appellate Court found that this was not enough to make them "reasonably similar" to the applicable Texas facility and that factors such as the size and the geography of the soccer facility would matter in that context, saying nothing about yardstick models in general.

7    Ex. 15 at 247.

1   (C.D. Cal. June 26, 2017); *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, No. 1:12-cv-448-

2   WTL-DKL, ECF No. 319, Entry on Various Pretrial Motions, (S.D. Ind. Feb. 2, 2015), at 9-10

3   ("quibbles" with yardstick analysis choices better explored at cross examination).

4   ███████████████████████████████████████████████████████████

5   ████████████████████████████████████ Motion at 10. ████████████

6   ███████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████

11  ████████████████████████████████████████ Reply Report of Kevin

12  Kreitzman, dated September 15, 2023 ("Kreitzman Reply") at 24. ████████████

13  ███████████████████████████████████████████.

14  ███████████████████████████████████████████████████████

15  █████████████████████████████████████████████████. Motion at 10.

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████

21  ████████████   *See, e.g.*, Ex. 15 at 247 ("analysts define comparable firms to be other firms in the

22  firm's business or businesses").

23  ███████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████

25  ████████████████████████████. Meta makes two complaints:  that ████████ is "arbitrary" and

26  that the use of ████████ is somehow improper.  Motion at 11-12. ████████████████

27  ███████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████████

**FILED UNDER SEAL**

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ████████████████████████████. Instead, Meta complains that using a

4 different threshold would have the effect of "dramatically" altering the results because ██ would be

5 excluded. Motion at 11-12. However, ███████████████████████████████████

6 ████████████[8]

7 ████████████████████████████████████

8 ███████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ████████████████████████.[9] Furthermore, ███████████████

12 ███████████████████████████████████████████████

13 ████████████████████████████████ Indeed, Meta fails to offer a

14 single example of a yardstick damage analysis that used ████████████ for a given firm size

15 criterion.

16 Finally, Meta finds fault with Mr. Kreitzman's determination that 80%████████████

17 ██████████████. Motion at 12. However, Mr. Kreitzman explains this estimate ████████

18 ████████████████████ in his report. Kreitzman Report at n.34. And he further

19 explained that a ████████████████████████████████

20 ████████████████████████████████████ *See, e.g.*, Ex. 10 at

21 136:24-137:3; Kreitzman Reply, ¶36. Furthermore, even if Mr. Kreitzman had ████████

22 _____

23 [8] ████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ████████████████████████████████████████████ are
available in Exhibit 2c of the Kreitzman Report.

26 [9] ████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ███████████████████████████████████████████████

**FILED UNDER SEAL**

1 ███████████████████████████████████████████████████

2 ██████████████ .

3 ███████████████████████████████████████████████

4 ███████████████████████████████████ , and Meta again complains.  Motion at

5 12-13.  It contends that this is somehow arbitrary and that it knocked out Twitter as a comparator to

6 Meta.  However, the purpose behind this filter was again to find the firms most comparable to Meta,

7 as dictated by case law and guiding literature.  ████████████████████

8 ███████████████████████████████████████████████████

9 ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ████████████████████

12 ████████████████████████████████████████████

13 ███████████████████████ .  While Meta twists the purpose of this step, Mr. Kreitzman

14 stated clearly ████████████████████████████████████████

15 ████████████████████████████████ Kreitzman Reply, ¶40.  Meta finds fault

16 with Mr. Kreitzman making a "judgment" call as to ████████████████████

17 ███████████████████████████████████ Motion at 12-13.  However, Mr.

18 Kreitzman has over 30 years of experience in financial valuation and testified repeatedly ████

19 ███████████████████████████████████████████████████

20 ████████  *See, e.g.*, Ex. 10 at 179:14-20; 185-186; 193:18-22; 194; 196 (███████████████

21 ████████████████████████

22     In sum, the ████ filters were selected by Mr. Kreitzman and Dr. Williams based upon their

23 experience and expertise, the relevant literature, and the particular parameters of this case (industry,

24 size of Meta, etc.).  Meta simply attempts to pick apart each filter individually without offering

25 alternatives or suggesting that the vast majority of the filters eliminated any identified or reasonable

26 comparators.  Not only are their attacks baseless, but they are better left to cross-examination.

