# EXHIBIT 7

§ 43:35. Benchmarks used to calculate damages to..., 5 Mod. Sci. Evidence...

Case 3:20-cv-08570-JD   Document 680-8   Filed 10/20/23   Page 2 of 3

**5 Mod. Sci. Evidence § 43:35 (2022-2023 Edition)**

**Modern Scientific Evidence: The Law and Science of Expert Testimony** | December 2022 Update
David L. Faigman

Edward K. Cheng

Jennifer L. Mnookin

Erin E. Murphy

Joseph Sanders

Christopher Slobogin

**Chapter 43. Economic and Financial Expertise and Economic Damages**

**V. Damages in Antitrust Cases**[*]

## § 43:35. Benchmarks used to calculate damages to purchasers in antitrust cases

The essential task in calculating damages in antitrust actions brought by purchasers is to determine the prices the plaintiff/s would have paid but for the allegedly anticompetitive conduct. Such "but-for" prices usually are determined by reference to a competitive benchmark. Two alternative approaches are commonly used to determine what prices would have been in the absence of the antitrust violation. The "before and after" method uses the price that prevailed either before the violation began or after it ceased or both as a surrogate for the competitive price, while the "yardstick" method uses the price that prevails in a different but similar market as the point of comparison.[1]

The before-and-after approach has two variants. The first is the "before and during" benchmark. Often discovery from defendants yields the prices in an earlier, more competitive, period. In that event, the prices in the relevant market prior to the onset of the anticompetitive conduct can be employed to predict the but-for prices or overcharges during the period of wrongdoing to determine the damages suffered by purchasers during the period of wrongdoing. The second variation is the "during and after" benchmark, in which more competitive prices from a period after the alleged wrongdoing has ended are used to predict but-for prices or overcharges during the period of wrongdoing.[2]

The "yardstick" method uses the price in a similar market that is ostensibly competitive as a surrogate for the price that would have prevailed but for the defendant's anticompetitive conduct. The ideal yardstick is available when the alleged wrongdoing was present in some geographic markets but not in some nearby others. In that event, the prices in the locations presumed to be competitive can be used to predict but for prices or overcharges in the geographic markets affected by the anticompetitive behavior during the period in which the wrongdoing occurred. For example, if the tow truck operators in one town conspire to fix the price that they charge customers, but the prices charged by operators in nearby towns are determined by competition, then the prices in the benchmark towns can be used to estimate the overcharges caused by the conspiracy. In other instances, the prices in a market for a product similar to the one that is the subject of the anticompetitive behavior may be used to estimate what the competitive price of that product would otherwise have been. For example, if the sole producer of auto stereo speakers were able to maintain a supracompetitive price by excluding potential rival suppliers, the price of similar-sized home stereo speakers might be used to estimate the but-for price. The difficulty, of course, is in finding another product that is sufficiently similar in terms of cost and demand conditions to provide a reliable benchmark. Often statistical analyses are used to show that price movements of the similar product track price movements of the product at issue, over time and over varying conditions.

§ 43:35. Benchmarks used to calculate damages to..., 5 Mod. Sci. Evidence...

Case 3:20-cv-08570-JD   Document 680-8   Filed 10/20/23   Page 3 of 3

Regardless of which benchmark is employed, some adjustments may be necessary if supply and demand conditions during the time or area of the benchmark differ from those in the market affected by the wrongdoing. Especially relevant to the employment of the before or after benchmark is that supply and demand conditions may not have remained constant over time. For example, the costs incurred by sellers may have varied over time, necessitating adjustments to the before or after prices to render them comparable to the affected period prices in all ways except for the degree of competition present and not itself tainted by the anticompetitive conduct. Under the yardstick approach, adjustments will have to be made for differences in costs, taxes, regulations or demand across the two markets if those differences are thought to be significant.

Regardless of whether the measure of impact and damages is reduced profit to the plaintiff/s or a price overcharge to the plaintiff/s and whether a chronological or yardstick benchmark is employed, effects on the prices paid by plaintiffs or the profits made by plaintiffs caused by factors other than the alleged wrongdoing must be taken into account. Typically, the wrongdoing caused plaintiffs to pay higher prices than would have been paid absent the anticompetitive conduct. Economists usually account for the multiple influences on prices with a statistical technique known as multiple regression.[3] The most common form of multiple regression used by economists in antitrust cases is called a reduced form model. A reduced form model begins by expressing the equilibrium price of the product in question as a function of supply and demand variables that determine the price absent any anticompetitive conduct. Then a binary variable is added to the reduced from equation to capture the influence on price of the alleged anticompetitive conduct. The binary variable value is one when the anticompetitive conduct is present and zero when it is not. The reduced form equation contains parameters that quantitatively express the relationships between each explanatory supply and demand variable, and the price of the product. The parameters are usually estimated using the least squares method.[4] The parameter for the binary variable quantitatively indicates the incremental effect of the alleged anticompetitive conduct or event on the price of the product, and is therefore an estimate of the overcharge on the unit price.[5] When applied to all of the affected units, the price overcharge can be used to calculate the antitrust damages to the plaintiffs.

Westlaw. © 2022 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

**Footnotes**

| | |
|---|---|
| * | For an excellent treatment of antitrust damages, see Chapter 17 of Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and its Practice*, Fifth Edition, West Academic Publishing, 2015. |
| 1 | For a more detailed discussion of competitive benchmarks, see Roger D. Blair and David L. Kaserman, *Antitrust Economics*, Oxford University Press, 2009, pp. 83–85. |
| 2 | As mentioned above, prices both before and after the period of the wrongdoing can sometimes be used as the benchmark. |
| 3 | For a comprehensive discussion of multiple regression, see Chapter 6. |
| 4 | See the appendix to chapter 6 *infra* at pages 374–376 for discussion of the linear regression line and the method of least squares. |
| 5 | See the appendix to chapter 6 *infra* at pages 374–376 for discussion of the linear regression line and the method of least squares. |

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.