**PUBLIC REDACTED VERSION**

| | |
|---|---|
| WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>SONAL N. MEHTA (SBN 222086)<br>  Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000<br><br>DAVID Z. GRINGER (*pro hac vice*)<br>  David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br>  Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br>  Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br>  Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | ARI HOLTZBLATT (*pro hac vice*)<br>  Ari.Holtzblatt@wilmerhale.com<br>MOLLY M. JENNINGS (*pro hac vice*)<br>  Molly.Jennings@wilmerhale.com<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000<br><br>MICHAELA P. SEWALL (*pro hac vice*)<br>  Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>     v.<br><br>META PLATFORMS, INC., a Delaware Corporation headquartered in California,<br><br>                        Defendant. | Case No. 3:20-cv-08570-JD<br><br>**META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF SCOTT FASSER AND JOSHUA GANS**<br><br>Hearing Date: December 14, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    FASSER SHOULD BE EXCLUDED..................................................................................2

    A.    Fasser Has No Permissible Foundation For His Proposed Testimony ....................2

        i.    Fasser Has No Relevant Personal Experience .............................................2

        ii.    Fasser Has No Basis To Interpret Meta's Internal Documents....................5

    B.    Fasser's Deposition Testimony Confirms The Unreliability Of His Opinions ....................................................................................................................6

II.    SECTION IV OF GANS'S REPORT SHOULD BE EXCLUDED.......................................7

    A.    Gans Has Conducted No Analysis To Support His Classwide Impact Opinion ......................................................................................................................8

    B.    Gans Improperly Recites Advertisers' Factual Contentions.................................10

CONCLUSION..............................................................................................................................10

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AFMS LLC v. United Parcel Serv. Co.*,
    2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) ................................................................. 9

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    613 F. Supp. 3d 1308 (S.D. Cal. 2020) ......................................................................... 5

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
    55 F. Supp. 2d 1024 (N.D. Cal. 1999) ........................................................................... 8

*Chen-Oster v. Goldman, Sachs & Co.*,
    114 F. Supp. 3d 110 (S.D.N.Y. 2015) ............................................................................ 5

*City of Pomona v. SQM North America Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ........................................................................................ 8

*Comet Techs. USA Inc. v. XP Power LLC*,
    2022 WL 2442810 (N.D. Cal. Mar. 2, 2022) ................................................................. 4

*DZ Reserve v. Meta Platforms, Inc.*,
    2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ............................................................. 6, 9

*Guidroz-Brault v. Missouri Pac. R.R. Co.*,
    254 F.3d 825 (9th Cir. 2001) ......................................................................................... 3

*In re Google Play Store Antitrust Litig.*,
    2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ..................................................... 7, 8, 10

*In re JUUL Labs, Inc., Marketing Sales Practices & Products Liability Litigation*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) ........................................................................... 6

*In re Twitter, Inc. Securities Litigation*,
    2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ............................................................... 4

*Johns v. Bayer Corp.*,
    2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ........................................................... 5, 10

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Cir. 1998) ....................................................................................... 9

*LinkCo, Inc. v. Fujitsu Ltd.*,
    2002 WL 1585551 (S.D.N.Y. July 16, 2002) ................................................................ 5

*Merisant Co. v. McNeil Nutritionals, LLC*,
    515 F. Supp. 2d 509 (E.D. Pa. 2007) ............................................................................. 6

*Monje v. Spin Master Inc.*,
    679 F. App'x 535 (9th Cir. 2017) .................................................................................. 7

*Moussouris v. Microsoft Corp.*,
    311 F. Supp. 3d 1223 (W.D. Wash. 2018) .................................................................... 5

*Pecover v. Electronic Arts, Inc.*,
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ........................................................... 2, 4

*Stephens v. Union Pac. R.R. Co.*,
    935 F.3d 852 (9th Cir. 2019) ......................................................................................... 6

*United States v. Brody*,
    2023 WL 2541118 (N.D. Cal. Mar. 16. 2023) ............................................................... 5

*United States v. Morales*,
    108 F.3d 1031 (9th Cir. 1997) ....................................................................................... 6

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 5148390 (N.D. Cal. Nov. 2, 2017) .............................................................. 10

**STATUTES, RULES, AND REGULATIONS**

Federal Rule of Evidence 702 .............................................................................................. 9

**PUBLIC REDACTED VERSION**

## INTRODUCTION

Advertisers seek to defend the opinions offered by their two putative experts, Scott Fasser and Joshua Gans, based on opinions that Advertisers *hoped* they would have offered, but that Fasser and Gans did not actually offer and conflict with what they said under oath. Advertisers do not—because they cannot—seek to defend what those experts actually said. Fasser's and Gans's opinions should be excluded because they do not provide specialized expertise and their opinions usurp the role of the factfinder.

