**FILED UNDER SEAL**

1

**BATHAEE DUNNE LLP**
2   Yavar Bathaee (CA 282388)
    yavar@bathaeedunne.com
3   Andrew C. Wolinsky (CA 345965)
    awolinsky@bathaeedunne.com
4   445 Park Avenue, 9th Floor
    New York, NY 10022
5   Tel.: (332) 322-8835

6   Brian J. Dunne (CA 275689)
7   bdunne@bathaeedunne.com
    Edward M. Grauman (*pro hac vice*)
8   egrauman@bathaeedunne.com
    901 South MoPac Expressway
9   Barton Oaks Plaza I, Suite 300
    Austin, TX 78746
10  Tel.: (213) 462-2772

11  *Interim Co-Lead Counsel for the*
12  *Advertiser Classes*

13  [Additional counsel on signature page]

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

14

15                **UNITED STATES DISTRICT COURT**

16               **NORTHERN DISTRICT OF CALIFORNIA**

17                   **SAN FRANCISCO DIVISION**

18  MAXIMILIAN KLEIN, et al., on Behalf of      Case No. 3:20-cv-08570-JD
    Themselves and All Others Similarly Situated,
19                                               **ADVERTISER PLAINTIFFS' REPLY IN**
                                                 **SUPPORT OF THEIR MOTION FOR**
20              Plaintiffs,                      **CLASS CERTIFICATION**

21      v.                                       Hearing Date: December 14, 2023
                                                 Hearing Time: 10:00 a.m.
22  META PLATFORMS, INC.,                        Courtroom 11, 19th Floor
                                                 Judge: The Honorable James Donato
23              Defendant.

24

25

26

27

28

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.      ADVERTISERS' DAMAGES MODEL IS VIABLE, ROBUST AND CAN BE APPLIED ON A CLASSWIDE BASIS ...........................................................2

          A.      Advertisers' Damages Correctly Measure the Difference Between Meta's Unlawful Monopoly Price and the Competitive Price in a But-For World ..................................................................................................3

          B.      Advertisers' Yardstick Model Captures Damages Solely Attributable to Meta's Unlawful Monopolization ......................................................6

    II.     META'S ANTICOMPETITIVE CONDUCT IMPACTED ALL MEMBERS OF THE PROPOSED ADVERTISER CLASS ....................................................7

          A.      All Meta Advertising Was Sold in the Social Advertising Market ............7

          B.      All Meta Advertisers Are Subject to Prices Set by Meta's Advertising Auction ....................................................................................................10

          C.      Meta's Arguments About the Undefined and Unsubstantiated "Benefits" of Its Exclusionary Conduct Are Meritless .............................11

    III.    ADVERTISERS' PROPOSED CLASS REPRESENTATIVES ARE BOTH TYPICAL AND ADEQUATE ...........................................................................13

    IV.    Meta's "Indirect Purchaser" Argument Is Meritless..............................................15

CONCLUSION......................................................................................................................15

i

**FILED UNDER SEAL**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013)............................................................................................4

*Apple Inc. v. Pepper,*
    _U.S._, 139 S. Ct. 1514 (2019)........................................................................15

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979)........................................................................3, 4, 5

*Bigelow v. RKO Radio Pictures,*
    327 U.S. 251 (1946)..........................................................................................12

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic,*
    152 F.3d 588 (7th Cir. 1998) .............................................................................7

*Cabrera v. Google LLC,*
    No. 5:11-cv-01263-EJD, 2023 WL 5279463 (N.D. Cal. Aug. 15, 2023)................11

*City of Anaheim v. S. Cal. Edison Co.,*
    955 F.2d 1373 (9th Cir. 1992) ...........................................................................5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.,*
    370 U.S. 690 (1962)............................................................................................5

*DeLoach v. Philip Morris Cos., Inc.,*
    206 F.R.D. 551 (M.D.N.C. 2002) .....................................................................11

*DZ Reserve v. Meta Platforms, Inc.,*
    No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ............14, 15

*Ewert v. eBay, Inc.,*
    No. C-07-02198-RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ................15

*Fido's Fences, Inc. v. Radio Sys. Corp.,*
    999 F. Supp. 2d 442 (E.D.N.Y. 2014) ................................................................8

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
    392 U.S. 481 (1968)............................................................................................3

*In re Auction Houses Antitrust Litig.,*
    193 F.R.D. 162 (S.D.N.Y. 2000) ......................................................................10

**FILED UNDER SEAL**

*In re Elec. Books Antitrust Litig.*,
    No. 11-MD-2293-DLC, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014)............................12, 13

*In re Facebook, Inc., PPC Advert. Litig.*,
    282 F.R.D. 446 (N.D. Cal. 2012)........................................................................................15

*In re Google Play Store Antitrust Litig.*,
    No. 3:21-md-02981-JD (N.D. Cal. 2023) ..............................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................................9

*In re Infineon Techs. AG Sec. Litig.*,
    266 F.R.D. 386 (N.D. Cal. 2009)........................................................................................13

*In re Korean Ramen Antitrust Litig.*,
    No. 13-CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ..................................8

*In re Lidoderm Antitrust Litig.*,
    No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ...........................9, 10

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    No. ML-15-2668-PSJ(JEMx), 2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ..........................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008)..................................................................................................11

*In re Nexium Antitrust Litig*,
    777 F.3d 9 (1st Cir. 2015)....................................................................................................9

*In re Online DVD Rental Antitrust Litig.*,
    No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010), *aff'd*, 779
    F.3d 934 (9th Cir. 2015) ......................................................................................................9

