### FILED UNDER SEAL

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Interim Co-Lead Counsel for the
Advertiser Classes*

[Additional counsel on signature page]

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

MAXIMILIAN KLEIN, et al., on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

META PLATFORMS, INC.,

Defendant.

Case No. 3:20-cv-08570-JD

**ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

Hearing Date: December 14, 2023
Hearing Time: 10:00 a.m.
Courtroom 11, 19th Floor
Judge: The Honorable James Donato

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ............................................................................................................................2

    I.     ADVERTISERS' DAMAGES MODEL IS VIABLE, ROBUST AND CAN
           BE APPLIED ON A CLASSWIDE BASIS ...........................................................2

           A.     Advertisers' Damages Correctly Measure the Difference Between
                  Meta's Unlawful Monopoly Price and the Competitive Price in a But-
                  For World.....................................................................................................2

           B.     Advertisers' Yardstick Model Captures Damages Solely Attributable
                  to Meta's Unlawful Monopolization...........................................................6

    II.    META'S ANTICOMPETITIVE CONDUCT IMPACTED ALL MEMBERS
           OF THE PROPOSED ADVERTISER CLASS........................................................7

           A.     All Meta Advertising Was Sold in the Social Advertising Market .............7

           B.     All Meta Advertisers Are Subject to Prices Set by Meta's Advertising
                  Auction......................................................................................................10

           C.     Meta's Arguments About the Undefined and Unsubstantiated
                  "Benefits" of Its Exclusionary Conduct Are Meritless............................11

    III.    ADVERTISERS' PROPOSED CLASS REPRESENTATIVES ARE BOTH
           TYPICAL AND ADEQUATE ............................................................................13

    IV.    Meta's "Indirect Purchaser" Argument Is Meritless...............................................15

CONCLUSION........................................................................................................................15

**FILED UNDER SEAL**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................................................4

*Apple Inc. v. Pepper*,
  _U.S._, 139 S. Ct. 1514 (2019)...............................................................................................15

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)..............................................................................................3, 4, 5

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946)................................................................................................................12

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ...................................................................................................7

*Cabrera v. Google LLC*,
  No. 5:11-cv-01263-EJD, 2023 WL 5279463 (N.D. Cal. Aug. 15, 2023)...............................11

*City of Anaheim v. S. Cal. Edison Co.*,
  955 F.2d 1373 (9th Cir. 1992) .................................................................................................5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962)..................................................................................................................5

*DeLoach v. Philip Morris Cos., Inc.*,
  206 F.R.D. 551 (M.D.N.C. 2002) ...........................................................................................11

*DZ Reserve v. Meta Platforms, Inc.*,
  No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) .............................14, 15

*Ewert v. eBay, Inc.*,
  No. C-07-02198-RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ..................................15

*Fido's Fences, Inc. v. Radio Sys. Corp.*,
  999 F. Supp. 2d 442 (E.D.N.Y. 2014) ......................................................................................8

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
  392 U.S. 481 (1968)..................................................................................................................3

*In re Auction Houses Antitrust Litig.*,
  193 F.R.D. 162 (S.D.N.Y. 2000) ...........................................................................................10

**FILED UNDER SEAL**

*In re Elec. Books Antitrust Litig.*,
   No. 11-MD-2293-DLC, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014)...........................12, 13

*In re Facebook, Inc., PPC Advert. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012) ...............................................................................................15

*In re Google Play Store Antitrust Litig.*,
   No. 3:21-md-02981-JD (N.D. Cal. 2023) ....................................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ......................................................................................9

*In re Infineon Techs. AG Sec. Litig.*,
   266 F.R.D. 386 (N.D. Cal. 2009)...............................................................................................13

*In re Korean Ramen Antitrust Litig.*,
   No. 13-CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ....................................8

*In re Lidoderm Antitrust Litig.*,
   No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ..............................9, 10

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   No. ML-15-2668-PSJ(JEMx), 2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ...........................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)..........................................................................................................11

*In re Nexium Antitrust Litig*,
   777 F.3d 9 (1st Cir. 2015)............................................................................................................9

*In re Online DVD Rental Antitrust Litig.*,
   No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010), *aff'd*, 779
   F.3d 934 (9th Cir. 2015)...............................................................................................................9

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005)................................................................................................6

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
   967 F.3d 264 (3d Cir. 2020).........................................................................................................5

*In re Tableware Antitrust Litig.*,
   241 F.R.D. 644 (N.D. Cal. 2007)...............................................................................................15

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
   No. 04-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008).........................................................6

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
   451 U.S. 557 (1981)...................................................................................................................12

**FILED UNDER SEAL**

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022) ...................................................................5

*LaSalvia v. United Dairymen of Ariz.*,
  804 F.2d 1113 (9th Cir. 1986) ..............................................................................5

*Le v. Zuffa, LLC*,
  No. 2:15-CV-01045-RFB-BNW, 2023 WL 5085064 (D. Nev. Aug. 9, 2023) .....................10

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ................................................................................9

*Miletak v. Allstate Ins. Co.*,
  No. 06-03778-JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010)............................13

