**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
 yavar@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
 alawrence@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
(860) 537-5537

*Interim Co-Lead Advertiser Class Counsel*

[Additional counsel listed on signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant Meta Platforms, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**OMNIBUS MOTION TO SEAL MATERIALS SUBMITTED IN CONNECTION WITH THE CLASS CERTIFICATION AND *DAUBERT* BRIEFING**<br><br>Judge: Hon. James Donato |

**JOINT STATEMENT**

Pursuant to the Court's September 20, 2023 Order granting the parties' stipulation to modify sealing procedures, Dkt. No. 656, User Plaintiffs, Advertiser Plaintiffs, and Meta Platforms, Inc. respectfully submit this omnibus motion to seal certain portions of the Parties' class certification, *Daubert* briefing, and supporting documents, as set forth herein and in the supporting declarations. This omnibus motion is submitted on behalf of all Parties for the purpose of judicial administrative convenience and clarity. The Parties take no position on each other's requests.

User and Advertiser Plaintiffs filed motions to certify their respective classes on September 15, 2023. Dkt. Nos. 642-643, 645, 648. Meta opposed those motions on October 13, 2023. Dkt. Nos. 669-672. User and Advertiser Plaintiffs filed replies in support on November 3, 2023. Dkt. Nos. 688-689, 696, 698. Advertiser Plaintiffs filed a corrected reply on November 4, 2023. Dkt. Nos. 699-700.

Concurrently, Users and Advertisers moved to exclude the respective class certification opinions of Meta's expert, Catherine Tucker. Dkt. Nos. 649 (Users); 659-660 (Advertisers). Meta opposed both motions to exclude Tucker's testimony. Dkt. Nos. 663-664 (Users); 675-676 (Advertisers). Advertisers also moved to exclude the testimony of Meta's expert, Yael Hochberg. Dkt. Nos. 657-658. Meta opposed the motion to exclude the testimony of Hochberg. Dkt. Nos. 677-678. Users and Advertisers filed replies in support of their motions to exclude Tucker (Dkt. Nos. 681-682, 697), and Advertisers filed a reply in support of their motion to exclude Hochberg (Dkt. Nos. 690-691).

Meta moved to exclude the testimony of Advertisers' experts Scott Fasser and Joshua Gans (Dkt. Nos. 644, 646-647), Kevin Kreitzman and Michael A. Williams (Dkt. Nos. 661-661), and Users' expert, Nicholas Economides (Dkt. Nos. 650-655). Advertisers filed their opposition to the motion to exclude Scott Fasser and Joshua Gans (Dkt. Nos. 665-668) as well as for Kevin Kreitzman and Michael Williams (Dkt. Nos. 679-680). Users opposed the motion to exclude Economides. (Dkt. Nos. 673-674). Meta filed a reply in support of its motions to exclude Fasser

and Gans (Dkt. Nos. 683-684), Kreitzman and Williams (Dkt. Nos. 685-686, 692), and Economides (Dkt. Nos. 694-695).

The Parties submit this Motion, and its accompanying declarations, in accordance with this Court's Order. Documents subject to sealing requests in this Motion by any party have been filed under seal, with highlighting reflecting the sealing positions of Meta (in yellow), Plaintiffs (in blue), and non-parties (in green). Following the Court's resolution of this Motion, the parties will file public versions of the class certification and *Daubert* briefing with any appropriate redactions consistent with the Court's ruling.

## META'S STATEMENT

### I. REQUEST FOR RELIEF

Meta respectfully requests that the Court seal seven categories of non-public information: (1) employee identifying information, including email addresses and phone numbers; (2) business dealings with third parties, including details of negotiation strategies or specific deal terms; (3) confidential financial data or information; (4) confidential pricing data or information; (5) descriptions of technical functionality of products and systems; (6) internal research or analysis on user, transaction, or app performance, including proprietary methods for conducting that research or analysis; and (7) confidential business strategies, including internal analyses or discussions of in-development or unreleased products, features, or future plans.  Meta's proposed redactions are narrowly tailored to cover only documents or portions of documents falling within these seven categories that courts regularly recognize as sealable material.  The specific items to be sealed, and associated reasons for sealing, are listed in the Declaration of Amrish Acharya.

