# Bathaee :: Dunne :: LLP

May 31, 2023                                                                                                    Via CM/ECF

Re:     *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

Advertiser Plaintiffs ("Advertisers") respectfully request that the Court enter an order compelling Mark Zuckerberg's deposition for an additional three hours. As set forth in this letter, Zuckerberg has unique, personal knowledge about issues pertinent to Advertisers' case. On March 17, 2023, the Court entered an order limiting Zuckerberg's deposition to three hours for both classes, and stated, "if plaintiffs have a good-faith basis for seeking additional time, they may advise the Court." Dkt. 477. On May 19, after deposing Zuckerberg for 90 minutes three days prior, Advertisers sent Meta a letter requesting additional time with Zuckerberg and setting forth the reasons why. The parties met and conferred on May 31 and reached impasse.

On May 16, 2023, Advertisers deposed Mark Zuckerberg for slightly under 90 minutes before Meta's counsel cut off questioning. *See* Zuckerberg Tr. 144:6-8. Most of this time was devoted to an attempt, frustrated by Meta's counsel, to elicit Zuckerberg's testimony on an anticompetitive—and potentially criminal[1]—"In-App Action Panel" (IAAP) program designed and executed at Meta between 2016 and 2019 at Zuckerberg's direct request. Specifically, in 2016, Meta's advertising hegemony was threatened by nascent rival Snapchat, which was aggressively expanding its advertising business ahead of a 2017 IPO. *See, e.g.*, PX 557 (PALM-014640328) at 4 (S. Sandberg: "Snapchat . . . [c]ame up in every ads meeting and every casual ads conversation" at 2016 Davos conference). To counteract this competitive threat, Zuckerberg obsessively sought to redesign Meta's products in a way that would—to use a Snap executive's testimony in this case—"cause advertisers to not have a clear narrative differentiating Snapchat from Facebook and Instagram." Levenson Dep. 50:12-22. However, Meta's efforts in this regard were blocked by a technical barrier: Snapchat's in-app analytics (the information about what specifically Snapchat users were doing, when, and how—the key to effectively stealing away the "secret sauce" behind Snapchat's engagement and differentiating features) were encrypted and sent to a secure analytics server, sc-analytics.appspot.com. As Zuckerberg put it in an email to three senior executives on June 9, 2016:

> -----Original Message-----
> From: Mark Zuckerberg
> Sent: Thursday, June 9, 2016 8:47 AM
> To: Javier Olivan <jolivan@fb.com>; Alex Schultz <aschultz@fb.com>
> Cc: Chris Cox <ccox@fb.com>
> Subject: Snapchat analytics
>
> Whenever someone asks a question about Snapchat, the answer is usually that because their traffic is encrypted we have no analytics about them.
>
> Given how quickly they're growing, it seems important to figure out a new way to get reliable analytics about them. Perhaps we need to do panels or write custom software. You should figure out how to do this.

*PX 2255 (PALM-016564834) at 3*

---

[1] It is Advertisers' position—backed up by voluminous evidentiary background and analysis, which Advertisers would welcome the opportunity to share with the Court should Meta dispute any aspect of Advertisers' contention—that Meta's IAAP program didn't just harm competition, but criminally violated 18 U.S.C. § 2511(1)(a) and (d) by intentionally intercepting SSL-protected analytics traffic addressed to secure Snapchat, YouTube, and Amazon servers.

**FILED UNDER SEAL**

Within hours of Zuckerberg's June 9, 2016 email, Meta's highest-level executives, including its now-COO and then-General Counsel, organized an "Onavo Research Taskforce" to find a "technical solution" to obtain and analyze Snapchat's encrypted analytics traffic for Meta's competitive gain. *See* PX 2255 at 1-3, PALM-011630850. This new IAAP project, termed "Ghostbusters" by an Onavo project manager, proposed incredibly aggressive technological measures—including intercepting and decrypting SSL-protected traffic from the Snapchat app— to answer a list of questions taken directly from Zuckerberg's June 2016 emails. *See* PALM-011630850, at slides 4-11 (proposed technology, including "incentivized SSL bump"), 14 ("Ghostbusters"), 22 ("participation rate questions from Zuck below").

