# Bathaee :: Dunne :: LLP

April 13, 2023                                                                                                               Via CM/ECF

Re:   <u>Klein v. Meta Platforms, Inc.</u>, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

  On February 9, 2023, near the beginning of fact depositions in this case, Advertiser Plaintiffs ("Advertisers") took the Rule 30(b)(6) deposition of defendant Meta Platforms, Inc. ("Meta") on a single topic addressing Meta's AI/ML systems used in ad ranking and delivery. Meta's designee was unprepared (indeed, by his own admission)—a problem that has become even more glaring as fact depositions have proceeded since. However, Meta has refused Advertisers' requests to return the deposition time wasted by Meta's unprepared deponent and to produce a properly prepared designee. Advertisers now respectfully request this relief from the Court. The parties met and conferred on March 16, 2023, and are at impasse.

  This is a monopoly maintenance case brought on behalf of people and companies that bought advertising on Meta properties from December 2016 onwards. As Advertisers' operative First Amended Complaint, Dkt. 391 ("FAC") explains, and as fact discovery in this case is confirming, Meta's ad business dominates a distinct submarket of online advertising that uses a particular type of data—"social data" generated within an identity-linked, signal-rich online environment—and powerful machine learning ("ML")/artificial intelligence ("AI") systems designed specifically for this data, to offer a unique product: personalized online advertising tailored to a particular, identified person. *See* FAC ¶¶ 782-88, 804-13. Meta's multibillion dollar online advertising business is built on providing this capability as a distinct value proposition, one not generally available from other online platforms (let alone offline ads). A powerful barrier to entry surrounding Meta's advertising business has allowed Meta to increase prices without losing market share nearly every year since the company began selling advertising.

  Meta's journey has not been without speedbumps, however. For example, after Meta scuttled its public developer Platform in 2015, restricting access to a handful of whitelisted developers, it was faced with a paucity of "signals"—data used as inputs to targeting and ranking models—needed to train its ML/AI systems that personalize ads and other content for users. FAC ¶¶ 316-33. This led to a slowdown in ad pricing growth by Q4 2015/Q1 2016, PALM-016960475, and a companywide reckoning about how to maintain Meta's market dominance, including against then-nascent social advertising entrant Snapchat, *see, e.g.*, PALM-014640328; PALM-004974882. Advertisers' case stems from what happened next. Beginning in 2016, Meta made a companywide transition to a new generation of AI systems, called deep neural networks, that allowed Meta to make highly accurate predictions about users at scale. Cox Rough Tr. 107:5-20, 108:5-111:12; PALM-014243279, at 4. To obtain signals for these new AI systems, and to maintain Meta's data targeting barrier to entry against new entrants like Snapchat, Meta undertook an aggressive campaign of exclusionary conduct. For example, to obtain critical eCommerce signals from longtime Meta advertiser eBay—which was threatening to prevent its signals' use in Meta's AI models—Meta agreed to weaken its directly competitive Marketplace product in early 2017. *See* FAC ¶¶ 334-78, 429-72. Between late 2017 and early 2018, after Meta's direct competition with Netflix through its video streaming product Watch threatened Meta's special relationship with one of its most important signal sources, Meta agreed—apparently at the apex level—to withdraw from Netflix's streaming market in exchange for continuing and expanded signals access. *See* FAC ¶¶ 473-536; PALM-013469126; PALM-005487488; PALM-0998848850. In late 2019, Meta began integrating data features (engineered data used in AI systems) from across its lines of

business into a central repository called F3, FAC ¶¶ 728-748, while simultaneously telling the FTC there was no new integration of its products and "nothing left to divest" in the FTC's then-ongoing antitrust investigation. *See* Parikh Tr. 151:10-13; PALM-014317772. Like clockwork, Meta's ad prices started charging back up in response to Meta's exclusionary efforts. From 2016 to 2018, Meta's North America ad prices rose 60% on a cost per mille (cost per thousand impressions) basis, from $4.95 in 2016, to $6.54 in 2017, to $7.91 in 2018. PALM-014094553. Meta's North American ad prices rose by a near-identical amount, 59%, on a cost per click basis over that same period. *Id.* (from $0.22 in 2016 to $0.35 in 2018). Meta's market share remained consistent despite these massive price increases. Internally, Meta attributed its price increases to a so-called "revenue/supply gap"—a hallmark of monopolistic economics—and specifically referenced "neural nets," but not competitors, in discussing its price history and forecasts. PALM-006832735.

