# Bathaee :: Dunne :: LLP

June 14, 2023                                                                                        **Via CM/ECF**

Re:   *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570-JD (N.D. Cal.)

Dear Judge Donato:

Advertiser Plaintiffs in the *Klein* matter ("Advertisers") respectfully—and regretfully—return to the Court to seek relief in connection with their document subpoena to Netflix, served more than a year ago. In April of this year, after Netflix produced zero documents in response to Advertisers' subpoena, Advertisers sought an order compelling Netflix to conduct a reasonable search for and production of documents. Netflix's counsel told the Court, "[w]e searched for – we did a custodial search of . . . documents" in connection with Advertisers' subpoena, and the Court then ordered Advertisers and Netflix to meet and confer on the scope of that search. Dkt. 545. At this meet-and-confer and communications leading up to it, Netflix admitted that **it conducted no search at all for fourteen of Advertisers' sixteen requests for production**. As to the search it did conduct, Netflix admitted that it "covered the date range November 2018 . . . to October 2022"—**a date range that does not include actual Netflix allegations in the Advertiser FAC**. In short, Netflix never actually searched for documents responsive to Advertisers' subpoena, despite telling the Court six weeks ago that it did so to avoid an order compelling production. Now, as fact discovery is closing, Netflix has **still** refused to conduct any further search for documents, requiring Advertisers to return to the Court for essentially the same relief it asked for six weeks ago, only now with more urgency: an order compelling Netflix to actually conduct a reasonable search for and production of documents in response to Advertisers now year-old subpoena. Advertisers and Netflix met and conferred on June 13, 2023, and reached impasse.

* * *

The relevance of Netflix to Advertisers' monopoly maintenance case is summarized in Advertisers' letter briefs at Dkt. 512 and 515, and set forth in detail in the Advertiser FAC, Dkt. 237, at ¶¶ 379-93, 394-417, 473-536. Put as succinctly as possible, Advertisers allege that in mid-2017, Facebook's Watch product became directly competitive with Netflix, a longtime Facebook ally and advertiser headed by then-Facebook board member Reed Hastings. Over the next year, in a period of high apex-level communications between Hastings and Facebook's CEO and COO (Mark Zuckerberg and Sheryl Sandberg), the companies struck an agreement in which Facebook abruptly cut original programming from Watch beginning in May 2018, withdrawing from direct competition with Netflix, in exchange for increased signals (specific types of data used for Facebook's ad models) sharing and ad purchases by Netflix. This agreement hurt one Facebook product (Watch) in order to serve the company's primary goal of protecting its monopoly position in the United States Social Advertising Market, a digital advertising submarket in which Facebook commanded a substantial price premium and worked to maintain its competitive moat through any means at its disposal.

On May 5, 2022—more than a year ago—Advertisers served Netflix with a subpoena for documents relevant to this action. *See* Ex. A. Advertisers' subpoena contained sixteen document requests. Request Nos. 1 and 2 sought documents relating to Netflix's competition with Facebook Watch. *Id.* at 1. Request Nos. 3 and 4 sought documents relating to Netflix's data sharing with Facebook. *Id.* at 1-2. Request Nos. 5 and 6 sought documents relating to Netflix's use of Facebook's APIs and user data. *Id.* at 2. Request No. 8 sought agreements between Netflix and Facebook on certain defined issues—the Facebook Developer Platform, Facebook's APIs, advertising, data access/exchange, analytics, and content creation/online video streaming—and

FILED UNDER SEAL

Request Nos. 8 and 9 sought documents and internal communications regarding these agreements. *Id.* at 2-3. Request Nos. 10 and 11 sought documents relating to Netflix's decision to purchase Facebook ads. *Id.* at 3. Request Nos. 12-15 sought documents relating to certain issues regarding Reed Hastings, who simultaneously sat on Facebook's board and was Netflix's CEO, even as the companies moved into direct competition in the streaming video space in 2017 and 2018. Request No. 16 sought documents Netflix had produced to regulators in connection with Facebook.

For months, Netflix promised Advertisers it was in the process of searching for and producing responsive documents. But in fact, Netflix didn't produce anything. By early 2023, as fact depositions were in full force in this action, Netflix hadn't produced a single document responsive to Advertisers' subpoena. On April 17, Advertisers moved to compel Netflix to perform a reasonable search and production in response to their subpoena. The Court took the issue up at the April 27, 2023 Case Management Conference.

At that hearing, the Court asked Netflix's counsel if Netflix had looked for documents, asking: "Did you look? If you didn't look, you are going to look. Did you take searches, look through Netflix documents, and determine that you did nothing responsive or did you not even look?" Apr. 27, 2023 Hearing Tr. at 30:14-17. Netflix's counsel responded:

> We searched for – we did a custodial search of the documents for Netflix's director of competitive intelligence, and we also surveyed the team responsible for analyzing competition. And so the custodial search that we did involved a word search for words like Meta or Facebook or Instagram or other things and competition.

