April 18, 2023                                                    **FILED UNDER SEAL VIA CM/ECF FILING**

The Honorable James Donato, U.S. District Judge San Francisco Courthouse, U.S. District Court
450 Golden Gate Avenue, Courtroom 11 – 19th Floor
San Francisco, CA 94102

Re:   <u>Facebook's Pervasive and Overbroad Assertion of Privilege to Withhold Key Evidence</u>

Dear Judge Donato:

Meta Platforms, Inc.'s ("FB") privilege logs – which include more than 90,000 documents in this case alone – are inadequate and inaccurate.[1]  The parties met and conferred on March 30, but were unable to resolve their dispute and are now at impasse.

On March 2, Plaintiffs wrote to FB explaining that its logs do not contain nearly enough information for Plaintiffs to determine whether documents were properly withheld.  *See Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF (SVK), 2018 WL 2357742, at *1 (N.D. Cal. May 24, 2018) ("In essence, the party asserting the privilege or protection must make a *prima facie* showing that the information the party intends to withhold is protected").  **More than half of the 91,993 logged documents do not include an attorney.**  That alone is telling indicia that privilege and work product claims "sweep far too broadly." *Largan Precision Co*, *Ltd v. Genius Elec. Optical Co.*, No. 13-cv-02502, 2014 WL 12643367, at *1 (N.D. Cal. Dec. 21, 2014) (Donato, J.) (withholding party "abused the assertion of the [attorney-client] privilege and [work product] doctrine, at times egregiously" based on not producing non-attorney communications).

FB's logs lump all of its privilege calls into 14 grouped descriptions, none of which provide enough information to evaluate FB's privilege and/or work product claims.  One example of such a grouped description – applied without change to thousands of documents – is:

> "Confidential communications and other documents requesting, providing, or discussing legal theories, mental impressions, opinions, or facts gathered or developed, by or for counsel, for purposes of assessing legal risk or liability and providing legal advice and/or prepared in anticipation of litigation, regarding discussions of actual or potential contract terms, including negotiation strategy, drafting advice, and/or potential contract disputes."

As this Court and others have made clear, "*[n]o generalized claims of privilege or work product protection are permitted*."  Standing Order for Discovery in Civil Cases Before Judge Donato ("Standing Order"), ¶7; *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-cv-00220 LHK (NC), 2018 WL 11420853, at *4 (N.D. Cal. Mar. 16, 2018).

Plaintiffs requested that FB provide privilege logs which are sufficiently detailed and informative to justify the privilege.  Standing Order ¶7.  FB refused to do so, stating that it need not follow this Court's rules because the parties – then before Magistrate Judge DeMarchi – entered

---

[1]   Plaintiffs have diligently pursued these issues. 99% of FB's privilege entries have come in the last 4 months, and 66.5% of FB's privilege entries came in its February 17 log, which alone had more than **61,000 entries**.  After reviewing the February 17 log, Plaintiffs wrote to FB on March 2 detailing their concerns and seeking to meet and confer. FB did not respond for weeks and did not meet and confer on this issue until March 30.

into a privilege log protocol (ECF 176). The protocol ***does not*** absolve FB. It requires "disclosure of additional information [if] necessary to resolve a dispute," which FB refuses to do. *Id.*, §2. In any case, the protocol itself provides for "modifi[cation]…for good cause shown." *Id.*, §4. FB's solution is that Plaintiffs provide to FB lists of challenged documents. Plaintiffs told FB ***all*** the documents on FB's logs appeared to be improperly withheld, because these logs are facially deficient, and requested FB provide the information the law demands abouts its tens of thousands of privilege claims. FB refused. Faced with ongoing depositions, Plaintiffs began flagging hundreds of documents – some redacted, some entirely withheld – for FB to re-review. But continuing this process, as FB suggests, is needlessly time consuming, wasteful of Plaintiffs' resources, and prejudicial to Plaintiffs, for three primary reasons.

***First***, when challenged ***in this case***, FB admits that many of its privilege assertions were improper. As an example, prior the deposition of FB witness Stephanie Wang, Plaintiffs identified to FB 92 relevant documents for re-review. One business day before the deposition, 56 of these documents were "downgraded," 25 of which were reproduced in full without any redactions, and overturn rate of more than 60%. This percentage is nearly identical to the improper privilege designation rates FB conceded in the *Cambridge Analytica* and *FTC* matters. *See In re: Facebook, Inc. Consumer Privacy User Profile Litig.* ("*Cambridge Analytica*"), No. 18-md-02843-VC, 2023 WL 1871107, at *18-*19; *27-*28 (the court found it was "difficult to imagine any conceivable argument" that such "a massive number [180,000] of documents [were marked] as privileged," and after a review of a sample of 3,062, FB withdrew "privilege claims over 63% of those documents"); *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.), March 27, 2023 Hrg. Tr. at 10-15 (after FB admitted improper privilege calls 60% of the time, the Court ordered FB to re-review 1,000 documents before taking further steps). With respect to FB's distinct FTC "investigation log," FB reversed approximately 60% of its privilege calls. This is the subject of a different letter brief before this Court (ECF 486). FB refuses to entertain challenges to this log.

The downgraded documents FB has produced thus far have significant evidentiary value to Plaintiffs. For example, after one re-review, FB produced: PALM-016981253 (message from FB VP Simon Whitcombe to Stephanie Wang sharing Whitcombe's latest communication to eBay Head of Growth David Doctorow regarding the terms of an advertising data agreement that is an express subject of Advertisers' claims); and PALM-016981129 (a multi-week email thread in which Wang and five FB employees (including a VP) and four FB attorneys discuss the status of business negotiations and the final terms of an advertising data agreement with Netflix that is also a subject of Advertisers' claims). On the latter, half the thread has now been "downgraded" and produced to Plaintiffs. These emails, produced only after Plaintiffs pried them from FB, provide key details about the terms of the Netflix deal, and FB's internal policy of "prioritizing some strategic accounts," and confirm that "Netflix is certainly one of those accounts."

