# Exhibit 17

1  JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
   *jakro@kslaw.com*
2  AARON S. CRAIG (Bar No. 204741)
   *acraig@kslaw.com*
3  KING & SPALDING LLP
   633 West Fifth Street, Suite 1700
4  Los Angeles, CA 90071
   Telephone:   (213) 443-4355
5  Facsimile:   (213) 443-4310

6  Attorneys for Defendants NSO GROUP TECHNOLOGIES
   LIMITED and Q CYBER TECHNOLOGIES LIMITED
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11 | WHATSAPP INC., a Delaware corporation, | Case No. 4:19-cv-07123-PJH
   | and FACEBOOK, INC., a Delaware         |
12 | corporation,                           | **DECLARATION OF SHALEV HULIO IN
   |                                        | SUPPORT OF DEFENDANTS' MOTION
13 |              Plaintiffs,               | TO DISMISS UNDER RULES 12(B)(1),
   |                                        | 12(B)(2), 12(B)(6), AND 12(B)(7)**
14 |         v.                             |
   |                                        | Date:  May 13, 2020
15 | NSO GROUP TECHNOLOGIES LIMITED         | Time:  9:00 a.m.
   | and Q CYBER TECHNOLOGIES LIMITED,      | Ctrm:  3
16 |                                        |
   |              Defendants.               |
17 |                                        | Action Filed: 10/29/2019

PLAINTIFF EXHIBIT
Georgios Zervas
Klein et al v. Meta Platform Inc
2990

DECLARATION OF SHALEV HULIO                                   Case No. 4:19-cv-07123-PJH
IN SUPPORT OF MOTION TO DISMISS

I, Shalev Hulio, declare as follows:

1. I am a citizen and resident of Israel. I am the CEO and a co-founder of Defendant NSO Group Technologies Limited ("NSO"). Defendant Q Cyber Technologies Limited ("Q Cyber" and, collectively with NSO, "Defendants") is NSO's sole director and majority shareholder.

2. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact averred herein.

3. NSO is a technology company that designs and licenses technology to governments and government agencies for national security and law enforcement purposes.

4. Defendants are incorporated and have their principal places of business in Israel. As Israeli corporations, Defendants are subject to service of process in Israel. Defendants have no presence in any other country. Defendants do no business in California and have no offices or employees in California or elsewhere in the United States. Defendants have not performed any actions relevant to Plaintiffs' lawsuit in California, and they have not targeted any activities relevant to the lawsuit at California. All of Defendants' employees with knowledge relevant to this lawsuit reside in Israel, and any documentary evidence relevant to the case is located in Israel.

5. Sales of NSO's Pegasus technology are strictly monitored and regulated by the Government of Israel. The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law ("ECL"), with which I am very familiar as NSO's CEO. A copy of the ECL is attached as **Exhibit A**.

6. To export its Pegasus technology, NSO is required to register with the Israeli Ministry of Defense ("MoD"). Under the ECL, the MoD is empowered to investigate NSO and its business, refuse or cancel NSO's registration, or deny NSO's license, taking into account several factors, including the intended use of NSO's Pegasus technology and the identity of NSO's customers. The MoD can and does ask NSO to provide documentation about its customers and prospective customers and the intended uses of NSO's Pegasus technology by NSO's customers and potential customers. The MoD requires this documentation from NSO for

1  each export of NSO's Pegasus technology.

2      7.    NSO's contracts require Pegasus end-user customers to demonstrate that they are a government or an authorized agency for national security and law enforcement purposes of a government and to provide any other necessary documentation for approval by the MoD.

    8.    The MoD requires the NSO provide it with signed certificates from the end-users of NSO's Pegasus technology in which the end-users declare that NSO's Pegasus technology will be used only for prevention and investigation of terrorism and criminal activity.

    9.    NSO markets and licenses its Pegasus technology exclusively to sovereign governments and authorized agencies for national security and law enforcement purposes of governments and does so only after receiving the necessary export control licenses from the MoD. NSO does not market or sell its Pegasus technology for use by any private entities, and Plaintiffs' allegation to the contrary is false.

    10.    In October 2017, NSO was approached by two Facebook representatives who asked to purchase the right to use certain capabilities of Pegasus, the same NSO software discussed in Plaintiffs' Complaint. From Facebook's communications with NSO at that time, I understand that Facebook had purchased a web analytics company called Onavo in October 2013. Onavo had created a virtual private network ("VPN") application called Onavo Protect, which analyzed web traffic sent through the VPN to provide statistics on the usage of other applications. Onavo Protect, which has frequently been categorized as "spyware," allowed Facebook to gather information about Onavo Protect users, including the applications installed on those users' mobile devices and the amount of time the users spent on each application. The Facebook representatives stated that Facebook was concerned that its method for gathering user data through Onavo Protect was less effective on Apple devices than on Android devices. The Facebook representatives also stated that Facebook wanted to use purported capabilities of Pegasus to monitor users on Apple devices and were willing to pay for the ability to monitor Onavo Protect users. Facebook proposed to pay NSO a monthly fee for each Onavo Protect user. Facebook is a private entity and not a sovereign government or government agency for national security and law enforcement purposes and therefore does not meet NSO's customer criteria.

