**PUBLIC REDACTED VERSION**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP | ARI HOLTZBLATT (*pro hac vice*)<br>Ari.Holtzblatt@wilmerhale.com |
| SONAL N. MEHTA (SBN 222086)<br>Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000 | MOLLY M. JENNINGS (*pro hac vice*)<br>Molly.Jennings@wilmerhale.com<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000 |
| DAVID Z. GRINGER (*pro hac vice*)<br>David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br>Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br>Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br>Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | MICHAELA P. SEWALL (*pro hac vice*)<br>Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF TILMAN KLUMPP**<br><br>Hearing Date: June 20, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I. KLUMPP'S OPINIONS SHOULD BE EXCLUDED BECAUSE HE ERRONEOUSLY CONFLATES MONOPOLY MAINTENANCE WITH ANTICOMPETITIVE EFFECT ........................... 2

II. THE COURT SHOULD EXCLUDE KLUMPP'S NON-ECONOMIC OPINIONS ................................ 4

    A. Klumpp's Speculative Opinion As To What The FTC Would Have Done Had It Known About Meta's F3 Project Should Be Excluded ................................ 4

    B. Klumpp's Opinion That Meta Misappropriated Trade Secrets Through Its FBR App Is Legal Opinion Masquerading As Economic Analysis ........................ 6

    C. Klumpp's Opinion That "Integration Partners" Reduced Investment in Competing Products Based On Litigation Risk Has No Basis in Economics ................................................................................................................ 9

    D. Klumpp's Opinions That (1) Meta's Supposed Agreement With Netflix Was Anticompetitive And (2) The NBA Advantaged Meta's Ability To Bid On Ad Impressions Are Inadmissible Because They Fail To Assess The Relevant Agreements ........................................................................................ 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AIG Ret. Servs., Inc. v. Altus Fin. S.A.*,
   2011 WL 13213589 (C.D. Cal. Sept. 26, 2011) ..........................................................................5

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*,
   805 F.3d 701 (6th Cir. 2015) ....................................................................................................8

*Atmel Corp. v. Info. Storage Devices, Inc.*,
   189 F.R.D. 410 (N.D. Cal. 1999)..............................................................................................7

*Avila v. Willits Env't Remediation Tr.*,
   633 F.3d 828 (9th Cir. 2011) ..................................................................................................12

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
   2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) ........................................................................8

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
   424 F. Supp. 2d 1229 (E.D. Cal. 2005).....................................................................................5

*CZ Servs. v. Express Scripts Holding Co.*,
   2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) .....................................................................8, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..................................................................................................................1

*Diviero v. Uniroyal Goodrich Tire Co.*,
   114 F.3d 851 (9th Cir. 1997) ..................................................................................................12

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ..............................................................................................2, 3

*FTC v. Meta Platforms, Inc.*,
   No. 1:20-cv-3590-JEB (D.D.C.)...............................................................................................5

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ....................................................................................................3

*FTC v. Qualcomm Inc.*,
   2017 WL 2774406 (N.D. Cal. June 26, 2017)..........................................................................2

*Maldonado v. Apple, Inc.*,
   2021 WL 1947512 (N.D. Cal. May 14, 2021) .......................................................................11

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ..................................................................................................10

**PUBLIC REDACTED VERSION**

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  655 F. Supp. 3d 1002 (S.D. Cal. 2023)..............................................................................2

*Perry v. Schwarzenegger*,
  704 F. Supp. 2d 921 (N.D. Cal. 2010), *aff'd sub nom. Perry v. Brown*,
  671 F.3d 1052 (9th Cir. 2012) .........................................................................................13

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
  2011 WL 5417090 (N.D. Cal. Oct. 27, 2011)..................................................................10

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
  32 F.4th 824 (9th Cir. 2022) .............................................................................................2

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
  291 F. App'x 40 (9th Cir. 2008) .....................................................................................10

*Proofpoint, Inc. v. Vade Secure, Inc.*,
  2021 WL 2383574 (N.D. Cal. June 10, 2021)..................................................................9

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)...............................................................................5

*State of New York v. Deutsche Telekom AG*,
  419 F. Supp. 3d 783 (S.D.N.Y. 2019)...............................................................................6

