

| | |
|---|---|
| **BATHAEE DUNNE LLP**<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>(Additional counsel on signature page)<br><br>*Interim Co-Lead Counsel for the Advertiser Classes* | **SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT  06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>(Additional counsel on signature page) |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:20-cv-08570-JD<br><br>Hon. James Donato<br><br>**ADVERTISER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE OPINION TESTIMONY OF DR. CATHERINE TUCKER**<br><br>Hearing Date: June 20, 2024<br><br>Hearing Time: 10:00 a.m.<br><br>Courtroom 11, 19th Floor |

# NOTICE OF MOTION AND MOTION TO EXCLUDE
# OPINION TESTIMONY OF DR. CATHERINE TUCKER

PLEASE TAKE NOTICE that on June 20, 2024, at 10:00 a.m., before the Honorable James Donato, of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Courtroom 11, 19th Floor, Advertiser Plaintiffs Affilious, Inc., Jessyca Frederick, Mark Berney, 406 Property Services, PLLC, Mark Young, and Katherine Looper, on behalf of themselves and all others similarly situated, will and now do move the Court for an order excluding paragraphs 165-70, 192, and 194-203 of the Advertiser Merits Report of Catherine Tucker, paragraph 37 of the Advertiser Merits Rebuttal Report of Catherine Tucker, and related testimony.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all filed supporting declarations and exhibits, the records, pleadings, and other documents on file in this consolidated action, and any argument that may be presented at or before the hearing on this Motion.



# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................................1

BACKGROUND ........................................................................................................................................1

        A.       Facebook's Price Increases, CPM, and Dr. Williams's Testimony .............1

        B.       Dr. Tucker's Merits Reports and Deposition Testimony ............................3

ARGUMENT ..............................................................................................................................................4

CONCLUSION ...........................................................................................................................................9



## TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).................................................................................................... 9

**Rules**

FED. R. EVID. 702 ...............................................................................................................4-5

|   |   |
|---|---|
| 1 | **PRELIMINARY STATEMENT** |
| 2 | Advertiser Plaintiffs respectfully move to exclude certain merits testimony of Defendant Meta |
| 3 | Platform, Inc.'s ("Facebook") expert Catherine Tucker. Dr. Tucker has opined that evaluating |
| 4 | Facebook's ad prices on a CPM[1] basis is flawed, and that ███████ ███████ |
| 5 | at Facebook during the Class Period—with █ ███████████████████████████ |
| 6 | ██████████████████████████████████████████████—offers no |
| 7 | meaningful information regarding Facebook Ads' product market or monopoly power. However, at |
| 8 | deposition, Dr. Tucker admitted that *irrespective of ad type or advertiser goal*, "███████ |
| 9 | ██████████████████████████████████" Ex. 1 ("Tucker Tr.") 215:14- |
| 10 | 16, and further testified that ████████████████████████████████████ |
| 11 | ██████" *id.* 201:1-6. At the same time, when pressed to unpack her own conception of what |
| 12 | "price" means for a Facebook advertisement, Dr. Tucker testified that the relevant "price" was the |
| 13 | "█████████████████████ *id.* 204:15-18, ██████████████ that would |
| 14 | depend on an advertiser's "████████████████████████████████████ |
| 15 | ███████████████████" *id.* 207:13-208:5. |
| 16 | Dr. Tucker's nebulous conception of "price"—created for litigation because Facebook's |
| 17 | actual metric for companywide ad pricing (CPM) shows ███████ Facebook ad prices during |
| 18 | the Class Period—is not (and could not) be tracked by Facebook, does not represent the sums actually |
| 19 | paid to Facebook by ad purchasers, and does not match any widely-accepted understanding |
| 20 | (commonsense, economic, or otherwise) of what the word "price" means. Dr. Tucker's opinions and |
| 21 | testimony based on this junk science conception of "price," memorialized in paragraphs 165-70, 192, |
| 22 | and 194-203 of her merits report and 37 of her merits rebuttal, should be excluded under *Daubert*. |
| 23 | **BACKGROUND** |
| 24 | **A.    Facebook's Price Increases, CPM, and Dr. Williams's Testimony** |
| 25 | This is an antitrust case challenging Facebook's monopolization of the United States Social |
| 26 | Advertising Market, a distinct submarket of the overall market for online advertising in the United |

---

[1] CPM stands for cost per mille—the cost per 1,000 impressions of an advertisement.

