**PUBLIC REDACTED VERSION**

WILMER CUTLER PICKERING
HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
 Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
 Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
 Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>                              Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF MARKUS JAKOBSSON**<br><br>Hearing Date: June 20, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

INTRODUCTION .............................................................................................................1

BACKGROUND ...............................................................................................................2

LEGAL STANDARD........................................................................................................4

ARGUMENT ....................................................................................................................5

    I.      Jakobsson Offers Improper And Irrelevant Legal Conclusions.................5

    II.     Jakobsson's Other Opinions Require No Specialized Knowledge................8

          A.    Jakobsson Offers Lay Interpretations Of The Intent, Motives, And States Of Mind Of Corporations And Their Employees............................8

          B.    Jakobsson's Purported Technical Opinions Impermissibly Parrot Advertisers' Counsels' Arguments ............................................................12

CONCLUSION.................................................................................................................15

**PUBLIC REDACTED VERSION**

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple iPod iTunes Antitrust Litig.*,
2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) ................................................................ 7

*Aya Healthcare Serv., Inc. v. AMN Healthcare, Inc.*,
613 F.Supp.3d 1308 (S.D. Cal. 2020)................................................................................ 8

*CZ Servs. v. Express Scripts Holding Co.*,
2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ............................................................... 4, 5

*DataQuill Ltd. v. Handspring, Inc.*,
2003 WL 737785 (N.D. Ill. Feb. 28, 2003) ............................................................. 12, 15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................................... 1, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995).............................................................................................. 8

*Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*,
2023 WL 9659943 (C.D. Cal. July 26, 2023) .................................................................... 6

*DZ Reserve v. Meta Platforms, Inc.*,
2022 WL 912890 (N.D. Cal. Mar. 29, 2022)...................................................................... 4

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .............................................................................................. 7

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ............................................................................................. 7

*In re Capacitors Antitrust Litig.*,
2021 WL 5407452 (N.D. Cal. Nov. 18, 2021) ......................................................... 5, 6, 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................. 5

*Johns v. Bayer Corp.*,
2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)................................................................... 12

*LinkCo, Inc. v. Fujitsu Ltd.*,
2002 WL 1585551 (S.D.N.Y. July 16, 2002) ............................................................ 12, 15

*Miranda v. U.S. Sec. Assocs., Inc.*,
2019 WL 2929966 (N.D. Cal. July 8, 2019)...................................................................... 8

**PUBLIC REDACTED VERSION**

*Nationwide Transport Finance v. Cass Information Systems, Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ........................................................................... 5

*Neo4j, Inc. v. PureThink*,
    2023 WL 7093805 (N.D. Cal. Oct. 25, 2023) ................................................... 11

*Olean Wholesale Grocery Coop, Inv. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ............................................................................... 4

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-4910-JD, (N.D. Cal. Jan. 12, 2015) ........................................... 4, 12

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*,
    2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ......................................... 9, 10, 11

*Planned Parenthood Fed. of America, Inc. v. Ctr. for Med. Progress*,
    402 F. Supp. 3d 615 (N.D. Cal. 2019) ............................................................... 6

*Sanchez v. Jiles*,
    2012 WL 13005996 (C.D. Cal. June 14, 2012) ................................................. 7

*Stone Brewing Co. v. MillerCoors*,
    2020 WL 907060 (S.D. Cal. Feb. 25, 2020) ...................................................... 8

*Sundby v. Marquee Funding Grp.*,
    2020 WL 5535357 (S.D. Cal. Sept. 15, 2020) ................................................... 6

*United States v. Fuentes-Cariaga*,
    209 F.3d 1140 (9th Cir. 2000) ............................................................................ 4

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) .............................................................................. 7

*United States v. Pacific Gas & Elec. Co.*,
    2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) ................................................ 8, 9

*United States v. Perkins*,
    470 F.3d 150 (4th Cir. 2006) .............................................................................. 6

*United States v. Tamman*,
    782 F.3d 543 (9th Cir. 2015) .......................................................................... 2, 5

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ................................... 4, 9, 12, 15

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C. § 2511 ...................................................................................................... 5

Fed. R. Evid. 402 ...................................................................................................... 7

**PUBLIC REDACTED VERSION**

Fed. R. Evid. 403 ................................................................................................................ 7

Fed. R. Evid. 702 ............................................................................................................ 1, 7

