**PUBLIC REDACTED VERSION**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
  Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
  Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
  Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
  Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware Corporation, <br><br> Defendant. | Case No. 3:20-cv-08570-JD <br><br> **DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF SARAH LAMDAN** <br><br> Hearing Date: June 20, 2024 <br> Time: 10:00 a.m. <br> Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................3

ARGUMENT ...........................................................................................................................5

I.      LAMDAN'S OPINIONS REFLECT NO EXPERT ANALYSIS OR RELIABLE
        METHODOLOGY THAT WILL AID THE JURY CONCERNING ANY ISSUES RELEVANT
        TO THE CASE .............................................................................................................5

        A.      Lamdan's Summaries Of Documents And Deposition Testimony Are
                Improper.........................................................................................................5

        B.      Lamdan's Opinions About Meta's Knowledge And Intent Are Improper ..............8

II.     LAMDAN'S OPINIONS ARE IRRELEVANT TO THE CASE AND SHOULD BE EXCLUDED........10

III.    LAMDAN IS NOT QUALIFIED TO OFFER OPINIONS ON ECONOMIC THEORIES AND
        THEIR APPLICATION TO THIS CASE ...............................................................................13

CONCLUSION.........................................................................................................................15

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
  2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) ................................................................. 3, 13

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102
  (9th Cir. 2021) ........................................................................................................ 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ................................................................................................ 1, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ................................................................................. 2, 10

*DZ Reserve v. Meta Platforms, Inc.*,
  2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ............................................................ 6

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
  2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ............................................................. 6

*Jones v. United States*,
  933 F. Supp. 894 (N.D. Cal. 1996), *aff'd,* 127 F.3d 1154 (9th Cir. 1997) ..................... 12

*Miranda v. U.S. Sec. Assocs., Inc.*,
  2019 WL 2929966 (N.D. Cal. July 8, 2019) ............................................................. 9

*Opperman v. Kong Techs., Inc.*,
  2017 WL 3149295 (N.D. Cal. July 25, 2017) ............................................................ 12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ........................................................ 9, 10

*Siqueiros v. Gen. Motors LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ................................................................. 6

*United States v. Pacific Gas & Electric Co.*,
  2016 WL 1640462 (N.D. Cal. April 26, 2016) .......................................................... 9

*U.S. v. Fuentes-Cariaga*,
  209 F.3d 1140 (9th Cir. 2000) ................................................................................. 6

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) .......................................................... 6, 8

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002) ............................................................................... 3, 13

**PUBLIC REDACTED VERSION**

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702 ................................................................................................ 1, 7, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 20, 2024, at 10:00 a.m., Defendant Meta Platforms, Inc. will move the Court for an order granting Meta's Motion to Exclude the Expert Testimony and Opinions of User Plaintiffs' putative expert Sarah Lamdan. Meta's motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the Declaration of David Gringer filed herewith, along with the accompanying exhibits.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, Meta respectfully requests that the Court exclude the Expert Merits Report of Sarah Lamdan ("Lamdan Rep.") and the Expert Merits Rebuttal Report of Sarah Lamdan ("Lamdan Rebuttal"), and any testimony drawn from these reports. *See* Declaration of David Gringer in Support of Motion to Exclude ("Gringer Decl."), Exs. 1-2.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Sarah Lamdan is a professor and law librarian whose reports consist primarily of her opining about what Meta "knew," "understood," or intended based on a cherry-picked set of internal Meta documents and things Ms. Lamdan thinks she read or heard about in the news. Straying far from the realm of expert testimony, Lamdan engages in speculation and uninformed assertions of "fact" that are inappropriate in federal court. Lamdan's reports contain no reliable methodology that might actually aid the jury in determining any of the relevant questions at issue in this case, including whether any of Meta's purportedly misleading statements or omissions supposedly related to privacy and/or data use were in fact "clearly false" and if so, whether they impacted user behavior and thus competition. Ex. 3, Lamdan Merits Tr. 108:7-17 ("███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████"); *id.* at 78:9-79:1 ("█ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████).[1] Her testimony

---

[1] Unless otherwise noted, 'Ex.' citations reference exhibits to the Gringer Declaration filed herewith, emphasis is added, and objections are omitted for deposition citations.

should be excluded for the following reasons.

