**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

*Interim Co-Lead Consumer Class Counsel*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>META PLATFORMS, INC.,<br><br>Defendant.<br><br>This Document Relates To: All Consumer Actions | Consolidated Case No. 3:20-cv-08570-JD<br><br>**CONSUMER PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE *BROWN SHOE* FACTORS AND FACEBOOK'S MONOPOLY POWER**<br><br>The Hon. James Donato<br><br>Hearing Date: June 20, 2024 at 10:00 a.m.<br><br>**PUBLIC REDACTED VERSION** |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on June 20, 2024, at 10:00 a.m., before the Honorable James Donato, of the United States District Court of the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Courtroom 11, 19th Floor, Plaintiffs Maximillian Klein, Sarah Grabert, and Rachel Banks Kupcho ("Consumers"), on behalf of themselves and all others similarly situated, hereby move the Court for an order excluding portions of the merits expert reports and testimony of Dr. Anindya Ghose.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all filed supportive declarations and exhibits, the records, pleadings, and other documents on file in this consolidated action, and any argument that may be presented to the Court.

-i-    Case No. 3:20-cv-08570-JD

**CONSUMER PLAINTIFFS'** *DAUBERT* **MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE** *BROWN SHOE* **FACTORS AND FACEBOOK'S MONOPOLY POWER**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

    A. Dr. Ghose Purports to Provide Opinions About the *Brown Shoe* Factors, Relevant Market, and Facebook's Supposed Lack of Monopoly Power .................. 2

    B. Dr. Ghose Has No Training in Antitrust Economics ................................................ 3

    C. Dr. Ghose Has Never Worked in a Role Where He Made Competitive Decisions Regarding Any Even Potentially Relevant Products ............................... 4

    D. Dr. Ghose Has Never Performed a Relevant Market or Monopoly Power Analysis and Has Never Been Qualified As An Antitrust Economics Expert .......... 4

III. LEGAL STANDARD ........................................................................................................... 6

IV. ARGUMENT ........................................................................................................................ 7

    A. Dr. Ghose's Discussion of the *Brown Shoe* Factors Is an Impermissible Attempt to Dress Up a Factual Narrative as "Expert" Testimony ............................ 7

    B. Dr. Ghose Is Unqualified to Offer Any Opinions on Relevant Antitrust Markets ..................................................................................................................... 8

    C. Dr. Ghose Is Unqualified to Offer Opinions on Monopoly Power .......................... 9

V. CONCLUSION ...................................................................................................................... 9

-ii-   Case No. 3:20-cv-08570-JD

**CONSUMER PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE *BROWN SHOE* FACTORS AND FACEBOOK'S MONOPOLY POWER**

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
    683 F.3d 1144 (9th Cir. 2012) ................................................................................................. 6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ................................................................................................................ 7

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962) ................................................................................................................ 1

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ......................................................................................... 8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................................................ 6

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................................... 6

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ..................................................................................... 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................................................ 6

*Murray v. S. Route Maritime SA*,
    870 F.3d 915 (9th Cir. 2017) ................................................................................................... 6

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    2018 WL 1948593 (N.D. Cal. Apr. 25, 2018) ......................................................................... 6

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
    2019 WL 5269018 (N.D. Cal. Oct. 17, 2019), aff'd, 20 F.4th 466 (9th Cir. 2021) .................. 8

*Self v. Equilon Enterprises, LLC*,
    2007 WL 1880739 (E.D. Mo. June 29, 2007) ..................................................................... 8, 9

*Siqueiros v. General Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ................................................................................ 7

*United States v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006) ................................................................................................... 6

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn. & the Historic Green
Springs, Inc.*,
    98 F. Supp. 2d 729 (W.D. Va. 2000) ................................................................................... 8, 9

**CONSUMER PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE *BROWN SHOE* FACTORS AND FACEBOOK'S MONOPOLY POWER**

**Other Authorities**

Fed. R. Evid. 702 .................................................................................................................. 1, 6, 8

**STATEMENT OF ISSUES TO BE DECIDED**

1. Should this Court exclude Dr. Ghose's testimony regarding the *Brown Shoe* factors where Dr. Ghose offers no opinion regarding what is the relevant market and instead simply summarizes documents and testimony without applying any expertise?

