**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Interim Co-Lead Counsel for the
Advertiser Class*

[Additional counsel on signature page]

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Case No. 3:20-cv-08570-JD |
| Plaintiffs, | Hon. James Donato |
| v. | **ADVERTISER PLAINTIFFS' PROFFER REGARDING EXPERT TESTIMONY** |
| META PLATFORMS, INC., | |
| Defendant. | |

Advertiser Plaintiffs submit this expert proffer in response to the Court's April 18, 2024 minute order concerning expert testimony. *See* Dkt. 789. The Court's order authorized "one liability and one damages expert" for each party, and permitted Advertiser Plaintiffs to make a proffer regarding an additional expert. As set forth below, Advertiser Plaintiffs offer two economic experts— Dr. Michael Williams and Prof. Tilman Klumpp—and one technical expert, Dr. Markus Jakobsson.

* * *

This is a monopolization case arising from Meta's unlawful actions to maintain its monopoly power (and profits) in the sale of social advertising, an economically distinct submarket of online advertising. Between late 2016 and 2020, Meta engaged in an aggressive campaign to strengthen barriers to entry, check the rise of nascent competitors (most notably Snapchat), and deceive regulators with the goal of maintaining its dominant position, and attendant supracompetitive prices, in the United States Social Advertising Market. As explained more fully in Advertiser Plaintiffs' Motion for Class Certification, Dkt. 795-1, Meta's actions included striking an insider deal with a board member-turned-competitor, entering a market-distorting agreement with Google, buying off hand-picked potential entrants with privileged access to Meta user data, lying to the FTC to avoid divestiture and—perhaps most jaw-droppingly—redirecting and decrypting the encrypted analytics traffic of competitors, including Snapchat, using nation-state level hacking methods and technologies. *See id.* at 4:19-13:3.

Meta's unlawful maintenance of its monopoly power in the United States Social Advertising Market caused an anticompetitive overcharge in that market, which people who bought Meta Ads between December 1, 2016 and December 1, 2020 (the Class Period) paid and were injured by. The Advertiser Plaintiffs are people and businesses that bought—and overpaid for—Meta Ads during the Class Period. They bring this lawsuit for themselves and for a putative class of Meta Ad purchasers, asserting Sherman Act Section 2 claims (for monopolization and attempted monopolization of the U.S. Social Advertising Market) and a Section 1 claim (for an anticompetitive agreement with Google that was part of Meta's monopolization effort).

At trial, Advertisers will prove the existence of the United States Social Advertising Market as a relevant antitrust market; Meta's monopoly power in that market during the Class Period; Meta's

exclusionary conduct seeking to maintain that monopoly power; and the existence and amount of anticompetitive overcharge. As noted in Advertiser Plaintiffs' Motion for Class Certification, Meta's anticompetitive conduct—an anticompetitive course of conduct comprising five categories of exclusionary acts—will be the principal focus at trial. Dkt. 795-1 at 4-5.

Advertiser Plaintiffs seek to offer the testimony of three experts—two antitrust economists and a technical expert—to help the jury and the Court understand the issues and evidence at trial in the Advertiser case. These experts, and the subjects of their proposed testimony, are identified below:

(1)    <u>Michael A. Williams, Ph.D.:</u> Dr. Williams, an antitrust economist who previously served at the Antitrust Division of the U.S. Department of Justice, will offer expert testimony concerning the existence and characteristics of the United States Social Advertising Market as a relevant antitrust market, Meta's monopoly power in that market during the Class Period, and the classwide overcharge injury and damages suffered by Meta Ad purchasers from Meta's monopoly maintenance.

(2)    <u>Prof. Tilman Klumpp:</u> Prof. Klumpp, a Professor of Economics at the University of Alberta, will offer expert testimony concerning the economic impacts of Meta's five categories of exclusionary conduct, including how each category of conduct by Meta helped maintain the company's monopoly power in the United States Social Advertising Market during the Class Period.

(3)    <u>Markus Jakobsson:</u> Dr. Jakobsson, a Ph.D. computer scientist with more than twenty-six years' experience in academia and industry specializing in computer systems, cybersecurity, and cloud computing, will offer expert testimony concerning the technical details of Meta's ███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████.

