**PUBLIC REDACTED VERSION**

| | |
|---|---|
| WILMER CUTLER PICKERING<br> HALE AND DORR LLP | ARI HOLTZBLATT (SBN 354631)<br> Ari.Holtzblatt@wilmerhale.com |
| SONAL N. MEHTA (SBN 222086)<br> Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000 | MOLLY M. JENNINGS (*pro hac vice*)<br> Molly.Jennings@wilmerhale.com<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000 |
| DAVID Z. GRINGER (*pro hac vice*)<br> David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br> Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br> Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br> Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | MICHAELA P. SEWALL (*pro hac vice*)<br> Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>             Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF MARKUS JAKOBSSON**<br><br>Hearing Date: To Be Determined<br>Time: To Be Determined<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT..................................................................................................................................6

I.     COPYING AND PASTING COUNSEL'S ARGUMENTS IS NOT EXPERT TESTIMONY ...................6

II.    JAKOBSSON'S SPECULATION ABOUT WHAT META AND ITS EMPLOYEES INTENDED
IS INADMISSIBLE AND UNHELPFUL TO THE JURY .................................................................7

III.   JAKOBSSON OFFERS IMPROPER AND IRRELEVANT LEGAL CONCLUSIONS............................9

CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple iPod iTunes Antitrust Litig.*,
  2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) ................................................................11

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020) ..........................................................................11

*CZ Servs. v. Express Scripts Holding Co.*,
  2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ...................................................................9

*DataQuill Ltd. v. Handspring, Inc.*,
  2003 WL 737785 (N.D. Ill. Feb. 28, 2003) ..................................................................6, 7

*Daubert v. Merrell Dow Pharms.*,
  43 F.3d 1311 (9th Cir. 1995) ..........................................................................................10

*Daubert v. Merrell Dow Pharms, Inc.*,
  509 U.S. 579 (1993) .........................................................................................................1

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
  2023 WL 9659943 (C.D. Cal. July 26, 2023) ................................................................10

*DZ Reserve v. Meta Platforms, Inc.*,
  2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ...................................................................7

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ..........................................................................................10

*In re Capacitors Antitrust Litig.*,
  2021 WL 5407452 (N.D. Cal. Nov. 18, 2021) (Donato, J.) .......................................9, 10

*Koger v. Costco Wholesale Corp.*,
  2023 WL 8188842 (N.D. Cal. Nov. 27, 2023) ...............................................................10

*Miranda v. U.S. Sec. Assocs., Inc.*,
  2019 WL 2929966 (N.D. Cal. July 8, 2019) ....................................................................7

*Numatics, Inc. v. Balluff, Inc.*,
  66 F. Supp. 3d 934 (E.D. Mich. 2014) .............................................................................7

*Open Text S.A. v. Box, Inc.*,
  No. 13-cv-4910-JD, Dkt. 469 (N.D. Cal. Jan. 26, 2015) ..................................................6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) .............................................................7, 8

**PUBLIC REDACTED VERSION**

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001)......................................................................................................10

*United States v. Pac. Gas & Elec. Co.*,
    2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) ................................................................7

*United States v. Tamman*,
    782 F.3d 543 (9th Cir. 2015) ..........................................................................................9

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) .................................................................6

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C. § 2511............................................................................................................................9

Fed. R. Evid. 402 .........................................................................................................................10

Fed. R. Evid. 403 ...................................................................................................................10, 11

Fed. R. Evid. 702 ...........................................................................................................................1

