**FILED UNDER SEAL**

| | |
|---|---|
| **BATHAEE DUNNE LLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| Yavar Bathaee (CA 282388) | Amanda F. Lawrence (*pro hac vice*) |
| yavar@bathaeedunne.com | alawrence@scott-scott.com |
| Andrew C. Wolinsky (CA 345965) | Patrick J. McGahan (*pro hac vice*) |
| awolinsky@bathaeedunne.com | pmcgahan@scott-scott.com |
| Allison Watson (CA 328596) | Michael P. Srodoski (*pro hac vice*) |
| awatson@bathaeedunne.com | msrodoski@scott-scott.com |
| Priscilla Ghiță (*pro hac vice*) | 156 South Main Street, P.O. Box 192 |
| pghita@bathaeedunne.com | Colchester, CT 06415 |
| 445 Park Avenue, 9th Floor | Tel.: (860) 537-5537 |
| New York, NY 10022 | |
| Tel.: (332) 322-8835 | Patrick J. Coughlin (CA 111070) |
| | pcoughlin@scott-scott.com |
| Brian J. Dunne (CA 275689) | Carmen A. Medici (CA 248417) |
| bdunne@bathaeedunne.com | cmedici@scott-scott.com |
| Edward M. Grauman (*pro hac vice*) | Hal D. Cunningham (CA 243048) |
| egrauman@bathaeedunne.com | hcunningham@scott-scott.com |
| 901 South MoPac Expressway | Patrick J. Rodriguez (*pro hac vice*) |
| Barton Oaks Plaza I, Suite 300 | prodriguez@scott-scott.com |
| Austin, TX 78746 | Daniel J. Brockwell (CA 335983) |
| Tel.: (213) 462-2772 | dbrockwell@scott-scott.com |
| | 600 W. Broadway, Suite 3300 |
| *Interim Co-Lead Counsel for the* | San Diego, CA 92101 |
| *Advertiser Class* | Tel.: (619) 233-4565 |

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Case No. 3:20-cv-08570-JD |
| Plaintiffs, | Hon. James Donato |
| v. | **ADVERTISER PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF MARKUS JAKOBSSON** |
| META PLATFORMS, INC., | |
| Defendant. | |

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................5

CONCLUSION .............................................................................................................................11

**FILED UNDER SEAL**

**TABLE OF AUTHORITIES**

**CASES**

*NetFuel, Inc. v. Cisco Sys., Inc.*,
    2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ................................................................... 10

*Optronic Techs, Inc. v. Ningbo Sunny Elec. Co.*,
    20 F.4th 466 (9th Cir. 2021) .............................................................................................. 10

**STATUTES AND RULES**

Fed. R. Civ. P. 26(a)(2)(B)(ii) ................................................................................................... 11

**PRELIMINARY STATEMENT**

Advertisers' oppose Meta's wholly meritless motion to exclude the testimony of Dr. Markus Jakobsson, a computer security expert qualified and necessary for the jury to understand critical—and contested—technical evidence in Advertisers' antitrust case.

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████ Companies like Snap deploy code within their apps to capture information about in-app behavior—called analytics—and then send this information to proprietary analytics servers so that the app owners can understand what is going on within their products, and can obtain telemetry information that the app owners consider to be particularly valuable and important about their own apps. Jakobsson Rpt. ¶ 45. These analytics—which are coded, designed, communicated, and transported by an application, not its users—██████████████████████████████████. In order to protect these competitively valuable secrets, companies like Snap encrypt their analytics traffic and ensure it is being sent to the right server—and not an imposter—using cryptographic authentication based on what are called "digital certificates." Jakobsson Rpt. ¶¶ 38-40, 44-45.

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

---

[1] All exhibit numbers refer to exhibits to Advertiser Plaintiffs' Opposition to Defendant Meta Platforms, Inc.'s Motion for Summary Judgment, which was filed today.

[2] Oddly, Meta did not actually include Dr. Jakobsson's complete reports—despite attempting to include them in their entirety—in its *Daubert* motion. Exs. 6 and 7 are the complete reports, including the material Meta omitted.

