**PUBLIC-REDACTED**

1

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Allison Watson (CA 328596)
awatson@bathaeedunne.com
Priscilla Ghiță (*pro hac vice*)
pghita@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel: (213) 462-2772

*Interim Co-Lead Counsel for the
Advertiser Class*

[Additional counsel on signature page]

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated, | Case No. 3:20-cv-08570-JD |
| Plaintiffs, | **ADVERTISER PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS** |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | Hearing Date: To Be Determined |
| | Hearing Time: To Be Determined |
| | Courtroom 11, 19th Floor |
| | Judge: The Honorable James Donato |

**PUBLIC-REDACTED**

1

**TABLE OF CONTENTS**

2

3  INTRODUCTION ............................................................................................................. 1

4  LEGAL STANDARD ....................................................................................................... 2

5  ARGUMENT ................................................................................................................... 3

6    I.    DR. WILLIAMS'S YARDSTICK ANALYSIS IS RELIABLE .......................... 4

7          A.    The Criteria Applied By Dr. Williams Are Reliable ................................. 4

8          B.    The Resulting Yardstick Firms Are Comparable and Appropriate ........... 6

9    II.   THE LINK FROM EPR TO PRICES IS DIRECT ............................................. 7

10   III.  DR. WILLIAMS ANALYZED WHETHER THE DIFFERENCE
           BETWEEN (1) META'S EPR AND (2) THE YARDSTICK EPRS COULD
11         BE DUE TO FACTORS OTHER THAN ANTICOMPETITIVE CONDUCT ..... 9

12   IV.   DR. WILLIAMS'S DURING-AFTER ANALYSIS IS NOT JUNK
           SCIENCE ........................................................................................................ 11

13

14   V.    ███████████████████████████████████████████
           ███████████████████████████████████████████
15         ███████████████ ............................................................. 12

16   CONCLUSION ............................................................................................................ 15

17

18

19

20

21

22

23

24

25

26

27

28

ADVERTISER PLAINTIFFS' OPP. TO MOTION
TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013)........................................................................ 3

*Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*,
  No. 1:12-cv-448-WTL-DKL, Entry on Various Pretrial Motions (S.D. Ind. Feb.
  2, 2015) (ECF No. 319) ............................................................................... 4

*Behrend v. Comcast*,
  No. 2:03-cv-06604, Order (E.D. Pa. Jan. 7, 2010) (ECF No. 430)........................15

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998)........................................................................10

*Bradburn Parent/Tchr. Stores, Inc. v. 3M*,
  No. CIV.A.02-7676, 2004 WL 1842987 (E.D. Pa. Aug. 18, 2004)....................... 3

*CDW LLC v. NETech Corp.*,
  906 F. Supp. 2d 815 (S.D. Ind. 2012).............................................................. 4

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014)....................................................................... 3

*Conwood Co., L.P. v. U.S. Tobacco Co.*,
  290 F.3d 768 (6th Cir. 2002)........................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .................................................................................. 2

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
  301 F. Supp. 2d 612 (S.D. Tex. 2003), *aff'd*, 131 F. App'x 450 (5th Cir. 2005) ..................10

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
  No. 2:18-CV-00923-SVW-RAO, 2019 WL 12074086 (C.D. Cal. July 1, 2019)...................10

*In re Blood Reagents Antitrust Litig.*,
  No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) .................................... 4

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  No. 18-CV-2521, 2024 WL 3509668 (N.D. Ill. July 22, 2024)............................... 3

*In re Google Play Store Antitrust Litig.*,
  No. 20-CV-05761-JD, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ...................... 9

ii

CASE NO. 3:20-CV-08570-JD                    ADVERTISER PLAINTIFFS' OPP. TO MOTION
                                 TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS

*In re Live Concert Antitrust Litig.*,
    863 F. Supp. 2d 966 (C.D. Cal. 2012) ..............................................................9, 10

*In Re Turkey Antitrust Litigation*,
    No. 1:19-CV-08318, Order (N.D. Ill. Jan. 22, 2025) (ECF No. 1107) ................................15

*Kentucky v. Marathon Petroleum Co. LP*,
    464 F. Supp. 3d 880 (W.D. Ky. 2020).................................................................10

