<u>**PUBLIC REDACTED VERSION**</u>

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP | ARI HOLTZBLATT (SBN 354631)<br>Ari.Holtzblatt@wilmerhale.com |
| SONAL N. MEHTA (SBN 222086)<br>Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000 | MOLLY M. JENNINGS (*pro hac vice*)<br>Molly.Jennings@wilmerhale.com<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000 |
| DAVID Z. GRINGER (*pro hac vice*)<br>David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br>Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br>Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br>Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | MICHAELA P. SEWALL (*pro hac vice*)<br>Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF MARKUS JAKOBSSON**<br><br>Hearing Date: To Be Determined<br>Time: To Be Determined<br>Judge: Hon. James Donato |

PUBLIC REDACTED VERSION

TABLE OF CONTENTS

I.  ARGUMENT ..................................................................................................................2

    A.  Advertisers Concede That Jakobsson Copied and Pasted Counsel's Argument..........................................................................................................2

    B.  Advertisers Concede That Jakobsson's Speculative Testimony On Corporate Intent Is Inadmissible and Unhelpful to the Jury ...................................4

    C.  Advertisers Concede That Jakobsson Will Offer Improper And Irrelevant Legal Conclusions..................................................................................................5

II. CONCLUSION...............................................................................................................7

<mark>

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Capacitors Antitrust Litig.*,
    2021 WL 5407452 (N.D. Cal. Nov. 18, 2021) ........................................................................... 6

*Collins v. United States*,
    2023 WL 8113259 (C.D. Cal. Nov. 22, 2023) ........................................................................... 3

*Daubert v. Merrell Dow Pharms.*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................................... 6

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mkt., LLC*,
    2023 WL 9659943 (C.D. Cal. July 26, 2023) ........................................................................... 6

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) .................................................................................................... 6

*Holley v. Gilead Scis. Inc.*,
    2023 WL 2440237 (N.D. Cal. Mar. 9, 2023) ............................................................................ 3

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
    2003 WL 27366315 (C.D. Cal. Mar. 10, 2003) ........................................................................ 4

*Koger v. Costco Wholesale Corp.*,
    2023 WL 8188842 (N.D. Cal. Nov. 27, 2023) .......................................................................... 6

*NetFuel, Inc. v. Cisco Sys., Inc.*,
    2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) .......................................................................... 3

*Numatics, Inc. v. Balluff, Inc.*,
    66 F. Supp. 3d 934 (E.D. Mich. 2014) ..................................................................................... 3

*Open Text S.A. v. Box, Inc.*,
    No. 13-cv-4910-JD, Dkt. 469 (N.D. Cal. Jan. 26, 2015) .......................................................... 4

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
    20 F.4th 466 (9th Cir. 2021) ..................................................................................................... 3

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ....................................................................... 4, 5

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
    655 F. Supp. 3d 1002 (S.D. Cal. 2023) ..................................................................................... 5

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) .................................................................................................... 6

**PUBLIC REDACTED VERSION**

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Civ. P. 26 ............................................................................................................1, 2, 3

Fed. R. Civ. P. 37 .......................................................................................................................2

Fed. R. Evid. 402 .......................................................................................................................6

Fed. R. Evid. 403 .......................................................................................................................6

Fed. R. Evid. 702 .......................................................................................................................2

**PUBLIC REDACTED VERSION**

Jakobsson's testimony that an app he never analyzed engaged in ▓▓▓▓ or ▓▓▓▓ could not possibly help the jury to decide the claims in this *antitrust* case. Jakobsson's testimony is unquestionably non-technical, legal opinion that is irrelevant to this case and should be excluded.

The testimony is concededly irrelevant—Advertisers never assert that the competitive effects of Meta's FBR App in any way turn on whether it employed ▓▓▓▓ or ▓▓▓▓ And while Advertisers contend that Jakobsson's testimony will help the jury ▓▓▓▓ ▓▓▓▓ Opp. 1, 4, it is plain from their opposition that this is pretense. After saying Jakobsson will not offer legal testimony, *id.* at 4, Advertisers repeatedly justify the "importance" of his testimony by invoking his opinions associating Meta with ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ and ▓▓▓▓ ▓▓▓▓ *id.* at 5-8.

