**PUBLIC REDACTED VERSION**

WILMER CUTLER PICKERING HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
 David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
 Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
 Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (SBN 354631)
 Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
 Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
 Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF TILMAN KLUMPP**<br><br>Hearing Date: To Be Determined<br>Time: To Be Determined<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

I.   KLUMPP'S OPINIONS ARE SPECULATIVE, UNRELIABLE, AND INADMISSIBLE........................2

   A.   Klumpp Cannot Speculate About The FTC's Decisionmaking...............................2

   B.   Klumpp Cannot Opine That Meta Misappropriated Snap's Trade Secrets .............3

   C.   Klumpp's Opinion That Contract Counterparties Reduced Investment In Competing Products Is Legal Interpretation And Speculation, Not Economics.........................................................................................................................5

   D.   Klumpp's Opinions On The Supposed Effects Of Agreements He Never Reviewed Are Unreliable........................................................................................7

II.  KLUMPP ERRONEOUSLY CONFLATES MONOPOLY MAINTENANCE WITH ANTICOMPETITIVE EFFECT..................................................................................................10

III. CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Aluminum Warehousing Antitrust Litigation*,
 336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................................................5

*Bumpus v. Realogy Brokerage Grp. LLC*,
 2022 WL 867256 (N.D. Cal. Mar. 23, 2022) ..........................................................................5

*CZ Servs. v. Express Scripts Holding Co.*,
 2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ......................................................................5, 6

*Epic Games, Inc. v. Apple, Inc.*,
 67 F.4th 946 (9th Cir. 2023) ..................................................................................................10

*King Drug Co. of Florence v. Smithkline Beecham Corp.*,
 791 F.3d 388 (3d Cir. 2015) ....................................................................................................7

*Maldonado v. Apple*,
 2021 WL 1947512 (N.D. Cal. May 14, 2021) ........................................................................9

*Moement, Inc. v. Groomore, Inc.*,
 2024 WL 4830589 (C.D. Cal. Oct. 29, 2024) .........................................................................4

*Ollier v. Sweetwater Union High Sch. Dist.*,
 768 F.3d 843 (9th Cir. 2014) ..................................................................................................6

*Open Text S.A. v. Box, Inc.*,
 No. 13-cv-4910-JD, Dkt. 469 (N.D. Cal. Jan. 26, 2015) .........................................................4

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .....................................................................1, 6

*SEC v. Ripple Labs, Inc.*,
 2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023) ..........................................................................7

*State of New York v. Deutsche Telekom AG*,
 419 F. Supp. 3d 783 (S.D.N.Y. 2019) .....................................................................................3

*United States v. Tamman*,
 782 F.3d 543 (9th Cir. 2015) ...................................................................................................5

*Williamson Oil Co. v. Philip Morris USA*,
 346 F.3d 1287 (11th Cir. 2003) .............................................................................................10

*Zavislak v. Netflix, Inc.*,
 2024 WL 2884649 (N.D. Cal. June 7, 2024) ......................................................................7, 9

**PUBLIC REDACTED VERSION**

1   Tilman Klumpp's so-called "root liability" testimony is little more than speculation and impermissible legal analysis that applies the wrong legal standard. Advertisers repeatedly invoke Klumpp's status as an economist, as if that cures his baseless pronouncements because they are cloaked in "███████████████" Opp. 7. But Klumpp's opinions are, at best, legal conclusions, and at worst, guesswork. Either way, they are not economic opinions grounded in an established methodology or in the application of reliable principles and methods to the factual record. Klumpp's opinions should be excluded in full.

Advertisers try to resuscitate Klumpp's work by imagining a series of opinions Klumpp never offered and abandoning those he did. Take their assertion that "Klumpp does not opine on ███████████████████████████████████████████████████████" Opp. 13. Klumpp's actual opinion is that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 3, Klumpp Rep. ¶182.[1] That is (to state the obvious) an opinion on both a ███████ ████ and its "███████████████████████████" Opp. 13. Advertisers then claim that Meta's argument that Klumpp impermissibly offered a legal opinion that certain data "█ ███████" Ex. 3, Klumpp Rep. ¶59, is somehow just "a red herring," Opp. 6. Except that two pages later Advertisers admit that Klumpp's "conclusion" is again that Meta misappropriated "███████" Opp. 8. Advertisers' defense of Klumpp's foray into contract law is similarly deficient; no expert, much less an economist, can "opine on the meaning of a contract or the rights of a party to a contract." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *6 (N.D. Cal. Oct. 27, 2011). Yet, that is what Klumpp attempts to do. At least, when he read the contracts at all.

