WILMER CUTLER PICKERING
HALE AND DORR LLP

SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
  Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
  Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
  Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

ARI HOLTZBLATT (SBN 222086)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
  Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSE TO ADVERTISER PLAINTIFFS' MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**<br><br>Judge: Hon. James Donato |

1  Pursuant to Civil Local Rule 79-5(f)(3), Defendant Meta Platforms, Inc. hereby responds
2  to Advertiser Plaintiffs' motion to consider whether portions of their opposition to the omnibus
3  sealing motion for summary judgment and merits *Daubert*-related briefing in the Advertiser case
4  should remain under seal. Meta respectfully requests that the Court allow narrow redactions to
5  Advertisers' opposition covering two categories of information: (1) confidential, competitively
6  sensitive details about a commercial contract for which Meta has obligations to its counterparty
7  not to disclose the terms of that agreement; and (2) descriptions of proprietary technologies and
8  methods for conducting market research.

9  This information was already the subject of both Meta and non-party sealing requests
10  submitted in the omnibus motion. *See* Dkt. 909. But Advertisers' opposition restated or quoted this
11  information directly, necessitating a duplicative round of sealing briefing. Meta thus restates the
12  basis for these sealing requests here, which are again supported by a declaration from Meta's
13  Director of Finance Amrish Acharya, who has personal knowledge of Meta's confidentiality
14  practices and maintains that, to the best of his knowledge, all material for which Meta requests
15  sealing is maintained by the company as highly confidential and has never been publicly disclosed.

16  In accordance with this Court's consistent practice, Meta's sealing requests both here and
17  in the omnibus motion covering *Daubert* motions should be evaluated under the "good cause"
18  standard applicable to non-dispositive motions, while requests related to the parties' summary
19  judgment briefing should be evaluated under the "compelling reasons" standard. *See* Dkt. 909 at
20  2 (collecting authority); J. Donato Standing Order for Civil Cases ¶ 26(b); *Ochoa v. McDonald's*
21  *Corp.*, 2015 WL 3545921, at *1 (N.D. Cal. Jun. 5, 2015) (Donato, J.). But if the Court chooses to
22  apply the latter test across the board, each of Meta's requests meets the "compelling reasons"
23  standard.

24  *First*, Meta seeks to redact one quotation of a term from a contract with non-party Apple.
25  *See* Acharya Decl. row 1. The contract restricts Meta's ability to divulge its terms. Meta has
26  accordingly provided notice to Apple pursuant to Paragraph 29 of this Court's Standing Order so
27  that Apple may respond as to its own interests in confidentiality—as Apple did with respect to the
28  omnibus motion. *See* Dkt. 909-6. Advertisers took no position on Apple's request to seal the same

1  information in the omnibus motion, opposing only Meta's overlapping request. *See* Dkt. 909-93
2  at 12 (sixth row). Their opposition fails to explain these directly conflicting positions.
3        In addition, the information should be sealed because its disclosure risks harming Meta's
4  competitive standing. *See* Dkt. 344 at 3 (sealing contractual language in the operative complaint
5  in this case because its disclosure "would potentially harm Meta's competitive standing"); *see also*
6  Dkt. 909 at 3 (collecting authority). Advertisers claim that the terms of Meta's commercial
7  agreement with Apple is "stale" and that "Meta does not specifically explain" its "current vitality."
8  Dkt. 910-3 at 2. They are wrong on both counts. The business risk from disclosure remains
9  because, as Mr. Acharya explains, disclosure will harm not only Meta's relationship with Apple,
10 but also its position with other counterparties by giving a competitor or potential business partner
11 of Meta unfair leverage in future negotiations . *See* Acharya Decl. row 1; *see also Mission Wellness*
12 *Pharmacy LLC v. Caremark LLC*, 641 F. Supp. 3d 673, 680 (D. Ariz. 2022) (rejecting objection
13 to sealing request based on information's age where older information could allow competitors to
14 "project" future behavior); *United States v. Chen*, 2022 WL 2789557, at *2 (N.D. Cal. July 14,
15 2022) (similar).
16       *Second*, Meta seeks to redact descriptions of its proprietary technologies and methods for
17 conducting market research, and proprietary research into novel potential methodologies for doing
18 so. *See* Acharya Decl. rows 2-4. This information is non-public, treated as strictly confidential
19 within Meta, and reflects significant investment by Meta—the value of which would be diminished
20 were this material publicly disclosed. Courts routinely seal similar information for precisely these
21 reasons. *See* Dkt. 909 at 4 (collecting authority).
22       Advertisers' objections to these sealing requests are meritless. They first claim that the
23 information has no current competitive sensitivity because the specific market research program
24 to which it relates has been discontinued. *See* Dkt. 910-3 at 4-5. That is of no moment. Disclosure
25 "would benefit [Meta's] competitors … by allowing them to obtain an advantage in developing or
26 refining their" own, similar technologies and freeride on Meta's investments in researching these
27 proprietary methods. *Chen*, 2022 WL 2789557, at *2. That is true regardless of the technology's
28 current status.

