**PUBLIC REDACTED VERSION**

| | |
|---|---|
| WILMER CUTLER PICKERING HALE AND DORR LLP | ARI HOLTZBLATT (SBN 354631)<br> Ari.Holtzblatt@wilmerhale.com |
| SONAL N. MEHTA (SBN 222086)<br> Sonal.Mehta@wilmerhale.com<br>2600 El Camino Real, Suite 400<br>Palo Alto, California 94306<br>Telephone: (650) 858-6000 | MOLLY M. JENNINGS (*pro hac vice*)<br> Molly.Jennings@wilmerhale.com<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>Telephone: (202) 663-6000 |
| DAVID Z. GRINGER (*pro hac vice*)<br> David.Gringer@wilmerhale.com<br>ROSS E. FIRSENBAUM (*pro hac vice*)<br> Ross.Firsenbaum@wilmerhale.com<br>RYAN CHABOT (*pro hac vice*)<br> Ryan.Chabot@wilmerhale.com<br>PAUL VANDERSLICE (*pro hac vice*)<br> Paul.Vanderslice@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800 | MICHAELA P. SEWALL (*pro hac vice*)<br> Michaela.Sewall@wilmerhale.com<br>60 State Street<br>Boston, Massachusetts 02109<br>Telephone: (617) 526-6000 |

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF NICHOLAS ECONOMIDES**<br><br>Hearing Date: July 24, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

I.     The Court Already Excluded Economides's Injury Opinion, And His Damages Opinion Suffers The Same Flaws .......................................................................................3

II.    Economides's Competitive Effects Opinion Is Not Reliable ...............................................5

III.   Economides's Recitations of Record Evidence Should Be Excluded ................................8

CONCLUSION ...............................................................................................................................9

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ..................................................................................................6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................................................................................................................4

*Craftsmen Limousine Inc., v. Ford Motor Co.*,
2005 WL 3263288 (W.D. Mo. Dec. 1, 2005) ...........................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..................................................................................................................1

*Mueller v. Puritan's Pride*,
2021 WL 5494254 (N.D. Cal. Nov. 23, 2021) ..........................................................................4

*Siqueiros v. Gen. Motors LLC*,
2022 WL 74182 (N.D. Cal. Jan. 7, 2022).................................................................................8

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
709 F. Supp. 2d 821 (C.D. Cal. 2010) ......................................................................................8

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
949 F.3d 825 (3d Cir. 2020)......................................................................................................8

*United States v. Fuentes-Cariaga*,
209 F.3d 1140 (9th Cir. 2000) ..................................................................................................8

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ...........................................................................8

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702 ........................................................................................................................1, 8

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 24, 2025 at 10:00 a.m., Defendant Meta Platforms, Inc. will move to exclude the opinions of Dr. Nicholas Economides.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Meta requests that the Court exclude the Expert Report and the Expert Rebuttal Report of Dr. Nicholas Economides and any opinions or testimony drawn therefrom.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Court already excluded Dr. Nicholas Economides's "sweeping extrapolation" that Facebook users suffered an antitrust injury because Meta failed to pay them $5 every month. Dkt. 905 at 12. As the Court held, "Economides's opinions cannot be the basis for finding antitrust injury in this case" because "'there is simply too great an analytical gap between' the facts on which Dr. Economides relies and" his opinion that Meta would pay hundreds of millions of people for using Facebook. *Id.* 7, 13. The injury opinion Economides offers at this stage of the litigation is identical to the one the Court excluded; the report Economides submitted in support of class certification expressly incorporated the testimony he proposes giving at trial and reached the same result. Ex. 1, Economides Abridged CC Rep. ¶¶3, 84 n.147. So for the same reasons, the Court should again exclude Economides's speculation that Meta would be the first ever ad-supported platform to pay all of its users for accessing its service. If anything, the "analytical gap between" Economides's theory of injury and the relevant facts has *grown* since the Court's last decision, given that the individual plaintiffs now litigating this case on their own testified that they would not accept payment for their data.[1]

The Court should then exclude Economides's damages opinion, which depends on his injury theory and suffers the same defects. And because plaintiffs have withdrawn Economides's testimony on market definition and market power, Dkt. 859 at 2, application of the Court's prior order leaves only Economides's competitive effects opinion. That too should be excluded.

