**PUBLIC REDACTED VERSION**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
ROSS E. FIRSENBAUM (*pro hac vice*)
  Ross.Firsenbaum@wilmerhale.com
RYAN CHABOT (*pro hac vice*)
  Ryan.Chabot@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
  Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800


*Attorneys for Defendant Meta Platforms, Inc.*

ARI HOLTZBLATT (SBN 354631)
  Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAELA P. SEWALL (*pro hac vice*)
  Michaela.Sewall@wilmerhale.com
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC., a Delaware Corporation,<br><br>                    Defendant. | Case No. 3:20-cv-08570-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF SARAH LAMDAN**<br><br>Hearing Date: July 24, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

**PUBLIC REDACTED VERSION**

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................3

ARGUMENT ...............................................................................................................................4

I.      LAMDAN'S OPINIONS REFLECT NO EXPERT ANALYSIS OR RELIABLE
        METHODOLOGY THAT WILL AID THE JURY CONCERNING ANY ISSUES RELEVANT
        TO THE CASE ...............................................................................................................4

        A.      Lamdan's Summaries Of Documents And Deposition Testimony Are
                Improper ........................................................................................................4

        B.      Lamdan's Opinions About Meta's Knowledge And Intent Are Improper ............7

II.     LAMDAN'S OPINIONS ARE IRRELEVANT AND SHOULD BE EXCLUDED ................9

III.    LAMDAN IS NOT QUALIFIED TO OFFER OPINIONS ON ECONOMIC THEORIES AND
        THEIR APPLICATION TO THIS CASE ......................................................................10

CONCLUSION...........................................................................................................................11

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
   2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) .........................................................................10

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102
   (9th Cir. 2021)........................................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...........................................................................................1, 2, 9

*DZ Rsrv. v. Meta Platforms, Inc.*,
   2022 WL 912890 (N.D. Cal. Mar. 29, 2022)..........................................................................4

*Edwards Lifescis. Corp. v. Meril Life Scis. Pvt. Ltd.*,
   2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ...........................................................................5

*Miranda v. U.S. Sec. Assocs., Inc.*,
   2019 WL 2929966 (N.D. Cal. July 8, 2019)...........................................................................7

*Opperman v. Kong Techs., Inc.*,
   2017 WL 3149295 (N.D. Cal. July 25, 2017).......................................................................10

*Oracle Am., Inc. v. Hewlett Packard Enter., Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ........................................................................8

*Siqueiros v. Gen. Motors LLC*,
   2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ...............................................................................5

*United States v. Pac. Gas & Electric Co.*,
   2016 WL 1640462 (N.D. Cal. April 26, 2016)........................................................................7

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ......................................................................5, 6

**STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 702(a)............................................................................................................1, 2, 5

**PUBLIC REDACTED VERSION**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 24, 2025 at 10:00 a.m., Defendant Meta Platforms, Inc. will move to exclude the opinions of Sarah Lamdan.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993), Meta respectfully requests that the Court exclude the Expert Merits Report of Sarah Lamdan ("Lamdan Rep.") and the Expert Merits Rebuttal Report of Sarah Lamdan ("Lamdan Rebuttal"), and any testimony drawn from these reports.

**MEMORANDUM OF POINTS AND AUTHORITIES**

As explained in Meta's concurrently filed Motion for Summary Judgment, the Court need not take up this motion if it again excludes the antitrust injury opinions of Dr. Nicholas Economides and finds summary judgment appropriate on that (or another) basis.

**INTRODUCTION**

Sarah Lamdan seeks to opine about what Meta "knew," "understood," or intended based on a cherry-picked set of internal Meta documents and things Lamdan thinks she read or heard about in the news. Far from expert testimony, Lamdan engages in speculation and uninformed assertions of "fact" that are inappropriate in federal court. Her reports contain no reliable methodology that would aid the jury in determining any of the relevant questions at issue in this case, including whether any of Meta's purportedly misleading statements or omissions supposedly related to privacy or data were in fact "clearly false" and if so, whether they impacted user behavior or competition—which Lamdan herself conceded. Ex. 1, Lamdan Merits Tr. 108:7-22 ("Q. You didn't personally assess the truth or falsity of any statement Facebook made, correct? … A. Yeah, I don't know how I could have without access to … forensic data material."); *id.* 78:9-79:1 ("[P]eople … don't return to using Facebook because they're so thrilled by these public statements. They return to using Facebook because they feel they have no other choice."). For these reasons, the Court has already required plaintiffs to proffer her testimony for its consideration. Dkt. 907. Regardless of whether the Court grants that proffer—and it should not, Dkt. 822—Lamdan's

