# EXHIBIT 12

University of Miami Law School

# University of Miami School of Law Institutional Repository

Articles    Faculty and Deans

2020

# Antitrust in Attention Markets: Objections and Responses

John M. Newman
*University of Miami School of Law*, johnnewman@law.miami.edu

Follow this and additional works at: https://repository.law.miami.edu/fac_articles

 Part of the Antitrust and Trade Regulation Commons

## Recommended Citation

John M. Newman, *Antitrust in Attention Markets: Objections and Responses*, 59 *Santa Clara L. Rev.* 743 (2020).

This Article is brought to you for free and open access by the Faculty and Deans at University of Miami School of Law Institutional Repository. It has been accepted for inclusion in Articles by an authorized administrator of University of Miami School of Law Institutional Repository. For more information, please contact library@law.miami.edu.

# ANTITRUST IN ATTENTION MARKETS: OBJECTIONS AND RESPONSES

John M. Newman*

*The modern antitrust enterprise finds itself under attack. Critics complain that enforcement agencies have done nothing to stem an ever-rising tide of market concentration and corporate power. At the center of this critique lies Silicon Valley, home of a new generation of tech giants.*

*Actual examination of agency actions suggests that these recent criticisms are somewhat overblown. Antitrust agencies, particularly the Federal Trade Commission, have brought a surprising variety of cases involving nascent markets. But there does remain a gaping void in the enforcement record: attention markets, in which individuals pay attention to advertisements in exchange for access to desired products and services.*

*This symposium contribution contends that attention markets represent the largest sector of the modern economy to have gone unnoticed by antitrust regulators. If it is to fulfill its congressional mandate, the antitrust enterprise must begin paying attention to attention markets. A number of objections to this straightforward point have been raised, but each collapses under close scrutiny. This article catalogues and refutes each of those objections, and concludes with a call to action: the ongoing lack of enforcement in attention markets risks delegitimizing the entire antitrust project.*

TABLE OF CONTENTS

I. Introduction ................................................................................. 744
II. The Rise (and Rise) of Attention Rivalry ................................... 746
    A. The Scarcity of Attention ............................................... 747
    B. Demand-Side Innovation ............................................... 749
III. Anatomy of an Antitrust Failure ............................................... 750
IV. Anti-Enforcement Objections and Responses ........................... 753
    A. "We Are Already Doing Enough." .................................. 753

* Associate Professor, University of Miami School of Law. Hayden T. Cherry provided excellent research assistance.

increased oversight of attention markets. One of the two primary objections that fall into this category is that, as markets are currently defined, all firms competing for attention participate in the same massive market and, as a result, all lack market power. The second is that the current antitrust toolkit is not supple enough for use in attention markets.

### 1. Attention Is (Only) a Medium of Exchange

It is not uncommon to encounter arguments that all attention-seeking firms compete with each other in one massive, fragmented market—and that, as a result, none of them should face antitrust liability.[102] In other words, because Google, Facebook, CNN, Fox News, and the Dallas Cowboys all compete to attract eyeballs, they all must compete in the same relevant market.[103] The practical upshot is, yet again, non-enforcement of the antitrust laws, because each rival's individual share of this massive "market" would be miniscule.

Such arguments exhibit such obvious flaws that they almost do not deserve our attention. Yet the frequency with which they are made demands at least a cursory response. The error on display is fundamental: mistaking the medium of exchange for the metes and bounds of the market. One might just as well argue that movie theaters, grocery stores, nightclubs, and clothing designers all compete for money, and therefore must participate in the same relevant market. But no serious analyst would make such a claim.[104]

---

102. *See, e.g.*, David S. Evans, *Attention Rivalry Among Online Platforms* 1-2 (Univ. of Chi. Inst. for L. & Econ. Olin Res. Paper No. 627, 2013), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2195340 (arguing that "attention rivals" like search platforms, social networks, news providers, video hosts, etc., all "compete with each other for the limited time of consumers"); *Id.* at 3 (concluding that "[c]ompetition in fact appears to be quite robust 'in the market'"). As a policy matter, Evans urges a "strong presumption that attention seekers compete for procuring attention regardless of the products and services they offer for doing this." *Id.* This is supposedly warranted because "attention seekers are price takers in terms of what they pay to secure attention." *Id.*

103. Facebook arguably impliedly made a similar argument in response to the Bundeskartellamt's recent decision prohibiting certain of its data-collection practices. In a blog post disagreeing with the decision, Facebook included a graphic that (again, arguably) implied that Facebook competes with Twitter, LinkedIn, TicketMaster, Airbnb, TripAdvisor, Tinder, Yelp, Reddit, and others. *See* John Newman, *The Bundeskartellamt's Facebook Decision: Good, Bad, and Ugly*, REVUE CONCURRENTIALISTE (Feb. 11, 2019), https://leconcurrentialiste.com/2019/02/11/bundeskartellamt-facebook/ [hereinafter Newman, *Bundeskartellamt*].

104. Of course, defendants and defendant-friendly commentators often make claims that are only slightly less absurd. The Competitive Enterprise Institute, for example, argued recently that even a market definition as broad as "concerts" would be overly narrow—"[c]oncerts are one form of entertainment" that "compete[s] with movies, plays, ballgames, bars, restaurants, and countless other activities." Ryan Young, *Top Ten Antitrust Targets*, COMPETITIVE ENTER. INST. (Dec. 10, 2018), https://cei.org/blog/top-ten-antitrust-targets