1

2  **HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
3  shanas@hbsslaw.com
715 Hearst Avenue, Suite 300
4  Berkeley, CA 94710
Telephone: (510) 725-3000

5

6  *Attorneys for Plaintiffs Maximilian Klein,*
*Rachel Banks Kupcho, and Sarah Grabert*
7

8  [Additional counsel listed on signature page]

**QUINN EMANUEL URQUHART & SULLIVAN,
LLP**
Kevin Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

9

10  ## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

11

12

13  MAXIMILLIAN KLEIN, *et al.*,
                        Plaintiffs,
14  v.

META PLATFORMS, INC.,
15                      Defendant.

16  This document relates to:
All Actions
17

Consolidated Case No. 3:20-cv-08570-JD

**CONSUMER PLAINTIFFS'
OPPOSITION TO DEFENDANT META
PLATFORMS, INC.'S MOTION TO
EXCLUDE EXPERT TESTIMONY AND
OPINIONS OF SARAH LAMDAN**

**PUBLIC REDACTED VERSION**

Hearing Date:  July 24, 2025
Time:          10:00 a.m.
Judge:         Hon. James Donato

18

19

20

21

22

23

24

25

26

27

28  CONSUMER PLS.' OPPOSITION TO MOT. TO                    CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................... 3

III.  ARGUMENT ............................................................................................................ 4

A.    Lamdan Is an Expert in the Recognized Field of Consumer Data Privacy, Offering
      Opinions That Rely on Her Knowledge and Expertise ................................................ 4

      1.    Facebook Ignores the Flexible Nature of the *Daubert* Standard. ...................... 6

      2.    Lamdan Will Not Improperly Testify About Facebook's Knowledge and Intent
            ...................................................................................................................... 11

B.    That Facebook Disagrees with Plaintiffs' Theory of Liability Does Not Render Lamdan's
      Opinions Irrelevant ...................................................................................................... 11

C.    Facebook Incorrectly Argues that Lamdan Offers Economic Opinions ........................... 13

IV.   CONCLUSION ...................................................................................................... 15

CONSUMER PLS.' OPP'N TO MOT. TO                          CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.*
*Publications, Inc.*,
  108 F.3d 1147 (9th Cir. 1997) ......................................................................5, 6, 7

*Apple Inc. v. Psystar Corp.*,
  586 F.Supp.2d 1190 (N.D. Cal. 2008) ...................................................................16

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018)......................................................................7, 10

*Brooks v. Thomson Reuters Corp.*,
  2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) ......................................................7, 8

*Brown v. Google LLC*,
  2022 WL 17961497 (N.D. Cal. Dec. 12, 2022).......................................7, 8, 10, 12

*Cabrera v. Google LLC*,
  2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) ........................................................12

*In re Capacitors Antitrust Litig. (No. III)*,
  2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ........................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2017 WL 10434367 (N.D. Cal. Jan. 23, 2017).......................................................15

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ...........................................................................12

*Confederated Tribes & Bands of Yakama Nation v. United States*,
  296 F. App'x 566 (9th Cir. 2008) ...........................................................................15

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ..............................................................................3, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ...................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)................................................................................3, 6, 12

*In re Glumetza Antitrust Litig.*,
  2021 WL 3773621 (N.D. Cal. Aug. 25, 2021) ........................................................11

*In re Google Play Store Antitrust Litig.*,
  No. 2022 WL 17252587 (N.D. Cal. Nov. 28, 2022).................................................4

*In re Google RTB Consumer Priv. Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .................................................. *passim*

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...........................................................7, 11

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ..............................................................................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ..........................................................7

*Murray v. S. Route Mar. SA*,
  870 F.3d 915 (9th Cir. 2017) ..............................................................................5

*Opperman v. Kong Techs., Inc.*,
  2017 WL 3149295 (N.D. Cal. July 25, 2017).......................................................12

*U.S.A. ex rel. Poong Lim/Pert Joint Venture v. Dick Pac./Ghemm Joint Venture*,
  2006 WL 5230015 (D. Alaska Mar. 2, 2006) ......................................................10

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010)....................................3

*S.E.C. v. Leslie*,
  2010 WL 2991038 (N.D. Cal. July 29, 2010) ......................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 124347 (N.D. Cal. Jan. 8, 2013) ..........................................................15

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ............................................................................6

*United States v. Pac. Gas & Elec. Co.*,
  2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) ......................................................11

*Valenzuela v. Equifax Info. Servs. LLC*,
  2015 WL 6811585 (D. Ariz. Nov. 6, 2015) .........................................................10

-iii-

**Statutes**

Sherman Act................................................................................................................12

**Federal Rules**

Fed. R. Evid. 702 .......................................................................................................3, 6

**Other Authorities**

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6274 n.50 (2d ed. Apr. 2023) ...........................16

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

# I.    INTRODUCTION

Although digital companies know a lot about us, we do not know a lot about them—their operations, what kinds of data they collect, how they use this data, and who they share it with. Because of this asymmetry of information, we are especially vulnerable to them, and we have to trust that they will not betray our trust or manipulate us. The problem is not simply asymmetry of information. Many companies design their interfaces to facilitate and encourage the disclosure of information, including information we may not even be aware we are disclosing . . . ; they insist that our data is safe with them and that our privacy and our safety is their central concern.

