**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
shanas@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
Sonal N. Mehta (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

David Z. Gringer (*pro hac vice*)
  David.Gringer@wilmerhale.com
Paul Vanderslice (*pro hac vice*)
  Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

*Attorneys for Plaintiffs Maximilian Klein,
Rachel Banks Kupcho, and Sarah Grabert*

*Attorneys for Defendant Meta Platforms, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 3:20-cv-08570-JD |
| Plaintiffs, | **PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* AND META'S RESPONSES THERETO** |
| vs. | |
| META PLATFORMS, INC., | The Hon. James Donato |
| Defendant. | Pretrial Conference: September 25, 2025 |
| This Document Relates To: All Consumer Actions | Trial:                November 17, 2025 |

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION ................................................................................................................3

PLAINTIFFS' MIL NO. 1: REFERENCES TO CASE BEING "LAWYER-DRIVEN" ................4

META'S RESPONSE TO PLAINTIFFS' MIL NO. 1 ................................................................7

PLAINTIFFS' MIL NO. 2: PLAINTIFFS' PERSONAL AND INTIMATE LIFE
    DETAILS ........................................................................................................................10

META'S RESPONSE TO PLAINTIFFS' MIL NO. 2 ..............................................................12

PLAINTIFFS' MIL NO. 3: AFFIRMATIVE DEPOSITION DESIGNATION SEQUENCE........15

META'S RESPONSE TO PLAINTIFFS' MIL NO. 3 ..............................................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 25, 2025, or as soon thereafter as may be heard, Plaintiffs will move the Court, pursuant to the Federal Rules of Evidence, for orders in *limine* to preclude Meta from:

- Offering evidence or argument as to this case's origins or asserting it is "lawyer driven";

- Offering evidence or making arguments relating to subjects that are minimally, if at all, probative of the Plaintiffs' claims and that may embarrass, annoy, intimidate, or otherwise harass Plaintiffs at trial;

- Affirmatively offering video testimony of any witness by designation during Plaintiffs case-in-chief;

This Motion is based on this Notice of Motion, Memorandum of Points and Authorities, and all matters with respect to which this Court may take judicial notice, and such oral and documentary evidence as may be presented to the Court at the time of or before the hearing.

**PLAINTIFFS' MIL NO. 1: REFERENCES TO CASE BEING "LAWYER-DRIVEN"**

Throughout this litigation, Meta has inappropriately characterized this litigation is lawyer-driven. *See, e.g.*, Dkt. 670 at 2, 24 (Meta referring to Plaintiffs as being "before the court only because" they were "recruited by their lawyer friends"); 806 at 24 (Meta referring to a Plaintiff's alleged knowledge "before talking to her lawyers" and asserting claims "being advanced by plaintiffs' counsel"). These allegations are untrue, irrelevant and unfairly prejudicial, and this Court should exclude any such arguments or evidence under Rules 401, 402, and 403.

Evidence or argument regarding this case's origins, how Plaintiffs came to bring this case, or Meta's suggestion that this case is "lawyer driven" does not make it more or less likely that Meta is a monopolist, that Meta acquired its power via anticompetitive means, that Meta has harmed competition, and/or that Meta has violated federal antitrust laws. Moreover, permitting Meta to make this argument would cause unfair prejudice and unnecessary confusion and delay. If Meta were to advance this argument (however misguided), that would force Plaintiffs' counsel to respond, creating a sideshow and mini-trial that has no bearing on any issue. For example, to answer the obvious questions that would arise in jurors' minds regarding Plaintiffs' counsel, Plaintiffs would then need to introduce evidence about their counsel—*i.e.*, the "lawyers" and firms allegedly driving the lawsuit. This would risk confusing the jury and would be a complete waste of the Court and jury's time.

For reasons such as these, multiple Courts of Appeal have found such evidence and argument is properly excluded from trial. For example, in *Koufakis v. Carvel*, the Second Circuit found that counsel's references during trial to his adversary's "trial counsel" were inappropriate and required remand for a new trial. 425 F.2d 892, 904 (2d Cir. 1970). Similarly, the Seventh Circuit has explained that "argument aimed at a party's counsel is improper and risks depriving the party of a fair trial." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013). Indeed, district courts routinely exclude evidence as to a plaintiff's motivation for and background in initiating the lawsuit—including that it is "lawyer driven"—as unfairly prejudicial where, as here, it is not part of the claims or defenses the jury will decide. *See, e.g.*, *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 271-73 (S.D.N.Y. 2015) (finding it "remarkabl[e]" that defendants would even oppose a motion in limine "to preclude evidence and arguments as to . . . lawyer-driven lawsuits" because "th[at] subject[] [is]

