1 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
  shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

*Attorneys for Plaintiffs Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho*

[additional counsel information listed on the signature page]

**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Meta Platforms, Inc.*

[additional counsel information listed on the signature page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., a Delaware Corporation, <br><br> Defendant. | Case No. 3:20-cv-08570-JD <br><br> **JOINT PRETRIAL STATEMENT** <br><br> Judge: Hon. James Donato <br><br> Date: September 25, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 11 |

In accordance with Paragraph 3 of this Court's Standing Order for Civil Jury Trials, the Parties hereby submit this Joint Pretrial Statement. Pending before the Court are:

- Meta's Motion for Summary Judgment (Dkt. 926)
- Meta's Motions to Exclude Plaintiffs' Experts, Nicholas Economides, Joseph Farrell, and Sarah Lamdan, (Dkts. 928, 930, 932)
- Plaintiffs' Motions to Exclude Meta's Experts, Dennis Carlton and John List (Dkts. 934, 936)
- Plaintiffs' Proffer of Sarah Lamdan (Dkt. 820-1) and Meta's corresponding Conditional Proffer of Anindya Ghose (Dkt. 822).

Resolution of these motions may affect the nature and scope of the issues to be tried. The Parties do not intend to waive any rights or arguments by submitting this Joint Pretrial Statement.[1]

I.  **SUBSTANCE OF THE ACTION**

This litigation involves claims brought by individual users of Meta's service, Facebook. Plaintiffs bring their claims against Meta under Section 2 of the Sherman Act (15 U.S.C. § 2 *et seq.*). Plaintiffs seek damages, injunctive relief, and/or other equitable relief.

A.  **The Parties**

The Plaintiffs are: Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho.

The Defendant is Meta Platforms, Inc.

B.  **Plaintiff's Statement Regarding the Substance of Their Claims**

Plaintiffs assert two causes of action under Section 2 of the Sherman Act: (1) monopolization (Count I); and (2) attempted monopolization (Count II).

Plaintiffs contend that Facebook maintained a monopoly in the Personal Social Networking Services (PSN or PSNS) Market by deceiving the market about its data and privacy practices. Plaintiffs assert that privacy and data are important dimensions of competition and that Facebook's deception on those very subjects destroyed competition from rivals like Myspace, Google+, MeWe, and Snapchat. In a *but-for* world where Facebook competed fairly, consumers would enjoy

---

[1] The Parties reserve all rights, including to modify positions in this Joint Pretrial Statement and remove any Parties or claims and defenses, as necessary, including after any of the pending motions are decided.

1  more personal social networks to choose from, better data practices and other service quality from
2  those networks, and a competitive level of compensation—either monetary or in-kind—for the
3  data they provide. Facebook's deception prevented that world from coming into being, causing
4  classic antitrust injury and damages.

    C. **Meta's Statement Regarding the Substance of Plaintiffs' Claims and Meta's Defenses**

7  The only claim properly before the Court is Plaintiffs' monopoly maintenance claim. Plaintiffs have abandoned their monopoly acquisition and attempted monopolization claims, and explained that their only theory is that Meta unlawfully maintained an alleged monopoly. Dkt. 952-1 at 21 ("Consumers' damages claims are based on Facebook's monopoly *maintenance* between December 2016 and December 2020."). Section 2 of the Sherman Act does not permit "attempted monopoly maintenance" claims.

Either way, Plaintiffs will not sustain their claims at trial, for at least four reasons.

*First*, Plaintiffs will not be able to demonstrate a valid antitrust product market in which Meta has monopoly power. Meta offers its hundreds of millions of United States users valued features and engaging content in competition against numerous other online platforms. It provides these services for free—and always has—because it runs a multi-sided business model where it must offer a high-quality user experience to compete for user engagement that it can monetize by selling advertising. Meta's fiercest competitors for that engagement (including, e.g., TikTok, and YouTube) use the same business model. Meta's users come to its Family of Apps, like Facebook and Instagram, because of its content; Meta is incentivized to continually innovate to improve that experience because if it did not, users would readily switch to TikTok, YouTube, and other places where they can get a similar experience and find the same content. Users of these "social apps" are not interested in making money, they are looking to be entertained or to pass the time. Paying users would not keep users from switching to Meta's rivals and would distort users' incentives to join the platform; unengaged users motivated only by payments would lead to a worsened user experience and the potential unraveling of the platform altogether.

