**HAGENS BERMAN SOBOL SHAPIRO LLP**
Shana E. Scarlett (Bar No. 217895)
shanas@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

*Attorneys for Plaintiffs Maximilian Klein,
Rachel Banks Kupcho, and Sarah Grabert*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAXIMILIAN KLEIN, et al., | Consolidated Case No. 3:20-cv-08570-JD |
| Plaintiffs, | **PLAINTIFFS' TRIAL BRIEF** |
| vs. | The Hon. James Donato |
| META PLATFORMS, INC., | Pretrial Conference: September 25, 2025<br>Trial: November 17, 2025 |
| Defendant. | |
| This Document Relates To: All Consumer Actions | |

## I. INTRODUCTION

Meta is a monopolist that illegally maintained a monopoly in the Personal Social Networking Services Market by repeatedly deceiving the market about its collection and use of consumers' data. Meta falsely claimed its supposed "focus" on users' privacy differentiated its social network from competitors, destroying competition from rivals like Myspace, Google+, MeWe, and Snapchat. The motive behind Meta's continued deception is clear: profit. Meta's business model monetizes user data by selling targeted advertising derived from that data. The more data it collects and uses, the more money it makes. As the dominant provider of social networking services in the United States, Meta rakes in advertising dollars at a profit margin far beyond other would-be competitors, all on the backs of its users and their data. To gain user trust sufficient to defeat its competitors and allow it to extract the type of detailed data necessary to sell targeted advertising, Meta misrepresented and obfuscated its data collection and use practices. To end Meta's ongoing monopoly, Plaintiffs brought this lawsuit on their own behalf and sought to serve as representatives of a class of Meta Consumers. After the Court denied class certification, Plaintiffs continued with their lawsuit in their personal capacity.

Plaintiffs will prove at trial that Meta attempted to and does wield monopoly power in the Personal Social Networking Services Market, acquired and maintained its monopoly power by deception, and that Plaintiffs were injured by Meta's anticompetitive deception, including because Meta's unlawful conduct prevented Plaintiffs from enjoying more personal social networks to choose from, better data practices and other service quality from those networks, and a competitive level of compensation—either monetary or in-kind—for the data they provide.

As a result of its anticompetitive acts, Meta has not faced meaningful competition and its share of the relevant market has exceeded 78 percent. Pursuant to Section 2 of the Sherman Act, Plaintiffs seek damages and injunctive relief. The evidence at trial will show that Plaintiffs are entitled to relief on their claims.

## II. PLAINTIFFS' CLAIMS

Plaintiffs assert the following two claims against Meta: (i) monopolization (Count I); and (ii) attempted monopolization (Count II).

### A. Monopolization, Sherman Antitrust Act, Section 2

Section 2 prohibits persons from "monopoliz[ing], or attempt[ing] to monopolize, or combin[ing] or conspir[ing] with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. A claim for unlawful monopolization requires that a plaintiff show: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 989-90 (9th Cir. 2020) (quotation marks omitted). Plaintiffs will establish each of these elements at trial.

*First*, Plaintiffs will establish that the relevant market is Personal Social Networking Services in the United States and that Meta possesses monopoly power in that market. "The relevant market is the field in which meaningful competition is said to exist." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"). The jury will hear reams of lay evidence from Meta and non-parties confirming as much, as well as expert analysis from Plaintiffs' relevant market expert, Professor Farrell. *See, e.g.*, Dkt. 952-1 at 3–4 (collecting evidence).

Plaintiffs will also establish Plaintiffs' monopoly power at trial. "Monopoly power is 'the power to control prices or exclude competition.'" *Kodak*, 125 F.3d at 1202 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)). It can be shown in two ways: (a) through "direct evidence"' or (b) by circumstantial evidence, such as defining the market and calculating Meta's share in it. *Id.*

Here, there is overwhelming evidence of both. Without materially losing market share, Meta has, for example, been able to raise the effective price (by providing less value for users' data than robust competition Meta destroyed would require) and suppress quality (by offering inferior data collection and use practices, as is made clear by events like Cambridge Analytica, which the jury will hear about). *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 2025 WL 2573045, at *7 (9th Cir. Sept. 5, 2025) (increased prices . . . *or* decreased quality" can serve as direct evidence of monopoly power). And as to indirect evidence, the jury will hear evidence that Meta's market share in PSNS (through operation of Facebook and Instagram) was at least 78% during the limitations period, well above the legal threshold. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995)

("market share below 50 percent is insufficient"); *CoStar*, 2025 WL 2573045, at *8 (recognizing that market share of at least "60 percent" has "supported findings of monopoly power") (citation omitted).

