UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAXIMILIAN KLEIN, et al.,
Plaintiffs,

v.

META PLATFORMS, INC.,
Defendant.

Case No. 20-cv-08570-JD

**ORDER RE DR. ECONOMIDES AND SUMMARY JUDGMENT RE USER PLAINTIFFS**

The Court denied a request by named plaintiffs Maximilian Klein *et al.* to certify monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, on behalf of a national class of Facebook users. Dkt. No. 905.[1] Plaintiffs alleged that defendant Meta Platforms, Inc. (Meta)[2] had monopolized a market of "personal social network services" (PSNS) by making "repeated misrepresentations over its data collection and use practices," which were said to have illegally restrained competition. *Id*. at 1 (citation omitted). Certification was denied because the opinions of plaintiffs' expert economist, Dr. Nicholas Economides, were not admissible under Federal Rule of Evidence 702 and the related line of *Daubert* cases to establish antitrust injury. *See id.* at 6-13. As a result, plaintiffs could not demonstrate a classwide method of proving the essential element of antitrust injury, and so class certification under Federal Rule of Civil Procedure 23(b)(3) was foreclosed. *See id.* at 13-15. The Ninth Circuit denied plaintiffs' request for interlocutory review of the certification order. Dkt. No. 937.

---

1 The order is also available at *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956 (N.D. Cal. 2025).

2 Following prior practice, the Court uses "Meta" to denote the company and "Facebook" for the social-networking service. *See* Dkt. No. 905 at 1 n.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

Only the claims of the individual named plaintiffs remain in play for trial. Meta asks to exclude Dr. Economides' opinions from trial, and to grant summary judgment in its favor on the Section 2 claims, for the same lack of antitrust injury, among other grounds. *See* Dkt. No. 927-1 (FRE 702 motion); Dkt. No. 925-1 (summary judgment motion).[3] The parties' familiarity with the record is assumed. Dr. Economides' opinions are excluded, and summary judgment is granted in favor of Meta.

**DISCUSSION**

## I. EXCLUSION OF DR. ECONOMIDES

The Court extensively analyzed the user plaintiffs' monopolization claims, and the proposed testimony of Dr. Economides, in the prior order. *See generally* Dkt. No. 905. The order is an essential predicate of the conclusions reached here. In summary, plaintiffs proposed a single theory of antitrust injury. *Id.* at 2. Dr. Economides opined that in a PSNS market unconstrained by Meta's misrepresentations about its data and privacy practices, Meta would have competed with rivals by paying Facebook users $5.00 a month for access to their personal data. *Id*. at 2-3. Because Facebook is provided in the real word without charge, the antitrust injury to plaintiffs was said to be a "negative price," meaning the amount Meta would have paid them to use Facebook but for its anticompetitive conduct. *Id.*

There were many problems with this theory, which the Court explained in detail in the decision denying certification. *Id.* at 6-13. The overall conclusion was that "'there is simply too great an analytical gap between' the facts on which Dr. Economides relies" and his theory of antitrust injury for it to pass muster as reliable and non-speculative. *Id.* at 7 (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022)). As a result, his opinions were not admissible under FRE 702 and allied cases.

[3] Citations to the parties' papers are to the unredacted versions filed under seal. Publicly available versions may be found at Dkt. No. 926 (summary judgment motion); Dkt. No. 953 (summary judgment opposition); Dkt. No. 958 (summary judgment reply); Dkt. No. 928 (FRE 702 motion); Dkt. No. 945 (FRE opposition); Dkt. No. 960 (FRE reply). To the extent the order uses information proposed to be sealed, sealing is denied.

To be sure, the exclusion was made in the context of Rule 23 and the question of whether to certify a class of Facebook users. But the opinions Dr. Economides proposes to present at trial are effectively the same as those found inadmissible during the class certification proceedings. They fare no better a second time around, and so are excluded from the case.

The governing standards for FRE 702 are the same as those applied in the certification decision, which are incorporated here. *See* Dkt. No. 905 at 4-5. In sum, FRE 702 "tasks a district court judge with ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD, 2023 WL 5532128, at *5 (N.D. Cal. Aug. 28, 2023) (citation omitted). The test of relevancy is "that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th. Cir. 1995)). "The test of reliability is flexible, and the Court looks at whether the reasoning and methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024) (citation omitted).