27

28

ii.     **The Resulting Yardstick Firms Are Comparable and Appropriate**

After applying the ██ filters discussed ***above***, Dr. Williams and Mr. Kreitzman arrived at three comparable yardstick firms to use in their methodology.  These firms, like Meta, operate in the online advertising industry and met the ██ criteria specified by Dr. Williams and Mr. Kreitzman, yet Meta unsurprisingly finds fault with each.

First, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Motion at 14. ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████.[10]

Next, Meta objects to ████████████████████████████. Motion at 15.  However,

████████████████████████████████████████████████████████████████████

██ Williams Reply, ¶173.  If the alleged conduct increased ██████ EPR in the Class Period, that would increase the weighted-average EPR of the comparable firms, thereby causing damages to be underestimated.  *See, e.g.*, Ex. 21 at 408 (an expert can overcome data limitations by making conservative assumptions).  Thus, to the extent that the alleged conduct resulted in an increase in ██████ market power (and therefore its EPR), Dr. Williams' damages analysis is both valid and conservative.[11]

---

[10]     Ex. 16 at 40; Ex. 17 at 40; Ex. 18 at 46; Ex. 19 at 47; and Ex. 20 at 48.

[11]     Meta's citation to *Persian Gulf v. BP W. Coast Prods LLC*, 632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022) is inapt.  In that case, Dr. Williams used a forecasting regression model to estimate but-for wholesale gasoline prices.  Plaintiffs alleged that (1) some evidence of conspiratorial conduct existed in the period 2012-2014, but (2) the price effects of the alleged conspiracy did not occur until February 2015.  Dr. Williams' regression model started the alleged damages period in February 2015. The Court erroneously concluded that because the plaintiffs had alleged that some evidence of conspiratorial conduct existed in the period from 2012-2014, that ***necessarily*** meant that prices in that period were affected by the alleged conspiracy.

**FILED UNDER SEAL**

1    Finally, Meta makes anemic attacks on ███████ as a yardstick firm because it ████████

2    ████ and somehow not similar to Meta.  Motion at 15.  ████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    Kreitzman Report, Appendix II.  As Dr. Williams set forth in his Reply Report, ████████

6    ████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████

8    ████████  Williams Reply, §§IV.F-G.

9          Ultimately, Meta complains that two of the yardstick companies selected are not "mentioned

10   in the same breath as Meta."  Motion at 9.  But "mentioned in the same breath" is not an objective

11   criterion that can be defined or applied.  Whether a company is mentioned in the "same breath" as

12   another is entirely irrelevant to selecting yardstick firms.  Instead, Dr. Williams and Mr. Kreitzman

13   chose a set of well-defined economic selection criteria that were determined to be reasonable in the

14   context of Meta's social advertising business.  These were then applied consistently to a universe of

15   firms to arrive at the final list of comparators.  Dr. Williams and Mr. Kreitzman did not make *ad hoc*

16   choices to cherry pick firms that are "mentioned in the same breath as Meta" as Meta proposed.  In

17   fact, all the "same breath" firms Meta listed were excluded through the standard steps of the criteria,

18   together with other firms, for a good reason.  LinkedIn, TikTok, and Reddit did not have relevant

19   financial data publicly available and, under the ABA's guidance, they would cause damages to be

20   overstated as their EPRs were *adversely* affected by Meta's alleged anticompetitive conduct.

21   Meanwhile, Apple and Amazon did not derive most of their revenue from online advertising,[12] while

22   Twitter and Snapchat had negative income for most of the years in the Class Period.  Because Meta

23   just does not like the three yardstick firms and the resulting damages number does not and cannot be

24   grounds for exclusion.

---

[12]  In Mr. Kreitzman's Reply Report, ████████████████████████████████████████████████

████████████████████████████████████████████████████████  Kreitzman Reply, ¶37.