Advertisers argue that Fasser, a putative industry expert who ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, should be permitted to testify about industry practices that he has observed. But purported industry expert Fasser admittedly has not observed the key practices on which he intends to opine—Meta's ad auction mechanism and its use of discounts. Advertisers now also claim to offer Fasser to "interpret" supposedly "complex" Meta documents. But Fasser does not know what these documents mean (and certainly does not know what individuals *meant* in those documents), and his speculative testimony on them is of no use to the factfinder. Fasser has also recanted substantially all of the opinions he originally intended to offer. Scrambling to rehabilitate his testimony—the only support for their critical (and admittedly "▓▓▓▓▓") contention at class certification that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓— Advertisers ask the Court to ignore these crucial admissions. That is not how litigation works.

Advertisers do not dispute that Gans provided no explanation for the opinion offered in Section IV of his report that the challenged conduct caused a classwide impact and admitted that he has not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Instead, Advertisers claim that the relevant analysis is actually in a different section of his report. It is not. And Gans himself admitted ▓▓▓▓▓▓. Gans's classwide impact opinion is, at best, based on an unscientific "intuition" that contradicts his own scholarship. His opinion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is irrelevant because no one did.

The Court should grant Meta's motion to exclude both. Dkt. 644 ("Mot."). Advertisers opposed separately. Dkts. 666 ("Gans Opp."), 668 ("Fasser Opp."). This reply responds to both oppositions.

**PUBLIC REDACTED VERSION**

## ARGUMENT

**I.   FASSER SHOULD BE EXCLUDED**

Meta moved to exclude Fasser's testimony because he lacks foundation for the so-called "factual background" his reports offered, which he has since contradicted or disavowed. Fasser's proposed testimony concerns Meta's pricing and discounting mechanisms, which should come into evidence through Meta employees with first-hand knowledge of the subject matter, not the speculation of an outsider. Mot. 4-8. Advertisers fail to undermine these bases for exclusion.

**A.   Fasser Has No Permissible Foundation For His Proposed Testimony**

**i.   Fasser Has No Relevant Personal Experience**

Advertisers first argue that Fasser's experience working in advertising provides sufficient foundation for him to testify on matters he "personally observed during his career." Fasser Opp. 5. That may be true in theory, but it is not true here. Fasser seeks to testify almost exclusively about matters beyond his personal experience and observation.

Advertisers rely heavily (at 4-5) on *Pecover v. Electronic Arts, Inc.*, to support their claim that Fasser's personal experience as a purchaser of "Meta and other digital advertising" qualifies him to testify to Meta's pricing mechanisms, including its "auction prices and dynamics" and discounting practices. Fasser Opp. 3-4. But *Pecover* in fact explains exactly why they are wrong. The expert in *Pecover* had personal experience in video game retail, but sought to offer opinions about a broad range of issues in the video game industry generally. 2010 WL 8742757, at *6-7 (N.D. Cal. Dec. 21, 2010). The court there drew a clear line: The expert was permitted to testify on the "decision-making strategies of retailers" and her direct "observations of the behavior of publishers of video games," but was ***not*** permitted to provide opinions outside of this "direct observational capacity," including testimony on the "strategy for a publisher of video games." *Id.* at *5-7. That same logic applies here. Fasser's testimony covers topics in advertising with which he has no personal experience, and should be excluded for the same reason.

*First*, Advertisers do not seriously dispute that Fasser had no foundation for his principal opinion that " ███████████████████████████████████████████████████████