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005)..........................................................................................6

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
    967 F.3d 264 (3d Cir. 2020)..................................................................................................5

*In re Tableware Antitrust Litig.*,
    241 F.R.D. 644 (N.D. Cal. 2007)........................................................................................15

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
    No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008)......................................................6

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
    451 U.S. 557 (1981)............................................................................................................12

**FILED UNDER SEAL**

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022) ...................................................................5

*LaSalvia v. United Dairymen of Ariz.*,
  804 F.2d 1113 (9th Cir. 1986) ...........................................................................5

*Le v. Zuffa, LLC*,
  No. 2:15-CV-01045-RFB-BNW, 2023 WL 5085064 (D. Nev. Aug. 9, 2023) ....................10

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ............................................................................9

*Miletak v. Allstate Ins. Co.*,
  No. 06-03778-JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ...........................................13

*MM Steel, L.P. v. JSW Steel (USA), Inc.*,
  806 F.3d 835 (5th Cir. 2015) ...........................................................................6

*New York v. Hendrickson Bros., Inc.*,
  840 F.2d 1065 (2d Cir. 1988) ...........................................................................12

*Nichols v. SmithKline Beecham Corp.*,
  No. 00-6222, 2003 WL 302352 (E.D. Pa. Jan. 29, 2003) ...........................................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (*en banc*) .............................................8, 10, 11, 15

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) ...........................................................................6

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ...........................................................................8

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ...........................................................................9

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) .....................................................................................3, 4

*US Airways, Inc. v. Sabre Holdings Corp.*,
  938 F.3d 43 (2nd Cir. 2019) ...........................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................................5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...........................................................................14

**FILED UNDER SEAL**

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
Rule 23 ....................................................................................................................2, 4, 5, 8
Rule 23(a)(3) ..................................................................................................................13

**FILED UNDER SEAL**

1

**PRELIMINARY STATEMENT**

2    Meta's opposition reveals that there is no substance – legally or factually – to any of Meta's

3  objections to class certification.  To begin with, Meta's argument that Advertisers' damages model

4  fails to disaggregate lawful from unlawful aspects of its monopoly is flawed for a simple reason:

5  Advertisers intend to prove at trial that Meta would not have had a monopoly or market power absent

6  its unlawful monopoly maintenance.  This is the theory of Advertisers' case, which means that the

7  appropriate measure of damages is the entire difference between the unlawful monopoly price and

8  the competitive price in the but-for world.  Moreover, Meta's argument about its pre-limitations

9  conduct is directly foreclosed by binding case law and, in any event, based on an entirely misleading

10  recitation of the facts to be proven at trial, including as to conduct within the limitations period.

11  Meta's attack on Advertisers' yardstick model fares worse.  Meta again ignores the long line of cases

12  approving yardstick methodologies for measuring damages, and simply ignores that the damages

13  model here looks to the amount ***in excess*** of the competitive economic profit rate, which necessarily

14  isolates the portion of Meta's conduct that is attributable to its unlawful conduct.

15    Meta makes additional arguments that are on their face meritless.  For example, Meta argues

16  that not all of its ads are social ads, but in substance attacks market definition without analysis or

17  expert testimony.  Meta simply makes assertions contrary to the evidence cited in Advertisers' expert

18  reports, which contain a *Brown Shoe* analysis, a SSNIP test, and a recitation of the mountain of

19  evidence showing that Meta's ads fall within the Social Advertising submarket.  Meta also makes

20  factual arguments about its auction process, but its argument is misleadingly about the ███████

21  of the ads on its platform that are outside of its auction, and, as it has done throughout its brief, Meta

22  simply ignores the long line of cases rejecting Meta's argument that an auction process somehow

23  creates predominance issues.  Meta also speculates that its monopoly may have somehow benefited

24  Advertisers, creating some supposed predominance issue.  Meta identifies none of these benefits;

25  does not deal with economic theory, which is clear that efficiencies are not passed on by a monopolist

26  to consumers; and contradicts by pure fiat the evidence that its ad products did not in fact improve

27  during the Class Period as shown by Dr. Williams' clickthrough-rate analysis.  On this record, Meta's

28  speculative and unsubstantiated "benefits" cannot offset Advertisers' concrete damages calculation.

1

**FILED UNDER SEAL**

1  Meta's remaining arguments border on frivolous.  The record is clear that each named plaintiff is both

2  typical of the Class and adequately represents the interest of all Class members, including the more

3  than estimated 90% of advertisers that paid less than four figures for ads.  Meta's indirect purchaser

4  argument is contradicted by the plain terms of the Class definition.  Taken together, Meta's arguments

5  paint a clear picture: its opposition is a scattershot array of counterfactual and legally unsupported

6  assertions.  Advertisers' motion for class certification should be granted.

7  **ARGUMENT**

8      Meta concedes the vast majority of Rule 23's requirements.  Its arguments relate solely to

9  predominance and to the adequacy and typicality of the Plaintiffs.  Each of Meta's arguments are

10  manufactured and meritless.