*MM Steel, L.P. v. JSW Steel (USA), Inc.*,
  806 F.3d 835 (5th Cir. 2015) ................................................................................6

*New York v. Hendrickson Bros., Inc.*,
  840 F.2d 1065 (2d Cir. 1988)...............................................................................12

*Nichols v. SmithKline Beecham Corp.*,
  No. 00-6222, 2003 WL 302352 (E.D. Pa. Jan. 29, 2003).........................................6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (*en banc*) ................................................8, 10, 11, 15

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) .................................................................................6

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ................................................................................8

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..............................................................................9

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966)............................................................................................3, 4

*US Airways, Inc. v. Sabre Holdings Corp.*,
  938 F.3d 43 (2nd Cir. 2019)..................................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).............................................................................................5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................14

ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION –
CASE NO. 3:20-CV-08570-JD

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................2, 4, 5, 8
    Rule 23(a)(3) ......................................................................................................................13

**FILED UNDER SEAL**

**PRELIMINARY STATEMENT**

Meta's opposition reveals that there is no substance – legally or factually – to any of Meta's objections to class certification.  To begin with, Meta's argument that Advertisers' damages model fails to disaggregate lawful from unlawful aspects of its monopoly is flawed for a simple reason: Advertisers intend to prove at trial that Meta would not have had a monopoly or market power absent its unlawful monopoly maintenance.  This is the theory of Advertisers' case, which means that the appropriate measure of damages is the entire difference between the unlawful monopoly price and the competitive price in the but-for world.  Moreover, Meta's argument about its pre-limitations conduct is directly foreclosed by binding case law and, in any event, based on an entirely misleading recitation of the facts to be proven at trial, including as to conduct within the limitations period. Meta's attack on Advertisers' yardstick model fares worse.  Meta again ignores the long line of cases approving yardstick methodologies for measuring damages, and simply ignores that the damages model here looks to the amount *in excess* of the competitive economic profit rate, which necessarily isolates the portion of Meta's revenues that are attributable to its unlawful conduct.

Meta makes additional arguments that are on their face meritless.  For example, Meta argues that not all of its ads are social advertisements, but in substance Meta attacks market definition without analysis or expert testimony.  Meta simply makes assertions contrary to the evidence cited in Advertisers' expert reports, which contain a *Brown Shoe* analysis, a SSNIP test, and a review of the mountain of evidence showing that Meta's ads fall within the Social Advertising submarket.  Meta also makes factual arguments about its auction process, but its arguments are misleadingly about the ▮▮▮▮▮▮ of ads on its platform outside of its auction, and (as with Meta's other arguments), Meta simply ignores the long line of cases rejecting Meta's claim that an auction process inherently creates predominance issues.  Meta also speculates that its monopoly may have somehow benefited Advertisers, creating some a predominance issue.  But Meta identifies none of these benefits; does not deal with economic theory, which is clear that efficiencies are not passed on by a monopolist to consumers; and contradicts by pure fiat the evidence that its ad products did not in fact improve during the Class Period as shown by Dr. Williams' clickthrough-rate analysis.  On this record, Meta's speculative and unsubstantiated "benefits" cannot offset Advertisers' concrete damages calculation.

**FILED UNDER SEAL**

Meta's remaining arguments border on frivolous.  The record is clear that each named plaintiff is both typical of the Class and adequately represents the interest of all Class members, including the more than estimated 90%-plus of Meta advertisers that paid less than $1000 for ads during the Class period. Meta's indirect purchaser argument, meanwhile, is contradicted by the plain terms of the Advertiser Class.  Meta's arguments paint a clear picture: its opposition is a scattershot array of counterfactual and legally unsupported assertions.  Advertisers' motion for class certification should be granted.

## ARGUMENT

Meta concedes the vast majority of Rule 23's requirements, raising arguments solely on predominance, adequacy, and typicality.  Each of Meta's arguments are manufactured and meritless.

## I.   ADVERTISERS' DAMAGES MODEL IS VIABLE, ROBUST AND CAN BE APPLIED ON A CLASSWIDE BASIS

Setting aside Meta's argument that Advertisers' damages model fails under *Daubert*, which is addressed fully in the parties' *Daubert* brief, Meta offers two arguments with regarding Advertisers' classwide damages model.  First, Meta makes the demonstrably incorrect legal argument that Advertisers' damages must be calculated for each of the individual exclusionary acts that maintained Meta's social advertising monopoly, not from inflationary impact of the unlawful monopoly itself. The law on this point, including the very cases Meta cites, is unambiguous that Meta is incorrect. Advertisers' damages are properly calculated as the difference between the unlawful monopoly price and the competitive price of the ads they purchased – and Advertisers contend the competitive price of these ads is their price in a but-for world where Meta did not engage in the exclusionary acts with which it is charged, and therefore ***did not possess a monopoly or market power during the Class Period***.  Second, Meta makes a related argument that Advertisers' damages model fails to take into account the "lawful" aspects of Meta's monopoly.  On this point, Meta simply misstates the factual record, including by incorrectly describing Advertisers' damages model; in truth, nothing is unaccounted for.  Both arguments regarding Advertisers' damages model should be rejected.