If the Court denies this sealing motion, in whole or in part, Meta respectfully requests that the Court delay the effect of such order for fourteen (14) days to allow time for affected parties to make appropriate plans (including alerting impacted non-parties), bring potential issues to the Court's attention, or pursue appropriate relief if necessary. After all, "[o]nce information is published, it cannot be made secret again," *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir.

2008), so this measure will serve as an extra safeguard to ensure that genuinely sealable material does not inadvertently spill into the public record and cause irreparable harm.

## II. LEGAL STANDARD

Courts recognize a "strong presumption in favor of access to court records," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), to "maintain[] confidence in the fair and impartial administration of justice, and [to] protect[] the integrity and independence of the courts." *Finjan LLC v. Palo Alto Networks, Inc.*, 2023 WL 5211321, at *1 (N.D. Cal. Aug. 14, 2023) (Donato, J.). The strong presumption is not, however, absolute; "[i]n limited circumstances, there may be grounds for curtailing public access." *Id.* A party seeking to overcome the presumption in favor of access for dispositive motions must "'articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal citation omitted). A party must also provide "specific, individualized reasons for the sealing." *Johnstech Int'l Corp. v. JF Microtech. SDN BHD*, 2016 WL 4091388, at *1 (N.D. Cal. Aug. 2, 2016) (Donato, J.).

The Ninth Circuit has also "carved out an exception" for sealed materials attached to non-dispositive motions, such as *Daubert* motions, and other materials that are only "tangentially related to the merits of the case." *Ctr. For Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1097, 1102 (9th Cir. 2016); *DZ Reserve v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, Dkt. No. 350 at 1 (N.D. Cal. Dec. 3, 2021) (Donato, J.) ("motion for class certification and various motions to exclude expert witnesses … are not dispositive proceedings"). In those circumstances, the parties must make only a "particularized showing of good cause," *Finjan*, 203 WL 5211321, at *1, as the "public has less of a need for access to court records attached only to non-dispositive motions," and the "public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force." *Kamakana*, 447 F.3d at 1179-80. The Local Rules also require that sealing requests must be "narrowly tailored to seal only the sealable material." Civil L.R. 79-5(c)(3).

### III. ARGUMENT

Meta seeks to seal documents or portions of documents falling into seven categories of information that have "traditionally been kept secret for important policy reasons." *Kamakana*, 447 F.3d at 1185 (internal citation omitted); *see also In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing competitive business information is appropriate as it "prevent[s] competitors from gaining insight into the parties' business model and strategy"). For each category, Meta supports its argument with a declaration attesting that the "the precise information at issue is confidential and not publicly known, and identifying the competitive harm that would likely flow from public disclosure of that precise information." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 587 (N.D. Cal. 2020). Meta's requests are "narrowly tailored to seek sealing only of sealable materials," Civil L.R. 79-5(b), and readily establish that the relevant documents, or portions thereof, are sealable.

**A.   Employee Identifying Information, Including Email Address and Phone Numbers**

The Court should grant Meta's request to seal portions of documents revealing the email addresses or phone numbers of current or former Meta employees. These current or former employees have a legitimate, legally recognized privacy interest in protecting their contact information from public disclosure. If their contact information were to be publicly disclosed, they may be subject to "annoyance," "oppression, or undue burden." Fed. R. Civ. P. 26(c). For example, given the current media attention on Meta, they may receive unsolicited emails and phone calls from the press or members of the general public, which could rise to the level of threats or harassment.

Recognizing employees' right to privacy, courts routinely seal such information, including this Court in this case. *See* Dkt. No. 344. For instance, in *In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700749 (S.D. Cal. July 27, 2021), the court found that there was "good cause to seal the [documents] to 'protect the rights of privacy' of [former employees], and to prevent the 'misuse' of this identifying information to harass the former employees." *Id.* at *8 (internal citation

omitted).  The court noted that "[r]equests to seal personal information are often granted to protect an individual's privacy and prevent exposure to harm" and that the court had "previously found the same information sealable under the stricter 'compelling reasons' standard for these very reasons." *Id.* (sealing employee addresses).  Similarly, in *Snapkeys Ltd. v. Google LLC*, 2021 WL 1951250 (N.D. Cal. May 14, 2021), the court found the stricter "compelling reasons" standard satisfied and sealed "personally identifiable information," including email addresses and phone numbers of current and former employees. *Id.* at *3 (collecting cases holding similarly).