In July 2016, the Onavo team's proposed solution was presented to senior management, including now-COO Javier Olivan: Facebook developed "'kits' that can be installed on iOS and Android that intercept traffic for specific sub-domains, allowing us to read what would otherwise be encrypted traffic so we can measure in-app usage . . . . This is a 'man-in-the-middle' approach." PX 414 (PALM-010629831) at 1. In November 2016, the head of the Onavo IAAP team created a "note & deck to Mark" explaining to Zuckerberg that "[w]e now have the capability to measure detailed in-app activity," which came from "parsing snapchat analytics collected from incentivized participants in Onavo's research program." PALM-016563837, at slide 1; *see also* PALM-016453836 (email attaching presentation). Over the next two-and-a-half years, Facebook expanded its IAAP program to also intercept, decrypt, and analyze encrypted analytics from YouTube and Amazon. *See* PX 2256 (PALM-012863799) at 2-3.

On January 30, 2019, in response to an enforcement action by Apple implicating the above conduct, Meta engaged in a companywide fire drill to analyze and describe its IAAP program to Mark Zuckerberg. Dozens of documents from across the company reveal that Zuckerberg had spoken to the company's head of security, its then-CTO, and others about the risks and rewards of the IAAP program—which involved the interception and decryption of secure analytics traffic from Snapchat, YouTube, and Amazon for competitive reasons—and would personally make a decision about whether to continue it. *See* PALM-012927762 (Jan. 30, 2019 chat: "We are trying to reach decision with Mark ASAP to stop doing SSL decryption in the Android Facebook Research app (@Javier Olivan)."); PALM-012927513 (Jan. 30, 2019 chat between J. Parikh and then-head of security Pedro Canahuati: "We are talking to mark about stopping this panel and research on google android as well."); PALM-012154501 (Jan. 30, 2019: "Framing for MZ . . . Should we STOP doing SSL decryption in the Android Facebook Research app, and lose the ability to see in-app actions?"); PALM-016924589 (Jan. 30, 2019: "We are waiting for guidance from Mark about removing SSL decryption . . . . We need to give Mark more information"). A detailed document—a four-page long "IAAP Technical Analysis" prepared by Meta executives, Onavo team members, and **forty-one lawyers**—was created laying out the history and technical details of the IAAP program in response to "Mark's questions, so that everything that goes to Mark is in one place." PALM-016606121, at 6125; *see generally* PX 2256 (IAAP Technical Analysis). And an email was sent directly to Zuckerberg expressly saying *his* "DECISION [was] NEEDED" regarding, among other things, whether Meta "[s]hould . . . STOP doing SSL decryption . . . and lose the ability to see in-app actions?" PALM-016895582, at 5584-85.

*PALM-016895582 at 5584-85 (left); PX 2256 at 4 (right)*

However, when Advertiser counsel sought to examine Zuckerberg on some of these documents—including Zuckerberg's email initiating the IAAP program and the "IAAP Technical Analysis" (PX 2256) prepared specifically to brief Zuckerberg on the program—Meta's counsel stepped in. From the first introduction of the technical analysis document, Meta's counsel raised a "standing objection to the extent that Mr. Zuckerberg is not on this document," Zuckerberg Tr. 108:18-21, and the witness took this coaching to avoid answering questions about PX 2256 (even though evidence shows it was prepared for him, and even included "mark's questions"), *id.* at 116:16-25 ("I haven't actually read most of the document because you just directed me to a specific paragraph we're now well beyond. But my understanding from my counsel's objection is that I wasn't included on this document, so I don't believe I've ever seen this until now. So I'm not sure why you would infer from the existence of someone in the company giving some analysis that I would necessarily be aware of it."). Zuckerberg later complained on the record about not "ha[ving] time to read the whole thing" in reference to PX 2256, *id.* at 118:10-15, and was combative about a list of ***his own questions*** in PX 2256, repeating his lawyer's intonation that Zuckerberg "wasn't on this document," *id.* at 125:6-9. Zuckerberg stated, with respect to two of the three exhibits Advertisers had time to introduce, that he "wouldn't be surprised if with more time going through this email and then the one that you showed me after," he might have substantive testimony on the documents' contents. *Id.* at 131:15-25.