In short, Meta's AI/ML systems are central to Advertisers' case. They lie at the heart of market definition, of barriers to entry, of Meta's market power, and indeed of the supracompetitive price increases suffered by the Advertiser Plaintiffs since December 2016. Moreover, Advertisers will prove at trial, among other things, that Meta (a) changed the data sources for its neural network models as part of agreements with eBay and with Netflix, including in ways that were technically and economically irrational but for the anticompetitive effect of the agreements, FAC ¶¶ 468-72, 515-536; (b) gathered and integrated signals/features/user data from across its business, including from WhatsApp and Instagram, into F3, all while contemporaneously misleading the FTC to avoid divestiture, *id.* ¶¶ 728-42; 750-64; and (c) used sensitive data deceptively taken from users' mobile devices to validate Meta's offsite identity-matching AI/ML systems, *id.* ¶¶ 537-42. Given the foregoing, to streamline discovery and reduce the need for 30(b)(1) depositions covering Meta's AI/ML systems, Advertisers sought a 30(b)(6) deposition on the following topic: "The artificial intelligence and machine learning algorithms, software, and systems used in connection with Meta's ad and content targeting during the Relevant Period, including the data sources used by them." In a January 19, 2023 letter sent after Advertisers served the above 30(b)(6) topic, Meta wrote that it disagreed that "content targeting" was within an appropriate scope of deposition, but agreed to designee prepare to testify "about the types of machine learning . . . Meta has used since April 30, 2015 to deliver rank advertisements, including generally the types of algorithms, software, systems and source data used in connection with that machine learning."

On February 9, 2023, Meta produced Santanu Kolay as its 30(b)(6) representative for Advertisers' AI/ML topic. Over the course of a frustrating 6+ hour deposition, Kolay could not provide any specific testimony on any aspect of the noticed topic—nor even Meta's narrowed proposal as to what its designee would be reasonably prepared to cover. For example, Kolay could not identify the specific neural network models used by Meta's advertising systems, *see* Kolay Tr. 194:9-12[1] ("I would not be able to give you names of specific models"), nor could he provide information about what "features" and data were used by Meta's ad ranking systems, other than to state that they use some combination of "first and third-party data," *id.* at 196:7-197:1; *see also id.* at 190:11-15 ("[W]e did not discuss exactly what specific tables, what are the feature names."); 91:15-21 (data used to train models in first half of 2017 "not something we discussed in the preparation and is not something my team works on"); 96:2-12 (same for logs of data from that

---

[1] Given space constraints, Advertisers have been minimalistic in their quotations throughout this letter brief. Advertisers can and will provide any document cited in this motion, including relevant excerpts (or the entirety, should the Court so desire it) of Mr. Kolay's deposition transcript, to the Court as exhibits should the Court wish a more detailed evidentiary record for this motion.

period); 123:17-124:10 (no knowledge of data used to train models in 2018); 190:5-19 (same for 2019); 192:14-193:9 (no knowledge about metadata for features used to train models from 2017-2020—data that Meta's head of Products later testified was used to train AI/ML models and was readily available upon request, Cox Rough Tr. 127:5-128:9). Kolay could not provide any specifics on how AI/ML models were trained, including the hyperparameters used for them. *See* Kolay Tr. 27:4-6 ("I cannot tell you the parameters"); 90:7-8 ("I do not know the specific features that were used"); 261:13-14 (same for pipelines). He could not testify about ad ranking models used before he began working at Meta in early 2019. *See id.* at 65:7; 67:16-19; 237:3-4. He had no knowledge of how the data inputs to Meta's models were derived. *See id.* at 90:24-25; 93:11-16; 238:4-7 (when asked about feature definitions and descriptions: "I am not prepared")). At one point, Kolay made clear that he had not prepared to testify on an issue despite acknowledging it was within the scope of the deposition as he understood it. *See id.* at 93:17-25 (stating certain data was not "outside the scope," but rather "outside the preparation"). Kolay could not testify about which data/features were stored in F3, nor how those features could be identified and accessed (and by whom). *See id.* at 216:22-25 ("I do not have that specific information, whether all of that data is going into F3 or not"); 260:12-13 ("I did not do any specific preparation related to F3 internals"); Kolay had not even heard of the "Intent Platform," F3's predecessor. *See id.* at 125:14-15.