*Id.* at 30:18-24. The Court then directed "advertisers and Netflix . . . to meet and confer about the scope of Netflix's search for responsive documents." Dkt. 545 at 2.

After the April 27 Case Management Conference, Advertisers reached out to Netflix to discuss the scope of its document search, and on May 21, were informed that ***Netflix did not conduct any search at all for Request Nos. 3-16 in Advertiser Plaintiffs' subpoena***. May 21, 2023 J. Sessions email. As to Request Nos. 1 and 2, which sought documents regarding Facebook Watch in connection with an alleged course of conduct between approximately early 2017 and approximately mid-2018, *see* Advertiser FAC ¶¶ 379-93, 394-417, 473-536 (Netflix allegations); *see also* PALM-013469126 (Jun. 2017 Reed Hastings email to M. Zuckerberg, S. Sandberg, and E. Schrage about "not bidding on [the] same [original video] content"); PALM-005487488 (May 2018 M. Zuckerberg email to head of Facebook Watch proposing "cutting $750M from originals + sports for next year"),[1] Netflix's counsel explained that the company's search "covered the date range November 2018 . . . to October 2022," May 21, 2023 J. Sessions email. As a result, ***zero*** documents were identified or produced responsive to ***any*** Advertiser request for production, and ***Netflix never actually tried***.

Advertisers sought to meet and confer regarding these quite distressing—and frankly, surprising, given the representations made at the April 27 Case Management Conference— revelations, and after weeks of back-and-forth, and a no-warning change in Netflix's lawyer, the

---

[1] The quoted excerpts come from documents designated "confidential" or "highly confidential" by Facebook, but were included in this exact form in Advertisers' letter brief at Dkt. 515 (at 2), and Meta did not seek to seal them. *See* Dkt. 538 at 2. Out of an abundance of caution, Advertisers are filing this information provisionally under seal here.

**FILED UNDER SEAL**

parties met and conferred on June 13. At that meet-and-confer, Netflix's counsel confirmed that the company conducted ***no search***—none—in connection with fourteen of Advertisers' requests for production, and limited the only search it did conduct to ***a time period after the Netflix allegations in Advertisers' FAC***. Advertisers asked if Netflix would conduct a reasonable search of any scope, for any request for production, and were told no.

So now Advertisers are forced, again, to return to the Court, after Netflix told Advertisers in private that it didn't actually do what it told the Court in public it did—conduct a search for responsive documents. No reasonable search was conducted. Under any definition of "reasonable." For fourteen requests for production, there was no search at all. For two, there was a fake search— a search of one custodian ***for a time period that didn't include the conduct at issue in Advertisers' case.*** Unsurprisingly, no documents were produced in response to Advertiser Plaintiffs' subpoena.

Given the case history here—a subpoena served thirteen months ago; months of statements by Netflix's counsel that it was in fact doing the work of search and production in response to that subpoena; then statements to the Court at a hearing that a reasonable search was conducted, and there just wasn't anything relevant to Advertisers' claims; and then an out-of-court refusal to actually conduct such a search upon the revelation that none had been conducted; it would be legally justified to order Netflix to respond to all requests, as phrased, without objection, as a reasonable evidentiary sanction. But Netflix is still, despite its behavior, a non-party (albeit an allegedly co-conspiring one), and Advertisers just want Netflix to actually look and produce the documents most relevant and impactful to Advertisers' case—as soon as possible, given the date in the procedural schedule. So Advertisers simply seek, as relief, an order compelling Netflix to conduct a reasonable search and production in response to Request Nos. 12-15, regarding Reed Hastings issues,[2] and for an order compelling Netflix to search and respond to Request Nos. 1-2 (regarding Facebook Watch) with parameters that actually include the dates of the conduct at issue in connection with Advertisers' Netflix allegations.

---

[2] At 3 pm Pacific time on June 14, as this letter brief was being finalized, Netflix produced the results of its court-ordered Reed Hastings document production. There were twelve documents in it, spanning 140 pages—62 of which were withheld in their entirety on the basis of "Meta Privilege." As of the date of this letter, no time has been offered for Mr. Hastings's deposition.

**FILED UNDER SEAL**

Respectfully submitted,

By: _Brian J. Dunne_____
*On Behalf of Interim Co-Lead Counsel*
*for the Advertiser Classes*

SCOTT+SCOTT ATTORNEYS AT LAW LLP

_/s/ Amanda F. Lawrence_
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA  92101
Tel.: (619) 233-4565

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

BATHAEE DUNNE LLP

_/s/ Yavar Bathaee_
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Adam Ernette (*pro hac vice*)
aernette@bathaeedunne.com
Priscilla Ghita (*pro hac vice*)
pghita@bathaeedunne.com
Chang Hahn (*pro hac vice*)
chahn@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
(332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com
901 S. MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
(213) 462-2772

Allison Watson Cross (CA 328596)
across@bathaeedunne.com
3420 Bristol St., Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser*
*Classes*

4

**FILED UNDER SEAL**

## **FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: June 14, 2023          By:   */s/ Brian J. Dunne*
                                    Brian J. Dunne