***Second***, the general turnaround for FB to re-review the logged documents to these Plaintiff-initiated requests results in documents being produced in the days leading up to, or sometimes the day before, the relevant depositions. Worse, FB is still admitting improper designation of documents from challenges made many weeks ago, in many cases ***after*** pertinent depositions have occurred – sometimes producing never-before-seen documents relating to crucial elements of Plaintiffs' claims. For example, on April 11 and 12, days before WhatsApp co-founder Brian Acton's April 13 deposition, FB made productions containing more than 500 documents, some of which pertained to Mr. Acton, but dozens of which were relevant to the depositions of Stephanie Wang and Dan Rose, which had already occurred in the preceding weeks.

***Third***, requiring Plaintiffs to identify specific documents for re-review before depositions gives FB an unfair litigation advantage: FB can then prepare its witnesses with Plaintiffs' work product.

FB's internal practices exacerbate these issues. FB has a policy of marking documents that discuss sensitive policy as "AC priv," "attorney-client privileged," or the like, regardless of whether an attorney is on the email or legal advice is being sought. For example, in emails recently produced between FB VPs Dan Rose and Mark Rabkin related to Sheryl Sandberg's communications with Match Group regarding an advertising data agreement, Rose begins the discussion by designating his email "A/C Priv" and adding an attorney. PALM-016980979. This conversation was previously redacted, but was, in fact, not privileged. This sort of practice is pervasive at FB, with more than ***30,000*** internal FB documents bearing some sort of attorney-client labeling, over which FB has not asserted any privilege claim. *See, e.g.*, PALM-016734741 (Nick Clegg email to CEO Mark Zuckerberg regarding "FTC Comms" and appends "A/C Priv" to subject line despite including no one else on initial email and neither being lawyers).

Similarly, FB has another internal practice of adding attorneys to threads solely for the purpose of shielding the documents from discovery.

```
William Moca Fusz (3/20/2018 16:43:39 PDT):
>Just ensure that if it's very sensitive you ask a lawyer for guidance in the Quip and
privilege it

Emma Jacquemart-Simonen (3/20/2018 16:44:53 PDT):
>How does one 'privilege it'?

David Doyle (3/20/2018 16:45:22 PDT):
>With the presence and approval of an attorney
```

PALM-009378319; *see also* PALM-009512403 ("Yvonne Cunnane is CC'd here for A/C Priv"); PALM-016565445 ("+Jay as heads up, Sam for A/C Priv," and in response to which FB lawyer Sam O'Rourke replies "dont say 'Sam for a/c priv' – just add me in the 'to' line").

Plaintiffs requested that FB provide legitimate logs that comport with the law, and further asked that FB re-review its entire, clearly problematic, privilege logs and promptly produce the (presumably) tens of thousands of documents on these logs FB is, to this day, wrongly shielding from disclosure. FB rejected this offer. Plaintiffs then proposed that FB re-review 5,000 randomly selected documents from its privilege logs and reproduce the improperly withheld documents from that sample, holding further disputes in abeyance until Plaintiffs received assurance that the 60% overturn rate to date was just a coincidence. FB also rejected this offer and provided no counter.

Plaintiffs request the Court: (1) compel FB to produce a privilege log which contains enough information so that Plaintiffs can determine whether documents are privileged; (2) allow Plaintiffs to review a subset of the documents that were withheld or redacted without waiving privilege under a Rule 502 process (*see, e.g.*, *In re Caustic Soda Antitrust Litig.*, 19-cv-00385-EAW-MJR (W.D.N.Y July 27, 2021), ECF 331), or alternatively, compel FB to re-review a subset of documents that were redacted or withheld as privileged in order to determine whether a full review is merited or provide the same subset to the Court for an *in camera* review; and (3) hold open all depositions that were or will be taken before FB's re-review and re-production is complete.

Respectfully submitted,

By: */s/ Amanda F. Lawrence*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

Amanda F. Lawrence (*pro hac vice*)
  alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
  pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
  msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
  pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
  cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
  hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
  dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

Patrick J. Rodriguez (*pro hac vice*)
  prodriguez@scott-scott.com
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-6444

**BATHAEE DUNNE LLP**

Yavar Bathaee (CA 282388)
  yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
  awolinsky@bathaeedunne.com
Adam Ernette (*pro hac vice*)
  aernette@bathaeedunne.com
Priscilla Ghita (*pro hac vice*)
  pghita@bathaeedunne.com
Chang Hahn (*pro hac vice*)
  chahn@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
  bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
  egrauman@bathaeedunne.com
Andrew M. Williamson (CA 344695)
  awilliamson@bathaeedunne.com
901 S. MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Allison Watson Cross (CA 328596)
  across@bathaeedunne.com
3420 Bristol St., Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser Classes*

By: */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

By: */s/ Kevin Y. Teruya*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
Claire D. Hausman (Bar No. 282091)

4

Steve W. Berman (*pro hac vice*)
  steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
  wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
  rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
  bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
  rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
  aswagner@locklaw.com
Kyle J. Pozan (admitted *pro hac vice*)
  kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
  lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

  clairehausman@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Michelle Schmit
  michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400

Manisha M. Sheth (admitted *pro hac vice*)
  manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Interim Counsel for the Consumer Class*

**FILER ATTESTATION**

      I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 18, 2023            By:   /s/ *Amanda F. Lawrence*
                                                 Amanda F. Lawrence