DECLARATION OF SHALEV HULIO
IN SUPPORT OF MOTION TO DISMISS

2

Case No. 4:19-cv-07123-PJH

NSO declined the sale and informed Facebook that NSO only licenses its Pegasus technology to governments.[1]

11. NSO takes into account U.S. and European Union export control restrictions. NSO conducts due diligence of potential customers, including examining publicly available information, evaluating questionnaires, and considering the potential customer's record of respecting rule-of-law concerns. Government customers must provide due diligence materials before receiving NSO's Pegasus technology. (*See* Compl. Exh. 11, Sec. 2.2.)

12. NSO requires, as a condition of use, that its government customers agree that they (1) will use NSO's Pegasus technology "only for the prevention or investigation of crimes and terrorism and ensure that the [technology] will not be used for human rights violations" and (2) will immediately notify NSO of any potential misuse. (*See* Compl. Exh. 11, Sec. 2.1.) NSO contractually can suspend or terminate service to customers engaged in any improper use of its Pegasus technology outside these parameters. (*See* Compl. Exh. 11, Sec. 7.) And, NSO has done so in the past. Moreover, the State of Israel may deny or revoke export licenses if it becomes aware the terms of the export license have been violated, including, for example, that the Pegasus technology is being used to violate human rights.

13. NSO's Pegasus technology also has technical safeguards, such as general and customer-specific geographic limitations. (*See* Compl. Exh. A.) One of the limitations relevant to this case is that NSO's Pegasus technology cannot be used against U.S. mobile phone numbers. (*See* Compl. Exh. D.) Another such limitation is that the Pegasus technology cannot be used against a device within the geographic bounds of the United States.

14. Contrary to Plaintiffs' false allegations, Defendants do not operate NSO's Pegasus technology. Instead, NSO markets and licenses the Pegasus technology to its sovereign customers, which then operate the Pegasus technology themselves, to advance their own

---

[1] Facebook thereafter used Onavo Protect to monitor users on Apple devices until August 2018, when Apple banned the application for violating its rules on data collection. See Nick Statt, *Facebook Will Pull Its Data-Collecting VPN App from the App Store Over Privacy Concerns*, The Verge (Aug. 22, 2018, 6:46 pm), https://bit.ly/2w8LwYU.

sovereign interests of fighting terrorism and serious crime. Defendants' role is limited to NSO providing advice and technical support to assist customers in setting up—not operating—the Pegasus technology.[2] When Defendants provide those support services, they do so entirely at the direction of their government customers, and Defendants follow those directions completely. Defendants' operation of the Pegasus technology NSO has licensed to sovereign governments and agencies for national security and law enforcement purposes is also prohibited under each export control license NSO has been granted. Each of the licenses NSO has been granted provides that operational use or ongoing operation of Pegasus by NSO employees (or their subcontractors) is prohibited, and that operation of Pegasus by NSO employees (or their subcontractors) is permitted only for demonstration purposes and on devices owned by NSO. Each export control license NSO has been granted further requires that NSO's remote access to Pegasus technology licensed to a customer is permitted solely for purposes of maintenance (which is not related to operation of Pegasus).

15. In the Complaint, Plaintiffs allege that between in and around April 2019 and May 2019, Defendants "sen[t] malware to approximately 1,400 mobile phones and devices ('Target Devices')" used by "Target Users," and that Defendants did so "without the Target Users' knowledge or consent." (Complaint ¶¶ 1, 54.) Plaintiffs do not identify any "Target User." But Defendants have never installed Pegasus on any device without the knowledge and consent of the device owner, and Defendants have never installed Pegasus on any device for any operational purpose. I do not have knowledge regarding the use of WhatsApp messages, by Defendants' sovereign customers, to install Pegasus on any particular device. If one or more of Defendants' sovereign customers did that, however, then that sovereign would have been acting on its own behalf to advance its own sovereign interests of fighting terrorism and serious crime, and it would have been without Defendants' involvement.

16. Defendants have no control over, or knowledge of, where Plaintiffs' servers are

---

[2] Defendants do not participate in any NSO customer's installation of the Pegasus technology on any device.

DECLARATION OF SHALEV HULIO
IN SUPPORT OF MOTION TO DISMISS

4

Case No. 4:19-cv-07123-PJH

located or of which server(s) would be used to send any message.

17. Plaintiffs allege that Defendants used Pegasus to monitor journalists, human rights activists, political dissidents, diplomats, and other senior government officials. That is false. Defendants do not monitor anyone, and Defendants prohibit their customers from using the technology for purposes other than fighting terrorism and serious crime, by contractual prohibitions against such behavior and required end-user certificates signed by the customer. If a government ever misused NSO's Pegasus technology to monitor WhatsApp users for purposes other than fighting terrorism and serious crime, Defendants have no knowledge of that misuse, which would be a violation of that government's contract with NSO. If Defendants suspected any improper use of Defendants' Pegasus technology outside these parameters, service to that customer would be suspended pending investigation. If investigation revealed such ongoing misuse, that customer would be terminated.

18. Because NSO's government customers use Defendants' technology to investigate and prevent terrorism and crime, discovery into Defendants' customers' use of the technology would require sovereign governments to reveal sensitive information about their national-security, intelligence, and law enforcement operations.

19. If any of NSO's government customers have witnesses or evidence relevant to this lawsuit, those witnesses and that evidence would be located outside of the United States.

I declare under the penalty of perjury and the laws of the United States that the foregoing is true and correct this 2nd day of April 2020, at Tel Aviv, Israel.

_____
SHALEV HULIO