*Teradata Corp. v. SAP SE*,
  570 F. Supp. 3d 810 (N.D. Cal. 2021) ..............................................................................9

*Twin Cities Bakery Workers Health and Welfare Fund v. Biovail Corp.*,
  2005 WL 3675999 (D.D.C Mar. 31, 2005).......................................................................5

*United States v. Apple, Inc.*,
  No. 1:12-cv-02826, (S.D.N.Y.)........................................................................................3

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001)............................................................................................2

*United States v. Redlightning*,
  624 F.3d 1090 (9th Cir. 2010) ........................................................................................11

*United States v. Tamman*,
  782 F.3d 543 (9th Cir. 2015) ............................................................................................8

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)..........................................................................................................3

*WeRide Corp. v. Kun Huang*,
  379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620
  (N.D. Cal. Nov. 5, 2019)...................................................................................................8

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ..................................................................................................3

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702 .............................................................................................................................1

Uniform Trade Secrets Act § 1 .......................................................................................................8

**OTHER AUTHORITIES**

FTC, *A Brief Overview of the Federal Trade Commission's Investigative Law
    Enforcement, and Rulemaking Authority*,
    https://www.ftc.gov/about-ftc/mission/enforcement-authority...................................................4

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 20, 2024, at 10:00 a.m., Defendant Meta Platforms, Inc. will move the Court for an order granting Meta's Motion to Exclude the Expert Testimony and Opinions of Advertiser Plaintiffs' putative expert Tilman Klumpp. Meta's motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the Declaration of David Gringer filed herewith, along with the accompanying exhibits.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Meta respectfully requests that the Court exclude the entirety of the Expert Merits Report of Dr. Tilman Klumpp and the Expert Merits Rebuttal Report of Dr. Tilman Klumpp, and any testimony drawn from those reports. *See* Declaration of David Gringer in Support of Motion to Exclude, Exs. 1-3.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Advertisers offer the opinion of Dr. Tilman Klumpp to argue that each element of the challenged conduct resulted in an anticompetitive effect. But what Klumpp opines to be an anticompetitive effect—mere maintenance of monopoly power—is not recognized in law or economics to be an anticompetitive effect. Klumpp's reports are therefore not relevant and are unhelpful to the factfinder and must be excluded.

Beyond that, each of Klumpp's individual opinions should be excluded because they are not grounded in economics and are therefore outside Klumpp's purported expertise. First, Klumpp's opinion as to what the FTC would have done if it had known about Meta's supposed "███████████████████," is speculation about hypothetical agency action, not economic analysis. Second, Klumpp's opinion that Meta misappropriated a "trade secret" of Snap, requires a legal and technical analysis that Klumpp neither performed nor is qualified to perform. Third, Klumpp's assertions about how Meta or its developer counterparties might interpret contractual terms are not only speculative but also represent improper legal analysis devoid of

---

[1] Unless otherwise noted, "Ex." citations reference exhibits to the Gringer Declaration filed herewith, emphasis is added, and objections are omitted for deposition citations.

factual support. Fourth, Klumpp's opinions regarding a contract Meta purportedly entered into with Netflix to withdraw from competition in the "█████████████████████████" and with Google for use of its Open Bidding advertising auction platform are pure speculation and are inherently unreliable because Klumpp never reviewed the relevant agreements. It is, of course, impossible for anyone to reliably assess the terms of an agreement without reviewing the actual terms. The Court should execute its gatekeeping function and exclude Klumpp's opinions.

## ARGUMENT

### I. KLUMPP'S OPINIONS SHOULD BE EXCLUDED BECAUSE HE ERRONEOUSLY CONFLATES MONOPOLY MAINTENANCE WITH ANTICOMPETITIVE EFFECT

Klumpp opines that the challenged conduct helped Meta preserve its alleged monopoly power, which he classifies as an "anticompetitive effect." However, Klumpp never opines that the challenged conduct caused higher prices, lower quality, reduced output, or otherwise harmed the competitive process. Klumpp's reports should be excluded because merely maintaining monopoly power is not a legally or economically recognized anticompetitive effect, and one cannot merely be assumed, rendering all of his opinions irrelevant and unhelpful to the finder of fact. *See Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1023 (S.D. Cal. 2023) (excluding expert who "failed to apply the proper legal test in rendering her [] opinions," such that her opinions were "irrelevant, unreliable, and [] mislead[ing to] the jury").