1  States. As relevant here, Advertiser Plaintiffs and Facebook have each designated economic experts
2  concerning market definition, monopoly power, and price inflation. Advertiser Plaintiffs offer Dr.
3  Michael Williams, and Facebook offers Dr. Catherine Tucker; each has submitted two merits expert
4  reports in connection with the Advertiser Plaintiffs' case. *See* Ex. 2 ("Tucker Rpt."), Ex. 3 ("Tucker
5  Rebuttal Rpt."), Ex. 4 ("Williams Rpt."), Ex. 5 ("Williams Rebuttal Rpt.").

6      Facebook's ads, companywide, are sold through an auction. *See* Williams Rpt. ¶ 184; Ex. 6
7  (PALM-012438930) (███████████████████████████████) at PALM-
8  012438941. Facebook's ad tools offer advertisers a variety of ways to optimize their ad campaigns
9  (for example, cost per click, cost per action, or cost per mille), *see* Williams Rpt. ¶¶ 181-96, and
10 Facebook's "████████████████████████████████████████████████████████
11 ████████████████████████████████████████," Ex. 6 at PALM-012438941. But
12 eventually a given ad placement on a Facebook property must actually be sold, and that sale must
13 actually have a price paid by the ad buyer. To solve this complexity, Facebook has ████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████. Williams Rpt. ¶¶ 183-96. Both parties' experts agree that
16 Facebook's ads, ████████████████████████████████████████████████████.
17 *See* Williams Rpt. ¶¶ 187-88; Tucker Tr. 215:14-16 ("████████████████████████████
18 ████████████████████"). It is also uncontested that Facebook itself ████████████
19 ████████████████████████████████████████. *See, e.g.*, Ex. 7 (PX 581 & 582) at
20 PALM-014094556 (████████████████████████████████████████); Williams Rebuttal
21 Rpt. ¶ 111.

22     Given that Facebook itself ████████████████████████████████████████████
23 ████████████████, Dr. Williams ████████████████████████████████████████
24 ████████████████████████. *See* Williams Rpt. ¶¶ 200-208, 226-28. Dr. Williams analyzed
25 the pricing mechanics of Facebook's ad auction—████████████████████████████████
26 ████████████████████████████████, *id.* ¶¶ 185-96, ████████████████████████
27 ████████████████████████████████████████████████, *id.* ¶ 184—and concluded
28 that ████████████████████████████████████████████████████████████████

1 ██████ Williams Rpt. Fig. 16 (p. 93), ████████████████████████████ *id.* ¶¶ 199-
2 208, ████████████████████████████████████, *id.* ¶¶ 226-28, ██████████
3 ██████████████████████, Ex. 8 ("Williams Class Reply Rpt.") ¶¶ 80-83; Williams
4 Rebuttal Rpt. ¶¶ 110-11, 118-24.

### B.  Dr. Tucker's Merits Reports and Deposition Testimony

On January 12, 2024, Dr. Tucker served a merits expert report arguing that Dr. Williams's analysis ███████ to identify a price increase and otherwise evaluate price-related trends in Facebook's ads business was flawed. *See* Tucker Rpt. ¶¶ 165-70, 192, 194-203. According to Dr. Tucker, "████████████████████████████████████████████████████
████████." *Id.* ¶ 167. In Dr. Tucker's telling, Dr. Williams's "██████████████
████████████████████████████████████████████████████████████████" *Id.* ¶ 194.
Dr. Tucker posited that "██████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████" *Id.* ¶ 197.
Dr. Tucker did not offer any alternate, purportedly un-"flawed" price metric that an antitrust economist could or should use to evaluate companywide ad prices at Facebook during the Class Period. *See generally* Tucker Rpt. ¶¶ 165-70, 192-203. Dr. Tucker did not address, or attempt to square with her opinions, the fact that ████████████████████████████████████████
████████████████████████████████████████████████████. *See id.* Dr. Tucker's rebuttal report ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████. Tucker Rebuttal Rpt. ¶ 37.

On February 28, 2024, Dr. Tucker sat for deposition. Under oath, she admitted that ██
████████████████████████████████████████████████████████████████████████████
Tucker Tr. 215:14-16. She admitted that ████████████████████████████████████████
████████. *Id.* 215:17-24. And when pressed as to what, exactly, she envisioned when
████████████████████████████, Dr. Tucker revealed a breathtaking proposition: Dr.
Tucker's ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

3

1  ██████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████████████████
3  ████████████████████████████████████. *See* Tucker Tr. 198:7-212:21.
4  Dr. Tucker's radical view on ad pricing—████████████████████████
5  ████████████████████████—finds no established basis in economic literature, even in
6  connection with quality-adjusted pricing. A quality-adjusted price is just what it sounds like—the
7  price a buyer actually pays, adjusted if applicable for changes in product quality. But Dr. Tucker's
8  conception of "quality-adjusted" price is not a price at all; it is the economic benefit obtained from
9  an advertising purchase. This sum is not paid to Facebook, or any other ad seller. It is not known to
10 Facebook, and it does not impact ███████████████████████████████████
11 █████████████████████████████████████. The economic world posited
12 by Dr. Tucker—█████████████████████████████████████████
13 ████████████████████████████████████████████—is not one
14 based on any sort of factual reality or conceptual rigor. It is a made-up metric, concocted for litigation,
15 to avoid the reality that █████████████████████████████████████
16 ██████████████████████████████████████████████████████
17 ██████████████████████████████████████████████████████
18 █████████████████████.