**OTHER AUTHORITIES**

Instagram, *Introducing Instagram Stories*, https://about.instagram.com/blog/
          announcements/introducing-instagram-stories (Aug. 2, 2016) .......................................... 2

Wired, *All the Social Media Giants Are Becoming the Same*,
          https://www.wired.com/story/social-media-giants-look-the-same-tiktok-twitter-
          instagram/ (Nov. 30, 2020) ................................................................................................ 3

**PUBLIC REDACTED VERSION**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 20, 2024, at 10:00 a.m., Defendant Meta Platforms, Inc. will move the Court for an order granting Meta's Motion to Exclude the Expert Testimony and Opinions of Advertiser Plaintiffs' putative expert Markus Jakobsson.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Meta respectfully requests that the Court exclude the testimony of Markus Jakobsson in full.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Expert witnesses must offer testimony based on specialized knowledge to help the jury resolve a relevant issue in the case. Markus Jakobsson, Advertiser Plaintiffs' putative "cybersecurity expert," does not.

Advertisers allege that Meta used data acquired from panelists who signed up to use a market research tool, Meta's Facebook Research ("FBR") App,[1] to copy Snapchat's "Stories," a public feature of the Snapchat app. Advertisers have not identified the data collected by the FBR App or made any effort to connect the data Meta collected through the FBR App to Meta's development of any particular product. Indeed, Meta rolled out Instagram Stories before launching, or receiving any data from, the FBR App. Ex. 2, Jakobsson Deposition ("Tr."), 221:9-25, 223:7-14.[2] Unable to make this connection and substantiate their copying allegation (which they cannot do), Advertisers engage in a sideshow, focusing instead ████████████████████ ████████████████████████████████████

Enter Jakobsson. Advertisers hired Jakobsson ostensibly as a technical expert to opine on how the FBR App operates. Ex. 1, Jakobsson Report ("Rep.") ¶28; Ex. 3, Jakobsson Rebuttal ("Rebuttal") ¶29. But it is apparent that the true purpose of his opinions is not to describe the technical operation of the FBR App but instead to serve as a mouthpiece to Advertiser Plaintiffs'

---

[1] Advertisers and Jakobsson refer to the FBR App and its supporting technology as Meta's "In App Action Panel" ("IAAP") program. *E.g.*, Dkt. 735; Ex. 1, Jakobsson Rep. ¶27.

[2] Unless otherwise noted, "Ex." citations reference exhibits to the Gringer Declaration submitted herewith, emphasis is added, and objections are omitted for deposition citations.

**PUBLIC REDACTED VERSION**

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████ Ex. 1, Rep. ¶¶27-28, 36-37, 42, 46, 111-112, 116, 132; Ex. 3,

7 Rebuttal ¶¶29-30, 42-43, 45-46, 48, 50, 52, 61, 79, 90-91, 96-97, 108-109, 115, 143, 149, 150,

8 152. These opinions are plainly improper legal conclusions and inadmissible, especially given that

9 they are being offered by an expert who admits he has no legal expertise. *See United States v.*

10 *Tamman*, 782 F.3d 543, 552 (9th Cir. 2015).

11       The remainder of Jakobsson's proposed testimony consists of ██████████████████

12 ████████████████████████████████████████████████████

13 ███████████████████████████████████████████ In so

14 doing, he parrots—verbatim, in paragraphs copied directly from Advertisers' interrogatory

15 responses—Advertisers' counsels' arguments and factual contentions. Jakobsson has no basis to

16 speculate on Meta's corporate intent or its employees' states of mind, and has no business

17 testifying merely to narrate Advertisers' version of the record.

18       Jakobsson's opinions should thus be excluded in their entirety. At a minimum, the Court

19 should bar Jakobsson from offering any testimony commenting on ██████████████████

20 ██████████████████

21                                    **BACKGROUND**

22       The FBR App was a paid market research tool through which panelists who signed up to

23 participate agreed to install the FBR App and consented to send Meta data about how they used

24 other apps on their phones. Advertisers contend that Meta used data from the FBR App for "the

25 development and deployment of Stories," a short-form ephemeral content feature that Meta

26 launched on August 2, 2016,[3] when the FBR App "██████████████████████" and had

27 _____

28 [3] Instagram, *Introducing Instagram Stories* (Aug. 2, 2016), https://about.instagram.com/blog/
announcements/introducing-instagram-stories.