First, the only methodology Lamdan used to derive her opinions is reading and summarizing documents other people wrote. Worse still, she inappropriately interprets those documents to draw purported "conclusions" about ███████████████████ ██████████ Lamdan conducted no survey, no poll, no experiment, and no independent analysis of any kind to support these opinions. No particular expertise is needed to review and summarize the documents as Lamdan did; any lawyer or advocate could have—and indeed the lawyers here have—presented the same narrative gloss on cherry-picked documents that Lamdan presents. The jury does not need Lamdan to read uncomplicated, non-technical documents for them or express her view about what Meta knew; allowing Lamdan to present these opinions with the imprimatur of her supposed "expert status" risks confusing the jury and prejudicing Meta.

Second, even if Lamdan's opinions were rooted in a reliable methodology, they are irrelevant and fail to "speak[] clearly and directly to an issue in dispute in the case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). Lamdan's reports opine on topics tangentially related to the case, like ████████████████████ but are irrelevant to any actual *issues* in the case, including Meta's specific purported misrepresentations or omissions about its privacy policies and practices or whether any of those purported misrepresentations or omissions had any impact on user behavior that could possibly have affected competition between online platforms.

Third, Section IV.E of the Lamdan Report and Section IV of the Lamdan Rebuttal proffer expert opinions about ███████████████████████████████████████ ██████████ that Lamdan is objectively not qualified to make. Lamdan admits that ████████ ████████████████████████ Ex. 3, Lamdan Merits Tr. 79:15-18; Ex. 4, Lamdan CC Tr. 106:13-107:5, 236:20-21. More broadly, Lamdan cannot rebut Professors Carlton's, List's, and Ghose's opinions concerning market definition or monopoly power, Ex. 2, Lamdan Rebuttal ¶¶3, 6, because she is not qualified to discuss these economic concepts, Ex. 3, Lamdan Merits Tr. 231:13-232:4 ("████████████████████████████████████████ ████████████████████████"); *id.* at 141:24-142:11 ("████████████████████

**PUBLIC REDACTED VERSION**

1 ██████████████████████████████████████████████████████

2 ████████ "). These opinions should be excluded because putative experts may not offer opinions

3 about "areas outside their expertise." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 5955666, at *2

4 (N.D. Cal. Nov. 6, 2013) (citing *White v. Ford Motor Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002)).

5 **BACKGROUND**

6 Lamdan is a librarian and professor of law at City University of New York School of Law.

7 Ex. 1, Lamdan Rep. ¶¶1-2. Users retained Lamdan to ████████████████████████

8 ██████████████████████████████████████████████████████

9 ████████████████████ *Id.* ¶7. But Lamdan did nothing to measure user perceptions and

10 communicated with no Facebook users in forming her opinions. *See* Ex. 3, Lamdan Merits Tr.

11 266:20-267:2 ("████████████████████████████████████████ ");

12 *id.* at 74:6-14 ████████████████████████████████████████

13 ████████████████████████████ ); Ex. 4, Lamdan CC Tr. 67:11-16 (Lamdan did not

14 "perform any assessment of how much consumers care about privacy on Facebook compared to

15 how much they care about other aspects of using Facebook"). Lamdan provides a number of

16 opinions based on her own personal review of "████████████████████ ," Ex. 1, Lamdan

17 Rep. ¶9, including—allegedly—all 540,285 documents that Meta produced in this case that hit on

18 the term "privacy," Ex. 4, Lamdan CC Tr. 45:1-12 ("Q. Does that sound like it's about the number

19 of documents you reviewed in forming your opinions in this case? A. I -- yes."); Ex. 3, Lamdan

20 Merits Tr. 22:2-11 ("████████████████████████ ").

21 Lamdan has never researched Facebook before her involvement in this case. Ex. 4, Lamdan

22 CC Tr. 95:16-21 ("I haven't specifically focused on Facebook in my academic research.").

23 Because ████████████████████████████████ (though

24 presumably less time than it took her to review the half-million documents she claimed to have

25 reviewed in preparing her reports, *id*. at 45:1-12), Lamdan only ████████████████ ,

26 Ex. 3, Lamdan Merits Tr. 26:11-23—and she could not ████████████████

27 ████████████████████████████ *id*. at 26:24-27:5. Lamdan also is ████

28 ██████████████████████████████████████ . *Id*. at 28:2-4

**PUBLIC REDACTED VERSION**

1   (admitting that ███████████████████████████████████████; Ex. 4, Lamdan CC Tr.