2. Should this Court exclude Dr. Ghose's testimony regarding Consumer Plaintiffs' proffered Personal Social Network Market where Dr. Ghose is unqualified to offer opinions regarding the relevant market and concedes he does not know what a relevant antitrust market is or how to define one?

3. Should this Court exclude Dr. Ghose's testimony regarding Facebook's ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ where Dr. Ghose is unqualified to offer opinions regarding monopoly power and concedes he does not even know how to define monopoly power or even measure it?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

By his own admission, Dr. Anindya Ghose is not an expert in antitrust economics, and has no idea how to define either a relevant antitrust market or monopoly power. He further admits he is not a percipient witness with personal knowledge of competitive decision making for the specific industry or products at issue in this case. Nevertheless, Dr. Ghose purports to provide "expert" testimony on relevant market and monopoly power issues that are not within the realm of his specific qualifications or experience. And almost all of his relevant market-related "opinions" involve nothing more than reciting facts with the intent of telling the jury what to conclude about the facts. These dual infirmities require excluding Dr. Ghose's opinions on relevant market and monopoly power.

First, Dr. Ghose factually walks through each of the *Brown Shoe* practical indicia factors—*i.e.*, a series of factual indicia the Supreme Court has stated may be relevant in defining a market, *see Brown Shoe Co. v. United States*, 370 U.S. 294 (1962)—and opines, based on his recitation, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Wolfson Decl., Ex. 1 (Ghose Opening Report) ("Opening Rep.") ¶ 2. But, there is a major problem with these "opinions": Dr. Ghose admitted repeatedly that he does not provide a relevant market opinion at all, and he further admitted that he applied no special expertise when assessing these facts. His factual recitation thus violates one of the core tenets of Rule 702, which is that an expert witness must actually provide ***expert opinions*** based on the facts they review. If, as Dr. Ghose does here, a retained witness simply summarizes facts without applying any relevant expertise to interpret those facts, their testimony is inadmissible under the Rules of Evidence.

But, even if that were not the case, Dr. Ghose's *Brown Shoe* "opinions," as well as rebuttal criticisms he provided regarding how Consumers' economic experts approach market definition, suffer from another, more fundamental problem, which is he is unqualified to opine on relevant antitrust markets at all. At his deposition, Dr. Ghose admitted, *inter alia*, he had no idea: how to define a relevant market; what "reasonable interchangeability" is; why the *Brown Shoe* factors matter at all; how (or even whether) the factors interact with quantitative market definition analyses like the hypothetical monopolist test, SSNIP, or SSNDQ; what companies are in or out of the relevant market

**CONSUMER PLAINTIFFS'** ***DAUBERT*** **MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE** ***BROWN SHOE*** **FACTORS AND FACEBOOK'S MONOPOLY POWER**

in this case; and a host of other concessions showing that, whatever his expertise in **other** areas, Dr. Ghose is certainly not an expert in market definition. Moreover, he has never worked in any sort of competitive decision making role at any relevant company, so does not bring that sort of real-world expertise to this analysis either.

The same problem infects Dr. Ghose's second category of inadmissible opinions. He opines that ███████████████████████████████████████████████████████████ Opening Rep. ¶ 3. However, at deposition, Dr. Ghose admitted he has no idea: what monopoly power is (beyond reading how true economic experts define it); how one proves monopoly power; or even what type of evidence is relevant to identifying the existence or lack of monopoly power in a relevant market. Thus, this is yet another area where Dr. Ghose provided opinions for which he has no relevant expertise.

To be clear, Dr. Ghose offers other opinions in his reports about Meta's privacy practices that do draw on some minimal level of relevant expertise and actual analysis. Those opinions will be subject to cross-examination at trial. It is the remainder of Dr. Ghose's intended testimony, however, that is clearly inadmissible. Accordingly, the Court should preclude Dr. Ghose from testifying at trial about the *Brown Shoe* factors, relevant market overall, and Facebook's monopoly power.