Dr. Jakobsson received his Ph.D. in computer science, specializing in cryptography, from UCSD in 1997. From 1997-2001, Dr. Jakobsson was a Member of Technical Staff at Bell Labs, performing research on authentication, privacy, multi-party computation, e-commerce, and fraud detection and prevention. From 2001-04, he was a Principal Research Scientist at RSA Labs, where he worked on predicting future fraud scenarios in commerce and authentication. From 2002-04, he

**FILED UNDER SEAL**

was an Adjunct Associate Professor in the computer science department at NYU, teaching cryptographic protocols. From 2004-2016, Dr. Jakobsson held a faculty position at Indiana University, where he was the most senior security research at IU and built a research group focused on online fraud and countermeasures, resulting in over 50 publications and two books. One of these books, "Crimeware: Understanding New Attacks and Defenses" (Wiley, 2008), described man-in-the-middle attacks, online attacks and abuses in general, and countermeasures. While a professor at IU, Dr. Jakobsson was employed by Xerox PARC (Principal Scientist, 2008-10), PayPal (Director and Principal Scientist of Consumer Security, 2010-13), and Qualcomm (Senior Director, 2013-15) to provide through leadership to their security groups. From 2016-18, Dr. Jakobsson was Chief Scientist at Agari, from 2018-20 he was Chief of Security and Data Analytics at Amber Solutions, and from 2020-21 Dr. Jakobsson was Chief Scientist at ByteDance, where he guided the security research for both ByteDance and TikTok until leaving to co-found Artema Labs, where he is Chief Scientist.

Dr. Jakobsson has authored or co-authored seven books, over 100 peer-reviewed publications, has been a named inventor on over 200 patents and patent applications, and has delivered numerous presentations including keynotes at several international conferences and workshops as well as the U.S. Patent and Trademark Office. A large number of these relate to Internet security, authentication, malware, spoofing and related topics. Dr. Jakobsson's publications and presentations cover topics including, but not limited to: digital signatures, randomness, security analysis, crimeware, phishing, electronic identity theft, email security, endpoint security, network security, digital fraud, software-based attestation, remote transaction security, and malware detection. His peer-reviewed publications have been cited at least 20,136 times, according to Google Scholar.

Dr. Jakobsson's testimony will be useful to the jury and the Court because Meta's ██ conduct is technically complex, and implicates evidence and witness testimony that is beyond the technical and industry knowledge of the average layperson—and Meta has sought to leverage this complexity in its defenses and arguments in this case.

The essential conduct about which Dr. Jakobsson will testify concerns ████████
████████████████████████████████████████████████████████████████████

1    ███████████████████████████████████████████. In June 2016, Mark

2    Zuckerberg emailed three top lieutenants, Javier Olivan (now COO), Alex Schultz (now CMO), and

3    Chris Cox (Chief Product Officer), to say:

4            Whenever someone asks a question about Snapchat, the answer is
         usually that because their traffic is encrypted we have no analytics about
5            them.

6            Given how quickly they're growing, it seems important to figure out a
         new way to get reliable analytics about them. Perhaps we need to do
7            panels or write custom software. You should figure out how to do this.

8    PX 2255 at PALM-016564836.

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████

19           We developed "kits" that can be installed on iOS and Android that
20           intercept traffic for specific sub-domains, allowing us to read what
      would otherwise be encrypted traffic so that we can measure in-app
21           usage (i.e., specific actions that people are performing in the app, rather
      than just overall app visitation). This is a "man-in-the-middle"
22           approach.

23   PX 414 at 1.

24           Again, the words and concepts in this key exhibit are avowedly technical. As Dr. Jakobsson

25   will explain, walking the jury and the Court through evidence far more complex than the above—

26   including ███████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

4

**FILED UNDER SEAL**



1

2

3

4

5

6

7

8 As Dr. Jakobsson will testify,

9

10

11

12

13

14

15 Dr. Jakobsson will explain all of the above, so that the jury and the Court

16 can understand what, exactly, Meta was doing to

17 during the Class Period.

18

19

20

21

22

23

24

25 .

26 Although Meta has taken the position that the technical details of its program need not

27 be understood by the jury and the Court to adjudicate this case, Meta's actual defenses and arguments

28 with respect to give the lie to this position. For example, Meta (and indeed,

5

**FILED UNDER SEAL**



but Dr. Jakobsson—who is both a computer security expert and a longtime industry participant, including holding positions at PayPal, Qualcomm, and ByteDance in the past decade—will testify that Meta's peers

. Indeed, Dr. Jakobsson will testify that these specific methods are characteristic of notorious hackers and nation-states seeking to spy on dissidents, not generic "market research."