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Defendant Meta Platforms, Inc. will move the Court for an order granting Meta's Motion to Exclude the Expert Testimony and Opinions of Advertiser Plaintiffs' putative expert Markus Jakobsson. Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), and its progeny, Meta respectfully requests that the Court exclude the testimony and opinions of Markus Jakobsson in full.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Advertisers hired Markus Jakobsson to opine on how Meta's Facebook Research ("FBR") App operated. Ex. 1, Jakobsson Rep. ¶28; Ex. 2, Jakobsson Reb. ¶29.[1] They claim that he will offer "a lot of technical detail" about the functionality of the FBR App and how it purportedly "obtain[ed] encrypted analytics information" from Snapchat. Dkt. 856 at 14:4, 17:3-23. But Jakobsson did not perform a technical analysis of the FBR App, the data it collected, or how such data was obtained. Instead, his opinions consist of reading Meta's internal documents and parroting verbatim—in paragraphs copied directly from Advertisers' interrogatory responses—Advertisers' counsel's arguments and factual contentions. *E.g.*, *compare* Ex. 1, Jakobsson Rep. ¶107, *with* Ex. 3, June 2023 Interrog. 24 Resp. at 935. He then speculates on matters outside the bounds of the cybersecurity expertise for which he is offered, such as Meta's corporate intent and its employees' states of mind. *E.g.*, Ex. 1, Jakobsson Rep. ¶¶31, 87, 108, 118-140; Ex. 2, Jakobsson Reb. ¶¶36, 44-46, 110. Because he does not offer any technical analysis on any salient issue, his opinions cannot possibly help the jury to understand Advertisers' claims. And his reports are littered with inadmissible, inflammatory legal conclusions that Meta's use of the technology underlying the FBR App was "████████" and a "████████" prejudicial accusations (████████) that are both false and irrelevant to Advertisers' antitrust claims.

Reading interrogatory responses and documents into the record, imputing intent to employees that the jury can hear from directly, and making legal arguments from the witness stand

---

[1] Unless otherwise noted, "Ex." citations reference exhibits to the Gringer Declaration submitted herewith, emphasis is added, and objections are omitted for deposition citations.

**PUBLIC REDACTED VERSION**

1 under the guise of expert testimony do nothing to help the jury. Such efforts instead circumvent
2 the factfinder's exclusive right to assess the facts and make credibility determinations. And here,
3 they serve only to obfuscate, introducing ▮▮▮▮▮▮▮▮▮▮ that lack any evident
4 connection to the antitrust laws or Advertisers' claims. Jakobsson's opinions should be excluded.
5 At minimum, the Court should bar Jakobsson from offering any testimony commenting on Meta's
6 conduct ▮▮▮▮▮▮▮▮▮▮.

**BACKGROUND**

Advertisers allege that Meta used data acquired from consenting panelists who signed up for a market research tool, the FBR App, to copy Snapchat's "Stories," a public feature of the Snapchat app. Advertisers have not identified the data collected by the FBR App or made any effort to connect such data to Meta's development of any product. Indeed, Meta rolled out Instagram Stories *before* launching or receiving any data from the FBR App. Ex. 4, Jakobsson Tr. 221:9-25, 223:7-14. Unable to make this connection and substantiate their copying allegation, Advertisers have created an irrelevant sideshow, suggesting that the methods the FBR App used to collect data amount to ▮▮▮▮▮▮▮▮.[2]

In service of that diversion, Advertisers offer Jakobsson to explain the "▮▮▮▮▮▮" the FBR App used to collect data. Ex. 1, Jakobsson Rep. ¶28. But Jakobsson admits that he did not review the FBR App's code, did not use the FBR App itself, and did not even determine what data the FBR App collected. Ex. 4, Jakobsson Tr. 21:15-19 ("[Q.] You did not review any source code for the IAAP app, did you? A. I have not reviewed any source code related to this case."); *id.* at 22:2-6 ("Q. And you did not download or use or rely upon any version of the IAAP app for purposes of your opinion in this case. Right? A. That is correct."); *id.* at 22:20-24 ("Q. You have not reviewed any data collected by the IAAP app. Correct? A. I have not reviewed any of that data. I have reviewed discussions about the data."). Thus, he is opining about the function of an app he has never seen, let alone used or analyzed.

What Jakobsson presents as "technical" opinions are actually copies of the arguments

---

[2] Advertisers and Jakobsson refer to the FBR App and its supporting technology as Meta's "In App Action Panel" ("IAAP") program. *E.g.*, Dkt. 735; Ex. 1, Jakobsson Rep. ¶27.