**FILED UNDER SEAL**

1  ██████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████████████████
3  ████████████

4       This kind of cyberattack on a third-party's secure communications is called a "man-in-the-
5  middle" attack—████████████████████████████████████████████
6  ██████████████████████████████████████████████████████████
7  ██████████████████████████████████████████████████████████
8  ████████████████████████████████████
9  ████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████
13 ██████████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████████
17 ██████████████████████████████████████████████████████████
18 ██████████████████████████████████████████████████████████
19 ████████████████████████████████████████

20      The facts of all the above—which are an important part of Advertisers' merits case against
21 Meta for monopolization of the Social Advertising Market—are highly technical. They involve
22 mobile device and server-side security issues, mobile analytics, digital certificates, encryption, and
23 even smartphone operating system exploits. And the evidence of record is just as complex, comprising
24 technical analyses (*e.g.,* Exs. 14, 15, 17), ███████████████████████████████
25 ██████████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████████. The
27 Court need not take Advertisers' word on this point: Meta's own executives repeatedly described the
28

1   program as beyond even their own technical understanding in documents and at deposition in this
2   case. *See, e.g.*, Ex. 2215; Olivan Dep. at 201:1-4, 201:24-25; Zuckerberg Dep. at 111:8-11, 115:4-5.
3   Moreover, Meta has disputed ████████████████████████████████████████
4   ████████████████████████████████████████████████████████████████████
5   ████████████████████████████████████████████████████████████████████
6   ████████████████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████████████
9   ████████████████████████████████████████████████████████████████████
10  ████████████████████████████████████. But this evidence is, alas, technical,
11  so to explain its ***actual*** meaning (rather than Meta's mischaracterization of it) to the jury, Advertisers
12  retained one of the world's foremost computer security experts, Dr. Markus Jakobsson, to help explain
13  ████████████████████████████████████.
14   Dr. Markus Jakobsson, a Ph.D. computer scientist with approximately thirty years of
15  experience, literally wrote the book on man-in-the-middle attacks, Jakobsson Rpt. ¶ 11—one of Dr.
16  Jakobsson's six textbooks, fifty-plus articles, and 245 total publications on computer security (cited
17  at least 20,136 times, according to Google Scholar), *id.* ¶¶ 22-25, Jakobsson CV at 3-20. Besides his
18  publishing pursuits, Dr. Jakobsson has long served in industry roles involving computer security,
19  including as Principal Scientist at Xerox PARC, as Principal Scientist of Consumer Security at
20  PayPal, as Senior Director at Qualcomm, and as Chief Scientist at ByteDance from 2020-2021, where
21  he guided the security research for both ByteDance and TikTok. *Id.* ¶¶ 12, 16.
22   Dr. Jakobsson submitted two reports in this case, Exs. 6 & 7 ████████████
23  ████████████████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████
28  ████████████████████████████████████████████████████████████████████

1. ██████████████████████████████████████████████████████████████
2. ████████████████████████████████████████████

3.       Dr. Jakobsson will unquestionably help the jury and the Court to understand what Meta was
4. actually doing to its competitors—and to competition—█████████████████████████████
5. ██████████████████████████████████████████████████████████████
6. ██████████████████████████████████████████████████████████████
7. ██████████████████████████████████████████████████████████████
8. ██████████████████████████████████████████████████████████████
9. ██████████████████████████████████████████████████████████████
10. ██████████████████████████████████████████████████████████████
11. ██████████████████████████████████████████████████████████████
12. ████████████████████████████████████████████

13.       Critically, without Dr. Jakobsson's testimony, the trial will have no technical counterbalance
14. to Meta's wrong-on-its-face mischaracterization of the details and absolute rarity ███████
15. ██████████████████████████████████████████████████████████████
16. ██████████████████████████████████████████████████████████████
17. ██████████████████████████████████████████████████████████████
18. ██████████████████████████████████████████████████████████████
19. ██████████████████████████████████████████████████████████████
20. ████████████████████████████████. This is, presumably why Meta is moving to exclude Dr.
21. Jakobsson, and is willing to stoop to wholesale misinformation about what is actually in his reports
22. to do it. But none of Meta's arguments actually meet the *Daubert* standard.

23.       Rather, Meta creates a fanciful, fictional version of Dr. Jakobsson's reports—one that ignores
24. the vast majority of the 299 paragraphs in Dr. Jakobsson's two reports—and tells the Court that Dr.
25. Jakobsson's opinions are junk science because some parts of his reports are directly in line with
26. Advertisers' substantive positions, as set forth in contention interrogatories. Even if this overlap were
27. the entirety of Dr. Jakobsson's reports (it is not, as discussed above, even close to the case), it is
28. entirely unobjectionable that an expert's opinions match the positions of litigants and counsel—and

**FILED UNDER SEAL**

1  indeed, the law directly embraces such concinnity. (Notably, in another motion filed *the same day as*
2  *this one*, Meta argues that an expert's opinions should be *excluded* because they purportedly *don't*
3  identically match contention interrogatories. *See* Meta SJ Mot. at 13-14.) Meta's other "*Daubert*"
4  arguments are not really *Daubert* issues at all, but mainly express cross-examination issues or
5  objections for trial on keyhole aspects of wording or phraseology.
6         At bottom, Dr. Jakobsson's opinions are clearly not "junk science," and he is clearly a
7  useful—indeed, necessary—voice for Advertisers' trial. Meta's motion to exclude should be denied.