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL
    8178971 (N.D. Ill. Sept. 8, 2005) ...................................................................... 4

*Muffett v. City of Yakima*,
    No. CV-10-3092-RMP, 2012 WL 12827492 (E.D. Wash. July 20, 2012)............................ 4

*Persian Gulf v. BP West Coast Prods. LLC*,
    632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022) ...............................................12

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010)............................................................................ 3

*Tawfilis v. Allergen, Inc.*,
    No. 8:15-cv-00307-JLS-JCG, 2017 WL 3084275 (C.D. Cal. June 26, 2017)........................ 4

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019).............................................................................. 8

*US Airways, Inc. v. Sabre Holdings Corp.*,
    No. 1:11-cv-02725, Order (S.D.N.Y. Aug. 3, 2016) (ECF No. 484)................................. 9

**Court Rules**

Federal Rule of Evidence 702.............................................................................2, 9

**Other Authorities**

ABA Section of Antitrust Law (2017), *Proving Antitrust Damages: Legal and
    Economic Issues*, 3rd ed., American Bar Association .............................................. 8

McCrary, J. and Rubinfeld, D. (2014), "Measuring Benchmark Damages in Antitrust
    Litigation," 3 *Journal of Econometric Methods* 63-74............................................ 7

Koller, T., Goedhart, M., and Wessels, D. (7th ed., 2020), *Valuation: Measuring and
    Managing the Value of Companies*. .................................................................7, 8

# INTRODUCTION

Despite this Court instructing Defendant Meta Platforms, Inc. ("Meta" f/k/a "Facebook") to "exercise some discretion" in challenging Advertiser Plaintiffs' experts[1], Meta yet again seeks to exclude the report and testimony of Advertiser Plaintiffs' expert, Dr. Michael A. Williams.  It offers nothing in this latest motion that has not already been argued, and Dr. Williams remains a respected Ph.D. economist specializing in antitrust, industrial organization, and regulation who has testified numerous times.[2]  Dr. Williams offers opinions on the relevant market, Meta's monopoly power, the common impact of Meta's anticompetitive conduct, and damages.  ¶¶18-24.

As to damages, Dr. Williams derived "yardstick" damages—a reliable overcharge methodology recognized in antitrust economics and industrial organization— ████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[1]  Nov. 14, 2024 Hrg. Tr. (ECF No. 856) at 33:3-7.

[2]  *See* Expert Merits Report of Michael A. Williams, Ph.D., dated August 5, 2024 ("Williams Merits Report"), attached as Exhibit 1 to the Declaration of Dr. Michael A. Williams ("Williams Decl."), filed contemporaneously herewith, at ¶¶1-4. Hereinafter, all citations to "¶" or "¶¶" are to the Williams Merits Report unless specified otherwise.  Citations are omitted and emphasis is added throughout unless otherwise noted.

**PUBLIC-REDACTED**

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ██████████████████████████████████

7       Under the guise of the *Daubert* standard, Meta's lawyers seek to exclude Dr. Williams's

8 damages testimony based predominately on narrowly excerpted deposition testimony.  Meta's brief

9 makes various spurious arguments as to why Dr. Williams's methods are somehow junk science.  Not

10 only does virtually every argument go to the weight and not the admissibility of Dr. Williams's

11 opinions, but none of these arguments hold water.  Instead, each betrays Meta's deep

12 misunderstanding and misappreciation of what Dr. Williams actually did.  After nit-picking at Dr.

13 Williams's yardstick analysis, Meta then lobs several unsuccessful attacks at his market definition.[3]

14       Despite Meta's broad declarations to the contrary, nothing in Dr. Williams's report resembles

15 "predicting criminality by feeling the bumps on a person's head."  Mot. at 1.  Meta does not and

16 cannot dispute that the yardstick framework is an accepted and reliable measure of antitrust damages.

17 Meta merely quibbles with which "bumps on a person's head" should be counted.  "Dauberts are not

18 a substitute for the adversarial process."  Nov. 14, 2024 Hrg. Tr. at 33:7-9.  Whatever the probative

19 value of Meta's "gotcha" arguments, the appropriate audience is the finder of fact.  Dr. Williams's

20 opinions are not "junk science," and all of Meta's arguments are easily dismissed under the *Daubert*

21 standard.