Jakobsson's testimony is also unquestionably nontechnical. Start with the obvious: Jakobsson never personally reviewed the FBR App, its code, or the data it collected. Nowhere do Advertisers explain how Jakobsson could have employed his claimed technical expertise to arrive at his opinions about the FBR App, when he never analyzed it.

Instead, Advertisers argue that Jakobsson interprets and explains technical documents. *See* Opp. 6. To be sure, throughout his reports, Jakobsson purports to "explain" emails sent to and from Meta's CEO and other executives. *See, e.g.*, Ex. 1, Jakobsson Rep. ¶¶64-84, 118-126, 135-138; Ex. 2, Jakobsson Reb. ¶¶62-68, 75, 97-98, 101-105.[1] But his explanations are *neither* technical nor the result of any analysis or methodology—they are merely attorney argument repackaged as expert opinion. Advertisers seek to use Jakobsson as a human highlighter to improperly put an expert gloss on business documents. Advertisers concede, as they must, that Jakobsson offers opinions "near identical" to their counsel's interrogatory responses, Opp. 9, and they do not dispute that counsel drafted those responses prior to Jakobsson's involvement in the case, *see* Mot. 3. Their argument that Jakobsson's opinions are simply "in line with Advertisers' substantive positions" and comply with Rule 26, Opp. 4, 10, misses the point. Advertisers repeatedly say Jakobsson's

---

[1] Unless otherwise noted, emphasis is added and "Ex." citations reference exhibits 1-4 to the Gringer Decl. filed with Meta's *Daubert* motion, Dkt. 880.

raison d'être in this case is giving "technical" explanations, but his explanations cannot be technical expert opinions within the meaning of Rule 702 (or Rule 26) if they are obviously copied verbatim from counsel's prior work. Indeed, the opposition demonstrates exactly how Jakobsson will rehash record documents and testimony for the sole purpose of amplifying the arguments counsel will make. *See, e.g.*, Opp. 8 (Jakobsson " ▮▮▮▮ " what documents " ▮▮▮▮ "). Advertisers claim this is ▮▮▮ because Meta's witnesses include engineers while Advertisers have " ▮▮▮▮▮▮ " to " ▮▮▮▮▮▮▮▮▮▮▮▮▮ " of the FBR App. *Id.* 4, 9. But Jakobsson, who is interpreting the record second-hand, is not a "counterbalance" to fact witnesses, testifying to first-hand knowledge. Advertisers are of course free to cross-examine those witnesses. And they were free to have a technical expert (Jakobsson or someone else) actually conduct a technical analysis of the FBR App if they thought that analysis could somehow be relevant to their claims. What they are not free to do is practice ventriloquism to offer their own spin on what Meta, its executives, and its employees intended, believed, or understood via Jakobsson. *See* Mot. 7-8.

The Court should grant Meta's motion and exclude Jakobsson's opinions and testimony in full. At minimum, the Court should exclude any of Jakobsson's opinions commenting on the ▮▮▮▮ of Meta's conduct ▮▮▮▮▮▮▮▮▮▮ as improper legal conclusions.

I.   **ARGUMENT**

   **A.   Advertisers Concede That Jakobsson Copied and Pasted Counsel's Argument**

Advertisers concede that substantial portions of Jakobsson's expert report are "near identical," Opp. 9, to the lawyer-written contentions set forth in Advertiser's interrogatory responses. Their only meaningful rebuttal is that it is permissible for lawyers to "be involved in the preparation of an expert report," *id.* at 10. That excuse falls short of justifying Jakobsson's wholesale copying of counsel's arguments. *See* Mot. 3-6.[2]

---

[2] Advertisers also misleadingly claim that Meta takes contradictory positions in its Motion for Summary Judgment. *See* Opp. 9. Not so. Meta challenges the untimely disclosure of an entirely new trade secret theory, under Rule 37 (not Rule 702) as prohibited by this Court's Standing Order.