The remainder of Advertisers' brief is puzzling or irrelevant. Advertisers ascribe dispositive weight to a deposition excerpt that says, as Meta's motion stated, that Klumpp believes maintaining a monopoly is itself an anticompetitive effect. Opp. 15. That is wrong as a matter of

---

[1] Unless otherwise noted, "Ex." citations reference exhibits to the Gringer Reply Decl. submitted herewith, emphasis is added, and objections are omitted for deposition citations.

1  law and economics—proof of an anticompetitive effect requires evidence of actual harm to
2  consumers. Mot. 10. Klumpp's belief that maintaining a monopoly is also an "▬▬▬▬▬"
3  Opp. 15, is the same legal error said differently. Opinions premised on the wrong legal standard
4  are irrelevant and inadmissible because they provide no assistance to the factfinder. Mot. 10-11.

5        Finally, Advertisers give a lengthy defense of Klumpp's reliance on Dr. Michael
6  Williams's opinions and Klumpp's decision to presume that Advertisers "will prove their claims
7  at trial." Opp. 4. Advertisers cite several pages of Meta's motion to suggest these are in dispute,
8  Opp. 4-5 & nn.8-9, but nothing in the referenced pages discusses either topic. To be sure,
9  Williams's opinions are themselves unreliable and Advertisers will *not* be able to prove their case
10 at any trial. But Klumpp's opinions should be excluded because they are themselves junk
11 science—whatever his assumptions, the guesswork and legal analysis he submits are inadmissible.

12 **I.    KLUMPP'S OPINIONS ARE SPECULATIVE, UNRELIABLE, AND INADMISSIBLE**

13       Advertisers are flat wrong that Meta "substantially concedes that Dr. Klumpp's opinions
14 and report are relevant and based on the evidence," such that they are admissible "barring a fatal
15 flaw in his methodology." Opp. 4. Klumpp's opinions turn on speculation not evidence, he
16 employs no economic methodology at all, and he cannot offer legal opinions whatever their basis.
17 All his opinions are therefore inadmissible.

18     **A.    Klumpp Cannot Speculate About The FTC's Decisionmaking**

19       Advertisers do not contest that an "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
20 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" would be inadmissible speculation, Opp. 13, or that
21 the FTC could not have ordered divestiture unilaterally, Mot. 4. That requires excluding Klumpp's
22 opinions about what the FTC would have done if Meta had made different representations to the
23 agency about its "Facebook Feature Framework" ("F3"). Mot. 2-3.

24       Advertisers claim Klumpp never offered such an opinion and attempt to stitch together a
25 different one from snippets of sentences and Klumpp's recitation of documents. Opp. 13. But the
26 only portion of Klumpp's report that addresses the effect of the alleged misrepresentations to the
27 FTC is paragraphs 182 and 183. There, Klumpp opined that ▬▬▬▬▬▬▬▬▬▬▬▬
28 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

1  ███████████████████████████████████████████████████████
2  ███████████████████████████████████████████████████████
3  ████████ and ██████████████████████████████████████████
4  ███████████████████████████████████████████████████████
5  ███████████████████████████████████████████████████████
6  ███████ Ex. 3, Klumpp Rep. ¶¶182-183. Klumpp's rebuttal report simply restates the same. *E.g.*,
7  Ex. 5, Klumpp Rebuttal ¶315 ███████████████████████████
8  ███████████████████████████████████████████████████████
9  ██████████████████████████████████████████████.

      Klumpp's opinion, in his own words, is that the FTC would have made different decisions and pursued particular remedies if it had known different facts. Advertisers effectively concede that Klumpp *cannot* offer that opinion because he has no knowledge of the FTC's decisionmaking process. *Compare* Mot. 3-4 (describing lack of knowledge), *with* Opp. 13-14 (silence on the same); *see also, e.g.*, Ex. 4, Klumpp Tr. 197:12-15 ("Q. Have you read any documents that say that the FTC did not take certain actions as a result of the supposed misrepresentation that Facebook made? A. I don't recall seeing documents that indicate *that*."). His opinions about the FTC's potential responses must therefore be excluded as "mere speculation regarding the agency's future behavior." *State of New York v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 791 (S.D.N.Y. 2019).