1    Advertisers also object to sealing this information because it supposedly "establishes
2  important information about a material issue in the case." Dkt. 910-3 at 5. It does not. The technical
3  methods through which the Facebook Research App (which Advertisers refer to as "IAAP")
4  collected data—and Advertisers' repeated insistence that it constituted a "serious computer
5  crime"—have nothing to do with the merits of their antitrust claims, which turn on the competitive
6  effects of Meta's alleged use of this data, not its collection. The public's interest in accessing
7  information unrelated to the merits of Advertisers' antitrust claims is "minimal" because the
8  information "will not further the public's understanding of the reasoning" of the Court's resolution
9  of this case. *In re iPhone Application Litig.*, 2013 WL 12335013, at *2 (N.D. Cal. Nov. 25, 2013);
10 *see Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (information not
11 relied on by court "is irrelevant to the public's understanding of the judicial proceedings"). Meta
12 respectfully submits that this principle applies to the limited technical information Meta requests
13 to seal here and in the omnibus motion.[1]

14   Importantly, Meta is not and has not requested to seal Advertisers' contentions about the
15 supposed "competitive importance" of this technology. *See, e.g.*, Dkt. 910-3 at 4. Nor is it
16 requesting to seal Advertisers' baseless and fabricated conjecture that senior Meta executives
17 purportedly recommended that the company engage in criminal conduct. *See id.*

18   Meta is also not requesting to seal—either in this motion or in the omnibus motion—any
19 public information, contrary to Advertisers' claim in their opposition. *See* Dkt. 910-3 at 3. For
20 example, Advertisers cite public reporting on various Meta services, *see* Dkt. 911, rows 1-2, 16,
21 32, 153, to support the proposition that Meta's confidential internal strategic discussions related to
22 those services are "demonstrably public." But these public sources say nothing about the
23 information Meta seeks to maintain under seal, namely, Meta's internal assessments of the
24 financial strength of its services and the public perception of those services. They also claim that
25 a Wikipedia article about a cryptography concept publicly reveals Meta's propriety sources and

---

[1] The same is true for Meta's request to seal Advertisers' passing reference to Meta's non-public pricing information in the summary judgment briefing. This information has no relationship whatsoever to Advertisers' or their putative expert Williams's contention that they suffered an antitrust injury—which is based entirely on Meta's profits, not its prices. *See* Dkt. 903-1 at 3.

1  methods for conducting market research. *See* Dkt. 911, rows 38, 191. Again, this public source
2  says nothing about the technical methods by which Meta effectuated its market research. Finally,
3  in support of their claim that the confidential inner workings of Meta's proprietary ad auction are
4  supposedly public, Advertisers cite four non-Meta sources with speculative or inaccurate
5  information and one Meta source unrelated to what Meta sought to seal, *see, e.g.*, Dkt. 911, rows
6  92, 93, 94-96, 98-99. Such thin public commentary cannot bring proprietary information into the
7  public domain, and nothing Advertisers cite establishes otherwise. *See, e.g.*, *Apple Inc. v. Psystar*
8  *Corp.*, 2012 WL 10852, at *2 (N.D. Cal. Jan. 3, 2012) (cited at Dkt. 910-3 at 3) (concerning
9  components of Apple OS X that had been "reverse engineer[ed]," which Meta's ad auction has
10 not).

## CONCLUSION

For the foregoing reasons, the Court should grant Meta's sealing requests as detailed in the declaration of Amrish Acharya submitted herewith and in the attached proposed order.

Dated: March 25, 2025                    Respectfully submitted,

                                         By: */s/ Paul Vanderslice*

                                         WILMER CUTLER PICKERING HALE
                                         AND DORR LLP
                                         *Attorney for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of March 2025, I electronically transmitted the foregoing and the public redacted versions of the attachments hereto to the Clerk's Office using the CM/ECF System and caused the sealed attachments to be transmitted to counsel of record by email. I further certify that, consistent with paragraph 29 of this Court's Standing Order for Civil Cases, Meta has provided notice to the contractual counterparty whose confidentiality interest in certain of the information discussed above is implicated by this filing.

By: */s/ Paul Vanderslice*
Paul Vanderslice