---

[1] Unless otherwise noted, "Ex." citations reference exhibits to the Gringer Declaration filed herewith, emphasis is added, and objections are omitted for deposition citations.

**PUBLIC REDACTED VERSION**

1  Economides says that Meta monopolized "personal social networking services" through an alleged
2  campaign of misrepresentations that brought users to Facebook at the expense of other platforms.
3  But Economides offers no evidence of that supposed deception's effects on user behavior and
4  concedes Meta's early success over competitors like Myspace was "on its own merits," Ex. 2,
5  Economides 3/24 Tr. 240:3-15. As with Economides's injury and damages opinions, there is
6  accordingly too great an analytical gap between Economides's speculation about harm to
7  competition and the record—as even the plaintiffs testified, Economides's theory of how people
8  choose to spend their time online bears no connection to reality.

9        Finally, throughout his opinions, Economides has professed he will recite facts into the
10  record as a mouthpiece for counsel. That is not expert testimony at all and warrants exclusion even
11  independent of the above (dispositive) defects.

## BACKGROUND

13        Nicholas Economides is not an expert on the social apps he purports to analyze or the
14  competition between them. He testified, "I use Facebook, but I don't recall all the different features
15  it has." Ex. 3, Economides 9/23 Tr. 199:2-5. He "do[es] not use TikTok" and does not know
16  whether it shares features with Facebook, *id.* 200:2-7, but guessed that its "main function is to
17  broadcast these short-form videos. It's not to get comments among a group of people about what
18  the value of these videos are." Ex. 2, Economides 3/24 Tr. 47:6-48:2. On YouTube, he speculated
19  that "practically nobody leaves comments," *id.* 47:6-48:2, which would come as a surprise to fans
20  of K-Pop artists like BTS (which has one video with over 15 million comments, and over half a
21  dozen more with millions of comments each) or the thousands of people who commented on March
22  Madness highlights last month. And, in what would mystify any iPhone user, he testified users
23  cannot "easily and effectively" contact friends with iMessage. *Id.* 39:12-24.

24        Economides nevertheless opined that Meta acquired and maintained a monopoly in a
25  "personal social networking" (PSNS) market due to allegedly deceptive statements and omissions.
26  But he did not analyze the effect any individual statement had on competition. He instead just
27  asserted that but for each of these statements and omissions, Meta would have faced increased
28  competition. *See* Ex. 2, Economides 3/24 Tr. 183:19-184:23. And rather than compete on content

**PUBLIC REDACTED VERSION**

1  and features—as Meta did when faced with real competition from TikTok and others—he claimed
2  that Facebook would have transformed its business model in a never-before-seen way and *paid*
3  each of its ▓▓▓▓▓▓▓ $5 per month. Ex. 4, Economides Merits Rep. ("Rep.") ¶292.
4  Economides does not arrive at this "▓▓▓▓▓▓" by looking to firms that plaintiffs allege
5  compete with Facebook, or to platforms that (like Facebook) attract users with engaging content
6  or connect people. *Id.*, ¶¶86, 99. Instead, Economides relies on market research programs that have
7  paid their participants for the installation and maintenance of tracking apps on their devices. *Id.*,
8  ¶105. Economides has consistently maintained these opinions, including his assertion that Meta
9  would compete only through payments in his but-for world, across all six of the reports he has
10 submitted in this litigation.

11      Economides previously opined on market definition and market power. Because plaintiffs
12 also offered a second expert on those subjects, Joseph Farrell, the Court ordered plaintiffs to choose
13 who they would rely on at trial. Dkt. 853 at 1 ("[P]laintiffs may present one expert economist to
14 opine on market definition and market power."). Plaintiffs decided to withdraw Economides's
15 testimony on market definition and market power in favor of Farrell's opinions. Dkt. 859 at 2.