**PUBLIC REDACTED VERSION**

testimony should be excluded under Rule 702.[1]

*First*, the only methodology Lamdan used to derive her opinions is reading and summarizing documents other people wrote. She then inappropriately interprets those documents to draw purported "conclusions" about ███████████████████████████ ██████████████ Lamdan conducted no survey, no poll, no experiment, and no independent analysis of any kind to support these opinions. No particular expertise is needed to review and summarize documents as Lamdan did; any lawyer or advocate could have presented the same narrative gloss on cherry-picked documents as Lamdan. Allowing Lamdan to present these opinions with the imprimatur of her supposed "expert status" risks confusing the jury and prejudicing Meta.

*Second*, even if Lamdan's opinions were rooted in a reliable methodology, they fail to "speak[] clearly and directly to an issue in dispute in the case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). Lamdan's reports opine on topics only tangentially related to the case, like ███████████████████████ but that are irrelevant to any actual *issues* in the case, including Meta's specific purported misrepresentations or omissions about its privacy policies and practices or whether any of those purported misrepresentations or omissions had any impact on user behavior that affected competition between online platforms.

*Third*, Section IV.E of the Lamdan Report and Section IV of the Lamdan Rebuttal proffer expert opinions about ████████████████. But Lamdan admits that she has no expertise in sociology or economics. Ex. 1, Lamdan Merits Tr. 79:15-18; Ex. 2, Lamdan CC Tr. 106:13-107:5, 236:20-21. Lamdan also cannot rebut Professor Carlton's opinions concerning market definition or monopoly power, Ex. 3, Lamdan Rebuttal ¶¶3, 6, because she is not qualified to discuss these economic concepts, Ex. 1, Lamdan Merits Tr. 231:13-232:4 ("I feel like discussing competition kind of gets into the world that I'm not … that's not my area of expertise."); *id.* 141:24-142:11 ("I'm not one of the economists and I'm not dealing with, you know, the issues of monopolization, … that's not something I'm going to be opining on.").

---

[1] Unless otherwise noted, 'Ex.' citations reference exhibits to the Gringer Declaration filed herewith, emphasis is added, and objections are omitted for deposition citations.

PUBLIC REDACTED VERSION

## BACKGROUND

Plaintiffs retained Lamdan to "█████████████████████████████ ████████████████████████████████████████████████████████████████ ████████" Ex. 4, Lamdan Rep. ¶7. But Lamdan did nothing to measure user perceptions and communicated with no Facebook users in forming her opinions. *See* Ex. 1, Lamdan Merits Tr. 266:20-267:2 ("I didn't, like, conduct interviews or do any kind of—any exploration of that…."); Ex. 2, Lamdan CC Tr. 67:11-16 (Lamdan did not "perform any assessment of how much consumers care about privacy on Facebook compared to how much they care about other aspects of using Facebook"). Lamdan provides a number of opinions based on her own personal review of "███████████████████," Ex. 4, Lamdan Rep. ¶9, including—supposedly—all 540,285 documents that Meta produced that hit on the term "privacy," Ex. 2, Lamdan CC Tr. 45:1-12.

Lamdan never researched Facebook before her involvement in this case. Ex. 2, Lamdan CC Tr. 95:16-21. Because reviewing all of Facebook's privacy policies would have taken "a lot of time," Lamdan only reviewed "a few" for her reports. Ex. 1, Lamdan Merits Tr. 26:11-23. Lamdan also is not familiar with the privacy tools that Meta makes available to Facebook users. *Id.* 28:2-4 (admitting that Lamdan has not used Facebook's "privacy checkup tool"); Ex. 2, Lamdan CC Tr. 156:13-158:10 (admitting that she knows nothing about Facebook's "Access Your Information tool," "Privacy Shortcuts tool," or "Download Your Data tool").

Lamdan ███████████████████████████████████████████████, Ex. 1, Lamdan Merits Tr. 162:16-163:2, and despite opining in her report that Meta "███████████ ████████████████████" *see, e.g.*, Ex. 4, Lamdan Rep. ¶92, Lamdan ultimately admitted ████████████████████████████████████████████████████████████████ ██████. Ex. 1, Lamdan Merits Tr. 175:18-176:6. She also could not offer any substantive testimony about how Meta collected user data or how Facebook's cookies or ad-targeting work. *Id.* 40:24-42:1 (████████████████████████████████████████████████ ████████); 130:9-16 ████████████████████████████████████████████ ████████); *id.* 169:13-170:2 (████████████████████████████████████████ ████████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

1    ██████████ ).