Jack M. Balkin, *The Fiduciary Model of Privacy*, 134 Harv. L. Rev. F. 11 (2020). The average person may think they understand consumer data privacy—they don't. Their online behavior demonstrates they don't. The academic literature demonstrates they don't. Facebook's internal documents demonstrate they don't. This widespread misunderstanding, which Facebook repeatedly nurtured and exploited, is crucial to Plaintiffs' allegations that Facebook utilized repeated misrepresentations and omissions about its data collection and use practices to acquire and maintain a monopoly in the personal social network services ("PSNS") market.

Although individuals express significant concerns over online privacy, Sarah Lamdan, a scholar and former professor, will explain that the evidence and the way consumers actually use Facebook shows they have a limited understanding of the scale and granularity of data being collected about them and used, influenced by Facebook's misrepresentations and omissions that facilitated consumers' misplaced trust in Facebook.[1] (*E.g.*, Ex. 12 at 152:16–22 (Acton Tr.); Ex. 13 at 675 (PALM-013176674,); *see also* Ex. 14, ¶¶ 25 n.26, 93–94, Appendix C (Expert Merits

---

[1] Unless otherwise noted, all Exs. 12–40 references are to the Declaration of Shana E. Scarlett in Support of Consumer Plaintiffs' Oppositions to Defendant Meta Platforms, Inc.'s Motions to Exclude Expert Testimony and Opinions of Nicholas Economides and Sarah Lamdan, filed concurrently filed herewith.

CONSUMER PLS.' OPP'N TO MOT. TO EXCLUDE EXPERT TESTIMONY OF SARAH LAMDAN

CASE NO. 3:20-cv-08570-JD

Report of Sarah Lamdan ("Lamdan Rep.")); Ex. 15, ¶ 32 (Expert Merits Rebuttal Report of Sarah Lamdan ("Lamdan Rebut.")).) Lamdan's expertise and evidence analysis will help the jury understand, for example, the gap between users' perceived understanding of data privacy and Facebook's data collection and use practices and how this asymmetry combined with Facebook's misrepresentations, omissions, and ever-changing, opaque data and privacy policies mean users lack the information necessary to make informed privacy decisions on Facebook's social networks. (*E.g.*, Ex. 16 (PALM-000277709); Ex. 17 (PALM-FTC-00202933); Ex. 18 (PALM-000277701); Ex. 19 at 691 (PALM-000277690); Ex. 20 (PALM-001534880); Ex. 21 (PALM-FTC-00909820); Ex. 22 at Slides 11, 15, 19 (PALM-ADI-0000682545); Ex. 23 (PALM-010644865); *see also* Ex. 14, ¶¶ 15–18, 20–21 (Lamdan Rep.); Ex. 15, ¶¶ 28–31 (Lamdan Rebut.).) She will also testify that Facebook's privacy settings are hard to find, confusing, and do not meaningfully protect users' privacy or data. (*E.g.*, Ex. 24 at 660 (PALM-002420657); (Ex. 25 at Slide 8 (PALM-006489548); Ex. 26 (PALM-002370637); *see also* Ex. 14, ¶¶ 122–23, 125, 176, 182 (Lamdan Rep.). And she will explain why: the use of privacy settings can decrease the amount and richness of data Facebook receives (assuming *arguendo* Facebook's settings were complete and effective, which the record indicates they were not), negatively impacting its business model. (*E.g.*, Ex. 27 at 015 (PALM-FTC-00199013); Ex. 28 at 60:22–61:20 (Baser Tr.); *see also* Ex. 14, ¶¶ 19, 87, 90 (Lamdan Rep.); Ex. 15, ¶¶ 9–10, 12–13, 17, 21 (Lamdan Rebut.).)