categorically irrelevant and ha[s] no place in this lawsuit," further explaining that "jury's attitudes about" counsel's "business model, role, or ethics . . . have no bearing" on liability and damages issues); *Corcoran v. CVS Pharmacy, Inc.*, 2021 WL 633809, at *2 (N.D. Cal. Feb. 18, 2021) (granting similar motion because "[c]lass actions are frequently driven by lawyers" and "[Rule 23] exists in part to address conduct where the value of recovery to an individual would not justify the cost of suit."); *Palantir Techs. Inc. v. Abramowitz*, 639 F. Supp. 3d 981, 988 (N.D. Cal. 2022) ("Motive to sue is irrelevant to any issue"); *Mukherjee v. Children's Mercy Hosp.*, 2018 WL 1569308, at *3 (W.D. Mo. Mar. 28, 2018) (granting motion in limine to prohibit defendant from "presenting evidence, argument, or making inferences about Plaintiff accessing the legal system, obtaining legal counsel, and filing … this lawsuit" and precluding defendant "from arguing or suggesting the matter is lawyer-driven"); *Allstate Ins. Co. v. Nassiri*, 2013 WL 2394116, at *5 (D. Nev. May 30, 2013) (granting motion in limine to preclude defendants from offering any evidence or argument "concerning any supposed wrongful intent or motivation of plaintiffs"); *Tallman v. Freedman Anselmo Lindberg, L.L.C.*, 2013 WL 2631754, at *3 (C.D. Ill. June 12, 2013) (granting motion *in limine* and rejecting defendant's argument that "whether Plaintiff has brought this action in bad faith or for an improper motive," including for benefit of counsel, "is relevant and impacts the veracity of Plaintiff's claim"); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2017 WL 11718344, at *2 (E.D. La. Apr. 18, 2017) (granting motion *in limine* and precluding "argument or evidence that this lawsuit . . . is lawyer-driven, fabricated or exaggerated by counsel who make money through" such suits"); *In re Urethane Antitrust Litig.,* Case No. 2:04-md-1616-JWL (D. Kan.), Dkt. 2691 at 2 (granting motion *in limine* "to Preclude Reference to How Class Plaintiffs Became Involved in the Case or to the Case Being Lawyer Driven").

There is no legitimate reason for Meta to offer commentary on this case being "lawyer driven" and the like, and the Court should prevent Meta from attempting to do so. To the extent Meta intends to dispute the veracity of Plaintiffs' claims, then Meta should do so with evidence and argument regarding the ***substance*** of Plaintiffs' claims. For example, Meta should offer evidence or argument regarding its views as to: the definition of the relevant market; Meta's power in that market; whether Meta obtained and maintained any such power through deception regarding its data privacy practices;

1    and whether Meta has used that power to harm competition and cause Plaintiffs damage. Meta should

2    not, however, be permitted to try Plaintiffs' claims by *innuendo*—*i.e.*, by asserting factual contentions

3    about what **Meta** did or did not do somehow lack merit based on the manner in which Plaintiffs came

4    to file, maintain, and prosecute this case. Meta knows this: it has itself sought an evidentiary

5    stipulation that would limit references during the trial to the parties' counsel or their conduct in this

6    litigation. That is a tacit admission that the focus of trial should be on the parties, not their counsel.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## META'S RESPONSE TO PLAINTIFFS' MIL NO. 1

2     The three individuals that remain in this case testified that they joined this litigation as a favor

3 to their lawyer friends, rather than because of any legitimate grievance with Meta. Unsurprisingly,

4 then, plaintiffs' legal filings assert harm from allegedly deceptive statements that they admit they had

5 *never heard*, via the use of free services plaintiffs concededly enjoy and continue to use. Because

6 testimony about how plaintiffs became involved in this litigation directly undermines their credibility,

7 claimed injury, and supposed damages, the motion should be denied.

8     Whether plaintiffs in fact suffered an injury or damages are central issues in this case, and

9 nothing in Rules 401, 402, or 403 precludes evidence bearing on those questions. "[E]vidence relevant

10 to disputed, material issues of fact … may include Plaintiffs' experiences, including about their

11 discovery of the harm they necessarily allege." *Rodriguez v. Google LLC*, 2025 WL 2237720, at *2

12 (N.D. Cal. Aug. 6, 2025). A defendant may thus ask a plaintiff "how she became involved in th[e]

13 case and whether she had been dissatisfied with the [at-issue] product before learning of the case,"

14 such as "in an attorney advertisement." *Id.* (quoting *Montera v. Premier Nutrition Corp.*, 2022 WL

15 1465044, at *1 (N.D. Cal. May 9, 2022)).