Plaintiffs' alleged "personal social networking services" market—which is the only market they have proposed, and thus the market they must prove—fails to include social apps, like TikTok, YouTube, iMessage, and others, from which Meta faces intense competition. For example, videos from a variety of sources and content producers are shared, posted, and viewed on Facebook; those same videos can be (and are) shared, posted, and viewed on X (formerly Twitter), YouTube, Snapchat, and TikTok, as well as other online platforms.  Meta has continuously innovated and diversified its product offerings over the years with entertaining and informative content and features to compete with these similar social apps.  Unsurprisingly, Plaintiffs' experts are unable to define the contours of a coherent market for personal social networking services ("PSNS") that relies on friends and family sharing, because, among other reasons, Meta's features and services have evolved and innovated to focus primarily on unconnected sharing, most prominently video content, to remain competitive with emerging apps.  Meta's experts confirm the PSNS market defined by Plaintiffs is contradicted by economic realities.  Multiple large-scale studies demonstrate that when users reduce engagement on Facebook and Instagram, they divert their time and attention to applications outside of the proposed PSNS market, including largely to YouTube and TikTok.  Thus, Plaintiffs' narrow "PSNS" market fails to reflect the commercial reality that Meta faces close competition from YouTube and TikTok among many other social apps; in a properly defined market, it is obvious that Meta is not a monopolist.

**Second**, Plaintiffs will also not be able to demonstrate that Meta unlawfully monopolized their alleged PSNS market in the United States.  Plaintiffs' sole theory of exclusionary conduct rests on alleged deception. As Plaintiffs have previously admitted, "[t]he test that applies to the case that the [Plaintiffs] have brought … is under a Ninth Circuit [case] called *Harcourt Brace*." Dkt. 788, Apr. 18, 2024 Hr'g Tr. 9:10-18. The Ninth Circuit explained in *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, that Plaintiffs must show "*all* six" of the following factors are met with respect to allegedly deceptive conduct to overcome a presumption that it had a "de minimis" effect on competition: "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of

1  neutralization or other offset by rivals." 108 F.3d 1147, 1152 (9th Cir. 1997). If Plaintiffs overcome
2  this presumption, they must further show that the alleged deception had "a significant and enduring
3  adverse impact on competition itself in the relevant market[.]" *Id.* Plaintiffs cannot do so.

4        Meta has never deceived users about its data collection practices. Meta and other social
5  apps access user data with users' consent to improve their product offerings. Meta has disclosed
6  its privacy policies and data collection practices in its privacy and data use policies. And none of
7  Meta's statements had anything to do with users' decisions to choose Meta's platforms over its
8  rivals. The individual plaintiffs admitted that such representations did not play a role in their
9  decisions to use Meta's services. Nor are Plaintiffs able to connect any of the supposed statements
10 or omissions to any harm to competition. Rather, Meta's success was earned on the merits, as
11 Plaintiff's expert concedes. Early rivals, like Myspace and Google+, failed because they offered
12 inferior services, not because of Meta's privacy representations. As new competition has emerged,
13 Meta has vigorously competed through innovation, not via misrepresentations about its data use.
14 As Plaintiffs' expert Ms. Lamdan candidly explained, people do not use Facebook because of its
15 statements about its privacy and data use practices.

16       ***Third***, Plaintiffs' theory of injury is, if anything, even more specious. Meta has never paid
17 users to use its services; nor has any other social platform that features user-generated content.
18 Plaintiffs' contention that Meta would have paid them to use Facebook—the sole theory of injury
19 upon which Plaintiffs' claims have been based for the nearly five-year course of this litigation—
20 is "nothing more than a fanciful application of economic theory untethered to real-world evidence"
21 about how such applications operate. Dkt. 905 at 8. Plaintiffs and their experts have identified no
22 firm (let alone any social app) that pays all of its users for consuming user-generated content
23 online. And while never raising its prices above zero, output has surged not only within Meta's
24 features but also among new firms that have emerged and grown. TikTok, YouTube, Snapchat,
25 and others have all grown, adding new features that constrain competition for user time and
26 attention and which Meta responded to through its own innovations, such as the introduction of
27 Reels and its recommendation systems. Plainly, Plaintiffs were not injured because Meta (or
28 anyone else) would not have developed the payment scheme that Plaintiffs propose.