**Second**, Plaintiffs will establish Meta's anticompetitive conduct. Deception is a recognized way monopolists can willfully acquire and/or maintain power.[1] *See, e.g.*, *CoStar*, 2025 WL 2573045, at *12; *accord Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 76–77 (D.C. Cir. 2001); *Caribbean Broad. Sys., Ltd. V. Cable & Wireless PLC*, 148 F.3d 1080, 1087 (D.C. Cir. 1998); *see also Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Pubs.*, *Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). The evidence will show that, through numerous anticompetitive acts of deception, Meta has unlawfully acquired and maintained a monopoly in the Personal Social Network Market. *See* Dkt. 645-1, 794-1, 952-1 (collecting evidence).

**Third**, Plaintiffs will prove that Meta's anticompetitive deception caused them antitrust injury. The evidence will show that privacy and data are critical dimensions of competition, Facebook is not "free" (users provide their data to Facebook, which has tremendous value to Facebook), and in a but-for world with more competition, Plaintiffs would have received something more for their data: compensation in cash or cash equivalents (as many companies, including Facebook provide in

---

[1] Meta contends that the six-part test for disparagement that the Ninth Circuit applied in *Harcourt Brace* governs Plaintiffs' claims. It does not. Plaintiffs' claims are based on Meta's deception of the market to adopt its own product, not Meta's disparagement of a competitor. In such circumstances, courts—like in *CoStar, Microsoft, Broadcom, Caribbean Broadcasting, Hynix Semiconductor Inc. v. Rambus, Inc.*, and others—have not applied the six-part test. *See* Plaintiffs' Argument Regarding Disputed Jury Instruction No. 23. Indeed, courts have explained that *Harcourt Brace* addresses "the 'disparagement of a rival'" and is inapplicable to other sorts of deception, like an "open early, closed late scheme." *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *12 (N.D. Cal. May 21, 2018). Judge Koh nonetheless applied—over Plaintiffs' objection—the *Harcourt Brace* framework to Plaintiffs' deception-based claims at the motion to dismiss stage. *See* Dkt. 109 at 22–23; Dkt. 214 at 39. Plaintiffs object to the application of the *Harcourt Brace* framework to their claims, as they have consistently made clear. *E.g.*, Dkt. 648 at 5 (Plaintiffs' motion for class certification, stating "Consumers contest whether the elements of *Harcourt Brace*'s framework constitute the proper legal test to apply"). Indeed, in a recent decision post-dating Judge Koh's motion to dismiss order, the Ninth Circuit found that an online platform's alleged deception regarding the terms of which its own service would be available is anticompetitive under Section 2, cited *Microsoft*, and made no mention of *Harcourt Brace* or the six-part test. *CoStar*, 2025 WL 2573045, at *12.

analogous contexts) and/or better features (such as better data collection and use practices, including providing less data in the first place).

Meta's monopolization is unlawful, and judgment must be entered for Plaintiffs.

### B.      Attempted Monopolization, Sherman Antitrust Act, Section 2

Attempted monopolization requires "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power,' and (4) causal antitrust injury." *Kodak*, 125 F.3d at 1202 (citations omitted). The elements for attempted monopolization largely mirror those for Plaintiffs' monopolization claim, except that as to power, an attempt claim requires a "lower" showing than one for actual monopolization. *Rebel Oil*, 51 F.3d at 1438 ("market share of 30 percent" or lower "presumptively insufficient" for attempt claim). Plaintiffs will put forward similar fact and expert evidence and analysis for Plaintiffs' attempted monopolization claim.

The same evidence will show that through numerous anticompetitive acts of deception, Meta attempted and intended to eliminate competition in the Personal Social Networking Services Market.[2] Meta's attempted monopolization is unlawful, and judgment must be entered for Plaintiffs.