FRE 702 "does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026. Even so, the Court may evaluate whether the expert proffered sufficient facts or data to "support . . . every necessary link" in her theory, *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606 (9th Cir. 2002), with an eye toward "foundation, not corroboration," *Elosu*, 26 F.4th at 1025. If the evidence does not so suffice, the Court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* at 1026 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Once again, Dr. Economides' proposed opinion about antitrust injury is that Meta would have paid plaintiffs $5.00 per month but for its anticompetitive conduct. The remaining named plaintiffs oppose exclusion at trial under FRE 702 by suggesting that the opinion is somehow new

United States District Court
Northern District of California

or different from what was presented during the class certification proceedings, and so warrants presentation to a jury.

The point is not well taken. To start, plaintiffs say that they provided an "abridged" version of Dr. Economides' opinions in the class certification proceedings, and now offer "full-length merits reports" that establish admissibility. Dkt. No. 948-1 at 5. But plaintiffs did not identify anything new or different in the "full-length" versions that might have filled in the holes in Dr. Economides' analysis. The evidence is essentially the same in all of his reports, and he arrives at the same inadmissible conclusion that antitrust injury occurred in the form of not paying people to use Facebook. *See* Dkt. No. 794-2 (class report); Dkt. No. 948-2 (merits report). It also bears mention that plaintiffs did not suggest during the class certification proceedings that they were presenting anything less than their best version of Dr. Economides' work. They were the parties seeking certification, and nothing in the record indicates that they hobbled themselves by proffering a half-baked theory of antitrust injury.

The suggestion that an independent theory of diminished product quality can be found in Dr. Economides' opinions is equally misdirected. Plaintiffs say that Dr. Economides had a separate take on antitrust injury that focused on the theory that Meta would have "offered better services" to users in a market unconstrained by anticompetitive conduct. Dkt. No. 948-1 at 7. The problem is that this fallback position cannot be found as a freestanding and well-developed theory in his reports. As the prior exclusion order indicates, the Court made a deep dive into Dr. Economides' opinions. *See* Dkt. No. 905 at 1-13. His injury opinions consisted entirely of the theory that Meta would have paid Facebook users. It is certainly true that there are passing mentions of product quality and services, but they are little more than afterthoughts to his main theme of negative pricing and monetary harm.

Plaintiffs have not demonstrated otherwise. They offer a few snippets from Dr. Economides' 195-page report to the effect that Meta might have offered an opt-out from data collection in an unconstrained market. Dkt. No. 948-1 at 7. But these scant references hardly rise to the level of a freestanding theory of antitrust injury based on product quality. Plaintiffs also linked the opt-out feature to "a Flat Fee as Compensation," *id.* (capitalization in original), which

considerably undercuts their position. Dr. Economides did much the same. *See* Dkt. No. 948-2 ¶¶ 272-73 (Economides report discussing opt-out in the context of the $5.00 payments to users). The occasional mentions of possible "non-cash compensation . . . such as points or charitable contributions" also are ultimately tied to the $5.00 payment. *Id.* ¶ 291 & n.709.

As Meta aptly notes, *see* Dkt. No. 959-1 at 4, Dr. Economides' deposition testimony is the final nail in the coffin for plaintiffs' alternate injury theory. As he testified:

> Q. So in your but-for world, Facebook could have responded to more competition by offering better services instead of paying users; correct?
>
> A. Not correct. I think that paying users would be a crucial feature of the but-for world to make sure that people come to Facebook. Now, could it -- could Facebook also have better features? Possibly. I don't know. But that's not guaranteed. That's not the crucial feature.
>
> Q. And in your but-for world, it's guaranteed that Facebook would be paying users?
>
> A. Yes, it is guaranteed that Facebook would be paying users because that's the way to attract users to Facebook, which are immensely valuable because they generate revenue from -- from advertisers, from advertisers.

Dkt. No. 959-2 at 102:5-20. There is no room here to discern a Plan B for antitrust injury based primarily on product quality, as plaintiffs would have it.

Overall, plaintiffs have not established that there is anything new or different in Dr. Economides' proposed trial testimony with respect to antitrust injury. It is excluded under FRE 702 for the reasons discussed in the prior order. *See* Dkt. No. 905 at 6-13.

## II. SUMMARY JUDGMENT

With the exclusion of Dr. Economides' opinions, plaintiffs face an insurmountable barrier to proving antitrust injury. "Summary judgment is proper where the pleadings, discovery, and affidavits show there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Garcia v. Park*, No. 21-cv-09048-JD, 2022 WL 17409793, at *3 (N.D. Cal. Oct. 31, 2022) (quoting Fed. R. Civ. P. 56(a)), *aff'd*, 2023 WL 8676181 (9th Cir. Dec. 15, 2023). "A court shall grant summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

United States District Court
Northern District of California

party will bear the burden of proof at trial, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Id.* (cleaned up) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact." *Id.* "The burden then shifts to the nonmoving party to 'go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (cleaned up) (quoting *Celotex*, 477 U.S. at 324).