<u>**FILED UNDER SEAL**</u>

1

**CONCLUSION**

2         For the foregoing reasons, the Court should deny Meta's Motion.

3    Dated: October 20, 2023

4    **BATHAEE DUNNE LLP**                           **SCOTT+SCOTT**
                                                  **ATTORNEYS AT LAW LLP**
5
     By:  */s/ Yavar Bathaee*                      By:  */s/ Amanda F. Lawrence*
6    Yavar Bathaee (CA 282388)                     Amanda F. Lawrence (*pro hac vice*)
     yavar@bathaeedunne.com                        alawrence@scott-scott.com
7    Andrew C. Wolinsky (CA 345965)                Patrick J. McGahan (*pro hac vice*)
     awolinsky@bathaeedunne.com                    pmcgahan@scott-scott.com
8    Andrew M. Williamson (CA 344695)              Michael P. Srodoski (*pro hac vice*)
     awilliamson@bathaeedunne.com                  msrodoski@scott-scott.com
9    Adam Ernette (*pro hac vice*)                 156 South Main Street, P.O. Box 192
     aernette@bathaeedunne.com                     Colchester, CT 06415
10   445 Park Avenue, 9th Floor                    Tel.: (860) 537-5537
     New York, NY 10022
11   Tel.: (332) 322-8835                          Patrick J. Coughlin (CA 111070)
                                                  pcoughlin@scott-scott.com
12   Brian J. Dunne (CA 275689)                    Carmen A. Medici (CA 248417)
     bdunne@bathaeedunne.com                       cmedici@scott-scott.com
13   Edward M. Grauman (*pro hac vice*)            Hal D. Cunningham (CA 243048)
     egrauman@bathaeedunne.com                     hcunningham@scott-scott.com
14   901 South MoPac Expressway                    Daniel J. Brockwell (CA 335983)
     Barton Oaks Plaza I, Suite 300                dbrockwell@scott-scott.com
15   Austin, TX 78746                              600 W. Broadway, Suite 3300
     Tel.: (213) 462-2772                          San Diego, CA 92101
16                                                 Tel.: (619) 233-4565
     Allison Watson Cross (CA 328596)
17   across@bathaeedunne.com                       Patrick J. Rodriguez (*pro hac vice*)
     3420 Bristol St, Ste 600                      prodriguez@scott-scott.com
18   Costa Mesa, CA 92626-7133                     230 Park Avenue, 17th Floor
                                                  New York, NY 10169
19   *Interim Co-Lead Counsel for the Advertiser Classes*   Tel.: (212) 223-6444

20

21   **LEVIN SEDRAN & BERMAN LLP**                 **AHDOOT & WOLFSON, PC**

22   Keith J. Verrier (*pro hac vice*)             Tina Wolfson (CA 174806)
     kverrier@lfsblaw.com                          twolfson@ahdootwolfson.com
23   Austin B. Cohen (*pro hac vice*)              Robert Ahdoot (CA 172098)
     acohen@lfsblaw.com                            rahdoot@ahdootwolfson.com
24   510 Walnut Street, Suite 500                  Theodore W. Maya (CA 223242)
     Philadelphia, PA 19106-3997                   tmaya@ahdootwolfson.com
25   Tel.: (215) 592-1500                          Henry J. Kelson (*pro hac vice*)
                                                  hkelston@ahdootwolfson.com
26                                                 2600 West Olive Avenue, Suite 500
     *Members of Executive Committee for the Advertiser*   Burbank, CA 91505
27   *Classes*                                     Tel.: (310) 474-9111

28

13

**FILED UNDER SEAL**

**FILER ATTESTATION**

I am the ECF user who is filing this document.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: October 20, 2023                              By:   /s/Amanda F. Lawrence
                                                             Amanda F. Lawrence

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2023, I caused a true and correct copy of the foregoing document to be served by electronic mail on all counsel of record.

Dated: October 20, 2023                              By:   /s/Amanda F. Lawrence
                                                             Amanda F. Lawrence

CASE NO. 3:20-CV-08570-JD                    ADVERTISER PLAINTIFFS' OPP. TO MOTION
                                             TO EXCLUDE TESTIMONY OF DR. MICHAEL WILLIAMS AND KEVIN KREITZMAN