1  ▮▮▮▮" Ex. 1, Fasser Report § III.[1] Fasser admitted that ▮▮▮▮
2  ▮▮▮▮. Ex. 3, Fasser Tr. 22:14-24 ("▮▮▮▮
3  ▮▮▮▮"); *id.* at 23:7-10 ("▮▮▮▮
4  ▮▮▮▮").
5  Guesswork is not expert work and must be excluded. *Guidroz-Brault v. Missouri Pac. R.R. Co.*,
6  254 F.3d 825, 830 (9th Cir. 2001) (excluding opinion based on unsupported "assumption").
7  　　*Second*, Fasser has no personal experience on which to base his testimony that Meta's
8  Reach and Frequency ads—sold outside the auction—are ▮▮▮▮ and
9  that discounts Meta provides to advertisers ▮▮▮▮ Ex.
10  2, Fasser Reply ¶¶ 14-15. Before reading about Reach and Frequency ads in Catherine Tucker's
11  rebuttal report, Fasser ▮▮▮▮. Ex. 3, Fasser
12  Tr. 145:7-12 ("▮▮▮▮
13  ▮▮▮▮"); *id.* at
14  22:14-24 ("▮▮▮▮"). He also
15  does not know ▮▮▮▮, so he has no basis to testify on whether Reach and
16  Frequency ▮▮▮▮
17  Ex. 14, Fasser Tr. 54:22-24 ("▮▮▮▮
18  ▮▮▮▮").
19  　　*Third*, Fasser has no experience with ▮▮▮▮, which he did
20  not ▮▮▮▮. Ex. 14, Fasser Tr. 141:15-21
21  ("▮▮▮▮
22  ▮▮▮▮
23  ▮▮▮▮"). But Fasser nevertheless intends to testify that ▮▮▮▮
24  ▮▮▮▮
25  ▮▮▮▮
26  ▮▮▮▮ Ex. 2, Fasser Reply ¶¶ 13, 16. This is not grounded in any personal observation or
27  experience either. Fasser's admission that ▮▮▮▮

---

[1] Unless otherwise noted, emphasis is added and "Ex." citations reference exhibits 1-13 to the Jennings Decl., Dkt. 644-1, or exhibits 14-17 to the Jennings Reply Decl. submitted herewith.

**PUBLIC REDACTED VERSION**

1
2      —confirms this. Ex. 14, Fasser Tr. 138:14-23 ("
3
4
5      ").
6       Indeed, despite the fact that most of his proposed testimony concerns the way in which
7   Meta prices and sells ads, Fasser has no experience with                              , years
8   before Meta even existed (let alone sold advertising). Ex. 14, Fasser Tr. 86:15-23 ("
9
10
11
12                              "). He has not
13                              . *Id.* at 68:14-16 ("
14                              "); *id.* at 70:20-25 ("
15                              ").
16       What all this shows is that Fasser's testimony on the core topics for which he is offered—
17  Meta's use of an auction and its discounting practices—is not based on his personal experience or
18  observations at all, only his speculation. Fasser's proposed testimony is well "outside of [his]
19  expertise" and "is accordingly unreliable." *Pecover*, 2010 WL 8742757, at *6. Thus, the other
20  cases Advertisers cite (at 4) are similarly of no assistance to them. *In re Twitter, Inc. Securities*
21  *Litigation* involved a witness who was offered to testify about whether particular metrics were
22  "'meaningful' to digital advertisers[,]" not to discuss the details of pricing mechanisms used by a
23  company she                         . 2020 WL 9073168, at *12-13 (N.D. Cal. Apr. 20, 2020); Ex.
24  14, Fasser Tr. 26:21-23 ("                              "). And
25  *Comet Technologies USA Inc. v. XP Power LLC* involved testimony about "industry standards,"
26  with which the testifier was familiar, not the business practices of a single company which the
27  testifier knew nothing about. 2022 WL 2442810, at *2 (N.D. Cal. Mar. 2, 2022).
28

  ii.  **Fasser Has No Basis To Interpret Meta's Internal Documents**

Advertisers also argue that Fasser is needed to assist the fact finder in understanding Meta's own documents, which they say contain too much "industry-specific terminology" and "jargon" for the fact finder to comprehend. Fasser Opp. 5-6. Not so. The proper course when dealing with potentially complex documents is to solicit testimony from the "employees or managers who have first-hand knowledge" of their subject matter and who can credibly explain the evidence to the fact finder. *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1241 (W.D. Wash. 2018); *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 124 (S.D.N.Y. 2015); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at * 1-2 (S.D.N.Y. July 16, 2002) ("'testimony by fact witnesses familiar with those documents would be far more appropriate … and renders [expert's] secondhand knowledge unnecessary for the edification of the jury'"). Here, several Meta witnesses have already testified about Meta's ad pricing and related documents. Mot. 8 n.7. These documents do not "require[] the providence of an expert" because Advertisers can "call the authors" to testify directly. *Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013).