11  **I.    ADVERTISERS' DAMAGES MODEL IS VIABLE, ROBUST AND CAN BE**
    **APPLIED ON A CLASSWIDE BASIS**
12

13      Setting aside Meta's argument that Advertisers' damages model fails under *Daubert*, which

14  is addressed fully in the parties' *Daubert* briefing, Meta offers the Court two arguments with respect

15  to Plaintiffs' classwide damages model.  First, Meta makes the demonstrably incorrect legal argument

16  that Advertisers' damages must be calculated for each of the individual exclusionary acts that

17  maintained Meta's social advertising monopoly, not from inflationary impact of the unlawful

18  monopoly itself.  The law on this point, including the very cases Meta cites, is unambiguous that Meta

19  is incorrect.  Advertisers' damages are properly calculated as the difference between the unlawful

20  monopoly price and the competitive price of the ads they purchased – and Advertisers contend the

21  competitive price of these ads is their price in a but-for world where Meta did not engage in the

22  exclusionary acts with which it is charged, and therefore ***did not possess a monopoly or market power***

23  ***during the Class Period***.  Second, Meta makes a related argument that Advertisers' damages model

24  fails to take into account the "lawful" aspects of Meta's monopoly.  On this point, Meta simply

25  misstates the factual record, including by incorrectly describing Advertisers' damages model; in truth,

26  nothing is unaccounted for.  Both arguments regarding Advertisers' damages model should be

27  rejected.

28

**FILED UNDER SEAL**

**A.    Advertisers' Damages Correctly Measure the Difference Between Meta's Unlawful Monopoly Price and the Competitive Price in a But-For World**

Meta's primary argument is based on a demonstrably incorrect proposition of law. Specifically, Meta asserts: "The law prohibits Advertisers from calculating the price difference attributable to Meta's alleged monopoly rather than the specific challenged conduct at issue in this suit." Opp. at 20.[1]  Meta is wrong.  To begin with, Meta's assertion is a non sequitur – the conduct challenged by Advertisers is ***Meta's unlawful monopolization*** of the Social Advertising Market, not merely one element of that claim.  The elements of a monopolization claim are: "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  Meta's argument conflates the monopolization offense – which is what Advertisers will prove at trial here – with exclusionary conduct sub-elements in arguing that damages must be computed and attributed to each alleged exclusionary act individually.  This is in error.

Moreover, the law is clear that an overcharged plaintiff may recover the difference between the monopoly price and the price that would have existed in the but-for world.  *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) ("[W]hen a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a *prima facie* case of injury and damage within the meaning of [Clayton Act §] 4.").  Meta cites *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 297 (2d Cir. 1979), for the proposition that damages must be calculated from each exclusionary act individually rather than from the effect of the unlawful monopoly on prices, but *Berkey Photo* stands for no such proposition.  There, the court was express that the "true measure of damages" is "the price increment caused by the anticompetitive conduct that originated or augmented the monopolist's control over the market." *Id.* at 297.  In other words, the appropriate measure of damages is the

---

[1]    "Opp." citations are to Defendants' Opposition to Advertiser Plaintiffs' Motion for Class Certification (ECF No. 671-1). "Mot." citations are to Advertiser Plaintiffs' Motion for Class Certification (ECF No. 642-1).  Exhibit citations are to the Declaration of Amanda F. Lawrence, filed concurrently herewith.  Capitalized terms not otherwise defined herein retain the same meaning as the Motion.  Emphasis is added and citations are omitted unless otherwise noted.

**FILED UNDER SEAL**

1  portion of the difference between monopoly and competitive prices that is attributable to the

2  exclusionary conduct.  *Id.*  As Areeda explains *Berkey Photo* and the general rule:

3      Any obligation on plaintiffs to separate out the contribution of each
       individual act to the defendant's monopoly price, and then to collect
4      damages only for that portion of the overcharge attributed to unlawful
       conduct, either invites extreme speculation or else becomes an ineffective
5      rule of nonrecovery.

6      Once an exclusionary practice has been found unlawful and shown to be a
       significant contributor to the monopolist's monopoly price, then the court
7      must indulge a presumption about the size of the contribution.  Here, the
       sensible presumption is that in the absence of the unlawful exclusionary
8      practice, the monopolist would have charged the competitive price, so
       damages should be based on the difference between the monopoly price and
9      the competitive price.

10  Ex. 1 at 6-7.

11      Here, Advertisers contend – and their proffered damages model assumes – that Meta ***would***

12  ***not have a monopoly or market power in a but-for world without the challenged exclusionary***

13  ***conduct***, meaning the correct measure of damages is the difference between the monopoly price and

14  the competitive price calculated by Advertisers' damages model, including under the *Berkey Photo*

15  articulation.   As the Second Circuit explained in *Berkey Photo*, where "but for [a defendant's]

16  illegitimate actions," it "would have little or no market power," the measure of damages yields "very

17  similar results" to the calculation of the entire difference between the monopoly price and the

18  competitive price.  603 F.2d at 297-98.  This is because in such a case, ***all*** of the price inflation is

19  attributable to the market power and monopoly caused by the alleged exclusionary conduct.  As such,

20  Advertisers' damages model precisely tracks the theory of Advertisers' liability case, which asserts

21  that but for its challenged conduct, Meta would not have maintained any monopoly power in the Class

22  Period.

23      What's more, even if Meta had proffered any kind of argument or evidence that some part of

24  its monopoly is "a consequence of a superior product, business acumen, or historic accident," *Grinnell*

25  *Corp.*, 384 U.S. at 570-71, that is a merits issue that must be tried to a jury, not a necessary question

26  that can be decided as part of this motion – and it certainly is not a basis to deny class certification.