### A.   Advertisers' Damages Correctly Measure the Difference Between Meta's Unlawful Monopoly Price and the Competitive Price in a But-For World

Meta's primary argument is based on a demonstrably incorrect proposition of law. Specifically, Meta asserts: "The law prohibits Advertisers from calculating the price difference

<u>**FILED UNDER SEAL**</u>

1   attributable to Meta's alleged monopoly rather than the specific challenged conduct at issue in this

2   suit." Opp. at 20.[1]  Meta is wrong.  To begin with, Meta's assertion is a non sequitur – the conduct

3   challenged by Advertisers is ***Meta's unlawful monopolization*** of the Social Advertising Market, not

4   merely one element of that claim.  The elements of a monopolization claim are: "(1) the possession

5   of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that

6   power as distinguished from growth or development as a consequence of a superior product, business

7   acumen, or historic accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  Meta's

8   argument conflates the monopolization offense – which is what Advertisers will prove at trial here –

9   with exclusionary conduct sub-elements in arguing that damages must be computed and attributed to

10  each alleged exclusionary act individually.  This is in error.

11          Moreover, the law is clear that an overcharged plaintiff may recover the difference between

12  the monopoly price and the price that would have existed in the but-for world.  *See Hanover Shoe,*

13  *Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) ("[W]hen a buyer shows that the price

14  paid by him for materials purchased for use in his business is illegally high and also shows the amount

15  of the overcharge, he has made out a *prima facie* case of injury and damage within the meaning of

16  [Clayton Act §] 4.").  Meta cites *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 297 (2d

17  Cir. 1979), for the proposition that damages must be calculated from each exclusionary act

18  individually rather than from the effect of the unlawful monopoly on prices, but *Berkey Photo* stands

19  for no such proposition.  There, the court was express that the "true measure of damages" is "the price

20  increment caused by the anticompetitive conduct that originated or augmented the monopolist's

21  control over the market."  *Id.* at 297.  In other words, the appropriate measure of damages is the

22  portion of the difference between monopoly and competitive prices that is attributable to the

23  exclusionary conduct.  *Id.*  As Areeda explains *Berkey Photo* and the general rule:

24                  Any obligation on plaintiffs to separate out the contribution of each
                    individual act to the defendant's monopoly price, and then to collect
25                  damages only for that portion of the overcharge attributed to unlawful

---

26  [1]   "Opp." citations are to Defendants' Opposition to Advertiser Plaintiffs' Motion for Class
      Certification (ECF No. 671-1). "Mot." citations are to Advertiser Plaintiffs' Motion for Class
27  Certification (ECF No. 642-1). Exhibit citations are to the Declaration of Amanda F. Lawrence, filed
      concurrently herewith.  Capitalized terms not otherwise defined herein retain the same meaning as
28  the Motion.  Emphasis is added and citations are omitted unless otherwise noted.

FILED UNDER SEAL

1  conduct, either invites extreme speculation or else becomes an ineffective
rule of nonrecovery.

2

3  Once an exclusionary practice has been found unlawful and shown to be a
significant contributor to the monopolist's monopoly price, then the court
must indulge a presumption about the size of the contribution.  Here, the
sensible presumption is that in the absence of the unlawful exclusionary
practice, the monopolist would have charged the competitive price, so
damages should be based on the difference between the monopoly price and
the competitive price.

4

5

6  Ex. 1 at 6-7.

7  Here, Advertisers contend – and their damages model assumes – that Meta ***would not have a***

8  ***monopoly or market power in a but-for world without the challenged exclusionary conduct***,

9  meaning the correct measure of damages is the difference between the monopoly price and the

10  competitive price calculated by Advertisers' model, including under the *Berkey Photo* articulation.

11  As the Second Circuit explained in *Berkey Photo*, where "but for [a defendant's] illegitimate actions,"

12  it "would have little or no market power," the measure of damages yields "very similar results" to the

13  calculation of the entire difference between the monopoly price and the competitive price.  603 F.2d

14  at 297-98.  This is because in such a case, ***all*** of the price inflation is attributable to the market power

15  and monopoly caused by the alleged exclusionary conduct.  As such, Advertisers' damages model

16  precisely tracks the theory of Advertisers' liability case, which asserts that but for its challenged

17  conduct, Meta would not have maintained any monopoly power in the Class Period.

18  Even if Meta had proffered any kind of argument or evidence that some part of its monopoly

19  is "a consequence of a superior product, business acumen, or historic accident," *Grinnell Corp.*, 384

20  U.S. at 570-71, that is a merits issue for the jury, not a necessary question that can be decided on this

21  motion – and it certainly is not a basis to deny class certification.  *See Amgen Inc. v. Conn. Ret. Plans*

22  *& Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging

23  merits inquiries at the certification stage.  Merits questions may be considered to the extent – but only

24  to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class

25  certification are satisfied.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 & n.6 (2011)).