### B. Business Dealings with Third Parties, Including Details of Negotiation Strategies or Specific Deal Terms

The Court should grant Meta's request to maintain under seal documents or portions of documents that detail sensitive information about its dealings with third parties, including details of negotiation strategies or specific deal terms, disclosure of which will harm Meta's business relationships with those parties and cause competitive harm to Meta.  Protection from disclosure is proper because this confidential information is commercially sensitive and can be exploited by other third parties to improve their negotiating position with Meta.  This information has never been publicly disclosed and Meta treats this information as strictly confidential.  Meta has proposed limited redactions to protect from disclosure the non-public details of this information, to save it from competitive disadvantage and the possibility that bad actors could use this information for an improper purpose.  On this basis, courts—including this Court in this case, *see* Dkt. No. 344—have sealed this type of confidential information. *See, e.g.*, *DZ Reserve*, No. 3:18-cv-04978-JD, Dkt. No. 350 at 1 (sealing information related to Meta's "business dealings with third parties"); *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 2020 WL 1492692, at *2 (Mar. 27, 2020) (Donato, J.) (granting request to seal a party's "highly negotiated agreement" with a third party because "confidential commercial agreements" can constitute sealable "confidential commercial information"); *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2019 WL 3413253, at *3 (N.D. Cal. July 29, 2019) (granting motion to seal information regarding confidential contractual agreements); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 984121, at *3

No. 3:20-cv-08570-JD                                  5                    OMNIBUS MOTION TO SEAL MATERIALS
                                                                             SUBMITTED IN CONNECTION WITH THE
                                                                             CLASS CERTIFICATION AND *DAUBERT* BRIEFING

1  (N.D. Cal. Mar. 4, 2015) (protecting from disclosure business dealing with third parties, including
2  consulting and license agreements between third party consultant and defendant); *Nicolosi*
3  *Distrib., Inc. v. Finishmaster, Inc.*, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28, 2018) (granting
4  motion to seal negotiation practices with customers).

### C. Confidential Financial Data or Information

6  The Court should grant Meta's request to maintain under seal documents or portions of
7  documents that contain confidential financial data or reveal confidential information about Meta's
8  finances, including advertising spend by advertisers on Meta's ad products, predicted size of
9  revenue streams, revenue analyses, and expense information. Confidential financial data or
10 information, including revenue statements and sales information, are routinely sealed because their
11 disclosure may harm a party's competitive standing. This information has never been publicly
12 disclosed, and Meta treats this information as strictly confidential. Disclosure of this information
13 would influence the competitive decision-making and business strategies employed by Meta's
14 advertising competitors. Meta has proposed limited redactions to protect from disclosure the non-
15 public details of this information, to save it from competitive disadvantage and the possibility that
16 bad actors could use this information for an improper purpose. *See DZ Reserve*, No. 3:18-cv-
17 04878-JD, Dkt. No. 350 at 1 (sealing information related to Meta's "revenue streams");
18 *IntegrityMessageBoards.com v. Facebook, Inc.*, 2020 WL 6544411, at *12-13 (N.D. Cal. Nov. 6,
19 2020) (sealing documents concerning the size and relative significance of Meta's revenue streams
20 and finding that Meta's interest outweighs the public's interest in access because "the public does
21 not need [to] see the subject financial details to understand this action"); *Gearsource Holdings,*
22 *LLC v. Google LLC*, 2020 WL 3833258, at *15 (N.D. Cal. July 8, 2020) (sealing "detailed revenue,
23 expense, profit, and sales information associated with specific products … and calculations …
24 [made] based on these numbers"); *Philliben v. Uber Techs., Inc.*, 2016 WL 9185000, at *3 (N.D.
25 Cal. Apr. 15, 2016) (granting request to seal "information directly related to [a defendant's]
26 consumer base, its revenue and fee calculations" because it "consists of 'product-specific financial

1  and customer information that is valuable to [defendant's] business and could be used by
2  [defendant's] competitors to [defendant's] disadvantage").