Advertisers did not have adequate time to examine Zuckerberg on important documents and subjects about which he plainly had (and has) personal, unique knowledge.[2] And in what time Advertisers did have—and the documents that were introduced to Zuckerberg within it—Meta's counsel interfered with the witness's testimony, including repeated coaching with baseless protective order objections. Advertisers respectfully request three hours of additional deposition time with Mark Zuckerberg—which can be done remotely if that is Meta's wish.

---

[2] As Meta correctly points out in its fictional, race-to-the-courthouse motion for a protective order, Dkt. 564—filed eleven minutes after a meet-and-confer on Advertisers' letter motion at which Meta never once mentioned it would be seeking affirmative relief—Advertisers do indeed have remaining questions regarding, for example, Zuckerberg's direct involvement in an anticompetitive deal with Netflix/Reed Hastings and in Meta's market division agreement with Google, beyond Advertisers' additional questions about Zuckerberg's personal involvement in his company's multiyear scheme to wiretap competitors.

3

**FILED UNDER SEAL**

Respectfully submitted,

By: *Brian J. Dunne*
*On Behalf of Interim Co-Lead Counsel for the Advertiser Classes*

| | |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
| */s/ Amanda F. Lawrence* | */s/ Yavar Bathaee* |
| Amanda F. Lawrence (*pro hac vice*) | Yavar Bathaee (CA 282388) |
| alawrence@scott-scott.com | yavar@bathaeedunne.com |
| Patrick J. McGahan (*pro hac vice*) | Andrew C. Wolinsky (CA 345965) |
| pmcgahan@scott-scott.com | awolinsky@bathaeedunne.com |
| Michael P. Srodoski (*pro hac vice*) | Adam Ernette (*pro hac vice*) |
| msrodoski@scott-scott.com | aernette@bathaeedunne.com |
| 156 South Main Street, P.O. Box 192 | Priscilla Ghita (*pro hac vice*) |
| Colchester, CT 06415 | pghita@bathaeedunne.com |
| Tel.: (860) 537-5537 | Chang Hahn (*pro hac vice*) |
| | chahn@bathaeedunne.com |
| | 445 Park Avenue, 9th Floor |
| | New York, NY 10022 |
| | (332) 322-8835 |
| Patrick J. Coughlin (CA 111070) | |
| pcoughlin@scott-scott.com | Brian J. Dunne (CA 275689) |
| Carmen A. Medici (CA 248417) | bdunne@bathaeedunne.com |
| cmedici@scott-scott.com | Edward M. Grauman (*pro hac vice*) |
| Hal D. Cunningham (CA 243048) | egrauman@bathaeedunne.com |
| hcunningham@scott-scott.com | Andrew M. Williamson (CA 344695) |
| Daniel J. Brockwell (CA 335983) | awilliamson@bathaeedunne.com |
| dbrockwell@scott-scott.com | 901 S. MoPac Expressway |
| 600 W. Broadway, Suite 3300 | Barton Oaks Plaza I, Suite 300 |
| San Diego, CA 92101 | Austin, TX 78746 |
| Tel.: (619) 233-4565 | (213) 462-2772 |
| | |
| Patrick J. Rodriguez (*pro hac vice*) | Allison Watson Cross (CA 328596) |
| prodriguez@scott-scott.com | across@bathaeedunne.com |
| 230 Park Avenue, 17th Floor | 3420 Bristol St., Ste 600 |
| New York, NY 10169 | Costa Mesa, CA 92626-7133 |
| Tel.: (212) 223-6444 | |
| | *Interim Co-Lead Counsel for the Advertiser Classes* |

5                                                                                          **FILED UNDER SEAL**

# **FILER ATTESTATION**

    I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: May 31, 2023By:*/s/ Brian J. Dunne*
Brian J. Dunne