A 30(b)(6) witness must "give complete, knowledgeable, and binding answers on the corporation's behalf." *In re Facebook, Inc.*, 2023 WL 1871107, at *26 (N.D. Cal. Feb. 9, 2023). Meta's designee fell far short of this standard. To begin with, Kolay's knowledge, including about Meta's AI/ML systems for ad ranking, included only the period after he began working at Meta—early 2019. But a 30(b)(6) designee has a "duty to prepare . . . beyond matters personally known to the witness or to matters in which the designated witness was personally involved." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538-39 (D. Nev. 2008) (cleaned up). Moreover, as described above, with respect to topics plainly within the scope of the deposition, Kolay admitted he lacked preparation. Kolay could not provide knowledgeable testimony about the features/data used to train AI/ML models for ad ranking systems; how inputs to these models were maintained, engineered, and accessed; anything specific regarding Meta's F3 integration; or anything at all regarding the Intent Platform, F3's predecessor. Meta has argued that Kolay spoke generally on the types of "algorithms" it uses, and generally described the "types" of data used to train its AI/ML models, but such testimony is trivially available from public sources, and patently insufficient for the noticed topic. Stated simply, it is unremarkable that Meta uses an unspecified combination of first- and third-party data to train its neural network models—but that is largely the extent of what Kolay could say over six hours of testimony. Further exacerbating the problem, Meta made long speaking objections at Kolay's deposition—at one point reading an entire letter into the record, Kolay Tr. 96:15-98:10; 104:19-105:10; 142:12-144:7; 153:7-20; 175:9-13, and at another having the deponent leave the room during a lengthy speaking objection, *id.* 151:1-152:19. This is the sort of conduct for which Meta has (in part) recently been sanctioned. *In re Facebook, Inc.*, 2023 WL 1871107, at *26 (speaking objections and evasive testimony at a 30(b)(6) deposition). Many of the facts Kolay could not provide—and that Meta did not prepare him to provide—have now been obtained through 30(b)(1) depositions, but this is precisely the sort of expenditure of limited fact deposition time that Advertisers' 30(b)(6) deposition was noticed to avoid. Meta's conduct has wasted hours of preparation and hours of 30(b)(1) deposition time. Advertiser Plaintiffs respectfully request that Meta be required to prepare another witness (or witnesses) on its noticed topic, and that the time used for Kolay's deposition be restored to Plaintiffs' deposition time allotment in this case.

**FILED UNDER SEAL**

Respectfully submitted,

By: <u>  Yavar Bathaee  </u>

| | |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **BATHAEE DUNNE LLP** |
| <u> /s/ Amanda F. Lawrence</u> | <u> /s/ Yavar Bathaee  </u> |

| | |
|---|---|
| Amanda F. Lawrence (*pro hac vice*) | Yavar Bathaee (CA 282388) |
| alawrence@scott-scott.com | yavar@bathaeedunne.com |
| Patrick J. McGahan (*pro hac vice*) | Andrew C. Wolinsky (CA 345965) |
| pmcgahan@scott-scott.com | awolinsky@bathaeedunne.com |
| Michael P. Srodoski (*pro hac vice*) | Adam Ernette (*pro hac vice*) |
| msrodoski@scott-scott.com | aernette@bathaeedunne.com |
| 156 South Main Street, P.O. Box 192 | Priscilla Ghita (*pro hac vice*) |
| Colchester, CT 06415 | pghita@bathaeedunne.com |
| Tel.: (860) 537-5537 | Chang Hahn (*pro hac vice*) |
| | chahn@bathaeedunne.com |
| | 445 Park Avenue, 9th Floor |
| | New York, NY 10022 |
| | (332) 322-8835 |

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com
901 S. MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
(213) 462-2772

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

Allison Watson Cross (CA 328596)
across@bathaeedunne.com
3420 Bristol St., Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser Classes*

**FILED UNDER SEAL**

# FILER ATTESTATION

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 13, 2023         By:   */s/ Brian J. Dunne*
                                    Brian J. Dunne