"The offense of monopolization" requires, among other things, "'the willful acquisition or maintenance of [monopoly] power' through exclusionary conduct." *FTC v. Qualcomm Inc.*, 2017 WL 2774406, at *9 (N.D. Cal. June 26, 2017) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001)). "[T]o be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect.'" *Id.* (quoting *Microsoft*, 253 F.3d at 58). In turn, proof of an anticompetitive effect requires evidence of actual detrimental effects on competition, "'such as reduced output, increased prices, or decreased quality in the relevant market.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983-984 (9th Cir. 2023) (quoting *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022)). And to be cognizable under Section 2, those effects must be "the result of a less competitive market due to either artificial restraints or predatory and

1  exclusionary conduct." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). By contrast,
2  under controlling precedent, the continuation of Meta's alleged monopoly power as a result of the
3  challenged conduct is not, by itself, an anticompetitive effect. *See Verizon Commc'ns Inc. v. Law
4  Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("[T]he possession of monopoly power
5  will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*."
6  (emphasis in original)).

7        Klumpp, however, offers no opinion that Meta's conduct caused or threatened to cause any
8  anticompetitive effect ("'reduced output, increased prices, or decreased quality in the relevant
9  market,'" *Epic Games*, 67 F.4th at 983-84), which is the purpose for which his opinions are being
10 offered. Instead, during the course of his deposition, Klumpp repeatedly insisted that he was not
11 opining about any cognizable anticompetitive effect:



19 Ex. 3, Klumpp Tr. 45:4-21.

20       To assist the jury in determining whether Meta's conduct caused anticompetitive effects,
21 Klumpp needed to show that the challenged conduct harmed advertisers through higher prices,
22 reduced output, or lower quality in the alleged social advertising market. Because he failed to do
23 so—and did not even try—his opinion that the challenged conduct resulted in anticompetitive
24 effects must be excluded. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th
25 Cir. 2003) (affirming lower court's exclusion of plaintiff's expert opinion as irrelevant upon
26 finding that expert's failure to offer testimony relevant to the proper legal standards fatal); *United
27 States v. Apple, Inc.*, No. 1:12-cv-02826, Dkts. 262, 265 at 32:9-35:24 (S.D.N.Y.) (granting motion
28

to exclude expert economist whose testimony depended on application of a "faulty legal assumption" about the governing standard and, as a result, was "irrelevant in this case").

## II. THE COURT SHOULD EXCLUDE KLUMPP'S NON-ECONOMIC OPINIONS

Separately, Klumpp's opinions regarding the individual challenged conduct he analyzed are each inadmissible on their own. The Court should exclude Klumpp's opinions concerning Meta's (i) alleged deception of the FTC with respect to its so-called "███████████████," (ii) Facebook Research app ("FBR App")[2], (iii) API agreements, and (iv) alleged agreement with Netflix and the Network Bidding Agreement ("NBA") with Google.

### A. Klumpp's Speculative Opinion As To What The FTC Would Have Done Had It Known About Meta's F3 Project Should Be Excluded

Klumpp's reports address Meta's development of the "Facebook Feature Framework" or "F3"—an improvement of Meta's machine learning infrastructure that Advertisers describe as a "█████████████████████." Ex. 1, Klumpp Rep. ¶¶171, 179. He claims ███████████████████████████████████████████████████████████████████████████████████████████████████" Id. ¶¶178-180. Klumpp opines that if the FTC had known the supposed truth about Meta's "█████████████████████████████████████████████████████████████████████████████████," which would have then increased competition in the alleged social advertising market, eroding Meta's alleged monopoly. Id. ¶182. But Klumpp fails to account for the fact that the FTC lacks the authority to unilaterally compel divestiture. See FTC, *A Brief Overview of the Federal Trade Commission's Investigative, Law Enforcement, and Rulemaking Authority*, https://www.ftc.gov/about-ftc/mission/enforcement-authority (last visited April 5, 2024)