19    This motion seeks to exclude Dr. Tucker's opinions regarding CPM and Facebook ad pricing
20 in her merits and merits rebuttal reports. *See* Tucker Rpt. ¶¶ 166-70, 192, 194-203; Tucker Rebuttal
21 Rpt. ¶ 37.

## ARGUMENT

23    Federal Rule of Evidence 702 states that "[a] witness who is qualified as an expert by
24 knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise
25 if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific,
26 technical, or other specialized knowledge will help the trier of fact to understand the evidence or to
27 determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the
28 product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application

of the principles and methods of the facts of the case." Dr. Tucker's opinions regarding Facebook's ad prices and CPM, memorialized in paragraph 165-70, 192, and 194-203 of her merits report and paragraph 37 of her merits rebuttal report, do not meet this standard.

As noted in the background section of this motion, Dr. Tucker's merits reports ▋▋▋ *see* Williams Rpt. ¶¶ 200-208, 226-28) ▋▋▋ Tucker Rpt. ¶ 197, ▋▋▋ *id.* ¶ 194; *see generally id.* ¶ 165-70, 192, 194-203; Tucker Rebuttal Rpt ¶ 37. However, as Dr. Tucker admitted at her deposition, ▋▋▋.

▋▋▋

Tucker Tr. 215:14-24 (emphasis added);[2] *see* Williams Rebuttal Rpt. ¶¶ 111; Ex. 8 (PX 581 & 582) at PALM-014094556 ▋▋▋ ). Given this irregularity—▋▋▋—Dr. Tucker was pressed at deposition as to ▋▋▋

---

[2] Objections are omitted throughout this motion.

1  ▮▮▮ This was
2  particularly pressing because Dr. Tucker, ▮▮▮
3  ▮▮▮
4  ▮▮▮. *See* Tucker Rpt. ¶¶ 165-70, 192, 194-203; *see*
5  *also* Tucker Rebuttal Rpt. ¶¶ 37.
6      Upon examination, Dr. Tucker's opinions on price fell apart. That is, Dr. Tucker eventually
7  revealed that ▮▮▮
8  ▮▮▮
9  ▮▮▮
10 ▮▮▮ *See* Tucker Tr.
11 198:70-212:21. ▮▮▮
12 ▮▮▮:
13 ▮▮▮
14 ▮▮▮
15 ▮▮▮.
16
17 Tucker Tr. 203:7-12; *see also id.* 201:16-202:3. Dr. Tucker further testified:
18 ▮▮▮
19 ▮▮▮
20 ▮▮▮
21 ▮▮▮
22 ▮▮▮
23 ▮▮▮
24 ▮▮▮
25 ▮▮▮.
26 ▮▮▮
27 ▮▮▮
28 ▮▮▮

1
2
3
4

5  Tucker Tr. 204:12-205:25. Eventually, Dr. Tucker's opinion reached its logical conclusion—that

6
7

8
9
10
11
12
13
14
15

16  Tucker Tr. 207:13-208:5.

17       Dr. Tucker's conception of
18  —is junk science. According to Dr. Tucker's theory, the "price" of a before-work cup of
19  coffee is the value of the extra productivity the caffeine instills in the drinker. The "price" of a pickup
20  truck is a function of how it's used—days, months, even years after the buyer drives it off the car lot.
21  The "price" of an advertisement depends on the capital structure and employee efficiency of the ad
22  purchaser.
23       But these aren't prices—and no established economic methodology holds that they are. They
24  are *values* of a purchased good or service. Every buyer of a hammer from Lowe's may very well have
25  a different private value for that good—some buyers may use it to build profitable houses, others may
26  wear it as part of a Halloween costume, others still may leave the hammer in their trunk and forget
27  about it—but they all still paid the same price for the hammer: the amount of money they gave to
28

Lowe's to walk out with it. The buyers' respective returns from the hammer are not its price, quality-adjusted or otherwise.