**PUBLIC REDACTED VERSION**

not yet launched. Ex. 2, Tr. 221:9-25. Meta was not alone in adopting a Stories feature similar to the one on Snapchat's public-facing app—many other companies did the same.[4]

Though Advertisers claim Meta anticompetitively used data collected by the FBR App to copy Snapchat's Stories, they offer Jakobsson's testimony under the guise of explaining an unrelated point: the "███████████" the FBR App used to collect data. Ex. 1, Rep. ¶28. But Jakobsson's technical evaluation was very limited: he admits that █████████████████ ████████████████████████████████████████. Ex. 2, Tr. 21:15-19 █████████████████████████████████████████████████████████ *id.* at 22:2-6 ("██████████ ███████████████████████████████████████████████████████████ ███████"); *id.* at 22:20-24 ("████████████████████████████████████ ████████████████████████████████████████████████████████████").

Jakobsson's principal opinions are less concerned with how the app operates than with his ████████████████████████████. His report is replete with ████████████ █████████████████████████████████████████████████████████████ ████████████████████ including, for example, that:

- ████████████████████████████████ *Id.* ¶36; *see also* Ex. 3, Rebuttal ¶80 (█████████████████████████████).

- ██████████████████████████████████████ Ex. 1, Rep. ¶¶37, 116; *see e.g.*, *id.* ¶¶126, 135 ██████████████████.

- █████████████████████████████████████████ Ex. 3, Rebuttal ¶¶79, 90; *see also id.* ¶80.

- ██████████████████████████████████████ Ex. 3, Rebuttal ¶52; *see also id.* ¶¶36, 42.

- ███████████████████████████ Ex. 3, Rebuttal ¶¶108, 109, 150, 159; *see also id.* ¶52 (████████████████████████), ¶80 (████ ████"),

---

[4] Between 2016 and 2022, for example, YouTube, WeChat, LinkedIn, Twitter, TikTok, and Signal all added Stories features. *See, e.g.*, Arielle Pardes, *All the Social Media Giants Are Becoming the Same*, Wired (Nov. 30, 2020) https://www.wired.com/story/social-media-giants-look-the-same-tiktok-twitter-instagram/.

**PUBLIC REDACTED VERSION**

¶90 (█████████████████████████████████), ¶93 (█████████████████████████████████).

Beyond these unqualified legal opinions, Jakobsson reads in documents and testimony to opine on non-technical issues, including ████████████████████████████████ ████████████████████████████████████████████████████ *See, e.g.*, Ex. 1, Rep. ¶87 ("████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████"), ¶108 ("████████████████████████████████████████████████████ ████████████████"); Ex. 3, Rebuttal ¶¶36, 45-46; *see* Ex. 1, Rep. ¶¶31-112, 118-140. These opinions, which do not require any specialized expertise, are based entirely on his review of a limited subset of the record ████████████████ Ex. 2, Tr. 31:4-14; *see also id.* at 27:6-12; Ex. 1, Rep. ¶30; Ex. 3, Rebuttal ¶36. In so doing, Jakobsson frequently parrots—verbatim—Advertisers' arguments from briefs and interrogatory responses. *E.g.*, *compare* Ex. 1, Rep. ¶107, *with* Ex. 4, at 935.

**LEGAL STANDARD**

The party offering expert testimony bears the burden of proving that it is admissible. *Olean Wholesale Grocery Coop., Inc v. Bumble Bee Foods LLC*, 31 F.4th 651, 683 (9th Cir. 2022) (en banc). "An expert may not give opinions that are legal conclusions, or attempt to advise the jury on the law." *CZ Servs. v. Express Scripts Holding Co.*, 2020 WL 4518978, at *2 (N.D. Cal. Aug. 5, 2020) (Donato, J.) (citations omitted). They also "cannot simply vouch for one side's version of the facts." *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910-JD, Dkt. 469 at 1 (N.D. Cal. Jan. 26, 2015) (Donato, J.). Instead, an expert must offer "specialized or scientific expertise," or something "beyond the typical knowledge and experience of a jury." *DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (Donato, J.). "When an expert offers general testimony about an issue within the ken of the jury's knowledge," *United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 n.3 (9th Cir. 2000), or parrots "the same arguments that the lawyers can make," *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *2 (N.D. Cal. Nov. 6, 2017),

1  it should be excluded.