2   156:13-158:10 (admitting that she knows nothing about Facebook's "Access Your Information

3   tool," "Privacy Shortcuts tool," "Download Your Data tool," and others).

4          Lamdan ██████████████████████████████████████████████ Ex. 3,

5   Lamdan Merits Tr. 162:16-163:2, and despite opining in her report that Meta "███████████

6   ████████████████████" *see, e.g.*, Ex. 1, Lamdan Rep. ¶92, Lamdan ultimately admitted

7   ████████████████████████████████████████████████████████████████████████████

8   ██████████ Ex. 3, Lamdan Merits Tr. 175:18-176:6. She also could not offer any substantive

9   testimony about how Meta collected user data or how Facebook's cookies or ad-targeting work.

10  *Id*. at 40:24-42:1 (████████████████████████████████████████████████████

11  █████████); 130:9-16 (████████████████████████████████████████████████

12  █████████); *id*. at 169:13-170:2 (█████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████

14  █████████).

15         Ultimately, Lamdan's understanding of what Meta knew or intended comes entirely from

16  her review of a small subset of the documents produced and deposition testimony elicited in this

17  case. *See* Ex. 4, Lamdan CC Tr. 21:7-15 (testifying that the only way she knows "what Facebook's

18  goals are" is "[f]rom the internal documents"); Ex. 3, Lamdan Merits Tr. 84:1-10 ("██████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████).

21         Lamdan offers the following opinions, all based on her purported review of documents and

22  a few articles from the privacy "community":

23         • That ███████████████████████████████████████████
24           ███████████████████████████████████████████  Ex. 1,
             Lamdan Rep. ¶8.

25         • That ███████████████████████████████████████████
26           █████████████████████ *Id*.

27         • That ███████████████████████████████████████████
28           ████████████████████████████████████████████

<u>**PUBLIC REDACTED VERSION**</u>

*Id.*

- That ███████████████████████████████████████████
███████████████████████████████████ *Id.*

- That ███████████████████████████████████████████
███████ *Id.*

## ARGUMENT

**I.**   **LAMDAN'S OPINIONS REFLECT NO EXPERT ANALYSIS OR RELIABLE METHODOLOGY THAT WILL AID THE JURY CONCERNING ANY ISSUES RELEVANT TO THE CASE**

Lamdan's opinions are deficient because of what they do not do. Despite opining again and again on what Meta intended, knew, and did, *see, e.g.*, Ex. 1, Lamdan Rep. §§IV.B.3, IV.C, and IV.D, and what users knew and believed, *see, e.g., id.* §§IV.A, IV.B, Lamdan fails to use anything approaching a generally accepted expert methodology. Instead, she offers (1) cursory opinions on the general topics of privacy and data use, extensively quoting certain internal Meta documents and deposition testimony and summarizing others' research (having done none herself), and (2) vague, unsupported opinions about Meta's supposed knowledge and intent related to various privacy issues.[2] Lamdan's reports read like a brief, spinning evidence and offering conclusions purportedly fitting User Plaintiffs' theory of the case. But this is not the purview of expert testimony and for good reason: if presented at trial, it is likely to confuse the jury and prejudice Meta.

**A.**   **Lamdan's Summaries Of Documents And Deposition Testimony Are Improper**

Large swaths of Lamdan's reports are inaccurate and imprecise summaries of cherry-picked documents and deposition testimony from the record in this case. Lamdan applies no expertise or expert methodology to her review of the evidence, as Lamdan herself recognized when she agreed in her class certification deposition that "anyone reviewing" an internal Meta document

---

[2] User Plaintiffs separately offer a survey conducted by Robert Klein that purports to ███████
███████████████████████████████████████████████████████████████████████████ Although Users' survey is severely flawed, Meta is not seeking to exclude the survey and will instead address the survey's many defects should Users seek to rely on it at any trial in this matter.