## II.   BACKGROUND

### A.   Dr. Ghose Purports to Provide Opinions About the *Brown Shoe* Factors, Relevant Market, and Facebook's Supposed Lack of Monopoly Power

Dr. Ghose provided both an opening and rebuttal report in this case. *See* Opening Rep. & Wolfson Decl., Ex. 2 (Ghose Rebuttal Report) ("Rebuttal Rep."). In his opening report, ███████████████████████████████████████████████████████████████████████ Opening Rep. at 11-123. For those opinions, he cited and quoted ██████████████████████████████ that he contends address each of the seven factors. *Id.* However, he facially did not identify any other relevant market ████████████████. *Id.*

In his rebuttal report, Dr. Ghose opined that Professor Economides' framework for identifying apps in the proposed PSN market was supposedly ████████████████████████████████████████████████████████████████████████████ Rebuttal

**CONSUMER PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE *BROWN SHOE* FACTORS AND FACEBOOK'S MONOPOLY POWER**

1  Rep. at 4-30. For these opinions, he identified ▮▮▮▮▮

2  *id.*, and further opined that Consumers' economic experts, Professors Economides and Farrell,

3  supposedly ▮▮▮▮▮ *Id.* at 30-35.

   In addition to these market definition-related opinions, Dr. Ghose also spent over 30 pages of his opening report opining that ▮▮▮▮▮ Opening Rep. at 149-185. For these opinions, ▮▮▮▮▮ *Id.* ▮▮▮▮▮ *Id.*

   At deposition, Consumer counsel picked apart these opinions as a factual matter. However, for the purposes of this *Daubert* motion, Dr. Ghose's more relevant admissions and concessions are detailed in the following Sections.

### B.   Dr. Ghose Has No Training in Antitrust Economics

Dr. Ghose works at NYU's Leonard N. Stern School of Business, just like one of Consumers' economic experts, Professor Nicholas Economides. Wolfson Decl., Ex. 3 ("Depo.") at 25:5-11. Unlike Professor Economides, however, Dr. Ghose is not a "Professor of Economics," which Dr. Ghose admitted is a distinction for professors that specialize in that area. *Id.* at 26:2-27:1. Instead, Dr. Ghose holds professorships in Business; Technology, Operations, & Statistics; and Marketing. Opening Rep., Appendix A at 1. His teaching and research focuses almost exclusively ▮▮▮▮▮. *Id.* at Appendix A at 4-37; Depo. at 25:12-26:1, 32:14-34:20.

At deposition, Dr. Ghose tried to argue his expertise is in ▮▮▮▮▮ Depo. at 27:2-9. However, he was forced to admit that he has no formal training in or general understanding of antitrust economics, has never taught or published on any antitrust economic concepts, and does not know what underlies either a relevant market or monopoly power analysis. *Id.* at 32:3-34:20, 43:19-44:11, 59:25-60:11.

**C.  Dr. Ghose Has Never Worked in a Role Where He Made Competitive Decisions Regarding Any Even Potentially Relevant Products**

Professionally, Dr. Ghose has never worked in any sort of competitive decision making role; instead, since he obtained his graduate-level degrees, he has worked primarily as an academic focused on marketing. Opening Rep., Appendix A at 1. At different points in his career, Dr. Ghose held an advisory role at various companies, but ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at Appendix A at 41-42; Depo. at 34:24-36:16. The only time Dr. Ghose performed limited work for companies that provide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was when he consulted either as an expert witness or in some other limited, non-decision making role. Depo. at 39:6-18.