Moreover, without a technical expert like Dr. Jakobsson to walk the jury and the Court through the details of what it means to

it may not be apparent

. This is important because it shows the

—a fact directly contradicting Meta's argument that

was not competitively important to the company during the Class Period.

Case No. 3:20-cv-08570-JD                    Advertiser Plaintiffs' Proffer Regarding Expert Testimony

**FILED UNDER SEAL**



9    Finally, to the extent that Meta argues that technical expertise is ***not*** necessary to understand

10   the details of its ▮▮▮ program, consider the words of ▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮ in this case:

22   Between the technical complexity of the ▮▮▮ evidence and conduct (a complexity not just

23   facially apparent, but affirmatively identified by ▮▮▮▮▮▮▮▮ and the nature

24   of Meta's ▮▮▮ defenses (defenses that seek to trivialize and mischaracterize the technology and

25   efforts involved in the program), Dr. Jakobsson's expert testimony will unquestionably help the jury

26   and the Court to understand, appreciate, and fairly adjudicate the issues pertaining to Meta's

27   conduct at trial in the Advertiser Plaintiffs' case. Further, there can be no serious dispute that Dr.

28   Jakobsson's testimony will be in any way duplicative: Dr. Williams and Prof. Klumpp are economists,

**FILED UNDER SEAL**

1  with no material expertise in computer security. There will be no one else at trial to fairly explain to

2  the jury what exactly was going on at Meta ████████████████████████████████████████

3  ██████—an issue exacerbated by ████████████████████████████████████████████████

4  ██████████████ throughout depositions in this case.

5      Dr. Jakobsson is perfectly suited to walk the jury and the Court through the technical

6  complexities of Meta's ██████ program, and the evidence and testimony surrounding it. He has already

7  served opening and rebuttal expert reports and has already been deposed by Meta.

8      The Court should permit Dr. Jakobsson to testify as an expert at trial in the Advertiser

9  Plaintiffs' case.

1 | Dated: August 9, 2024

2 | **BATHAEE DUNNE LLP**

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**

3 |

4 | By: */s/ Yavar Bathaee*
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com

By: */s/ Amanda F. Lawrence*
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com

5 | Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com

Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com

6 | Andrew M. Williamson (CA 344695)
awilliamson@bathaeedunne.com

Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com

7 | Adam Ernette (*pro hac vice*)
aernette@bathaeedunne.com

156 South Main Street, P.O. Box 192
Colchester, CT 06415

8 | 445 Park Avenue, 9th Floor
New York, NY 10022

Tel.: (860) 537-5537

9 | Tel.: (332) 322-8835

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com

10 | Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com

Carmen A. Medici (CA 248417)
cmedici@scott-scott.com

11 | Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com

Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com

12 | 901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300

Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com

13 | Austin, TX 78746
Tel.: (213) 462-2772

600 W. Broadway, Suite 3300
San Diego, CA 92101

14 |

Tel.: (619) 233-4565

15 | Allison Watson (CA 328596)
awatson@bathaeedunne.com

Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com

16 | 3420 Bristol St, Ste 600
Costa Mesa, CA 92626-7133

230 Park Avenue, 17th Floor
New York, NY 10169

17 | *Interim Co-Lead Counsel for the Advertiser Class*

Tel.: (212) 223-6444

18 |

19 | **LEVIN SEDRAN & BERMAN LLP**

**AHDOOT & WOLFSON, PC**

20 | Keith J. Verrier (*pro hac vice*)
kverrier@lfsblaw.com

Tina Wolfson (CA 174806)
twolfson@ahdootwolfson.com

21 | Austin B. Cohen (*pro hac vice*)
acohen@lfsblaw.com

Robert Ahdoot (CA 172098)
rahdoot@ahdootwolfson.com

22 | 510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997

Theodore W. Maya (CA 223242)
tmaya@ahdootwolfson.com

23 | Tel.: (215) 592-1500

Henry J. Kelson (*pro hac vice*)
hkelston@ahdootwolfson.com

24 | *Members of Executive Committee for the Advertiser Class*

2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111

25 |

26 |

27 |

28 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER ATTESTATION**

I am the ECF user who is filing this document.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.


Dated: August 9, 2024                              By:  */s/ Brian J. Dunne*