**PUBLIC REDACTED VERSION**

Advertisers' counsel made in interrogatory responses served in June 2023—long before Jakobsson became actively involved in the case. Ex. 4, Jakobsson Tr. 263:1-15 (February 2024 deposition: "Q. Okay. When did you first become actively engaged in the case? A. I would say three to six months ago. I don't remember the exact time, but it's late last year."). For example, Jakobsson's opinion on the technical method by which the FBR App obtained data from panelists about their use of Snapchat copies Advertisers' interrogatory response *verbatim*, merely breaking one paragraph into three.

| Ex. 3, Interrog. 24 Resp. at 930-31 | Ex. 1, Jakobsson Rep. ¶¶88-90 |
|---|---|
| ██████████████████████ | ██████████████████████ |
| ████ ██ ████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██ █ ███████ ████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ███ |
| ██████████████████████ | ██████████████████████ |
| ████ █ ████ ████ ████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ██████████████████████ |
| ██████████████████████ | ████████████████ |
| ██████████████████████ | |



Jakobsson's proffered technical opinion about " ▅▅▅▅ " the FBR App is likewise copied from Advertisers' interrogatory responses, with Jakobsson changing only the words in **bold**:

| Ex. 3, Interrog. 24 Resp. at 932 | Ex. 1, Jakobsson Rep. ¶95 |
|---|---|
| ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ | ▅▅▅▅▅▅▅▅▅▅▅▅▅▅ |

**PUBLIC REDACTED VERSION**



As is obvious, there is nothing technical about these contentions.

Jakobsson also reads in documents and testimony to opine on non-technical issues, including why Meta decided to develop the FBR App, Meta's "▮▮▮▮" and "▮▮" for the FBR App, how Meta's employees felt about the FBR App, and why Meta decided to deprecate the FBR App. *See, e.g.*, Ex. 1, Jakobsson Rep. ¶87 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), ¶108 ("▮▮▮▮▮▮▮▮▮▮▮"), ¶¶31-112, 118-140; Ex. 2, Jakobsson Reb. ¶¶36, 45-46. These matters are squarely within the realm of lay witness testimony. Yet, Advertisers seek to have Jakobsson testify under the guise of expertise based entirely on his lay review of a limited subset of the record selected for him by Advertisers' counsel. Ex. 4, Jakobsson Tr. 31:4-14; *see also id.* at 27:6-12; Ex. 1, Jakobsson Rep. ¶30; Ex. 2, Jakobsson Reb. ¶36.

And Jakobsson again often adopts *verbatim* counsels' descriptions of documents:

| Ex. 3, Interrog. 24 Resp. at 935 | Ex. 1, Jakobsson Rep. ¶107 |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |



Jakobsson's only original contributions are legal opinions about ▮▮▮▮ ▮▮▮▮ He accuses Meta of engaging in an ▮▮▮▮—which he variously refers to as "▮▮▮▮," "▮▮▮▮," a "▮▮▮▮," and "▮▮▮▮"—by using "▮▮▮▮" technical methods ▮▮▮▮ ▮▮▮▮ Ex. 1, Jakobsson Rep. ¶¶27-28, 36-37, 42, 46, 111-112, 116, 132; Ex. 2, Jakobsson Reb. ¶¶29-30, 42-43, 45-46, 48, 50, 52, 61, 79, 90-91, 96-97, 108-109, 115, 143, 149, 150, 152.

## ARGUMENT

### I. COPYING AND PASTING COUNSEL'S ARGUMENTS IS NOT EXPERT TESTIMONY

"Expert witnesses cannot simply vouch for one side's version of the facts," *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910-JD, Dkt. 469 at 1 (N.D. Cal. Jan. 26, 2015), and opinions that make "the same arguments that the lawyers can make based on other evidence in the case that can speak for itself … do not qualify as expert testimony under [Rule] 702," *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *2 (N.D. Cal. Nov. 6, 2017). That is exactly what Jakobsson has offered, presenting—often verbatim, *supra* pp.3-6—interrogatory responses and briefs under "a misleading façade of [technical] expertise," *Waymo*, 2017 WL 5148390, at *5. An expert provides nothing helpful to the jury "when the party hiring him has put words in his mouth—or in this case, in his report—leaving him, in essence, a highly qualified puppet." *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003). Accordingly, Jakobsson's opening report, and the summaries of it in his rebuttal, Ex. 2, Jakobsson Reb. ¶¶35-43, should be excluded,