## ARGUMENT

9   Dr. Jakobsson's testimony will be useful to the jury and the Court ▮▮▮
10  ▮▮▮ is technically complex, and implicates evidence and witness testimony that is beyond the
11  technical and industry knowledge of the average layperson—and Meta has sought to leverage this
12  complexity in its defenses and arguments in this case.
13  The essential conduct about which Dr. Jakobsson will testify ▮▮▮



1 [REDACTED]
2 [REDACTED]
3 [REDACTED]
4 [REDACTED]
5 [REDACTED]
6 [REDACTED]
7 [REDACTED]
8 [REDACTED]
9 [REDACTED]
10 [REDACTED].

11     Again, the words and concepts in this key exhibit are avowedly technical. As Dr. Jakobsson
12 will explain, walking the jury and the Court through evidence far more complex than the above—
13 [REDACTED]
14 [REDACTED]
15 [REDACTED]
16 [REDACTED]
17 [REDACTED]
18 [REDACTED]
19 [REDACTED]
20 [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED]
25 [REDACTED]
26 [REDACTED]
27 [REDACTED]
28 [REDACTED]

1
2
3
4
5
6
7
8
9
10
11
12
13

14   Although Meta has taken the position in its *Daubert* motion that the technical details of its
15   ▮ program need not be understood by the jury and the Court to adjudicate this case, Meta's actual
16   defenses and arguments with respect ▮ give the lie to this position. For example ▮
17
18   but Dr. Jakobsson—who is both a computer security expert and a longtime industry participant,
19   including holding positions at PayPal, Qualcomm, and ByteDance in the past decad ▮
20
21
22
23
24
25   Moreover, without a technical expert like Dr. Jakobsson to walk the jury and the Court through
26   the details of what it means to "man-in-the-middle" traffic to an "analytics server," it may not be
27
28

Case No. 3:20-cv-08570-JD                    Advertiser Plaintiffs' Opposition to Motion to Exclude Jakobsson



For example, Dr. Jakobsson will



Meta's *Daubert* motion does not seriously contest all of the above. Rather, it cuts and pastes a handful of passages from Dr. Jakobsson's 126 pages of expert disclosures and asserts that because they are similar (in some cases, near identical) to Advertisers' interrogatory disclosures, Dr. Jakobsson cannot testify. Mot. at 3-7. As an initial matter, this position is squarely opposite to Meta's *co-pending* position in a different motion filed the same day as this one in which Meta wants to *exclude* a different expert's opinions for *not* being worded identically to earlier contention interrogatory responses. *See* Meta SJ Mot. at 13-14. In any event, Meta's position on expert

disclosures being "too similar" to previous disclosures, including contentions, is simply wrong. *See, e.g.*, *Optronic Techs, Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 477 (9th Cir. 2021) ("The court properly admitted Dr. Sasian's report because the parts written by counsel consisted of background information qualified by statements such as 'I am informed that . . .' Dr. Sasian also testified that he signed his report after reviewing and editing it and determining that it accurately reflected his analysis and opinion with regard to the case."); *NetFuel, Inc. v. Cisco Sys., Inc.*, 2020 WL 1274985, at *3-4 (N.D. Cal. Mar. 17, 2020) ("Plaintiff's argument, however, is flawed. It ignores the reality that Federal Rule of Civil Procedure 26 does not require experts to unilaterally write their reports. Indeed, attorneys may be involved in the preparation of an expert report. This involvement can include counsel's paraphrasing of the expert's qualifications, counsel's providing 'teamwork,' 'collaboration,' or editorial assistance on the report, counsel's composing of initial drafts of reports based upon communications with the expert and allowing the expert to substantively revise the report to reflect the expert's opinions, or counsel's drafting of the report with the expert's substantive assistance." (cleaned up)). Dr. Jakobsson consistently testified at deposition that he wrote both of his reports, and that they accurately reflect his opinions. *See* Ex. 104 (Jakobsson Dep.) at 42:15-23. ("Q. And did you actually write your reports? A. I did. Q. And you understood what you were putting in there and you stand by the opinions in your reports. Right? A. Yes. I have one small typo that I need to correct, but apart from that, yes.").

Meta also argues that Dr. Jakobsson "speculates" about irrelevant issues that are not "technical." Mot. at 7-8. This is not a serious basis to exclude Dr. Jakobsson's testimony under *Daubert*. An example of one of these paragraphs identified by Meta is below:

 The above is a description of evidence that Dr. Jakobsson reviewed in connection with preparing his opinions—and comes in the context of a technical evaluation of an

engineer, at that. The fact that Dr. Jakobsson discusses evidence in his reports does not render them "junk science"—quite the opposite—and it is not clear why Meta believes he should be excluded under *Daubert* as a result. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring expert report to contain "the facts or data considered by the witness in forming" their opinions). But Meta's motion is replete with this kind of argument. Meta's complaints of this nature are the stuff of cross-examination (if at all). They do not present a credible basis to exclude an important expert witness under the guise of *Daubert*.