22                                **LEGAL STANDARD**

23       Under Federal Rule of Evidence 702, an expert witness's testimony is admissible if the

24 "testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell*

25 *Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  "'Expert opinion testimony is relevant if the

26 knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the

27

28 [3]     None of Defendant's challenges pertain to whether the alleged conduct caused common impact.

1  knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

2  discipline.'" *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  The district court's task is not to

3  "decid[e] whether the expert is right or wrong, just whether his testimony has substance such that it

4  would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-70

5  (9th Cir. 2013).  "Challenges that go to the weight of the evidence are within the province of a fact

6  finder, not a trial court judge.  A district court should not make credibility determinations that are

7  reserved for the jury." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

8  **ARGUMENT**

9  In the Williams Merits Report, Dr. Williams opined that:

10

11

12

13

14  To calculate his damages, Dr. Williams used the yardstick methodology commonly applied in

15  antitrust cases.[4]  He applied five criteria which resulted in 25 yardstick firms, to which Dr. Williams

16  added five firms (Amazon, Apple, Pinterest, Snap, and Twitter) that Meta has previously demanded

17  be included.  The 90 Yardstick Index EPRs using all or a subset of these firms were then used to

18  determine damages and perform robustness checks, cross checked by a "during after" EPR analysis.

19  For the reasons stated below and in Advertiser Plaintiffs' Opposition to the Motion to Exclude the

20  Class Certification Report of Dr. Michael Williams (ECF No. 795-19), all of Dr. Williams's opinions

21  are robust, supportable, and admissible in the face of Meta's challenges.

22

23

24  [4]   Moreover, since Dr. Williams ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a

25  *prima facie* case of antitrust injury exists already.  *See, e.g., Bradburn Parent/Tchr. Stores, Inc. v.*

26  *3M*, No. CIV.A.02-7676, 2004 WL 1842987, at *13 (E.D. Pa. Aug. 18, 2004) ("[W]hen a monopolist
     unlawfully maintains its monopoly power . . . it is logical, at least as a general rule, to presume that

27  all class members have suffered injury as a result of the conduct, in the form of supra-competitive
     prices."); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-CV-2521, 2024 WL 3509668, at

28  *5 (N.D. Ill. July 22, 2024) (same).

3

## I.    DR. WILLIAMS'S YARDSTICK ANALYSIS IS RELIABLE

### A.    The Criteria Applied By Dr. Williams Are Reliable

Meta criticizes four of the five filters Dr. Williams applied to select comparable firms to include in his yardstick, but its criticisms amount to a preference that Dr. Williams use some other filters that Meta does not even identify. The authorities cited by Dr. Williams demonstrate that considerable professional judgment goes into picking both the denominator (the pool) and the numerator (the narrowing criteria or filters) in the yardstick process. Because of this inherent discretion, "[a]rguments about what factors an expert should have controlled for in conducting a yardstick analysis generally go to the weight, rather than the admissibility, of [an] expert's testimony." *Tawfilis v. Allergen, Inc.*, No. 8:15-cv-00307-JLS-JCG, 2017 WL 3084275, at *6 (C.D. Cal. June 26, 2017); *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, No. 1:12-cv-448-WTL-DKL, Entry on Various Pretrial Motions (S.D. Ind. Feb. 2, 2015) (ECF No. 319), at 9-10 ("quibbles" with yardstick analysis choices better explored at cross examination).[5]

Meta complains about the absence from the yardstick group of several firms "typically mentioned in the same breath as Meta." Mot. at 5. As a threshold matter, this statement by Meta is patently wrong. ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[5]    The cases Meta cites for its argument that issues with the selection criteria go to admissibility all dealt with experts who knew almost nothing about the firms they selected as comparators. *See, e.g.*, *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *22 (E.D. Pa. Oct. 19, 2015) ("A proposed yardstick must be rejected as inadmissible where the expert testimony is *so deficient that the 'comparison is manifestly unreliable and cannot logically advance a material aspect of the proposing party's case*.'"); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 814 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) ("[Expert] lacked the qualifications to conclude that merely because all nine companies could be classified as 'service centers,' they necessarily competed with Loeffel or that they were comparable. Spending a few minutes on the internet does not make one an expert on any 'industry' or on any topic."); *Muffett v. City of Yakima*, No. CV-10-3092-RMP, 2012 WL 12827492, at *3 (E.D. Wash. July 20, 2012) ("[Expert] made clear that he did not consult the actual data of the businesses . . . Instead, [Expert] gauged the proposed numbers presented by Mr. Muffett against his memory . . . ."); *CDW LLC v. NETech Corp.*, 906 F. Supp. 2d 815, 824 (S.D. Ind. 2012) (criticizing "average of unknowns" yardstick where expert "made no (and did not rely on any) economic analysis").