**PUBLIC REDACTED VERSION**

Unlike the attorney involvement in the cases Advertisers cite, Jakobsson's parroting of the lawyers' arguments stretches far beyond "editorial assistance," *NetFuel, Inc. v. Cisco Sys., Inc.*, 2020 WL 1274985, at *3 (N.D. Cal. Mar. 17, 2020) (cited at Opp. 10), or lawyer-drafted "background information" that is "qualified by statements such as 'I am informed that ….'" *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 477 (9th Cir. 2021) (cited at Opp. 10). Jakobsson's parroted opinions are not "qualified" and are not "background information"—in fact they concern the FBR App's method of collecting data, which according to Advertisers is "the very reason expert testimony is required." *Holley v. Gilead Scis. Inc.*, 2023 WL 2440237, at *3 (N.D. Cal. Mar. 9, 2023). Throughout Jakobsson's opening report, paragraphs purporting to provide *Jakobsson*'s technical opinion about the FBR App are actually identical (*e.g.*, Mot. 3-4) or, as Advertisers concede, "near identical" (Opp. 9; *see, e.g.*, Mot. 4-5) to counsel's interrogatory responses and briefs drafted before Jakobsson's involvement, evincing no "substantive assistance" from Jakobsson. *NetFuel*, 2020 WL 1274985, at *3; *see Collins v. United States*, 2023 WL 8113259, at *3 (C.D. Cal. Nov. 22, 2023) (Rule 26 does not allow for an attorney to "simply draft[] the report without prior substantive input from [an] expert"). Advertisers and Jakobsson say he wrote those paragraphs, and that they reflect his opinions, Opp. 10, but the "fairly minor" changes he made speak for themselves. *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 945 (E.D. Mich. 2014) (excluding report "ghost-written by [the attorneys]" that was "indistinguishable down to the punctuation"); *see also Holley*, 2023 WL 2440237, at *2 (excluding reports where "undeniable substantial similarities" between materials "prepared with assistance from [] counsel … demonstrate that counsel's participation so exceeded the bounds of legitimate 'assistance' as to negate the possibility that [the experts] actually prepared [their] own report"). Regardless of whether Jakobsson agrees with counsel's arguments or whether the report reflects his views, *see* Opp. 10, he is not providing his own technical opinion, reflecting his own independent assessment of the FBR App, but instead is regurgitating Advertisers' counsel's arguments with the imprimatur of a neutral expert.

Advertisers suggest that Jakobsson's parroting is limited to only a handful of paragraphs in his reports, Opp. 4, but Meta's motion merely provided a handful of examples. There are many

**PUBLIC REDACTED VERSION**

1  more. *E.g.*, *compare* Ex. 3, Interrog. 24 Resp. at 935, *with* Ex. 1, Jakobsson Rep. ¶¶105-106. For
2  example, Advertisers filed a discovery letter on May 31, 2023, that cites and describes a series of
3  nine documents. *See* Dkt. 735. Jakobsson cites the same documents in the same order for the same
4  points in his opening report. Ex. 1, Jakobsson Rep. ¶¶64-65, 68-71, 75, 77-85, 87. In any event,
5  the examples in Meta's motion illustrate that Jakobsson's core opinions about the FBR App's
6  "technical" methods are not expert opinions at all—they "simply vouch for [the lawyers'] version
7  of the facts." *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910-JD, Dkt. 469 at 1 (N.D. Cal. Jan. 26,
8  2015); *see* Mot. 3-6. Accordingly, Jakobsson's opening report, and the summaries of it in his
9  rebuttal, Ex. 2, Jakobsson Reb. ¶¶35-43, should be excluded.