      Advertisers are similarly mistaken that the duration of the FTC's ongoing lawsuit against Meta "corroborates Dr. Klumpp's reliability." Opp. 14. The opposition reaches that conclusion only by substituting lawyers' speculation for Klumpp's, with plaintiffs' counsel opining that if Meta had made different statements to the FTC, "████████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id.* But *no one* involved in this case, economist or lawyer, can say what the FTC would have done on a different record. Klumpp's opinion presumes he can, further supporting exclusion.

    **B.**    **Klumpp Cannot Opine That Meta Misappropriated Snap's Trade Secrets**

      Klumpp's opinion that Meta misappropriated trade secrets when collecting data about Snap

**PUBLIC REDACTED VERSION**

through the Facebook Research App ("FBR App") is baseless and improper, relying on inadmissible legal opinions rather than economic or technical analysis. None of Advertisers' makeweight responses can remedy those defects.

Advertisers first insist that Klumpp's trade secrets misappropriation opinion merely "observe[s] undisputed facts." Opp. 6. If that is what Klumpp is doing (and it's not, Mot. 4-6), regurgitating record evidence and then presenting it as an expert opinion is improper. *Open Text S.A. v. Box, Inc.*, No. 13-cv-4910-JD, Dkt. 469 at 1 (N.D. Cal. Jan. 26, 2015) ("Expert witnesses cannot simply vouch for one side's version of the facts"). If Advertisers wish to present the evidence identified in their opposition, they can do so through fact witnesses. Expert testimony is not a vehicle for reading in documents or depositions.

Advertisers then claim that Klumpp's discussion of "trade secrets" is all just a "red herring" and concerns only a "label." Opp. 6. Advertisers miss the point. Only *because* Klumpp "labels" the information at issue a trade secret does he believe the conduct was anticompetitive. As he opined, "it's my economic opinion that *Facebook violated the intellectual property of Snapchat and that's what makes it anticompetitive*." Ex. 4, Klumpp Tr. 94:16-95:22. In other words, if the data at issue were not a trade secret, the conduct would not have been anticompetitive under Klumpp's own theory. The "trade secret" label is thus key to Klumpp's opinion, not a red herring. That also dispatches with Advertisers' assertion that Klumpp having reached a legal conclusion "do[es] not matter" because there is evidence Snap's information was secret, Opp. 7—Klumpp's opinion (above) turns on the existence of legally protectable intellectual property, not just secrecy.

Advertisers' last resort is Klumpp's recitation of the phrase "████████ ████████" every time he drew a legal conclusion about trade secrets. Opp. 7; *see also, e.g.*, Ex. 3, Klumpp Rep. ¶58. But that mantra does not transform Klumpp's legal opinion into an economic one. "Because determining if something is a trade secret is a legal conclusion, district courts in this Circuit have held that an expert 'may not testify that certain technology constitutes a trade secret.'" *Moement, Inc. v. Groomore, Inc.*, 2024 WL 4830589, at *3 (C.D. Cal. Oct. 29, 2024). Klumpp cannot circumvent that prohibition by simply referencing an "████████████████" while nevertheless opining that conduct "████████████████" a legal definition. Ex. 3, Klumpp

Rep. ¶58; *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) (relevant question whether testimony "amount[s] to a legal conclusion"). When an expert opines on an ultimate legal question, whether the particular legal definition being applied contains "economic concepts" (Opp. 7) is simply beside the point. *Tamman*, 782 F.3d at 552. And in all events, Klumpp conceded that he did *not* use economic analysis in determining that the information was a trade secret. Mot. 4-6; *see also, e.g.*, Ex. 4, Klumpp Tr. 129:19-130:9 (agreeing that he "didn't offer an economic analysis in determining whether or not the information at issue was generally known").