16                                  **ARGUMENT**

17  **I.   THE COURT ALREADY EXCLUDED ECONOMIDES'S INJURY OPINION, AND HIS DAMAGES
18       OPINION SUFFERS THE SAME FLAWS**

19      Still citing no historical precedent and ignoring the overwhelming evidence to the contrary,
20 Economides continues to opine that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓" Ex. 4, Rep. §V.D. Economides's injury opinion is identical to the
23 one the Court already excluded at class certification—as explained, Economides expressly
24 incorporated the testimony he seeks to offer at trial into the report proffered at certification. Ex. 1,
25 Economides Abridged CC Rep. ¶¶3, 84 n.147. The Court's holding that paying all users "is a
26 conclusion of fiat rather than evidence," that plaintiffs have failed to show how Economides's
27 "conclusions about antitrust injury are anything more than a fanciful application of economic
28 theory untethered to real-world evidence about the alleged PSNS market," and that "Economides

1  cannot provide admissible opinions on antitrust injury" therefore remains as true today as it did
2  when the Court last considered Economides's testimony. Dkt. 905 at 8, 13, 15.

3        Because nothing has filled the "analytical gap between the facts on which Dr. Economides
4  relies and his theory," Dkt. 905 at 7, the Court should grant Meta's motion as to Economides's
5  merits opinion. Indeed, the individual plaintiffs now litigating this case have testified that
6  Economides's injury opinions are wrong, only increasing the disconnect between the evidence that
7  would be presented at trial and Economides's speculation. Rachel Banks Kupcho, for example,
8  was asked,
9  Ex. 5, Kupcho Tr. 78:8-12. Her response: *Id.* Sarah Grabert said
10 Ex. 7, Grabert Tr. (Vol. 2)
11 322:24-323:7 ("
12 
13 ."). Maximilian Klein
14 Ex. 8, Klein Tr. 289:20-290:24. Economides already had no basis to assert that Meta
15 would respond to competition through compensation, and proposing to present that opinion at trial
16 alongside plaintiffs who rejected it confirms his work does "not rest on a sufficient factual
17 foundation." Dkt. 905 at 4. This Court confronted a similar situation in *Mueller v. Puritan's Pride*,
18 2021 WL 5494254 (N.D. Cal. Nov. 23, 2021). There, as here, an expert's testimony was
19 contradicted by "plaintiffs' deposition testimony." *Id.*, at *7. There, as here, such contradictions
20 rendered the expert's opinion "a poor fit with the case" and justified exclusion. *Id.*

21       Economides's damages opinions should be excluded for the same reasons. Because
22 Economides has no basis for concluding that Meta would pay all Facebook users, he necessarily
23 has no basis (let alone reason) to opine on the amount those users would be paid. *See Comcast*
24 *Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (damages restricted to those "resulting from the
25 particular antitrust injury on which petitioners' liability in this action is premised").

26       Regardless, the purported "yardstick" study Economides uses to calculate damages relies
27 on the same incomparable market research programs as his fatally flawed injury opinion. Instead
28 of looking for similar businesses, Economides assumed the desired conclusion and asked his staff

**PUBLIC REDACTED VERSION**

1   to "look around for *payment for data*." Ex. 3, Economides 9/23 Tr. 166:17-22. This approach was
2   concededly designed to find yardsticks with totally different business models from Facebook: A
3   principal criterion was identifying firms with "." Ex. 4,
4   Rep. ¶300. Economides's yardsticks are
5   . *See, e.g.*, Ex. 9, KLEIN-META_AMAZON_0007540. The information they
6   collect is also much broader than the information Meta can collect on or off its apps. *See, e.g.*, Ex.
7   2, Economides 3/24 Tr. 275:7-15 ("
8   Facebook doesn't collect everything on your screen,
9   right, you know that? A. Yes."). And although Economides could not adjust to correct for such
10  fundamental differences, he does not even try. Instead, he assumes that the value these different
11  programs place on different data from different users would translate directly to Meta's conduct
12  in the but-for world. These are the same flaws that led this Court to reject market research programs
13  as a basis for Economides's injury opinion, Dkt. 905 at 10, and the comparisons are no more
14  reliable in the context of damages.