2    After plaintiffs told the Court that they would offer Lamdan as an expert on "data cartels

3    and privacy," the Court observed that it is unclear "how consumer expectations about data privacy

4    relate to the acquisition of the monopoly power," or what such testimony "ha[s] to do with Section

5    2 of the Sherman Act." Hr'g Tr. 8:10-11, 9:3-9 (Apr. 18, 2024). The Court then ordered plaintiffs

6    to explain the relevance of Lamdan's testimony by proffer. Dkt. 789 at 1. In evaluating that proffer,

7    the Court raised additional concerns. For example, plaintiffs said Lamdan would "talk[] about the

8    fact that consumers care about privacy." Hr'g Tr. 20:25-21:1 (Nov. 14, 2024). The Court explained

9    that "[y]ou are going to have a bunch of consumers in the jury box. They understand that. That's

10    not expert testimony." *Id.* 21:2-4. When plaintiffs sought to defend Lamdan's testimony as

11    concerning competition, the Court stated "[t]hat's for your economist to say. That's not for a

12    privacy expert to say. Anyone who is talking about competition needs to be an economist." *Id.*

13    21:25-22:2. Ultimately, the Court could not "understand why [plaintiffs] need an expert for" those

14    subjects on which Lamdan would be qualified to testify, and ordered the lodging of her report for

15    the Court's review. *Id.* 22:8-9, 24:13-15. Plaintiffs' proffer remains pending.

16    **ARGUMENT**

17    I.    **LAMDAN'S OPINIONS REFLECT NO EXPERT ANALYSIS OR RELIABLE METHODOLOGY THAT WILL AID THE JURY CONCERNING ANY ISSUES RELEVANT TO THE CASE**

18    A.    **Lamdan's Summaries Of Documents And Deposition Testimony Are Improper**

19

20    Large swaths of Lamdan's reports are inaccurate and imprecise summaries of cherry-

21    picked documents and deposition testimony from the record. Lamdan applies no expertise or

22    expert methodology to her review of the evidence, as Lamdan herself recognized when she agreed

23    in her class certification deposition that "anyone reviewing" an internal Meta document discussing

24    privacy issues "could read … and identify what the document says." Ex. 2, Lamdan CC Tr. 172:20-

25    173:1.

26    Courts—including this Court—regularly exclude experts like Lamdan whose opinions do

27    "not offer any specialized or scientific expertise, or anything beyond the typical knowledge and

28    experience of a jury." *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar.

29, 2022) (Donato, J.). An expert may not simply "restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueriros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022). Juries can ably read and interpret the English language, so an expert must do more than "simply summarize[] evidence already in the record and assert[]" a conclusion. *Edwards Lifescis. Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022). Otherwise, the expert acts as "little more than a mouthpiece for presenting the argument of counsel based on uncomplicated evidence already in the case." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 n.3 (N.D. Cal. Nov. 6, 2017).

Much of Lamdan's reports merely summarizes the evidence in this case, offering "conclusions" about the evidence to provide the jury with plaintiffs' counsel's version of reality. For example, Lamdan offers the opinion that ███████████████████████████████ ███████████████████████████████████████████ Ex. 4, Lamdan Rep. §IV.D.2 (header), but every source she cites for this opinion is an internal Meta document or deposition testimony of Meta witnesses, *see id.* ¶¶135-49. There is no independent analysis of these documents or testimony and no application of any expertise to form any opinion about them. In fact, most of the documents Lamdan cites in her reports are not technical or specialized, and certainly do not address technical issues about which Lamdan has any expertise. *See, e.g.*, *id.* ¶95 (██████████████); Ex. 2, Lamdan CC Tr. 241:3-4 ("Q. You don't know what an API is, right? A. Yeah, I don't know what an API is."). The documents include ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ *See, e.g.*, Ex. 1, Lamdan Merits Tr. 92:6-93:1 (confirming that she did not perform any "independent analysis" and noting that she "took the Facebook employee's written … words at face value"). But this exercise of reading and weighing documents is squarely within the jury's purview. *See* Fed. R. Evid. 702(a).