Finally, Lamdan will also rebut Facebook's defense of the "privacy paradox," explaining that it is an excuse Facebook uses to allow it to dismiss legitimate privacy concerns and continue surveilling its users. (Ex. 15, ¶¶ 15–16, 19 (Lamdan Rebut.).) She will opine that the evidence shows consumers' behavior online does not necessarily accurately reflect their privacy interests and can also evince a Hobson's choice: submit to Facebook's pervasive data collection and use practices or refrain from interacting with friends and family on the dominant personal social network. (Ex. 29 at 423–24 (PALM-014211416); *see also* Ex. 14, ¶ 20 (Lamdan Rep.); Ex. 15, ¶¶ 24–26, 33 (Lamdan Rebut.).) She will testify that the so-called "privacy paradox" is a convenient

CONSUMER PLS.' OPP'N TO MOT. TO EXCLUDE EXPERT TESTIMONY OF SARAH LAMDAN                    CASE NO. 3:20-cv-08570-JD

excuse belied by Facebook's own behavior, including its stated understanding of the importance of privacy to its users, its growth, and its success, its internal use of a "cares about you" score, and changes in consumers' privacy choices on Facebook in the wake of large privacy scandals. (*E.g.*, Ex. 30 (PALM-007621636); Ex. 31 (PALM-006604510–512); Ex. 32 (PALM-005474710–712); *see also* Ex. 14, ¶¶ 167–73 (Lamdan Rep.); Ex. 33 at Slide 27 (PALM-004235532); Ex. 34 (PALM-010350030); Ex. 35 (PALM-010595432); Ex. 36 (PALM-006489679); Ex. 25 at Slide 19 (PALM-006489548); Ex. 37 at Slide 2 (PALM-006489549); Ex. 27 (PALM-FTC-00199013); Ex. 38 (PALM-006002495); *see also* Ex. 15, ¶¶ 6–8, 11–14, 17–18 (Lamdan Rebut.).) For these reasons, her opinions are relevant and reliable.

## II.    LEGAL STANDARD

Under Rule 702, "[t]he two touchstones for admissibility are reliability and relevancy." *In re Capacitors Antitrust Litig. (No. III)*, 2018 WL 5980139, at *3 (N.D. Cal. Nov. 14, 2018) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 599 (1993)). Expert testimony is relevant where it "logically advance[s] a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). "And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (quoting *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

"Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.'" *Id.* at 564–65. "The analysis under Daubert is 'flexible' and there is no 'definitive checklist or test.'" *Capacitors (No. III)*, 2018 WL 5980139, at *3 (quoting *Daubert*, 509 U.S. at 593–54). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565. This is because "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564. Put simply, "Rule 702 should be applied with a 'liberal thrust' favoring admission." *In re Google Play Store Antitrust Litig.*, No. 2022 WL

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

17252587, at *4 (N.D. Cal. Nov. 28, 2022) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)).

### III.    ARGUMENT

**A.    Lamdan Is an Expert in the Recognized Field of Consumer Data Privacy, Offering Opinions That Rely on Her Knowledge and Expertise**

Consumer data privacy is a recognized field of study that has grown in importance in today's digital economy. (*See, e.g.*, Ex. 14, ¶¶ 2–4, 27 n.27, 37 nn.44, 46–47, 38 n.48, 40 nn.50–51, 48 n.65 (Lamdan Rep.).) There is substantial literature and academic inquiry on the subject, and Lamdan is a key contributor. (*Id.*) Lamdan currently serves as the Deputy Director of the American Library Association's Office for Intellectual Freedom and is an experienced academic whose "specialties include data privacy with a focus on the implications of the use of personal data to target consumers and to assess consumer risk." (*Id.*, ¶ 2.) She previously served as a Professor of Law at the City University of New York School of Law, where she taught administrative law courses and seminars on data privacy and government information access law and policy. (*Id.*, ¶ 1.) Lamdan has also published several academic papers and collaborated with privacy advocacy groups to author reports that highlight the privacy risks associated with internet platforms' collection and utilization of consumers' personal data. (*Id.*, ¶ 4.) Her existing, non-litigation work on this subject is an important indicium of the reliability of her opinions in this case. The Ninth Circuit has said this is "[o]ne very significant fact to be considered," since "an expert [who] testifies based on research [s]he has conducted independent of the litigation provides important, objective proof that the research comports with the dictates of good science." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). The Ninth Circuit emphasized, "That the testimony proffered by an expert is based directly on legitimate, preexisting research unrelated to the litigation provides the most persuasive basis for concluding that the opinions [s]he expresses were 'derived by the scientific method.'" *Id.*

Lamdan has also been invited to speak about her research on data analytics companies

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

across the globe. (Ex. 14, ¶ 2 (Lamdan Rep.).) And she testified before Congress in July 2022 about the privacy implications of the use of data analytics platforms by various government agencies.[2] (*Id.*, ¶ 3.) Notably, her opinions on this topic have been subject to the rigors of peer review. The Stanford University Press published her book, *Data Cartels: The Companies That Control and Monopolize Our Information*, in November 2022. The Stanford University Press describes its books as "inform[ing] scholarly debate, generat[ing] global and cross-cultural discussion, and bring[ing] timely, **peer-reviewed scholarship** to the wider reading public." (*About*, Stanford University Press, available at https://www.sup.org/about (last accessed May 6, 2025)) (emphasis added). As the Ninth Circuit has recognized, "'[S]ubmission to the scrutiny of the scientific community' can be a strong indicator of reliability 'because it increases the likelihood that substantive flaws in methodology will be detected.'" *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) (quoting *Daubert*, 509 U.S. at 593) (alterations in original).