16     In response to such questions, the plaintiffs here testified that they *were* satisfied with Meta's

17 offerings—in fact, plaintiffs uniformly agreed that they received extensive benefits from using Meta's

18 free services. *See, e.g.*, Dkt. 805-4, Klein Tr. 161:4-11 (describing value of events functionality); Dkt.

19 805-13, Grabert Tr. (Vol. 2) 324:13-327:6 (describing "significant value" received). Indeed, one

20 plaintiff testified that she would not "know how to monetize" the value she had obtained, and that she

21 didn't "think there's a way to quantify that." Ex. 1, Kupcho Tr. 55:22-56:9.[1] Having conceded they

22 were not aware of any harm from using Meta's free services, plaintiffs then explained how they

23 actually came to be involved with this case: Kupcho was approached by her "friend[] since college,"

24 Dkt. 669-2, Kupcho Tr. 60:7-8, Grabert was recruited by "one of [her] husband's friends from high

25 school," Dkt. 669-3, Grabert Tr. (Vol. 2) 358:3-4, and Klein became a plaintiff after talking with the

26 best man at his wedding, Dkt. 669-4, Klein Tr. 306:2-3. That these relationships with plaintiffs'

27

28

---

[1] "Ex." citations reference exhibits to the Gringer Declaration filed with this document.

1    counsel drove plaintiffs' involvement in this litigation is thus probative of plaintiffs' credibility, the

2    injuries they now allege, and whether they are entitled to damages.

3        Excluding evidence of plaintiffs' motivations for filing this lawsuit would be particularly

4    inappropriate given that their testimony contradicts key aspects of their counsel's claims. For

5    example, the plaintiffs testified that they would never accept the payments their lawyers invented and

6    now seek as damages. Dkt. 925-10, Grabert Tr. (Vol. 2) 322:24-323:7 ("Q. Have you ever—would

7    you ever agree to sell personal data about yourself in exchange for monetary compensation? A. I don't

8    know what data you're talking about. Q. Any data. Any personal data about yourself, would you sell

9    it for money? A. No."); Dkt. 925-8, Klein Tr. 290:11-20 (same); Dkt. 925-11, Kupcho Tr. 234:16-19

10   ("Q. Would you ever agree to sell personal data about yourself in exchange for monetary

11   compensation? A. No."). Such discrepancies undermine plaintiffs' credibility and bear directly on

12   their injury and damages theories, and can only be explained by reference to the manner plaintiffs

13   were recruited. There is nothing prejudicial about plaintiffs being asked to explain why their asserted

14   injuries were only discovered after they were recruited to be plaintiffs in this case, and how it came

15   to be that they are asking for payments they conceded under oath they would not accept.

16       Plaintiffs' string cite of largely out-of-circuit law does not suggest otherwise. *Koufakis v.

17   Carvel*, for example, involved arguments that were "outside the record." 425 F.2d 892, 904 (2d Cir.

18   1970). In *Stollings v. Ryobi Technologies, Inc.*, the defendant raised an argument that was "not

19   relevant to any issue in dispute," suggesting that counsel had an improper motive for bringing the

20   case. 725 F.3d 753, 761 (7th Cir. 2013). And *In re Xarelto (Rivaroxaban) Products Liability

21   Litigation* similarly dealt with counsel's motivation. 2017 WL 11718344, at *2 (E.D. La. Apr. 18,

22   2017). Here, the testimony at issue concerns plaintiffs' own motivations, and the deeply contested

23   issue of whether they suffered harm or damages. Indeed, one of plaintiffs' cited cases—*Mukherjee v.

24   Children's Mercy Hospital*—specifically did not preclude defendant from "properly challenging

25   [p]laintiff's credibility" by offering evidence about "[t]he reasons why [p]laintiff made and continues

26   to make the allegations in th[e] lawsuit." 2018 WL 1569308, at *3 (W.D. Mo. Mar. 28, 2018). That

27   is precisely the kind of testimony that Meta will elicit at trial.

28       Plaintiffs' in-circuit citations are likewise inapposite. *Palantir Technologies Inc. v.*

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO

1    *Abramowitz* held only that plaintiff's "[m]otive to sue is irrelevant to any issue in *this* case." 639 F.