1    Plaintiffs will also not be able to demonstrate antitrust injury as a matter of fact or law. Meta has never charged any price, let alone a supracompetitive price, for its services. Plaintiffs cannot substantiate their implausible theory that Meta would pay all its users to use its services. Nor can Plaintiffs establish that a failure to pay users was caused by any alleged deception; there is no direct—or even close—link between the challenged statements and any harm to Plaintiffs or adverse impact on Meta's competitors or competition more broadly. Plaintiffs' last-minute alternative theory, that the challenged conduct deprived them of a "better" version of Facebook, was invented only after this Court granted Meta's motion to exclude the injury-related testimony of Professor Economides and denied class certification. Plaintiffs should not be allowed to pursue this theory at trial, which in any event is not supported by any evidence. Plaintiffs therefore not only cannot prove their claims on the merits, they are also not entitled to damages. And for the same reasons Plaintiffs cannot demonstrate that they suffered an antitrust injury, they cannot show that they face the impending threat of such an injury. For that reason, and because Plaintiffs cannot show that Meta currently possesses monopoly power, Plaintiffs are not entitled to any injunctive relief.

*Finally*, even if Plaintiffs could overcome all those substantive defects in the Section 2 claims here, those claims are untimely. Plaintiffs filed their lawsuit in 2020—***fourteen years*** after the alleged "uniform and prolonged deception regarding [Meta's] data collection and use practices" supposedly began in 2006. Dkt. 648 at 1. Plaintiffs acknowledge that their claims are facially untimely and so rely on the continuing-violation doctrine to claim entitlement to damages arising out of Meta's conduct from December 3, 2016 through December 3, 2020. Dkt. 952-1 at 21-25. But Plaintiffs have not identified any allegedly deceptive conduct that caused them a new injury that was not merely a reaffirmation of the supposed injury that Plaintiffs allege they suffered before the limitations period, nor will they be able to prove the existence of any such conduct at trial.

## II.    REQUESTED RELIEF

### A.    Plaintiffs' Requested Relief

Plaintiffs seek the following relief:

1     •    Judgment for Plaintiffs and against Facebook on Plaintiffs' claims for monopolization (Count I) and attempted monopolization (Count II).

    •    Compensatory damages (approximately $240.00 per Plaintiff), subject to trebling.

    •    An award of attorneys' fees, costs, and expenses.

    •    An injunction prohibiting Facebook's anticompetitive and unfair conduct and mandating that Facebook take all necessary steps to cease such conduct and restore competition in the personal social network market.

    •    Any further relief that the Court may deem just and fair.

### B. Meta's Requested Relief

A judgment for Meta on all of Plaintiffs' claims.

## III. UNDISPUTED FACTS

The parties continue to meet and confer regarding any facts to which the parties will stipulate for incorporation into the trial record without the necessity of supporting testimony or exhibits.

### A. Parties

1. Defendant, Meta Platforms, Inc., is a Delaware corporation with its principal place of business located at 1 Hacker Way, Menlo Park, California. Meta was founded as Facebook, Inc. in 2004 by Mark Zuckerberg. In October 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

2. Plaintiff Maximilian Klein is a natural person and citizen of the State of New York.

3. Plaintiff Sarah Grabert is a natural person and citizen of the State of Illinois.

4. Plaintiff Rachel Banks Kupcho is a natural person and a citizen of the State of Minnesota.

### B. Stipulated Facts Regarding the Parties' Claims

5. Meta operates a Family of Apps, including Facebook, Instagram, Messenger, and WhatsApp that are offered to users, including in the U.S.

6. The Facebook website was launched in 2004.

7. In 2008, the Facebook app for iOS was launched, with the app for the Android

mobile operating systems launched a year later, in 2009. An "app" is a software program that runs on a mobile device and adds specific functionalities and features to a mobile device.

8. Meta acquired Instagram and the Instagram app in 2012.

9. Plaintiff Klein has had a Facebook account since at least 2006 and an Instagram account since 2016.

10. Plaintiff Grabert has had a Facebook account since at least 2007 and an Instagram account since at least 2010.

11. Plaintiff Banks Kupcho has had a Facebook account since at least 2008. Plaintiff Banks Kupcho also has an Instagram account.

IV.  **DISPUTED FACTUAL ISSUES**

1. Whether there is a relevant market for "personal social networking services" (PSNS) in the United States.

2. Whether Meta possesses monopoly power in a relevant antitrust market.

3. Whether Meta deceived Plaintiffs regarding its privacy practices.

4. Whether Plaintiffs must demonstrate, and whether each of Meta's allegedly deceptive statements, omissions, and practices was clearly false, clearly material, clearly likely to induce reasonable reliance, made to users without knowledge of the subject matter, continued for prolonged periods, and not readily susceptible of neutralization or other offset by rivals, and if so whether each had a significant an enduring adverse impact on competition itself in the alleged relevant market.