### III.   META'S DEFENSES

Meta asserts the affirmative defense of statute of limitations. Meta's argument has been that because it began deceiving the market before December 2016, each new instance of deception within the limitations period cannot be an overt act because it is part of a "unified" campaign that consists of the same type of conduct (deception) and is thus not new or different conduct. The Court already rejected Meta's argument as a matter of law at the motion to dismiss stage. *See* Dkt. 214 at 55–58 (denying Meta's motion to dismiss Plaintiffs' deception claims as time-barred, explaining that Meta's arguments "unconvincing," that Meta's assertion that "an act is not 'new and independent' simply because the defendant has previously committed the same type of act as part of a unified anticompetitive strategy" was unsupported by law and "ignore[] the Ninth Circuit's clear guidance

---

[2] Much of this evidence is laid out in Plaintiffs' class certification, summary judgment, *Daubert*, and expert proffer briefing and the exhibits to same. *See, e.g.*, Dkt. 645, 673, 696, 794, 809, 812, 820, 857, 858, 859, 941, 948, 952.

that, if a defendant commits the same anticompetitive act multiple times, each new act restarts the statute of limitations for *all* the acts").

To the extent Meta is even allowed to offer it, Meta's statute of limitations defense will fail. The evidence irrefutably shows that Meta committed new overt acts of deception to maintain its monopoly during the limitations period, December 2016 through December 2020, including with respect to Cambridge Analytica. The evidence will likewise show those new acts caused accumulating injuries during that period. Meta therefore "start[ed] the statutory period running again" each time it deceived anew. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

Plaintiffs reserve all rights to respond to any other defenses, evidence, or arguments that Meta presents at trial.

## IV.   CONCLUSION

The evidence at trial will show that judgment should be entered for Plaintiffs on all their claims.

DATED: September 11, 2025

| | |
|---|---|
| By: */s/ Shana E. Scarlett* <br> **HAGENS BERMAN SOBOL SHAPIRO LLP** <br> Shana E. Scarlett (Bar No. 217895) <br> shanas@hbsslaw.com <br> 715 Hearst Avenue, Suite 202 <br> Berkeley, CA 94710 <br> (510) 725-3000 <br><br> Steve W. Berman (admitted *pro hac vice*) <br> steve@hbsslaw.com <br> 1301 Second Avenue, Suite 2000 <br> Seattle, WA 98101 <br> (206) 623-7292 <br><br> **LOCKRIDGE GRINDAL NAUEN P.L.L.P.** <br> W. Joseph Bruckner (admitted *pro hac vice*) <br> wjbruckner@locklaw.com <br> Robert K. Shelquist (admitted *pro hac vice*) <br> rkshelquist@locklaw.com <br> Brian D. Clark (admitted *pro hac vice*) <br> bdclark@locklaw.com <br> Laura M. Matson (admitted *pro hac vice*) <br> lmmatson@locklaw.com <br> 100 Washington Avenue South, Suite 2200 <br> Minneapolis, MN 55401 <br> (612) 339-6900 <br><br> Kyle Pozan (admitted *pro hac vice*) <br> kjpozan@locklaw.com <br> 1165 N Clark Street, Suite 700 <br> Chicago, IL 60610 <br> (312) 470-4333 | By: */s/ Kevin Y. Teruya* <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> Kevin Y. Teruya (Bar No. 235916) <br> kevinteruya@quinnemanuel.com <br> Adam B. Wolfson (Bar No. 262125) <br> adamwolfson@quinnemanuel.com <br> Scott L. Watson (Bar No. 219147) <br> scottwatson@quinnemanuel.com <br> Claire D. Hausman (Bar No. 282091) <br> clairehausman@quinnemanuel.com <br> Brantley I. Pepperman (Bar No. 322057) <br> brantleypepperman@quinnemanuel.com <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, CA 90017-2543 <br> (213) 443-3000 <br><br> Michelle Schmit (admitted *pro hac vice*) <br> michelleschmit@quinnemanuel.com <br> 191 N. Wacker Drive, Suite 2700 <br> Chicago, IL 60606-1881 <br> (312) 705-7400 <br><br> Manisha M. Sheth (admitted *pro hac vice*) <br> manishasheth@quinnemanuel.com <br> 295 5th Avenue, 9th Floor <br> New York, New York 10016 <br> (212) 849-7000 |

*Attorneys for Plaintiffs Maximilian Klein,*
*Rachel Banks Kupcho, and Sarah Grabert*

**ATTESTATION OF KEVIN Y. TERUYA**

This document is being filed through the Electronic Case Filing (ECF) system by attorney Kevin Y. Teruya. By his signature, Mr. Teruya attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 11, 2025         By   /s/ *Kevin Y. Teruya*
                                         Kevin Y. Teruya