"For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party." *Id.* "The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact." *Id.*

Plaintiffs allege antitrust claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, for monopolization and attempted monopolization. *See* Dkt. No. 87 (consolidated users complaint).[4] For monopolization, plaintiffs must prove: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010) (internal quotation omitted). For attempted monopolization, they must prove: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving monopoly power; and (4) causal antitrust injury." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (internal quotation omitted).

For each claim, antitrust injury is an essential element of proof. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) ("[An antitrust] plaintiff must prove the existence

[4] The user plaintiffs also alleged a single California state law claim for unjust enrichment, which was dismissed in a prior order. *See* Dkt. No. 214 at 106.

of 'antitrust injury.'" (emphasis and citation omitted)); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). "'Antitrust injury' is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

The exclusion of Dr. Economides' injury opinions guts plaintiffs' case. To be sure, the absence of admissible expert testimony by an economist does not automatically foreclose an antitrust claim. But as a number of courts have observed, proof of antitrust injury typically demands expert witness evidence. *See, e.g.*, *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1042 (N.D. Cal. 2001) ("[O]nly expert testimony can demonstrate that any injury to plaintiffs was caused by defendants' unlawful conduct, and not because of lawful competition or other factors."); *Intimate Bookshop v. Barnes & Noble, Inc.*, No. 98 Civ.5564 (WHP), 2003 WL 22251312, at *4 (S.D.N.Y. Sept. 30, 2003) (same); *see also Virginia Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 736 (W.D. Va. 2000) ("[A]t the very heart of antitrust cases are concepts . . . that are as much matters of economics as they are of law. With very few exceptions, it is virtually unthinkable to attempt to litigate an antitrust case without the use of economic testimony." (alteration in original) (internal citation omitted)).

Even so, plaintiffs propose that they can prove antitrust injury on the basis of "lay evidence alone," irrespective of expert opinion.[5] Dkt. No. 952-1 at 8. In their view, this evidence is enough to prove injury, or at least to establish genuine disputes of fact warranting a trial. *Id.*

The record demonstrates otherwise. The "lay evidence" plaintiffs rely upon is the raw material that Dr. Economides reviewed for his reports. For example, they proffer the same documents Dr. Economides mentioned with respect to internal discussions at Meta about paying

[5] The named plaintiffs make a passing reference to another expert, Dr. Joseph Farrell, but do not say what, if anything, in his report might provide admissible evidence of antitrust injury. Dkt. No. 952-1 at 8.

users for data. *See id.* at 6-7, 11; Dkt. No. 948-2 ¶¶ 237-45. They also proffer the same smattering of references to product quality discussed above. *See* Dkt. No. 952-1 at 9.

The problem for plaintiffs is that this evidence would not allow a jury to make a non-speculative finding of antitrust injury any more than it allowed Dr. Economides to so opine. The Court examined this evidence in detail in the FRE 702 and certification order, and concluded that there was an unbridgeable gap between it and proof of antitrust injury. *See* Dkt. No. 905 at 6-13. Tapping in a jury in lieu of Dr. Economides will not solve this shortcoming. In the hands of either a jury or an economist, documents indicating that Meta occasionally thought about paying certain users in certain situations is insufficient to prove antitrust injury, to take one example of the lay evidence.

There is the additional problem of inviting a jury to act as an economist trained in antitrust and competition issues. In the Court's long experience, juries bring profound intelligence and comprehension to even the most complicated trials. But jurors must be properly equipped to decide highly technical issues such as antitrust injury. The purpose of Federal Rule of Evidence 702 is to provide jurors with the specialized evidence needed to resolve such questions, which go beyond ordinary experience and knowledge. *See* Fed. R. Evid. 702 Advisory Comm. Notes ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.") (internal citation omitted); *see also Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999) ("Expert evidence is necessary on such issues when lay people are unable to make a reasoned judgment alone."). The question of antitrust injury here is exactly the type of issue that demands expert testimony to resolve, which plaintiffs cannot supply.

Consequently, Meta has demonstrated that plaintiffs cannot prove the essential element of antitrust injury at trial. Summary judgment is warranted in its favor on the Sherman Act claims. The Court need not take up Meta's other arguments for summary judgment.

United States District Court
Northern District of California

**CONCLUSION**

The grant of summary judgment terminates the user case. All remaining pretrial and trial dates are vacated. Judgment will be entered separately.

**IT IS SO ORDERED.**

Dated: September 29, 2025

JAMES DONATO
United States District Judge