In contrast, the testimony that Advertisers seek to admit—from a paid outsider with no relevant knowledge—is manifestly unhelpful. The single example Advertisers point to (at 5-6) proves the infirmity of their approach. Fasser claims that this email "demonstrates" that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* But Fasser did not ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 3, Fasser Tr. 145:7-12. Notably, the purported "▓▓▓▓▓▓▓▓" excerpted in Advertisers' opposition and relied upon by Fasser, *see* Ex. 2, Fasser Reply ¶ 6 n.6, does not even mention ▓▓▓▓▓ ▓▓▓▓▓▓▓, leaving entirely unexplained how he arrived at this supposed interpretation, *see United States v. Brody*, 2023 WL 2541118, at *5 (N.D. Cal. Mar. 16. 2023) (witness relying on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). This is precisely the kind of unreliable expert testimony *Daubert* is designed to weed out. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1319-1322 (S.D. Cal. 2020) (excluding "speculative" industry expert testimony). Putting a putative expert's imprimatur on groundless

**PUBLIC REDACTED VERSION**

interpretations of evidence is an invitation for jury confusion and incurable prejudice.

It is little surprise then that none of the cases Advertisers cite (at 6) support their approach. *In re JUUL Labs, Inc.* involved an expert "opin[ing] on [the] pervasiveness or 'reach'" of "JUUL's marketing" based on not only "'reach' estimates he found in JLI's internal documents," but ***also*** the expert's "analy[sis] [of] them and [] his own calculations and simulations from those documents and other sources." 609 F. Supp. 3d 942, 1006 (N.D. Cal. 2022). Fasser has done no comparable independent work here to, for example, study the relationship between Meta's auction and non-auction pricing mechanisms. Nor is Fasser offering an opinion based on his assessment of the facts as applied against some standard in which he has expertise, as was the case in *United States v. Morales*, involving an analysis of the defendant's "level of bookkeeping knowledge," 108 F.3d 1031, 1039 (9th Cir. 1997), and *Merisant Co. v. McNeil Nutritionals, LLC*, involving "the application of certain advertising and marketing techniques" to assess Splenda's "brand position," 515 F. Supp. 2d 509, 538-539 (E.D. Pa. 2007). Fasser is instead offering what is fundamentally a factual statement—that ███████—based on his unexplained interpretation of documents for which he has no foundation.[2]

### B.  Fasser's Deposition Testimony Confirms The Unreliability Of His Opinions

Advertisers next argue (at 6-8) that the Court should effectively ignore Fasser's deposition testimony, claiming without explanation that Fasser was "confus[ed]" and that other evidence shows that the claims in his opening report are still somehow "correct" despite Fasser recanting them. Advertisers' attempt to rehabilitate Fasser fails. An "expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed.'" *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019). Fasser's deposition showed that his opinions do not. The problem for Advertisers is not that Fasser was confused, but that he was candid.

Fasser has admitted that nearly every opinion offered in his opening report is wrong. He asserted that ███████, Ex. 1, Fasser Report ¶ 8, but agreed

---

[2] Advertisers' opposition does not mention, much less dispute, Meta's showing that Fasser's commentary on the relative significance to Meta's advertising business of ███████ ███████ is based on evidence already "reasonably intelligible" to a lay factfinder that does not require expert testimony. *DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022). Mot. 6 n.5. The Court should exclude these Fasser opinions too.

in his deposition that ███████████ Ex. 3, Fasser Tr. 135:1-3 ("█████████ ████████████████████").[3] He claimed "█████████████████████████████████," Ex. 1, Fasser Report ¶ 9, but conceded in his reply report ████████████████████████ ██████████████████████████████████████████████ Ex. 2, Fasser Reply ¶¶ 8-10. And he stated that Meta "████████████████████████████████████," Ex. 1, Fasser Report ¶ 6, but testified at his deposition that ████████████████████████████ ███████, Ex. 3, Fasser Tr. 113:2-5 ("████████████████████████████████████ ██████████████████████████████████████████████").

These are substantial errors that confirm both the unreliability of Fasser's testimony and the significant variation in the manner in which Meta ads are priced and sold, which in turn fatally undermines Advertisers' attempt to show classwide overcharge with common proof. In recognition of this, Fasser himself disavowed the bedrock of Advertisers' classwide injury theory, testifying:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████

Ex. 3, Fasser Tr. 148:24-149:3. This was a clear question with a clear answer. And it is dispositive. Where, as here, an "expert witness unambiguously disavow[s] the theor[ies]" on which he is offered to testify, the Court is well-justified in "exclud[ing]" the testimony "as unreliable." *Monje v. Spin Master Inc.*, 679 F. App'x 535, 538 (9th Cir. 2017).