27  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts

28  no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may

**FILED UNDER SEAL**

1  be considered to the extent – but only to the extent – that they are relevant to determining whether the

2  Rule 23 prerequisites for class certification are satisfied.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564

3  U.S. 338, 351 & n.6 (2011)).

4        In addition, Meta's argument demanding a disaggregated measure of damages for each

5  exclusionary act flies in the face of repeated admonitions by the Ninth Circuit and the Supreme Court

6  that antitrust claims must be considered as a whole.  *See Cont'l Ore Co. v. Union Carbide & Carbon*

7  *Corp.*, 370 U.S. 690, 699 (1962) ("In cases such as this, plaintiffs should be given the full benefit of

8  their proof without tightly compartmentalizing the various factual components and wiping the slate

9  clean after scrutiny of each.  The character and effect of a conspiracy are not to be judged by

10  dismembering it and viewing its separate parts, but only by looking at it as a whole.").  If Meta's

11  argument is credited, it would mean doing precisely what binding precedent says should not be done

12  in monopolization cases such as this one, involving a course of conduct with several exclusionary

13  acts.  *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) (in monopoly broth

14  cases, "it would not be proper to focus on specific individual acts of an accused monopolist while

15  refusing to consider the overall combined effect"); *see also Klein v. Facebook, Inc.*, 580 F. Supp. 3d

16  743, 806 (N.D. Cal. 2022); *accord In re Suboxone (Buprenorphine Hydrochlorine & Naloxone)*

17  *Antitrust Litig.*, 967 F.3d 264, 270-71 & n.11 (3d Cir. 2020).

18        Finally, Meta argues that Advertisers' calculation of damages supposedly requires reaching

19  back into the pre-limitations period for damages because Meta's monopoly was unlawfully obtained

20  more than four years before this case was filed, including through Meta's 2015 scuttling of its

21  Platform APIs and subsequent extended API agreements.  This argument is demonstrably wrong.  To

22  begin with, *Berkey Photo*, which Meta relies on extensively in its brief, directly disposes of any

23  argument that Advertisers cannot prove that Meta unlawfully obtained its monopoly based on pre-

24  limitations conduct: "[A] purchaser suing a monopolist for overcharges paid within the previous four

25  years may satisfy the conduct prerequisite to recovery by pointing to anticompetitive actions taken

26  before the limitations period."  603 F.2d at 296.  Other courts, including the Ninth Circuit, are in

27  perfect accord on this point.  *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir.

28  1986) ("[W]hile plaintiffs may recover for damages they prove were caused by anticompetitive

5

**FILED UNDER SEAL**

1  conduct begun before the four-year statutory period under the continuing harm doctrine, their

2  recovery is limited to damage incurred within the four years preceding the filing of the complaint.").[2]

3  Moreover, Meta's anticompetitive conduct both continued into, and newly occurred from day one of

4  the four-year limitations period, including through Meta's multi-year program of entering

5  anticompetitive ███████████████████████████████████████████████

6  █████████████████████.  And in any event, the question of when precisely Meta's

7  exclusionary conduct began is a merits question that will be proved entirely through common

8  evidence from Meta's files.

9      **B.**    **Advertisers' Yardstick Model Captures Damages Solely Attributable to Meta's**

10              **Unlawful Monopolization**

11        Advertisers' experts conducted a yardstick analysis to assess damages.  They calculated

12  Meta's economic profit rate ("EPR") during the Class Period and the EPRs of certain yardstick firms

13  for the same period.  Those yardstick firms were selected after applying six separate filters to the

14  universe of publicly traded companies.  They then used the yardsticks' EPRs versus Meta's EPR

15  during the Class Period to determine what Meta's profitability would have been in the but-for world

16  in the absence of the alleged conduct.  Such a yardstick analysis is regularly applied and routinely

17  accepted.  *See* Mot. at 21 (citing cases); *see also, e.g.*, *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

18  346, 354 (N.D. Cal. 2005); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008

19  WL 1946848, at *8-*9 (E.D. Pa. May 2, 2008); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d

20  43, 61-63 (2nd Cir. 2019); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.

21  2023); *MM Steel, L.P. v. JSW Steel (USA), Inc.*, 806 F.3d 835 (5th Cir. 2015); *In re Nat'l Football*

22  *League's Sunday Ticket Antitrust Litig.*, No. ML-15-2668-PSJ(JEMx), 2023 WL 1813530 (C.D. Cal.

23  Feb. 7, 2023); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2003 WL 302352 (E.D. Pa. Jan.

24  29, 2003).  Meta complains that this oft-accepted methodology does not separate out the profits from

---

[2]  *See also* Ex. 2 at 21 ("When a §2 action is filed in a timely fashion, the customer will be able to collect damages for the four years prior to filing and will be able to rely on pre-limitation conduct in order to establish the exclusionary practices portion of a monopolization claim."); *cf. Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 488 (9th Cir. 2021) ("If a defendant has conspired to violate the antitrust laws and thereby harmed a market's competitive structure, it remains liable for the continuing injuries suffered by plaintiffs from the structural harm to competition that its unlawful scheme brought about.").

ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION –
CASE NO. 3:20-CV-08570-JD

**FILED UNDER SEAL**

1  the wrongful conduct.  Opp. at 18.  This argument fails in at least three ways, as further set forth in

2  the opposition to Meta's motion to exclude the testimony of Dr. Williams and Mr. Kreitzman (ECF

3  No. 679-1).

4      ***First***, the law is crystal clear that, when employing a yardstick model and when computing

5  antitrust damages, an economist must "hold[] every other feature of the actual world constant."  Ex.

6  3, §B.  ***Second***, using EPRs as a comparator, as Advertisers' experts did, ***does*** account for any lawful

7  conduct that may have occurred.  Because EPRs measure economic profits ***as a percentage of***

8  ***economic capital***, they can be used to compare economic profitability regardless of differences in,

9  for example, product quality.[3]  ***Third***, Meta ignores that the yardstick methodology employed by

10  Advertiser's experts looked at Meta's EPR ***in excess of the yardstick EPR***.  It is this excess that is

11  explained by Meta's anticompetitive conduct and not its overall size or other factors.