26  In addition, Meta's demand for a disaggregated measure of damages for each exclusionary act

27  conflicts with admonitions by the Ninth Circuit and the Supreme Court that antitrust claims must be

28  considered as a whole.  *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699

4

**FILED UNDER SEAL**

(1962) ("In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."). Crediting Meta's argument would do precisely what binding precedent proscribes in monopolization cases like this one, involving a course of conduct with several exclusionary acts. *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) (in monopoly broth cases, "it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider the overall combined effect"); *see also Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 806 (N.D. Cal. 2022); *accord In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 270-71 & n.11 (3d Cir. 2020).

Finally, Meta argues that Advertisers' damages calculation supposedly requires reaching back into the pre-limitations period since Meta's monopoly was unlawfully obtained more than four years before this case was filed, including through Meta's 2015 scuttling of its Platform APIs and subsequent extended API agreements. This argument is demonstrably wrong. To begin with, *Berkey Photo*, which Meta relies on extensively, squarely disposes of any argument that Advertisers cannot prove that Meta unlawfully obtained its monopoly based on pre-limitations conduct: "[A] purchaser suing a monopolist for overcharges paid within the previous four years may satisfy the conduct prerequisite to recovery by pointing to anticompetitive actions taken before the limitations period." 603 F.2d at 296. Other courts, including the Ninth Circuit, are in perfect accord on this point. *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986) ("[W]hile plaintiffs may recover for damages they prove were caused by anticompetitive conduct begun before the four-year statutory period under the continuing harm doctrine, their recovery is limited to damage incurred within the four years preceding the filing of the complaint.").[2] Moreover, Meta's anticompetitive conduct both continued into and newly occurred from day one of the four-year limitations period,

---

[2] *See also* Ex. 2 at 21 ("When a §2 action is filed in a timely fashion, the customer will be able to collect damages for the four years prior to filing and will be able to rely on pre-limitation conduct in order to establish the exclusionary practices portion of a monopolization claim."); *cf. Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 488 (9th Cir. 2021) ("If a defendant has conspired to violate the antitrust laws and thereby harmed a market's competitive structure, it remains liable for the continuing injuries suffered by plaintiffs from the structural harm to competition that its unlawful scheme brought about.").

**FILED UNDER SEAL**

1   including through Meta's multi-year program of entering anticompetitive ████████

2   ████████████████████████████████████████████████████████████

3   ████████. And in any event, the question of when precisely Meta's exclusionary conduct began is

4   a merits question that will be proved entirely through common evidence from Meta's files.

     **B.**    **Advertisers' Yardstick Model Captures Damages Solely Attributable to Meta's Unlawful Monopolization**

7        Advertisers' experts conducted a yardstick analysis to assess damages. They calculated

8   Meta's economic profit rate ("EPR") during the Class Period and the EPRs of certain yardstick firms

9   for the same period. Those yardstick firms were selected after applying six separate filters to the

10  universe of publicly traded companies. They then used the yardsticks' EPRs versus Meta's EPR

11  during the Class Period to determine what Meta's profitability would have been in the but-for world

12  in the absence of the alleged conduct. Such a yardstick analysis is regularly applied and routinely

13  accepted. *See* Mot. at 21 (citing cases); *see also, e.g.*, *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D.

14  346, 354 (N.D. Cal. 2005); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, No. 04-5525, 2008

15  WL 1946848, at *8-*9 (E.D. Pa. May 2, 2008); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d

16  43, 61-63 (2nd Cir. 2019); *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.

17  2023); *MM Steel, L.P. v. JSW Steel (USA), Inc.*, 806 F.3d 835 (5th Cir. 2015); *In re Nat'l Football*

18  *League's Sunday Ticket Antitrust Litig.*, No. ML-15-2668-PSJ(JEMx), 2023 WL 1813530 (C.D. Cal.

19  Feb. 7, 2023); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2003 WL 302352 (E.D. Pa. Jan.

20  29, 2003). Meta complains that this oft-accepted methodology does not separate out the profits from

21  the wrongful conduct. Opp. at 18. This argument fails in at least three ways, as further set forth in

22  the opposition to Meta's motion to exclude the testimony of Dr. Williams and Mr. Kreitzman (ECF

23  No. 679-1).

24       ***First***, the law is crystal clear that, when employing a yardstick model and when computing

25  antitrust damages, an economist must "hold[] every other feature of the actual world constant." Ex.

26  3, §B. ***Second***, using EPRs as a comparator, as Advertisers' experts did, ***does*** account for any lawful

27  conduct that may have occurred. Because EPRs measure economic profits ***as a percentage of***

28  ***economic capital***, they can be used to compare economic profitability regardless of differences in,

6

**FILED UNDER SEAL**

for example, product quality.[3]  ***Third***, Meta ignores that the yardstick methodology employed by Advertiser's experts looked at Meta's EPR ***in excess of the yardstick EPR***.  This excess is what can be attributed to Meta's anticompetitive conduct and not Meta's overall size or other factors.