3      **D.**    **Confidential Pricing Data or Information**

4      The Court should grant Meta's request to maintain under seal documents or portions of
5  documents that contain confidential pricing data or information, including non-public trade secret
6  information about the prices of its ad products and how those prices are or can be determined. This
7  information has never been publicly disclosed, and Meta treats this information as strictly
8  confidential. Disclosure of this information would influence the competitive decision-making and
9  business strategies employed by Meta's advertising competitors. Meta has proposed limited
10 redactions to protect from disclosure the non-public details of this information, to save it from
11 competitive disadvantage and the possibility that bad actors could use this information for an
12 improper purpose. Courts routinely seal confidential pricing information. *See, e.g.*, *DZ Reserve*,
13 No. 3:18-cv-04878-JD, Dkt. No. 350 at 1 (sealing Meta's "pricing information"); *Cal. Spine &*
14 *Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2021 WL 1146216, at *2-3 (N.D. Cal. Feb. 12,
15 2021) ("[C]ourts have found compelling reasons to seal pricing information where the disclosure
16 can harm a litigant's competitive standing."); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *4
17 (N.D. Cal. Dec. 20, 2016) (same); *Rodman v. Safeway Inc.*, 2014 WL 12787874, at *2 (N.D. Cal.
18 Aug. 22, 2014) (sealing "internal, nonpublic information discussing Safeway's pricing strategy,
19 business decisionmaking, and financial records, which would expose Safeway to competitive harm
20 if disclosed"); *LELO, Inc. v. Standard Innovation (US) Corp.*, 2014 WL 2879851, at *6 (N.D. Cal.
21 June 24, 2014) (Donato, J.) (sealing "confidential pricing information" in an exhibit).

22     **E.**    **Technical Functionality of Products and Systems**

23     The Court should grant Meta's request to seal documents or portions of documents
24 revealing the commercially sensitive technical functionalities of Meta's products or systems.
25 Much like the other materials that Meta seeks to seal, these technical functions have never been
26 publicly disclosed and Meta treats this information as strictly confidential. Disclosure of this
27 information would influence the competitive decision-making and business strategies employed
28

1  by Meta's advertising competitors. Meta has proposed limited redactions to protect from
2  disclosure the non-public details of these systems, to save it from competitive disadvantage and
3  the possibility that bad actors could use this information for an improper purpose. For example,
4  these materials discuss Meta's ad auction, ad targeting and delivery systems, or the data tables that
5  Meta uses to run those processes. The ad auction is a sophisticated mechanism and trade secret
6  that Meta has developed over several years, and it helps Meta distinguish its advertising products
7  from other advertising platforms by setting the pricing at which Meta is able to deliver its ads to
8  the users.

9  Courts regularly recognize that disclosure of trade secrets such as the functionality of
10 Meta's ad auction is a valid basis to maintain such materials under seal. *See DZ Reserve*, No. 3:18-
11 cv-04878-JD, Dkt. No. 350 at 1 (sealing information related to "technical processes and
12 functionalities of Meta's products and systems"); *dotStrategy Co. v. Facebook Inc.*, No. 3:20-cv-
13 00170-WHA, Dkt. No. 140 at 5 (N.D. Cal. June 10, 2021) (granting Meta's request to seal
14 documents that "contain specific information about its advertisers' billing preferences, and its
15 systems for preventing, detecting, and enforcing against abusive or fake accounts, including names
16 of data tables" because "[t]hat information qualifies for sealing" and "is not necessary for the
17 public to understand the case"); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2014 WL 6664621,
18 at *1 (N.D. Cal. Nov. 24, 2014) (granting request to seal "proprietary literature describing the
19 structure, configuration, and operation of the Sun Ethernet technology"); *Finjan, Inc. v. Cisco Sys.
20 Inc.*, 2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (granting a request to seal material that
21 "reveals the identification, organization, and/or operation of Cisco's proprietary products," which
22 competitors could "use[] to Cisco's disadvantage" by "map[ping] proprietary features of Cisco's
23 products"); *In re Google Inc. Gmail Litig.*, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013)
24 (sealing "specific descriptions of how Gmail operates," including "the structures that Google has
25 in place and the order in which emails go through these structures" because "if this information
26 were disclosed, competitors would be able to duplicate features of Gmail, which could cause
27 competitive harm to Google"); *Johnstech Int'l Corp.*, 2016 WL 4091388, at *4 (sealing
28

"proprietary … product design information, including product component features unique to the … product line"). This is particularly true where the confidential information at stake relates to "the specific ways that [Meta's products] operate[]" or "how users' interactions" with Meta's platforms affect Meta's business decisions, which, if revealed, would "cause competitive harm to [Meta]." *In re Google Inc. Gmail Litig.*, 2014 WL 10537440, at *4-5 (N.D. Cal. Aug. 6, 2014).