---

[2] Advertisers claim that the output of Meta's In-App Action Panel (IAAP) program was the creation of the Facebook Research App. Ex. 3, Klumpp Tr. 78:19-79:9 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

**PUBLIC REDACTED VERSION**

1  ("Divestiture orders become final after all judicial review is complete."). Klumpp also fails to
2  account for the fact that even where the FTC seeks divestiture, resolution often takes years, as
3  evidenced by the FTC's lawsuit against Meta in the District of Columbia seeking the divestiture
4  of Instagram and/or WhatsApp, which has been pending for over three years. *See FTC v. Meta*
5  *Platforms, Inc.*, No. 1:20-cv-3590-JEB (D.D.C.).

6  Courts "routinely reject[]" this sort of conjecture about what an agency likely would have
7  done under a hypothetical set of facts because it is "unreliable and speculative." *AIG Ret. Servs.,*
8  *Inc. v. Altus Fin. S.A.*, 2011 WL 13213589, at *2 (C.D. Cal. Sept. 26, 2011) (citing *Twin Cities*
9  *Bakery Workers Health and Welfare Fund v. Biovail Corp.*, 2005 WL 3675999 (D.D.C Mar. 31,
10  2005) (concluding that opinions regarding what the FDA would do under a particular set of facts
11  were speculative, unreliable, and inadmissible); *CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
12  424 F. Supp. 2d 1229, 1236 (E.D. Cal. 2005) (excluding expert opinions predicting the future
13  actions of the FCC as speculative); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545-
14  546, 556-557 (S.D.N.Y. 2004) (concluding that expert opinions as to what the FDA might have
15  done in hypothetical circumstances are speculative and inadmissible)). Presumably, that is
16  particularly true when the expert opines that the agency would take an act that is beyond its
17  authority.

18  Here, Klumpp repeatedly conceded that any testimony he could offer about the FTC would
19  rest on speculation alone. Klumpp admits ████████████████████████████████
20  ████████████████████████████.
21  ████████████████████████████████████████████████
22  ████████████████████████████████████████████████
23  Ex. 3, Klumpp Tr. 196:17-22. Klumpp also admits ████████████████████████
24  ████████████████████████
25  ████████████████████████████████████████████████
26  ████████████████████████
27  ████████████████████████████████
28

1  *Id.* 209:10-15. And Klumpp ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  *Id.* 197:7-15. Because Klumpp's opinion as to what the FTC might have done under a certain set of hypothetical facts "amount[s] to mere speculation regarding [the FTC's] future behavior," it should be excluded as inherently inadmissible, unreliable, and speculative. *State of New York v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 791 (S.D.N.Y. 2019) (holding that irrelevant or unreliable expert testimony predicting future FCC regulatory action would be excluded).

**B.   Klumpp's Opinion That Meta Misappropriated Trade Secrets Through Its FBR App Is Legal Opinion Masquerading As Economic Analysis**

Klumpp opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under the U.S. Patent and Trademark Office's definition of a trade secret. Ex. 1, Klumpp Rep. ¶59. But neither Klumpp, Advertisers' putative technical expert Dr. Jakobsson, nor Advertisers themselves identify with any specificity (because they do not know) what the supposed trade secrets are. Klumpp's background in economics leaves him wholly unqualified to ascertain whether information is a trade secret or to opine on Meta's supposed misappropriation of a trade secret.

First, Klumpp lacks the technical and legal expertise necessary to apply the USPTO's criteria to opine on the existence of a trade secret. Klumpp's entire analysis of whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* ¶58. The assessment of key elements of those

1  criteria is wholly outside the realm of economics,[3] namely: whether the information at issue (i) is
2  generally known; (ii) has value to others who cannot legitimately obtain the information; and
3  (iii) is subject to reasonable efforts to maintain its secrecy. Klumpp's *economic* tools cannot
4  answer these questions.