The concept of a "quality-adjusted price" is a real economic concept. Dr. Tucker's ▇▇ concept of pricing is not. Moreover, Dr. Tucker's ▇▇

▇▇. *See* Tucker Rpt. ¶¶ 165-70, 192, 194-203; Tucker Rebuttal Rpt. ¶ 37. When Dr. Tucker ▇▇

The reason Dr. Tucker adopted her private, constructed-for-litigation understanding of "price" for use in Advertiser Plaintiffs' case is evident: ▇▇, *see* Williams Rpt. ¶¶ 183-96, 199-208, 226-28; Williams Rebuttal Rpt. ¶¶ 110-11, ▇▇ Tucker Tr. 201:3-4. To sum things up, Dr. Tucker's own testimony suffices:

▇▇

Tucker Tr. 200:21-201:6 (emphasis added).

▇▇.

Tucker Tr. 215:14-16.

Dr. Tucker's attempt to run from an obviously correct metric for evaluating Facebook ad prices ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is junk science. The Court should exclude it as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## CONCLUSION

For the foregoing reasons, Advertiser Plaintiffs respectfully request that paragraphs 165-70, 192, and 194-203 of the Advertiser Merits Report of Catherine Tucker, and paragraph 37 of the Advertiser Merits Rebuttal Report of Catherine Tucker, as well as any related testimony, be excluded from this case.

Dated: April 5, 2024

| | |
|---|---|
| **BATHAEE DUNNE LLP** | **SCOTT+SCOTT<br>ATTORNEYS AT LAW LLP** |
| By: */s/ Yavar Bathaee*<br>Yavar Bathaee (CA 282388)<br>yavar@bathaeedunne.com<br>Andrew C. Wolinsky (CA 345965)<br>awolinsky@bathaeedunne.com<br>Andrew M. Williamson (CA 344695)<br>awilliamson@bathaeedunne.com<br>Adam Ernette (*pro hac vice*)<br>aernette@bathaeedunne.com<br>Priscilla Ghiță (*pro hac vice*)<br>pghita@bathaeedunne.com<br>445 Park Avenue, 9th Floor<br>New York, NY 10022<br>Tel.: (332) 322-8835<br><br>Brian J. Dunne (CA 275689)<br>bdunne@bathaeedunne.com<br>Edward M. Grauman (*pro hac vice*)<br>egrauman@bathaeedunne.com<br>901 South MoPac Expressway<br>Barton Oaks Plaza I, Suite 300<br>Austin, TX 78746<br>Tel.: (213) 462-2772<br><br>Allison Watson Cross (CA 328596)<br>across@bathaeedunne.com<br>3420 Bristol St, Ste 600<br>Costa Mesa, CA 92626-7133<br><br>*Interim Co-Lead Counsel for the Advertiser Classes* | By: */s/ Amanda F. Lawrence*<br>Amanda F. Lawrence (*pro hac vice*)<br>alawrence@scott-scott.com<br>Patrick J. McGahan (*pro hac vice*)<br>pmcgahan@scott-scott.com<br>Michael P. Srodoski (*pro hac vice*)<br>msrodoski@scott-scott.com<br>156 South Main Street, P.O. Box 192<br>Colchester, CT 06415<br>Tel.: (860) 537-5537<br><br>Patrick J. Coughlin (CA 111070)<br>pcoughlin@scott-scott.com<br>Carmen A. Medici<br>cmedici@scott-scott.com<br>Hal D. Cunningham (CA 243048)<br>hcunningham@scott-scott.com<br>Daniel J. Brockwell (CA 335983)<br>dbrockwell@scott-scott.com<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Tel.: (619) 233-4565<br><br>Patrick J. Rodriguez (*pro hac vice*)<br>prodriguez@scott-scott.com<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Tel.: (212) 223-6444 |
| **LEVIN SEDRAN & BERMAN LLP**<br><br>Keith J. Verrier (*pro hac vice*)<br>kverrier@lfsblaw.com<br>Austin B. Cohen (*pro hac vice*)<br>acohen@lfsblaw.com<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3997<br>Tel.: (215) 592-1500<br><br>*Members of Executive Committee for the Advertiser Classes* | **AHDOOT & WOLFSON, PC**<br><br>Tina Wolfson (CA 174806)<br>twolfson@ahdootwolfson.com<br>Robert Ahdoot (CA 172098)<br>rahdoot@ahdootwolfson.com<br>Theodore W. Maya (CA 223242)<br>tmaya@ahdootwolfson.com<br>Henry J. Kelson (*pro hac vice*)<br>hkelston@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, CA 91505<br>Tel.: (310) 474-9111 |

**FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: April 5, 2024                         By:  */s/ Brian J. Dunne*