2                                    **ARGUMENT**

3  **I.    JAKOBSSON OFFERS IMPROPER AND IRRELEVANT LEGAL CONCLUSIONS**

4          Jakobsson argues that █████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████████████

6  ██████████████ Ex. 1, Rep. ¶¶36-37; *see also id.* ¶116. He repeatedly ██████████

7  ██████████ *Id.* ¶¶27, 36-37, 112, 116, 132; Ex. 3, Rebuttal ¶¶29, 45-46, 48, 50, 52, 61, 91, 96,

8  109, 115, 149-152. This is straightforwardly a legal opinion that Jakobsson may not offer.

9  *Tamman*, 782 F.3d at 552 ("[A]n expert cannot testify to a matter of law amounting to a legal

10  conclusion.").

11          The terms ██████████ and █████████████████████████████ have

12  a specialized meaning under the law. As Jakobsson notes several times, ███████████████

13  ████████████████████. Ex. 1, Rep. ¶¶37, 114-116; Ex. 3, Rebuttal ¶43. The

14  elements of a Wiretap Act violation are the "intentional[] intercept[ion]" of "any … electronic

15  communication," 18 U.S.C. § 2511(1)(a); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040,

16  1061-1062 (N.D. Cal. 2012)—█████████████████████████████████████████

17  ████████████. Ex. 1, Rep. ¶¶114-116. All of Jakobsson's opinions on ███████████

18  ██████████ thus concern "strictly legal matters" about which he may not testify. *In re*

19  *Capacitors Antitrust Litig.*, 2021 WL 5407452, at *5 (N.D. Cal. Nov. 18, 2021) (Donato, J.); *see*

20  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (affirming

21  exclusion of opinions that "label the parties' actions as 'wrongful' or 'intentional' under the law");

22  *CZ Servs.*, 2020 WL 4518978, at *2. This is particularly true because ███████████████

23  ██████████████████████████████ *See* Ex. 2, Tr. 17:19-21 ("█

24  ████████████████████████████████████████████████████████████ ").

25          Jakobsson tries to avoid this problem by claiming █████████████████

26  ██████████. Ex. 1, Rep. ¶37; *see also id.* ¶¶114, 116. That, however, is a distinction

27  without a difference, not least of which because ████████████████████████████

28  ██████████████████████████████████ *Id.* ¶¶114 ("██████████

1 ██████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ███████████████████████"); ¶116 █████████████████

4 ███████████████████████████████████████. He does not say

5 how ██████████████████████████████████████████

6 ██████████████████████████████████████████████

7 ██████████████████████████████████████████████

8 ████████ *Id.* He is thus opining on "terms which have 'a specialized meaning' in the context of"

9 ████████████ and "instruct[ing] the reader [of his reports] on 'how to apply the law to the facts

10 of the case.'" *Sundby v. Marquee Funding Grp.*, 2020 WL 5535357, at *7 (S.D. Cal. Sept. 15,

11 2020) (citation omitted). That is not permissible. *Capacitors*, 2021 WL 5407452, at *5.

12 The same is true for Jakobsson's other opinions describing ███████████████████

13 ████████████████ Among other things, Jakobsson engages in ████████████████

14 ████████████████████████████ Ex. 3, Rebuttal ¶¶52, 93, 108, 159. He

15 also offers commentary throughout his reports that the FBR App used technology "████████

16 ██████████████████████████████████████████████

17 ████████████████████████, Ex. 1, Rep. ¶¶30, 72, 105; *see also id.* ¶¶36, 90, 113, 127, ███

18 ██████████████████████████████████████████████

19 ████████████████████████ Ex. 3, Rebuttal ¶¶79, 90; *see also id.* ¶¶78, 81-86, 88. Expert

20 testimony that a party's conduct "'could be' a violation" of applicable laws just as "clearly offer[s]

21 impermissible legal conclusions" as testimony that the conduct actually was a violation. *Diamond*

22 *Resorts U.S. Collection Dev., LLC v. Pandora Marketing, LLC*, 2023 WL 9659943, at *17-18

23 (C.D. Cal. July 26, 2023) (citation omitted); *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med.*

24 *Progress*, 402 F. Supp. 3d 615, 720-721 (N.D. Cal. 2019) (excluding opinions that "verge[d] on

25 legal conclusions"). Further, testimony that "involves the use of terms with considerable legal

26 baggage" will "nearly always invade[] the province of the jury" and should be excluded. *United*

27 *States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006) (listing "negligent," "fraudulent and

28 manipulative scheme," and "discrimination" as examples of such terms). The jury clearly could

**PUBLIC REDACTED VERSION**

1    not "ascribe meanings to" Jakobsson's accusations that ████████████████ "that

2    are separate from their legal significance," so those opinions must be excluded. *Sanchez v. Jiles*,

3    2012 WL 13005996, at *18 (C.D. Cal. June 14, 2012).