**PUBLIC REDACTED VERSION**

discussing general privacy issues "could read … and identify what the document says." Ex. 4, Lamdan CC Tr. 172:20-173:1. Because Lamdan's reports consist of restating the record without applying any expert analysis, her opinions should be excluded in their entirety.

Courts—including this Court—regularly exclude experts whose opinions do "not offer any specialized or scientific expertise, or anything beyond the typical knowledge and experience of a jury." *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (Donato, J.). An expert may not simply "restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueriros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022). Juries can ably read and interpret the English language, *see U.S. v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 n.3 (9th Cir. 2000) (affirming exclusion of expert's "general testimony about an issue within the ken of the jury's knowledge"), so an expert must do more than "simply summarize[] evidence already in the record and assert[]" a conclusion, *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022). Such testimony risks permitting the expert to act as "little more than a mouthpiece for presenting the argument of counsel based on uncomplicated evidence already in the case." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 n.3 (N.D. Cal. Nov. 6, 2017).

Much of Lamdan's reports simply summarize the evidence in this case, offering purported "conclusions" about the evidence in an effort to proffer to the jury Plaintiffs' counsel's version of reality. For example, Lamdan offers the opinion that ███████████████████████████ ████████████████████████████████████████" Ex. 1, Lamdan Rep. §IV.D.2 (header), but every single source she cites for this opinion is an internal Meta document or deposition testimony of Meta witnesses, *see id*. ¶¶135-49. There is no independent analysis of these documents or testimony and no application of any expertise to form any opinion about them. In fact, most of the documents Lamdan cites in her reports are not technical or specialized, and certainly not regarding technical issues about which Lamdan has any expertise. *See, e.g.*, *id.* ¶95 (███████████); Ex. 4, Lamdan CC Tr. 241:3-4 ("Q. You don't know what an API is, right? A. Yeah, I don't know what an API is."). The documents include ████████████████

**PUBLIC REDACTED VERSION**

1  █████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████. *See, e.g.*, Ex. 3, Lamdan Merits

3  Tr. 92:6-93:1 (███████████████████████████████████████████████████

4  ████████████████████████████████████████). But this exercise of reading and

5  weighing documents is squarely within the jury's purview. Fed. R. Evid. 702(a).

6        The danger of permitting Lamdan to substitute her selective review of the record for

7  counsel's presentation (and the jury's review) of the evidence is apparent throughout her reports.

8  Lamdan misunderstands, at best, or willfully misconstrues, at worst, the plain language of several

9  documents. For example, she cites an ███████████████████████████████████████

10  ████████████████████████████████████████████. Ex. 1, Lamdan Rep. ¶80

11  n.131. Setting aside that Users' case focuses on Facebook, not WhatsApp, and that WhatsApp is

12  not even in Users' purported market, Lamdan misattributes the quotation to ████████████

13  ██████████████████████████████████. Ex. 1, Lamdan Rep. ¶80. On

14  the basis of the quote she attributes to a Meta executive, she █████████████████████

15  ██████████" *Id.* The problem is that the quotation actually came from someone else, and Lamdan

16  admitted in deposition that ████████████████████████████████████████████

17  ██████. Ex. 3, Lamdan Merits Tr. 95:2-96:10, 97:20-98:5. But most dangerous of all, when

18  Lamdan was confronted with the plain language of the email, she ███████████████████████

19  ██████████ *Id*. at 96:11-19 ("██████████████████████████████████████

20  ██████████████████████████████"). Lamdan's reliance on this document—and others

21  like it—while failing to get even the most basic facts right or do any independent analysis, to

22  support her serious accusation that "███████████████████████████████████," Ex. 1,

23  Lamdan Rep. ¶80, risks prejudicing Meta and confusing the jury, *see* Ex. 3, Lamdan Merits Tr.

24  92:16-93:1 ("████████████████████████████████████.").