**D.  Dr. Ghose Has Never Performed a Relevant Market or Monopoly Power Analysis and Has Never Been Qualified As An Antitrust Economics Expert**

At deposition, Dr. Ghose confirmed he does not know how to conduct a relevant market analysis. Depo. at 45:9-46:6, 53:16-54:12, 63:24-65:10, 93:2-8, 126:20-127:12. He admitted he does not know how to define or even go about determining reasonable interchangeability of use (*i.e.*, the hallmark of market definition), a hypothetical monopolist test, a SSNIP test, an SSNDQ test, or any other method of defining the outer bounds of a relevant antitrust market. *Id.* at 46:8-47:5, 47:13-49:9. He does not know what the *Cellophane* fallacy is. *Id.* at 47:7-12. Indeed, he has never performed any of these analyses before, nor any other market definition analysis—and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 46:8-47:5, 47:13-49:9, 53:16-54:12, 58:2-59:24, 138:4-9. It should therefore come as little surprise that, despite acting as an expert witness multiple times over the years, Dr. Ghose has never been qualified as an antitrust economics expert, nor ever provided a relevant market or monopoly power opinion aside from this case ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 39:20-43:17.

Looking at the specifics of his opinions, Dr. Ghose conceded he had never heard of the *Brown Shoe* factors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 59:25-60:11, and that he does not know how the *Brown Shoe* factors interplay with more quantitative approaches to market definition. *Id.* at 61:15-63:3. He applied his lay understanding of what the *Brown Shoe* factors mean —*i.e.*, just like a jury would on their own—and had no idea whether a market could be defined without

-4-   Case No. 3:20-cv-08570-JD

**CONSUMER PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE ANINDYA GHOSE'S PROPOSED TESTIMONY REGARDING THE *BROWN SHOE* FACTORS AND FACEBOOK'S MONOPOLY POWER**

reference to the *Brown Shoe* factors or, vice versa, whether a market could be defined relying solely on the *Brown Shoe* factors.[1] *Id.* at 61:15-63:3, 63:24-66:17, 125:9-23.

As noted above, Dr. Ghose also repeatedly referenced a list of Facebook's supposed ███████ which he identified in his rebuttal report. *See, e.g.,* Rebuttal Rep. at 4-30. However, he did not know whether these ███████ or even if term ███████ has an accepted definition in antitrust economics—instead, he used buzz words like ███████ or ███████ without knowing what they even meant when it came to market definition, and confirmed he did not perform any type of accepted reasonable interchangeability analysis, like a hypothetical monopolist test, SSNIP, SSNDQ, and the like. *See, e.g.,* Depo. at 49:11-53:14 (testifying, for example, that ███████), 58:2-59:24, 77:21-78:23, 80:4-13, 84:10-85:25, 92:9-25, 138:4-139:14, 163:10-13. Further, he conceded ███████ *Id.* at 90:12-25, 103:20-104:17. He could not explain why other experts mentioned these ███████. *Id.*

Perhaps most damning, despite spending 112 pages of his 185-page opening report and 30 pages of his 54-page rebuttal report discussing the *Brown Shoe* factors and relevant market issues, Dr. Ghose stated repeatedly throughout his deposition that he does **not** offer a relevant market definition in this case, nor offer any expert opinions about ███████ *Id.* at 77:21-25 ███████; *see also id.* at 53:16-54:12, 58:2-59:24, 81:14-15, 93:2-8, 126:20-128:9, 150:7-14, 167:18-168:8. Thus, when asked whether ███████. *Id.* at 104:18-105:7. The same went for the other ███████ he identified in his report. *Id.* at 77:21-78:23, 80:4-13, 138:4-139:14, 163:10-13.

---

[1] Dr. Ghose's "understanding" of the *Brown Shoe* factors is based on looking at the definition of each factor and assessing what those words mean "███████." Depo. at 141:7-16.

Moving to monopoly power, Dr. Ghose admitted he does not know how to define monopoly power or market power, nor identify whether an entity possesses such power. *Id.* at 44:12-45:8, 224:19-225:19, 227:8-16. He conceded that his only definition of monopoly power came from *other* experts, rather than his own experience and area of expertise. *Id.* at 73:5-15, 74:1-75:9, 224:19-225:19. In fact, he conceded he is ***not*** an expert in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 229:2-230:10. Thus, he did not (and could not) analyze ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 72:12-25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

When pressed, Dr. Ghose retreated again and again to the idea that market definition and monopoly power are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮t—could not—apply to the facts of this case. *Id.* at 44:12-17, 45:13-46:6, 92:9-25, 128:2-9, 227:8-16, 229:2-230:10. That tells the tale.