**PUBLIC REDACTED VERSION**

*DataQuill*, 2003 WL 737785, at *4 (excluding report where "[l]arge quantities" of "interrogatory responses" of the party offering the report "appear[ed] verbatim in [the] report"); *see also Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 945 (E.D. Mich. 2014) (excluding report because "[t]he prose is indistinguishable down to the punctuation, leading to only one possible conclusion: the report was ghost-written by [the] attorneys as a legal brief disguised (thinly) as an expert disclosure").

## II. JAKOBSSON'S SPECULATION ABOUT WHAT META AND ITS EMPLOYEES INTENDED IS INADMISSIBLE AND UNHELPFUL TO THE JURY

Jakobsson rehashes Meta's internal documents to offer his impressions of (1) the ▇▇▇ Meta developed the FBR App, (2) what Meta's employees thought about the FBR App, and (3) how Meta intended to use the data collected by the FBR App for product and strategy decisions. Ex. 1, Jakobsson Rep. ¶¶31, 61-71, 76-77, 118, 125; Ex. 2, Jakobsson Reb. ¶¶44, 46, 49, 51, 54, 61-76, 87, 89-93, 97-99, 108, 110, 121-159. This attempt to usurp the jury's role in assessing the facts and witnesses is again inadmissible: "experts cannot testify about 'corporate intent,'" *United States v. Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *2 (N.D. Cal. Apr. 26, 2016) (citation omitted), or the "intention of the parties," *Miranda v. U.S. Sec. Assocs., Inc.*, 2019 WL 2929966, at *1-2 (N.D. Cal. July 8, 2019).

*First*, although irrelevant, Meta's intent in developing the FBR App is a factual question for the jury to evaluate based on the testimony of employees and evidence that requires no specialized expertise to understand. That is why courts routinely exclude testimony "about why any person … took or did not take a particular action or made or did not make a particular decision." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (citation omitted); *see also DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022) (Donato, J.) (experts must offer "specialized or scientific expertise," or something "beyond the typical knowledge and experience of a jury"). Indeed, Jakobsson *cannot* know what any person at Meta "▇▇▇" or "▇▇▇" about the FBR App. Ex. 1, Jakobsson Rep. ¶118 (opining that Meta's employees ▇▇▇ ▇▇▇), ¶131 ▇▇▇

**PUBLIC REDACTED VERSION**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also id.* ¶¶119-125, 130-131; Ex. 2, Jakobsson Reb. ¶¶46, 53, 100-107. He is a claimed cybersecurity expert with no qualifications to opine on any person's state of mind. Such testimony adds nothing and seeks only to invade the province of the factfinder in assessing for itself the factual evidence and credibility of employee witnesses.[3]

*Second*, courts "routinely" exclude expert testimony that "offers no more than the drawing of an inference from the facts of the case," *Oracle*, 2018 WL 6511146, at *3, which is exactly how Jakobsson arrived at his opinions that the data collected by FBR App was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2, Jakobsson Reb. ¶120. Jakobsson read Meta emails and documents about project goals and intentions and concluded Meta "▮▮▮▮" the data and "▮▮▮▮▮▮▮▮▮▮▮▮▮," ***even though he admittedly "do[es]n't know how [Meta] used the data."*** Ex. 4, Jakobsson Tr. 71:4-15; *see also* Ex. 1, Jakobsson Rep. ¶¶106-108, 110; Ex. 2, Jakobsson Reb. ¶¶37, 44, 77, 93, 111-114, 116-120. And he also admits he did not perform *any* independent analysis to confirm that the data was important for product development:

> Q. Right. What I'm getting at is, can you identify anything that Facebook actually did, any decisions they made with respect to their products, features, business, technical discussions, anything that Facebook did, based on all the record evidence that you have, in response to the data that was available through IAAP and not available through other means? Can you identify any specific thing they did based on that data?
> A. I have the capability of doing that but I haven't been asked to do it.