      Finally, Meta argues that Dr. Jakobsson's testimony should be excluded because he allegedly offers legal conclusions. Mot. at 9-11. The problem with this argument is evident from Dr. Jakobsson's actual reports—he offers no legal opinions, and says as much throughout. What Meta really seems to be concerned about is the fact that Dr. Jakobsson—a computer security expert with 26 years' experience who has written entire books about cybercrime and serves on an international consortium to combat it, Jakobsson Rpt. ¶¶ 11, 18 & CV—calls Meta's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The problem with Meta objecting to these characterizations is that they are true, and Dr. Jakobsson—an undeniable cybercrime expert—is eminently qualified to make them. Meta's argument that such descriptions of its conduct are "unfairly prejudicial" is incorrect, because the descriptions are undeniably *fair*. To the extent Meta wants to assert otherwise, it can certainly cross-examine Dr. Jakobsson about his experience with cybercrime and wiretapping, and about why he believes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

## CONCLUSION

Meta's motion to exclude Dr. Markus Jakobsson should be denied.

**FILED UNDER SEAL**

Dated: January 29, 2025

| | |
|---|---|
| **BATHAEE DUNNE LLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| By: */s/ Yavar Bathaee* <br> Yavar Bathaee (CA 282388) <br> yavar@bathaeedunne.com <br> Andrew C. Wolinsky (CA 345965) <br> awolinsky@bathaeedunne.com <br> Priscilla Ghiță (*pro hac vice*) <br> pghita@bathaeedunne.com <br> 445 Park Avenue, 9th Floor <br> New York, NY 10022 <br> Tel.: (332) 322-8835 <br><br> Brian J. Dunne (CA 275689) <br> bdunne@bathaeedunne.com <br> Edward M. Grauman (*pro hac vice*) <br> egrauman@bathaeedunne.com <br> 901 South MoPac Expressway <br> Barton Oaks Plaza I, Suite 300 <br> Austin, TX 78746 <br> Tel.: (213) 462-2772 <br><br> Allison Watson (CA 328596) <br> awatson@bathaeedunne.com <br> 3420 Bristol St, Ste 600 <br> Costa Mesa, CA 92626-7133 <br><br> *Interim Co-Lead Counsel for the Advertiser Class* | By: */s/ Amanda F. Lawrence* <br> Amanda F. Lawrence (*pro hac vice*) <br> alawrence@scott-scott.com <br> Patrick J. McGahan (*pro hac vice*) <br> pmcgahan@scott-scott.com <br> Michael P. Srodoski (*pro hac vice*) <br> msrodoski@scott-scott.com <br> 156 South Main Street, P.O. Box 192 <br> Colchester, CT 06415 <br> Tel.: (860) 537-5537 <br><br> Patrick J. Coughlin (CA 111070) <br> pcoughlin@scott-scott.com <br> Carmen A. Medici (CA 248417) <br> cmedici@scott-scott.com <br> Hal D. Cunningham (CA 243048) <br> hcunningham@scott-scott.com <br> Patrick J. Rodriguez (*pro hac vice*) <br> prodriguez@scott-scott.com <br> Daniel J. Brockwell (CA 335983) <br> dbrockwell@scott-scott.com <br> 600 W. Broadway, Suite 3300 <br> San Diego, CA 92101 <br> Tel.: (619) 233-4565 |
| **LEVIN SEDRAN & BERMAN LLP** | **AHDOOT & WOLFSON, PC** |
| Keith J. Verrier (*pro hac vice*) <br> kverrier@lfsblaw.com <br> Austin B. Cohen (*pro hac vice*) <br> acohen@lfsblaw.com <br> 510 Walnut Street, Suite 500 <br> Philadelphia, PA 19106-3997 <br> Tel.: (215) 592-1500 <br><br> *Members of Executive Committee for the Advertiser Class* | Tina Wolfson (CA 174806) <br> twolfson@ahdootwolfson.com <br> Robert Ahdoot (CA 172098) <br> rahdoot@ahdootwolfson.com <br> Theodore W. Maya (CA 223242) <br> tmaya@ahdootwolfson.com <br> Henry J. Kelson (*pro hac vice*) <br> hkelston@ahdootwolfson.com <br> 2600 West Olive Avenue, Suite 500 <br> Burbank, CA 91505 <br> Tel.: (310) 474-9111 |

**FILER ATTESTATION**

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.

Dated: January 29, 2025                    By: */s/ Brian J. Dunne*