4

CASE NO. 3:20-CV-08570-JD                                    ADVERTISER PLAINTIFFS' OPP. TO MOTION
                                          TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS

1    ███████ ,,6 ██████████████████████████████████████████████

2    ████████████████████████████████████ .  Furthermore, "mentioned in the same breath" is not an

3    objective criterion that can be defined or applied.  Whether a company is mentioned in the "same

4    breath" as another is entirely irrelevant to selecting yardstick firms.

5         Meta next invites the Court to consider each filter in turn, which is an invitation to adopt the

6    incorrect analytical frame.  When identifying a set of yardstick firms, all selection criteria must be

7    considered jointly.  The criteria employed by Dr. Williams reflect the filters that, in Dr. Williams's

8    assessment, closely follow the relevant literature and were most likely to generate a comparison set

9    of "reasonably similar" firms to Meta's advertising business.

10        <u>Filter two:</u> ████████████████████    Here, Meta complains ████████████

11    ████████████████████████████████████████████████████████████████

12    ████████████████████████████████████████████████████████████████

13    ████████████████████████████    *Id.* at 6:18-7:8.    ████████████████

14    ████████████████████████████████████████████████████████████████

15    ████████████    Meta is wrong.    ████████████████████████████████

16    ████████████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████████

21        <u>Filters three and four:</u> ████████████████████████████████

22    ████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████████

26    ─────────────────────
      [6]   Meta also mentions LinkedIn, Reddit, and TikTok, ████████████████████

27    ████████████████████████████████████    *See* Expert Class Certification Reply
      Report of Michael A. Williams, Ph.D., dated July 8, 2024 ("Williams Class Cert. Reply"), Williams

28    Decl. Ex. 3, at ¶165.

1   ███████████████████████████████████████████████

2   ████████████.

3   <u>Filter five:</u> ████████. ████████████████████████

4   ███████████████████████████████████████████████

5   ███████████████████████████████████████████████

6   ███████████████████████████████████████████████

7   ███████████████████████████████████████████████

8   ███████████████████████████████████████████████

9   ███████████████████████████████████████████████

10   ███████████████████████████████████████████████

11   ███████████████████████████████████████████████

12   In sum, the filters selected by Dr. Williams are based upon his experience and expertise, the

13   relevant literature, and the particular parameters of this case. Meta attempts to pick apart each filter

14   individually without offering alternatives or suggesting that the filter eliminated any firms that should

15   be used as yardsticks. Not only are its attacks baseless, but they are better left to cross-examination.

16   **B.**   **The Resulting Yardstick Firms Are Comparable and Appropriate**

17   After applying these five filters, Dr. Williams identified 25 comparable firms (████████

18   ███████████████████████████████████████████████

19   ███████████████████████████████████████████████

20   ███████████████████████████████████████████████

21   ███████████████████████████████████████████████

22   ████████████████████████████

23   Though these 25 firms met the five criteria specified by Dr. Williams, Meta unsurprisingly

24   finds fault with them for various insignificant reasons. ████████████████████

25   ███████████████████████████████████████████████

26   ███████████████████████████████████████████████

27

28

6

CASE NO. 3:20-CV-08570-JD       ADVERTISER PLAINTIFFS' OPP. TO MOTION
TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS

1 [REDACTED]

2 [REDACTED]

3 [REDACTED]

4 [REDACTED]

5 [REDACTED]

6 [REDACTED]

7 Moreover, each of Meta's criticisms of these four firms are weak.[8]

8 ## II.    THE LINK FROM EPR TO PRICES IS DIRECT

9 Most of Meta's criticisms of the Williams Merits Report [REDACTED]

10 [REDACTED] Far from "junk science," excess EPR over an extended period of

11 time is accepted in the economics literature as a measure of antitrust damages using a yardstick model.