10  **B.  Advertisers Concede That Jakobsson's Speculative Testimony On Corporate
11       Intent Is Inadmissible and Unhelpful to the Jury**

12  Advertisers also fail to meaningfully oppose Meta's argument that Jakobsson cannot offer
13  his impressions of why Meta developed the FBR App, what Meta's employees thought about the
14  FBR App, or how Meta intended to use the data collected. *See* Mot. 7-8; Ex. 1, Jakobsson Rep.
15  ¶¶31, 61-71, 76-77, 118, 125; Ex. 2, Jakobsson Reb. ¶¶44, 46, 49, 51, 54, 61-76, 87, 89-93, 97-99,
16  108, 110, 121-159. Their argument that Jakobsson will "[REDACTED]" of Meta
17  *employees*, and "[REDACTED]"
18  Opp. 7-8, concedes that Jakobsson impermissibly offers testimony on factual questions the jury
19  can evaluate based on the testimony of employees (including cross examination) and the
20  contemporaneous documents themselves. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
21  2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (courts routinely exclude testimony "about
22  why any person … took or did not take a particular action or made or did not make a particular
23  decision."). Likewise, Advertisers do not contest that Jakobsson cannot know about and is not
24  qualified to opine on Meta's corporate intent or its employees' states of mind with respect to the
25  FBR App and the data it collected. *See United States ex rel. Jordan v. Northrop Grumman Corp.*,
26  2003 WL 27366315, at *8 (C.D. Cal. Mar. 10, 2003) (excluding technical expert's opinion as to
27  defendant's mental state).
28

1  Instead, Advertisers contend that there is nothing wrong with Jakobsson undertaking a
2  "technical evaluation" of evidence. Opp. 10-11. But even their opposition makes clear that
3  Jakobsson's "technical evaluation" is nothing more than a thinly disguised attempt to apply the
4  veneer of expertise to non-technical facts, usurping the jury's role. Advertisers claim there is "not
5  a serious basis" to exclude paragraph 107 of his report, ignoring that it is copied verbatim from
6  Advertisers' interrogatory responses, *compare* Opp. 10, *with* Mot. at 5-6, and it rehashes a non-
7  technical employee evaluation to speculate about how Meta used and intended to use the data the
8  FBR App collected. *See* Ex. 1, Jakobsson Rep. ¶107; Mot. 8. "Such unhelpful restatements of the
9  facts as the expert sees them are inadmissible." *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp.
10  3d 1002, 1030 (S.D. Cal. 2023) (cleaned up) (excluding expert opinions as to "intent, motive, or
11  state of mind" and recitations of "long non-technical restatements of the facts"). Dressing up
12  documents like an employee evaluation as "technical" because they involve "an engineer," Opp.
13  10-11, does not change that Jakobsson is merely offering lay interpretations of evidence that the
14  jury can evaluate for itself. *Oracle*, 2018 WL 6511146, at *3.

15  The Court should exclude Jakobsson's opinions and testimony on intent, motive, and states
16  of mind reflected in paragraphs 31, 37, 107, 116-125, 130-131, and 135-138 of his opening report
17  and paragraphs 36-37, 44-46, 48-49, 51, 53-54, 61-77, 87, 89-93, 97-106, and 108-159 of his
18  rebuttal report.

**C.  Advertisers Concede That Jakobsson Will Offer Improper And Irrelevant Legal Conclusions**

21  Unable to plausibly argue that Jakobsson should be permitted to testify about the FBR
22  App's legality, Advertisers equivocate and claim Jakobsson's "■■■■■■■■■■
23  ■■■■■■■■■." Opp. 4. But this is no assurance when the rest of their brief asserts Jakobsson
24  "*will* testify [about] ■■■■■■■■■■■■■■," *id*. at 5, will "walk the jury and the
25  Court through … ■■■■■■■■■■■■■■■■■■■■■■," *id.* at 7,
26  "■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
27  ■■■■■■■■■■■■" *id.*, and "■■■■■■■■■■■■■■■■■■
28  ■■■■■■■■■■■■■■■■■■■" *id.* at 8. Advertisers cannot