*In re Aluminum Warehousing Antitrust Litigation*, 336 F.R.D. 5 (S.D.N.Y. 2020), cannot save Klumpp. Opp. 7. There, the expert opined that (1) "only a fact-intensive examination of individual issues" would permit the expert to ascertain who the proposed class members were, and (2) that "conflicts exist[ed]" between the economic interests of the proposed class representatives and those of proposed class members. *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. at 26. The court held that the expert's "use of the terms 'individualized inquiry' and 'conflicts' in his report [did] not transform his empirical and economic analysis" into "legal conclusions," because the expert did not "conclusorily declare" that any legal test had or had not been met. *Id.* at 32. Here, Klumpp *did* conclusorily declare that that the information Meta allegedly obtained from Snapchat "[REDACTED]" and "[REDACTED]" Ex. 3, Klumpp Rep. ¶¶58-59, and he did *not* provide accompanying "empirical and economic analysis." So Meta does not "attack … the application of the methodology to the data," Opp. 8 (quoting *Bumpus v. Realogy Brokerage Grp. LLC*, 2022 WL 867256, at *3 (N.D. Cal. Mar. 23, 2022)), but rather seeks to exclude an opinion that "necessarily implicate[s] a legal conclusion" without any application of economic methodology to data, *CZ Servs, Inc. v. Express Scripts Holding Co.*, 2020 WL 4518978, at *4 (N.D. Cal. Aug. 5, 2020).

**C.    Klumpp's Opinion That Contract Counterparties Reduced Investment In Competing Products Is Legal Interpretation And Speculation, Not Economics**

Klumpp's interpretation of Meta's API agreements has nothing to do with economics. Advertisers state that to analyze the anticompetitive effect of the API Agreements, Klumpp "must be permitted to review the contracts and draw *some* conclusions about the rights and obligations

1  those contracts impose on the parties." Opp. 12 (emphasis in original). But drawing "some
2  conclusions" about the agreements is not the reason Klumpp's opinion is inadmissible; the defects
3  stem from the *particular* opinion he chose to draw, which turns on his interpretation of various
4  terms within the agreements that have nothing to do with his economic expertise. Consider
5  Klumpp's assertion that "████████████████████████████████████████████████
6  ████████████████████████████████████████" thereby maintaining Meta's
7  alleged social advertising monopoly. Ex. 3, Klumpp Rep. ¶167. Determining the breadth of the
8  definition of "████████████" necessarily requires contractual interpretation. Klumpp's
9  assessment that these agreements ████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ██████" *id.* ¶153, represents an improper assessment of "the rights of a party to a contract," *see*
12 *PixArt*, 2011 WL 5417090, at *6; *CZ Servs.*, 2020 WL 4518978, at *4 ("[T]estimony about
13 contract compliance would necessarily implicate a legal conclusion."). Indeed, even Advertisers'
14 restatement of Klumpp's opinion—"████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████████████
17 ██████"—facially requires legal analysis and assessment of a party's rights. Opp. 11.
18       Klumpp's claim that the ████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████ also depends on technical and legal questions regarding the data being used and the
21 parties' contractual rights and duties concerning the data at issue. This too is not an economic
22 question, and Advertisers do not contend otherwise. As such, Klumpp lacks the expertise to answer
23 it and can only offer his "personal opinions and speculation." *Ollier v. Sweetwater Union High*
24 *Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (affirming exclusion).
25       Beyond these legal opinions, Klumpp can only speculate about ████████████████
26 ████████████████████████████████████████████████. Neither Klumpp nor Advertisers
27 cite to a single document or line of testimony from these counterparties. Instead, Advertisers
28 bizarrely include a passing reference to "decades of federal jurisprudence" "analyzing the interplay

**PUBLIC REDACTED VERSION**

1  between litigation risk and competition risk in the pharmaceutical pay-for-delay settlement
2  context." Opp. 12, n.25 (citing *King Drug Co. of Florence v. Smithkline Beecham Corp.*, 791 F.3d
3  388, 404 (3d Cir. 2015)). But this case has nothing to do with that industry or the litigation risks it
4  involves, and the cited decisions do not concern the admissibility of expert testimony.

5  Finally, Advertisers claim that preventing experts from offering improper legal opinions
6  "effectively immunize[s] all agreements from economic scrutiny in Sherman Act litigation." Opp.
7  12. Not so. Economists can opine on the economic ramifications of agreements, assess potential
8  impacts of agreements on price, determine what the but-for world would be, etc. What economists
9  cannot do is opine on the *legal* obligations of the parties to those agreements or opine on the
10 meaning of certain terms.