15  **II.    ECONOMIDES'S COMPETITIVE EFFECTS OPINION IS NOT RELIABLE**

16          Economides opines that Meta's "campaign" of supposedly deceptive statements and
17  omissions harmed competition, but never analyzes the effect of the actual statements or omissions.
18  He instead asserts without support or analysis that this series of alleged misrepresentations
19  "automatically" meant that companies like Google+ were no longer "a big competitor." Ex. 2,
20  Economides 3/24 Tr. 250:4-25. Every single allegedly deceptive statement or omission has the
21  "same effect" on competition, *id.* 183:19-184:21, regardless of when it was made, where it was
22  made, who made it, the topic it addressed, or its specificity. That includes, for example, a statement
23  in a 2007 New York Times interview that was corrected within hours of the article publishing; a
24  "" that "
25  ;" and the statement that "
26  ." Ex. 4, Rep., App'x C at
27  3, 5, 9. Economides offers no methodology—other than summaries of documents speaking
28  generally about "privacy" issues, *id.*, Rep. ¶¶184-199—that explains how these statements could

have possibly excluded competition, let alone be cognizable under the governing precedent, *see Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) (describing six-part text, including that statements must be "clearly false," "clearly material," "clearly likely to induce reasonable reliance," and "not readily susceptible to neutralization or offset by rivals").

Even Economides himself wouldn't stand by these opinions. When asked to explain the role of deception in the failure of competitors, he conceded that "Facebook beat Myspace on its own merits" and other market participants were not "going to be successful even … without the misrepresentations," Ex. 2, Economides 3/24 Tr. 229:22-231:21; 240:3-10. Indeed, the only time Economides even *identifies* any deceptive conduct is in an appendix drafted wholesale by plaintiffs' counsel. *Id*. 180:10-14. As with his opinions on injury, the "how or why" of Economides's theory of competitive effects is nowhere to be found. Dkt. 905 at 10.

Economides's scholarship also demonstrates the unreliability of this analysis. He has acknowledged that "[b]ecause inequality is natural in the market structure of network industries, there should be no presumption that anti-competitive actions are responsible for the creation of market share inequality or very high profitability of a top firm." Ex. 10, Economides, *Antitrust Issues in Network Industries* 15 (2009). Economides now betrays his prior work: He presumes that alleged misrepresentations—that he did not evaluate—necessarily caused users to join Facebook to the exclusion of its competitors, yet he offers no supporting evidence.

Plaintiffs' own testimony confirms that Economides's opinions are unsupported. Plaintiffs testified that representations about privacy did not affect which online platforms they used, the exact opposite of how Economides's theory of competitive harm requires Facebook users to behave. Grabert said ████████████████████████████████████████████████████████████████████████████████" Ex. 6, Grabert Tr. (Vol. 1) 204:14-205:13. ████████████████████████████████████████ *Id.* 208:14-20, 210:16-211:7. Klein frequently ████████████████████████ Ex. 8, Klein Tr. 60:25-61:4; *see also*, *e.g.*, *id.* 201:1-14 (███