The danger of permitting Lamdan to use her selective review of the record is apparent throughout her reports. Lamdan misunderstands (at best) or willfully misconstrues (at worst) the plain language of several documents. For example, she cites an ██████████████████████

**PUBLIC REDACTED VERSION**

1 ██████████████████████████████████████████████████████████████

2 Ex. 4, Lamdan Rep. ¶80 n.131. Setting aside that plaintiffs' case focuses on Facebook, not

3 WhatsApp, and that WhatsApp is not even in plaintiffs' purported market, Lamdan misattributes

4 the quotation to █████████████████████████████████████████

5 ██████████████ *Id*. ¶80. On the basis of the supposed quote ████████ she ███████

6 ███████████████████████ *Id.* The problem is that the quotation actually came from

7 someone else, and Lamdan admitted in deposition that ██████████████████████████

8 ██████████████████████ Ex. 1, Lamdan Merits Tr. 95:2-96:10, 97:20-98:5. Incredibly,

9 when Lamdan was confronted with the plain language of the email, she █████████████

10 ████████████████ *Id*. 96:11-19 ███████████████████████

11 ██████████████████████████████ Lamdan's reliance on this

12 document—and others like it—while failing to get even the most basic facts right, or do any

13 independent analysis to support her serious accusation that "████████████████████

14 █████████" Ex. 4, Lamdan Rep. ¶80, risks prejudicing Meta and confusing the jury.

15 As another example, Lamdan says an internal Meta presentation shows ███████████

16 █████████████████████████ Ex. 4, Lamdan Rep. ¶¶31-32. Based on █████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████ *Id*. ¶28. Setting aside whether her opinion is fair given that the

19 document ████████████████████████████ Lamdan misrepresents the document by

20 including an incomplete screenshot in her report. *See* Ex. 1, Lamdan Merits Tr. 285:24-286:9 ("█

21 ████████████████████████████████████████████████████████████

22 █████████████████") The screenshot she includes omits ██████████████████

23 ██████████████████████ *Id*. 286:17-287:3. That directly contradicts Lamdan's

24 conclusion. And in any event, this document contains no specialized or technical information that

25 the jury needs help in understanding. Allowing Lamdan to put an expert imprimatur on her own

26 (incorrect) personal understanding of the document risks both confusion and prejudice. *Waymo*,

27 2017 WL 5148390 at *5 (excluding expert opinion where the expert's "only contribution would

28 be to pile on a misleading facade of expertise" to the evidence already in the record). All told,

**PUBLIC REDACTED VERSION**

1  dozens upon dozens of paragraphs of Lamdan's report quote only Meta documents or deposition

2  testimony from this case with no analysis at all, let alone analysis applying a reliable methodology

3  that applies any relevant expertise. Ex. 4, Lamdan Rep. ¶¶16, 18-20, 23-25, 28-31, 33-34, 41-44,

4  55-66, 68-72, 75-78, 80-90, 95-97, 99-102, 104-110, 112-114, 117-119, 122-134, 136-152, 154-

5  157, 159-166, 192, 196; Ex. 3, Lamdan Rebuttal ¶¶8, 10-11, 14, 20-21, 31, 33, 39, 48, 57, 59. As

6  Lamdan herself testified, her reports were ████████████████████████████████████████

7  ████████████████ Ex. 1, Lamdan Merits Tr. 103:25-104:12. That is not admissible expert

8  testimony.

9      **B.    Lamdan's Opinions About Meta's Knowledge And Intent Are Improper**

10      Lamdan also impermissibly uses her summaries of Meta documents to opine on Meta's

11  purported knowledge and intent. Her opinions include entire sections about how "████████████

12  ████████████████████████████████████████████████" Ex. 4, Lamdan Rep. §IV.B.3, that

13  "████████████████████████████████████████████" *id.* §IV.C.2.b, and that

14  "████████████████████████████████████████████████████████████

15  ████████████████████████" *id.* §IV.D.1. Questions about what Meta knew, understood, or

16  intended are for the jury to decide based on the evidence in this case.

17      Courts have consistently held that opinions regarding a party's knowledge or state of mind

18  "have no basis in any relevant body of knowledge or expertise," and therefore are not a proper

19  subject for expert testimony. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp.