In addition to being reliable, Lamdan's opinions are also relevant to Plaintiffs' claims. Plaintiffs allege Facebook monopolized the PSNS market, acquiring and maintaining its monopoly power by misrepresenting its data collection and use practices. (ECF No. 793 at 1.) Indeed, the Ninth Circuit and other circuits have stated that deception is a cognizable form of anticompetitive test, and the Ninth Circuit has described one such framework based on whether a monopolist's statements "were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." A*m. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). Lamdan's testimony addresses several of these elements proving Plaintiffs' case, such as the data Facebook claimed it would keep private (or not collect or use in the first place) compared to the data it actually collected and used from users, the information imbalance that

---

[2] "Digital Dragnets: Examining the Government's Access to Your Personal Data," U.S. House of Representatives, July 19, 2022, https://www.congress.gov/event/117th-congress/house-event/115009/text (last accessed May 11, 2025).

CONSUMER PLS.' OPP'N TO MOT. TO EXCLUDE EXPERT TESTIMONY OF SARAH LAMDAN

CASE NO. 3:20-cv-08570-JD

exists between Facebook and its users, the materiality of Facebook's misrepresentations and omissions concerning data privacy, and the likelihood that users would be deceived by those misrepresentations. For these reasons, her opinions are admissible at trial.

### 1.    Facebook Ignores the Flexible Nature of the *Daubert* Standard.

Facebook insists that Lamdan's opinions "reflect no expert analysis or reliable methodology," and accuses her of simply summarizing documents and deposition testimony. (Mot. 4–7.) Facebook relies on handful of cases to argue that Lamdan is merely acting as a "mouthpiece" by "restat[ing] or summariz[ing] record evidence and then stat[ing] a conclusion without applying a methodology that is reliable and which evinces his/her expertise." (Mot. 4–5.) But this is not what Lamdan does. The argument ignores her analysis of the evidence and the opinions she draws from that, and it ignores Ninth Circuit law. "Concerning the reliability of non-scientific testimony such as [Lamdan's], the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the **knowledge and experience** of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)) (emphasis in original)). Because of this, "in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." *Hankey*, 203 F.3d at 1168.

Here, Lamdan opines that online privacy and control over data are material to consumers, which Facebook apparently disputes. (Ex. 14, ¶¶ 37–41 (Lamdan Rep.).) She opines that there exists an information gap between Facebook and its users, which Facebook exploits in collecting and using consumers' data. (Ex. 15, ¶¶ 27, 32 (Lamdan Rebut.).) As explained above, under *Harcourt Brace* (as one example of the decisions proving Plaintiffs' case), Facebook's misrepresentations were anticompetitive if they were clearly material, clearly likely to induce reasonable reliance, and made to users who lacked knowledge of the subject matter. *Am. Pro. Testing Serv., Inc.*, 108 F.3d at 1152. The Ninth Circuit borrowed this standard from the Second

CONSUMER PLS.' OPP'N TO MOT. TO    CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

Circuit. *See Am. Pro. Testing Serv.*, 108 F.3d at 1152 (quoting *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/& Am. Home Prods. Corp.*, 850 F.2d 904, 916 (2d Cir. 1988). And at least one court in that jurisdiction has held, in the context of this test, that an expert "may opine, for example, on whether a particular statement is 'clearly material'" since that does not qualify as "render[ing] an ultimate conclusion that a particular representation is anticompetitive." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *42 (S.D.N.Y. Jan. 30, 2025). The same is true for testimony about whether a statement is "clearly likely to induce reasonable reliance." *See In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024); *Brown v. Google LLC*, 2022 WL 17961497, at *11 n.8 (N.D. Cal. Dec. 12, 2022) (citation omitted); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018). Lamdan's opinions on these topics are appropriate.

Lamdan buttresses her opinions by analyzing documents and witness testimony, as she must to render her opinions. Courts in this District recognize it is proper for an expert to review a defendant's "records and interpret them based on [her] knowledge, experience, training, and education." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 364 (N.D. Cal. 2018). Lamdan further supports her discussion and analysis of the evidence with her knowledge shaped by years of experience on consumer data privacy, in combination with citations to influential peer-reviewed papers, public research conducted by respected public policy institutes like Pew Research Center, and other privacy scholars' work. (*See generally* Ex. 14 (Lamdan Rep.); Ex. 15 (Lamdan Rebut.).) Reliance on "scholarship is a method traditionally used in the field of academic research," which, combined with her expertise, renders her opinions reliable. *Brooks v. Thomson Reuters Corp.*, 2023 WL 5667884, at *5 (N.D. Cal. Aug. 9, 2023).