2    Supp. 3d 981, 988 (N.D. Cal. 2022) (emphasis added). *Allstate Insurance Co. v. Nassiri* expressly

3    permitted testimony about plaintiffs' pre-suit "investigation" and "what information plaintiffs had

4    when they decided to bring this lawsuit," so as to "not impact any of the … defendants' defenses that

5    relate to the pre-litigation investigation." 2013 WL 2394116, at *5 (D. Nev. May 30, 2013). And in

6    *Corcoran v. CVS Pharmacy, Inc.*, the court addressed whether "lawyer-driven" arguments were

7    appropriate at class certification, not the scope of permissible testimony at trial in a case being

8    litigated only by individuals. 2021 WL 633809, at *2 (N.D. Cal. Feb. 18, 2021). Plaintiffs' record

9    citations similarly concern arguments at class certification that are no longer relevant, Pls. Mot. at 4,

10   and the fact that plaintiffs are atypical and inadequate representatives is distinct from their failure to

11   credibly assert injury or damages.

12       At bottom, plaintiffs testified that they were not harmed and rejected the damages measure

13   their counsel seeks to put in front of the jury, instead explaining that they are prosecuting this suit

14   because they have close personal relationships with the lawyers who developed it. Jurors should be

15   permitted to evaluate what if any of plaintiffs' contentions are credible on that full record.

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' MIL NO. 2: PLAINTIFFS' PERSONAL AND INTIMATE LIFE DETAILS

Meta should be precluded from offering evidence or making arguments relating to subjects that are minimally, if at all, probative of the Plaintiffs' claims and that may embarrass, annoy, intimidate, or otherwise harass Plaintiffs at trial. During discovery, Meta sought highly invasive discovery from Plaintiffs bearing on their personal and intimate life details but which have minimal (if any) relevance on Plaintiffs' contentions in this case or their suitability as Plaintiffs. Such evidence or argument has no place at trial and should be excluded.

Defendants have, on multiple occasions, confronted Plaintiffs with highly personal, irrelevant, and embarrassing documents or information that have little probative value vis-a-vis the claims or defenses in this action. As one notable example, during deposition, Meta's counsel examined Plaintiff Banks Kupcho regarding her personal and private usage of adult websites like "chaturbate," "camster.com," "xvideos.com" and the like, including whether there is advertising, "interactive" content, and/or privacy policies on such sites. Banks Kupcho Tr. at 188–91. Apparently, Meta has sought to introduce similar personal evidence against plaintiffs in other litigation before this Court. *See, e.g.*, *Frasco v. Flo Health, Inc.*, Case No. 3:21-cv-00757-JD, Dkt. 674 (N.D. Cal. June 20, 2025) (request for in *limine* given Meta proffered documents for trial relating to plaintiff's "PPP loans" and "tabloid articles about [plaintiff's] sexual relationships.").

Under the Federal Rules of Evidence, admissible evidence must be relevant to the claims or defenses of the case. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Evid. 401. And even if evidence is relevant to a case, it must still be excluded if its "probative value is substantially outweighed" by a risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Meta cannot show that named Plaintiffs' intimate personal lives and details—including but not limited to their sexual history and interests—are relevant to the claims and defense of the case, or that any hypothetical relevance of such information is not substantially outweighed by unfair prejudice, harassment, and embarrassment. The only supposed "relevance" that Meta has ever offered

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO

1   for such information is that it supposedly indicates Plaintiffs "do not care" about collection and use

2   of their data. But whatever users' privacy settings on these unrelated services may be, they could just

3   as easily be a function of privacy settings being difficult to navigate or configured in a certain manner.

4   Moreover, as Plaintiffs have repeatedly explained, what matters in an antitrust case is whether ***enough***

5   users cared to a sufficient degree about the extent of a personal social network's data collection and

6   use, such that Meta's data-related deception of the market harmed competition. *See* Dkt. 793. In other

7   words, the individual Plaintiffs' preferences are ***not*** relevant. Additionally, to the extent, for example,

8   Meta's position is that Plaintiffs somehow do not care about their privacy or data because they

9   "consent" (or do not police) to collection and use of their data in connection with their use of adult

10  websites, consent for one (adult websites) does not mean consent for all (Meta). In any event, even

11  were the individual Plaintiffs' intimate and personal life details—such as their use of adult websites—

12  somehow pertinent (they are not), Meta can make the same (misguided) arguments with other, far

13  less prejudicial materials: *e.g.*, documents and questioning regarding Plaintiffs' use of, and privacy

14  settings on, other services and devices (including Twitter, YouTube, Pinterest, TikTok, Apple iOS or

15  the other scores of less inflammatory sources regarding which Meta took extensive discovery and

16  engaged in substantial questioning). *See, e.g.*, *Lee v. Lampert*, 607 F. Supp. 2d 1204 (D. Or. 2009)

17  (acknowledging "disclosure of intimate details about their private lives" may be "embarrassing" to

18  witnesses); *Borges v. City of Hollister*, 2005 WL 6019704, at *1 (N.D. Cal. Aug. 24, 2005)

19  ("Defendants shall not be permitted to introduce evidence concerning plaintiffs' 'sexual history.'").