5. Whether Meta willfully acquired or maintained monopoly power in a PSNS market in the United States by engaging in anticompetitive conduct.

6. Whether Plaintiffs suffered an antitrust injury.

7. Whether Meta had a specific intent to achieve monopoly power in a PSNS market in the United States.

8. Whether there was a dangerous possibility that Meta would achieve its goal of monopoly power in a PSNS market in the United States.

9. Whether the alleged anticompetitive conduct resulted in procompetitive benefits.

1    10.    If the alleged anticompetitive conduct resulted in procompetitive benefits, whether there was a substantially less restrictive alternative available.

11.    Whether any competitive harms on balance substantially outweigh the procompetitive benefits.

12.    Whether Plaintiffs' claims are time barred.

13.    Whether Plaintiffs are entitled to damages.

14.    Whether Plaintiffs are entitled to any form of equitable relief.

15.    Whether Plaintiffs are entitled to any form of injunctive relief.

## V.    DISPUTED LEGAL ISSUES

The Parties incorporate by reference the disputed legal issues raised in their respective briefs filed in connection with Meta's pending motion for summary judgment. Dkt. 926.

1.    The applicable legal standard for evaluating whether Meta's allegedly deceptive statements and omissions were anticompetitive.

2.    Whether plaintiffs have established a relevant market for personal social networking services in the United States.

3.    Whether, if a relevant market for personal social networking services in the United States is cognizable, Meta has monopoly power in that market.

4.    Whether Meta caused antitrust injury to the plaintiffs.

5.    Whether the evidence establishes entitlement to any form of equitable relief.

6.    Whether the evidence establishes entitlement to any form of damages, including whether individuals may recover monetary damages under the antitrust laws.

7.    Whether the evidence establishes entitlement to any form of injunctive relief including whether the doctrine of laches bars plaintiffs' claims for injunctive relief.

8.    Whether plaintiffs' claims are timely under the four-year limitations period in 15 U.S.C. § 15b.

## VI.    STIPULATIONS

The Parties stipulate that:

1.    The parties shall be precluded from introducing evidence, testimony, or

1  argument—or attempting to elicit testimony—concerning discovery disputes dispositive motion practice, or dismissed class allegations. Plaintiffs will only pursue claims at trial based on Meta's alleged anticompetitive deception, and will not pursue the "Copy, Acquire, Kill" theory dismissed without prejudice in Dkt. 214..

2. The parties shall be precluded from introducing evidence, testimony, or argument—or attempting to elicit testimony—that raises, references, suggests, or refers to religious or political beliefs or interests, race, ethnicity, gender, national origin, sexual orientation or practices, or health (including but not limited to vaccination status) of a party to this litigation (including any employees, directors, or agents of a party to this litigation), witness, expert, attorney, or law firm.

3. The parties shall be precluded from introducing evidence, testimony, or argument—or attempting to elicit testimony—regarding the size of the parties' law firms, the clients of those law firms, or the number of attorneys representing the parties.

4. The parties shall be precluded from introducing evidence, testimony, or argument—or attempting to elicit testimony—referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

5. The parties shall be precluded from introducing evidence, testimony, or argument—or attempting to elicit testimony—concerning any individual's personal wealth or compensation. This stipulation does not preclude questioning about whether Meta witnesses own stock in Meta for the limited purpose of establishing potential bias.

6. The parties shall abide by the terms of the previously agreed upon proposed evidentiary stipulation at Dkt. 540, in which they agreed:

> 1) Except as otherwise provided in paragraphs 3, 4, and 5 below, the Parties agree that, for the purposes of Rule 901 of the Federal Rules of Evidence, they will not object on authenticity grounds to any document or thing produced from the files of a Party bearing such Party's Bates numbers and produced in response to another Party's discovery requests in this litigation, including such documents originally produced from that Party's files to

1    the Federal Trade Commission or other governmental authorities.

2        2) Except as otherwise provided in paragraphs 3, 4, and 5 below, the Parties agree
3    that, for the purposes of Rule 901 of the Federal Rules of Evidence, they will not object on
4    authenticity grounds to any document or thing produced from the files of a Non-Party in
5    this litigation.

6        3) The agreements in Paragraphs 1 and 2 do not apply to handwritten notes or
7    documents. If a document or thing produced by a Party bears handwritten notes, the Parties'
8    agreement does not apply to the handwritten portion of the document but does apply to the
9    remainder of the document or thing.