II. **SECTION IV OF GANS'S REPORT SHOULD BE EXCLUDED**

Meta moved to exclude Gans's classwide impact opinion because it is *ipse dixit* that is not the product of any discernible methodology or specialized expertise. Mot. 8-15. Section IV of his report simply recites Advertisers' factual contentions and then announces that, "████████ ██████████" the challenged conduct caused a classwide impact that can be shown with common evidence. Ex. 4, Gans Report ¶ 110. Gans's deposition testimony—taken after Meta filed its motion—confirms that his classwide impact opinion is not based on any "real analysis." *In re Google Play Store Antitrust Litig.*, 2023 WL 5532128, at *10 (N.D. Cal. Aug. 28, 2023).

---

[3] This is beyond dispute. Advertisers' other expert, Williams, ████████████████ ████████████████████████ Ex. 15, Williams Tr. 87:25-88:6.

**PUBLIC REDACTED VERSION**

1  Advertisers' opposition fails to demonstrate that this opinion is admissible.

2        **A.**      **Gans Has Conducted No Analysis To Support His Classwide Impact Opinion**

3        Advertisers effectively concede that Section IV of Gans's report contains no analysis supporting his classwide impact opinion, but seek to excuse that failure by claiming the analysis is actually in Section III of the report. Gans Opp. 7-8. The problem for Advertisers is that Section III also does not "explain why or how" Gans reached his opinions in Section IV. *Play Store*, 2023 WL 5532128, at *10. According to Advertisers, Section III of Gans's report "analyzes economic literature and sets forth the economic framework for his analysis of the anticompetitive effects of Meta's [alleged] conduct." Gans Opp. 7. Section III does not even mention the challenged conduct, let alone connect it to the "economic literature" referenced or analyze how the conduct would have caused a classwide impact. Indeed, Gans himself acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 16, Gans Tr. 66:17-67:25 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

      An economic expert must "explain precisely how he went about reaching his conclusions and point to some objective source … to show that he has followed the scientific method." *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1030 (N.D. Cal. 1999). Gans did not. He also admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, confirming that the opinion is untestable *ipse dixit*. Ex. 16, Gans Tr. 205:17-206:3 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) ("requirement is that '[s]omeone else using the same data and methods … be able to replicate the result[s]'").

      Moreover, Advertisers do not dispute that the so-called "framework" in Section III is simply the obvious, unscientific "intuition" that advertisers are willing to pay more for a higher

**PUBLIC REDACTED VERSION**

1  quality service, and would thus pay more to advertise on Meta as its quality improved ▮
2  ▮▮▮. Mot. 14; Ex. 4, Gans Report ¶ 40; Gans Opp. 8. Instead, Advertisers
3  argue that Gans's "intuition" is admissible *because* it is obvious and "common sense." Gans Opp.
4  8. That turns Rule 702 on its head. An intuition cannot form the basis of economic expert
5  testimony. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) (scientific testimony
6  must be "based on 'scientifically valid principles'"). And experts must offer something "beyond
7  the typical knowledge and experience of a jury," which Gans's "intuition" does not. *DZ Reserve*,
8  2022 WL 912890, at *9; *AFMS LLC v. United Parcel Serv. Co.*, 2014 WL 12515335, at *4 (C.D.
9  Cal. Feb. 5, 2014) ("Expert testimony on [an] obvious conclusion is unnecessary.").

10  Advertisers also argue (at 7-8) that Gans's prior scholarship—establishing that improved
11  ad targeting can lead to downward price pressure—does not contradict his classwide impact
12  opinion here. Gans Opp. 7-8. They offer two flawed defenses of this inconsistency. First,
13  Advertisers speculate that ▮▮▮
14  ▮▮▮
15  ▮▮▮. *Id*. But as Gans's reply report recognizes, ▮▮▮
16  ▮▮▮, Ex. 7, Gans Reply ¶ 19 ("▮▮▮
17  ▮▮▮" (emphasis in original)), which neither Gans nor Advertisers
18  contend is true. Second, Advertisers argue that ▮▮▮
19  ▮▮▮
20  ▮▮▮" Gans Opp. 8. But that precisely describes the social advertising
21  market that Advertisers allege, which includes competitors with targeting capabilities ▮▮▮
22  ▮▮▮. Ex. 17 at -33086 (▮▮▮).
23  In any case, Gans's deposition made clear the reason for his omission of any analysis
24  supporting his classwide impact opinion: his opinion is, in reality, only an "▮▮▮," Ex. 16,
25  Gans Tr. 204:22-205:16, that Gans has done no work to verify. Gans repeatedly testified that he
26  ▮▮▮
27  ▮▮▮. *Id*. at 306:24-307:4; *id*. at 276:11-18 ("▮▮▮
28  ▮▮▮

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"). And he admitted that ▓
2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 99:4-23 ("▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓"); *id.* at 99:25-101:4 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"). This is not reliable expert opinion. Here, the "'analytical gap between the data and the opinion proffered'" is a chasm, and Gans's classwide impact opinion must be excluded. *Play Store*, 2023 WL 5532128, at *10.