12  **II.  META'S ANTICOMPETITIVE CONDUCT IMPACTED ALL MEMBERS OF THE PROPOSED ADVERTISER CLASS**

13

14      **A.  All Meta Advertising Was Sold in the Social Advertising Market**

15      All Meta advertisers were impacted by Meta's anticompetitive conduct and paid

16  supracompetitive prices during the Class Period as a result.  Dr. Williams described this effect by first

17  defining the parameters of the Social Advertising Market, then concluding that all advertisements

18  sold by Meta during the Class Period were within this market.  Declaration of Michael A. Williams,

19  Ph.D. (ECF No. 642-9, the "Williams Decl."), Ex. A, ¶¶16-211.  Dr. Williams completed this exercise

20  by conducting a full *Brown Shoe* analysis (*id.*, ¶¶144-211), applying the Horizontal Merger

21  Guidelines methodology, including a SSNIP test (*id.*, ¶¶134-43), and analyzing hundreds of industry

22  documents, including internal documents from Meta and their real and purported competitors.  Dr.

23  Williams concluded that all Meta advertising during the Class Period is social advertising.  Meta

24  claims that some undefined portion of its ad products are not sold within this market, and that

25

26

27  _____

[3]      Meta cites *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th

28  Cir. 1998), *see* Opp. at 19, but that case compared prices (which would not take difference across firms into account automatically) instead of EPRs.

**FILED UNDER SEAL**

1  therefore some members of the Advertiser Class are uninjured.  This run-around challenge to the

2  merits of Advertisers' market allegations is flawed to its core.[4]

3      First, the evidence relied on by both parties in this dispute and the question of whether Meta

4  monopolized the Social Advertising Market are common to the Class and, therefore, its determination

5  should be left to the jury.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

6  651, 681 (9th Cir. 2022) (*en banc*) ("Reasonable minds may differ as to whether the overcharge

7  calculated is probative as to all purchasers in the class, but that is a question of persuasiveness for the

8  jury once the evidence is sufficient to satisfy Rule 23.") (cleaned up); *In re Korean Ramen Antitrust*

9  *Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *16 (N.D. Cal. Jan. 19, 2017) (certifying class

10  and holding "[a] final determination of the relevant market and what the defendants' market power

11  was in that relevant market need not be decided on this motion"; "Plaintiffs have made a showing

12  that, if defined as the narrower Korean Noodle market, the defendants had market power to be able

13  to increase prices in the United States," which "support[s] a preliminary showing of market power

14  and impact").

15      Second, this misguided contention is based on the speculative opposition report of Dr. Tucker,

16  an economist who admitted at deposition that ███████████████████████████████

17  ███████████ (Ex. 4 at 12:21-25), and ██████████████████████████

18  ███████ *Id.* at 31:8-19; *see also id.* at 36:23-37:1.  In her report, ████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████.[5]  Declaration of

22  ────────────────────

[4]  Meta cites two irrelevant cases to support their argument.  *Fido's Fences, Inc. v. Radio Sys.*
23  *Corp.*, 999 F. Supp. 2d 442, 449-53 (E.D.N.Y. 2014) (assuming, without deciding, that plaintiff
pleaded a distinct market for electronic pet containment system replacement batteries, and holding
24  that plaintiff lacked Article III standing to pursue claims in the wider electronic pet containment
system market because it offered no proof it planned to compete in the wider market); and *Somers v.*
25  *Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (granting motion to dismiss plaintiff's antitrust claim
due to a contradictory overcharge theory that was implausible on its face).

26  [5] ████████████████████████████████████████████████████████
27  ████████████████████████████████████████████ ▌ Mot. Decl., Ex. 79
▐▌31-39.  This argument is illogical and unconvincing considering that, █████████████
28  ██████████████████████████████████████. Ex. 5 at 606.

8

**FILED UNDER SEAL**

1 Amanda F. Lawrence in Support of Advertiser Plaintiffs' Mot. for Class Certification (ECF No. 642-

2 2, the "Mot. Decl."), Ex. 79, ¶41.

3       Dr. Tucker's opinions are also incorrect when the record is examined.  For example, Meta

4 CMO Alex Schultz testified that ███████████████████████████████████

5 ███████████████████████████ (Ex. 6 at 154:23-155:6, 158:6-16, 159:3-5), ████

6 ██████████████████████.[6]  Williams Decl., Ex. B, ¶57 (citing Ex. 7 at 725); Ex. 8 at

7 slide 15; Ex. 9; Ex. 10 at 495.  Also, Dr. Williams found that internal Meta documents ████

8 ███████████████████████████████████████████████████████

9 █████████████████████████████ Williams Decl., Ex. B, ¶53.

10 Similarly, Meta's documents show that █████████████████████████████

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 █████████ *Id.*, ¶53, n.48 (citing Ex. 11).

14       Accordingly, Dr. Williams' expert report and the supporting evidence, including from Meta's

15 own files, provides a sufficient basis to show that all Meta advertisers were impacted by Meta's

16 monopolization of the Social Advertising Market.  *In re Online DVD Rental Antitrust Litig.*, No. M

17 09-2029 PJH, 2010 WL 5396064, at *9 (N.D. Cal. Dec. 23, 2010), *aff'd*, 779 F.3d 934 (9th Cir. 2015)

18 (finding plaintiffs' expert's benchmark damages methodology and overcharge theory credible

19 because they were "supported by actual documentary evidence and data thus far produced in the

20 action, and provide an adequate basis from which plaintiffs propose to demonstrate with proof

21 common to the class that Wal-Mart's exit from the online DVD rental market harmed class

22 members"); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1210-12, 1214 (N.D. Cal.