## II.     META'S ANTICOMPETITIVE CONDUCT IMPACTED ALL MEMBERS OF THE PROPOSED ADVERTISER CLASS

### A.     All Meta Advertising Was Sold in the Social Advertising Market

All Meta advertisers were impacted by Meta's anticompetitive conduct and paid supracompetitive prices during the Class Period as a result.  Dr. Williams described this effect by first defining the parameters of the Social Advertising Market, then concluding that all advertisements sold by Meta during the Class Period were within this market.  Declaration of Michael A. Williams, Ph.D. (ECF No. 642-9, the "Williams Decl."), Ex. A, ¶¶16-211.  Dr. Williams completed this exercise by conducting a full *Brown Shoe* analysis (*id.*, ¶¶144-211), applying the Horizontal Merger Guidelines methodology, including a SSNIP test (*id.*, ¶¶134-43), and analyzing hundreds of industry documents, including internal documents from Meta and their real and purported competitors.  Dr. Williams concluded that all Meta advertising sold during the Class Period was social advertising. Meta claims that some undefined portion of its ad products were not sold within this market, and that therefore some members of the Advertiser Class are uninjured.  This run-around challenge to the merits of Advertisers' market allegations is flawed to its core.[4]

First, the evidence relied on by both parties and the question of whether Meta monopolized the Social Advertising Market are common to the Class and, therefore, this determination should be left to the jury.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 681 (9th Cir. 2022) (*en banc*) ("Reasonable minds may differ as to whether the overcharge calculated is

---

[3]     Meta cites *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998), *see* Opp. at 19, but that case compared prices (which would not take difference across firms into account automatically) instead of EPRs.

[4]     Meta cites two irrelevant cases to support its argument.  *See Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442, 449-53 (E.D.N.Y. 2014) (assuming, without deciding, that plaintiff pleaded a distinct market for electronic pet containment system replacement batteries, and holding that plaintiff lacked Article III standing to pursue claims in the wider electronic pet containment system market because it offered no proof it planned to compete in the wider market); and *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (granting motion to dismiss plaintiff's antitrust claim due to a contradictory overcharge theory that was implausible on its face).

**FILED UNDER SEAL**

1   probative as to all purchasers in the class, but that is a question of persuasiveness for the jury once

2   the evidence is sufficient to satisfy Rule 23.") (cleaned up); *In re Korean Ramen Antitrust Litig.*, No.

3   13-CV-04115-WHO, 2017 WL 235052, at *16 (N.D. Cal. Jan. 19, 2017) (certifying class and holding

4   "[a] final determination of the relevant market and what the defendants' market power was in that

5   relevant market need not be decided on this motion"; "Plaintiffs have made a showing that, if defined

6   as the narrower Korean Noodle market, the defendants had market power to be able to increase prices

7   in the United States," which "support[s] a preliminary showing of market power and impact").

8       Second, this misguided contention is based on the speculative opposition report of Dr. Tucker,

9   an economist who admitted at deposition that ███████████████████████████████████████████

10  ███████████ (Ex. 4 at 12:21-25), and ███████████████████████████████████████

11  ███████ *Id.* at 31:8-19; *see also id.* at 36:23-37:1. ██████████████████████████

12  ███████████████████████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████.[5]  Declaration of Amanda F.

15  Lawrence in Support of Advertiser Plaintiffs' Mot. for Class Certification (ECF No. 642-2, the "Mot.

16  Decl."), Ex. 79, ¶41.

17      Dr. Tucker's opinions also do not match the record.  Meta CMO Alex Schultz testified that

18  ███████████████████████████████████████████████████████████████████████████████

19  ███████ (Ex. 6 at 154:23-155:6, 158:6-16, 159:3-5), ███████████████████████.[6]

20  _____

21  [5] ██████████████████████████████████████████████████ ██Mot. Decl. Ex. 79,

22  ¶¶31-39.  This argument is illogical and unconvincing considering that ██████████████

23  ████████████████████ Ex. 5 at 606.

    [6]    Even if the Court were to find that Meta ads on both Marketplace and FAN are not within the
24  Social Advertising Market, the Class still may be properly certified because these platforms are
    responsible for no more than ███ of Meta's Class Period ad revenue (*see* ECF No. 679-1 at 6), and
25  thus, Meta advertisers that only purchased ads placed on these surfaces represent a *de minimis* portion
    of the proposed Class.  *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016)
26  (presence of some uninjured class members did not preclude predominance finding); *In re Lidoderm
    Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *12 (N.D. Cal. Feb. 21, 2017) (5.4%
27  of proposed class whose injury was challenged was *de minimis*); *In re Nexium Antitrust Litig*, 777
    F.3d 9, 30-31 (1st Cir. 2015) (5.8% of proposed class whose injury was challenged was *de minimis*);
28  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012) (2.4% of proposed
    class whose injury was challenged was *de minimis*).