Meta's proposed redactions are also narrowly tailored and limited to "highly sensitive and confidential information related to the structure and operation of [Meta's] "internal systems." *Adtrader, Inc. v. Google LLC*, 2020 WL 6395441, at *2 (N.D. Cal. Feb. 25, 2020) (sealing materials submitted at class certification with sensitive and confidential information about the functionality of Google's systems for processing invalid activity or responding to fraud on its platforms, including internal strategic business decision and policy determinations and insights into Google's strategic priorities and planning decisions, and materials whose disclosure "absent context, … could cause harm by providing an incomplete and misleading picture of Google's internal decision making"). Access to this information could allow Meta's competitors to exploit details from the technical processes, functions, and analyses of Meta's advertising business to gain an unfair advantage and cause Meta's advertising business serious harm. And while conduct concerning Meta's advertising business is a core issue in this case, the minutiae of detail and technical functionalities that Meta proposes to keep under seal here are "not necessary for the public to understand the case" and the disputes between the parties. *dotStrategy Co.*, No. 3:20-cv-00170-WHA, Dkt. No. 140 at 5.

F. **Internal Research or Analyses on User, Transaction, or App Performance, Including Proprietary Methods for Conducting that Research or Analysis**

The Court should grant Meta's request to seal documents or portions of documents revealing Meta's internal research or analyses on user, transaction, or app performance, including proprietary methods for conducting that research or analysis. This data and research relate to Meta's internal evaluation of its users, transaction, and app performance data, which was obtained through Meta's proprietary, non-public methods and processes. This information about its users'

1  behavior is used by Meta it analyze its products and services, develop new products and services,
2  and anticipate changes in the markets for advertising and attention platforms.  Meta treats these
3  data and analyses as strictly confidential and has never allowed for their disclosure because, if
4  disclosed, such competitors could use such data to Meta's competitive disadvantage.

5  Courts routinely grant motions to seal product and customer-specific data and analyses
6  based on the likelihood that disclosure could cause competitive harm.  *See, e.g.*, *DZ Reserve*, No.
7  3:18-cv-04878-JD, Dkt. No. 350 at 1-2 (sealing information related to Meta's "internal analyses,
8  modeling, and assessments" and "consumer behavior information"); *Johnstech*, 2016 WL
9  4091388, at *2 (Donato, J.) (sealing "product-specific customer data that could be used to the
10 company's competitive disadvantage," including information about which customers were
11 targeted, the "specific amounts of [the company's] business attributable to [certain] customers,"
12 "nonpublic financial information . . . related to specific customers," and the percentage of business
13 attributable to certain customers); *Continental Auto. Sys., Inc. v. Avanci, LLC*, 2019 WL 6612012,
14 at *4 (N.D. Cal. Dec. 5, 2019) (sealing "number of customers using [a party's] products"); *Yan*
15 *Mei Zheng-Lawson v. Toyota Motor Corp.*, 2019 WL 3413253, at *2 (N.D. Cal. July 29, 2019)
16 (sealing "proprietary marketing strategies, training materials, and competitor analyses" and
17 "information derived from exclusive customer in-home interviews and confidential surveys");
18 *Calhoun v. Google LLC*, 2022 WL 3348583, at *1 (N.D. Cal. Aug. 12, 2022) (granting motion to
19 seal Google's "confidential and proprietary information regarding sensitive features of Google's
20 internal  systems and operations, including internal projects, data signals, and logs, and their
21 proprietary functionalities, that Google maintains as confidential in the ordinary course of its
22 business and is not generally known to the public or Google's competitors" because "[p]ublic
23 disclosure of such confidential and proprietary information could affect Google's competitive
24 standing as competitors may alter their systems and practices relating to competing products.");
25 *Rodman v. Safeway, Inc.*, 2013 WL 12320765, at *2 (N.D. Cal. Oct. 30, 2013) (finding sealable
26 "internal information not otherwise made available" regarding business "transaction and customer
27 data"); *Donoff v. Delta Air Lines, Inc.*, 2019 WL 2568020, at *1 (S.D. Fla. Mar. 14, 2019) (granting
28

motion to seal "internal spreadsheet that provides detailed data regarding customer usage of and sales achieved through various channels, including Delta's mobile app, website accessed via desktop computer vs. mobile phone, as well as the airline's stated goals for each business channel").