5  Beginning with the first USPTO criteria, economic theory cannot establish whether a
6  particular piece of information is "generally known" to competitors (or anyone). Determining
7  whether information is "generally known" requires a comprehensive analysis of industry literature
8  and what others in the industry knew at the relevant time. *See Atmel Corp. v. Info. Storage Devices,*
9  *Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999) (excluding industry expert's opinion on whether
10 information was "generally known" where he had not "educat[ed] himself on the universe of
11 literature in the relevant time frame … or [on] what others in the industry generally knew").
12 Klumpp admits that he ███████████████████████████████████████
13 ███████████████████████ Rather, he incorrectly opined that ██████████████████
14 ████████████████████████████████████████████████████████████
15 █ Ex. 3, Klumpp Tr. 128:12-22 ("████████████████████████████████
16 ████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████
20 ██████████████████████████████████████"). Because Klumpp did not apply
21 economic expertise in forming this opinion and did not conduct the requisite industry-based
22 analysis, his opinion that ████████████████████████████████████ is unreliable
23 and speculative and should be excluded.

24 Economic theory also does not address the second USPTO criteria on whether access to
25 information can be "legitimately obtain[ed]," which requires a complex examination of legal rights

---

[3] Perhaps recognizing this, Advertisers have also offered a putative technical expert, Jakobsson. His opinions suffer from a host of overlapping, and additional, problems that are the subject of a concurrently-filed *Daubert* challenge.

1  and analysis of whether such information could be obtained through alternative sources, including
2  through reverse engineering or independent derivation. *See, e.g.*, *Allied Erecting & Dismantling
3  Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 704 (6th Cir. 2015) ("Third party discovery
4  through 'proper means,' including through observation of the item or acquiring and reverse
5  engineering a product, destroys a trade secret." (citing Uniform Trade Secrets Act § 1 cmt.)); *Carl
6  Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2019 WL 11499334, at *4 (N.D. Cal. Nov. 13, 2019).
7  Here again, Klumpp claimed that ███████████████████████████████████████
8  ███████████████████. Ex. 3, Klumpp Tr. 130:25-132:9 ("████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████"). That has nothing to do with
14 economics.

15      Finally, there is no economic methodology or theory for evaluating whether "efforts to
16 maintain" information's "secrecy" are "reasonable," which instead requires an analysis of the
17 technical measures employed by the target company to prevent disclosure. *See WeRide Corp. v.
18 Kun Huang*, 379 F. Supp. 3d 834, 847 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D.
19 Cal. Nov. 5, 2019) (listing technical restrictions placed on disclosure of source code in assessing
20 the reasonableness of efforts to maintain secrecy). This is a fundamentally technical question
21 outside Klumpp's claimed area of expertise.

22      Second, Klumpp's conclusion that Meta misappropriated Snap's "trade secret" represents
23 an inadmissible legal opinion, despite Klumpp's attempts to suggest that he is only offering his
24 opinion from an "████████████████." The terms "trade secret" and "property" have specialized
25 meanings in law, such that Klumpp's conclusion that the information acquired through the FBR
26 App "██████████████████████████████████████" is impermissible. *See United
27 States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("[A]n expert cannot testify to a matter of
28 law amounting to a legal conclusion."); *CZ Servs. v. Express Scripts Holding Co.*, 2020 WL

4518978, at *2 (N.D. Cal. Aug. 5, 2020) (Donato, J.) ("An expert may not give opinions that are legal conclusions, or attempt to advise the jury on the law." (citations omitted)). Courts considering similar arguments have seen through experts' attempts to save their inadmissible legal opinions by claiming they are purely factual. *See Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 832-33 (N.D. Cal. 2021) (rejecting defendant's argument that its expert did "not provide any legal conclusions in his report" as to whether plaintiff's information constituted a trade secret, and precluding expert witness from "testify[ing] that [plaintiff's] allegedly stolen confidential information are not trade secrets"); *Proofpoint, Inc. v. Vade Secure, Inc.*, 2021 WL 2383574, at *2 (N.D. Cal. June 10, 2021) (precluding expert "from opining that any of the defendants misappropriated plaintiffs' trade secrets" as such testimony would improperly invade the province of the jury).

### C. Klumpp's Opinion That "Integration Partners" Reduced Investment in Competing Products Based On Litigation Risk Has No Basis in Economics

Klumpp's opinion regarding Meta's API agreements is similarly unreliable. Klumpp opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ thereby maintaining Meta's alleged social advertising monopoly. But that opinion is based on nothing more than Klumpp's (i) unqualified legal interpretation of contractual terms, and (ii) unqualified technical opinion as to ▮▮▮▮▮▮▮▮▮▮.