4         Allowing Jakobsson to testify that ██████████████████████████████

5    ██████████████████████████████████████, would condone improper expert

6    testimony on a legal conclusion. It would also be highly prejudicial for Jakobsson to offer such

7    testimony under the veneer of expert opinion because it "would confuse and mislead the jury."

8    *Capacitors*, 2021 WL 5407452, at *5 (excluding expert's legal conclusions under FRE 402 and

9    403). In addition to testing the reliability and relevance of expert opinion under Rule 702, courts

10   exercise their gatekeeping role under *Daubert* by determining whether the opinion's "probative

11   value is substantially outweighed by the danger of unfair prejudice" under Rule 403. *Apple iPod*

12   *iTunes Antitrust Litig.*, 2014 WL 4809288, at *4 (N.D. Cal. Sept. 26, 2014); *see also Daubert*, 509

13   U.S. at 595 (judges must "be mindful of other applicable rules," including Rule 403).

14        The risk of prejudice and juror confusion is particularly severe here, because whether

15   ██████████████████████████████████████████████████████ is

16   irrelevant to the *antitrust* claims at issue in this case. For Meta's operation of the FBR App to be

17   actionable exclusionary conduct even under their own theory, Advertisers must show it had an

18   actual "'anticompetitive effect,'" which means that the conduct must "'harm consumers'" in the

19   alleged relevant market. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (quoting *United*

20   *States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)); *see also Epic Games, Inc. v. Apple,*

21   *Inc.*, 67 F.4th 946, 983-984 (9th Cir. 2023). Advertisers do not—and could not—assert that the

22   competitive effects of Meta's operation of the FBR App turn on whether it ████████

23   ██████████████████████████████ Instead, Advertisers' claim hinges on the

24   unrelated contention that Meta's subsequent *use* of the data gathered through the FBR App

25   infringed Snap's "trade secrets" and thereby harmed competition. *See* Meta's Mot. for Summary

26   Judgment and Mot. to Exclude Klumpp, both filed concurrently herewith. Thus, the nature of the

27   technical methods through which Meta obtained that data have no bearing on the competitive

28   effects of its alleged use.

**PUBLIC REDACTED VERSION**

Because Jakobsson's opinions on ███████████████████████ do not "speak[] clearly and directly to an issue in dispute in the case," they must be excluded as irrelevant. *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). And even if Jakobsson's opinions ███████████████ were somehow relevant, "such relevance is substantially outweighed by the likelihood of unfair prejudice to" Meta. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308, 1323 (S.D. Cal. 2020). Jakobsson's persistent ███████████████████████████████████, *see* Ex. 1, Rep. ¶30, and use of other inflammatory language such as ████████████████████ ████████████, Ex. 1, Rep. ¶¶105, 127, are highly prejudicial and likely to arouse in the jury a desire to punish. *See Aya Healthcare*, 613 F.Supp.3d at 1323 (granting *Daubert* motion to exclude expert opinion characterizing the reputations of defendants and their products as "irrelevant" and "unfairly prejudicial").

Accordingly, Jakobsson's opinions and testimony—offered to put expert imprimatur on Advertisers' arguments ███████████████—should be excluded in their entirety.  At a minimum, the paragraphs described above must be excluded. *See* Ex. 1, Rep. ¶¶27, 30, 36-37, 72, 90, 105, 112-116, 126-127, 132, 135; Ex. 3, Rebuttal ¶¶29, 36, 42, 45-46, 48, 50, 52, 61, 78-88, 90, 93, 96, 108-109, 115, 149-152, 159.

## II.     JAKOBSSON'S OTHER OPINIONS REQUIRE NO SPECIALIZED KNOWLEDGE

### A.     Jakobsson Offers Lay Interpretations Of The Intent, Motives, And States Of Mind Of Corporations And Their Employees

Beyond his assertions about ███████████████████ the remainder of Jakobsson's opinions focus on ████████████████████████████ ██████████████████████████████████████████████ ████████████████. Ex. 1, Rep. ¶¶31, 118, 125; Ex. 3, Rebuttal ¶44, 110. This is improper. "[E]xperts cannot testify about 'corporate intent,'" *United States v. Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *2 (N.D. Cal. Apr. 26, 2016) (citation omitted), or the "intention of the parties," *Miranda v. U.S. Sec. Assocs., Inc.*, 2019 WL 2929966, at *1-2 (N.D. Cal. July 8, 2019); *see also Stone Brewing Co. v. MillerCoors LLC*, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020)

(excluding an expert's inferences about the "intent, motives, or states of mind" of others because they "have no basis" in the expert's "knowledge or expertise").