25        As another example, Lamdan cites an internal Meta presentation which, she opines, shows

26  ████████████████████████████████████████████ Ex. 1, Lamdan Rep. ¶¶31-32. This

27  document contains no specialized or technical information that the jury needs any help in

28  understanding, and allowing Lamdan to put expert imprimatur on her own personal understanding

of the document risks both confusion and prejudice. *Waymo*, 2017 WL 5148390, at *5 (excluding expert opinion where the expert's "only contribution would be to pile on a misleading facade of expertise" to the evidence already in the record). That is especially true because Lamdan also mischaracterizes this document, and others like it. Based on ████████████████████████

████████████████████████████████████████████████████████████████████████████

████████" Ex. 1, Lamdan Rep. ¶28. Setting aside whether her opinion is fair given that the document ████████████████████████, Lamdan misrepresents the document by including an incomplete screenshot. *See* Ex. 3, Lamdan Merits Tr. 285:24-286:9 ("█████████████

████████████████████████████████████████████████████████████████████████████

████"). The screenshot she includes in her report omits ████████████████████

████████████████████████████████████████████████████ *Id*. at 286:17-287:3.

That, of course, directly contradicts Lamdan's preferred conclusion.

All told, dozens upon dozens of paragraphs of Lamdan's report quote only Meta documents or deposition testimony from this case with no analysis at all, let alone analysis applying a reliable methodology that applies any relevant expertise. Ex. 1, Lamdan Rep. ¶¶16, 18-20, 23-25, 28-31, 33-34, 41-44, 55-66, 68-72, 75-78, 80-90, 95-97, 99-102, 104-110, 112-114, 117-119, 122-134, 136-152, 154-157, 159-166, 192, 196; Ex. 2, Lamdan Rebuttal ¶¶8, 10-11, 14, 20-21, 31, 33, 39, 48, 57, 59. As Lamdan herself testified, her reports were ███████████████████████

████████████████████████████████████████████████████████████ Ex. 3, Lamdan Merits Tr. 104:5-10. But there is nothing "expert" about Lamdan's reports—her reliance on documents and deposition testimony in the record does not draw upon any independent analysis; her reports are not admissible as expert opinion.

**B.**   **Lamdan's Opinions About Meta's Knowledge And Intent Are Improper**

Lamdan's summarization of internal Meta documents suffers from a second critical defect: in many places, she uses them to offer an opinion on Meta's purported knowledge and intent. Her opinions include entire sections about how "█████████████████████████████████

████████████" Ex. 1, Lamdan Rep. §IV.B.3, that "████████████████████████

████████████████████" *id.* §IV.C.2.b, and that "██████████████████████████

1   ████████████████████████████████████████████████████████ " *id.* §IV.D.1.

2   Questions about what Meta knew, understood, or intended are for the jury to decide based on the

3   evidence in this case (although here, most of the questions are not relevant and so would not even

4   reach the jury); to permit Lamdan to offer "opinions" on these questions without a basis in any

5   relevant expertise "would be merely substituting the expert's judgment for the jury's and would

6   not be helpful to the jury." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at

7   *3 (N.D. Cal. Dec. 11, 2018).

8            Courts have consistently held that opinions regarding a party's knowledge or state of mind

9   "have no basis in any relevant body of knowledge or expertise," and therefore are not a proper

10  subject for expert testimony. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp.

11  3d 1308, 1321 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021). "[E]xperts cannot

12  testify about 'corporate intent,'" *United States v. Pac. Gas & Electric Co.*, 2016 WL 1640462, at

13  *2 (N.D. Cal. April 26, 2016), or the "intention of the parties," *Miranda v. U.S. Sec. Assocs., Inc.*,

14  2019 WL 2929966, at *1-2 (N.D. Cal. July 8, 2019) (citations omitted).

15           Here, Lamdan offers opinion after opinion that purports to represent Meta's intent, motive,

16  and state of mind with respect to its privacy practices. For example, she opines that:



17  ● "█████████████████████████████████████████
18      ████████████ " Ex. 1, Lamdan Rep. §IV.B.3 (header).