### III.     LEGAL STANDARD

Under *Daubert* and Federal Rule of Evidence 702, the trial court acts as a gatekeeper to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). The relevance requirement asks whether the evidence is a "fit" with the issues to be decided, and whether it tends to help the trier of fact understand or determine a fact in issue. *Daubert*, 509 U.S. at 591; *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). "In assessing the relevance or 'fit' of expert testimony, 'scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2018 WL 1948593, at *2 (N.D. Cal. Apr. 25, 2018) (quoting *Daubert*, 509 U.S. at 591). The reliability requirement asks whether the reasoning or methodology underlying the testimony is scientifically valid. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017). The proponent of expert testimony has the burden to establish by a preponderance of the evidence that the testimony meets all of these requirements. *Daubert*, 509 U.S. at 592 n.10.; *accord Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).

## IV. ARGUMENT

### A. Dr. Ghose's Discussion of the *Brown Shoe* Factors Is an Impermissible Attempt to Dress Up a Factual Narrative as "Expert" Testimony

"An expert may review the record evidence to extract factual bases from which to apply reliable methodologies in deriving an opinion. An expert, however, may not restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueiros v. General Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) (citing *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992 (N.D. Cal. 2018). "Where the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences," exclusion is appropriate. *Huawei*, 340 F. Supp. 3d at 992 (internal quotation marks and citation omitted). Indeed, this holds with special force in the antitrust context, because "[e]xpert testimony is useful as a guide to *interpreting* market facts, but it is not a substitute for them." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (emphasis added).

With this law in mind, the first reason to exclude Dr. Ghose's *Brown Shoe*-related opinions immediately becomes clear. By his own admission, he offers no expert opinion about what is the relevant market or what companies are in it—all he does is recite certain curated facts and then draw factual conclusions using no discernible methodology or expertise. As he conceded at deposition, he does not apply any special, expertise-based interpretation to the *Brown Shoe* factors; does not utilize any understanding of the economics behind relevant markets to make conclusions about the facts he recites; does not, based on his factual recitation, offer any opinions about what is the relevant market; and does not even know who is in or out of the market. *See* Section II, *supra*. This is a quintessential example of an "expert" improperly acting as a "human highlighter"; *i.e.*, reciting facts Facebook's counsel would like to highlight to the jury and then opining what factual conclusions to draw from them.[2] That is not expert testimony and should therefore be excluded on this basis alone. *Siqueiros*, 2022 WL 74182, at *9; *Huawei*, 340 F. Supp. 3d at 992.

---

[2] Dr. Ghose testified that his staff would ▮▮▮▮▮▮▮▮ from Facebook's counsel. Depo. at 17:24-19:23.

### B. Dr. Ghose Is Unqualified to Offer Any Opinions on Relevant Antitrust Markets

There is, however, an additional, independent basis to exclude Dr. Ghose's *Brown Shoe*-related "opinions," as well as his various relevant market-related rebuttal opinions. Under Rule 702, it is axiomatic that an expert witness may only provide opinions within their area of expertise. This means that experts unqualified in defining relevant antitrust markets may not offer opinions about market definition. *See, e.g.*, *Self v. Equilon Enterprises, LLC*, 2007 WL 1880739, at *2 (E.D. Mo. June 29, 2007) (precluding petroleum market executive from offering market definition opinions where he could not show that he independently knew how to define or apply his personal experience to antitrust economic approaches to market definition). This is so even if—unlike here—the proposed expert witness has some directly-on-point personal business experience. "[G]eneral business experience unrelated to antitrust economics does not render a witness qualified to offer an opinion on complicated antitrust issues such as defining relevant markets." *Id.*; *see also Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn. & the Historic Green Springs, Inc.*, 98 F. Supp. 2d 729, 732-35, 736-40 (W.D. Va. 2000) (excluding "expert" on similar basis).