Ex. 4, Jakobsson Tr. 141:10-21.

Guesses about intent based on documents and testimony the jury can assess for itself are unhelpful and not expert testimony. The Court should exclude Jakobsson's opinions and testimony on intent, motive, and states of mind reflected in paragraphs 31, 37, 107, 116-125, 130-131, and 135-138 of his opening report and paragraphs 36-37, 44-46, 48-49, 51, 53-54, 61-77, 87, 89-93, 97-106, and 108-159 of his rebuttal report.

---

[3] Advertisers have argued that Jakobsson is needed because witnesses did not remember or did not know the technical details of how the FBR App worked. Dkt. 856 at 17:23-25. But Jakobsson's speculation about what testifying witnesses understood and thought does not help to explain how the FBR App worked. Nor could Jakobsson offer such an explanation, because he never actually analyzed the technical operation of the FBR App.

**PUBLIC REDACTED VERSION**

### III. JAKOBSSON OFFERS IMPROPER AND IRRELEVANT LEGAL CONCLUSIONS

Jakobsson offers the charged (and irrelevant) legal opinion that Meta ▇▇▇ ▇▇▇ by using the FBR App to ▇▇▇ ▇▇▇ which he repeatedly labels "▇▇▇" Ex. 1, Jakobsson Rep. ¶¶27, 36-37; *see also id.* ¶¶27, 36-37, 112, 116, 132; Ex. 2, Jakobsson Reb. ¶¶29, 45-46, 48, 50, 52, 61, 91, 96, 109, 115, 149-152. Advertisers have never explained how such testimony could possibly help the jury resolve the antitrust issues before the court. In all events, because "an expert cannot testify to a matter of law amounting to a legal conclusion," Jakobsson's legal opinion too should be excluded. *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015); *CZ Servs. v. Express Scripts Holding Co.*, 2020 WL 4518978, at *2 (N.D. Cal. Aug. 5, 2020) (Donato, J.) ("An expert may not give opinions that are legal conclusions, or attempt to advise the jury on the law." (citations omitted)).

To start, Jakobsson concedes that ▇▇▇ and ▇▇▇ have specialized legal meanings. As he notes, ▇▇▇ Ex. 1, Jakobsson Rep. ¶¶37, 114-116; Ex. 2, Jakobsson Reb. ¶43. ▇▇▇ Ex. 1, Jakobsson Rep. ¶¶114-116. All of Jakobsson's opinions on Meta's alleged "▇▇▇" thus concern "strictly legal matters" about which he may not testify. *In re Capacitors Antitrust Litig.*, 2021 WL 5407452, at *5 (N.D. Cal. Nov. 18, 2021) (Donato, J.).

Jakobsson resorts to claiming that he is using a ▇▇▇ ▇▇▇ and not a legal definition. Ex. 1, Jakobsson Rep. ¶37; *see also id.* ¶¶114, 116. But Jakobsson simply repeats ▇▇▇ ▇▇▇—and asserts (without any support) that ▇▇▇ ▇▇▇ cover the FBR App. *Id.* ¶116. ▇▇▇ ▇▇▇. *Id.* ¶114 ▇▇▇

**PUBLIC REDACTED VERSION**

1  ████████████████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████  The Rules of
3  Evidence do not permit such circumventions. However styled, Jakobsson may not "give opinions
4  that are legal conclusions" or "attempt to advise the jury on the law." *Koger v. Costco Wholesale*
5  *Corp.*, 2023 WL 8188842, at *3-4 (N.D. Cal. Nov. 27, 2023) (Donato, J.) (excluding expert's legal
6  conclusion couched as an opinion on industry standards because expert's "references to industry
7  standards" were "not adequately supported," and noting industry testimony may not stray into legal
8  conclusions).