12 ¶231. Dr. Williams cites [REDACTED]

13 [REDACTED]

14 • [REDACTED]

15 

16 

17 

18 • [REDACTED]

19 

20 

21 

22 ---

[7] [REDACTED]

23 [8] Meta complains [REDACTED]

24 [REDACTED]

25 

26 

27 [9] [REDACTED]

28 [REDACTED]



[REDACTED] [15]

Therefore, courts have refused to exclude well-developed comparable-company yardstick analyses that convert economic profits to prices using the EPR methodology.[16]

[REDACTED]

[REDACTED] [17]

Meta is wrong. [REDACTED]

[REDACTED]

[REDACTED] [18]

### III. DR. WILLIAMS ANALYZED WHETHER THE DIFFERENCE BETWEEN (1) META'S EPR AND (2) THE YARDSTICK EPRS COULD BE DUE TO FACTORS OTHER THAN ANTICOMPETITIVE CONDUCT

Meta speculates that Dr. Williams does not control for "lawful" factors that [REDACTED] [REDACTED]. At the outset, speculation that an omitted variable might account for some or all of this difference is not sufficient for exclusion under Rule 702. Meta fails to supply "some indication that the excluded

[REDACTED]

[REDACTED]

[15] [REDACTED]

[16] *See also US Airways, Inc. v. Sabre Holdings Corp.*, No. 1:11-cv-02725, Order (S.D.N.Y. Aug. 3, 2016) (ECF No. 484) (defendant's argument that expert's EPR calculation is incorrect is a question best saved for consideration by jury); *US Airways, Inc. v. Sabre Holdings Corp.*, No. 1:11-cv-02725, Order (S.D.N.Y. Apr. 15, 2022) (ECF No. 1171) (defendant's argument, that plaintiff's expert only found a casual link between defendant's conduct and plaintiff's injury and damages methodology is impermissibly speculative, was unavailing). Additionally, Meta's reliance on *In re Google Play Store Antitrust Litig.*, No. 20-CV-05761-JD, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) is misplaced. That opinion dealt with a regression analysis, not a yardstick, and the Court was evaluating the use of logit functions to determine market share, not EPRs. *Id.* at *9.

[REDACTED]

[17] Mot. at 4.

[18] [REDACTED]

1   variables would have impacted the results" or attempted to quantify the effect of any such variables.

2   *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 974 (C.D. Cal. 2012).

3   Meta correctly repeats



19   Meta also ignores Dr. Williams's testimony to this effect, including, for example:

_____

[19]   Williams Class Cert. Reply, ¶62.

[20]   *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 592-93 (7th Cir. 1998) (attempt "to prove damages by comparing the defendant's prices at one period or in one area with its prices in another period or another area"); *Kentucky v. Marathon Petroleum Co. LP*, 464 F. Supp. 3d 880, 892 (W.D. Ky. 2020) (excluding yardstick analysis of "market prices"); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 301 F. Supp. 2d 612, 625 (S.D. Tex. 2003), *aff'd*, 131 F. App'x 450 (5th Cir. 2005) (excluding a methodology that "simply measures declines in the plaintiffs' sales and attributes them" to anticompetitive conduct); *Live Concert Antitrust*, 863 F. Supp. 2d at 974 (excluding yardstick composed of "average ticket prices"). Meta also points to the exclusion of Dr. Williams's testimony in *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 2:18-CV-00923-SVW-RAO, 2019 WL 12074086, at *11 (C.D. Cal. July 1, 2019), an irrelevant Lanham Act case that involved an "autoregressive distributed lag regression model" on accounting profits, not a yardstick of EPRs.

10

- [REDACTED]

- [REDACTED]

Notably, similar cases using the EPR damages methodology have applied to the same comparison. In *US Airways v. Sabre*, Sabre (like Meta) introduced many technological innovations and the EPR methodology did not "disentangle" Sabre's profitability caused by innovations from profitability caused by the alleged anticompetitive conduct in that case, and the court did not require it. Similarly, in the *Google Play* case, Google introduced many technological innovations but the EPR methodology applied in that case did not "disentangle" profitability caused by these or other innovations from profitability caused by the alleged conduct.