**PUBLIC REDACTED VERSION**

1 characterize such testimony as the reflection of industry knowledge, *see* Opp. 11 (claiming
2 Jakobsson is "an undeniable cybercrime expert"), when his reports provide no support for his
3 conclusions other than say-so. Indeed, nowhere does Jakobsson set forth an industry definition or
4 standard for "███████," "███████," or "███████." *See Koger v. Costco*
5 *Wholesale Corp.*, 2023 WL 8188842, at *3-4 (N.D. Cal. Nov. 27, 2023) (Donato, J.) (excluding
6 expert's legal conclusion couched as an opinion on industry standards because expert's "references
7 to industry standards" were "not adequately supported"). And Jakobsson's supposed industry
8 definition of "███████" is plucked right out of the ███████ *See* Mot. 9; *Diamond Resorts*
9 *U.S. Collection Dev., LLC v. Pandora Mkt., LLC*, 2023 WL 9659943, at *17-18 (C.D. Cal. July
10 26, 2023) ("[T]he best way to determine whether opinion testimony … merely states legal
11 conclusions, is to determine whether the terms used by a witness have a separate, distinct and
12 specialized meaning in the law.").

13 Jakobsson's legal conclusions are not only inadmissible expert testimony, but also a
14 diversion that will derail the jury's resolution of the legal questions that *do* matter for Advertisers'
15 *antitrust* claims. *See In re Capacitors Antitrust Litig.*, 2021 WL 5407452, at *5 (N.D. Cal. Nov.
16 18, 2021) (Donato, J.) (excluding expert's legal conclusions under FRE 402 and 403); *Daubert v.*
17 *Merrell Dow Pharms.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (expert opinion must "speak[]
18 clearly and directly to an issue in dispute in the case"). Advertisers cannot sweep this problem
19 away by asserting that Jakobsson's legal conclusions are "undeniably fair." Opp. 11. Under their
20 own theory of exclusionary conduct, Advertisers must show that the FBR App had an
21 "'anticompetitive effect,'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (quoting
22 *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001)), but they fail to dispute that
23 the FBR App's competitive effects *do not* turn on whether it employed "███████" or otherwise
24 purported ███████. *See* Mot. 10-11; Opp. 9-10. Instead, as Dr. Tilman Klumpp has
25 explained, the alleged anticompetitive effect of the FBR App turns on his opinion that the data
26 obtained "was a trade secret." Reply in Supp. of Mot. to Exclude Klumpp at pp. 3-5 (filed
27 concurrently). That opinion is itself inadmissible legal analysis, but whatever its propriety, it does
28 not depend on proving "███████" or "███████" *Id.* So far from being "fair," Opp. 11, it is

**PUBLIC REDACTED VERSION**

undeniably *prejudicial* for Jakobsson to offer inflammatory and legally charged comparisons of Meta's conduct to that of ▮▮▮▮ and ▮▮▮▮ when that testimony is concededly irrelevant.

The Court should not permit Jakobsson to offer his inflammatory (and irrelevant) legal opinion that Meta has committed a ▮▮▮ by using the FBR for an act he repeatedly labels ▮▮▮ *See* Ex. 1, Jakobsson Rep. ¶¶27, 36-37; *see also id.* ¶¶27, 36-37, 112, 116, 132; Ex. 2, Jakobsson Reb. ¶¶29, 45-46, 48, 50, 52, 61, 91, 96, 109, 115, 149-152.

## II. CONCLUSION

The Court should exclude the testimony and opinions of Markus Jakobsson in full.

Dated: February 12, 2025						Respectfully submitted,

								By: */s/ Sonal N. Mehta*
								SONAL N. MEHTA

								*Attorney for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February, 2025, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

								By:	*/s/ Sonal N. Mehta*
									Sonal N. Mehta