11 Unsurprisingly, none of the cases cited by Advertisers involves an economist's
12 interpretation of a party's rights and obligations under particular contract terms, as Klumpp does.
13 Advertisers cite *Zavislak v. Netflix, Inc.*, 2024 WL 2884649, at *16 (N.D. Cal. June 7, 2024), for
14 the proposition that experts may "refer to the law in expressing an opinion without that reference
15 rendering the testimony inadmissible." Opp. 12, n.24. But *Zavislak* involved ERISA obligations,
16 which the Ninth Circuit has recognized as one of the "rare, highly complex, and technical matters"
17 where an industry expert may provide "some testimony seemingly at variance with [the] general
18 rule" against expert legal testimony. 2024 WL 2884649, at *16 n.6. Regardless, the expert there
19 opined only that conduct "was consistent with the standard of care in the industry and that Netflix
20 did meet the prevailing industry standards." *Id.* at *16. That kind of testimony about industry
21 standards is typical expert fare, and nothing like Klumpp's opinions as an economist on the rights
22 and obligations under particular contracts. Plaintiffs are also not helped by *SEC v. Ripple Labs,*
23 *Inc.*, 2023 WL 5670711, at *22 (S.D.N.Y. Mar. 6, 2023). That expert's opinion was "limited to
24 describing the commercial purposes of those contracts" and the expert did "not offer any analysis
25 of contract law or interpret a disputed contract provision." *Id*. Klumpp does the opposite.

26     **D.**    **Klumpp's Opinions On The Supposed Effects Of Agreements He Never**
27             **Reviewed Are Unreliable**

28 Klumpp's two remaining opinions address the purported effects of contracts he admittedly

**PUBLIC REDACTED VERSION**

1  did not review, rendering his opinions irrelevant and unreliable. Advertisers' claim that Klumpp's
2  failure to assess the terms of such agreements is immaterial again ignores his actual opinions.

3  *First*, Advertisers have no answer to Klumpp's failure to review competitors' terms before
4  opining on the relative favorability of Meta's terms to those of competitors under the Network
5  Bidding Agreement ("NBA"). Advertisers assert that Klumpp, based on his supposedly "thorough
6  analysis" of Meta's and Google's advertising offerings and the advertising market, concluded that
7  Meta "               " to extract favorable terms in the NBA. Opp. 8.
8  That did not happen. But regardless, Advertisers do not confront the central failing in Klumpp's
9  opinion—that whether Meta received "favorable terms" requires a relative assessment to the terms
10 that other competitors negotiated with Google. Klumpp did not do that analysis. *See* Ex. 4, Klumpp
11 Tr. 230:18-23. Nor could he, because Advertisers never sought through discovery any such
12 contracts from Google or from Meta's competitors. Whatever analyses he did do cannot overcome
13 that fundamental gap in his approach. Confusingly, Advertisers attempt to blame Meta, asserting
14 that "Meta cannot point to any record evidence to suggest
15 " Opp. 9. That has the burden here exactly backwards. Advertisers, not Meta, must
16 demonstrate the reliability of Klumpp's analysis, and only reviewing other contracts to see whether
17 the terms Meta received were more favorable than competitors' terms can establish reliability.
18 Without doing so, there is no baseline for comparing favorability. It is not Meta's responsibility to
19 identify evidence contradicting analysis that was inadmissible in the first place.

20  *Second*, Advertisers claim that Klumpp need not review the alleged agreement between
21 Netflix and Meta to analyze its anticompetitive effects because Klumpp may assume Advertisers
22 "would prove the existence of            at trial." Opp. 10. This ignores the issue
23 requiring exclusion, as neither Advertisers nor Klumpp have ever identified the terms of *any*
24 agreement—hypothetical and unwritten or otherwise. The entirety of Klumpp's description of the
25 hypothetical contract in his report is one sentence long:
26
27                                       Ex. 3, Klumpp Rep. ¶125. Because Klumpp does
28 not provide any detail or description of the terms of the alleged contract, his analysis of its

anticompetitive effects is necessarily hypothetical even assuming the agreement's existence—he cannot, for example, examine how the terms would affect advertisers or Netflix's spending. Indeed, Klumpp conceded that he did not even have a "basis to believe that [Meta's budget cut] was not a rational decision" that it made unilaterally. Ex. 4, Klumpp Tr. at 288:21-289:11. And the only authority Advertisers cite to excuse Klumpp's failure to analyze actual terms (*Zavislak*) is not an antitrust case and has nothing to say about expert analysis of the anticompetitive effects of agreements.[2]