**PUBLIC REDACTED VERSION**

1 ██████ ), 210:2-211:17 (██████ ). ██
2 ██ Kupcho. Ex. 5, Kupcho Tr. 37:2-16. Privacy, moreover, ██████
3 ██████. *Id.* 93:21-
4 24 (██████
5 ██████ ); *id.* 155:6-21 (██████
6 ██████ ). Such testimony contradicts Economides's opinion that competitors suffered
7 because users were deceived into joining or remaining on Facebook through representations about
8 privacy. *See, e.g.*, Ex. 4, Rep. ¶¶192-194, 200, 209.
9     Plaintiffs' testimony about the specific misrepresentations at issue further undermines
10 Economides's opinion, once more proving the lack of fit between his speculation and the record.
11 Contrary to Economides's claim of equal (and significant) effects, Klein said ██████
12 ██████
13 ██████
14 ██████
15 ██████ Ex. 8, Klein Tr. 277:6-13, 280:3-281:1,
16 283:6-12. Grabert testified similarly: "██████
17 ██████
18 ██████
19 ██████." Ex. 6, Grabert
20 Tr. (Vol. 1) 108:6-17. Each of the named plaintiffs further agreed ██████
21 ██████
22 ██████ with Meta's purported
23 competitors. Ex. 11, Consumer's Suppl. Resps. to Interrogs. 15 and 16 (Feb. 15, 2023) at 6; Ex. 8,
24 Klein Tr. 282:12-283:23. As with plaintiffs' testimony about privacy practices, Economides's
25 failure to account for evidence that the alleged misrepresentations were unknown or ignored
26 renders his opinion too divorced from the record to be reliable.
27     The failure to consider the effect of the conduct alleged to be anticompetitive—and the
28 complete disregard for the plaintiffs' testimony that this conduct *did not* affect competition—

**PUBLIC REDACTED VERSION**

means that Economides "simply cannot make a reliable analysis as to market impact." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 834 (C.D. Cal. 2010). *TYR Sport*, for example, excluded an opinion on the effect of false statements when the expert did not "consider[] any data on the pricing, sales volume, or market share" of more than a subset of competitors. *Id.* Economides does even less. He "never analyzes" the conduct identified by counsel "to determine if [it was] anticompetitive" and offers opinions "based only on his speculation that the [challenged conduct was] 'anticompetitive.'" *Craftsmen Limousine Inc., v. Ford Motor Co.*, 2005 WL 3263288, at *7 (W.D. Mo. Dec. 1, 2005) (excluding opinion). Without such evidence, the alleged conduct and harm "meet only by assumption." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020) (testimony inadmissible where the expert "presented no quantifiable data to explain or clarify his assumptions" and "no data supporting the application"). Economides's blanket assumption of competitive harm from the alleged misrepresentations accounts for no alternative factors, ignores his own concessions and scholarship, and disregards the plaintiffs' testimony. It should be excluded.

### III. ECONOMIDES'S RECITATIONS OF RECORD EVIDENCE SHOULD BE EXCLUDED

Finally, an expert may not merely "restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022); *see also United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 (9th Cir. 2000) ("Where an expert offers general testimony about an issue within the ken of the jury's knowledge, it is not an abuse of discretion to exclude such testimony under Rule 702."). That is all Economides does in significant portions of his reports. *See* Ex. 4, Rep. ¶¶135, 166, 168-170, 176-177, 187, 200-209, 212-224, 227-246, 254-256, 270, 272, 277-290, 307-327; Ex. 12, Rebuttal Rep. ¶¶14, 33, 38, 47, 50, 53-54, 58, 167, 248-249, 285-287, 292-294, 309-310, 333. That is what he plans to do at trial. On these topics, "[REDACTED]." Ex. 2, Economides 3/24 Tr. 170:20-171:8. Such testimony is "little more than a mouthpiece for presenting the argument of counsel based on uncomplicated evidence already in the case." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov.

6, 2017).

## CONCLUSION

For these reasons, the Court should exclude the "Expert Report of Dr. Nicholas Economides" in its entirety, the "Expert Rebuttal Report of Dr. Nicholas Economides" in its entirety, and any opinions or testimony drawn therefrom.

Dated: April 28, 2025

Respectfully submitted,

By: */s/ Sonal N. Mehta*
Sonal N. Mehta

WILMER CUTLER PICKERING HALE
AND DORR LLP

*Attorney for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2025, I electronically transmitted the public redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and caused the version of the foregoing document filed under seal to be transmitted to counsel of record by email.

By:   */s/ Sonal N. Mehta*
SONAL N. MEHTA