20  3d 1308, 1321 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021). "[E]xperts cannot

21  testify about 'corporate intent,'" *United States v. Pac. Gas & Electric Co.*, 2016 WL 1640462, at

22  *2 (N.D. Cal. April 26, 2016), or the "intention of the parties," *Miranda v. U.S. Sec. Assocs., Inc.*,

23  2019 WL 2929966, at *1-2 (N.D. Cal. July 8, 2019) (citations omitted).

24      Here, Lamdan offers opinion after opinion that purport to represent Meta's intent, motive,

25  and state of mind with respect to its privacy practices. For example, she opines that:

26      • "████████████████████████████████████████

27       ████ Ex. 4, Lamdan Rep. §IV.B.3 (header).

28      • "████████████████████████████████████████

         ████████ *Id.* ¶55.

**PUBLIC REDACTED VERSION**



- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶73.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶74.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶77.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶80.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶87.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶92.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶111.

- "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛" *Id.* ¶121.

Each of these statements (and the surrounding discussion) purports to be an expert representation of Meta's knowledge, intent, or motivation for its actions. This is not reliable expert testimony.

Lamdan admitted that she "can't speak to somebody's intent." Ex. 2, Lamdan CC Tr. 88:23-89:10; *see also id.* 330:1-18 ("Q. You're not an expert in intent, right? A. Correct. Q. So you don't know if Facebook intended to make its privacy policy hard to understand, correct? A. Correct."). But despite these admissions, Lamdan does exactly that. *See* Ex. 1, Lamdan Merits Tr. 84:1-10 ("Q. But you don't know what Facebook knew or didn't know, correct? … A. Facebook's internal documents indicate or demonstrated that understanding. So you're right, I wasn't sitting at the table or on the e-mail chain where these discussions were being had but that conclusion was drawn from reviewing Facebook's internal documents."). Permitting Lamdan's opinions regarding Meta's state of mind would thus again improperly "substitut[e] the expert's judgment for the jury's." *Oracle Am., Inc. v. Hewlett Packard Enter., Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec.

**PUBLIC REDACTED VERSION**

1    11, 2018).

2    **II.    LAMDAN'S OPINIONS ARE IRRELEVANT AND SHOULD BE EXCLUDED**

3           Lamdan's reports should also be excluded because they do not "speak[] clearly and directly

4    to an issue in dispute in the case," *Daubert*, 43 F.3d at 1321 n.17, and are instead littered with

5    platitudes  like ███████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ██████████  and "████████████████████████████████████████████████████

8    █████████████████████████████████████████████" Ex. 4, Lamdan Rep. ¶¶37, 52.

9           The general "importance" and "value" of privacy to consumers is irrelevant to whether the

10   specific alleged statements and omissions had any meaningful impact on competition. Plaintiffs

11   allege that certain statements and omissions related to privacy, which are included in Appendix C

12   of Lamdan's opening report, were false or misleading, and that these alleged statements and

13   omissions caused enough users to use Facebook rather than competing social platforms that they

14   gave Meta an unfair competitive advantage. But Lamdan, by her own admission, is not opining

15   that the statements in Appendix C were false, misleading, or deceptive. Ex. 1, Lamdan Merits Tr.

16   108:7-22 ("Q. You didn't personally assess the truth or falsity of any statement Facebook made,

17   correct? A. Yeah, I don't know how I could have without access to … forensic data material.").

18   Nor has she opined that these statements caused users to spend more time on Facebook than

19   competing platforms. *Id*. 77:21-78:7 ("I'm trying to think of any instance where Facebook made a

20   statement about privacy and then, you know, the public …. I'm not sure how that swayed users.").

21   To the contrary—she has testified that the statements had *no* impact on use of the platform at all.

22   Lamdan instead "believe[s] that users just feel resigned to use Facebook," opining, without

23   evidence, that users "don't return to using Facebook because they're so thrilled by these public

24   statements. They return to using Facebook because they feel they have no other choice." *Id*. 78:9-

25   79:1. And inexplicably, her reports do not even discuss *any* of the specific statements in Appendix

26   C of her report. That list was instead drafted by plaintiffs' counsel, and Lamdan did nothing to

27   independently assess it. *Id*. 143:13-17 ("I don't know who specifically drafted it, but it was

28   contributed by counsel."); *id*. 149:19-23 ("Q. Did you do any work to assess whether the

**PUBLIC REDACTED VERSION**

information in the key was accurate? …. A. No.").