Courts in the Ninth Circuit have permitted similar testimony from comparable experts. In *Brooks*, the defendant sought to exclude the plaintiffs' expert's opinion of uniform harm to the plaintiffs' ethical and social rights as "ipse dixit philosophizing" and "not supported by any objective or verifiable evidence or methodology." 2023 WL 5667884, at *5. But the expert had

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

the necessary expertise: he was a privacy and marketing scholar who researched, taught, presented, and had received awards for his work on privacy and digital audience targeting. *Id.* Moreover, he cited historical and seminal research in the field, legislative proposals, and the work of modern privacy scholars. *Id.* Since his opinions about the ethical and social rights of privacy provided necessary background and context about what privacy means and its importance, the court denied the defendant's motion. *Id.*

In *Brown*, Google tried to bar the opposing expert's data and privacy opinions because they supposedly did "not 'fit' the allegations in the case and fail to speak clearly and directly to a disputed issue in the case." 2022 WL 17961497, at *9. Yet, the court found the opinions fit: they "provide[d] background and context information about what privacy is, the importance of privacy, the different types of data, pervasive data collection and tracking of users as a function of the Internet, [] the impact and negative consequences of the misuse of one's data," plus "context for how a reasonable user would have reasonably expected privacy over their browsing information, and to understand the considerations relating to why Google's collection of use and use of private browsing information data is highly offensive." *Id.* at *10. Google also sought to exclude what it considered were "biased summaries" of documents "that merely regurgitate attorney argument." *Id.* at *12. The court disagreed, holding the expert did more than summarize Google's documents and testimony: "[T]he opinions analyze them by synthesizing information from a variety of different sources, including both Google's internal documents and public documents. The opinions also provide [the expert's] interpretation and meaning of certain trends seen within Google and the risks associated with such trends." *Id.*

The expert in *Google RTB* opined that privacy is a fundamental right and important societal norm, that Google's Terms of Service and Privacy Policies reflected an understanding of that right and norm, and that societal privacy norms require Google to provide informative disclosures about the data it collects. 2024 WL 2242690, at *3. The court rejected an argument that the expert based his opinions on his own subjective belief, rather than a "scientific method," rendering them

CONSUMER PLS.' OPP'N TO MOT. TO                    CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

unreliable. *Id.* at *4–5. The opinions were "an application of his expertise in the history of privacy norms," and he was a published author on this topic. *Id.* at *4.

Facebook's cite cases are inapposite. In *Siqueiros v. Gen. Motors LLC*, the court excluded the portions of the expert's report "consist[ing] of unadorned restatements or summaries of evidence already in the record." 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022). But the expert in that case was an engineer—a scientific expert, not a non-scientific expert like Lamdan— meaning the reliability of his testimony depended on his methodology, and there was none for this portion of his opinion. *Id.* at *2, *9. *Edwards Lifescis. Corp. v. Meril Life Scis. Pvt. Ltd.* is also readily distinguishable. That expert was "an accomplished cardiac surgeon," but he did "not apply specialized medical or scientific expertise in any way in opining that Meril's conduct harmed Edwards' business reputation." *Edwards Lifescis. Corp.*, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022). Similarly, in *Waymo LLC v. Uber Techs., Inc.*, the expert took a figure from an internal document that estimated each month of development saved translated to $20 million, then multiplied that figure by the number of months supposedly saved to calculate the development costs allegedly saved by Uber, with no other analysis. 2017 WL 5148390, at *5–6 (N.D. Cal. Nov. 6, 2017). The court excluded the expert's analysis on saved development costs as "nothing more than . . . basic arithmetic" and "not 'specialized knowledge' that will help the jury understand the evidence or determine a fact in issue." *Id.* at *6.

Facebook lodges other meritless complaints. For instance, Facebook argues Lamdan "misrepresents [a] document by including an incomplete screenshot in her report," accusing her of "omit[ing] a critical sentence—" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Mot. 6.) Yet, Lamdan includes that very language just a few sentences above, and on the same page, as the graphic: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ (Ex. 15, Lamdan Rebut., ¶ 41) (alterations in original). Facebook's complaint made for the sake of complaining; her report is not a demonstrative shown to the jury. And if Lamdan wrongly attributed a single statement to a WhatsApp employee, as Facebook contends, then the

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

proper recourse is cross-examination at trial, not exclusion of her opinions altogether. *Valenzuela v. Equifax Info. Servs. LLC*, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) ("[T]o the extent Hendricks' statements about Equifax's relevant policies and procedures are inaccurate, Equifax can explore such inaccuracies on cross examination."); *U.S.A. ex rel. Poong Lim/Pert Joint Venture v. Dick Pac./Ghemm Joint Venture*, 2006 WL 5230015, at *3 (D. Alaska Mar. 2, 2006) ("To the extent [the movant] seeks to challenge the correctness of the testimony of [his opponent]'s experts, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.").