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO

### META'S RESPONSE TO PLAINTIFFS' MIL NO. 2

Plaintiffs' assertion that Meta should be prohibited from "offering evidence or making arguments relating to subjects that are minimally, if at all, probative of the Plaintiffs' claims and that may embarrass, annoy, intimidate, or otherwise harass Plaintiffs at trial," Pls. Mot. at 10, essentially just restates Federal Rule of Evidence 403 and is so overbroad as to be meaningless. *United States v. Wolfenbarger*, 2021 WL 3212833, at *1 (N.D. Cal. July 29, 2021) (the court should not "exclude broad swaths of evidence at a high level of generality"). Motions *in limine* "must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). Plaintiffs' motion fails to meet this standard; instead, it refers generally to Meta's use of "Plaintiffs' intimate personal lives and details," and discusses an exchange from the deposition of plaintiff Kupcho "as one notable example." Pls. Mot. at 10-11. As discussed below, even this supposedly notable example is not remotely what plaintiffs suggest it to be. But given its lack of specificity, plaintiffs' request would do little to "streamline [the] trial[], by settling evidentiary disputes in advance and by minimizing side-bar conferences and other disruptions at trial." *Colton Crane*, 2010 WL 2035800, at *1. Rather than barring Meta from offering evidence or "making arguments" related to undefined categories like "Plaintiffs' intimate personal lives and details" and "subjects that are minimally, if at all, probative of the plaintiffs' claims and that may embarrass, annoy, intimidate, or otherwise harass Plaintiffs at trial," Pls. Mot. at 10, the Court should deny plaintiffs' motion and wait to rule on the admissibility of any such evidence "until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context," *Mendoza v. Intuitive Surgical, Inc.*, 2021 WL 1893083, at *1 (N.D. Cal. May 11, 2021).

To the extent the motion does raise "examples" of the categories of testimony or evidence plaintiffs seek to preclude, none warrant exclusion. The probative value of testimony and evidence of plaintiffs' online privacy preferences—*especially* on websites known to have lesser privacy protections, like pornographic sites—far outweighs any risk of prejudice. *See* Fed. R. Evid. 403.

***First***, plaintiffs cannot now object to the introduction of evidence directly relevant to the privacy preferences they assert caused the alleged deception to harm competition. All examples

1   plaintiffs identify relate to their online privacy preferences, a subject they have directly *put in*
2   *controversy* by claiming that Meta manipulated the market through representations about its privacy
3   practices. Plaintiffs argue such manipulation was enabled because "privacy and data are important to
4   [plaintiffs] and affected their use of Facebook." Dkt. 952-1, Pls. Mot. Summ. J. Opp. at 14. Allowing
5   them to object to the introduction of evidence directly relevant to the privacy preferences that *they*
6   assert caused the alleged deception to harm competition violates fundamental fairness principles and
7   would prejudice Meta's presentation to the jury.

8        Plaintiffs' case turns on the claim that social media users—including plaintiffs—decide which
9   websites to use and what information to share based on those sites' representations about "privacy."
10  *See, e.g.*, Dkt. 805, Pls. Renewed Class Cert. Mot. at 1. If plaintiffs intend to testify at trial regarding
11  the importance of Meta's representations about "privacy" to their decision to use (and continue using)
12  the platform over other competitors, as they must to satisfy the *Harcourt-Brace* factors, Federal Rule
13  of Evidence 607 permits Meta to ask questions and introduce countervailing evidence to impeach the
14  credibility of those claims. *See United States v. Castillo*, 181 F.3d 1129, 1132-1133 (9th Cir. 1999)
15  (Rule 607 allows for impeachment of witness' "errors or falsehoods" by contradiction, including
16  through introduction of "extrinsic evidence"). Questioning and evidence related to plaintiffs'
17  willingness to use other websites without concern for—or even awareness of—the privacy settings
18  on those sites, and indeed their willingness to share "intimate" personal details on those sites, is
19  directly relevant to the credibility of their claims regarding the importance of "privacy."