10       4) If a Party has a good-faith belief based upon evidence that a document or thing
11   listed on another Party's exhibit list is not what it purports to be, or that a specific document
12   includes pages that are not part of the document, the Party shall advise the other side of
13   that challenge after receipt of the other side's proposed exhibit list for trial. The Parties will
14   negotiate in good faith to resolve such an objection. In the event that a good-faith dispute
15   arises regarding the authenticity of a document or thing, the Parties agree to meet and
16   confer in good faith promptly about the authenticity of such document(s) and thing(s), and,
17   if necessary, to expedite any related motions for resolution by the Court. In the event that
18   a good-faith dispute arises, the Parties agree that they will not object to reasonable, good-
19   faith efforts to establish authenticity of contested documents on the basis of timeliness.

20       5) Nothing in this Stipulation establishes the admissibility of any document nor
21   shall it be taken to mean that any Party has accepted any characterization other than those
22   to which the parties have specifically stipulated. The Parties hereby expressly reserve the
23   right to object to the admissibility of any document or thing under any grounds permitted
24   by law and not expressly addressed herein.

25   7.   The parties shall abide by the terms of the previously agreed upon proposed
26   evidentiary stipulation at Dkt. 541, in which they agreed:

27       1) Except as otherwise provided in paragraphs 2, 3, and 4 below, the Parties agree
28   that they will not object to the admissibility of any documents produced in this litigation

by a Party or Non-Party to this action on the basis that those documents do not qualify as business records within the meaning of Rule 803(6) of the Federal Rules of Evidence unless the Party opposing admission of such a document into evidence shows that it does not satisfy the criteria of Rule 803(6).

2) Embedded hearsay, or hearsay within hearsay, contained in a document that qualifies as a business record pursuant to this Stipulation must separately satisfy an exception to the hearsay rule in order to be admissible into evidence, as provided in Rule 805 of the Federal Rules of Evidence.

3) If a Party has a good-faith belief based upon evidence that a document listed on another Party's exhibit list does not satisfy the criteria of Rule 803(6), the Party shall advise the other side of that challenge after receipt of the other side's proposed exhibit list for trial. The Parties will negotiate in good faith to resolve such an objection. In the event that a good-faith dispute arises regarding whether a document qualifies as a business record, the Parties agree to meet and confer in good faith promptly about such document(s), and, if necessary, to expedite any related motions for resolution by the Court. In the event that a good-faith dispute arises, the Parties agree that they will not object to reasonable, good-faith efforts to establish whether a contested document qualifies as a business record on the basis of timeliness.

4) Nothing in this Stipulation establishes the ultimate admissibility of any document apart from the Rule 803(6) hearsay rule exception, nor shall it be taken to mean that any Party accepts any characterization of a document other than that to which the parties have specifically agreed in this Stipulation. The Parties hereby expressly reserve the right to object to the admissibility of any document under any grounds permitted by law and not expressly addressed herein.

8. Except for expert witnesses, a designated corporate representative of Meta, and plaintiffs, witnesses will be excluded from the courtroom during trial until they are called and excused.

9. The parties will not present evidence or arguments pertaining to plaintiffs'

representation agreements with counsel or as to counsel's potential compensation, such as that compensation for plaintiffs' counsel may be based on a contingent-fee arrangement and/or that plaintiffs' counsel may advance fees and costs for the litigation.

10. The parties will not make references to, or present evidence of, the ability of plaintiffs to seek treble damages, attorneys' fees, and costs under the Clayton Act.

## VII. BIFURCATION

The Parties agree that the damages claims of all Plaintiffs should be tried to the jury together with issues of liability, and that the timing and format of any trial, hearing, or other proceeding on equitable relief (if any such proceeding is necessary) should be decided after the jury trial concludes.

## VIII. SETTLEMENT

The Parties have not reached any agreements to settle any of the claims in this case.

## IX. ESTIMATE OF TRIAL LENGTH

### A. Trial Length

#### 1. Joint Statement

The Parties agree that these time limits will include all components of each side's presentation, witness examinations, and the presentation of deposition or written discovery designations to the jury.

#### 2. Plaintiffs' Position

Plaintiffs estimate a trial will take approximately 40 hours per side (for a total of 80 hours).

Meta's proposed trial length is unrealistic given the realities of an antitrust case, including the potential need to define a market and show injury to that market through Facebook's deception over its data and privacy practices.