### B.  Gans Improperly Recites Advertisers' Factual Contentions

As Meta explained in its motion (at 9-11), most of Section IV of Gans's report is an improper "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Ex. 5, Gans Report ¶ 54. Advertisers' opposition (at 4-6) primarily takes issue with an argument that Meta never made, asserting that Gans is permitted to assume that Advertisers' factual contentions are true and will be proven at trial when forming his opinions. Fair enough. Meta's expert Tucker has done the same. *See* Dkt. 676 at 11-14. But here, Gans's lengthy exposition of the facts has little to do with his classwide impact opinion, and instead serves only to put an expert imprimatur on Advertisers' spin of a selective subset of the record. This "not only fail[s] to improve on the probative value of the evidence [Gans] cite[s] but also actually mudd[ies] the uncomplicated facts with his facade of expertise." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov. 2, 2017). As Advertisers' other putative expert Williams recognized, the primary purpose of Gans's report is "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Ex. 15, Williams Tr. 80:15-81:14. The Court can read about Advertisers' claims in their complaint, their class certification motion, and a litany of other filings they have made in this litigation. Gans's narration of the evidence serves no legitimate purpose and should be excluded. *Johns*, 2013 WL 1498965, at *28 (excluding expert "synopsis" of the factual record).

## CONCLUSION

The Court should exclude Fasser and testimony drawn from Section IV of Gans's Report.

**PUBLIC REDACTED VERSION**

| | | |
|---|---|---|
| 1 | DATED: November 3, 2023 | Respectfully submitted, |
| 2 | | |
| | | By: /s/ Sonal N. Mehta |
| 3 | | |
| | | SONAL N. MEHTA (Bar No. 222086) |
| 4 | | Sonal.Mehta@wilmerhale.com |
| | | WILMER CUTLER PICKERING HALE |
| 5 | | AND DORR LLP |
| | | 2600 El Camino Real, Suite 400 |
| 6 | | Palo Alto, California 94306 |
| 7 | | Telephone: (650) 858-6000 |
| 8 | | DAVID Z. GRINGER (*pro hac vice*) |
| | | David.Gringer@wilmerhale.com |
| 9 | | ROSS E. FIRSENBAUM (*pro hac vice*) |
| | | Ross.Firsenbaum@wilmerhale.com |
| 10 | | RYAN CHABOT (*pro hac vice*) |
| | | Ryan.Chabot@wilmerhale.com |
| 11 | | PAUL VANDERSLICE (*pro hac vice*) |
| | | Paul.Vanderslice@wilmerhale.com |
| 12 | | WILMER CUTLER PICKERING HALE |
| 13 | | AND DORR LLP |
| | | 7 World Trade Center |
| 14 | | 250 Greenwich Street |
| | | New York, New York 10007 |
| 15 | | Telephone: (212) 230-8800 |
| 16 | | ARI HOLTZBLATT (*pro hac vice*) |
| 17 | | Ari.Holtzblatt@wilmerhale.com |
| | | MOLLY M. JENNINGS (*pro hac vice*) |
| 18 | | Molly.Jennings@wilmerhale.com |
| | | WILMER CUTLER PICKERING HALE |
| 19 | | AND DORR LLP |
| | | 2100 Pennsylvania Avenue NW |
| 20 | | Washington, DC 20037 |
| 21 | | Telephone: (202) 663-6000 |
| 22 | | MICHAELA P. SEWALL (*pro hac vice*) |
| | | Michaela.Sewall@wilmerhale.com |
| 23 | | WILMER CUTLER PICKERING HALE |
| | | AND DORR LLP |
| 24 | | 60 State Street |
| | | Boston, MA 02109 |
| 25 | | Telephone: (617) 526-6000 |
| 26 | | |
| 27 | | *Attorneys for Defendant Meta Platforms, Inc.* |
| 28 | | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of November, 2023, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By: */s/ Sonal N. Mehta*
Sonal N. Mehta