---

23 [6]     Even if the Court were to find that Meta ads on both Marketplace and FAN are not within the

24 Social Advertising Market, the Class still may be properly certified because these platforms are
responsible for no more than ██ of Meta's ad revenue during the Class Period (*see* ECF No. 679-1

25 at 6), and thus, Meta advertisers that only purchased ads placed on these surfaces represent a *de
minimis* portion of the proposed Class.  *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-37

26 (9th Cir. 2016) (presence of uninjured class members in class did not preclude predominance finding);
*In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *12 (N.D. Cal. Feb.

27 21, 2017) (5.4% of proposed class whose injury was challenged was *de minimis*); *In re Nexium
Antitrust Litig*, 777 F.3d 9, 30-31 (1st Cir. 2015) (5.8% of proposed class whose injury was challenged

28 was *de minimis*); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012) (2.4%
of proposed class whose injury was challenged was *de minimis*).

<u>**FILED UNDER SEAL**</u>

1   2013) (holding that plaintiffs' "documentary evidence from Defendants' internal files" and the

2   "expert reports" that relied on these documents was sufficient evidence to "support[] their theory that

3   Defendants' formal compensation structures combined with the premium Defendants' placed on

4   internal equity created a market"); *Lidoderm*, 2017 WL 679367, at *10 (expert reliance on defendants'

5   own internal documents and academic and industry studies to define market was persuasive evidence

6   that injury could be shown on a classwide basis); *Le v. Zuffa, LLC*, No. 2:15-CV-01045-RFB-BNW,

7   2023 WL 5085064, at *15, *18-*19 (D. Nev. Aug. 9, 2023) (disposing of defendant's "thinly veiled

8   attempt to dilute its market dominance" and finding that plaintiffs sufficiently defined relevant

9   markets and barriers to entry for purpose of class certification based on plaintiffs' economics expert's

10  report and "myriad record evidence").

11      **B.    All Meta Advertisers Are Subject to Prices Set by Meta's Advertising Auction**

12      All members of the proposed Advertiser Class purchased Meta Ads through the Meta Ad

13  Auction or paid prices set by the Meta Ad Auction, which, in practice and under precedent, provides

14  classwide proof of injury.

15      First, internal Meta documents show that ███████████████████████████████████

16  ████████████████, and even the *de minimis*[7] number ███████████ of putative Class

17  members ██████████████████████████████████.   Williams Decl., Ex. B,

18  ¶¶130-133.

19      Second, as detailed *supra* §I(B), Dr. Williams has provided a reliable yardstick methodology

20  and overcharge damages theory that shows Meta charged monopoly-enabled supracompetitive prices

21  across all of Meta's ad products.  Thus, all Meta ads purchased during the Class Period were impacted

22  by Meta's anticompetitive conduct and common issues predominate regardless of when these ads

23  were purchased, who made the purchase, how many ads were purchased, for how long they ran, or

24  any other auction input.  *See e.g.*, *Olean*, 31 F.4th at 677-78 (finding "class-wide impact, even when

25  the market involves diversity in products, marketing, and prices, especially where, as here, there is

26  evidence that the conspiracy artificially inflated the baseline for price negotiations") (cleaned up); *In*

27  *re Auction Houses Antitrust Litig.*, 193 F.R.D. 162,  166-67 (S.D.N.Y. 2000) (certifying class and

---

[7]     *See supra*, n.6.

**FILED UNDER SEAL**

1  finding classwide antitrust impact in auction market despite evidence of individual negotiations and

2  product variations); *DeLoach v. Philip Morris Cos., Inc.*, 206 F.R.D. 551, 562-63 (M.D.N.C. 2002)

3  (finding classwide antitrust impact in tobacco auction market).

4      Meta relies on *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir.

5  2008), for the proposition that an auction market is inherently incompatible with common impact.  As

6  the Ninth Circuit held in *Olean*, "[t]his reliance is misplaced."  31 F.4th at 678-79 (common issues

7  predominated as to antitrust injury when defendants' anticompetitive conduct "result[ed] in higher

8  prices for all buyers").  Meta's reliance on *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2023

9  WL 5279463 (N.D. Cal. Aug. 15, 2023), is similarly misplaced.  In that breach of contract action, the

10  court denied certification of a class that claimed a specific Google ad auction function sometimes, but

11  not all the time, failed to perform as intended or only partially performed in response to an advertiser's

12  bid.  *Id.*, at *24-*25.  The court found that the identification of each auction bid that was affected by

13  this inconsistent breach raised individualized issues, but not before "quickly dispos[ing] of the

14  argument that Plaintiffs must account for advertisers' bidding strategies" and clarifying that "the

15  dynamics of any given auction need not be considered under Plaintiffs' theory, so individualized

16  inquiries into those dynamics will not predominate."  *Id.*

17  **C.    Meta's Arguments About the Undefined and Unsubstantiated "Benefits" of Its
        Exclusionary Conduct Are Meritless**

18

19      Meta argues that Advertisers cannot show classwide injury because some class members

20  supposedly received benefits from the conduct charged in this case, reducing the amount of their

21  overcharge.  This argument does not withstand scrutiny.  As an initial matter, it is contrary to well-

22  accepted economic theory to posit that Meta's advertisers are better off because the company

23  maintained, rather than lost, its monopoly power during the Class Period.  The common injury in this