ADVERTISER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION –
CASE NO. 3:20-CV-08570-JD

**FILED UNDER SEAL**

Williams Decl., Ex. B, ¶57 (citing Ex. 7 at 725); Ex. 8 at slide 15; Ex. 9; Ex. 10 at 495.  Dr. Williams found that internal Meta documents ███████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████   Williams Decl., Ex. B, ¶53.  Meta's documents show that ███████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████   *Id.*, ¶53, n.48 (citing Ex. 11).

Accordingly, Dr. Williams' expert report and the supporting evidence, including from Meta's own files, provides a sufficient basis to conclude that all Meta advertisers were impacted by Meta's monopolization of the Social Advertising Market.  *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *9 (N.D. Cal. Dec. 23, 2010), *aff'd*, 779 F.3d 934 (9th Cir. 2015) (plaintiffs' expert's benchmark damages methodology and overcharge theory were credible because they were "supported by actual documentary evidence and data thus far produced in the action, and provide an adequate basis from which plaintiffs propose to demonstrate with proof common to the class that Wal-Mart's exit from the online DVD rental market harmed class members"); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1210-12, 1214 (N.D. Cal. 2013) (plaintiffs' "documentary evidence from Defendants' internal files" and the "expert reports" that relied on these documents were sufficient evidence to "support[] their theory that Defendants' formal compensation structures combined with the premium Defendants' placed on internal equity created a market"); *Lidoderm*, 2017 WL 679367, at *10 (expert reliance on defendants' own internal documents and academic and industry studies to define market was persuasive evidence that injury could be shown on a classwide basis); *Le v. Zuffa, LLC*, No. 2:15-CV-01045-RFB-BNW, 2023 WL 5085064, at *15, *18-*19 (D. Nev. Aug. 9, 2023) (disposing of defendant's "thinly veiled attempt to dilute its market dominance" and finding that plaintiffs sufficiently defined relevant markets and barriers to entry for purpose of class certification based on plaintiffs' economics expert's report and "myriad record evidence").

**FILED UNDER SEAL**

### B.  All Meta Advertisers Are Subject to Prices Set by Meta's Advertising Auction

All members of the proposed Advertiser Class purchased Meta Ads through the Meta ad auction or paid prices set by that auction, which, in practice and under precedent, provides classwide proof of injury.

First, internal Meta documents show that ███████████████████████████████ ███████████████████, and even the *de minimis* number ████████████ of putative Class members ████████████████████████████████████. Williams Decl., Ex. B, ¶¶130-133; *see also supra* n. 6.

Second, as detailed *supra* §I(B), Dr. Williams has provided a reliable yardstick methodology and overcharge damages theory that shows Meta charged monopoly-enabled supracompetitive prices across all of Meta's ad products. Thus, all Meta ads purchased during the Class Period were impacted by Meta's anticompetitive conduct and common issues predominate regardless of when these ads were purchased, who purchased them, how many ads were purchased, for how long they ran, or any other auction input. *See e.g.*, *Olean*, 31 F.4th at 677-78 (finding "class-wide impact, even when the market involves diversity in products, marketing, and prices, especially where, as here, there is evidence that the conspiracy artificially inflated the baseline for price negotiations") (cleaned up); *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 166-67 (S.D.N.Y. 2000) (certifying class and finding classwide antitrust impact in auction market despite evidence of individual negotiations and product variations); *DeLoach v. Philip Morris Cos., Inc.*, 206 F.R.D. 551, 562-63 (M.D.N.C. 2002) (finding classwide antitrust impact in tobacco auction market).

Meta relies on *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008), for the proposition that an auction market is inherently incompatible with common impact. As the Ninth Circuit held in *Olean*, "[t]his reliance is misplaced." 31 F.4th at 678-79 (common issues predominated as to antitrust injury when defendants' anticompetitive conduct "result[ed] in higher prices for all buyers"). Meta's reliance on *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2023 WL 5279463 (N.D. Cal. Aug. 15, 2023), is similarly misplaced. In that breach of contract action, the court denied certification of a class claiming that a specific Google ad auction function sometimes, but not all the time, failed to perform as intended or only partially performed in response to an

**FILED UNDER SEAL**

advertiser's bid.  *Id.*, at *24-*25.  The court found that the identification of each auction bid affected by this inconsistent breach raised individualized issues, but not before "quickly dispos[ing] of the argument that Plaintiffs must account for advertisers' bidding strategies" and clarifying that "the dynamics of any given auction need not be considered under Plaintiffs' theory, so individualized inquiries into those dynamics will not predominate." *Id.*

## C.   Meta's Arguments About the Undefined and Unsubstantiated "Benefits" of Its Exclusionary Conduct Are Meritless

Meta argues that Advertisers cannot show classwide injury because some class members supposedly received benefits from the conduct charged in this case, reducing the amount of their overcharge.  This argument does not withstand scrutiny.  As an initial matter, it is contrary to well-accepted economic theory to posit that Meta's advertisers are better off because the company maintained, rather than lost, its monopoly power during the Class Period.  The common injury in this case is that members of the Advertiser Class – people who bought advertising from Meta during the Class Period – were overcharged because Meta had monopoly power during this period, ***which it possessed because of the Meta's accused conduct***.  As Professor Gans has explained, ███████████ ███████████████████████████████████████.  Declaration of Joshua S. Gans (ECF No. 642-13), Ex. B, ¶¶18-19.  And of course, if the monopolist reduces prices as a result of the efficiencies it obtains, then the monopoly price fully reflects that.  Moreover, Meta has not identified a single supposed "benefit" received by any Advertiser Class members.  Meta's argument is based on *ipse dixit* and unsupported statements by its expert, Dr. Tucker, ██████████ ████████████████████████████████████████████ ██████████.  Ex. 4 at 146:13-152:7.