### G. Confidential Business Strategies, Including Internal Analyses or Discussions of In-Development or Unreleased Products, Features, or Future Plans

The Court should grant Meta's request to maintain under seal documents or portions of documents that detail Meta's confidential internal business strategies, including about internal analysis or in-development or unreleased products, features, or future plans.  This material includes, for example, Meta's internal summaries and discussions of its advertising platform and user-facing products and services.  These discussions reveal competitively sensitive information, including how advertisers use and value the advertising platform, how users interact with and value Meta's products and services, how those products and services operate, and Meta's consideration and implementation of potential and actual technological improvements.  These documents also include data, summaries, and analyses regarding Meta's in-development or unreleased user or advertising products, features, and future plans.  This information has never been publicly disclosed, and Meta treats this information as strictly confidential.

The disclosure of these materials to Meta's competitors, including other advertising or attention platforms, could cause substantial competitive harm to Meta.  If disclosed, Meta's competitors would receive unprecedented access to Meta's strategic decision-making, allowing competitors to piggy-back off the work that Meta has done or plans to do.  For example, competitors would be able to preemptively market themselves to advertisers and users to distinguish themselves based on the non-public information found in these documents.  This non-public information could also give other businesses a competitive advantage over Meta by allowing them to mimic Meta's future business plans.  Disclosure would also give potential partners unfair leverage in negotiating with Meta.

1    Sealing information concerning confidential business strategies is routinely permitted
2    because there are compelling reasons to keep from public disclosure "[s]ources of business
3    information that might harm a litigant's competitive strategy." *Music Grp. Macao Commercial*
4    *Offshore Ltd. v. Foote*, 2015 WL 3993147, at *1 (N.D. Cal. June 30, 2015) (quoting *Nixon v.*
5    *Warner Comm'cns, Inc.*, 435 U.S. 589, 597 (1978)).  Courts routinely seal documents that contain
6    "information about [a corporation's] business strategies and internal decision making, product
7    formulations, and confidential finances," because disclosure may cause competitive harm.  *Hadley*
8    *v. Kellogg Sales Co.*, 2018 WL 7814785, at *2 (N.D. Cal. Sep. 5, 2018) (sealing documents related
9    to class certification or *Daubert* motions); *see also DZ Reserve*, No. 3:18-cv-04878-JD, Dkt. No.
10   350 at 1 (sealing information related to Meta's "business strategies"); *Arista Networks, Inc. v.*
11   *Cisco Sys., Inc.*, 2017 WL 6043303, at *2 (N.D. Cal. Nov. 28, 2017) (sealing "confidential internal
12   business communication regarding an internal assessment of [a party's] products and [its]
13   development strategies" because "[d]isclosure would result in competitive harm"); *Pohly v.*
14   *Intuitive Surgical, Inc.*, 2017 WL 878019, at *2-3 (N.D. Cal. Mar. 6, 2017) (sealing information
15   regarding party's "quality improvement engineering processes" because "[the party's] competitors
16   could use this information to develop or improve its own products based upon [the party's]
17   research and development, testing, and refinements to the manufacturing process").

18   The recognized protection against disclosure of a corporation's confidential business
19   information is broad.  It extends to "confidential information regarding [a defendant's] products,
20   services, and business practices." *Ojmar US, LLC v. Sec. People, Inc.*, 2016 WL 6091543, at *2
21   (N.D. Cal. Oct. 19, 2016).  And a corporation's "significant interest" in preventing the release of
22   its confidential business information applies even where the "case [has] generated an extraordinary
23   amount of public interest." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1223-28 (Fed. Cir.
24   2013) (sealing market research reports and product-specific financial information, including price
25   levels for products and profitability analyses; and per-product revenues, pricings, and costs, that
26   competitors and suppliers could utilize during business negotiations, and explaining that public's
27   interest in the case did not create "legally cognizable interest in every document filed").  Such
28

1  materials are sealable under "either the 'good cause' or 'compelling reasons'" standard because
2  disclosure would result in use for an improper purpose. *Id.*; *see also Space Data Corp. v. X*, No.
3  16-cv-03260-BLF, 2017 WL 11503233, at *2 (N.D. Cal. Sept. 25, 2017) (sealing confidential
4  financial information, including plans for and timing of commercialization of products); *Algarin*
5  *v. Maybelline, LLC*, No. 12cv3000 AJB (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014)
6  (sealing confidential business material, marketing strategies, advertising data, and product
7  development plans in dispositive motion); *Rich v. Shrader*, No. 09cv652-AJB (BGS), 2013 WL
8  6028305, at *3-4 (S.D. Cal. Nov. 13, 2013) (sealing business documents, modeling, and financial
9  projections).