First, Klumpp is unqualified to opine on the legal meaning of Meta's contracts. Klumpp opines that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 1, Klumpp Rep. ¶153. Specifically, Klumpp opines that the agreements ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶165. This opinion depends on two unsubstantiated and speculative logical leaps about Meta's legal strategies and unqualified legal interpretations, both of which are

1   devoid of any economic reasoning: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮; and (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 3, Klumpp Tr. 183:8-25

3   (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮"). Matters of contractual interpretation are outside the purview of expert

7   testimony. *See CZ Servs.*, 2020 WL 4518978, at *4 ("[T]estimony about contract compliance

8   would necessarily implicate a legal conclusion."); *see also PMI Mortg. Ins. Co. v. Am. Int'l*

9   *Specialty Lines Ins. Co.*, 291 F. App'x 40, 41 (9th Cir. 2008) (holding that the expert testimony

10  "went to the interpretation of the underlying settlement agreement, a contract, an ultimate question

11  of law upon which the opinion of an expert may not be given"); *PixArt Imaging, Inc. v. Avago*

12  *Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *6 (N.D. Cal. Oct. 27, 2011) ("[A]n

13  expert witness should not be allowed to opine on the meaning of a contract or the rights of a party

14  to a contract.").

15       *Second*, Klumpp claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

18  Ex. 1, Klumpp Rep. ¶¶163-164. Whether that is so depends on technical and legal questions about,

19  among other things, the data being used and the parties' contractual rights and duties concerning

20  the data at issue—not economic questions—on which Klumpp is unqualified to opine. Klumpp's

21  opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮ is nothing more than impermissible speculation and should be excluded. *See*

23  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (affirming district

24  court's exclusion of experts whose opinions were based on "personal opinions and speculation

25  rather than on [] systematic assessment" and were "unsupported by the facts").

**D.     Klumpp's Opinions That (1) Meta's Supposed Agreement With Netflix Was Anticompetitive And (2) The NBA Advantaged Meta's Ability To Bid On Ad Impressions Are Inadmissible Because They Fail To Assess The Relevant Agreements**

In his two remaining opinions on monopoly maintenance, Klumpp opines on the purported effects of contracts he has never reviewed, and, with respect to the Netflix agreement, doesn't even know exists. Klumpp's opinions on their effects are therefore neither relevant nor reliable and should be excluded. *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010) ("The trial judge must perform a gatekeeping function to ensure that the expert's proffered testimony is both reliable and relevant.").

First, Klumpp purports to assess the effects of an alleged unwritten agreement with Netflix. But Klumpp never reviewed the alleged agreement in forming his opinions because Advertiser Plaintiffs have no evidence that such an agreement even existed. Klumpp recognizes this fact in his report, stating: [REDACTED] Ex. 1, Klumpp Rep. ¶125. Of course, Klumpp cannot competently analyze whether the made-up agreement includes terms that give rise to an anticompetitive effect because he cannot review or analyze the purported terms. *See Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *20 (N.D. Cal. May 14, 2021) (granting motion to exclude expert testimony as unreliable and holding that "[t]he flaw in [the expert]'s opinion is precisely that the underlying material was *not* communicated to him and he did *not* review it" (emphasis in original)).

This is especially true because, in Klumpp's haste to conclude that this made-up agreement resulted in [REDACTED], he failed to even consider alternative and economically rational reasons for [REDACTED]. *See* Ex. 3, Klumpp Tr. 288:2-7 ("[REDACTED]."); 288:21-289:11 ("[REDACTED]

**PUBLIC REDACTED VERSION**

1 ■■■■■."); *see also Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (excluding expert report where expert "d[id] not actually consider confounding factors" and "failed to consider and rule out other sources [of injury] at all"). The Court should not permit Advertisers to introduce—with the imprimatur of expert testimony, no less—opinions that some hypothetical agreement that Klumpp has never seen with hypothetical terms that Klumpp never reviewed somehow allowed Meta to maintain its purported monopoly. *See Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (affirming exclusion of expert's opinions as "speculative", in part because of "his inability to dismiss various other possible causes" of the alleged harm).