First, Jakobsson improperly opines on █████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████ *See, e.g.*, Ex. 1, Rep. ¶¶61-71, 76-77; Ex. 3, Rebuttal ¶¶62-71; Ex. 2, Tr. 133:7-8 (███████████████████████████████████████████████████████
█████████████). Based on those inferences, he concludes that ███████████████████
████████████████████████████████████████████████████████████████████████
██████. Ex. 1, Rep. ¶125; *see also* Ex. 3, Rebuttal ¶46 ███████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
Ex. 3, Rebuttal ¶¶49, 51, 54, 61, 72-76, 87, 89-93, 97-99, 108, 121-159.

None of these opinions is proper. The intent and motives behind business decisions are run-of-the-mill factual questions for the jury to evaluate based on lay testimony and evidence. They are not matters that require any specialized expertise to understand, which is why courts routinely exclude testimony "about why any person … took or did not take a particular action or made or did not make a particular decision." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (citation omitted); *see also Pac. Gas*, 2016 WL 1640462, at *2. That is particularly true here because Jakobsson offers these opinions based entirely on his reading of non-technical documents, and his opinions merely parrot the Advertiser attorneys' arguments. *Compare* Ex. 1, Rep. ¶125 ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████ *with* Ex. 4, at 937 (same); *see also Waymo*, 2017 WL 5148390, at *2 (excluding testimony that merely offered "the same arguments that the lawyers can make").

Second, Jakobsson ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

1     █████████████████████████████████. This is all the "analysis" he conducted to

2     opine that ████████████████████████████████████████████████████

3     ████████████ Ex. 3, Rebuttal ¶120*; see also* Ex. 1, Rep. ¶¶106-108, 110; Ex. 3, Rebuttal ¶¶37,

4     93, 111-114, 116-120. ██████████████████████████████████████, Ex.

5     2, Tr. 22:20-24, ███████████████████████████████████████████████

6     ███████████████████. Ex. 2, Tr. 71:13-15 ("████████████████████████

7     █████████████████████████████████████████████████████████"), Ex. 2,

8     Tr. 243:18-244:4 ██████████████████████

9     ██████████████████████████████ Instead, his opinion is merely that ███████████

10     █████████████████████████████████████████████████ *See id.*;

11     *see also Oracle*, 2018 WL 6511146, at *3 (courts "routinely" exclude expert testimony that "offers

12     no more than the drawing of an inference from the facts of the case"). For instance, Jakobsson

13     ██████████████████████████████████████████████████████████

14     ██████████████████████████████████████████████████████████

15     ██████████████████████████████████████ Ex. 3, Rebuttal ¶77; *see*

16     *also id.* ¶44. But Jakobsson admitted ███████████████████████████████████

17     ████████████████████

18     █████████████████████████████████████████████████

19     ██████████████████████████████

20     ██████████████████████████████████████████████████

21     ███████████████████████████████████████████

22     ████████████████████████████████████

23     Ex. 2, Tr. 243:18-244:4. In short, Jakobsson's guesses about Meta's goals and intentions should

24     be excluded as unhelpful—if the case gets to trial, the jury is more than capable of receiving

25     evidence and drawing its own conclusions about how Meta intended to use the data.

26         Third, Jakobsson ████████████████████████████████████████████

27     ██████████████████████████████████████████████████████████

28     ████████ He claims that ██████████████████████████████████

**PUBLIC REDACTED VERSION**

1   ████████████ Ex. 1, Rep. ¶118, ████████████████████████

2   ████████████ Ex. 3, Rebuttal ¶46, and ████████████████████

3   ███████████ Ex. 3, Rebuttal ¶¶106-107; *see also* Ex. 1, Rep. ¶¶119-125; Ex. 3, Rebuttal ¶53,

4   100-105. Jakobsson also opines on ████████████████████████

5   ███████████████████████████████ Ex. 1, Rep. ¶¶130-131, parroting counsels'