19  ● "████████████████████████████████ *Id.* ¶55.

20  ● "█████████████████████████████████████
21      ████████████████████████████████████
22      ████████████████████████████████████
23      ████████████ *Id.* ¶73.

24  ● "████████████████████████████████████
25      ██████ " *Id.* ¶74.

26  ● "████████████████████████████████████ " *Id.* ¶77.

27  ● "████████████████████████████████████
28      ██████████████ " *Id.* ¶80.

- "█████████████████████████████████████████████
  ████████████████████████████████████" *Id.* ¶87.
- "█████████████████████████████████████████████
  █████████████████████████████████████████████
  █████████████████████████████" *Id.* ¶92.
- "█████████████████████████████████████████████
  ████████████████████████████" *Id.* ¶111.
- "█████████████████████████████████████████████
  ██████████████████████████████" *Id.* ¶121.

Each of these statements (and their surrounding discussions) purports to be an expert representation of Meta's knowledge, intent, or motivation for its actions. This is not reliable expert testimony.

Lamdan candidly admitted that she cannot speak to anyone's intent, much less Meta's. Ex. 4, Lamdan CC Tr. 88:23-89:10 ("I can't speak to somebody's intent. I'm not -- like I said, I can't get into other people's heads and understand their intent."); *id.* at 330:1-18 ("Q. You're not an expert in intent, right? A. Correct. Q. So you don't know if Facebook intended to make its privacy policy hard to understand, correct? A. Correct."). Despite these admissions, Lamdan *does* purport to opine on Meta's intent, by reading and regurgitating Meta documents out of context. *See id.* at 21:7-15 (testifying that the only way she knows "what Facebook's goals are" is "[f]rom the internal documents"); Ex. 3, Lamdan Merits Tr. 84:1-10 ("████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████"). In short, permitting Lamdan's opinions regarding Meta's state of mind would "merely substitute[e] the expert's judgment for the jury's." *Oracle*, 2018 WL 6511146, at *3. These inappropriate opinions should be excluded.

## II.   LAMDAN'S OPINIONS ARE IRRELEVANT TO THE CASE AND SHOULD BE EXCLUDED

Lamdan's reports should be excluded for the independent reason that they do not "speak clearly and directly to an issue in dispute in the case." *Daubert*, 43 F.3d at 1321 n.17. Lamdan's reports discuss general topics related to privacy, opining that consumers profess to care about

**PUBLIC REDACTED VERSION**

1  privacy-related issues when asked and that Meta knew that users did so. Ex. 1, Lamdan Rep.

2  §IV.B; Ex. 2, Lamdan Rebuttal, §§II, III. They are littered with platitudes like ██████████

3  ███████████████████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████ Ex. 1, Lamdan Rep. ¶37, and

5  ███████████████████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████████████████

7  ███████████████████████████████████ id. ¶52.

8        But the general "importance" and "value" of privacy to consumers, standing alone, are

9  irrelevant to whether the specific alleged statements and omissions had any meaningful impact on

10  competition. User Plaintiffs' allegation is that certain statements and omissions related to privacy,

11  which are included in Appendix C of Lamdan's opening report, were false or misleading, and that

12  these alleged statements and omissions caused enough users to use Facebook rather than

13  competing social platforms that they gave Meta an unfair competitive advantage. But Lamdan, by

14  her own admission, ███████████████████████████████████████████████████████

15  ███████████ Ex. 3, Lamdan Merits Tr. 108:9-17 ("██████████████████████████████

16  ███████████████████████████████████████████████████████████████████████████

17  ███████████████████████████████ "), or ██████████████████████████████████

18  ██████████████████████████, id. at 77:21-78:7 ("████████████████████████████

19  ███████████████████████████████████████████████████████████████████████████

20  ███████████████████████ "). (Indeed, on the latter point, her view is exactly the opposite: that ███

21  ███████████████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████████████████

24  ██████████████████████████████ " Id. at 78:9-79:1.) In fact, her reports do not even discuss any of

25  the specific statements in Appendix C. She readily testified that ████████████████████████

26  ███████████████████████████████████████████████████████████████████████████

27  ████████████ Id. at 143:13-17 ("█████████████████████████████████████████████

28  ███████████ "); id. at 149:19-23 ("████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

1   ██████████████████ ”).