Where a proffered expert "has not taught in the antitrust economics field; he has not written in the field; though he has testified about market analyses, he never has testified about a relevant market, competitive impact, dangerous probability of monopolization, or market power in an antitrust case; and, last but not least, the expertise he claims to have acquired on antitrust matters has been through methods such as discussions with attorneys with expertise in antitrust law," they are clearly unqualified to offer relevant market or other antitrust-related opinions. *Virginia Vermiculite*, 98 F. Supp. 2d at 733 (internal quotations and ellipses omitted); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2019 WL 5269018, at *1 (N.D. Cal. Oct. 17, 2019), aff'd, 20 F.4th 466 (9th Cir. 2021) (excluding antitrust damages rebuttal expert, because he had no background in nor preexisting understanding of antitrust-specific damages concepts). Moreover, where a witness "merely reviewed" how other, actual experts apply certain concepts, but does not have that expertise themselves, they lack the necessary qualifications to provide opinions in that area. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556-558 (C.D. Cal. 2014).

These are all sins that preclude Dr. Ghose from offering his intended relevant market opinions

here. As noted above, he admitted time and again that he has no formal or even informal training in antitrust economics, does not know how economists define relevant markets (indeed, does not even know what reasonable interchangeability is), does not know how the *Brown Shoe* factors play into the market definition analysis, has never performed a relevant market analysis (including here), does not know how economists define the concept of ▊▊▊▊▊▊▊▊ even though he used that phrase, has never taught a class involving how to define a relevant market, and has no personal business experience on which he draws to help define a market in this case. *See* Section II, *supra*.

With such a dearth of knowledge, it is clear that Dr. Ghose is not qualified to provide opinions about a relevant market. Accordingly, he is clearly unqualified to offer the relevant market-related opinions set forth in Section IV of his opening report, and Sections II & III.A. of his rebuttal report.

### C. Dr. Ghose Is Unqualified to Offer Opinions on Monopoly Power

Under the same law as above, it is also clear that Dr. Ghose is unqualified to offer any opinions on ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. To reiterate, Dr. Ghose conceded he has no training in antitrust economics, does not know how to define monopoly power (and only used a definition of power that other, actual economic experts in the case provided), does not know how to prove (or disprove) such power, does not know what evidence one uses to prove or disprove monopoly power, and ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. *See* Section II, *supra*. These multi-layered deficiencies preclude him from offering his intended opinion that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Opening Rep., Section 6. *Conagra*, 302 F.R.D. at 556-558; *Self*, 2007 WL 1880739, at *2; *Virginia Vermiculite*, 98 F. Supp. 2d at 736-40.

### V. CONCLUSION

For the foregoing reasons, Consumers respectfully request that the Court grant their Motion to Exclude Dr. Ghose's *Brown Shoe* and monopoly power opinions.

DATED: April 5, 2024

By: */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000

Steve W. Berman (admitted *pro hac vice*)
 steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

*Interim Co-Lead Consumer Class Counsel*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
 wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
 rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
 bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
 rapeterson@locklaw.com
Kyle Pozan (admitted *pro hac vice*)
 kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
 lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Interim Counsel for the Consumer Class*

By: */s/ Kevin Y. Teruya*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Scott L. Watson (Bar No. 219147)
 scottwatson@quinnemanuel.com
Claire D. Hausman (Bar No. 282091)
 clairehausman@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

Michelle Schmit (admitted *pro hac vice*)
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
(312) 705-7400

Manisha M. Sheth (admitted *pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Interim Co-Lead Consumer Class Counsel*

## ATTESTATION OF KEVIN Y. TERUYA

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: April 5, 2024     By  /s/Kevin Y. Teruya
                              Kevin Y. Teruya

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By  /s/ Kevin Y. Teruya
    Kevin Y. Teruya