9     Nor may Jakobsson speculate that the FBR App was "███████" "███████"
10 "███████" or ████████████████████████████  Ex. 2, Jakobsson
11 Reb. ¶¶52, 93, 108, 159. He offers inflammatory commentary throughout his reports that the FBR
12 App used technology "████████████████████████████████████████
13 ████████████" constituted a "█████████" and "████" data, Ex. 1, Jakobsson Rep. ¶¶30, 72,
14 105; *see also id.* ¶¶36, 90, 113, 127, and claims that Meta employees considered █████
15 █████████████████████████ in connection with the FBR App, Ex. 2, Jakobsson
16 Reb. ¶¶79, 90; *see also id.* ¶¶78, 81-86, 88. Testimony that a party's conduct "'could be' a
17 violation" of laws just as "clearly offer[s] impermissible legal conclusions" as testimony that the
18 conduct was illegal. *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2023
19 WL 9659943, at *17-18 (C.D. Cal. July 26, 2023) (citation omitted).

20    In addition to being inadmissible legal testimony, Jakobsson's opinions on ███████
21 █████████████████ are irrelevant to the *antitrust* claims in this case. *In re Capacitors*,
22 2021 WL 5407452, at *5 (excluding expert's legal conclusions under FRE 402 and 403); *Daubert*
23 *v. Merrell Dow Pharms.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (expert opinion must "speak[]
24 clearly and directly to an issue in dispute in the case"). For Meta's operation of the FBR App to
25 be actionable exclusionary conduct *under their own theory*, Advertisers must show it had an actual
26 "'anticompetitive effect,'" which means that the conduct must "'harm consumers'" in the alleged
27 market. *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (quoting *United States v.*
28 *Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)). Advertisers do not—and could not—assert

1  that the competitive effects of Meta's operation of the FBR App turn on whether it employed
2  ▮▮▮▮▮▮▮▮▮▮▮ And their attempts to insert these
3  unrelated legal issues through Jakobsson's testimony will derail the jury's resolution of those legal
4  questions that *do* matter under the Sherman Act, requiring minitrials on whether the FBR App
5  meets—as Jakobsson repeatedly claims—▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮

7  Finally, even if Jakobsson's opinions on ▮▮▮▮▮▮▮▮ *were* somehow
8  relevant, "such relevance is substantially outweighed by the likelihood of unfair prejudice to" Meta
9  through Jakobsson's ▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮ *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1323 (S.D.
11 Cal. 2020) (granting *Daubert* motion to exclude expert opinion characterizing the reputations of
12 defendants and their products as "irrelevant" and "unfairly prejudicial"). These comparisons offer
13 nothing to the jury beyond inflammatory rhetoric, and do not speak to the antitrust issues
14 underlying Advertisers' claims. That again warrants exclusion. *Apple iPod iTunes Antitrust Litig.*,
15 2014 WL 4809288, at *4 (N.D. Cal. Sept. 26, 2014) (applying Rule 403 in resolving *Daubert*
16 motions).

17 Accordingly, Jakobsson's opinions and testimony—offered to put expert imprimatur on
18 Advertisers' arguments regarding ▮▮▮▮▮▮—should be excluded in their entirety. At
19 minimum, the paragraphs described above must be excluded. *See* Ex. 1, Jakobsson Rep. ¶¶27, 30,
20 36-37, 72, 90, 105, 112-116, 126-127, 132, 135; Ex. 2, Jakobsson Reb. ¶¶29, 36, 42, 45-46, 48,
21 50, 52, 61, 78-88, 90, 93, 96, 108-109, 115, 149-152, 159.

**CONCLUSION**

23 The Court should exclude the testimony and opinions of Markus Jakobsson in full.

**PUBLIC REDACTED VERSION**

Dated: December 30, 2024

Respectfully submitted,

By: */s/ Sonal N. Mehta*
SONAL N. MEHTA

*Attorney for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December, 2024, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:  */s/ Sonal N. Mehta*
Sonal N. Mehta