## IV.    DR. WILLIAMS'S DURING-AFTER ANALYSIS IS NOT JUNK SCIENCE

[REDACTED] In conducting both, Dr. Williams employed two "generally accepted methods for proving antitrust damages." *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 793 (6th Cir. 2002) (sustaining damages award in antitrust case because it was within the range given by plaintiff's expert after conducting a before-and-after analysis and yardstick analysis).



**PUBLIC-REDACTED**

1    Meta levels the same criticisms against this analysis as against Williams's EPR-based yardstick

2    analysis, which should be rejected for the reasons stated above.

3          Additionally, Meta suggests the During-After analysis must be rejected because the

4    anticompetitive effects of the alleged conduct would not have dissipated from the market by 2022-

5    2023, making that period inappropriate to use as a clean baseline.

6

7

8

9

10    .[23]  In sum, Dr.

11    Williams's During-After analysis is consistent with, and supports the conclusions reached in the rest

12    of the Williams Merits Report.

13    **V.**

14

15

16

17

18

19          Meta's Motion goes off the rails at the start,

20

21

22

23    _____

24    [23]        Meta's reference to the *Persian Gulf v. BP West Coast Prods. LLC*, 632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022) case is inapt. Mot. at 11:1-16. That case, in which Dr. Williams used a

25    forecasting regression model to estimate but-for wholesale gasoline prices, rested on entirely different facts and assumptions made by the Court, including that because the plaintiffs had alleged that some

26    evidence of conspiratorial conduct existed in a given period, that ***necessarily*** meant that prices in that period were affected by the alleged conspiracy. Dr. Williams's analysis demonstrated, however, that

27    there actually were no price effects of the alleged conspiratorial conduct in the period.

28    [24]    Mot. at 11.

     ADVERTISER PLAINTIFFS' OPP. TO MOTION
TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF DR. MICHAEL WILLIAMS



Meta speculates that Amazon, Google, and Apple should be included in the U.S. market for social advertising,[27]

Meta's speculation that Amazon and Apple should be included in the market for the damages period (December 1, 2016 through December 31, 2020) is even more farfetched. Neither of those companies operated a social network in that period. In any event, arguments about which companies should be included in an

---

[25]

[26] Meta claims that Dr. Williams's opinions regarding market definition should be excluded because he allegedly applies an "unreliable methodology" or even "no methodology at all." Mot. at 12-13. Meta is wrong—as discussed above, Dr. Williams defined the relevant antitrust market based on two well-accepted methodologies: the *Merger Guidelines* and *Brown Shoe*.

[27] Mot. at 12.

[28]

[29]

13

1  antitrust market are separate from the analytical issue of defining a relevant antitrust market.

2         With respect to the *Merger Guidelines* market definition methodology, Meta claims Dr.

3  Williams's SSNIP test is not actually such a test.  But again, Meta is wrong. As a threshold matter,

4  Meta's only comments regarding the *Merger Guidelines* market definition methodology concern the

5  "small but significant and non-transitory increase in price" ("SSNIP") test.[30]  Meta fails to address—

6  much less rebut—the fact that the *Merger Guidelines* also state:

7

8

9

10

11         As he discusses, Dr. Williams's findings

12

13

14         Furthermore, Meta's entire discussion of the SSNIP test is based on its mischaracterization of

15  Dr. Williams's SSNIP test as a "comparison of firms' profits."[33]

16

17

18

19

20

21

22

23         Meta then incorrectly claims that Dr. Williams's SSNIP test constitutes a "brand-new, made-

24

25  ─────────────────────

26  [30]    Mot. at 13-15.

27  [31]    ¶148, n.219, quoting the *Merger Guidelines*, Section 4.3.

27  [32]    ¶148, n.219.

28  [33]    Mot. at 14.