Advertisers are also incorrect that Meta's position "would effectively immunize unwritten agreements from Sherman Act treble damages actions." Opp. 10. The situation warranting exclusion in this case is far narrower—a hypothetical contract, imagined by Advertisers, where Advertisers excuse their own expert's failure to provide any explanation of the hypothetical contract's terms or any explanation of how those terms could affect competition because the imagined agreement is unwritten. Although Advertisers assert that Klumpp "*did* review [] evidence relating to the agreement," Opp. 10 n.19, at most, the evidence cited relates only to the possible existence of a contract. Opp. 9 (citing Klumpp Rep. ¶¶103-125). Even if that evidence supported a conclusion that a contract existed (and it does not), it is still irrelevant to any anticompetitive effect because it says nothing about the supposed contract's terms.

Advertisers then claim that *Maldonado v. Apple* does not support Meta's motion, Opp. 10 n.19, but that too is wrong. *Maldonado* held that expert testimony should be excluded when "[t]he flaw in [the expert]'s opinion is precisely that the underlying material was *not* communicated to him and he did *not* review it." 2021 WL 1947512, at *20 (N.D. Cal. May 14, 2021). That is the situation here. The fact that Klumpp reviewed irrelevant information that purportedly supports the existence of *some* agreement does not remedy his failure to review the terms of the supposed agreement itself before opining on those terms' effect.

---

[2] Contrary to Advertisers' claim, *see* Opp. 10 n.20, Meta has never argued that Klumpp did not consider whether Meta's budget cuts to Facebook Watch had economically rational reasons. Meta stated that Advertisers should not be permitted to introduce opinions that a "hypothetical agreement … allowed Meta to maintain its purported monopoly" precisely because Klumpp "conceded that there were economically rational reasons for Meta reducing its 'premium video streaming' budget in the absence of an agreement." Mot. 8-9.

**PUBLIC REDACTED VERSION**

## II. KLUMPP ERRONEOUSLY CONFLATES MONOPOLY MAINTENANCE WITH ANTICOMPETITIVE EFFECT

Klumpp asserts that his opinions concern how Meta was able to maintain a monopoly in "Social Advertising," and that maintenance alone constitutes an anticompetitive effect. Mot. 10-11. But as Advertisers concede, Opp. 14-15, proof of an anticompetitive effect requires more: actual detriment to competition, "'such as reduced output, increased prices, or decreased quality in the relevant market.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983-84 (9th Cir. 2023). And contrary to Advertisers' claim of "cherry-picked excerpts," Opp. 15, Klumpp repeatedly testified that he was not opining about any effects that could be anticompetitive as a matter of law:

> Q. No, no, I'm not asking you terms. I'm just trying to exhaust—make sure for the rest of the day I have an understanding of what you're saying is the anticompetitive effect. And what I hear you to be saying is the anticompetitive effect is that Facebook—the challenged—tell me if I'm wrong, but what you're saying is the challenged conduct allowed Facebook to maintain a monopoly in social advertising and that was the anticompetitive effect.
>
> A. That is a fair overall characterization of what my opinions are.
>
> Q. ***And there's not a different anticompetitive effect***, not looking for different words, but there's not a different anticompetitive effect from the challenged conduct that you're saying occurred in social advertisement.
>
> A. No, I would—I would characterize my opinions as overall supporting a finding of monopoly maintenance.

Ex. 4, Klumpp Tr. 45:4-21. Far from "gross[ly] mischaracteriz[ing]" Klumpp's testimony, Opp. 14, Meta directly quotes his clarification of it. Advertisers cannot rewrite Klumpp's opinions or his admissions to avoid the straightforward consequence of them: that his application of the wrong legal standard renders Klumpp's opinions both wrong and useless to the jury. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (affirming exclusion of plaintiff's expert opinion as irrelevant where expert failed to offer testimony as to the proper legal standards).

## III. CONCLUSION

The Court should exclude Klumpp's testimony in full.

**PUBLIC REDACTED VERSION**

Dated: February 12, 2025

Respectfully submitted,

By: */s/ Sonal N. Mehta*
SONAL N. MEHTA

*Attorney for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February, 2025, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:  */s/ Sonal N. Mehta*
Sonal N. Mehta