Courts in this district have excluded expert testimony concerning the general importance of privacy when it is untethered from the core issues the jury must actually decide. In *Opperman v. Kong Techs., Inc.*, for example, the court found that the plaintiffs' expert's methodology was "defect[ive]" because it measured "the value to consumers of privacy generally" rather than the value of the "two allegedly misrepresented security features." 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017). The defect here is the same: Lamdan opines on privacy and data use generally, instead of the specific statements and omissions in Appendix C.

### III.    LAMDAN IS NOT QUALIFIED TO OFFER OPINIONS ON ECONOMIC THEORIES AND THEIR APPLICATION TO THIS CASE

The Court should exclude Section IV.E of the Lamdan Report and Section IV of the Lamdan Rebuttal, which address economic theories like ████████████████████ ████████████████████ for the additional reason that—as the Court intuited, Hr'g Tr. 21:25-22:2 (Nov. 14, 2024)—Lamdan is unqualified to offer these opinions. These concepts are rooted in principles of economic decision making, about which Lamdan is not, and does not claim to be, an expert. They should therefore be excluded as "outside [her] expertise." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 5955666, at *2 (N.D. Cal. Nov. 6, 2013).[2]

First, Lamdan opines that users feel "████████████████████ ████████" referencing the "████████████████████" and stating that "████ ████████████████████████████████████████████████ ████████████████████████████████████" Ex. 4, Lamdan Rep. ¶¶190-91. But Lamdan admits she is unaware of the ways users can control and consent to the collection and use of their data. *See* Ex. 2, Lamdan CC Tr. 155:22-158:10; Ex. 1, Lamdan Merits Tr. 28:2-4; *id.* 228:4-9. Lamdan also has not conducted any "assessment of how much consumers care about privacy on Facebook compared to how much they care about other aspects of using Facebook." Ex. 2, Lamdan CC Tr. 67:11-16.

---

[2] Despite opining that users must be on Facebook or face severe consequences, Lamdan *herself* is not on Facebook. Ex. 2, Lamdan CC Tr. 166:2-5.

**PUBLIC REDACTED VERSION**

1    Relatedly, Lamdan opines without the requisite expertise that "███████████

2    ████████████████████████████████████████████" Ex. 3,

3    Lamdan Rebuttal ¶56. Her opinion on this point rests entirely on the premise that "there is only

4    one choice available" because "Facebook has network effects … they are pervasive, right, so

5    people feel driven to use Facebook, stay on Facebook, rejoin Facebook if they leave Facebook

6    because of those network effects." Ex. 1, Lamdan Merits Tr. 221:24-222:18. But Lamdan is not

7    an economist. *Id*. 79:15-18 ("Yeah, I continue to not be an economist"). She is "not a market or

8    antitrust expert" and admittedly cannot speak on "Facebook being a monopoly or not being a

9    monopoly." *Id*. 276:16-23, 276:2-15. She also lacks a basis to offer any kind of opinion regarding

10    network effects or whether other choices exist for Facebook users in the market. *Id*. 276:16-23

11    ("Q. So you're not offering an opinion that there is a social network market? A. No, I'm not – I'm

12    not here to opine on that at all."); *id.* 231:13-232:4 (stating that the "monopoly discussion" is "not

13    [her] area of expertise"); *id.* ("I feel like discussing competition kind of gets into the world that

14    I'm not … that's not my area of expertise.").

15    Because Lamdan is not qualified to opine on these technical, economic, and sociological

16    topics, the entirety of Section IV.E of her report and Section IV of her rebuttal should be excluded.

17    **CONCLUSION**

18    Lamdan has not offered an expert opinion, much less a reliable or relevant one. The Court

19    should therefore exclude the entirety of the Lamdan Report and the Lamdan Rebuttal.

20

21    Dated: April 28, 2025                     Respectfully submitted,

22                                              By: */s/ Sonal N. Mehta*

23                                                  Sonal N. Mehta

24                                              WILMER CUTLER PICKERING HALE
                                                 AND DORR LLP
25
                                                *Attorney for Defendant Meta Platforms, Inc.*
26

27

28

**PUBLIC REDACTED VERSION**

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on this 28th day of April, 2025, I electronically transmitted the public

3  redacted version of the foregoing document to the Clerk's Office using the CM/ECF System and

4  caused the version of the foregoing document filed under seal to be transmitted to counsel of record

5  by email.

6                                           By:    */s/ Sonal N. Mehta*

7                                                   Sonal N. Mehta

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28