Facebook also grouses that Lamdan summarized "cherry-picked documents and deposition testimony." (Mot. 4.) As the court in *Arris* observed, "This argument is disingenuous." 327 F.R.D. at 364. There is "no authority for the proposition that an expert must independently sort through all of the discovery in a case . . . ." *Id.* Nonetheless, Lamdan reviewed the factual record for evidence that either supported or undermined her opinions and found evidence consistent with Plaintiffs' allegations, describing evidence that Facebook knew users value online privacy, that users were confused about its data and privacy policies and practices, and that consumer trust in the context of online privacy was crucial to Facebook's success. (*See generally* Ex. 14, ¶¶ 8–9 (Lamdan Rep.).) This is proper, *Arris*, 327 F.R.D. at 364, and that Facebook does not like its own evidence is no basis for exclusion. Finally, Facebook faults Lamdan for not conducting a survey or poll, but one is not required. *Google RTB*, 2024 WL 2242690, at *4 ("Professor Richards is an expert on consumer privacy expectations and the history of evolving privacy norms in the United States . . . . That he does not have a 'marketing' degree or chose not to run a consumer expectations survey, per Google, is of no consequence."); *Brown*, 2022 WL 17961497, at *11 n.8 (citing *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 401 (N.D. Cal. 2021) ("An expert who offers testimony on the question on what a reasonable consumer is likely to do and/or think is not required to conduct a consumer survey if his or her testimony is otherwise reliable."); *Hadley*, 324 F. Supp. 3d at 1115 (holding an expert need not conduct consumer survey to reliably opine on likelihood of deception

---

10

and materiality).

### 2. Lamdan Will Not Improperly Testify About Facebook's Knowledge and Intent

Lamdan will not impermissibly testify about Facebook's knowledge and intent. Lamdan will only offer permissible testimony about the evidence, explaining, for example, the so-called "privacy paradox," an academic topic that will be helpful for the jury to understand; describing her own academically rigorous field as context for the scale and scope of modern data collection and management practices; and explicating Facebook's data collection and use and its opaque and confusing data and privacy policies and practices. She will use her knowledge and expertise to opine about the evidence, something courts permit experts to do in antitrust cases. *In re Glumetza Antitrust Litig.*, 2021 WL 3773621, at *20 (N.D. Cal. Aug. 25, 2021) (denying Daubert motion arguing that expert was merely a "human highlighter"). Like in *Pacific Gas*, Lamdan's testimony will leave conclusions about Facebook's knowledge and intent to the jury. *United States v. Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *3–4 (N.D. Cal. Apr. 26, 2016).

### B. That Facebook Disagrees with Plaintiffs' Theory of Liability Does Not Render Lamdan's Opinions Irrelevant

Facebook advocates for excluding Lamdan's opinions since "they do not 'speak[] clearly and directly to an issue in dispute in this case'"—that is, the "[t]he general 'importance' and 'value' of privacy to consumers is irrelevant . . . ." (Mot. 9.) Facebook's argument fails.

First, the argument is merely a disagreement with the merits of Plaintiffs' allegations. Plaintiffs "allege that Facebook acquired and maintained monopoly power" in the PSNS Market "by making false representations to users about Facebook's data privacy practices." *Klein*, 580 F. Supp. 3d at 763. Lamdan's opinions speak directly to several elements proving Plaintiffs' Sherman Act claims based on false and misleading statements. Facebook may disagree with Plaintiffs' theory of liability, but that does not make Lamdan's opinions irrelevant or unreliable. *Cabrera v. Google LLC*, 2023 WL 5279463, at *15 (N.D. Cal. Aug. 15, 2023) (quoting *Brown*, 2022 WL 17961497, at *4 n.4) ("Raising merits arguments in *Daubert* briefing is 'wholly inappropriate,'

CONSUMER PLS.' OPP'N TO MOT. TO                    CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

and such arguments are not grounds for exclusion of expert testimony.").

Second, Facebook's argument lacks legal support. It cites one case, *Opperman v. Kong Techs., Inc.*, 2017 WL 3149295, at *12 (N.D. Cal. July 25, 2017), to argue, "Courts in this district have excluded expert testimony concerning the general importance of privacy when it is untethered from the core issues the jury must actually decide." (Mot. 9.) Facebook omits key context: the expert's testified about damages, and it was not held problematic because she opined on privacy's general importance. *Opperman*, 2017 WL 3149295, at *12. Lamdan is not offering damages opinions. And, contrary to Facebook's assertion, this District has permitted privacy experts (like Lamdan) to testify regarding the general importance of privacy to consumers. *E.g.*, *Google RTB*, 2024 WL 2242690, at *3–5; *Brown*, 2022 WL 17961497, at *10. Here, Facebook's misrepresentations and omissions about data and privacy are core to Plaintiffs' claims.