20       ***Second***, the particular websites that plaintiffs used without regard to privacy protections—
21  including pornographic websites—directly undermine their claims. To be clear, Meta will not
22  intimidate or harass any witness at trial, whether through irrelevant questions or any other means, as
23  Meta explained in conferring with plaintiffs' counsel. However, to the extent plaintiffs seek to exclude
24  evidence related to plaintiffs' use of non-Meta websites with notoriously poor privacy protections,
25  that material is probative of core issues: the data plaintiffs share with other websites, their sensitivities
26  about privacy, and their Facebook privacy settings. For example, plaintiff Kupcho admitted that she
27  does not check or does not know the privacy policies and settings for a variety of websites and
28  applications that she uses, including social media sites, calendar applications, and pornographic

1   websites. *See* Ex. 1, Kupcho Tr. 188:14-198:15. Notwithstanding plaintiffs' claim that the probative

2   value of this information is substantially outweighed by the risk of "unfair prejudice, harassment, and

3   embarrassment" that the materials present, evidence related to plaintiffs' use of other websites—

4   particularly adult websites—is relevant and admissible precisely *because* it shows that plaintiffs are

5   unconcerned about privacy even when sharing personal information that is significantly more

6   sensitive than what they share on Facebook, and even when using sites that are known to be less

7   secure.

8         Plaintiffs claim this evidence is not relevant to whether "*enough* users cared" about privacy

9   to affect competition, Pls. Mot. at 11, but cannot dispute that evidence regarding the privacy

10  preferences of the actual plaintiffs in this litigation—those before the jury—is probative of the

11  importance of privacy settings to all users, as well as to the specific users claiming to have been

12  harmed by Meta's privacy practices in this case. *Cf. Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d

13  633, 648 (Cal. 1994) (plaintiff claiming invasion of privacy based on "objective" expectation of

14  privacy standard "must have conducted himself or herself in a manner consistent with an actual

15  expectation of privacy"). And indeed, this is no longer a class action. What matters now is the three

16  plaintiffs before the Court and eventually the jury. Evidence that undermines their core theory of

17  liability is probative and excluding it would be unduly prejudicial to Meta.

18

19

20

21

22

23

24

25

26

27

28

1    **PLAINTIFFS' MIL NO. 3: AFFIRMATIVE DEPOSITION DESIGNATION SEQUENCE**

2          Trial in this case is likely to feature some witnesses testifying by video deposition. To afford

3    each side fair and equal latitude to present their respective cases and avoid confusion and undue

4    prejudice, Plaintiffs proposed that to the extent a party intends to affirmatively offer video testimony

5    of a witness by designation, such video testimony will be played during *that* party's case-in-chief.

6    For example, if Plaintiffs offer deposition designations for a witness and Meta then offers affirmative

7    counter-designations for that witness, then Plaintiffs' designations shall be played in Plaintiffs' case-

8    in-chief, and Meta's counter-designations shall be played in Meta's case-in-chief. Meta refused.

9          Courts have recognized, for example, a "presumption" that "the plaintiff, in a typical case,

10    should be allowed to present her case in the order she chooses." *Sensitron, Inc. v. Wallace*, 504 F.

11    Supp. 2d 1180, 1186 (D. Utah 2007). That extends to depositions, such that "a party's presentation of

12    a case ought not to be unduly interrupted or distracted" by the other side's affirmative deposition

13    designations. *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc*., 199 F.R.D. 487,

14    490 (E.D.N.Y. 2001). Indeed, requiring Plaintiffs to include in their *own* case-in-chief all of Meta's

15    affirmative designations would compromise Plaintiffs' ability to present their case as they see fit. It

16    would, for example, allow Meta to include designations on unrelated topics, confusing the import of

17    the deponent witness's testimony to Plaintiff's case-in-chief and unduly lengthening the video portion

18    of Plaintiffs' presentation. All of this could, in turn, cause the jury to lose interest and then hold that

19    against Plaintiffs, when it is Meta that is the imprimatur for playing the video testimony all at once.

20          During the parties' meet-and-confer, Meta's only justification for its refusing Plaintiffs'

21    proposal was Meta's view that "that is not how video designations are done" at trial. Facebook is

22    incorrect. Courts regularly order each parties to play their affirmative deposition designations for a

23    given witness in *their own* respective case-in-chief, except for limited counter-designations for

24    completeness. *See, e.g.*, *Blue Cross*, 199 F.R.D. at 489, 491 (ordering that "plaintiff will be permitted

25    to play the portions [of video depositions] it wishes in its case-in-chief without counter-designations"

26    and "defendants may do the same in their case after the plaintiff rests"); *see also* Fed. R. Civ. P.