Facebook itself seems to agree about the complexity of this case, as it has included 1,864 exhibits on its exhibits list as relevant to the "Defense to Plaintiffs' claims"; lists **65 separate individuals** as sponsoring witnesses for these exhibits (although it neglects to include the vast majority of these on its witness list); and estimates that it will need 31 hours just to examine witnesses called by Plaintiffs.

            3.      Meta's Position

Meta recommends a trial length of 10 trial days or 50 total hours, inclusive of the parties' opening and closing statements.

Plaintiffs' proposal for 80 hours of total trial time exceeds the needs of this case and reflects a failure by Plaintiffs to make reasonable efforts to try this case efficiently, as this Court's standing order for civil trials instructs the parties to do. This is confirmed by Plaintiffs' witness list, which unreasonably names **56** potential witnesses—including 17 non-party witnesses and nearly every Meta fact witness Plaintiffs deposed. This is clearly improper given the case's narrow scope.

Plaintiffs' justification for the excessive trial duration they propose is conclusory and simply recites certain facts Plaintiffs must prove (and inaccurately so at that—Plaintiffs *must* define a valid relevant market, that is not merely a "potential" requirement). Plaintiffs' complaints about the number of sponsoring witnesses on Meta's exhibit list and time estimates for questioning of Plaintiffs' witnesses prove Meta's point. Plaintiffs listed an excessive number of witnesses, the vast majority of which are not on Meta's appropriately tailored witness list. Obviously, if Plaintiffs narrowed their witness list, the number of witnesses who could sponsor exhibits into evidence would decrease. And the amount of time it would take to complete examinations of all the witnesses on Plaintiffs' list merely confirms that Plaintiffs' plan to call 56 witnesses in a case about a $720 damages claim is unrealistic and unworkable.

Meta has proposed procedures to Plaintiffs to ensure an efficient trial concerning, among other things, the exchange of narrowed witness lists closer in time to trial and the disclosure of exhibits parties intend to use with a witness in advance of testimony to resolve evidentiary objections. Plaintiffs have refused to engage with this proposal and even refused to include Meta's proposal in this filing. Meta respectfully requests the opportunity to discuss these proposed procedures and other ways to streamline the trial with the Court at the pretrial conference.

    B.      **Allocation of Trial Time**

The Parties agree that trial time will be evenly divided between the Plaintiffs and Meta. Trial time shall be kept pursuant to the procedures set forth in Paragraph 34 of the Court's Standing Order for Civil Jury Trials.

## X. JUROR QUESTIONNAIRE

The parties are discussing potential suggested questions to be included in the "Case Specific Questions" section of the Juror Questionnaire and wish to discuss the process for submission and consideration of such questions with the Court at the pre-trial conference.

DATED: September 11, 2025

By: */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
 shanas@hbsslaw.com
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

Steve W. Berman (*pro hac vice*)
 steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. Joseph Bruckner (*pro hac vice*)
 wjbruckner@locklaw.com
Robert K. Shelquist (*pro hac vice*)
 rkshelquist@locklaw.com
Brian D. Clark (*pro hac vice*)
 bdclark@locklaw.com
Rebecca A. Peterson (Bar No. 241858)
 rapeterson@locklaw.com
Arielle S. Wagner (*pro hac vice*)
 aswagner@locklaw.com
Kyle J. Pozan (*pro hac vice*)
 kjpozan@locklaw.com
Laura M. Matson (*pro hac vice*)
 lmmatson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Respectfully submitted,

By: */s/ Kevin Y. Teruya*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

Michelle Schmit (*pro hac vice*)
 michelleschmit@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606-1881
Telephone: (312) 705-7400

Manisha M. Sheth (*pro hac vice*)
 manishasheth@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Attorneys for Plaintiffs Maximilian Klein, Sarah Grabert, and Rachel Banks Kupcho*

By: */s/ Sonal N. Mehta*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (Bar No. 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 858-6000

DAVID Z. GRINGER (*pro hac vice*)
  David.Gringer@wilmerhale.com
ALEX W. MILLER (*pro hac vice*)
  Alex.Miller@wilmerhale.com
PAUL VANDERSLICE (*pro hac vice*)
  Paul.Vanderslice@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800

MOLLY M. JENNINGS (*pro hac vice*)
  Molly.Jennings@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant Meta Platforms, Inc.*

**ATTESTATION OF SHANA E. SCARLETT**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Shana E. Scarlett. By his signature, Ms. Scarlett attests that she has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 11, 2025         By:   */s/ Shana E. Scarlett*
                                                Shana E. Scarlett