24  case is that members of the Advertiser Class – people who bought advertising from Meta during the

25  Class Period – were overcharged because Meta had monopoly power during this period, ***which it***

26  ***possessed because of the Meta's accused conduct***.  As Professor Gans has explained, a ███████

27  ████████████████████████████████████████.  Declaration of Joshua

28  S. Gans (ECF No. 642-13), Ex. B, ¶¶18-19.  And of course, if the monopolist reduces prices as a

<u>**FILED UNDER SEAL**</u>

1   result of the efficiencies it obtains, then the monopoly price fully reflects that.  Moreover, Meta has

2   not identified a single supposed "benefit" received by any Advertiser Class members.  Meta's

3   argument is based on *ipse dixit* and unsupported statements by its expert, Dr. Tucker, ███████

4   ██████████████████████████████████████████████████████████

5   ██████.  Ex. 4 at 146:13-152:7.

6        Meta's argument is also counterfactual.  The undisputed record shows that during the Class

7   Period, ████████████████████████████████████████████.  *See*

8   Williams Decl., Ex. B, ¶¶81-83  (███████████████████████████████

9   ████████████).  Meta has not offered any evidence to the contrary, nor has it

10  offered any expert analysis demonstrating efficiencies attributable to Meta's exclusionary acts or that

11  any benefits made their way to Advertisers and the Class.  Meta cannot simply manufacture

12  hypothetical and speculative "benefits" to Plaintiffs and Class members in order to defeat class

13  certification.  *See In re Elec. Books Antitrust Litig.*, No. 11-MD-2293-DLC, 2014 WL 1282293, at

14  *17 (S.D.N.Y. Mar. 28, 2014) ("*eBooks*").

15       Judge Cote's decision in *eBooks* is instructive.  There, Apple made the same argument Meta

16  offers here – that plaintiffs were required to offset their measure of classwide injury and damages

17  with supposed benefits resulting from the anticompetitive conduct.  *See* 2014 WL 1282293, at *16-

18  *17.  The court began by noting the well-established rule that "[w]here the but-for price is uncertain,

19  'the plaintiff's burden of proving damages is, to an extent, lightened,' for 'the wrongdoer shall bear

20  the risk of the uncertainty which his own wrong has created.'"  *Id.*, at *16 (*New York v. Hendrickson*

21  *Bros., Inc.*, 840 F.2d 1065, 1077 (2d Cir. 1988), and *Bigelow v. RKO Radio Pictures*, 327 U.S. 251,

22  265 (1946)); *accord J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981).

23  Then, applying the Supreme Court's decision in *Hanover Shoe*, the court expressly rejected the same

24  argument offered by Meta in its class certification opposition:

25              As significantly, an antitrust defendant may not alter this well-settled
              measurement of damages by speculatively raising potential offsets, even
26              when those offsets are directly related to the goods at issue.

27  *eBooks*, 2014 WL 1282293, at *17.  As Judge Cote explained, Apple's proposed offsets were too

28  speculative or attenuated to be factored into the damages calculations under *Hanover Shoe*:

**FILED UNDER SEAL**

> Applying these principles to each of the four offsets that Apple requests, it is readily apparent that none will create individualized issues that preclude class certification.  Some of these offsets do not directly relate to the transactions at issue here; consequently, any imagined benefits are too remote to be considered in damages calculations.  Others concern the relevant transactions but are based purely on conjecture about speculative happenings in the but-for-world.  Pursuant to the sound policy taught by *Hanover Shoe*, such offsets must be rejected.

*Id.*, at *19 (rejecting promotion of self-publishing; lower prices during the Class period; speculation that some consumers may not have purchased absent the conduct; and the elimination of release windows for books as "offsets" that must be considered as part of injury and damages analysis). Meta's speculation here is far worse than what Apple offered in *eBooks*.  Meta states, without support, that its ads improved as a result of its monopoly-maintaining conduct, so, Meta's argument goes, Advertiser Class members must have received some unidentified benefits.  That is not sufficient to call into doubt Advertisers' proof on injury and damages.  The issue is not close.  *See id.*, at *20 ("Legally, again, *Hanover Shoe* bars an offset argument rooted in rank speculation about the but-for world.  Because of Apple's conduct, there is no way to know whether a given title would or would not have been 'windowed' and whether a given purchaser of its e-book would or would not have waited through the 'windowing' period or purchased a hardcover edition.  Furthermore, Apple may not avoid liability for overcharging a customer by speculating that that customer may have been better off paying the overcharge than being unable to purchase the good at all.").

## III.   ADVERTISERS' PROPOSED CLASS REPRESENTATIVES ARE BOTH TYPICAL AND ADEQUATE

Rule 23(a)(3)'s typicality requirement is "permissive."  *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 393 (N.D. Cal. 2009).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiffs' legal theory, not the injury caused to the plaintiff."  *Miletak v. Allstate Ins. Co.*, No. 06-03778-JW, 2010 WL 809579, at *11 (N.D. Cal. Mar. 5, 2010) (cleaned up).  In this case, each proposed Class Representative displayed an understanding of the case, the injuries caused to the Advertiser Class, and a willingness to represent it, which is more than what is required:

- Mark Young, ██████████████████████████████ (Ex. 12 at 84:23), and
  ██████████████████████████████████████ (*id.* at 273:21-25),
  ██████████████████████████████████████. *See, e.g., id.*

13

**FILED UNDER SEAL**

at 90:20-22

*Id.* at 201:17-22.

- Katherine Looper

Ex. 13 at 63:14-21, 152.