Meta's argument is also counterfactual.  The undisputed record shows that during the Class Period, ███████████████████████████████████████.  *See* Williams Decl., Ex. B, ¶¶81-83 (███████████████████████████ ███████████████).  Meta has not offered any evidence to the contrary, nor has it offered any expert analysis demonstrating efficiencies attributable to Meta's exclusionary acts or that any benefits made their way to Advertisers and the Class.  Meta cannot simply manufacture

11

**FILED UNDER SEAL**

hypothetical and speculative "benefits" to Plaintiffs and Class members in order to defeat class certification. *See In re Elec. Books Antitrust Litig.*, No. 11-MD-2293-DLC, 2014 WL 1282293, at *17 (S.D.N.Y. Mar. 28, 2014) ("*eBooks*").

Judge Cote's decision in *eBooks* is instructive. There, Apple made the same argument Meta offers here – that plaintiffs were required to offset their measure of classwide injury and damages with supposed benefits resulting from the anticompetitive conduct. *See* 2014 WL 1282293, at *16-*17. The court began by noting the well-established rule that "[w]here the but-for price is uncertain, 'the plaintiff's burden of proving damages is, to an extent, lightened,' for 'the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" *Id.*, at *16 (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1077 (2d Cir. 1988), and *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946)); *accord J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981). Then, applying the Supreme Court's decision in *Hanover Shoe*, the court expressly rejected the same argument offered by Meta in its class certification opposition:

> As significantly, an antitrust defendant may not alter this well-settled measurement of damages by speculatively raising potential offsets, even when those offsets are directly related to the goods at issue.

*eBooks*, 2014 WL 1282293, at *17. As Judge Cote explained, Apple's proposed offsets were too speculative or attenuated to be factored into the damages calculations under *Hanover Shoe*:

> Applying these principles to each of the four offsets that Apple requests, it is readily apparent that none will create individualized issues that preclude class certification. Some of these offsets do not directly relate to the transactions at issue here; consequently, any imagined benefits are too remote to be considered in damages calculations. Others concern the relevant transactions but are based purely on conjecture about speculative happenings in the but-for-world. Pursuant to the sound policy taught by *Hanover Shoe*, such offsets must be rejected.

*Id.*, at *19 (rejecting promotion of self-publishing; lower prices during the Class period; speculation that some consumers may not have purchased absent the conduct; and the elimination of release windows for books as "offsets" that must be considered as part of injury and damages analysis). Meta's speculation here is far worse than what Apple offered in *eBooks*. Meta states, without support, that its ads improved as a result of its monopoly-maintaining conduct, so, Meta's argument goes, Advertiser Class members must have received some unidentified benefits. That is not sufficient to

12

**FILED UNDER SEAL**

1    call into doubt Advertisers' proof on injury and damages.  The issue is not close.  *See id.*, at *20

2    ("Legally, again, *Hanover Shoe* bars an offset argument rooted in rank speculation about the but-for

3    world.  Because of Apple's conduct, there is no way to know whether a given title would or would

4    not have been 'windowed' and whether a given purchaser of its e-book would or would not have

5    waited through the 'windowing' period or purchased a hardcover edition.  Furthermore, Apple may

6    not avoid liability for overcharging a customer by speculating that that customer may have been better

7    off paying the overcharge than being unable to purchase the good at all.").

8    **III.    ADVERTISERS' PROPOSED CLASS REPRESENTATIVES ARE BOTH TYPICAL
         AND ADEQUATE**

9

10            Rule 23(a)(3)'s typicality requirement is "permissive."  *In re Infineon Techs. AG Sec. Litig.*,

11   266 F.R.D. 386, 393 (N.D. Cal. 2009).  "In determining whether typicality is met, the focus should

12   be on the defendants' conduct and plaintiffs' legal theory, not the injury caused to the plaintiff."

13   *Miletak v. Allstate Ins. Co.*, No. 06-03778-JW, 2010 WL 809579, at *11 (N.D. Cal. Mar. 5, 2010)

14   (cleaned up).  In this case, each proposed Class Representative displayed an understanding of the

15   case, the injuries caused to the Advertiser Class, and a willingness to represent it, which is more than

16   what is required:

17       • Mark Young                                                    (Ex. 12 at 84:23), and

18                                                                       (*id.* at 273:21-25),
                                                                         *See, e.g., id.*

19       at 90:20-22                                           : 132:8-11 (

20

21                                                             *Id.* at 201:17-22.