## PLAINTIFFS' STATEMENT

### I. REQUEST FOR RELIEF

Consumer Plaintiffs seek to seal a very limited amount of information in the transcripts of the named plaintiffs, and the deposition of Dr. Economides.

First, Consumer Plaintiffs seek limited sealing of certain pieces of personally identifiable information (PII) found in the transcripts of the depositions of the three named plaintiffs. The three transcripts are found at Exhibits 7-9 of the Declaration of Kevin Y. Teruya in Support of Consumer Plaintiffs' Reply in Further Support of Motion for Class Certification and Appointment of Class Counsel (ECF No. 696-12) and Exhibit 4 to the Declaration of Molly Jennings in Opposition to User Consumer Plaintiffs' Motion for Class Certification (ECF No. 670-5). The proposed redactions include social media handles, logins for websites, email addresses, and other information that, if public, could be used to harass the named plaintiffs or improperly gain personal information about them. *See* Declaration of Shana E. Scarlett in Support of Omnibus Motion to Seal Materials Submitted in Connection with the Class Certification and Daubert Briefing, filed concurrently herewith.

Second, Consumer Plaintiffs request the court seal a portion of the transcript of Dr. Nicholas Economides where defense counsel questioned Professor Economides regarding his personal and political opinions. The transcript is found at Exhibit 14 to the Declaration of Kevin

1  Y. Teruya in Support of Consumer Plaintiffs' Opposition to Facebook's Motion to Exclude
2  Testimony of Nicholas Economides. ECF 673-4. The material is irrelevant to the litigation and the
3  pending motion and should remain under seal.

| | |
|---|---|
| DATED:  November 21, 2023 | Respectfully submitted, |
| By: */s/ Shana E. Scarlett* <br> **HAGENS BERMAN SOBOL SHAPIRO LLP** <br> Shana E. Scarlett (Bar No. 217895) <br>   shanas@hbsslaw.com <br> 715 Hearst Avenue, Suite 202 <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br><br> Steve W. Berman (*pro hac vice*) <br> steve@hbsslaw.com <br> 1301 Second Avenue, Suite 2000 <br> Seattle, WA 98101 <br> Telephone: (206) 623-7292 <br><br> **LOCKRIDGE GRINDAL NAUEN P.L.L.P.** <br> W. Joseph Bruckner (*pro hac vice*) <br>   wjbruckner@locklaw.com <br> Robert K. Shelquist (*pro hac vice*) <br>   rkshelquist@locklaw.com <br> Brian D. Clark (*pro hac vice*) <br>   bdclark@locklaw.com <br> Rebecca A. Peterson (Bar No. 241858) <br>   rapeterson@locklaw.com <br> Arielle S. Wagner (*pro hac vice*) <br>   aswagner@locklaw.com <br> Kyle J. Pozan (admitted *pro hac vice*) <br>   kjpozan@locklaw.com <br> Laura M. Matson (admitted *pro hac vice*) <br>   lmmatson@locklaw.com <br> 100 Washington Avenue South, Suite 2200 <br> Minneapolis, MN 55401 <br> Telephone: (612) 339-6900 | By: */s/ Kevin Y. Teruya* <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> Kevin Y. Teruya (Bar No. 235916) <br>   kevinteruya@quinnemanuel.com <br> Adam B. Wolfson (Bar No. 262125) <br>   adamwolfson@quinnemanuel.com <br> Claire D. Hausman (Bar No. 282091) <br>   clairehausman@quinnemanuel.com <br> Brantley I. Pepperman (Bar No. 322057) <br>   brantleypepperman@quinnemanuel.com <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, CA 90017-2543 <br> (213) 443-3000 <br><br> Michelle Schmit <br>   michelleschmit@quinnemanuel.com <br> 191 N. Wacker Drive, Suite 2700 <br> Chicago, IL 60606 <br> Telephone: (312) 705-7400 <br><br> Manisha M. Sheth (admitted *pro hac vice*) <br>   manishasheth@quinnemanuel.com <br> 51 Madison Avenue, 22nd Floor <br> New York, New York 10010 <br> (212) 849-7000 <br><br> *Interim Counsel for the Consumer Class* |