Second, Klumpp's opinions on the NBA should also be excluded. Klumpp opines that Meta ■■■■■. Ex. 1, Klumpp Rep. ¶¶98-101. According to Klumpp, ■■■■■." Ex. 3, Klumpp Tr. 211:4-212:1.

Klumpp acknowledges the obvious point that ■■■■■. *Id.* 223:16-23 ("■■■■■"). Klumpp admitted in his deposition that ■■■■■. *See id.* 230:18-23.

Perhaps recognizing that his failure to evaluate these key questions is fatal to his opinions, Klumpp pivoted to asserting that ■■■■■. *Id.* 227:1-9 ("■■■■■

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████"). That has the burden of proof exactly

3 backwards. But in all events, what is clear from Klumpp's testimony is that he had not actually

4 reviewed Meta's purported competitors' terms, and so could not possibly have ████████

5 ████████████████████████████████████████████. Klumpp's failure

6 to do so critically undermines the reliability of his opinion. *See, e.g.*, *Perry v. Schwarzenegger*,

7 704 F. Supp. 2d 921, 950 (N.D. Cal. 2010), *aff'd sub nom. Perry v. Brown*, 671 F.3d 1052 (9th

8 Cir. 2012) (excluding expert's opinions where "[expert's] opinions [we]re not supported by

9 reliable evidence or methodology and [expert] failed to consider evidence contrary to his view in

10 presenting his testimony.").

## CONCLUSION

For the foregoing reasons, the Court should exclude Klumpp's testimony in full.

| | | |
|---|---|---|
| 1 | Dated: April 5, 2024 | Respectfully submitted, |
| 2 | | By: */s/ Sonal N. Mehta* |
| 3 | | SONAL N. MEHTA (SBN 222086) |
| 4 | | Sonal.Mehta@wilmerhale.com |
| | | WILMER CUTLER PICKERING HALE |
| 5 | | AND DORR LLP |
| | | 2600 El Camino Real, Suite 400 |
| 6 | | Palo Alto, California 94306 |
| 7 | | Telephone: (650) 858-6000 |
| 8 | | DAVID Z. GRINGER (*pro hac vice*) |
| | | David.Gringer@wilmerhale.com |
| 9 | | ROSS E. FIRSENBAUM (*pro hac vice*) |
| | | Ross.Firsenbaum@wilmerhale.com |
| 10 | | RYAN CHABOT (*pro hac vice*) |
| | | Ryan.Chabot@wilmerhale.com |
| 11 | | PAUL VANDERSLICE (*pro hac vice*) |
| | | Paul.Vanderslice@wilmerhale.com |
| 12 | | WILMER CUTLER PICKERING HALE |
| 13 | | AND DORR LLP |
| | | 7 World Trade Center |
| 14 | | 250 Greenwich Street |
| | | New York, New York 10007 |
| 15 | | Telephone: (212) 230-8800 |
| 16 | | ARI HOLTZBLATT (*pro hac vice*) |
| | | Ari.Holtzblatt@wilmerhale.com |
| 17 | | MOLLY M. JENNINGS (*pro hac vice*) |
| | | Molly.Jennings@wilmerhale.com |
| 18 | | WILMER CUTLER PICKERING HALE |
| 19 | | AND DORR LLP |
| | | 2100 Pennsylvania Avenue NW |
| 20 | | Washington, DC 20037 |
| | | Telephone: (202) 663-6000 |
| 21 | | |
| 22 | | MICHAELA P. SEWALL (*pro hac vice*) |
| | | Michaela.Sewall@wilmerhale.com |
| 23 | | WILMER CUTLER PICKERING HALE |
| | | AND DORR LLP |
| 24 | | 60 State Street |
| | | Boston, MA 02109 |
| 25 | | Telephone: (617) 526-6000 |
| 26 | | |
| 27 | | *Attorneys for Defendant Meta Platforms, Inc.* |
| 28 | | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2024, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:  */s/ Sonal N. Mehta*
      Sonal N. Mehta