6   arguments. *Compare id.* ¶131 ("████████████████████████████

7   ███████████████████████████████████████████████

8   █████████████") *with* Ex. 4, at 940 (same quote).[5] But Jakobsson is in no position to know

9   what any person at Meta ███████ Ex. 3, Rebuttal ¶46, and he is not qualified to opine on any

10  person's state of mind. Advertisers have already deposed at least eight witnesses who appear on

11  the documents that Jakobsson interprets. To the extent the jury needs assistance understanding

12  these documents, it can refer to the testimony of fact witnesses who are familiar with the FBR

13  App, many of whom drafted the statements Jakobsson interprets. *See Neo4j, Inc. v. PureThink,*

14  *LLC*, 2023 WL 7093805, at *8-9 (N.D. Cal. Oct. 25, 2023) ("The trier of fact is sufficiently capable

15  of drawing its own inferences regarding whether [a party] believed in good faith that his actions

16  were permissible."); *Oracle*, 2018 WL 6511146, at *3 (excluding expert testimony "about why

17  any person *in this case* took or did not take a particular action or made or did not make a particular

18  decision" because "[t]he jury is sufficiently capable of drawing its own inferences regarding intent,

19  motive, or state of mind from the evidence, and permitting expert testimony on this subject would

20  be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.").

21  Even Jakobsson acknowledges that █████████████████████████

22  ███████████████████████████ Ex. 2, Tr. 254:19-20. The "[t]estimony by fact

23

24  [5] What makes this improper state of mind testimony even worse is that Jakobsson's opinions on

25  ██████████████ *See* Ex. 1, Rep. ¶¶130-131

26  ███████████; Dkt. 748 at 3 (noting that Advertisers questioned Mr.
    Zuckerberg about PX-2256 for 28 minutes). There is no legitimate reason for Advertisers to

27  present opinions about what a fact witness did and did not understand, with the imprimatur of
    expert testimony no less, when the jury can read the documents and hear testimony from the fact

28  witness themselves.

**PUBLIC REDACTED VERSION**

witnesses familiar with the[] documents" is "far more appropriate" than Jakobsson's "secondhand knowledge." *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at * 1-2 (S.D.N.Y. July 16, 2002); *accord Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013).

Accordingly, Jakobsson's opinions and testimony on lay interpretations of intent, motives, and states of mind should be excluded. *See* Ex. 1, Rep. ¶¶31, 107, 118-125, 130-131; Ex. 3, Rebuttal ¶¶36-37, 44-46, 49, 51, 53-54, 61-77, 87, 89-93, 97-106, 108, 110-114, 116-159.

**B.    Jakobsson's Purported Technical Opinions Impermissibly Parrot Advertisers' Counsels' Arguments**

"Expert witnesses cannot simply vouch for one side's version of the facts." *Open Text S.A.*, No. 13-cv-4910-JD, Dkt. 469 at 1 (N.D. Cal. Jan. 26, 2015). Expert opinions that merely parrot "the same arguments that the lawyers can make" are inadmissible. *Waymo*, 2017 WL 5148390, at *2. Yet that is exactly what Jakobsson does here, often copying and pasting the same descriptions that Advertisers' lawyers have already made in interrogatory responses and discovery filings. *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003) (excluding expert report where "[l]arge quantities" of the "interrogatory responses" of the party offering the report "appear[ed] verbatim in [the] report").

Consider paragraph 95 of Jakobsson's report. Jakobsson's purported technical opinion about ███████████████ is copied almost verbatim from Advertisers' interrogatory responses, which they served in June 2023, ████████████████████████████ ███ Ex. 2, Tr. 263:1-15. His "expert" opinion changed only the words in **bold** below:

| Ex. 4, Interrogatory Response, at 932 | Ex. 1, Jakobsson Rep. ¶95 |
|---|---|
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ████████ ██ ████ |
| ████ ██ ██ ████ | ██████████████████████ |
| ██████████████████████ | ████ ██████████ ██ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |

| | |
|---|---|
| ███████████████████ | ███████████████████ |
| ██████ ███ ████ ██████ | ███████████████████ |
| ███████████████████ | ████████ ████ ███████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ████████████████ | ███████████████████ |
| | ███████████████████ |
| | ████ |

Take as another example paragraphs 88 through 90 of Jakobsson's report which copy Advertisers' lawyers' arguments *verbatim*, merely breaking one paragraph into three.