2        Likewise, the limited third-party studies and surveys that Lamdan cites to support her

3 opinions about how users value privacy fail to offer a reliable methodology or expert analysis

4 concerning the issues in *this* case. For example, Lamdan cites a █████████████████████

5 ███████████████ Ex. 1, Lamdan Rep. ¶37. The study is not specific to Meta users, does

6 not concern the alleged exclusionary conduct at issue in the case, and does not even mention Meta,

7 Facebook, or Instagram. *Id*. Moreover, Lamdan misrepresents this study by cherry-picking results

8 and omitting those tending to show that only a minority of users took issue with ad targeting based

9 on user data. Ex. 4, Lamdan CC Tr. 127:15-128:18. The same is true for another third-party study

10 conducted in 2013, which Lamdan cites ████████████████████████████

11 ███████████████ Ex. 1, Lamdan Rep. ¶40. This study had nothing to do with Meta's

12 data practices and was based on ██████████████████████████████

13 ████████████████ Ex. 3, Lamdan Merits Tr. 251:20-254:23.

14        Given that expert testimony "can be both powerful and quite misleading because of the

15 difficulty in evaluating it," *Daubert*, 509 U.S. at 595, courts apply a stringent relevance standard

16 when admitting it under Rule 702, *Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal. 1996),

17 *aff'd,* 127 F.3d 1154 (9th Cir. 1997). When applying this standard, other courts in this district have

18 excluded expert testimony concerning the general importance of privacy, untethered from the core

19 issues the jury must actually decide. In *Opperman v. Kong Techs., Inc.*, for example, the court

20 found that the plaintiffs' expert's methodology was "defect[ive]" because it measured "the value

21 to consumers of privacy generally" rather than the value of the "two allegedly misrepresented

22 security features." 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017). The defect here is the

23 same: Lamdan seeks to opine on privacy and data use generally, instead of ████████████

24 ██████████████████████████████████

25        Lamdan's own admissions in deposition prove that her vague platitudes about

26 "importance" of data privacy would risk confusing the jury. She testified under oath that ███

27 ████████████████████████████████████████

28 ████████████████████████████████████████

META'S NOTICE OF MOTION AND
MOTION TO EXCLUDE SARAH LAMDAN

**PUBLIC REDACTED VERSION**

1  ████████████████████████████████████████████████████████ ” Ex. 3,

2  Lamdan Merits Tr. 78:9-79:1; *see also* Ex. 4, Lamdan CC Tr. 97:23-99:8. And then she went on

3  to say that ████████████████████████████████████████████████

4  ████████████████████████████████████████ Ex. 3, Lamdan Merits

5  Tr. 79:3-14. In light of that testimony, whether users generally think privacy is "important" is

6  completely irrelevant to falsity, materiality, reliance, or any other issue on which vague

7  considerations of "importance" might conceivably bear.

8  **III.   LAMDAN IS NOT QUALIFIED TO OFFER OPINIONS ON ECONOMIC THEORIES AND THEIR APPLICATION TO THIS CASE**

9        The Court should exclude Section IV.E of the Lamdan Report and Section IV of the

10  Lamdan Rebuttal, which opine on economic theories like ███████████████████████

11  ████████████████████████ , for the additional reason that Lamdan is not qualified to offer

12  these opinions. Lamdan opines that "████████████████████████████████

13  ████████████████████████ " Ex. 1, Lamdan Rep. ¶185. She also opines that

14  "████████████████████████████████████████████████████████

15  ████████████████████ ." [3] *Id.* ¶186. Her report includes an entire section claiming that

16  "████████████████████████████████████████████████████████

17  ████████████████████ ." *Id.* §IV.E. However, these concepts are rooted in principles of

18  economic decision making, about which Lamdan is not, and does not claim to be, an expert. They

19  should therefore be excluded, as putative experts may not offer opinions about "areas outside their

20  expertise." *Apple*, 2013 WL 5955666, at *2 (citing *White*, 312 F.3d at 1008-09).