14

1  for-litigation alternative[].”[34] ███████████████████████████

2  ████████████████████████████████████████████  If Meta

3  can profitably impose a SSNIP as demonstrated by their overcharges above but-for prices, then a

4  hypothetical monopolist would find it profitable to undertake a SSNIP as well.  And this natural

5  experiment approach has been widely applied and accepted in antitrust litigation.  For example, in *In*

6  *re: Turkey Antitrust Litigation*, the court found that Dr. Williams demonstrated a relevant product

7  market based on evidence demonstrating that the alleged cartel could impose a SSNIP.[35]  As in the

8  present case, Dr. Williams's SSNIP test was based on estimated overcharges as a result of Defendants'

9  alleged anticompetitive conduct.   Similarly, Dr. Williams applied the same natural experiment

10 approach in his SSNIP test in *Behrend v. Comcast* and the court concluded that his market definition

11 was susceptible to proof at trial.[36]  Again, there, Dr. Williams opined that certain rate increases were

12 more than a SSNIP and that a hypothetical monopolist would profitably impose a SSNIP.  Thus, Dr.

13 Williams's SSNIP test follows the standard natural experiment approach in applying the SSNIP test.[37]

14                                          **CONCLUSION**

15        For the foregoing reasons, the Court should deny Meta's Motion.

16 Dated: January 29, 2025.

17

18

19

20

---

21 [34]    *Id*.

22 [35]    *In re: Turkey Antitrust Litigation*, No. 1:19-CV-08318, Order (N.D. Ill. Jan. 22, 2025) (ECF No. 1107), at 61 (Judge Sunil R. Harjani).

23 [36]    *Behrend v. Comcast*, No. 2:03-cv-06604, Order (E.D. Pa. Jan. 7, 2010) (ECF No. 430), at 15
24 and 29-30.  The court's decision was upheld by the U.S. Court of Appeals for the Third Circuit, No. 10-2865 (Aug. 23, 2011).

25 [37]    Meta's cites to *Sumotext* and *Kentucky Speedway* are inapt. Unlike *Sumotext*, Dr. Williams
26 did not "'compar[e], over time, prices of' the defendant's product to prices for three expert-selected
27 comparator products." He compared Meta's actual and but-for prices based on the well-accepted
   yardstick model. Unlike *Kentucky Speedway*, Dr. Williams's SSNIP test was not his "'own version
28 of the SSNIP test,' which 'was produced solely for th[e] litigation,'" but follows the standard natural
   experiment approach.

**BATHAEE DUNNE LLP**

By:  */s/ Yavar Bathaee*
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Priscilla Ghiță (*pro hac vice*)
pghita@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

Allison Watson (CA 328596)
awatson@bathaeedunne.com
3420 Bristol St, Ste 600
Costa Mesa, CA 92626-7133

*Interim Co-Lead Counsel for the Advertiser Class*

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

By:  */s/ Amanda F. Lawrence*
Amanda F. Lawrence (*pro hac vice*)
alawrence@scott-scott.com
Patrick J. McGahan (*pro hac vice*)
pmcgahan@scott-scott.com
Michael P. Srodoski (*pro hac vice*)
msrodoski@scott-scott.com
156 South Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537

Patrick J. Coughlin (CA 111070)
pcoughlin@scott-scott.com
Carmen A. Medici (CA 248417)
cmedici@scott-scott.com
Hal D. Cunningham (CA 243048)
hcunningham@scott-scott.com
Patrick J. Rodriguez (*pro hac vice*)
prodriguez@scott-scott.com
Daniel J. Brockwell (CA 335983)
dbrockwell@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565

**LEVIN SEDRAN & BERMAN LLP**

Keith J. Verrier (*pro hac vice*)
kverrier@lfsblaw.com
Austin B. Cohen (*pro hac vice*)
acohen@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3997
Tel.: (215) 592-1500

*Members of Executive Committee for the Advertiser Class*

**AHDOOT & WOLFSON, PC**

Tina Wolfson (CA 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (CA 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (CA 223242)
tmaya@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111

## FILER ATTESTATION

I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the other signatories have concurred in the filing of the document.


Dated: January 29, 2025                    By:    */s/Amanda F. Lawrence*
                                                  Amanda F. Lawrence


## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2025, I caused a true and correct copy of the foregoing document to be served by electronic mail on all counsel of record.


Dated: January 29, 2025                    By:    */s/Amanda F. Lawrence*
                                                  Amanda F. Lawrence