Facebook also criticizes Lamdan for "not opining that the statements . . . were false, misleading, or deceptive." (Mot. 9.) But Lamdan cannot offer legal opinions, so critiquing her for *not* offering impermissible opinions makes little sense. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (expert's opinion that "ConAgra 'falsely and deceptively labeled' its products . . . constitutes the offering of an improper legal opinion that usurps the role of the court"); *S.E.C. v. Leslie*, , 2010 WL 2991038, at *9 (N.D. Cal. July 29, 2010) (similar, as "it is for the jury to determine whether Defendants' statements in fact were misleading").

Relying on a fragment of her testimony, Facebook additionally claims Lamdan has not "opined that these statements cause users to spend more time on Facebook than competing platforms." (Mot. 9.) There are multiple problems with this argument. To begin with, the rest of her testimony shows her answer was specific to the impact of Facebook's public relations campaign in the wake of the 2018 Cambridge Analytica scandal, a time when Facebook already possessed monopoly power, and the average annual time spent share for Facebook and Instagram was around ▮▮▮▮. (Ex. 39 at 77:2–78:7 (Deposition Transcript of Sarah Lamdan, taken in the above-referenced action on March 21, 2024 ("Lamdan Merits Tr.")); Ex. 40, Merits Expert Report

CONSUMER PLS.' OPP'N TO MOT. TO EXCLUDE EXPERT TESTIMONY OF SARAH LAMDAN

CASE NO. 3:20-cv-08570-JD

of Joseph Farrell, D.Phil., ¶ 254, Fig. 11.) Furthermore, Plaintiffs' case (and Lamdan's opinions) is not just about users spending more time on Facebook each month. It is about Facebook's acquisition and maintenance of a monopoly in the PSNS market by making false representations to users about Facebook's practices, and as a result of Facebook's maintained monopoly, users' so-called choice is to use Facebook or refrain from using the social network used by most of their friends and family—a "Hobson's choice between surveillance and self-deletion." (Ex. 14, ¶ 195, n.281 (Lamdan Rep.).) Facebook also ignores her opinions that "consumer trust"—including with respect to data and privacy issues—"was critical to Facebook's success as a social network." (*Id.*, ¶¶ 8(c), 73, 77–80, 89–90.)

Finally, Facebook asserts Lamdan "testified that the statements [and omissions related to privacy in Appendix C of her opening report] had **no** impact on use of the platform at all." (Mot. 9.) That is untrue. In her testimony, discussed users who left Facebook because they somehow learned of its bad acts and later returned only for want of choice. (Ex. 39 at 78:14-79:2 (Lamdan Merits Tr.).) This says nothing about whether those users were deceived and/or relied in the first place, or other users. Lamdan also testified that the statements and omissions in Appendix C (which include Facebook's statements after the Cambridge Analytica scandal) "were all relevant to building trust with consumers and also to what consumers may have known as they were making decisions about privacy," and "are examples that show that in a lot of cases the public may not have been aware of what kind of a decision they were making." (*Id.* at 150:16–151:1.)

## C.    Facebook Incorrectly Argues that Lamdan Offers Economic Opinions

Facebook asks the Court to strike Section IV.E of the Lamdan Rep. and Section IV of the Lamdan Rebut. because they discuss the "rational choice theory, Hobson's choice, and market alternatives to Facebook," which Facebook claims are "economic theories" and "concepts [that] are rooted in principles of economic decision making." (Mot. 10.) Lamdan is not offering economic opinions in this matter, so there is no basis to strike these sections. Further, Facebook cites no support for the contention that rational choice theory and Hobson's choice as explained

CONSUMER PLS.' OPP'N TO MOT. TO                    CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

by Lamdan are exclusively economic theories or concepts, and there is none.

Rational choice theory of human behavior states that "consumers make decisions by weighing the perceived costs, risks, and benefits of each action," and "[t]he consumers' goal is to gain the greatest benefit or satisfaction in line with their self-interest." (Ex. 14, ¶ 191 (Lamdan Rep.).) Lamdan explains, "When choosing to use social networks, 'users base their decision-making as it pertains to information disclosure on perceived benefits (e.g. networking with friends and acquaintances) and perceived risks (e.g. privacy and identity theft, image damage).'" (*Id.*) Lamdan quotes from a paper reviewing various theories for the privacy paradox, one of which—the Adaptive Cognition Theory of Social Network Participation—is "[b]ased on rational choice theory and behaviorism." (*Id*, ¶ 191 n.276.) This shows that rational choice theory applies to and is used in fields other than economics, including the privacy sphere.