27    32(a)(6) (explaining that "[i]f a party offers in evidence only part of a deposition, *an adverse party*

28    *may require the offeror to introduce other parts that in fairness should be considered* with the part

introduced, and any party may ***itself*** introduce any other parts.") (emphases added). To be clear, Plaintiffs are not seeking to preclude Meta from playing the deposition testimony it wishes to, assuming that testimony is otherwise admissible. Instead, Plaintiffs simply require that Meta be required to do so in its own case-in-chief, as is routinely done.

## META'S RESPONSE TO PLAINTIFFS' MIL NO. 3

Plaintiffs' proposal for introducing videotaped deposition testimony is premature, inconsistent with usual practice, and unhelpful to the jury. Even setting aside that the parties have not exchanged deposition designations yet—rendering concerns about "confusion" or "prejudice" entirely speculative—the claim that "[c]ourts regularly order each parties [sic] to play their affirmative deposition designations for a given witness in their own respective case-in-chief, except for limited counter-designations for completeness," is betrayed by plaintiffs' own citation. Pls. Mot. at 21 (emphasis omitted). A single out-of-circuit case from nearly 25 years ago does not demonstrate a regular practice in any jurisdiction, much less this one. *Id.* As is the (actually) typical practice and in accordance with how live testimony will be presented, the parties should play all testimony from a given witness at one time—in the order which it was given. Plaintiffs' proposal (which is not properly a motion *in limine*) will result in stilted and choppy testimony played days apart.

Playing all testimony at once promotes efficiency, prevents jury confusion, and reduces the risk that deposition testimony is treated differently than live testimony. Unsurprisingly, that is how courts across the country typically structure the playing of deposition testimony. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, 2021 WL 2350812, at *2 (N.D. Cal. Apr. 21, 2021) ("To the extent that the parties play a witness's deposition designations at trial, all portions of the testimony designated by any party will be played at the same time …. All designated testimony will be introduced in the sequence in which the testimony was originally given."); *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2829693, at *4 (S.D.N.Y. Jun. 30, 2017) (recognizing that playing both parties' deposition designations at the same time in chronological order "promote[s] efficiency"); *Microspherix LLC v. Merck Sharp & Dohme Corp.*, 2023 WL 6613306, at *11 (D.N.J. Oct. 5, 2023) (ordering that "[a]ll portions of the testimony designated by any party will be played at the same time, including the parties' affirmative designations and counter-designations. All designated testimony will be introduced in the sequence in which the testimony was originally given.").

This Court's regular practice of ordering that live witnesses testify only once is also instructive, and recognizes that the jury benefits from having all testimony from an individual presented at the same time. *See, e.g.*, Pretrial Order at 6, *In re Google Play Store Antitrust Litig.*,

1   Case No. 3:21-md-02981-JD (N.D. Cal. Oct. 20, 2023) (Donato, J.), Dkt. 700 ("Witnesses will be

2   put on the witness stand only once."); Pretrial Order at 3, *Frasco v. Flo Health, Inc.*, Case No. 3:21-

3   cv-00757-JD (N.D. Cal. June 27, 2025) (Donato, J.), Dkt. 692 (same). Chopping up testimony

4   compromises the jury's ability to weigh a witness's credibility across the entirety of their testimony

5   and needlessly necessitates reintroducing witnesses to provide context. Permitting deposition

6   testimony to be introduced in parts while having live witnesses testify once also risks confusing the

7   jury as to why witnesses testifying by deposition are being treated differently—a concern that is

8   particularly acute in this case, which involves numerous Meta employees and nonparties outside of

9   the Court's subpoena power.

10         The principle of completeness confirms that all testimony should be given together. The

11  Rules of Civil Procedure state that after a party has offered part of a deposition into evidence, the

12  opposing party "may require the offeror to introduce other parts that in fairness should be considered

13  with the part introduced, and any party may itself introduce any other parts." Fed. R. Civ. P. 32(a)(6);

14  *see Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 2001981, at *10 (N.D. Cal. May 11, 2017) ("To

15  the extent the rule of completeness requires the parties to play designated and counter-designated

16  deposition videos simultaneously, the parties are ordered to do so."); 8A Charles Alan Wright &

17  Arthur R. Miller, Federal Practice & Procedure §2148 (3d ed. 1998 & Jun. 2024 update) (under Rule

18  32(a)(6), introducing both parties' designations at the same time avoids the "danger" that the