(*id.* at 179:8-11),                                                                    *See,*

*e.g., id.* at 99-100

*Id.* at 173-74

- Mark Berney, individually and as the principal of 406 Property Services, PLLC, stated

(Ex. 14

at 96:3-5),

*Id.* at 143:5-9.

*Id.* at 73:25-74:3.

*Id.* at 75:3-5.

- Likewise, Jessyca Frederick, individually and on behalf of her company Affilious, Inc.,

(Ex. 15 at 17:11-13),

*Id.* at

17:18-19.

(*id.* at 45:24-46:1),

*Id.* at 46:4-5.

Faced with these proposed Class Representatives, Meta harps on the size and sophistication levels of some ad buyers in the Advertiser Class. Yet the typicality requirement does not mandate that class representatives be typical of all ad buyers, but instead focuses on whether they suffered the same or similar injury as other class members. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). And Meta's argument regarding varying degrees of sophistication has been flatly rejected, including by this Court. In *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022), this Court faced similar arguments on

14

**FILED UNDER SEAL**

1  typicality and adequacy from Meta, including reliance on the same case, *In re Facebook, Inc., PPC*

2  *Advert. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012).  The Court stated that Meta overread the *PPC* case,

3  especially considering it did ultimately find typicality, and stated succinctly: "It may be that class

4  members differ in advertising budgets and scope of purchases, as Meta suggests, but Meta has not

5  shown that these differences defeat typicality or the named plaintiffs' ability to adequately represent

6  all class members."  *DZ Rsrv.*, 2022 WL 912890, at *4; *see also Ewert v. eBay, Inc.*, No. C-07-02198-

7  RMW, 2010 WL 4269259, at *3-*4 (N.D. Cal. Oct. 25, 2010) (rejecting varying sophistication

8  argument).  Here too, Meta has not demonstrated any serious challenge to typicality or adequacy as

9  none exist.

10  **IV.    META'S "INDIRECT PURCHASER" ARGUMENT IS MERITLESS**

11      Meta offers a one-paragraph, conclusory argument that the Class should not be certified

12  because it may include both direct and indirect purchasers, the latter of which Meta claims would lack

13  standing.  This issue is entirely manufactured.  Direct purchasers are "those who are the immediate

14  buyers from the alleged antitrust violators," whereas indirect purchasers are "two or more steps

15  removed from the antitrust violator in a distribution chain."  *Apple Inc. v. Pepper*, _U.S._, 139 S. Ct.

16  1514, 1521 (2019) (cleaned up).  The proposed class definition encompasses only persons "who

17  purchased advertising ***from*** Meta," (Notice of Mot.), the natural reading of which does not include

18  purchasers "two or more steps removed" from Meta.  And indeed, courts have certified similarly

19  defined classes without issue.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 647 (N.D.

20  Cal. 2007) (certifying class of "[a]ll persons who purchased in the United States from [defendants]").

21  Should the Court nonetheless find the proposed Class definition insufficiently precise to encompass

22  only direct purchasers, the remedy is straightforward: the Court can revise the Class definition to only

23  persons "who purchased advertising ***directly*** from Meta."  *See Olean*, 31 F.4th at 669 n.14 ("[T]he

24  problem of a potentially over-inclusive class can and often should be solved by refining the class

25  definition rather than by flatly denying class certification on that basis.") (cleaned up).

26                                    **CONCLUSION**

27      The Court should grant Advertisers' motion for class certification and certify the proposed

28  Advertiser Class.

**FILED UNDER SEAL**

1 | Dated: November 3, 2023

2 | **BATHAEE DUNNE LLP**

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**

3

4 | By: */s/ Yavar Bathaee*
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com

5 | Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com

6 | Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com

7 | Adam Ernette (*pro hac vice*)
aernette@bathaeedunne.com

8 | 445 Park Avenue, 9th Floor
New York, NY 10022

9 | Tel.: (332) 322-8835

10 | Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com

11 | Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com

12 | 901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300

13 | Austin, TX 78746
Tel.: (213) 462-2772

14

15 | Allison Watson Cross (CA 328596)
across@bathaeedunne.com

16 | 3420 Bristol St, Ste 600
Costa Mesa, CA 92626-7133

17 | *Interim Co-Lead Counsel for the Advertiser Classes*

18

19 | **LEVIN SEDRAN & BERMAN LLP**

20 | Keith J. Verrier (*pro hac vice*)
kverrier@lfsblaw.com

21 | Austin B. Cohen (*pro hac vice*)
acohen@lfsblaw.com

22 | 510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Tel.: (215) 592-1500

23

24 | *Members of Executive Committee for the Advertiser Classes*

25

26

27

28

By: */s/ Amanda F. Lawrence*
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
*Patrick J. McGahan (pro hac vice)*
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

**AHDOOT & WOLFSON, PC**

Tina Wolfson (CA 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (CA 223242)
tmaya@ahdootwolfson.com
Henry J. Kelson (*pro hac vice*)
hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111

ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION –
CASE NO. 3:20-CV-08570-JD

<u>**FILED UNDER SEAL**</u>

**FILER ATTESTATION**

I am the ECF user who is filing this document.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: November 3, 2023                      By:   <u>*/s/Amanda F. Lawrence*</u>
                                                           Amanda F. Lawrence

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I caused a true and correct copy of the foregoing document to be served by electronic mail on all counsel of record.

Dated: November 3, 2023                      By:   <u>*/s/Amanda F. Lawrence*</u>
                                                           Amanda F. Lawrence

ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION –
CASE NO. 3:20-CV-08570-JD