22       • Katherine Looper

23

24                                 (*id.* at 179:8-11),                              *See,*

25       *e.g., id.* at 99-100

26

27                                         *Id.* at 173-74

28

**FILED UNDER SEAL**

- Mark Berney, individually and as the principal of 406 Property Services, PLLC, ████████████████████████████████ (Ex. 14 at 96:3-5), ████████████████████████████████ *Id*. at 143:5-9. ████████ *Id*. at 73:25-74:3. ████████████ *Id*. at 75:3-5.

- Likewise, Jessyca Frederick, individually and on behalf of her company Affilious, Inc., ████████████████ (Ex. 15 at 17:11-13), ████████████ *Id*. at 17:18-19. ████████ (*id*. at 45:24-46:1) ████████ *Id*. at 46:4-5.

Faced with these proposed Class Representatives, Meta harps on the size and sophistication levels of some ad buyers in the Advertiser Class. Yet the typicality requirement does not mandate that class representatives be typical of all ad buyers, but instead focuses on whether they suffered the same or similar injury as other class members. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, the facts support this conclusion: ████████████████████ ████████████████████████████████████████. *See* PALM-014347024, PALM-017052724 (U.S. advertiser sample data produced by Meta). And Meta's argument regarding varying sophistication has been flatly rejected, including by this Court. In *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022), this Court faced similar arguments on typicality and adequacy from Meta, including reliance on the same case, *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012). The Court stated that Meta overread the *PPC* case, especially considering it did ultimately find typicality, and stated: "It may be that class members differ in advertising budgets and scope of purchases, as Meta suggests, but Meta has not shown that these differences defeat typicality or the named plaintiffs' ability to adequately represent all class members." *DZ Rsrv.*, 2022 WL 912890, at *4; *see also Ewert v. eBay, Inc.*, No. C-07-02198-RMW, 2010 WL 4269259, at *3-*4 (N.D. Cal. Oct. 25, 2010)

**FILED UNDER SEAL**

1   (rejecting varying sophistication argument).   Here too, Meta has not demonstrated any serious

2   challenge to typicality or adequacy - as none exist.

3   **IV.   META'S "INDIRECT PURCHASER" ARGUMENT IS MERITLESS**

4   Meta offers a one-paragraph, conclusory argument that the Class should not be certified

5   because it may include both direct and indirect purchasers, the latter of which Meta claims would lack

6   standing.   This issue is entirely manufactured.   Direct purchasers are "those who are the immediate

7   buyers from the alleged antitrust violators," whereas indirect purchasers are "two or more steps

8   removed from the antitrust violator in a distribution chain."   *Apple Inc. v. Pepper*, _U.S._, 139 S. Ct.

9   1514, 1521 (2019) (cleaned up).   The proposed class definition encompasses only persons "who

10  purchased advertising ***from*** Meta," (Notice of Mot.), the natural reading of which does not include

11  purchasers "two or more steps removed" from Meta.   And indeed, courts have certified similarly

12  defined classes without issue.   *See, e.g.*, *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 647 (N.D.

13  Cal. 2007) (certifying class of "[a]ll persons who purchased in the United States from [defendants]").

14  Should the Court nonetheless find the proposed Class definition insufficiently precise to encompass

15  only direct purchasers, the remedy is straightforward: the Court can revise the Class definition to only

16  persons "who purchased advertising ***directly*** from Meta."   *See Olean*, 31 F.4th at 669 n.14 ("[T]he

17  problem of a potentially over-inclusive class can and often should be solved by refining the class

18  definition rather than by flatly denying class certification on that basis.") (cleaned up).

19                                        **CONCLUSION**

20  The Court should grant Advertisers' motion for class certification and certify the proposed

21  Advertiser Class.

22

23

24

25

26

27

28

**FILED UNDER SEAL**

Dated: November 3, 2023

**BATHAEE DUNNE LLP**

By:  */s/ Yavar Bathaee*
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com
Adam Ernette (*pro hac vice*)
aernette@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Allison Watson Cross (CA 328596)
across@bathaeedunne.com
3420 Bristol St, Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser Classes*


**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**

By:  */s/ Amanda F. Lawrence*
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
*Patrick J. McGahan (pro hac vice)*
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444


**LEVIN SEDRAN & BERMAN LLP**

Keith J. Verrier (*pro hac vice*)
kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Tel.: (215) 592-1500


*Members of Executive Committee for the Advertiser Classes*


**AHDOOT & WOLFSON, PC**

Tina Wolfson (CA 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (CA 223242)
tmaya@ahdootwolfson.com
Henry J. Kelson (*pro hac vice*)
hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111

**FILED UNDER SEAL**

## **FILER ATTESTATION**

I am the ECF user who is filing this document.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.


Dated: November 3, 2023                    By:    */s/Amanda F. Lawrence*
                                                     Amanda F. Lawrence


## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I caused a true and correct copy of the foregoing document to be served by electronic mail on all counsel of record.


Dated: November 3, 2023                    By:    */s/Amanda F. Lawrence*
                                                     Amanda F. Lawrence