By: */s/ Yavar Bathaee*
**BATHAEE DUNNE LLP**
Yavar Bathaee (Bar No. 282388)
  yavar@bathaeedunne.com
Andrew C. Wolinsky (*pro hac vice*)
  awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Telephone: (332) 322-8835

Brian J. Dunne (Bar No. 275689)
  bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Telephone: (512) 575-8848

**AHDOOT & WOLFSON, PC**
Tina Wolfson (Bar No. 174806)
  twolfson@ahdootwolfson.com
Robert Ahdoot (Bar No. 172098)
  rahdoot@ahdootwolfson.com
Theodore W. Maya (Bar No. 223242)
  tmaya@ahdootwolfson.com
Henry Kelston (*pro hac vice*)
  hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
 Telephone: (310) 474-9111

By: */s/ Amanda F. Lawrence*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
  alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537

Hal D. Cunningham (Bar No. 243048)
  hcunningham@scott-scott.com
Daniel J. Brockwell (Bar No. 335983)
  dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565

Patrick J. Rodriguez (pro hac vice)
  prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444

**LEVIN SEDRAN & BERMAN LLP**
Keith J. Verrier (*pro hac vice*)
  kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
  acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500

*Interim Counsel for the Advertiser Class*

|   |   |
|---|---|
| 1 | By: /s/ Sonal N. Mehta |
| 2 | SONAL N. MEHTA (SBN 222086) |
|   | Sonal.Mehta@wilmerhale.com |
| 3 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 4 | 2600 El Camino Real, Suite 400 |
|   | Palo Alto, California 94306 |
| 5 | Telephone: (650) 858-6000 |
| 6 | DAVID Z. GRINGER (*pro hac vice*) |
|   | David.Gringer@wilmerhale.com |
| 7 | ROSS E. FIRSENBAUM (*pro hac vice*) |
|   | Ross.Firsenbaum@wilmerhale.com |
| 8 | RYAN CHABOT (*pro hac vice*) |
|   | Ryan.Chabot@wilmerhale.com |
| 9 | PAUL VANDERSLICE (*pro hac vice*) |
|   | Paul.Vanderslice@wilmerhale.com |
| 10 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 11 | 7 World Trade Center |
|   | 250 Greenwich Street |
| 12 | New York, New York 10007 |
|   | Telephone: (212) 230-8800 |
| 13 |   |
| 14 | ARI HOLTZBLATT (*pro hac vice*) |
|   | Ari.Holtzblatt@wilmerhale.com |
| 15 | MOLLY M. JENNINGS (*pro hac vice*) |
|   | Molly.Jennings@wilmerhale.com |
| 16 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 17 | 2100 Pennsylvania Avenue NW |
|   | Washington, DC 20037 |
| 18 | Telephone: (202) 663-6000 |
| 19 | MICHAELA P. SEWALL (*pro hac vice*) |
|   | Michaela.Sewall@wilmerhale.com |
| 20 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 21 | 60 State Street |
|   | Boston, Massachusetts 02109 |
| 22 | Telephone: (617) 526-6000 |
| 23 | *Attorneys for Defendant Meta Platforms, Inc.* |

No. 3:20-cv-08570-JD                              17                       OMNIBUS MOTION TO SEAL MATERIALS
SUBMITTED IN CONNECTION WITH THE
CLASS CERTIFICATION AND *DAUBERT* BRIEFING

## SIGNATURE ATTESTATION

This document is being filed through the Electronic Case Filing (ECF) system by attorney Sonal N. Mehta. By her signature, Ms. Mehta attests that she has obtained concurrence in the filing of this document from the signatories.

By: /s/ Sonal N. Mehta
Sonal N. Mehta

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, and caused sealed attachments submitted herewith to be transmitted to counsel of record by email.

By: /s/ Sonal N. Mehta
Sonal N. Mehta