| **Ex. 4, Interrogatory Response, at 930-31** | **Ex. 1, Jakobsson Rep. ¶¶88-90** |
|---|---|
| ███████████████████ | ███████████████████ |
| █████ ███ █████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ████ ███ ███████ █████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████████ | ███████████████████ |
| ███████████████ | ████ |

**PUBLIC REDACTED VERSION**

Likewise, Jakobsson often adopted *verbatim* counsels' descriptions of documents. One example, among many others, is paragraph 107 of his report:

| Ex. 4, Interrogatory Response, at 935 | Ex. 1, Jakobsson Rep. ¶107 |
|---|---|
| | |

-14-

**PUBLIC REDACTED VERSION**



These are not the only examples. Advertisers filed a discovery letter on May 31, 2023, that cites and describes a series of nine documents. *See* Dkt. 735. Jakobsson cites the *same* documents in the *same* order for the *same* points in his opening report. Ex. 1, Rep. ¶¶64-65, 68-71, 75, 77-85, 87. And there are many other instances where Jakobsson copies from, or simply paraphrases, Advertisers' arguments. *E.g.*, *compare* Ex. 1, Rep. ¶¶82-85, 87, *with* Ex. 4, at 929-30; *compare* Ex. 1, Rep. ¶¶103-05, *with* Ex. 4, at 934-35.

Opinions like these, which do nothing besides cloak attorney arguments in "a misleading façade of expertise," are inadmissible. *Waymo*, 2017 WL 5148390, at *5. Experts are not permitted to pile up documents with analysis that does little more than parrot the arguments of one sides' lawyers. *LinkCo*, 2002 WL 1585551 at *2 (excluding report that "does no more than counsel for [plaintiff] will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct"). There is no value to a "hired expert's opinion when the party hiring him has put words in his mouth—or in this case, in his report—leaving him, in essence, a highly-qualified puppet." *DataQuill*, 2003 WL 737785, at *4. Accordingly, Jakobsson's entire opening report, and the summaries of it in Jakobsson's rebuttal, should be excluded in full. *Id.*; Ex. 3, Rebuttal ¶¶35-43.

### CONCLUSION

The Court should exclude the testimony of Markus Jakobsson in full.

**PUBLIC REDACTED VERSION**

1

Dated: April 5, 2024                          Respectfully submitted,

2
                                              By: */s/ Sonal N. Mehta*

3
                                              SONAL N. MEHTA (SBN 222086)
4                                              Sonal.Mehta@wilmerhale.com
                                              WILMER CUTLER PICKERING HALE
5                                              AND DORR LLP
                                              2600 El Camino Real, Suite 400
6                                              Palo Alto, California 94306
                                              Telephone: (650) 858-6000
7

8                                              DAVID Z. GRINGER (*pro hac vice*)
                                               David.Gringer@wilmerhale.com
9                                              ROSS E. FIRSENBAUM (*pro hac vice*)
                                               Ross.Firsenbaum@wilmerhale.com
10                                             RYAN CHABOT (*pro hac vice*)
                                               Ryan.Chabot@wilmerhale.com
11                                             PAUL VANDERSLICE (*pro hac vice*)
                                               Paul.Vanderslice@wilmerhale.com
12                                             WILMER CUTLER PICKERING HALE
                                              AND DORR LLP
13                                             7 World Trade Center
                                              250 Greenwich Street
14                                             New York, New York 10007
                                              Telephone: (212) 230-8800
15

16                                             ARI HOLTZBLATT (*pro hac vice*)
                                               Ari.Holtzblatt@wilmerhale.com
17                                             MOLLY M. JENNINGS (*pro hac vice*)
                                               Molly.Jennings@wilmerhale.com
18                                             WILMER CUTLER PICKERING HALE
                                              AND DORR LLP
19                                             2100 Pennsylvania Avenue NW
                                              Washington, DC 20037
20                                             Telephone: (202) 663-6000

21

22                                             MICHAELA P. SEWALL (*pro hac vice*)
                                               Michaela.Sewall@wilmerhale.com
23                                             WILMER CUTLER PICKERING HALE
                                              AND DORR LLP
24                                             60 State Street
                                              Boston, MA 02109
25                                             Telephone: (617) 526-6000

26

27                                             *Attorneys for Defendant Meta Platforms, Inc.*

28

**PUBLIC REDACTED VERSION**

### CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2024, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:     */s/ Sonal N. Mehta*
Sonal N. Mehta