21        First, Lamdan opines that users feel "██████████████████████████████

22  ██████████ " but she has no basis to opine on how users decide to use Facebook. Ex. 1, Lamdan

23  Rep. ¶190. Her reports discuss how users feel forced to use Facebook, referencing the "██████

24  ████████████████████████ " and opining that "████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████ " *Id.* ¶191. Of course, Lamdan admits ██████

27  ────────────────

28  [3] Remarkably, in spite of offering an opinion that ██████████████████████████████
    ████████████ Lamdan *herself* is not on Facebook. Ex. 4, Lamdan CC Tr. 166:2-5.

1    ███████████████████████████████████████████████████. *See* Ex.

2    4, Lamdan CC Tr. 155:22-158:10 (testifying that she does not know what Facebook's various

3    privacy tools are); Ex. 3, Lamdan Merits Tr. 28:2-4 (█████████████████████████████

4    ████████████); *id.* at 228:4-9 (███████████████████████████████████

5    ██████████████████████████). And even if she had analyzed this, Lamdan

6    admits that she is "not a sociology expert" or a █████████████ and "can't speak to" how users

7    decide to use Facebook. Ex. 4, Lamdan CC Tr. 106:13-107:5; Ex. 3, Lamdan Merits Tr. 76:20-

8    77:20 (█████████████████████████████████████████). Lamdan also

9    has not conducted any "assessment of how much consumers care about privacy on Facebook

10   compared to how much they care about other aspects of using Facebook." Ex. 4, Lamdan CC Tr.

11   67:11-16.

12        Relatedly, Lamdan veers outside her conceded scope of expertise when she ███████

13   ████████████████████████████ Ex. 1, Lamdan Rep. ¶185. Lamdan opines

14   that, "████████████████████████████████████████████████████████

15   ████████████████████." *Id.* Thus, Lamdan's opinion about competition and market

16   definition rests entirely on the premise that "██████████████████████████████

17   ███████████████████████. *Id.* And according to her deposition testimony, this is

18   because "██████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████" Ex. 3, Lamdan Merits Tr. 221:24-222:18. But Lamdan is not an economist. *Id.* at 79:15-

21   18 ("██████████████████████████"). She is "████████████████████████" and

22   admittedly ██████████████████████████████████ *Id.* at 276:16-

23   23, 276:2-10. She does not have any expert basis to make any kind of opinion or assumption

24   regarding ████████████████████████████████████[4] *Id.* at

25   276:16-23 ("████████████████████████████████████████████████

26

27   ────────────────────
     [4] And User Plaintiffs' experts Joseph Farrell and Nicholas Economides, who are opining on market

28   definition, disagree, opining that ████████████████████████████████████

**PUBLIC REDACTED VERSION**

1  ██████████████████████████████████ ”); *id.* at 231:13-232:4 (██████████████

2  ██████████████████████████████ ); *id.* (“████████████████████████████████

3  █████████████████████████████████ ”). Of course, Lamdan herself reveals

4  the danger of allowing someone unqualified to opine on matters of economics; she is not on

5  Facebook, ████████████████████████████████████ Ex. 4, Lamdan CC

6  Tr. 166:1-5.

7    Because Lamdan is not qualified to opine on these technical, economic, and sociological

8  topics, the entirety of Section IV.E of the Lamdan Report and Section IV of the Lamdan Rebuttal

9  should be excluded.

10                 **CONCLUSION**

11    Lamdan has not offered any expert opinion, much less a reliable or relevant one. The Court

12  should therefore exclude the entirety of the Lamdan Report and the Lamdan Rebuttal.

**PUBLIC REDACTED VERSION**

Dated: April 5, 2024

Respectfully submitted,

By: */s/ Sonal N. Mehta*

SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
Paul.Vanderslice@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
Michaela.Sewall@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**PUBLIC REDACTED VERSION**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of April, 2024, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:   */s/ Sonal N. Mehta*
   Sonal N. Mehta