It is also wrong to claim that "Hobson's choice" is purely an economic concept. Others in the privacy field use the term "Hobson's choice" in reference to consumers' use of Facebook. (Ex. 14, ¶ 197, n.283 (Lamdan Rep.)) ("The Electronic Frontier Foundation (EFF) called Facebook's 'Connections' feature a Hobson's choice . . . ."); (Ex. 15, ¶ 58, n.103 (Lamdan Rebut.)) ("Dina Srinivasan, a researcher at Yale University's Thurman Arnold Project, wrote that '[c]onsumers today face a classic Hobson's choice: Use Facebook and submit to the loss of privacy, or forgo all use of the only social network used by most of their friends, family, and acquaintances.'"). "Hobson's choice" is an accepted term in Lamdan's field. It is also used in common parlance and court opinions unrelated to economics. *E.g.*, *Confederated Tribes & Bands of Yakama Nation v. United States*, 296 F. App'x 566, 569 (9th Cir. 2008) (quoting other sources) (internal quotation marks omitted) (referring to "agency action present[ing] a comply-or-defy decision that amounts to a Hobson's choice.").

Facebook also tries to make hay out of the fact that Lamdan does not know the current state of every privacy-related setting or option available to users, which it overstates as an admission that "she is unaware of the ways users can control and consent to the collection and use of their

CONSUMER PLS.' OPP'N TO MOT. TO EXCLUDE EXPERT TESTIMONY OF SARAH LAMDAN                    CASE NO. 3:20-cv-08570-JD

data." (Mot. 10.) But the fact that Facebook does not like Lamdan responses to its deposition quizzing as to several specific Facebook privacy tools by name does not render unreliable her opinions based on her background and expertise, and informed by Facebook's documents from 2007 to the present and published works on the topic of Facebook and privacy.

Finally, Facebook wrongly complains that Lamdan will testify that Facebook is a monopolist, citing her single mention of the term "monopoly" in her Rebuttal Report. (Mot. 11.) Lamdan made clear at her deposition that she will not: "I am not here to speak on, like, Facebook being a monopoly or not being a monopoly. I would say, you know, because Facebook dominates the social network market or something[.]" (Ex. 39 at 276:9–15 (Lamdan Merits Tr.).) But she can and does rely on Drs. Economides' and Farrell's opinions that Facebook possesses monopoly power in the relevant market to offer her opinions. (Ex. 14, ¶ 185, n.266; Materials Relied Upon (Lamdan Rep.)); *see In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017) (quoting another source) ("[A] testifying expert can use facts, data, and conclusions of other experts to offer an opinion within the testifying expert's domain of expertise"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 124347, at *1 (N.D. Cal. Jan. 8, 2013) ("An expert is permitted to rely on the opinion of another expert."); *see also* Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6274 n.50 (2d ed. Apr. 2023) ("[T]he Advisory Committee clearly contemplated that experts can base opinions on the opinions of others."). And she can testify to the lack of reasonable substitutes, a factual question, in the context of her opinions on consumer choice and privacy, again relying on Drs. Economides' and Farrell's opinions. (Ex. 14, ¶ 185, n.266; Materials Relied Upon (Lamdan Rep.)); *Apple Inc. v. Psystar Corp.*, 586 F.Supp.2d 1190, 1196 (N.D. Cal. 2008) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)) (market definition is factual inquiry).

## IV.    CONCLUSION

For these reasons, Plaintiffs request that this Court deny Facebook's Motion.

---

15

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

DATED: May 12, 2025

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Shana E. Scarlett*
    Shana E. Scarlett (Bar No. 217895)
shanas@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000

By: */s/ Kevin Y. Teruya*
    Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
Scott L. Watson (Bar No. 219147)
scottwatson@quinnemanuel.com
Claire D. Hausman (Bar No. 282091)
clairehausman@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

Steve W. Berman (admitted *pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

*Interim Co-Lead Consumer Class Counsel*

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (admitted *pro hac vice*)
wjbruckner@locklaw.com
Robert K. Shelquist (admitted *pro hac vice*)
rkshelquist@locklaw.com
Brian D. Clark (admitted *pro hac vice*)
bdclark@locklaw.com
Kyle Pozan (admitted *pro hac vice*)
kjpozan@locklaw.com
Laura M. Matson (admitted *pro hac vice*)
lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Michelle Schmit (admitted *pro hac vice*)
michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400
Manisha M. Sheth (admitted *pro hac vice*)
manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Interim Co-*Lead Consumer Class Counsel*

*Interim Counsel for the Consumer Class*

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD

**ATTESTATION OF SHANA E. SCARLETT**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Shana E. Scarlett. By her signature, Ms. Scarlett attests that she has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: May 12, 2025                     By:    */s/ Shana E. Scarlett*
                                                  Shana E. Scarlett

17

CONSUMER PLS.' OPP'N TO MOT. TO                              CASE NO. 3:20-cv-08570-JD
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By:    */s/ Shana E. Scarlett*
Shana E. Scarlett

CONSUMER PLS.' OPP'N TO MOT. TO
EXCLUDE EXPERT TESTIMONY OF SARAH
LAMDAN

CASE NO. 3:20-cv-08570-JD