19  testimony "will be misinterpreted by selective use of portions … out of context or with qualifications

20  … omitted."). Rule of Evidence 106 similarly states that, "[i]f a party introduces all or part of a

21  statement, an adverse party may require the introduction, at that time, of any other part—or any

22  other statement—that in fairness ought to be considered at the same time." Specific application of

23  the completeness rules remains premature (like plaintiffs' motion) but the principle again favors

24  treating deposition testimony the same way as live witnesses. At minimum, Meta's counter-

25  designations must be played at the same time pursuant to Rule 106; given that, it is most helpful to

26  the jury and efficient for the trial proceeding for Meta's own affirmative designations (and plaintiffs'

27  counters) to be played at the same time.

28         Taken together, playing depositions a single time would permit the jury to "hear from each

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO

witness only once," and obviate the "need to remind the jury who the witness is, or replay what the jury heard before." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 6248266, at *4 (N.D. Ill. Sept. 19, 2023). Plaintiffs' contrary approach would require "refreshers [that] would take time," and "test the jury's ability to remember what the witness has said before." *Id.* at *3. On the other side of the ledger rests only plaintiffs' speculation. The Court should deny the motion.

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO

1    DATED: September 11, 2025

2    By: /s/ Shana E. Scarlett                          By: /s/ Kevin Y. Teruya
     **HAGENS BERMAN SOBOL SHAPIRO LLP**            **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
3    Shana E. Scarlett (Bar No. 217895)             Kevin Y. Teruya (Bar No. 235916)
      shanas@hbsslaw.com                             kevinteruya@quinnemanuel.com
4    715 Hearst Avenue, Suite 202                   Adam B. Wolfson (Bar No. 262125)
     Berkeley, CA 94710                              adamwolfson@quinnemanuel.com
5    (510) 725-3000                                 Scott L. Watson (Bar No. 219147)
                                                     scottwatson@quinnemanuel.com
6    Steve W. Berman (admitted *pro hac vice*)      Claire D. Hausman (Bar No. 282091)
      steve@hbsslaw.com                              clairehausman@quinnemanuel.com
7    1301 Second Avenue, Suite 2000                 Brantley I. Pepperman (Bar No. 322057)
     Seattle, WA 98101                               brantleypepperman@quinnemanuel.com
8    (206) 623-7292                                 865 South Figueroa Street, 10th Floor
                                                    Los Angeles, CA 90017-2543
9                                                   (213) 443-3000

10   **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
     W. Joseph Bruckner (admitted *pro hac           Michelle Schmit (admitted *pro hac vice*)
11   vice*)                                           michelleschmit@quinnemanuel.com
      wjbruckner@locklaw.com                         191 N. Wacker Drive, Suite 2700
     Robert K. Shelquist (admitted *pro hac          Chicago, IL 60606-1881
12   vice*)                                          (312) 705-7400
      rkshelquist@locklaw.com
13   Brian D. Clark (admitted *pro hac vice*)        Manisha M. Sheth (admitted *pro hac vice*)
      bdclark@locklaw.com                            manishasheth@quinnemanuel.com
14   Laura M. Matson (admitted *pro hac vice*)       295 5th Avenue, 9th Floor
      lmmatson@locklaw.com                           New York, New York 10016
15   100 Washington Avenue South, Suite             (212) 849-7000
     2200
16   Minneapolis, MN 55401
     (612) 339-6900
17
     Kyle Pozan (admitted *pro hac vice*)
18    kjpozan@locklaw.com
     1165 N Clark Street, Suite 700
19   Chicago, IL 60610
     (312) 470-4333
20

21                    *Attorneys for Plaintiffs Maximilian Klein,*
                      *Rachel Banks Kupcho, and Sarah Grabert*
22

23

24

25

26

27

28

DATED: September 11, 2025

By: /s/ Sonal N. Mehta
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
Sonal N. Mehta (SBN 222086)
 Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

David Z. Gringer (*pro hac vice*)
 David.Gringer@wilmerhale.com
Paul Vanderslice (*pro hac vice*)
 Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

Molly M. Jennings (pro hac vice)
 Molly.Jennings@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Meta Platforms, Inc.*

## <u>ATTESTATION OF KEVIN Y. TERUYA</u>

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 11, 2025          By   /s/ Kevin Y. Teruya
                                          Kevin Y. Teruya

PLAINTIFFS' OMNIBUS MOTION IN LIMINE AND META'S RESPONSES THERETO